Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Justin C. Valencia, Trial Attorney
State Bar No. NE 25375 | State Bar No. IA AT0012006
Alyssa A. Rogan, Trial Attorney
State Bar No. CA 354257
United States Department of Justice
Office of the U.S. Trustee
300 Las Vegas Boulevard So., Suite 4300
Las Vegas, Nevada 89101
Telephone: (702) 388-6600
Facsimile: (702) 388-6658
Email: Alyssa.Rogan@usdoj.gov

Attorneys for TRACY HOPE DAVIS,
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>Debtor. | Case No. BK-25-10341-NMC<br>Chapter 11<br><br>Hearing Date: March 27, 2025<br>Hearing Time: 9:30 a.m.<br>Telephone Conference Line: (833) 435-1820<br>Meeting ID: 161 166 2815<br>Passcode: 115788# |

**MOTION OF THE UNITED STATES TRUSTEE FOR APPOINTMENT
OF A PATIENT CARE OMBUDSMAN UNDER 11 U.S.C. § 333 AND
<u>RESERVATION OF RIGHTS</u>**

Tracy Hope Davis, United States Trustee for Region 17 ("U.S. Trustee"), by and through her undersigned counsel, hereby moves (the "Motion") the Court for an order directing the appointment of a patient care ombudsman pursuant to 11 U.S.C. § 333 and reservation of rights. The Motion is supported by the following Memorandum of Points and Authorities, the declaration by Bryan G. Coleman ("Coleman Declaration") filed concurrently herein, and any argument that the Court may allow at the hearing on the Motion. In support of her Motion, the U.S. Trustee respectfully represents as follows:

## FACTUAL BACKGROUND

1. On January 22, 2025, the debtor, NuMale Corporation ("Debtor"), filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code.[1] [ECF No. 1].

2. That same day, after the "lead" Debtor filed its petition, six debtor-affiliates ("Affiliates") (collectively, with the "lead" Debtor, the "Debtors") filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code.[2] The Affiliates include: *In re Feliciano NuMale Nevada PLLC*, Case No. 25-10342-NMC; *In re NuMedical SC*, Case No. 25-10343-NMC; *In re NuMale Colorado SC*, Case No. 25-10344-NMC, *In re NuMale Florida TB PLLC*, Case No. 25-10345-NMC, *In re NuMale Nebraska LLC*, Case No. 25-10346-NMC, *In re NuMale New Mexico SC*, Case No. 25-10347-NMC.

3. The Debtor did not check the box self-selecting itself as a "Health Care Business" as defined under 11 U.S.C. § 101(27A). [ECF No. 1 at 2].

4. The Debtor continues to operate as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] Unless otherwise noted: "Section" refers to a section of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; "FRE" refers to the Federal Rules of Evidence; "L.R." refers to the local rules for the United States Bankruptcy Court District of Nevada, and "ECF No." refers to the main bankruptcy docket for case number BK-25-10341-NMC.

The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in the Debtor's case, pursuant to FRBP 9017 and FRE 201. To the extent that the Motion contains factual assertions predicated upon statements made by Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under FRBP 9017 and FRE 801(d)(2).

[2] The U.S. Trustee is filing this Motion, which applies to all the Debtors, in the "lead" case only for convenience.

5. The U.S. Trustee is scheduled to conduct the Section 341 Meeting of Creditors ("341 Meeting") on February 27, 2025, at 9:00 a.m. [*See* ECF No. 3].

6. On January 23, 2025, the Court issued a *Notice of Incomplete and/or Deficient Filing* and required the Debtor file the incomplete documents by February 5, 2025. [*See* ECF Nos. 4, 5].

7. On February 5, 2025, the Debtor filed a *Motion to Extend Time to File Schedules & Statements* ("Extension Motion"). [ECF No. 13].

8. As of the filing of this Motion, the Debtor has not filed a copy of the corporation's board of directors authorizing the filing, the Summary of Assets and Liabilities for Non-Individuals, Schedules A/B, D, E/F, G, H ("Schedules"), the Declaration Under Penalty of Perjury for Non-Individual Debtors, the Statement of Financial Affairs ("SOFA"), a List of Creditors or Equity Security Holders, the Verification of Creditor Matrix, the Disclosure of Compensation for Attorney for Debtors, the Declaration under penalty of perjury regarding Electronic Filing pursuant to L.R. 5005, and a List of Creditors Holding 20 Largest Unsecured Claims (collectively, the "Required Documents"). [*See* ECF Nos. 4, 5]. The Debtor failed to enter the names and addresses of all its creditors into the court's electronic case filing system. [*See* ECF No. 5].

9. The Extension Motion requests an additional 21 days to file the Required Documents by February 26, 2025. [*See* ECF No. 13].

10. On February 12, 2025, the Debtor filed a *Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure*

3

*1015(B)* ("Joint Administration Motion") requesting joint administration of the Debtors' cases.[3] [ECF No. 14].

11. Due to the lack of information available, the U.S. Trustee is unable to fully review the Debtor's Required Documents before conducting the 341 Meeting and cannot properly ascertain whether the Debtor is a "Health Care Business" as defined under 11 U.S.C. § 101(27A) or if a Patient Care Ombudsman is warranted under 11 U.S.C. § 333(a).

12. As of the filing of this Motion, the U.S. Trustee has not appointed a trustee or a committee. [*See generally* ECF Docket].

13. As of the filing of this Motion, the Court has not set a status conference. [*Id.*].

## JURISDICTION AND STANDING

14. This Court has jurisdiction over this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157, and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A) and (O). Under 28 U.S.C. § 586(a)(3), the United States Trustee is charged with supervising the administration of cases and trustees "by, whenever the United States trustee considers it to be appropriate" taking certain action. 28 U.S.C. § 586(a)(3)(A)-(I). Under 11 U.S.C. § 307, the United States Trustee has standing to be heard.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A. The U.S. Trustee Objects to the Debtor's Designation That it is Not a "Health Care Business."**

15. Under 11 U.S.C. § 333(a), in a case where the debtor is a "health care business" as defined by section 101(27A), the court shall order the appointment of a patient care

---

[3] The Office of the U.S. Trustee requested that the Debtor file a notice of hearing and certificate of service for both the Extension Motion and Joint Administration Motion by February 12, 2025. [*See* Coleman Declaration]. As of the filing of this Motion, the Debtor has not filed them. [*See generally* ECF docket].

4

ombudsman, unless the court finds that the appointment of an ombudsman is not necessary given the facts of the case. 11 U.S.C. § 333. In relevant part, section 333 provides,

> [i]f the debtor in a case under chapter 7, 9, or 11 is a health care business, the court <u>shall</u> order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business <u>unless</u> the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

*See* 11 U.S.C. § 333(a)(1) (emphasis added); *see also 7-Hills Radiology, LLC*, 350 B.R. 902, 903 (Bankr. D. Nev. 2006) (Section 333 "require[s] the appointment of a patient care ombudsman" for a health care business).

16. The statute provides for the mandatory appointment of a patient care ombudsman. Section 333(a)(1) establishes a presumption in favor of the appointment of a patient care ombudsman. Any party opposing such an appointment bears the burden of showing that the appointment of a patient care ombudsman is unnecessary for the protection of patients under the specific facts of the case. *In re Starmark Clinics, L.P.,* 388 B.R. 729, 734 (Bankr. S.D. Texas 2008); *In re Denali Family Servs.,* 2013 Bankr. LEXIS 1713 at *4 (Bankr. D. Alaska April 24, 2013) (Section 333(a)(1) authorizes courts to forego the appointment of an ombudsman, but only where the debtor proves that the appointment is unnecessary.).

17. In enacting section 333(a)(1) as part of BAPCPA, Congress expected the appointment of an ombudsman to be the rule, not the exception. In addition, section 333(a)(1) emphasizes "patient care" and an ombudsman is charged with the duty to "monitor the quality of patient care" and "represent the interests of patients," a duty that no other professional employed in a bankruptcy case is required to protect.

18. The term "health care business" is defined in 11 U.S.C. § 101(27A), which indicates,

5

The term "health care business" –

(A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for –

 (i) *the diagnosis or treatment of injury, deformity, or disease*; and
 (ii) surgical, drug treatment, psychiatric, or obstetric care; and

(B) includes –
 (i) any –
  (I) general or specialized hospital;
  (II) ancillary ambulatory emergency, or surgical treatment facility;
  (III) hospice;
  (IV) home health agency; and
  (V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and
 (ii) any long-term care facility, including any –
  (I) skilled nursing facility;
  (II) intermediate care facility;
  (III) assisted living facility;
  (IV) home for the aged;
  (V) domiciliary care facility; and
  (VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

*See* 11 U.S.C. § 101(27A) (emphasis added).

19. Upon information and belief, the "lead" Debtor is a management company, and the Affiliates operate various clinics throughout the United States. [*See* Coleman Declaration].

20. Upon information and belief, the Debtor specializes in improving the health and wellness of men offering treatments for erectile dysfunction, low testosterone, weight

management, hair restoration, and overall sexual health.[4] [*See* Coleman Declaration]. The Debtor's services include various types of therapies, medications, treatment plans, penile and medical injections, and on-site blood testing.[5] [*Id.*].

21. Upon information and belief, the Debtor uses the latest medical advancements to conduct detailed health assessments, diagnose, and treat an individual's needs.[6] [*Id.*].

22. Upon information and belief, the Debtor provides onsite and off-site treatment depending on the patient's health goals and tailored treatment plan.[7] [*Id.*].

23. Therefore, based on the information available, it appears the Debtor should have selected the "health care business" designation which would have triggered the appointment of an ombudsman unless the Debtor demonstrated otherwise.[8]

**B. The Debtor has Not Met its Burden Proving that a Patient Care Ombudsman Should Not be Appointed.**

24. If an ombudsman is to be appointed, then section 333(a) requires the court's order directing the appointment be made 30 days after commencement of the case. Fed. R. Bankr. P. 2007.2(a) indicates, "[t]he motion must be filed within 21 days after the case was commenced or *at another time set by the court*." (Emphasis added). Subsection (b) allows the court to defer the

---

[4] NuMale Medical Center, https://numalemedical.com/numale-medical-center-about-us/ (last visited February 19, 2025).
[5] *Id.*
[6] *Id.*
[7] Izarra Moore, *Trial Guides Authors Secure Record-Breaking $412 Million Verdict in Medical Malpractice Case*, Trial Guides (Dec. 9, 2024), https://www.trialguides.com/blogs/news/trial-guides-authors-secure-record-breaking-412-million-verdict-in-penile-injection-case?srsltid=AfmBOoq3LiWiOMtDMtWGHhIXFihHkcsjHY7h98tV8O4P821euj4gPCp1 (the plaintiff initially performed injections at home and revisited the clinic where the physician assistant performed additional and stronger doses of medications.
[8] To the extent that the Court finds that the "lead" Debtor is not considered a "Health Care Business" and/or an ombudsman is unnecessary in the "lead" case, the U.S. Trustee reserves her rights to file a motion to appoint an ombudsman in any of the Affiliates' cases.

appointment and "order an appointment later if it finds that an appointment *has become necessary* to protect patients." See Fed. R. Bankr. P. 2007.2(b) (emphasis added).

25. A court must perform a fact-intensive inquiry when analyzing whether it should appoint a patient care ombudsman under section 333(a)(1). In *In re Alternate Family Care*, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007), the court articulated a nine-factor test that included the following considerations:

> (1) the cause of the bankruptcy;
> (2) the presence and role of licensing or supervising entities;
> (3) debtor's past history of patient care;
> (4) the ability of the patients to protect their rights;
> (5) the level of dependency of the patients on the facility;
> (6) the likelihood of tension between the interests of the patients and the debtor;
> (7) the potential injury to the patients if the debtor drastically reduced its level of patient care;
> (8) the presence and sufficiency of internal safeguards to ensure the appropriate level of care; and
> (9) the impact of the cost of the ombudsman on the likelihood of a successful reorganization.

*See also In re Valley Health Sys.*, 381 B.R. 756, 761 (Bankr. C.D. Cal. 2008); *In re N. Shore Hematology-Oncology Assocs., P.C.*, 400 B.R. 7, 11 (Bankr. E.D.N.Y. 2008).

**a. The Cause of the Bankruptcy**

26. Upon information and belief, the Debtor presumably filed bankruptcy after a jury awarded a $412 million verdict against the Debtor in November 2024 involving a medical malpractice lawsuit ("Malpractice Lawsuit").[9] [*See* Coleman Declaration].

27. Upon information and belief, the verdict is one of the largest awarded in malpractice history.[10] [*Id.*].

---

[9] Chad Van Alstin, *Man Awarded $412M Malpractice Judgment – the Largest in History*, HEALTHEXEC (Dec. 3, 2024) https://healthexec.com/topics/healthcare-management/legal-news/man-awarded-412m-malpractice-judgment-largest-history.
[10] *Id.*

28. Upon information and belief, the jury found the Debtor engaged in fraud, negligence, and unconscionable unfair acts or practices.[11] [*Id.*].

29. It appears that the Malpractice Lawsuit arose from the Debtor's deficiencies in its patient care and there is a strong possibility that the verdict caused the Debtor to file bankruptcy. As indicated above, the lack of information and the Debtor's delay in providing information to the Court, the U.S. Trustee, and interested parties makes it difficult to be certain.

30. As of the filing of this Motion, there is no information indicating that the Debtor filed bankruptcy for any other purpose. [*See generally* ECF docket].

31. Therefore, the cause of the bankruptcy weighs in favor of appointing an ombudsman.

   b. **The Presence and Role of Licensing or Supervising Entities**

32. Although it is unclear whether the State of Nevada regulates the Debtor, and if so, to what extent, it is undisputed that the Debtor employs licensing professionals who would individually be subject to their state's licensing requirements.

33. Per the Debtor's website, it indicates the Debtor has a "*team of licensed medical professionals* [] dedicated to providing the highest quality care and advanced solutions for our patients." NUMALE MEDICAL CENTER, https://numalemedical.com/numale-medical-center-about-us/ (last visited February 19, 2025) (emphasis added).

---

[11] Izarra Moore, *Trial Guides Authors Secure Record-Breaking $412 Million Verdict in Medical Malpractice Case*, Trial Guides (Dec. 9, 2024), https://www.trialguides.com/blogs/news/trial-guides-authors-secure-record-breaking-412-million-verdict-in-penile-injection-case?srsltid=AfmBOoq3LiWiOMtDMtWGHhIXFihHkcsjHY7h98tV8O4P821euj4gPCp1.

34. Further, some of the Debtor's patients have left online reviews citing various doctors who treated them.[12] *Id.* Presumably, the Debtor would also have physician assistants, nurse practitioners, nurses, and/or medical support staff. *See id.*

35. The doctors, physician assistants, nurse practitioners, and/or nurses must be licensed in the state where they practice, and they could face consequences for their failure to properly care for patients.

36. Therefore, the fact that Debtor's professionals are individually subject to regulation weigh in favor of appointing an ombudsman.

    c. **The Debtor's Past History of Patient Care**

37. Upon information and belief, the Debtor's history of patient care is evidenced by the most recent Malpractice Lawsuit that resulted in the jury finding that the Debtor engaged in fraud, negligence, and unconscionable UPA violations.[13]

38. Upon information and belief, the plaintiff in the Malpractice Lawsuit sued the Debtor because "[t]he clinic misdiagnosed him and instead treated him for erectile dysfunction (ED) in order to sell him invasive penile injections for 'rehabilitation.'"[14] Accordingly, the jury found the Debtor "100 percent at fault in a botched penile injection procedure."[15]

39. Therefore, the Debtor's recent history in treating patients weighs in favor of appointing an ombudsman.

---

[12] At this stage, it is unclear if the doctors referenced in the reviews practice in Nevada, or any of the Debtor's other clinics. As of the filing of this Motion, the U.S. Trustee has not received information regarding the Debtor's employees.
[13] Izarra Moore, *Trial Guides Authors Secure Record-Breaking $412 Million Verdict in Medical Malpractice Case*, Trial Guides (Dec. 9, 2024), https://www.trialguides.com/blogs/news/trial-guides-authors-secure-record-breaking-412-million-verdict-in-penile-injection-case?srsltid=AfmBOoq3LiWiOMtDMtWGHhIXFihHkcsjHY7h98tV8O4P821euj4gPCp1.
[14] *Id.*
[15] *Id.*

    d.  **The Ability of the Patients to Protect Their Rights**

40. Upon information and belief, the Debtor's patients are protected under HIPPA; however, it is unclear what the Debtor's internal processes are to ensure proper safeguards are in place including how it obtains informed consent and how it discloses information.[16] Without this information, it is unclear whether and to what extent the Debtor's patients can protect their rights.

41. Therefore, this consideration weighs in favor of the appointment of an ombudsman.

    e.  **The Level of Dependency of the Patients on the Facility**

42. Upon information and belief, the Debtor treats men's most personal and intimate health problems, and its patients are presumably dependent upon the Debtor and its professionals because of their specialty practice.[17]

43. Upon information and belief, the Debtor prides itself in focusing "specifically on male wellness" and that it offers a "lineup of revolutionary procedures," which infers its services are different from other health practitioners and clinics.[18]

---

[16] *Compare* NuMale Medical Center, https://numalemedical.com/numale-medical-center-about-us/ (last visited February 19, 2025) (indicating that the Debtor prioritizes a patient's privacy and follows HIPAA principles) *with* Izarra Moore, *Trial Guides Authors Secure Record-Breaking $412 Million Verdict in Medical Malpractice Case*, Trial Guides (Dec. 9, 2024), https://www.trialguides.com/blogs/news/trial-guides-authors-secure-record-breaking-412-million-verdict-in-penile-injection-case?srsltid=AfmBOoq3LiWiOMtDMtWGHhIXFihHkcsjHY7h98tV8O4P821euj4gPCp1 (indicating that the new patients sign forms after their initial consultation, but the Debtor does not obtain additional consent forms thereafter).

[17] NUMALE MEDICAL CENTER, https://numalemedical.com/numale-medical-center-about-us/ (last visited February 19, 2025).

[18] *Id.*

11

44. Therefore, the patients are presumably dependent on the Debtor and its professionals for their specialized services and this factor weighs in favor of the appointment of an ombudsman.

### f. The Likelihood of Tension Between the Interests of the Patients and the Debtor

45. The Debtor is still operating its business, and it is likely that its patients and the Debtor share the same interest in providing high quality care and professionalism.

46. Therefore, there is likely no tension between the Debtor and its patients' interests weighing in favor of the appointment of an ombudsman.

### g. The Potential Injury to Debtor's Clients if the Debtor Drastically Reduced its Level of Care

47. If the Debtor drastically reduced its level of care, then its patients may suffer potential physical injury.

48. Upon information and belief, when considering the Debtor's most recent Malpractice Lawsuit, the plaintiff was left with permanent damages including a "completely scarred and nonfunctional penis . . . robbing him of the ability to share intimacy or even urinate normally for the rest of his life."[19]

49. Therefore, if the Debtor reduced its level of patient care, the harm can be life-changing and irreversible weighing in factor of an ombudsman.

//

//

---

[19] See Izarra Moore, *Trial Guides Authors Secure Record-Breaking $412 Million Verdict in Medical Malpractice Case*, Trial Guides (Dec. 9, 2024), https://www.trialguides.com/blogs/news/trial-guides-authors-secure-record-breaking-412-million-verdict-in-penile-injection-case?srsltid=AfmBOoq3LiWiOMtDMtWGHhIXFihHkcsjHY7h98tV8O4P821euj4gPCp1.

      h.  **The Presence and Sufficiency of Internal Safeguards to Ensure the Appropriate Level of Care**

50.    At this stage, there is insufficient information available regarding the Debtor's internal safeguards to ensure it is delivering the proper level of patient care.

51.    The Debtor has not filed its Required Documents resulting in the U.S. Trustee's inability to determine how it operates and what safety measures are in place.[20]

52.    Therefore, due to the lack of information, this factor weighs in favor of appointing an ombudsman.

      i.  **The Impact of the Cost of The Ombudsman on the Likelihood of a Successful Reorganization**

53.    As indicated above, the Debtor has not provided or filed the Required Documents that would help the U.S. Trustee evaluate the Debtor's financial situation including its reorganizational goals.

54.    Therefore, due to the lack of information, this factor weighs in favor of appointing an ombudsman.

55.    Based on the foregoing, the nine-factor test weighs in favor of the appointment of a patient care ombudsman.

//

//

//

---

[20] On January 28, 2025, the Office of the U.S. Trustee emailed Debtor's proposed counsel a letter scheduling the Initial Debtor Interview ("IDI") for February 20, 2025, and requested documents in preparation of the IDI ("IDI Documents") by February 13, 2025. [*See* Coleman Declaration]. On February 19, 2025, the day before the IDI, the Debtor's proposed counsel sent emails that presumably included some of the IDI Documents. [*Id.*]. As of the filing of the Motion, the Office of the U.S. Trustee has not had sufficient time to review the emails and their attachments because they were sent less than 24 hours before the IDI. [*Id.*]

## RESERVATION OF RIGHTS

The U.S. Trustee expressly reserves her rights to supplement the Motion or take any appropriate action under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the United States Bankruptcy Court for the District of Nevada.

## CONCLUSION

**WHEREFORE**, the U.S. Trustee requests that the Court order the appointment of a patient care ombudsman under 11 U.S.C. § 333, unless the Court determines that such appointment is not necessary for the protection of patients under the specific circumstances of this case, and granting such other relief as is just under the circumstances.

Dated: February 20, 2025        Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ *Alyssa A. Rogan*
    Alyssa A. Rogan, Esq.
    Trial Attorney for the U.S. Trustee