Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Justin C. Valencia, Trial Attorney
State Bar No. NE 25375 | State Bar No. IA AT0012006
Alyssa A. Rogan, Trial Attorney
State Bar No. CA 354257
United States Department of Justice
Office of the U.S. Trustee
300 Las Vegas Boulevard So., Suite 4300
Las Vegas, Nevada 89101
Telephone: (702) 388-6600
Facsimile: (702) 388-6658
Email: Alyssa.Rogan@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re:<br><br>NUMALE CORPORATION,<br><br>Debtor. | Case No. BK-25-10341-NMC<br>Chapter 11<br><br>Hearing Date: *OST Requested*<br>Hearing Time: *OST Requested*<br>Location: *OST Requested*<br><br>Est. Time: 30 minutes |
|---|---|

**UNITED STATES TRUSTEE'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a), OR, IN THE ALTERNATIVE, TO CONVERT OR DISMISS THIS CASE PURSUANT 11 U.S.C. § 1112(b), AND RESERVATION OF RIGHTS**

To the Honorable NATALIE M. COX, United States Bankruptcy Judge:

Tracy Hope Davis, the United States Trustee for Region 17 (the "UST"), by and through her undersigned counsel, hereby files her *United States Trustee's Motion to Appoint a Chapter*

1

*11 Trustee Under 11 U.S.C. § 1104(a), or, in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights* ("Motion").[1]

## INTRODUCTION

The UST seeks an order under 11 U.S.C. § 1104(a) directing the appointment of a chapter 11 trustee for the above-captioned debtor, NuMale Corporation (the "Debtor"), or, in the alternative, converting or dismissing the case pursuant to U.S.C. § 1112(b).

There is cause to appoint a trustee under 11 U.S.C. § 1104(a)(1), and it is in the best interests of creditors under 11 U.S.C. § 1104(a)(2). The Debtor has failed to: (1) comply with its duties as the debtor in possession under the Bankruptcy Code, including its failure to timely file monthly operating reports ("MORs") and provide information to the Office of the United States Trustee ("OUST" or "Office"); (2) provide full and accurate disclosures in a timely manner and file amendments, if necessary; (3) list presumably its largest unsecured creditor as holding one of the 20 largest claims; and (4) prosecute this case in an expeditious manner considering the Debtor's delays and tactics. In addition, the UST has established "cause" to appoint a chapter 11 trustee or, in the alternative, dismiss this case because the Debtor has shown a lack of interest in administering this estate for the benefit of creditors. Instead, the Debtor continues to act in its own interests, jeopardizing the estate's successful reorganization.

Under the circumstances, the proper statutory remedy in this case is the appointment of an independent trustee, appointed by the UST and approved by the Court. The appointment of a trustee would be in the best interest of the Debtor's estate and its creditors because it will provide

---

[1] Unless otherwise noted: "Section" refers to a section of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; "FRE" refers to the Federal Rules of Evidence; "L.R." refers to the local rules for the United States Bankruptcy Court District of Nevada, and "ECF No." refers to the main bankruptcy docket for case number BK-25-10341-NMC.

interested parties with the transparency needed concerning all the Debtor's assets, liabilities, financial information. If the Court finds cause to appoint a chapter 11 trustee and that the Debtor is a health care business warranting the appointment of a patient care ombudsman ("PCO"), the trustee and PCO can work together to move this case forward. Accordingly, for the reasons set forth herein, the UST requests that the Court find that the UST has met her burden and demonstrated that cause exists to grant this Motion and direct the UST to appoint a chapter 11 trustee in accordance with Sections 1104(a)(1) and (2).

Alternatively, the UST has established cause to convert or dismiss the case under Section 1112(b) by this Motion.

The Motion is based upon the entire record in this case, the following memorandum of points and authorities, the declaration of Bankruptcy Auditor, Bryan G. Coleman ("Coleman Decl."), and any oral argument that the Court may permit at the hearing on the Motion.

Consistent with her statutory duties, the UST reserves all rights with respect to this matter, including, but not limited to her right to take any appropriate action under the Bankruptcy Code, the FRBP, and the local rules of the U.S. Bankruptcy Court.

**JURISDICTION AND VENUE**

The Bankruptcy Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The UST brings this Motion pursuant to her statutory duty to monitor bankruptcy cases under 28 U.S.C. § 586(a)(3). The UST has standing to prosecute the Motion pursuant to 11 U.S.C. §§ 307, 1104 and 1112, and Bankruptcy Rules 1017 and 9014.

//

//

# BACKGROUND FACTS AND PROCEDURAL POSTURE

**A.  Background Facts and Procedural Posture**

1. On January 22, 2025, the Debtor filed a voluntary chapter 11 petition. [ECF No. 1]. The Debtor did not check the box self-selecting itself as a "Health Care Business" as defined under 11 U.S.C. § 101(27A).[2] [*Id.* at 2].

2. The Debtor's President, Brad Palubicki ("Debtor's Representative"), signed the petition. [*Id.* at 4].

3. That same day, after the Debtor filed its petition, six debtor-affiliates ("Affiliates") (collectively, with the Debtor, the "Debtors") filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code. The Affiliates include *In re Feliciano NuMale Nevada PLLC*, Case No. 25-10342-NMC; *In re NuMedical SC*, Case No. 25-10343-NMC; *In re NuMale Colorado SC*, Case No. 25-10344-NMC; *In re NuMale Florida TB PLLC*, Case No. 25-10345-NMC; *In re NuMale Nebraska LLC,* Case No. 25-10346-NMC; and *In re NuMale New Mexico SC*, Case No. 25-10347-NMC.

4. On January 23, 2025, the Court issued *a Notice of Incomplete and/or Deficient Filing* ("Notice") and required the Debtor file the incomplete documents by February 5, 2025. [*See* ECF Nos. 4, 5]. The Notice indicated the Debtor failed to file a resolution of the board of directors authorizing the bankruptcy filing, a verification of creditor matrix, a list of the 20 largest unsecured creditors, the *Summary of Assets and Liabilities for Non-Individuals*, Schedules A/B, D, E/F, G, H ("Schedules"), the *Declaration Under Penalty of Perjury for Non-*

---

[2] On February 20, 2025, the UST filed a *Motion of the United States Trustee for Appointment of a Patient Care Ombudsman Under 11 U.S.C. § 333 and Reservation of Rights* ("PCO Motion") and the hearing is set for March 27, 2025, at 9:30 a.m. [ECF Nos. 16, 17, 18].

*Individual Debtors*, the *Statement of Financial Affairs* ("SOFA"), a *List of Creditors or Equity Security Holders*, the *Disclosure of Compensation for Attorney for Debtors*, and a declaration under penalty of perjury regarding electronic filings pursuant to L.R. 5005 (collectively, the "Required Documents"). [*See* ECF Nos. 4, 5].

5. On February 5, 2025, the Debtor filed a *Motion to Extend Time to File Schedules & Statements* ("Extension Motion") requesting an additional 21 days to file the Required Documents by February 26, 2025.[3] [ECF No. 13].

6. On February 12, 2025, the Debtor filed a *Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(B)* ("Joint Administration Motion") and supporting declaration.[4] [ECF Nos. 14, 15].

7. On February 25, 2025, the Debtor filed an amended *Verification of Creditor Matrix* ("Creditor Matrix"), a *List of Creditors Who Have the 20 Largest Unsecured Claims* ("20 Largest Claims List"), and a *Declaration Under Penalty of Perjury for Non-Individual Debtors*. [ECF No. 25].

8. On February 26, 2025, the Debtor filed its SOFA, the *Summary of Assets and Liabilities for Non-Individuals*, Schedules, the *Declaration Under Penalty of Perjury for Non-Individual Debtors*, and the *Disclosure of Compensation for Attorney for Debtors*. [ECF Nos. 30, 31, 32].

---

[3] The UST filed an objection to the Extension Motion. [ECF No. 27]. As of the filing of this Motion, the Debtor has not filed a reply. [*See generally* ECF docket].

[4] The UST filed an objection to the Joint Administration Motion. [ECF No. 35]. As of the filing of this Motion, the Debtor has not filed a reply. [*See generally* ECF docket].

9.  On March 6, 2025, the Debtor filed a *Motion for an Order Authorizing Continued Maintenance and Redesignation of Existing Bank Accounts and a Waiver of Certain Guidelines Relating to Bank Accounts* ("345 Motion").[5] [ECF Nos. 37, 42].

10. On March 10, 2025, the Court entered *Administrative Order 2025-03* ("Suspension Order") indicating that the U.S. District Court for the District of Nevada issued an order suspending Debtor's proposed counsel, David A. Riggi of the Riggi Law Firm ("Proposed Counsel"), from practicing law. [ECF No. 45]. Accordingly, from the petition date through the entry of the Suspension Order, Proposed Counsel represented the Debtor.[6] [*See generally* ECF docket; *see also* ECF No. 45 (Suspension Order)].

11. On March 11, 2025, the Court held a status conference and continued the Extension Motion, Joint Administration Motion, and 345 Motion to March 27, 2025, to be heard with the *Motion of the United States Trustee for Appointment of a Patient Care Ombudsman Under 11 U.S.C. § 333 and Reservation of Rights* ("PCO Motion"). [ECF Nos. 16, 17, 50, 51].

12. On March 12, 2025, the Court entered *Administrative Order 2025-04* rescinding the Suspension Order. [ECF No. 55].

13. As of the date of filing this Motion, the Debtor has not filed a copy of the corporation's board of directors authorizing the filing, a *List of Creditors or Equity Security*

---

[5] On March 5, 2025, the Debtor initially filed a similar 345 Motion that contained personally identifiable information ("PII"). [ECF No. 37]. The OUST alerted Proposed Counsel about this and indicated he needed to file a notice of redaction and amended motion. Further, the UST filed an objection to the 345 Motion. [ECF No. 44]. As of the filing of this Motion, the Debtor has not filed a reply. [*See generally* ECF docket].

[6] As of the filing of this Motion, the Debtor has not filed a retention application seeking to employ Proposed Counsel under 11 U.S.C. §§ 327, 330, 331. [*See generally* ECF docket].

*Holders*, and a declaration under penalty of perjury regarding electronic filings under L.R. 5005. [*See* ECF Nos. 4, 5].

14. As of the filing of this Motion, the UST has not appointed a trustee, examiner, or an official committee. [*See generally* ECF docket; *see* ECF No. 47].

15. The OUST conducted the Section 341 meeting of creditors ("341 Meeting") on February 27, 2025, and March 12, 2025, which was continued it to April 7, 2025.[7] [*See* ECF Nos. 3, 33, 54].

16. The Debtor's deadline to file a chapter 11 plan is May 22, 2025. [ECF No. 1].

**B.    The Debtor's Scheduled Assets and Liabilities**

17. According to Schedule A/B, the Debtor represents that its assets have a value of $137,168.47 consisting of: (a) $5,403.47 in cash; (b) $23,765.00 in deposits and prepayments; (c) $73,000.00 in accounts receivable; (d) $35,000.00 in office furniture, fixtures, and equipment; and (e) real property and all other assets for unknown values. [*See* ECF No. 31; *see also* Coleman Decl.]. Further, under question 67, the Debtor indicated that its lists or records do not include PII of its customers. [ECF No. 31 at 7].

18. Schedule D reflects that the Debtor has a secured creditor, Newtek Lending ("Secured Creditor"), holding a $5,000,000.00 claim. [*Id.* at 10.]. Schedule E/F reflects nine non-

---

[7] Due to the Debtor's delay in filing the Schedules and SOFA hours before the initial Section 341 Meeting, the OUST continued it due to insufficient time to review the filings. [*See* ECF Nos. 30, 31, 32, 33]. During the initial 341 Meeting, however, the OUST requested the Debtor file any amendments to the Schedules and the January MOR before it reconvened the meeting on February 27, 2025. As of the filing of this Motion, the Debtor has not done so.

Further, considering Proposed Counsel's suspension days before the continued Section 341 Meeting, the lack of any amendments or an MOR, and, *inter alia*, the Debtor's brief lack of representation as a corporate entity, the OUST continued the 341 Meeting from February 27, 2025, to April 7, 2025. [ECF No. 54].

7

priority unsecured claims totaling $715,000.00 for Merchant Cash Advances ("MCA"), a payment processor, a credit card, a lease arrearage, legal fees, a financing group for small businesses, and money owed to Michael E. Sanchez ("Sanchez").[8] [*Id.* at 11–15].

19.  The SOFA indicates that the Debtor generated the following revenues: $2,626,866.83 from January 2023 through December 2023, $1,715,708.94 from January 2024 through December 2024, and $39,442.36 from January 2025 through the petition date. [ECF No. 30 at 1]. The Debtor indicated that it collects and retains PII but does not have a privacy policy in place. [*Id.* at 8].

C.   **Monthly Operating Reports**

20.  On January 28, 2025, the OUST emailed Debtor's Proposed Counsel information regarding the Initial Debtor Interview ("IDI") which was scheduled for February 20, 2025. [*See* Coleman Decl.]. The OUST requested IDI documents by February 13, 2025, to provide sufficient time to prepare for the IDI. [*Id.*].

21.  The Debtor untimely provided the IDI documents. [*Id.*]. The day before the IDI, Proposed Counsel indicated that he was in receipt of several documents and would review and submit them in due course. [*See id.*]. Accordingly, due to the Debtor's delay in providing the IDI documents and filing the Schedules, the OUST continued the IDI to March 6, 2025. [*Id.*]

22.  During the first IDI on February 20, 2025, the OUST advised the Debtor's Representative of the requirement to timely file MORs with the January MOR due the following

---

[8] As discussed herein, the Debtor listed the Sanchez claim as contingent, unliquidated, disputed, and for an unknown value. [ECF No. 31 at 13]. The Debtor's SOFA listed the lawsuit as a tort action that is on appeal. [ECF No. 30 at 4].

day, February 21, 2025. [*Id.*] During the continued IDI, the OUST again advised the Debtor's Representative of this requirement.[9] [*Id.*]

23.     The Debtor failed to timely prepare and file the January MOR. [*See id.*; *see also generally* ECF docket]. The February 2025 MOR will become due March 21, 2025. [*See* Coleman Decl.].

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     The Appointment of Chapter 11 Trustee is Warranted.**

**1.     The Controlling Statutory Framework.**

The Bankruptcy Code provides two bases for the appointment of a trustee in a chapter 11 case. First, under 11 U.S.C. § 1104(a)(1), the bankruptcy court must appoint a trustee if a movant, after notice and a hearing, demonstrates "cause." 11 U.S.C. § 1104(a)(1) ("[T]he court shall order the appointment of a trustee . . ."). Section 1104(a)(1) provides four non-exclusive circumstances constituting "cause" for the appointment of a trustee "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause." *Id*.

Second, Section 1104(a)(2) authorizes a bankruptcy court to appoint a chapter 11 trustee, without a showing of cause, "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1104(a)(2). *See also* 7 Collier on Bankruptcy at ¶ 1104.02[1].

---

[9] Section 1106(a) and FRBP 2015(a)(6) require a debtor to file with the Court and serve on the UST, MORs. L.R. 2015.3 requires the filing of MORs in regular chapter 11 cases to be filed no later than the 21st day of the following month.

9

Whether cause exists for appointment is within the court's discretion. *Lowenschuss v. Selnick (In re Lowenschuss)*, 171 F.3d 673, 685 (9th Cir. 1999). If the court orders the appointment of a trustee, the UST, after consultation with parties in interest, appoints the trustee. 11 U.S.C. § 1104(d).

Once cause is established, the Bankruptcy Code, in the specific and mandatory language of Section 1104(a), provides only for the appointment of a trustee or examiner. 11 U.S.C. § 1104(a). The bankruptcy court's equitable powers and general provisions of the Bankruptcy Code cannot provide the legal basis for alternative relief, regardless of the practicalities of the case. *In re Geothermal Resources Intern., Inc.*, 93 F.3d 648, 651 (9th Cir. 1996), *citing Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401–02 (9th Cir. 1995).

### 2. The Burden of Proof.

As a preliminary matter, the preponderance of the evidence is the correct standard for the Court to apply here.[10] The Supreme Court has consistently held that the presumptive standard of proof in civil cases is preponderance of the evidence unless a fundamental right is implicated or there is contrary Congressional direction. *See Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct.

---

[10] Bankruptcy court decisions within the Ninth Circuit have held that "parties seeking appointment of a chapter 11 trustee under . . . 1104(a) have the burden of proving appropriate grounds exist for such appointment by the preponderance of the evidence." *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 382 (Bankr. C.D. Cal. 2015). The *Corona Care* court cited the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279 (1991) and the California Practice Guide for Bankruptcy, which indicates that the preponderance of the evidence standard of proof applies and that cases to the contrary either precede or do not mention the *Grogan* decision. 1 Kathleen P. March et al., California Practice Guide – Bankruptcy, ¶ 4:2001 (2014) (available on Westlaw). *See also In re Pasadena Adult Residential Care*, 2015 WL 6443216, at *14 (Bankr. C.D. Cal. Oct. 23, 2015); *In re Draft Bars LLC*, 2018 Bankr. LEXIS 1606, at *8–9 (Bankr. Nev. March 29, 2018). However, a court in the Eastern District of California assumed, without deciding, that the clear and convincing evidence standard applied. *See In re Velde*, 2018 Bankr. LEXIS 2810, at *4 (Bankr. E.D. Cal. Sept. 12, 2018) (ordering appointment of Chapter 11 Trustee under the standard more favorable to the debtor in possession).

1923, 1934 (2016) (rejecting heightened burden for award of enhanced damages for patent infringement); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 34 S. Ct. 1749, 1758 (2014) (rejecting heightened burden for attorneys' fees award in patent litigation); *Grogan v. Garner*, 498 U.S. 279 (1991) (rejecting heightened burden for exceptions to discharge); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90 (1983) (rejecting heightened burden for securities fraud).

Under the Bankruptcy Code, a debtor in possession is allowed to operate its business and control its estate but must act as a fiduciary of the estate and its creditors. *In re Sillerman*, 605 B.R. 631, 648 (Bankr. S.D.N.Y. 2019). Although there is a presumption that a debtor will remain in possession, subsection (a)(1) "reflects criteria which mandate the appointment of a trustee for cause. […] Under this subsection the court's discretionary powers are circumscribed and are limited to a judicial determination of whether 'cause,' as defined, exists." *See Tradex Corp. v. Morse*, 339 B.R. 823, 827 (D. Mass. 2006) (internal citation omitted).

### 3. Cause Exists to Appoint a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)(1).

Subsection (1) of Section 1104(a) addresses management's pre- and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue Place Associates,* 171 B.R. 615, 623 (N.D. Ill. 1994); *In re Microwave Prods. Of Am., Inc.,* 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989) (courts may consider pre- and post-petition conduct in determining the necessity of a trustee). Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002). The determination of whether cause

exists must be taken on a case-by-case basis, considering all relevant factors. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989). Pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.,* 185 B.R. 615, 619 (Bankr. D. Wyo. 1995).

The Debtor's actions in this case thus far demonstrate gross mismanagement of the estate.

First, the Debtor has failed to comply with its duties as the debtor in possession including timely providing information to the OUST despite having advance notice of the requests. The Debtor's tactics, whether intentional or not, have caused the OUST to continue the IDI once and continue the 341 Meeting twice thus far. [*See* Coleman Decl.; *see also* ECF Nos. 3, 33, 54]. Due to the Debtor's deferral in filing the Required Documents the night before the initial 341 Meeting, and the Debtor's lack of representation during the first status conference and continued 341 Meeting, the OUST has been unable to convene a substantive and fruitful meeting. The case has been pending for nearly two months, however, the Debtor's delay in providing information has impacted the UST's ability to understand the status of the Debtor, how it operates, how it handles and protects its patients and their PII, and its reorganizational plans.

Despite receiving multiple notices about the MOR requirements, the Debtor has not prepared and timely filed the January MOR, which was due February 21, 2025. [*See* Coleman Decl.]. The February MOR will become due March 21, 2025. [*Id.*]. As of the filing of this Motion, there is no transparency regarding the Debtor's financial affairs. The Debtor's failure to meet its statutory obligations to provide necessary financial information to the UST and creditors satisfies the UST's burden to show that cause exists to appoint an independent fiduciary. *See In re Caroline Desert Disco, Inc.*, 5 B.R. 536, 537 (Bankr. C.D. Cal. 1980) ("failure to comply with

the Court's rules on . . . reports to the U.S. Trustee constitutes incompetence or gross mismanagement, justifying . . . appointment of a Trustee.").

Second, the Debtor has filed inaccurate Schedules resulting in additional delays and it has failed to file amendments which would provide the Court, the UST, and interested parties necessary information about the case. This Office requested IDI documents in advance of the IDI. [*See* Coleman Decl.]. In response, between the first and second IDI, the Debtor provided a copy of its privacy policy and a screenshot of its online banking portal page indicating it closed its business account at Fortifi Bank. [*See id.*]. This information is inconsistent with its Schedules and SOFA. Regarding the privacy policy, the Debtor's Schedule A/B indicates that the Debtor's lists and records do not include PII, but its SOFA provides otherwise. [*Compare* ECF No. 31 at 7 *with* ECF No. 30 at 8]. Also, the fact that the Debtor provided copy of its privacy policy demonstrates that it does collect PII; therefore, the Debtor needs to amend Schedule A/B, which it has not done. [*See generally* ECF docket].

Further, Schedule A/B includes two checking accounts – one at Fortifi Bank and one at JP Morgan Chase Bank, National Association. [ECF No. 31 at 1]. Post-petition, the Debtor closed the Fortifi Bank account. [*See* Coleman Decl.]. But, as of the filing of this Motion, the Debtor has not filed an amended Schedule A/B to reflect this change, even though the Debtor has had an extra 21 days to amend it. [*See generally* ECF docket]. The stale information and the Debtor's delays in correcting the filings precludes the Court, the UST, and creditors from properly evaluating the Debtor's financial condition.[11]

---

[11] It is also unclear whether the Debtor's Schedule H is accurate. On January 24, 2025, this Office contacted Proposed Counsel for an initial call regarding the case. [*See* Coleman Decl.]. During the call, Proposed Counsel indicated that there were roughly 20 entities, inclusive of all the clinics and management companies, but only seven had filed bankruptcy. [*Id.*]. Schedule H only listed eight co-debtors, some of which have not filed for bankruptcy. [ECF No. 31 at 17–

13

Third, the Debtor failed to include presumably its largest unsecured creditor, Sanchez, on the 20 Largest Claims List.[12] The omission of Sanchez on the 20 Largest Claims List demonstrates the Debtor's lack of candor because this claim is likely what precipitated the bankruptcy filing and there are numerous news articles discussing the New Mexico State Court litigation that resulted in a $412 million dollar verdict in favor of Sanchez. *See, e.g.*, https://www.nicholascrowley.com/news/ (highlighting four different news articles) (last visited March 12, 2025).[13] Instead, the Debtor only listed six unsecured creditors holding claims ranging from $5,000.00 to $4,000,000.00. [*See* ECF No. 25 at 4].

The Debtor's omission of the Sanchez claim from the 20 Largest Claims List also begs the question of whether the Debtor's Schedules are accurate and whether the Debtor has provided notice of the bankruptcy. The debtor in possession is a fiduciary to the estate and its creditors. *See Biltmore Assoc., LLC v. Twin City Fire Ins. Co.,* 572 F.3d 663, 673 (9th Cir. 2009) ("Visitalk became the debtor in possession of the bankruptcy estate, empowered to act as a trustee and required to act as a fiduciary for its creditors"). The Debtor cannot discriminate among creditors to list and to omit from the Schedules. The Debtor's omission and failure to provide an accurate 20 Largest Claims List demonstrates incompetence, untrustworthiness, and

---

20]. The Debtor cannot be properly examined at the 341 Meeting due to the Debtor's failure to file accurate schedules. Creditors and parties are also prejudiced because the Debtor's capital structure is unknown. The Debtor has failed to identify all its affiliates.

[12] Currently, it is unclear whether Sanchez's unsecured claim applies to the Debtor and all its Affiliates, or certain ones only. Further, Sanchez has not filed a proof of claim. [*See generally* Claims Register].

[13] Although, the parties involved in the New Mexico State Court litigation have not yet exhausted their appeal rights, there is a $412 million dollar claim against the estate based upon the state court verdict. *See* Chad Van Alstin, *Man Awarded $412M Malpractice Judgment – the Largest in History*, HealthExec (Dec. 3, 2024) https://healthexec.com/topics/healthcare-management/legal-news/man-awarded-412m-malpractice-judgment-largest-history.

gross mismanagement. Due to the Debtor's breach of its fiduciary duty to act in the best interest of all creditors by failing to carry out its most basic duties and responsibilities under the Bankruptcy Code and Rules, the Court should find cause exists to appoint a Chapter 11 trustee.

Finally, the Debtor's deadline to file a plan is May 22, 2025, a mere two months away. Based upon the Debtor's delay in complying with its duties and obligations under the Bankruptcy Code, most, notably, the duty to timely file complete schedules, it is unclear how the Debtor intends to move forward. To date, this Office has been unable to fully examine the Debtor at a 341 Meeting, denying creditors and parties in interest the opportunity to gain information regarding the Debtor's financial affairs, evidences a lack of interest in administering this estate and proposing a plan of reorganization. The Debtor has not filed an amended Schedule A/B, a *List of Creditors or Equity Security Holders*, and a declaration under penalty of perjury regarding electronic filings under L.R. 5005. [*See* ECF Nos. 4, 5; *see generally* ECF docket]. The Debtor has not filed a copy of the corporation's board of directors authorizing the filing raising concerns about the legitimacy of the petition. [*See* ECF Nos. 4, 5]. This information must be included in a plan and disclosure statement. Based on the Debtor's omissions and recalcitrance, it is unclear how the Debtor can timely file a confirmable plan.

Based on the foregoing, the UST has established grounds for the appointment of a chapter 11 trustee pursuant to Section 1104. *In re Stratesec, Inc*., 324 B.R. 158, 160 (Bankr. D.C. 2004) (where "a fiduciary is plainly necessary to take complete control of the debtor's estate, and where the debtor itself has decided against pursuing the powers of a debtor in possession, the Bankruptcy Code generally contemplates that the office of trustee will be employed").

//

//

### 4. Appointment of a Trustee is in the Interests of Creditors and the Estates.

Section 1104(a)(2) provides an alternative to "cause" as grounds for the Court to order the appointment of a trustee: "(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2).

Under Section 1104(a)(2), courts "'eschew rigid absolutes and look to the practical realities and necessities.'" *See In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (*quoting In re Adelphia Communication Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)). In determining whether the appointment of a trustee is in the best interests of creditors, a bankruptcy court must necessarily resort to its broad equity powers. Moreover, equitable remedies are a special blend of what is necessary, what is fair and what is workable. *Schuster v. Dragone,* 266 B.R. 268, 272–73 (D. Conn. 2001) (quotations omitted).

The factors considered by the courts in assessing motions brought under this section include: (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for rehabilitation; (3) the confidence - or lack thereof - of the business community and of creditors in present management; and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment. *See In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007).

The appointment of a trustee is in the best interest of creditors and the estate under Section 1104(a)(2). The most critical factor that weighs in favor of the appointment of a trustee under Section 1104(a)(2) is the need for creditors to have confidence that an independent trustee will manage the Debtor. This factor is bolstered given the untimeliness and failure to file accurate information leaving the Court, the UST, and creditors in the dark about what is occurring, how the Debtor is operating, and how it is maintaining its patient care. The Debtor's

failure to file an MOR and properly retain bankruptcy counsel within a timely manner also warrant such relief.

In the New Mexico State Court action that resulted in a $412 million dollar verdict, the jury found in favor of the plaintiff on his medical malpractice claims which also alleged fraud and unconscionable unfair acts and practices. *See* Izarra Moore, *Trial Guides Authors Secure Record-Breaking $412 Million Verdict in Medical Malpractice Case*, Trial Guides (Dec. 9, 2024), https://www.trialguides.com/blogs/news/trial-guides-authors-secure-record-breaking-412-million-verdict-in-penile-injection-case?srsltid=AfmBOoq3LiWiOMtDMtWGHhIXFihHkcsjHY7h98tV8O4P821euj4gPCp1.

Upon information and belief, Sanchez sued the Debtor because "[t]he clinic misdiagnosed him and instead treated him for erectile dysfunction (ED) in order to sell him invasive penile injections for 'rehabilitation.'" The jury found the Debtor "100 percent at fault in a botched penile injection procedure." *Id.*

The jury findings in the Sanchez action filed in the New Mexico State Court, amplify grounds for the appointment of a trustee and a PCO, who in conjunction with a chapter 11 trustee, will provide the Court, the UST, and creditors with reassurance that an independent PCO would be charged with carrying out the duties under Section 333, which includes monitoring the quality of patient care and representing the interests of the patients, etc. and reporting findings to the Court. 11 U.S.C. § 333.

Regarding the benefits of a chapter 11 trustee balanced against the cost of appointment, redressing the concern that the Debtor would be managed by an untainted fiduciary outweighs the cost of appointment of a chapter 11 trustee. Where, as here, the continuation of current management could result in further mismanagement and delay, the appointment of a trustee is

the only cure. *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (*quoting In re Adelphia Communication Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)) (Under Section 1104(a)(2), courts eschew rigid absolutes and look to the practical realities and necessities.)

Based on the foregoing, it is in the best interest of the Debtor's estate and its creditors to remove the current management and appoint an independent trustee who will comply with the fiduciary duties mandated by the Bankruptcy Code. A trustee will provide the Court, the UST, and creditors with the transparency needed in this case concerning all the Debtor's assets, liabilities, financial information, and work with a PCO to move the case forward.

B.    **In the Alternative, "Cause" Exists to Convert or Dismiss the Case**

Grounds also exist to convert the cases under 11 U.S.C. § 1112(b)(4). Section 1112(b)(1) provides that:

> Except as provided in paragraph (2) and subsection (c), on request . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b) includes a non-exclusive list of what constitutes "cause;" however, the court should "consider other factors as they arise, and use its equitable power to reach the appropriate result." *Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities)*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001). The bankruptcy court has broad discretion to determine what constitutes "cause" adequate for dismissal or conversion under § 1112(b). *Id.*

As movant, the UST bears the burden of establishing by preponderance of the evidence that cause exists. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) (citation omitted). Where reorganization or rehabilitation is unrealistic or futile, a chapter 11 case

18

may be dismissed or converted even at its outset. *Johnston v. Jem Dev. Co. v. Johnston (In re Johnston)*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992). And, if a bankruptcy court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal, conversion is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *In re Sullivan*, 522 B.R. at 612.

First, grounds exist for conversion or dismissal under Section 1112(b)(4)(B) as result of the gross mismanagement of the Debtor's estate by current management as set forth above. *See supra* pp. 9–18.

Second, grounds exist for conversion or dismissal under Section 1112(b)(4)(F) because the Debtor has failed to prepare and timely file the January MOR. [*See* Coleman Decl.; *see also generally* ECF docket]. The February MOR will become due by March 21, 2025. [*See* Coleman Decl.]. *See* L.R. 2015.3 (requires the Debtor to file MORs by the 21st day of the following month). *See also YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC)*, 505 B.R. 289, 303 (S.D. Cal. 2014) (MORs and the financial disclosures contained in them "are the life blood of the Chapter 11 process" and are more than "mere busy work.").

Third, this case has been pending for over a month and the Debtor has not moved to formally retain counsel. [*See generally* ECF docket]. Currently, the Debtor has not filed a motion seeking or allowing the employment of bankruptcy counsel under 11 U.S.C. §§ 327, 330, and 331. [*See* Coleman Decl.; *see also* ECF docket]. A corporate debtor's failure to retain counsel to represent it in a chapter 11 bankruptcy case constitutes "cause" to dismiss or convert the case pursuant to 11 U.S.C. § 1112(b). *See In re Child Life*, 126 B.R. 51 (Bankr. N.D. Ohio 1991).

Dismissal of the case is an appropriate remedy because it appears the Debtor's assets are presumably encumbered by the Secured Creditor's UCC-1 lien. [ECF No. 31 at 9–10]. As of the filing of this Motion, the Secured Creditor has not filed a proof of claim. [*See generally* Claims Register]. In the alternative, the UST does not object to conversion of this chapter 7 case if the Court finds that is in the best interest of the estate and creditors.

### **RESERVATION OF RIGHTS AND REQUEST TO RETAIN JURISDICTION**

The UST reserves her rights to take any appropriate action under the Bankruptcy Code, the FRBP, and the local rules of the U.S. Bankruptcy Court and requests that that the Court retain jurisdiction over issues arising under 11 U.S.C. §§ 329, 330 and FRBP 2014, 2016 and 2017, related to payments made to professionals if the Court dismisses the case.

### **CONCLUSION**

**WHERERORE**, based on the foregoing, the UST respectfully requests this Court grant the Motion, enter an order directing the appointment of a chapter 11 trustee, or in the alternative, enter an order dismissing or converting this case, and other relief as the Court deems appropriate.

Date: March 17, 2025               Respectfully submitted,

                                         TRACY HOPE DAVIS
                                         UNITED STATES TRUSTEE

                                         By:    */s/ Alyssa A. Rogan*
                                                    Alyssa A. Rogan, Esq.
                                                    Trial Attorney for United States Trustee