Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Justin C. Valencia, Trial Attorney
State Bar No. NE 25375 | State Bar No. IA AT0012006
Alyssa A. Rogan, Trial Attorney
State Bar No. CA 354257
United States Department of Justice
Office of the U.S. Trustee
300 Las Vegas Boulevard So., Suite 4300
Las Vegas, Nevada 89101
Telephone: (702) 388-6600
Facsimile: (702) 388-6658
Email: Alyssa.Rogan@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>              Debtor. | Case No. BK-25-10341-NMC<br>Chapter 11<br><br>Hearing Date: March 27, 2025<br>Hearing Time: 9:30 a.m.<br>Tel. Conf. Line: (833) 435-1820<br>Meeting ID: 161 166 2815<br>Passcode: 115788#<br><br>Est. Time: 30 minutes |

**UNITED STATES TRUSTEE'S REPLY TO DEBTOR'S OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a), OR, IN THE ALTERNATIVE, TO CONVERT OR DISMISS THIS CASE PURSUANT 11 U.S.C. § 1112(b), AND RESERVATION OF RIGHTS**

To the Honorable NATALIE M. COX, United States Bankruptcy Judge:

Tracy Hope Davis, the United States Trustee for Region 17 (the "UST"), by and through her undersigned counsel, hereby files her reply ("Reply") to the above-referenced debtor's ("Debtor") *Opposition to the United States Trustee's Motion to Appoint a Chapter 11 Trustee*

1

*Under 11 U.S.C. § 1104(a), or, in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights* ("Opposition").[1] [ECF No. 103].

## FACTUAL AND PROCEDURAL BACKGROUND

1. On March 17, 2025, the UST filed her *Motion to Appoint a Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or, in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights* ("Motion") and supporting declaration to be heard on shortened time. [ECF Nos. 59, 60, 62, 64, 65]. The Court will hear the Motion on shortened time on March 27, 2025, at 9:30 a.m. [ECF No. 77].

2. Prospect Rainbow, LLC, filed a joinder to the Motion on March 18, 2025. [ECF No. 75]. Newtek Small Business, Finance, LLC ("Newtek"), filed a joinder to the Motion on March 21, 2025, indicating that conversion to chapter 7 would be appropriate. [ECF No. 85].

---

[1] The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case, as well as the other Debtor cases, pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that this Status Report contains factual assertions predicated upon statements made by the Debtors, any of its current or former affiliates, agents, attorneys, professionals, officers, directors, or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

Unless otherwise noted: "Section" refers to a section of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; "FRE" refers to the Federal Rules of Evidence; "L.R." refers to the local rules for the United States Bankruptcy Court District of Nevada, and "ECF No." refers to the main bankruptcy docket for the above-referenced case.

3.     On March 25, 2025, the Debtor filed its Opposition, which included declarations by Ricardo Echeverra and the Debtor's representative, Brad Palubicki ("Debtor's Representative") ("Palubicki Decl.").[2] [ECF No. 103 Exhibits B and D].

### RESPONSE

**A. The Opposition Raises More Questions and Concerns.**

4.     As a preliminary matter, pages 2 through 9 of the Opposition provide a status update regarding the Debtor and its six-related debtor-affiliates (collectively, the "Debtors").[3] [ECF No. 103]. This information regarding what has transpired should have been provided to the Office of the United States Trustee ("OUST") and interested parties from the beginning, not 62 days post-petition, demonstrating the Debtor's breach of its fiduciary duties along with delay and tactics bolstering the need for a trustee.

5.     The Debtor includes information, much of which appears to be red herrings, or attempts to misdirect the Court's attention from why a trustee is warranted. For instance, the Debtor provides that "over the two months of these NuMale affiliated bankruptcy cases, the *groundwork has been laid* . . . the appropriate debtors have reached agreements . . ." in which 9019 motions, or settlements, are underway that would allow the Debtor to file a disclosure statement and plan. [*See*, *e.g.*, ECF 103 at 6–9 (emphasis added)]. It indicates the Debtor's

---

[2] LR 9014(c)(2) requires that declarations "must be filed separately, and they must reference the underlying motion or paper." Here, the Debtor failed to comply with LR 9014(c)(2) because it filed the declarations as exhibits to the Opposition. [*See* ECF No. 103 Exhibits B and D].

[3] The Affiliates include *In re Feliciano NuMale Nevada PLLC*, Case No. 25-10342-NMC; *In re NuMedical SC*, Case No. 25-10343-NMC; *In re NuMale Colorado SC*, Case No. 25-10344-NMC; *In re NuMale Florida TB PLLC*, Case No. 25-10345-NMC; *In re NuMale Nebraska LLC*, Case No. 25-10346-NMC; and *In re NuMale New Mexico SC*, Case No. 25-10347-NMC.

intent to reorganize and seek releases, pay wages to insiders, and emerge post-confirmation. [*See id.* at 9].

6. The Debtor is placing the cart before the horse. It has continuously failed to comply with its administrative duties making it unclear how it could move forward, let alone towards confirmation of any plan. As indicated in the Motion, the OUST has continued the Section 341 meeting twice and has not had a substantive meeting to apprise parties about the Debtor's financial state and plans to reorganize. It is problematic that the Debtor is attempting to bypass the administrative requirements by timely and accurately providing information which would provide the proper foundation for any future reorganization.

7. Further, during the initial hearing on March 11, 2025, the Court expressed its concerns regarding the status of whether the Debtor was operating, and if so, how it was handling patients and their personally identifiable information. Currently, the UST's motion for a patient care ombudsman ("PCO") and the Debtor's non-opposition remain pending. [ECF Nos. 16, 17, 90]. If the Debtor provided sufficient information upfront, a PCO could have been appointed shortly after the petition. Instead, due to the Debtor's delay in providing information resulting in the OUST having to seek information available online, the case has incurred delays.

8. The Opposition also raises concerns regarding the fact that the Debtor's affiliates have ceased business in Colorado and Florida yet are providing services for their existing patients. [ECF No. 103 at 3, 8]. First, are the Debtors allowed to treat patients across state lines despite them being patients in Colorado and Florida? Second, is the Debtor, or its affiliates, mixing resources? Third, are there intercompany claims that have not been disclosed? The Court, the UST, and interested parties do not know and the Debtor has not disclosed all the non-debtor entities on its Schedule H to be sure. The lack of transparency, and the fact that

nearly two months later this information is now being disclosed, warrant the appointment of an impartial chapter 11 trustee who, *inter alia*, can carry out the required fiduciary duties to the bankruptcy estate in a timely and efficient manner under the Bankruptcy Code, work with a PCO regarding patient care, and investigate whether there are intercompany claims.

**B. The Schedules and Statements Remain Inaccurate.**

9. The Debtor provides that "there was a time period of several days during which ECF was not allowing counsel to submit documents. Since then, and through abundance of caution, Debtors are re-reviewing toward the goal of accuracy and completeness." [*Id.* at 10]. There is no evidence to support the ECF filing deficiencies.[4] But even if this was true, as of the filing of this Reply, no amendments to the schedules have been filed. [*See generally* ECF docket].

10. The Palubicki Decl. spends a significant number of pages addressing the Debtor's pre- and post-petition actions regarding the New Mexico State Court litigation regarding unsecured creditor, Michael E. Sanchez ("Sanchez").[5] It is difficult to understand how the Debtor's Representative, who appears to be actively and intimately engaged with the Sanchez Action has omitted Sanchez from the creditor matrix and altogether from the *In re*

---

[4] The OUST recognizes that Debtor's proposed counsel was briefly suspended from practicing law between March 10, 2025, to March 12, 2025, and there could have been ECF limitations. [*See* ECF Nos. 45, 55]. But all the deficiencies and failures to comply raised in the UST's objections occurred before the suspension making it unclear why the schedules and statements could not be accurately filed in the first instance. [*See* ECF Nos. 27, 35, 44].

[5] The Debtor submitted late details regarding its pre-petition negotiations and what eventually led to the bankruptcy case. This information should have been provided months ago, and again, due to the Debtor's delay, there has not been a fruitful 341 meeting to also provide this information. The OUST has learned more about the New Mexico State Court litigation, not from the Debtor, but through the papers Sanchez has filed in this case. [*See* ECF Nos. 70, 98, 100]. The Debtor voluntarily placed itself in bankruptcy and this information should be coming from it directly.

5

*NuMale New Mexico SC*, 25-10347, case. [*See* ECF No. 25 at 4; *see also In re NuMale New Mexico SC*, 25-10347 ECF No. 18]. Whether this is an intentional omission or a complete disregard for signing documents under penalty of perjury, this inaccuracy is unacceptable. There is no reason how the Debtor could omit presumably its largest unsecured creditor from the bankruptcy. This further weakens the UST and interested parties' confidence about what other information is omitted.

11. The Palubicki Decl. contains inconsistencies with other docket filings. Sanchez filed a motion seeking "to terminate the automatic stay and allow post-trial motions to be adjudicated and for a final appealable judgment to be entered against the Debtor to judgment only[.]" [ECF No. 77 at 3]. It appears that the Debtor agrees. [*See* ECF No. 64; *see also* ECF No. 103 at 5 ("NuMale affiliated entities completely endorse and approve the expedited initiatives by Sanchez to have a judgment entered[.]")]. But the Debtor's consent to lift the stay contradicts Palubicki's declaration where he indicates that "no judgment has been entered and, it has been our goal, that a settlement occurs and *no judgment ever be entered*." [ECF No. 103 at 38 (emphasis added)]. The inconsistencies make it uncertain which papers are correct and accurate.[6]

12. Pending for 63 days, this case has been unduly delayed by the direct actions and inactions of the Debtor all to circumvent its duties under the Bankruptcy Code. It should not take the Debtor and its affiliates two months to move this case forward regarding the general

---

[6] Due to the Debtor's Representative's inconsistent positions, an impartial chapter 11 trustee may be more appropriate to review and determine whether the estate consents to lifting the stay. Although the UST consented to hearing the relief from stay motion on shortened time, at this stage, the UST does not take a position about the underlying substance.

"first- or second-day motions."[7] It appears these cases are too complex and difficult for current management to handle regarding the practices exhibited so far and the appointment of a chapter 11 trustee is the only solution.

13. Further, the Debtor has conceded that it untimely filed its January MOR. The issue is not that the MORs are *eventually* filed but rather *timely* provided particularly because of the crucial information provided in them. In the aggregate, the Debtor has not been forthcoming with providing full and thorough information, yet it has enjoyed the protections of the automatic stay.

14. Finally, the Debtor's prayer for relief requests the Court "allow a [PCO] to review the operations and report to the Court regarding the need for a trustee[.]" This is incorrect and 11 U.S.C. § 333 specifically outlines a PCO's duties which does not include the evaluation of whether an independent chapter 11 trustee is necessary.

## CONCLUSION

15. Based on the foregoing, current management has demonstrated its inability to timely provide transparency warranting the appointment of an impartial trustee. Accordingly, the UST has satisfied her burden in demonstrating that a trustee is needed under 11 U.S.C. §§ 1104(a)(1) and (a)(2). Alternatively, if the Court finds that a trustee is unwarranted, then at a minimum, the UST contends that conversion, or dismissal, is appropriate.

Date: March 26, 2025

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ Alyssa A. Rogan

---

[7] On March 27, 2025, the Court will also hear the Debtor's motion to extend time, joint administration, and authorization to deviate from Section 345, and the UST's motion to appoint a PCO.

7

                                        Alyssa A. Rogan, Esq.
                                        Trial Attorney for United States Trustee