Ogonna Brown, Bar No. 7589
Ogonna.Brown@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169
Tel:    702.949.8200
Fax:    702.949.8398

Lori M. Bencoe (*Admitted Pro Hac Vice*)
NM State Bar 7525
BENCOE & LaCOUR LAW PC
9201 Montgomery Blvd NE, Suite 404
Albuquerque NM 87111
Tel: 505.247.8800
Fax: 505.247.8801
lori@bencoelaw.com

*Attorneys for Creditor Michael E. Sanchez*



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>■ NUMALE CORPORATION,<br><br>☐ FELICIANO NUMALE NEVADA PLLC,<br>☐ NUMEDICAL SC,<br>☐ NUMALE COLORADO SC,<br>☐ NUMALE FLORIDA TB PLLC,<br>☐ NUMALE NEBRASKA LLC,<br>■ NUMALE NEW MEXICO SC,<br><br>               Debtors. | Lead Case No. 25-10341-NMC<br>Chapter 11<br><br>Jointly administered with:<br>Case No. 25-10342-NMC<br>Case No. 25-10343-NMC<br>Case No. 25-10344-NMC<br>Case No. 25-10345-NMC<br>Case No. 25-10346-NMC<br>Case No. 25-10347-NMC<br><br>**REPLY TO CERTAIN UNDERWRITERS AT LLOYD'S LONDON SYNDICATES 623/2623 OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO MOTION FOR ORDER TERMINATING AUTOMATIC STAY UNDER 11 U.S.C. § 362(D)(1) AS TO NEW MEXICO STATE COURT POST-TRIAL PROCEEDINGS, TO JUDGMENT ONLY, NOT ENFORCEMENT, AS TO NUMALE CORPORATION AND NUMALE NEW MEXICO SC AND COMFORT ORDER FOR STAY TERMINATION AS TO NON-DEBTORS AND WAIVER OF THE 14-DAY STAY UNDER FRBP 4001(a)(3)** |

4914-1864-2746, v. 1

|   |
|---|
| REMOTE: (833) 435-1820<br>MEETING ID: 161 166 2815<br>Passcode: 115788# |
| Hearing Date: May 20, 2025<br>Hearing Time: 9:30 a.m. |
| Chief Judge: Hon. Natalie M. Cox |

Michael E. Sanchez ("Mr. Sanchez", or alternatively, "Movant"), by and through his counsel, Lori M. Bencoe, Esq., admitted Pro Hac Vice, of the law firm of Bencoe & LaCour Law PC, and local counsel Ogonna M. Brown, Esq. of the law firm of Womble Bond Dickinson (US), LLP, hereby files this Reply to Certain Underwriters at Lloyd's London Syndicates 623/2623 Supplemental Objection ("Supplemental Objection") to Motion to Terminate Automatic Stay Under 11 U.S.C. §362(d)(1) as to New Mexico State Court Post-Trial Proceedings, to Judgment Only, Not Enforcement, as to Numale Corporation and Numale New Mexico SC ("Debtors") and Comfort Order for Stay Termination as to Non-Debtors and Waiver of the 14-Day Stay Under FRBP 4001(a)(3) (ECF Nos. 98 and 77), filed at Docket Nos. 179[1] ("Reply").

This Reply is supported by the Declaration of Ogonna M. Brown, Esq., local counsel for Mr. Sanchez ("Brown Decl."), and the Supplemental Declaration of Lori Bencoe, Esq. ("Supplemental Bencoe Decl."), both filed separately and concurrently herewith pursuant to Rule 9014(c) of the Local Rule of Bankruptcy Practice of the United States District Court for the District of Nevada, and the Declaration of Lori Bencoe, Esq. ("Bencoe Decl."), state court counsel for Mr. Sanchez, previously filed with this Court as Docket No. 100 in Numale Corp. and Docket No. 79 in Numale NM SC.

Based upon the record before this Court, cause exists to terminate the automatic stay under 11 U.S.C. § 362(d)(1), to waive the 14-day stay of the order terminating the stay as to the Debtors to allow the New Mexico Court to rule at the hearing on May 22, 2025, to adjudicate the jury verdict

---

[1] All references to "ECF No." are to the number assigned to the documents filed in Case No. BK-25-10341-nmc as it relates to Debtor's Chapter 11 case as they appear on the docket maintained by the clerk of court. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "LR" are to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada. All references to the "FRBP" are to the Federal Rules of Bankruptcy Procedure.

to a final, appealable judgment, to judgment only but not enforcement as to the Debtors, and for the entry of a comfort order terminating the stay as to the non-debtors.

This Reply is supported by the pleadings and papers on file herein, and any argument this Court may entertain regarding the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Beazley's Supplemental Objection unfortunately seeks, without factual basis, to paint Creditor Sanchez's motives as nefarious or improper, with rhetorical statements such as "fruit of the poisonous tree," which is not a bankruptcy doctrine at all - but rather, a criminal search and seizure doctrine originating from the landmark *United Supreme Court Case of Nardone v. United States*, 308 U.S. 338 (1939). In that case, the Court held that evidence obtained illegally in violation of the Fourth Amendment's protection against illegal searches and seizures was "fruit of the poisonous tree" that could not be admitted to prosecute a criminal defendant. Beazley's opening contention at Paragraph 7, that Mr. Sanchez's act of filing a Motion to Lift Stay in this court is "fruit of the poisonous tree", simply makes no sense. As this Reply shows, Mr. Sanchez is entitled to respectfully ask this Court to enter an Order permitting him to conclude proceedings in the pending New Mexico State Court Action ("Sanchez I"), by seeking a comfort order as to non-debtors who are not under the jurisdiction of this Bankruptcy Court, and for stay termination as to the Debtors to judgment only, not enforcement, of course with the Chapter 11 Trustee's involvement now that said Trustee has been appointed. Despite its rhetoric, Beazley's Supplemental Opposition contains no factual basis for this Court to continue delaying hearing and decision on Sanchez's Motion to terminate the automatic stay under Section 362, or to grant the relief he seeks for good cause, either partially or fully.

### II. LEGAL ARGUMENT

**A.    Cause Exists to Terminate Stay Under Section 362 for Jury Verdict to be Adjudicated to Final, Appealable Judgment and for Comfort Order as to Non-Debtors**

11 U.S.C. § 362(d)(1) requires a bankruptcy court to grant stay relief "for cause." "Cause" is determined on a case-by-case basis. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.

- 3 -

4914-1864-2746, v. 1

1990) (citation omitted). The Ninth Circuit has recognized that "the Curtis factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009). The "Curtis Factors" weigh heavily in favor of stay relief.

### 1. *Curtis* Factors Favor Stay Relief

The "Curtis factors" weigh in favor of stay termination to allow the New Mexico Court to adjudicate the $412 million jury verdict to a final, appealable judgment, given the procedural posture of the state court case, and the readiness of the New Mexico Court to begin adjudicating post-trial motions briefed by the Debtors and non-debtors since December 2024, some of which are now set for hearing on May 22, 2025. Beazley, who was not a party to the New Mexico State Court action, cannot legitimately refute that a complete resolution of Sanchez I by the New Mexico State Court would be effectuated by the decision of posttrial matters and entry of the jury verdict to a final, appealable judgment. No party to the New Mexico State Court action opposes stay termination as to the Debtors.

In Beazley's Supplemental Objection, it recites as "background" that it "met all other potential obligations to the insured defendants in the New Mexico case". *See* Opposition, ¶ 3 (ECF No. 179). However, this is a legal contention that is in dispute. Beazley also recites as "background" that the $375 million in punitive damages awarded by the jury in the Sanchez I litigation were "solely against Numale Corporation". *See* Opposition, ¶ 4 (ECF No. 179). This is a serious misstatement, as the application of joint and several liability for the punitive damages awarded by the jury in favor of Mr. Sanchez is likewise a contested legal issue to be determined by the New Mexico state court on posttrial motions that must be decided prior to entry of a final Judgment, and will be based on the trial court's analysis of the Stipulated Jury Instructions tendered in the case, the Special Verdict Form taken as a whole, and substantive New Mexico case law.

Beazley, who is a non-party who did not participate in the New Mexico Case and was not present at trial, contends in its Supplemental Objection, seemingly on behalf of the Trustee, that Mr. Sanchez's actions and intent are somehow to "prematurely force the Trustee into litigation that it has not had time to prepare for and cannot fairly defend." *See* Opposition, ¶ 7 (ECF No. 179). This



- 4 -

4914-1864-2746, v. 1

assertion utterly lacks factual basis. To the contrary, on April 17, 2025, Creditor Sanchez and the Trustee's attorney conferred and stipulated to give the Trustee additional time to respond to the pending Motion to Lift Stay, and to continue the April 24, 2025, hearing to a date prior to May 22, 2025. *See* Emails dated April 17, 2025, between counsel for Sanchez and counsel for Trustee Michael Carmel, memorializing the terms of this agreement, **Exhibit "1"** to the Brown Decl. The Trustee memorialized this stipulation for the briefing extension in his Status Report filed on April 17, 2025 (ECF No. 180, at p. 11), and ultimately in the Stipulation to extend the briefing schedule and continue hearing on the Motions to May 20, 2025 (ECF No. 188).

Not surprisingly, in paragraph 9 of its Supplemental Objection, Beazley claims further delay of this Court's ruling on the Motion to Terminate Stay is needed in order for the Trustee to determine the "appropriate future path to liquidation of the Sanchez Claim." *See* Opposition, ¶ 9 (ECF No. 179). Incidentally, Sanchez afforded the Trustee additional time to address the lift stay motion, as evidenced in the Stipulation to Terminate Stay (ECF No. 188). Further, there can be no dispute that to know the value of that Claim, the New Mexico Court must be permitted to conduct post-trial hearings in New Mexico. Further, there is no valid basis for the Bankruptcy Court to assert jurisdiction over the New Mexico Court's adjudication of final post-trial issues in Sanchez I that were pending pre-petition, especially because the jury's verdict was for joint and several liability. Sanchez has a legal right at a minimum to proceed against non-debtors and their assets for enforcement of his future judgment without continued delay, and non-debtors would ultimately then have a legal right to defend against same separately from the Numale Corp. or Numale NM SC Bankruptcy Estates, respectively. 11 U.S.C. § 362, § 105.[2]

Beazley accuses Mr. Sanchez of improper motives, including to assert his right to posttrial remedies available under New Mexico law arising from the verdict, including prejudgment interest and costs that the Court has set for hearing on May 22, 2025. *See* Opposition, ¶ 10 (ECF No. 179). But there is nothing improper about Mr. Sanchez's desire to achieve post-trial finality of the verdict

---

[2] Notably, Sanchez originally sought lift stay relief to prevent piecemeal litigation of posttrial issues common to all Defendants in the New Mexico case that could result in inconsistent rulings as to Debtors Out of Possession (DOP) and Non-Debtors by the New Mexico trial court, but alternatively requested a comfort order to proceed as to nondebtors who are jointly and severally liable for the jury's verdict, at a minimum.

- 5 -

4914-1864-2746, v. 1

so that judgment can be entered against all of the Defendants, as the policy proceeds are not an asset of the bankruptcy estate under 11 U.S.C. 541 under the Nevada Bankruptcy Court's holding in *In re Endoscopy*, 451 B.R. 527, at 544-45 (Bankr. D. Nev. 2011) (finding that the "claims made" medical professional liability policy was not part of the bankruptcy estate):

> The overriding question when determining whether insurance proceeds are property of the estate is **whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim**. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
>
> Examples of insurance policies whose proceeds are property of the estate include **casualty, collision, life, and fire insurance policies** in which the debtor is a beneficiary. Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors. **But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.**

451 B.R. at 544–45 (emphasis added) (quoting *Matter of Edgeworth*, 993 F.2d 51, 55–56 (5th Cir. 1993). The *Edgeworth* Court concluded the medical liability insurance policy proceeds were not part of the physician debtor's bankruptcy estate and allowed the family of the deceased to proceed with a malpractice suit in State Court. *See Edgeworth*, at 56 (stating, "Dr. Edgeworth's liability policy was part of the Chapter 7 estate, the proceeds of that policy were not. Dr. Edgeworth has asserted no claim at all to the proceeds of his medical malpractice liability policy, and they could not be made available for distribution to the creditors other than victims of medical malpractice and their relatives . . . Consequently, in this case the insurance proceeds were not part of the estate as a matter of law, and section 524 does not bar appellants from pursuing their state court suit against Dr. Edgeworth so they can recover against policy proceeds.").

The Court also looked to *Landry* which found the liability insurance proceeds in an environmental tort action were not property of the bankruptcy estate and analyzed the following issues:

> (1) whether the debtor could ask the insurance company to pay him, (2) whether the debtor could determine on its own how the proceeds of the policy should be distributed, and (3) whether any creditor of the insured could seize the proceeds in satisfaction of a claim not falling within the terms of the insurance contract.

- 6 -

4914-1864-2746, v. 1

*Id*. at 545 (citing *Landry v. Exxon Pipeline Co.*, 260 B.R. 769 (Bankr. M.D. La. 2001)). The *Landry* court found, "[i]n the liability insurance context the debtor has no cognizable claim to the proceeds paid by an insurer on account of a covered claim. The proceeds are paid to the victim of the insured's wrongful act. The insured debtor cannot ask the insurance company to pay him, or determine on its own how the proceeds of the policy should be distributed, nor can any creditor of the insured seize the proceeds in satisfaction of a claim not falling within the terms of the insurance contract." *Landry* at 786.

Here, the same is true; the policies at issue here are payable for the benefit of those harmed by NuMale, thus any proceeds paid by Beazley should be excluded from the bankruptcy estate and go towards satisfying the ultimate New Mexico judgment in favor of Sanchez and against NuMale, which should be adjudicated by the New Mexico State Court as expeditiously as possible.

Beazley's assertion that Mr. Sanchez's desire to conclude post-trial proceedings of Sanchez I in New Mexico is somehow nefarious in nature utterly lacks factual basis. To the contrary, Mr. Sanchez clearly acknowledged in each of his Proofs of Claims ("POC") that his statutory right to pre-judgment interest is calculated only up to, and ends as of, each of the Debtors' Petition Dates. *See* POC No. 7, p. 4, in the Numale Corp. case; *see also* POC No. 3, p. 4 in the Numale NM SC case (calculation of damages charts).

In addressing the Curtis factors, Beazley acknowledges in its Supplemental Objection that the Bankruptcy Court must balance the potential harm to creditors and Debtors and their respective Bankruptcy Estates, because financial hardship to the parties must be balanced. *See* Opposition, ¶ 10 (ECF No. 179) (citing *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)). Here, while Debtors' action in filing for bankruptcy has by definition afforded them certain protections, for many months since the November 25, 2024, jury verdict was entered in Sanchez I, Mr. Sanchez has been utterly unprotected, first due to his stipulation to work with Beazley to negotiate a post-trial resolution, and then due to the automatic stay imposed when the Debtors filed for bankruptcy protection. Mr. Sanchez's financial interests in protecting his verdict in Sanchez I has been jeopardized by the utter inability to even obtain a mere comfort order from the Bankruptcy Court that would give him a right to proceed, at a minimum, in seeing post-trial matters in Sanchez I

- 7 -

determined against nondebtor Defendants over whom the Bankruptcy Court lacks jurisdiction or control over, if not against all Defendants in order to prevent piecemeal litigation and risk of inconsistent results by the New Mexico Court as to adjudication of the final, appealable judgment, not to mention Mr. Sanchez's ability to enforce said judgment against the non-debtors. This is in fact the "motive" of Sanchez's Motion to terminate the stay, and it is hardly nefarious as Beazley's Opposition suggests without factual basis to this Court.

In Paragraphs 11 and 12, Beazley argues seemingly on behalf of the Trustee, that Trustee has need for more time to retain litigation counsel to defend Debtor Defendants in the New Mexico litigation. *See* Opposition, ¶¶ 11 - 12 (ECF No. 179). But Beazley lacks factual basis for citing this as a reason to delay hearing and decision on Sanchez's Motion to Lift Stay, and seems to counter even the position of Trustee's attorney, for the following reasons:

(i) Beazley acknowledges that it has continuously provided and intends to continue providing a legal defense to the New Mexico Defendants in Sanchez I through conclusion of the case; *see* Opposition, ¶¶ 3, 6, 12 (ECF No. 179); and

(ii) there is no dispute that Beazley has in fact provided continuous New Mexico counsel to defend ALL Defendants in Sanchez I with regard to ongoing filings that identify no substantive conflicts between them as to their positions on any posttrial matter.

In response to Trustee's attorney's inquiry, Creditor Sanchez's attorneys provided him with all pending motions filed with two separate law firms of record on Defendants' behalf in Sanchez I, and also provided the two Beazley policies which promise to provide a defense to all Defendants insured thereby in Sanchez I. *See* Emails dated April 16-17, 2025, from Bencoe to Garman (attaching New Mexico filings, Beazley policies and answering Trustee's specific questions regarding New Mexico defense counsel and existence of potential conflict issues), **Exhibit "1"** to Supplemental Bencoe Decl. In these emails, counsel for Creditor Sanchez shared their perspective that as there was already a law firm acting on Defendants' behalf in defending against Sanchez's post-trial motions (and filing their own), and there was no matter in which the positions of the various codefendants had differed at all, no further delay of the Trial Court's May 22 hearing or other pending motions should be required if the Trustee could simply retain that firm to continue

representing Numale Corp. and Numale NM SC's interests as it was doing prior to their Notice of Bankruptcy. *See* Emails from Attorney Bencoe to Attorney Garman, attaching insurance policy, **Exhibit "1"** to Supplemental Bencoe Decl. Notably, the motions set for hearing in New Mexico on May 22, 2025, do not directly address entry of a final, appealable judgment – they are only the first post-trial motions leading ultimately to that outcome from the jury verdict. Thus, Beazley already has the few weeks' time it states it may need to retain such counsel.

There is likewise no factual basis for Beazley's allegation in paragraph 12 of its Supplemental Objection that Mr. Sanchez acted nefariously by "coopting" Debtors, no more than he is "prematurely forcing Trustee into litigation" without time to prepare as stated in Paragraph 7. *See* Opposition, ¶¶ 7, 12 (ECF No. 179). Again, this is a needlessly contentious narrative painted by Beazley without factual support; the simple truth being that after entry of any jury verdict, all parties to the matter customarily proceed with post-trial matters to achieve entry of a final appealable Judgment, and in this Bankruptcy Reorganization matter specifically, that information - including the value of such Judgment as to Trustee/Debtors - is equally necessary for all parties with interests including Creditor Sanchez, the Trustee for Debtors' Estate, Nondebtors, and Beazley to know. Moreover, on April 17, 2025, the Trustee, through his counsel, agreed that he "acknowledges the jury verdict should be reduced to a final, appealable judgment by the New Mexico state court" and also that "no evidentiary hearing is needed for the Court to decide the Motion to Terminate Stay and the Trustee will ask that the bankruptcy court accept oral argument at the continued May hearing on the Motion to Lift Stay." *See* Email dated April 17, 2025, from Sanchez's counsel to which Trustee's Counsel responded "Thank you Ogonna. I concur with the below." **Exhibit "1"** to Brown Decl.; *see also* Stipulation (ECF No. 188).

Thus, the following applicable Curtis factors all weigh in favor of stay termination: the first Curtis factor (whether the relief will result in a partial or complete resolution of the issues), the second Curtis factor (the lack of any interference with the bankruptcy case), the fourth Curtis factor (Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties), the seventh Curtis factor (the interests of judicial economy and the expeditious and economical determination of litigation for the parties), the tenth

Curtis factor (Whether the foreign proceedings have progressed to the point where the parties are prepared for trial) and the twelfth Curtis factor (the impact of the stay and the "balance of hurt").

Stay termination is therefore warranted to allow the entry of a final judgment against the Debtors to judgment only, not enforcement, and for the entry of a comfort order for the entry of final judgment against the non-debtors, including to enforcement.

### 2. Waiver of 14-Day Stay Pursuant to FRBP 4001(a)(3) is Appropriate.

In addition to the reasons set forth in the Motion for the waiver of the 14-day stay under Rule 4001(a)(3), waiver of the 14-day stay is imperative to allow the New Mexico Court to proceed with the post-trial hearings set for May 22, 2025. As set forth in the Brown Declaration, the Trustee, through his counsel, requested additional time to brief the Trustee's response to the Motion to Terminate Stay, as he still had not yet met with New Mexico counsel who prepared Debtors' post-trial briefs and needed to determine if it was necessary to engage separate counsel for the Debtors. In exchange for the briefing extension, the Trustee agreed to a continued hearing on the stay termination hearing to a date prior to the May 22nd New Mexico hearing. Given the close proximity of the continued hearing date of May 20, 2025, and the quick turnaround of the New Mexico hearing date on May 22, 2025, just two days later, the waiver of the 14-day stay is appropriate here.

Delay in enforcement of the stay termination order will unnecessarily create a wider procedural gap between the Debtors and the non-debtors in the New Mexico Case, and it is in everyone's best interest to avoid piecemeal litigation and for the expeditious entry of a final appealable Judgment, which will be included in Debtors' bankruptcy case and ultimately the Plan of Reorganization.

### III. CONCLUSION

Based upon the foregoing, Creditor Sanchez hereby respectfully asks the Court to overrule Beazley's Supplemental Objection, to proceed with oral argument on the merits on the Motion to Terminate Stay on May 20, 2025, at 9:30 a.m., and to grant Mr. Sanchez' request for an order terminating the stay to judgment only as to Debtors (not enforcement) and for a comfort order to allow the New Mexico State Court to proceed to judgment and enforcement as to the Nondebtors.

4914-1864-2746, v. 1

DATED this 23rd day of April, 2025.

        WOMBLE BOND DICKINSON (US) LLP

        By: */s/ Ogonna M. Brown*
            Ogonna M. Brown, Bar No. 7589
            Ogonna.Brown@wbd-us.com
            3993 Howard Hughes Parkway, Suite 600
            Las Vegas, NV 89169
            Tel.: 702.949.8200 / Fax: 702.949.8398

        And

        Lori M. Bencoe (*Admitted pro hac vice*)
        NM Bar No. 7525
        BENCOE & LACOUR LAW PC
        9201 Montgomery Blvd. NE # 404
        Albuquerque NM 87111
        Tel.: (505) 247-8800 / Fax: (505)247-8801
        lori@bencoelaw.com
        *Attorneys for Creditor Michael E. Sanchez*

4914-1864-2746, v. 1

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Womble Bond Dickinson (US) LLP, and that on the 23rd day of April, 2025, I caused to be served a true and correct copy of the **REPLY IN SUPPORT OF MOTION FOR ORDER TERMINATING AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1) AS TO NEW MEXICO STATE COURT POST-TRIAL PROCEEDINGS, TO JUDGMENT ONLY, NOT ENFORCEMENT, AS TO NUMALE CORPORATION AND NUMALE NEW MEXICO SC AND COMFORT ORDER FOR STAY TERMINATION AS TO NON-DEBTORS AND WAIVER OF THE 14-DAY STAY UNDER FRBP 4001(a)(3)** in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☒ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, on April 24, 2025, at Las Vegas, Nevada, to the parties listed on the attached Court's Creditors Matrix, with addition, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

*/s/ Renee L. Creswell*
An employee of Womble Bond Dickinson (US) LLP

4914-1864-2746, v. 1

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0978-2<br>Case 25-10341-nmc<br>District of Nevada<br>Las Vegas<br>Tue Mar 18 12:35:26 PDT 2025 | CHAPTER 11 - LV<br>300 LAS VEGAS BLVD., SO. #4300<br>LAS VEGAS, NV 89101-5803 | Ford Motor Credit Company, LLC, c/o AIS Port<br>4515 N Santa Fe Ave. Dept. APS<br>Oklahoma City, OK 73118-7901 |
| NEWTEK SMALL BUSINESS FINANCE, LLC<br>STEPHENS LAW OFFICES<br>C/O DAVID A. STEPHENS<br>P.O. BOX 33130<br>LAS VEGAS, NV 89133-3130 | NUMALE CORPORATION<br>6590 S RAINBOW BLVD<br>LAS VEGAS, NV 89118-3327 | Prospect Rainbow, LLC<br>c/o JOHNSON & GUBLER, P.C.<br>Attn: Russell G. Gubler, Esq.<br>8831 W. Sahara Ave<br>Las Vegas, NV 89117-5865 |
| United States Bankruptcy Court<br>300 Las Vegas Blvd., South<br>Las Vegas, NV 89101-5833 | ARIZONA DEPARTMENT OF REVENUE<br>Office of the Arizona Attorney General -<br>c/o Tax, Bankruptcy and Collection Sct<br>2005 N Central Ave, Suite 100<br>Phoenix, AZ 85004-1546 | Clark Co Assessor c/o Bankruptcy Clerk<br>500 S Grand Central Pkwy<br>Po Box 551401<br>Las Vegas, NV 89155-1401 |
| Clark Co Treasurer c/o Bankruptcy Clerk<br>500 S Grand Central Pksy<br>Po Box 1220<br>Las Vegas, NV 89125-1220 | Clark Co Treasurer c/o Bankruptcy Clerk<br>500 S Grand Central Pkwy<br>Po Box 1220<br>Las Vegas, NV 89125-1220 | DLP Funding LLC<br>c/o/ Law Office of Jacob Z Weinstein<br>420 Central Ave Ste 301<br>Cedarhurst, NY 11516-1000 |
| ELAVON<br>c/o TIMOTHY F. FROST, ESQ.<br>7300 CHAPMAN HIGHWAY<br>Knoxville, TN 37920-6612 | FOX FUNDING GROUP LLC<br>c/o JOE LIEBERMAN, ESQ.<br>LIEBERMAN AND KLESTZICK<br>POB 356<br>Cedarhurst, NY 11516-0356 | Ford Motor Credit Company, LLC c/o AIS Portf<br>4515 N. Santa Fe Ave. Dept. APS<br>Oklahoma City, OK 73118-7901 |
| Franchise Tax Board<br>Bankruptcy Section MS A340<br>PO BOX 2952<br>Sacramento, CA 95812-2952 | INNOVATIVE REAL ESTATE STRATEGIES<br>2975 S RAINBOW BLVD STE J<br>Las Vegas, NV 89146-6598 | Internal Revenue Service<br>ATTN: BANKRUPTCY DEPT<br>PO Box 7346<br>PHILADELPHIA, PA 19101-7346 |
| KALAMATA CAPITAL GROUP, LLC<br>c/o STEVEN BERKOVITCH<br>BERKOVITCH & BOUSKILA, PLLC<br>1545 US 202 SUITE 101<br>Pomona, NY 10970-2951 | KRAVIT HOVEL & KRAWCZYK<br>825 N JEFFERSON ST<br>Milwaukee, WI 53202-3737 | MICHAEL E SANCHEZ<br>C/O NICHOLAS ROWLEY, ESQ<br>421 W Water St<br>Decorah, IA 52101-1731 |
| NEWTEK LENDING<br>1981 MARCUS AVENUE STE 130<br>Lake Success, NY 11042-1046 | NV Dept of Taxation<br>Bankruptcy Section<br>500 E Washington Ave Ste 13000<br>Las Vegas, NV 89101-1000 | Nevada Dept of Empl Security<br>500 E 3rd St<br>Carson City, NV 89713-0001 |
| Social Security Administration<br>Attn: Bankr Desk<br>Po Box 33021<br>Baltimore, MD 21290-3021 | State of NV DMV<br>Attn: Legal Division<br>555 Wright Way<br>Carson City, NV 89711-0001 | THE LCF GROUP<br>LEGAL DEPARTMENT<br>3000 MARCUS AVE SUITE 2W15<br>New Hyde Park, NY 11042-1005 |
| U.S. TRUSTEE - LV - 11<br>300 LAS VEGAS BOULEVARD S.<br>SUITE 4300<br>LAS VEGAS, NV 89101-5803 | WFNZ-FM<br>c/o Szabo Associates, Inc<br>3355 Lenox Road NE, Suite 945<br>Atlanta, GA 30326-1357 | Wyoming Office Park, LLC<br>P.O. Box 20718<br>P.O. Box 20718<br>Albuquerque, NM 87154-0718 |

| | | |
|---|---|---|
| DAVID A RIGGI<br>RIGGI LAW FIRM<br>7900 W SAHARA AVE<br>SUITE 100<br>LAS VEGAS, NV 89117-7921 | Michael E. Sanchez<br>WOMBLE BOND DICKINSON (US) LLP<br>C/O OGONNA M. BROWN, ESQ.<br>3993 HOWARD HUGHES PKWY<br>SUITE 600<br>LAS VEGAS, NV 89169-5996 | Ryan J. Works<br>McDonald Carano LLP<br>2300 W Sahara Avenue, Suite 1200<br>Las Vegas, NV 89102 |

**The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.**

(d)Prospect Rainbow, LLC
c/o JOHNSON & GUBLER, P.C.
Attn: Russell G. Gubler, Esq.
8831 W. Sahara Ave
Las Vegas, NV 89117-5865

End of Label Matrix
Mailable recipients    31
Bypassed recipients     1
Total                  32