Matthew L. Johnson (6004)
Russell G. Gubler (10889)
JOHNSON & GUBLER, P.C.
8831 West Sahara Avenue
Las Vegas, NV  89117
Telephone (702) 471-0065
Facsimile (702) 471-0075
rgubler@mjohnsonlaw.com
*Attorneys for Prospect Rainbow, LLC*

E-Filed: May 13, 2025

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>FELICIANO NUMALE NEVADA PLLC,<br><br>NUMEDICAL SC,<br><br>NUMALE COLORADO SC,<br><br>NUMALE FLORIDA TB PLLC,<br><br>NUMALE NEBRASKA LLC,<br><br>NUMALE NEW MEXICO SC,<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>**Time: 9:30 a.m.**<br>**Date: May 20, 2025** |

**LIMITED OPPOSITION TO MOTION TO EXTEND DEADLINE PURSUANT TO 11 U.S.C. § 365(d)(4) TO ASSUME OR REJECT UNEXPIRED LEASES**

**NOW COMES** PROSPECT RAINBOW, LLC through its attorneys of the law firm of JOHNSON & GUBLER, P.C., and respectfully opposes Debtors' Motion to Extend Deadline

1

Pursuant to 11 U.S.C. §365(d)(4) to Assume or Reject Unexpired Leases [ECF 241] (the "Motion"), requesting that the Court limit the time to assume or reject the lease on the subject premises, and requests that the Court, if it grants the Motion, limit the extension for a period of no more than 30 days, for the following reasons:

1. Debtor filed a Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code on January 22, 2025. ECF 1.

2. Creditor, PROSPECT RAINBOW, LLC ("PR") is the holder of a certain lease agreement ("Lease") regarding the property at which Debtor operates its business, located at 6590 S. Rainbow Blvd, Las Vegas, Nevada, 89118, in Las Vegas, Nevada ("Premises").  The Debtor entered into the Lease agreement on April 5, 2019, and amended on September 3, 2020, agreeing to pay PR base rent and property operating costs in the amount of $21,770.77 per month, plus $550.00 per month in Parking rent, and $700.00 per month in Signage Rent, for total monthly rent of $23,020.77. *See* copies of the Lease agreement, amendment, and personal guarantee at issue in this matter, attached as "Exhibit A" to the Declaration in Support of Motion for Relief from Automatic Stay or For Adequate Protection and to Compel Assumption or Rejection of the Lease [ECF 69-1].

3. Debtor's principal, Brad Palubicki personally guaranteed payment of the Lease. *Id.*

4. Under paragraph 21.9.1 of the Lease agreement, PR is entitled, in addition to payment of the foregoing rents, for interest and administrative charges in the amount of 5% for each delayed payment. *Id.*

5. In addition, PR is entitled to attorney's fees under paragraph 36 of the lease agreement. *Id.*

6. On March 18, 2025, PR filed a Motion for Relief from Automatic Stay or For Adequate Protection and to Compel Assumption or Rejection of Lease. *See* ECF 67.

7. No payments have been made by the Debtor under the Lease for the Months of January, February, March, and April, 2025, totaling approximately $97,312.24, not including fees and costs. *See* ECF 69; Motion, p. 7, line 4.

8. The payments from Debtor are PR's only income. *Id.*

2

9. On April 2, 2025, the Court entered an Order Granting Motion to Appoint Trustee, which will have already been 49 days by the time of the hearing (05/20/25) on the instant Motion. [ECF 132].

10. On May 8, 2025, this Court entered an Order Conditionally Granting Prospect Rainbow, LLC's Motion for Relief from Automatic Stay or for Adequate Protection and to Compel Assumption or Rejection of Lease ("Order"). *See* ECF 247.

11. Among other things, the Order states, "On or before May 1, 2025, the estate shall pay Prospect Rainbow the sum of $23,020.77, for May 2025 rent for the premises subject of the Motion ("May Rent")."

12. Further, the Order states, "For every calendar month following May 2025, the estate shall pay Prospect Rainbow, on or before the 1st of that month, the sum due for that particular month under the lease, which is currently $23,020.77 per month, as rent for that respective month for the premises subject of the Motion ("Monthly Rent Payments")."

13. Since filing the Petition, Debtor has only paid PR for the May Rent, which it did through the Trustee. Motion, p. 7, line 4.

14. In a telephone call on February 11, 2025, with Debtor's prior counsel, Debtor indicated its intention to retain PR's property and to assume the lease. However, Debtor's prior counsel requested that PR agree to lease only half of the building on the Premises, which is not viable, and would place a significant financial burden on PR.

15. The Court has now appointed a Trustee, Michael Carmel, in this case. The Trustee's counsel has had sufficient time to review the Premises and has also discussed the Lease with PR's counsel, again offering to assume only part of the Lease on the Premises. This is still not viable and continues to place a significant financial burden on PR.  Debtor has already indicated that it cannot afford to pay the full amount on the Lease of the Premises. Further, despite repeated requests, Debtor has failed, either through it prior counsel or through the Trustee, to promptly cure or provide adequate assurance that it will promptly cure the default in the lease, as required by 11 U.S.C. §365.

16. Under 11 U.S.C. §365(d)(4)(A)(i), an unexpired lease of nonresidential real property under which the debtor is the lessee "shall be deemed rejected, and the trustee **shall immediately** surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease *by the earlier of* – (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan." *Id.* (emphasis supplied).

17. Section 365(d)(4)(B)(i) does allow the Court, at its discretion, to extend this period for up to 90 days "for cause."

18. "Cause" is not defined under section 365(d)(4)(B)(i). Thus, courts must determine "cause" based on the specific circumstances of each case. *In re PNW Healthcare Holdings, LLC*, 617 B.R. 354 (Bankr. W.D. Wash. 2020); *Alegre v. Michael H. Clement Corp. (In re Michael H. Clement Corp.), 447 B.R. 394* (Bankr. N.D. Cal. 2011).

19. As a result, courts in the Ninth Circuit have identified several factors to evaluate to determine whether "cause" exists to extend the lease acceptance period, including the following:

a. Whether the lease is the primary asset of the debtor.

b. Whether the lessor has a reversionary interest in the building built by the debtor on the landlord's land.

c. Whether the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan.

d. Whether the lessor continues to receive the rent required in the lease.

e. Whether the lessor will be damaged beyond the compensation available under the Bankruptcy Code due to the debtor's continued occupation.

f. Whether the case is exceptionally complex and involves a large number of leases.

g. Whether the need exists for a judicial determination of whether the lease is a disguised security interest.

h. Whether the debtor has failed or is unable to formulate a plan when it has had more than enough time to do so.

i. Any other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease.

*In re Ernst Home Ctr.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997) (*citing Theatre Holding Corp. v. Mauro*, 681 F.2d 102 (2d Cir. 1982); *In re Victoria Station, Inc.,* 88 B.R. 231, 236 (9th Cir. BAP 1988), *aff'd*, 875 F.2d 1380 (9th Cir. 1989); *In re Wedtech Corporation,* 72 B.R. 464, 471-473 (Bankr. S.D.N.Y. 1987)).

20. Here, the lease of the Premises is NOT the primary asset of the Debtor, but is, in fact, a liability and a burden to the Debtor. Both Debtor and the Chapter 11 Trustee have already reviewed the Lease on the Premises and both have indicated through their counsel that Debtor cannot afford to pay the full amount of the lease on the Premises. Both have requested to lease only half the premises. Therefore, the Lease on the Premises is a liability and not an asset.

21. The Debtor has no reversionary interest in the building, and it did not build the building on the Landlord's premises.

22. At the time of the filing of this Limited Opposition, the Trustee has already been appointed for approximately 6 weeks. By the time that the Motion is heard, the Trustee will have been appointed for 49 days. The case will have been pending for 118 days as of the date of the hearing on this motion. Thus, the Debtor and the Trustee have both had sufficient time to intelligently appraise the Debtor's financial situation and potential value of its assets in terms of the formulation of a plan of reorganization, with respect to the Premises.

23. The Landlord has received only one payment since the commencement of the case – the May rent.  It has not received the rent for January, February, March, or April of 2025, totaling $97,312.24, not including fees and costs.

24. PR will be damaged beyond the compensation available under the Bankruptcy Code due to the Debtor's continued occupation of the Premises, because this is PR's only form of income. It has not been paid for the first four months of the Debtor's case, to the tune of nearly $100,000.00, which has caused the Landlord significant damages, including causing an unreasonable burden on PR's ability to pay the property taxes and insurance required to protect the Premises. Further, the

Debtor and the Trustee have already reviewed the Lease on the Premises and have indicated through both the Debtor's former counsel and through the Trustee's counsel that Debtor can only afford to pay half of the lease on the Premises. This is not feasible for the Landlord, as it would leave half of the premises in an unrentable condition or result in the Landlord being required to expend a significant amount of money to place the other half of the Premises in a rentable condition, and this is not allowed under the Bankruptcy Code. This causes unreasonable risks to PR to meet its own financial obligations.

25.	Despite Debtor's arguments, this matter is not exceptionally complex, nor does it involve a large number of leases. Debtor Numale Corporation has one single lease with PR for the Premises. Regardless, Debtor has already assessed the Lease on the Premises both through the Debtor when it was in possession, and through the Trustee once the Trustee was appointed, and both have made a determination that the Debtor can only afford to pay half of the lease.  The Landlord cannot do this without great cost to PR.

26.	There is no need for a judicial determination of whether the lease is a disguised security interest. It clearly is not.  This is not a situation where, at the end of the lease, the property is turned over to the Debtor and Debtor owes nothing further to retain the property.  To the contrary, at the end of the lease, the lease expressly provides that the Debtor shall surrender the Premises to PR, and that "If the Premises is not surrendered at the end of the Term, Tenant shall indemnify Landlord against all loss or liability resulting from delay by Tenant is so surrendering the Premises including, without limitation, any claims made by any succeeding tenant due to such delay." [ECF 69-1 at pp. 16-17, §6.2].

27.	Neither the Debtor nor the Trustee have proposed a Plan.  Despite request to do so, neither has promptly cured the past due lease payment nor provided adequate assurance that they would do so.  The only factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease that have been articulated by the Trustee is that the Trustee has only been involved in the case for approximately six weeks. However, the Trustee has had sufficient time to determine that this location would not be profitable if the Debtor were required to pay the full

amount required under the lease. Both the Debtor and the Trustee have come to this same conclusion, and unfortunately, PR cannot accept this proposal. This factor, too, weighs in favor of PR and against the Debtor.

28. Accordingly, for the foregoing reasons, and because the case will have been going for 118 days and the Trustee will have already been appointed for 49 days by the time of the hearing on the instant Motion, which is ample time to determine whether the Debtor should accept the lease and if it desires to do so, to promptly cure or provide adequate assurance that it will promptly cure the past due payments totaling over $97,000.00, PR respectfully requests that this Court limit any extension provided for a period of 30 days from the date of the hearing to accept or reject the lease on the Premises and if it determines to accept the lease, that the Debtor promptly cure or provide adequate assurance that it will promptly cure the lease as required under Section 365 of the Bankruptcy Code.

Respectfully submitted this 13th day of May, 2025.

JOHNSON & GUBLER, P.C.

/s/ Matthew L. Johnson                    .
Matthew L. Johnson (6004)
Russell G. Gubler (10889)
831 West Sahara Avenue
Las Vegas, NV  89117
Telephone (702) 471-0065
Facsimile (702) 471-0075
mjohnson@mjohnsonlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Johnson & Gubler, P.C. and that on May 13, 2025, I caused to be served a true and correct copy of the LIMITED OPPOSITION TO MOTION TO EXTEND DEADLINE PURSUANT TO 11 U.S.C. § 365(d)(4) TO ASSUME OR REJECT UNEXPIRED LEASES in the following manner:

[X]   a.   **Electronic Service**

Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

[ ]   b.   **United States Mail**

By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

[ ]   c.   **Facsimile Transmission**

By facsimile to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written. No error was reported by the facsimile machine that I used.

[ ]   d.   **Personal Service**

[ ]   For a party represented by an attorney, delivery was made by handing the documents to the attorney or by leaving the documents at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents in a conspicuous place in the office, on the date written above.

[ ]   For a party, delivery was made by handing the documents to the party or by leaving the documents at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there, on the date written above.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: May 13, 2025.

/s/ Kathra Davis            .
An Employee of Johnson & Gubler, P.C.

8