GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,
Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>☐ AFFECTS THIS DEBTOR,<br><br>☐ AFFECTS FELICIANO NUMALE NEVADA PLLC,<br><br>☐ NUMEDICAL SC,<br><br>☐ NUMALE COLORADO SC,<br><br>☐ NUMALE FLORIDA TB PLLC,<br><br>☐ NUMALE NEBRASKA LLC,<br><br>☐ NUMALE NEW MEXICO SC,<br><br>☒ NUMALE ALL DEBTORS,<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: July 15, 2025<br>Hearing Time: 9:30 a.m. |

**MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS**

Michael Carmel, as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale

Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale

1

Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby submits his *Motion to Enforce the Automatic Stay and for Sanctions* (the "Motion").[1] The Motion is made and based upon the memorandum of points and authorities contained herein; the declarations of Trustee Michael Carmel ("Carmel Decl."), Brad Palubicki ("Palubicki Decl."), and Mary Langsner, Ph.D. ("Langsner Decl.") filed concurrently herewith; the papers and pleadings on file herein, judicial notice of which is hereby respectfully requested; and the argument of counsel entertained by the Court at the time of the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### INTRODUCTION

Months after these Chapter 11 Cases commenced, Ace Recovery Group ("Ace Recovery"), as collection agent of Top Tier Capital ("Top Tier"), sent a letter to one of the Debtors' financing partners asserting Top Tier was owed $329,928.60 and demanding that any funds owed by the financing partner to, or collected by the financing partner on behalf of, the "Merchant," be turned over to Ace Recovery ("Demand Letter"). The Demand Letter identified the "Merchant" as Debtor Feliciano NuMale Nevada PLLC, non-debtor NuMale Chicago LLC, Debtor NuMale New Mexico S.C., Debtor NuMale Nebraska LLC, and nondebtor Carlos Feliciano. Unequivocally, the Demand Letter is a violation of the automatic stay. Upon learning of the Demand Letter on or about May 2, 2025, the Trustee immediately reached out to Ace Recovery Group seeking its rescission. Despite multiple follow ups, Ace Recovery Group has not been responsive to the Trustee's communications and has not rescinded the Demand Letter. Accordingly, the Trustee files this motion seeking to enforce the automatic stay and requesting sanctions against Ace Recovery and Top Tier violating 11 U.S.C. § 362(a).

. . .

. . .

. . .

---

[1] All capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Application.

2

## II.
## PERTINENT FACTS

1. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2. In Schedules filed February 26, 2025, Debtor Feliciano NuMale Nevada PLLC scheduled "Proventure dba Top Tier" at 500 W Putnam Ave Suite 1c, Greenwich, CT 06830-2947 as a Schedule F creditor. *See* Feliciano case ECF No. 26 p. 13 of 19 at Item 3.6.[2]

3. In Schedules filed February 26, 2025, Debtor NuMale Nebraska LLC scheduled "Proventure dba Top Tier" at 500 W Putnam Ave Suite 1c, Greenwich, CT 06830-2947 as a Schedule F creditor. *See* Nebraska case ECF No. 28 p. 13 of 20 at Item 3.5.

4. In Schedules filed February 26, 2025, Debtor NuMale New Mexico SC scheduled "Proventure dba Top Tier" at 500 W Putnam Ave Suite 1c, Greenwich, CT 06830-2947 as a Schedule F creditor. *See* New Mexico case ECF No. 26 p. 13 of 20 at Item 3.5.

5. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 130.

6. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

7. On April 2, 2025, Tracy Hope Davis, the United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

8. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

---

[2] Later, in a proof of claim filed against Feliciano NuMale Nevada PLLC on May 28, 2025, "Proventure dba Top Tier" **listed this same address in Box 3** "Where should notices to the creditor be sent?" *See* Feliciano case Claim No. 1 at p. 1 of 3.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

9. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

10. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

11. On or about April 4, 2025, Ace Recovery "the authorized collection agent for Top Tier Capital . . ." issued the Demand Letter. *See* **Exhibit "1"** to Palubicki Decl.

12. The Demand Letter is signed by Daniel Gold "as Authorized Officer, Ace Recovery Group, LLC." *Id.*

13. The Demand Letter asserts a security interest in, *inter alia*, the receivables of Debtor Feliciano NuMale Nevada PLLC, Debtor NuMale New Mexico S.C., and Debtor NuMale Nebraska LLC (the "<u>Account Debtors</u>"). *See id.*

14. The Demand Letter, addressed to the Debtors' financing partner SplitIt USA, Inc., contends that the Debtors' financing partner can only satisfy what it owes the Affected Debtors "by paying Top Tier Capital." *Id.* Additionally, the Demand Letter directed the financing partner "to make payment of all sums in your possession currently due and owing to [the Account Debtors and a non-debtor] **<u>to the undersigned, as agent for Top Tier Capital, until the sum of $329,928.90 is remitted</u>**." *See id.* (emphasis added).

15. On or about April 30, 2025, the Debtors ultimately learned via their patient financing broker that the Demand Letter had been received by two of the Debtors' financing partners. *See* Palubicki Decl. ¶ 4.

16. On or about May 2, 2025, upon request the Debtors received a copy of the Demand Letter. *See* Palubicki Decl. ¶ 5. This was forwarded to the Trustee. *See* Carmel Decl. ¶ 3.

17. That same day, the Trustee's counsel contacted Ace Recovery Group advising that the Demand Letter violated the automatic stay and demanding it be immediately rescinded. *See* **Exhibit "1"** to Langsner Decl.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

18. Ace Recovery Group did not respond. *See* Langsner Decl. ¶ 4.

19. Next, Trustee's counsel called Ace Recovery Group; Daniel Gold was unavailable, but his partner Jonathan was. Trustee's counsel advised the Demand Letter was a stay violation, confirmed the Chapter 11 Cases' name and number, and was told that Jonathan would forward the information. *See* Langsner Decl. ¶ 5.

20. Trustee's counsel followed up with additional written correspondence after the call. *See* **Exhibit "2"** to Langsner Decl.

21. Ace Recovery Group did not respond to that, either. *See* Langsner Decl. ¶ 7.

22. More than a week later, Trustee's counsel followed up again, advising that a motion would be filed with this Court if Ace Recovery Group did not cease collection efforts and rescind its Demand Letter. *See* **Exhibit "3"** to Langsner Decl.

23. To date, no response to any of the Trustee's correspondences have been received, nor has Ace Recovery rescinded its Demand Letter. *See* Langsner Decl. ¶ 9.

### III.
### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), and (O). Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the court has jurisdiction to render a decision.

The statutory bases for the relief sought herein arise from Sections 362 and 105 of the Bankruptcy Code. Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

### IV.
### LEGAL ARGUMENT

A. **The Automatic Stay Is In Place.**

The filing of the Debtors' petitions on January 22, 2025, created bankruptcy estates

5

protected by Section 362(a)'s automatic stay. *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017) (citation omitted).

Section 362(a) provides in pertinent part that the filing of a petition for relief under the Bankruptcy Code operates to stay "applicable to all entities" of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> * * *
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien[3] against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

11 U.S.C. §§ 362(a)(1), (3), (4), (5), and (6).

The automatic stay is one of the fundamental protections provided by the Bankruptcy Code. *See Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.)*, 142 F.3d 631, 637 (3rd Cir. 1998) (citation omitted). The automatic stay "is designed to provide breathing space to the debtor, prevent harassment of the debtor, assure that all claims against the debtor will be brought in the sole forum of the bankruptcy court, and protect creditors as a class from the possibility that one or more creditors will obtain payment to the detriment of others." *Burton,* 862 F.3d at 746 (citation omitted). It is designed to protect the relative positions of all creditors and ensure all creditors are treated fairly and equally. *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918, 925 (Bankr. N.D. Cal. 1994) (citing *In re Glasply*

---

[3] Notwithstanding reference to this statutory provision, the Trustee disputes that Top Tier holds a valid lien and therefore the Trustee reserves all rights and remedies to challenge same.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Marine Indus., Inc.*, 971 F.2d 391, 394 (9th Cir. 1992)).

To this end, Section 362(a)'s automatic stay "prevents any collection activity against property of the estate[,]" "applies to 'almost any type of formal or informal action against the debtor or property of the estate[,]'" and "imposes an affirmative duty to discontinue post-petition collection actions." *Burton*, 862 F.3d at 746-47 (citations omitted).

**B.      The Demand Letter Violates Sections 362(a)(1), (a)(3), (a)(4), (a)(5), and (a)(6).**

The Demand Letter violates Section 362(a)(1)'s prohibition on commencing or continuing any action against the Account Debtors that could have been commenced pre-petition or to recover a claim against the Account Debtors. The Demand Letter was issued more than two months after the bankruptcy petitions were filed. Furthermore, it is without dispute that the lending transaction(s) allegedly giving rise to Top Tier's claim(s) against the Debtors took place before the Petition Date.

The Demand Letter additionally violates Section 362(a)(3)'s prohibition on any act to obtain possession of property of or from the estate, or to exercise control over property of the estate. This provision is construed broadly to include almost any action taken against the debtor or property of the estate. *See, e.g.*, *In re Morris Senior Living, LLC*, 2013 WL 5753834, *7 (N.D. Ill. 2013) ("Section 362(a)(3) of the Bankruptcy Code provides for a stay of 'any act . . . to exercise control over property of the estate.' 11 U.S.C. § 362(a)(3). The stay applies to 'all entities,' *id.* § 362(a), and to 'almost any type of formal or informal action taken against the debtor or the property of the estate.' COLLIERS ON BANKRUPTCY § 362.03 (16th ed. 2013). Although most subsections of section 362 are concerned with efforts to obtain money from a debtor's estate, section 362(a)(3) 'reaches farther, encompassing every effort to exercise control over property of the estate.'" (citation omitted)). Here, the Demand Letter asserts a security interest in, *inter alia*, the receivables of the Account Debtors, contends that the Debtors' financing partner can only satisfy what it owes the Affected Debtors "by paying Top Tier Capital[,]" and explicitly directs the Debtors' financing partner "to make payment of all sums in your possession currently due and owing to [the Account Debtors and a non-debtor] to the undersigned, as agent for Top Tier Capital,

until the sum of $329,928.90 is remitted." *See* **Ex. 1** to Palubicki Decl.

Further, the Demand Letter violates Section 362(a)(4)'s prohibition on any act to enforce any lien against property of the estate; violates Section 362(a)(5)'s prohibition on creating, perfecting, or enforcing against property of the Account Debtors any lien to the extent that such lien secures a claim that arose before the commencement of the Chapter 11 Cases; and violates Section 362(a)(6)'s prohibition on any act to collect, assess, or recover a claim against the Account Debtors that arose before the commencement of the Chapter 11 Cases. Although the Trustee disputes the validity and perfection of any lien asserted by or on behalf of Top Tier,[4] the Demand Letter attempts to enforce a lien, on Top Tier's behalf, against the Account Debtors' accounts receivable and likewise in an act to collect or recover a claim against the Account Debtors. *See* **Ex. 1** to Palubicki Decl.

Under these circumstances, the automatic stay precludes Top Tier and Ace Recovery from pursuing collection or payment on any claim(s) allegedly owed to Top Tier without first obtaining stay relief, which neither Top Tier nor Ace Recovery has sought. *See generally* Docket in these Chapter 11 Cases. To ensure the protection of the estates' assets and the equitable treatment of all creditors, the Court should enter an order enforcing the automatic stay and determining that the Demand Letter is void. The automatic stay should be enforced to prohibit Ace Recovery and Top Tier from proceeding with their collection efforts with respect to the Debtors, particularly as these collection efforts have reached third party financing companies that do business with ***all*** of the Debtors, not just the Account Debtors. *See* Palubicki Decl. ¶ 6.

C. **Ace Recovery and Top Tier Should Be Sanctioned For Violating the Automatic Stay.**

Ace Recovery's and Top Tier's actions to collect on debt allegedly owed to Top Tier are unequivocally a violation of Sections 362(a)(1), (a)(3), (a)(4), (a)(5), and (a)(6). And, Ace Recovery (Top Tier's "authorized collection agent") has utterly failed to respond whatsoever to the Trustee's repeated requests that the Demand Letter be rescinded. *See, e.g.*, Langsner Decl.

---
[4] The Trustee reserves all rights to challenge same.

8

¶¶ 3-9.  Given that the estates have expended funds in the form of attorneys' fees to correct Ace Recovery's and Top Tier's violation(s) of the automatic stay, Ace Recovery and Top Tier have burdened all of the estates with additional administrative expenses in the form of attorneys' fees and costs to rectify their wrongful actions and seek the rescission of the Demand Letter.  Carmel Decl. ¶ 4.

Section 105(a) begins with, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Ninth Circuit has held that bankruptcy courts possess the inherent authority to sanction "bad faith" or "willful misconduct."  *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003).  If a rule or statute does not adequately compensate a party for "a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes[,]" the bankruptcy court can rely on 11 U.S.C. § 105(a) to impose sanctions.  *See In re DeVille*, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002) (citations omitted), *aff'd*, 361 F.3d 539 (9th Cir. 2004).  "The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics."  *In re Dyer*, 322 F.3d at 1196.  "By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers*[5] recognized exists within Article III courts."  *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 283, 284 (9th Cir. 1996) (citations omitted) (also quoting *Chambers* for the premise that this allows "courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."), *subsequent limitation recognized by In re A&E Family Investment, LLC*, 359 B.R. 249 (Bankr. D. Ariz. 2007).

Therefore, this Court has the authority to issue sanctions against Ace Recovery and Top Tier for violating the automatic stay.  The Trustee therefore requests the Court sanction Ace Recovery and Top Tier, jointly, for the amount of attorney fees and costs incurred by the estates in attempting to rectify the stay violation caused by the Demand Letter and Ace Recovery's and

---

[5] *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1 Top Tier's post-petition collection efforts, as well as any other compensatory sanctions the Court deems appropriate.

## V.
## CONCLUSION

Accordingly, the Trustee respectfully requests that the Court enter an order (i) enforcing the automatic stay, (ii) finding that Ace Recovery and Top Tier have violated the automatic stay, and (iii) granting sanctions in favor of the estate and against Ace Recovery and Top Tier; and for such other and further relief the Court deems just and proper.

Dated this 11th day of June 2025.

GARMAN TURNER GORDON LLP

By: */s/ Mary Langsner*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119

    *Attorneys for Michael Carmel, Chapter 11 Trustee*