GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Plaintiff,
Chapter 11 Trustee Michael Carmel*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION<br><br>Debtors. | Lead Case No. 25-10341-NMC<br><br>Chapter 11<br><br>Jointly Administered with:<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-NMC<br><br>NuMedical SC<br>Case No. 25-10343-NMC<br><br>NuMale Colorado SC<br>Case No. 25-10344-NMC<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-NMC<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-NMC<br><br>NuMale New Mexico SC<br>Case No. 25-10347-NMC |
| MICHAEL W. CARMEL, CHAPTER 11 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>BRAD PALUBICKI and EVA GABRIELA FARMER DE LA TORRE,<br><br>Defendant. | **Adversary Proc. No. 25-01155-nmc** |

**AMENDED COMPLAINT**

1

Michael Carmel, in his capacity as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of debtors NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC ("Plaintiff") hereby files this complaint ("Complaint")[1] against defendant Brad Palubicki ("Palubicki" or "Defendant") and alleges as follows:

## I.
## PARTIES

1. Plaintiff is the duly appointed Chapter 11 trustee over the bankruptcy estates (collectively, the "Estates") of debtors NuMale Corporation ("NuMale Corp."), Feliciano NuMale Nevada PLLC ("Nevada NuMale"), NuMedical SC ("NuMedical"), NuMale Colorado SC ("Colorado NuMale"), NuMale Florida TB PLLC ("Florida NuMale"), NuMale Nebraska LLC ("Nebraska NuMale"), and NuMale New Mexico SC ("NuMale New Mexico") (collectively, the "Debtors").

2. On January 22, 2025 (the "Petition Date"), *NuMale Corporation* (Case No. 25-10341-nmc), *Feliciano NuMale Nevada PLLC* (Case No. 25-10342-nmc), *NuMedical SC* (Case No. 25-10343-nmc), *NuMale Colorado SC* (Case No. 25-10344-nmc), *NuMale Florida TB PLLC* (Case No. 25-10345-nmc), *NuMale Nebraska LLC* (Case No. 25-10346-nmc), and *NuMale New Mexico SC* (Case No. 25-10347-nmc) each filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases in the United States Bankruptcy Court for the District of Nevada (collectively, the "Chapter 11 Cases").

3. Debtor NuMale Corporation is a Nevada corporation with a principal place of business in Las Vegas, Nevada.

4. Debtor Feliciano NuMale Nevada PLLC is a Nevada professional limited liability company with a principal place of business in Las Vegas, Nevada.

5. Debtor NuMedical SC is a Wisconsin service corporation.

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "Civil Rule" shall refer to the Federal Rules of Civil Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada.

2

6. Debtor NuMale Nebraska LLC is a Wisconsin limited liability company.

7. Debtor NuMale New Mexico SC is a Wisconsin service corporation.

8. Debtor NuMale Colorado SC is a Colorado corporation.

9. Debtor NuMale Florida TB PLLC is a Florida professional limited liability company.

10. Debtors Nevada NuMale, NuMedical, Colorado NuMale, Florida NuMale, Nebraska NuMale, and NuMale New Mexico own and/or operate medical clinics and are all direct or indirect subsidiaries of NuMale Corp.

11. Defendant Brad Palubicki ("Palubicki") is a principal of the Debtors; is an owner of NuMale Corp.; is, *inter alia*, the President of NuMale Corp.; served as the designated representative of the Debtors in the Chapter 11 Cases prior to the Trustee's appointment; and has had systematic and continuous contacts with the State of Nevada since at least 2020.

12. For the avoidance of doubt, should there be community property, Defendant's community property is liable for all debts incurred by either spouse during their marriage, and torts committed by one spouse may be imputed to the other. Plaintiff thus seeks, among other relief, judgment determining that all community property is liable for all damages awarded in this Adversary Proceeding. *See Henry v. Rizzolo*, No. 2:08-CV-00635-PMP, 2012 WL 1376967, at *2 (D. Nev. Apr. 19, 2012) ("A" debt incurred during marriage presumptively is a community debt unless the lender intended to rely on the debtor spouse's separate property to satisfy the debt. *Norwest Fin. v. Lawver,* 849 P.2d 324, 326 (Nev. 1993). A creditor owed a community debt thus can collect from the entirety of the community. *United States v. ITT Consumer Fin. Corp.*, 816 F.2d 487, 491 n.12 (9th Cir. 1987) (interpreting NRS 123.050)."); *see also Bartenwerfer v. Buckley*, 143 S.Ct. 665 (2023) (debt that arose from sale proceeds obtained by debtor-husband's fraudulent misrepresentations fell within the meaning of the Section 523(a)(2) and as such, debtor-wife was precluded from discharging her liability for it, regardless of her own culpability); *In re Davies*, 494 B.R. 453, 465 (Bankr. C.D. Cal. 2013); *In re LeSuer*, 53 B.R. 414, 416 (Bankr. D. Ariz. 1985) (holding that it is the Bankruptcy Code's "policy [] that the economic sins of either

3

spouse shall be visited upon the community when a discharge is denied . . . [and] [a] marital community whose actions do not conform to the standard imposed by law should not earn the same discharge received by joint debtors who did not engage in proscribed conduct.").

13. Pursuant to LR 7008.1, Plaintiff consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## II.
## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference set forth in Local Rule 1001(b)(1).

15. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), (H), and (O).

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtors' Chapter 11 Cases are pending before the Bankruptcy Court.

17. This adversary proceeding relates to the Debtors' Chapter 11 Cases pending in the District of Nevada.

18. Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge cannot, absent consent of the parties, enter final orders or judgment consistent with Article III of the United States Constitution.

## III.
## GENERAL ALLEGATIONS

19. Palubicki is a principal and/or officer of the Debtors and has had control over the Debtors at all points in time relevant to the allegations herein.

20. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured or undersecured claims against each of the Debtors (collectively, the "Predicate Creditors") as identified in Debtors' schedules and statements and proofs of claim, including without limitation, Michael Sanchez; Prospect Rainbow, LLC; SBA and/or NewTek Bank, National Association; Top Tier Capital; and The LCF Group.

21. At all relevant time periods, Palubicki participated in the running, operations, oversight, and/or management of the Debtors' business, including the clinics owned and operated by the Debtors.

22. Palubicki committed the acts and omissions forming the bases of the claims asserted herein.

## IV.
## FIRST CLAIM FOR RELIEF
### Declaratory Relief

23. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

24. Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623 (collectively, "Underwriters"), subscribing to Policy Nos. W14CC419601 and W1561E190601, issued policies to the Debtors (collectively, the "Policies").

25. Through the Policies, Underwriters subscribed to a medical professional liability policy and an excess policy with a combined limit of $6 million issued to the Debtors.

26. The policy period for both of the Policies is January 23, 2019, to January 23, 2020.

27. Debtors paid the Policies premiums.

28. The Policies are claims made and reported policies, meaning they provide coverage that is triggered when a claim is made against the insured and reported during the policy period, even if the incident or injury giving rise to the claim occurred prior to the inception of the policy period.

29. The Policies and their proceeds (the "Policy Proceeds") are property of the Estates.

30. Any asserted rights under the Policies, and all claims against Underwriters that could be brought pursuant to, in connection with, as a consequence or result of, or under the Policies including but not limited to a bad faith claim on the Policies, are property of the Estates.

31. Pursuant to 11 U.S.C. § 541(a), all legal and equitable interests of the Debtors in property as of the commencement of the Chapter 11 Cases, including proceeds, product, offspring, rents or profits of such property, is property of the bankruptcy Estates.

32. One or more of the Debtors is an "Insured" under the Policies.

33. Liability insurance policies in which one or more of the Debtors is an "Insured" are property of the Estates pursuant to 11 U.S.C. § 541.

34. Proceeds derived from an insurance policy that is property of the estate are also property of the Estates pursuant to 11 U.S.C. § 541.

35. The Policy and Policy Proceeds are property of the Estates and are protected by the automatic stay provisions of the Bankruptcy Code.

36. Any asserted right under the Policies or in connection with a bad faith claim on the Policies is property of these Estates.

37. Upon filing a petition in bankruptcy, all property of the estate is protected by the automatic stay provisions of 11 U.S.C. § 362(a).

38. The Debtors' bankruptcy Estates hold causes of action against Underwriters for the Policies, the Policy Proceeds, and all claims against Underwriters that could be brought pursuant to, in connection with, as a consequence or result of, or under the Policies (collectively, the "Claims Against Underwriters").

39. Plaintiff is informed and believes and alleges that Palubicki disputes the allegations in this claim for relief.

40. These are ripe controversies that this Court must resolve.

41. Plaintiff seeks declaratory judgment from this Court declaring that (i) the Policies, Policy Proceeds, and Claims Against Underwriters are property of the Estates pursuant to 11 U.S.C. § 541; (ii) as property of the Estates, the Policies, Policy Proceeds, and Claims Against Underwriters are protected by the automatic stay of 11 U.S.C. § 362(a); (iii) Plaintiff is the sole person with standing to pursue those claims for relief arising from the Policies and Policy Proceeds and the Claims Against Underwriters; (iv) Palubicki has no rights to or under the Policies, Policy Proceeds, and Claims Against Underwriters; and (v) Palubicki receive nothing whatsoever on account of the Policies, Policy Proceeds, and Claims Against Underwriters.

. . .

## V.
## SECOND CLAIM FOR RELIEF
**Avoidance of One-Year Transfers Pursuant to 11 U.S.C. § 547(b)**

42. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

43. Palubicki is an insiders of the Debtors.

44. Palubicki received amounts of at least approximately $176,922.90 in transfers from the Debtors within the one (1) year preceding the Petition Date (collectively, the "Direct Transfers").

45. Palubicki is a guarantor on obligations incurred by the Debtors.

46. In the Schedules and Statements filed by the Debtors under penalty of perjury, the Debtors identified "possible transfers of security interests which have benefitted insider guarantors" (collectively, the "Guarantor Transfers").

47. All transfers received by Palubicki within the one year preceding the Petition Date, including but not limited to the Direct Transfers and the Guarantor Transfers, are collectively referred to as the "Preferential Transfers".

48. The Preferential Transfers were to or for the benefit of Palubicki.

49. The Preferential Transfers were for or on account of an antecedent debt owed by the Debtors before the Preferential Transfers were made.

50. The Debtors' schedules and statements, signed under penalty of perjury, reflect that on the Petition Date, Debtors were (and are) insolvent.

51. The Preferential Transfers enabled Palubicki to receive more than he would have received if these Chapter 11 Cases were cases under Chapter 7 of the Bankruptcy Code, the Preferential Transfers had not been made, and Palubicki received payments to the extent provided by the provisions of the Bankruptcy Code.

52. Plaintiff is entitled to avoid the Preferential Transfers under 11 U.S.C. § 547.

. . .

. . .

# VI.
# THIRD CLAIM FOR RELIEF
### Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(B)

53. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

54. Within the two years preceding the Petition Date, Palubicki received transfers from the Debtors, including but not limited to the Preferential Transfers (collectively, the "Two-Year Transfers").

55. The Two-Year Transfers are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

56. With respect to the Two-Year Transfers that were made within two years of the Petition Date, the Two-Year Transfers were made to insiders or affiliates of insiders of the Debtors.

57. The Two-Year Transfers were made for the benefit of Palubicki who received the transfers.

58. The Two-Year Transfers were made while litigation was pending against NuMale Corp. and NuMale New Mexico and were concealed from Debtors' creditors.

59. The Debtors received no value, or less than a reasonably equivalent value, in exchange for the Two-Year Transfers.

60. The Debtors were insolvent on the dates that the Two-Year Transfers were made and/or the Debtors became insolvent as a result of the Two-Year Transfers. This is evident from the SBA loan and MCAs loans (discussed below) that the Debtors took out in 2023 and 2024 to support their operations.

61. At the times the Two-Year Transfers were made, the Debtors were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with the Debtors was an unreasonably small capital.

62. At the times the Two-Year Transfers were made, the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' abilities to pay as such debts matured.

63. The Debtors made the Two-Year Transfers to or for the benefit of Palubicki as an insider, or incurred such obligation to or for the benefit of Palubicki outside of the ordinary course of business.

64. The chronology of events and the timing of the Two-Year Transfers where significant litigation was pending against the Debtors.

65. When the Two-Year Transfers were made, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due. This is established by the numerous loans taken out by the Debtors in the two years preceding the Petition Date.

66. Based on the foregoing, the Two-Year Transfers are avoidable constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

67. The Debtors received no value, or less than a reasonably equivalent value, in exchange for the Two-Year Transfers. In fact, rather than adding value to the Debtors, the reckless and negligent actions performed by Palubicki put the Debtors at great risk of liability, and lowered the value of the Debtors, yet Palubicki was nonetheless paid for it.

68. Plaintiff, on behalf of the Estates, is entitled to avoid each of the Two-Year Transfers.

### VII.
### FOURTH CLAIM FOR RELIEF
**Avoidance of Fraudulent Transfers – 11 U.S.C. § 544 and NRS 112.180(1)(b)**

69. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

70. Within the four years preceding the Petition Date, Palubicki received transfers from the Debtors (collectively, the "Four-Year Transfers").

71. The Four-Year Transfers were made for the benefit of Palubicki who received the transfers.

72. The Four-Year Transfers are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

73. On the Petition Date and today, the Predicate Creditors held allowable unsecured claims under 11 U.S.C. § 502.

74. The Four-Year Transfers constitute transfers of property of the Debtors or obligations incurred by the Debtors that are voidable by that kind of creditor under 11 U.S.C. § 544.

75. The Four-Year Transfers were made to insiders or affiliates of insiders of the Debtors.

76. The Debtors received no value, or less than reasonably equivalent value, in exchange for the Four-Year Transfers.

77. When the Four-Year Transfers were made, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due, rendering Debtors presumptively insolvent pursuant to NRS 112.160.

78. The Four-Year Transfers were made within four years of the Petition Date.

79. Under applicable Nevada law, including NRS 112.180(1)(b), the Four-Year Transfers constitute the transfer of interests of the Debtors in property or an obligation incurred by the Debtors during the relevant statutory period, and the Debtors made the Four-Year Transfers without receiving reasonably equivalent value in exchange for the transfers.

80. Based on the foregoing, the Four-Year Transfers are avoidable pursuant to 11 U.S.C. § 544 and NRS 112.180(1)(b).

81. Plaintiff, on behalf of the Estates, is entitled to avoid the Four-Year Transfers.

## VIII.
## FIFTH CLAIM FOR RELIEF
### Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550

82. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

83. Pursuant to 11 U.S.C. § 550(a)(1), Plaintiff may recover the Preferential Transfers, the Two-Year Transfers, and the Four-Year Transfers (collectively, the "Transfers") from Palubicki as the initial transferee or any entity on whose behalf the Transfers were made.

84. Pursuant to 11 U.S.C. § 550(a)(2), Plaintiff may recover the Transfers from any immediate or mediate transferees of Palubicki plus interest thereon from the date of payment and the costs of this Adversary Proceeding.

85. Palubicki was the initial transferee, immediate transferee, or mediate transferee of the Transfers identified herein or was the person or entity for whose benefit the Transfers were made.

86. To the extent it is determined that Palubicki is an immediate or mediate transferee of the subject Transfers, Palubicki did not take for value and in good faith, nor without knowledge of the voidability of such Transfers.

87. Palubicki is the person for whose benefit the Transfers were made.

88. Based upon the foregoing, Plaintiff is entitled to recover the Transfers or their value from Palubicki pursuant to 11 U.S.C. § 550(a) for the benefit of the Estates.

## IX.
## SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty

89. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

90. Palubicki's control over and special relationship with the Debtors gave rise to fiduciary duties.

91. Palubicki owed fiduciary duties to the Debtors, including without limitation, the duty of care, duty of prudence, duty to act lawfully, duty of loyalty, and duty of obedience.

92. Years of mismanagement, mounting losses, insider dealings by certain principals, lack of oversight of certain employees, business divorce disputes with joint venture partners, and mounting losses, reflect a dereliction of duty by Palubicki.

93. Additionally, upon information and belief, the Debtors routinely and consistently failed to engage in required corporate formalities over time.

94. As the Debtors' financial strife escalated in 2023 (*i.e.*, as then-senior debt, which largely appears to have been secured by receivables, became due), the Debtors took out a $5 million Small Business Association ("SBA") loan to, inter alia, pay off this debt.

95. The Debtors' corporate minutes for that time, to the extent they exist, do not contain a precise narrative of events.

96. By failing to adequately maintain corporate records, Palubicki breached his fiduciary duty of care to the Debtors.

97. Additionally, from the $5 million in proceeds received under the SBA-backed loan, approximately $2,410,964.73 went to "working capital" for NuMale Corp. Of this, approximately $300,000 went to a "Florida Investor – Payback"; NuMale Corp. then lent approximately $36,705 to a "Charlotte" entity and lent approximately $30,575 to a Tampa entity; made a "NuMale Medical Center Loan Repayment" of approximately $245,000 and a "NuMale Albuquerque Loan Repayment" of approximately $95,000; and paid approximately $175,000 to MBI. An approximately $1,312,653.90 then funded the Debtors' losses for calendar year.

98. By entering into a significant SBA loan for the benefit of non-Debtors at a time when the Debtors were unable to pay existing lenders, vendors, or creditors, and/or the Debtors had no means (or projected ability) to repay existing debt in full, Palubicki breached his fiduciary duties to the Debtors.

99. Additionally, Palubicki made a troubling series of decisions that forced the Debtors into litigation over business divorce disputes with prospective or existing partners.

100. Additionally, from approximately 2020 onward, and accelerating in approximately 2023 and 2024, the Debtors and other affiliates entered into either: (i) factoring-type agreements for sale of the Debtors' receivables; or (ii) loan transactions, such as Merchant Cash Advance ("MCA") agreements premised on Debtors' receivables.

101. On information and belief, the Debtors may have "double transacted" the same set of receivables—meaning, using the receivables in connection with a factoring-type agreement and also secured a loan from an MCA-type lender on the same receivables.

102. By entering into loan transactions concerning receivables which had already been provided as collateral to a third party, Palubicki breached his fiduciary duties to the Debtors.

103. Additionally, in addition to the factoring-type and MCA-type transactions described herein, in or about April 2023, NuMale Corp. and a non-Debtor affiliate (NuMale Medical Center) appear to have entered into an agreement with The N2 Company for digital advertising services that ultimately obligated NuMale Corp. and its affiliate for what is alleged by N2 to amount to $920,617.94 in digital advertising costs which were not paid.

104. By entering into a significant digital advertising contract, and a series of sales and/or lending transactions, at times when the Debtors were unable to pay existing lenders, vendors, or creditors, and/or the Debtors had no means (or projected ability) to repay existing debt in full, Palubicki breached his fiduciary duties to the Debtors.

105. Additionally, Palubicki also appears to have failed to exercise proper management and internal controls by permitting senior management to handle cash without immediately depositing such cash into the Debtors' account(s) and by inadequately addressing known breaches and/or failures caused by employees despite such issues being reported to Palubicki.

106. In failing to maintain appropriate internal controls, Palubicki breached his fiduciary duty of care to the Debtors.

107. Any statutory, common law, or equitable presumption that Palubicki somehow acted in good faith has been rebutted, his actions constituted a breach of his fiduciary duties to the Debtors as an officer, manager, and/or control person, and the breaches involved intentional misconduct, fraud, or a knowing violation of the law.

108. The Debtors' estates have been proximately damaged as a direct result of Palubicki's multiple breaches of fiduciary duties.

109. Palubicki's conduct constituting breaches of fiduciary duty were identified as allegations in the litigation that resulted in damages to certain of the Debtors in an amount exceeding $500 million.

110. Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Palubicki, plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

111. Plaintiff, as the representative of the bankruptcy Estates, brings this claim, with the amount of damages to be determined at trial in this Adversary Proceeding.

## X.
## SEVENTH CLAIM FOR RELIEF
### Negligence

112. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

113. Palubicki owed a duty of care to the Debtors.

114. Palubicki breached his duty of care.

115. As evident in the foregoing allegations, the breaches committed by Palubicki are the legal cause of damages to the Debtors.

116. Palubicki's conduct constituting negligence were identified as allegations in the litigation that resulted in damages to certain of the Debtors in an amount exceeding $500 million.

117. Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Palubicki, plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

118. Plaintiff, as the representative of the bankruptcy Estates, brings this claim, with the amount of damages to be determined at trial in this Adversary Proceeding.

## XI.
## EIGHTH CLAIM FOR RELIEF
### Unjust Enrichment

119. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

120. In the four years preceding the Petition Date, Palubicki caused the Debtors to enter into multiple MCAs.

121. In the four years preceding the Petition Date, Palubicki caused the Debtors to enter into one or more factoring finance agreements where the Debtors' receivables were factored (collectively, the "Factoring Agreements").

122. Together, the MCAs and the Factoring Agreements amount to over $1.2 million dollars.

123. Yet on the Petition Date, the Debtors reported minimal if not de minimis cash on hand.

124. Upon information and belief, the cash and/or remuneration incoming to and received by the Debtors on account of the MCAs and the Factoring Agreements was under the control of Palubicki, who personally benefited from the funds.

125. The Debtors therefore conferred a benefit on Palubicki.

126. Palubicki appreciated these benefits conferred upon him by the Debtors.

127. Palubicki has accepted and retained the benefits conferred to him by the Debtors.

128. Under such circumstances, it is inequitable for Palubicki to retain the benefits conferred without paying the Debtors, by way of paying their bankruptcy Estates, the value thereof.

129. Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Palubicki plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

130. Plaintiff, as the representative of the bankruptcy Estates, brings this claim, with the amount of damages to be determined at trial in this Adversary Proceeding.

### XII.
### NINTH CLAIM FOR RELIEF
#### Accounting

131. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

132. Palubicki has failed to account for or otherwise trace the cash and/or remuneration received by the Debtors on account of the MCAs and Factoring Agreements.

15

133. As a principal of, owner of, and/or officer of the Debtors, Palubicki had a fiduciary relationship to the Debtors.

134. This fiduciary relationship requires an accounting.

135. The amounts due to the Debtors' Estates cannot be fully ascertained without an accounting.

136. As such, an accounting is needed.

137. The information necessary to determine the amounts owed is within Palubicki's knowledge.

138. Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Palubicki, plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

139. Plaintiff, as the representative of the bankruptcy Estates, brings this claim seeking that the Court order Palubicki to provide an accounting of all funds received by the Debtors from or on account of the MCAs and the Factoring Agreements, from January 22, 2021, through present.

## XIII.
## TENTH CLAIM FOR RELIEF
### Disallowance of Claims

140. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

141. Palubicki has filed the following proofs of claim against the Debtors (collectively, the "Palubicki POCs"):

    a. Proof of claim number 29 against NuMale Corporation in the amount of $74,383.99;

    b. Proof of claim number 31 against NuMale Corporation in the amount of $121,796.60;

    c. Proof of claim number 36 against NuMale Corporation in the amount of $1,799,550.00;

      d.    Proof of claim number 39 against NuMale Corporation in the amount of $150,000.00;

      e.    Proof of claim number 4 against NuMale Nebraska LLC in the amount of $50,000.00; and

      f.    Any other proofs of claim previously or subsequently filed in the name of, or for the benefit of, Palubicki.

142. The Debtors, through Palubicki, scheduled the following claims held by Palubicki (the "Palubicki Scheduled Claims," and together with the Palubicki POCs, the "Palubicki Claims"):

      a.    Scheduled claim of $73,335.00 against NuMale Corporation;

      b.    Scheduled claim of $10,000.00 against NuMale Corporation;

      c.    Any other claims previously or subsequently scheduled in the name of, or for the benefit of, Palubicki.

143. The Palubicki Claims should be disallowed pursuant to 11 U.S.C. § 502(d). *See* Claims for Relief 2 through 5 above.

144. The Palubicki Claims should be disallowed because they are unsupported by necessary documentation, overstated in amount, and/or fail to establish a legitimate debt owed by any of the Debtors to Palubicki.

145. The Palubicki Claims should be disallowed because Palubicki engaged in wrongdoing that caused harm to Debtors, including as described in Claims for Relief 6 and 7 above.

## RESERVATION OF RIGHTS

This Complaint is intended to seek recovery of all transfers avoidable under Chapter 5 of Title 11 not specifically identified in the Complaint, including, without limitation, any payments received during the applicable preference period or applicable fraudulent transfer limitation period. Plaintiff reserves the right to amend this Complaint if additional avoidable transfers are revealed

during discovery, including, but not limited to, any claims arising under Chapter 5 of Title 11 of the United States Code.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. For judgment in favor of Plaintiff and against Defendant on the First Claim for Relief for a declaratory judgment that: (i) the Policies, Policy Proceeds, and Claims Against Underwriters are property of the Estates pursuant to 11 U.S.C. § 541, and (ii) as property of the estate the Policies, Policy Proceeds, and Claims Against Underwriters are protected by the automatic stay of 11 U.S.C. § 362(a); (iii) Plaintiff is the sole person with standing to pursue those claims for relief under the Policies and related to the Policy Proceeds and the Claims Against Underwriters; (iv) Palubicki has no rights to or under the Policies, Policy Proceeds, and Claims Against Underwriters; and (v) Palubicki receive nothing whatsoever on account of the Policies, Policy Proceeds, and Claims Against Underwriters;

2. For judgment in favor of Plaintiff and against Defendant on the Second Claim for Relief for avoidance of the Preferential Transfers, which amounts are to be proven at trial;

3. For judgment in favor of Plaintiff and against Defendant on the Third Claim for Relief for avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) in the amount of the Two-Year Transfers, which amounts are to be proven at trial;

4. For judgment in favor of Plaintiff and against Defendant on the Fourth Claim for Relief for avoidance of fraudulent conveyances pursuant to 11 U.S.C. § 544 and NRS 112.180(1)(b), in the amount of the Four-Year Transfers, which amounts are to be proven at trial;

5. For judgment in favor of Plaintiff and against Defendant on the Fifth Claim for Relief for recovery of the amount of the Transfers;

6. For judgment in favor of Plaintiff and against Defendant on the Sixth Claim for Relief, for damages for Palubicki's breaches of fiduciary duties in an amount to be proven at trial;

7. For judgment in favor of Plaintiff and against Defendant on the Seventh Claim for Relief, for negligence in an amount to be proven at trial;

1      8.     For judgment in favor of Plaintiff and against Defendant on the Eighth Claim for Relief, for unjust enrichment in an amount to be proven at trial;

    9.     For judgment in favor of Plaintiff and against Defendant on the Ninth Claim for Relief, for an accounting and that the Court order Defendant to provide an accounting of all subject funds from January 22, 2021, through present;

    10.     For judgment disallowing the Palubicki Claims;

    11.     For a determination that Defendant's community property is liable for all damages awarded to Plaintiff on each and every claim asserted in this Complaint;

    12.     For an award of prejudgment interest, court costs, attorney fees, and post-judgment interest to the extent permitted by law; and

    13.     For such other and further relief as the Court deems just and proper.

Dated this 7th day of July 2025.

                                          GARMAN TURNER GORDON LLP

                                          By: */s/ Talitha Gray Kozlowski*
                                                 GREGORY E. GARMAN, ESQ.
                                                 TALITHA GRAY KOZLOWSKI, ESQ.
                                                 MARY LANGSNER, Ph.D.
                                                 7251 Amigo Street, Suite 210
                                                 Las Vegas, Nevada 89119

                                          *Attorneys for Plaintiff, Chapter 11 Trustee Michael Carmel*