# EXHIBIT 3

# EXHIBIT 3

**GARMAN**

**TURNER**

**GORDON**

7251 AMIGO STREET
SUITE 210
LAS VEGAS, NV 89119
WWW.GTG.LEGAL

PHONE: 725 777 3000

FAX: 725 777 3112

June 4, 2025

Gregory Garman, Esq.
ggarman@gtg.legal

*__Via U.S. Mail and Email to:__ brad@numale.com __and__ htriplett@numale.com*

NuMale Corporation
Attn: President, Brad Palubicki
2600 N. Mayfair Road, Suite 505
Wauwatosa, WI 53226

NuMale Corporation
Attn: CFO and Controller, Holly Triplett
2600 N. Mayfair Road, Suite 505
Wauwatosa, WI 53226

NuMale Corporation
Attn: President, Brad Palubicki
2600 N. Mayfair Rd, Ste 1140
Wauwatosa,  WI 53226

NuMale Corporation
Attn: CFO and Controller, Holly Triplett
2600 N. Mayfair Rd, Ste 1140
Wauwatosa,  WI 53226

*__With copy via U.S. Mail and Email to:__ ChubbClaimsFirstNotice@Chubb.com __and__*
*__ChubbClaimsFirstNotice@Chubb.com__*

Chubb
Attn: Chubb Claims Department
Chubb
P.O. Box 5122
Scranton, PA18505-0544

Federal Insurance Company
Attn: Chubb Claims Department
Chubb
P.O. Box 5122
Scranton, PA18505-0544

Chubb
Customer Support Service Department
436 Walnut Street
P.O. Box 1000
Philadelphia, PA 19106-3703

Federal Insurance Company
Customer Support Service Department
436 Walnut Street
P.O. Box 1000
Philadelphia, PA 19106-3703

Chubb
Attn: Chubb Underwriting Department
Chubb
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Federal Insurance Company
Attn: Chubb Underwriting Department
Chubb
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Re:  Policy Number J06578044; Notice of Circumstances Letter to Insurance Carrier,
Issued by Chapter 11 Trustee, trustee of In re NuMale Corporation, et al., jointly
administered case number 25-10341-NMC  (all bankruptcy cases administered jointly with
this lead case, the "Bankruptcy Cases").*

GARMAN TURNER GORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 2

Dear Sir or Madam,

This law firm represents Court-appointed Chapter 11 Trustee Michael Carmel (the "Trustee"), appointed over the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"). A copy of Trustee Carmel's appointment order and papers [Bankruptcy Cases Docket Nos. 155-157] are enclosed herewith.

We understand that the Debtors maintain director and officer liability insurance pursuant to *Chubb/Federal Insurance Company* Policy No. J06578044 (the "Insurance Policy") with Federal Insurance Company a/k/a Chubb a/k/a Chubb Forefront a/k/a Chubb the Forefront Portfolio for Healthcare Organizations a/k/a the Company a/k/a The ForeFront Portfolio a/k/a Forefront.[1] Pursuant to Section XXIII of the Insurance Policy, the Parent Organization, named insured NuMale Corporation,[2] "shall be considered the sole agent of, and shall act on behalf of, each Insured with respect to: . . . (C) the giving or receiving of any notice provided for in this Policy . . . . Each Insured agrees that the Parent Organization shall act on its behalf with respect to the foregoing." (Emphasis omitted). Additionally, pursuant to Section VII of the Insurance Policy, "Bankruptcy or insolvency of any Insured shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy." (Emphasis omitted).

Pursuant to Section XIV of the Insurance Policy, we request you provide Notice[3] to the Insurer of the facts, circumstances, and situations set forth below that could reasonably give rise to a Claim, a Loss, a Matter, or a Wrongful Act.[4] You should immediately provide this letter to the Insurer as written Notice under said section of the Insurance Policy of the specific facts, circumstances, situations, and consequences that have resulted or may result therefrom. We are also providing Notice on your behalf to the Insurer by copying them on this same notice. You may, however, have an independent Notice obligation. Pursuant to Section V (*Directors & Officers and Entity Liability for Healthcare Organizations*, *"Reporting"*) of the Insurance Policy, Notice must be provided and received under the Insurance Policy by 12:01 a.m. (Central Time) on September 3, 2025.

1.      On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing the Bankruptcy Cases. *See, e.g.*, Docket No. 1.

---

[1] All of which are referred to the Insurance Policy and are, collectively, referred to herein as "Insurer."
[2] "Insured."
[3] As "Notice" is defined in Section XIV of the Insurance Policy.
[4] As "Loss" and "Matter" and "Claim" and "Wrongful Act" are defined in the Insurance Policy. Hereinafter these are collectively referred to in this Letter as "Claims" or a "Claim".

GARMAN TURNER GORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 3

      2.      On April 1, 2025, the Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases* directing that "the Chapter 11 case of NUMALE CORPORATION (Case No. 25-10341-nmc), shall be jointly administered with the Chapter 11 cases of FELICIANO NUMALE NEVADA PLLC (Case No. 25-10342-nmc), NUMEDICAL SC (Case No. 25-10343-nmc), NUMALE COLORADO SC (Case No. 25-10344-nmc), NUMALE FLORIDA TB PLLC (Case No. 25-10345-nmc), NUMALE NEBRASKA LLC (Case No. 25-10346-nmc), and NUMALE NEW MEXICO SC (Case No. 25-10347-nmc, with NUMALE CORPORATION designated as the Lead Case ("Lead Case"), and all papers relating to the above referenced Debtors shall be docketed in the Lead Case (Case No. 25-10341-nmc)." *See* Docket No. 130.

      3.      On April 2, 2025, the Court entered its Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* Docket No. 132.

      4.      On April 2, 2025, Tracy Hope Davis, the United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* Docket No. 140.

      5.      On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [Docket No. 156].

      6.      Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* Docket No. 157.

      7.      On April 28, 2025, the Court entered its Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b). *See, e.g.*, Docket No. 209.

      8.      The Trustee and his advisors have been engaged in an investigation of potential claims and causes of action against the Debtors' insiders and others, including, but not limited to, current and former directors and officers. The Trustee commenced this investigation by reviewing documents and other information that (i) are publicly available, including the Debtors' filings with the Bankruptcy Court, (ii) were produced by the Debtors on an informal basis, and (iii) were produced or provided by other parties-in-interest in the Bankruptcy Cases.

      9.      The Trustee reserves the right to amend and supplement this letter as additional facts and circumstances surrounding the conduct of the Debtors' current and former directors and officers becomes known.

GARMAN TURNER GORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 4

10.     The Debtors are seven of nineteen related affiliate companies that, together, comprise a corporate family of companies (collectively, the "NuMale Family of Companies") that provide elective men's health (and in some instances women's health) services related to, *inter alia*, hormone replacement, sexual performance, and cosmetic hair treatments.  To the best of the Trustee's understanding, the NuMale Family of Companies (the Debtors and their affiliates) began to be formed in or about 2014 by Carlos Feliciano and Brad Palubicki.  Since at least 2017, and due in part to the facts and circumstances outlined below, the Debtors' business has relied on and/or required outside funding including sale(s) of or loan(s) on their receivables to meet obligations.

11.     In schedules of assets and liabilities in the Bankruptcy Cases, the Debtors listed total prepetition claims arising from the operation of its business of approximately $8.6 million (exclusive of insider debt), and other claims have been asserted by creditors who filed proofs of claim with the Bankruptcy Court since the Petition Date. As a result of the mismanagement of the Debtors' business under the direction of the principals and insiders, the Debtors have been damaged insofar as, among other things, having incurred millions of dollars of obligations to vendors, lenders, and others with little means of satisfying those claims.

12.     The Debtors' descent into bankruptcy was preceded as well by a number of lawsuits, as well as the entry of a jury verdict in New Mexico state court totaling $412,005,149, consisting of $37,005,149 in compensatory damages and $375,000,000 in punitive damages (the "Sanchez Verdict"); the Sanchez Verdict has not yet been reduced to judgment.

13.     Years of mismanagement, mounting losses, insider dealings by certain principals, including Justin Pulliam (who, *inter alia*, partly owns NuMale Corporation), lack of oversight of certain medical employees, business divorce disputes with joint venture partners, mounting losses, and dereliction of duty by the Debtors' former and current directors and officers preceded Debtors' descent into bankruptcy.

14.     Corporate Formalities.  Although certain accounting practices appear to adhere to and recognize corporate formalities at present, it is unclear from the Trustee's investigation that the Debtors, and the NuMale Family of Companies, routinely and consistently engaged in required corporate formalities over time.  Additionally, as the Debtors' financial strife escalated in 2023 (*i.e.*, as then-senior debt, which largely appears to have been secured by receivables, became due), the Debtors took out a $5 million Small Business Association ("SBA") loan to, *inter alia*, pay off this debt.  The Debtors' corporate minutes for that time, to the extent they exist, do not contain a precise narrative of events.  By failing to adequately maintain corporate records, the Debtors' officers and directors, and board of directors, may have acted in breach of their fiduciary duty of care to the Debtors, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duty is under continuing investigation.

15.     SBA-backed Loan.  The Trustee understands that from the $5 million in proceeds received under the SBA-backed loan, approximately $2,410,964.73 went to "working capital" for

GARMAN TURNER GORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 5

NuMale Corporation. Of this, the Trustee understands that approximately $300,000 went to a "Florida Investor – Payback"; NuMale Corporation then lent approximately $36,705 to a "Charlotte" entity and lent approximately $30,575 to a Tampa entity; made a "NuMale Medical Center Loan Repayment" of approximately $245,000 and a "NuMale Albuquerque Loan Repayment" of approximately $95,000; and paid approximately $175,000 to MBI. The Trustee also understands that an approximately $1,312,653.90 then funded the Debtors' losses for calendar year 2024. By entering into a significant SBA loan at times when the Debtors were unable to pay existing lenders, vendors, or creditors, and/or the Debtors had no means (or projected ability) to repay existing debt in full, the Debtors' officers and directors, and board of directors, may have acted in breach of their fiduciary duties to the Debtors, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duty is under continuing investigation.

16.  <u>Decision to Litigate</u>. Through investigation, the Trustee has uncovered a troubling series of decisions by the Debtors' leadership that forced the Debtors into litigation over business divorce disputes with prospective or existing partners—*e.g.*, the business divorce involving Christopher Asandra. The Debtors' leadership also chose to pursue, on the Debtors' behalf, potentially frivolous malpractice claims against Debtors' counsel, after losing the litigation with Dr. Asandra. By instigating potentially frivolous or meritless litigation, the Debtors' officers and directors, and board of directors, may have acted in breach of their fiduciary duties to the Debtors, and may have given rise to Claims on the Insurance Policy. The extent of these breaches of duty is under continuing investigation

17.  <u>Further Encumbrances of Debtors' Assets</u>. The Trustee's investigation to date has revealed that from 2020 onward, and accelerating in 2023 and 2024, the Debtors and other affiliates entered into either: (i) factoring-type agreements for sale of the Debtors' receivables; or (ii) loan transactions, such as Merchant Cash Advance ("<u>MCA</u>") agreements premised on Debtors' receivables. Although these investigations are preliminary, the Trustee believes based on what he has uncovered to date that the Debtors may have "double transacted" the same set of receivables— meaning, sold the receivables in connection with a factoring-type agreement and also secured a loan from an MCA-type lender on the same receivables. The Trustee's investigations in this regard are ongoing; however, by entering into loan transactions concerning receivables which had already been sold to a third party, the Debtors' officers and directors, and board of directors, may have acted in breach of their fiduciary duties to the Debtors, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duty is under continuing investigation.

18.  <u>Undertaking Debt With No Foreseeable Ability to Repay</u>. In addition to the factoring-type and MCA-type transactions described above, in or about April 2023 NuMale Corporation and an affiliate (NuMale Medical Center) appear to have entered into an agreement with The N2 Company for digital advertising services that ultimately obligated NuMale Corporation and its affiliate for what is alleged by N2 to amount to $920,617.94 in digital advertising costs which were not paid. By entering into a significant digital advertising contract, and a series of sales and/or lending transactions, at times when the Debtors were unable to pay existing lenders, vendors, or creditors, and/or the Debtors had no means (or projected ability) to

GARMAN TURNER GORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 6

repay existing debt in full, the Debtors' officers and directors, and board of directors, may have acted in breach of their fiduciary duties to the Debtors, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duty is under continuing investigation.

      19.   <u>Justin Pulliam and the Florida Joint Venture</u>. In or about May 2023, the NuMale Corporation transacted with Alex Patino as a joint venture partner in connection with proposed clinics in Miami, Boca Raton, and Fort Lauderdale, Florida. NuMale Corporation received $300,000 from Mr. Patino in connection with a *Service Agreement* executed on or about May 9, 2023 by NuMale Corporation (Justin Pulliam signing for NuMale Corporation) and Mr. Patino. However in approximately February 2024, Mr. Pulliam without corporate authority unilaterally terminated the joint venture with Mr. Patino, caused NuMale Corporation to send back the $300,000, and subsequently personally pursued what to date appears to be a substantially identical joint venture entitled "Vida Vital Medical," not only depriving NuMale Corporation of potential lost profits which were anticipated through the joint venture with Mr. Patino but also depriving NuMale Corporation and its existing Florida clinic (Debtor NuMale Florida TB PLLC and its nondebtor affiliate) of profits and revenue associated with its operations because the competing Vida Vital Medical directed customers away from the NuMale Family of Companies. The Trustee understands that, subsequent to these events, Justin Pulliam maintained his employment with the NuMale Family of Companies and served as an officer (Vice President), in a role that continued post-Petition Date. By continuing to retain Justin Pulliam after discovering his participation in the events surrounding the termination of the joint venture with Mr. Patino, the Debtors' officers and directors, and board of directors, may have acted in breach of their fiduciary duties to the Debtors, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duty is under continuing investigation.

      20.   <u>Transfers to Insiders</u>. The Trustee understands that in the one year preceding the Petition Date, Brad Palubicki received $176,922.90 in transfers from the Debtor(s); Carlos Feliciano received $169,422.90 in transfers from the Debtor(s); Justin Pulliam received $177,500.92 in transfers from the Debtor(s); Carlos Feliciano received an additional estimated $59,000 in transfers for "tax payments" from the Debtors; and Justin Pulliam, Carlos Feliciano, and Brad Palubicki received the benefit of "possible transfers of security interests which have benefitted insider guarantors". Additionally, post-petition, the Trustee understands that Justin Pulliam has received approximately $9,000 in transfers from the Debtors via his American Express card payments; Justin Pulliam also received the benefit of at least one car payment in the amount of $1,814.63, reducing debt under which he is obligated to Ford Motor Credit for use of a company vehicle. Such transfers appear to have been to the detriment of the Debtors' creditors, as they were made notwithstanding the Debtors' liquidity problems. Additionally, the Trustee's investigation is continuing, and as such the Trustee may have not yet identified all subject transfers. By making and/or authorizing pre- and post-Petition Date transfers to or for the benefit of insiders at a time when the Debtors were unable to pay their debts as such debts became due, the Debtors' officers and directors, and board of directors, may have acted in breach of their duties of care and loyalty, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duty is under continuing investigation.

GARMAN TURNER GORDON

*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 7

21.     Additionally, based on the information available to the Trustee to date, the Trustee believes that there are facts, circumstances, and/or situations that may reasonably give rise to claims that may be made on behalf of the Debtors' estates against one or more of the Debtors' insiders and principals, including, without limitation, Justin Pulliam, Christopher Asandra, Brad Palubicki, and Carlos Feliciano.  To the extent that the Debtors are aware of any other or different officers and/or members of the Board of Directors of the Debtors from January 22, 2021, through the present, the Trustee demands that you include the name(s) of such member(s) in notices to all applicable insurance carriers, including, but not limited to, the Insurer.

22.     <u>Clinic Treatment of Patients</u>.  The Trustee's investigation to date has revealed that on more than one occasion preceding the Petition Date, Debtors' officers and directors, and board of directors, failed to appropriately provide for the supervision and training of employees performing medical tasks on patients.  The Debtors' officers and directors all participated in the running, operations, oversight, and management of the Debtors' business, including the clinics owned and operated by the Debtors.  As principals of, and officers of, the Debtors, the Debtors' officers and directors had a duty to supervise and train, and provide appropriate oversight of, employees of the Debtors including employees performing medical diagnostic assessments, processing patient intake, determining recommended medical procedures, diagnosing patients, performing medical procedures on patients, and prescribing medicine.  The Trustee, however, understands that Debtors' officers and directors did not effectively supervise non-physician employees' treatments of patients, leading to personnel performing tasks for which they were unqualified, including but not limited to:

- Failure to properly oversee and supervise medical personnel including non-physician employees;

- Failure to institute and follow proper hiring practices, resulting in the hiring of incompetent medical personnel including non-physician employees;

- Permitting and directing unqualified personnel to perform medical procedures they were not properly trained or qualified to do;

- Failure to properly train and/or ensure proper training of personnel on medical procedures and medications used and prescribed;

- Permitting and directing unqualified personnel to prescribe medications such as phenylephrine;

- Permitting and directing personnel to perform procedures and prescribe medications that exceeded their scope of practice;

- Failure to properly define and enforce a scope of practice for personnel;

- Permitting and directing personnel to engage in a practice of "upselling"

G ARMAN T URNER G ORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 8

testosterone therapy patients to more expensive treatment plans;

- ▪ Failure to institute and maintain proper controls at clinics to prevent events of medical malpractice and/or harm to patients including disfigurement and permanent injury; and

- ▪ Failure to properly staff the Debtors' clinics and train clinic staff in the appropriate response to emergencies.

Among other damages suffered by the Debtors, the foregoing led to the entry of the Sanchez Verdict. By (i) failing to maintain standards or at minimum by being negligent in the hiring, training, and supervision of personnel including but not limited to non-physician medical personnel staffing the Debtors' clinics; (ii) by failing to maintain proper controls at the Debtors' clinics to prevent harm to patients; (iii) by failing to ensure or at minimum by being negligent in not ensuring personnel, including non-physician medical personnel, were properly qualified to perform the procedures performed and prescribe the medications prescribed; and (iv) by failing to ensure and/or maintain adequate supervision of personnel at the Debtors' clinics, the Debtors' directors and officers, and board of directors, enabled an environment where patients were harmed, including medical malpractice, disfigurement, and/or permanent injury to one or more patients. In doing so, the Debtors' officers and directors, and board of directors, may have breached their duty of care and/or acted in breach of their fiduciary duties to the Debtors, which may reasonably give rise to a claim under the Insurance Policy. The extent of these breaches of duties is under continuing investigation.

23. <u>Lack of Internal Controls</u>. Although the Trustee's investigation is ongoing, the Debtors also appear to have failed to exercise proper management and internal controls by permitting senior management such as Justin Pulliam to handle cash without immediately depositing such cash into the Debtors' account(s); by inadequately addressing known breaches and/or failures caused by employees including senior management, even when such issues were brought to senior management's attention by CFO Holly Triplett; and by permitting the foregoing events recited herein to have taken place. In failing to maintain appropriate internal controls, the Debtors' officers and directors, and board of directors, may have breached their fiduciary duty of care to the Debtors.

24. The facts, circumstances, and situations discussed above may reasonably give rise to a Claim, a Loss, a Matter, and/or a Wrongful Act under the Insurance Policy. The Trustee is providing this notice based on the limited factual information he has received from the Debtors, and his investigation of these matters is ongoing. In particular, the Trustee is reviewing other potential claims against the Debtors, the past and present officers and directors of those entities, and third parties, arising from the facts and circumstances described herein, and expressly reserves
. . .
. . .
. . .

GARMAN TURNER GORDON
*In re NuMale Corp., et al., Notice of Circumstances Letter, Chubb/Federal Insurance Company*
Page 9

the right to provide additional notices pertaining to all applicable insurance policies and/or to pursue the prosecution by the appropriate party of any and all claims on behalf of one or more of the Debtors' estates.

Sincerely,

GREGORY E. GARMAN, ESQ.

Encl. (as noted)
cc:  Michael Carmel
     Talitha Gray Kozlowski
     Mary Langsner

*Natalie M. Cox*

Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
April 07, 2025

Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Justin C. Valencia, Trial Attorney
State Bar No. NE 25375 | State Bar No. IA AT0012006
Alyssa A. Rogan, Trial Attorney
State Bar No. CA 354257
United States Department of Justice
Office of the U.S. Trustee
300 Las Vegas Boulevard So., Suite 4300
Las Vegas, Nevada 89101
Telephone: (702) 388-6600
Facsimile: (702) 388-6658
Email: justin.c.valencia@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>    AFFECTS THIS DEBTOR,  ☐<br><br>    AFFECTS FELICIANO  ☐<br>    NUMALE NEVADA PLLC,<br><br>    NUMEDICAL SC,  ☐<br><br>    NUMALE COLORADO SC,  ☐<br><br>    NUMALE FLORIDA TB PLLC,  ☐<br><br>    NUMALE NEBRASKA LLC,  ☐ | Lead Case No. 25-10341-NMC<br>Chapter 11<br><br>*Jointly administered with*:<br><br>    Feliciano NuMale Nevada PLLC,<br>    Case No. 25-10342-NMC,<br><br>    NuMedical SC,<br>    Case No. 25-10343-NMC,<br><br>    NuMale Colorado SC,<br>    Case No. 25-10344-NMC,<br><br>    NuMale Florida TB PLLC,<br>    Case No. 25-10345-NMC<br><br>    NuMale Nebraska LLC, |

1

| NUMALE NEW MEXICO SC, | ☐ | Case No. 25-10346-NMC, |
| AFFECTS ALL DEBTORS, | ☒ | NuMale New Mexico SC, |
| Debtors. | | Case No. 25-10347-NMC |

## ORDER APPROVING APPOINTMENT
## OF CHAPTER 11 TRUSTEE

The Court having considered the *United States Trustee's Application for Order Approving the Appointment of Chapter 11 Trustee* ("Application") [ECF No. 140] seeking the approval of Michael W. Carmel as the Chapter 11 Trustee in the above-named jointly administered cases,

IT IS HEREBY ORDERED that the Application is approved; and

IT IS HEREBY FURTHER ORDERED that the appointment of Michael W. Carmel as the Chapter 11 Trustee is approved.

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:     */s/ Terri H. Didion*
        Terri H. Didion
        Assistant United States Trustee

###

2

Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Justin C. Valencia, Trial Attorney
State Bar No. NE 25375 | State Bar No. IA AT0012006
Alyssa A. Rogan, Trial Attorney
State Bar No. CA 354257
Office of the United States Trustee
300 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone: (702) 388-6600
E-mail: *Alyssa.Rogan@usdoj.gov*

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No. 25-10341-NMC<br>Chapter 11 |
| NUMALE CORPORATION, | *Jointly administered with*: |
|     AFFECTS THIS DEBTOR, ☐ |     Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-NMC, |
|     AFFECTS FELICIANO ☐<br>    NUMALE NEVADA PLLC, | |
|     NUMEDICAL SC, ☐ |     NuMedical SC,<br>Case No. 25-10343-NMC, |
|     NUMALE COLORADO SC, ☐ |     NuMale Colorado SC,<br>Case No. 25-10344-NMC, |
|     NUMALE FLORIDA TB PLLC, ☐ |     NuMale Florida TB PLLC,<br>Case No. 25-10345-NMC, |
|     NUMALE NEBRASKA LLC, ☐ | |
|     NUMALE NEW MEXICO SC, ☐ |     NuMale Nebraska LLC,<br>Case No. 25-10346-NMC, |
|     AFFECTS ALL DEBTORS, ☒ |     NuMale New Mexico SC,<br>Case No. 25-10347-NMC |
|             Debtors. | |

//

//

1

## NOTICE OF APPOINTMENT OF CHAPTER 11 TRUSTEE

To:

**Michael W. Carmel**
Law Offices of Michael W. Carmel, Ltd.
80 East Columbus Avenue
Phoenix, Arizona 85012-4965
T: 602-264-4965
C: 602-206-7900
F: 602-277-0144
E: michael@mcarmellaw.com

Pursuant to the Order of this Court, entered on April 2, 2025, directing the United States

Trustee to appoint a Chapter 11 trustee in the above-named jointly administered cases [ECF

No. 132], the United States Trustee hereby appoints Michael W. Carmel to serve as the Chapter

11 Trustee (the "Chapter 11 Trustee").

The Chapter 11 Trustee is required to obtain a bond satisfactory to the United States

Trustee for the period that the Chapter 11 Trustee accomplishes his duties. The bond may

require adjustment as the Chapter 11 Trustee fulfills his duties, collects, and/or liquidates assets

of the estate. The Chapter 11 Trustee is directed to inform the Office of the United States

Trustee when changes to the bond amount are required or made.

This appointment is made this 7th day of April 2025.

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:     */s/ Terri H. Didion*
        Terri H. Didion
        Assistant United States Trustee

2

Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Justin C. Valencia, Trial Attorney
State Bar No. NE 25375 | State Bar No. IA AT0012006
Alyssa A. Rogan, Trial Attorney
State Bar No. CA 354257
United States Department of Justice
Office of the United States Trustee
300 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone: (702) 388-6600
E-mail: *Alyssa.Rogan@usdoj.gov*

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>    AFFECTS THIS DEBTOR, ☐<br><br>    AFFECTS FELICIANO ☐<br>    NUMALE NEVADA PLLC,<br><br>    NUMEDICAL SC, ☐<br><br>    NUMALE COLORADO SC, ☐<br><br>    NUMALE FLORIDA TB PLLC, ☐<br><br>    NUMALE NEBRASKA LLC, ☐<br><br>    NUMALE NEW MEXICO SC, ☐<br><br>    AFFECTS ALL DEBTORS, ☒<br><br>              Debtors. | Lead Case No. 25-10341-NMC<br>Chapter 11<br><br>*Jointly administered with*:<br><br>  Feliciano NuMale Nevada PLLC,<br>  Case No. 25-10342-NMC,<br><br>  NuMedical SC,<br>  Case No. 25-10343-NMC,<br><br>  NuMale Colorado SC,<br>  Case No. 25-10344-NMC,<br><br>  NuMale Florida TB PLLC,<br>  Case No. 25-10345-NMC<br><br>  NuMale Nebraska LLC,<br>  Case No. 25-10346-NMC,<br><br>  NuMale New Mexico SC,<br>  Case No. 25-10347-NMC |

//

//

//

**NOTICE OF ACCEPTANCE OF APPOINTMENT OF CHAPTER 11 TRUSTEE**

As required by Fed. R. Bankr. P. 2008, notice is hereby given that the undersigned accepts the appointment of Chapter 11 Trustee in the above-named jointly administered cases.

As required by 11 U.S.C. § 322(a), a bond in the amount set by the United States Trustee will be filed with the Court before I begin my official duties.

Dated: April 7, 2025        */s/    Michael W. Carmel*
                                 Michael W. Carmel
                             Chapter 11 Trustee