GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
| NUMALE CORPORATION, | |
| ☐ AFFECTS THIS DEBTOR, | *Jointly administered with:* |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc |
| ☐ NUMEDICAL SC, | NuMedical SC<br>Case No. 25-10343-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Colorado SC,<br>Case No. 25-10344-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | |
| ☐ NUMALE NEBRASKA LLC, | NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc |
| ☐ NUMALE NEW MEXICO SC, | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
| ☒ NUMALE ALL DEBTORS, | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
| Debtors. | |
| | Date:   September 24, 2025<br>Time:   9:30 a.m. |

## JOINT PLAN OF REORGANIZATION

**Table of Contents**

**1.    DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME** ........................................................................................................ **1**

    1.1.    Definitions. ........................................................................................ 1

    1.2.    Rules of Interpretation. ................................................................... 16

**2.    TREATMENT OF UNCLASSIFIED CLAIMS** ............................................ **16**

    2.1.    General. ............................................................................................ 16

    2.2.    Treatment of Administrative Claims. .............................................. 17

    2.3.    Treatment of Priority Tax Claims. .................................................. 17

    2.4.    Requests for Payment. ..................................................................... 17

**3.    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS** ............. **17**

    3.1.    Determination of Claims and Equity Interests Within Classes. ....... 17

    3.2.    Summary of Classification. .............................................................. 18

**4.    TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN** ...................... **19**

    4.1.    Class 1 – Newtek Secured Claim. ................................................... 19

    4.2.    Class 2 – Kalamata Claim. .............................................................. 19

    4.3.    Class 3 – EBF Holdings Claim. ....................................................... 19

    4.4.    Class 4 – Fox Funding Claim. ......................................................... 20

    4.5.    Class 5 – Top Tier Claim. ................................................................ 20

    4.6.    Class 6 – LCF Group Claim. ........................................................... 20

    4.7.    Class 7 – Ford Motor Claim. ........................................................... 21

    4.8.    Class 8 – Priority Unsecured Claims. .............................................. 21

    4.9.    Class 9 – Sanchez Claim. ................................................................ 21

    4.10.    Class 10 – General Unsecured Claims. ............................................ 22

    4.11.    Class 11 – Intercompany Claims. .................................................... 22

4.12.    Class 12 – Subordinated Claims. ................................................................. 23

4.13.    Class 13 – Equity Interests. ......................................................................... 23

5.    MEANS FOR IMPLEMENTATION OF PLAN ...................................................... 23

5.1.    Overview. ........................................................................................................ 23

5.2.    General Settlement of Claims. ...................................................................... 23

5.3.    Substantive Consolidation for Plan Purposes. ............................................ 23

5.4.    Beazley Settlement Payment on the Effective Date.. .................................. 24

5.5.    Corporate Action. .......................................................................................... 24

5.6.    Distributions .................................................................................................. 25

5.7.    Effective Date Distributions. ......................................................................... 25

5.8.    Liquidation Trust. .......................................................................................... 25

5.9.    Liquidation Trustee Compensation.. ............................................................ 27

5.10.    Liquidation Trustee as Representative of the Debtors' Estates.. ................. 28

5.11.    Powers of the Liquidation Trustee. ............................................................... 28

5.12.    Prosecution of the Quintairos Claims and Quintairos Non-Debtor Claims. ............... 29

5.13.    Liquidation Trust Beneficiaries.. .................................................................. 30

5.14.    Distribution of Liquidation Trust Interests .................................................. 30

5.15.    Net Distributable Assets and Distribution Waterfall. ................................. 30

5.16.    Reorganization of Debtors and Vesting of Non-Litigation Assets. ............ 31

5.17.    363 Sale. .......................................................................................................... 32

5.18.    Winddown of the Reorganized Debtors. ...................................................... 32

5.19.    Notice of Effectiveness. ................................................................................. 32

5.20.    Final Decree. .................................................................................................. 32

5.21.    No Corporate Action Required. .................................................................... 32

6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................. 32

6.1.    Executory Contracts. ..................................................................................... 32

6.2.    Approval of Assumption and Assignment or Rejection. .............................. 32

6.3.    Cure of Defaults. ........................................................................................ 33

6.4.    Objection to Cure Amounts. ....................................................................... 33

6.5.    Confirmation Order. .................................................................................... 33

6.6.    Post-Petition Date Contracts and Leases. ................................................. 34

6.7.    Bar Date. ..................................................................................................... 34

7.    **CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ...................................................................................................... **34**

7.1.    Conditions to Confirmation. ....................................................................... 34

7.2.    Conditions to Effectiveness. ...................................................................... 34

7.3.    Waiver of Conditions. ................................................................................ 34

8.    **GLOBAL SETTLEMENT AGREEMENT; DISCHARGE; INJUNCTION** .............. **34**

8.1.    General. ....................................................................................................... 34

8.2.    Global Settlement Agreement and Mutual Releases. ................................. 35

8.3.    Limitation on Liability of the Liquidation Trustee. ................................... 35

8.4.    Compromise and Settlement. ..................................................................... 35

8.5.    Discharge.. .................................................................................................. 35

8.6.    Injunction. .................................................................................................. 36

8.7.    Exculpation. ................................................................................................ 37

9.    **RETENTION OF JURISDICTION** ......................................................................... **37**

9.1.    Jurisdiction. ................................................................................................ 37

9.2.    No Waiver. .................................................................................................. 39

10.    **MODIFICATION AND AMENDMENT OF PLAN** ................................................ **39**

10.1.    Modification and Amendment. ................................................................... 39

11.    **ADDITIONAL    CLAIM    OBJECTION    AND    DISTRIBUTION INFORMATION** ..................................................................................................... **39**

11.1.    Objections to Claims and Disallowed Claims. ........................................... 39

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**11.1.1.**    **Authority to File Objections to Claims.**................................................ 39

**11.1.2.**    **Deadline for Filing Objections to Claims.**........................................... 40

**11.1.3.**    **Resolution of Objections After Effective Date.**.................................. 40

**11.1.4.**    **Late-Filed Claims.** .............................................................................. 40

11.2.    Delivery of Distributions; Undeliverable Distributions. ............................ 40

11.3.    Fractional Payments and Application of Payments. .................................... 41

11.4.    Set Offs. ...................................................................................................... 42

11.5.    Allocation of Distributions between Principal and Interest.......................... 42

11.6.    Withholding Taxes. ..................................................................................... 42

12.    MISCELLANEOUS. ................................................................................... 43

12.1.    Effectuating Documents; Further Transactions; Timing. ............................ 43

12.2.    Binding Effect. ............................................................................................ 43

12.3.    Termination of Responsibilities of the Patient Care Ombudsman. ............. 43

12.4.    Exemption from Transfer Taxes. ................................................................. 43

12.5.    Governing Law. ........................................................................................... 44

12.6.    Modification of Payment Terms. ................................................................. 44

12.7.    Notices. ........................................................................................................ 44

12.8.    Extension of Time. ....................................................................................... 45

12.9     Severability. ................................................................................................. 45

12.10.    Revocation or Withdrawal of this Plan........................................................ 45

12.11.    Post-Confirmation Reporting. ..................................................................... 45

12.12.    Cramdown. ................................................................................................... 45

12.13.    Quarterly Fees. ............................................................................................ 45

12.14.    Conflicts....................................................................................................... 46

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Michael W. Carmel, the Chapter 11 Trustee (the "<u>Trustee</u>") for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "<u>Debtors</u>") proposes this joint plan of reorganization (the "<u>Plan</u>") for the resolution of Debtors' outstanding Claims and Equity Interests (as these terms are defined herein). All Creditors, Equity Interest Holders (as both terms are defined herein), and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtors' history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All Holders of Claims against, and Equity Interests in, Debtors are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 10 of this Plan, the Trustee expressly reserves the right to alter, amend, strike, withdraw, or modify this Plan one or more times before its substantial consummation.

## 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1.** **Definitions.** For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in this Plan, the following terms in bold have the meanings set for the below.

**1.1.1.** **363 Assets.** All of Debtors' Assets, solely excluding the Distributable Assets, the Debtors' 2019 Ford F150, the proceeds from the 363 Sale, and the Equity Interests in each of the Debtors.

**1.1.2.** **363 Bid Procedures.** The procedures governing the sale process for the Section 363 Sale, which shall include the following terms: (i) approval of the 363 Stalking Horse and the 363 Stalking Horse Bid; (ii) designation of the 363 Stalking Horse as a qualified bidder; (iii) for any other bidder to qualify as a qualified bidder, the bidder must provide prior to the auction, among other things, (a) a bid of no less than $25,000 more than the Stalking Horse Bid in immediately available funds; (b) proof satisfactory to the Trustee of immediately available funds for the full amount of the bid; (c) a deposit of twenty percent (20%) of the bid; (d) the identity and corporate authority to submit the bid; and (e) an executed asset purchase agreement and redline against the asset purchase agreement executed by the 363 Stalking Horse; (iv) in the event there is more than one qualified bidder, the Trustee shall conduct an auction; (v) if the 363 Stalking Horse Bid is the only timely qualified bid, there will be no auction and the 363 Stalking Horse Bid will be identified as the prevailing bidder at the final sale hearing.

**1.1.3.** **363 Motion.** The motion filed by the Trustee seeking approval of the 363 Bid Procedures and the sale of the 363 Assets to the 363 Stalking Horse pursuant to, among other

provisions, sections 363(b), (f), (m), and (n) of the Bankruptcy Code, or, in the event of multiple bidders, to the prevailing bidder after the completion of an auction.

**1.1.4. 363 Sale.** The sale effectuated in accordance with section 363 of the Bankruptcy Code for the sale of the 363 Assets free and clear of all Liens, Claims, and encumbrances in accordance with the 363 Bid Procedures, the 363 Motion, and the 363 Sale Order.

**1.1.5. 363 Sale Order.** The Final Order approving the 363 Sale to the prevailing bidder.

**1.1.6. 363 Stalking Horse.** Justin Pullian and/or his assignee.

**1.1.7. 363 Stalking Horse Bid.** In accordance with the terms of the Global Settlement Agreement and in exchange for the 363 Stalking Horse's New Value Contribution: (i) the 363 Stalking Horse shall have an Allowed Secured Claim in the amount of $300,000, which the 363 Stalking Horse is credit bidding at the 363 Sale; provided, however, in no event shall this Allowed Secured Claim be entitled to any Distribution in the Chapter 11 Cases or under this Plan beyond the right to credit bid; (ii) the 363 Stalking Horse may, at his election, credit bid the Allowed Pulliam Administrative Claim and/or the Allowed Pulliam Priority Claim; and (iii) the 363 Stalking Horse may, at his election, credit bid the Allowed Pulliam Unsecured Claim, which each dollar of the Allowed Pulliam Unsecured Claim credit bid shall be equal to $0.25 Cash.

**1.1.8. 363 Stalking Horse Bid Protections.** The Stalking Horse reimbursement of the documented reasonable, actual, out-of-pocket costs and expenses paid or incurred by the Stalking Horse Bidder directly, incident to, under, or in connection with the negotiation, execution, and performance as the Stalking Horse Bidder and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors) in an amount not to exceed $30,000.

**1.1.9. Administrative Claim Bar Date.** The first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date.

**1.1.10. Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Cases allowed under Sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (ii) all Taxes arising between the Petition Date and the Effective Date, including those Taxes for which returns are not yet due; and (iii) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed pursuant to Sections 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an "Administrative Claim" under this paragraph.

**1.1.11. Affiliate.** This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.12. Allowed Administrative Claim.** An Administrative Claim as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect

which prohibits any such payment.   For the avoidance of doubt, the unpaid salary and unreimbursed expenses incurred by Justin Pulliam between the Petition Date and the Effective Date, which unreimbursed expenses are documented, verified, and approved by the Trustee, in the Trustee's sole discretion, shall be an Allowed Administrative Claim on the Effective Date.  For the avoidance of doubt, the Trustee and all parties in interest retain the right to object to all asserted Administrative Claims.

**1.1.13. Allowed Claim.**  A Claim or any portion thereof that is not a Disputed Claim: (i) that is allowed pursuant: (w) to this Plan or Final Order of the Bankruptcy Court, including the Global Settlement Order, (x) to any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (y) to any stipulation with Debtors or the Liquidation Trustee, as applicable, executed on or after the Confirmation Date and approved by the Bankruptcy Court, or (z) to any contract, instrument, or other agreement entered into or assumed in connection herewith; (ii) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment of Claims of such type against Debtors; or (iii) if no proof of Claim is filed, which has been or hereafter is listed by Debtors in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii), no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or the Bankruptcy Court has entered a Final Order Allowing all or a portion of such Claim.

**1.1.14. Allowed Equity Interest.**  An Equity Interest as of the Record Date that: (i) is allowed pursuant to this Plan; (ii) is not disputed by the Trustee and/or any of the Debtors; or (iii) if a Disputed Equity Interest, which Equity Interest has been allowed in whole or in part by Final Order of the Bankruptcy Court.

**1.1.15. Asandra Claim.**  The unsecured Claim asserted by Christopher Asandra against NuMale Corp in proof of claim number 17 filed in bankruptcy case number 25-10341-nmc, which Claim is in the amount of $417,705.75.  On the Effective Date, the Asandra Claim shall be an Allowed General Unsecured Claim in the amount of $417,705.75.

**1.1.16. Assets.**  All of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of the Debtors, as they exist on the Effective Date.

**1.1.17. Avoidance Actions.**  All avoidance, recovery, subordination, and other similar state and federal actions and causes of action preserved for the Estates under the Bankruptcy Code, including but not limited to those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.18. Ballot.** The form of ballot or ballots that will be distributed with the Disclosure Statement to Holders of Claims and Equity Interests entitled to vote under this Plan in connection with the solicitation of acceptances of this Plan.

**1.1.19. Bankruptcy Code.**  Title 11, United States Code, as applicable to the Chapter 11 Cases, as now in effect or hereafter amended, 11 U.S.C. §§ 101, *et seq.*

**1.1.20. Bankruptcy Court.** The United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the United States District Court for the District of Nevada, pursuant to 28 U.S.C. § 151.

**1.1.21. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court as applicable to the Chapter 11 Cases, as now in effect or hereinafter amended.

**1.1.22. Bar Date.** The applicable date or dates established by the Bankruptcy Court, the Bankruptcy Code, and/or the Bankruptcy Rules for the filing of proofs of Claim for Creditors, excepting therefrom, Administrative Claims.

**1.1.23. Beazley.** Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623.

**1.1.24. Beazley Policies.** Any insurance policies issued by Beazley to the Debtors, their Affiliates and/or for the benefit of any of their principal(s).

**1.1.25. Beazley Settlement Payment.** The payment made by Beazley to the Trustee on or before the Effective Date pursuant to the terms of the Global Settlement Agreement and Global Settlement Order.

**1.1.26. Business Day.** Any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.1.27. Cash.** The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

**1.1.28. Causes of Action.** All actions, causes of action, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases.

**1.1.29. Chapter 11 Cases.** The cases under Chapter 11 of the Bankruptcy Code involving Debtors, having case numbers 25-10341-nmc, 25-10342-nmc, 25-10343-nmc, 25-10344-nmc, 25-10345-nmc, 25-10346-nmc, and 25-10347-nmc, and being jointly administered under case number 25-10341-nmc, including all adversary proceedings pending in connection therewith.

**1.1.30. Chapter 11 Trustee.** Michael W. Carmel, in his capacity as the duly appointed and acting Chapter 11 trustee for the Debtors and their Estates.

**1.1.31. Claim.** Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.1.32. Class.** A category of Holders of Claims or Equity Interests as classified in this Plan.

**1.1.33. Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.1.34. Confirmation.** The entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases.

**1.1.35. Confirmation Date.** The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.1.36. Confirmation Hearing.** The duly-noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing or by a subsequent order of the Bankruptcy Court.

**1.1.37. Confirmation Order.** The order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.38. Contingent Claim.** A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.1.39. Contingent Expense Reimbursement.** The reimbursement provided to Beazley from the Liquidation Trust in accordance with the terms of the Global Settlement Agreement and the Global Settlement Order for all reasonable and documented costs and expenses, if any, incurred by Beazley in connection with the Liquidation Trust's pursuit of Litigation Claims and all of Beazley's losses and reasonable and documented costs and expenses, if any, incurred in connection with claims or causes of action asserted by Brad Palubicki, Carlos Feliciano or any of their respective related persons against Beazley, which reimbursement is capped at $5,000,000.

**1.1.40. Creditor.** Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.41. Cure.** The Distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, in an amount equal to: (i) all unpaid monetary obligations due under such executory contract or

unexpired lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from a Debtor's failure to perform any non-monetary obligation as set forth in Sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount which compensates the Holder of such a claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court and served upon the Trustee's counsel on or before such date ordered by the Bankruptcy Court for the filing of objections to the Plan.

**1.1.42. Debtors.**  Collectively, NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico, the Debtors in the Chapter 11 Cases pursuant to Section 1108 of the Bankruptcy Code.

**1.1.43. Disclosure Statement.**  The disclosure statement that relates to this Plan, as amended, supplemented, or modified from time to time, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.44. Disputed Claim or Disputed Equity Interest.**  A Claim or Equity Interest or any portion thereof that is:  (i) subject to timely objection interposed by the Trustee, Reorganized Debtors, Liquidation Trustee, or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Cases, if at such time such objection has not been withdrawn or determined by Final Order; (ii) a Claim that is listed by Debtors as disputed, unliquidated, or contingent in the Schedules, with respect to which no proof of claim has been timely filed; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code; or (iii) a claim held by any Holder against which the Trustee and/or the Estates has asserted, or expects in good faith to assert, any Avoidance Action, pending the resolution of such Avoidance Action by a Final Order.  The term "<u>Disputed</u>," when used to modify a reference in this Plan to any Claim or Equity Interest (or Class of Claims or Equity Interest), shall mean a Claim or Equity Interest (or any Claim or Equity Interest in such Class) that is a Disputed Claim or Disputed Equity Interest.  In the event there is a dispute as to classification or priority of a Claim or Equity Interest, it shall be considered a Disputed Claim or Disputed Equity Interest in its entirety.  Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and Distributions under this Plan.

**1.1.45. Disputed Claim Reserve.**  A reserve established on the Effective Date to hold in a separate account Cash equal to the aggregate amount that would have been distributed on the Effective Date and in accordance with the terms of this Plan on account of a Disputed Claim. The Reorganized Debtors shall have sole control over the Disputed Claim Reserve.  The Disputed Claim Reserve shall terminate upon all Disputed Claims being fully resolved and paid their Effective Date payments pursuant to the terms of the Plan to the extent they become Allowed Claims.  Any remaining funds in the Disputed Claim Reserve shall be tendered to the Liquidation Trust upon all Disputed Claims being resolved and paid in accordance with the terms of this Plan.

**1.1.46. Distributable Assets.**  Shall mean the following Assets distributable by the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, to Allowed Claims in accordance with this Plan: (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and (v) the proceeds from the 363 Sale.

**1.1.47. Distribution.**  Any Distribution by the Trustee, Reorganized Debtors, or Liquidation Trust of Distributable Assets on account of Allowed Claims.

**1.1.48. EBF Holdings Claim.**  The Claim asserted by EBF Holdings, LLC d/b/a/ Everest Business Funding against NuMale Florida, among others, in duplicate proof of claim numbers 18 and 19, which are duplicate claims filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $32,317.50.

**1.1.49. Effective Date.**  The first (1st) Business Day on which all of the conditions set forth in Article 7 to this Plan have been satisfied or waived.

**1.1.50. Equity Interest.**  An Equity Interest as the term is defined in Section 101(16) of the Bankruptcy Code and includes the shares and membership interests, as applicable, in the Debtors and any warrants, options, redemption rights, dividend rights, liquidating preferences, rights to purchase any such Equity Interest, or any other rights related thereto.

**1.1.51. Estates.**  The Estates created for the Debtors in the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

**1.1.52. Executory Contract.**  A contract to which one or more of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code and that has not been terminated or otherwise concluded on the Effective Date.

**1.1.53. Exhibits and Plan Schedules.**  All exhibits and schedules attached to this Plan or filed in a Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein.

**1.1.54. Feliciano NuMale.**  Feliciano NuMale Nevada PLLC, a Nevada professional limited liability company, the debtor in bankruptcy case number 25-10342-nmc pending in the Bankruptcy Court.

**1.1.55. Final Decree.**  Pursuant to Rule 3022 of the Bankruptcy Rules, upon the administration of the Estates and effectuation of all Distributions under this Plan, the Final Order(s) of the Bankruptcy Court closing the Chapter 11 Cases.

**1.1.56. Final Order.**  An order, judgment, or other decree of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, reconsidered, or stayed, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; (ii) any appeal taken or petition for certiorari or request for reconsideration or further review or rehearing filed: (a) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, or certiorari was sought; or (b) has not yet been resolved by such highest court,

but such order has not been stayed pending appeal, and otherwise consistent with the definition of "Final Order" pursuant to the laws of the venue in which such matter arose.  Notwithstanding the foregoing, the Confirmation Order herein shall become a Final Order upon the occurrence of both: (i) the Global Settlement Agreement becoming effective in accordance with its terms; and (ii) the first (1st) Business Day that is fourteen (14) days after the entry of such Confirmation Order unless any appeal of such Confirmation Order was accompanied by a stay pending appeal.

**1.1.57. Ford Motor Claim.**  The Secured Claim asserted by Ford Motor Credit Company, LLC against NuMale Corp in proof of claim number 1 filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $21,593.98.

**1.1.58. Fox Funding Claim.**  The Claim asserted by Fox Funding Group, LLC against NuMale Corp, NuMedical SC, NuMale Colorado, NuMale Florida, NuMale Nebraska, and NuMale New Mexico, among others, in duplicate proof of claim number 20 filed in bankruptcy case number 25-10341-nmc and proof of claim number 1 filed in bankruptcy case number 25-10346, which asserted Claim is in the amount of $78,225.00.

**1.1.59. General Unsecured Claim.**  A Claim that is not secured by a Lien or other charge against or interest in property in which the Estates have an interest and is not (i) an Administrative Claim, (ii) a Priority Tax Claim, or (iii) a Priority Unsecured Claim; (iv) the Sanchez Claim; (v) an Intercompany Claim; or (vi) a Subordinated Claim.  General Unsecured Claims shall include all Claims arising under Section 502(g) of the Bankruptcy Code, and for the avoidance of doubt, the Asandra Claim and the Pulliam Claim.

**1.1.60. Global Settlement Agreement.**  The Settlement, Release, and Policy Buyback Agreement by and between Sanchez, Beazley, the Trustee, NuMale Corp, NuMale New Mexico, NuMale Albuquerque LLC (d/b/a NuMale Medical Center), Christopher Asandra, Justin Pulliam, NMC Illinois, LLC, Nevada NuMale LLC, NuFemme Milwaukee, LLC, NuMale Green Bay, LLC, SC, NuMale Wisconsin GB, SC, NuMale Omaha, LLC, NuMale Tampa, LLC, NuMale Charlotte, LLC, and NuMale Denver, LLC, filed in the Chapter 11 Cases on 25-10341-nmc, at ECF No. [*] in bankruptcy case number 25-10341-nmc, and approved by the Global Settlement Order.  The Global Settlement Agreement is attached to this Plan as **Exhibit 1** and fully incorporated herein.

**1.1.61. Global Settlement Order.**  The *Order Approving Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* entered by the Bankruptcy Court approving the Global Settlement Agreement in the Chapter 11 Cases pursuant to Bankruptcy Rule 9019, entered in bankruptcy case number 25-10341-nmc.

**1.1.62. Governmental Unit.**  Governmental Unit has the meaning as defined in section 101(27) of the Bankruptcy Code.

**1.1.63. Howard and Howard Litigation.**  The litigation case styled *NuMale Corporation v. Howard & Howard et. al.*, pending in the Eighth Judicial District Court, Clark County, Nevada, as case number A-25-970072-C.

**1.1.64. Holder.**  A Person holding an Equity Interest or Claim.

**1.1.65. Hassoun Claim.**  The judgment against Basel Said Hassoun arising from an arbitration award entered by Arbitrator Ralph C. Anzivino against Dr. Hassoun, confirmed on or about August 25, 2022, by the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2020-206, as confirmed by the Court of Civil Appeals of the State of Oklahoma in Case No. 120,720 on or about June 21, 2024.

**1.1.66. Impaired.**  Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.67. Initial Distribution.**  The Distribution tendered by the Trustee and/or the Reorganized Debtors, as applicable, to the Holders of the Allowed Sanchez Claim and Allowed General Unsecured Claims.  The Initial Distribution shall be calculated as the Beazley Settlement Payment proceeds net of Allowed Administrative Claims that have not been deferred to payment from the Liquidation Trust, Allowed unclassified Claims, Allowed Secured Claims in Classes 1 through 7, Allowed Priority Unsecured Claims, Allowed Cure payments set forth on Schedule 6.3 of this Plan, and the Liquidation Trust Reserve.

**1.1.68. Insider.**  This term has the meaning ascribed to it in section 101(31) of the Bankruptcy Code.

**1.1.69. Intercompany Claims.**  Claims held by one the Debtors against one or more of the other Debtors.

**1.1.70. Kalamata Claim.**  The Claim asserted by Kalamata Capital Group, LLC against each of the Debtors, among others, in proof of claim number 9 filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $86,628.41.

**1.1.71. LCF Group Claim.**  The Claim asserted by The LCF Group, Inc. against NuMale New Mexico, Feliciano NuMale, NuMale Corp, NuMale Florida, among others, in duplicate proof of claim number 22 filed in bankruptcy case number 25-10341-nmc, and proof of claim number 1 filed in bankruptcy case number 25-10347-nmc, which asserted Claim is in the amount of $113,378.47; proof of claim number 3 filed in bankruptcy case number 25-10342, which asserted Claim is in the amount of $149,466.02; and late filed claim number 42 in bankruptcy case number 25-10341-nmc, which is in the amount of $242,599.07 and is based on an asserted guarantor obligation.

**1.1.72. Liability Insurance Policies.**  All insurance policies and insurance obligations maintained by the Debtors as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies, and the proceeds thereof, including without limitation, insurance policies issued by or involving Arch Insurance Company and Chubb, including without limitation Policy Number J06578044 and Policy Number SPL0066696-03.  For the avoidance of doubt, the term Liability Insurance Policies expressly excludes (x) Beazley and the Beazley Policies, and (y) any other policy obligations released pursuant to the Global Settlement Agreement.

**1.1.73. Lien.** This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.74. Liquidation Trust.**  That certain grantor trust created for the benefit of the Holders of Administrative Claims that have deferred payment, the Allowed Sanchez Claim, Allowed General Unsecured Claims, the Contingent Expense Reimbursement, and Allowed Subordinated Claims, and as further described in Section 5 of this Plan.

**1.1.75. Liquidation Trust Agreement.**  The trust agreement filed in the Plan Supplement that establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Liquidation Trustee.

**1.1.76. Liquidation Trust Assets.**  The Liquidation Trust Reserve, plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve.

**1.1.77. Liquidation Trust Beneficiaries.**  The Holders of Liquidation Trust Interests.

**1.1.78. Liquidation Trust Expenses.**  The costs, expenses, or other obligations incurred, payable, or owed by the Liquidation Trust from and after the Effective Date, including the reasonable fees, costs, and expenses of the Liquidation Trustee and his or her attorneys and other professionals, relating to, among other things, the implementation of the Plan and the administration of the Liquidation Trust.

**1.1.79. Liquidation Trust Interests.**  Collectively, the beneficial interests in the Liquidation Trust distributed to the Holders of the: (i) Allowed Administrative Claims that have agreed in writing to defer payment or partial payment of such Allowed Claims; (ii) Contingent Expense Reimbursement; (iii) Allowed Sanchez Claim; (iv) Allowed General Unsecured Claims; (v) Allowed Subordinated Claims; and (vi) Beazley solely with respect to the Contingent Expense Reimbursement.

**1.1.80. Liquidation Trust Reserve.**  The sum of $150,000.00 paid on the Effective Date to the Liquidation Trust from the Beazley Settlement Payment.

**1.1.81.  Liquidation Trustee.**  Michael W. Carmel.

**1.1.82. Litigation Claims.**   All other rights, claims, torts, liens, liabilities, obligations, actions, Causes of Action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtors or the Estates may have against any Person, including but not limited to, those listed on Schedule 1.1.82 hereto.  Failure to list a Litigation Claim on Schedule 1.1.82 shall not constitute a waiver or release by the Debtors and/or the Estates of such Litigation Claim.  Each of the Litigation Claims is preserved for the benefit of the Liquidation Trust and the Liquidation Trust Beneficiaries.  For the avoidance of doubt, the term Litigation Claims does not include (i) any Causes of Action held by the Debtors or the Estates against Beazley or Sanchez, all of which have been released pursuant to the Global Settlement Agreement; and (ii) the Palubicki and Feliciano Claims, which were transferred to Beazley pursuant to the Global Settlement Agreement.

**1.1.83. Michael E. Sanchez Qualified Settlement Fund.** The Qualified Settlement Fund ("QSF") established pursuant to Section 468B of the Internal Regulation Code and Treasury Regulations promulgated thereunder, consisting of an escrow account with Flatirons Bank, which serves as Fund Administrator and Escrow Agent and shall administer the Fund in accordance with the Justice Escrow Account Agreement. The Michael E. Sanchez QSF has been assigned a W-9 Taxpayer Identification Number and certification. All payments due to Sanchez as a Creditor under the Plan of Reorganization or Global Settlement Agreement shall be made payable to the Michael E. Sanchez QSF in order to fully preserve his rights and protections as a bodily injury claimant under the Internal Revenue Code.

**1.1.84. Net Distributable Trust Assets.** The Liquidation Trust Assets from and after the Effective Date available to the Liquidation Trust Beneficiaries after payment of all Liquidation Trust Expenses.

**1.1.85. Nevada Secretary of State.** The Secretary of State of the State of Nevada.

**1.1.86. Newtek Claim.** The Claim asserted by Newtek Bank N.A. aka Newtek Small Business Finance, LLC against NuMale Corp, among others, in proof of claim number 24, filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $5,033,301.46.

**1.1.87. Newtek Secured Claim.** The Secured Claim portion of the Newtek Claim in the amount of $1,000,000 pursuant to the terms of the Newtek Settlement.

**1.1.88. Newtek Settlement.** The settlement by and between the Trustee, Debtors, Justin Pulliam, and Irma L. Pulliam, whereby the Newtek Claim shall be an Allowed Secured Claim against the Debtors in the amount of $1,000,000; the balance of the Allowed Newtek Claim is a General Unsecured Claim; Justin Pulliam and Irma L. Pulliam shall be released from all liability and liens in connection with the Newtek Claim; and Newtek Bank N.A. shall retain all rights to pursue recovery of the balance of the Newtek Claim from all obligors and guarantors that are not party to the Newtek Settlement. The Newtek Settlement is memorialized in the Settlement and Release Agreement, which shall be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

**1.1.89. New Value Contribution.** The NuMale Settling Defendants': (i) contribution to the Debtors and the Estates of each and every claim they could conceivably assert against Beazley, which claims were settled and released by the Global Settlement Agreement and Global Settlement Order; (ii) contribution to the Estates of each and every claim they could conceivably assert under any Liability Insurance Policies held by any of the Debtors (solely excluding the claims each released against Beazley and Sanchez in the Global Settlement Agreement); (iii) the agreement regarding the prosecution of the Quintairos Non-Debtor Claims as set forth in Section 5.12 of this Plan; (iv) the voluntary subordination of the NuMale Albuquerque Claim; and (v) the voluntary cancellation and release of the Intercompany Claims.

**1.1.90. NuMale Albuquerque Claim.** The General Unsecured Claim asserted by NuMale Albuquerque LLC against NuMale Corp in an amount not to exceed $1,025,000, inclusive of the scheduled claim in the amount of $1,080,292.91.

**1.1.91. NuMale Corp.** NuMale Corporation, a Nevada corporation, the debtor in bankruptcy case number 25-10341-nmc pending in the Bankruptcy Court.

**1.1.92. NuMedical SC.** NuMedical SC, a Wisconsin service corporation, the debtor in bankruptcy case number 25-10343-nmc pending in the Bankruptcy Court.

**1.1.93. NuMale Colorado.** NuMale Colorado SC, a Colorado service corporation, the debtor in bankruptcy case number 25-10344-nmc pending in the Bankruptcy Court.

**1.1.94. NuMale Florida.** NuMale Florida TB PLLC, a Florida professional limited liability company, the debtor in bankruptcy case number 25-10345-nmc pending in the Bankruptcy Court.

**1.1.95. NuMale Nebraska.** NuMale Nebraska LLC, a Nebraska limited liability company, the debtor in bankruptcy case number 25-10346-nmc pending in the Bankruptcy Court.

**1.1.96. NuMale New Mexico SC.** NuMale New Mexico SC, a Wisconsin service corporation, the debtor in bankruptcy case number 25-10347-nmc pending in the Bankruptcy Court.

**1.1.97. NuMale Settling Defendants.** Collectively, Justin Pulliam, Christopher Asandra, NuMale Corp, NuMale New Mexico SC, and NuMale Albuquerque LLC.

**1.1.98. N2 Litigation Claim.** All claims, causes of action, or rights held by the Debtors' prior to the Petition Date solely against The N2 Company and its digital services division, Hyport Digital.

**1.1.99. Palubicki and Feliciano Claims.** All Claims, Causes of Action or rights held by the Debtors or their Estates or their respective direct and indirect subsidiaries, whether arising prior to or after the Petition Date, against Brad Palubicki, Eva Gabriela Farmer de la Torre, Carlos Feliciano, any entities they respectively own or control and any of their respective subsequent transferees, including the claims and causes of action asserted in the adversary proceeding number 25-01155-nmc and the Palubicki Whistleblower Claims (as defined in the Global Settlement Agreement).

**1.1.100. Person.** An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit, or any subdivision thereof, or any other entity.

**1.1.101. Petition Date.** January 22, 2025, the date on which voluntary Chapter 11 petition was filed by Debtors, thereby commencing the Chapter 11 Cases.

**1.1.102. Plan.** This plan of reorganization, either in its present form or as it may be amended, supplemented, or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.103. Plan Supplement.** Collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments

referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be filed with the Bankruptcy Court. The Trustee shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.  For the avoidance of doubt the Plan Supplement and any amendments thereto shall comply with any consent rights set forth in the Plan or the Global Settlement Agreement, as applicable.

**1.1.104. Priority Tax Claims.**  Any and all governmental unit Claims accorded priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

**1.1.105. Priority Unsecured Claims.**  Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, except under Section 507(a)(2) and Section 507(a)(3).

**1.1.106. Professional Fees.** The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328 or 1102 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 363(b) or 503(b) of the Bankruptcy Code or by other Final Order.

**1.1.107. Proof of Claim.**  A proof of Claim filed by a Creditor in accordance with Section 501 of the Bankruptcy Code and Bankruptcy Rule 3001.

**1.1.108. Pro Rata.**  The ratio of an Allowed Claim in a particular class to the aggregate amount of all such Allowed Claims in any such Class.

**1.1.109. Pulliam Administrative Claim.**  The Administrative Claim of Justin Pulliam arising from post-petition wages and unreimbursed expenses incurred in the ordinary course of the Debtors' operations post-petition, which expenses shall be established through receipts and other documentation acceptable to the Trustee in his sole reasonable discretion, which amount shall not exceed $300,000.00.  The wages and expense reimbursement approved by the Trustee shall be an Allowed Administrative Claim.

**1.1.110. Pulliam Claims.**  Together, the Pulliam Administrative Claim, the Pulliam Priority Claim, and the Pulliam Unsecured Claim.

**1.1.111. Pulliam Priority Claim.** The Claim asserted by Justin Pulliam for unpaid pre-petition wages, which Claim shall be Allowed in the statutory amount of $15,150.00.

**1.1.112. Pulliam Unsecured Claim.** The Unsecured Claim portion of the Claim asserted by Justin Pulliam against NuMale New Mexico SC in proof of claim number 4 filed in bankruptcy case number 25-10347-nmc, which amount is subject to determination by agreement of the Trustee and Justin Pulliam upon provision of satisfactory evidence and/or Final Order of the Bankruptcy Court.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.113. Quintairos Non-Debtor Claims.** All rights, claims, and causes of action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates held or controlled by the non-Debtor NuMale Settling Defendants.

**1.1.114. Quintairos Claims.** All of the Debtors and the Estates' Causes of Action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates.

**1.1.115. Record Date.** The Confirmation Date for the purpose of determining the Holders of Equity Interests.

**1.1.116. Rejection Damages Claim.** A Claim arising from any Debtor's rejection of an Executory Contract or Unexpired Lease.

**1.1.117. Rejection Damages Claim Bar Date.** The end of the first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date.

**1.1.118. Reinstated or Reinstatement.** These terms shall mean: (i) leaving unaltered the legal, equitable, and contractual rights of the Holder of a Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) Curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants, or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required in order to accomplish Reinstatement.

**1.1.119. Reorganized Debtors.** This term means collectively, Reorganized NuMale Corp, Reorganized Felicia NuMale, Reorganized NuMedical SC, Reorganized NuMale Colorado, Reorganized NuMale Florida, Reorganized NuMale Nebraska, and Reorganized NuMale New Mexico. As set forth more fully in Section 5.16 of the Plan, Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.

**1.1.120. Reorganized Feliciano NuMale.** This term means Feliciano NuMale as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.121. Reorganized NuMale Colorado.**  This term means NuMale Colorado as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.122. Reorganized NuMale Corp.**  This term means NuMale Corp as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.123. Reorganized NuMale Florida.**  This term means NuMale Floria as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.124. Reorganized NuMale Nebraska.**  This term means NuMale Nebraska as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.125. Reorganized NuMale New Mexico.**  This term means NuMale New Mexico as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.126. Reorganized NuMedical SC.**  This term means NuMedical SC as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.127. Sanchez.**  Michael E. Sanchez.

**1.1.128. Sanchez Claim.**  The unsecured Claim held by Sanchez as asserted in proof of claim number 7 filed in bankruptcy case number 25-10341-nmc and proof of claim number 3 filed in bankruptcy case number 25-10347-nmc, in the asserted amount of $579,442,390.01 as of the Petition Date, which Claim is Allowed in the amount of $410,000,000 pursuant to the terms of the Global Settlement Agreement.

**1.1.129. Secured Claim.**  A Claim that is secured by a Lien against property of the Estates to the extent of the value of any interest in such property of the Estates securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.130. Schedules.**  The schedules of assets and liabilities and any amendments thereto filed by the Debtors with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.131. Subordinated Claims.**  Unless determined by Final Order to be entitled to treatment in Class 10, the following Claims that are voluntarily equitably subordinated pursuant to the terms of the Global Settlement Agreement and/or equitably subordinated pursuant to section 510(c) of the Bankruptcy Code: (i) the NuMale Albuquerque Claim, and (ii) all General Unsecured Claims asserted by Brad Palubicki; Carlos Feliciano; NMC Illinois, LLC; Nevada NuMale, LLC; NuMale Chicago LLC, and every other Insider and Affiliate of any of the Debtors, solely excluding the Asandra Claim and the Pulliam Claims.  For the avoidance of doubt, the Trustee has sought the disallowance and equitable subordination of the Claims asserted by Brad Palubicki and Carlos Feliciano in a pending Adversary Proceeding, thereby rendering them Disputed Claims that will only qualify as Subordinated Claims should the Disputed Claims be Allowed by Final Order of the Bankruptcy Court.

**1.1.132. Tax Code.** The Internal Revenue Code of 1986, as amended.

**1.1.133. Taxes.** All income, franchise, excise, sales, use, employment, withholding, property, payroll, or other taxes, assessments of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.

**1.1.134. Top Tier Claim.** The Claim asserted by Proventure d/b/a Top Tier Capital against Feliciano NuMale, NuMale New Mexico SC, and NuMale Nebraska, among others, in duplicate proof of claim number 21 filed in bankruptcy case number 25-10341-nmc and proof of claim numbers 1 and 2 filed in bankruptcy case number 25-10342, which asserted Claim is in the amount of $263,942.88.

**1.1.135. Trustee.** Michael W. Carmel, the Chapter 11 Trustee in the Chapter 11 Cases.

**1.1.136. Trustee Fees.** The fees and costs awarded to the Trustee pursuant to Section 326 of the Bankruptcy Code.

**1.1.137. Unexpired Lease.** A lease of real property or personal property to which the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code**.**

**1.1.138. Unimpaired.** This term has the meaning as set forth in Section 1124 of the Bankruptcy Code and that has not been terminated or otherwise concluded on the Effective Date.

**1.1.139. Unsecured Claim.** Any Claim that is not a Secured Claim, a Priority Tax Claim, a Priority Unsecured Claim, or an Administrative Claim.

**1.2.    Rules of Interpretation.** For purposes of this Plan only: (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

## 2.  TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.    General.** Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims against Debtors set forth in this Article 2 are not classified within any Class. The Holders of such

Claims are not entitled to vote on this Plan. The treatment of the Claims set forth in this Article 2 is consistent with the requirements of Section 1129(a)(9) of the Bankruptcy Code.

**2.2.    Treatment of Administrative Claims.**    To the extent an Allowed Administrative Claim has not been paid prior to the Effective Date in accordance with an order of the Bankruptcy Court, each Allowed Administrative Claim shall be paid upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the first (1st) Business Day that is fourteen (14) days after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, and the Holder of the Administrative Claim shall agree upon.

**2.3.    Treatment of Priority Tax Claims.**    Each Allowed Priority Tax Claim, if any, shall be paid in full in Cash by the Trustee or Reorganized Debtors, as applicable, on the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the first (1st) Business Day that is fourteen (14) days after such  Priority Tax Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Priority Tax Claim and the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, shall agree.  Until the Allowed Priority Tax Claim is paid in full, the unpaid balance shall accrue statutory interest from the Effective Date fixed at the applicable federal or state statutory rate in effect with respect to such Priority Tax Claim on the Petition Date.

**2.4.    Requests for Payment.**    All requests for allowance and payment of Administrative Claims against the Debtors and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, and/or the Liquidation Trust.  All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees.  Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and the Reorganized Debtors or Liquidation Trustee, as applicable, may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

The failure to file a request for payment of an Administrative Claim on or before the Administrative Claim Bar Date shall result in such Administrative Claim being forever disallowed, barred, and expunged in its entirety without further notice to any party, or action, approval, or order of the Bankruptcy Court.  For the avoidance of doubt, this includes any trade accounts payable, operating expenses, deposit reimbursements, accrued expenses, and other liabilities of the Debtors arising in the ordinary course of business after the Petition Date.

## 3.  DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1.    Determination of Claims and Equity Interests Within Classes.**    Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Interests (except unclassified Claims) are placed in the Classes described below.  A Claim or Equity Interest is classified in a particular Class only to the extent that the

Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  With respect to Classes of Claims described as Unimpaired under this Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtors, the Liquidation Trustee, and the Reorganized Debtors regarding such Claims, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

### 3.2.    Summary of Classification.

| Class | Description | Treatment | Estimated Asserted Claim Amounts |
|---|---|---|---|
| Class 1 | Newtek Secured Claim | Unimpaired; No solicitation required. | $1,000,000.00 |
| Class 2 | Kalamata Claim | Unimpaired. No solicitation required. | $86,628.42 (amount is disputed) |
| Class 3 | EBF Holdings Claim | Unimpaired. No solicitation required. | $32,317.50 (amount is disputed) |
| Class 4 | Fox Funding Claim | Unimpaired. No solicitation required. | $78,225.00 (amount is disputed) |
| Class 5 | Top Tier Claim | Unimpaired. No solicitation required. | $263,942.88 (amount is disputed) |
| Class 6 | LCF Group Claim | Unimpaired. No solicitation required. | $505,443.56 (amount is disputed) |
| Class 7 | Ford Motor Claim | Unimpaired. No solicitation required. | $21,593.98 |
| Class 8 | Priority Unsecured Claims | Unimpaired. No solicitation required. | $15,150.00 |
| Class 9 | Sanchez Claim | Impaired. Solicitation required. | Allowed in the amount of $410,000,000.00 |
| Class 10 | General Unsecured Claims | Impaired. Solicitation required. | $8,907,336.79 (amounts are disputed) |
| Class 11 | Intercompany Claims | Impaired. Solicitation required. | $3,771,462.03 (amounts are disputed) |
| Class 12 | Subordinated Claims | Impaired. Solicitation required. | $4,694,795.10 (amounts are disputed) |

| Class 13 | Equity Interests | Impaired; deemed rejected. No solicitation required. | N/A |

## 4. TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN

**4.1.    Class 1 – Newtek Secured Claim.**    Class 1 consists of the Newtek Claim.  The Allowed Claim in Class 1 shall be treated as follows:

In accordance with the terms of the Newtek Settlement, in full and final satisfaction of the Debtors, Justin Pulliam, and Irma Pulliam's obligations with respect to the Newtek Secured Claim, Newtek shall be paid $1,000,000 in Cash by the Reorganized Debtors upon the Effective Date or as soon thereafter as practicable.

The Creditor in Class 1 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.2.    Class 2 – Kalamata Claim.** Class 2 consists of the Kalamata Claim.  The Allowed Claim in Class 2 shall be treated as follows:

The Trustee disputes the validity of the Kalamata Claim and will be seeking disallowance of the Kalamata Claim.  Should the Bankruptcy Court determine that any portion of the Kalamata Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the Kalamata Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.  Should the Bankruptcy Court determine that any portion of the Kalamata Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the Kalamata Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 2 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.3.    Class 3 – EBF Holdings Claim.** Class 3 consists of the EBF Holdings Claim.  The Allowed Claim in Class 3 shall be treated as follows:

The Trustee disputes the validity of the EBF Holdings Claim and will be seeking disallowance of the EBF Holdings Claim.  Should the Bankruptcy Court determine that any portion of the EBF Holdings Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the EBF Holdings Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.  Should the Bankruptcy Court determine that any portion of the EBF Holdings Claim is an Allowed

Unsecured Claim, such Allowed Unsecured Claim portion of the EBF Holdings Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 3 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.4.    Class 4 – Fox Funding Claim.** Class 4 consists of the Fox Funding Claim.  The Allowed Claim in Class 4 shall be treated as follows:

The Trustee disputes the validity of the Fox Funding Claim and will be seeking disallowance of the Fox Funding Claim.  Should the Bankruptcy Court determine that any portion of the Fox Funding Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the Fox Funding Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.  Should the Bankruptcy Court determine that any portion of the Fox Funding Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the Fox Funding Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 4 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.5.    Class 5 – Top Tier Claim.** Class 5 consists of the Top Tier Claim.  The Allowed Claim in Class 5 shall be treated as follows:

The Trustee disputes the validity of the Top Tier Claim and will be seeking disallowance of the Top Tier Claim.  Should the Bankruptcy Court determine that any portion of the Top Tier Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the Fox Funding Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.  Should the Bankruptcy Court determine that any portion of the Top Tier Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the Top Tier Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 5 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.6.    Class 6 – LCF Group Claim.** Class 6 consists of the LCF Group Claim.  The Allowed Claim in Class 6 shall be treated as follows:

The Trustee disputes the validity of the LCF Group Claim and will be seeking disallowance of the LCF Group Claim. Should the Bankruptcy Court determine that any portion of the LCF Group Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the LCF Group Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors. Should the Bankruptcy Court determine that any portion of the LCF Group Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the LCF Group Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 6 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.7.    Class 7 – Ford Motor Claim.**    Class 7 is comprised of the Allowed Ford Motor Claim.

The Allowed Ford Motor Claim shall, in full and final satisfaction of such claim, be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first (1st) Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.

The Creditor in Class 7 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.8.    Class 8 – Priority Unsecured Claims.**    Class 8 is comprised of the Allowed Priority Unsecured Claims. The Allowed Claims in Class 8, if any, shall be treated as follows:

Each Allowed Priority Unsecured Claim, shall, in full and final satisfaction of such Claim, be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first (1st) Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.

Creditors in Class 8 are Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and are not entitled to vote on this Plan.

**4.9.    Class 9 – Sanchez Claim.**    Class 9 is comprised of the Sanchez Claim. The Sanchez Claim is Allowed in the amount of $410,000,000. In full and final satisfaction of such Claim, the Allowed Sanchez Claim shall be treated as follows:

    (i)    In accordance with the terms of the Global Settlement Agreement, unless paid by the Trustee prior to the Effective Date pursuant to the terms of the Global Settlement Agreement, within two days of the Effective Date, Sanchez shall be paid in Cash its Pro Rata share of the Initial Distribution; provided, however, that Sanchez shall receive no more and no less than the sum of $96,500,000 from the Initial Distribution not subject to assessment of bankruptcy fees or costs, and payment shall be made as set forth in the Global Settlement Agreement; and

    (ii)    The remaining balance of the Allowed Sanchez Claim after the Initial Distribution is $313,500,000. Sanchez shall receive his Pro Rata share of the Liquidation Trust Interests and is entitled to all Distributions in the order of priority set forth in the Liquidation Trust Agreement.

Class 9 is Impaired under this Plan. The Holder of the Class 9 Claim is entitled to vote on this Plan.

**4.10.   Class 10 – General Unsecured Claims.**  Class 10 is comprised of the Allowed General Unsecured Claims. In full and final satisfaction of such Claims, each Allowed Claim in Class 10 shall be treated as follows:

    (i)    Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of a General Unsecured Claim shall be paid in Cash its Pro Rata share of the Initial Distribution after upon the latest of: (i) the sixtieth (60th) day after the Effective Date, or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first (1st) Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors; and

    (ii)    Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Liquidation Trust Interests and is entitled to all Distributions in the order of priority set forth in the Liquidation Trust Agreement.

Class 10 is Impaired under this Plan. The Holders of the Class 10 Allowed General Unsecured Claims are Impaired and entitled to vote on this Plan.

**4.11.   Class 11 – Intercompany Claims.**  Class 11 is comprised of the Intercompany Claims. In full and final satisfaction of such Claims, the Allowed Claims in Class 11 shall be treated as follows:

All Intercompany Claims shall be cancelled, released, and extinguished as of the Effective Date, and no Distribution shall be made on account of any such Claim.

Class 11 is Impaired under this Plan. The Holders of the Class 11 Allowed Intercompany Claims are entitled to vote on this Plan.

**4.12.  Class 12 – Subordinated Claims.**  Class 12 is comprised of the Subordinated Claims.  In full and final satisfaction of such Claim, the Allowed Claims in Class 12 shall be treated as follows:

Each Holder of an Allowed Subordinated Claim in Class 12 shall receive its Pro Rata share of the Liquidation Trust Interests and is entitled to all Distributions in the order of priority set forth in the Liquidation Trust Agreement.

Class 12 is Impaired under this Plan.  The Holders of the Class 12 Allowed Subordinated Claims are entitled to vote on this Plan.

**4.13.  Class 13 – Equity Interests.**  Class 13 is comprised of the Equity Interests in the Debtors as of the Record Date.  The Allowed Equity Interests in Class 13 shall be treated as follows:

On the Effective Date, all Allowed Equity Interests shall be deemed cancelled and extinguished without further act or action under any applicable agreement, law, regulation, order, or rule.  No Distribution shall be made on account of any Equity Interest.

Class 13 is Impaired under this Plan and deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code, and is not entitled to vote on this Plan.

## 5.  MEANS FOR IMPLEMENTATION OF PLAN

**5.1.  Overview.**  This Plan is made consistent with the terms of the Global Settlement Agreement and Global Settlement Order and provides for: (i) the reorganization of the Debtors pursuant to the terms of the Plan; (ii) effectuation of the 363 Sale to the extent not closed prior to the Effective Date; (iii) payment of Effective Date payments by the Reorganized Debtors and the funding of the Disputed Claim Reserve; and (iv) the creation of the Liquidation Trust and a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, compromise, and liquidate the Litigation Claims and the other Liquidation Trust Assets to maximize additional recoveries by the Holders of Allowed Claims.

**5.2.  General Settlement of Claims.**  Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, the Estates, and the Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.

**5.3.  Substantive Consolidation for Plan Purposes.**  The Plan serves as a motion by the Trustee seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes.  Such substantive consolidation will not (i) alter the state of organization of any Debtor for purposes of determining applicable law of any of the Litigation Claim; (ii) alter or impair the legal and equitable rights of any party in interest including the

Liquidation Trustee to enforce any of the Litigation Claims; (iii) otherwise impair, release, discharge, extinguish or affect any of the substantive rights of the parties in interest (including any defenses to any such Litigation Claims); or (iv) alter or impair the 363 Assets.

If substantive consolidation for plan purposes is ordered, then on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims. All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one single collective obligation of the Debtors. Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

Notwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor.

**5.4.    Beazley Settlement Payment on the Effective Date.**  Within ten (10) days of the Global Settlement Order becoming a Final Order, the proceeds from the Beazley Settlement Payment shall be transferred to Michael W. Carmel, in his capacity as the Trustee, the Liquidation Trustee, and/or as the sole manager, officer, and director of the Reorganized Debtors, to enable Reorganized Debtors to make the Effective Date payments, to fund the Disputed Claim Reserve, and to fund the Liquidation Trust Reserve. For the avoidance of doubt, the Beazley Settlement Payment proceeds shall be held in a bank account under the sole control of Michael W. Carmel, in his capacity as Trustee, the Liquidation Trustee, and/or as the sole manager, officer, and director of the Reorganized Debtors, as applicable. Neither the Debtors nor the current or former shareholders, members, managers, officers, directors, employees, or agents of the Debtors shall have access to, rights to, or control over, the Beazley Settlement Payment.

**5.5.    Corporate Action.**  On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners, or other equity holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, or officers of the Debtors.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing manager, director, and officer of the Reorganized Debtors will be deemed to have resigned on the Effective Date without any further corporate action; (ii) the Trustee shall be deemed the sole manager, director, officer, and representative of the Reorganized Debtors to exercise the rights, power, and authority of the Reorganized Debtors under applicable provisions of this Plan and bankruptcy and non-bankruptcy law; and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtors' operating agreements or articles of incorporation, as applicable, such that the provisions

of this Plan can be effectuated.

On and after the Effective Date, the Trustee may, in the name of the Reorganized Debtors, take all steps to effectuate the 363 Sale in accordance with the 363 Bid Procedures and the 363 Sale Order. On and after the Effective Date, the Trustee may take all additional actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions imposed by the Global Settlement Agreement, the Global Settlement Order, the Plan, and/or the Confirmation Order.

**5.6.** **Distributions.** Except as provided herein, all Distributions shall be made by the Liquidation Trustee or the Reorganized Debtors in accordance with the terms of the Plan. The Liquidation Trustee or the Reorganized Debtors shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Liquidation Trustee and the Reorganized Debtors shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Liquidation Trustee and the Reorganized Debtors by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidation Trustee and/or the Reorganized Debtors to be necessary and proper to implement the provisions hereof.

**5.7.** **Effective Date Distributions.** On the Effective Date, the Reorganized Debtors shall make the Distributions payable on the Effective Date and under this Plan from the Beazley Settlement Payment proceeds. On the Effective Date, the Reorganized Debtors shall also establish the Disputed Claim Reserve. Unless otherwise ordered by the Bankruptcy Court, within ten (10) days of a Disputed Claim becoming an Allowed Claim, the Reorganized Debtors shall Distribute to the Holder of such Allowed Claim from the Disputed Claim Reserve, the portion of their Allowed Claim that would have been paid on the Effective Date had the Claim not been Disputed. The Reorganized Debtors shall maintain the Disputed Claim Reserve until all Disputed Claims have been resolved by Final Order, at which point, the Reorganized Debtors shall tender any remaining funds in the Disputed Claim Reserve to the Liquidation Trust and close the Disputed Claim Reserve.

**5.8.** **Liquidation Trust.** Prior to the Effective Date, the Trustee shall execute the Liquidation Trust Agreement. The Liquidation Trust Agreement shall be in the form included in the Plan Supplement and acceptable to the Trustee, Beazley, and Sanchez, in their respective sole discretion.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating Distributions to Creditors consistent with the Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

All Litigation Claims are expressly preserved for, and shall vest in, the Liquidation Trust.

On the Effective Date, the Liquidation Trust Assets, which includes the Litigation Claims, shall vest automatically in the Liquidation Trust.  The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries.  The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust.  The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtors' rights, title, and interest in the Liquidation Trust Assets, and the Debtors and Estates will have no further interest in or with respect to the Liquidation Trust Assets.

Except as otherwise provided in this Plan, on and after the Effective Date, all Liquidation Trust Assets will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests.  All parties shall execute any documents or other instruments as necessary to cause title to the applicable Liquidation Trust Assets to be transferred to the Liquidation Trust.  The Liquidation Trust Assets will be held in trust for the benefit of all Liquidation Trust Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.

The Confirmation Order shall constitute a determination that the transfers of the Liquidation Trust Assets to the Liquidation Trust are legal and valid and consistent with applicable law, including Colorado, Florida, Nevada, and Wisconsin state law.

Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Liquidation Trust Expenses in the ordinary course of business without further notice to Creditors or Holders of Equity Interests or approval of the Bankruptcy Court.

In pursuing any Litigation Claim, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Litigation Claim may be brought under section 546 of the Bankruptcy Code.  The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes.  The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Litigation Claims, any attorney-client privilege, work-product privilege, joint interest privilege, or other privilege or immunity attaching to any prepetition and/or pre-Effective Date documents or communications relating to the Litigation Claims shall be transferred to and shall vest in the Liquidation Trust.  The Liquidation Trust's receipt of such privileges or immunities associated with the Litigation Claims shall not operate as a waiver of those privileges or immunities possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege or immunity.  The Liquidation Trust shall also be vested with the Estates' rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004.  The Liquidation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for by the Plan and the

Liquidation Trust Agreement.

Except as otherwise ordered by the Bankruptcy Court, the Liquidation Trust Expenses on or after then Effective Date shall be paid in the ordinary course of business in accordance with the Liquidation Trust Agreement, without further order of the Bankruptcy Court and without notice to any other party.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the Distributions made by it, and other matters required to be included in such report in accordance with the Liquidation Trust Agreement.  In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities."  To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act or other applicable law.  If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act, or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the Securities and Exchange Commission to the extent required by applicable law.

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the date on which: (i) all material Liquidation Trust Assets are liquidated and/or monetized in accordance with the Plan; provided, however, for the avoidance of doubt, that the Liquidation Trustee shall not be required to pursue any Litigation Claims or take any other action that the Liquidation Trustee determines, in his sole discretion, is not likely to yield sufficient additional proceeds to justify further pursuit or action; (ii) the funds in the Liquidation Trust have been distributed in accordance with the Plan; and (iii) the order closing the Chapter 11 Cases is a Final Order.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Liquidation Trust Agreement shall govern.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidation Trustee of the Liquidation Trust Assets and proceeds thereof, including the Litigation Claims and proceeds thereof, and the rights in and proceeds of any Liability Insurance Policies.  The proceeds of Litigation Claims are material to the implementation of this Plan and the recoveries to Creditors.**

**5.9.    Liquidation Trustee Compensation.**    The Liquidation Trustee shall be compensated consistent with the calculation and provisions of section 326 of the Bankruptcy Code.

**5.10.    Liquidation Trustee as Representative of the Debtors' Estates.**  On the Effective Date, the Liquidation Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement, including the right to (i) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Liquidation Trust Agreement; (ii) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning, or compromising any Litigation Claims; and (iii) employ and compensate professionals and other agents consistent with the provisions of the Plan.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidation Trustee shall automatically be granted, have, and be vested with exclusive standing and authority to: (i) bring and prosecute any Litigation Claim in a court of competent jurisdiction; and (ii) negotiate, settle, waive, or otherwise resolve any Litigation Claims.  For the further avoidance of doubt, upon the Effective Date, the Liquidation Trustee shall automatically be: (i) deemed a representative of the Debtors and the Estates with respect to all applicable Litigation Claims and any related Liability Insurance Policies; and (ii) granted and have the right to control any and all privileges and protections on behalf of the Debtors and the Estates with respect to all applicable Litigation Claims.  Nothing in this Plan shall require the Liquidation Trustee to prosecute or pursue any Litigation Claim.

**5.11.    Powers of the Liquidation Trustee.**    The Liquidation Trustee shall be a representative of the Debtors' Estates and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution, negotiation, waiver, and/or settlement of any Litigation Claims.  Unless otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the duties and powers of the Liquidation Trustee shall include the following, without need of further Court approval, the power to:

(i) Implement this Plan, including any other powers necessary or incidental thereto;

(ii) Exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken to consummate the Plan and all transfers thereunder;

(iii) Make Distributions, or enable the Reorganized Debtors to make Distributions, to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves;

(iv) Use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making Distributions and fully consummating the Plan;

(v) Prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise);

(vi) Investigate and prosecute any and all Litigation Claims and compromise, settle, waive, and/or litigate any Litigation Claims;

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

(vii) Prepare and file tax returns for the Liquidation Trust to the extent required by law;

(viii) Employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his sole discretion, deems reasonably necessary to perform his duties under the Plan and Liquidation Trust Agreement, without further order of the Bankruptcy Court;

(viv) Satisfy and pay all Trust Expenses;

(x) Participate in or file any post-Effective Date motion(s) to amend or modify this Plan or the Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(xi) Participate in or file any action to enforce or interpret this Plan;

(xii) Bind the Liquidation Trust; and

(xiii) Take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

**5.12.    Prosecution of the Quintairos Claims and Quintairos Non-Debtor Claims.**  In exchange for the benefits and releases provided in the Global Settlement Agreement, the Liquidation Trust and the NuMale Settling Defendants shall jointly prosecute their respective Quintairos Claims and Quintairos Non-Debtor Claims, which claims shall be jointly prosecuted under the sole direction and control of the Liquidation Trustee.  In exchange for the benefits and releases received under the Global Settlement Agreement, the NuMale Settling Defendants agree that the Liquidation Trustee shall have sole authority to retain counsel, determine litigation strategy, engage in settlement negotiations, approve a settlement, and/or make other decisions with respect to such joint litigation of the Quintairos Claims and Quintairos Non-Debtor Claims, though the Liquidation Trustee agrees to consult with, and keep informed, the NuMale Settling Defendants regarding ongoing negotiations, strategy, and any resolution or settlement.

The NuMale Settling Defendants shall fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims and Quintairos Non-Debtor Claims, including in connection with providing documents and testimony necessary for the successful prosecution of such claims.

To the extent that the Quintairos Claims and Quintairos Non-Debtor Claims produce a monetary recovery, and to the extent they cannot otherwise agree, the Liquidation Trustee and the NuMale Settling Defendants shall participate in a mediation to determine how such recovery shall be allocated between the Quintairos Claims and Quintairos Non-Debtor Claims after payment of retained counsel and experts' fees and costs.  Within ten (10) days' written notice from the Liquidation Trustee that there is a monetary recovery on account of the Quintairos Claims and Quintairos Non-Debtor Claims, the Liquidation Trustee and the NuMale Settling Defendants shall jointly select a mediator to determine the allocation of such recovery amongst themselves.  If an agreement cannot be reached with respect to the identification of the mediator, one of the following mediators will be selected by the Liquidation Trustee: Bruce Markell or Miles Ruthberg.  The mediation will occur within thirty (30) days of the selection of the meditator unless otherwise agreed in writing by the Liquidation Trustee and each of the NuMale Settling Defendants.  If the

Liquidation Trustee and each of the NuMale Settling Defendants cannot agree on an allocation of the proceeds from the recovery of the Quintairos Claims and Quintairos Non-Debtor Claims at the mediation and the mediator determines, in the mediator's sole discretion, that the parties have reached an impasse, the mediator shall present a mediator's proposal for the proper allocation of the recovery from the Quintairos Claims and Quintairos Non-Debtor Claims between the Liquidation Trust and each of the NuMale Settling Defendants, which mediator's proposal shall be immediately binding on the Liquidation Trust and each of the NuMale Settling Defendants without any further order, act, or approval and without any right of appeal. Any resolution shall be noticed to the full matrix in the Chapter 11 Cases.

**5.13. Liquidation Trust Beneficiaries.** Each of the Liquidation Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidation Trustee expressly for such purpose based upon the Liquidation Trust Beneficiaries' Allowed Claim.

The ownership of Liquidation Trust Interests shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets; any right to call for a partition or division of such Liquidation Trust Assets; or to require an accounting, except as may be specifically provided herein. Ownership of a Liquidation Trust Interest (i) shall be noted in the books and records of the Liquidation Trust; and (ii) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

As set forth in more detail in the Liquidation Trust Agreement, the Liquidation Trust Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

**5.14. Distribution of Liquidation Trust Interests.** Upon the Effective Date, the Liquidation Trust Interests shall be distributed to the Liquation Trust Beneficiaries.

**5.15. Net Distributable Assets and Distribution Waterfall.** The source of all Distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof. Distributions to the Liquidation Trust Beneficiaries will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

As more fully set forth in the Liquidation Trust Agreement, Distributions of the Net Distributable Assets (excluding the monetary recovery net of legal fees for the Palubicki and Feliciano Claims) on account of the Liquidation Trust Interests shall be made in the following order and priority:

(i)     First, all Liquidation Trust Expenses shall be paid in full.

(ii)    Second, any Allowed Administrative Claims that were not satisfied by the Reorganized Debtors and were deferred for payment by the Liquidation Trust shall be paid in full.

(iii)   Third, the Contingent Expense Reimbursement shall be paid in full.

(iv)    Fourth, Allowed General Unsecured Claims shall receive their Pro Rata share of the Net Distributable Assets until all Allowed General Unsecured Claims are paid in full.

(v)    Fifth, Allowed Subordinated General Unsecured Claims shall receive their Pro Rata share of the Net Distributable Assets until all Allowed Subordinated General Unsecured Claims are paid in full.

Distributions of Net Distributable Assets shall not be made in respect of Allowed General Unsecured Claims and Allowed Subordinated General Unsecured Claims until Disputed Administrative Claims have been Allowed or Disallowed, and until all contingencies that could give rise to a liquidated Contingent Expense Reimbursement Claim have been finally resolved, including, where applicable, by a Final Order, and all payments in respect of the Contingent Expense Reimbursement Claim have been made.

**5.16.    Reorganization of Debtors and Vesting of Non-Litigation Assets.**    On the Effective Date, all Assets, including the 363 Assets if the 363 Sale has not yet closed (and solely excluding the Liquidation Trust Assets that shall vest in the Liquidation Trust as set forth in the Plan, and the Palubicki and Feliciano Claims, which shall be transferred to Beazley in connection with the Global Settlement Agreement) shall be vested in the Reorganized Debtors free and clear of all Liens, Claims, and Equity Interests, expect as otherwise expressly provided in the Plan.  For the avoidance of doubt, the Assets (other than the Liquidation Trust Assets and the Palubicki and Feliciano Claims) shall vest in the respective Reorganized Debtor that owned such revested Assets prepetition.  In exchange for Justin Pulliam's New Value Contribution, on the Effective Date, title to the Debtors' 2019 Ford F150 shall vest in Justin Pulliam, free and clear of all Liens, Claims, and Equity Interests.

On and after the Effective Date, subject to the requirements of the Plan, each Debtor will continue to exist as a separate limited liability company or corporation, as applicable, and shall retain all of the powers of a limited liability company or corporation, as applicable, under applicable non-bankruptcy law, and without prejudice to any right to amend its operating agreement or articles of incorporation (as applicable), dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence.

Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.  The Trustee shall continue to be compensated in accordance with the provisions of section 326 of the Bankruptcy Code.  Further, each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued as limited liability companies or corporations, as applicable, under the control of the Trustee following the Effective Date and subject to the terms of the Plan.

**5.17.    363 Sale.**  To the extent that the 363 Sale has not closed prior to the Effective Date, the Reorganized Debtors shall effectuate the 363 Sale as soon as practicable after the Effective Date in accordance with the 363 Bid Procedures and the 363 Sale Order.

**5.18.    Winddown of the Reorganized Debtors.**  Upon completion of the 363 Sale, the transfer of the 363 Assets to the prevailing bidder(s) in accordance with the terms of the 363 Sale Order, the transfer of the proceeds of the 363 Sale to the Liquidation Trust, the resolution of Disputed Claims with funds held in the Disputed Claims Reserve, and the completion of the Distributions required to be made by the Reorganized Debtors under this Plan, the Trustee shall take the necessary actions, in his business judgment, to wind-down and dissolve each of the Reorganized Debtors in accordance with applicable state law.  For the avoidance of doubt, prior to winding down and dissolving the Reorganized Debtors, the Trustee may take all actions necessary to preserve the value of the Reorganized Debtors in his sole discretion without obtaining approved of the Bankruptcy Court; provided, however, that the Trustee may, in his sole discretion, seek approval of, or file applicable motions with, the Bankruptcy Court prior to causing the Reorganized Debtors to take any actions.

**5.19.    Notice of Effectiveness.**  When the steps contemplated by Section 7.2 have been completed, the Debtors shall file with the Bankruptcy Court and serve upon all Creditors and potential Holders of Administrative Claims reasonably known to the Trustee (whether or not Disputed), a Notice of Effective Date of Plan, which shall include a notice of the Administrative Claim Bar Date.

**5.20.    Final Decree.**  At any time following the Effective Date, the Liquidation Trustee shall be authorized to file a motion for the entry of a final decree closing one or more of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

**5.21.    No Corporate Action Required.**  As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by this Plan and the Global Settlement Agreement; and (ii) the other matters provided for under or in furtherance of this Plan and the Global Settlement Agreement involving corporate action to be taken by or required of Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or officers of Debtors or the Trustee.

## 6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1.    Executory Contracts.**  Except for: (i) the Beazley Policies, and (ii) Executory Contracts and Unexpired Leases specifically addressed in this Plan or set forth on the schedule of Rejected Executed Contracts and Unexpired Leases attached as <u>Schedule 6.1</u> hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed assumed by the respective Debtor(s) on the Effective Date and assigned to the prevailing bidder(s) in connection with the 363 Sale.

**6.2.    Approval of Assumption and Assignment or Rejection.**  Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code section 365(a) of the assumption by the respective Debtor(s) and assignment to the prevailing

bidder(s) in connection with the 363 Sale of each Executory Contract and Unexpired Lease to which any Debtor is a party that is not the Beazley Policies, not listed on <u>Schedule 6.1</u>, not otherwise provided for in this Plan, and neither assigned, assumed and assigned, nor rejected by separate order of the Bankruptcy Court prior to the Effective Date; and (ii) rejection by the applicable Debtor(s) of each Executory Contract and Unexpired Lease to which such Debtor(s) are a party that is listed on <u>Schedule 6.1</u>. Upon the Effective Date, each counterparty to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to an assumption and assignment contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption and assignment. To the extent applicable, all Executory Contracts or Unexpired Leases assumed pursuant to this Article 6 shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of this Plan.

      **6.3.**    **Cure of Defaults.** The Reorganized Debtors shall make the Cure payments upon the latest of: (i) closing of the 363 Sale; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by the applicable Reorganized Debtor(s); or (iii) the first (1st) Business Day that is fourteen (14) days after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of the prevailing bidder(s) in connection with the 363 Sale to provide "adequate assurance of future performance" under the Executory Contract(s) or Unexpired Lease(s) assumed and assigned pursuant to this Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease.

      **6.4.**    **Objection to Cure Amounts.** Any party to an Executory Contract or Unexpired Lease that is being assumed pursuant hereto who objects to the Cure amount identified on <u>Schedule 6.3</u> or any alleged Cure amount that is not identified on <u>Schedule 6.3</u> must file and serve an objection on the Trustee and all parties entitled to notice by ECF in the Chapter 11 Cases, no less than five (5) days prior to the Confirmation Hearing. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts identified on <u>Schedule 6.3</u> of this Plan. If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of the prevailing bidder(s) in connection with the 363 Sale to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

      **6.5.**    **Confirmation Order.** The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption and assignment described in this Article 6 pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption and assignment by the respective Debtor(s).

**6.6.    Post-Petition Date Contracts and Leases.** Executory Contracts and Unexpired Leases entered into and other obligations incurred after the Petition Date by Debtors shall be assumed by the applicable Reorganized Debtor(s) on the Effective Date. Each such Executory Contract and Unexpired Lease shall be performed by the applicable Reorganized Debtor(s) in the ordinary course of its business.

**6.7.    Bar Date.** All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than fifteen (15) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

## 7.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**7.1.    Conditions to Confirmation**.    The following are conditions precedent to confirmation of the Plan:

**7.1.1.** The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to the Trustee.

**7.1.2.** The Global Settlement Agreement shall have been approved in open Court by the Bankruptcy Court.

**7.2.    Conditions to Effectiveness**.    The following are conditions precedent to the occurrence of the Effective Date:

**7.2.1.** The Confirmation Order shall be a Final Order, except that the Trustee reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order if no stay pending appeal has been obtained;

**7.2.2.** The Liquidation Trust shall have been established;

**7.2.3.** The Disputed Claim Reserve shall have been established;

**7.2.4.** The Global Settlement Agreement has become effective in accordance with its terms;

**7.2.5.** The Beazley Settlement Payment shall have been received by the Trustee; and

**7.2.6.** All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonable acceptable to the Trustee.

**7.3.    Waiver of Conditions.** The conditions to Consummation of the Plan set forth in Section 7.2 of this Plan may be waived by written agreement of the Trustee with the consent of Beazley and Sanchez, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## 8.  GLOBAL SETTLEMENT AGREEMENT; DISCHARGE; INJUNCTION

**8.1.    General.** Notwithstanding anything contained in the Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and Equity Interests and their

respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, unless specifically provided otherwise in this Plan or the Liquidation Trust Agreement, after the Effective Date the Liquidation Trustee may, in his sole and absolute discretion, (i) compromise and settle Claims against the Debtors, and (iii) compromise and settle Litigation Claims against other Persons.

**8.2.    Global Settlement Agreement and Mutual Releases.**    The terms of the Global Settlement Agreement and Global Settlement Order, including the mutual releases granted therein, are incorporated fully into this Plan as set forth herein, and are fully enforceable.

**8.3.    Limitation on Liability of the Liquidation Trustee.**  The Liquidation Trustee will not be liable for any act he may do or omit to do in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will he be liable in any event except for gross negligence, willful misconduct or intentional breaches of the Plan, the Global Settlement Agreement, or the Liquidation Trust Agreement, or fraud as determined by a Final Order of a court of competent jurisdiction.  The foregoing limitation on liability also will apply to any Person employed by the Liquidation Trustee (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement.  Also, the Liquidation Trustee and any Person employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

**8.4.    Compromise and Settlement.**    The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in this Plan, including the previously approved Global Settlement Agreement and the Global Settlement Order, are (i) in the best interests of the Debtors, their Estates, and all Holders of Claims and Equity Interests; (ii) fair, equitable and reasonable; (iii) made in good faith; and (iv) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

**8.5.    Discharge.  On the Effective Date, except as otherwise provided in this Plan, the Debtors shall be discharged from any and all Claims and all Equity Interests to the fullest extent provided in sections 524 and 1141 of the Bankruptcy Code.  The Discharge shall be to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on**

account of such Claims.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtors shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Nothing in this Plan or Confirmation Order shall operate to expand the Debtors' discharge as provided for in this Section 8.5 beyond that allowed by the Bankruptcy Code.  Nothing herein shall prevent or limit the rights of any Person to enforce the terms of, or their rights under, the Plan, the Global Settlement Agreement, or the Global Settlement Order.

**8.6.    Injunction**.  Except as otherwise provided in the Plan, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates, are permanently enjoined from taking any action in furtherance of such Claim, Equity Interest, and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Trustee, the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors with respect to any such Claim, Equity Interest, and/or other cause of action, or taking any act to recover such Claim or Equity Interest outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code, and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest, or encumbrance of any kind against the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors on account of any such Claim, Equity Interest, and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Trustee, the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors, on account of any such Claim, Equity Interest, and/or other cause of action; and (iv) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtors, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtors, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee the Liquidation Trust Assets, or the Reorganized Debtors, on account of any such Claim, Equity Interest, and or other cause of action.  By accepting Distributions, each Holder of an Allowed Claim or Equity Interest will be deemed to have specifically consented to the injunctions in the Plan.  Such injunctions shall extend for the benefit of the Trustee, the Reorganized Debtors, the Liquidation Trustee, any successors of the Debtors, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.  For the avoidance of doubt, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates, are permanently enjoined from taking any action that violates the Global Settlement Agreement, the Global Settlement Order, or the mutual releases provided therein.  Nothing herein shall prevent or limit the rights of any Person to

enforce the terms of, or their rights under, the Plan, the Global Settlement Agreement, or the Global Settlement Order.

**8.7.    Exculpation**.    From and after the Effective Date, neither Debtors, the Reorganized Debtors, the Trustee, the Liquidation Trustee, Sanchez, Beazley and their respective professionals nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Cases, the pursuit of confirmation of this Plan, or the consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Cases.  Under no condition, however, shall this exculpation apply to Brad Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the preserved Litigation Claims, including the Litigation Claims identified on **Schedule 1.1.82** hereto.

Notwithstanding anything to the contrary herein, nothing in the Plan shall release, discharge, enjoin, or otherwise modify or affect the rights of Beazley to pursue the Palubicki and Feliciano Claims or any claims against NuMale Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina, PLLC.

## 9.    RETENTION OF JURISDICTION

**9.1.    Jurisdiction.** Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases, the Liquidation Trust, and the Reorganized Debtors after the Effective Date to the maximum extent permitted by law, including, without limitation, jurisdiction to:

**9.1.1.**    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

**9.1.2.**    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

**9.1.3.**    Grant or deny any motion filed by the Liquidation Trustee seeking approval of a compromise or settlement; provided, however, the Liquidation Trustee is not required to seek such approval;

**9.1.4.**    Grant or deny the 363 Sale and all other related relief requested or ancillary to the 363 Motion, the 363 Sale Procedures, and the 363 Sale Order;

**9.1.5.**    Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors or Reorganized Debtors are

party and to hear, determine, and, if necessary, liquidate any Claims arising there from or Cure amounts related thereto;

**9.1.6.** Insure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Global Settlement Agreement;

**9.1.7.** Hear and decide disputes arising under the Global Settlement Agreement and enforce the releases and injunctions contained therein and in the order approving the Global Settlement Agreement;

**9.1.8.** Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving the Debtors, the Reorganized Debtors, the Liquidation Trust, or the Liquidation Trustee that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

**9.1.9.** Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan (including the Global Settlement Agreement) and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

**9.1.10.** Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, and the Global Settlement Agreement, or any Person's obligations incurred in connection with this Plan, the Global Settlement Agreement, or the Confirmation Order;

**9.1.11.** Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code and the terms of the Plan or modify any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**9.1.12.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, the Global Settlement Agreement, the Global Settlement Order, or the Confirmation Order, except as otherwise provided herein;

**9.1.13.** Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**9.1.14.** Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the

Disclosure Statement, any Final Order, or Confirmation Order, except as otherwise provided herein;

**9.1.15.** Enter the Final Decree(s);

**9.1.16.** Hear and decide Litigation Claims and the Palubicki and Feliciano Claims and continue to hear and decide pending Litigation Claims and the Palubicki and Feliciano Claims and any other claim or cause of action of the Debtors, the Liquidation Trust, or the Reorganized Debtors; provided, however, that the Liquidation Trust is not required to prosecute Litigation Claims, and Beazley or its assignees are not required to prosecute the Palubicki and Feliciano Claims, in the Bankruptcy Court and each is expressly authorized to pursue Litigation Claims in other appropriate courts and under other applicable law; and

**9.1.17.** Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

**9.2.    No Waiver.** Nothing contained in this Article 9 shall constitute a waiver by the Liquidation Trustee or Beazley of the right to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this Article 9.

## 10. MODIFICATION AND AMENDMENT OF PLAN

**10.1.    Modification and Amendment.** Prior to Confirmation, the Trustee may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time so long as such alterations, amendments or modifications do not affect the rights of Beazley under the Plan or the Global Settlement Agreement.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Liquidation Trustee may, under section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such alternations, amendments, modifications, or proceedings do not affect the rights of Beazley under the Plan or the Global Settlement Agreement or otherwise materially adversely affect the treatment of Holders of Claims under this Plan.

## 11. ADDITIONAL CLAIM OBJECTION AND DISTRIBUTION INFORMATION.

**11.1.    Objections to Claims and Disallowed Claims.**

**11.1.1.    Authority to File Objections to Claims.** Prior to the Effective Date, objections to Claims shall be made and pursued by the Trustee or any other party authorized to do so by the Bankruptcy Code.  After the Effective Date, objections to Proofs of Claim or proofs of Equity Interests may be made and pursued by any party-in-interest in the Chapter 11 Cases, including the Liquidation Trustee and the Reorganized Debtors.  The Liquidation Trist shall pursue objections to Claims and Equity Interests made previous thereto by the Trustee and still pending on the Effective Date, unless expressly authorized by order of the Bankruptcy Court.  Any objections to proofs of Claim or proofs of Equity Interests made after the Effective Date shall be

filed and served not later than thirty (30) days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court.

**11.1.2. Deadline for Filing Objections to Claims.** Any objections to Claims made after the Effective Date shall be filed and served not later than the first (1st) Business Day that is thirty (30) days after the Effective Date; provided, however, that such period may be extended by request of the Reorganized Debtors and/or the Liquidation Trustee and entry of an order of the Bankruptcy Court approving such request.

**11.1.3. Resolution of Objections After Effective Date.** From and after the Effective Date, only the Reorganized Debtors and/or Liquidation Trustee may propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court irrespective of whether the Liquidation Trust was the Person that filed the objection. All other parties-in-interest prosecuting objections to Disputed Claims shall obtain either written approval of the Liquidation Trustee an order of the Bankruptcy Court to settle Disputed Claims.

**11.1.4. Late-Filed Claims.** No proof of Claim filed after the applicable Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such proofs of Claim are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any Claim or proof of Claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

**11.2. Delivery of Distributions; Undeliverable Distributions.** Unless otherwise specified in the Global Settlement Agreement, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtors have been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Trustee or the Liquidation Trustee, as applicable, after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Trustee or Liquidation Trustee has not received a written notice of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Trustee or Liquidation Trustee is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Nothing contained in this Plan shall require the Trustee, the Reorganized Debtors, or the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim.

Any Person that fails to claim a Distribution returned as undeliverable within ninety (90) days from the date upon which a Distribution is first made to such Person shall forfeit all rights to any Distribution under the Plan. Persons that fail to claim the Distribution shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors, the Disputed Clim Reserve, the Reorganized Debtors, the Liquidation Trustee, or against any Holder of an Allowed Claim to whom Distributions are made by the Reorganized Debtors or the Liquidation Trustee. Undeliverable Distributions shall not be entitled to any interest, dividends, or other accruals of any kind. Any check that is not cashed or otherwise deposited within ninety (90) days after the check's date shall be deemed an undeliverable Distribution under this Plan.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable Distribution within ninety (90) days after the first attempted delivery shall have its Claim for such undeliverable Distribution expunged and shall be forever barred from asserting any such Claim against the Debtors, the Estates, the Reorganized Debtors, the Disputed Claims Reserve, Liquidation Trust, the Liquidation Trustee, the Reorganized Debtors, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Liquidation Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Reorganized Debtors or Liquidation Trustee to attempt to locate any Holder of an Allowed Claim.

Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtors, the Estates, the Disputed Claims Reserve, the Liquidation Trust, the Liquidation Trustee, the Reorganized Debtors, and their respective property. Any Distribution which is deemed nonnegotiable shall vest or revest in the Liquidation Trust and be available for Distribution consistent with the Plan.

Subject to the terms of this Plan, undeliverable Distributions shall remain in the possession of the Reorganized Debtors or Liquidation Trustee, as applicable, until such time as a Distribution becomes deliverable.

For abundance of caution, the Initial Distribution to Sanchez shall be treated in all regards consistent with the Global Settlement Agreement, which characterizes the payment as damages for personal physical injuries or sickness arising out of negligence pursuant to IRS Tax Code 26 U.S.C. 104(a)(2), and shall be made payable directly to the Michael E. Sanchez Qualified Settlement Fund to protect Sanchez's rights under the IRS Tax Code.

**11.3.    Fractional Payments and Application of Payments.**

If the Distribution to be received by the Holder of an Allowed Claim would be less than $25.00 on any payment date or in the aggregate, at the discretion of the Reorganized Debtors or Liquidation Trustee, as applicable, no such payment will be made to such Holder.

Whenever payment of a fraction of a dollar of value would be called for, the actual Distribution may, at the discretion of the Reorganized Debtors and/or Liquidation Trustee, as applicable, reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.

To the extent any Holder of an Allowed Claim receives a Distribution from the Reorganized Debtors or the Liquidation Trustee, such Distribution shall be applied by the recipient first to satisfy any Allowed Administrative Claims, Allowed Priority Tax Claims, or other Allowed Claims of the recipient against the Debtors which are entitled to priority under Bankruptcy Code sections 503 or 507 and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

**11.4.   Set Offs.**   The Trustee, Reorganized Debtors, or the Liquidation Trustee, as applicable, may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim (before any Distribution is made on account of such Claim), claims of any nature whatsoever that the Debtors may have against the Holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Trustee, the Liquidation or the Reorganized Debtors, as applicable, of any such Claim that it may have against such Holder.

For the abundance of caution, no set off shall apply to reduce the dollar amount of the Initial Distribution to be paid to Sanchez in accordance with the Global Settlement Agreement.

**11.5.   Allocation of Distributions between Principal and Interest.**   To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (ad determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to other such amounts.

**11.6.   Withholding Taxes.** In connection with the Plan, to the extent applicable, the Reorganized Debtors and Liquidation Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtors and Liquidation Trustee, as applicable, shall be entitled to deduct any U.S. or non-U.S. federal, state, or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate.  To the extent necessary or advisable to comply with applicable law, a Holder of an Allowed Claim entitled to receive a Distribution shall not receive any Distribution unless such Holder has provided to the Reorganized Debtors and Liquidation Trustee, as applicable, such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors and Liquidation Trustee, as applicable, to comply with applicable tax reporting and withholding laws (including an IRS Form W-9 or (if the Holder is a non-U.S. Person) an appropriate IRS Form W-8 (unless such Person is exempt from information reporting requirements under the Tax Code)) and so notifies the Reorganized Debtors and Liquidation Trustee, as applicable.  If such Holder does not provide such taxpayer identification number and such other information and certification reasonably requested by the Reorganized Debtors and/or Liquidation Trustee, such Holder will forfeit its interest to the Distribution and/or Liquidation Trust, as applicable, and shall not receive any Distribution.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  In connection with any Distribution, the Reorganized Debtors or Liquidation Trustee, as applicable may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations.

**Notwithstanding any other provision of this Plan or set forth in the Global Settlement Agreement, (i) each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution; and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made**

arrangements satisfactory to the Reorganized Debtors or Liquidation Trustee, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution under this Plan.

**12. MISCELLANEOUS.**

**12.1.    Effectuating Documents; Further Transactions; Timing.** The Trustee, Reorganized Debtors, and Liquidation Trust are each authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any securities issued, transferred, or canceled pursuant to this Plan. All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. The Trustee, Reorganized Debtors, and Liquidation Trustee are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**12.2.    Binding Effect. On the Effective Date and after the Effective Date, this Plan shall be binding upon all the Holders of all Claims against, and Equity Interests in, the Debtors and each such Holder's respective successors and assigns, notwithstanding whether or not such Holder (i) will receive or retain any property or interest in property under this Plan, (ii) has filed a proof of Claim or interest in this Chapter 11 Cases, or (iii) failed to vote to accept or reject the Plan or voted to reject the Plan.**

**12.3.    Termination of Responsibilities of the Patient Care Ombudsman.** On the Effective Date, the duties and responsibilities of the Patient Care Ombudsman shall be terminated and the Patient Care Ombudsman shall be discharged from his duties as Patient Care Ombudsman and shall not be required to file any further reports or perform any additional duties as Patient Care Ombudsman. No Person may seek discovery in any form, including but not limited to by motion, subpoena, notice of deposition, or request or demand for production of documents, from the Patient Care Ombudsman or his agents, professionals, employees, or other representatives, designees, or assigns (collectively, with the Patient Care Ombudsman, the "Ombudsman Parties") with respect to any matter arising from or relating on any way to the performance of the duties of the Patient Care Ombudsman in connection with these Chapter 11 Cases. Nothing herein shall in any way limit or otherwise affect the obligations of the Patient Care Ombudsman under confidentiality agreements, if any, between the Patient Care Ombudsman and any other Person or shall in any way limit or otherwise affect the Patient Care Ombudsman's obligations under sections 332(c) and 333(c)(1) of the Bankruptcy Code or other applicable law or Bankruptcy Court orders, to maintain patient information, including patient records, as confidential, and no such information shall be released by the Patient Care Ombudsman without further order of the Bankruptcy Court.

**12.4.    Exemption from Transfer Taxes.** Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, Distribution, transfer, or exchange of Estates property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of

transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing including, without limitation, all documents necessary to evidence and implement the provisions of and the Distributions to be made under the Plan, including the issuance of the Equity Interests, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real Estates transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.5.    Governing Law.**  Except to the extent that the Bankruptcy Code or other state or federal law is applicable or as provided in any contract, instrument, claim, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of the Debtors, the Distribution Trust, the Liquidation Trust, the Reorganized Debtors, and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.  For abundance of caution, the substantive law of New Mexico shall apply to the Quintairos claims described herein, since those claims arose from the Sanchez litigation that transpired in New Mexico.

**12.6.    Modification of Payment Terms.**  The Liquidation Trust reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**12.7.    Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid as follows:

| | |
|---|---|
| If to the Trustee, or Liquidation Trustee | Law Offices of Michael W. Carmel, Ltd. Attn: Michael Carmel 80 East Columbus Avenue Phoenix, Arizona 85012 Email:  michael@mcarmellaw.com |
| With a copy to: | Garman Turner Gordon LLP Attn:    Gregory E. Garman, Esq.          Talitha Gray Kozlowski, Esq.          Mary Langsner, Ph.D. 7251 Amigo St, Suite 210 Las Vegas, NV  89119 Tel:    (725) 777-3000 Email: ggarman@gtg.legal          tgray@gtg.legal          mlangsner@gtg.legal |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**12.8.   Extension of Time.**  For cause shown, any deadlines herein that are applicable to the Trustee, the Reorganized Debtors, the Liquidation Trustee, or the Liquidation Trust and which are not otherwise extendable pursuant to the terms of the Plan, may be extended by order of the Bankruptcy Court.

**12.9.   Severability.**  If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of the Trustee or Liquidation Trustee shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.10.  Revocation or Withdrawal of this Plan.**   The Trustee and Liquidation Trustee reserve the right to revoke or withdraw this Plan at any time prior to its substantial consummation if the Global Settlement Agreement is not approved and/or the Beazley Settlement Payment is not timely made.  If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtor.  In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

**12.11.  Post-Confirmation Reporting.**   Until the entry of the final decree closing the Chapter 11 Cases, the Liquidation Trustee shall comply with the Bankruptcy Code and Bankruptcy Rules post-confirmation reporting requirements.  Additionally, the Liquidation Trustee shall file post-confirmation quarterly operating reports detailing receipts and disbursements (along with ending cash balance) for each calendar quarter from the date of confirmation until dismissal, conversion, or entry of a final decree closing the case no later than twenty (20) days after the expiration of the reported quarter.

**12.12.  Cramdown.**   In the event that any Impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, the Trustee may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan.  The Trustee reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**12.13.  Quarterly Fees.**  Prior to the Effective Date, the Debtors, and after the Effective Date, the Liquidation Trustee, shall pay all quarterly fees payable to the Office of the United States Trustee consistent with the sliding scale set forth in 28 U.S.C. § 1930(a)(6), and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**12.14. Conflicts.** To the extent of any conflict between this Plan and the Confirmation Order, the Confirmation Order shall govern. To the extent of any conflict between this Plan and the Confirmation Order on the one hand and the Global Settlement Agreement and the Global Settlement Order on the other hand, the Global Settlement Agreement and the Global Settlement Order shall govern.

DATED this 1st August of July, 2025.

NUMALE CORPORATION, FELICIANO NUMALE NEVADA PLLC, NUMEDICAL SC, NUMALE COLORADO SC, NUMALE FLORIDA TB PLLC, NUMALE NEBRASKA LLC, AND NUMALE NEW MEXICO SC

/s/ _____

Michael W. Carmel, Chapter 11 Trustee

GARMAN TURNER GORDON LLP

By: /s/ Talitha Gray Kozlowski
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11 Trustee*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE 1.1.82**
**TO PLAN OF REORGANIZATION**

**CERTAIN PRESERVED LITIGATION CLAIMS**

Except as expressly provided in the Global Settlement Agreement, nothing contained in this Plan shall be deemed a waiver or relinquishment of any Litigation Claim of the Debtors or their Estates, which Litigation Claims shall vest in the Liquidation Trust (collectively, along with the proceeds thereof).

The following is a non-exhaustive list of potential Litigation Claims for which the Debtors and their Estates may hold a claim or cause of action that are transferred to the Liquidation Trust. The Trustee reserves its right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so.

1. The Avoidance Actions;

2. The Quintairos Claims;

3. The Howard and Howard Claim;

4. The Hassoun Claim;

5. The N2 Litigation Claim;

6. All Litigation Claims against any Affiliates or Insiders of Brad Palubicki or Carlos Feliciano;

7. All Litigation Claims with respect to any of the Debtors' pre-petition merchant credit advance lenders or other lenders or creditors irrespective of whether an adversary proceeding was pending on the Effective Date;

8. All Litigation Claims against Debtors, their Affiliates, and the Insiders covered by, or for which a claim can be made with respect to, the Liability Insurance Policies, solely excluding Litigation Claims against Justin Pulliam and/or Christopher Asandra; provided, however, that such Litigation Claims shall not give rise to contribution claims by Beazley;

9. All Litigation Claims respecting any alleged theft, robbery, and/or burglary of the Debtors' Colorado clinic location occurring on or about February 3, 2025, referenced by Greenwood Village Police Department Case Report Number GV25001125, including but not limited to Zurich North America Claims No. NuMale Corporation 5630118129, and any disposition of proceeds thereof or therefrom including but not limited to the failure to turn over same to the Estates.

10. All Litigation Claims listed in each of the Debtors' Schedules;

11. All Litigation Claims relating to claims or rights the Debtors or their Estates may have to interplead third parties in actions commenced against any of the Debtors;

12.    All Litigation Claims for collection of a debt or other amount owed to any of the Debtors prior to the Effective Date; and

13.    All Litigation Claims arising from other rights, privileges, claims, actions, or remedies of the Debtors and/or Liquidation Trust existing on the Effective Date, whether arising at law or in equity.

There may also be other Litigation Claims which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Litigation Claims are not currently known or sufficiently known by the Debtor. The failure to list any such unknown Litigation Claim herein is not intended to limit the rights of the Liquidation Trust to pursue any unknown Litigation Claim to the extent the facts underlying such unknown Litigation Claim become more fully known in the future.

Unless Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Global Settlement Agreement, the Plan, or any Final Order, the Debtors and their Estates expressly reserves for the benefit of the Liquidation Trust all Litigation Claims, including, without limitation, all unknown Litigation Claims for later adjudication and therefore no preclusion doctrine (including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Litigation Claims after the confirmation or consummation of the Plan. In addition, the Debtors and their Estates expressly reserve for the benefit of the Liquidation Trust the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

**SCHEDULE 6.1**
**PLAN OF REORGANIZATION**

**REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**


   Subject to modification in connection with the entry of the 363 Sale Order, it is anticipated that all of the Debtors' Executory Contracts and Unexpired Leases that were not rejected prior to the Effective Date will be assumed and assigned to the prevailing bidder(s).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECHEDULE 6.3**

**PLAN OF REORGANIZATION**

**CURE AMOUNTS PAYABLE BY THE REORGANIZED DEBTORS FOR ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

| Executory Contract or Unexpired Lease | Cure Amount Payable by the Reorganized Debtors Under the Plan |
|---|---|
| Lease between NuMale Corp and Prospect Rainbow LLC | $96,161.20 to cure pre- and post-petition arrearages, plus $69,062.31 as a pre-payment for the three months of rent following the Effective Date as adequate assurance of future performance |

**For any Executory Contract and/or Unexpired Lease for which no Cure payment is specifically identified on this <u>Schedule 6.3</u>, the Cure amount is $0.00.**

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**EXHIBIT 1**

**GLOBAL SETTLEMENT AGREEMENT**

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000