# EXHIBIT 2

# EXHIBIT 2

Exhibit: Liquidation Analysis
NuMale Corporation (Case No. 25-10341-nmc)

| | Assets | | | | % Recovery |
|---|---|---|---|---|---|
| 0 | Scheduled Assets | less than | $ | 133,000.00 | |
| 1, 2 | Litigation Claims (*e.g.*, Chapter 5 causes of action; Oklahoma judgment) | | $ | 200,000.00 | |
| 3 | Bad faith insurance claim (net) | | $ | 9,750,000.00 | |
| 4 | Quintairos malpractice claim | | | unknown | |
| 5 | Equity interests in affiliates | | $ | 100,000.00 | |
| | | | $ | 10,183,000.00 | |

| | Payment of Claims | Est. Claim | | |
|---|---|---|---|---|
| 6, 7 | **Secured Claims** | | | |
| | Newtek (all inventory, equipment, accounts) (first priority) | $ | 5,033,301.46 | 2.32% |
| | Fox (all accounts and proceeds) | $ | 78,225.00 | 2.32% |
| | LCF (personal property, all equipment, inventory, contract rights, fixtures, accounts) | $ | 113,378.47 | 2.32% |
| | LCF (personal property, all equipment, inventory, contract rights, fixtures, accounts) | $ | 149,466.02 | 2.32% |
| | Kalamata (accounts, equipment, general intangibles, inventory, funds, proceeds, receipts) | $ | 86,628.42 | 2.32% |
| | Top Tier (all accounts, equipment, general intangibles, inventory, all funds, all proceeds) | $ | 263,942.88 | 2.32% |
| | Ford Motor Credit | $ | 21,593.98 | 100% |
| | *Net Liquidation Value After Distribution of Value to Secured Claims* | | $ 10,183,000.00 | |
| | **Administrative Claims** | | | |
| 8 | Estimated Trustee Fees (Ch 11 & 7) | $ | 325,740.00 | 100% |
| 9 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ | 65,000.00 | 100% |
| 10 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ | 30,000.00 | 100% |
| 11 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ | 10,000.00 | 100% |
| 12 | Theoretical Patient Care Ombudsman (Ch 7) | $ | 20,000.00 | 100% |
| 13 | Priority tax claims (Estimate Only) | $ | 8,351.91 | 100% |
| 14 | Theoretical Chapter 7 Professional Fees and Expenses | $ | 25,000.00 | 100% |
| 15 | Litigation costs associated with enforcement of rights under insurance policies (*e.g.*, Coverage Lawsuit) | $ | 300,000.00 | 100% |
| | | $ | 784,091.91 | |
| | *Net Liquidation Value After Distribution to Administrative Claims* | | $ 9,398,908.09 | |
| | **Priority Claims** | | | |
| 16 | Priority Claims | $ | 95,090.59 | 100% |
| | **General Unsecured** | | | |
| 17 | Unsecured Claims | $ | 591,117,140.89 | 1.57% |

Exhibit: Liquidation Analysis
NuMale Corporation (Case No. 25-10341-nmc)

[*] For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case").  In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code.  This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

[0] Identified in Case No. 25-10341 ECF No. 220, Amended Schedules A/B as cash in the amount of $5,403.47, plus accounts receivable of $73,000, plus equipment and furniture in the amount of $35,000; and a deposit of $23,765.00.  A Ford vehicle scheduled at $25,000 value is likely not a source of significant recovery because it is encumbered by a security interest, and Ford Motor Credit Company LLC has filed a secured proof of Claim in the amount of $21,593.98 regarding the vehicle.  Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers.  An interest in a lease for property at 6590 South Rainbow, Suite 250, Las Vegas, Nevada, is scheduled in an "unknown" amount; however this does not suggest a likelihood of significant recovery on this leasehold interest because in a Chapter 7 Case the Debtor would cease operations.  Claims against affiliates are scheduled in an "unknown" amount; while this is not dispositive it does suggest that there is not a likelihood of significant recovery on liquidation of inter-affiliate claims, as many of the Debtor's affiliates are also Debtors in these Chapter 11 Cases, and no non-Debtor affiliates are named.  Additionally, the majority of the cash and cash equivalents had been used by the Debtor post-petition.  Accordingly, it is unlikely that even $133,000 would be available for a Chapter 7 trustee.

[1] The Debtor's amended Statement of Financial Affairs Case No. 25-10347-nmc ECF No. 91 reflects payments within the 90 days preceding the Petition Date as $70,000 (no date provided), as $200,000 from November 29 through December 12, 2024, and a $4,206.69 "monthly"; this filing also reflects "possible transfers of security interests which have benefited insider guarantors" valued at $0.00.  While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery under these circumstances:  Because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees.  Although the Chapter 11 Trustee believes there may be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out.  Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis.

[2] A "claim re Oklahoma judgment" is scheduled in an "unknown" amount.  At present, the Trustee's investigation indicates that approximately $251,518 remains outstanding and still due on the Oklahoma judgment against Dr. Hassoun, although Dr. Hassoun has taken the position that only approximately $70,000 is still due.  As the ultimate amount still due and owing by Dr. Hassoun must be addressed through litigation in the Oklahoma Court, the Chapter 7 Liquidation value is discounted from the amount the Debtors believe is due and owing, and accounts for litigation costs incurred in connection with liquidating the judgment and collecting on payment from Dr. Hassoun and accounts for that a Chapter 7 Trustee may perhaps liquidate this claim in a settled amount to recover funds more quickly for the benefit of the Chapter 7 estate.

[3] This Debtor's Amended Schedules A/B Case No. 25-10341 ECF No. 220 list a "claim for bad faith insurance and malpractice re Sanchez case" in "unknown" amount.  Any bad faith litigation against the insurer would be drawn out, hotly contested, heavily litigated, and take a long time.  As this estate has such limited assets, counsel hired to prosecute this claim would be engaged on a contingency basis and be paid  from litigation proceeds in the event the case succeeds.  Contingency counsel typically take a fee of 35% of any recovery, before expenses, which also reduces the distribution to creditors.  The value set forth herein for purposes of this Chapter 7 Liquidation Analysis is speculative and materially less than the monies realized by the Chapter 11 Trustee under the Global Settlement Agreement and Plan.  The value set forth herein of this claim reflects a discount to account for, *inter alia* , contingency counsel as well as other uncertainties including the very realistic possibility that a Chapter 7 Trustee is simply unable to recover the full value of this claim.  Thus, the amount set forth is an estimate only of the value of this claim in a hypothetical Chapter 7 Case, net of estimated counsel fees and litigation expenses, and is not in any way an admission or representation by the Chapter 11 Trustee respecting the value of this claim in a Chapter 11 reorganization.

[4] This Debtor's Amended Schedules A/B Case No. 25-10341 ECF No. 220 list a "claim for bad faith insurance and malpractice re Sanchez case" in "unknown" amount.  The value of any legal malpractice claim against the Quintairos Firm for its representation of the Sanchez Defendants in the Sanchez Lawsuit is unknown at this time.  In order to preserve the value of this claim so that maximum value can be realized for creditors the value is set forth here as "unknown".

[5] This Debtor's Statement of Financial Affairs, at Item 25.1 in Case No. 25-10341 ECF No. 30 and at pp. 16-17 of 17, list NuMale Corporation as owning equity interests in the following affiliated entities: Nevada NuMale, LLC; NuFemme Milwaukee, LLC; NuMale Green Bay, LLC; NuMale Omaha, LLC; NuMale Albuquerque, LLC; NMC Illinois, LLC; NuMale Tampa, LLC; NuMale Charlotte, LLC; and NuMale Denver, LLC.  However this Debtors' Schedules A/B ECF No. 31 and Amended Schedules A/B ECF No. 220 do not schedule these ownership intersts as assets, and, no value is attributed to these ownership interests.  The Trustee has used his business judgment, based on information presently known to him, to provide the estimated value stated herein.

[6] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[7] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full.

[8] The statutory trustee fees are estimated based on this Debtor's scheduled assets and account for both the Chapter 11 and hypothetical Chapter 7 trustee's statutory fees.

[9] GTG was employed on a hybrid reduced hourly and contingency fee basis.  It is assumed here that in the event of conversion to a Chapter 7 Case, GTG would only seek recovery of its reduced hourly rate.  The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate.  Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293, or any other order of the Court.

[10] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate.  These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment.  The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[11] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date.  The PCO provided valuable services to the Chapter 11 Estate.

[12] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics.  Patient records would also need to be handled in accord with appropriate governing law.  As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care and the proper handling of medical records and patient information.

[13] Three Priority Tax Claims have to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases.  However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible additional Priority Tax Claim(s) may be asserted against this Debtor.

[14] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business.  Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[15] Estimates the costs associated with addressing the Coverage Lawsuit and related matters, which are anticipate to arise in the event the Plan is not confirmed and the Global Settlement Agreement is not effectuated.  Although any counsel hired to represent the hypothetical Chapter 7 estate would likely be engaged on a contingency basis, the litigation costs would still need to be paid.  The amount set forth herein is an estimate only, and is formulated based on the anticipated complexity and contentiousness of the matters.

[16] This amount totals the priority unsecured claims currently filed against this Debtor.  Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Priority Unsecured Claims under the Plan or against this Debtor.

[17] This amount totals the unsecured claims currently filed against this Debtor.  Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.

Exhibit: Liquidation Analysis
Feliciano NuMale Nevada PLLC (Case No. 25-10342-nmc)

| | Assets | | | | % Recovery |
|---|---|---|---|---|---|
| 1 | Scheduled Assets | | less than | $ 75,000.00 | |
| 2 | Litigation Claims (*e.g.*, Chapter 5 causes of action) | | | $ 50,489.32 | |

| | **Payment of Claims** | | **Est. Claim** | | |
|---|---|---|---|---|---|
| 3, 4 | **Secured Claims** | | | | |
| | Proventure d/b/a Top Tier (all accounts, equipment, general intangibles, instruments, inventory, all funds, all proceeds) | $ | 263,942.88 | | 18% |
| | LCF (personal property, all equipment, inventory, contract rights, fixtures, accounts) | $ | 149,466.02 | | 18% |
| | *Net Liquidation Value After Distribution of Value to Secured Claims* | | | **$50,489.32** | |
| | **Administrative Claims** | | | | |
| 5 | Estimated Trustee Fees (Ch 7) | $ | 11,000.00 | | 0% |
| 6 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ | 65,000.00 | | 0% |
| 7 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ | 30,000.00 | | 0% |
| 8 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ | 10,000.00 | | 0% |
| 9 | Theoretical Patient Care Ombudsman (Ch 7) | $ | 20,000.00 | | 0% |
| 10 | Priority tax claims (Estimate Only) | $ | - | | 0% |
| 11 | Theoretical Chapter 7 Professional Fees and Expenses | $ | 25,000.00 | | 0% |
| | Total Chapter 7 Administrative Expenses | $ | 56,000.00 | | 90% |
| | Total Chapter 11 Administrative Expenses | $ | 105,000.00 | | 0% |
| | *Net Liquidation Value After Distribution to Administrative Claims* | | | **$0.00** | |
| | **Priority Claims** | | | | |
| | Priority Claims | $ | - | | 0% |
| | **General Unsecured** | | | | |
| 12 | Unsecured Claims | $ | 668,421.50 | | 0% |

\* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case").  In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code.  This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

Exhibit: Liquidation Analysis
Feliciano NuMale Nevada PLLC (Case No. 25-10342-nmc)

[1] Identified in Case No. 25-10341 ECF No. 221, Amended Schedules A/B as cash in the amount of $17,818.44 plus cash equivalents in the amount of $13,300.00, plus accounts receivable of $75,000. Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers. An interest in a lease for property at 6590 South Rainbow Boulevard Suite 250, Las Vegas, Nevada, is scheduled in an "unknown" amount; however this does not suggest a likelihood of significant recovery on this leasehold interest because in a Chapter 7 Case the clinic would cease operations. Claims against affiliates are scheduled in an "unknown" amount; while this is not dispositive it does suggest that there is not a likelihood of significant recovery on liquidation of inter-affiliate claims, as many of the Debtor's affiliates are also Debtors in these Chapter 11 Cases, and no non-Debtor affiliates are named. Additionally, the majority of the cash and cash equivalents had been used by the Debtor post-petition. Accordingly, it is unlikely that even $75,000 would be available for a Chapter 7 trustee.

[2] This Debtor's Amended Schedules A/B Case No. 25-10341 ECF No. 221 do not schedule any litigation claims. The Debtor's amended Statement of Financial Affairs Case No. 25-10341 ECF No. 221 reflects payments within the 90 days preceding the Petition Date as $40,921.53 "daily" from October 22 through December 19, 2024, as $50,057.12 for the period December 10-19, 2024, and as $10,000 on December 12, 2024; and also reflects "possible transfers of security interests which have benefited insider guarantors" valued at $0.00, and a setoff of $13,300.00 taken January 7, 2025. While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery in light of the circumstances of this Debtor: Because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees. Although the Chapter 11 Trustee believes there may be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out. Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis. Nonetheless, providing the most favorable view possible, the Chapter 5 claims have been valued at $50,489.32, which reflects a 50% recovery of the transfers identified in the Schedules.

[3] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[4] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Secured Claims under the Plan or against this Debtor.

[5] The statutory trustee fees are estimated based on this Debtor's scheduled assets.

[6] GTG was employed on a hybrid reduced hourly and contingency fee basis. It is assumed here that in the event of conversion to a Chapter 7 Case, GTG would only seek recovery of its reduced hourly rate. The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate. Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293, or any other order of the Court.

[7] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate. These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment. The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[8] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date. The PCO provided valuable services to the Chapter 11 Estate.

[9] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics. Patient records would also need to be handled in accord with appropriate governing law. As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care.

[10] No Priority Tax Claims have to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases. However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible Priority Tax Claim(s) may be asserted against this Debtor.

[11] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business. Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[12] This amount totals the unsecured claims currently filed against this Debtor. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.

Exhibit: Liquidation Analysis
NuMedical SC (Case No. 25-10343-nmc)

| | Assets | | | | % Recovery |
|---|---|---|---|---|---|
| 1 | Scheduled Assets | less than | $ | 94,000.00 | |
| 2 | Litigation Claims (*e.g.*, Chapter 5 causes of action) | | $ | 48,173.07 | |

| **Payment of Claims** | **Est. Claim** | | |
|---|---|---|---|

[3, 4] **Secured Claims**

| | | | |
|---|---|---|---|
| Kalamata (accounts, equipment, general intangibles, inventory, funds, proceeds, receipts) | $ | 86,628.42 | 57% |
| Fox (all accounts and proceeds) | $ | 78,225.00 | 57% |
| *Net Liquidation Value After Distribution of Value to Secured Claims* | | $ | 48,173.07 |

**Administrative Claims**

| | | | | |
|---|---|---|---|---|
| 5 | Estimated Trustee Fees (Ch 7) | $ | 10,000.00 | 0% |
| 6 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ | 65,000.00 | 0% |
| 7 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ | 30,000.00 | 0% |
| 8 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ | 10,000.00 | 0% |
| 9 | Theoretical Patient Care Ombudsman (Ch 7) | $ | 20,000.00 | 0% |
| 10 | Priority tax claims (Estimate Only) | $ | 100.00 | 0% |
| 11 | Theoretical Chapter 7 Professional Fees and Expenses | $ | 25,000.00 | 0% |
| | Total Chapter 7 Administrative Expenses | $ | 55,000.00 | 88% |
| | Total Chapter 11 Administrative Expenses | $ | 105,000.00 | 0% |

*Net Liquidation Value After Distribution to Administrative Claims*  $0.00

**Priority Claims**

| | | | |
|---|---|---|---|
| Priority Claims | $ | - | 0% |

**General Unsecured**

| | | | | |
|---|---|---|---|---|
| 12 | Unsecured Claims | $ | 296,166.64 | 0% |

---

\* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code. This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

[1] Identified in Case No. 25-10343 ECF No. 77, Amended Schedules A/B as cash in the amount of $31,055.71 plus cash equivalents in the amount of $26,479.00, plus accounts receivable of $94,000. Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers. Also, an interest in a lease for property at 2600 N. Mayfair Road, Suite 1140, Milwaukee, Wisconsin, is scheduled in an "unknown" amount; however this does not suggest a likelihood of significant recovery on this leasehold interest because in a Chapter 7 Case the clinic would cease operations. Additionally, the majority of the cash and cash equivalents had been used by the Debtor post-petition. Accordingly, it is unlikely that even $94,000 would be available for a Chapter 7 trustee.

Exhibit: Liquidation Analysis
NuMedical SC (Case No. 25-10343-nmc)

[2] This Debtor's Amended Schedules A/B Case No. 25-10343 ECF No. 77 do not schedule any litigation claims. The Debtor's amended Statement of Financial Affairs ECF No. 77 reflects transfers of $96,346.14 within the 90 days preceding the Petition Date and reflects "possible transfers of security interests which have benefited insider guarantors" valued at $0.00, and a setoff of $26,476.00 taken January 7, 2025. While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery in light of the circumstances of this Debtor: Because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees. Although the Chapter 11 Trustee believes there may be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out. Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis. Nonetheless, providing the most favorable view possible, the Chapter 5 claims have been valued at $48,173.07, which reflects a 50% recovery of the transfers identified in the Schedules.

[3] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[4] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Secured Claims under the Plan or against this Debtor.

[5] The statutory trustee fees are estimated based on this Debtor's scheduled assets.

[6] GTG was employed on a hybrid reduced hourly and contingency fee basis. It is assumed here that in the event of conversion to a Chapter 7 Case, GTG would only seek recovery of its reduced hourly rate. The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate. Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293, or any other order of the Court.

[7] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate. These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment. The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[8] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date. The PCO provided valuable services to the Chapter 11 Estate.

[9] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics. Patient records would also need to be handled in accord with appropriate governing law. As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care.

[10] One Priority Tax Claim has to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases. However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible additional Priority Tax Claim(s) may be asserted against this Debtor.

[11] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business. Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[12] This amount totals the unsecured claims currently filed against this Debtor. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.

Exhibit: Liquidation Analysis
NuMale Colorado SC (Case No. 25-10344-nmc)

| | Assets | | | % Recovery |
|---|---|---|---|---|
| 1 | Scheduled Assets | less than | $ 21,000.00 | |
| 2 | Litigation Claims (*e.g.*, Chapter 5 causes of action) | | | |

| **Payment of Claims** | | **Est. Claim** | | |
|---|---|---|---|---|
| 3, 4 | **Secured Claims** | | | |
| | ODK Capital LLC (all tangible and intangible personal property including cash, inventory, equipment, property, instruments, accounts) | $ | 17,946.25 | 22% |
| | Fox (all accounts and proceeds) | $ | 78,225.00 | 22% |
| | *Net Liquidation Value After Distribution of Value to Secured Claims* | | $ - | |
| | **Administrative Claims** | | | |
| 5 | Estimated Trustee Fees (Ch 7) | $ | - | 0% |
| 6 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ | 65,000.00 | 0% |
| 7 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ | 30,000.00 | 0% |
| 8 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ | 10,000.00 | 0% |
| 9 | Theoretical Patient Care Ombudsman (Ch 7) | $ | 20,000.00 | 0% |
| 10 | Priority tax claims (Estimate Only) | $ | - | 0% |
| 11 | Theoretical Chapter 7 Professional Fees and Expenses | $ | 15,000.00 | 0% |
| | | $ | 140,000.00 | 0% |
| | *Net Liquidation Value After Distribution to Administrative Claims* | | $ (140,000.00) | |
| | **Priority Claims** | | | |
| | Priority Claims | $ | - | 0% |
| | **General Unsecured** | | | |
| 12 | Unsecured Claims | $ | 1,140,566.26 | 0% |

\* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code. This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

[1] Identified in Case No. 25-10341 ECF No. 223, Amended Schedules A/B as cash in the amount of $2,310.52 plus cash equivalents in the amount of $2,150.00, plus accounts receivable of $21,000.00. Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers. Claims against affiliates are scheduled in an "unknown" amount; while this is not dispositive it does suggest that there is not a likelihood of significant recovery on liquidation of inter-affiliate claims, as many of the Debtor's affiliates are also Debtors in these Chapter 11 Cases, and no non-Debtor affiliates are named. An interest in a lease for property at 8200 E Belleview Ave Ste 230c, Greenwood Village, Colorado, is scheduled in an "unknown" amount; as the Debtor ceased clinic operations before the Trustee's appointment this does not suggest a likelihood of significant recovery on this leasehold interest. Additionally, this clinic had ceased operating and as the majority of the cash and cash equivalents had been used by the Debtor post-petition. Accordingly, it is unlikely that even $21,000 would be available for a Chapter 7 trustee.

[2] This Debtor's Amended Schedules A/B [Case No. 25-10341 ECF No. 223] do not schedule any litigation claims. The Debtor's amended Statement of Financial Affairs Case No. 25-10344-nmc ECF No. 83 does not reflect any payments within the 90 days preceding the Petition Date but does reflect "possible transfers of security interests which have benefited insider guarantors" valued at $0.00, and a setoff of $2,150.00 taken January 9, 2025. While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery. Additionally, because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees. Although the Chapter 11 Trustee believes there may be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out. Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis.

[3] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[4] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Secured Claims under the Plan or against this Debtor.

[5] The statutory trustee fees are estimated based on this Debtor's scheduled assets and account for both the Chapter 11 and hypothetical Chapter 7 trustee's statutory fees. Here, as there is no anticipated distribution by the trustees the fee is estimated at $0.00.

[6] GTG was employed on a hybrid reduced hourly and contingency fee basis. It is assumed here that in the event of conversion to a Chapter 7 Case, GTG would only seek recovery of its reduced hourly rate. The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate. Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293, or any other order of the Court.

[7] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate. These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment. The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[8] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date. This Debtor's physical clinic had closed prior to the Trustee's appointment, but patients were being seen on a remote/telemedicine basis and, as such, the PCO provided valuable services to the Chapter 11 Estate.

[9] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics. Patient records would also need to be handled in accord with appropriate governing law. As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care.

[10] No Priority Tax Claims have to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases. However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible Priority Tax Claim(s) may be asserted against this Debtor.

[11] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business. Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[12] This amount totals the unsecured claims currently filed against this Debtor. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.

Exhibit: Liquidation Analysis
NuMale Florida TB PLLC (Case No. 25-10345-nmc)

| | Assets | | | | % Recovery |
|---|---|---|---|---|---|
| 1 | Scheduled Assets | | less than | $ 25,000.00 | |
| 2 | Litigation Claims (*e.g.*, Chapter 5 causes of action) | | | | |

| | Payment of Claims | | Est. Claim | | |
|---|---|---|---|---|---|
| 3, 4 | **Secured Claims** | | | | |
| | EBF (accounts, general intangibles, "Future Receipts") | $ | 32,317.50 | | 23% |
| | Fox (all accounts and proceeds) | $ | 78,225.00 | | 23% |
| | *Net Liquidation Value After Distribution of Value to Secured Claims* | | | $ | - |
| | **Administrative Claims** | | | | |
| 5 | Estimated Trustee Fees (Ch 11 & 7) | $ | - | | 0% |
| 6 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ | 65,000.00 | | 0% |
| 7 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ | 30,000.00 | | 0% |
| 8 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ | 10,000.00 | | 0% |
| 9 | Theoretical Patient Care Ombudsman (Ch 7) | $ | 20,000.00 | | 0% |
| 10 | Priority tax claims (Estimate Only) | $ | - | | 0% |
| 11 | Theoretical Chapter 7 Professional Fees and Expenses | $ | 15,000.00 | | 0% |
| | | $ | 140,000.00 | | 0% |
| | *Net Liquidation Value After Distribution to Administrative Claims* | | | $ | (140,000.00) |
| | **Priority Claims** | | | | |
| | Priority Claims | $ | - | | 0% |
| | **General Unsecured** | | | | |
| 12 | Unsecured Claims | $ | 8,000.00 | | 0% |

\* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code. This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

[1] Identified in Case No. 25-10345 ECF No. 80, Amended Schedules A/B as cash in the amount of $3,312.95 plus cash equivalents in the amount of $9,549.00, plus accounts receivable of $25,000. Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers. An interest in a lease for property at 500 Westshore Place # 635, Tampa, Florida, is scheduled in an "unknown" amount; as the Debtor ceased clinic operations prepetition this does not suggest a likelihood of significant recovery on this leasehold interest. Additionally, this clinic had ceased operating pre-petition and as the majority of the cash and cash equivalents had been used by the Debtor post-petition. Accordingly, it is unlikely that even $25,000 would be available for a Chapter 7 trustee.

Exhibit: Liquidation Analysis
NuMale Florida TB PLLC (Case No. 25-10345-nmc)

[2] This Debtor's Amended Schedules A/B Case No. 25-10345 ECF No. 80 do not schedule any litigation claims.  The Debtor's amended Statement of Financial Affairs ECF No. 80 does not reflect any payments within the 90 days preceding the Petition Date but does reflect "possible transfers of security interests which have benefited insider guarantors" valued at $0.00, and a setoff of $9,549.00 taken January 7, 2025.  While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery.  Additionally, because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees.  Although the Chapter 11 Trustee believes there may be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out.  Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis.

[3] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[4] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full.  Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Secured Claims under the Plan or against this Debtor.

[5] The statutory trustee fees are estimated based on this Debtor's scheduled assets and account for both the Chapter 11 and hypothetical Chapter 7 trustee's statutory fees.  Here, as there is no anticipated distribution by the trustees the fee is estimated at $0.00.

[6] GTG was employed on a hybrid reduced hourly and contingency fee basis.  It is assumed here that in the event of conversion to a Chapter 7 Case,  GTG would only seek recovery of its reduced hourly rate.  The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate.  Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293,  or any other order of the Court.

[7] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate.  These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment.  The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[8] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date.  This Debtor's physical clinic had closed prior to the Trustee's appointment, but patients were being seen on a remote/telemedicine basis and, as such, the PCO provided valuable services to the Chapter 11 Estate.

[9] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics.  Patient records would also need to be handled in accord with appropriate governing law.  As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care.

[10] No Priority Tax Claims have to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases.  However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible Priority Tax Claim(s) may be asserted against this Debtor.

[11] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business.  Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[12] This amount totals the unsecured claims currently filed against this Debtor.  Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.

Exhibit: Liquidation Analysis
NuMale Nebraska LLC (Case No. 25-10346-nmc)

| | Assets | | | | % Recovery |
|---|---|---|---|---|---|
| 1 | Scheduled Assets | | less than | $ 29,000.00 | |
| 2 | Litigation Claims (*e.g.*, Chapter 5 causes of action) | | | $ 28,684.64 | |

| | **Payment of Claims** | **Est. Claim** | | |
|---|---|---|---|---|
| 3, 4 | **Secured Claims** | | | |
| | Vox (all accounts, personal property, assets, fixtures, general intangibles, equipment, inventory wherever located, proceeds) | $ 114,230.72 | | 25% |
| | *Net Liquidation Value After Distribution of Value to Secured Claims* | | $ 28,684.64 | |
| | **Administrative Claims** | | | |
| 5 | Estimated Trustee Fees (Ch 7) | $ 7,000.00 | | |
| 6 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ 65,000.00 | | |
| 7 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ 30,000.00 | | |
| 8 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ 10,000.00 | | |
| 9 | Theoretical Patient Care Ombudsman (Ch 7) | $ 20,000.00 | | |
| 10 | Priority tax claims (Estimate Only) | $ - | | |
| 11 | Theoretical Chapter 7 Professional Fees and Expenses | $ 25,000.00 | | |
| | Total Chapter 7 Administrative Expenses | $ 52,000.00 | | 55% |
| | Total Chapter 11 Administrative Expenses | $ 105,000.00 | | 0% |
| | *Net Liquidation Value After Distribution to Administrative Claims* | | $ (128,315.36) | |
| | **Priority Claims** | | | |
| | Priority Claims | $ - | | 0% |
| | **General Unsecured** | | | |
| 12 | Unsecured Claims | $ 210,234.06 | | 0% |

\* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code. This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

[1] Identified in Case No. 25-10346 ECF No. 80, Amended Schedules A/B as cash in the amount of $11,683.80 plus cash equivalents in the amount of $19,910.00, plus accounts receivable of $29,000. Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers. And an interest in a lease for property at 444 Regency Parkway Drive Suite 204 in Omaha, Nebraska is scheduled in an "unknown" amount; however this does not suggest a likelihood of significant recovery because in a Chapter 7 Case the clinic would cease operations. Additionally, the majority of the cash and cash equivalents had been used by the Debtor post-petition. Accordingly, it is unlikely that even $29,000 would be available for a Chapter 7 trustee.

Exhibit: Liquidation Analysis
NuMale Nebraska LLC (Case No. 25-10346-nmc)

[2] This Debtor's Amended Schedules A/B Case No. 25-10346 ECF No. 80 do not schedule any litigation claims. The Debtor's amended Statement of Financial Affairs ECF No. 80 reflects payments within the 90 days preceding the Petition Date as $32,600.02 on November 14, 2024, and a cumulative $24,769.28 from October 28 throgh December 16, 2024; the Debtor's amended Statement of Financial Affairs also reflects "possible transfers of security interests which have benefited insider guarantors" valued at $0.00, and a setoff of $19,910.00 taken Janaury 7, 2025. While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery in light of the circumstanes of this Debtor. Because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees. Although the Chapter 11 Trustee believes there may also be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out. Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis. Nonetheless, providing the most favorable view possible, the Chapter 5 claims have been valued at $28,684.64, which reflects a 50% recovery of the transfers identified in the Schedules.

[3] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[4] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Secured Claims under the Plan or against this Debtor.

[5] The statutory trustee fees are estimated based on this Debtor's scheduled assets.

[6] GTG was employed on a hybrid reduced hourly and contingency fee basis. It is assumed here that in the event of conversion to a Chapter 7 Case, GTG would only seek recovery of its reduced hourly rate. The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate. Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293, or any other order of the Court.

[7] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate. These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment. The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[8] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date. The PCO provided valuable services to the Chapter 11 Estate.

[9] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics. Patient records would also need to be handled in accord with appropriate governing law. As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care.

[10] No Priority Tax Claims have to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases. However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible Priority Tax Claim(s) may be asserted against this Debtor.

[11] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business. Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[12] This amount totals the unsecured claims currently filed against this Debtor. Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.

Exhibit: Liquidation Analysis
NuMale New Mexico SC (Case No. 25-10347-nmc)

| | Assets | | | | % Recovery |
|---|---|---|---|---|---|
| 0 | Scheduled Assets | less than | $ | 91,000.00 | |
| 1 | Litigation Claims (*e.g.*, Chapter 5 causes of action) | | $ | 22,658.26 | |
| 2 | Bad faith insurance claim (net) | | $ | 9,750,000.00 | |
| 3 | Quintairos malpractice claim | | | unknown | |

| | Payment of Claims | | Est. Claim | | |
|---|---|---|---|---|---|
| 4, 5 | **Secured Claims** | | | | |
| | Fox (all accounts and proceeds) | $ | 78,225.00 | | 100.00% |
| | LCF (personal property, all equipment, inventory, contract rights, fixtures, accounts) | $ | 113,378.47 | | 11.27% |
| | *Net Liquidation Value After Distribution of Value to Secured Claims* | | | $ 9,772,658.26 | |
| | **Administrative Claims** | | | | |
| 6 | Estimated Trustee Fees (Ch 11 & 7) | $ | 317,000.00 | | 100% |
| 7 | Chapter 11 Administrative Claims and Professional Fees through the Effective Date (Estimate Only) | $ | 65,000.00 | | 100% |
| 8 | Other asserted Chapter 11 professional fees preceding the Trustee's appointment (Estimate Only) | $ | 30,000.00 | | 100% |
| 9 | Patient Care Ombudsman (Ch 11) (Estimate Only) | $ | 10,000.00 | | 100% |
| 10 | Theoretical Patient Care Ombudsman (Ch 7) | $ | 20,000.00 | | 100% |
| 11 | Priority tax claims (Estimate Only) | $ | 200.00 | | 100% |
| 12 | Theoretical Chapter 7 Professional Fees and Expenses | $ | 25,000.00 | | 100% |
| 13 | Litigation costs associated with enforcement of rights under insurance policies (*e.g.*, Coverage Lawsuit) | $ | 300,000.00 | | 100% |
| | | $ | 767,200.00 | | |
| | *Net Liquidation Value After Distribution to Administrative Claims* | | | $ 9,005,458.26 | |
| | **Priority Claims** | | | | |
| 14 | Priority Claims | $ | 177,145.11 | | 100% |
| | **General Unsecured** | | | | |
| 15 | Unsecured Claims | $ | 580,264,059.93 | | 1.55% |

\* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about September 1, 2025 (the "Conversion Date"), the Chapter 11 Case of this Debtor is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code. This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement, and all undefined, capitalized terms shall have the meaning ascribed to them in the Plan and Disclosure Statement (in that sequence).

[0] Identified in Case No. 25-10341 ECF No. 226, Amended Schedules A/B as cash in the amount of $11,122.43 plus cash equivalents in the amount of $6,879.00, plus accounts receivable of $91,000. Customer lists are scheduled in an "unknown" amount; while this is not dispositive, it does suggest that there is not a likelihood of significant recovery on liquidation of a customer list that includes personally identifiable information of customers. An interest in a lease for property at 7920 Wyoming Boulevard NE Suite B2, Albuquerque, New Mexico, is scheduled in an "unknown" amount; however this does not suggest a likelihood of significant recovery on this leasehold interest because in a Chapter 7 Case the clinic would cease operations. Claims against affiliates are scheduled in an "unknown" amount; while this is not dispositive it does suggest that there is not a likelihood of significant recovery on liquidation of inter-affiliate claims, as many of the Debtor's affiliates are also Debtors in these Chapter 11 Cases, and no non-Debtor affiliates are named. Additionally, the majority of the cash and cash equivalents had been used by the Debtor post-petition. Accordingly, it is unlikely that even $91,000 would be available for a Chapter 7 trustee.

Exhibit: Liquidation Analysis
NuMale New Mexico SC (Case No. 25-10347-nmc)

[1] The Debtor's amended Statement of Financial Affairs Case No. 25-10347-nmc ECF No. 91 reflects payments within the 90 days preceding the Petition Date as $45,316.53 for October 22, 2024, through January 17, 2025, and reflects "possible transfers of security interests which have benefited insider guarantors" valued at $0.00.  While this is not dispositive as to the existence of preference actions, it does suggest that there is not a likelihood of significant preference recovery.  Additionally, because there are such limited estate assets, the Chapter 7 Trustee would need to hire counsel who would be willing to take Chapter 5 litigation on a contingency basis, for an estate that does not even have sufficient assets to pay filing fees and expert witness fees.  Although the Chapter 11 Trustee believes there may be Chapter 5 Claims that were not scheduled by the Debtor, any defendants to preference claims will be asserting defenses, making litigation contested and therefore costly and drawn out.  Furthermore, in a hypothetical Chapter 7 Case, the economics of pursuing such claims likely render the claims valueless from a liquidation perspective because of the difficulty in engaging counsel to take on representation on a contingency basis.   Nonetheless, providing the most favorable view possible, the Chapter 5 claims have been valued at $22,658.26, which reflects a 50% recovery of the transfers identified in the Schedules.

[2] This Debtor's Amended Schedules A/B Case No. 25-10341 ECF No. 226 list a "claim for bad faith insurance and malpractice re Sanchez case" in "unknown" amount.  Any bad faith litigation against the insurer would be drawn out, hotly contested, heavily litigated, and take a long time.  As this estate has such limited assets, counsel hired to prosecute this claim would be engaged on a contingency basis and be paid  from litigation proceeds in the event the case succeeds.  Contingency counsel typically take a fee of 35% of any recovery, before expenses, which also reduces the distribution to creditors.  The value set forth herein for purposes of this Chapter 7 Liquidation Analysis is speculative and materially less than the monies realized by the Chapter 11 Trustee under the Global Settlement Agreement and Plan.  The value set forth herein of this claim reflects a discount to account for, inter alia, contingency counsel as well as other uncertainties including the very realistic possibility that a Chapter 7 Trustee is simply unable to recover the full value of this claim.  Thus, the amount set forth is an estimate only of the value of this claim in a hypothetical Chapter 7 Case, net of estimated counsel fees and litigation expenses, and is not in any way an admission or representation by the Chapter 11 Trustee respecting the value of this claim in a Chapter 11 reorganization.

[3] This Debtor's Amended Schedules A/B Case No. 25-10341 ECF No. 226 list a "claim for bad faith insurance and malpractice re Sanchez case" in "unknown" amount.  The value of any legal malpractice claim against the Quintairos Firm for its representation of the Sanchez Defendants in the Sanchez Lawsuit is unknown at this time.  In order to preserve the value of this claim so that maximum value can be realized for creditors the value is set forth here as "unknown".

[4] For purposes of this Chapter 7 Liquidation Analysis, it is assumed that because there are no assets in the estate, a Chapter 7 trustee would allow the secured creditors to foreclose on their collateral, and, any asserted liens against the Debtor's property would not be challenged.

[5] Other secured claims have been asserted against this Debtor that are not listed here; however, for purposes of this Chapter 7 Liquidation Analysis, the claims listed here are sufficient to show that there are insufficient assets in this estate to pay secured claims in full.

[6] The statutory trustee fees are estimated based on this Debtor's scheduled assets and account for both the Chapter 11 and hypothetical Chapter 7 trustee's statutory fees.

[7] GTG was employed on a hybrid reduced hourly and contingency fee basis.  It is assumed here that in the event of conversion to a Chapter 7 Case,  GTG would only seek recovery of its reduced hourly rate.  The number set forth in this Liquidation Analysis is an estimate through the Conversion Date, incurred in connection with this Debtor's estate.  Nothing herein shall be taken as a waiver of any of GTG's rights to seek compensation pursuant to the terms of employment agreement and the Employment Order at ECF No. 293, or any other order of the Court.

[8] Prior to the Chapter 11 Trustee's appointment, a number of estate professionals performed work for the debtors-in-possession, some of whom were not formally employed by the estate.  These professionals are anticipated to assert an Administrative Expense Claim for Professional Fees for services rendered prior to the Trustee's appointment.  The number used in this this Liquidation Analysis is an estimate of such anticipated asserted Administrative Expense Claims and is not an admission by the Chapter 11 Trustee that said professionals hold Allowed Administrative Claims under the Plan.

[9] This estimate includes the Patient Care Ombudsman's estimated administrative expenses incurred in connection with this Debtor from his appointment through the hypothetical Conversion Date.  The PCO provided valuable services to the Chapter 11 Estate.

[10] In a Chapter 7 Case, all patient care would need to be terminated, and patients would need to be transitioned to other clinics.  Patient records would also need to be handled in accord with appropriate governing law.  As such, even in a Chapter 7 liquidation it is anticipated that a Patient Care Ombudsman would be needed to assist the Chapter 7 Trustee with wind-down matters relating to patient care.

[11] One Priority Tax Claim has to date been asserted against this Debtor by a taxing authority appearing in these Chapter 11 Cases.  However, the claims bar date for governmental entities will run on July 21, 2025, at 11:59 p.m. prevailing Pacific Time, so, it is possible additional Priority Tax Claim(s) may be asserted against this Debtor.

[12] In a Chapter 7 Case, the hypothetical Chapter 7 Trustee would still need to hire professionals to assist and advise the Chapter 7 Trustee with his or her rights and responsibilities in liquidating a health care business.  Thus although the Debtor's business would no longer be operational in the Chapter 7 Case, the Chapter 7 Trustee would likely incur professional fees and expenses in winding down the Debtor's affairs.

[13] Estimates the costs associated with addressing the Coverage Lawsuit and related matters, which are anticipate to arise in the event the Plan is not confirmed and the Global Settlement Agreement is not effectuated.  Although any counsel hired to represent the hypothetical Chapter 7 estate would likely be engaged on a contingency basis, the litigation costs would still need to be paid.  The amount set forth herein is an estimate only, and is formulated based on the anticipated complexity and contentiousness of the matters.

[14] This amount totals the priority unsecured claims currently filed against this Debtor.  Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed Priority Unsecured Claims under the Plan or against this Debtor.

[15] This amount totals the unsecured claims currently filed against this Debtor.  Nothing herein shall be taken as an admission by the Chapter 11 Trustee that said claimants hold Allowed General Unsecured Claims under the Plan or against this Debtor.