GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Lead Case No.: 25-10341-nmc |
|---|---|
| NUMALE CORPORATION, | Chapter 11 |
| ☐ AFFECTS THIS DEBTOR, | *Jointly administered with:* |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | Feliciano NuMale Nevada PLLC Case No. 25-10342-nmc |
| ☐ NUMEDICAL SC, | NuMedical SC Case No. 25-10343-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Colorado SC Case No. 25-10344-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | NuMale Florida TB PLLC Case No. 25-10345-nmc |
| ☐ NUMALE NEBRASKA LLC, | |
| ☐ NUMALE NEW MEXICO SC, | NuMale Nebraska LLC Case No. 25-10346-nmc |
| ☒ NUMALE ALL DEBTORS, | NuMale New Mexico SC Case No. 25-10347-nmc |
| Debtors. | Hearing Date: ***OST Requested*** Hearing Time: ***OST Requested*** |

**MOTION FOR ORDER TO SHOW CAUSE FOR WILLFUL VIOLATION OF THE ORDER APPOINTING THE TRUSTEE, WILLFUL VIOLATION OF THE AUTOMATIC STAY, AND TURNOVER OF PROPERTY OF THE ESTATE <u>PURSUANT TO 11 U.S.C. §§ 105, 362, AND 542</u>**

Michael Carmel, as the Chapter 11 trustee ("<u>Trustee</u>") of the bankruptcy Estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC,

NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby submits his *Motion for Order to Show Cause for Willful Violation of the Order Appointing the Trustee, Willful Violation of the Automatic Stay, and Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105, 362, and 542* (the "Motion"). The Motion seeks entry of an Order to Show Cause ("OSC"), scheduling an evidentiary hearing at which Brad Palubicki ("Palubicki"), Eva Gabriela "Gabby" Farmer De La Torre ("De La Torre"), Holly Triplett ("Triplett"), Ken Braielmeir ("Braielmeir"), and any other persons aiding and abetting or conspiring with them (altogether with Palubicki, De La Torre, Triplett, and Braielmeir, the "Respondents") shall each personally appear and show cause as to why they each should not be sanctioned and held in contempt for, *inter alia*, intentionally interfering with the Trustee's operation and management of the Estates, for inflicting intentional damage on the Debtors, their Estates, and the Trustee's administration of them, and for failing to turnover property of the estate. More specifically, the Trustee requests the OSC:

- Schedules an evidentiary hearing ("Evidentiary Hearing") at which the Respondents shall each appear in person and each show cause why they should not be held in contempt and sanctioned; and

- Establishes briefing deadlines:
    - That any opposition or response to the OSC by or on behalf of any of the Respondents individually and/or jointly, including supporting evidence, shall be filed fourteen (14) days prior to the Evidentiary Hearing;
    - Any replies by the Trustee or any Respondents who submitted opposition or response to the OSC in conformity with the briefing deadlines it establishes, shall be filed three (3) days prior to the Evidentiary Hearing.

The Trustee requests that the Evidentiary Hearing set by the OSC be scheduled for forty-five (45) days after the hearing on this Motion.

This Motion is made and based upon the points and authorities herein; the declarations of Chapter 11 Trustee Michael W. Carmel, Esq. ("Carmel Decl.") and Gregory E. Garman, Esq. ("Garman Decl.") filed contemporaneously herewith pursuant to Local Rule 9014(c); the papers

and pleadings on file in these Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to Fed. R. Evid. 201(b) and (c) and 1101(a) and (b); and any argument of counsel entertained by the Court at the time of the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

After the Court removed the Debtors' management "for cause" and approved the appointment of Michael W. Carmel as Chapter 11 Trustee, the Trustee attempted to work with the Respondents for the efficient and smooth operation of the Estates' assets and to protect patient care. However, it has become clear that Respondents intentionally and knowingly embarked on a coordinated pattern of post-appointment interference for the purpose of intentionally damaging the Estates, withholding assets from the Trustee, and using Estate assets for their personal benefit. Such misconduct includes withholding passwords to Debtors' technology stack (including attempts to change passwords to deny access to the Trustee), turning off the Estates' credit card processing accounts, turning off the Estates' access to a critical electronic prescription platform, and interfering in the Estates' access to other vendors including the payment platform Paylocity. Egregiously, they further held themselves out to vendors, processors, patients, and staff in violation of this Court's order and affirmatively represented (or strongly inferred) they still controlled the Debtors. Perhaps most egregiously the Trustee has recently discovered that payment invoices were altered to instruct payment to Mr. Palubicki's personal address. As of the filing of this Motion, there remain withheld credentials, estate devices, and records that have not been turned over to the Trustee. Further, there is imminent risk of the loss (or alteration) of estate data, patient records, and spoliation.

### II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), and (O). Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the court has jurisdiction to render a decision.

This Motion is brought pursuant to Sections[1] 105, 362, and 542 of the Bankruptcy Code, as further detailed herein.

Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## RELEVANT FACTS[2]

1. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 130.

3. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' Estates. *See* ECF No. 132.

4. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' Estates. *See* ECF No. 140.

5. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning,

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

[2] In all respects, the Trustee's investigation is ongoing. The Trustee seeks, as part of the OSC, the opportunity to fully brief his findings and present evidence to the Court in connection with the OSC and the Evidentiary Hearing that are requested herein, particularly given that the Trustee has now sought to employ a forensic accountant and professional accounting firm, has obtained a Bankruptcy Rule 2004 examination order for the examination of Palubicki, and intends to examine other Respondents in connection with his ongoing investigation.

the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

6. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' Estates. *See* ECF No. 157.

7. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)* (the "Trustee Appointment Order"). *See, e.g.*, ECF No. 209.

8. On or about July 21, 2025, the Trustee learned that Palubicki was attempting to sell Estate assets, for Palubicki's personal benefit and without the Trustee's knowledge, consent, or authority. *See* **Exhibit "1"** to Carmel Decl.

9. Trustee's counsel immediately reached out to David Riggi, DOPs' counsel and informed him that such conduct was a violation of the automatic stay and Trustee Appointment Order and such conduct must immediately stop. *See* Garman Decl. ¶ 4.

10. Within hours of that phone call, Brad Palubicki sent a follow-up correspondence to his sale contact advising, for the first time, in an effort to cover his tracks, that a sale would need to involve the Chapter 11 Trustee. *See* **Exhibit "2"** to Carmel Decl.

11. Later, Palubicki would mischaracterize his communications with the prospective purchaser. *See* **Exhibit "3"** to Carmel Decl.

12. On or about July 29, 2025, the Trustee terminated Palubicki, De La Torre, Triplett, Braielmeir, and four others (collectively, the "Terminated Employees"). Copies of all termination letters issued by the Trustee are attached hereto, as composite **Exhibit "4"** to the Carmel Decl. (collectively, the "Termination Letters").

13. The Terminated Employees did not comply with the turnover requirements set forth in their respective termination letters, including turnover of passwords and other electronic access to the Trustee. *See* Carmel Decl. ¶ 9.

14. The same day the Trustee issued the Termination Letters, the Trustee sent correspondence to the Debtors' technology vendor, Midwest IT Pros ("Midwest IT"), directing

turnover of, *inter alia*, technological access to various of the Debtors' systems. *See* **Exhibit "5"** to Carmel Decl. ("Midwest Letter").

15. Midwest IT's compliance with the Midwest Letter has been spotty. Additionally, Midwest IT appears to be owned and/or operated and/or controlled by Feliciano's relatives Gil Feliciano and Gabriel Camacho (Feliciano's brother). *See* Carmel Decl. ¶ 11.

16. Immediately after the Termination Letters were issued, the Respondents began wreaking havoc.

17. On the first Saturday following Palubicki's termination, he *sent an email allegedly on Dr. Feliciano's behalf*, contacting the Debtors' credit card processor Finix "to request the immediate suspension of several merchant processing accounts due to a significant change in our business operations[.]" *See* **Exhibit "6"** to Carmel Decl.

18. As a result, as of the morning of Monday August 4, 2025, the **Debtors'** credit card system had been shut off, and the Debtors were not able to collect payment from patients. *See* Carmel Decl. ¶ 13.

19. However, Palubicki did not stop there. Once the Trustee had rectified Palubicki's intentional interference with the Debtors' revenue source, Palubicki then accessed the company's invoices system and *altered Finix invoices* to reflect that they would be billed to "NuMale Corporation PW" *at Palubicki's home address*. *See* **Exhibit "7"** to Carmel Decl.

20. Additionally, the Trustee is advised that, in the days following their termination, the Trustee is informed and believes that De La Torre (who is Palubicki's partner) reached out to one or more vendors saying that the Debtors are closing down, going out of business, and/or that certain locations may no longer be operational or are beginning to cease operations. This resulted in equipment vendors seeking to recover their equipment that is otherwise used by the Debtors in rendering patient care. *See* Carmel Decl. ¶ 15.

21. Post-termination, Palubicki also sent a number of email correspondences allegedly "on behalf of" his business partner Feliciano, in which he directs, authorizes, and/or demands, allegedly on Feliciano's behalf, any number of corporation-related matters. When the Trustee noted Palubicki lacked authority to act, direct, or authorize, or speak on behalf of Feliciano, similar

emails began curiously appearing from the personal Gmail account of the previously unavailable Dr. Feliciano. *See* Carmel Decl. ¶ 16.

22. Trustee's counsel has also been informed by Mr. Camacho (Feliciano's brother), Mr. Riggi, and Mr. Gubner that Feliciano voluntarily checked himself into a long-term medical care facility and had provided a power of attorney to Mr. Camacho to make all decisions on behalf of his brother. To date, no power of attorney has ever been provided, and Mr. Camacho has refused to substantively engage with the Trustee notwithstanding repeated attempts. *See* Garman Decl. ¶ 5.

23. Out of concern that Palubicki had hacked into Feliciano's personal email account and was sending email communications to seem *as if* they were sent by Feliciano, Trustee's counsel invited Feliciano to participate in a videoconference and/or in person meeting to verify identify and discuss the "concerns" in Feliciano's emails. "Feliciano" has failed to accept that invitation. *See* Carmel Decl. ¶ 17.

24. Palubicki's efforts to destroy the Debtors and damage their Estates take on a new form every day.

25. Most recently, on or about Friday August 8, 2025, the Trustee learned that De La Torre, and other terminated employees Triplett and Brielmaier, improperly accessed the NuMale MDToolbox Account #464 and altered the ability for the Debtors' actual employees to access the MDToolbox Account. MDToolbox is a prescribing platform for patient medications used by the Debtors. *See* **Exhibit "8"** to Carmel Decl.

26. When the Debtors' employees asked for this to be corrected, MDToolbox advised they would make no corrective changes without proof of the Trustee's authority. *See* Carmel Decl. ¶ 19.

27. Within minutes of learning about this, the Trustee immediately directed MDToolbox to immediately terminate Holly Triplett's, Gabby De La Torre's, Ken Brielmaier's, and Brad Palubicki's access, and requesting confirmation of MDToolbox's compliance. *See* **Exhibit "9"** to Carmel Decl.

28. MD Toolbox responded on August 8, 2025, stating it was "send[ing] this up to the proper channels…" *See* **Exhibit "10"** to Carmel Decl.

29. Through counsel the Trustee followed up with MDToolbox on August 9, 2025. MDToolbox responded the same day, stating, "We are currently reviewing and will reach out once we have more information." *See* **Exhibit "11"** to Carmel Decl.

30. As of the filing of this Motion, Debtors remain unable to access or use MDToolbox.

31. On August 9, 2025, the Trustee, through counsel, sent Palubicki a "Cease and Desist" letter. The letter was sent via regular mail and email. *See* **Exhibit "12"** to Carmel Decl. (the "Cease and Desist Letter").

32. Palubicki remains undeterred despite the warnings stated in the Cease and Desist Letter.

33. The Trustee is informed and believes that MDToolbox is not the only impacted payment processing vendor. In the early morning hours of Monday August 11, 2025, the Trustee was advised that Palubicki and Triplett had attempted to gain Paylocity access (nearly two weeks after their terminations), and, as a consequence the Debtors' access to Paylocity is currently blocked. *See* Carmel Decl. ¶ 24.

34. The relief requested in this Motion extends to all vendors and all payment processors doing business with the Debtors, and is not limited to just those of which the Trustee is aware as of this filing and has specifically named herein.

## IV.
## LEGAL ARGUMENT

### A. An Order to Show Cause Is Warranted.

An order to show cause is appropriate as the Respondents have: (i) violated an order entered by this court directing the appointment of Trustee Carmel and giving him exclusive authority to control estate assets; (ii) willfully violated the automatic stay; and (iii) refused to turn over property of the estate to the Trustee. "Bankruptcy courts have the power to impose civil contempt." *In re Smith*, 462 B.R. 783, 791-92 (Bankr. D. Nev. 2011) (collecting cases). "Civil contempt authority allows a court to remedy a violation of a specific order. . ." *See Knupfer v. Lindblade (In re Dyer)*,

322 F.3d 1178, 1196 (9th Cir. 2003). "[T]o hold a party in contempt, the bankruptcy court must find that the party 'violated a specific and definite order of the court.'" *In re Smith*, 462 B.R. at 792 (citations omitted). In other circumstances involving compliance with bankruptcy court orders, attorney fees have been held to be "an appropriate component of a civil contempt award." *In re Dyer*, 322 F.3d at 1195 (citation omitted). Here, the Trustee Appointment Order [ECF No. 209] was explicitly and intentionally ignored and violated, and the Respondents have failed to comply with their statutory obligations to turnover property of the estate and comply with the automatic stay.

1. **The Court Further Has the Inherent Authority to Sanction Contemptuous Conduct.**

The Ninth Circuit has further held that bankruptcy courts possess the inherent authority to sanction "bad faith" or "willful misconduct." *See In re Dyer*, 322 F.3d at 1196. If a rule or statute does not adequately compensate a party for "a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes[,]" the bankruptcy court can rely on 11 U.S.C. § 105(a) to impose sanctions. *See In re DeVille*, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002) (citations omitted), *aff'd*, 361 F.3d 539 (9th Cir. 2004). "The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." *In re Dyer*, 322 F.3d at 1196. "By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers*[3] recognized exists within Article III courts." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 283, 284 (9th Cir. 1996) (citations omitted) (also quoting *Chambers* for the premise that this allows "courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."), *subsequent limitation recognized by In re A&E Family Investment, LLC*, 359 B.R. 249 (Bankr. D. Ariz. 2007).

Conclusions about the nature of a sanction are drawn from "an examination of the character of the relief itself." *See Internat'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821,

---

[3] *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

828 (1994) (citation omitted). Whether a sanction is classified as civil (as opposed to criminal) "turns on the 'character and purpose' of the sanction involved." *Bagwell*, 512 U.S. at 827 (citation omitted). For example, "[a] contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'" *Bagwell*, 512 U.S. at 827-28 (citation omitted).

"Civil penalties must either be compensatory or designed to coerce compliance." *In re Dyer*, 322 F.3d at 1192 (citation omitted). "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, 512 U.S. at 829 (citation omitted). For example, "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order[]" is a coercive civil contempt fine. *Bagwell*, 512 U.S. at 829. Findings of contempt are coercive (and, therefore, a civil contempt sanction) where "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Bagwell*, 512 U.S. at 828 (internal quotation marks and citations omitted). "A contempt fine accordingly is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Bagwell*, 512 U.S. at 829 (citation omitted). Civil contempt sanctions can involve monetary penalties or even imprisonment with the pending option of release if the contemnor complies with the court order. *Id.* at 828-29 (collecting cases).

Here, as set forth in the Carmel Decl., there is ample record for this Court to issue the OSC directing the Respondents to appear and show cause why they should not be sanctioned and held in contempt for, *inter alia*, violating the express terms of the Trustee Appointment Order and intentionally interfering with and/or attempting to interfere with the Trustee's operation, management, and control of the Estates, and the Debtors' business operations. Palubicki and the Respondents are not stopping. The current record shows an escalating pattern of interference and potentially fraudulent and unlawful acts. When the Trustee learns of them, he takes action to remedy the Respondents' actions, and, one or more of the Respondents subsequently responds, alone or in concert, to continue the interference.

To date, the Trustee has uncovered the following: (i) Palubicki "on behalf of" Feliciano

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

instructed the Debtors' credit card processor to cease processing payments, thus disrupting the Debtors' income source; (ii) Palubicki somehow accessed the company's system and changed the address for the Debtors' Finix invoices so they would be delivered to his home in Las Vegas, Nevada; (iii) De La Torre and possibly other Respondents contacted at least one third party vendor[4] misrepresenting that the Debtors were closing down, going out of business, and/or no longer operational, causing that vendor to try and repossess equipment in August of 2025 (nearly seven months post-petition); (iv) Palubicki has made multiple false representations, in writing, either on behalf of or pretending to be Feliciano, regarding corporate authority; (v) after being terminated from the Debtors, multiple Respondents improperly accessed the NuMale MDToolbox Account #464 and altered the ability for the Debtors' actual employees to access the MDToolbox Account; (vi) at least one vendor (MDToolbox) refused the Debtors' reversal instructions after it had been contacted by at least one of the Respondents and required *the Debtors* to provide proof of authority before the vendor accepted instruction to reverse the Wrongdoer's prior directive(s); (vii) at least one other payment processing vendor (Paylocity) has apparently been contacted by one or more Wrongdoers attempting to gain access, which then blocked the Debtors' ability to be provided access to their accounts; (viii) none of the terminated employees complied with the Trustee's turnover directive in their Termination Letters regarding the turnover of passwords and, then, utilized electronic password and/or access information to later attempt to sabotage the Debtors and the Estates; and (ix) Midwest IT, the Debtors' original IT technological vendor with close family ties to at least one of the terminated individuals (Feliciano) has been less than cooperative with the Trustee's efforts to steward the transition to trustworthy leadership.

The Trustee is in the process of engaging a forensic accountant to investigate the Debtors' financials, has initiated Bankruptcy Rule 2004 examination discovery, is in the process of transitioning the Debtors' IT technological operations to a trusted vendor, has terminated the Respondents' electronic access as much as possible, has as he becomes aware of them responded

---

[4] The one vendor with which the Trustee is most acutely aware in regards to the Respondents' interference does not appear to have been disclosed in the Debtors' multiple Schedules and Statements filed in these Chapter 11 Cases.

to third parties contacted by a Wrongdoer to advise that the Trustee is in control and the Debtors' business is operational, and is in constant contact with current management put in place by the Trustee after the Termination Letters were issued. *See* Carmel Decl. ¶ 25. The Trustee is also making best efforts to balance these, against not interfering in any non-debtor operations. *See* Carmel Decl. ¶ 26.

B.     **Turnover of Property of The Estate**

The Bankruptcy Code requires immediate delivery of estate property and related records to the Trustee. 11 U.S.C. § 542(a) obligates any "entity" in possession, custody, or control of property that the Trustee may use, sell, or lease under § 363 to deliver such property and account for it, unless the property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(e) This Court is authorized to order "any person" to turn over recorded information—including books, records, and papers—relating to the Debtors' property or financial affairs (subject only to any applicable privilege). These turnover duties align with the Trustee's exclusive authority and responsibilities under 11 U.S.C. §§ 323(a)–(b), § 1106(a)(1) (incorporating § 704 duties), and the Debtors' obligation to surrender property and recorded information under 11 U.S.C. § 521(a)(4). In short, once the Trustee was approved, Respondents lost any authority to withhold or manipulate estate assets or information; their only lawful role is to deliver and account.

The required turnover includes both operational control items and recorded information essential to preserve value and continuity. Without limitation, Respondents must deliver: (i) administrator-level credentials, passwords, multifactor tokens/devices, recovery codes, and ownership/registrar control for payment processing, electronic prescribing, EHR/PM systems, email and domain services, cloud storage, telephone/communications, accounting/billing, and any other production systems; (ii) hardware and removable media owned by the Debtors (workstations, laptops, phones, external drives, security keys) and any device storing estate data; (iii) recorded information under § 542(e), including configuration backups, audit logs, access/change histories, vendor tickets, service contracts, and correspondence sufficient to restore full Trustee control; and (iv) cryptographic/API materials (SSH keys, API tokens, OAuth app ownership) enabling access to the foregoing. These items are plainly not "of inconsequential value"; they are the keys to

operating the business, protecting patient and financial integrity, and safeguarding the Estates. The Court should order turnover on a short fuse and direct third-party custodians to recognize the Trustee's authority and provide all information needed to reconstitute control. 11 U.S.C. §§ 542(a) and (e).

## V.
## CONCLUSION

WHEREFORE, the Trustee requests that the Court enter an *Order to Show Cause* that sets an evidentiary hearing at which the Respondents shall each personally appear and show cause as to why they each should not be sanctioned and held in contempt for, *inter alia*, violation of this Court's Order as well as intentionally interfering with the Trustee's operation and management of the Estates, immediately compel turnover of property of the Estates, and grant further and other relief the Court deems just and proper.

Dated this 11th day of August 2025.

GARMAN TURNER GORDON LLP

By: */s/ Mary Langsner*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11 Trustee*