GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,
Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| In re: | Lead Case No.: 25-10341-nmc |
|---|---|
| NUMALE CORPORATION, | Chapter 11 |
| ☐ AFFECTS THIS DEBTOR, | *Jointly administered with:* |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | Feliciano NuMale Nevada PLLC, Case No. 25-10342-nmc |
| ☐ NUMEDICAL SC, | NuMedical SC Case No. 25-10343-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Colorado SC, Case No. 25-10344-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | NuMale Florida TB PLLC, Case No. 25-10345-nmc |
| ☐ NUMALE NEBRASKA LLC, | NuMale Nebraska LLC Case No. 25-10346-nmc |
| ☐ NUMALE NEW MEXICO SC, | NuMale New Mexico SC Case No. 25-10347-nmc |
| ☒ NUMALE ALL DEBTORS, Debtors. | Hearing Date: September 9, 2025<br>Hearing Time: 9:30 a.m. |

**MOTION FOR AN ORDER COMPELLING TURNOVER OF PROPERTY OF THE
ESTATES AND FOR SANCTIONS**

Michael Carmel, as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors") respectfully submits the *Motion for an Order Compelling Turnover of Property of the Estates and for Sanctions* (the "Motion"). The Motion seeks an order substantially in the form attached hereto as **Exhibit "1"** that (i) requires prompt turnover of insurance claim proceeds for the Claim No. *NuMale Corporation 5630118129* ("Claim") made with Zurich North America ("Zurich"), in the amount of approximately $168,386.01 (the "Assets"), which are property of the bankruptcy Estates; and (ii) (x) compels Zurich to turn over the estate Assets to the Trustee within five (5) calendar days of the Trustee notifying Zurich of the Order granting this Motion, and (y) in the event Zurich fails to completely, timely, and orderly comply with any order granting this Motion, authorizes the Trustee to submit a supplemental declaration identifying all attorney fees and costs incurred in pursuing turnover of the Assets from Zurich and submit an order commensurate with said declaration's filing that authorizes and issues sanctions against Zurich for noncompliance with this Court's order in the amount of such fees and costs; and (iii) grants such further and other relief the Court deems just and proper.

This Motion is brought pursuant to Sections[1] 542 and 105 of the Bankruptcy Code, seeking turnover of property of the estate, and sanctions, as further detailed herein.

This Motion is made and based upon the points and authorities herein; the declarations of Michael Carmel ("Carmel Decl.") and Mary Langsner, Ph.D. ("Langsner Decl.") filed contemporaneously herewith pursuant to Local Rule 9014(c); the papers and pleadings on file in these Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any argument of counsel entertained by the Court at the time of the hearing on the Motion.

. . .

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## RELEVANT FACTS

1. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

3. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

4. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

5. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee*, accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

6. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

7. Immediately upon his appointment, the Trustee began investigating the financial affairs and assets of the Debtors. *See* Carmel Decl. ¶ 3.

8. In the course of these investigations, the Trustee learned that, post-petition, a theft had allegedly occurred at the Debtors' Denver clinic post-petition, and, certain equipment and other inventory was asserted by the Debtors' representatives to be missing. *See* Carmel Decl. ¶ 4.

9. The Trustee also learned that the Debtors' principal Brad Palubicki had been communicating with Zurich regarding the Claim, which regarded equipment alleged to be stolen and/or damaged in connection with the February 2025 apparent theft at the Debtors' Denver Clinic. The Trustee also learned that Zurich had assigned the Claim a claim number (NuMale Corporation 5630118129), had been provided an inventory of the items alleged to be stolen and/or damaged, had identified the amount of money or value associated with the items allegedly stolen and/or damaged ($168,386.01), and had stated that Zurich would be preparing a settlement email regarding allocation of amounts to be paid. *See* Carmel Decl. ¶ 5.

10. *Inter alia*, the Trustee requested a copy of and reviewed the police report, all Claim-related correspondence between Zurich and the Debtors' representatives, and an itemized inventory of the items reported as stolen. *See* Carmel Decl. ¶ 6.

11. The Trustee also ultimately directed Zurich to direct all Claim-related correspondence, and any payment of the Assets, to him. *See* **Exhibit "1"** to Carmel Decl. ("Turnover Letter").

12. The Claim, and the Assets, are property of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541.

13. In the course of his investigation, the Trustee also demanded, from the Debtors' representative Brad Palubicki, proof that items subject of the Claim were owned and/or paid for solely by non-Debtors. No such proof was provided. *See* Carmel Decl. ¶ 8.

14. On June 5, 2025, the Trustee issued a demand to Zurich seeking, *inter alia*, the turnover of the Assets, and directing that all correspondence regarding the Claim be exclusively with and directed to the Trustee and his counsel. *See* **Exhibit "1"** to Carmel Decl.; *see also* **Exhibit "1"** to Langsner Decl.

15. Zurich did not turn over the Assets and did not respond to the Turnover Letter. *See* Carmel Decl. ¶ 9. *See* Langsner Decl. ¶ 4.

16. Nearly two weeks later, the Trustee through counsel followed up with Zurich again seeking turnover of the Assets, inviting Zurich to a meet-and-confer, and, *inter alia*, noting that a

motion will be filed with the Bankruptcy Court should Zurich fail to engage. *See* **Exhibit "2"** to Langsner Decl.

17. Zurich did not turn over the Assets and did not respond to this correspondence, either. *See* Carmel Decl. ¶ 10. *See* Langsner Decl. ¶ 5.

18. In the weeks following, Trustee's counsel called and left two voicemails with Zurich's representative requesting a call back. Zurich did not respond to any of these. *See* Langsner Decl. ¶ 6.

19. Then again in early July of 2025, Trustee's counsel again wrote Zurich noting, *inter alia*, Zurich's total lack of response to all communication initiated by the Trustee and indicating a motion would be filed. *See* **Exhibit "3"** to Langsner Decl.

20. Zurich did not turn over the Assets and did not respond to this correspondence, either. *See* Carmel Decl. ¶ 11. *See* Langsner Decl. ¶ 7.

21. To date, Zurich has not responded to any of the Trustee's counsel's communications. *See* Langsner Decl. ¶ 8.

22. Thus, beyond the fact that under the Bankruptcy Code Zurich is required to turn over Estate assets (including the Assets), the Trustee has undertaken significant efforts to obtain the release of the Assets but has been essentially ignored by Zurich to date. *See* Carmel Decl. ¶ 12. *See also* **Exhibits 1, 2, and 3** to Langsner Decl.

23. Zurich has not engaged with the Trustee whatsoever, despite calls, voicemail, emails, and written correspondence. *See* Carmel Decl. ¶ 1. *See* Langsner Decl. ¶ 9.

24. Therefore, the Trustee also seeks sanctions through this Motion, in the event of Zurich's continued noncompliance and refusal to turn over property of the estate. Should Zurich fail to comply with the Court's order granting this Motion and directing the immediate turnover of the Assets to the Trustee, sanctions are requested in the form of Trustee's attorney fees and costs incurred in bringing this Motion as well as all of the Trustee's efforts seeking to obtain Zurich's turnover and compliance.

25. This Motion has been served on all creditors, as well as Zurich and Zurich's representative. *See* Certificate of Service, filed commensurately herewith.

## II.
## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), and (O). Venue of the Debtor's Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the court has jurisdiction to render a decision.

The statutory bases for the relief sought herein arise from Sections 542 and 105 of the Bankruptcy Code. Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## ANALYSIS

**A.    Turnover of the Assets—Which Are Estate Property—Is Warranted.**

11 U.S.C. § 542(a) provides:

> Except as [in circumstances inapplicable here], an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Section 542(a) of the Bankruptcy Code requires turnover by an entity that is in "possession, custody, or control" of property that can be used sold or leased by the trustee during the Chapter 11 Cases. 11 U.S.C. § 542(a). The Court's jurisdiction and authority to demand turnover extends to wherever such property of the estate is found, regardless of location. 11 U.S.C. § 541(a).

As noted in *City of Chicago v. Fulton*, 141 S. Ct. 585, 592 (2021), "mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code." 141 S. Ct. at 592. However, *Fulton* also notes that "§ 542 expressly governs '[t]urnover of property to the estate,' and subsection (a) describes the broad range of property that an entity 'shall deliver to the trustee.'" 141 S. Ct. at 591. And, "§ 542(a) works within the bankruptcy

process to draw far-flung estate property back into the hands of the debtor or trustee." 141 S. Ct. at 591.  *See also Stuart v. City of Scottsdale (In re Stuart)*, 632 B.R. 531, 539 (B.A.P. 9th Cir. 2021) (recognizing *Fulton*).

Here, it is unequivocally clear that turnover is required under Section 542.  Additionally, Zurich has refused to engage with the Trustee or his counsel, despite having been afforded more than two months to do so.  Therefore Zurich should be compelled to immediately turn over the Assets and should be sanctioned should Zurich fail to comply with this Court's turnover order.

This Motion is brought to ensure that the Trustee obtains turnover of the Assets.  As with any business operation, having cash on hand assists with maintaining currency with operational costs including rent.  However, here there is an additional layer of concern, in that the Debtors' former principal Brad Palubicki had been in contact with Zurich regarding the Claim prior to the Trustee issuing his Turnover Letter.  Zurich's total silence since, Zurich's refusal to engage with the Trustee, and Zurich's failure to turn over Estate Assets are therefore of particular concern.  The Trustee is taking steps to maximize the value of these Estates, and that includes seeking the turnover of the Estates' assets.  Accordingly, Zurich should be directed to turn over the Assets to the Trustee immediately and should be sanctioned, as requested herein, in the event Zurich does not fully and timely comply with any order of the Court granting this Motion and ordering the immediate turnover of the Assets.

**B.    Sanctions Against Zurich in the Event of Noncompliance With This Court's Turnover Order Are Appropriate.**

Zurich has a history of not only not complying with the Trustee's repeated turnover requests, but of failing to respond whatsoever.  *See, e.g.*, Carmel Decl. ¶¶ 9-14.  *See also* Langsner Decl. ¶¶ 4-9.  Given this, the Trustee is not confident that Zurich would be cooperative in turning over the Assets, in which instance sanctions for noncompliance with a Court order would be warranted.  However, in these Chapter 11 Cases, the Estates would incur the further significant cost of bringing a second, separate sanctions motion against Zurich should Zurich continue its current course of action and ignore this Court's turnover order as well.  Therefore, in light of these considerations, the Trustee requests a process to address Zurich's noncompliance, in the event

Zurich does not comply with any order granting this Motion, as follows: If Zurich has not provided turnover in full of the Assets, to the Trustee, within five (5) calendar days of Trustee's counsel notifying Zurich of any order granting this Motion, the Trustee shall submit a declaration of counsel attesting to the attorney fees incurred in bringing this Motion and in all prior efforts seeking Zurich's turnover and compliance, and to submit a proposed order awarding sanctions in the form of the full amount of Trustee's attorney fees and costs as evidenced by such declaration.

The Ninth Circuit has held that bankruptcy courts possess the inherent authority to sanction "bad faith" or "willful misconduct." *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003). If a rule or statute does not adequately compensate a party for "a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes[,]" the bankruptcy court can rely on 11 U.S.C. § 105(a) to impose sanctions. *See In re DeVille*, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002) (citations omitted), *aff'd*, 361 F.3d 539 (9th Cir. 2004). "The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." *In re Dyer*, 322 F.3d at 1196. "By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers*[2] recognized exists within Article III courts." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 283, 284 (9th Cir. 1996) (citations omitted) (also quoting *Chambers* for the premise that this allows "courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."), *subsequent limitation recognized by In re A&E Family Investment, LLC*, 359 B.R. 249 (Bankr. D. Ariz. 2007).

Therefore, should Zurich fail to comply with an order granting this Motion by turning over the full amount of the Assets within five (5) days of the Trustee notifying Zurich of said Order, this Court has the authority to issue sanctions against Zurich for noncompliance with its order, and, utilizing the abbreviated mechanism proposed here by the Trustee, can provide the Estates meaningful relief for the attorney fees and costs incurred in seeking turnover of the Assets, which are property of the Estates.

---

[2] *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

## IV.
## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order (i) requiring prompt turnover of insurance claim proceeds for the Claim No. *NuMale Corporation 5630118129* (the Claim) made with Zurich North America in the amount of approximately $168,386.01 (the Assets), which are property of the bankruptcy Estates; and (ii) (x) compelling Zurich to turn over the estate Assets to the Trustee within five (5) calendar days of the Trustee (through counsel) notifying Zurich of the Order granting this Motion, and (y) in the event Zurich fails to completely, timely, and orderly comply with any order granting this Motion, authorizing the Trustee to submit a supplemental declaration identifying all attorney fees and costs incurred in pursuing turnover of the Assets from Zurich and submit an order commensurate with said declaration's filing that authorizes and issues sanctions against Zurich for noncompliance with this Court's order in the amount of such fees and costs; and (iii) granting such further and other relief the Court deems just and proper.

Dated this 12th day of August 2025.

           GARMAN TURNER GORDON LLP

           By: */s/ Mary Langsner*
                GREGORY E. GARMAN, ESQ.
                TALITHA GRAY KOZLOWSKI, ESQ.
                MARY LANGSNER, Ph.D.
                7251 Amigo Street, Suite 210
                Las Vegas, Nevada 89119
                *Attorneys for Michael Carmel, Chapter 11 Trustee*