GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
| NUMALE CORPORATION, | |
|    AFFECTS THIS DEBTOR, ☐ | *Jointly administered with:* |
|    AFFECTS FELICIANO<br>   NUMALE NEVADA PLLC, ☐ | Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc |
|    NUMEDICAL SC, ☐ | NuMedical SC<br>Case No. 25-10343-nmc |
|    NUMALE COLORADO SC, ☐ | NuMale Colorado SC,<br>Case No. 25-10344-nmc |
|    NUMALE FLORIDA TB PLLC, ☐ | NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc |
|    NUMALE NEBRASKA LLC, ☐ | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
|    NUMALE NEW MEXICO SC, ☐ | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
|    NUMALE ALL DEBTORS, ☒ | |
|    Debtors. | Hearing Date:<br>Hearing Time: |

### MOTION PURSUANT TO FED. R. BANKR. P. 9019 TO AUTHORIZE AND APPROVE SETTLEMENT WITH NEWTEK BANK, N.A.

Michael Carmel, as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby submits this motion (the "Motion") for entry of an order pursuant to

1  Bankruptcy Rule[1] 9019 approving the Settlement Agreement attached hereto as **Exhibit 1** (the

2  "Settlement Agreement").

3         This Motion is made and based upon the following memorandum of points and

4  authorities; the declarations of Chapter 11 Trustee Michael W. Carmel ("Carmel Decl.") filed

5  concurrently herewith; the pleadings, papers, and other records on file with the clerk of the

6  above-captioned Court, judicial notice of which is hereby respectfully requested pursuant to FED.

7  R. EVID. 201(b) and (c) and 1101(a) and (b); and any argument of counsel entertained by the

8  Court at the hearing on the Motion.

9  **MEMORANDUM OF POINTS AND AUTHORITIES**

10  **I.**
    **JURISDICTION AND VENUE**

11

12         1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and

13  1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F), (H), (K), and (O). Venue is

14  proper in this Court pursuant to 28 U.S.C. §§1408(1) and 1409(a). The statutory bases for the

15  relief requested herein is Section 105 and Bankruptcy Rule 9019(a).

16         2.     Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or

17  judgment(s) on this Application by the bankruptcy judge if it is determined that the bankruptcy

18  judge, absent consent of the parties, cannot enter final orders for judgment consistent with

19  Article III of the United States Constitution.

20  **II.**
    **BACKGROUND**

21         3.     On December 27, 2023, Debtor, NMC Illinois, LLC, NuMale Albuquerque, LLC,

22  NMC Denver, LLC, and NuMale Medical Center, LLC obtained a loan in the principal amount

23  of $5 million from Newtek Bank, N.A. ("Newtek"), being SBA Loan No. 55690091-02 (the

24  "Loan"). *See* Ex. 1 to the Carmel Decl., pp.15-19.

25  . . .

26  ---
    [1] Unless otherwise stated, all references to "Section" herein shall be to Title 11 of the U.S. Code (the "Bankruptcy

27  Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy

28  Court for the District of Nevada.

4. The Loan is memorialized by the Business Loan Agreement, U.S. Small Business Administration Note, Commercial Security Agreement, UCC-1 Financing Statement recorded with the Nevada Secretary of State on December 22, 2023, Instrument Number 2024382090-6, guaranties, and all related loan documents (collectively, the "Loan Documents"). *Id.*, pp. 4-32.

5. Justin Pulliam, Irma Pulliam, Brad Palubicki, and Carlos Feliciano guaranteed repayment of the Loan. *Id.*, p. 16.

6. Newtek recorded that certain Deed of Trust dated December 27, 2023, between Justin Pulliam and Irma Pulliam, as grantors, Newtek, as beneficiary, and Netco Inc., as trustee, with the Clark County, Nevada Recorder's Office as Instrument Number 20231228-0002475, against the real property bearing assessor parcel number 176-24-411-118, which property is owned by J. Pulliam and I. Pulliam (the "Pulliam Deed of Trust"). *See* Agreement § D.

7. NMC Illinois, LLC, NuMale Albuquerque, LLC, NMC Denver, LLC, and NuMale Medical Center, LLC, NuMale Denver, LLC, NuMale Omaha, LLC, NuMale Charlotte, LLC, NuMale Tampa, LLC, NuMale Milwaukee, LLC, Carlos Feliciano, and Brad Palubicki (collectively, the "Non-Settling Obligors") are not parties to this Agreement and shall not be released from the Loan or the obligations arising under the Loan Documents. *See generally*, Agreement.

8. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

9. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17, appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

10. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same

morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

11. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b).  See, e.g.*, ECF No. 209.

12. On June 20, 2025, Newtek filed its proof of claim asserting a claim for $5,033,301.46 (the "Proof of Claim").  *See* Ex. 1 to the Carmel Decl.

13. Newtek's Commercial Security Agreement grants Newtek a first priority lien in the following collateral:

> The word "Collateral" as used in this Agreement means the following descried property, whether no owned or hereafter acquired, whether existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:
>
> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit wrights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment or performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other miners and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and comingled goods relating to the foregoing property, and all additional, replacements of and substitutions for all or any part of the foregoing property; all insurance relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing; and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceedings (including but not limited to all insurance payments) of or relating to the foregoing property.
>
> In addition, the word "Collateral" also include the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
>
> (A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.
>
> (B)  All products and proceeds of any of the property described in this Collateral section.
>
> (C)  All accounts, general intangibles, instruments, rent, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition

of any of the property described in this Collateral section.

(D)    All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement, or other process.

(E)    All records and data relating to any of the property described in this Collateral section, whether in the form or a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

*Id.*, p. 4.  Newtek properly recorded a UCC-1 Financing Statement perfecting its first priority lien. *Id.*, p. 24.

14.    Newtek's proof of claim incorporates the value of $73,000 identified by Mr. Palubicki when he prepared NuMale Corporation's schedules and statements.  However, this is based on the incorrect values stated in the initial schedules signed by Mr. Palubicki (and the value therein), which were subsequently amended.  *See* ECF Nos. 31 and 220.

15.    Beyond the amended schedules, the Trustee's investigation has determined that there are additional assets that may fall within Newtek's broad definition of collateral.  The Trustee's liquidation analysis for NuMale Corporation identifies: (i) scheduled assets valued at $133,000, with additional scheduled assets identified in an "unknown" amount; (ii) litigation claims, including recovery on a judgment exceeding $200,000; (iii) equity interests in affiliate entities, the value of which as a going concern will be determined in connection with the anticipated sale of Debtors' assets under the Plan; (iv) Debtors' bad faith insurance claim (which is being settled by the Global Settlement Agreement); and (v) the Quintairos malpractice claim. *See* Disclosure Statement, Liquidation Analysis, ECF No. 435-2, p. 2 of 16.  Thus, Newtek can make a credible argument that its full $5 million claim is secured, which argument the Trustee disputes.  *See* Carmel Decl. ¶ 4.

16.    Newtek and the Trustee have negotiated in good faith and arms-length to resolve the amount and treatment of Newtek's asserted claim with respect to the Loan and Loan Documents.  *See* Carmel Decl. ¶ 5.

17.    Pursuant to the Settlement Agreement: (i) Newtek shall have an allowed secured claim in the amount of $1 million, which will be paid on the effective date of the pending *Joint Plan of Reorganization* (the "Plan"); (ii) the balance of Newtek's claim shall be treated as an allowed general unsecured claim entitled to the same treatment under the Plan as all other general unsecured creditors; (iii) Newtek shall record a reconveyance of the Pulliam Deed of Trust with the Clark County Recorder's Office, which was an integral term of the Global Settlement Agreement; and (iv) Newtek shall retain all rights against the other obligors of the Loan. *See generally* Agreement.

### III.
### LEGAL ARGUMENT

**A.    Applicable Standard Under Bankruptcy Rule 9019.**

Compromise and settlement agreements have long been an integral part of the bankruptcy process. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106 (1939)). A bankruptcy court may approve a compromise if it makes an informed, independent judgment that the compromise is fair and equitable. *See id.*

To determine whether a proposed settlement is fair and equitable, a bankruptcy court is directed to consider the following factors (the "A&C Properties Factors"): "(1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed." *In re Endoscopy Ctr. of S. Nevada, LLC*, 451 B.R. 527, 535-36 (Bankr. D. Nev. 2011) (*citing In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

In seeking approval of a compromise, the trustee has the burden of persuasion. *See id*. at 536 (citation omitted). However, the trustee is not necessarily required to satisfy each of the A&C Properties Factors if the A&C Properties Factors favor approval of the settlement as a whole. *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416-17 (Bankr. N.D. Cal. 2004). A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its

own judgment, the Court determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation." *In re Endoscopy Center*, 451 B.R. at 535 (*citing TMT Trailer*, 390 U.S. at 425).

Thus, the settlement does not have to be the best the trustee could have possibly obtained, but must only fall "within the reasonable range of litigation possibilities." *In re Adelphia Comm'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citation omitted). The court is not required to conduct a mini-trial of the underlying claims or rule upon disputed facts and questions of law, which would defeat the purpose of settlement and frustrate negotiations, but need only canvass the issues. *See Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (*citing*, *inter alia*, *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)); *In re Western Funding Inc.*, 550 B.R. 841, 852 (B.A.P. 9th Cir. 2016), *aff'd,* 705 F. App'x 600 (9th Cir. 2017); *In re Sanders*, 2023 WL 5098577, *6 (B.A.P. 9th Cir. Aug. 9, 2023) (citation omitted).

**B.    The Settlement Agreement Is Fair and Reasonable and Should be Approved.**

The Settlement Agreement represents a sound exercise of the Trustee's business judgment and is in the best interests of the creditors and Estates. *See* Carmel Decl. ¶ 6.

### a.    The probability of success in litigation.

While the Trustee disputes that Newtek is secured by $5 million of collateral, there can be no dispute that Newtek's collateral grant (as set forth above) is very broad, including alleged interest in insurance proceeds. Similarly, there is no dispute that Newtek holds a first position lien in its collateral. While the Trustee disputes that Newtek would have any interest in the proceeds from the Global Settlement Agreement, there is no guaranty that the Trustee would prevail on this argument, and were the Trustee to lose this argument, the full $5 million claim would be secured. Even were the Trustee to prevail and exclude any insurance proceeds or litigation proceeds from Newtek's collateral package, there is a legitimate dispute as to the value of the remaining collateral, which could exceed $1 million. As such, the probability of success factor weighs heavily in favor of approval of the Settlement Agreement. *See* Carmel Decl. ¶ 7.

. . .

. . .

**b.    The difficulties to be encountered, if any, in the collection of an award.**

Because the Estates are not entitled to any payment from Newtek, this factor is neutral.

**c.    The complexity, expense, inconvenience, and delay of litigation.**

This factor favors approval of the settlement.  While not necessarily legally complex, resolution of this claim dispute will require briefing to determine the extent of Newtek's collateral.  It will also require appraisals and other valuations that could be expensive and cause delay.  Further, to the extent Newtek contends it has an interest in insurance claims and proceeds, valuation of such unresolved claims may cause meaningful delay in resolution of the dispute. Moreover, given the size of Newtek's claim, it is reasonably likely the losing party would pursue an appeal, causing further expense and delay.  Accordingly, the complexity, expense, and delay all weigh in favor of approval of the settlement.  *See* Carmel Decl. ¶ 8.

**d.    The interests of creditors, giving deference to any reasonable views.**

The interests of the creditors factor weighs heavily in favor of approval of the settlement. The settlement resolves an over $5 million disputed secured claim for an allowed secured claim of $1 million, with the balance treated as an unsecured claim. This result materially increases the distribution to unsecured creditors by reducing the potential secured claims by more than $4 million.  It further expedites distributions to unsecured creditors that would otherwise be held-up pending the resolution of the Newtek claim dispute and any potential appeal.  Accordingly, the settlement is in the best interest of the creditors and Estates.  *See* Carmel Decl. ¶ 9.

Evaluating the A&C Properties factors in this case, it is clear that the Settlement Agreement falls "within the reasonable range of litigation possibilities."  *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).  The factors certainly favor approval of the settlement as a whole.  *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).

. . .

. . .

. . .

Moreover, the Settlement Agreement was negotiated at arm's-length and should be approved as a rational exercise of the Trustee's business judgment made after due deliberation of the facts and circumstances concerning the claims and defenses at issue. *See* Carmel Decl. ¶¶ 5 and 6.

## IV.  **CONCLUSION**

The Trustee requests the Court approve the Settlement Agreement and grant other and further relief as is just and proper.

Dated this 27th day of August, 2025.

> GARMAN TURNER GORDON LLP
>
> By: */s/ Talitha Gray Kozlowski*
> GREGORY E. GARMAN, ESQ.
> TALITHA GRAY KOZLOWSKI, ESQ.
> MARY LANGSNER, Ph.D.
> 7251 Amigo Street, Suite 210
> Las Vegas, Nevada 89119
> *Attorneys for Michael Carmel, Chapter 11 Trustee*