NVB 2016 (05/2022)

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

## Fee Application Cover Sheet

Case No.: 25-10341-nmc    Chapter: 11    Hearing Date/Time: 9/24/2025 09:30

Debtor: NuMale Corporation (lead jointly administered case)

Applicant: Michel Carmel, Chapter 11 Trustee

Date of Employment: April 7, 2025

Interim Fee Application No: _____    OR    Final Fee Application   X

**Amounts Requested:**                          Client Approval: Yes ☑  No ☐

**Fees:**         $ 3,278,250.00

**Expenses:**     $         0.00

**Total:**        $ 3,278,250.00

Hours:  N/A                                     Blended Rate: $ N/A

Fees Previously Requested:           $  N/A         Awarded: $  N/A

Expenses Previously Requested: $  N/A               Awarded: $  N/A

Total Previously Requested:          $  N/A         Awarded: $  N/A

Total Amount Paid:                   $  N/A

**Chapter 13 Cases ONLY:**

Yes ☐  No ☐   Elected to accept the Chapter 13 Presumptive Fee pursuant to LR 2016.2, and filed the "Notice of Election to Accept the Presumptive Fee" on _____ .

Yes ☐  No ☐   Participated in the Mortgage Mediation Program: **If yes,** amount received: $ _____

I certify under penalty of perjury that the above is true.

/s/Mary Langsner                                Date  08/27/2025

Signature

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>☐ AFFECTS THIS DEBTOR,<br><br>☐ AFFECTS FELICIANO NUMALE NEVADA PLLC,<br><br>☐ NUMEDICAL SC,<br><br>☐ NUMALE COLORADO SC,<br><br>☐ NUMALE FLORIDA TB PLLC,<br><br>☐ NUMALE NEBRASKA LLC,<br><br>☐ NUMALE NEW MEXICO SC,<br><br>☒ NUMALE ALL DEBTORS,<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: September 24, 2025<br>Hearing Time: 9:30 a.m. |

**MOTION TO AUTHORIZE PAYMENT OF COMMISSION**
**TO MICHAEL CARMEL, CHAPTER 11 TRUSTEE**

Michael Carmel, as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the

"Debtors"), by and through his undersigned counsel, hereby submits this Motion to Authorize Payment of Commission to Michael Carmel, Chapter 11 Trustee ("Motion"). This Motion is the Trustee's first and final Motion seeking approval of the statutory commission earned in these Chapter 11 Cases pursuant to 11 U.S.C. § 326(a) in the amount of $3,278,250.00 (the "Commission"). Should the Court grant this Motion in its entirety and approve the total Commission requested herein, the Trustee waives his ability to seek a statutory commission under 11 U.S.C. § 326 earned on all other estate disbursements made during his tenure in these Chapter 11 Cases, an amount calculated to be no less than $125,000.00.

This Motion[1] is made and based upon 11 U.S.C. § 326; the Memorandum of Points and Authorities set forth herein; the declaration of Michael Carmel (the "Carmel Decl.") filed herewith; the papers and pleadings on file in the Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any argument of counsel entertained by the Court at the time of the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**I.**
**INTRODUCTION**

At the time of the Trustee's appointment in these Chapter 11 Cases, the then-Debtors-in-possession had failed to pay any postpetition rent at their Las Vegas clinic location, were struggling to meet reporting requirements, and were not successfully administering their Estates. The Estates were in disarray, with infighting among the Debtors' principals, multiple outside litigation counsel representing the Estates while not being formally employed by the Court, opposing counsel in non-bankruptcy litigation not being timely advised of the Chapter 11 Cases, no claims bar date having been set, the Las Vegas clinic location landlord seeking immediate stay relief to foreclose and evict, a sizeable judgment held by the Estates not being liquidated, the original Section 365(d)(4) deadline to assume or reject leases and executory contracts imminent (with no extension

---

[1] All references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Rule" or "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

requested), no plan having been proposed, ongoing litigation in U.S. District Court in North Carolina not being meaningfully addressed, and no apparent investigation of Chapter 5 or other claims against the Debtors' principals and other preference and transfer recipients. Essentially, at the time of the Trustee's appointment the then-Debtors in possession had made no meaningful progress in these Chapter 11 Cases. Moreover, Mr. Sanchez was seeking stay relief to pursue post-verdict motion practice in the Sanchez Lawsuit[2]—which involves the largest claim in these Chapter 11 Cases and, relatedly, the largest asset (the Estates' bad faith claims against insurer Beazley[3])—yet the Estates under the direction of the DOPs had made no meaningful progress in negotiating a settlement of that lawsuit despite nearly five months' worth of time and opportunity to do so.

By contrast, immediately upon his appointment the Trustee began investigating the Debtors' affairs and managing the Estates. Under the Trustee: the Debtors began paying monthly rent in full at their Las Vegas location, a claims bar date was established, Court approval of financing for an insurance premium was obtained, preferences and transfers were investigated, (non-Beazley) insurance carriers were put on notice of Debtors' principals' breaches of fiduciary and other duties that harmed the Debtors and their Estates, a lawsuit was initiated against one of the Debtors' principals, special counsel were employed to represent the Estates in non-bankruptcy litigation and assist with judgment collection, the Estates' special counsel in the Sanchez Lawsuit were employed, stay violations were prosecuted with offending actors taking remedial action, resolutions including settlements were negotiated with multiple creditors who had asserted secured claims, estate property including money was turned over to the Trustee, and action was taken to liquidate a six-figure judgment and collect on it for the benefit of the Estates. At the same time, the Trustee successfully negotiated a settlement with Beazley, Mr. Sanchez, Dr. Asandra, and Mr. Pulliam. Assuming Court approves the pending Bankruptcy Rule 9019 Motion, **$108,500,000.00**

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] (the "9019 Motion"), and the *Joint Plan of Reorganization* [ECF No. 434] (the "Plan"), in that sequence.

[3] Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623 (collectively, "Beazley").

will be brought into these Estates, and proposed a Plan of reorganization that will not only make a meaningful distribution to creditors including Mr. Sanchez but also establish a Liquidation Trust to pursue and liquidate other claims and assets. And, the Trustee's Plan contemplates a Section 363 sale process of the Debtors' clinics which are the basis of the Debtors' business. As noted in the Plan, the Trustee already has a stalking horse bid.

On top of significantly advancing case administration and bringing nine figures in settlement funds into these Estates, the Trustee has undertaken an extensive investigation. Ultimately the Trustee discovered that, after his appointment, certain Debtor principals were acting to their own benefit and to the detriment of the Estates—including attempting to sell Estate assets without Court approval or the Trustee's knowledge—so he terminated eight people for cause, expanded his investigation, hired a financial advisor, and hired a tax accountant. When these terminated individuals interfered with the Debtors' business and intentionally damaged the Estates after their termination, the Trustee obtained an *Order to Show Cause* why they should not be held in contempt and sanctioned for their wrongdoing. The evidentiary hearing on this *Order to Show Cause* is set for after confirmation, to occur on October 22, 2025.

Without question the Trustee's hard work and efforts turned these cases around. This Motion seeks final approval of Trustee's commission based only upon the amounts disbursed by the Trustee pursuant to Plan—the Beazley Settlement Amount of $108,500,000 (herein, the "Estate Disbursements") and not other Estate disbursements made during the Trustee's tenure. This Motion is the Trustee's first and final Motion seeking approval of a statutory commission earned in these Chapter 11 Cases pursuant to 11 U.S.C. § 326(a) in the amount of $3,278,250.00 (the Commission). Should the Court approve this Application in its entirety and grant the total Commission requested herein, the Trustee waives his entitlement to seek the statutory commission earned under 11 U.S.C. § 326 by reason of all other estate disbursements made during his tenure in these Chapter 11 Cases—an amount calculated to be no less than $125,000.00. *See* Carmel Decl. ¶ 34. Additionally, should this Court grant the Motion in its entirety and approve the total Commission requested herein, the Trustee has agreed to defer receipt of a portion thereof such that $278,250.00 (the "Deferred Portion") would not be paid to the Trustee until the Liquidation Trust

has sufficient proceeds to pay the Deferred Portion in accordance with the Liquidation Trust Agreement and the confirmed Plan.

## II.
## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1001(b)(1). This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (M), and (O). Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the Court has jurisdiction to render a decision.

The statutory bases for the relief sought herein arise from Sections 326(a), 330, 331, 105, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 2016.

Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) on this Motion by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## STATEMENT OF RELEVANT FACTS

**CASE ADMINISTRATION AND GENERAL BANKRUPTCY MATTERS**

1. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. See ECF No. 130.

3. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

4. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No.

140.

5. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

6. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

7. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

8. Immediately upon the Trustee's appointment, he began investigating the financial affairs and assets of the Debtors. *See* Carmel Decl. ¶ 8.

9. The Debtors' business is a going concern, and the Trustee is authorized to operate the Debtors' business. *See* Carmel Decl. ¶ 9. *See also* 11 U.S.C. §§ 1107, 1108.

10. Since the Trustee's appointment, the Debtors have paid rent in full at their Las Vegas location every month it has come due, starting with the month commencing May 1, 2025. *See* Carmel Decl. ¶ 10.

11. On April 25, 2025, the Trustee filed his *Application for Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 199], which was ultimately granted by the Court [ECF No. 293].

12. On May 5, 2025, the Trustee filed his *Motion for Entry of Order (A) Setting a Bar Date for Filing Proofs of Claim and (B) Approving Notice Thereof* [ECF No. 237], which was ultimately granted by the Court [ECF No. 289], and a *Notice of Claims Bar Date* [ECF No. 298] was then filed by the Trustee and noticed to creditors and parties in interest.

13. On May 6, 2025, the Trustee filed his *Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 241], which sought to extend the deadline for the Trustee to assume or reject the unexpired leases of nonresidential real property

of any of the Debtors under Section 365(d)(4)(B)(i) of the Bankruptcy Code, for ninety (90) days, from May 22, 2025, to August 20, 2025. This was granted by the Court [ECF No. 290].

14. Later, after the Plan was filed, the Trustee prosecuted a *Second Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 462], seeking an extension of this deadline to October 24, 2025, the thirtieth day after Plan confirmation. This motion, too, was granted by the Court. *See* ECF No. 501.

15. On May 28, 2025, the Trustee filed his *Motion for Order Seeking Approval of Post-Petition Financing of Insurance Renewal Premium* [ECF No. 310], seeking Court approval to finance the renewal premium associated with the Debtors' renewal of an E & O insurance policy. This Motion was also granted [ECF No. 325].

**STAY ENFORCEMENT**

16. On June 11, 2025, the Trustee filed his *Motion to Enforce the Automatic Stay and for Sanctions* [ECF No. 339], against Ace Recovery Group and Top Tier Capital, for seeking postpetition enforcement of debts allegedly owed to Top Tier Capital by one or more Debtors. This motion was ultimately resolved with both parties through stipulations approved by the Court, upon the Trustee's receipt of sufficient evidence from Top Tier and from Ace Recovery Group reflecting remedial corrective action, as well as a reimbursement of the Estates' fees and expenses incurred in obtaining corrective action. *See, e.g.*, ECF Nos. 414 (Top Tier) and 441 (Ace Recovery Group).

17. Meanwhile, on or about June 28, 2025, the Trustee, through his general counsel, also obtained the vacatur of a judgment that had been entered post-petition in a collection action against the Debtors in the Supreme Court of the State of New York post-petition. *See* Carmel Decl. ¶ 11.

**EMPLOYMENT OF SPECIAL COUNSEL**

18. On May 20, 2025, the Trustee filed applications to employ special counsel to represent the Estates in connection with the Sanchez Lawsuit [ECF Nos. 269, 272]. Both the *Application to Employ Paul, Weiss, Rifkind, Wharton & Garrison LLP as Special Litigation Counsel to the Chapter 11 Estates* (the "PW Application") and the *Application to Employ Rodey,*

*Dickason, Sloan, Akin, & Robb, P.A. as Special Litigation Counsel to the Chapter 11 Estates* (the "Rodey Application") were granted by the Court. *See* ECF Nos. 335 and 336, respectively.

19. On June 17, 2025, the Trustee filed his *Application to Employ McAfee & Taft as Special Counsel to the Chapter 11 Estate* [ECF No. 349], seeking to employ special counsel to advise and represent the Estates relating to collection from Basel Said Hassoun ("Dr. Hassoun") on a six-figure judgment against Dr. Hassoun.[4] McAfee & Taft's employment was also approved by the Court [ECF No. 345].

20. With McAfee & Taft employed, the Trustee is actively pursuing judgment collection against Dr. Hassoun. *See* Carmel Decl. ¶ 12.

21. Additionally, the Trustee, through his general counsel, obtained the continuances of briefing and a hearing on a motion to dismiss a Debtor's ongoing lawsuit in the Eighth Judicial District Court of Clark County, Nevada, Case No. A-25-910072-C, *NuMale Corporation v. Howard & Howard Attorneys PLLC* ("Malpractice Lawsuit"), thus preserving this Estate asset. *See* Carmel Decl. ¶ 13.

22. On July 30, 2025, the Trustee filed his *Application to Employ Burr & Forman as Special Counsel to the Chapter 11 Estate* [ECF No. 417], seeking the employment of estate special counsel to represent NuMale Corporation in the U.S. District Court for the Eastern District of North Carolina Case No. 7:24-cv-00927-D-RN, *The N2 Company v. NuMale Medical Center, LLC and NuMale Corporation* ("EDNC Litigation"), in which Debtor NuMale Corporation is a named defendant and filed a counterclaim. Burr & Forman's employment application is unopposed and is set for a hearing on September 2, 2025. *See* Carmel Decl. ¶ 14.

**TURNOVER**

23. The Trustee learned that prior counsel in the Malpractice Lawsuit was never retained by the NuMale Corporation bankruptcy estate. Therefore, Trustee Carmel, through his

---

[4] The judgment against Basel Said Hassoun ("Dr. Hassoun") arises from an arbitration award entered by Arbitrator Ralph C. Anzivino against Dr. Hassoun, confirmed on or about August 25, 2022, by the District Court of Oklahoma County, State of Oklahoma, County Case No. CJ-2020-206, as confirmed by the Court of Civil Appeals of the State of Oklahoma in Case No. 120,720 on or about June 21, 2024 (for which certiorari was denied by the Supreme Court of the State of Oklahoma on or about January 27, 2025).

general counsel, obtained the turnover of prior counsel's file for the Debtor. *See* Carmel Decl. ¶ 15.

24. Additionally, the Trustee's investigation revealed that NuMale Corporation was previously represented in the EDNC Litigation through counsel John T. Kivus and Kenzie M. Rakes of law firm the Morningstar Law Group and that this counsel was, also, never retained by the then-Debtors-in-possession. Here too, Trustee Carmel, through his general counsel, obtained the turnover of prior counsel's file for the Debtor. *See* Carmel Decl. ¶ 16.

25. Through his general counsel the Trustee also obtained turnover of the client file of Gile Law Group, which firm had asserted a proof of claim for work performed including post-petition work but had also not been employed by the Estates when under the direction of the then-Debtors-in-possession. *See* Carmel Decl. ¶ 17.

26. In yet another successful turnover effort, the Trustee obtained the turnover of $78,778.11 from Elavon, Inc., which monies had been held by Elavon, Inc. and had not been turned over to the then-Debtors-in-Possession. *See* Carmel Decl. ¶ 18.

27. The Trustee has also filed the *Motion for an Order Compelling Turnover of Property of the Estates and for Sanctions* [ECF No. 467], which is set for a hearing on September 9, 2025. This motion seeks the turnover of insurance claim proceeds in the amount of approximately $168,386.01 for a claim made under the Debtors' policy with Zurich North America on account of an alleged theft that occurred at the Debtors' Colorado premises post-petition. Zurich North America has been unresponsive to date to the efforts by the Trustee's counsel to obtain the turnover of this estate asset, and as such the Trustee anticipates the hearing on this motion going forward. *See* Carmel Decl. ¶ 19.

**SETTLEMENTS AND STIPULATIONS WITH CREDITORS AND PARTIES-IN-INTEREST**

28. At the time of the Trustee's appointment on April 7, 2025, rent at the Debtors' Las Vegas premises had not been paid postpetition, and the landlord, Prospect Rainbow, LLC, had sought stay relief to evict the Debtors. *See, e.g.*, ECF Nos. 67, 69. The Trustee immediately negotiated a conditional order with Prospect Rainbow, LLC, that provided the stay would not be

terminated unless certain conditions were met (one of which is that rent must be paid in full going forward). *See* ECF No. 247 (Order).

29. The Trustee also successfully negotiated the stipulated order granting stay relief regarding the Sanchez Lawsuit, which allowed for post-Jury Verdict motions to proceed. *See* ECF Nos. 264, 275.

30. The Trustee has since also reached settlements or stipulation with a number of creditors who had asserted secured claims against these Estates, reclassifying and/or reducing their claims, as follows:

- The *Stipulation Regarding Classification of Claim* [ECF No. 438], reclassifying this claim by NuMale Corporation's former counsel in the Malpractice Lawsuit to a general unsecured claim. The stipulation was approved by the Court [ECF No. 442].
- The *Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Settlement with EBF Holdings, LLC d/b/a Everest Business Funding* [ECF No. 504], which is set for a hearing on September 16, 2025.
- The *Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Settlement with Kalamata Capital Group, LLC* [ECF No. 493], which is also set for a hearing on September 16, 2025.
- The *Motion Pursuant to Fed. R. Bankr. P. 9019 to Authorize and Approve Settlement Between NuMale Corporation and Newtek Bank NA* is being filed commensurately herewith.

**THE GLOBAL SETTLEMENT AGREEMENT AND THE PLAN**

31. At the same time he was prosecuting all of the foregoing and attending to the daily administration of these Estates, the Trustee successfully negotiated a settlement with Beazley, Mr. Sanchez, and others that **brings $108,500,000.00 into these Estates**, provides for the compromise of Mr. Sanchez's claim at a reduced amount of $410,000,000, and paves the path toward confirming the Trustee's Plan.[5]

---

[5] All references herein to the Global Settlement Agreement and 9019 Motion are merely summaries. In all respects, the Global Settlement Agreement controls. Likewise, all references herein to the Plan and to treatment under the Plan

32. The *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] ("9019 Motion") is set for a hearing September 2, 2025.

33. The Trustee has also proposed a Plan of reorganization that will not only make a meaningful distribution to creditors including Mr. Sanchez but also establish a Liquidation Trust to pursue and liquidate other claims and assets. The Trustee's Plan also contemplates a sale of the Debtors' clinics which are the bases of the Debtors' business operations. *See* Carmel Decl. ¶ 20.

34. The confirmation of the Plan, and final approval of the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435], are set for hearings on September 24, 2025.

**TRUSTEE'S INVESTIGATION**

35. The Trustee's investigation in these Chapter 11 Cases has been sweeping and broad and is ongoing. The Trustee's investigation also includes evaluating potential Chapter 5 causes of action such as preferences and fraudulent transfers. *See* Carmel Decl. ¶ 21.

36. On June 4, 2025, the Trustee issued Notice of Circumstances letters to the Debtors' carriers Arch Insurance[6] and Chubb[7] regarding facts, circumstances facts, and situations that could reasonably give rise to a claim, loss, matter, or wrongful act under their D&O and E&O policies. *See* ECF Nos. 431-2 and 431-3 (collectively, the "Carrier Notice Letters").

37. On July 4, 2025, the Trustee initiated an adversary proceeding against two of the Debtors' principals, Brad Palubicki and Eva Gabriela Farmer De La Torre, Bankr. D. Nev. Adv. Proc. No. 25-01155-nmc (the "Palubicki Adversary"). *See, e.g.*, ECF No. 389.

---

are merely summaries; in all respects, the Plan controls.

[6] Arch Insurance, a/k/a Arch Insurance Company, a/k/a Arch Specialty Insurance Company, Arch Insurance Company, and/or Arch Specialty Insurance Company ("Arch Insurance").

[7] Federal Insurance Company a/k/a Chubb a/k/a Chubb Forefront a/k/a Chubb the Forefront Portfolio for Healthcare Organizations a/k/a the Company a/k/a The ForeFront Portfolio a/k/a Forefront ("Chubb").

38. The Palubicki Adversary is in its early stages, and the Trustee has amended the complaint to incorporate additional causes of action as certain facts and circumstances become known to the Trustee in the course of his ongoing investigation. *See* Carmel Decl. ¶ 22.

39. The Trustee's investigation into other principals of the Debtors is ongoing, and he intends to pursue additional claims against one or more insiders and/or principals of the Debtors. The Trustee is also fulfilling his responsibilities in accordance with 18 U.S.C. § 3057. *See* Carmel Decl. ¶ 23.

40. Additionally, on or about July 21, 2025, the Trustee learned that one of the Debtors' principals, Brad Palubicki ("Palubicki"), was attempting to sell Estate assets, for Palubicki's personal benefit and without the Trustee's knowledge, consent, or authority. *See* Carmel Decl. ¶ 24.

41. Upon further investigations, the Trustee learned of additional potential other wrongdoings. *See* Carmel Decl. ¶ 25.

42. Subsequently, on or about July 29, 2025, the Trustee terminated Palubicki, Eva Gabriela Farmer De La Torre, Chief Financial Officer Holly Triplett, and five others, all of whom were terminated for cause. *See* Carmel Decl. ¶ 26.

43. As set forth elsewhere in the record before this Court, the Trustee has significant concerns regarding the wrongdoing and detriment caused, post-petition, by bad acts of Palubicki, Triplett, and certain other terminated employees. *See, e.g.*, ECF Nos. 455-457.

44. As such, the Trustee has taken the following additional steps to further protect the Estate:

- Filed a *Motion for Order to Show Cause for Willful Violation of the Order Appointing the Trustee, Willful Violation of the Automatic Stay, and Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105, 362, and 542* [ECF No. 455];

- Obtained an *Order to Show Cause Why Brad Palubicki, Eva Gabriela Farmer De La Torre, Holly Triplett, and Ken Braielmeir, and Any Other Persons Aiding nd Abetting or Conspiring With Them Should Not Be Sanctioned and Held in Contempt* [ECF No. 500], setting an evidentiary hearing October 22, 2025;

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

- Filed an *Application to Employ J.S. Held, LLC as Financial Advisor and Accountant to the Chapter 11 Estates* [ECF No. 496]; and

- Is preparing the *Ex Parte Application for Order Approving the Employment of RubinBrown LLP as Accountant* to ensure the Estates have appropriate assistance preparing their 2024 federal tax returns.

45.  The Trustee is also making efforts to ensure the Debtors' operations are maintained and assets are preserved in the lead-up to Plan confirmation and an anticipated Section 363 sale. *See* Carmel Decl. ¶ 27.

## IV.
## RELIEF REQUESTED

**A.  The Trustee's Commission Should Be Approved.**

"The bankruptcy court has discretion to award a trustee fees up to a cap that is calculated as a percentage of 'all moneys disbursed or turned over in the case by the trustee to parties in interest.'" *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1085 (9th Cir. 2015) (citing 11 U.S.C. § 326(a)) (emphasis omitted). 11 U.S.C. § 326(a) provides:

> In a case under chapter 7 or 11, other than a case under subchapter V of chapter 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

*See* 11 U.S.C. § 326(a).

"[A] trustee's compensation is not calculated with reference to any particular transaction, but rather the overall results of the case in terms of moneys disbursed and turned over." *In re Baroni*, 654 B.R. 334, 348 (Bankr. C.D. Cal. 2023).

13

The Office of the United States Trustees *U.S. Trustee Program Manual and Policies* (Feb. 2025) at Vol. 3 ("Chapter 11 Case Administration")[8] recognizes, in § 3-8.6, that "[t]he trustee must file a detailed statement of the work performed, time expended, and expenses incurred and bears the burden of proving the application."  This is detailed herein, in the Carmel Decl., and in **Exhibit 1** to the Carmel Decl.  The allowance of the Chapter 11 Trustee's Commission is also contemplated in the *United States Trustee Program Chapter 11 Trustee Handbook* (May 2004)[9] at p. 72 ("When a trustee is heavily engaged in the administration of a case over an extended period of time and the trustee is providing substantial services to the estate, those factors may present good cause for the trustee to seek interim compensation.").

As set forth more fully in the Carmel Decl., since his appointment the Trustee has been heavily engaged in the administration of the Debtors' Chapter 11 Cases and has provided substantial services to the Debtors' Estates.  The Trustee has overseen not only the Debtors' daily operations but has obtained turnover of the Debtors' client files from multiple former counsel; obtained the turnover of five figures in Estate funds from Elavon, Inc.; pursued the turnover of six figures in Estate funds from Zurich North America; addressed multiple ongoing litigations in non-bankruptcy courts including Nevada State Court; hired special counsel to represent the Estates to pursue judgment collection in Oklahoma, to participate post-Jury Verdict motions (and eventual appeal) in New Mexico, and to represent the Estates in ongoing litigation in the Eastern District of North Carolina; obtained the consensual vacatur of a judgment entered against the Debtors by a merchant cash advance creditor; set a bar date; obtained financing for one of the Debtors' insurance renewal premiums; obtained other remedial action from a creditor violating the automatic stay; negotiated a conditional stay relief order with the Las Vegas landlord; ensured rent was paid in full every month at the Las Vegas site after his appointment; issued the Carrier Notice Letters in pursuit of additional Estate assets; negotiated the reduction and/or reclassification of claims with creditors who had asserted secured claims against once or more Debtors; initiated the Palubicki

---

[8] Available for download at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual (last visited August 23, 2025).

[9] Available at https://www.justice.gov/ust/file/ch11handbook-200405.pdf/download (last visited August 23, 2025).

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

14

Adversary; twice extended the deadline to assume or reject leases so as to ensure all clinic sites can be smoothly transitioned to a buyer in connection with a Section 363 sale; terminated the Debtors' self-serving principals and insiders who were harming the Estates; engaged an accounting and financial advisory firm to not only provide accounting services but also assist with the Trustee's ongoing investigations; and obtained an *Order to Show Cause* why the Debtors' principals and affiliated persons should not be held in contempt and sanctioned for interfering in Estate operations.  With all this going on, and while still administering the Estates, the Trustee, with the assistance of his general counsel Garman Turner Gordon LLP, extensively negotiated—and reached—the Global Settlement Agreement, which resolves the largest general unsecured creditor in these Chapter 11 Cases (Mr. Sanchez) and the largest asset of the Estates (bad faith claims against Beazley) and brings **$108,500,000** into these Estates.  And, the Trustee proposed a confirmable Plan just less than four months into his appointment, which Plan not only distributes the Purchase and Settlement Amount received from Beazley but also creates a Liquidation Trust that will, *inter alia*, pursue Litigation Claims for the benefit of creditors post-confirmation.  The Plan also contemplates a Section 363 sale of the Debtors' clinics.  *See* Carmel Decl. ¶ 28.

Through this Motion the Trustee seeks allowance of his Commission based on the Estate Disbursements of the Purchase and Settlement Amount only.  Section § 326(a) provides for the Trustee's compensation based on a sliding scale.  This commission is payable on all funds disbursed in the Chapter 11 Cases to parties in interest (including secured creditors).  As set forth in the Carmel Decl., the Trustee is disbursing the Purchase and Settlement Amount in accord with the Global Settlement Agreement and the Plan, warranting authorization and approval of the Commission in the amount of $3,278,250.00.  *See* Carmel Decl. ¶ 29.  The Commission requested is based solely on the Purchase and Settlement Amount and not on any other disbursements authorized or directed by the Trustee since his appointment; the Commission requested herein is requested on a final basis, and, should the Court approve this Motion in its entirety, the Trustee is prepared to forego seeking his statutory commission on any other disbursements which may otherwise qualify in these Chapter 11 Cases.  *See* Carmel Decl. ¶ 30.  The amount waived is calculated to be no less than $125,000.00.  *See* Carmel Decl. ¶ 34.

Section 330(a)(7) provides that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the Court shall treat such compensation as a commission, based on section 326." *See* 11 U.S.C. § 330(a)(7). Furthermore, Section 331 provides for the allowance of compensation, as follows:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

*See* 11 U.S.C. § 331. Thus, pursuant to Section 331, upon notice and a hearing a Chapter 11 trustee may make a request to the court for compensation for services not more than every 120 days, and the court may allow disbursement of such compensation to the trustee. Here, no previous requests for a commission for the Trustee's work in connection with these Chapter 11 Cases have been made, and, the Motion is being brought more than 120 days into the Trustee's appointment. *See, e.g.*, Docket. Given the timing of Beazley's remittance of the Purchase and Settlement Amount upon the Court's approval of the Global Settlement Agreement, and the anticipated disbursements to be made pursuant to the Plan upon its confirmation, the timing of this Motion is appropriate to these Chapter 11 Cases.

Final approval of the Trustee's Commission is warranted under 11 U.S.C. § 326(a). This Motion seeks final approval of the total Commission amount of $3,278,250.00. *See* Carmel Decl. ¶ 31. The Commission, for which final approval is requested through this Motion, relates to services performed by the Trustee for these Chapter 11 Cases from the onset of his appointment, and the Trustee respectfully submits that these services were necessary for and beneficial to the orderly administration of the Estates. There would not be meaningful funds available to disburse to creditors in these Chapter 11 Cases were it not for the Trustee's efforts and the efforts of his general counsel. *See* Carmel Decl. ¶ 32.

Additionally, the requested Commission is reasonable pursuant to Section 326 and under the unique circumstances of these Chapter 11 Cases and is deserved. The Trustee has been successful in collecting a substantial amount of assets in these Chapter 11 Cases and, pursuant to the Plan, is making a distribution to creditors that would otherwise not be possible were it not for the herculean efforts of the Trustee and his general counsel. The Trustee is not aware of any "extraordinary circumstances" that would diminish the allowance of his requested Commission on a final basis and respectfully submits that his heavy engagement in the administration of these Chapter 11 Cases, and doing so while also undertaking extensive efforts at what ultimately were very fruitful negotiations with Beazley and Sanchez and other major parties-in-interest, over an extended period of time, while still providing substantial services to the Debtors' Estates meanwhile, amount to good cause to seek final approval of his Commission and for the Court to award the Commission requested through this Motion. *See* Carmel Decl. ¶ 33.

## V.
## CONCLUSION

The Trustee respectfully requests that the Court enter an order in the form attached hereto as **Exhibit 1** pursuant to 11 U.S.C. § 326(a) that (i) approves on a final basis the Trustee's Commission in the total amount of $3,278,250.00, subject to a voluntary deferment of $278,250.00 to be paid to the Trustee by the Liquidation Trust pursuant to the confirmed Plan and Liquidation Trust Agreement as monies are available; and (ii) authorize, empower, and direct the Trustee to immediately pay all amounts authorized by the Order granting this Motion.

Dated this day 27th of August 2025.

                            GARMAN TURNER GORDON LLP

                            By: */s/ Mary Langsner*
                                GREGORY E. GARMAN, ESQ.
                                TALITHA GRAY KOZLOWSKI, ESQ.
                                MARY LANGSNER, Ph.D.
                                7251 Amigo Street, Suite 210
                                Las Vegas, Nevada 89119
                                *Attorneys for Michael Carmel, Chapter 11 Trustee*