GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| In re:<br><br>NUMALE CORPORATION,<br><br>☐ AFFECTS THIS DEBTOR,<br><br>☐ AFFECTS FELICIANO NUMALE NEVADA PLLC,<br><br>☐ NUMEDICAL SC,<br><br>☐ NUMALE COLORADO SC,<br><br>☐ NUMALE FLORIDA TB PLLC,<br><br>☐ NUMALE NEBRASKA LLC,<br><br>☐ NUMALE NEW MEXICO SC,<br><br>☒ NUMALE ALL DEBTORS,<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date:   September 24, 2025<br>Hearing Time:   9:30 a.m. |
|---|---|

**DECLARATION OF MICHAEL CARMEL, ESQ. IN SUPPORT OF
MOTION TO AUTHORIZE PAYMENT OF COMMISSION TO MICHAEL CARMEL,
<u>CHAPTER 11 TRUSTEE</u>**

I, Michael Carmel, Esq., hereby declare as follows:

1.   I am over the age of 18 and mentally competent.  I have personal knowledge of the facts in this matter and if called upon to testify, could and would do so.  I make this declaration in

support of the *Motion to Authorize Payment of Commission to Michael Carmel, Chapter 11 Trustee* (the "Motion").[1]

2. I am the duly appointed Chapter 11 trustee ("Trustee") over the estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors").

3. The Motion seeks Court approval of my statutory trustee's commission pursuant to 11 U.S.C. § 326 (the "Commission") based on the Estate Disbursements in the amount of $108,500,000, which amounts will be disbursed pursuant to the confirmed Plan.

4. The Global Settlement Agreement brings $108,500,000.00 into these Estates.

5. The Parties to the Global Settlement Agreement have all agreed that upon payment of the Purchase and Settlement Amount to the Estates, I will be paid in accordance with 11 U.S.C. § 326.

6. The Beazley Settlement Amount is $108,500,000.00. Accordingly, the Commission totals $3,278,250.00, and I request the Court approve the Commission. Should the Court grant the Motion in its entirety, I have agreed to defer receipt of funds in the amount of $278,250.00 of my statutory Commission until there are sufficient proceeds available from the Liquidation Trust to pay them. This will enable unsecured creditors to receive additional monies from the Initial Distribution under the Plan.

7. Attached hereto as **Exhibit 1** is a detailed statement I created of the work I performed, as well as the time expended. I have not sought the reimbursement of any expenses incurred by me; as such, none are set forth in **Exhibit 1** hereto.

8. Immediately upon my appointment, I began investigating the financial affairs and assets of the Debtors.

---

[1] Unless otherwise expressly stated herein, all undefined, capitalized terms shall have the meaning ascribed to them in the Motion.

9. The Debtors' business is a going concern, and I am authorized to operate the Debtors' business. *See also* 11 U.S.C. §§ 1107, 1108.

10. Since my appointment, the Debtors have paid rent in full at their Las Vegas location every month it has come due, starting with the month commencing May 1, 2025.

11. Meanwhile, on or about June 28, 2025, I, through my general counsel, also obtained the vacatur of a judgment that had been entered post-petition in a collection action against the Debtors in the Supreme Court of the State of New York post-petition.

12. With McAfee & Taft employed, I am actively pursuing judgment collection against Dr. Hassoun.

13. Additionally, I, through my general counsel, obtained the continuances of briefing and a hearing on a motion to dismiss a Debtor's ongoing lawsuit in the Eighth Judicial District Court of Clark County, Nevada, Case No. A-25-910072-C, *NuMale Corporation v. Howard & Howard Attorneys PLLC* ("Malpractice Lawsuit"), thus preserving this Estate asset.

14. The *Application to Employ Burr & Forman as Special Counsel to the Chapter 11 Estate* [ECF No. 417] seeks the employment of estate special counsel to represent NuMale Corporation in the U.S. District Court for the Eastern District of North Carolina Case No. 7:24-cv-00927-D-RN, *The N2 Company v. NuMale Medical Center, LLC and NuMale Corporation* ("EDNC Litigation"), in which Debtor NuMale Corporation is a named defendant and filed a counterclaim. Burr & Forman's employment application is unopposed and is set for a hearing on September 2, 2025.

15. I learned that prior counsel in the Malpractice Lawsuit was never retained by the NuMale Corporation bankruptcy estate. Therefore, I, through my general counsel, obtained the turnover of prior counsel's file for the Debtor.

16. Additionally, my investigation revealed that NuMale Corporation was previously represented in the EDNC Litigation through counsel John T. Kivus and Kenzie M. Rakes of law firm the Morningstar Law Group and that this counsel was, also, never retained by the then-Debtors-in-possession. Here too, I, through my general counsel, obtained the turnover of prior counsel's file for the Debtor.

17. Through my general counsel I also obtained turnover of the client file of Gile Law Group, which firm had asserted a proof of claim for work performed including post-petition work but had also not been employed by the Estates when under the direction of the then-Debtors-in-possession.

18. In yet another successful turnover effort, I obtained the turnover of $78,778.11 from Elavon, Inc., which monies had been held by Elavon, Inc. and had not to my understanding ever been turned over to the then-Debtors-in-Possession.

19. The *Motion for an Order Compelling Turnover of Property of the Estates and for Sanctions* [ECF No. 467], which is set for a hearing on September 9, 2025, seeks the turnover of insurance claim proceeds in the amount of approximately $168,386.01 for a claim made under the Debtors' policy with Zurich North America on account of an alleged theft that I am advised occurred at the Debtors' Colorado premises post-petition. Zurich North America has been unresponsive to date to the efforts by my counsel to obtain the turnover of this estate asset, and as such I anticipate the hearing on this motion going forward.

20. I have also proposed a Plan of reorganization that will not only make a meaningful distribution to creditors including Mr. Sanchez but also establish a Liquidation Trust to pursue and liquidate other claims and assets. My Plan also contemplates a sale of the Debtors' clinics which are the bases of the Debtors' business operations.

21. My investigation in these Chapter 11 Cases has been sweeping and broad and is ongoing. My investigation also includes evaluating potential Chapter 5 causes of action such as preferences and fraudulent transfers. I am also in the process of fulfilling my responsibilities in accordance with 18 U.S.C. § 3057.

22. The Palubicki Adversary is in its early stages, and I have amended the complaint to incorporate additional causes of action as certain facts and circumstances become known to me in the course of my ongoing investigation.

23. My investigation into other principals of the Debtors is ongoing, and I intend to pursue additional claims against one or more insiders and/or principals of the Debtors.

24.     Additionally, on or about July 21, 2025, I learned that one of the Debtors' principals, Brad Palubicki ("Palubicki"), was attempting to sell Estate assets, for Palubicki's personal benefit and without my knowledge, consent, or authority.

25.     Upon further investigations, I learned of additional potential other wrongdoings.

26.     Subsequently, on or about July 29, 2025, I terminated Palubicki, Eva Gabriela Farmer De La Torre, Chief Financial Officer Holly Triplett, and five others, all of whom were terminated for cause.

27.     I am also making efforts to ensure the Debtors' operations are maintained and assets are preserved in the lead-up to Plan confirmation and an anticipated Section 363 sale.

28.     Since my appointment I have been heavily engaged in the administration of the Debtors' Chapter 11 Cases and have provided substantial services to the Debtors' Estates. I have overseen not only the Debtors' daily operations but have obtained turnover of the Debtors' client files from multiple former counsel; obtained the turnover of five figures in Estate funds from Elavon, Inc.; pursued the turnover of six figures in Estate funds from Zurich North America; addressed multiple ongoing litigations in non-bankruptcy courts including Nevada State Court; hired special counsel to represent the Estates to pursue judgment collection in Oklahoma, to participate post-Jury Verdict motions (and eventual appeal) in New Mexico, and to represent the Estates in ongoing litigation in the Eastern District of North Carolina; obtained the consensual vacatur of a judgment entered against the Debtors by a merchant cash advance creditor; set a bar date; obtained financing for one of the Debtors' insurance renewal premiums; obtained other remedial action from a creditor violating the automatic stay; negotiated a conditional stay relief order with the Las Vegas landlord; ensured rent was paid in full every month at the Las Vegas site after my appointment; issued the Carrier Notice Letters in pursuit of additional Estate assets; negotiated the reduction and/or reclassification of claims with creditors who had asserted secured claims against once or more Debtors; initiated the Palubicki Adversary; twice extended the deadline to assume or reject leases so as to ensure all clinic sites can be smoothly transitioned to a buyer in connection with a Section 363 sale; terminated the Debtors' self-serving principals and insiders who were harming the Estates; engaged an accounting and financial advisory firm to not

only provide accounting services but also assist with my ongoing investigations; and obtained an *Order to Show Cause* why the Debtors' principals and affiliated persons should not be held in contempt and sanctioned for interfering in Estate operations. With all this going on, and while still administering the Estates, I, with the assistance of my general counsel Garman Turner Gordon LLP, extensively negotiated—and reached—the Global Settlement Agreement, which resolves the largest general unsecured creditor in these Chapter 11 Cases (Mr. Sanchez) and the largest asset of the Estates (bad faith claims against Beazley) and brings **$108,500,000** into these Estates. And, I proposed a confirmable Plan just less than four months into my appointment, which Plan not only distributes the Purchase and Settlement Amount received from Beazley but also creates a Liquidation Trust that will, *inter alia*, pursue Litigation Claims for the benefit of creditors post-confirmation. The Plan also contemplates a Section 363 sale of the Debtors' clinics.

29. I intend to disburse the Purchase and Settlement Amount in accord with the Global Settlement Agreement and the Plan, thus warranting authorization and approval of the Commission requested in the Motion, in the amount of $3,278,250.00.

30. The Commission requested is based solely on the Purchase and Settlement Amount and not on any other disbursements authorized or directed by me since my appointment; the Commission requested in the Motion is requested on a final basis, and, should the Court approve this Motion in its entirety, I am prepared to forego seeking my statutory commission on any other disbursements which may otherwise qualify in these Chapter 11 Cases.

31. Final approval of my Commission is warranted under 11 U.S.C. § 326(a). The Motion seeks final approval of the total Commission amount of $3,278,250.00.

32. The Commission, for which final approval is requested through this Motion, relates to services performed by me for these Chapter 11 Cases from the onset of my appointment, and I respectfully submit that these services were necessary for and beneficial to the orderly administration of the Estates. There would not be meaningful funds available to disburse to creditors in these Chapter 11 Cases were it not for my efforts and the efforts of my general counsel.

33. Additionally, the requested Commission is reasonable pursuant to Section 326 and under the unique circumstances of these Chapter 11 Cases and is deserved. I have been successful

in collecting a substantial amount of assets in these Chapter 11 Cases and, pursuant to the Plan, intend to make a distribution to creditors that would otherwise not be possible were it not for the herculean efforts of myself and my general counsel. I am not aware of any "extraordinary circumstances" that would diminish the allowance of the requested Commission on a final basis and respectfully submit that my heavy engagement in the administration of these Chapter 11 Cases, and doing so while also undertaking extensive efforts at what ultimately were very fruitful negotiations with Beazley and Sanchez and other major parties-in-interest, over an extended period of time, while still providing substantial services to the Debtors' Estates meanwhile, amount to good cause to seek final approval of the Commission and for the Court to award the Commission requested through the Motion.

34. Based on disbursements as reported on the monthly operating reports, I have calculated my commission under 11 U.S.C. § 326 that I am otherwise entitled to see but which I am waiving in its entirety, should the Court grant the Motion in in its entirety. By my calculations, the aggregate amount of commission to which I would otherwise be entitled based on estate disbursements from the date of my appointment through July 31, 2025, is no less than $125,000.00. Additionally, I am also waiving any Section 326 Commissions for disbursements made by each of the seven (7) Debtor entities through the date of confirmation of the pending Plan of Reorganization. This additional time period will encompass the months of August 2025 and September 2025, at a minimum.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this 27th day of August 2025.

　　　　　　　　　　　　　　　　　　　　　　　*/s/Michael W. Carmel*　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　MICHAEL CARMEL