**Jacob Nathan Rubin, M.D., F.A.C.C.**
4955 Van Nuys Blvd, No. 308
Sherman Oaks, CA 91403
**Telephone:** (818) 929-1455
**Email:** JNRubinMD@yahoo.com

*Patient Care Ombudsman*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>☐ AFFECTS THIS DEBTOR,<br><br>☐ AFFECTS FELICIANO NUMALE NEVADA PLLC,<br><br>☐ NUMEDICAL SC,<br><br>☐ NUMALE COLORADO SC,<br><br>☐ NUMALE FLORIDA TB PLLC,<br><br>☐ NUMALE NEBRASKA LLC,<br><br>☐ NUMALE NEW MEXICO SC,<br><br>☒ AFFECTS ALL DEBTORS,<br><br>Debtors. | Lead Case No. 25-10341-NMC<br>Chapter 11<br><br>*Jointly administered with*:<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-NMC,<br><br>NuMedical SC,<br>Case No. 25-10343-NMC,<br><br>NuMale Colorado SC,<br>Case No. 25-10344-NMC,<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-NMC,<br><br>NuMale Nebraska LLC,<br>Case No. 25-10346-NMC,<br><br>NuMale New Mexico SC,<br>Case No. 25-10347-NMC. |

## SECOND REPORT BY PATIENT CARE OMBUDSMAN

## PURSUANT TO 11 U.S.C. §333(b)(2)

Jacob Nathan Rubin, M.D., F.A.C.C., the Patient Care Ombudsman appointed in the seven-jointly administered Chapter 11 cases of NUMALE CORPORATION, et al.

1

(hereinafter collectively, the "Debtor"), hereby submits his second report to the Court regarding the quality of patient care provided to the Debtor's patients, pursuant to 11 U.S.C. § 333 and Rule 2015.1 of the Federal Rules of Bankruptcy Procedure.

### I. INTRODUCTION

On January 22, 2025 (the "Petition Date"), seven related entities each filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). These cases are jointly administered, with a lead case of "NUMALE CORPORATION, et al."

The Debtor operates a network of specialized men's health clinics focused on hormone therapy, erectile dysfunction, and other services related to male vitality. Although most physical locations are no longer active, the Debtor has maintained continuity of patient care through a telemedicine platform administered by qualified providers.

Because the Debtor operates facilities that provide care and medical service to patients, these cases therefore qualify as a "health care business" as that term is defined in Bankruptcy Code §101(27)(A). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a patient care ombudsman must be appointed in the bankruptcy case of a "health care business" to ensure that the medical care provided to patients is not declining or being materially compromised during the bankruptcy.

Accordingly, the Court ordered [Docket No. 172] the appointment of a patient care ombudsman ("PCO") pursuant to 11 U.S.C. §333 (a)(1) to monitor, and report to the Court, the quality of patient care provided by the Debtors.

Following due diligence and interviews by the United States Trustee ("UST"), Jacob Nathan Rubin, M.D., F.A.C.C. ("Dr. Rubin") was appointed as the Patient Care Ombudsman (the "PCO") in these seven jointly administered Chapter 11 cases, as of April 30, 2025 [Docket No. 234].

The PCO's *First Report* filed on July 1, 2025 [Docket No. 385] reflects the PCO's findings after six weeks of oversight - including a physical inspection of the Las Vegas

clinic and remote evaluations of additional clinic sites formerly located in Illinois, Wisconsin, Nebraska, and New Mexico - and documents the oversight methodology, clinical findings, regulatory evaluations, and presents formal recommendations to ensure continued patient protection and compliance with state and federal healthcare standards.

This Second Report is submitted following ongoing oversight of the Debtor, which was conducted through in-person and virtual inspections, provider interviews, document reviews, and direct coordination with the Chapter 11 Trustee ("Trustee"). Since the filing of the First Report, patient care continuity has largely been preserved through telemedicine services, active vendor relationships, and compliant clinical operations.

However, a serious incident occurred on or about July 31, 2025, when former principals Brad Palubicki and Dr. Carlos Feliciano, whose authority had already been terminated by the Court-appointed Trustee, unilaterally canceled the Debtors' electronic medical record ("EMR") subscription.

This action disrupted lawful prescribing and medical record documentation for approximately two weeks, creating substantial risk of patient harm. **Although emergency intervention by the Trustee and PCO prevented any known direct harm, the incident underscores the fragility of care operations when subjected to malicious interference.** This Second Report documents that event, evaluates ongoing patient care, and provides recommendations to prevent recurrence.

## II.    FACILITY BACKGROUND AND CORPORATE STRUCTURE

Prior to filing for Chapter 11 bankruptcy protectoin, NuMale Corporation and its affiliated entities operated a multi-state clinical network of men's health centers focused on testosterone replacement therapy ("TRT"), erectile dysfunction management, and general hormone health. These services included clinical consultation, laboratory evaluations, medication prescribing, and routine follow-up care.

As of the petition date, the Debtor was operating in the following locations:
-Denver, Colorado

- Las Vegas, Nevada
- Omaha, Nebraska
- Albuquerque, New Mexico
- Ashwaubenon, Wisconsin

Each site was staffed by one or more physicians ("MD/DO"), nurse practitioners ("NPs"), and/or physician assistants ("Pas"), with variable clinic volumes. Ancillary staff included medical assistants, administrative coordinators, and clinical managers. Telehealth options had already been introduced before the petition date and were scaled up postpetition.

### III. OVERSIGHT METHODOLOGY

In accordance with the requirements of 11 U.S.C. § 333, the PCO employed a combination of in-person and virtual oversight methodologies, which included: in-person inspection of Las Vegas clinic, including review of medication handling, records, and staff interviews; virtual assessments of closed clinics, with focus on telehealth care delivery, prescribing systems, and vendor continuity; direct review of patient feedback, EMR functionality, pharmacy/laboratory vendor reports, and Trustee communications.

### IV. FINDINGS

A. *Staffing and Provider Access*

There is adequate coverage by physicians, nurse practitioners, and physician assistants. Telemedicine delivery remains stable, with no major reported gaps in provider access.

B. *Continuity and Quality of Care*

The PCO confirmed that care continuity has been preserved for patients under active treatment plans. Prepaid contractual obligations continue to be met; patient care is documented, and prescriptions are being transmitted through compliant systems, except

during the July–August EMR suspension event; no confirmed cases of patient abandonment or direct adverse outcomes are yet known or were reported.

### C. Pharmacy and Medication Services

The Las Vegas clinic maintains limited medication inventory, which is securely stored, properly labeled, and monitored with temperature logs. Pharmacy logs reviewed on site were compliant with regulatory expectations.

Pharmacies continue to deliver medications without delay, except for the disruption caused by the EMR suspension.

### D. CLIA Compliance and Laboratory Oversight

The PCO reviewed the CLIA certifications, and they remain current. According to Dr. Tim Gengembre, it will remain current until the lab is closed and its services are outsourced. Emails between Dr. Gengembre and the PCO are attached hereto as **Exhibit "A."**

No deficiencies noted in reviewed inspection reports.

### E. Infection Control and Environment of Care

The Las Vegas site remains clean, organized, and compliant with infection control standards. PPE and sharps disposal protocols remain intact.

### F. Medical Records and Privacy Protections

The EMR systems were previously stable. However, as detailed above, on or about July 31, 2025, former principals unilaterally canceled the EMR subscription, causing complete suspension of provider documentation and prescribing capabilities. HIPAA-compliant telemedicine platforms resumed full function after restoration.

The PCO does not know if Dr. Feliciano or Mr. Palubicki used any of the patient data when it was under their sole control. The Trustee was advised that all EMRs keep a "footprint" anytime data is accessed, and the EMR should be reviewed for any data breach.

G. *Patient Feedback and Complaints*

As of this report, the PCO has not received any formal patient complaints. Informal patient frustration was reported during EMR downtime when prescriptions could not be transmitted.

H. *Financial Constraints and Vendor Engagement*

Despite the ongoing bankruptcy proceedings, the Debtor has maintained good standing with its critical vendors. Compounding pharmacies, laboratory processors, IT vendors, and staffing services continue to be involved. However, there was a temporary EMR vendor interruption due to unauthorized interference by former principals.

## V. MATERIAL DEVELOPMENTS SINCE PRIOR REPORT

A. *Intentional Disruption of EMR/E-Prescribing Systems by Former Principals*

As detailed above, or about July 31, 2025, former principals Brad Palubicki and Dr. Carlos Feliciano - whose employment and authority had already been terminated – unilaterally canceled the Debtors' EMR subscription.

This act disabled the ability of providers to (i) document patient encounters in the medical record, and (ii) transmit prescriptions for controlled substances through the EMR's electronic prescribing of controlled substances ("EPCS") platform, as required by Federal Law.

This malicious and unauthorized interference created substantial risks:
- Patient Safety: immediate inability to prescribe Schedule II and III controlled substances lawfully.

- Regulatory Compliance: suspension of DEA/EPCS-compliant workflows jeopardized compliance with federal and state prescribing laws.
- Continuity of Care: patients experienced delays in receiving medication refills, with potential lapses in therapy.

The PCO and Debtor know of no patient harm; the suspension lasted two weeks. Emergency intervention by the Trustee and PCO provided a temporary workaround and coordinated the restoration of service.

B. Legal Characterization

The former principals' apparent willful misconduct and malicious interference with patient care operations and clinical systems can cause irreparable harm.

C. PCO Assessment

The cancellation of the EMR was not a mere business misstep; it was an intentional act intended to undermining patient care and safety.

In addition, the resulting delays in prescription fulfillment highlight systemic vulnerability to unauthorized interference. The Trustee is addressing these issues. Immediate PCO/Trustee intervention restored continuity of care and prevented patient abandonment.

## VI. RECOMMENDATIONS

Based on the findings outlined above, the PCO respectfully submits the following recommendations:

1. Continuing structured telemedicine services to meet contractual obligations.
2. Maintain and enforce stable vendor relationships, including EMR and prescribing platforms.
3. Develop and implement a non-interference order barring former principals from accessing, canceling, or tampering with any clinical systems, accounts, or vendor

    contracts.

4. Securely archive and protect medical records in compliance with state and federal law.
5. Direct all vendors to require Trustee authorization for any account or payment changes.
6. Maintain a standing communication plan to reassure patients in the event of future disruptions.

## VII.    CONCLUSION

At the time of filing this Second Report, patient care is being delivered safely via telemedicine platforms and in person visits; vendor continuity and regulatory compliance remain intact.

However, the EMR disruption represents a serious attempt at interference with patient care and the clinics. Although resolved without known direct harm, this event underscores the need for ongoing Court oversight, protective orders, and strict vendor compliance. The deliberate and unauthorized cancellation of the EMR system by the former principals was not merely a breach of professional conduct; it was a calculated act that endangered patient safety and flagrantly disregarded this Court's protective jurisdiction.

The PCO believes that this Court should view their actions as a willful attempt to sabotage the continuity of critical patient care, thereby warranting stern judicial scrutiny. Such intentional misconduct is not just a procedural hiccup; it is a severe breach that merits this Court's firm intervention to protect the integrity of ongoing patient care by Dr Feliciano, at any venue. Causing willful harm is considered unprofessional conduct.

The PCO defers to the Court to determine if these actions by Dr. Feliciano should be reported by the Trustee to the various states' Medical Boards in which Dr. Feliciano holds a medical license.

The PCO will continue to monitor the Debtor and its affiliates, with special focus on EMR stability, vendor relationships, and any further acts of interference that could compromise patient safety. Future reports will be submitted as required. Should any material changes in patient care conditions arise, a supplemental report will be provided to the Court.

Dated: August 27, 2025

**By:** See next page

**Dr. Jacob Nathan Rubin, M.D., F.A.C.C**.
*Patient Care Ombudsman*

The PCO will continue to monitor the Debtor and its affiliates, with special focus on EMR stability, vendor relationships, and any further acts of interference that could compromise patient safety. Future reports will be submitted as required. Should any material changes in patient care conditions arise, a supplemental report will be provided to the Court.

Dated: August 27, 2025

By: /s/ 

Dr. Jacob Nathan Rubin, M.D., F.A.C.C.
*Patient Care Ombudsman*

# EXHIBIT A

# Re: CLIA #14D2071218 - Upcoming Recertification Survey

From: Tim Gengembre, PhD (tim@numale.com)

To: sdiaz@numale.com; brandon.rakowski@illinois.gov; operations@numale.com

Cc: kelen.seymour@illinois.gov; justinp@numale.com

Date: Tuesday, August 26, 2025 at 08:40 AM PDT

**Emergency Pause to Resignation as Lab Director:**

Mr. Rakowski,

On Friday August 22, 2025, I submitted my 2-week resignation from NuMale Medical and my last day will be Thursday September 4, 2025.

Due to this change, I would like to remain on as Lab Director for the Skokie Clinic.

I do apologize for the confusion on my part but as I am sure you can appreciate, given the multiple "half-truths" I'm getting as a result of the bankruptcy issues, malpractice settlements, and other legal matters NuMale is currently facing.

First and foremost, I am a clinician and it is my dedication to patient's that will always take priority.

I will remain as lab director as long is necessary to ensure each and every patient's needs are met.

Professionally,

Tim R Gengembre, PA-C, MS, MBA, PHD
Cell 262/366-8985

---

**From:** Stephanie Diaz <sdiaz@numale.com>
**Sent:** Monday, August 25, 2025 1:18 PM
**To:** Rakowski, Brandon <Brandon.Rakowski@Illinois.gov>; NuMale Operations Team <Operations@numale.com>; Tim Gengembre, PhD <tim@numale.com>
**Cc:** Seymour, Kelen <Kelen.Seymour@Illinois.gov>; Justin Pulliam <justinp@numale.com>
**Subject:** RE: CLIA #14D2071218 - Upcoming Recertification Survey

Hello,

We will be submitting formal request to withdraw certification shortly.

Regards,
Stephanie Diaz

---

**From:** Rakowski, Brandon <Brandon.Rakowski@Illinois.gov>
**Sent:** Friday, August 22, 2025 8:56 AM
**To:** NuMale Operations Team <Operations@numale.com>; Tim Gengembre, PhD <tim@numale.com>
**Cc:** Seymour, Kelen <Kelen.Seymour@Illinois.gov>; Justin Pulliam <justinp@numale.com>; Stephanie Diaz <sdiaz@numale.com>
**Subject:** RE: CLIA #14D2071218 - Upcoming Recertification Survey
**Importance:** High

Justin,

Hello. I wanted to follow-up on our phone call as we have not yet received a request to terminate the CLIA certificate 14D2071218 from the LD. If you can please provide a status update it would be appreciated.

Thanks,

**Brandon Rakowski**
*CLIA Program Administrator*
*Illinois Department of Public Health*
*Division of Health Care Facilities and Programs*
*Laboratory Regulations*
*525 West Jefferson Street, 4th FL*
*Springfield, Illinois 62761*
*Phone: 217-782-2343*
*Fax: 217-782-0382*
*email: Brandon.Rakowski@illinois.gov*
*website: https://dph.illinois.gov/topics-services/health-care-regulation/clia.html*



**Important Action!**
*Laboratories have until **March 1, 2026**, to switch to CMS email notifications and begin receiving electronic CLIA fee coupons and certificates. After this date, **paper fee coupons and CLIA certificates will no longer be available.***

*We are encouraging laboratories to create a general CLIA email address that multiple individuals can access to avoid issues with turnover and missing notifications.

**We are limited to 1 email per CLIA# for electronic notifications. To ensure you are receiving all fee coupons and CLIA certificates electronically, please work with your IT department to add noreply-cms-ccsq@ccsq.cms.hhs.gov to your safe sender list.

**Don't wait!** Please use this form to update your email/notifications for your Illinois CLIA certificate(s). Please submit the completed forms to DPH.CLIA@Illinois.gov.

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

**From:** Rakowski, Brandon
**Sent:** Friday, August 15, 2025 7:59 AM
**To:** NuMale Operations Team <Operations@numale.com>; tim.gengembre@numale.com
**Cc:** Seymour, Kelen <Kelen.Seymour@Illinois.gov>; Justin Pulliam <justinp@numale.com>; Stephanie Diaz <sdiaz@numale.com>
**Subject:** RE: CLIA #14D2071218 - Upcoming Recertification Survey
**Importance:** High

Dr. Genembre,

Hello. Please ensure you have provided your resignation notification to the laboratory, 14D2071218. We are unable to remove you as the laboratory director of record on the CLIA certificate. The laboratory will need to submit a CMS-116 with a qualified laboratory director in order to remove you as the LD of record on the CLIA certificate.

Regards,

**Brandon Rakowski**
CLIA Program Administrator
Illinois Department of Public Health
Division of Health Care Facilities and Programs
Laboratory Regulations
525 West Jefferson Street, 4th FL
Springfield, Illinois 62761
Phone: 217-782-2343

Fax: 217-782-0382
email: Brandon.Rakowski@illinois.gov
website: https://dph.illinois.gov/topics-services/health-care-regulation/clia.html



### Important Action!

Laboratories have until **March 1, 2026,** to switch to CMS email notifications and begin receiving electronic CLIA fee coupons and certificates. After this date, **paper fee coupons and CLIA certificates will no longer be available.**

*We are encouraging laboratories to create a general CLIA email address that multiple individuals can access to avoid issues with turnover and missing notifications.

**We are limited to 1 email per CLIA# for electronic notifications. To ensure you are receiving all fee coupons and CLIA certificates electronically, please work with your IT department to add noreply-cms-ccsq@ccsq.cms.hhs.gov to your safe sender list.

**Don't wait!** Please use this form to update your email/notifications for your Illinois CLIA certificate(s). Please submit the completed forms to DPH.CLIA@Illinois.gov.

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

**From:** Seymour, Kelen <Kelen.Seymour@Illinois.gov>
**Sent:** Thursday, August 14, 2025 10:27 AM
**To:** Rakowski, Brandon <Brandon.Rakowski@Illinois.gov>
**Subject:** FW: CLIA #14D2071218 - Upcoming Recertification Survey


**From:** Stephanie Diaz <sdiaz@numale.com>
**Sent:** Wednesday, August 13, 2025 6:00 PM
**To:** Seymour, Kelen <Kelen.Seymour@Illinois.gov>
**Cc:** NuMale Operations Team <Operations@numale.com>; Justin Pulliam <justinp@numale.com>
**Subject:** [External] RE: CLIA #14D2071218 - Upcoming Recertification Survey

Hello Kelen,

apologize for the delayed response. NuMale Medical Center in Skokie is now operating independently and can be reached at **847-354-4383**.

Additionally, our medical provider, Tim Gengembre, is no longer serving as their Laboratory Director or Technical Consultant. Please find attached a letter requesting his withdrawal from their CLIA certification.

If you have any questions, please feel free to contact me, and I will do my best to assist.

Kind regards,
Stephanie Diaz
Vice President, NuMale Medical Center
6590 S. Rainbow Blvd. Suite 200, Las Vegas, NV 89118

**From:** Seymour, Kelen <Kelen.Seymour@Illinois.gov>
**Sent:** Monday, August 11, 2025 7:24 AM
**To:** NuMale Operations Team <Operations@numale.com>
**Subject:** CLIA #14D2071218 - Upcoming Recertification Survey
**Importance:** High

_Attempt #2_

Numale Laboratory (CLIA #14D2071218),

The IDPH Laboratory Regulations Unit is in the process of scheduling a recertification survey for your laboratory at 4711 Golf Road, Suite 1050 in Skokie, IL.

Our current projected date for the survey is Tuesday, September 16th, 2025, with an approximate 10:30 - 11:00 AM arrival.

Prior to officially scheduling this survey, I am reaching out to confirm you are still performing laboratory testing in the subspecialties of Routine Chemistry and Endocrinology at this facility and that this is still the appropriate email address to utilize for contact and confirmation purposes.

I look forward to hearing back from you.

Best,

**Kelen Seymour, MLS (ASCP)cm, MPH, LSSGBC**

Laboratory Quality Specialist II
Illinois Department of Public Health
Division of Health Care Facilities and Programs
Laboratory Regulations
525 West Jefferson Street, 4th FL
Springfield, Illinois 62761
Phone: 217-524-0135
Mobile: 217-685-4574
Fax: 217-782-0382
email: Kelen.Seymour@illinois.gov
website: https://dph.illinois.gov/topics-services/health-care-regulation/clia.html



**Important Action!**
Laboratories have until **March 1, 2026** to switch to CMS email notifications and begin receiving electronic CLIA fee coupons and certificates. After this date, **paper fee coupons and CLIA certificates will no longer be available.**

*We are encouraging laboratories to create a general CLIA email address that multiple individuals can access to avoid issues with turnover and missing notifications.

**Don't wait!** Please use this form to update your email/notifications for your Illinois CLIA certificate(s). Please submit the completed forms to DPH.CLIA@Illinois.gov.

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.