NVB 2016 (05/2022)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

### Fee Application Cover Sheet

Case No.: 25-13041-nmc    Chapter: 11    Hearing Date/Time: 9/24/2025 09:30

Debtor: NUMALE CORPORATION

Applicant: Garman Turner Gordon LLP, as attorneys for Chapter 11 Trustee

Date of Employment: April 7, 2025

Interim Fee Application No: 1    OR    Final Fee Application

**Amounts Requested:**                                **Client Approval: Yes** ☑ **No** ☐

**Fees:** $ 9,338,543.40

**Expenses:** $ 42,575.51

**Total:** $ 9,381,118.91

Hours: Contingency Compensation Sought    Blended Rate: $ GTG is not seeking hourly compensation

Fees Previously Requested: $ 0.00    Awarded: $ 0.00

Expenses Previously Requested: $ 0.00 Total    Awarded: $ 0.00

Previously Requested: $ 0.00    Awarded: $ 0.00

Total Amount Paid: $ 0.00

### Chapter 13 Cases ONLY:

**Yes** ☐ **No** ☑ Elected to accept the Chapter 13 Presumptive Fee pursuant to LR 2016.2, and filed the "Notice of Election to Accept the Presumptive Fee" on _____ .

**Yes** ☐ **No** ☑ Participated in the Mortgage Mediation Program: **If yes,** amount received: $ _____

I certify under penalty of perjury that the above is true.

_____  _____    Date    August 27, 2025

Signature

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc |
| | Chapter 11 |
| NUMALE CORPORATION, | |
| | *Jointly administered with:* |
| AFFECTS THIS DEBTOR, ☐ | |
| | Feliciano NuMale Nevada PLLC |
| AFFECTS FELICIANO ☐ | Case No. 25-10342-nmc |
| NUMALE NEVADA PLLC, | |
| | NuMedical SC |
| NUMEDICAL SC, ☐ | Case No. 25-10343-nmc |
| NUMALE COLORADO SC, ☐ | NuMale Colorado SC |
| | Case No. 25-10344-nmc |
| NUMALE FLORIDA TB PLLC, ☐ | |
| | NuMale Florida TB PLLC |
| NUMALE NEBRASKA LLC, ☐ | Case No. 25-10345-nmc |
| NUMALE NEW MEXICO SC, ☐ | NuMale Nebraska LLC |
| | Case No. 25-10346-nmc |
| NUMALE ALL DEBTORS, ☒ | |
| | NuMale New Mexico SC |
| Debtors. | Case No. 25-10347-nmc |
| | |
| | Hearing Date:   September 24, 2025 |
| | Hearing Time:  9:30 a.m. |

**FIRST INTERIM FEE APPLICATION OF GARMAN TURNER GORDON LLP
AS ATTORNEYS FOR MICHAEL CARMEL, CHAPTER 11 TRUSTEE, FOR THE
ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES**

1

1

**TABLE OF CONTENTS**

I. INTRODUCTION ......................................................................................................... 1

II. SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED ........................................................................................... 3

III. SUMMARY OF REQUESTED RELIEF AND EVIDENCE ................................. 4

III. JURISDICTION AND VENUE ............................................................................... 6

IV. PERTINENT FACTS ............................................................................................... 7

V. TASKS PERFORMED DURING THE COMPENSATION PERIOD .................. 14

    A.    Task Code 01: GTG Retention & Compensation. ......................................... 14

    B.    Task Code 02: Other Professionals Retention & Compensation. ................. 14

        1.    Special Counsel. ................................................................................ 15

        2.    Other Professionals' Applications. ................................................... 16

    C.    Task Code 03: General Bankruptcy Matters/Case Administration ............... 17

    D.    Task Codes 04:  Petition/Schedules/Statements/341. .................................. 18

    E.    Task Codes 05:  Cash Collateral/364 Financing. ....................................... 19

    F.    Task Codes 07:  362 Stay Relief Matters. .................................................. 19

    G.    Task Codes 09: 365 Executory Contracts & Leases. .................................. 21

    H.    Task Code 10: Claims Administration & Litigation. ................................... 22

    I.    Task Code 11: Business Operations and Governance. ................................. 23

    J.    Task Codes 12 & 13: Confirmation of Plan. ................................................ 24

    K.    Task Code 15: 2004 Exams and Discovery. ................................................ 25

    L.    Task Code 19: Avoidance Actions and Adversary Proceedings. ................. 26

    M.    Task Code 22: Turnover. .............................................................................. 26

    N.    Task Code 23: Bankruptcy Litigation. ......................................................... 27

    O.    Task Code 24: Non-Bankruptcy Litigation. ................................................ 28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

P.       Task Code 25: Trustee's Investigation. ........................................................... 30

VI. ACTUAL AND NECESSARY DISBURSEMENTS ............................................. 31

VII. THE REQUESTED COMPENSATION SHOULD BE ALLOWED ................................. 31

A.      The Application Should Be Approved Under the Standards of Section 328................ 31

VIII. CONCLUSION ............................................................................ 34

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Fann Contracting, Inc. v Garman Turner Gordon LLP*, 593 B.R. 625, 631 (D. Nev. 2018)....... 32

4

*In re Betancourt*, 2022 WL 1272140 (Bankr. D.N.M. 2022) ........................................ 32

5

*In re First Magnus Fin. Corp.*, 2009 WL 7809001 (B.A.P. 9th Cir. 2009)................................. 32

6

**Statutes**

7

11 U.S.C. § 105 ............................................................................................................. 6

8

11 U.S.C. § 327 ......................................................................................................... 6, 15

9

11 U.S.C. § 328 ................................................................................................... 1, 2, 6, 31

10

11 U.S.C § 330................................................................................................... 1, 2, 4, 6, 32

11

11 U.S.C § 331 ..................................................................................................... 1, 6, 32

12

11 U.S.C. § 503 ............................................................................................................. 6

13

11 U.S.C. § 507 ............................................................................................................. 6

14

11 U.S.C. § 1107 ......................................................................................................... 6, 8

15

11 U.S.C. § 1108 ......................................................................................................... 6, 8

16

28 U.S.C. § 157 ............................................................................................................. 6

17

28 U.S.C. § 1334 ........................................................................................................... 6

18

28 U.S.C. § 1408 ........................................................................................................... 6

19

28 U.S.C. §1409 ............................................................................................................ 6

20

**Other Authorities**

21

*Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses* ........ 4

22

**Rules**

23

Fed. R. Bankr. P. 2016................................................................................................... 6

24

Local Rule 9014.2 ......................................................................................................... 7

25

26

27

28

iii

Garman Turner Gordon LLP ("GTG"), as attorneys for Michael Carmel, the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby submits its first interim fee application (the "GTG Fee Application") pursuant to Sections[1] 328, and 331, Bankruptcy Rule 2016, and Local Rue 2016, for the allowance of compensation for professional services performed by GTG for the Trustee in Debtors' Chapter 11 cases (the "Chapter 11 Cases") on an interim basis, and for reimbursement of its actual and necessary expenses incurred from April 7, 2025, through August 15, 2025 (the "Compensation Period").  The GTG Fee Application is made and based upon the points and authorities provided herein; the declarations of Chapter 11 Trustee Michael Carmel, Esq. ("Carmel Decl.") and Gregory Garman, Esq. ("Garman Decl.") filed contemporaneously herewith; the papers and pleadings on file herein, judicial notice of which is respectfully requested; and any argument of counsel at the time of hearing on the GTG Fee Application.  A proposed form of order granting this Application is attached hereto as **Exhibit 1**.

## I.
## INTRODUCTION

GTG respectfully submits that its contingency fee should be confirmed because the Court pre-approved a risk-sharing, hybrid structure under 11 U.S.C. § 328(a), subject only to review and objection by the Office of the United States Trustee under § 330.  GTG's approved fee constituted a 50% reduction of its standard hourly rates coupled with a reduced, tiered contingency (17.5% on the first $10 million of gross recoveries to the estates, excluding operating revenue, and 8.75% above $10 million). Those terms were disclosed in GTG's employment papers and supported by the Garman and Carmel Declarations, in light of bankruptcy Estates having "few, if any, liquid assets", and subsequently approved by the Court.  Simply put, these Estates were administratively insolvent when GTG took over these Chapter 11 Cases, and GTG assumed substantial risk in

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

taking on this engagement, including advancing more than $40,000 in costs. Under § 328(a) and Ninth Circuit precedent, such pre-approved terms are not re-tried under § 330 absent developments "not capable of being anticipated" at retention—an exacting standard not met here, as the claims resolved here were known to the parties and even discussed in open Court.

Further, awarding the contingency confirms the analysis and expectations underpinning the Court's Employment Order, as GTG delivered precisely the results that the § 328(a) bargain was designed to incentivize. Working with the Trustee, GTG has so far negotiated the recovery of $108,584,678.11 into these Estates (excluding operational revenue) and further negotiated reductions of secured and unsecured claims totaling approximately $170,000,000 (for which GTG does not seek compensation). These outcomes clear the path to confirmation and distributions to creditors less than six months after the appointment of the Trustee and the retention of GTG. It should also be recognized that GTG has hundreds of additional hours of future work (likely without further compensation) in confirming the Plan, conducting a Section 363 sale, protecting patient care, and other post-confirmation work.[2]

Finally, GTG has offered, to the extent its fee is approved by this Court, to make additional creditor-first concessions in that: (i) GTG waives all hourly compensation earned to date and seeks only its contingency based fee[3]; (ii) GTG will voluntarily reduce its earned contingency fee by an additional 10%; and (iii); conditioned on approval of the Global Settlement and confirmation of the Plan,[4] as part of the proposed Plan GTG has agreed to voluntarily defer payment of a portion of the portion of the total compensation approved by deferring approximately 50% of its approved fee to payment until the Liquidation Trust obtains (if ever) recoveries sufficient to pay such

---

[2] This Application is being filed at this time because the concessions and discounts identified herein on GTG's earned compensation are necessary in order to ensure the Plan is confirmable, and the Application must be approved in order for GTG to make them.

[3] Nevertheless, for clarity of the record: In preparing this Application, GTG has tabulated the hours worked through August 15, 2025, by all its professionals; these numbers are reflected in **Section II.** herein.

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] (the "9019 Motion"), and in the Trustee's *Joint Plan of Reorganization* [ECF No. 434] (the "Plan"), in that sequence.

2

deferred administrative claims.  These reductions, and the voluntary deferment, enhance creditor

distributions by at least $1,447,536.93.  Obviously, such future payment is contingent upon

prevailing and settling litigation claims. Such deferment by GTG is speculative, risky, and not

required by the Bankruptcy Code.[5]

## II.
## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

| | |
|---|---|
| Fee Application | |
| Applicant | Garman Turner Gordon LLP |
| Capacity | Counsel to Chapter 11 Trustee |
| Compensation Period | April 7, 2025 – August 15, 2025 |

**Hourly Compensation**

| | | |
|---|---|---|
| Compensation Period Fees – Hourly rates (standard)[6] | $ | 819,842.00 |
| Compensation Period Fees – Hourly rates at 50%[7] | $ | 409,921.00 |
| Voluntary Discount – Hourly rates | $ | 409,921.00 (**a 100% discount**[8]) |
| Blended Hourly Rate | | GTG is not seeking hourly compensation |

**Contingency Compensation**

| | |
|---|---|
| Calculation of Contingency Compensation | *See* **Exhibit 2** hereto |
| Contingency Fee Calculation[9] | $10,376,159.33 |
| Voluntary Discount of 10% – Contingency | $ 1,037,615.93 |
| Contingency Fee Requested After Discount | $ 9,338,543.40 |

**Expenses/Costs**

| | | |
|---|---|---|
| Compensation Period Costs Requested Reimbursed | $ | 42,575.51 |

**Total Hours**

| | |
|---|---|
| Total Fees and Costs Requested After Discount | $ 9,381,118.91 |
| Summary of Fees by Professional | *See* **Exhibit 3** hereto |
| Summary of Fees by Task Code | *See* **Exhibit 4** hereto |
| Summary of Expenses by Type | *See* **Exhibit 5** hereto |

---

[5] There remains a significant amount of work to perform in these Chapter 11 Cases, including Plan confirmation. GTG is committed to finishing these cases, as well as bearing the risk of recovery on any amounts approved by this Court that are deferred for payment until funds become available from the Liquidation Trust.

[6] If GTG were to have been employed at the full amount of its standard hourly rates.

[7] The Employment Order provides that GTG's hybrid compensation structure was based in part on hourly rates set at fifty percent (50%) of GTG's then-prevailing rates in effect.

[8] GTG was employed at discounted rates of 50% its standard hourly rates then in effect.  *See* Employment Order ECF No. 293.  Therefore the true discount on GTG's hourly compensation is reflected as this number.

[9] *See* Schedule of Contingency Compensation, **Exhibit 2** hereto.

3

### III.
### <u>SUMMARY OF REQUESTED RELIEF AND EVIDENCE</u>

1.       The GTG Fee Application has been prepared in accordance with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* adopted by the Executive Office for United States Trustees, as referenced by the *Region 17 United States Trustee Guidelines*, as well as in accordance with Bankruptcy Rule 2016 and Local Rule 2016.

2.       This is the first interim fee application for allowance of compensation and reimbursement of expenses filed on behalf of GTG in the Chapter 11 Cases.  Garman Decl. ¶ 3.

3.       Pursuant to the GTG Fee Application, GTG requests allowance of compensation of $9,338,543.40 based on this Court's approval of its discounted contingency compensation requested herein and the total discount of the hourly compensation.  This is net of the following voluntary discounts, which GTG is prepared to make should the Court grant this Application in its entirety:

- $1,037,615.93 discount on GTG's earned contingency compensation; and
- $409,921.00 discount on GTG's earned hourly compensation (at the 50% hourly rates);

for a combined total discount of $1,447,536.93, in connection with services provided during the Compensation Period.

4.       During the Compensation Period, GTG's attorneys expended a total of 1,468.7 hours.  A billing summary is attached hereto as **Exhibit 3**.  GTG is not seeking to be paid compensation based on the hours of work performed and its professionals' hourly rates.  Rather, should this Court approve the contingency compensation requested herein, GTG is prepared to waive in the entirety its entitlement to seek compensation based on the hours its professionals worked and the applicable hourly rates during the Compensation Period.  *See* Garman Decl. ¶ 4.

5.       As set forth herein, GTG has, additionally, discounted the compensation earned by discounting its contingency fee earned for the Compensation Period by the amount of $1,037,615.93 in contingency compensation that is otherwise earned and awardable pursuant to

4

the *Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 293] ("Employment Order").  *See* Garman Decl. ¶ 5.

6.    Pursuant to this Application, GTG requests interim approval of its total compensation in the amount of $9,338,543.40 (after discounts) and the reimbursement of GTG's expenses of $42,575.51, for a grand total of $9,381,118.91 for the Compensation Period, which starts with the Trustee's appointment and ends at August 15, 2025.  Should this Court approve this Application in its entirety GTG has agreed to, as part of the proposed Plan, voluntarily defer payment of a portion of the total compensation approved by deferring approximately fifty percent (50%) of its fee, until such proceeds are available, if ever, from Liquidation Trust proceeds to pay this amount.  *See* Garman Decl. ¶ 6.

7.    **Exhibit 4** hereto identifies and provides chronologically throughout the Compensation Period: (a) the dates on which GTG performed professional services for the Trustee; (b) each person performing such services; (c) the amount of time spent by each person on each day that the person performs such services (charged in units of one-tenth [0.1] of an hour); and (d) specific daily descriptions of the services performed by each person.  *See* Garman Decl. ¶ 7.

7.    **Exhibit 5** attached hereto contains a detailed statement of actual and necessary out-of-pocket expenses incurred and paid by GTG during the Compensation Period in its representation of the Trustee.  *See* Garman Decl. ¶ 8.

8.    The fees charged by GTG in these Chapter 11 Cases are billed in accordance with its existing procedures in effect during the Compensation Period.  GTG submits that fees are reasonable in light of the customary compensation charged by comparably skilled practitioners in a competitive legal market.  *See* Garman Decl. ¶ 9.

9.    Moreover, the contingency compensation requested herein is reasonable in light of the customary compensation charged by comparably skilled practitioners in a competitive legal market, because (as set forth in the Employment Order), as it is a reduced contingency percentage (17.5% on the first $10 million brought into the Estates, instead of the standard 35%), is not calculated based on earnings from operations and is calculated based on recoveries for the Estates,

and is further subject to a step-down reduction for any amounts brought recovered by the Trustee over $10 million.  *See* Garman Decl. ¶ 10.

10.    More specifically, the Employment Order provides:

> GTG's contingency fee shall be calculated based on all gross recoveries by and to the estates, excluding revenue generated from the estates' existing business operations or any matters that do not produce recoveries to the estates.  By way of example, GTG's contingency fee will apply to, and be calculated based on, all funds generated by the estates through litigation, sales of assets, or any other mechanism that generates a recovery for the estates that is the result of GTG's and Trustee's services and not solely comprised of the estates' normal revenue.  Specifically, GTG shall earn legal fees on a contingency basis of 17.5% of the cash value of recoveries set forth herein, and of the cash equivalent value of any non-monetary recoveries that GTG and the Trustee obtain that accrue to the benefit of the estates from the first $10,000,000.  If GTG is successful obtaining such recovery that exceeds $10,000,000, GTG's fees on any amount recovered in excess of such $10,000,000 shall be reduced to 8.75% of the cash value of such recoveries and of the cash equivalent value of any non-monetary recoveries that GTG and Trustee obtain that accrue to the benefit of the estates.

*See* Employment Order ECF No. 293 at ¶ 5.

## III.
## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought herein arise from Sections 328,[10] 331, 503, 507, 1107, 1108, and 105 of the Bankruptcy Code, and Bankruptcy Rule 2016.

---

[10] Impactfully, the Employment Order specifically provides that, as to all parties in interest except the U.S. Trustee, whose rights are reserved, GTG's employment is subject to review (only) under 11 U.S.C. § 328(a):

> The contingency fee component of GTG's compensation set forth in the Retention Agreement is approved under 11 U.S.C. §§ 327(a) and is subject to review under 11 U.S.C. § 328(a); provided however, that only the United States Trustee for Region 17 ("United States Trustee"), and her staff employed by the OUST, upon the filing of an application by GTG, will review the contingency fee component of GTG's compensation under 11 U.S.C §§ 330 and 331 of the Bankruptcy Code, Fed. R. Bankr. P. 2016(a), the Local Rules, and the Guidelines established by the OUST, and further orders of this Court.

Pursuant to LR 9014.2, GTG consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

## IV.
## PERTINENT FACTS

**CASE ADMINISTRATION AND GENERAL BANKRUPTCY MATTERS**

1.      On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2.      On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. See ECF No. 130.

3.      On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

4.      On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("U.S. Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

5.      On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the U.S. Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

6.      Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

7.      On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

---

*See* Employment Order ECF No. 293 at ¶ 4.

7

8.       Immediately upon the Trustee's appointment, he began investigating the financial affairs and assets of the Debtors.  *See* Carmel Decl. ¶ 3.

9.       The Debtors' business is a going concern, and the Trustee is authorized to operate the Debtors' business.  *See* Carmel Decl. ¶ 4.  *See also* 11 U.S.C. §§ 1107, 1108.

10.      On April 25, 2025, the Trustee filed his *Application for Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 199], which was ultimately granted by the Court [ECF No. 293].

11.      On May 5, 2025, the Trustee filed his *Motion for Entry of Order (A) Setting a Bar Date for Filing Proofs of Claim and (B) Approving Notice Thereof* [ECF No. 237], which was ultimately granted by the Court [ECF No. 289], and a *Notice of Claims Bar Date* [ECF No. 298] was then filed by the Trustee and noticed to creditors and parties in interest.

12.      On May 6, 2025, the Trustee filed his *Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 241], which sought to extend the deadline for the Trustee to assume or reject the unexpired leases of nonresidential real property of any of the Debtors under Section 365(d)(4)(B)(i) of the Bankruptcy Code, for ninety (90) days, from May 22, 2025, to August 20, 2025.  This was granted by the Court [ECF No. 290].

13.      Later, after the Plan was filed, the Trustee prosecuted a *Second Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 462], seeking an extension of this deadline to October 24, 2025, the thirtieth day after Plan confirmation. This motion, too, was granted by the Court.  *See* ECF No. 501.

14.      On May 28, 2025, the Trustee filed his *Motion for Order Seeking Approval of Post-Petition Financing of Insurance Renewal Premium* [ECF No. 310], seeking Court approval to finance the renewal premium associated with the Debtors' renewal of an E & O insurance policy. This Motion was also granted [ECF No. 325].

STAY ENFORCEMENT

15.      On June 11, 2025, the Trustee filed his *Motion to Enforce the Automatic Stay and for Sanctions* [ECF No. 339], against Ace Recovery Group and Top Tier Capital, for seeking postpetition enforcement of debts allegedly owed to Top Tier Capital by one or more Debtors.

This motion was ultimately resolved with both parties through stipulations approved by the Court, upon the Trustee's receipt of sufficient evidence from Top Tier and from Ace Recovery Group reflecting remedial corrective action, as well as a reimbursement of the Estates' fees and expenses incurred in obtaining corrective action. *See, e.g.*, ECF Nos. 414 (Top Tier) and 441 (Ace Recovery Group).

16.    Meanwhile, on or about June 28, 2025, the Trustee, through GTG, also obtained the vacatur of a judgment that had been entered post-petition in a collection action against the Debtors in the Supreme Court of the State of New York post-petition. *See* Carmel Decl. ¶ 5.

**EMPLOYMENT OF SPECIAL COUNSEL**

17.    On May 20, 2025, the Trustee through GTG filed applications to employ special counsel to represent the Estates in connection with the Sanchez Lawsuit [ECF Nos. 269, 272]. Both the *Application to Employ Paul, Weiss, Rifkind, Wharton & Garrison LLP as Special Litigation Counsel to the Chapter 11 Estates* and the *Application to Employ Rodey, Dickason, Sloan, Akin, & Robb, P.A. as Special Litigation Counsel to the Chapter 11 Estates*, were granted by the Court. *See* ECF Nos. 335 and 336.

18.    On June 17, 2025, the Trustee through GTG filed the *Application to Employ McAfee & Taft as Special Counsel to the Chapter 11 Estate* [ECF No. 349], seeking to employ special counsel to advise and represent the Estates relating to collection from Basel Said Hassoun ("Dr. Hassoun") on a six-figure judgment against Dr. Hassoun. McAfee & Taft's employment was also approved by the Court [ECF No. 345]. With McAfee & Taft employed, the Trustee is actively pursuing judgment collection against Dr. Hassoun. *See* Carmel Decl. ¶ 6.

19.    Additionally, the Trustee, through GTG, obtained the continuances of briefing and a hearing on a motion to dismiss the NuMale Corporation Debtor's ongoing lawsuit in the Eighth Judicial District Court of Clark County, Nevada, Case No. A-25-910072-C, *NuMale Corporation v. Howard & Howard Attorneys PLLC* ("Malpractice Lawsuit"), preserving this Estate asset. *See* Carmel Decl. ¶ 7.

20.    On July 30, 2025, the Trustee through GTG filed the *Application to Employ Burr & Forman as Special Counsel to the Chapter 11 Estate* [ECF No. 417], seeking the employment

9

of estate special counsel to represent NuMale Corporation in the U.S. District Court for the Eastern District of North Carolina Case No. 7:24-cv-00927-D-RN, *The N2 Company v. NuMale Medical Center, LLC and NuMale Corporation* ("EDNC Litigation"), in which Debtor NuMale Corporation is a named defendant and filed a counterclaim. Burr & Forman's employment application is unopposed and is set for a hearing on September 2, 2025. *See* Carmel Decl. ¶ 8.

**TURNOVER**

21.    The Trustee learned that prior counsel in the Malpractice Lawsuit was never retained by the NuMale Corporation bankruptcy estate. Therefore, Trustee Carmel, through GTG, obtained the turnover of prior counsel's file for the Debtor. *See* Carmel Decl. ¶ 9.

22.    Additionally, the Trustee's investigation revealed that NuMale Corporation was previously represented in the EDNC Litigation through counsel John T. Kivus and Kenzie M. Rakes of law firm the Morningstar Law Group and that this counsel was, also, never retained by the then-Debtors-in-possession. Here too, Trustee Carmel, through GTG, obtained the turnover of prior counsel's file for the Debtor. *See* Carmel Decl. ¶ 10.

23.    Through GTG the Trustee also obtained turnover of the client file of Gile Law Group, which firm had asserted a proof of claim for work performed including post-petition work but had also not been employed by the Estates when under the direction of the then-Debtors-in-possession. *See* Carmel Decl. ¶ 11.

24.    In another successful turnover effort, the Trustee through GTG obtained the turnover of $78,778.11 from Elavon, Inc., which monies had been held by Elavon, Inc. and had not been turned over to the then-Debtors-in-Possession. *See* Carmel Decl. ¶ 12.

25.    The Trustee also filed the *Motion for an Order Compelling Turnover of Property of the Estates and for Sanctions* [ECF No. 467], which is set for a hearing on September 9, 2025. This motion seeks the turnover of insurance claim proceeds in the amount of approximately $168,386.01 for a claim made under the Debtors' policy with Zurich North America. *See* Carmel Decl. ¶ 13.

. . .

. . .

10

**SETTLEMENTS AND STIPULATIONS WITH CREDITORS AND PARTIES-IN-INTEREST**

26. The Trustee through GTG successfully negotiated the stipulated order granting stay relief regarding the Sanchez Lawsuit, which allowed for post-Jury Verdict motion to proceed. *See* ECF Nos. 264, 275.

27. The Trustee through GTG also reached settlements or stipulation with a number of creditors who had asserted secured claims against these Estates, reclassifying and/or reducing their claims, as follows:

- The *Stipulation Regarding Classification of Claim* [ECF No. 438], reclassifying this claim by NuMale Corporation's former counsel in the Malpractice Lawsuit to a general unsecured claim. The stipulation was approved by the Court [ECF No. 442].
- The *Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Settlement with EBF Holdings, LLC d/b/a Everest Business Funding* [ECF No. 504], which is set for a hearing on September 16, 2025.
- The *Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Settlement with Kalamata Capital Group, LLC* [ECF No. 493], which is set for a hearing on September 16, 2025.
- The *Motion Pursuant to Fed. R. Bankr. P. 9019 to Authorize and Approve Settlement Between NuMale Corporation and Newtek Bank NA* is being filed commensurately herewith.

**THE GLOBAL SETTLEMENT AGREEMENT AND THE PLAN**

28. At the same time he was prosecuting all of the foregoing and attending to the administration of these Estates, the Trustee successfully negotiated a settlement with Beazley and Mr. Sanchez that brings $108,500,000.00 into these Estates, provides for the compromise of the Sanchez Claim at a reduced amount of $410,000,000, and paves the path toward confirming the Trustee's Plan.

29. The *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] (the 9019 Motion) is set for a hearing September 2, 2025.

11

30.     The Trustee has also proposed a Plan of reorganization that will distribute $98,500,000 to creditors including Mr. Sanchez and also establish a Liquidation Trust to pursue and liquidate other claims and assets. The Trustee's Plan also contemplates a sale of the Debtors' clinics which are the bases of the Debtors' business operations. *See* Carmel Decl. ¶ 14.

31.     The confirmation of the Plan, and final approval of the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435], are set for hearings on September 24, 2025.

**TRUSTEE'S INVESTIGATION**

32.     The Trustee's investigation in these Chapter 11 Cases has been sweeping and broad and is ongoing. The Trustee's investigation also includes evaluating potential Chapter 5 causes of action such as preferences and fraudulent transfers. *See* Carmel Decl. ¶ 15.

33.      On June 4, 2025, the Trustee issued Notice of Circumstances letters to the Debtors' carriers Arch Insurance[11] and Chubb[12] regarding facts, circumstances facts, and situations that could reasonably give rise to a claim, loss, matter, or wrongful act under their D&O and E&O policies. *See* ECF Nos. 431-2 and 431-3 (collectively, the "Carrier Notice Letters").

34.     On July 4, 2025, the Trustee through GTG initiated an adversary proceeding against two of the Debtors' principals, Brad Palubicki and Eva Gabriela Farmer De La Torre, Bankr. D. Nev. Adv. Proc. No. 25-01155-nmc (the "Palubicki Adversary"). *See, e.g.*, ECF No. 389.

35.     The Palubicki Adversary is in its early stages, and the Trustee through GTG has amended the complaint to incorporate additional causes of action as certain facts and circumstances become known to the Trustee in the course of his ongoing investigation. *See* Carmel Decl. ¶ 16.

. . .

. . .

---

[11] Arch Insurance, a/k/a Arch Insurance Company, a/k/a Arch Specialty Insurance Company, Arch Insurance Company, and/or Arch Specialty Insurance Company ("Arch Insurance").

[12] Federal Insurance Company a/k/a Chubb a/k/a Chubb Forefront a/k/a Chubb the Forefront Portfolio for Healthcare Organizations a/k/a the Company a/k/a The ForeFront Portfolio a/k/a Forefront ("Chubb").

36.     The Trustee's investigation into other principals of the Debtors is ongoing, and he intends to pursue additional claims against one or more insiders and/or principals of the Debtors. *See* Carmel Decl. ¶ 17.

37.     Additionally, on or about July 21, 2025, the Trustee learned that one of the Debtors' principals, Brad Palubicki ("Palubicki"), was attempting to sell Estate assets, for Palubicki's personal benefit and without the Trustee's knowledge, consent, or authority.  *See* Carmel Decl. ¶ 18.

38.     Upon further investigations, the Trustee learned of additional potential other wrongdoings.  *See* Carmel Decl. ¶ 19.

39.     Subsequently, on or about July 29, 2025, the Trustee terminated Palubicki, Eva Gabriela Farmer De La Torre, Chief Financial Officer Holly Triplett, and five others, all of whom were terminated for cause.  *See* Carmel Decl. ¶ 20.

40.     As set forth elsewhere in the record before this Court, the Trustee has significant concerns regarding the wrongdoing and detriment caused, post-petition, by bad acts of Palubicki, Triplett, and certain other terminated employees.  *See, e.g.*, ECF Nos. 455-457.

41.     As such, the Trustee through GTG has taken the following additional steps to further protect the Estate:

- Filed a *Motion for Order to Show Cause for Willful Violation of the Order Appointing the Trustee, Willful Violation of the Automatic Stay, and Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105, 362, and 542* [ECF No. 455];

- Obtained an *Order to Show Cause Why Brad Palubicki, Eva Gabriela Farmer De La Torre, Holly Triplett, and Ken Braielmeir, and Any Other Persons Aiding nd Abetting or Conspiring With Them Should Not Be Sanctioned and Held in Contempt* [ECF No. 500], setting an evidentiary hearing October 22, 2025;

- Filed an *Application to Employ J.S. Held, LLC as Financial Advisor and Accountant to the Chapter 11 Estates* [ECF No. 496]; and

- Is preparing the *Ex Parte Application for Order Approving the Employment of RubinBrown LLP as Accountant*.

13

# V.
## TASKS PERFORMED DURING THE COMPENSATION PERIOD

During the Compensation Period, GTG performed a wide range of actual and necessary services as set forth in **Exhibits 3 and 4** attached hereto.  The majority of the services performed by GTG were rendered by attorneys in the Business Restructuring and Bankruptcy Department. GTG's attorneys have had a pre-eminent practice in this area and enjoy a strong reputation in the State of Nevada and Nationally for their expertise in complex financial reorganizations and restructurings of troubled entities.  *See* Garman Decl. ¶ 11.

GTG submits that the services it has provided to the Trustee during the Compensation Period were reasonable and necessary under the circumstances of the Chapter 11 Cases and that the compensation of such fees to GTG is appropriate and should be allowed.  *See* Garman Decl. ¶ 12.

**A.**     **Task Code 01: GTG Retention & Compensation.**

During the Compensation Period, GTG spent 13.90 hours ($3,591.00 at the reduced rates approved in the Employment Order) preparing GTG's employment application, *Application for Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 199], and supporting declarations [ECF Nos. 200, 201]; addressing the U.S. Trustee's informal response; and negotiating the form of proposed order with counsel including the U.S. Trustee and Mr. Sanchez; and preparing for and attending the employment application hearing.  Because of reasons related to the Court's hearing calendar availability, GTG spent time preparing shortened time moving papers to have the hearing heard before the end of May 2025 [ECF Nos. 202, 203, 210].  GTG's employment application was ultimately granted by the Court [ECF No. 293].  Time was also spent preparing this Fee Application, the declarations supporting it, and the proposed order granting it.

**B.**     **Task Code 02: Other Professionals Retention & Compensation.**

During the Compensation Period, GTG spent 58.40 hours ($12,082.50 at the reduced rates approved in the Employment Order) preparing several applications to employ special counsel and other estate professionals, as follows:

14

1

### 1. **Special Counsel.**

2
3
4
5
6
7

The Debtors were embroiled in a number of non-bankruptcy lawsuits at the time of the Trustee's appointment and had not sought court approval to employ estate professionals to assist them. Additionally, the Trustee learned that some professionals were doing work for the estates, post-petition, in non-bankruptcy litigation, without being employed by the Court. *See* Carmel Decl. ¶ 21. Therefore, GTG prepared and prosecuted applications to employ special counsel for the estates, as follows:

8
9
10
11
12
13
14
15
16
17
18
19
20
21

GTG spent time preparing the *Application to Employ Paul, Weiss, Rifkind, Wharton & Garrison LLP as Special Litigation Counsel to the Chapter 11 Estates* (the "PW Application") and the [ECF No. 269] and the *Application to Employ Rodey, Dickason, Sloan, Akin, & Robb, P.A. as Special Litigation Counsel to the Chapter 11 Estates* (the "Rodey Application") [ECF No. 272], seeking to represent the Estates in post-verdict motion practice and the anticipated appeals in the Sanchez Lawsuit,[13] which motions and appellate practice would ultimately affect the liquidation of Mr. Sanchez's claim in these Chapter 11 Cases. In light of then-imminent deadlines and hearing in the Sanchez Lawsuit and Mr. Sanchez's desire for relief from the automatic stay to proceed with post-verdict motion practice and an appeal, GTG also spent time preparing moving papers requesting the applications be heard on shortened time [ECF Nos. 278-280]. GTG also spent time addressing the U.S. Trustee's informal response to the PW Application and the Rodey Application [ECF Nos. 328, 330], preparing declarations [ECF Nos. 270, 271, 273, 274, 322, 329, 331], and preparing the proposed orders, as well as preparing for and attending the hearings on these applications, which were ultimately approved by the Court. See ECF Nos. 335 and 336 (orders).

22
23
24
25

GTG also spent time preparing the *Application to Employ McAfee & Taft as Special Counsel to the Chapter 11 Estate* [ECF No. 349], to employ special counsel to advise and represent the Estates relating to collection from Basel Said Hassoun ("Dr. Hassoun") on a six-figure judgment against Dr. Hassoun.[14] Time was spent negotiating McAfee & Taft's employment,

26
27
28

---

[13] Pending in the Second Judicial District Court, County of Bernalillo, New Mexico, as Case No. D-202-CV-2020-06336 ("Sanchez Lawsuit").

[14] The judgment against Dr. Hassoun arises from an arbitration award entered by Arbitrator Ralph C. Anzivino against

15

preparing an engagement agreement (as McAfee & Taft is employed under 11 U.S.C. § 327(e) and holds a minor prepetition claim), and preparing the supporting declarations [ECF Nos. 350, 351] and proposed order.  Time was also spent responding to the U.S. Trustee's informal inquiry regarding the application and appearing at the hearing, where McAfee & Taft's employment was ultimately approved by the Court [ECF No. 345].

GTG also spent time preparing the *Application to Employ Burr & Forman as Special Counsel to the Chapter 11 Estate* [ECF No. 417], seeking the employment of estate special counsel to represent NuMale Corporation in the U.S. District Court for the Eastern District of North Carolina Case No. 7:24-cv-00927-D-RN, *The N2 Company v. NuMale Medical Center, LLC and NuMale Corporation* (the EDNC Litigation), in which Debtor NuMale Corporation is a named defendant and filed a counterclaim.  GTG incurred time negotiating Burr & Forman's employment, preparing the supporting declarations [ECF Nos. 418, 419, 420], and preparing the proposed form of order.  Burr & Forman's employment application is unopposed and is set for a hearing on September 2, 2025.

As to all special counsel employed by the Estates, GTG spent time ensuring that counsel were adequately advised of developments in the Debtors' creditor matrix, to ensure counsel were equipped to conduct any additional Rule 2014 disclosures reviews as new or additional parties became known in the course of the Trustee's investigation.

**2.    <u>Other Professionals' Applications.</u>**

The Trustee's investigation ultimately revealed there is a need for forensic accounting analyses of the Debtors and their accounting practices.  In light of the complexity of the Debtors' business; the terminations of President Brad Palubicki, Chief Financial Officer Holly Triplett, and other principals and insiders of the Debtors for cause; and the need to ensure the Debtors' operations were maintained and assets are preserved in the lead-up to Plan[15] confirmation and an

---

Dr. Hassoun, confirmed on or about August 25, 2022, by the District Court of Oklahoma County, State of Oklahoma, County Case No. CJ-2020-206, as confirmed by the Court of Civil Appeals of the State of Oklahoma in Case No. 120,720 on or about June 21, 2024 (for which certiorari was denied by the Supreme Court of the State of Oklahoma on or about January 27, 2025) (altogether, "<u>Hassoun Judgment</u>").

[15] The Plan [ECF No. 434].

anticipated Section 363 sale, the Trustee determined that the services of an independent financial advisor providing accounting and financial advisory services was needed.  Therefore, GTG spent time preparing the *Application to Employ J.S. Held, LLC as Financial Advisor and Accountant to the Chapter 11 Estates* [ECF No. 496], supporting declarations [ECF Nos. 497, 498], and proposed order.  J.S. Held, LLC's employment application is set for a hearing September 16, 2025.  GTG also spent time assisting the Trustee with negotiating the employment of RubinBrown LLP as tax preparer, which efforts ultimately resulted in GTG preparing the *Ex Parte Application for Order Approving the Employment of RubinBrown LLP as Accountant*, supporting declarations, and proposed order, regarding the Estates' employment of tax preparer RubinBrown LLP to ensure the Estates have appropriate assistance preparing the Debtors' 2024 federal tax returns.

GTG also spent time handling inquiries from special counsel and other professionals regarding employment and compensation processes, and Bankruptcy Court requirements.   In addition, GTG spent time preparing the *Motion to Authorize Payment of Commission to Michael Carmel, Chapter 11 Trustee* filed concurrently herewith, its supporting declaration, and proposed order.  This motion will be heard by the Court on September 24, 2025.

**C.**     **Task Code 03: General Bankruptcy Matters/Case Administration.**

During the Compensation Period, GTG spent 101.70 hours ($26,808.50 at the reduced rates approved in the Employment Order) attending to matters of general case administration, addressing estate considerations, prosecuting motions to aid the Trustee's administration of these estates, ensuring ongoing compliance with the requirements of the Court's *Interim Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 130], attending to reporting requirements, analyzing issues relating to the Debtors' business and operations, advising the Trustee, and participating in case strategy meetings internally and with the Trustee and various stakeholders including the Patient Care Ombudsman Dr. Rubin ("PCO").  As the Trustee is also making efforts to ensure the Debtors' business and operations are maintained and assets are preserved in the lead-up to Plan confirmation and an anticipated Section 363 sale, GTG spent time assisting the Trustee as necessary to further these efforts.

GTG spent time preparing a *Motion for Entry of Order (A) Setting a Bar Date for Filing*

*Proofs of Claim and (B) Approving Notice Thereof* [ECF No. 237], which sought to set a bar date for filing proofs of claim in the Debtors' Chapter 11 Cases. Because of the Court's hearing schedule and the timing of the Trustee's appointment, GTG also spent time preparing moving papers requesting the claims bar date motion be heard on shortened time [ECF Nos. 238-240] (and no-charged the time spent preparing its errata [ECF No. 249]). GTG also spent time preparing the order granting this motion (which was ultimately granted by the Court [ECF No. 289]) and the related *Notice of Claims Bar Date* [ECF No. 298], and attending the hearing where this motion was granted. Ultimately, GTG also spent time noticing the *Notice of Claims Bar Date* to all parties-in-interest and noticing new or additional parties-in-interest as they were later disclosed by the Debtors or discovered in the course of the Trustee's investigation.

**D.    Task Codes 04:  Petition/Schedules/Statements/341.**

During the Compensation Period, GTG spent 36.70 hours ($8,189.50 at the reduced rates approved in the Employment Order) assisting and advising the Trustee regarding his review of the Debtors' Schedules and Statements, his review of the Debtors' IDI packet, and his questioning at the § 341 meeting of creditors. Although the Trustee was appointed more than two months into these Chapter 11 Cases, at the time of his appointment the Debtors' § 341 meeting of creditors was ongoing. GTG spent time reviewing the Debtors' Schedules and Statements and multiple amendments thereto; reviewing numerous emails and other information provided by DOPs' counsel, Debtors' principal(s), and other parties in interest; reviewing relevant filings in the Debtors' bankruptcy cases; preparing for and attending the Debtors § 341 meeting of creditors; demanding financials and other records from the Debtors' representatives; following up on matters discussed during Mr. Palubicki's testimony at the § 341 meeting; and following up with then-counsel to the Debtors-out-of-possession ("DOPs") regarding the corporate authority documentation authorizing the Debtors' bankruptcy cases to be filed. GTG also spent time preparing the portions of the *Michael Carmel, Chapter 11 Trustee's Initial Status Report and Omnibus Statement Concerning All Motions* [ECF No. 180] ("Status Report") detailing its work in these regards and the Trustee's efforts then-to-date.

. . .

18

**E.      Task Codes 05:  Cash Collateral/364 Financing.**

During the Compensation Period, GTG spent 7.90 hours ($1,995.50 at the reduced rates approved in the Employment Order) advising the Trustee on financing considerations involving these Estates, including preparing the *Motion for Order Seeking Approval of Post-Petition Financing of Insurance Renewal Premium* [ECF No. 310], which sought Court approval to finance the renewal premium associated with the Debtors' renewal of an E & O insurance policy.  Because the need for premium financing was disclosed by the then-Debtors' principals so close to the policy's renewal date, GTG spent time preparing moving papers requesting this motion be heard on shortened time.  GTG also spent time preparing declarations in support of this motion [ECF Nos. 311, 312], as well as the proposed order, and appeared at the hearing where this Motion was ultimately granted [ECF No. 325].

**F.      Task Codes 07:  362 Stay Relief Matters.**

During the Compensation Period, GTG spent 44.3 hours ($11,467.75 at the reduced rates approved in the Employment Order) handling stay relief motions, negotiating stay relief stipulations, and prosecuting violations of the automatic stay.  At the time of the Trustee's appointment, the Las Vegas premises landlord, Prospect Rainbow, LLC ("Prospect Rainbow") had filed its *Motion for Relief from Automatic Stay or for Adequate Protection and to Compel Assumption or Rejection of Lease* [ECF No. 67] seeking immediate stay relief to ultimately evict the Debtors from that premises.  GTG also spent time negotiating with Prospect Rainbow's counsel, preparing an objection to the motion (filed as part of the Status Report), attending the hearings on the motion, and negotiating the *Order Conditionally Granting Prospect Rainbow, LLC's Motion for Relief From Automatic Stay or For Adequate Protection and to Compel Assumption or Rejection of Lease* [ECF No. 247].

GTG also spent time evaluating the *Motion for Order Terminating Automatic Stay Under 11 U.S.C. § 362(d)(1) as to New Mexico State Court Post-Trial Proceedings, to Judgment Only, Not Enforcement, as to NuMale Corporation and Comfort Order for Stay Termination as to Non-Debtors and Waiver of the 14-day Stay Under FRBP 4001(A)(3)* [ECF No. 98], filed on behalf of Mr. Sanchez regarding the Sanchez Lawsuit; advising the Trustee; meeting via zoom with counsel

to Certain Underwriters at Lloyd's London Syndicates 623/2623 ("Beazley"), as well as and counsel to Mr. Sanchez; negotiating resolution of this motion; attending multiple hearings on the Sanchez Motion; and ultimately negotiating a *Stipulation for Entry of Order Terminating Automatic Stay Under 11 U.S.C. § 362 as to New Mexico State Court Posttrial Proceedings to Judgment Only as to NuMale Corporation and NuMale New Mexico SC and Comfort Order for Stay Termination as to Non-debtors* [ECF No. 264], which was granted by the Court [ECF No. 275].

Regarding automatic stay violations, GTG spent time preparing correspondences to multiple creditors seeking to collect debts postpetition from one or more of the Estates, and following up with those creditors to obtain remedial action where possible.  GTG also spent time assisting the Trustee with investigating allegations that SplitIt, Inc. had violated the automatic stay (ultimately SplitIt provided the Trustee with sufficient information showing it had not), and allegations that Ace Recovery Group and Top Tier Capital had violated the stay.  GTG as well spent time preparing the *Motion to Enforce the Automatic Stay and for Sanctions* [ECF No. 339] against Ace Recovery Group and Top Tier Capital for postpetition enforcement of debts allegedly owed to Top Tier Capital by one or more Debtors.  GTG also spent time preparing declarations in support of the motion [ECF Nos. 340, 341, 342].  Time was also spent dialoguing with Debtor representatives to obtain evidence of damages caused.  After the motion was filed, GTG spent time negotiating with separate counsels for each Ace Recovery Group and Top Tier Capital, preparing continuance stipulations to afford the parties breathing room to partake in negotiations and for both Ace Recovery Group and Top Tier Capital to provide proof of remedial action and/or sworn testimony regarding the matters subject of the motion.  Ultimately the Trustee reached separate stipulations with both Ace Recovery Group and Top Tier Capital resolving the motion which GTG prepared and circulated.  *See* ECF Nos. 413 (Top Tier) and 415 (Ace Recovery Group).  These were approved by the Court.  *See* ECF Nos. 414 and 441.

Additionally, GTG spent time obtaining corrective, remedial action from a merchant cash advance creditor Kalamata Capital Group, LLC, who had obtained a judgment postpetition in a collection action against the Debtors in the Supreme Court of the State of New York.  Eventually

Kalamata Capital Group, LLC vacated the judgment in its entirety without the need for the Trustee to resort to Bankruptcy Court intervention.

**G.**     **Task Codes 09: 365 Executory Contracts & Leases.**

During the Compensation Period, GTG spent 28.10 hours ($8,133.25 at the reduced rates approved in the Employment Order) addressing lease and executory contracts issues arising under the Debtors' multiple clinic site leases and other executory contracts and preparing motions to extend the deadline for the Trustee to assume or reject leases and executory contracts.

GTG spent time preparing the *Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 241], which sought to extend the deadline for the Trustee to assume or reject the unexpired leases of nonresidential real property of any of the Debtors under Section 365(d)(4)(B)(i) of the Bankruptcy Code, for ninety (90) days, from May 22, 2025, to August 20, 2025.  Because this original deadline was so close to the Section 341 meeting conducted on May 2, 2025, GTG spent time preparing shortened time documents [ECF Nos. 243-245] to have this motion heard prior to the May 22, 2025, deadline.  GTG also spent time dialoguing with known landlord counsel to advise of the Trustee's intended request for an extension, and spent time preparing the declaration in support of this motion [ECF No. 241], no-charged the time spent preparing an errata to this motion [ECF No.246], and in preparing for and attending the hearing at which this motion was granted by the Court [ECF No. 290].

After the Plan was filed, GTG also spent time preparing a *Second Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 462], seeking an extension of this deadline to October 24, 2025, the thirtieth day after Plan confirmation. GTG spent time discussing the anticipated extension with counsel to landlords who are counterparties to leases involving the Debtors, and preparing declarations in support of this motion [ECF Nos. 463, 464], as well as the proposed order.  Because the Plan was filed on August 1, 2025, GTG spent time preparing shortened time moving papers requesting a hearing on this motion be conducted before the expiration of the original extension deadline of August 20, 205 [ECF Nos. 465, 466, 474].  GTG also spent time preparing for and attending the hearing on this motion, which was granted by the Court [ECF No. 501], and in maintaining communications with counsel to

21

affected landlords.

**H.    Task Code 10: Claims Administration & Litigation.**

During the Compensation Period, GTG spent 275.60 hours ($94,337.75 at the reduced rates approved in the Employment Order) investigating the claims filed against NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the Debtors), including conducting informal discovery.  With respect to proof of claim No. 41 filed against Debtor NuMale Corporation in the amount of $15,362.93 for "Attorney Services", by former counsel The Law Offices of Timothy Elson, PLLC, GTG negotiated with Mr. Elson and prepared a stipulation reclassifying this claim as a general unsecured claim [ECF No. 438], which was approved by the Court [ECF No. 442].

GTG also spent time preparing filings against, and negotiating with, various merchant cash advance (MCA) creditors, for reduction and/or reclassification of their proofs of claim.  Among these, GTG spent time preparing the *Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Settlement with EBF Holdings, LLC d/b/a Everest Business Funding* [ECF No. 504] and supporting declaration [ECF No. 505] and proposed order; this motion is set for a hearing on September 16, 2025.  GTG also spent time preparing the *Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Settlement with Kalamata Capital Group, LLC* [ECF No. 493] and supporting declaration [ECF No. 494] and proposed order; this motion, too, is set for a hearing on September 16, 2025.

GTG also spent a significant amount of time negotiating with the largest general unsecured creditor of these Estates, Mr. Sanchez, and other stakeholders, including Beazley (the largest asset of these estates is their bad faith claims against Beazley), to arrive at what ultimately became the Global Settlement Agreement, which upon approval brings $108,500,000.00 into these Estates, provides for the compromise of the Sanchez Claim at a reduced amount of $410,000,000, and paves the path toward confirming the Trustee's Plan.  The heavily negotiated Global Settlement Agreement is the subject of the pending *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] (the 9019 Motion).  Since the time of the

Trustee's appointment in these Chapter 11 Cases, GTG assisted and advised the Trustee with, and represented him in, negotiations to compromise Mr. Sanchez's claim at a fixed amount[16] and bring monies into these Estates.  GTG prepared and negotiated a term sheet, participated in numerous zoom and telephone conferences with Mr. Sanchez's counsel, Beazley counsel, and the Debtors' principals and their various counsel over a period of approximately three months.  GTG also negotiated and revised the Global Settlement Agreement, prepared the 9019 Motion, negotiated and revised the proposed form of order granting the 9019 Motion, negotiated and  Mr. Carmel's declaration in support of the 9019 Motion [ECF No. 431], which details the meaningful results achieved by the Global Settlement Agreement and provides strong evidentiary support for approval of the 9019 Motion, which is currently set for a hearing September 2, 2025.

GTG also represented the Trustee in negotiations with Newtek Bank, National Association regarding the largest secured creditor of these Chapter 11 Cases, regarding the $5,033,301.46 secured claim filed as proof of claim No. 24 in the lead bankruptcy case (the "Newtek Claim"). The settlement reached regarding the Newtek Claim is the subject of a separate 9019 motion, the *Motion Pursuant to Fed. R. Bankr. P. 9019 to Authorize and Approve Settlement Between NuMale Corporation and Newtek Bank NA* filed concurrently herewith, which motion and supporting declaration GTG prepared.

I.    **Task Code 11: Business Operations and Governance.**

During the Compensation Period, GTG spent 83.00 hours ($21,778.75 at the reduced rates approved in the Employment Order) addressing business operations, evaluating the Debtors' corporate governance, updating multiple Secretary of State filings to ensure the Trustee (and GTG as resident agent) are accurately reflected in these filings, overseeing return of personal property to terminated employees, and assisting and advising the Trustee with resolving disruptions to business operations that arose after the Trustee's appointment, including responding to the intentional harmful acts by terminated employees that disrupted and damaged the Debtors'

---

[16] On or about March 26, 2025, Sanchez filed his proof of claim with this Court, asserting damages in excess of $579,442,390.01.  *See* NuMale Corporation Claim No. 7-1; *see also* NuMale New Mexico Claim No. 3-1 (collectively, the "Sanchez Claim").

business.  Additionally, NuMale Corporation is the primary owner of several affiliate entities that are not Debtors; by virtue of this, time was spent evaluating these principal assets, including assisting and advising the Trustee with NuMale Corporation's management roles and duties regarding these affiliate entities.  GTG also spent time assisting and advising the Trustee in the transition of operations when Mr. Palubicki and others were terminated.

**J.      Task Codes 12 & 13: Confirmation of Plan.**

During the Compensation Period, GTG spent 193.30 hours ($58,470.25 at the reduced rates approved in the Employment Order) on Plan and confirmation matters.  Time was spent negotiating Plan terms and Plan treatment for the Debtors' many creditors, preparing the Trustee's Plan,[17] and preparing the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] ("Disclosure Statement") and exhibits thereto, including the liquidation analyses of each of the seven Debtors.  Time was also spent preparing the *Ex Parte Motion for Order (A) Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization; and (B)(I) Setting Deadlines for Balloting and Opposing Confirmation of Joint Plan of Reorganization and Final Approval of Disclosure Statement; (II) Approving Form of Ballots; (III) Approving Solicitation and Voting Procedures; and (IV) Setting the Confirmation Hearing on the Plan* [ECF No. 436] and accompanying declaration of Trustee Carmel under Local Rule 3017 [ECF No. 437], as well as the conditional order approving the Disclosure Statement [ECF No. 447], confirmation hearing notice [ECF No. 449], and solicitation package including ballots.  The Disclosure Statement having been conditionally approved, GTG turned its attention to solicitation and confirmation.  GTG finalized the confirmation hearing notice and ballots and effectuated the Plan solicitation to voting classes.  *See, e.g.*, ECF No. 451.

To date, a limited objection to confirmation has been lodged by Prospect Rainbow, LLC, seeking a correction of the cure amount forth in the schedule appended to the Plan.  GTG has spent time negotiating a confirmation stipulation with Prospect Rainbow and is optimistic it will resolve this limited plan objection and spent time preparing a stipulation and order to this effect.

---

[17] The *Joint Plan of Reorganization* [ECF No. 434] (the Plan).

The Trustee has also proposed a Plan of reorganization that will not only make a meaningful distribution to creditors including Mr. Sanchez, and provides for a Section 363 sale of the Debtors' clinics which are the bases of the Debtors' business operations, but also establishes a Liquidation Trust to pursue and liquidate other claims and assets. As such, time was also spent assisting and advising the Trustee regarding the asset sale process, developing an asset sale process as part of the Plan, and negotiating with the stalking horse bidder, as well as negotiating and drafting the Liquidation Trust Agreement and preparing the Plan supplement, which includes the Liquidation Trust Agreement.

Finally, time was spent tabulating ballots, fielding Plan-related creditor inquiries, and working with the Trustee to prepare for Plan confirmation and the hearing on final approval of the Disclosure Statement, which are forthcoming on September 24, 2025. Because confirmation has not yet taken place, much more work by GTG is expected to be carried out in this category.

**K.     Task Code 15: 2004 Exams and Discovery.**

During the Compensation Period, GTG spent 28.20 hours ($6,595.25 at the reduced rates approved in the Employment Order) attending to discovery disputes, preparing for Bankruptcy Rule 2004 examinations, and advising the Trustee regarding discovery related to his investigation of the Debtors' assets and liabilities in these Chapter 11 Cases.

Shortly after the Trustee was appointed he learned that Beazley had issued discovery prior to the Trustee's appointment. GTG issued a formal and preliminary objection to, and also met and conferred regarding, this discovery (which Beazley had continued to seek to enforce after the Trustee's appointment). GTG spent time issuing subpoenas to entities who appeared in a UCC search of the Debtors, to aide in the Trustee's investigation of creditors, assets, and potential and asserted secured claims. Where subpoena witnesses failed to comply, GTG also spent time meeting and conferring on those disputes.

GTG also spent time preparing Bankruptcy Rule 2004 examination discovery of the Debtors' former President (Palubicki), and the Debtors' former financial institutions Wells Fargo and FortifiBank, and the Debtors' former accountant KMA (n/k/a Sorren, Inc.). GTG has also spent time attending to service issues when difficulties came up serving a witness (Mr. Palubicki),

and meeting and conferring regarding subpoena compliance with other witnesses.  GTG also spent

time preparing examination motion papers and subpoenas for other individuals and insiders of the

Debtor, in furtherance of the Trustee's investigation.

**L.      Task Code 19: Avoidance Actions and Adversary Proceedings.**

During the Compensation Period, GTG spent 182.20 hours ($46,447.25 at the reduced rates

approved in the Employment Order) researching, reviewing insurance policies, evaluating

preferences and fraudulent transfers, and preparing adversary proceeding complaints against

Debtor principals including Mr. Palubicki, against insurers (the draft complaint against Beazley

ultimately resolved through the Global Settlement Agreement before it was filed), and against

MCAs (resulting in negotiated settlements with multiple MCAs, as noted herein).  Specifically,

GTG drafted the adversary complaint against two of the Debtors' principals, Mr. Palubicki and

Eva Gabriela Farmer De La Torre, commencing Bankr. D. Nev. Adv. Proc. No. 25-01155-nmc

(the Palubicki Adversary) and amendments thereafter [*see, e.g.*, ECF Nos. 389, 390, 454], which

were prepared to incorporate additional causes of action as certain facts and circumstances became

known to the Trustee in the course of his ongoing investigation.  Currently the Palubicki Adversary

advances claims for declaratory relief, for the avoidance and recovery of preferential and

fraudulent transfers, for breach of fiduciary duty, for negligence, for unjust enrichment, for an

accounting, for the disallowance of and (separately) the equitable subordination of claims, for

aiding and abetting, and for conspiracy.

**M.      Task Code 22: Turnover.**

During the Compensation Period, GTG spent 30.50 hours ($7,482.50 at the reduced rates

approved in the Employment Order) assisting the Trustee with pursuing turnover of Estate

property, including preparing correspondence to a variety of persons and entities seeking the

turnover of estate property.  GTG prepared turnover demands seeking the turnover of estate funds

from Elavon, Inc. and from Zurich North America; prepared demands for, met and conferred

regarding, and ultimately obtained the turnover of the Debtors' client files with former counsel

and accountant including Morningstar Law and The Law Offices of Timothy Elson, PLLC.  GTG

also prepared a turnover demand to the Debtors' IT provider Midwest IT Pros and prepared

26

demands for the turnover of Debtor property, keys, documents, records, hardware, accounts, and technology stack including passwords, logins and account manager contacts from Debtors' terminated principals and employees.  GTG also spent time following up on these turnover demands and, where possible, obtained compliance without resorting to Court intervention.  Where necessary, however, GTG prepared motions seeking a Court order for the turnover.

GTG prepared the *Motion for an Order Compelling Turnover of Property of the Estates and for Sanctions* [ECF No. 467], against Zurich North America, seeking the turnover of insurance claim proceeds in the amount of approximately $168,386.01 related to a claim made prior to the Trustee's appointment, on a policy with Zurich North America, on account of an alleged theft that occurred at the Debtors' Colorado premises post-petition.  The hearing on this motion is set for September 9, 2025, and is unopposed.

GTG also prepared the *Motion for Order to Show Cause for Willful Violation of the Order Appointing the Trustee, Willful Violation of the Automatic Stay, and Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105, 362, and 542* [ECF No. 455] ("OSC Motion"), the declarations in support [ECF Nos. 456, 457], and the proposed order that was ultimately entered [ECF No. 500] (the "Show Cause Order").  In preparing the Motion, GTG also spent time evaluating the Debtors' tech stack and advising the Trustee.  And because of the imminent harm being caused to the Estates by the individuals subject of the OSC Motion, GTG also prepared shortened time documents so that the hearing on the OSC Motion could be heard immediately [ECF Nos. 401, 461, 473].  GTG also spent time preparing for and attending the hearing on the OSC Motion.  The evidentiary hearing set by the Show Cause Order will take place October 22, 2025.

N.      **Task Code 23: Bankruptcy Litigation.**

During the Compensation Period, GTG spent 178.40 hours ($47,360.00 at the reduced rates approved in the Employment Order) addressing a multitude of bankruptcy litigation and contested matters.  At the time of the Trustee's appointment a number of motions were pending, not filed on behalf of the Trustee, but required GTG's immediate evaluation and attention: the then-DOPs' counsel Mr. Riggi's employment application was pending [*see, e.g.*, ECF No. 81]; the Debtors'

bank accounts was also pending (*Motion[s] for an Order Authorizing Continued Maintenance and Redesignation of Existing Bank accounts and a Waiver of Certain Guidelines Relating to Bank Accounts* [*e.g.*, ECF No. 42]); the Debtors' motion for joint administration [*e.g.*, ECF No. 14]; the Debtors' *Motion to Extend Time to File Schedules & Statements* [*e.g.*, ECF No. 13]); and stay relief motions filed by Mr. Sanchez and by Prospect Rainbow. GTG evaluated these motions, prepared a Status Report advising the Court of the Trustee's positions, and prepared for and attended the hearings on these matters. Per Court instruction GTG also prepared proposed orders.

In addition to preparing the multitude of motions described elsewhere herein, GTG negotiated and prepared a number of stipulations with various parties-in-interest regarding briefing changes, continuances, and other matters and tended to Local Rule compliance with bankruptcy litigation matters, including dialoging with opposing counsel regarding shortened time requests and seeing to Local Rule compliance with circulating proposed orders. GTG also advised the Trustee regarding litigation strategy and assisted the Trustee with evaluating litigation decisions.

GTG also spent time preparing what is perhaps the seminal contested matter to date in these Chapter 11 Cases to date, the *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] (the 9019 Motion) and the extensive supporting declaration of Trustee Carmel [ECF No. 431]. GTG also negotiated the terms of and provided material input to the proposed order granting the 9019 Motion, which involved extensive dialogue with other stakeholders, primary of which were Mr. Sanchez and Beazley. Because certain aspects of the settlement and certain terms thereof developed in real time, GTG spent time negotiating with stakeholders, and incorporating these into the 9019 Motion and its supporting declaration. GTG also spent time evaluating and preparing a formal reply to Mr. Palubicki's opposition to the 9019 Motion, and also spent time addressing the U.S. Trustee's informal response to the motion (and a briefing stipulation requested by the U.S. Trustee). The Motion is set for a hearing September 2, 2025.

O.    **Task Code 24: Non-Bankruptcy Litigation.**

During the Compensation Period, GTG spent 70.90 hours ($19,801.25 at the reduced rates

approved in the Employment Order) addressing a multitude of nonbankruptcy litigation involving one or more debtors. First and foremost, GTG assisted and advised the Trustee with monitoring the Sanchez Lawsuit pending in New Mexico State Court, with navigating the implications of automatic stay relief Sanchez sought to pursue post-verdict matters in that case, with evaluating this litigation (and the related, attendant bad faith claims the Debtors have against Beazley as a consequence), with advising regarding strategy, and with evaluating the complicated posture of the Sanchez Lawsuit and the Chapter 11 Cases. GTG also appeared at one hearing in the Sanchez Lawsuit, representing the Trustee and advising the New Mexico State Court regarding relevant developments.

GTG also assisted and advised the Trustee in connection with the Coverage Lawsuit,[18] which had been initiated by Beazley to determine, *inter alia*, Beazley's obligations with respect to the NuMale-Beazley Policies and the claims for coverage in connection with the Sanchez Lawsuit.

GTG also appeared on behalf of the Trustee in the Eighth Judicial District Court of Clark County, Nevada, Case No. A-25-910072-C, *NuMale Corporation v. Howard & Howard Attorneys PLLC* ("Malpractice Lawsuit"), and negotiated and prepared a series of stipulations with defense counsel to continue briefing and the Court's hearing on defendants' motion to dismiss this action. GTG also advised the Trustee on preserving, and evaluating, this litigation asset.

Given the paucity of disclosures in the Debtors' Schedules and Statements regarding ongoing litigation, GTG also spent time investigating and identifying litigation where one or more Debtors are a party. GTG then researched these cases, evaluated status, and advised the Trustee respecting appropriate next steps. Where the Trustee determined local counsel was necessary GTG assisted the Trustee with negotiating employment and preparing the requisite employment application papers (as described elsewhere herein), and assisted with onboarding. More specifically, until the Estates secured local counsel GTG monitored the EDNC Litigation and attempted multiple negotiations with opposing counsel in that action. In Oklahoma, where the

---

[18] Initiated by Beazley and pending in the Ninth Judicial District Court of Curry County, New Mexico, as Case No. D-905-CV-202500157 ("Coverage Lawsuit").

Estate holds a significant judgment against Dr. Hassoun that needs to be liquidated, GTG evaluated this asset and assisted and advised the Trustee regarding the same.

**P.      Task Code 25: Trustee's Investigation.**

During the Compensation Period, GTG spent 127.00 hours ($32,316.25 at the reduced rates approved in the Employment Order) assisting the Trustee with various facets of his investigation, including providing analyses, researching, and advising regarding estate assets.  GTG spent time investigating alleged and asserted security interests; attending the Trustee's initial interview of the Debtors' principals and DOPs' counsel on April 14, 2025; reviewing numerous emails and other information provided by DOPs' counsel, Debtors' principal(s), and other parties in interest, along with relevant filings in the Debtors' Chapter 11 Cases; evaluating potential Chapter 5 causes of action such as preferences and fraudulent transfers and providing recommendations to the Trustee; and assisting the Trustee with his investigation into and evaluation of the Debtors' business, assets, and debt.  GTG also assisted the Trustee with removing fifty-nine (59) electronic devices from the Debtors' premises and is preparing to forensically imaging these devices for information relevant to the Trustee's ongoing investigation.  GTG is working with the vendor to determine the most cost effective approach to forensically imaging these devices.

GTG spent time reviewing the Debtors' policies with the Debtors' carriers Arch Insurance and Chubb and ultimately prepared Notice of Circumstances letters to both Arch and Chubb regarding facts, circumstances facts, and situations that could reasonably give rise to a claim, loss, matter, or wrongful act under these D&O and E&O policies.  *See, e.g.*, ECF Nos. 431-2 and 431-3 (collectively, the Carrier Notice Letters).  Subsequent to the Carrier Notice Letters, GTG spent time preparing correspondence on the Trustee's behalf to both carriers.

As set forth elsewhere in the record before this Court, the Trustee has significant concerns regarding the wrongdoing and detriment caused, post-petition, by bad acts of Palubicki, Triplett, and certain other terminated employees.  *See, e.g.*, ECF Nos. 455-457.  GTG spent time assisting the Trustee with his investigation into the Debtors' principals.  On or about July 21, 2025, the Trustee learned that one of the Debtors' principals, Palubicki, was attempting to sell Estate assets for Palubicki's personal benefit and without the Trustee's knowledge, consent, or authority.  Upon

further investigations, the Trustee learned of additional potential other wrongdoings. GTG assisted the Trustee with preparing termination letters for Palubicki, Eva Gabriela Farmer De La Torre, Chief Financial Officer Holly Triplett, and five others, all of whom were terminated for cause. GTG also assisted and advised the Trustee regarding a myriad of issues post-termination, including evaluating allegations of further wrongdoing by these individuals, advising the Trustee, preparing recommendations, and taking necessary steps as determined by the Trustee, including gathering the evidence in support of the OSC Motion.

## VI.
## ACTUAL AND NECESSARY DISBURSEMENTS

GTG has incurred and paid out-of-pocket expenses totaling $42,575.51 during the Compensation Period. *See* **Exhibit 5** hereto. These include mailings, postage, and printing for noticing motions, hearings, and orders, as well as the costs associated with solicitation in connection with the Trustee's Plan. Other items include hearing recordings, subpoena service, filing fees, UCC searches, a locksmith for the Rainbow premises, hard drives to obtain and store data collected, and other charges. *See* Garman Decl. ¶ 13. GTG charges all costs at the actual cost, without any profit on such expenses. *See* Garman Decl. ¶ 14.

GTG submits that the expenses that it has incurred and paid in rendering legal services to the Trustee during the Compensation Period are reasonable and necessary under the circumstances of the Chapter 11 Cases, and that the reimbursement to GTG for such expenses is appropriate and should be allowed. *See* Garman Decl. ¶ 15.

## VII.
## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

**A.**     **The Application Should Be Approved Under the Standards of Section 328.**

Section 328(a) provides:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such

31

1
2
3

terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

4

"Section 328(a) permits a bankruptcy court to pre-approve, at the time of retention, the

5

employment of an estate professional 'on any reasonable terms and conditions of employment,

6

including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent

7

fee basis.'" *Fann Contracting, Inc. v Garman Turner Gordon LLP*, 593 B.R. 625, 631 (D. Nev.

8

2018) (citing 11 U.S.C. § 328(a)).

9

"Section 328 and 330 'inquiries are mutually exclusive, as '[t]here is no question that a

10

bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their

11

benefit to the estate if the court already has approved the professional's employment under 11

12

U.S.C. § 328.''" *In re Betancourt*, 2022 WL 1272140, *2 (Bankr. D.N.M. 2022) (collecting cases).

13

"[Section] 328(a) severely limits the bankruptcy court's authority to conduct an after-the-fact

14

'reasonableness analysis' concerning the value of a professional's services." *Fann Contracting*

15

593 B.R. at 632 (citing *In re First Magnus Fin. Corp.*, 2009 WL 7809001, *8 (B.A.P. 9th Cir.

16

2009). Here, the Employment Application and the Employment Order unambiguously specified

17

that approval of the terms of GTG's employment was sought—and granted—pursuant to 11 U.S.C.

18

§ 328. *See, e.g.*, ECF Nos. 199 and 293. *Cf. Fann Contracting*, 593 B.R. at 632 ("To determine

19

whether a professional is employed pursuant to § 328 or § 330, courts consider whether the

20

'professional's retention application unambiguously specifies that it seeks approval under § 328.'

21

(citation omitted)). As such there can be no question that GTG's employment was approved under

22

Section 328.

23

"Where a bankruptcy court pre-approves a fee award under § 328, the court may not depart

24

from the terms of the approved fee agreement unless the terms 'prove to have been improvident in

25

light of developments not capable of being anticipated at the time of the fixing of such terms and

26

conditions.'" *Fann Contracting*, 593 B.R. at 631 (citing 11 U.S.C. § 328(a)). Here, no such

27

circumstances are present. The *Application for Order Approving Employment of Garman Turner

28

Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 199] ("Employment

32

Application") specifically identified, "The Chapter 11 Cases, to the extent they succeed, will involve prosecuting claims that belong to the estates." ECF No. 199 at 2:16-18. The Employment Application specifically identified the Debtors' lack of sufficient liquid assets, numerous litigation issues, and multiple operating clinics (noting some appear to suffer from associated management issues). *See* Employment Application ECF No. 199 at 2:15-22. These have all borne true. *See generally* Carmel Decl. Even more important to the analysis under Section 328(a), however, is that none of these circumstances were "not capable of being anticipated at the time of the fixing of" GTG's terms and conditions of employment. To the contrary. These circumstances were expressly identified in the Employment Application and were are part of the record considered by the Court when it ultimately granted GTG's Employment Application and entered the Employment Order.

Here, as detailed in the Employment Order, GTG was employed on a hybrid fee structure including a reduced hourly compensation (at fifty percent GTG's then-prevailing hourly rates) and a contingency percentage that stepped down commensurate with greater recoveries brought into these Estates. GTG's employment was unambiguously approved pursuant to Section 328(a). *See* Employment Order ECF No. 293. To disturb this, the terms and conditions of employment must be "prove[n] to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions[.]" 11 U.S.C. § 328(a). No such developments are present here, and the compensation requested herein, and the approval of expenses, should be approved in their entirety. *See* Carmel Decl. ¶ 22. *See* Garman Decl. ¶ 16.

As noted elsewhere herein, should the Court grant this Application in its entirety GTG is prepared to waive *all* compensation to which it would otherwise be entitled on the basis of the hours its professionals worked (the hourly compensation), is prepared to *reduce* the contingency compensation to which it is otherwise entitled as set forth herein, and is prepared to defer receipt of a portion of the fees approved herein until sufficient monies are available in the Liquidation Trust to pay the deferred earned compensation. Thus, the total amounts requested through this Application reflet two sizeable voluntary discounts (plus a deferral of payment on the amount so approved—at GTG's risk), to ensure more funds are available to pay general unsecured creditors

from the Plan's Initial Distribution.

Furthermore, GTG is committed to seeing these Chapter 11 Cases to the end. GTG anticipates hundreds of hours of future work that is not identified herein.

## VIII.
## CONCLUSION

WHEREFORE, GTG respectfully requests that the Court enter an order pursuant to Sections 328 and 331 of the Bankruptcy Code:

1.       Approving on an interim basis the professional compensation for services rendered during the Compensation Period in the amount of $9,338,543.40 and expenses incurred in the amount of $42,575.51, for a grand total of $9,381,118.91;

2.       Authorizing, empowering, and directing the Trustee to tender payment to GTG for all unpaid fees and expense reimbursements authorized by the Court.

DATED this 27th day of August 2025.

GARMAN TURNER GORDON LLP

By: */s/ Gregory E. Garman*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*

34