Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
September 04, 2025

**GARMAN TURNER GORDON LLP**
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
|---|---|
| NUMALE CORPORATION, | *Jointly administered with:* |
| ☐ AFFECTS THIS DEBTOR, | Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | NuMedical SC<br>Case No. 25-10343-nmc |
| ☐ NUMEDICAL SC, | NuMale Colorado SC,<br>Case No. 25-10344-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
| ☐ NUMALE NEBRASKA LLC, | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
| ☐ NUMALE NEW MEXICO SC, | |
| ☒ NUMALE ALL DEBTORS, | Hearing Date: September 2, 2025<br>Hearing Time: 9:30 a.m. |
| Debtors. | |

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

4920-2293-8713.1

1

**ORDER APPROVING MOTION PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. §§ 363 AND 105 TO AUTHORIZE AND APPROVE GLOBAL SETTLEMENT AND ASSOCIATED RELEASES AND AUTHORIZE INSURANCE POLICIES BUYBACK**

Upon the *Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430][1] for entry of an order (the "***Order***") pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rule 9014 of the Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada (the "***Bankruptcy Local Rules***"), authorizing (a) entry into the Settlement, Release and Policy Buyback Agreement (the "***Settlement Agreement***") among (i) Debtors NuMale Corporation and NuMale New Mexico SC and non-Debtor affiliate NuMale Albuquerque LLC (d/b/a NuMale Medical Center) (the "***NuMale Defendants***"), (ii) Justin Pulliam and Christopher Asandra (the "***Individual Settling Defendants***" and together with the NuMale Defendants, the "***NuMale Settling Defendants***"), (iii) the Affiliate Entities,[2] (iv) Michael E. Sanchez ("***Sanchez***"), (v) Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623 ("***Beazley***") and (vi) Michael Carmel as Chapter 11 Trustee in these Chapter 11 Cases (the "***Trustee***" and together, with Beazley, Sanchez, the Affiliate Entities and Settling NuMale Defendants, the "***Parties***"), (b) the settlement of claims thereunder (the "***Settlements***"), (c) the sale of the NuMale Beazley Policies free and clear of liens, claims, encumbrances, and interests and the cancellation and termination of the NuMale-Beazley policies on the terms set forth in the Settlement Agreement (the "***Policy Buyback***"), (d) and any related relief thereunder; and the Court having determined that Trustee's entry into the

---

[1] All references to "ECF No." are to the number assigned to the documents filed in lead Case No. BK-25-10341-nmc as it relates to Debtors' bankruptcy cases as they appear on the docket maintained by the clerk of court.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion or the Settlement Agreement, as applicable.

Settlement Agreement, performance thereunder and consummation of the Policy Buyback are a sound exercise of the Trustee's business judgment and that the Settlement Agreement is in the best interests of the Debtors, their estates (the "*Estates*") and their creditors and other parties-in-interest, and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their Estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A. **Fed. R. Bankr. P. 7052**. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, which incorporates by reference Federal Rule 52, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. **Statutory Predicates**. The statutory authorization for the relief granted herein is found in sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9014 and 9019 and the Bankruptcy Local Rules.

C. Notice and a reasonable opportunity to object and to be heard with respect to approval of the Settlement Agreement, the Policy Buyback, the related relief, and the entry of this Order has been given to all interested Persons.

D. **Evidence in Support of the Motion**. The Court has reviewed and considered all of the evidence submitted in support of the Motion, including the declaration of Chapter 11 Trustee Michael Carmel [ECF No. 431] filed in support of the Motion and finds the Trustee's testimony therein credible and compelling,[3] and has weighed the factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), which have been met, and finds that the settlement comports with standard set forth in *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

E. **Business Judgment**. Entering into the Settlement Agreement and consummating the Settlement Agreement, including the Initial Distribution and the Policy Buyback, is a reasonable exercise of the Trustee's business judgment. The Settlement Agreement is the best means available to the Trustee to maximize the return to the Estates in the Chapter 11 Cases and limit the expenses associated with litigating the claims released by the Settlement Agreement. The Trustee has demonstrated good, sufficient, and sound business judgment, purposes and justifications for entering into the Settlement Agreement and consummating the Settlement Agreement, including, but not limited to, the Policy Buyback and all other agreements, instruments, certificates, and other documents to be entered into or delivered by any Party in

---

[3] Pursuant to FRE 201(b), this Court takes judicial notice of the filings and all materials appearing on the docket in the above-captioned matter filed in lead Case No. BK-25-10341-nmc before the Bankruptcy Court and in the Sanchez Lawsuit (defined below) commenced in New Mexico, pending in the Second Judicial District Court, County of Bernalillo, New Mexico, as Case No. D-202-CV-2020-06336, and the Beazley Coverage Lawsuit (defined below) pending in the Ninth Judicial District Court of Curry County, New Mexico, as Case No. D-905-CV-202500157. *See United States v. Wilson,* 631 F.2d 118, 119 (9th Cir. 1980); *see also Bank of America, N.A., v. CD-04, Inc. (In re Owner Management Service, LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

connection with the Settlement Agreement and the Policy Buyback, outside of the ordinary course of business and in accordance with the requirements of section 363(b) of the Bankruptcy Code.

      F.     **Fair Consideration**. The consideration provided by the Parties to the Estates pursuant to the Settlement Agreement (including in respect of the Policy Buyback) (i) is fair and adequate; (ii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and similar laws); (iii) will provide an equal or greater recovery for the Estates than would be provided by any other reasonably practicable available alternative; and (iv) is reasonable and exceeds the lowest in the range of reasonable settlements. The terms of the Settlement Agreement and the Policy Buyback are fair and reasonable under the circumstances of the Estates' Chapter 11 Cases. The terms of the Settlement Agreement, including but not limited to (a) the consideration payable in the Initial Distribution in exchange for the releases contained therein, is fair and equitable and in the best interests of the Estates, based upon the evidence and arguments made at the hearing on the Motion as to the probability of success in litigation; the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and the paramount interest of creditors.

      G.     The probability of success on the claims the being released by the Trustee on behalf of the Debtors and their Estates under the Settlement Agreement, and the value of any recovery in the event the Estates were to prevail, are both uncertain. In the absence of the Settlements the claims settled by the Settlement Agreement would require lengthy and costly litigation. There is no assurance that such litigation would result in higher recoveries for creditors, even if the Estates were to prevail on some or even all of their claims. By entering into the Settlement Agreement, the Trustee, on behalf of the Estates, avoids this delay, uncertainty, cost and risk.

4920-2293-8713.1

H.      The terms and conditions of the Settlement Agreement, including the rationale underlying the agreement, have been adequately disclosed to the Court.

I.      **Property of the Estate**. The claims to be released by the Trustee on behalf the Estates in the Settlement Agreement and the insurance policies to be transferred pursuant to the Policy Buyback (the "*Transferred Policies*") are property of the Estates.

J.      **Good Faith**.  The Settling NuMale Defendants, the Individual Settling Defendants, the Affiliate Entities, Sanchez, Beazley, the Trustee and their respective principals, counsel and advisors, have negotiated, proposed, and entered into the Settlement Agreement and the Policy Buyback in good faith, without collusion, and from arm's-length bargaining positions.  Beazley is a "good faith purchaser" and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  The Parties have proceeded in good faith in all respects.  The terms of the Policy Buyback, including the Purchase and Settlement Amount, were not controlled by any agreement among potential bidders and none of the Parties have engaged in collusion or any conduct that would cause or permit the Purchase and Settlement to be challenged, avoided, or costs and damages to be imposed under section 363(n) of the Bankruptcy Code or any other law of the United States, any state, territory, possession thereof, or the District of Columbia, any foreign law, or any other applicable law.  The Settlement Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, or possession, or the District of Columbia, any foreign law, or any other applicable law.  None of the Parties are entering into the Settlement Agreement or consummating the Policy Buyback with any fraudulent or otherwise improper purpose.  Beazley is not an "insider" or "affiliate" of any of the Debtors, their Estates or the Trustee, as those terms are defined in section 101 of the Bankruptcy Code, and

6

4920-2293-8713.1

no common identity of incorporators, directors, or controlling stockholders exists between Beazley, on the one hand, and the Debtors, their Estates or the Trustee, on the other hand.

K. The Settlement Agreement and the Policy Buyback pursuant to the Settlement Agreement and all covenants in and conditions thereto, are an integrated transaction, meaning that each component is an essential part of every other component. Accordingly, each component of the Settlement Agreement is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

L. **Sale Free and Clear under Section 363(f)**. The Trustee and the Estates have satisfied the standard set forth in section 363(f) of the Bankruptcy Code for the sale of the Transferred Policies pursuant to the Policy Buyback free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, encumbrances, obligations, liabilities, pledges, charges, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, royalties, hypothecations, preferences, debts, easements, suits, licenses, rights of recovery, judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state, and local taxes), covenants, indentures, instruments, leases (except for transferred leases, if any), claims for reimbursement or subrogation, contribution, indemnity or exoneration, successor liability or similar theories, or interests of any kind or nature whatsoever against the Debtors or their Estates, or any of the Transferred Policies (collectively, the "*Interests*"), including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guarantees, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance

claims, claims for taxes of or against the Debtors or their Estates, claims arising under state or federal antitrust laws, any indemnification claim, or liabilities relating to any act or omission of the Debtors or the Estates or any other person prior to the Closing Date (including theories of successor liability), any rights or causes of action (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, allowed or disallowed, noticed or unnoticed, recorded or unrecorded, material or non-material, statutory or non-statutory, and asserted or unasserted), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise.

  M. Each holder of an Interest in the Transferred Policies (i) has, subject to the terms and conditions of this Order, consented or shall be deemed to have consented to the relief requested in the Motion and with respect to the Policy Buyback; or (ii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

  N. Beazley would not have entered into the Policy Buyback, if the sale of the Transferred Policies to Beazley, was not free and clear of all Interests of any kind or nature whatsoever, as contemplated by this Order and the Settlement Agreement.

**NOW, THEREFORE, IT IS ORDERED THAT:**

  1. **Motion is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

  2. **Objections Overruled**.  Any objections to the Motion and to the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights including in such objections, are overruled on the merits.

3.  The Parties are authorized to enter into the Settlement Agreement, substantially in the form attached hereto as **Exhibit 1** and the terms contemplated therein are hereby approved in all respects.

4.  **Approval and Authorization**. Based on the findings contained in this Order, the Settlements and the Policy Buyback on the terms and conditions contained in the Settlement Agreement, are hereby approved in all respects pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and section 9019 of the Bankruptcy Rules. The Parties are authorized to perform all obligations under and make all payments required by the Settlement Agreement as and when due thereunder without further order of this Court. The Trustee, on behalf of the Estates, is hereby authorized to (i) execute the Settlement Agreement, and any prior execution of such agreements, documents, and instruments is hereby ratified; (ii) perform all obligations under the Settlement Agreement, including, without limitation, to consummate the Policy Buyback, and any prior performance of such obligations is hereby ratified; and (iii) take all other and further actions as may be reasonably necessary to consummate and implement the to perform all obligations under the Settlement Agreement and to consummate the Policy Buyback, without any further corporate action or order of this Court.

5.  **No Sub Rosa Plan**. The Settlement Agreement and the Policy Buyback neither impermissibly restructure the rights of the Estates' creditors nor impermissibly dictate the terms of the Estates' chapter 11 plan. Neither the Settlement Agreement nor the Policy Buyback constitutes a sub rosa chapter 11 plan.

6.  **Payment and Tax Matters.** The following payment and tax matters set forth in the Settlement Agreement are appropriate and approved:

    i.  Within ten (10) days of the Settlement Order becoming a Final Order, Beazley shall pay, or shall cause to be paid, the full Purchase and Settlement Amount to the Estates. The Agreed Plan shall provide that its Effective

    Date (as defined therein) shall not occur until the full Purchase and Settlement Amount has been paid to the Estates and received by the Trustee.

ii.  The Trustee and Sanchez hereby agree and stipulate as follows:

   The Allowed Sanchez Claim "Allowed Sanchez Claim" consists of an allowed unsecured claim amount of $410,000,000 pursuant to the terms of the Settlement Agreement. The Parties agree that Sanchez shall receive an Initial Distribution from the Trustee of no more and no less than the sum of $96,500,000 payable by the Trustee to Sanchez immediately upon receipt of the Beazley payment and the order approving the Settlement Agreement becoming a Final Order. For the avoidance of doubt, the remainder of the Allowed Sanchez Claim shall be entitled to recovery as set forth in Class 9 of the Agreed Plan.

iii.  Pursuant to the Agreed Plan, the Initial Distribution paying the Sanchez Claim shall be made payable by the Trustee via wire transfer to the Michael E. Sanchez Qualified Settlement Fund ("*QSF*") to protect Sanchez's rights as an injured claimant under the Internal Tax Code, including, but not limited to, constructive receipt.

iv.  No IRS Form 1099, nor any equivalent or substitute federal, state, or local tax reporting form shall be issued to Sanchez by the Parties in connection with the Initial Distribution, which funds shall be paid by the Trustee solely to the QSF. For the avoidance of doubt, any such reporting obligations upon the distribution of funds from the QSF shall solely be borne by the QSF, as described in Sections 1.468B-2(l)(2) and 1.6045-5(f), Ex. 9, of the Treasury Regulations.

v.  It is the intent of the Trustee and Sanchez that the consideration payable to Sanchez by the Trustee in the Initial Distribution constitutes compensation for the following alleged damages: (a) thirty-seven million, five thousand, one hundred forty-nine dollars and zero cents ($37,005,149.00) in complete satisfaction of the compensatory damages awarded in the Special Verdict Form in the Sanchez Litigation issued in favor of Sanchez for damages on account of alleged personal physical injuries or physical sickness pursuant to Internal Revenue Code § 104(a)2 (26 U.S.C. § 104(a)(2)); (b) fourteen million, fifty-one thousand, eight hundred thirty-three dollars and zero cents ($14,051,833.00) for punitive damages, and (c) forty-five-million, four hundred forty-three thousand, eighteen dollars and zero cents ($45,443,018.00) for Sanchez's claim for associated legal fees and expenses for the Sanchez Litigation. Sanchez is fully responsible for any tax liability that may be assessed against him on the amounts he is receiving from the Trustee and agrees to hold all other Parties and their assigns harmless from any tax liability they may face arising under the settlement, if any, if he fails to pay his taxes.

7. **Releases**. The following releases contemplated by the Settlement Agreement are hereby approved in accordance with the terms of the Settlement Agreement. The releases are consensual, freely given in exchange for the consideration set forth therein, and represent the valid business judgment of the Trustee on behalf of the Estates and the Parties thereto.

    i. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the NuMale Settling Defendants, the Debtors and the Affiliate Entities, on their own behalf, and on behalf of their past, present, and future agents, representatives, directors, officers, trustees, employees, agents, advisors, attorneys, accountants, shareholders, partners, predecessors, successors (including any trust formed in the Agreed Plan or any other Chapter 11 plan for the Debtors), heirs, executors, administrators, principals, assigns, insurers, and reinsurers (including the NuMale Insureds), each in their respective capacities as such (collectively, the "***NuMale Parties***") hereby release and forever discharge the Certain Underwriters at Lloyd's, London Syndicates 623 and 2623, Beazley USA Services, Inc., and Beazley Furlonge Limited, their direct and indirect affiliates, parents, subsidiaries, owners, members and shareholders, and their respective past, present, and future agents, representatives, directors, officers, trustees, employees, attorneys, accountants, shareholders, partners, predecessors, successors, heirs, executors, administrators, principals, assigns, insurers, and reinsurers (collectively, the "***Beazley Parties***") from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the NuMale Parties had, have, or may have in the future against the Beazley Parties which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly to the NuMale-Beazley Policies or Incident, including but not limited to the Sanchez Lawsuit and the Coverage Lawsuit.

    ii. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the Beazley Parties hereby release and forever discharge the NuMale Parties from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the Beazley Parties had, have, or may have in the future against the NuMale Parties (except for Palubicki, Feliciano, NuMale Chicago LLC, NuMale Medical Center LLC, and NuMale North Carolina, PLLC) which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly to the Incident, including but not limited to the Sanchez Lawsuit and the Coverage Lawsuit.

iii. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, Sanchez, on his own behalf, and on behalf of his past, present, and future agents, representatives, directors, officers, trustees, employees, attorneys, accountants, shareholders, partners, predecessors, successors, heirs, executors, administrators, principals, assigns, insurers, and reinsurers (collectively, the "***Sanchez Parties***") hereby releases and forever discharges the NuMale Parties, the NuMale Defendants, and the NuMale Insureds from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the Sanchez Parties had, have, or may have in the future against the NuMale Parties, the NuMale Defendants, and the NuMale Insureds which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly to the Incident, including but not limited to the Sanchez Lawsuit and the Coverage Lawsuit.

iv. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the NuMale Settling Defendants and the Affiliated Entities hereby release and forever discharge the Sanchez Parties from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the NuMale Settling Defendants and the Affiliated Entities had, have, or may have in the future against the Sanchez Parties which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly to the Incident, including but not limited to the Sanchez Lawsuit and the Coverage Lawsuit.

v. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the Sanchez Parties hereby release and forever discharge the Beazley Parties from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the Sanchez Parties had, have, or may have in the future against the Beazley Parties (including by assignment) which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly to the Incident, including but not limited to the Sanchez Lawsuit and the Coverage Lawsuit.

vi. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the Beazley Parties hereby release and forever discharge the Sanchez Parties from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

4920-2293-8713.1

equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the Beazley Parties had, have, or may have in the future against the Sanchez Parties which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly to the Incident, including but not limited to the Sanchez Lawsuit and the Coverage Lawsuit.

    vii. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the Debtors and the Affiliated Entities, on their own behalf, and on behalf of their direct and indirect affiliates, parents, subsidiaries, owners, members and shareholders, and their respective past, present, and future agents, representatives, directors, officers, trustees, employees, agents, advisors, attorneys, accountants, shareholders, partners, predecessors, successors (including any trust formed in the Plan or any other Chapter 11 plan for the Debtors), heirs, executors, administrators, principals, assigns, insurers, and reinsurers, each in their respective capacities as such (collectively, the "***Debtor Parties***") hereby release and forever discharge the Individual Settling Defendants and their direct and indirect affiliates, parents, subsidiaries, owners, members and shareholders, and their respective past, present, and future agents, representatives, directors, officers, trustees, employees, agents, advisors, attorneys, accountants, shareholders, partners, predecessors, successors, heirs, executors, administrators, principals, assigns, insurers, and reinsurers, each in their respective capacities as such (collectively, the "***Individual Settling Defendant Parties***") from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the Debtor Parties had, have, or may have in the future against the Individual Settling Defendant Parties which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly their involvement in any capacity with the Debtor Parties.

    viii. Upon the Effective Date, and without the need of the execution or delivery of any further documents or the taking of any other action by the Debtors, the Individual Settling Defendant Parties, hereby release and forever discharge the Debtor Parties from any and all actual or potential actions, causes of action, notices, claims, suits, damages, judgments, costs, and demands whatsoever in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise, which the Individual Settling Defendant Parties had, have, or may have in the future against the Debtor Parties which were raised in, could have been raised in, arise out of, connect with, or relate directly or indirectly their involvement in any capacity with the Individual Settling Defendant Parties.

        ix.    For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing releases or the Settlement Agreement:

1. All claims against Brad Palubicki, Carlos Feliciano, NuMale Chicago LLC, NuMale Medical Center LLC, and NuMale North Carolina, PLLC are not being released by Beazley herein and are expressly preserved by, and for the benefit of, Beazley, including, without limitation all rights and claims that have been or could be asserted in the pending Coverage Lawsuit.

2. The Palubicki/Feliciano Claims are not being released by the Estates, any Debtor, or Beazley, and are explicitly being retained by the various Estates and assigned to Beazley on the Effective Date in accordance Section X of the Settlement Agreement; and

3. All claims against Quintairos, Prieto, Wood & Boyer, P.A. are not being released and are expressly preserved.

7.1    **Release Clarification**.  For the avoidance of doubt, the Debtors' releases provided in the Global Settlement Agreement and this Order include (x) any claim or cause of action that is or was the property of the Debtors or the Debtors' Estates, including all derivative claims (the "Estate Causes of Action") and (y) any Interest in or against the Transferred Policies, but exclude any direct claim held against a non-Debtor by non-parties to the Global Settlement Agreement, in each case, that is not an Estate Cause of Action or an Interest in or against the Transferred Policies. This Court shall retain sole jurisdiction to determine what constitutes a released Estate Cause of Action or an Interest in the Transferred Policies.

8.    **Injunction**. Except as otherwise expressly provided herein or the Settlement Agreement, all Release Parties (defined as parties who have held, hold, or may hold claims that have been released or discharged pursuant hereto or the Settlement Agreement) (the "***Released Claims***") are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, any other Release Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind arising out of or in connection with or with respect to any such Released Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Release Party arising out

of or in connection with or with respect to any such Released Claims; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Parties or the property of any Release Party arising out of or in connection with or with respect to any such Released Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any Release Party or against the property of any Release Party arising out of or in connection with or with respect to any such Released Claims; and (5) commencing or continuing in any manner any action or other proceeding of any kind arising out of or in connection with or with respect to any such Released Claims.  Upon the Effective Date, all holders of Released Claims and the other Release Parties shall be enjoined from taking any actions to interfere with the implementation of the Settlement Agreement.  Upon entry of this Order, each Release Party shall be deemed to have consented to this injunction.

9. **Policy Buyback - Free and Clear**.  The Policy Buyback is hereby approved and authorized. The Trustee, on behalf of the Estates, is authorized and directed to transfer the Transferred Policies to Beazley and, upon the closing of the Policy Buyback, Beazley shall have and take title to and possession of the Transferred Policies free and clear of all Interests and shall have no obligation with respect to all Interests of any kind or nature whatsoever.  All holders of Interests in the Transferred Policies, if any, are adequately protected by having their Interests attach to the net proceeds ultimately received by the Estates and attributable to the Transferred Policies against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force, and effect, and in the same order of priority that such Interests now have against the Transferred Policies or their proceeds as of the Closing Date, subject to any rights, claims, and defenses the Debtors, their Estates and the Trustee, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Order.

4920-2293-8713.1

10. **Policy Buyback - Termination of Policy Rights**.  Upon the Effective Date, and without further action of any kind, the limits of liability of the Transferred Policies shall be fully extinguished and exhausted for all claims. All rights, duties, responsibilities and obligations of the Beazley Parties alleged to have been created or that may be created by the Transferred Policies and that have been released pursuant to the Settlement Agreement shall be deemed extinguished, terminated, canceled, and otherwise fully satisfied. Any and all rights under the Transferred Policies that have been released pursuant to the Settlement Agreement shall be and are extinguished, terminated and voided, subject to the terms and conditions of the Settlement Agreement.  The Transferred Policies are to be thereafter treated as null and void (to the extent not void ab initio), and no person or entity shall have the right thereafter to present or tender any claim released pursuant to the Settlement Agreement under the Transferred Policies.

11. **Policy Buyback - Good Faith**.  Based on the findings made in paragraph I of this Order, Beazley is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to consummate the transactions contemplated by the Settlement Agreement shall not affect the validity of the Policy Buyback and the other terms of Settlement Agreement unless such authorization and consummation of the transactions contemplated by the Settlement Agreement are duly and properly stayed pending such appeal.

12. **Assignment of Palubicki/Feliciano Claims.** The Assignment of the Palubicki/Feliciano Claims (including the Palubicki Whistleblower Claims) on the terms set forth in the Settlement Agreement is hereby approved and authorized. Upon the Effective Date, Beazley shall have and take title to and possession of the Palubicki/Feliciano Claims free and clear of all Interests and shall have no obligation with respect to all Interests of any kind or nature

whatsoever. Beazley is a good faith purchaser of the Palubicki/Feliciano Claims and the protections of section 363(m) of the Bankruptcy Code shall apply to the Assignment.

13. **No Avoidance of Settlement Agreement**.  Based on the findings made in paragraph I of this Order, the Settlement Agreement and the Policy Buyback shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Settlement Agreement or the Policy Buyback.

14. **Failure to Specify Provisions**.  The failure to specify or include any particular provisions of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Settlement Agreement be authorized and approved in its entirety.

15. **Bankruptcy Rules Satisfied or Waived**.  The requirements set forth in Bankruptcy Rules 6004 and 6006 have been satisfied or are otherwise deemed to be waived.  As provided by Bankruptcy Rule 9014, the terms of this Order shall be effective and enforceable immediately upon entry, and shall not be subject to stay provisions contained in Bankruptcy Rules 6004(h) and 6004(d).

16. **Conflicts Between Order and Other Documents**.  Solely excluding Section 7.1 of this Order, to the extent anything contained in this Order conflicts with a provision in the Settlement Agreement, the Settlement Agreement shall govern and control.  For the avoidance of doubt, Section 7.1 (Release Clarification) of this Order shall be binding and shall control.  To the extent anything contained in any plan of reorganization, plan of liquidation, confirmation order or other document presented or filed in these Chapter 11 Cases conflict with the Settlement Agreement or this Order, the Settlement Agreement and this Order shall govern and control. Nothing in any plan of reorganization, plan of liquidation, confirmation order or other

document presented or filed in these Chapter 11 Cases shall modify or waive any terms and conditions in the Settlement Agreement or this Order, and all such terms and conditions shall remain in full force and effect in accordance with their terms. For the avoidance of doubt, nothing in this Order precludes the Court from considering any arguments, evidence, or documents the Court deems appropriate in connection with plan confirmation or from making findings of fact and conclusions of law under Sections 1123 and 1129 in connection with plan confirmation.

17. **Provisions Nonseverable and Mutually Dependent**. The provisions of this Order and the Settlement Agreement are non-severable and mutually dependent.

18. **Notice**. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19. **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of the Settlement Agreement and this Order, and each of the agreements executed in connection therewith to which the Debtors, their Estates or the Trustee are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Settlements and the Policy Buyback. No Party shall be required to seek relief from the automatic stay to enforce the Settlement Agreement or to exercise any rights thereunder, including to exercise rights of termination in accordance with the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

GARMAN TURNER GORDON LLP

By: */s/ Mary Langsner*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210

4920-2293-8713.1

Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

4920-2293-8713.1

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies as follows:

☒ The Court waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared on the Motion at the omnibus hearing or filed an objection to the Motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing other than simply to monitor, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order as follows.

☐ I have certified that under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

4920-2293-8713.1