GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail:  ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
| NUMALE CORPORATION, | *Jointly administered with:* |
| ☐ AFFECTS THIS DEBTOR, | |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc |
| ☐ NUMEDICAL SC, | NuMedical SC<br>Case No. 25-10343-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Colorado SC,<br>Case No. 25-10344-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc |
| ☐ NUMALE NEBRASKA LLC, | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
| ☐ NUMALE NEW MEXICO SC, | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
| ☒ NUMALE ALL DEBTORS, | |
| Debtors. | Hearing Date:  September 24, 2025<br>Hearing Time: 9:30 a.m. |

## BRIEF IN SUPPORT OF CONFIRMATION OF
## JOINT PLAN OF REORGANIZATION AND FINAL APPROVAL OF DISCLOSURE
## STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, "Debtors"), seeks confirmation of the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits thereto, and as may be amended, modified, or supplemented, including via the *Notice of Filing Plan Supplement to Joint Plan of Reorganization* [ECF No. 595], the "Plan") and final approval of the adequacy of the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (the "Disclosure Statement").[1]  This Brief is made and based on the declaration of Michael Carmel (the "Carmel Decl."); the Plan; the Disclosure Statement; the points and authorities provided herein; the papers and pleadings filed in the dockets of these Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b)-(c) and 1101(a)-(b); and the argument and evidence presented in connection with and at the Confirmation Hearing.

## I.
## JURISDICTION AND VENUE

1.     The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code[2] and shall be confirmed, and also has exclusive jurisdiction to determine whether the Disclosure Statement should be approved on a final basis.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Court has core subject matter jurisdiction to determine confirmation of the Plan and final approval of the Disclosure Statement pursuant to 28 U.S.C. §§ 1334 and 157(b)(2), including 28 U.S.C. §§ 157(b)(2)(A) and (L), and Local Rule 1001(b)(1).

2.     Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[1] All undefined terms shall have the meanings ascribed to them in the Plan and Disclosure Statement, in that order.
[2] 11 U.S.C. §§ 101 – 1532, et seq. (the "Bankruptcy Code").

## II.
## RELEVANT FACTS

3.    On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

4.    On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 130.

5.    On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' Estates. *See* ECF No. 132.

6.    On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("U.S. Trustee"), appointed the Trustee as Chapter 11 trustee for Debtors' Estates. ECF No. 140.

7.    On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

8.    Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' Estates. *See* ECF No. 157.

9.    On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

10.    On August 1, 2025, the Trustee filed the Plan and Disclosure Statement. The Plan designates thirteen (13) classes of Claims and Equity Interests, and classifies the following:

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Newtek Secured Claim | Unimpaired; No solicitation required. |
| Class 2 | Kalamata Claim | Unimpaired. No solicitation required. |
| Class 3 | EBF Holdings Claim | Unimpaired. No solicitation required. |
| Class 4 | Fox Funding Claim | Unimpaired. No solicitation required. |

| Class 5 | Top Tier Claim | Unimpaired. No solicitation required. |
|---|---|---|
| Class 6 | LCF Group Claim | Unimpaired. No solicitation required. |
| Class 7 | Ford Motor Claim | Unimpaired. No solicitation required. |
| Class 8 | Priority Unsecured Claims | Unimpaired. No solicitation required. |
| Class 9 | Sanchez Claim | Impaired. Solicitation required. |
| Class 10 | General Unsecured Claims | Impaired. Solicitation required. |
| Class 11 | Intercompany Claims | Impaired. Solicitation required. |
| Class 12 | Subordinated Claims | Impaired. Solicitation required. |
| Class 13 | Equity Interests | Impaired; deemed rejected. No solicitation required. |

11.     In accordance with 11 U.S.C. § 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified, but their treatment is set forth in Section 2 of the Plan.

12.     On August 5, 2025, the Court entered the *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization. See* ECF No. 447 (the "Disclosure Statement Order").

13.     The Disclosure Statement Order, Plan, Disclosure Statement, and Ballots, as applicable, and the Confirmation Hearing Notice were properly and timely served on all creditors, equity security holders, and other parties entitled to notice pursuant to the Disclosure Statement Order. *See, e.g.*, ECF No. 451.

14.     Such service provided: (i) more than twenty eight (28) days' notice of the September 10, 2025, deadline for creditors in impaired classes to submit a vote to accept or reject the Plan; (ii)  more than twenty eight (28) days' notice of the September 10, 2025, deadline to object to the Plan and final approval of the Disclosure Statement; and (iii) more than forty-two (42) days' notice of the September 24, 2025, Confirmation Hearing, all in accordance with Bankruptcy Rules 3017, 3017.1, and 3018.  *See, e.g.*, ECF No. 451.

15.     As detailed in the Ballot Summary and summarized in the following chart, only Classes 9, 10, 11 and 12 were impaired and entitled to submit a Ballot.  Copies of the Ballots are attached to the Ballot Summary as **Exhibit "1"**:

. . .

| Class | # Accepting | # Rejecting | Amount Accepting | Amount Rejecting | Result |
|---|---|---|---|---|---|
| Class 9 – Sanchez Claim | 1 (100%) | 0 (0%) | $410,000,000.00 (100%) | $0 (0%) | Accept |
| Class 10 – General Unsecured Claims | 12 (99%) | 1 (1%) | $5,743,160.50 (99%) | $30,000.00 (1%) | Accept |
| Class 11 – Intercompany Claims | 5 (100%) | 0 (0%) | $3,792,970.19 (100%) | $0 (0%) | Accept |
| Class 12 – Subordinated Claims | 3 (100%) | 0 (0%) | $1,089,592.91 (100%) | $0 (0%) | Accept |

## III.
## LEGAL ANALYSIS

**A.    The Burden of Proof for Plan Confirmation Is a Preponderance of the Evidence.**

The Trustee, as the plan proponent, has the burden of demonstrating that the Plan satisfies Section 1129 of the Bankruptcy Code by a preponderance of the evidence. *See Liberty Nat'l Enters. v. Ambanc LaMesa L.P. (In re Ambanc LaMesa L.P.)*, 115 F.3d 650, 653 (9th Cir. 1997). A bankruptcy court may confirm a chapter 11 plan if the plan proponent proves by a preponderance of the evidence either: (1) that all applicable requirements of Section 1129(a) of the Bankruptcy Code have been met; or (2) if the only condition to confirmation that is not satisfied is Section 1129(a)(8), that the plan satisfies the cramdown standards under Section 1129(b); that is, that the plan does not discriminate unfairly against, and is fair and equitable with regard to, each impaired class that has not accepted the plan. *See Zachary v. Cal. Bank & Trust (In re Zachary)*, 811 F.3d 1191, 1194 (9th Cir. 2016).

**B.    Section 1129(a)(1): Plan Compliance with the Bankruptcy Code.**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan "[c]omply with the applicable provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 1129(a)(1). "[T]he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans." *See Kane v. Johns-Mansville Corp. (In re Johns-Mansville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988)). To determine plan compliance with Section 1129(a)(1), reference must be made to the requirements of Sections 1122 and 1123, which govern

classification of claims and contents of plans, respectively. *See In re G-I Holdings, Inc.*, 420 B.R. 216 (D.N.J. 2009); *In re Journal Register Co.*, 407 B.R. 520, 531-32 (Bankr. S.D.N.Y. 2009).

### 1. Section 1122: Classification of Claims.

"[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Section 1122(a) requires only that claims must be "substantially similar" to be placed into the same class; thus, Section 1122(a) prohibits placing dissimilar claims together in the same class, but it does not prevent substantially similar claims from being placed into different classes. *See Zante, Inc. v. Delgado (In re Zante, Inc.)*, 467 B.R. 216, 218 (D. Nev. 2012); *see also Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*, 465 B.R. 525, 536-37 (B.A.P. 9th Cir. 2012), *aff'd*, 578 F. App'x 644 (9th Cir. 2014). To determine whether claims are substantially similar, "bankruptcy court judges must evaluate the nature of each claim, *i.e.*, the kind, species, or character of each category of claims." *See In re Rexford Props., LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) (quoting *Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994)).

The Plan classifies Claims and Equity Interests in the following thirteen (13) classes: Newtek Secured Claim (Class 1); Kalamata Claim (Class 2); EBF Holdings Claim (Class 3); Fox Funding Claim (Class 4); Top Tier Claim (Class 5); LCF Group Claim (Class 6); Ford Motor Claim (Class 7); Priority Unsecured Claims (Class 8); Sanchez Claim (Class 9); General Unsecured Claims (Class 10); Intercompany Claims (Class 11); Subordinated Claims (Class 12); Equity Interests (Class 13). *See* Carmel Decl. ¶ 60.

Asserted secured creditors are appropriately separately classified by virtue of their asserted liens against Debtors' assets. Priority unsecured creditors are appropriately separately classified as a result of Section 507's grant of priority in payment over general unsecured creditors. Mr. Sanchez, as the only jury verdict creditor and for which there are multiple co-obligors, is appropriately classified in his own Class. Mr. Sanchez is also appropriately separately classified due to his treatment pursuant to the Global Settlement Agreement. All other general unsecured creditors are properly separately classified as they share the same payment priorities and rights with respect to the Debtors. Intercompany Claims are likewise properly separately classified as

they are comprised of Claims held by one the Debtors against one or more of the other Debtors. Next, Subordinated Claims are properly separately classified, as they are comprised of Claims held by Insiders and Affiliates for which equitable subordination was sought. Finally, Equity Interests are interests and not claims and are therefore also properly separately classified. Carmel Decl. ¶ 61.

Accordingly, as the Trustee's classification scheme does not place any dissimilar claims within the same class in violation of Section 1122 of the Bankruptcy Code, the Plan complies with Section 1122 of the Bankruptcy Code.

### 2.    Section 1123(a): Mandatory Plan Requirements.

Section 1123(a) of the Bankruptcy Code sets forth eight requirements with which the proponent of every Chapter 11 plan must comply. As demonstrated below, the Plan complies with each of the applicable requirements (Section 1123(a)(8) of the Bankruptcy Code does not apply because the Debtors are not individuals).

### a.    Section 1123(a)(1).

Subsection (a)(1) requires that a plan designate classes of claims and equity interests subject to Section 1122 of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1). Apart from Administrative Claims and Priority Tax Claims addressed in Section 2 of the Plan, which need not be designated, Section 3 of the Plan designates twelve (12) classes of Claims and one (1) class of Equity Interests. As set forth above, valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests. Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the Plan satisfies Section 1123(a)(1) of the Bankruptcy Code.

### b.    Section 1123(a)(2): Specified Unimpaired Classes.

Subsection (a)(2) requires a plan to specify any class of claims that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). Sections 3 and 4 of the Plan specify that Class 1 (Newtek Secured Claim); Class 2 (Kalamata Claim); Class 3 (EBF Holdings Claim); Class 4 (Fox Funding Claim); Class 5 (Top Tier Claim); Class 6 (LCF Group Claim); Class 7 (Ford Motor Claim); and Class 8

1  (Priority Unsecured Claims) are unimpaired.  As such, the Plan satisfies 11 U.S.C. § 1123(a)(2).

2  **c.      Section 1123(a)(3): Specified Treatment of Impaired Classes.**

3  Subsection (a)(3) requires a plan to specify the treatment of impaired classes of claims and

4  interests.  11 U.S.C. § 1123(a)(3).  Sections 3 and 4 of the Plan specify the treatment of impaired

5  claims and interests in Class 9 (Sanchez Claim); Class 10 (General Unsecured Claims); Class 11

6  (Intercompany Claims); Class 12 (Subordinated Claims); and Equity Interests (Class 13).

7  Accordingly, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

8  **d.      Section 1123(a)(4): No Discrimination.**

9  Subsection (a)(4) requires that a plan provide the same treatment for each claim or interest

10  within a particular class unless any claim or interest holder agrees to less favorable treatment than

11  other class members. 11 U.S.C. § 1123(a)(4).  Section 4 of the Plan specifies the treatment of

12  claims in each respective Class and provides for the same treatment for each claim or interest in

13  each respective class unless the holder of a particular Claim or Equity Interest has agreed to a less

14  favorable treatment of such Claim or Equity Interest.

15  **e.      Section 1123(a)(5): Adequate Means for Plan Implementation.**

16  Subsection (a)(5) requires that a plan provide "adequate means for the plan's

17  implementation." 11 U.S.C. § 1123(a)(5).  Section 5 (Means for Implementation of Plan), among

18  other Plan provisions, and the exhibits and attachments to the Plan and the Disclosure Statement,

19  provide, in detail, adequate and proper means for the Plan's implementation, including payment

20  of certain Allowed Claims on the Effective Date from the Distributable Assets (i.e., (i) all

21  Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability

22  Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and

23  (v) the proceeds from the 363 Sale), the creation of a Liquidation Trust to liquidate or otherwise

24  dispose of the Liquidation Trust Assets, initially consisting of the Liquidation Trust Reserve plus

25  all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized

26  Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the

27  Disputed Claim Reserve, and the reorganization of Debtors to effectuate the 363 Sale.

28  Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the

Bankruptcy Code, on the Effective Date, of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes.  As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are automatically expunged such that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are treated as one single collective obligation of the Debtors. Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are deemed cured as of the Effective Date.

### f.    Section 1123(a)(6): Voting Power of Equity Securities.

Subsection (a)(6) prohibits the issuance of nonvoting equity securities and requires amendment of a debtor's charter to so provide, and further requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power. 11 U.S.C. § 1123(a)(6).  Here, no party is authorized to issue nonvoting equity securities under the Plan and Section 5.16 of the Plan provides that each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.  Accordingly, the Plan satisfies Section 1123(a)(6) of the Bankruptcy Code.

### g.    Section 1123(a)(7): Directors and Officers.

Subsection (a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7).  Here, the Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code. The identity and powers of the Liquidation Trustee were

1   disclosed in the Plan, and the Liquidation Trust Agreement was filed in the Plan Supplement.  The

2   selection of the Liquidation Trustee is consistent with the interests of Holders of Claims and Equity

3   Interests and with public policy.  Additionally, the Plan clearly provides in Section 5.16 that

4   Michael W. Carmel, the Trustee, is shall have sole control and authority over each of the

5   Reorganized Debtors and their property and shall be deemed to have been admitted as the manager

6   or director, as applicable, of each Debtor under applicable non-bankruptcy law and is hereby

7   authorized to exercise all of the rights and powers of as managers or directors, as applicable, as

8   provided by the Plan, including effectuation of the 363 Sale.  Accordingly, the Plan satisfies

9   Section 1123(a)(7) of the Bankruptcy Code.  *See* Carmel Decl. ¶ 62.

10      **3.      11 U.S.C. § 1123(b): Permissive Plan Provisions.**

11      Section 1123(b) of the Bankruptcy Code allows a plan to propose certain matters.

12      **a.      11 U.S.C. § 1123(b)(1): Impairment/Unimpairment of Classes:**  The Plan is
         consistent with Section 1123(b)(1) of the Bankruptcy Code.  Section 3 of the Plan
13       impairs or leaves Unimpaired each Class of Claims and Equity Interests.

14      **b.      11 U.S.C. § 123(b)(2): Assumption and Rejection:**  The Plan is consistent with
         Section 1123(b)(2) of the Bankruptcy Code.  Section 6 of the Plan provides for the
15       assumption, effective as of the Effective Date, of the Debtors' Executory Contracts
         and Unexpired Leases that exist on the Confirmation Date, and provides they shall
16       be deemed assumed by the respective Debtor(s) on the Effective Date and assigned
         to the prevailing bidder(s) in connection with the 363 Sale, except for: (i) the
17       Beazley Policies, (ii) Executory Contracts and Unexpired Leases specifically
         addressed in the Plan or set forth on the Schedule 6.1 of Rejected Executed
18       Contracts and Unexpired Leases,[3] (iii) those that have previously expired or
         terminated pursuant to their own terms or by agreement of the parties thereto, and
19       (iv) those that have been assumed by order of the Bankruptcy Court.

20      **c.      11 U.S.C. § 1123(b)(3): Compromise, Settlement, Release, Exculpation, and
         Injunction:**  The Plan is consistent with Section 1123(b)(3) of the Bankruptcy
21       Code.  Pursuant to Section 1123 of the Bankruptcy Code, and considering the
         classification, distributions, releases, and other benefits provided under the Plan,
22       upon the Effective Date, the provisions of the Plan will constitute a good faith
         compromise and settlement of all Claims and Equity Interests and controversies
23       resolved pursuant to the Plan.  The compromise and settlement of such Claims and
         Equity Interests embodied in the Plan and unimpairment of other Classes identified
24       in the Plan are in the best interests of the Debtors, the Estates, and all Holders of
         Claims and Equity Interests, and are fair, equitable, and reasonable. Carmel Decl.
25       ¶ 63.
                 Further, Sections 8.2, 8.5, 8.6, and 8.7 of the Plan provide release,

26

27   [3] **Schedule 6.1 to the Plan** at ECF No. 434 p. 54 of 56 (*Rejected Executory Contracts and Unexpired Leases*) shall
     be replaced in its entirety by the Schedule 6.1 appended to the Confirmation Order.  Further, **Schedule 6.3 to the Plan**
28   at ECF No. 434 p. 55 of 56 (*Cure Amounts Payable By the Reorganized Debtors for Assumed Executory Contracts
     and Unexpired Leases*) shall be replaced in its entirety by the Schedule 6.3 appended to the Confirmation Order.

discharge, injunction, and exculpation as granted by the Plan (collectively, the "Release Provisions"). The Confirmation Hearing Notice [ECF No. 449] sent to Holders of Claims and Equity Interests, and all creditors and parties in interest in these Chapter 11 Cases, unambiguously and prominently stated that the Plan contains the Release Provisions and provided therein a copy of the Release Provisions excerpted from the Plan. The Trustee respectfully proffers that he has satisfied the applicable standard with respect to the propriety of the Release Provisions. Such provisions are a necessary and integral element of the Plan and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests. Also, the Release Provisions are: (a) in exchange for the good and valuable consideration provided; (b) a good faith settlement and compromise of the Claims released under the Plan; and (c) given, and made, after due notice and opportunity for hearing. Creditors have voted in favor of the Plan, including the Release Provisions. The Plan, including the Release Provisions, was negotiated by sophisticated parties represented by able counsel. The Release Provisions are therefore the result of an arm's-length negotiation process. *See* Carmel Decl. ¶ 64. Further, all creditors and parties in interest were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan. *See, e.g.*, ECF Nos. 451, 540. Additionally, the Release Provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, accompanied the Disclosure Statement, and were in the Confirmation Notice. *See, e.g.*, ECF Nos. 434, 449.

Additionally, the exculpation, described in Section 8.7 of the Plan (the "Exculpation"), is appropriate under applicable law because the Exculpated Parties are limited to fiduciaries of the Estates, and the other primary stakeholders in the Global Settlement Agreement (Mr. Sanchez and Beazley), and because the provision was proposed in good faith, is appropriately limited in scope, and includes a carve-out for gross negligence and willful misconduct. Next, the limitation of liability of the Liquidation Trustee (the "Limitation of Liability"), described in Section 8.3 of the Plan is also appropriate under applicable law because it is essential to protect the Liquidation Trustee who is effectuating the Plan and administering and overseeing the Liquidation Trust, because it was proposed in good faith, because it is appropriately limited in scope, and because it includes a carve-out for gross negligence, willful misconduct, intentional breaches of the Global Settlement Agreement or the Liquidation Trust Agreement, and fraud. Last, the injunction provision set forth in Section 8.6 of the Plan ("Injunction") is necessary to implement, preserve, and enforce the provisions of the Plan, the Release Provisions, the Exculpation, and the Limitation of Liability, and it is narrowly tailored to achieve this purpose. The Exculpated Parties subject to the Exculpation have, and, upon entry of the Confirmation Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Plan. *See* Carmel Decl. ¶ 65.

Except as otherwise provided herein, as of the Effective Date, all releases, waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all persons and entities and any representatives thereof. The Plan and the Confirmation Order (to the extent entered by the Court) shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and/or the entered Confirmation Order, including the Release Provisions, Injunction, Exculpation, and Limitation of Liability provisions contained in the Plan and/or Confirmation Order.

    d.    **11 U.S.C. § 1123(b)(6): Additional Plan Provisions:**  The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.  *See* Carmel Decl. ¶ 66.  This thereby satisfies Section 1123(b)(6) of the Bankruptcy Code.

**C.    Section 1129(a)(2): Proponent Compliance with the Bankruptcy Code.**

Section 1129(a)(2) requires a plan proponent to "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). Section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements under Section 1125 of the Bankruptcy Code. *See In re Art & Architecture Books of the 21st Century*, 2016 WL 1118743, *7-*12 (Bankr. C.D. Cal. 2016); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995).

Section 1125(b) of the Bankruptcy Code requires the transmission to creditors of a written disclosure statement containing "adequate information." 11 U.S.C. § 1125(b), in turn, defines "adequate information" as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the Debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

Courts have developed a non-exhaustive list of criteria to aid them in evaluating the sufficiency or the adequacy of disclosure statements, including:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

the debtor with affiliates.

*In re Metrocraft Pub. Servs., Inc.,* 39 B.R. 567, 568 (Bankr. Ga. 1984); *In re Scioto Valley Mortgage Co.,* 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (using a similar list).

However, these factors are neither required nor comprehensive; rather, the determination of "adequate information for purposes of the disclosure statement is made on a case-by-case basis and is largely within the discretion of the bankruptcy court. *See Computer Task Group, Inc. v. Brothy (In re Brothy)*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003).

Since entry of the Disclosure Statement Order, no party has since objected to adequacy of the Disclosure Statement. Further, the Disclosure Statement provides an overview of the Plan, a summary of the voting process, a detailed description of Debtors' business and the events occurring during the Chapter 11 Cases, a detailed description of the Plan, a discussion of risk factors associated with the Plan, a discussion of federal income tax consequences, a discussion of alternatives to the Plan and a liquidation analysis. *See* Carmel Decl. ¶ 67.

The Trustee and his agents have complied in good faith with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of 11 U.S.C. § 1129(a)(2). Specifically:

    a.    The Debtors are each an eligible debtor under 11 U.S.C. § 109, and the Trustee is a proper proponent of the Plan under 11 U.S.C. § 1121(a);

    b.    The Trustee has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

    c.    The Trustee has complied with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy laws, rules, and regulations, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages,[4] and related documents and notices, and in soliciting and tabulating the votes on the Plan.

*See* Carmel Decl. ¶ 68. Accordingly, the Trustee submits that the Disclosure Statement is adequate under Section 1125 and, therefore, that the Plan and Disclosure Statement satisfy Section 1129(a)(2) of the Bankruptcy Code.

---

[4] Following entry of the Solicitation Procedures Order, the Plan, the Disclosure Statement, the Confirmation Hearing Notice, and the ballots were transmitted and served to all Holders of Claims in the Voting Classes, in compliance with the Bankruptcy Code, including Sections 1125 and 1126 thereof; the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018; the Local Rules, including Local Rule 3017; the Disclosure Statement Order (Solicitation Procedures Order); and any applicable nonbankruptcy law (collectively, the "<u>Solicitation Packages</u>"). *See* ECF No. 451.

**D.**     **Section 1129(a)(3): Good Faith and Not by Means Forbidden by Law.**

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Section 1129(a)(3) does not define "good faith," and good faith should be determined based on the "totality of the circumstances" and on a "case-by-case basis, taking into account the particular features of each . . . plan." *See Platinum Cap., Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074, 1075 (9th Cir. 2002) (citations omitted). The good faith requirement does not depend on the proponent's subjective intent but rather "encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings." *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828-29 (9th Cir. 1994). Generally, a plan is not filed in good faith if it represents an attempt "to unreasonably deter and harass creditors" and to "achieve objectives outside the legitimate scope of the bankruptcy laws." *Id.* However, "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *See Sylmar Plaza, L.P.*, 314 F.3d at 1075 (citations omitted); *In re Sagewood Manor Assocs. LP*, 223 B.R. 756, 761-62 (Bankr. D. Nev. 1998).

The objectives and purposes of the Bankruptcy Code, and Chapter 11 in particular, include, among other things, "to maximize the value of the bankruptcy estate," *see Toibb v. Radloff*, 501 U.S. 157, 163 (1991), and "to satisfy creditors' claims," *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). The second prong of Section 1129(a)(3) requires that the Plan "not be proposed by any means forbidden by law." 11 U.S.C. § 1129(a)(3). As used in subsection (a)(3), the term "law" includes state law, and applies not to the substantive provision of a plan itself, but rather to the means employed in proposing a plan. *See In re Food City, Inc.*, 110 B.R. 808, 810 (Bankr. W.D. Tex. 1990).

Here, the Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code. Considering the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the support of the Voting Classes for the Plan, and the transactions to be implemented pursuant thereto, the Trustee has proposed the Plan in good faith and not by any means forbidden by law, and the Plan does not violate any provisions of applicable state or bankruptcy law. These Chapter 11 Cases were filed, and the Plan was proposed,

with the legitimate purpose of allowing the Trustee to implement an orderly liquidation of Litigation Claims through the Liquidation Trust, to substantively consolidate the Estates for confirmation purposes, and to reorganize the Debtors to effectuate and close the 363 Sale before the Reorganized Debtors are ultimately wound down.  *See* Carmel Decl. ¶ 70.  As such, the Plan satisfies Section 1129(a)(3) of the Bankruptcy Code.

**E.**    **Section 1129(a)(4): Payments for Services.**

Section 1129(a)(4) requires that all payments of professional fees made from estate assets be subject to review and approval by the court.  Consistent with Section 1129(a)(4), the procedures set forth in the Plan for the Court's review and ultimate approval of the Administrative Claims to be paid by the Estates or the Liquidation Trust, as the case may be, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, in either instance, incurred in connection with the Chapter 11 Cases through the Effective Date, satisfy the objectives of, and are in compliance with, Section 1129(a)(4) of the Bankruptcy Code.  *See* Carmel Decl. ¶ 71.  As such, the provision in the Plan for the Court's review and ultimate determination of the fees and expenses satisfies the objectives of Section 1129(a)(4).  *See In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that the requirements of Section 1129(a)(4) were satisfied where the plan provided for payment of only "allowed" administrative expenses). Therefore, the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

**F.**    **Section 1129(a)(5): Disclosure of Management and Insiders.**

Section 1129(a)(5) requires the proponent of the plan disclose the identity or affiliation of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor.  *See* 11 U.S.C. § 1129(a)(5).  Here, the Trustee has satisfied the requirements of 11 U.S.C. § 1129(a)(5).  The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement.  Additionally, the Plan discloses that Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law.  *See* Carmel Decl. ¶ 72.  The selections are consistent with the interest of Holders of Claims and Equity

1   Interests and with public policy.  Accordingly, the Plan satisfies 11 U.S.C. § 1129(a)(5).

2   **G.    Section § 1129(a)(6): Regulatory Approvals.**

3   Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

4   The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory

5   commission.  *See* Carmel Decl. ¶ 73.

6   **H.    Section § 1129(a)(7): Best Interests Test.**

7   Section 1129(a)(7) requires that a plan be in the best interests of creditors and interest

8   holders, and specifically, that each holder of an impaired claim has either accepted the plan, or

9   "will receive or retain under the plan on account of such claim or interest property of a value, as

10  of the effective date of the plan, that is not less than the amount that such holder would so receive

11  or retain if the debtor were liquidated under Chapter 7 of this title on such date."  11 U.S.C.

12  §§ 1129(a)(7)(A)(i) and (ii).  In order to satisfy subsection (a)(7), the Court must find that each

13  dissenting creditor will receive or retain value, as of the effective date of the plan, that is not less

14  than the amount it would receive if the debtor were liquidated.  *See Drexel Burnham Lambert*

15  *Group, Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

16  Here, the Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code.

17  The liquidation analyses attached to the Disclosure Statement and the other evidence related

18  thereto in support of the Plan proffered in connection with it confirmation (a) are reasonable,

19  persuasive, and credible as of the dates such analyses or evidence were prepared, presented, or

20  proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been

21  controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity

22  Interest in each Class will recover at least as much under the Plan on account of such Claim or

23  Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were

24  liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.  *See* Carmel Decl. ¶ 74.

25  Therefore, the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

26  **I.    11 U.S.C. § 1129(a)(8): Class Acceptance.**

27  Section 1129(a)(8) requires that each class of claims and interests either has accepted a

28  plan or is not impaired under a plan.  *See* 11 U.S.C. § 1129(a)(8).  Whether a class of claims is

1    impaired is governed by Section 1124 and whether a class of claims has accepted a plan is

2    determined by reference to Section 1126.  *See* 11 U.S.C. §§ 1124 and 1126.

3         Here, Classes 1 through 8 constitute Unimpaired Classes, each of which is conclusively

4    presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code.

5    And, the Voting Classes (collectively, Classes 9-12) have voted to accept the Plan.  *See* Ballot

6    Summary.  Last, Class 13 is not receiving or retaining any property under the Plan on account of

7    their Equity Interests under the Plan and is deemed not to have accepted the Plan in accordance

8    with Section 1126(g) of the Bankruptcy Code. Notwithstanding the deemed rejection of the Plan

9    by Class 13, the Plan is confirmable as a result of its satisfaction of Sections 1129(a)(10) and

10   1129(b) of the Bankruptcy Code.  *See* Carmel Decl. ¶ 75.

11   **J.**     **11 U.S.C. § 1129(a)(9): Priority Claims.**

12        Section 1129(a)(9) encompasses several requirements concerning the payment of

13   unsecured claims entitled to priority distribution pursuant to Section 507(a).  *See* 11 U.S.C.

14   § 1129(a)(9). Here, the treatment of Administrative Claims and Priority Tax Claims under Section

15   2 of the Plan, and of Priority Unsecured Claims under Section 3 of the Plan, satisfies the

16   requirements of, and complies in all respects with, Section 1129(a)(9) of the Bankruptcy Code.

17   *See* Carmel Decl. ¶ 76.  As such, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9).

18   **K.**     **11 U.S.C. § 1129(a)(10): One Consenting Impaired Class.**

19        Section 1129(a)(10) requires that "[i]f a class of claims is impaired under the plan, at least

20   one class of claims that is impaired under the plan has accepted the plan, determined without

21   including any acceptance of the plan by an insider."  11 U.S.C. § 1129(a)(10).  Here, the Plan

22   satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code. As evidenced by the

23   Carmel Decl. ¶ 77, Voting Classes 9 and 10,[5] which are impaired, voted to accept the Plan by the

24   requisite numbers and amounts, determined without including any acceptance of the Plan by any

25   insider (as that term is defined in Section 101(31) of the Bankruptcy Code), as specified under the

26   Bankruptcy Code.  Therefore, Plan satisfies Section 1129(a)(10) of the Bankruptcy Code.

27

28   _____

[5] While Voting Classes 11 and 12 likewise voted to accept the Plan, these classes include insider and affiliate votes.

**L.**   **11 U.S.C. § 1129(a)(11): Feasibility.**

Section 1129(a)(11) requires that a proposed plan be feasible.  Specifically, the Trustee must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

"The purpose of Section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

This Court has explained the feasibility test as follows:

> The feasibility test set forth in § 1129(a)(11) requires the court to scrutinize the plan to determine whether ***it offers a reasonable prospect of success and is workable***.  The debtor must present ample evidence to demonstrate that the plan has a reasonable probability of success. ***Success need not be guaranteed.***  The mere potential for failure of the plan or the prospect of financial uncertainty is insufficient to disprove feasibility.

> While a reviewing court must examine the totality of the circumstances in order to determine whether the plan fulfills the requirements of § 1129(a)(11), ***only a relatively low threshold of proof is necessary to satisfy the feasibility requirement.***  The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan of reorganization can be performed.  However, where the financial realities do not accord with the proponent's projections or where the projections are unreasonable, the plan should not be confirmed.

*See In re Sagewood Manor Assocs. Ltd. P'ship,* 223 B.R. 756, 761-62 (Bankr. D. Nev. 1998) (emphases added); *see also In re Brotby*, 303 B.R. at 191 ("The Code does not require the debtor to prove that success is inevitable [citation omitted], and a relatively low threshold of proof will satisfy § 1129(a)(11) . . . ."); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir. 1986) (affirming plan confirmation over feasibility objection and stating that the debtor presented evidence to demonstrate that the proposed plan "has a reasonable probability of success," thereby satisfying the feasibility test); *Memorandum on Confirmation, In re Rainbow 215, LLC,* U.S. Bankruptcy Court for the District of Nevada, Case No. 09-23414, ECF No. 323 (filed Mar. 25, 2011) ("Generally speaking, the Debtors' threshold to demonstrate the feasibility of a plan is relatively low.").

Here, the Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code.

The Global Settlement Agreement was approved by the Global Settlement Order, resulting in the $108.5 million Beazley Settlement Payment being made to the Estates, which funds shall be used to satisfy the payment obligations under the Plan. Additionally, the Plan provides for the 363 Sale, which will produce additional value to facilitate payments on account of Allowed Claims in accordance with the Plan. Finally, the Plan provides for the establishment of the Liquidation Trust to prosecute litigation claims, which recovery will further be utilized to satisfy the Allowed Claims in accordance with the terms of the Plan and the Liquidation Trust Agreement. Accordingly, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, except as provided in the Plan. *See* Carmel Decl. ¶ 78.

Further, no objections have been raised to confirmation of the Plan on the basis that the Plan is not feasible. And, the Trustee submits that confirmation of the Plan is not likely to be followed by further liquidation except as expressly provided for in the Plan. *See* Carmel Decl. ¶ 79. Accordingly, the Plan meets the feasibility standard of 11 U.S.C. § 1129(a)(11).

## M.    <u>11 U.S.C. § 1129(a)(12): U.S. Trustee's Fees Paid.</u>

Section 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, be paid or provided for in the Plan. The U.S. Trustee has requested modifications to certain Plan language relating to reporting and the payment of U.S. Trustee Fees. The Trustee is working on language with the U.S. Trustee that will be incorporated into the Confirmation Order, resolving the U.S. Trustee's concerns and ensuring satisfaction of the requirements of 11 U.S.C. § 1129(a)(12). *See* Carmel Decl. ¶ 80.

## N.    <u>11 U.S.C. § 1129(a)(13): Continuation of Retiree Benefits.</u>

Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in Section 1114 of the Bankruptcy Code) at levels established pursuant to Section 1114 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(13). Here, the Plan does not alter retiree benefits, to the extent such benefits exist and are provided by the Debtors. *See* Carmel Decl. ¶ 81. Thus, the Plan therefore satisfies the requirements of 11 U.S.C. § 1129(a)(13).

. . .

**O.**    **11 U.S.C. §§ 1129(a)(14) Through (a)(16): Inapplicable Provisions.**

Sections 1129(a)(14), (15), and (16) of the Bankruptcy Code do not apply.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.  Thus, Sections 1129(a)(14), (15), and (16) are each and all inapplicable.  *See* Carmel Decl. ¶ 82.

**P.**    **11 U.S.C. §§ 1129(b)(2): Cramdown.**

Section 1129(b) provides that if a proposed plan meets all the requirements in Section 1129(a), except for class acceptance pursuant to Section 1129(a)(8), then the plan may still be confirmed "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).  Subsections (b)(2)(B) and (b)(2)(C) then describe what is required to establish fair and equitable treatment with the meaning of Section 1129(b)(1).

The requirements of Section 1129(b) of the Bankruptcy Code have been satisfied with respect to Class 13 because the Plan does not discriminate unfairly, and is fair and equitable, with respect to this Class.  Not only has no Equity Interest Holder objected to the Plan or contended that any senior class is receiving more than the full value of its claim, but Section 1129(b)(2)(C) is satisfied as no junior class will receive or retain property on account of such interest under the Plan: the Plan follows the "absolute priority" rule with respect to Class 13 because no Class junior to this Classes will receive any distribution under the Plan on account of junior claims or interests, and Class 13 is fairly excluded from the other Classes under the Plan based on its legal character and the circumstances of these Chapter 11 Cases.  *See* Carmel Decl. ¶ 83.  Thus, Section 1129(b) of the Bankruptcy Code is satisfied, and the Plan should be confirmed.

**Q.**    **Other Provisions of the Bankruptcy Code Have Been Complied With.**

**1.**    **11 U.S.C. § 1129(c): Only One Plan:**  The Plan satisfies the requirements of Section 1129(c) of the Bankruptcy Code.  The Plan is the only current chapter 11 plan filed in the Debtors' Chapter 11 Cases.  *See* Carmel Decl. ¶ 84.

**2.**    **11 U.S.C. § 1129(d): Principal Purpose of the Plan:**  Here, the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.  As evidenced by its terms, and the evidence of record proffered in support of the Plan's confirmation, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.  *See* Carmel Decl. ¶ 85.

. . .

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

3. **11 U.S.C. § 1129(e): Not Small Business Case:** Section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases as these are not small business cases. *See* Carmel Decl. ¶ 86.

4. **11 U.S.C. § 1125(e): Good Faith Solicitation:** The Trustee has acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of his respective activities relating to support and consummation of the Plan, and solicitation of acceptances of the Plan, Carmel Decl. ¶ 87, and is therefore entitled to the protections afforded by 11 U.S.C. § 1125(e).

## R.    Satisfaction of Confirmation Requirements.

Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in Section 1129 of the Bankruptcy Code. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including holders of Claims and Equity Interests that voted to reject the Plan. *See* Carmel Decl. ¶ 93.

## S.    If Necessary, Non-Material Plan Modifications Are Permitted.

Section 1127(a) allows for plan modifications, and Bankruptcy Rule 3019(a) establishes the procedural requirements for plan modifications pre-confirmation. *See* 11 U.S.C. § 1127(a); Fed. R. Bankr. P. 3019(a). Plan modifications do not require a new disclosure statement and court approval unless the modifications are material. *See In re Simplot*, 2007 WL 2479664, *11 (Bankr. D. Idaho 2007) (citing *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988)). The word "material" in this context has been described as "so affect[ing] a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *See id.* (quoting *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)). To the extent any Plan modifications are needed, they will not be material so as to cause a creditor who voted to accept the plan to reconsider its acceptance. Further, in conformity with Section II.G. of the Court-approved Global Settlement Agreement, neither the Plan nor the Confirmation Order shall be modified without prior written consent of the parties to the Global Settlement Agreement.

. . .

. . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**
**CONCLUSION**

The Trustee respectfully submits that he has satisfied all of the requirements of Sections 1125 and 1129 and therefore requests that the Disclosure Statement be approved on a final basis pursuant to Section 1125, and the Plan be confirmed pursuant to Section 1129.

Dated this 17th day of September, 2025.

GARMAN TURNER GORDON LLP


By: */s/ Talitha Gray Kozlowski*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, PH.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11*
    *Trustee*