1  GARMAN TURNER GORDON LLP
   GREGORY GARMAN, ESQ.
2  Nevada Bar No. 6654
   Email: ggarman@gtg.legal
3  TALITHA GRAY KOZLOWSKI, ESQ.
   Nevada Bar No. 9040
4  Email: tgray@gtg.legal
   MARY LANGSNER, Ph.D.
5  Nevada Bar No. 13707
   mlangsner@gtg.legal
6  7251 Amigo Street, Suite 210
   Las Vegas, Nevada 89119
7  Tel: 725.777.3000
   *Attorneys for Michael Carmel,*
8  *Chapter 11 Trustee*

9
                  **UNITED STATES BANKRUPTCY COURT**
10                       **DISTRICT OF NEVADA**

11 | In re: | | Lead Case No.: 25-10341-nmc |
   |        | | Chapter 11 |

12 | NUMALE CORPORATION, | | *Jointly administered with:* |

13 |   AFFECTS THIS DEBTOR, | ☐ | Feliciano NuMale Nevada PLLC, |

14 |   AFFECTS FELICIANO | ☐ | Case No. 25-10342-nmc |
   |   NUMALE NEVADA PLLC, |

15 |   NUMEDICAL SC, | ☐ | NuMedical SC |
   |                 |   | Case No. 25-10343-nmc |

16 |   NUMALE COLORADO SC, | ☐ | NuMale Colorado SC, |
17 |                       |   | Case No. 25-10344-nmc |

   |   NUMALE FLORIDA TB PLLC, | ☐ | NuMale Florida TB PLLC, |
18 |   NUMALE NEBRASKA LLC, | ☐ | Case No. 25-10345-nmc |

19 |   NUMALE NEW MEXICO SC, | ☐ | NuMale Nebraska LLC |
20 |                        |   | Case No. 25-10346-nmc |

   |   NUMALE ALL DEBTORS, | ☒ | NuMale New Mexico SC |
21 |                      |   | Case No. 25-10347-nmc |

22 |       Debtors. |

23 | | | Hearing Date:  September 24, 2025 |
   | | | Hearing Time: 9:30 a.m. |

24

25        **DECLARATION OF MICHAEL W. CARMEL IN SUPPORT OF PLAN
          CONFIRMATION AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT**

26        I, Michael W. Carmel, hereby declare as follows:

27        1.       I am over the age of 18 and mentally competent.  I am the duly appointed Chapter

28

11 Trustee ("Trustee") over the bankruptcy estates of Debtors NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors") and as such, have personal knowledge of the facts in this matter and if called upon to testify, could and would do so.

2. I make this declaration in support of confirmation of the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits thereto, and as may be amended, modified, or supplemented, including via the *Notice of Filing Plan Supplement to Joint Plan of Reorganization* [ECF No. 595], the "Plan"[1]) and final approval of the *Disclosure Statement to Accompany Joint Plan* [ECF No. 435] ("Disclosure Statement").

3. As the Trustee, I am familiar with Debtors' daily business, operations, and financial affairs. Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge of Debtors' operations and finances, information learned from my review of relevant documents, my independent investigations, and information supplied to me by my counsel.

4. Neither I nor my counsel have violated applicable state or bankruptcy law in proposing the Plan, and the Plan does not violate any provisions of applicable state or bankruptcy law. Furthermore, the Plan has been proposed in good faith and is designed to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, namely, the resolution of claims objections, the liquidation of any remaining assets including Litigation Claims, and the satisfaction of Allowed Claims through Distributions.

5. Attached to the Ballot Summary is a compose of the true and correct copies of the Ballots received by my counsel or me regarding the Plan.

. . .

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan. To the extent any descriptions or summaries of Plan provisions, Sections, or treatment set forth herein are inconsistent with the precise language of the Plan, such descriptions and summaries herein are intended for descriptive and illustrative purposes only, and in all circumstances the precise language in the Plan controls.

6.      The solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada ("Local Rules"), and any other applicable rules, laws, and regulations.

7.      The Solicitation Packages were distributed to Holders of Claims in the Voting Classes that held a Claim as of the Voting Record Date of July 1, 2025.

8.      As evidenced herein and approved by the Solicitation Procedures Order, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, the Disclosure Statement, and applicable nonbankruptcy laws, rules, and regulations.

**HISTORY AND BACKGROUND**

9.      On or about January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned  bankruptcy cases (collectively, the "Chapter 11 Cases").  *See, e.g.*, ECF No. 1.

10.      On or about April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*.  See ECF No. 130.

11.      On or about April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates.  See ECF No. 132.

12.      On or about April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed me as the Chapter 11 Trustee for Debtors' Estates.  *See* ECF No. 140.

13.      On or about April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving my appointment.  Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

14.     Also on or about April 7, 2025, I filed my *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting my appointment as the Chapter 11 Trustee for the Debtors' Estates. *See* ECF No. 157.

15.     On or about April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

16.     Immediately upon my appointment I began investigating the assets and liabilities of the Debtors and their Estates.

17.     The Court established a Bar Date for claims to be filed by non-governmental units, which was June 30, 2025. The separate Bar Date for governmental units was July 22, 2025.

**PLAN AND DISCLOSURE STATEMENT**

18.     On or about August 1, 2025, my counsel filed the *Ex Parte Motion for Order (A) Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization; and (B)(I) Setting Deadlines for Balloting and Opposing Confirmation of Joint Plan of Reorganization and Final Approval of Disclosure Statement; (II) Approving Form of Ballots; (III) Approving Solicitation and Voting Procedures; and (IV) Setting the Confirmation Hearing on the Plan* [ECF No. 436].

19.     On or about August 1, 2025, my counsel filed the *Local Rule 3017 Certificate of Michael Carmel in Support of Ex Parte Motion for Order (A) Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization; and (B)(I) Setting Deadlines for Balloting and Opposing Confirmation of Joint Plan of Reorganization and Final Approval of Disclosure Statement; (II) Approving Form of Ballots; (III) Approving Solicitation and Voting Procedures; and (IV) Setting the Confirmation Hearing on the Plan* [ECF No. 437].

20.     On or about August 5, 2025, the Court entered the *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 447] (the Solicitation Procedures Order).

21.     On or about August 5, 2025, my counsel filed a *Notice of: (i) Hearing to Consider Final Approval of Conditionally Approved Disclosure Statement and Confirmation of Joint Plan*

*of Reorganization; (ii) Procedures for Objecting to Final Approval of Conditionally Approved Disclosure Statement and Confirmation of the Plan and Evidence in Support Thereof; and (iii) Procedures and Deadlines for Voting on the Plan* [ECF No. 449] (the "<u>Confirmation Notice</u>").

22.     On or about August 7, 2025, my counsel filed a *Certificate of Service* at ECF No. 451.  A supplement was later filed on or about August 27, 2025 [ECF No. 540].

23.     On or about September 4, 2025, the Court signed the *Order Granting Motion to Approve Compromise Under Rule 9019* [ECF No. 582] (the "<u>9019 Order</u>"), thereby approving of the Global Settlement Agreement.

24.     I believe the Disclosure Statement contains more than sufficient "adequate information" as required by Section 1125 (a) of the Bankruptcy Code.  I therefore request the Court enter an order approving the Disclosure Statement on a final basis.

25.     I believe, based on my personal knowledge, that the Plan and Disclosure Statement comply with all applicable provisions of the Bankruptcy Code as required by 11 U.S.C. §§ 1122, 1123(a)(1), 1125, and 1129(a)(1).

26.     Administrative Claims and Priority Tax Claims are identified in Section 2 of the Plan and need not be classified.  Section 3 of the Plan provides for the separate classification of Claims into thirteen (13) separate classes.  Each Class of Claims contains only Claims that are substantially similar to the other claims within that Class.  Accordingly, I believe 11 U.S.C. §§ 1122 and 1123(a)(1) are satisfied.

27.     Sections 3 and 4 of the Plan specifies that certain Claims and Equity Interests, as applicable in the following Classes, are impaired under the Plan within the meaning of 11 U.S.C. § 1124 and entitled to vote:

> Class 9 – Sanchez Claim;
>
> Class 10 – General Unsecured Claims
>
> Class 11 – Intercompany Claims
>
> Class 12 – Subordinated Claims

28.     Class 13 Equity Interests are also impaired and are deemed to have rejected the Plan and thus not entitled to vote.

29.     The Claims of the creditors in the following Classes are unimpaired, are deemed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f), and are not entitled to vote:

Class 1 – Newtek Secured Claim

Class 2 – Kalamata Claim

Class 3 – EBF Holdings Claim

Class 4 – Fox Funding Claim

Class 5 – Top Tier Claim

Class 6 – LCF Group Claim

Class 7 – Ford Motor Claim

Class 8 – Priority Unsecured Claims

30.     I believe the above-noted classification of Claims satisfies 11 U.S.C. §§ 1123(a)(2) and (3).

31.     The Plan provides the same treatment for each Claim or interest in each respective Class, unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.  Accordingly, I believe the Plan satisfies 11 U.S.C. § 1123(a)(4).

32.     I believe Section 5 of the Plan, along with various other provisions of the Plan, provides adequate and proper means for the Plan's implementation, including the establishment of a post-confirmation Liquidation Trust and the transfer of a variety of Litigation Claims to the Liquidation Trust, which include those listed on Schedule 1.1.82 to the Plan.  Accordingly, I believe the Plan satisfies 11 U.S.C. § 1123(a)(5).

33.     The Plan does not provide for the issuance of non-voting equity securities.  Accordingly, I believe 11 U.S.C. § 1123(a)(6) is inapplicable.

34.     Section 5.16 of the Plan provides that I, as the Trustee, shall have sole control and authority over each of the Reorganized Debtors.  The Liquidation Trustee shall be compensated in accordance with the parameters of Section 326 of the Bankruptcy Code, except that the Liquidation Trustee shall not need to seek Bankruptcy Court approval prior to payment.  I will also serve as the Liquidation Trustee.  Accordingly, I believe 11 U.S.C. §§ 1123(a)(7) and 1129(a)(5) have been satisfied.

35.     Section 6 of the Plan provides for the assumption of specific executory contracts and unexpired leases.  Any decision regarding the assumption of these executory contracts and unexpired leases is the result of my sound business judgment and is an exercise of my business judgment.  Accordingly, I believe the Plan is consistent with 11 U.S.C. §§ 1123(b)(1) and (2).

36.     The Plan appropriately provides that all Litigation Claims, including as listed on Schedule 1.1.82 to the Plan (which includes the Quintairos Claims and the Quintairos Non-Debtor Claims) are transferred to the Liquidation Trust, thus reserving them for the benefit of the Estates and their creditors.  I believe the Plan provisions regarding the Liquidation Trust and the transfer of Litigation Claims to the Liquidation Trust (thereby preserving them for the benefit of the Estates and creditors) are appropriate, fair, equitable, and reasonable, and are in the best interests of the Estates and creditors.  Accordingly, I believe 11 U.S.C. § 1123(b)(3)(B) is also satisfied.

37.     I have satisfied the requirements of 11 U.S.C. § 1129(a)(2), and I have complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court.

38.     The Debtors are eligible to be debtors under 11 U.S.C. § 109.

39.     I proposed the Plan (including all documents necessary to effectuate the Plan and the transactions contemplated in the Plan) in good faith and not by any means forbidden by law.  The Plan and the transactions contemplated thereby are the result of significant arm's-length negotiations with creditors and stakeholders.  The Plan was proposed with legitimate purposes and in good faith.  I believe 11 U.S.C. § 1129(a)(3) is therefore satisfied.

40.     The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, and thus I believe the Plan satisfies 11 U.S.C. § 1129(a)(4).

41.     I believe the Plan satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code.  The provisions in Section 5 and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including payment of certain Allowed Claims on the

Effective Date from the Distributable Assets, the creation of a Liquidation Trust to liquidate or otherwise dispose of the Liquidation Trust Assets (initially consisting of the Liquidation Trust Reserve plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan, and (ii) the funding of the Disputed Claim Reserve), and the reorganization of Debtors to effectuate the 363 Sale.

42.    Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the Bankruptcy Code, on the Effective Date, of the Debtors' Estates for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes.  As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged such that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are henceforth treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are hereby deemed cured as of the Effective Date.  For these reasons I believe the Plan satisfies 11 U.S.C. § 1123(a)(5).

43.    I also believe the Plan satisfies the requirements of Section 1123(a)(6) of the Bankruptcy Code: no party is authorized to issue nonvoting equity securities under the Plan, and Section 5.16 of the Plan provides that each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

44.    Exhibit 2 to the Disclosure Statement sets forth detailed Liquidation Analysis for

each of the Debtors and demonstrates that the Plan provides a better treatment for creditors than creditors would receive in a chapter 7 liquidation. Accordingly, I believe 11 U.S.C. § 1129(a)(7) is satisfied.

45. All Impaired Classes that were entitled to vote (Classes 9, 10, 11, and 12) accepted the Plan. Class 13 (Equity Interests) is impaired under the Plan and deemed to have rejected the Plan. Accordingly, I believe 11 U.S.C. § 1129(a)(8) is not satisfied.

46. Section 2 of the Plan provides for the payment of Administrative Claims and Priority Tax Claims. Accordingly, I believe 11 U.S.C. § 1129(a)(9) is satisfied.

47. As evidenced herein, the Classes 9 and 10, which are impaired, voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in Section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. I therefore believe the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

48. I believe the Plan is feasible and is not likely to be followed by the liquidation, or the need for further financial reorganization, of any of the Debtors or any successor of any of the Debtors. The Plan provides for the prosecution or continued prosecution of Litigation Claims through the Liquidation Trust, which will distribute monies when funds are available. Accordingly, I believe 11 U.S.C. § 1129(a)(11) is satisfied.

49. I submit that confirmation of the Plan is not likely to be followed by further liquidation except as expressly provided for in the Plan.

50. Although Section 1129(a)(8) has not been satisfied, the Court can nevertheless confirm the Plan so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Class 13, the only impaired, non-accepting Class. *See* 11 U.S.C. § 1129(b)(1). As set forth more fully herein, I believe the Plan satisfies these requirements and can, and should, therefore be confirmed.

51. I believe the Plan satisfies the "fair and equitable" requirements of 11 U.S.C. § 1129(b). The Plan does not unfairly discriminate against Class 13 Equity Interests. Once this Court confirms the Plan, more than $300,000,000 in unpaid unsecured claims will remain, the

payment of which is dealt with through the Plan and the Liquidation Trust.  The Debtors' Estates are therefore hopelessly insolvent.  The Plan provides that Equity Interests, which stand behind the creditors who have not been paid in full, will not receive or retain any property on account of their Equity Interests.  As the Equity Interests stand behind more than three hundred million dollars in unpaid creditor claims, I believe Section 1129(b)(2)(C)(ii) is satisfied and the Plan can be confirmed.

52.     The Plan is a joint plan for each of the seven Debtors.  Section 5.3 of the Plan provides for the substantive consolidation of the Estates.

53.     I have reviewed *In re Bonham*, 229 F.3d 750 (9th Cir. 2000).  In *Bonham*, the Ninth Circuit adopted the test set forth by the Second Circuit in *In re Augie/Restivo*, 860 F.2d 515, 518 (2d Cir. 1988) to determine whether substantive consolidation is appropriate.  *In re Bonham*, 229 F.3d at 766.

54.     The factors to consider are (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity and extended credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.  Either factor is sufficient to order substantive consolidation.  *In re Bonham*, 229 F.3d at 766.

55.     My investigations in these Chapter 11 Cass have revealed multiple instances where creditors extended credit to one or more (and even several) of the Debtor entities as a single economic unit.  For example, the secured claim of Newtek Bank, National Association, as were several other alleged secured creditors including Merchant Cash Advance (MCA) creditors.

56.     Additionally, based on my investigations to date, I have determined the financial affairs of each of the Debtors are so entangled that consolidation will benefit all creditors.  It would be extremely time-consuming and expensive to make any effort to even attempt to "unscramble" the Debtors' heavily intertwined financial affairs, and I believe there will be no realizable benefit to the Estates in incurring the expense associated with even attempting to do so.

57.     As of the execution of this Declaration I am not aware of any creditor or party in interest objecting to the Plan on the basis of substantive consolidation.

58.     The one filed objection to confirmation of the Plan has been consensually resolved

through stipulation [ECF No. 598[ (approved by an Order of this Court, ECF No. 607), and thus as of my execution of this Declaration the Plan is not opposed.

59. I respectfully request the Court confirm the Plan for all of the reasons set forth in this Declaration, in the Plan, and in the *Brief in Support of Confirmation of Joint Plan of Reorganization*, which I understand is concurrently being filed by my counsel along with this Declaration.

## CONFIRMATION STANDARDS

60. The Plan classifies Claims and Equity Interests in the following thirteen (13) classes: Newtek Secured Claim (Class 1); Kalamata Claim (Class 2); EBF Holdings Claim (Class 3); Fox Funding Claim (Class 4); Top Tier Claim (Class 5); LCF Group Claim (Class 6); Ford Motor Claim (Class 7); Priority Unsecured Claims (Class 8); Sanchez Claim (Class 9); General Unsecured Claims (Class 10); Intercompany Claims (Class 11); Subordinated Claims (Class 12); Equity Interests (Class 13).

61. Asserted secured creditors are appropriately separately classified by virtue of their asserted liens against Debtors' assets. Priority unsecured creditors are appropriately separately classified as a result of Section 507's grant of priority in payment over general unsecured creditors. Mr. Sanchez, as the only jury verdict creditor and for which there are multiple co-obligors, is appropriately classified in his own Class. Mr. Sanchez is also appropriately separately classified due to his treatment pursuant to the Global Settlement Agreement. All other general unsecured creditors are properly separately classified as they share the same payment priorities and rights with respect to the Debtors. Intercompany Claims are likewise properly separately classified as they are comprised of Claims held by one the Debtors against one or more of the other Debtors. Next, Subordinated Claims are properly separately classified, as they are comprised of Claims held by Insiders and Affiliates for which equitable subordination was sought. Finally, Equity Interests are interests and not claims and are therefore also properly separately classified.

62. Section 1123(a) of the Bankruptcy Code sets forth eight requirements with which the proponent of every Chapter 11 plan must comply. As demonstrated below, the Plan complies

with each of the applicable requirements.[2]

    a.    **Section 1123(a)(1).**  Subsection (a)(1) requires that a plan designate classes of claims and equity interests subject to Section 1122 of the Bankruptcy Code.  11 U.S.C. § 1123(a)(1).  Apart from Administrative Claims and Priority Tax Claims addressed in Section 2 of the Plan, which need not be designated, Section 3 of the Plan designates twelve (12) classes of Claims and one (1) class of Equity Interests.  As set forth above, valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests.  Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  Accordingly, the Plan satisfies Section 1123(a)(1) of the Bankruptcy Code.

    b.    **Section 1123(a)(2): Specified Unimpaired Classes.**  Subsection (a)(2) requires a plan to specify any class of claims that is not impaired under the plan.  11 U.S.C. § 1123(a)(2).  Sections 3 and 4 of the Plan specify that Class 1 (Newtek Secured Claim); Class 2 (Kalamata Claim); Class 3 (EBF Holdings Claim); Class 4 (Fox Funding Claim); Class 5 (Top Tier Claim); Class 6 (LCF Group Claim); Class 7 (Ford Motor Claim); and Class 8 (Priority Unsecured Claims) are unimpaired under the Plan.  Accordingly, I believe the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

    c.    **Section 1123(a)(3): Specified Treatment of Impaired Classes.**  Subsection (a)(3) requires a plan to specify the treatment of impaired classes of claims and interests.  11 U.S.C. § 1123(a)(3).  Sections 3 and 4 of the Plan specify the treatment of impaired claims and interests in Class 9

---

[2] Section 1123(a)(8) of the Bankruptcy Code does not apply because Debtors are not individuals.

(Sanchez Claim); Class 10 (General Unsecured Claims); Class 11 (Intercompany Claims); Class 12 (Subordinated Claims); and Equity Interests (Class 13). Accordingly, I believe the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

d. **Section 1123(a)(4): No Discrimination.** Subsection (a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to less favorable treatment than other class members. 11 U.S.C. § 1123(a)(4). Section 4 of the Plan specifies the treatment of claims in each respective Class and provides for the same treatment for each claim or interest in each respective class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.

e. **Section 1123(a)(5): Adequate Means for Plan Implementation.** Subsection (a)(5) requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Section 5 (Means for Implementation of Plan), among other Plan provisions, and the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including payment of certain Allowed Claims on the Effective Date from the Distributable Assets (i.e., (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and (v) the proceeds from the 363 Sale), the creation of a Liquidation Trust to liquidate or otherwise dispose of the Liquidation Trust Assets, initially consisting of the Liquidation Trust Reserve plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve, and the reorganization of Debtors to

effectuate the 363 Sale.  Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the Bankruptcy Code, on the Effective Date, of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes.  As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are automatically expunged such that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are deemed cured as of the Effective Date.

f.    **Section 1123(a)(6): Voting Power of Equity Securities.**  Section 1123(a) of the Bankruptcy Code sets forth eight requirements with which the proponent of every Chapter 11 plan must comply.  As demonstrated below, the Plan complies with each of the applicable requirements.[3]

a.    **Section 1123(a)(1).**  Subsection (a)(1) requires that a plan designate classes of claims and equity interests subject to Section 1122 of the Bankruptcy Code.  11 U.S.C. § 1123(a)(1).  Apart from Administrative Claims and Priority Tax Claims addressed in Section 2 of the Plan, which need not be

---

[3] Section 1123(a)(8) of the Bankruptcy Code does not apply because Debtor is not an individual.

designated, Section 3 of the Plan designates twelve (12) classes of Claims and one (1) class of Equity Interests. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests. Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the Plan satisfies Section 1123(a)(1) of the Bankruptcy Code.

b.    **Section 1123(a)(2): Specified Unimpaired Classes.** Subsection (a)(2) requires a plan to specify any class of claims that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). Sections 3 and 4 of the Plan specify that Class 1 (Newtek Secured Claim); Class 2 (Kalamata Claim); Class 3 (EBF Holdings Claim); Class 4 (Fox Funding Claim); Class 5 (Top Tier Claim); Class 6 (LCF Group Claim); Class 7 (Ford Motor Claim); and Class 8 (Priority Unsecured Claims) are unimpaired under the Plan. Accordingly, the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

c.    **Section 1123(a)(3): Specified Treatment of Impaired Classes.** Subsection (a)(3) requires a plan to specify the treatment of impaired classes of claims and interests. 11 U.S.C. § 1123(a)(3). Sections 3 and 4 of the Plan specify the treatment of impaired claims and interests in Class 9 (Sanchez Claim); Class 10 (General Unsecured Claims); Class 11 (Intercompany Claims); Class 12 (Subordinated Claims); and Equity Interests (Class 13). Accordingly, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

d.    **Section 1123(a)(4): No Discrimination.** Subsection (a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to less favorable treatment

than other class members. 11 U.S.C. § 1123(a)(4). Section 4 of the Plan specifies the treatment of claims in each respective Class and provides for the same treatment for each claim or interest in each respective class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.

e.    **Section 1123(a)(5): Adequate Means for Plan Implementation.**

Subsection (a)(5) requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Section 5 (Means for Implementation of Plan), among other Plan provisions, and the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including payment of certain Allowed Claims on the Effective Date from the Distributable Assets (i.e., (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and (v) the proceeds from the 363 Sale), the creation of a Liquidation Trust to liquidate or otherwise dispose of the Liquidation Trust Assets, initially consisting of the Liquidation Trust Reserve plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve, and the reorganization of Debtors to effectuate the 363 Sale. Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the Bankruptcy Code, on the Effective Date, of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes. As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged such that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are henceforth treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are hereby deemed cured as of the Effective Date.

f.    **Section 1123(a)(6): Voting Power of Equity Securities.**    Subsection (a)(6) prohibits the issuance of nonvoting equity securities and requires amendment of a debtor's charter to so provide, and further requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power. 11 U.S.C. § 1123(a)(6).  Here, no party is authorized to issue nonvoting equity securities under the Plan and Section 5.16 of the Plan provides that each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.  Accordingly, I believe the Plan satisfies Section 1123(a)(6) of the Bankruptcy Code.

g.    **Section 1123(a)(7): Directors and Officers.**  Subsection (a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7).

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Here, the Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code. The identity and powers of the Liquidation Trustee were disclosed in the Plan, and the Liquidation Trust Agreement was filed in the Plan Supplement.  The selection of the Liquidation Trustee is consistent with the interests of Holders of Claims and Equity Interests and with public policy. Additionally, the Plan clearly provides in Section 5.16 that I as Trustee shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and is hereby authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.  Accordingly, I believe the Plan satisfies Section 1123(a)(7) of the Bankruptcy Code.

63.     I believe the Plan is consistent with Section 1123(b)(3) of the Bankruptcy Code. Pursuant to Section 1123 of the Bankruptcy Code, and considering the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  The compromise and settlement of such Claims and Equity Interests embodied in the Plan and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

64.     Further, Sections 8.2, 8.5, 8.6, and 8.7 of the Plan provide release, discharge, injunction, and exculpation as granted by the Plan (collectively, the "Release Provisions").  The Confirmation Hearing Notice [ECF No. 449] sent to Holders of Claims and Equity Interests, and all creditors and parties in interest in these Chapter 11 Cases, unambiguously and prominently stated that the Plan contains the Release Provisions and provided therein a copy of the Release Provisions excerpted from the Plan.  I respectfully proffer that I have satisfied the applicable standard with respect to the propriety of the Release Provisions.  Such provisions are a necessary

and integral element of the Plan and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.  Also, the Release Provisions are: (a) in exchange for the good and valuable consideration provided; (b) a good faith settlement and compromise of the Claims released under the Plan; and (c) given, and made, after due notice and opportunity for hearing.  Creditors have voted in favor of the Plan, including the Release Provisions.  The Plan, including the Release Provisions, was negotiated by sophisticated parties represented by able counsel. The Release Provisions are therefore the result of an arm's-length negotiation process.

65.     Additionally, the exculpation, described in Section 8.7 of the Plan (the "Exculpation"), is appropriate under applicable law because the Exculpated Parties are limited to fiduciaries of the Estates, and the other primary stakeholders in the Global Settlement Agreement (Mr. Sanchez and Beazley), and because the provision was proposed in good faith, is appropriately limited in scope, and includes a carve-out for gross negligence and willful misconduct.  And the limitation of liability of the Liquidation Trustee (the "Limitation of Liability"), described in Section 8.3 of the Plan is also appropriate under applicable law because it is essential to protect the Liquidation Trustee who is effectuating the Plan and administering and overseeing the Liquidation Trust, because it was proposed in good faith, because it is appropriately limited in scope, and because it includes a carve-out for gross negligence, willful misconduct, intentional breaches of the Global Settlement Agreement or the Liquidation Trust Agreement, and fraud.  Last, the injunction provision set forth in Section 8.6 of the Plan ("Injunction") is necessary to implement, preserve, and enforce the provisions of the Plan, the Release Provisions, the Exculpation, and the Limitation of Liability, and it is narrowly tailored to achieve this purpose. The Exculpated Parties subject to the Exculpation have, and, upon entry of the Confirmation Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Plan.

66.     The other discretionary provisions of the Plan are appropriate and consistent with

the applicable provisions of the Bankruptcy Code; therefore I believe this satisfies Section 1123(b)(6) of the Bankruptcy Code.

. . .

67.     Since entry of the Disclosure Statement Order, no party has since objected to adequacy of the Disclosure Statement.  Further, the Disclosure Statement provides an overview of the Plan, a summary of the voting process, a detailed description of Debtors' business and the events occurring during the Chapter 11 Cases, a detailed description of the Plan, a discussion of risk factors associated with the Plan, a discussion of federal income tax consequences, a discussion of alternatives to the Plan and a liquidation analysis.

68.     I and my agents have complied in good faith with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of 11 U.S.C. § 1129(a)(2).  Specifically:

     a.   The Debtors are each an eligible debtor under 11 U.S.C. § 109, and I am a proper proponent of the Plan under 11 U.S.C. § 1121(a);

     b.   I have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

     c.   I have complied with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy laws, rules, and regulations, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages,[4] and related documents and notices, and in soliciting and tabulating the votes on the Plan.

69.     Accordingly, I submit that the Disclosure Statement is adequate under Section 1125 and, therefore, that the Plan and Disclosure Statement satisfy Section 1129(a)(2) of the Bankruptcy Code.

70.     The Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code.

---

[4] Following entry of the Solicitation Procedures Order, the Plan, the Disclosure Statement, the Confirmation Hearing Notice, and the ballots were transmitted and served to all Holders of Claims in the Voting Classes, in compliance with the Bankruptcy Code, including Sections 1125 and 1126 thereof; the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018; the Local Rules, including Local Rule 3017; the Solicitation Procedures Order; and any applicable nonbankruptcy law (collectively, the "Solicitation Packages").  *See* ECF No. 451.

Considering the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the support of the Voting Classes for the Plan, and the transactions to be implemented pursuant thereto, I have proposed the Plan in good faith and not by any means forbidden by law, and the Plan does not violate any provisions of applicable state or bankruptcy law.   These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing me to implement an orderly liquidation of Litigation Claims through the Liquidation Trust, to substantively consolidate the Estates for confirmation purposes, and to reorganize the Debtors to effectuate and close the 363 Sale before the Reorganized Debtors are ultimately wound down.

71.    Section 1129(a)(4) requires that all payments of professional fees made from estate assets be subject to review and approval by the court.  Consistent with Section 1129(a)(4), the procedures set forth in the Plan for the Court's review and ultimate approval of the Administrative Claims to be paid by the Estates or the Liquidation Trust, as the case may be, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, in either instance, incurred in connection with the Chapter 11 Cases through the Effective Date, satisfy the objectives of, and are in compliance with, Section 1129(a)(4) of the Bankruptcy Code.

72.    I have satisfied the requirements of 11 U.S.C. § 1129(a)(5).  The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement.  Additionally, the Plan discloses that I as Trustee shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law.

73.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

74.    The Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses attached to the Disclosure Statement and the other evidence related thereto in support of the Plan proffered in connection with it confirmation (a) are reasonable,

persuasive, and credible as of the dates such analyses or evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

75.    Classes 1 through 8 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code. And, the Voting Classes (collectively, Classes 9-12) have voted to accept the Plan.  *See* Ballot Summary.  And Class 13 is not receiving or retaining any property under the Plan on account of their Equity Interests under the Plan and is deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code. Notwithstanding the deemed rejection of the Plan by Class 13, I believe the Plan is confirmable as a result of its satisfaction of Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

76.    The treatment of Administrative Claims and Priority Tax Claims under Section 2 of the Plan, and of Priority Unsecured Claims under Section 3 of the Plan, satisfies the requirements of, and complies in all respects with, Section 1129(a)(9) of the Bankruptcy Code.

77.    The Voting Classes 9 and 10, which are impaired,[5] voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in Section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code.  Therefore, I believe the Plan satisfies Section 1129(a)(10) of the Bankruptcy Code.

78.    The Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code. The Global Settlement Agreement was approved by the Global Settlement Order, resulting in the $108.5 million Beazley Settlement Payment being made to the Estates, which funds shall be used to satisfy the payment obligations under the Plan.  Additionally, the Plan provides for the 363 Sale,

---

[5] While Voting Classes 11 and 12 likewise voted to accept the Plan, these classes include insider and affiliate votes.

which will produce additional value to facilitate payments on account of Allowed Claims in accordance with the Plan. Finally, the Plan provides for the establishment of the Liquidation Trust to prosecute litigation claims, which recovery will further be utilized to satisfy the Allowed Claims in accordance with the terms of the Plan and the Liquidation Trust Agreement. Accordingly, I believe the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, except as provided in the Plan.

79.    As of the execution of this Declaration, no objections have been raised to confirmation of the Plan on the basis that the Plan is not feasible.  And, I submit that confirmation of the Plan is not likely to be followed by further liquidation except as expressly provided for in the Plan.

80.    Section 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, be paid or provided for in the Plan.  The U.S. Trustee has requested modifications to certain Plan language relating to reporting and the payment of U.S. Trustee Fees.  I am working on language with the U.S. Trustee that will be incorporated into the Confirmation Order, resolving the U.S. Trustee's concerns and ensuring satisfaction of the requirements of 11 U.S.C. § 1129(a)(12).  Therefore, I believe the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

81.    The Plan does not alter retiree benefits, to the extent such benefits exist and are provided by the Debtors; as such, I believe the Plan therefore satisfies the requirements of Section 1129(a)(13) of the Bankruptcy Code.

82.    The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.  Thus, I believe Sections 1129(a)(14), (15), and (16) are each and all inapplicable.

83.    The requirements of Section 1129(b) of the Bankruptcy Code have been satisfied with respect to Class 13 because the Plan does not discriminate unfairly, and is fair and equitable, with respect to this Class.  Not only has no Equity Interest Holder objected to the Plan or contended that any senior class is receiving more than the full value of its claim, but Section 1129(b)(2)(C)

is satisfied as no junior class will receive or retain property on account of such interest under the Plan: the Plan follows the "absolute priority" rule with respect to Class 13 because no Class junior to this Classes will receive any distribution under the Plan on account of junior claims or interests, and Class 13 is fairly excluded from the other Classes under the Plan based on its legal character and the circumstances of these Chapter 11 Cases.

84.     The Plan satisfies the requirements of Section 1129(c) of the Bankruptcy Code; the Plan is the only current chapter 11 plan filed in the Debtors' Chapter 11 Cases.

85.     I also believe the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code. As evidenced by its terms, and the evidence of record proffered in support of the Plan's confirmation, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

86.     Section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases as these are not small business cases.

87.     I have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of his respective activities relating to support and consummation of the Plan, and solicitation of acceptances of the Plan, and believe I am therefore entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

88.     Each of the conditions precedent to the Effective Date, as set forth in Section 7 of the Plan, has been or I believe is reasonably likely to be satisfied or waived in accordance with Section 7.3 of the Plan.

89.     All Plan documents necessary to implement the Plan, including the Liquidation Trust Agreement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and the Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

90.     I have disclosed all material facts regarding the Plan, including with respect to consummation of the Plan and any and all Plan-related documents.

91.     I, both in (1) my capacity as the current Chapter 11 Trustee; and (2) as the proposed

Liquidation Trustee, have been and will be acting in good faith to the extent I proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to effectuate the Plan and any and all Plan-related documents.

92.    I agree to the modification to Section 5.12 of the Plan as set forth in the *Brief in Support of Confirmation of Joint Plan of Reorganization and Final Approval of Disclosure Statement to Accompany Joint Plan of Reorganization*, filed concurrently herewith.

93.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, I believe the Plan satisfies the requirements for Confirmation set forth in Section 1129 of the Bankruptcy Code.  Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including holders of Claims and Equity Interests that voted to reject the Plan.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

DATED this 17th day of September, 2025.

*/s/ Michael W. Carmel*
MICHAEL W. CARMEL, ESQ.
*Chapter 11 Trustee*

**Garman Turner Gordon**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000