LOUIS M. BUBALA III
Nevada Bar No. 8974
KAEMPFER CROWELL
50 W. Liberty St., Ste. 1100
Reno, Nevada 89501
Telephone: (775) 852-3900
Facsimile: (775) 327-2011
E-Mail: lbubala@kcnvlaw.com

ISABELLA R. GOLDSMITH
Nevada Bar No. 16870
KAEMPFER CROWELL
1980 Festival Plaza Dr., Ste. 650
Las Vegas, Nevada 89135
Telephone: (702) 792-7000
Facsimile: (702) 796-7181
E-Mail: igoldsmith@kcnvlaw.com

Attorneys for Landlord-Creditor
Mayfair Mall, LLC

IVAN M. GOLD, California Bar No. 121486
*Will comply with LR 1A 11-2 within 14 days*
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, California 94111-4074
Telephone: (415) 837-1515
Facsimile: (415) 837-1516
E-Mail: igold@allenmatkins.com

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Lead Case No.: 25-10341-nmc |
| NUMALE CORPORATION, | Chapter 11 |
|    AFFECTS THIS DEBTOR, ☐ | Jointly administered with: |
|      AFFECTS FELICIANO ☐ | Feliciano NuMale Nevada PLLC, Case No. 25-10342-nmc |
|      NUMALE NEVADA PLLC, ☐ | |
|      NUMEDICAL SC, ☐ | NuMedical SC Case No. 25-10343-nmc |
|      NUMALE COLORADO SC, ☐ | NuMale Colorado SC, Case No. 25-10344-nmc |
|      NUMALE FLORIDA TB PLLC, ☐ | |
|      NUMALE NEBRASKA LLC, ☐ | NuMale Florida TB PLLC, Case No. 25-10345-nmc |
|      NUMALE NEW MEXICO SC, ☐ | NuMale Nebraska LLC Case No. 25-10346-nmc |
|      NUMALE ALL DEBTORS, ☒ | NuMale New Mexico SC Case No. 25-10347-nmc |
|        Debtors. | Date:   September 24, 2025<br>Time:  9:30 a.m. |

<u>**OBJECTION OF MAYFAIR MALL, LLC TO**</u>

<u>**CONFIRMATION OF PROPOSED JOINT PLAN OF REORGANIZATION**</u>[1]

Mayfair Mall, LLC ("<u>Landlord</u>"), the lessor to debtor NuMedical SC with respect to two offices leases for premises in Wauwatosa, Wisconsin, objects (the "<u>Objection</u>") to Debtors' proposed *Joint Plan of Reorganization* [Docket No. 434] (the "<u>Proposed Plan</u>"), as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On January 22, 2025 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.    As of the Petition Date, debtor NuMedical SC, as successor-in-interest to NuMale Medical Center, LLC, as tenant, and Mayfair, as landlord, were parties to two substantially identical leases, dated February 9, 2021 (collectively, the "<u>Mayfair Leases</u>") for office premises identified as Suite 1140 (consisting of approximately 4,437 square feet) and Suite 1150 (consisting of approximately 1,946 square feet) of the Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, Wisconsin. *See* accompanying Declaration of Julie Minnick Bowden ("<u>Bowden Declaration</u>") at ¶¶ 4-5 and Debtors' Schedules and Statement of Affairs.

3.    On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 130] and thereafter, on April 28, 2025, entered its final order authorizing joint administration of these Chapter 11 cases  [Docket No. 209].

4.    On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights* [Docket No. 132], directing the appointment of a Chapter 11 trustee for the Debtors' bankruptcy estates.

5.    On April 7, 2025, this Court entered its *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 155], approving the appointment of Michael W. Carmel (the "<u>Trustee</u>") as the Chapter 11 Trustee in these jointly administered cases.

---

[1] Trustee graciously extended the deadline for Mayfair Mall, LLC, to respond to the plan through today as the parties discussed their differences outside of court.

6.      On August 1, 2025, the Trustee filed his Proposed Plan along with the *Disclosure Statement to Accompany Joint Plan of Reorganization* [Docket No. 435] (the "<u>Disclosure Statement</u>").

7.      On August 5, 2025, this Court entered its *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization* [Docket No. 447].

8.      Among other things, the Proposed Plan purports to seeks to assume and assign Debtors' Unexpired Leases[2] as part of the prospective 363 Sale of substantially all of Debtors' Assets.

9.      Section 6.1 of the Proposed Plan provides as follows:

> **6.1.    Executory Contracts.**  Except for:  (i) the Beazley Policies, and (ii) Executory Contracts and Unexpired Leases specifically addressed in this Plan or set forth on the schedule of Rejected Executed Contracts and Unexpired Leases attached as <u>Schedule 6.1</u> hereto (which may be *supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order*), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be *deemed assumed* by the respective Debtor(s) on the Effective Date *and assigned to* the prevailing bidder(s) in connection with the 363 Sale.

> (Emphasis added.)

10.      The Mayfair Leases are not specifically identified in Schedule 6.1 to the Proposed Plan for any treatment beyond that generally described in Section 6.1.  Accordingly, they are being proposed for assumption and assignment "to the prevailing bidder(s) in connection with the 363 Sale," yet such sale  has not yet occurred.  Section 1.1.4 of the Proposed Plan defines the "363 Sale" as "[t]he sale effectuated in accordance with section 363 of the Bankruptcy Code for the sale of the 363 Assets free and clear of all Liens, Claims, and Encumbrances in accordance with the 363 Bid Procedures, the 363 Motion, and the 363 Sale Order."

11.      But the Trustee has not filed a 363 Motion nor conducted any auction, as contemplated by Section 1.1.2 of the Proposed Plan. While the Disclosure Statement (at Section V.D.2) states that "[t]he Trustee will endeavor to close the 363 Sale as expeditiously as possible,"

---

[2]  Capitalized terms not otherwise defined shall have the same meaning as set forth in the Proposed Plan.

at this point, the Trustee apparently does not intend to do so until after confirmation of the Proposed Plan, raising numerous questions as to whether the Proposed Plan is premature and whether the Trustee can assume Unexpired Leases as of the Effective Date of the Proposed Plan, without satisfaction of the requirements of Bankruptcy Code section 365, and then assign under a post-Confirmation Date 363 Sale process. As set forth below, the Trustee has not met the statutory requirements for assumption of the Mayfair Leases and the Proposed Plan, in its current form, should not be confirmed.

## II.   ARGUMENT

### A.   DEBTORS MUST CURE ALL EXISTING DEFAULTS AND PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE AS A CONDITION TO THE ASSUMPTION AND ASSIGNMENT OF ITS LEASES

12.    To confirm the Proposed Plan, the Trustee must demonstrate, by a preponderance of the evidence, that it satisfies section 1129(a) of the Bankruptcy Code. *See In re Breitburn Energy Partners LP*, 582 B.R. 321, 349 (Bankr. S.D.N.Y. 2018)  ("The proponent of confirmation of a plan must prove by a preponderance of the evidence that it satisfies the relevant requirements of 11 U.S.C. § 1129(a)[.]") (citation omitted). Under Bankruptcy Code sections 1129 (a)(1) and (a)(2), both the plan and the plan proponents must comply with all applicable provisions of the Bankruptcy Code.  Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law."

13.    While assumption or assumption and assignment of a debtor's unexpired leases of nonresidential real property can be effectuated though a Chapter 11 plan of reorganization, Bankruptcy Code section 1123(b)(2) "does not provide a debtor with blanket authority to assume or reject executory contracts through a plan; whether an agreement may be assumed or rejected as an executory contract remains subject to the requirements of Bankruptcy Code § 365." *In re Exide Technologies*, 378 B.R. 762, 765 (Bankr. D. Del. 2007).

14.    Section 365(a) provides that the trustee (or debtor-in-possession), subject to the bankruptcy court's approval, may assume or reject any executory contract or unexpired lease of the debtor.  If the executory contract or unexpired lease is in default, it may not be assumed unless the trustee complies with the following prior to assumption:  (1) cures or provide adequate

assurance of a prompt cure of existing defaults, (2) compensates, or provides adequate assurance that the trustee will promptly compensate, the counterparty to such contract or lease, for any actual pecuniary loss resulting from such default, and (3) provides adequate assurance of future performance under such leases.  11 U.S.C. § 365(b)(1)-(3).

15.     The Trustee bears the burden of proving the requirement of Bankruptcy Code section 365(b) by a preponderance of the evidence.  *See In re PRK Enterprises, Inc*., 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999). Here, the Trustee's Proposed Plan, as presented, falls short of the requirements of Bankruptcy Code section 365.

Monetary Defaults:

16.     Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption."  *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kansas 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987).  Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened."  *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992).

17.     The Proposed Plan acknowledges, at Section 6.3, the obligation to make Cure payments in connection with the proposed assumption and assignment of Unexpired Leases. Section 6.4 of the Proposed Plan provides that any party to an Unexpired Lease who objects to the Cure amount asserted in Schedule 6.3 to the Proposed Plan or if any alleged Cure amount is not identified in Schedule 6.3, the affected counterparty must file and serve an objection no less than five (5) days prior to the Confirmation Hearing. The Mayfair Leases are not identified in Schedule 6.3 of the Proposed Plan, which provides that for any Unexpired Lease "for which no Cure payment is specifically identified on this Schedule 6.3, the Cure amount is $0.00."

18.     As set forth in the accompanying Bowden Declaration (at ¶ 6 and Exhibit 1 thereto), the current Cure amount is $17,448.76 for the Suite 1140 Lease and $26,831.90 for the Suite 1150 Lease. These figures include unpaid post-Petition Date obligations. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See, e.g., In re Rachels Inds., Inc.*, 109 B.R. 797, 811-812 (Bankr. W.D. Tenn. 1990). The Trustee remains required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3) and Landlord reserves its rights and remedies against Debtors with respect to such additional sums.

Attorneys' Fees:

19.     Where, as here, there are defaults under real property leases sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play. The Mayfair Leases each have two provisions for the recovery of attorneys' fees that are relevant here. First, Section 20.2 of the Mayfair Leases provides that "[a]ny costs and expenses incurred by Landlord (including, without limitation, reasonable attorneys' fees) in enforcing any of its rights and remedies under this Lease shall be paid to Landlord by Tenant, as Additional Rent, upon demand." Section 25.4(A) provides, in pertinent part, that "Tenant agrees to pay Landlord, as Additional Rent, all costs incurred by Landlord in connection with any actual or proposed Transfer, including, without limitation, the costs of making investigations as to the acceptability of a proposed subtenant or assignee and legal costs incurred in connection with any requested consent."

20.     Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In the Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Cas. & Surety Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 446-454 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy

unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent are recoverable as component of cure under Section 365(b)(1)). "[T]here is no logical distinction, for purposes of §365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entertainment, Inc.*, *supra*, 223 B.R. at 154. Mayfair's attorneys' fees, which currently exceed $8,000.00 in the aggregate, are ongoing. Mayfair reserves the right to supplement its response to provide such further attorneys' fees information as may be requested by the Trustee or the Reorganized Debtors.

Adequate Assurance of Future Performance:

21.    Bankruptcy Code section 365(f)(2)(A) expressly provides that the assumption of an unexpired lease of nonresidential real property or executory contract is a necessary precedent to an assignment. It is well-established that the Trustee bears the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Inds., supra,* 109 B.R. at 802; *In re Memphis-Fridays Assocs.,* 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).

22.    Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV & Appliances, Inc*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

23.    While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Inds., Inc.,* 54 B.R. 436, 440-41 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from

having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.,* at 441.  Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance.  *In re World Skating Center, Inc.,* 100 B.R. 147, 148-149 (Bankr. D. Conn. 1989).  By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate.  *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).  The factors for the court to consider are whether the Trustee or Reorganized Debtors are able to provide adequate assurance include the present status of the existing obligations under the lease, the remaining term of the lease, and what a landlord can look to for sufficient adequate assurance of future performance.  *In re Hub of Military Circle, Inc*., 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).

24.    The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989).  The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Id.* at 1080.

25.    Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided.  *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

26.    The Trustee has not proffered, or even suggested, the existence of evidence of adequate assurance of future performance with respect to the assumption of the Mayfair Leases by the Reorganized Debtors, as contemplated by Section 6.1 of the Proposed Plan. It is axiomatic that without identification of a proposed assignee, *i.e.*, the successful bidder resulting from the 363 Sale Procedures, there can be no satisfaction of the Trustee's burden to demonstrate adequate assurance of future performance as to a proposed assignment.  The Proposed Plan has not even specifically identified the 363 Stalking Horse bidder, defining the 363 Stalking Horse as "Justin

1   Pullian [sic] *and/or his assignee*" (emphasis added). But the Proposed Plan goes even further,

2   providing, at Section 6.2, that "[e]ntry of the Confirmation Order shall constitute as of the

3   Effective Date" approval of the assumption and assignment of Unexpired Leases "to the prevailing

4   bidder(s) in connection with the 363 Sale."  Is the Trustee really asking for what amounts to

5   blanket pre-approval of the assignment of nonresidential real property leases to a party that has yet

6   to be identified?

7   　　　27.　　The Proposed Plan does not satisfy the Trustee's burden of demonstrating adequate

8   assurance of future performance, either in connection with assumption of the Mayfair Leases by

9   the Reorganized Debtors or the assignment of the Mayfair Leases in connection with a 363 Sale,

10  as required by Bankruptcy Code section 365(b)(1)(C) and (f)(2)(B).[3]

11  **B.     THE TRUSTEE CANNOT ASSUME AND ASSIGN REAL PROPERTY LEASES**
    **        FREE AND CLEAR OF CLAIMS**

12

13  　　　28.　　Whether or not the Trustee seeks approval to sell Debtors' assets and assign its

14  Unexpired Leases under Bankruptcy Code section 363 or through the Proposed Plan under

15  Bankruptcy Code section 1123(a)(5), it is clear that the Trustee seeks to sell the 363 Assets "free

16  and clear of all Liens, Claims and Encumbrances …" *See* Section 1.1.4 of Proposed Plan.

17  　　　29.　　Bankruptcy Code section 101(5) defines a claim as "[any] right to payment,

18  whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

19  matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "As has

20  frequently been observed, this definition is extremely broad." *In re Old Market Group Holdings*

21  *Corp.*, 647 B.R. 104, 112-13 (Bankr. S.D.N.Y. 2022), *citing Johnson v. Home State Bank,* 501

22  U.S. 78, 83 (1991) ("Congress intended ... to adopt the broadest available definition of 'claim.' ");

23  *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016) (Even a right

24  to payment contingent on future events is a claim under Section 101(5) if it "result[s] from pre-

25

26  ――――――――――――――――
    [3] At this point, with the Confirmation Hearing scheduled in a week, any belated disclosure of a
    adequate assurance information potentially leaves inadequate time for meaningful analysis and
27  response. The Due Process Clause of the United States Constitution applies to proceedings under the
    Bankruptcy Code.  See, e.g., In re Center Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir. 1985).
28  "The fundamental requisites of due process consist of notice and an opportunity to be heard at a
    meaningful time and in a meaningful manner."  Turney v. FDIC, 18 F.3d 865, 868 (10th Cir. 1994).

petition conduct fairly giving rise to that contingent claim."); *see also JELD–WEN, Inc. v. Van Brunt (In re Grossman's),* 607 F.3d 114, 119-21 (3d Cir. 2010) (a "claim" may exist before a right to payment arose (or accrued) under state law).

30.    There are numerous accruing obligations under the Leases in addition to the payment of monthly rent. For example, under Section 22 of the Mayfair Leases, the tenant is required to indemnify, hold harmless and defend Mayfair from and against "all claims, actions, losses and expenses arising from the tenant's use and occupancy of the premises, including third party claims. If there are any limitations on the scope of liabilities under the Mayfair Leases being assumed, such as a limitation on Claims arising from the obligation to indemnify Mayfair for events and occurrences prior to the effectiveness of the assignment of the Mayfair Leases, there has not been a complete assumption and assignment of the Mayfair Leases. In the event of a future third-party claim with respect to personal injury occurring at the premises, even if relating to a pre-assignment occurrence, Mayfair is entitled to the benefit of previously bargained for indemnification obligations and the insurance coverage under Section 16 of the Mayfair Leases.

31.    It is well-established that debtors must assume executory contracts or unexpired leases *cum onere* and may not unilaterally seek to modify the terms of such assumed contracts and leases.  *See*, *e.g*., *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1983), *citing In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951);  *Cinnicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumptionm requirements under § 365 it must assume the executory contract *entirely*." (emphasis added).)  "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed." *In re Buffets Holdings, Inc*., 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re New York Skyline, Inc*., 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.").

32.    The requirement of adequate assurance of future performance is not limited to monetary obligations.  *See, e.g.*, *In re Rachels Inds., supra*, 109 B.R. at 803. Any attempt to impair or exclude the assignee's responsibility with respect to accrued, but unasserted, Claims does not

1  provide Mayfair with adequate assurance of future performance with respect to those obligations.

2  *See* 11 U.S.C. § 365(b)(1)(C) and (f)(2)(B).

3  **C.      THE PROPOSED PLAN IMPROPERLY SEEKS TO EXTEND THE TIME TO ASSIGN UNEXPIRED LEASES BEYOND CONFIRMATION**

4

5       33.      While assumption of a debtor's unexpired leases of nonresidential real property can

6  be effectuated though a Chapter 11 plan of reorganization (11 U.S.C. §1123(b)(2)), there is no

7  authority for a trustee or <u>reorganized debtor</u> to assume or reject leases *following confirmation of a*

8  *plan of reorganization.*  Bankruptcy Code section 1123(b)(2) provides that "a plan may, *subject to*

9  *Section 365* of this title, provide for the assumption, rejection or assignment of any executory

10  contract or unexpired lease of the debtor not previously rejected under this section."  (emphasis

11  added.)  Section 1123(b)(2) "does not provide a debtor with blanket authority to assume or reject

12  executory contracts through a plan; whether an agreement may be assumed or rejected as an

13  executory contract remains subject to the provisions of Bankruptcy Code § 365."  *In re Exide*

14  *Technologies*, 378 B.R. 762, 765 (Bankr. D. Del. 2007).  The authority to assume or reject leases

15  is limited by the express terms of Section 365(a) to a trustee (including a debtor-in-possession by

16  virtue of Section 1107(a)), but does not extend to reorganized debtors.  *See In re Grinstead*, 75

17  B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor in possession status of a debtor post-

18  confirmation.").

19       34.      According to the Trustee's Disclosure Statement (at Section V.D.2), if the proposed

20  363 Sale "is not closed prior to the Plan's Effective Date, the Plan expressly provides authority for

21  the 363 Assets to vest in the Reorganized Debtors and for the Reorganized Debtors (under the sole

22  control and authority of the Trustee) to effectuate and close the 363 Sale in accordance with the

23  terms of the 363 Motion and 363 Bid Procedures."[4]  The Proposed Plan's purported reservation of

24  the ability to assume, assume and assign, and reject Unexpired Leases <u>after confirmation</u> is at odds

25

26  [4] As noted by Judge Garrity in *In re Ditech Holding Co.*, 606 B.R. 544, 579-80 (Bankr. S.D.N.Y. 2019), upon confirmation and the revesting of assets in a reorganized debtor, any subsequent asset

27  sales are governed by the terms of the confirmed plan (under Section 1123 or 1141) rather than Section 363, which does not apply to plan-implemented sales. Here, the Proposed Plan lacks

28  complete details regarding the proposed sale process, particularly as to timing, and fails to satisfy the requirements of Bankruptcy Code section 365 necessary to assign real property leases.

with the plain language of Bankruptcy Code section 365(d)(4)(A), limiting the time to assume or reject to "the date of entry of an order confirming a plan," <u>not some later date</u> (such as the Effective Date or, as proposed by the Trustee here, potentially even later).  *See also In re Grayson-Robinson Stores, Inc.*, 227 F. Supp. 609, 613-615 (S.D.N.Y. 1964) (pre-Code case where court refused to permit rejection of an executory contract after plan confirmation).  It is widely accepted that the purpose of Bankruptcy Code section 365(d)(4), added as an integral part of what are commonly referred to as the 1984 "Shopping Center Amendments," was to prevent trustees and debtors-in-possession from taking too much time in deciding whether to assume, assume and assign or reject unexpired nonresidential real property leases.  *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989); *In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3d Cir. 1993).  Here, the Proposed Plan seeks to do just that, rendering this feature of the Proposed Plan contrary to applicable law.  11 U.S.C. § 1129(a)(2).

35.    Mayfair acknowledges that there is limited authority for the proposition that a Chapter 11 debtor-in-possession may separately assume an unexpired non-residential real property lease within the 210-day deadline under Bankruptcy Code section 365(d)(4) and then assign it under Bankruptcy Code section 365(f), even after the deadline expires. *See In re Eastman Kodak Co.*, 495 B.R. 618, 622 (Bankr. S.D.N.Y. 2013). While Judge Gropper held that "§ 365(d)(4) does not contain a deadline for assigning, as opposed to assuming, a contract," *id.*, the opinion in *Eastman Kodak* did not address Bankruptcy Code section 365(d)(4)(A)(ii) (limiting the time to assume or reject based on entry of a confirmation order rather than 210 days) and the case law holding that a *reorganized debtor* (following confirmation of a Chapter 11 plan) lacks the authority to utilize Section 365 to assign real property leases. Not mentioned in the *Eastman Kodak* decision was the fact that the effective date of the debtors' confirmed Chapter 11 plan did not occur until <u>after</u> the assignment of the subject lease was approved. *See Notice of Occurrence of Effective Date* in *In re Eastman Kodak Company* (Bankr. S.D.N.Y.), Case No. 12-10202, Docket No. 5015, filed September 3, 2013. In this regard, *Eastman Kodak* is distinguishable and not persuasive with respect to the circumstances presented in these Chapter 11 cases.

36.     Even if the Trustee intended to assume the Mayfair Leases now, only to seek to assign them later through the proposed 363 Sale process or otherwise, the Trustee's proposed procedures still are contrary to Bankruptcy Code section 365(b)(1)-(3). For example, the Trustee must still provide adequate assurance of future performance now with respect to any assumption of the Mayfair Leases by the Reorganized Debtors as part of the Proposed Plan (11 U.S.C. § 365(b)(1)(C)) and then provide it again as to a proposed assignee with respect to any subsequent assignment (11 U.S.C. § 365(f)(2)(B)). The Trustee does not propose to promptly cure existing defaults, or "provide[] adequate assurance that the trustee will promptly cure" such defaults (11 U.S.C. § 365(b)(1)(A)) if there is any dispute regarding adequate assurance of future performance "pertaining to assumption" (which presumably includes the absence of any proffered evidence of adequate assurance of future performance by the Trustee). *See* Section 6.4 of Proposed Plan. Does the Trustee contemplate that if a proposed assignee's showing of adequate assurance of future performance, as part of a post-confirmation assignment process, is inadequate, it can then reject one or both of the Mayfair Leases (which would be assumed at that point) and expose the bankruptcy estate to an administrative priority claim under Bankruptcy Code section 503(b)(7)?[5]

37.     Counsel for the Trustee has informally suggested that the Trustee could reject the Mayfair Leases prior to the entry of the Confirmation Order and then permit the successful bidder in the 363 Sale process to directly negotiate with Mayfair regarding continued occupancy. This approach ignores the provisions of Bankruptcy Code section 365(d)(4) requiring that the Trustee "immediately surrender [] nonresidential real property to the lessor" following rejection. Indeed, the Ninth Circuit has held that '[i]f the lease is rejected, the lessor is entitled to immediate possession of his property…" *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993). *See also In re Elm Inn, Inc.*, 942 F.2d 630, 633 (9th Cir. 1991) ("By operation of law, the debtor's possessory interest in the lease terminated on [the date of rejection], and the lessor's right to immediate surrender of the property simultaneously accrued.").[6] Section 365(d)(4) prevails over

---

[5] The potential for an administrative expense claim for as much as two years' rent under the Mayfair Leases (11 U.S.C. § 503(b)(7)) is not addressed in the Disclosure Statement or accompanying Liquidation Analysis (Exhibit 2 to Disclosure Statement).

[6] Numerous cases from other jurisdictions are in accord with Ninth Circuit decisions mandating

1  contrary state law, and the landlord is not required to resort to state law eviction procedures to

2  obtain possession but, rather, is entitled to relief in the form of a surrender order.  *In re Elm Inn*,

3  *supra*, 942 F.2d at 633-634; *In re Sok Jun Kong*, 162 B.R. 86, 98 (Bankr. E.D.N.Y. 1993) ("[T]he

4  plain language and purpose of section 365(d)(4), the necessarily preemptive force of the

5  Bankruptcy Code, and the broad equitable powers of bankruptcy judges all weigh in favor of

6  granting a surrender order to a lessor who, under the terms of the provision, clearly deserves

7  one."); *In re U.S. Fax, Inc.*, 114 B.R. 70, 73 (Bankr. E.D. Pa. 1990) ("[T]he language and

8  legislative history of section 365(d)(4) demonstrate that Congress did not intend for creditors to

9  pursue state-law remedies and that requiring creditors to pursue such remedies would frustrate the

10  statute's purpose.") Simply put, the Trustee cannot holdover in premises under a rejected lease as

11  part of a sale process.

12      38.    The Proposed Plan is contrary to Bankruptcy Code section 365 in numerous

13  respects and cannot be confirmed in its present form.

14  **D.    THE ABSOLUTE BAR ON LATE-FILED AND AMENDED CLAIMS IS
15         IMPROPER**

16      39.    Section 11.1.4 of the Proposed Plan provides that no proof of claim filed after the

17  applicable Bar Date shall be allowed and "all such proofs of Claim are hereby disallowed in full"

18  and the creditor shall not be "permitted to any Claim or proof of Claim to increase the claimed

19  amount and any such amendment shall be disallowed to the extent of the late-filed increase in the

20  claimed amount."

21      40.    A Chapter 11 plan cannot cut off a creditor's right to seek permission to file a late

22  claim based on "excusable neglect" and the four-factor test under the Supreme Court's decision in

23  *In re Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993). This right

24

25      immediate surrender. *See, e.g., In re Deli Den, LLC*, 425 B.R. 725, 726-727 (Bankr. S.D. Fla. 2010);
       *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 52 (Bankr. S.D.N.Y. 2004)  ("[A]fter rejection, the
26      debtor has no right to continued occupancy of the premises it occupied under the now-rejected
       lease.")  *In re Chris-Kay Foods E., Inc.*, 118 B.R. 70, 72 (Bankr. E.D. Mich. 1990) ("A majority of
27      courts which have addressed this question have held that § 365(d)(4) prevails over contrary state
       law, and that a lessor of non-residential property is therefore entitled to immediate possession."); *In
28      re Giles Assocs., Ltd.*, 92 B.R. 965, 968 (Bankr. W.D. Tex. 1988) (immediate surrender is
       mandatory).

1   stems from Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, empowering a

2   bankruptcy court to enlarge deadlines (including a claims bar date) after they have expired based

3   on a showing of excusable neglect. The Proposed Plan, purporting to bar all late claims, cannot

4   override this authority.

5       41.     Similarly, Section 11.1.4 of the Proposed Plan purports to bar, in advance, any

6   amendments to Claims that "increase the claimed amount." As a threshold matter, the Bankruptcy

7   Code does not prohibit the amendment of claims. Indeed, Bankruptcy Code section 502(j) permits

8   a court to reconsider a previously allowed or disallowed claim "for cause," with the reconsidered

9   claim then allowed or disallowed according to the equities of the case. Such reconsideration can

10  encompass amendments to adjust or increase the claim amount, subject to the court's discretion.

11  The Proposed Plan seeks to bar the exercise of discretion by this Court, regardless of the

12  circumstances presented.

13      42.     More specifically, Section 11.1.4 of the Proposed Plan must be reconciled with

14  Section 6.7, providing that "[a]ll proofs of Claims with respect to Claims arising from the rejection

15  of any Executory Contract or Unexpired Lease shall be filed no later than fifteen (15) days after

16  the Effective Date" and that "[a]ny Claims not filed within such time shall be forever barred." But

17  it is unclear when the Trustee (or Reorganized Debtors) would reject Unexpired Leases under the

18  procedures proposed, including the rejection of a previously-assumed Unexpired Lease, and

19  whether such rejection would be before or after the Effective Date. An affected landlord, including

20  Mayfair, should have a meaningful opportunity to file a proof of claim without being barred by the

21  artificial deadlines and bars of the Proposed Plan.

22  **E.     LIQUIDATING DEBTORS ARE NOT ENTITLED TO A DISCHARGE**

23      43.     The Bankruptcy Code prohibits any discharge of corporate or partnership debts if

24  the debtor is not an "individual" and, in a chapter 11 case, if the debtor proposes a liquidating

25  chapter 11 plan contemplating the cessation of the debtor's business following confirmation.

26  Here, Section 8.5 of the Proposed Plan seeks to do just that, providing that, on the Effective Date,

27  "Debtors shall be discharged from any and all Claims and all Equity Interests to the fullest extent

28

provided in sections 524 and 1141 of the Bankruptcy Code." This proposed discharge is intended to be "to the fullest extent" provided by section 1141(d)(1)(A) of the Bankruptcy Code.

44. Section 1141(d)(1) of the Bankruptcy Code provides that, except as otherwise provided in section 1141(d), a chapter 11 plan, or a plan confirmation order, the confirmation of a chapter 11 plan by the bankruptcy court discharges the debtor from any claim or debt that arose before the confirmation date, including claims arising from the rejection of executory contracts or unexpired leases, certain claims arising from the recovery of property by the estate, and certain tax claims. *See* 11 U.S.C. § 1141(d)(1).

45. However, pursuant to Bankruptcy Code section 1141(d)(3), the confirmation of a chapter 11 plan does not discharge a debtor if:

> (i) the plan provides for the liquidation of all or substantially all of the property of the estate;
>
> (ii) the debtor does not engage in business after consummation of the plan; ***and***
>
> (iii) the debtor would be denied a discharge under section 727(a) … if the case were a case under chapter 7 of [the Bankruptcy Code].

11 U.S.C. § 1141(d)(3) (emphasis added).

46. Section 727(a)(1) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge [in a chapter 7 case], unless … the debtor is not an individual." The Bankruptcy Code defines what constitutes a "person" who is eligible to be a debtor in a bankruptcy case. 11 U.S.C. § 109. This definition expressly distinguishes between a living individual and fictitious entities such as corporations and partnerships. While the term "individual" is not defined by the Bankruptcy Code, it has been construed to include only "natural persons," as distinguished from corporations, partnerships, and other entities. *See, e.g., Friedman v. C.I.R.*, 216 F.3d 537, 548 n.7 (6th Cir. 2000) (a corporate debtor is not an individual entitled to a chapter 7 discharge); *Yamaha Motor Corp. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985) ("Congress clearly did not intend the term 'corporate debtor' to be used interchangeably with the term 'individual debtor,' as such a construction would render meaningless employment by Congress of the term 'individual.'" (citations and internal quotation marks omitted)).

47.     Here, Debtors, all of them corporations or limited liability companies, are plainly liquidating and ceasing to do business under the terms of the Proposed Plan.  For example, Section 5.18 of the Proposed Plan clearly provides that upon completion of the 363 Sale, funding of the Liquidation Trust, resolutions of Disputed Claims and the completion of Distributions, the Trustee will "wind-down and dissolve each of the Reorganized Debtors in accordance with applicable state law."  As the Ninth Circuit observed in *Um v. Spokane Rock I LLC*, 904 F.3d 815, 819 (9th Cir. 2018), "it is easy to conclude that a business entity will not engage in business post bankruptcy when its assets are liquidated and the entity is dissolved."

48.     Accordingly, each of the requirements of Bankruptcy Code section 1141(d)(3) is satisfied here and Debtors are not entitled to a discharge. *See, e.g., Star Phoenix Mining Co. v. West One Bank*, 147 F.3d 1145, 1147 n. 2 (9th Cir. 1998) (holding that, in a liquidating chapter 11 plan, the confirmation of the plan does not discharge the corporate debtor's debts, but only liquidates them).  As a result, Section 8.5 of the Proposed Plan is contrary to "the applicable provisions of this title" and cannot be confirmed in its current form.  11 U.S.C. § 1129(a)(1).

### III.     JOINDER

To the extent not inconsistent with the foregoing, Mayfair joins in any objections to confirmation of Debtors' Proposed Plan filed by Debtors' other real property landlords.

### IV.     RESERVATION OF RIGHTS

Mayfair reserves its respective rights to further object to any proposed assumption or assumption and assignment of their real property leases with the Debtors, on additional grounds based upon any new information provided by the Trustee or upon any different relief requested by the Trustee including, without limitation, any further proposed modifications or amendments to the Proposed Plan.

[Remainder of page intentionally left blank.]

# V.    CONCLUSION

For the foregoing reasons, this Court should not confirm the Proposed Plan in its current form. At this point in time, the Trustee has not satisfied the requirements for assumption and/or assumption and assignment of the Mayfair Leases, whether through the Proposed Plan or otherwise.

Dated: September 17, 2025                    ALLEN MATKINS LECK GAMBLE
                                             MALLORY & NATSIS LLP


                                             By: */s/ Ivan M. Gold*
                                                 Ivan M. Gold


Dated: September 17, 2025                    KAEMPFER CROWELL


                                             By: */s/ Louis M. Bubala III*
                                                 Louis M. Bubala III
                                                 Isabella R. Goldsmith

                                             Attorneys for Landlord-Creditor Mayfair
                                             Mall, LLC