GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc |
| | Chapter 11 |
| NUMALE CORPORATION, | |
| | *Jointly administered with:* |
| AFFECTS THIS DEBTOR, ☐ | |
| | Feliciano NuMale Nevada PLLC, |
| AFFECTS FELICIANO | Case No. 25-10342-nmc |
| NUMALE NEVADA PLLC, ☐ | |
| | NuMedical SC |
| NUMEDICAL SC, ☐ | Case No. 25-10343-nmc |
| NUMALE COLORADO SC, ☐ | NuMale Colorado SC, |
| | Case No. 25-10344-nmc |
| NUMALE FLORIDA TB PLLC, ☐ | |
| | NuMale Florida TB PLLC, |
| NUMALE NEBRASKA LLC, ☐ | Case No. 25-10345-nmc |
| NUMALE NEW MEXICO SC, ☐ | NuMale Nebraska LLC |
| | Case No. 25-10346-nmc |
| NUMALE ALL DEBTORS, ☒ | |
| | NuMale New Mexico SC |
| Debtors. | Case No. 25-10347-nmc |
| | |
| | Hearing Date: *OST Pending* |
| | Hearing Time: *OST Pending* |

**TRUSTEE'S MOTION FOR ENTRY OF ORDERS: (A)(I) APPROVING BID PROCEDURES RELATING TO SALE OF DEBTORS' ASSETS; (II) SCHEDULING A HEARING TO CONSIDER THE SALE; (III) APPROVING THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF DEBTORS' ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF**

Michael Carmel, as the Chapter 11 trustee ("Trustee" or "Seller") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby seeks entry of:

(a)    An order in the form attached hereto as **Exhibit "A"** (the "Bid Procedures Order"), thereby (i) approving the *Bid Procedures* attached hereto as **Exhibit "C"** (the "Bid Procedures"), including the bid protections for Justin Pulliam ("Pulliam"), (ii) scheduling a hearing (the "Sale Hearing") on the proposed sale of Debtors' 363 Assets (the "Sale") and setting objection and bidding deadlines with respect to the Sale, (iii) approving the form and manner of notice attached hereto as **Exhibit "D"** (the "Auction Notice") of an in-Court auction for the 363 Assets (the "Auction"), (iv) approving the form of notice of the Assumed Contracts attached hereto as **Exhibit "F"** (the "Assumption Notice"), and (v) granting related relief; and

(b)    An order substantially in the form attached hereto as **Exhibit "B"** (the "Sale Order"), thereby (i) authorizing and approving the sale of the 363 Assets pursuant to the *Asset Purchase Agreement* in substantially the form attached hereto as **Exhibit "E"** (the "APA"),[1] (ii) authorizing the sale free and clear of all liens, claims, encumbrances, and interests, and (iii) granting related relief.

The Motion is supported by the following memorandum of points and authorities, the declaration of Michael Carmel (the "Carmel Decl.") filed concurrently herewith, any additional evidence submitted and argument entertained by the Court at the Bid Procedures and Sale Hearings, as well as the documents and evidence previously submitted to the Court in these cases.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  STATUS OF THE CASE AND JURISDICTION.

---

[1] All capitalized, undefined terms shall have the meanings ascribed to them in the APA attached hereto as **Exhibit E** and the *Joint Plan of Reorganization*, ECF No. 434.

1.      On January 22, 2025 (the "<u>Petition Date</u>"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "<u>Chapter 11 Cases</u>").  *See, e.g.*, ECF No. 1.

2.      On April 2, 2025, this Court entered its Order directing the appointment of a Chapter 11 trustee for the Debtors' estates.  *See* ECF No. 132.

3.      On April 2, 2025, Tracy Hope Davis, the United States Trustee for Region 17 ("<u>US Trustee</u>"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates.  *See* ECF No. 140.

4.      On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment.  Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

5.      On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*.  *See, e.g.*, ECF No. 209.

6.      The Court has jurisdiction over the Motion, the proposed Sale transaction, and the APA pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue of these Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief sought in the Motion are Sections 105(a), 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 1015, 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 6004 and 6006 of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada (the "<u>Local Rules</u>").

8.      Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## II.  <u>THE BID PROCEDURES AND SALE PROCESS</u>

**A.      <u>The Assets Being Sold.</u>**

9.     As more fully set forth in the APA attached hereto as **Exhibit "E,"** subject to the highest and best offer(s) at the Auction, the Trustee is seeking to sell all right, title, and interest of the Debtors in the following assets defined in the Plan as the 363 Assets.

10.     More specifically, Debtors operate men's health clinics within the United States and the Trustee is selling all of Debtors' right, title, and interest in, to, and under all of the tangible and intangible assets, properties, and rights of every kind and nature and wherever located, which relate to, or are used or held for use in connection with, its business except for the Excluded Assets set forth below (collectively, the "<u>363 Assets</u>"), free and clear of all claims, liens, encumbrances and interests to the fullest extent contemplated by Section 363(f) of the Bankruptcy Code, including the following:

(a)     all accounts receivable held by Seller;

(b)     all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts, and other inventories;

(c)     all contracts, leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures, and all other agreements, commitments, and legally binding arrangements, whether written or oral set forth on Schedule 1.01(c) of the APA, which were assumed under the Plan;

(d)     all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property;

(e)     all intellectual property and industrial property rights and assets, and all rights, interests, and protections that are associated with, similar to, or required for the exercise of, any of the foregoing, whether registered or unregistered, including any and all trademarks, service marks, trade names, brand names, logos, trade dress, design rights, works of authorship, expressions, designs, copyrights, websites, software, trade secrets, and patents, as well as any royalties, fees, income, payments, and other proceeds with respect to any and all of the foregoing;

(f)     all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums, and fees (including any such item relating to the payment of Taxes);

(g)     all of Seller's rights under warranties, indemnities, and all similar rights against third parties to the extent related to any 363 Assets that are not an Excluded Assets (as defined below);

(h)     all insurance benefits, including rights and proceeds, arising from or relating to the Debtors' business or the 363 Assets;

(i)     all ownership interests in any corporation, limited liability company, or other business entity owned by the Debtors' business;

(j)     originals or, where not available, copies, of all books and records, including books of account, ledgers, and general, financial, and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records, and data (including all correspondence with any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any arbitrator, court, or tribunal of competent jurisdiction, sales material and records, strategic plans and marketing, and promotional surveys, material, and research; and

(k)     all goodwill and the going concern value of the 363 Assets and the Debtors' business.

11.     For the avoidance of doubt, the following assets (identified in the APA as "Excluded Assets") are not being sold: (a) Debtor's 2019 Ford F150; (b) the proceeds of the 363 Sale contemplated by the APA; (c) the equity interests in each of the Debtors; and (d) the Distributable Assets (as defined in the Plan), including: (i) all Litigation Claims (expressly including the Litigation Claims identified in Schedule 1.1.82 of the Plan); (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) any assets transferred to the Liquidation Trust; and (v) the New Value Contribution.

**B.      The Bid Procedures.**

12.     The Trustee has prepared the Bid Procedures attached hereto as **Exhibit "C."**  The

4

Bid Procedures were developed consistent with the objective of promoting active bidding and a robust auction. The Bid Procedures further reflect the Trustee's objective of conducting the Auction in a controlled, but fair and open fashion that promotes interest in the 363 Assets by financially capable, motivated bidders that are able and willing to close the transactions. See Carmel Decl. ¶ 3.

13. The Trustee believes that the sale of the 363 Assets through the Auction and in the manner prescribed by the Bid Procedures will maximize value for Debtors' estates and creditors. See id. ¶ 4.

14. The Trustee seeks to conduct an open sales process pursuant to which one or more winning bidders will enter into one or more APAs in substantially the form attached hereto as **Exhibit "E"** for the purchase of some or all of the 363 Assets free and clear of liens, claims, and encumbrances (unless expressly assumed in the APA), with such liens, claims, and encumbrances attaching to the sale proceeds. See id. ¶ 5; Ex. "E" hereto.

15. Subject to Court approval, the Trustee has caused Debtors' estates to enter into the APA with Pulliam, which is attached hereto as **Exhibit "E."** See id. ¶ 8; Ex. "E" hereto.

16. The following table sets forth a summary of the material terms and conditions of the APA and addresses the disclosures required by Local Rule 6004:[2]

| Term (Agreement Citation) | Detail |
|---|---|
| Seller | Debtors |
| Stalking Horse Purchaser | Justin Pulliam |
| Purchased Assets<br><br>Plan § 1.1.1; Sections 1.01 and 1.02 of the APA | See Section II.A above.<br><br>Notwithstanding the sale of Debtors' books and records, Debtors shall maintain copies of its books and records to enable the Trustee to administer the Chapter 11 Cases. |
| Purchase Price<br><br>Plan § 1.1.2; Section | $300,000, which may be paid by a credit bid of Pulliam's Secured Claim as set forth in the Plan. |

---

[2] The following table is intended to be a summary of the material terms of the APA. To the extent the terms as listed below differ from the terms contained in the APA, the terms of the APA are controlling.

5

| 1.03 of the APA | |
|---|---|
| Deposit<br><br>Plan § 1.1.2 | As the stalking horse, Pulliam has demonstrated proof of funds and no deposit is required.<br><br>For any competing bids, a deposit in the form of a cash (wire) or cashier's check must be provided in the amount of 20% of the bid forty-eight (48) business hours before the Auction. |
| Stalking Horse Protections<br><br>Plan § 1.1.7; 1.1.8; Section 5.06(c) of the APA | • Expense Reimbursement capped at $30,000, which shall be paid from sale proceeds and have administrative expense priority<br><br>• Initial Minimum Overbid of $25,000<br><br>• Pursuant to Section 1.1.7 of the Plan, Pulliam may, at his election: (i) credit bid the Allowed Pulliam Administrative Claim and/or the Allowed Pulliam Priority Claim; and (iii) credit bid the Allowed Pulliam Unsecured Claim, which each dollar of the Allowed Pulliam Unsecured Claim credit bid shall be equal to $0.25 Cash. |
| Interim Agreements | Pulliam has been working under the Trustee's supervision and direction to operate the Debtors' businesses. |
| Closing Deadlines<br><br>Sections 5.06(a), 6.01(e), and 7.01 of the APA | The APA requires that this Motion be filed by September 23, 2025, the Sale Order be entered by October 15, 2025, and the closing occur by November 15, 2025. |
| Sale Free and Clear & Credit Bidding | The 363 Sale shall be free and clear of all liens, claims, and encumbrances.  All Allowed Secured Claims will be paid in full through the Plan. |
| Insider, Releases, & Waiver of Claims | Pulliam is an insider of Debtors. The APA does not include any releases or waiver of claims.<br><br>The APA was negotiated at arms-length between the Trustee and Pulliam, through counsel.<br><br>The Sale Order includes language limiting successor liability as well as injunctions violating the terms of the Sale Order. |
| Agreements to Employ<br><br>Section 5.05 of the APA | The APA provides that "All employees of Seller shall have the right to apply for employment by Buyer.  Buyer has no obligation to hire or may offers of employment to the employees of Seller, Buyer may make offers of employment to active employees of Seller selected by Buyer in its sole discretion and on terms and conditions (including compensation and benefits) established by Buyer in its sole discretion." |

| Treatment of Sale Proceeds | The sale proceeds shall be distributed in accordance with the Plan. |
|---|---|
| Waiver of Fed. R. Bankr. P. 6004(h) & Closing | The Trustee has sought a waiver of Bankruptcy Rule 6004(h). Assuming this is granted, the Closing will occur pursuant to the terms of the APA five (5) business days after the Sale Order becomes a final order. |
| Costs & Taxes | Except as otherwise set forth in the APA, Debtors and Pulliam will each bear their own expenses in connection with the APA and the 363 Sale.  Debtors shall be liable for and pay all taxes arising from the sale of its assets. |

17.    The Trustee submits that the Motion and Bid Procedures provide the information required by Local Rule 6004 and are typical for asset sales of this size and nature, require a deposit, and require a bidder to be Qualified Bidder.[3]  See id. ¶ 7.

18.    The following paragraphs in this section summarize the key provisions of the Bid Procedures, but are qualified in their entity by reference to the actual Bid Procedures:

a.    APA.  The Bid Procedures and a copy of the APA will be provided to each Potential Bidder.

b.    "As-Is, Where Is."  The sale of the 363 Assets shall be on an on an "as is," "where is" and "with all faults" basis without representation or warranty of any kind, either express or implied, including, but not limited to, any warranties as to merchantability, fitness, or usability, except to the extent expressly set forth in the APA between the applicable Seller and the Prevailing Bidder.  Except as otherwise provided in the Prevailing Bidder's APA, all of the Debtors' right, title and interest in and to the 363 Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests therein (collectively, the "Claims") pursuant to Section 363(f) of the Bankruptcy Code, such Claims to attach to the net proceeds of the sale of the 363 Assets, with the same validity and priority as existed immediately prior to such sale.

c.    Due Diligence.  Any persons interested in purchasing some or all of the 363 Assets (a "Potential Bidder") shall execute a confidentiality agreement and the Trustee will provide information readily available or reasonably preparable by the Trustee in light of the circumstances of the Chapter 11 Cases, all with the understanding that this is an "as is, where is" transaction, and ensuring that no patient information is provided to Potential Bidders.

d.    Bid Deadline.  The deadline for any Qualified Bidder to submit Bids will be forty-

---

[3] Capitalized terms not defined in this section shall have the meanings ascribed to them in the Bid Procedures attached hereto as **Exhibit "C."**

eight (48) business hours before the Auction.

e.    <u>Qualified Bidder Requirements.</u>  To be eligible to participate in the bidding process and to be designated a "Qualified Bidder," each Potential Bidder must submit a Bid that fulfills the following requirements on or prior to the Bid Deadline:

- Is an amount no less than $325,000, which is $25,000 higher than Pulliam's bid in the Pulliam APA.

- Provides that the Qualified Bidder's Bid shall remain open and irrevocable until thirty (30) days following the date of entry of a Sale Order;

- Provides that the Qualified Bidder is obligated to perform as a Back-Up Bidder (as defined below) in the event such Qualified Bidder is not the Prevailing Bidder;

- Is made by a person or entity that demonstrates evidence of fully committed and available funds to consummate the proposed transaction, in each case acceptable to the Trustee in his sole discretion;

- Provides written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) and its equity holders, if necessary, with respect to the submission of its Bid and the execution of the APA, or a representation that no such authorization or approval is required;

- Provides by wire transfer or immediately available funds to Garman Turner Gordon LLP's trust account before the Bid Deadline of an earnest money deposit equal to 20% of the purchase price of such Bid (the "<u>Deposit</u>");

- Is submitted in a writing in the form of the APA with any proposed changes to the APA set forth in an electronic form both clean and marked to reflect such changes signed by the Qualified Bidder, that: (i) identifies the Qualified Bidder and any members of its investor group, if applicable; (ii) identifies with specificity what 363 Assets the Qualified Bidder seeks to purchase; (iii) is not subject to conditions, representations, or terms that the Trustee determines to be unacceptable; (iv) does not contain any financing or due diligence contingencies to closing the proposed transaction unless the Trustee otherwise agrees in writing that such contingencies are acceptable;  (vi) does not contain any condition to closing the transaction relating to the receipt of any third party or governmental approvals (excluding required Bankruptcy Court); (vii) expressly acknowledges and represents that the Qualified Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the 363 Assets and the proposed transaction prior to making its Bid; (B) has relied solely upon its own independent review, investigation, and/or inspection of any documents and the 363 Assets in making its Bid or that of any of its legal, financial, or other advisors; and (C) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors or the 363 Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations

and warranties contained in the APA ultimately accepted and executed by the Trustee; (viii) includes a written acknowledgment by such Qualified Bidder that it agrees to the terms of these Bidding Procedures; (ix) identifies all of the executory contracts and unexpired leases that the bidder desires to be assumed and assigned; (x) includes a written acknowledgment by such Qualified Bidder that it does not have any lien rights against Debtors or the 363 Assets and expressly waives any right to assert or file any lis pendens or other lien or claim against the 363 Assets; and (xi) contains all other information reasonably requested by the Trustee.

f.    <u>Auction.</u>  If the Trustee timely receives a Qualified Bid other than the Pulliam APA, the Auction will be conducted at the Bankruptcy Court on October __, 2025 in order to determine the highest and best Bid(s) (the "<u>Prevailing Bid</u>") to submit for approval by the Bankruptcy Court at the Sale Hearing.  The Auction shall be organized and conducted by the Trustee at the Bankruptcy Court located at Foley Federal Building and U.S. Courthouse, 300 Las Vegas Blvd South, Las Vegas, NV 89101, in Courtroom 3, or such other location as may be announced prior to the Auction to all Qualified Bidders. The following procedures shall govern the Auction:

(a)    The only persons or entities who will be permitted to Bid at the Auction are the authorized representatives of each Qualified Bidder (the "<u>Auction Participants</u>").  While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by the Trustee, the Trustee's counsel, and/or other authorized representatives and such other parties as agreed to by Trustee, in his sole discretion.

(b)    Each Qualified Bidder participating in the Auction shall confirm at the Auction that it has not engaged in any collusion regarding these Bid Procedures with any other Qualified Bidder, concerning the Auction, or any proposed transaction relating to all or a portion of the 363 Assets.

(c)    The Trustee is authorized to conduct the Auction in accordance with such procedures and requirements as may be established at the discretion of the Trustee and his counsel, which rules may include, but shall not be limited to, the determination of the amount of time between Bids, whether to adjourn the Auction at any time and from time to time, the conducting of multiple rounds of open or sealed bidding with notice only to the parties entitled to attend the Auction, and to declare that the Auction has ended when no further Bids are timely made or otherwise.

(d)    The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidders in the amount of the Initial Highest Bids.  The next Qualified Bids at the Auction shall be an amount equal to or greater than the Initial Highest Bid(s) plus no less than $10,000.  Thereafter, the Auction will continue in the manner determined by the Trustee above.

(e)    The Trustee shall determine, in consultation with the Court-appointed Patient Care Ombudsman (the "<u>PCO</u>"), whether a Qualified Bid by a

9

Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid.

(f)    At the conclusion of the Auction: (a) the Trustee shall, in consultation with the PCO, select: (i) the Prevailing Bid(s), and (ii) the second highest or best offer(s) for the 363 Assets (the "<u>Back-Up Bid</u>"); (b) the Trustee shall notify the Prevailing Bidder(s) that such person's offer has been determined by the Trustee to be the Prevailing Bid(s) and will be contingent only on Bankruptcy Court approval, and shall notify the person that made the Back-Up Bid(s) (the "<u>Back-Up Bidder(s)</u>") that such person's offer has been determined by the Trustee to be a Back-Up Bid and will be contingent only on the failure of the Prevailing Bid(s) to be approved by the Bankruptcy Court; and (c) the Trustee shall file a notice with the Bankruptcy Court announcing the Prevailing Bidder(s).  Prior to the commencement of the Sale Hearing, the Prevailing Bidder(s) shall complete and sign all agreements and documents as necessary to bind the Prevailing Bidder(s) to all of the terms and conditions contemplated by the Prevailing Bid(s).

(g)    The Deposit of the Prevailing Bidder(s) or the Back-Up Bidder(s), as the case may be, shall be held by the Trustee and applied by the Trustee against the purchase price to be paid by the Prevailing Bidder(s) or the Back-Up Bidder(s), as applicable, at the closing of the relevant transaction approved by the Bankruptcy Court.  The Prevailing Bidder(s)' or Back-Up Bidder(s) Deposits, as applicable, shall be held by the Trustee and forfeited to the Trustee if such parties breach the obligation to close under the APA(s).

(h)    The Trustee shall not be deemed to have finally accepted any Qualified Bid unless and until such Qualified Bid and the Trustee's acceptance thereof have been authorized by order of the Bankruptcy Court following the conclusion of the Sale Hearing.

g.    <u>Sale Hearing.</u>  The Sale Hearing shall be conducted by the Trustee at the Bankruptcy Court on October __, 2025, at ___ a.m., as soon as reasonably practical thereafter.

h.    <u>Modifications.</u>  The Trustee in his sole discretion and/or in consultation with the PCO, may adopt, implement, and/or waive such other, additional or existing procedures or requirements that serves to further an orderly Auction and Bid process.

## C.    <u>Stalking Horse Protection.</u>

19.    Pulliam has agreed to serve as the stalking horse for a purchase price of $300,000. As provided in the *Joint Plan of Reorganization* (the "<u>Plan</u>"), to entice Pulliam to serve as the stalking horse—which sets the floor, and furthers interest in the sale and likelihood of competitive bidding at the Auction—the Trustee seeks authorization to provide the following limited bid

protections to Pulliam (the "Stalking Horse Protections"): (i) an initial overbid of $25,000; and (ii) reimbursement of reasonable, actual, out of pocket costs and expenses paid or incurred by Pulliam directly, incident to, under, or in connection with the negotiation, execution, and performance of the Pulliam APA (including travel expenses and reasonable fees and disbursement of counsel, accountants, and financial advisors) in an amount not to exceed $30,000.  See Carmel Decl. ¶ 9; Plan § 1.1.8

20.    Bidding protections are a normal and, in many cases, necessary component of significant sales conducted pursuant to Section 363. Bid protections "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking."  In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); see also Integrated Resources, 147 B.R. at 660-61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); In re Hupp Int'l Indus, Inc., 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence.").  As a result, courts routinely approve bid protections similar to the bid protections proposed here in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate.  See In re O'Brien Envtl. Energy, Inc., 181 F.3d 527 (3rd Cir. 1999).

21.    The Trustee's ability to offer these limited Stalking Horse Protections is beneficial to Debtors' estates and creditors because it facilitates a competitive sale process.  The stalking horse bid sets a floor for further bidding and enables the Trustee to shop Pulliam's bid for higher and better offers in connection with the Auction.  Moreover, Pulliam, as the proposed stalking horse bidder, has expended and will continue to expend time and resources negotiating, drafting, and undertaking due diligence activities necessitated by the Sale transaction, all of which increase the likelihood of competitive bidding as other buyers will be able to bid without incurring these expenses.  As such, the Trustee submits that these limited Stalking Horse Protections are in the best interest of the estates and creditors and should be approved.  See Carmel Decl. ¶ 10.

**D.     Notice and Scheduling of the Auction.**

22.     The Trustee requests the in-court Auction be scheduled prior to October 9, 2025, with the Sale Hearing scheduled on or prior to October 9, 2025, or as soon as reasonably practical thereafter.  The Trustee submits that in light of the history of these Chapter 11 Cases and the nature of the 363 Assets, this schedule provides an appropriate marketing period and is likely to generate multiple bidders.  Further, the firm Auction date provides credibility to the process and encourages Potential Bidders to promptly engage in the contemplated sale process.  In the unlikely event that Pulliam is the only Qualified Bidder, the Trustee will notify the Court that the Auction can be vacated and proceed to the Sale Hearing.  See Carmel Decl. ¶ 11.

23.     The Trustee has prepared the Auction Notice attached hereto as **Exhibit "D,"** which provides sufficient information regarding the Bid Procedures, Auction, and Sale Hearing.

24.     Within one (1) business day following the entry of the Bid Procedures Order, the Trustee shall serve by ECF or first-class mail, the Bid Procedures and Auction Notice on: (i) the Office of the United States Trustee; (ii) all parties known by the Trustee to be asserting a lien on any of the Debtors' 363 Assets; (iii) the Internal Revenue Service; and (iv) all of Debtors' known creditors, equity security holders, and other parties-in-interest entitled to notice under Bankruptcy Rule 2002(a).

**III.   STATUTORY AND LEGAL AUTHORITY**

**A.     The Standard for Asset Sales - Section 363(b).**

Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  The standard for approval of a sale of property of the estate under Section 363 is whether there exists some articulated business justification for the proposed transaction, and whether the sale is in the best interests of the debtor, creditors, and equity holders. See Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986).  Stated otherwise, the decision to sell assets outside of the ordinary course of business is based upon the sound business judgment of the debtor.  See Meyers v. Martin

(In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines, Inc., 2001 WL 1820326, *10 (Bankr. D. Del. Apr. 2, 2001).

In making such a determination, courts may look to the following factors:

(a)     Whether a sound business justification exists for the sale;

(b)     Whether the assets are increasing or decreasing in value;

(c)     Whether the sale will produce a fair and reasonable price for the property;

(c)     Whether the assets have been given adequate marketing; and

(d)     Whether adequate and reasonable notice of the sale was given.

See In re Work Recovery, 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996); and In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); In re Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); In re United Healthcare Sys., Inc., No. 97-1159, 1997 WL 176574, at *4 and n.2 (D. N.J. Mar. 26, 1997).

**B.    Procedural Requirements – Bankruptcy Rules 6004(f) and 2002(c)(1).**

Bankruptcy Rule 6004(f)(1)(A) provides in pertinent part that "[a] sale that is not in the ordinary course of business may be made by public auction or private sale."  Fed. R. Bankr. P. 2002(c)(1).  A trustee is entitled to broad discretion in determining the manner of a sale, including whether to sell property by public or private sale.  See In re Frezzo, 217 B.R. 985, 989 (Bankr. M.D. Pa. 1988) (citing In re Canyon Partnership, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985)).

Bankruptcy Rule 2002(c)(1) provides that:

Subject to Rule 6004, a notice of a proposed use, sale, or lease of property under (a)(2) must include:
(A) a general description of the property;
(B) the time and place of any public sale;
(C) the terms and conditions of any private sale;
(D) the time to file objections; and
(E) for a proposed sale or lease of personally identifiable information under §363(b)(1), a statement whether the sale is consistent with any policy that prohibits transferring the information.

**C.    Sales "Free and Clear" - Section 363(f).**

Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the estate, only if --

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4)    such interest is in bona fide dispute; or
(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money judgment of such interest.

Section 365(f) is written in the disjunctive. Thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of interest. See In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority to conduct the sale free and clear of all liens" (citing Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988)); In re Dundee Equity Corp., 1992 WL 53743, at *4 (Bankr. S.D.N.Y. 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met"); Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

**D.    Assumption and Assignment of Contracts - Section 365.**

Section 365(a) of the Bankruptcy Code provides:

Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Section 365(f)(2) of the Bankruptcy Code provides:

The trustee may assign an executory contract or unexpired lease of the debtor only if--
(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

**E.    Section 105.**

14

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

## IV. LEGAL ARGUMENT

### A. The Bid Procedures Are Fair, Appropriate, and Should Be Approved.

Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or public auction. The Trustee submits that the 363 Assets can best be valued in the context of an actual auction subject to competitive bidding. At the Sale Hearing, the Trustee will present to the Court the Prevailing Bid(s) that were subjected to a comprehensive sale process culminating in the Auction if there are multiple bidders. As a result, the successful bid will represent a fair and reasonable price for the 363 Assets. See In re Onouli-Kona Land Co., 846 F.2d 1170 (9th Cir. 1988) (upholding the results of a Section 363 auction where there was no evidence of bad faith); In re Gucci, 126 F.3d 380 (2d Cir. 1997) ("[W]here the purchaser is found to have acted in good faith, the auction price suffices to demonstrate that the purchaser paid value for the assets."); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) (holding that an auction is sufficient to establish the value of assets except where purchaser did not act in good faith); In re Alpha Industries, Inc., 84 B.R. 703, 706 (Bankr. Mont. 1988) ("an auction may be sufficient to establish that one has paid 'value' for the assets of a bankrupt.").

The Sale Procedures are structured to produce an open, transparent auction process. The Trustee submits that the sale of the 363 Assets pursuant to the Bid Procedures and by the public Auction in the event of multiple Qualified Bidders, will ensure that the bidding process with respect to the 363 Assets is fair, reasonable, and will yield the maximum value for Debtors' estates and creditors considering the circumstances of the Chapter 11 Cases and the restrictions and obligations under the Global Settlement Agreement, Global Settlement Order, and Plan. See In re Integrated Res., Inc., 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) (such procedures "encourage

bidding and to maximize the value of the Debtors' assets"); In re Financial News Network, Inc., 126 B.R. 152, 156 (S.D.N.Y. 1991) (as amended) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for an [sic] fair and efficient resolution of bankrupt estates"); see also In re Montgomery Ward Holding Corp., Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997) [ECF No. 377]; In re Fruehauf Trailer Corp., Case No. 96-01563 (PJW) (Bankr. D. Del. Jan. 31, 1997) [ECF No. 439].

The Trustee has determined that the sale process is the optimal mechanism for maximizing the value of the Debtors' 363 Assets for the benefit of the estates and creditors while conforming to the strict requirements of the Global Settlement Agreement, Global Settlement Order, and Plan. For the avoidance of doubt, the Global Settlement Agreement requires the effectuation of a sale pursuant to Section 363 of the Bankruptcy Code, as well as that the Confirmation Hearing be scheduled the week of September 15, 2025, or as soon as practical thereafter. The Confirmation Hearing is scheduled for September 24, 2025. To effectuate a Section 363 sale before the Plan goes effective, requires that the Auction be conducted in the first week of October. Moreover, the likely bidders are all already aware of the proposed sale as it was previewed in the Plan filed on August 1, 2025. The Bid Procedures provide sufficient time to notice the sale process while also being cognizant of the financial constraints and the potential loss and harm to the business resulting from any significant delay or uncertainty in the sale process. The sale process as set forth in the Bid Procedures is necessary under the circumstances and provides the best mechanism to maximize value for the Debtors, their creditors, and their estates. See Carmel Decl. ¶ 13.

Similar procedures have previously been approved by this Court and others. See e.g., In re Jagged Peak, Inc., Case No. 19-15959 (lead case) (Bankr. D. Nev. Oct. 29, 2019) [ECF No. 198]; In re Consolidated Resorts, Inc., et al., Case No. 09-22035 (Lead Case) (LBR) (Bankr. D. Nev. Mar. 16, 2012) [ECF No. 973]; In re Humboldt Creamery, LLC, Case No. 09-11078 (AJ) (Bankr. N.D. Cal. July 28, 2009) [ECF No. 177]; In re Asyst Techs, Inc., Case No. 09-43246 (RJN) (Bankr. N.D. Cal. June 8, 2009) [ECF No. 181]; In re Nortel Networks, Inc., Case No. 09-10138 (KG) (Bankr. D. Del. June 30, 2009) [ECF No. 1012]; In re Tweeter Home Entm't Group, Inc., Case No. 07-10787 (PJW) (Bankr. D. Del. June 26, 2007) [ECF No. 211]; In re Radnor Holdings

Corp., Case No. 06-10894 (PJW) (Bankr. D. Del. Sept. 22, 2006) [ECF No. 277].

As the Bid Procedures serve to maximize the value of the estates for the benefit of the creditors and are consistent with the terms of the Global Settlement Agreement, the Global Settlement Order, and the Plan, the Trustee requests approval of the Bid Procedures.

**B.    The Sale Should Be Approved.**

A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders.  See, e.g., In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).  In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); In re Integrated Res., Inc., 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate" (quoting In re Atlanta Packaging Prods., Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

This 363 Sale and sale process is expressly contemplated in the Plan.  The Trustee believes that the sale process for the sale of the 363 Assets is the appropriate and optimal mechanism in order to effectuate the terms of the Global Settlement Agreement, which has produced $108.5 million of value for the creditors, thereby maximizing the value for the benefit of all creditors and the estates.  See Carmel Decl. ¶ 14.  Accordingly, the Trustee submits that the sale of the 363 Assets amply satisfies Section 363(b) of the Bankruptcy Code.

. . .

**C.    The Sale Should Be Made "Free and Clear."**

Pursuant to Section 363(f), the Sale may be free and clear of liens, claims, and encumbrances.  The Plan provides for the full payment of all allowed secured claims and the Estates will have sufficient funds to pay all allowed secured claims prior to taking into account any sale proceeds.  See Carmel Decl. ¶ 15.  Beyond this, any alleged liens will attach to the sale

proceeds to the same extent and priority as exist before the sale.  Thus, even if the lienholders did not consent, Section 363(f)(3) authorizes the sale free and clear of their liens.  Accordingly, the Trustee requests that the 363 Assets be sold fee and clear of all liens, claims, and encumbrances pursuant to Section 363(f).

**D.      Debtors May Assume and Assign the Assumed Contracts.**

In accordance with the APA, Debtors will assume and assign certain leases and contracts to the ultimate Buyer (collectively the "Assumed Contracts").  Pulliam has identified his Assumed Contracts on Schedule 1.01(c) of the Pulliam APA.

Bankruptcy courts employ a "business judgment" standard when evaluating the  decision to assume or reject an executory contract or unexpired lease.  See In re G.I. Industries, Inc., 204 F.3d 1276, 1282 (9th Cir. 2000), citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (recognizing that the business judgment rule is used in reviewing motions to assume or reject executory contracts) (superseded in part by 11 U.S.C. § 1113); Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993); Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.), 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); In re Exide Techs., 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

Here, the assumption and assignment of the Assumed Contracts is in the best interests of the estates and the creditors.  Foremost, the decision to assume and assign certain of the executory contracts and unexpired leases is an integral part of the sale and thus necessary to maximize the value achieved through the 363 Sale.  Additionally, after the sale closes, the estates will have no further need to maintain any of the executory contracts or unexpired leases as Debtors' operations will have fully terminated.  Further, the assumption and assignment will relieve the estates of any liability associated therewith.

Each counterparty to an Assumed Contract will be provided with notice of this Motion and the Assumption Notice within one (1) business day of entry of the Bid Procedures Order.  As such,

they will have an opportunity to object to the cure amounts and the assumption and assignment to ensure that adequate assurance of future performance is provided to the counterparties before assumption and assignment is permitted.  Additionally, if multiple Qualified Bids are received that contemplate the assumption and assignment of contracts or leases in addition to the Assumed Contracts designated by Pulliam, the Trustee will immediately notify any such counterparties by phone or email wherever possible and also by mail, thereby providing notice of the intention to assume and assign additional contracts, the proposed cure amounts, and the deadline to object. Accordingly, the Trustee submits that the assumption and assignment of the Assumed Contracts complies with the requirements of Sections 363 and 365 and is in the best interests of the estate and its creditors and should be approved.  See Carmel Decl. ¶ 16.

**E.**       **The Prevailing Bidder Is Entitled to a Good Faith Finding.**

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

The Trustee has negotiated at arms-length and in good faith with Pulliam.  See Carmel Decl. ¶ 17.   The Trustee submits, and will present evidence at the Sale Hearing if necessary, that the selection of the Prevailing Bidder(s) shall be the product of arms-length, good faith negotiations in the anticipated competitive sale process.  Accordingly, the Trustee requests that the Court make a finding at the Sale Hearing and in the Sale Order that the Prevailing Bidder(s) have purchased the 363 Assets in good faith and are entitled to the full protections of Section 363(m), thereby protecting the Prevailing Bidder(s)' interest in the 363 Assets should the sale ever be reversed or modified on appeal.

**F.**       **The Form of Notice of Hearing and Sale Should Be Approved.**

Pursuant to Bankruptcy Rules 2002(a) and (c), the Trustee is required to notify creditors of the proposed sale of the 363 Assets, including a disclosure of the time and place of the Auction, the terms and conditions of the proposed Sale, and the deadline for filing objections.  The Trustee submits that the notice procedures described above fully comply with Bankruptcy Rule 2002 and

are reasonably calculated to provide timely and adequate notice of the proposed sale of the 363 Assets, the Bid Procedures, the Auction, the Cure Amount, and the Sale Hearing to Debtors' creditors and all other parties-in-interest that are entitled to notice.  Based upon the foregoing, the Trustee respectfully requests that the Court approve the notice procedure proposed above, including the form and manner of service of the Auction Notice and the Assumption Notice.

## V.  CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Bid Procedures Order attached hereto as **Exhibit "A"** at this initial hearing and the Sale Order attached hereto as **Exhibit "B"** at the conclusion of the Sale Hearing.

Dated this 19th day of September 2025.

GARMAN TURNER GORDON LLP


By: _/s/  Talitha Gray Kozlowski_____
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*