# EXHIBIT E

# EXHIBIT E

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of September 19, 2025, is entered into between Michael W. Carmel, solely in his capacity as the Trustee of the Chapter 11 Bankruptcy Estates of NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico (the "**Seller**"), and Justin Pulliam, an individual, or his assignee ("**Buyer**" or "**Purchaser**"). Capitalized terms used in this Agreement have the meanings given to such terms herein.

## RECITALS

**WHEREAS,** on or about January 22, 2025 ("**Petition Date**"), NuMale Corp. filed a voluntary petition ("**Petition**") for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101, et seq. ("**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Nevada ("**Bankruptcy Court**"), commencing bankruptcy case no. 25-10341 ("**Bankruptcy Case**"), and continues to manage its property as debtor and debtors-out-of-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico, operate men's health clinics within the United States (the "**Business**");

**WHEREAS,** concurrently with NuMale Corp's petition, each of Feliciano NuMale (Case No. 25-10342), NuMedical SC (No. 25-10343), NuMale Colorado (Case No. 25-10344), NuMale Nebraska (Case No. 25-10346), NuMale Florida (Case No. 25-10345), and NuMale New Mexico (Case No. 25-10347) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**WHEREAS,** on or about April 7, 2025, Seller was appointed as Chapter 11 Bankruptcy Trustee in the Bankruptcy Case.

**WHEREAS,** on or about April 28, 2025, a Final Order Approving the Motion for Order Directing the Joint Administration of Debtor's Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(B) was entered in the Bankruptcy Case. Such order caused Case Nos. 25-10342, 25-10343, 25-10344, 25-10346, 25-10345, and 25-10347 to be jointly administered under the Bankruptcy Case (collectively, the "**Estates**").

**WHEREAS**, on August 1, 2025, Seller filed on behalf of the Joint Plan of Reorganization [ECF 434] ("**Plan**") in the Bankruptcy Case, which Plan provided for the sale of the 363 Assets and certain provisions related to the sale of 363 Assets provided for herein.[1]

**WHEREAS,** Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, substantially all the assets of the Business defined in the Plan as the 363 Assets, subject to the terms and conditions set forth herein;

---

[1] Terms used but not defined herein are used as defined in the Plan.

1

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

**Section 1.01  Purchase and Sale of the 363 Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, convey, assign, transfer, and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title, and interest in, to, and under all of the 363 Assets described in Section 1.1.1 of the Plan, which includes all tangible and intangible assets, properties, and rights of every kind and nature and wherever located, which relate to, or are used or held for use in connection with, the Business except for the Excluded Assets set forth in Section 1.02 of this Agreement (collectively, the "**363 Assets**"), free and clear of all claims, liens, encumbrances and interests to the fullest extent contemplated by section 363(f) of the Bankruptcy Code, including the following:

(a)  all accounts receivable held by Seller ("**Accounts Receivable**");

(b)  all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts, and other inventories;

(c)  all Contracts (the "**Assumed Contracts**") set forth on Schedule 1.01(c). The term "**Contracts**" means all contracts, leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures, and all other agreements, commitments, and legally binding arrangements, whether written or oral;

(d)  all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property;

(e)  all intellectual property and industrial property rights and assets, and all rights, interests, and protections that are associated with, similar to, or required for the exercise of, any of the foregoing, whether registered or unregistered, including any and all trademarks, service marks, trade names, brand names, logos, trade dress, design rights, works of authorship, expressions, designs, copyrights, websites, software, trade secrets, and patents, as well as any royalties, fees, income, payments, and other proceeds with respect to any and all of the foregoing;

(f)  all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums, and fees (including any such item relating to the payment of Taxes);

(g)  all of Seller's rights under warranties, indemnities, and all similar rights against third parties to the extent related to any 363 Assets that are not an Excluded Asset;

(h)  all insurance benefits, including rights and proceeds, arising from or relating to the Business or the 363 Assets;

2

(i) all ownership interests in any corporation, limited liability company, or other business entity owned by the Business;

(j) originals or, where not available, copies, of all books and records, including books of account, ledgers, and general, financial, and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records, and data (including all correspondence with any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any arbitrator, court, or tribunal of competent jurisdiction (collectively, "**Governmental Authority**"), sales material and records, strategic plans and marketing, and promotional surveys, material, and research; and

(k) all goodwill and the going concern value of the 363 Assets and the Business.

**Section 1.02  Excluded Assets.** For the avoidance of doubt, the following assets, which are also excluded in Section 1.1.1 of the Plan, are not being sold to Buyer (the "**Excluded Assets**":

(a) Debtor's 2019 Ford F150;

(b) The proceeds of the sale contemplated by this Agreement;

(c) The equity interests in each of the Debtors; and

(d) The Distributable Assets (as defined in the Plan), including:

(i) all Litigation Claims (expressly including the Litigation Claims identified in Schedule 1.1.82 of the Plan);

(ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies;

(iii) the Beazley Settlement Payment;

(iv) any assets transferred to the Liquidation Trust; and

(v) the New Value Contribution.

**Section 1.03  Purchase Price.** The aggregate purchase price for the 363 Assets shall be THREE HUNDRED THOUSAND DOLLARS ($300,000.00) (the "**Purchase Price**"). Buyer may pay the Purchase Price by way of a Credit Bid of Purchaser's Allowed Secured Claim in the Bankruptcy Case.

**Section 1.04  Allocation of Purchase Price.** The Purchase Price shall be allocated among the 363 Assets for all purposes (including Tax and financial accounting) as shown on the allocation schedule to be provided by Buyer in accordance with this provision (the "**Allocation Schedule**"). The Allocation Schedule shall be prepared in accordance with Section 1060 of the Internal

Revenue Code of 1986, as amended, and provided by Buyer to Seller within 45 days following the Closing. Buyer and Seller shall file all returns, declarations, reports, information returns and statements, and other documents relating to Taxes (including amended returns and claims for refund) ("**Tax Returns**") in a manner consistent with the Allocation Schedule.

## ARTICLE II
## CLOSING

**Section 2.01  Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of GARMAN TURNER GORDON LLP, 7251 Amigo Street, Suite 210, Las Vegas, NV 89119 or remotely by exchange of documents and signatures (or their electronic counterparts), at 1:30 p.m. prevailing Clark County, Nevada time, five (5) Business Days after all of the conditions to Closing set forth in ARTICLE VI are either satisfied or waived, or at such other time or place or in such other manner as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date**."

**Section 2.02  Closing Deliverables.**

(a)   At the Closing, Seller shall deliver to Buyer the following:

(i)   All documents and instruments necessary or desirable to convey the 363 Assets to Buyer, in form and substance reasonably acceptable to Buyer, all duly executed by Seller and duly acknowledged, where applicable, including without limitation a bill of sale and any necessary assignment or assumption agreements;

(ii)   such other customary instruments of transfer or assumption, filings, or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to the transactions contemplated by this Agreement; and

(iii)   a final and non-appealable Sale Order entered by the Bankruptcy Court, containing such provisions as Buyer may reasonably require, conveying the 363 Assets to Buyer free and clear of all claims, liens, encumbrances and liens to the fullest extent contemplated by 11 U.S.C. 363(f).

(b)   At the Closing, Buyer shall deliver to Seller the following:

(i)   the Purchase Price, unless such Purchase Price is paid solely by way of Buyer's credit bid of Purchaser's Allowed Secured Claim; and

(ii)   executed counterparts of the documents and instruments referenced in Section 2.02(a)(i) of this Agreement, as applicable.

# ARTICLE III
# REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this ARTICLE III are true and correct as of the date hereof.

**Section 3.01   Authority of Seller.** Seller has been appointed to serve as trustee. Subject to the Sale Order (as defined below) becoming final and non-appealable by the time of Closing, Seller has full power and authority to enter into this Agreement and the other transaction documents to which Seller is a party, to carry out their obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The "**Sale Order**" means an order (or orders) of the Bankruptcy Court in form and substance reasonably acceptable to Buyer, approving this Agreement, the transaction documents, and all terms and conditions thereof, approving the conveyance of the 363 Assets from Seller to Buyer free and clear of all claims, liens, encumbrances and liens to the fullest extent contemplated by section 363(f) of the Bankruptcy Code, and approving and authorizing Seller to consummate the transactions contemplated by this Agreement pursuant to, among others, Sections 363 and 365 of the Bankruptcy Code. The execution and delivery by Seller of this Agreement and any other transaction document to which Seller is a party, the performance by Seller of its obligations hereunder and thereunder, and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate, board, and shareholder action on the part of Seller. Subject to the Sale Order becoming final and non-appealable by the time of Closing, this Agreement and the transaction documents constitute legal, valid, and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

**Section 3.02   No Conflicts or Consents.** As set forth in the Sale Order, the execution, delivery, and performance by Seller of this Agreement and the other transaction documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the certificate of incorporation, by-laws, or other governing documents of Seller; (b) violate or conflict with any provision of any statute, law, ordinance, regulation, rule, code, constitution, treaty, common law, other requirement, or rule of law of any Governmental Authority (collectively, "**Law**") or any order, writ, judgment, injunction, decree, stipulation, determination, penalty, or award entered by or with any Governmental Authority ("**Governmental Order**") applicable to Seller, the Business, or the 363 Assets; (c) require the consent, notice, declaration, or filing with or other action by any individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity ("**Person**") or require any permit, license, or Governmental Order; (d) violate or conflict with, result in the acceleration of, or create in any party the right to accelerate, terminate, modify, or cancel any Contract to which Seller is a party or by which Seller or the Business is bound or to which any of the 363 Assets are subject (including any Assigned Contract); or (e) result in the creation or imposition of any charge, claim, pledge, equitable interest, lien, security interest, restriction of any kind, or other encumbrance ("**Encumbrance**") on the 363 Assets.

**Section 3.03   As-Is, Where-As.** Seller makes no representations or warranties with respect to the title, condition or completeness of the 363 Assets. The sale of the 363 Assets shall be on an on an "as is," "where is" and "with all faults" basis without representation or warranty of

any kind, either express or implied, including, but not limited to, any warranties as to merchantability, fitness, or usability. Seller shall seek and obtain approval of the Bankruptcy Court of the sale of the 363 Assets to Buyer free and clear of all claims, liens, encumbrances, and interests to the fullest extent contemplated by section 363(f) of the Bankruptcy Code.

**Section 3.04    Taxes.** All Taxes due and owing by Seller as of the Closing Date have been, or will be, timely paid. All Tax Returns with respect to the Business required to be filed by Seller for any tax periods prior to Closing have been, or will be, timely filed. The term "**Taxes**" means all federal, state, local, foreign, and other income, gross receipts, sales, use, production, ad valorem, transfer, documentary, franchise, registration, profits, license, withholding, payroll, employment, unemployment, excise, severance, stamp, occupation, premium, property (real or personal), customs, duties, or other taxes, fees, assessments, or charges of any kind whatsoever, together with any interest, additions, or penalties with respect thereto.

**Section 3.05    Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other transaction document based upon arrangements made by or on behalf of Seller.

ARTICLE IV
REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this ARTICLE IV are true and correct as of the date hereof.

**Section 4.01    Organization and Authority of Buyer.** Buyer is an individual. Buyer has full power and authority to enter into this Agreement and the other transaction documents to which Buyer is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any other transaction document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder, and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by Buyer. This Agreement and the transaction documents constitute legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms. In the event that Buyer assigns its rights hereunder to a third party, Buyer shall disclose to the Seller and the Bankruptcy Court the identity of the assignee and its owners prior to the hearing before the Bankruptcy Court seeking to approve this Agreement.

**Section 4.02    No Conflicts; Consents.** The execution, delivery, and performance by Buyer of this Agreement and the other transaction documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the certificate of incorporation, by-laws, or other organizational documents of Buyer; (b) violate or conflict with any provision of any Law or Governmental Order applicable to Buyer; or (c) require the consent, notice, declaration, or filing with or other action by any Person or require any permit, license, or Governmental Order.

**Section 4.03  Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other transaction document based upon arrangements made by or on behalf of Buyer.

**Section 4.04  Legal Proceedings.** There are no Actions pending or, to Buyer's knowledge, threatened against or by Buyer that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

**Section 4.05  As-Is, Where-As.** Buyer understands, acknowledges, and agrees that he is acquiring the 363 Assets on an "as is," "where is" and "with all faults" basis without representation or warranty of any kind, either express or implied, including, but not limited to, any warranties as to merchantability, fitness, or usability.

## ARTICLE V
## COVENANTS

**Section 5.01  Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer, or similar Laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the 363 Assets to Buyer. Any liabilities arising out of the failure of Seller to comply with the requirements and provisions of any bulk sales, bulk transfer, or similar Laws of any jurisdiction shall be treated as excluded.

**Section 5.02  Receivables.** From and after the Closing, if Seller receives or collects any funds relating to any Accounts Receivable or any other Purchased Asset, Seller shall remit such funds to Buyer within five (5) business days after its receipt thereof.

**Section 5.03  Closing Conditions.** From the date hereof until the Closing, Seller and Buyer shall use their respective commercially reasonable efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in ARTICLE VI hereof; provided, however, that Seller shall not be required to take any actions that are not authorized by the Bankruptcy Code without Bankruptcy Court approval or otherwise.

**Section 5.04  Transfer Taxes.** All sales, use, registration, and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other transaction documents, if any, shall be borne and paid by Seller when due. Seller shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Buyer shall cooperate with respect thereto as necessary).

**Section 5.05  Employees.**

(a)  All employees of Seller may apply for employment by Buyer. Buyer has no obligation to hire or make offers of employment to the employees of Seller; Buyer may make offers of employment to active employees of Seller selected by Buyer in its sole discretion and on terms and conditions (including compensation and benefits) established by Buyer in its sole discretion.

(b) Buyer shall have no obligations whatsoever for, any compensation or other amounts payable to any current or former employee, officer, director, independent contractor or consultant of the Business, including, without limitation, hourly pay, commission, bonus, salary, accrued vacation, fringe, pension or profit-sharing benefits or severance pay for any period relating to the service with Seller at any time on or prior to the Closing Date.

(c) Seller shall remain solely responsible for the satisfaction of all claims for medical, dental, life insurance, health accident or disability benefits brought by or in respect of current or former employees, officers, directors, independent contractors or consultants of the Business or the spouses, dependents or beneficiaries thereof, which claims relate to events occurring on or prior to the Closing Date. Seller also shall remain solely responsible for all worker's compensation claims of any current or former employees, officers, directors, independent contractors or consultants of the Business which relate to events occurring on or prior to the Closing Date. Seller shall pay, or cause to be paid, all such amounts to the appropriate persons as and when due.

**Section 5.06  Bankruptcy Matters.** Seller acknowledges that a material inducement to Buyer's agreement to enter into this Agreement and act as a stalking horse bidder in the Bankruptcy Case is Seller's agreement to conduct the sale of the 363 Assets in the manner set forth in the Sales Procedures Order, to seek approval of the Sale Procedures Order (including the approval of the form of this Agreement), and to seek approval of the Sale Motion in an expeditious manner consistent with the requirements of the Bankruptcy Code. Accordingly, Seller agrees as follows:

(a) Not later than September 23, 2025, Seller shall file with the Bankruptcy Court a motion to approve this Agreement and the transactions contemplated by this Agreement ("**Sale Motion**"), which Sale Motion shall seek (i) entry by the Bankruptcy Court of an order setting forth the procedures pursuant to which the sale contemplated by this Agreement shall be conducted, including without limitation terms governing the minimum overbid, bid increments, 363 Stalking Horse Bid Protections, and requirements for overbidding ("**Sale Procedures Order**"); (ii) pursuant to Section 363(f) of the Bankruptcy Code, approval of this Agreement and Seller's performance under this Agreement, including the selling of the 363 Assets free and clear of liens, claims, interests, and encumbrances, subject to the terms of, and in accordance with, the Sales Procedures Order; (iii) pursuant to Section 363(m) of the Bankruptcy Code, a finding that Buyer is purchasing the 363 Assets in good faith; (iii) pursuant to Section 365 of the Bankruptcy Code, authorization of Seller assigning the Assumed Contracts to Buyer.

(b) After entry of the Sales Procedures Order by the Bankruptcy Court, Seller shall conduct the sale of the 363 Assets in accordance with the Sale Procedures Order, as approved by the Bankruptcy Court.

(c) If Buyer is not deemed to be the prevailing bidder at any auction for the 363 Assets or the Bankruptcy Court approves the sale of substantially all of the 363 Assets to a purchaser other than Buyer, Seller shall pay, upon consummation of such other transaction, to Buyer the 363 Stalking Horse Bid Protections, as set forth in the Plan.  The 363 Stalking Horse Bid Protections shall be paid from the cash proceeds of the transaction(s) pursuant to the Sale Order and Seller's obligation to pay the 363 Stalking Horse Bid Protections shall constitute an administrative expense of Seller under Section 503 of the Bankruptcy Code.

(d) Seller will provide Buyer with a reasonable opportunity to review and comment upon all motions, applications and supporting papers prepared by Seller relating to Buyer, this Agreement or any of the transactions contemplated by this Agreement prior to the filing thereof in the Bankruptcy Case. The Sale Motion, Sale Procedures Order, any motion seeking approval of this Agreement, and the Sale Order must be in form and substance reasonably acceptable to Buyer.

**Section 5.07  Assumption of Executory Contracts and Leases**. In addition to the Sale Motion, or as may be incorporated as a part thereof, Seller shall timely file notices and/or motions and take such other actions as may be necessary to assume and assign to the Buyer the Assumed Contracts. Buyer shall not be responsible for payment of any cure amounts relating to the Assumed Contracts.

**Section 5.08  Maintenance of Business.** At all times before the Closing, Seller will exercise commercially reasonable efforts to continue and maintain the Business for the benefit of Buyer, including without limitation relationships with lessors, employees, regulatory authorities, licensors, customers, suppliers and others having material business relationships with Seller; provided, however, that Seller may terminate any relationships after consultation with Buyer. Seller will in good faith encourage such Persons to continue their relationship with Buyer for the benefit of the Business following the Closing Date. Seller shall not knowingly or recklessly take any action that interferes with the business of Buyer to be engaged in after the Closing.

**Section 5.09  Notice of Developments.** Seller shall promptly notify Buyer of, and furnish Buyer any information it may reasonably request with respect to, any event that would reasonably be expected to cause any of the conditions set forth in ARTICLE VI not to be fulfilled by the Outside Date.

**Section 5.10  Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective affiliates to, execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the other transaction documents.

**ARTICLE VI**
**CLOSING CONDITIONS**

**Section 6.01  Conditions to Obligations of Buyer.** The obligations of Buyer to consummate the transactions contemplated in this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to the Closing, of each of the following conditions:

(a) Each of the representations and warranties of Seller set forth in Article IV of this Agreement shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

(b) Seller shall have duly performed and complied with all agreements, covenants and conditions required by this Agreement and each of the other transaction documents to be performed or complied with by it prior to or on the Closing Date.

(c) No injunction or restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any material transaction contemplated hereby.

(d) Seller shall have delivered to Buyer duly executed counterparts to the transaction documents (other than this Agreement) and such other documents and deliveries set forth in Section 2.02(a) of this Agreement.

(e) The Sale Procedures Order shall have been entered and shall have become final and non-appealable, unless waived by Buyer.

(f) The Sale Order shall have been entered in the Bankruptcy Case on or before October 15, 2025, and shall have become final and non-appealable.

(g) All cure obligations (pursuant to Section 365 of the Bankruptcy Code) with respect to the Assumed Contracts shall have been paid in accordance with the Plan.

(h) Seller shall have delivered to Buyer such other documents or instruments as Buyer may reasonably request in order to consummate the transactions contemplated under this Agreement.

**Section 6.02 Conditions to Obligations of Seller.** The obligations of Seller to consummate the transactions contemplated in this Agreement shall be subject to the fulfillment or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(a) Each of the representations and warranties of Seller set forth in Article IV of this Agreement shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

(b) Buyer shall have duly performed and complied with all agreements, covenants and conditions required by this Agreement and each of the other transaction documents to be performed or complied with by it prior to or on the Closing Date.

(c) No injunction or restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any material transaction contemplated hereby.

(d) Buyer shall have delivered to Seller duly executed counterparts to the transaction documents (other than this Agreement) and such other documents and deliveries set forth in Section 2.02(b) of this Agreement.

(e) The Sale Procedures Order and the Sale Order shall have been entered in the Bankruptcy Case on or before October 15, 2025, and shall have become final and non-appealable.

(f) Buyer shall have delivered to Seller such other documents or instruments as Seller reasonably requests and are reasonably necessary to consummate the transactions contemplated under this Agreement.

## ARTICLE VII
## TERMINATION

**Section 7.01  Termination.** This Agreement may be terminated at any time prior to the Closing:

(a) by mutual written consent of Seller and Buyer;

(b) by Buyer or Seller by written notice if:

(i) there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made pursuant to this Agreement that would give rise to the failure of any of the conditions specified in ARTICLE VI and such breach, inaccuracy or failure has not been cured within five days of receipt of written notice of such breach;

(ii) the Closing shall not have occurred by November 15, 2025 (the "**Outside Date**");

(iii) the Seller has not filed the Sale Motion on or before September 23, 2025;

(iv) the Bankruptcy Court has not entered the Sale Order on or before October 15, 2025;

(v) the Bankruptcy Court has approved a transaction by Seller with another party that would prevent the consummation of the transactions contemplated under this Agreement with Buyer.

**Section 7.02  Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article, this Agreement shall forthwith become void and there shall be no liability on the part of any party hereto, except as set forth in this ARTICLE VII and Section VIII of this Agreement.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.01  Expenses.** Except as set forth in the Plan and Bid Procedures Order, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 8.02  Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient, or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 8.02):

| | |
|---|---|
| **If to Seller:** | Michael W. Carmel<br>Law Offices of Michael W. Carmel, Ltd.<br>89 East Columbus Ave<br>Phoenix, Arizona, 85012-4965<br>Email: Michael@mcarmellaw.com |
| with a copy to: | GARMAN TURNER GORDON LLP<br>7251 Amigo Street, Suite 210<br>Las Vegas, NV 89119<br>Email: tgray@gtg.legal<br>Attention: Talitha Gray Kozlowski, Esq. |
| **If to Buyer:** | Justin Pulliam |
| with a copy to: | Andersen Beede Weisenmiller<br>3199 E Warm Springs Road, Ste 400<br>Las Vegas, NV, 89120<br>Email: ryan@abwfirm.com<br>Attention: Ryan A. Andersen, Esq. |

**Section 8.03   Interpretation; Headings.** This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 8.04   Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

**Section 8.05   Entire Agreement.** This Agreement and the other transaction documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the other transaction documents, the Exhibits, or the statements in the body of this Agreement will control.

**Section 8.06   Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Permitted assigns includes any assignee(s) of Buyer of the right to purchase the 363 Assets. Except

for permitted assigns, neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. Any purported assignment in violation of this Section shall be null and void. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 8.07   Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

**Section 8.08   Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a)   This Agreement shall be governed by and construed in accordance with the internal laws of the State of Nevada without giving effect to any choice or conflict of law provision or rule (whether of the State of Nevada or any other jurisdiction). Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other transaction documents, or the transactions contemplated hereby or thereby shall be instituted in the Bankruptcy Court until such time as the Bankruptcy Case is closed and thereafter shall be instituted in the federal courts of the United States of America or the courts of the State of Nevada in each case located in Clark County, Nevada, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute.

(b)   EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS AND SCHEDULES ATTACHED TO THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT: (I) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION; (II) EACH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (III) EACH PARTY MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY; AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed

copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their duly authorized representatives.

**SELLER**

Michael W Carmel as Trustee of the Chapter 11 Bankruptcy Estates of NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico

By_____
Michael W. Carmel, solely in his capacity as the Chapter 11 Trustee

**BUYER**

Justin Pulliam

By_____
Justin Pulliam

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their duly authorized representatives.

**SELLER**

Michael W Carmel as Trustee of the Chapter 11 Bankruptcy Estates of NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico

By _/s/ Michael W. Carmel_

Michael W. Carmel, solely in his capacity as the Chapter 11 Trustee

**BUYER**

Justin Pulliam

By _____
Justin Pulliam

15

**Schedule 1.01(c)**

**Assumed Contracts**

| Contract Counterparty |
| --- |
| Apple iCloud |
| Gmail |
| GoDaddy, Inc. |
| Insurance Zizzle |
| Microsoft 365 (OneDrive) |
| My Bodysite |
| MyMedLeads/Texting System |
| Prospect Rainbow, LLC (Innovative Real Estate Strategies) |
| 444 Regency Parkway LLC (Gordman Lake Regency, LLC) |
| Wyoming Office Park, LLC (Brunacini Companies) |
| Reliant Capital (New Lane Finance) |
| Tampa Westshore 500 LLC |