GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
| NUMALE CORPORATION, | |
|    AFFECTS THIS DEBTOR, ☐ | *Jointly administered with:* |
|    AFFECTS FELICIANO<br>   NUMALE NEVADA PLLC, ☐ | Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc |
|    NUMEDICAL SC, ☐ | NuMedical SC<br>Case No. 25-10343-nmc |
|    NUMALE COLORADO SC, ☐ | NuMale Colorado SC,<br>Case No. 25-10344-nmc |
|    NUMALE FLORIDA TB PLLC, ☐ | NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc |
|    NUMALE NEBRASKA LLC, ☐ | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
|    NUMALE NEW MEXICO SC, ☐ | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
|    NUMALE ALL DEBTORS, ☒ | |
|       Debtors. | |

## NOTICE OF PROPOSED CONFIRMATION ORDER AND FINDINGS OF
## FACT AND CONCLUSIONS OF LAW

Michael Carmel, as the Chapter 11 trustee (the "Trustee") of the bankruptcy estates of

NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby files this *Notice of Proposed Confirmation Order and Findings of Fact and Conclusions of Law*, in connection with confirmation of the *Joint Plan of Reorganization* [ECF No. 434] (the "Plan").

Attached hereto as **Exhibit 1** is the proposed *Order Confirming the Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* ("Confirmation Order").

Attached hereto as **Exhibit 2** are proposed *Findings of Fact and Conclusions of Law in Support of the Order Confirming the Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* (the "FFCL") to accompany the Confirmation Order.

Attached hereto as **Exhibit 3** is a redline of the FFCL that reflects revisions made to address the U.S. Trustee's concerns, as well as minor revisions by the parties to the Global Settlement Agreement.

Attached hereto as **Exhibit 4** is a redline of the Confirmation Order further incorporating the changes reflected in the FFCL.

Attached hereto as **Exhibit 5** is a redline of the *Liquidation Trust Agreement* against the version previously filed with the *Notice of Plan Supplement to Joint Plan of Reorganization* [ECF No. 595-1] to reflect changes made in accordance with the Trustee's dialogue with the U.S. Trustee's office regarding confirmation of the Plan.

Dated this 23rd day of September 2025.

GARMAN TURNER GORDON LLP


By:    */s/ Mary Langsner*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Las Vegas, Nevada 89119
*Attorneys for Michael  Carmel, Chapter 11
Trustee*

**Garman Turner Gordon**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

# EXHIBIT 1

# EXHIBIT 1

1

2

3

4

5

6

7  GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
8  Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
9  Nevada Bar No. 9040
Email: tgray@gtg.legal
10  MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
11  mlangsner@gtg.legal
7251 Amigo Street, Suite 210
12  Las Vegas, Nevada 89119
Tel: 725.777.3000
13  *Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

14

## UNITED STATES BANKRUPTCY COURT
15  ## DISTRICT OF NEVADA

16  In re:                                           Lead Case No.: 25-10341-nmc
Chapter 11
17  NUMALE CORPORATION,
*Jointly administered with:*
18      AFFECTS THIS DEBTOR,            ☐
Feliciano NuMale Nevada PLLC,
19      AFFECTS FELICIANO               ☐    Case No. 25-10342-nmc
NUMALE NEVADA PLLC,
20                                            NuMedical SC
NUMEDICAL SC,                   ☐    Case No. 25-10343-nmc
21
NUMALE COLORADO SC,             ☐    NuMale Colorado SC,
22                                            Case No. 25-10344-nmc
NUMALE FLORIDA TB PLLC,         ☐
23                                            NuMale Florida TB PLLC,
NUMALE NEBRASKA LLC,            ☐    Case No. 25-10345-nmc
24
NUMALE NEW MEXICO SC,           ☐    NuMale Nebraska LLC
25                                            Case No. 25-10346-nmc
NUMALE ALL DEBTORS,             ☒    NuMale New Mexico SC
26                                            Case No. 25-10347-nmc
        Debtors.
27                                            Confirmation Hearing:
Date:  September 24, 2025
28                                            Time: 9:30 a.m.

**ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION AND APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION**

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC filed the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits and the Plan Supplement filed at ECF No. 595, the "Plan") and the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (the "Disclosure Statement").

In accordance with the *Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* (the "FFCL") entered concurrently herewith, it having been determined after a hearing on notice that the requirements for final approval of the Disclosure Statement set forth in 11 U.S.C. § 1125 and for confirmation of the Plan set forth in 11 U.S.C. § 1129(a) and (b) of the Bankruptcy Code have been satisfied, and good cause appearing;

**IT IS HEREBY ORDERED** that the Plan, as modified by the FFCL, is confirmed.

**IT IS FURTHER ORDERED** that the Disclosure Statement is approved on a final basis.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED BY:

GARMAN TURNER GORDON LLP

By: _/s/_____
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11 Trustee*

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the order.

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

### ###

GARMAN TURNER GORDON
Attorneys at Law
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

# EXHIBIT 2

# EXHIBIT 2

1

2

3

4

5

6

7   GARMAN TURNER GORDON LLP
    GREGORY GARMAN, ESQ.
8   Nevada Bar No. 6654
    Email: ggarman@gtg.legal
    TALITHA GRAY KOZLOWSKI, ESQ.
9   Nevada Bar No. 9040
    Email: tgray@gtg.legal
10  MARY LANGSNER, Ph.D.
    Nevada Bar No. 13707
11  mlangsner@gtg.legal
    7251 Amigo Street, Suite 210
12  Las Vegas, Nevada 89119
    Tel: 725.777.3000
13  *Attorneys for Michael Carmel,*
    *Chapter 11 Trustee*

14
                **UNITED STATES BANKRUPTCY COURT**
15                      **DISTRICT OF NEVADA**

16  In re:                              Lead Case No.: 25-10341-nmc
                                        Chapter 11
17  NUMALE CORPORATION,
                                        *Jointly administered with:*
18      AFFECTS THIS DEBTOR,        ☐
                                        Feliciano NuMale Nevada PLLC,
19      AFFECTS FELICIANO          ☐   Case No. 25-10342-nmc
        NUMALE NEVADA PLLC,
20                                      NuMedical SC
        NUMEDICAL SC,            ☐     Case No. 25-10343-nmc
21
        NUMALE COLORADO SC,      ☐     NuMale Colorado SC,
22                                      Case No. 25-10344-nmc
        NUMALE FLORIDA TB PLLC,  ☐
23                                      NuMale Florida TB PLLC,
        NUMALE NEBRASKA LLC,     ☐     Case No. 25-10345-nmc
24
        NUMALE NEW MEXICO SC,    ☐     NuMale Nebraska LLC
25                                      Case No. 25-10346-nmc
        NUMALE ALL DEBTORS,      ☒     NuMale New Mexico SC
26                                      Case No. 25-10347-nmc
        Debtors.
27                                      <u>Confirmation Hearing:</u>
                                        Date:  September 24, 2025
28                                      Time: 9:30 a.m.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE ORDER CONFIRMING JOINT PLAN OF REORGANIZATION AND APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION**

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates ("Estates") of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), having proposed the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits thereto, and as may be amended, modified, or supplemented, including via the *Notice of Filing Plan Supplement to Joint Plan of Reorganization* [ECF No. 595], the "Plan"[1]) and the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (with all exhibits thereto, the "Disclosure Statement"), and the Court having conducted a hearing to consider confirmation of the Plan on September 24, 2025 (the "Confirmation Hearing"), and the Court having considered (i) the *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 447] (the "Solicitation Procedures Order"); (ii) the *Notice of: (i) Hearing to Consider Final Approval of Conditionally Approved Disclosure Statement and Confirmation of Joint Plan of Reorganization; (ii) Procedures for Objecting to Final Approval of Conditionally Approved Disclosure Statement and Confirmation of the Plan and Evidence in Support Thereof; and (iii) Procedures and Deadlines* [ECF No. 449] (the "Confirmation Notice"); (iii) the *Certification of Acceptance and Rejection of Joint Plaint of Reorganization (Ballot Summary)* [ECF No. 611] (the "Ballot Summary"); (iv) *Declaration of Michael W. Carmel in Support of Plan Confirmation and Final Approval of the Disclosure Statement* [ECF No. 622] (the "Carmel Decl."); (v) *Brief in Support of Confirmation of Joint Plan of Reorganization* [ECF No. 621] (the "Confirmation Brief"); (vi) the *Stipulation Resolving Confirmation Objection* [ECF No. 598] and *Notice of Withdrawal of Creditor Prospect Rainbow, LLC's Limited Objection to the Joint Plan of Reorganization* [ECF No. 596]; (vii) Michael Sanchez's *Joinder in Support of Plan Confirmation* [ECF No. 601]; (viii) Justin Pulliam's joinder

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

in support of the Trustee's Confirmation Brief [ECF No. 627]; (ix) Michael Sanchez's joinder in support of the Trustee's Confirmation Brief [ECF No. 628]; (x) Newtek Bank, N.A.'s joinder in support of the Trustee's Confirmation Brief [ECF No. 630]; (xi) the *Objection of Mayfair Mall, LLC to Confirmation of Proposed Joint Plan of Reorganization* (the "<u>Mayfair Objection</u>") and supporting declaration [ECF Nos. 623 and 624]; (xii) the Trustee's supplemental brief in support of confirmation and reply to the Mayfair Objection [ECF No. ___]; and (xiii) all other relevant papers and pleadings on file in the Chapter 11 Cases, including the numerous claim settlements; and (ixx) the arguments of counsel presented at the Confirmation Hearing; it appearing to the Court that notice of the Confirmation Hearing having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Plan Confirmation and the other evidence presented at the Confirmation Hearing having established just cause for the relief granted herein; and the Court having considered any and all responses and objections to the Plan and its Confirmation, and all such objections being consensually resolved or withdrawn, or otherwise addressed as set forth herein and on the record at the Confirmation Hearing and thereafter and herein and hereby overruled in their entirety to the extent not consensually resolved prior to the entry of this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A.    <u>Findings and Conclusions.</u>**

1.    The findings and conclusions set forth herein, in the recitals, and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under FED. R. CIV. P. 52, made applicable herein by FED. R. BANKR. P. 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

2.    The Court further relies upon and incorporates herein the analysis set forth in the Confirmation Brief and the Carmel Decl.

**B.**     **Unrebutted Evidence.**

3.     The testimony and documentary evidence introduced and admitted into evidence by the Trustee at the Confirmation Hearing, including through the Carmel Decl., were unrebutted, including without limitation the liquidation analysis prepared by Trustee.

**C.**     **Jurisdiction, Venue, and Core Proceeding.**

4.     The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334 and 157.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code[2] and shall be confirmed.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of this Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**D.**     **Eligibility for Relief.**

5.     The Debtors were and are entities eligible for relief under Section 109 of the Bankruptcy Code.

**E.**     **Commencement and Administration of the Debtors' Chapter 11 Cases.**

6.     On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases").  *See, e.g.*, ECF No. 1.

7.     On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*.  *See* ECF No. 130.

8.     On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C.  § 1112(b), and Reservation of Rights, thereby directing the appointment of a Chapter 11 trustee for the Debtors' Estates*.  *See* ECF No. 132.

9.     On April 2, 2025, the United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' Estates.  *See* ECF No. 140.

10.     On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter*

---

[2] 11 U.S.C. §§ 101 – 1532, et seq. ("Bankruptcy Code").

*11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment.  Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

11.    Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' Estates.  *See* ECF No. 157.

12.    On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*.  See, e.g., ECF No. 209.

**F.    Burden of Proof – Confirmation of the Plan.**

13.    The Trustee as the proponent of the Plan has met his burden of proving the applicable elements of Sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation in the Ninth Circuit.

**G.    Notice.**

14.    Due, adequate, and sufficient notice of the Plan, the Disclosure Statement, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Plan and objecting to the final approval of the Disclosure Statement, and all other materials distributed by the Trustee in connection with the Confirmation in compliance with the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), have been provided to all parties in interest and all necessary parties.  *See* ECF Nos. 540, 541, and 609.  Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases pursuant to 11 U.S.C. § 1128, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**H.    Ballots.**

15.    The only classes of Claims entitled to vote to accept or reject the Plan are Class 9 (Sanchez Claim), Class 10 (General Unsecured Claims), Class 11 (Intercompany Claims), and Class 12 (Subordinated Claims) (collectively, the "Voting Classes").

16.    As approved by the Solicitation Procedures Order, the ballots that the Trustee used to solicit votes to accept or reject the Plan from Holders of Claims in the Voting Classes adequately

addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders of Claims in the Voting Classes to vote to accept or reject the Plan.

**I.      Solicitation.**

17.      As described in the Carmel Decl., the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada ("Local Rules"), and any other applicable rules, laws, and regulations.

18.      Following entry of the Solicitation Procedures Order, the Plan (in the form at ECF No. 434), the Disclosure Statement, the Confirmation Hearing Notice, and the ballots were transmitted and served to all Holders of Claims in the Voting Classes, in compliance with the Bankruptcy Code, including Sections 1125 and 1126 thereof; the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018; the Local Rules, including Local Rule 3017; the Solicitation Procedures Order; and any applicable nonbankruptcy law (collectively, the "Solicitation Packages"). *See* ECF No. 451. Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further or additional notice is required.

19.      Additionally, copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, and the Confirmation Notice were also mailed to the Holders in the Non-Voting Classes, as well as the entire creditor matrix in these Chapter 11 Cases. *See* ECF No. 451. Thus, transmission and service of the Plan, Disclosure Statement, Solicitation Procedures Order, and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further or additional notice is required.

20.      As set forth in the Carmel Decl., the Solicitation Packages were distributed to Holders of Claims in the Voting Classes that held a Claim as of the Voting Record Date of July 1, 2025.

21.      As approved by the Solicitation Procedures Order, the period during which the

Trustee solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

22.     Under Section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Newtek Secured Claim), Class 2 (Kalamata Claim), Class 3 (EBF Holdings Claim), Class 4 (Fox Funding Claim), Class 5 (Top Tier Claim), Class 6 (LCF Group Claim), Class 7 (Ford Motor Claim), and Class 8 (Priority Unsecured Claims), are Unimpaired and conclusively presumed to have accepted the Plan.

23.     Pursuant to Bankruptcy Rule 3017(d), the Trustee is not required to transmit a Solicitation Package to the non-voting Classes.  Holders of Claims in Class 13 (Equity Interests in the Debtors) are deemed to reject the Plan.

**J.      Voting.**

24.     As evidenced by the Carmel Decl. and approved by the Solicitation Procedures Order, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, the Disclosure Statement, and applicable nonbankruptcy laws, rules, and regulations.

**K.      Compliance with Bankruptcy Rule 3016.**

25.     In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Trustee as the plan proponent.  The Trustee appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L.      Plan Modifications Addressing US Trustee Concerns.**

26.     As set forth on the record at the Confirmation Hearing, the US Trustee informally raised several concerns with respect to confirmation of the Plan.  Accordingly, with the consent of the US Trustee and the parties to the Global Settlement Agreement, the Plan shall be, and here is, modified as follows, which modification does not alter the treatment of Claims or Equity Interests

and does not require re-solicitation.

27.     The following sentence in Section 5.3 of the Plan ("[n]otwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor"), and Sections 12.3, 12.11, and 12.13 of the Plan, are deleted in their entirety and replaced with the following provisions (the "Alternative Combined Provision"):

- Until the Effective Date of a confirmed plan, the debtors through the Chapter 11 Trustee shall continue to contemporaneously file separate UST Form 11-MOR, Monthly Operating Reports, when they become due.

- To comply with 11 U.S.C. § 1129(a)(12), all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date.

- Within two (2) business days of the Effective Date, the Reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall contemporaneously file separate UST Form 11-PCR, Post-Confirmation Reports, that shall include all of their respective receipts and disbursements (along with ending cash balance) for that quarter and shall be filed on a quarterly basis in the Chapter 11 cases until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the filing of Post-Confirmation Reports shall resume.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall be jointly and severally liable for the payment of all United States Trustee quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date.

- All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date shall be paid on a quarterly basis until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the payment of United States Trustee quarterly fees shall resume.

- The reporting requirements and payment of United States Trustee quarterly fees described herein shall comply with the Bankruptcy Code, Federal Rules of

Bankruptcy Procedure, and Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada.

28.    The following Section 7.4 is added to the Plan:

**7.4    Effective Date.**  Subject to all of the conditions set forth in Section 7.2 of the Plan occurring, the Effective Date shall occur on the earlier of: (i) the 363 Sale closing; and (ii) October 24, 2025.

29.    Section 8.7 of the Plan is deleted and replaced in its entirety with the following provision (the "Revised Exculpation Provision"):

8.7    **Exculpation**. From and after the Effective Date, neither Debtors, the Trustee, Sanchez, Beazley, and their respective professionals nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Cases, the pursuit of confirmation of this Plan (including the pursuit of the Global Settlement Agreement and Global Settlement Order incorporated into the Plan), or the consummation of this Plan, except for gross negligence and willful misconduct. Notwithstanding the foregoing, under no condition shall this exculpation apply to any claims previously asserted or which can be asserted against Brad Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the preserved Litigation Claims, including the Litigation Claims identified on Schedule 1.1.82 hereto.

Notwithstanding anything to the contrary herein, nothing in the Plan shall release, discharge, enjoin, or otherwise modify or affect the rights of Beazley to pursue the Palubicki and Feliciano Claims or any claims against NuMale Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina, PLLC.

**M.    Objections Overruled.**

30.    Any resolutions of objections to Confirmation set forth in filings with this Court or otherwise explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All remaining unresolved objections, statements, informal objections, and reservations of rights related to the Plan, including the Mayfair Objection, are hereby overruled on the merits, with prejudice, in the entirety.

**N.    Compliance with Bankruptcy Code Requirements – Section 1129(a)(1).**

31.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the Bankruptcy Code.

### a.    Proper Classification – Sections 1122 and 1123.

32.    The Plan satisfies the requirements of Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Section 3 of the Plan provides for the separate classification of Claims and Equity Interests into thirteen (13) Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests.  Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.

### b.    Specified Unimpaired Classes – Section 1123(a)(2).

33.    The Plan satisfies the requirements of Section 1123(a)(2) of the Bankruptcy Code.

34.    Section 3 of the Plan specifies that Claims and Equity Interests, as applicable, in the following Classes (collectively, the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of Section 1124 of the Bankruptcy Code:

| Class | Description | Designation |
|-------|-------------|-------------|
| Class 1 | Newtek Secured Claim | Unimpaired |
| Class 2 | Kalamata Claim | Unimpaired |
| Class 3 | EBF Holdings Claim | Unimpaired |
| Class 4 | Fox Funding Claim | Unimpaired |
| Class 5 | Top Tier Claim | Unimpaired |
| Class 6 | LCF Group Claim | Unimpaired. |
| Class 7 | Ford Motor Claim | Unimpaired |
| Class 8 | Priority Unsecured Claims | Unimpaired |

35.    Additionally, Section 2 of the Plan specifies that Allowed Administrative Claims and Priority Tax Claims will be satisfied in accordance with the terms of the Plan (unless otherwise agreed by the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, and the relevant Holder(s) in accordance with the terms of the Plan), although these Claims are not classified under the Plan.

### c.    Specified Treatment of Impaired Classes – Section 1123(a)(3).

36.     The Plan satisfies the requirements of Section 1123(a)(3) of the Bankruptcy Code. Section 3 of the Plan specifies that Claims and Equity Interests, as applicable, in the following five Classes (collectively, the "Impaired Classes") are Impaired under the Plan within the meaning of Section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Description | Designation |
|-------|-------------|-------------|
| Class 9 | Sanchez Claim | Impaired; solicitation required |
| Class 10 | General Unsecured Claims | Impaired; solicitation required |
| Class 11 | Intercompany Claims | Impaired; solicitation required |
| Class 12 | Subordinated Claims | Impaired; solicitation required |
| Class 13 | Equity Interests | Impaired; deemed rejected |

**d.     No Discrimination – Section 1123(a)(4).**

37.     The Plan satisfies the requirements of Section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.

**e.     Adequate Means for Plan Implementation – Section 1123(a)(5).**

38.     The Plan satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code. The provisions in Section 5 and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including payment of certain Allowed Claims on the Effective Date from the Distributable Assets (i.e., (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and (v) the proceeds from the 363 Sale), the creation of a Liquidation Trust to liquidate or otherwise dispose of the Liquidation Trust Assets, initially consisting of the Liquidation Trust Reserve plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve, and the reorganization of Debtors to effectuate the 363 Sale.

39.     Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the Bankruptcy Code, on the Effective Date, of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes.  As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged such that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are henceforth treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are hereby deemed cured as of the Effective Date.

**f.     Voting Power of Equity Securities – Section 1123(a)(6).**

40.     The Plan satisfies the requirements of Section 1123(a)(6) of the Bankruptcy Code, as no party is authorized to issue nonvoting equity securities under the Plan and Section 5.16 of the Plan provides that each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

**g.     Directors and Officers – Section 1123(a)(7).**

41.     The Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code. The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement.  The selection of the Liquidation Trustee is consistent with the interests of Holders of Claims and Equity Interests and with public policy. Additionally, the Plan clearly provides in Section 5.16 that Michael W. Carmel, the Trustee, is shall have sole control and authority over each of the Reorganized Debtors and their property and

shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and is hereby authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.

### h.    Impairment/Unimpairment of Classes – Section 1123(b)(1).

42.    The Plan is consistent with Section 1123(b)(1) of the Bankruptcy Code. Section 3 of the Plan impairs or leaves Unimpaired each Class of Claims and Equity Interests.

### i.    Assumption and Rejection – Section 1123(b)(2).

43.    The Plan is consistent with Section 1123(b)(2) of the Bankruptcy Code. Section 6 of the Plan provides for the assumption, effective as of the Effective Date, of the Debtors' Executory Contracts and Unexpired Leases that exist on the Confirmation Date, and provides they shall be deemed assumed by the respective Debtor(s) on the Effective Date and assigned to the prevailing bidder(s) in connection with the 363 Sale, except for: (i) the Beazley Policies, (ii) Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on the Schedule 6.1 of Rejected Executed Contracts and Unexpired Leases, (iii) those that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto, and (iv) those that have been assumed by order of the Bankruptcy Court.

44.    **Schedule 6.1 to the Plan.** Schedule 6.1 at ECF No. 434 p. 54 of 56 (*Rejected Executory Contracts and Unexpired Leases*) is hereby replaced in its entirety by the Schedule 6.1 appended to this Confirmation Order as **Exhibit 1.**

45.    **Schedule 6.3 to the Plan.** Schedule 6.3 at ECF No. 434 p. 55 of 56 (*Cure Amounts Payable By the Reorganized Debtors for Assumed Executory Contracts and Unexpired Leases*) is hereby replaced in its entirety by the Schedule 6.3 appended to this Confirmation Order as **Exhibit 2**.

### j.    Compromise, Settlement, Release, Exculpation and Injunction – Section 1123(b)(3).

46.    The Plan is consistent with Section 1123(b)(3) of the Bankruptcy Code. Pursuant to Section 1123 of the Bankruptcy Code, and in consideration of the classification, distributions,

releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. The compromise and settlement of such Claims and Equity Interests embodied in the Plan and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

47.    Sections 8.2, 8.5, 8.6, and 8.7 of the Plan, as expressly modified in this Confirmation Order, provide the following release, discharge, injunction, and exculpation as granted by the Plan (collectively, the "Release Provisions"). The Confirmation Hearing Notice sent to Holders of Claims and Equity Interests, and all creditors and parties in interest in these Chapter 11 Cases, unambiguously and prominently stated that the Plan contains the Release Provisions and provided therein a copy of the Release Provisions excerpted from the Plan. The Trustee has satisfied the applicable standard with respect to the propriety of the Release Provisions. Such provisions are a necessary and integral element of the Plan and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests. Also, the Release Provisions are: (a) in exchange for the good and valuable consideration provided; (b) a good faith settlement and compromise of the Claims released under the Plan; and (c) given, and made, after due notice and opportunity for hearing. Creditors have voted in favor of the Plan, including the Release Provisions. The Plan, including the Release Provisions, was negotiated by sophisticated parties represented by able counsel. The Release Provisions are therefore the result of an arm's-length negotiation process.

48.    Further, all creditors and parties in interest were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan. Additionally, the Release Provisions of the Plan were conspicuous, emphasized with boldface type in the Disclosure Statement, and were in the Confirmation Notice.

49.    Further, the Revised Exculpation Provision is appropriate under applicable law because the exculpated parties are limited to fiduciaries of the Estates, and the other primary stakeholders in the Global Settlement Agreement (Sanchez and Beazley) that were necessary to

the Plan, and because the provision was proposed in good faith, is appropriately limited in scope, and includes a carve-out for gross negligence and willful misconduct. The Revised Exculpation Provision is consistent with and satisfies the standards set forth in *Blixseth v. Credit Suisse,* 961 F.3d 1074 (9th Cir. 2020), and as clarified in *In re Astria Health*, 623 B.R. 793 (Bankr. E.D. Wash. 2021).

50. The exculpated parties subject to the Revised Exculpation Provision have, and, upon entry of this Confirmation Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Plan.

51. The limitation of liability of the Liquidation Trustee described in Section 8.3 of the Plan is also appropriate under applicable law because it is essential to protect the Liquidation Trustee who is effectuating the Plan and administering and overseeing the Liquidation Trust, because it was proposed in good faith, because it is appropriately limited in scope, and because it includes a carve-out for gross negligence, willful misconduct, intentional breaches of the Global Settlement Agreement or the Liquidation Trust Agreement, and fraud. For the avoidance of doubt, to the extent there is any conflict between Section 8.3 of the Plan and Section 4.1 of the revised Liquidation Trust Agreement attached hereto as Exhibit 3, Section 4.1 of the Liquidation Trust Agreement shall control.

52. If the 363 Sale does not close before the Effective Date, the Court expressly finds that the Plan is effectuating a reorganization and not a liquidation as the Reorganized Debtors shall be required to operate the health clinics and ensure patient care after the Effective Date. The discharge set forth in Section 8.5 of the Plan and the injunction provision set forth in Section 8.6 of the Plan are therefore necessary to implement, preserve, and enforce the provisions of the Plan and are narrowly tailored to achieve this purposes. If, however, the 363 Sale closes before the Effective Date, the Court finds that the Plan is effectuating a liquidation, and Sections 8.5 and 8.6 of the Plan shall be stricken in their entirety and of no force and effect in accordance with Section

1141(d)(3).

53.     Except as otherwise provided herein, as of the Effective Date, all releases, waivers, discharges, exculpations, and injunctions set forth in the Plan, as expressly modified by this Confirmation Order, shall be effective and binding on all persons and entities and any representatives thereof.  The Plan and this Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and/or this Confirmation Order, including the Release Provisions, as modified by this Confirmation Order.

### k.     Additional Plan Provisions – Section 1123(b)(6).

54.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1123(b)(6) of the Bankruptcy Code.

### O.     Trustee's Compliance with 11 U.S.C. § 1129(a)(2).

55.     The Trustee and his agents have complied in good faith with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of 11 U.S.C. § 1129(a)(2). Specifically:

    a.     The Debtors are each an eligible debtor under 11 U.S.C. § 109, and the Trustee is a proper proponent of the Plan under 11 U.S.C. § 1121(a);

    b.     The Trustee has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

    c.     The Trustee has complied with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy laws, rules, and regulations, the Solicitation Procedures Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

### P.     Plan Proposed in Good Faith – Section 1129(a)(3).

56.     The Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code. The Trustee has proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the support of the

Voting Classes for the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Trustee to implement an orderly liquidation of Litigation Claims through the Liquidation Trust, to substantively consolidate the Estates for confirmation purposes, and to reorganize the Debtors to effectuate and close the 363 Sale, before the Reorganized Debtors are ultimately wound down.

**Q.** **Payment for Services or Costs and Expenses – Section 1129(a)(4).**

57. The procedures set forth in the Plan for the Court's review and ultimate approval of the Administrative Claims to be paid by the Estates or the Liquidation Trust, as the case may be, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, in either instance, incurred in connection with the Chapter 11 Cases through the Effective Date, satisfy the objectives of, and are in compliance with, Section 1129(a)(4) of the Bankruptcy Code.

**R.** **Directors, Officers, and Insiders – Section 1129(a)(5).**

58. The Trustee has satisfied the requirements of 11 U.S.C. § 1129(a)(5). The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement. Additionally, the Plan discloses that Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law. The selections are consistent with the interest of Holders of Claims and Equity Interests and with public policy.

**S.** **No Rate Changes – Section 1129(a)(6).**

59. Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**T.** **Best Interest of Creditors – Section 1129(a)(7).**

60. The Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the

Confirmation Hearing: (a) are reasonable, persuasive, and credible as of the dates such analyses or evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

**U.    Acceptance by Certain Classes – Section 1129(a)(8).**

61.    Classes 1 through 8 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code. The Voting Classes have voted to accept the Plan. Class 13 is not receiving or retaining any property under the Plan on account of their Equity Interests under the Plan and is deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code. Notwithstanding the deemed rejection of the Plan by Class 13, the Plan is confirmable as a result of its satisfaction of Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**V.    Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code – Section 1129(a)(9).**

62.    The treatment of Administrative Claims and Priority Tax Claims under Section 2 of the Plan, and of Priority Unsecured Claims under Section 3 of the Plan, satisfies the requirements of, and complies in all respects with, Section 1129(a)(9) of the Bankruptcy Code.

**W.    Acceptance by at Least One Impaired Class – Section 1129(a)(10).**

63.    The Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Carmel Decl., the Voting Classes 9 and 10, which are impaired, voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in Section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code.

**X.    Feasibility – Section 1129(a)(11).**

64.    The Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code.

The Global Settlement Agreement was approved by the Global Settlement Order, resulting in the $108.5 million Beazley Settlement Payment being made to the Estates, which funds shall be used to satisfy the payment obligations under the Plan.  Additionally, the Plan provides for the 363 Sale, which will produce additional value to facilitate payments on account of Allowed Claims in accordance with the Plan. Finally, the Plan provides for the establishment of the Liquidation Trust to prosecute litigation claims, which recovery will further be utilized to satisfy the Allowed Claims in accordance with the terms of the Plan and the Liquidation Trust Agreement. Accordingly, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, except as provided in the Plan.

**Y.      Payment of Fees – Section 1129(a)(12).**

65.      Having incorporated Alternative Combined Provision into the Plan, the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

**Z.      Continuation of Retiree Benefits – Section 1129(a)(13).**

66.      Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in Section 1114 of the Bankruptcy Code) at levels established pursuant to Section 1114 of the Bankruptcy Code.  Here, the Plan does not alter retiree benefits, to the extent such benefits exist and are provided by the Debtors.  The Plan therefore satisfies the requirements of Section 1129(a)(13) of the Bankruptcy Code.

**AA.      Non-Applicability of Certain Sections – Sections 1129(a)(14), (15), and (16).**

67.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**BB.      "Cram Down" Requirements Satisfied – Section 1129(b).**

68.      The requirements of Section 1129(b) of the Bankruptcy Code have been satisfied with respect to Class 13 because the Plan does not discriminate unfairly, and is fair and equitable, with respect to this Class. The Plan follows the "absolute priority" rule with respect to Class 13 because no Class junior to this Classes will receive any distribution under the Plan on account of

junior claims or interests, and Class 13 is fairly excluded from the other Classes under the Plan based on its legal character and the circumstances of these Chapter 11 Cases.

**CC.    Only One Plan – Section 1129(c).**

69.    The Plan satisfies the requirements of Section 1129(c) of the Bankruptcy Code. The Plan is the only current chapter 11 plan filed in the Debtors' Chapter 11 Cases.

**DD.    Principal Purpose of the Plan – Section 1129(d).**

70.    The Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code. As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

**EE.    Not Small Business Case – Section 1129(e).**

71.    Section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases as these are not small business cases.

**FF.    Good Faith Solicitation – Section 1125(e).**

72.    The Trustee has acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of his respective activities relating to support and consummation of the Plan, and solicitation of acceptances of the Plan, and is entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

**GG.    Satisfaction of Confirmation Requirements.**

73.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in Section 1129 of the Bankruptcy Code.  Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including holders of Claims and Equity Interests that voted to reject the Plan.

**HH.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

74.    Each of the conditions precedent to the Effective Date, as set forth in Section 7 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 7.3 of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Section

7 of the Plan have been satisfied or waived in accordance with the terms thereof.

**II.    Implementation.**

75.    All Plan documents necessary to implement the Plan, including the Liquidation Trust Agreement attached hereto as Exhibit 3, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and the Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.  The Trustee is authorized to take any action reasonably necessary or appropriate, and consistent with the Plan and this Confirmation Order, to consummate such agreements and the transactions contemplated thereby.

**JJ.    Disclosure of Facts.**

76.    The Trustee has disclosed all material facts regarding the Plan, including with respect to consummation of the Plan and any and all Plan-related documents.

**KK.    Good Faith.**

77.    The Trustee, and to the extent applicable, the Liquidation Trustee, have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to effectuate the Plan and any and all Plan-related documents.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

78.    **Final Approval of Disclosure Statement.** The Disclosure Statement is approved on a final basis under Section 1125 of the Bankruptcy Code.

79.    **Approval of the Revised Liquidation Trust Agreement.**  The revised Liquidation Trust Agreement attached hereto as **Exhibit 3** is approved in all respects and shall be the final binding form of agreement executed upon the Effective Date.

80.    **Confirmation of the Plan.** The Plan, as expressly modified by this Confirmation Order, is approved in its entirety and **CONFIRMED** under Section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

81. **Binding Effect.** Pursuant to Section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, the terms of the Plan, the terms of any and all Plan documents (including the Liquidation Trust Agreement), and the terms of this Confirmation Order are immediately effective and enforceable and deemed binding on the Debtors, the Trustee, the Liquidation Trust, the Liquidation Trustee, and any and all parties in interest, Holders of Claims or Equity Interests (regardless of whether such Holders of Claims or Equity Interests have, or are deemed to have, accepted the Plan), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person or Entity acquiring property under or pursuant to the Plan including the 363 Sale contemplated by the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, any Person or Entity making an appearance in the Chapter 11 Cases or any other Person or Entity in the Chapter 11 Cases; and the successors and assigns of all of the above and foregoing.

82. **Preservation of Litigation Claims**. Unless a Litigation Claim (including the right to any Claim asserted against the Estates) against a Person or Entity is, in writing, expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, all rights of the Estates from and after the Effective Date with respect to the Litigation Claims are expressly preserved for the benefit of, assigned to, and fully vested in the Liquidation Trust. Unless expressly stated otherwise in this Confirmation Order, nothing in this Confirmation Order shall modify or otherwise affect any provision of the Plan concerning the Litigation Claims.   In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee shall be the representative of the Estates, and shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Litigation Claims, whether arising before or after the Petition Date, as set forth in the Plan and consistent with the terms thereof.   For the avoidance of doubt, the Palubicki/Feliciano Claims are transferred to Beazley in accordance with Section X of the Global Settlement Agreement and Section 12 of the Global Settlement Order.

83. **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with any and all Plan documents, are hereby effective and authorized to be

taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective directors, officers, or equity security holders of the Debtors and with the effect that such actions had been taken by unanimous action of such parties.

84.     **Transactions.**  This Confirmation Order shall and shall be deemed to, pursuant to Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate, and consistent with the Plan, to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

85.     **Liquidation Trust**. On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets—which shall initially consist of the Liquidation Trust Reserve, plus all Distributable Assets (including the Litigation Claims) remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve—and effectuating distributions to creditors consistent with the Plan.  The Liquidation Trust will be managed and administered by the Liquidation Trustee in a manner consistent with the Plan, without need for any other notice to or any vote, consent, authorization, approval, ratification, or other action by any entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any entity.

86.     **Liquidation Trust Agreement.**   The Trustee is authorized to enter into and effectuate the Liquidation Trust Agreement attached hereto as Exhibit 3, which shall not be inconsistent with this Confirmation Order or the Plan, including the entry into and consummation of the transactions contemplated thereby.  Any transfers of assets affected or any obligations incurred through the Liquidation Trust Agreement are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance, reversal, or clawback.

87.     **Substantive Consolidation.**  This Confirmation Order hereby authorizes, on the Effective Date, the substantive consolidation of the Debtors' estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting,

confirmation, and Distribution purposes.  Such substantive consolidation does not (i) alter the state of organization of any Debtor for purposes of determining applicable law of any of the Litigation Claims; (ii) alter or impair the legal and equitable rights of any party in interest including the Liquidation Trustee to enforce any of the Litigation Claims; (iii) otherwise impair, release, discharge, extinguish or affect any of the substantive rights of the parties in interest (including any defenses to any such Litigation Claims); or (iv) alter or impair the 363 Assets.  Furthermore, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged so that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, is hereby treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under the Plan are hereby deemed cured as of the Effective Date.

88.    **Compromise of Controversies.**  Pursuant to Sections 105(a), 1123(b)(3), 1129, and 1141 of the Bankruptcy Code and Bankruptcy Rules 3016 and 9019, and in consideration for the Distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes approval of such compromises and settlements.

89.    **Authorization to Consummate.** The Trustee is authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Section 7 of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Section 7.2 of the Plan have been satisfied or waived.

90.    **Exemption from Transfer Taxes.** To the extent permitted by applicable law,

pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp or similar tax or governmental assessment in the United States, or any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and this Confirmation Order hereby directs the appropriate state of local government officials or agents to forego the collection of any such tax or assessment and to accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax or assessment.

91.    **Documents, Mortgages, and Instruments.** This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments (including financing statements under the applicable uniform commercial code) necessary, useful or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

92.    **Nonseverability of Plan Provisions Upon Confirmation.** Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Trustee's consent and a Court order (and subject to such other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

93.    **Applicable Nonbankruptcy Law.**  To the maximum extent permissible under applicable law, the provisions of this Confirmation Order, the Plan and related documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law, expressly including Nevada law.

94. **Governmental Approvals Not Required.** To the maximum extent permissible under applicable law, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan; any certifications, documents, instruments, or agreements; and any amendments or modifications thereto; and any other acts referred to in, or contemplated by, the Plan and this Confirmation Order.

95. **Liquidation Trust Interests Not Securities; Exemption from Registration Requirements.** The Liquidation Trust Interests to be issued, authenticated, and distributed under the Plan are not intended to, and shall not, constitute "securities." If, notwithstanding the foregoing, the Liquidation Trust Interests are deemed to be "securities," the issuance of such Liquidation Trust Interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of "securities" pursuant to Section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.

96. **Waiver of Stay.** For good cause shown, any stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

97. **References to and Omissions of Plan Provisions.** References to Sections and provisions of, and Schedules or supplements to, the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular Section, provision, supplement, or Schedule of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such Section, provision, supplement, or Schedule, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

98. **Retention of Jurisdiction.** The Court's retention of jurisdiction as set forth in Section 9 of the Plan comports with the parameters contained in 28 U.S.C. § 157. This Court does, and upon the Effective Date shall, to the full extent set forth in the Plan and herein, retain

jurisdiction over all matters arising out of and related to this Confirmation Order and these Chapter 11 Cases, including the matters set forth in Section 9 of the Plan and Section 1142 of the Bankruptcy Code.  The Court retains in all circumstances the jurisdiction to adjudicate any disputes arising from, arising out of, related to, regarding, or concerning the Plan, this Confirmation Order, and any and all transactions contemplated thereby.  For the avoidance of doubt, the Court's retention of jurisdiction provided in Section 19 of the Global Settlement Order is incorporated in this Confirmation Order.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

GARMAN TURNER GORDON LLP

By: /s/
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11*
    *Trustee*

## **LR 9021 CERTIFICATION:**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐  The court has waived the requirement set forth in LR 9021(b)(1).

☐  No party appeared at the hearing or filed an objection to the motion.

☐  I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

# EXHIBIT 3

# EXHIBIT 3

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc |
| NUMALE CORPORATION, | Chapter 11 |
| ☐ AFFECTS THIS DEBTOR, | *Jointly administered with:* |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | Feliciano NuMale Nevada PLLC, Case No. 25-10342-nmc |
| ☐ NUMEDICAL SC, | NuMedical SC Case No. 25-10343-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Colorado SC, Case No. 25-10344-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | NuMale Florida TB PLLC, Case No. 25-10345-nmc |
| ☐ NUMALE NEBRASKA LLC, | NuMale Nebraska LLC Case No. 25-10346-nmc |
| ☐ NUMALE NEW MEXICO SC, | NuMale New Mexico SC Case No. 25-10347-nmc |
| ☒ NUMALE ALL DEBTORS, | |
| Debtors. | Confirmation Hearing: Date:  September 24, 2025 Time: 9:30 a.m. |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE ORDER CONFIRMING JOINT PLAN OF REORGANIZATION AND APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION**

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates ("Estates") of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), having proposed the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits thereto, and as may be amended, modified, or supplemented, including via the *Notice of Filing Plan Supplement to Joint Plan of Reorganization* [ECF No. 595], the "Plan"[1]) and the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (with all exhibits thereto, the "Disclosure Statement"), and the Court having conducted a hearing to consider confirmation of the Plan on September 24, 2025 (the "Confirmation Hearing"), and the Court having considered (i) the *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 447] (the "Solicitation Procedures Order"); (ii) the *Notice of: (i) Hearing to Consider Final Approval of Conditionally Approved Disclosure Statement and Confirmation of Joint Plan of Reorganization; (ii) Procedures for Objecting to Final Approval of Conditionally Approved Disclosure Statement and Confirmation of the Plan and Evidence in Support Thereof; and (iii) Procedures and Deadlines* [ECF No. 449] (the "Confirmation Notice"); (iii) the *Certification of Acceptance and Rejection of Joint Plaint of Reorganization (Ballot Summary)* [ECF No. ~~____~~611] (the "Ballot Summary"); (iv) *Declaration of Michael W. Carmel in Support of Plan Confirmation and Final Approval of the Disclosure Statement* [ECF No. ~~____~~622] (the "Carmel Decl."); (v) *Brief in Support of Confirmation of Joint Plan of Reorganization* [ECF No. ~~_____~~621] (the "Confirmation Brief"); (vi) the *Stipulation Resolving Confirmation Objection* [ECF No. 598] and *Notice of Withdrawal of Creditor Prospect Rainbow, LLC's Limited Objection to the Joint Plan of Reorganization* [ECF No. ~~596]; (vii) Joinder in Support of Plan Confirmation [ECF No. 601]; (viii~~596]; (vii) *Michael Sanchez's*

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

*Joinder in Support of Plan Confirmation* [ECF No. 601]; (viii) Justin Pulliam's joinder in support of the Trustee's Confirmation Brief [ECF No. 627]; (ix) Michael Sanchez's joinder in support of the Trustee's Confirmation Brief [ECF No. 628]; (x) Newtek Bank, N.A.'s joinder in support of the Trustee's Confirmation Brief [ECF No. 630]; (xi) the *Objection of Mayfair Mall, LLC to Confirmation of Proposed Joint Plan of Reorganization* (the "Mayfair Objection") and supporting declaration [ECF Nos. 623 and 624]; (xii) the Trustee's supplemental brief in support of confirmation and reply to the Mayfair Objection [ECF No. ___]; and (xiii) all other relevant papers and pleadings on file in the Chapter 11 Cases, including the numerous claim settlements; and (ix̶xx) the arguments of counsel presented at the Confirmation Hearing; it appearing to the Court that notice of the Confirmation Hearing having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Plan Confirmation and the other evidence presented at the Confirmation Hearing having established just cause for the relief granted herein; and the Court having considered any and all responses and objections to the Plan and its Confirmation, and all such objections being consensually resolved or withdrawn, or otherwise addressed as set forth herein and on the record at the Confirmation Hearing and thereafter and herein and hereby overruled in their entirety to the extent not consensually resolved prior to the entry of this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

  **IT IS HEREBY FOUND AND DETERMINED THAT:**

A. <u>**Findings and Conclusions.**</u>

  1. The findings and conclusions set forth herein, in the recitals, and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under FED. R. CIV. P̶ROC̶P. 52, made applicable herein by FED. R. BANKR. P̶ROC̶P. 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

  2. The Court further relies upon and incorporates herein the analysis set forth in the

Confirmation Brief and the Carmel Decl.

**B.    Unrebutted Evidence.**

3.     The testimony and documentary evidence introduced and admitted into evidence by the Trustee at the Confirmation Hearing, including through the Carmel Decl., were unrebutted, including without limitation the liquidation analysis prepared by Trustee.

**C.    Jurisdiction, Venue, and Core Proceeding.**

4.     The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334 and 157.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code[2] and shall be confirmed.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of this Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**D.    Eligibility for Relief.**

5.     The Debtors were and are entities eligible for relief under Section 109 of the Bankruptcy Code.

**E.    Commencement and Administration of the Debtors' Chapter 11 Cases.**

6.     On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases").  *See, e.g.*, ECF No. 1.

7.     On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases.  See* ECF No. 130.

8.     On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights, thereby directing the appointment of a Chapter 11 trustee for the Debtors' Estates.  See* ECF No. 132.

9.     On April 2, 2025, ~~Tracy Hope Davis, then~~the United States Trustee for Region 17

---

[2] 11 U.S.C. §§ 101 – 1532, et seq. ("Bankruptcy Code").

("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' Estates. *See* ECF No. 140.

10. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

11. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' Estates. *See* ECF No. 157.

12. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. See, e.g., ECF No. 209.

**F.** **Burden of Proof – Confirmation of the Plan.**

13. The Trustee as the proponent of the Plan ~~("Trustee")~~ has met his burden of proving the applicable elements of Sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation in the Ninth Circuit.

**G.** **Notice.**

14. Due, adequate, and sufficient notice of the Plan, the Disclosure Statement, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Plan and objecting to the final approval of the Disclosure Statement, and all other materials distributed by the Trustee in connection with the Confirmation in compliance with the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), have been provided to all parties in interest and all necessary parties. *See* ECF Nos. 540, 541, and ~~___~~609. Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases pursuant to 11 U.S.C. § 1128, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**H.** **Ballots.**

15. The only classes of Claims entitled to vote to accept or reject the Plan are Class 9

(Sanchez Claim), Class 10 (General Unsecured Claims), Class 11 (Intercompany Claims), and Class 12 (Subordinated Claims) (collectively, the "Voting Classes").

16.     As approved by the Solicitation Procedures Order, the ballots that the Trustee used to solicit votes to accept or reject the Plan from Holders of Claims in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders of Claims in the Voting Classes to vote to accept or reject the Plan.

**I.     Solicitation.**

17.     As described in the Carmel Decl., the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada ("Local Rules"), and any other applicable rules, laws, and regulations.

18.     Following entry of the Solicitation Procedures Order, the Plan (in the form at ECF No. 434), the Disclosure Statement, the Confirmation Hearing Notice, and the ballots were transmitted and served to all Holders of Claims in the Voting Classes, in compliance with the Bankruptcy Code, including Sections 1125 and 1126 thereof; the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018; the Local Rules, including Local Rule 3017; the Solicitation Procedures Order; and any applicable nonbankruptcy law (collectively, the "Solicitation Packages"). *See* ECF No. 451. Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further or additional notice is required.

19.     Additionally, copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, and the Confirmation Notice were also mailed to the Holders in the Non-Voting Classes, as well as the entire creditor matrix in these Chapter 11 Cases. *See* ECF No. 451. Thus, transmission and service of the Plan, Disclosure Statement, Solicitation Procedures Order, and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further or additional notice is required.

**Garman Turner Gordon**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

20. As set forth in the Carmel Decl., the Solicitation Packages were distributed to Holders of Claims in the Voting Classes that held a Claim as of the Voting Record Date of July 1, 2025.

21. As approved by the Solicitation Procedures Order, the period during which the Trustee solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

22. Under Section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Newtek Secured Claim), Class 2 (Kalamata Claim), Class 3 (EBF Holdings Claim), Class 4 (Fox Funding Claim), Class 5 (Top Tier Claim), Class 6 (LCF Group Claim), Class 7 (Ford Motor Claim), and Class 8 (Priority Unsecured Claims), are Unimpaired and conclusively presumed to have accepted the Plan.

23. Pursuant to Bankruptcy Rule 3017(d), the Trustee is not required to transmit a Solicitation Package to the non-voting Classes. Holders of Claims in Class 13 (Equity Interests in the Debtors) are deemed to reject the Plan.

**J.    Voting.**

24. As evidenced by the Carmel Decl. and approved by the Solicitation Procedures Order, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, the Disclosure Statement, and applicable nonbankruptcy laws, rules, and regulations.

**K.    Compliance with Bankruptcy Rule 3016.**

25. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Trustee as the plan proponent. The Trustee appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L.    Plan Modifications Addressing US Trustee Concerns.**

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

7

26.    As set forth on the record at the Confirmation Hearing, the US Trustee informally raised several concerns with respect to confirmation of the Plan.  Accordingly, with the consent of the US Trustee and the parties to the Global Settlement Agreement, the Plan shall be, and here is, modified as follows, which modification does not alter the treatment of Claims or Equity Interests and does not require re-solicitation.

27.    The following sentence in Section 5.3 of the Plan ("[n]otwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor"), and Sections 12.3, 12.11, and 12.13 of the Plan, are deleted in their entirety and replaced with the following provisions (the "Alternative Combined Provision"):

- Until the Effective Date of a confirmed plan, the debtors through the Chapter 11 Trustee shall continue to contemporaneously file separate UST Form 11-MOR, Monthly Operating Reports, when they become due.

- To comply with 11 U.S.C. § 1129(a)(12), all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date.

- Within two (2) business days of the Effective Date, the Reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall contemporaneously file separate UST Form 11-PCR, Post-Confirmation Reports, that shall include all of their respective receipts and disbursements (along with ending cash balance) for that quarter and shall be filed on a quarterly basis in the Chapter 11 cases until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.  If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the filing of Post-Confirmation Reports shall resume.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall be jointly and severally liable for the payment of all United States Trustee quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date.

- All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date shall be paid on a quarterly basis until the earlier

of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the payment of United States Trustee quarterly fees shall resume.

• The reporting requirements and payment of United States Trustee quarterly fees described herein shall comply with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada.

28. The following Section 7.4 is added to the Plan:

**7.4    Effective Date.** Subject to all of the conditions set forth in Section 7.2 of the Plan occurring, the Effective Date shall occur on the earlier of: (i) the 363 Sale closing; and (ii) October 24, 2025.

29. Section 8.7 of the Plan is deleted and replaced in its entirety with the following provision (the "Revised Exculpation Provision"):

**8.7    Exculpation.** From and after the Effective Date, neither Debtors, the Trustee, Sanchez, Beazley, and their respective professionals nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Cases, the pursuit of confirmation of this Plan (including the pursuit of the Global Settlement Agreement and Global Settlement Order incorporated into the Plan), or the consummation of this Plan, except for gross negligence and willful misconduct. Notwithstanding the foregoing, under no condition shall this exculpation apply to any claims previously asserted or which can be asserted against Brad Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the preserved Litigation Claims, including the Litigation Claims identified on Schedule 1.1.82 hereto.

Notwithstanding anything to the contrary herein, nothing in the Plan shall release, discharge, enjoin, or otherwise modify or affect the rights of Beazley to pursue the Palubicki and Feliciano Claims or any claims against NuMale Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina, PLLC.

**L.M.    Objections Overruled.**

26.30.  Any resolutions of objections to Confirmation set forth in filings with this Court or otherwise explained on the record at the Confirmation Hearing are hereby incorporated by reference. All remaining unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, including the Mayfair Objection, are hereby overruled on the

9

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

1  merits, with prejudice, in the entirety.

2  ~~M.~~N.   **Compliance with Bankruptcy Code Requirements – Section 1129(a)(1).**

3  ~~27.~~31.  The Plan complies with all applicable provisions of the Bankruptcy Code as

4  required by Section 1129(a)(1) of the Bankruptcy Code.

5

6  a.   **Proper Classification – Sections 1122 and 1123.**

7  ~~28.~~32.  The Plan satisfies the requirements of Sections 1122(a) and 1123(a)(1) of the

8  Bankruptcy Code.  Section 3 of the Plan provides for the separate classification of Claims and

9  Equity Interests into thirteen (13) Classes.  Valid business, factual, and legal reasons exist for the

10  separate classification of such Classes of Claims and Equity Interests.  The classifications reflect

11  no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or

12  Equity Interests.  Each Class of Claims and Equity Interests contains only Claims or Equity

13  Interests that are substantially similar to the other Claims or Equity Interests within that Class.

14  b.   **Specified Unimpaired Classes – Section 1123(a)(2).**

15  ~~29.~~33.  The Plan satisfies the requirements of Section 1123(a)(2) of the Bankruptcy Code.

16  ~~30.~~34.  Section 3 of the Plan specifies that Claims and Equity Interests, as applicable, in

17  the following Classes (collectively, the "Unimpaired Classes") are Unimpaired under the Plan

18  within the meaning of Section 1124 of the Bankruptcy Code:

19

| Class | Description | Designation |
|-------|-------------|-------------|
| Class 1 | Newtek Secured Claim | Unimpaired |
| Class 2 | Kalamata Claim | Unimpaired |
| Class 3 | EBF Holdings Claim | Unimpaired |
| Class 4 | Fox Funding Claim | Unimpaired |
| Class 5 | Top Tier Claim | Unimpaired |
| Class 6 | LCF Group Claim | Unimpaired. |
| Class 7 | Ford Motor Claim | Unimpaired |
| Class 8 | Priority Unsecured Claims | Unimpaired |

27  ~~31.~~35.  Additionally, Section 2 of the Plan specifies that Allowed Administrative Claims

28

and Priority Tax Claims will be satisfied in accordance with the terms of the Plan (unless otherwise agreed by the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, and the relevant Holder(s) in accordance with the terms of the Plan), although these Claims are not classified under the Plan.

     **c.**    **Specified Treatment of Impaired Classes – Section 1123(a)(3).**

    32.36.  The Plan satisfies the requirements of Section 1123(a)(3) of the Bankruptcy Code. Section 3 of the Plan specifies that Claims and Equity Interests, as applicable, in the following five Classes (collectively, the "Impaired Classes") are Impaired under the Plan within the meaning of Section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Description | Designation |
|-------|-------------|-------------|
| Class 9 | Sanchez Claim | Impaired; solicitation required |
| Class 10 | General Unsecured Claims | Impaired; solicitation required |
| Class 11 | Intercompany Claims | Impaired; solicitation required |
| Class 12 | Subordinated Claims | Impaired; solicitation required |
| Class 13 | Equity Interests | Impaired; deemed rejected |

    **d.**    **No Discrimination – Section 1123(a)(4).**

    33.37.  The Plan satisfies the requirements of Section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.

    **e.**    **Adequate Means for Plan Implementation – Section 1123(a)(5).**

    34.38.  The Plan satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code. The provisions in Section 5 and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including payment of certain Allowed Claims on the Effective Date from the Distributable Assets (i.e., (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

11

Value Contribution; and (v) the proceeds from the 363 Sale), the creation of a Liquidation Trust to liquidate or otherwise dispose of the Liquidation Trust Assets, initially consisting of the Liquidation Trust Reserve plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve, and the reorganization of Debtors to effectuate the 363 Sale.

35.39.  Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the Bankruptcy Code, on the Effective Date, of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes.  As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims.  All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged such that only one Claim survives against the consolidated Debtors.  All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are henceforth treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are hereby deemed cured as of the Effective Date.

   **f.**  **Voting Power of Equity Securities – Section 1123(a)(6).**

36.40.  The Plan satisfies the requirements of Section 1123(a)(6) of the Bankruptcy Code, as no party is authorized to issue nonvoting equity securities under the Plan and Section 5.16 of the Plan provides that each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

   **g.**  **Directors and Officers – Section 1123(a)(7).**

12

37.41.  The Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code. The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement.  The selection of the Liquidation Trustee is consistent with the interests of Holders of Claims and Equity Interests and with public policy. Additionally, the Plan clearly provides in Section 5.16 that Michael W. Carmel, the Trustee, is shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and is hereby authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.

**h.**       **Impairment/Unimpairment of Classes – Section 1123(b)(1).**

38.42.  The Plan is consistent with Section 1123(b)(1) of the Bankruptcy Code.  Section 3 of the Plan impairs or leaves Unimpaired each Class of Claims and Equity Interests.

**i.**       **Assumption and Rejection – Section 1123(b)(2).**

39.43.  The Plan is consistent with Section 1123(b)(2) of the Bankruptcy Code.  Section 6 of the Plan provides for the assumption, effective as of the Effective Date, of the Debtors' Executory Contracts and Unexpired Leases that exist on the Confirmation Date, and provides they shall be deemed assumed by the respective Debtor(s) on the Effective Date and assigned to the prevailing bidder(s) in connection with the 363 Sale, except for: (i) the Beazley Policies, (ii) Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on the Schedule 6.1 of Rejected Executed Contracts and Unexpired Leases, (iii) those that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto, and (iv) those that have been assumed by order of the Bankruptcy Court.

40.44.  **Schedule 6.1 to the Plan.**  Schedule 6.1 at ECF No. 434 p. 54 of 56 (*Rejected Executory Contracts and Unexpired Leases*) is hereby replaced in its entirety by the Schedule 6.1 appended to this Confirmation Order as **Exhibit 1.**

41.45.  **Schedule 6.3 to the Plan.**  Schedule 6.3 at ECF No. 434 p. 55 of 56 (*Cure Amounts Payable By the Reorganized Debtors for Assumed Executory Contracts and Unexpired Leases*) is

13

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Formatted: Font: Bold

hereby replaced in its entirety by the Schedule 6.3 appended to this Confirmation Order as **Exhibit 2**.

      **j.**    <u>Compromise, Settlement, Release, Exculpation and Injunction – Section 1123(b)(3).</u>

42.46.  The Plan is consistent with Section 1123(b)(3) of the Bankruptcy Code. Pursuant to Section 1123 of the Bankruptcy Code, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. The compromise and settlement of such Claims and Equity Interests embodied in the Plan and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

43.47.  Sections 8.2, 8.5, 8.6, and 8.7 of the Plan, as expressly modified in this Confirmation Order, provide the following release, discharge, injunction, and exculpation as granted by the Plan (collectively, the "Release Provisions"). The Confirmation Hearing Notice sent to Holders of Claims and Equity Interests, and all creditors and parties in interest in these Chapter 11 Cases, unambiguously and prominently stated that the Plan contains the Release Provisions and provided therein a copy of the Release Provisions excerpted from the Plan. The Trustee has satisfied the applicable standard with respect to the propriety of the Release Provisions. Such provisions are a necessary and integral element of the Plan and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests. Also, the Release Provisions are: (a) in exchange for the good and valuable consideration provided; (b) a good faith settlement and compromise of the Claims released under the Plan; and (c) given, and made, after due notice and opportunity for hearing. Creditors have voted in favor of the Plan, including the Release Provisions. The Plan, including the Release Provisions, was negotiated by sophisticated parties represented by able counsel. The Release Provisions are therefore the result of an arm's-length negotiation process.

44.48.  Further, all creditors and parties in interest were provided notice of the Chapter 11

14

Cases, the Plan, and the deadline to object to confirmation of the Plan.  Additionally, the Release

Provisions of the Plan were conspicuous, emphasized with boldface type in the ~~Plan, accompanied~~

~~the~~ Disclosure Statement, and were in the Confirmation Notice.

~~45.~~49.  Further, the ~~exculpation, described in Section 8.7 of the Plan (the "~~Revised

Exculpation")~~, Provision is appropriate under applicable law because the ~~Exculpated~~

~~Parties~~exculpated parties are limited to fiduciaries of the ~~estates~~Estates, and the other primary

stakeholders in the Global Settlement Agreement (Sanchez and Beazley~~),~~,) that were necessary to

the Plan, and because the provision was proposed in good faith, is appropriately limited in scope,

and includes a carve-out for gross negligence and willful misconduct.  The Revised Exculpation

Provision is consistent with and satisfies the standards set forth in *Blixseth v. Credit Suisse,* 961

F.3d 1074 (9th Cir. 2020), and as clarified in *In re Astria Health,* 623 B.R. 793 (Bankr. E.D. Wash.

2021).

50.  The exculpated parties subject to the Revised Exculpation Provision have, and,

upon entry of this Confirmation Order will be deemed to have, participated in good faith and in

compliance with all applicable laws with regard to the distribution of recoveries under the Plan

and, therefore, are not, and on account of such distributions shall not be, liable at any time for the

violation of any applicable law, rule or regulation governing the solicitation or such distributions

made pursuant to the Plan.

~~46.~~51.  The limitation of liability of the Liquidation Trustee ~~(the "Limitation of Liability"),~~

described in Section 8.3 of the Plan is also appropriate under applicable law because it is essential

to protect the Liquidation Trustee who is effectuating the Plan and administering and overseeing

the Liquidation Trust, because it was proposed in good faith, because it is appropriately limited in

scope, and because it includes a carve-out for gross negligence, willful misconduct, intentional

breaches of the Global Settlement Agreement or the Liquidation Trust Agreement, and fraud.  For

the avoidance of doubt, to the extent there is any conflict between Section 8.3 of the Plan and

Section 4.1 of the revised Liquidation Trust Agreement attached hereto as Exhibit 3, Section 4.1

of the Liquidation Trust Agreement shall control.

~~47.~~52.  ~~The~~If the 363 Sale does not close before the Effective Date, the Court expressly

Formatted: No underline

finds that the Plan is effectuating a reorganization and not a liquidation as the Reorganized Debtors shall be required to operate the health clinics and ensure patient care after the Effective Date.  The discharge set forth in Section 8.5 of the Plan and the injunction provision set forth in Section 8.6 of the Plan ("Injunction") isare therefore necessary to implement, preserve, and enforce the provisions of the Plan, the Release Provisions, the Exculpation, and the Limitation of Liability, and it is  and are narrowly tailored to achieve this purpose.  The Exculpated Parties subject to the Exculpation have, and, upon entrypurposes.  If, however, the 363 Sale closes before the Effective Date, the Court finds that the Plan is effectuating a liquidation, and Sections 8.5 and 8.6 of this Confirmation Order will be deemed to have, participated in good faith and the Plan shall be stricken in compliancetheir entirety and of no force and effect in accordance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Plan.Section 1141(d)(3).

48.53.  Except as otherwise provided herein, as of the Effective Date, all releases, waivers, discharges, exculpations, and injunctions set forth in the Plan, as expressly modified by this Confirmation Order, shall be effective and binding on all persons and entities and any representatives thereof.  The Plan and this Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and/or this Confirmation Order, including the Release Provisions, Injunction, Exculpation, and Limitation of Liability provisions contained in the Plan and/oras modified by this Confirmation Order.

**k.** **Additional Plan Provisions – Section 1123(b)(6).**

49.54.  The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1123(b)(6) of the Bankruptcy Code.

**N.O.** **Trustee's Compliance with 11 U.S.C. § 1129(a)(2).**

50.55.  The Trustee and his agents have complied in good faith with the applicable

16

provisions of the Bankruptcy Code and, thus, satisfied the requirements of 11 U.S.C. § 1129(a)(2).

Specifically:

a.  The Debtors are each an eligible debtor under 11 U.S.C. § 109, and the Trustee is a proper proponent of the Plan under 11 U.S.C. § 1121(a);

b.  The Trustee has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.  The Trustee has complied with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy laws, rules, and regulations, the Solicitation Procedures Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.P.    Plan Proposed in Good Faith – Section 1129(a)(3).**

51.56.  The Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code. The Trustee has proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the support of the Voting Classes for the Plan, and the transactions to be implemented pursuant thereto.   These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Trustee to implement an orderly liquidation of Litigation Claims through the Liquidation Trust, to substantively consolidate the estatesEstates for confirmation purposes, and to reorganize the Debtors to effectuate and close the 363 Sale, before the Reorganized Debtors are ultimately wound down.

**P.Q.    Payment for Services or Costs and Expenses – Section 1129(a)(4).**

52.57.  The procedures set forth in the Plan for the Court's review and ultimate approval of the Administrative Claims to be paid by the estatesEstates or the Liquidation Trust, as the case may be, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, in either instance, incurred in connection with the Chapter 11 Cases through the Effective Date, satisfy the objectives of, and are in compliance with, Section 1129(a)(4) of the Bankruptcy Code.

**Q.R.    Directors, Officers, and Insiders – Section 1129(a)(5).**

17

53.58.  The Trustee has satisfied the requirements of 11 U.S.C. § 1129(a)(5).  The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement.  Additionally, the Plan discloses that Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law.  The selections are consistent with the interest of Holders of Claims and Equity Interests and with public policy.

**R.S.    No Rate Changes – Section 1129(a)(6).**

54.59.  Section1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.T.    Best Interest of Creditors – Section 1129(a)(7).**

55.60.  The Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, and credible as of the dates such analyses or evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

**T.U.    Acceptance by Certain Classes – Section 1129(a)(8).**

56.61.  Classes 1 through 8 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code. The Voting Classes have voted to accept the Plan. Class 13 is not receiving or retaining any property under the Plan on account of their Equity Interests under the Plan and is deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Notwithstanding the deemed rejection of the Plan by Class 13, the Plan is confirmable as a result

of its satisfaction of Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**U.V.    Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code – Section 1129(a)(9).**

57.62.    The treatment of Administrative Claims and Priority Tax Claims under Section 2

of the Plan, and of Priority Unsecured Claims under Section 3 of the Plan, satisfies the

requirements of, and complies in all respects with, Section 1129(a)(9) of the Bankruptcy Code.

**V.W.    Acceptance by at Least One Impaired Class – Section 1129(a)(10).**

58.63.    The Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

As evidenced by the Carmel Decl., the Voting Classes 9 and 10, which are impaired, voted to

accept the Plan by the requisite numbers and amounts, determined without including any

acceptance of the Plan by any insider (as that term is defined in Section 101(31) of the Bankruptcy

Code), as specified under the Bankruptcy Code.

**W.X.    Feasibility – Section 1129(a)(11).**

59.64.    The Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code.

The Global Settlement Agreement was approved by the Global Settlement Order, resulting in the

$108.5 million Beazley Settlement Payment being made to the Estates, which funds shall be used

to satisfy the payment obligations under the Plan.  Additionally, the Plan provides for the 363 Sale,

which will produce additional value to facilitate payments on account of Allowed Claims in

accordance with the Plan. Finally, the Plan provides for the establishment of the Liquidation Trust

to prosecute litigation claims, which recovery will further be utilized to satisfy the Allowed Claims

in accordance with the terms of the Plan and the Liquidation Trust Agreement. Accordingly, the

Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the

need for further financial reorganization of the Debtors or any successor to the Debtors under the

Plan, except as provided in the Plan.

**X.Y.    Payment of Fees – Section 1129(a)(12).**

60.    Section 12.13 of the Plan is hereby replaced in its entirety with the following:

"[insert language from the UST]" (the "Revised Section 12.13").  Additionally, the following

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

statement at the conclusion of Section 5.3 of the Plan that "[n]otwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. 1930, shall be due and payable by each individual Debtor" is replaced in its entirety with the following language: "[insert language from the UST]" (the "Revised Section 5.3").

61.65.   Having incorporated Revised Section 12.13 and Section 5.3Alternative Combined Provision into the Plan, the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

**Y.Z.   Continuation of Retiree Benefits – Section 1129(a)(13).**

62.66.   Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in Section 1114 of the Bankruptcy Code) at levels established pursuant to Section 1114 of the Bankruptcy Code.  Here, the Plan does not alter retiree benefits, to the extent such benefits exist and are provided by the Debtors.  The Plan therefore satisfies the requirements of Section 1129(a)(13) of the Bankruptcy Code.

**Z.AA.   Non-Applicability of Certain Sections – Sections 1129(a)(14), (15), and (16).**

63.67.   Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**AA.BB.   "Cram Down" Requirements Satisfied – Section 1129(b).**

64.68.   The requirements of Section 1129(b) of the Bankruptcy Code have been satisfied with respect to Class 13 because the Plan does not discriminate unfairly, and is fair and equitable, with respect to this Class. The Plan follows the "absolute priority" rule with respect to Class 13 because no Class junior to this Classes will receive any distribution under the Plan on account of junior claims or interests, and Class 13 is fairly excluded from the other Classes under the Plan based on its legal character and the circumstances of these Chapter 11 Cases.

**BB.CC.   Only One Plan – Section 1129(c).**

65.69.   The Plan satisfies the requirements of Section 1129(c) of the Bankruptcy Code. The Plan is the only current chapter 11 plan filed in the Debtors' Chapter 11 Cases.

**CC.DD.   Principal Purpose of the Plan – Section 1129(d).**

20

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

1   66.70.  The Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.  As

2   evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the

3   avoidance of the application of Section 5 of the Securities Act of 1933.

4   **DD.EE.      Not Small Business Case – Section 1129(e).**

5   67.71.  Section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases

6   as these are not small business cases.

7   **EE.FF.      Good Faith Solicitation – Section 1125(e).**

8   68.72.  The Trustee has acted in "good faith" within the meaning of Section 1125(e) of the

9   Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and

10  Bankruptcy Rules in connection with all of his respective activities relating to support and

11  consummation of the Plan, and solicitation of acceptances of the Plan, and is entitled to the

12  protections afforded by Section 1125(e) of the Bankruptcy Code.

13  **FF.GG.      Satisfaction of Confirmation Requirements.**

14  69.73.  Based on the foregoing and all other pleadings and evidence proffered or adduced

15  at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set

16  forth in Section 1129 of the Bankruptcy Code.  Upon Confirmation and the occurrence of the

17  Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including

18  holders of Claims and Equity Interests that voted to reject the Plan.

19  **GG.HH.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

20  70.74.  Each of the conditions precedent to the Effective Date, as set forth in Section 7 of

21  the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 7.3

22  of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Section

23  7 of the Plan have been satisfied or waived in accordance with the terms thereof.

24  **HH.    Modification of Section 5.12 of the Plan.**

25  71.    Notwithstanding anything to the contrary in the Plan, Disclosure Statement, or this

26  Confirmation Order, Section 5.12 of the Plan is hereby replaced in the entirety by the following

27  language:

28

**5.12. Prosecution of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims.** In exchange for the benefits and releases provided in the Global Settlement Agreement, the Liquidation Trust and the NuMale Settling Defendants shall jointly prosecute their respective Quintairos Claims and Quintairos Non-Debtor Claims, which claims shall be jointly prosecuted under the sole direction and control of the Liquidation Trustee. In exchange for the benefits and releases received under the Global Settlement Agreement, the NuMale Settling Defendants agree that the Liquidation Trustee shall have sole authority to retain counsel, determine litigation strategy, engage in settlement negotiations, approve a settlement, and/or make other decisions with respect to such joint litigation of the Quintairos Claims and Quintairos Non-Debtor Claims, though the Liquidation Trustee agrees to consult with, and keep informed, the NuMale Settling Defendants regarding ongoing negotiations, strategy, and any resolution or settlement.

Additionally, the Liquidation Trust, Brad Palubicki, and Carlos Feliciano shall jointly prosecute their respective Quintairos Claims and Quintairos PF Claims[3], which claims shall be jointly prosecuted under the sole direction and control of the Liquidation Trustee. Brad Palubicki and Carlos Feliciano agree that the Liquidation Trustee shall have sole authority to retain counsel, determine litigation strategy, engage in settlement negotiations, approve a settlement, and/or make other decisions with respect to such joint litigation of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims, though the Liquidation Trustee agrees to consult with, and keep informed, Brad Palubicki and Carlos Feliciano regarding ongoing negotiations, strategy, and any resolution or settlement.

The NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims, including in connection with providing documents and testimony necessary for the successful prosecution of such claims.

To the extent that the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims produce a monetary recovery, and to the extent they cannot otherwise agree, the Liquidation Trustee, the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall participate in a mediation to determine how such recovery shall be allocated between the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims after

---

[3] "Quintairos PF Claims" means all rights, claims, and causes of action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates held or controlled by Carlos Feliciano and Brad Palubicki.

22

~~payment of retained counsel and experts' fees and costs. Within ten (10) days' written notice from the Liquidation Trustee that there is a monetary recovery on account of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims, the Liquidation Trustee, the NuMale Settling Defendants, Brad Palubicki, and Carlos Feiciano shall jointly select a mediator to determine the allocation of such recovery amongst themselves. If an agreement cannot be reached with respect to the identification of the mediator, one of the following mediators will be selected by the Liquidation Trustee: Bruce Markell or Miles Ruthberg. The mediation will occur within thirty (30) days of the selection of the mediator unless otherwise agreed in writing by the Liquidation Trustee, each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feiciano. If the Liquidation Trustee and each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feiciano cannot agree on an allocation of the proceeds from the recovery of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims at the mediation and the mediator determines, in the mediator's sole discretion, that the parties have reached an impasse, the mediator shall present a mediator's proposal for the proper allocation of the recovery from the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims between the Liquidation Trust, each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano, which mediator's proposal shall be immediately binding on the Liquidation Trust, each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano without any further order, act, or approval and without any right of appeal. Any resolution shall be noticed to the full matrix in the Chapter 11 Cases.~~

II.   **Implementation.**

~~72.~~75.   All Plan documents necessary to implement the Plan, including the Liquidation Trust Agreement attached hereto as Exhibit 3, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and the ~~estates~~Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements. The Trustee is authorized to take any action reasonably necessary or appropriate, and consistent with the Plan and this Confirmation Order, to consummate such agreements and the transactions contemplated thereby.

JJ.   **Disclosure of Facts.**

~~73.~~76.   The Trustee has disclosed all material facts regarding the Plan, including with

1  respect to consummation of the Plan and any and all Plan-related documents.

2  **KK.    Good Faith.**

3  ~~74.~~77.  The Trustee, and to the extent applicable, the Liquidation Trustee, have been and

4  will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements,

5  settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized

6  and directed by this Confirmation Order to effectuate the Plan and any and all Plan-related

7  documents.

8      **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

9  ~~75.~~78.  **Final Approval of Disclosure Statement.** The Disclosure Statement is approved

10  on a final basis under Section 1125 of the Bankruptcy Code.

11      79.    **Approval of the Revised Liquidation Trust Agreement.**  The revised Liquidation

12  Trust Agreement attached hereto as **Exhibit 3** is approved in all respects and shall be the final

13  binding form of agreement executed upon the Effective Date.

14  ~~76.~~80.  **Confirmation of the Plan.** The Plan, as expressly modified by this Confirmation

15  Order, is approved in its entirety and **CONFIRMED** under Section 1129 of the Bankruptcy Code.

16  The terms of the Plan are incorporated by reference into and are an integral part of this

17  Confirmation Order.

18  ~~77.~~81.  **Binding Effect.** Pursuant to Section 1141 of the Bankruptcy Code, effective as of

19  the Confirmation Date, but subject to the occurrence of the Effective Date, the terms of the Plan,

20  the terms of any and all Plan documents (including the Liquidation Trust Agreement), and the

21  terms of this Confirmation Order are immediately effective and enforceable and deemed binding

22  on the Debtors, the Trustee, the Liquidation Trust, the Liquidation Trustee, and any and all parties

23  in interest, Holders of Claims or Equity Interests (regardless of whether such Holders of Claims

24  or Equity Interests have, or are deemed to have, accepted the Plan), all Persons and Entities that

25  are parties to or subject to the settlements, compromises, releases, discharges, and injunctions

26  described in the Plan, each Person or Entity acquiring property under or pursuant to the Plan

27  including the 363 Sale contemplated by the Plan, any and all non-Debtor parties to Executory

28  Contracts and Unexpired Leases with the Debtors, any Person or Entity making an appearance in

the Chapter 11 Cases or any other Person or Entity in the Chapter 11 Cases; and the successors and assigns of all of the above and foregoing.

78.82.  **Preservation of Litigation Claims**. Unless a Litigation Claim (including the right to any Claim asserted against the Estates) against a Person or Entity is, in writing, expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, all rights of the Estates from and after the Effective Date with respect to the Litigation Claims are expressly preserved for the benefit of, assigned to, and fully vested in the Liquidation Trust. Unless expressly stated otherwise in this Confirmation Order, nothing in this Confirmation Order shall modify or otherwise affect any provision of the Plan concerning the Litigation Claims.  In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee shall be the representative of the Estates, and shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Litigation Claims, whether arising before or after the Petition Date, as set forth in the Plan and consistent with the terms thereof.  For the avoidance of doubt, the Palubicki/Feliciano Claims are transferred to Beazley in accordance with Section X of the Global Settlement Agreement and Section 12 of the Global Settlement Order.

79.83.  **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with any and all Plan documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective directors, officers, or equity security holders of the Debtors and with the effect that such actions had been taken by unanimous action of such parties.

80.84.  **Transactions.**  This Confirmation Order shall and shall be deemed to, pursuant to Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate, and consistent with the Plan, to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

81.85.  **Liquidation Trust**. On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets—which shall initially consist of the Liquidation Trust Reserve,

plus all Distributable Assets (including the Litigation Claims) remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve—and effectuating distributions to creditors consistent with the Plan. The Liquidation Trust will be managed and administered by the Liquidation Trustee in a manner consistent with the Plan, without need for any other notice to or any vote, consent, authorization, approval, ratification, or other action by any entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any entity.

82.86. **Liquidation Trust Agreement.** The Trustee is authorized to enter into and effectuate the Liquidation Trust Agreement attached hereto as Exhibit 3, which shall not be inconsistent with this Confirmation Order or the Plan, including the entry into and consummation of the transactions contemplated thereby. Any transfers of assets affected or any obligations incurred through the Liquidation Trust Agreement are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance, reversal, or clawback.

83.87. **Substantive Consolidation.** This Confirmation Order hereby authorizes, on the Effective Date, the substantive consolidation of the Debtors' estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes. Such substantive consolidation does not (i) alter the state of organization of any Debtor for purposes of determining applicable law of any of the Litigation Claims; (ii) alter or impair the legal and equitable rights of any party in interest including the Liquidation Trustee to enforce any of the Litigation Claims; (iii) otherwise impair, release, discharge, extinguish or affect any of the substantive rights of the parties in interest (including any defenses to any such Litigation Claims); or (iv) alter or impair the 363 Assets. Furthermore, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims. All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

obligations of any other Debtor are hereby eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, is hereby treated as one single collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under the Plan are hereby deemed cured as of the Effective Date.

84.88.  **Compromise of Controversies.**  Pursuant to Sections 105(a), 1123(b)(3), 1129, and 1141 of the Bankruptcy Code and Bankruptcy Rules 3016 and 9019, and in consideration for the Distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes approval of such compromises and settlements.

85.89.  **Authorization to Consummate.** The Trustee is authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Section 7 of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Section 7.2 of the Plan have been satisfied or waived.

86.90.  **Exemption from Transfer Taxes.** To the extent permitted by applicable law, pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp or similar tax or governmental assessment in the United States, or any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and this Confirmation Order hereby directs the appropriate state of local government officials or agents to forego the collection of any such tax or assessment and to accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax or assessment.

87.91.  **Documents, Mortgages, and Instruments.** This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments (including financing statements under the applicable uniform commercial code) necessary, useful or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

88.92. **Nonseverability of Plan Provisions Upon Confirmation.** Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Trustee's consent and a Court order (and subject to such other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

89.93. **Applicable Nonbankruptcy Law.** To the maximum extent permissible under applicable law, the provisions of this Confirmation Order, the Plan and related documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law., expressly including Nevada law.

90.94. **Governmental Approvals Not Required.** To the maximum extent permissible under applicable law, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan; any certifications, documents, instruments, or agreements; and any amendments or modifications thereto; and any other acts referred to in, or contemplated by, the Plan and this Confirmation Order.

91.95. **Liquidation Trust Interests Not Securities; Exemption from Registration Requirements.** The Liquidation Trust Interests to be issued, authenticated, and distributed under the Plan are not intended to, and shall not, constitute "securities." If, notwithstanding the foregoing, the Liquidation Trust Interests are deemed to be "securities," the issuance of such Liquidation Trust Interests shall be exempt from registration under the Securities Act and any

applicable state and local laws requiring registration of "securities" pursuant to Section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.

92.96.  **Waiver of Stay.** For good cause shown, any stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

93.97.  **References to and Omissions of Plan Provisions.** References to Sections and provisions of, and Schedules or supplements to, the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular Section, provision, supplement, or Schedule of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such Section, provision, supplement, or Schedule, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

94.98.  **Retention of Jurisdiction.** The Court's retention of jurisdiction as set forth in Section 9 of the Plan comports with the parameters contained in 28 U.S.C. § 157.  This Court does, and upon the Effective Date shall, to the full extent set forth in the Plan and herein, retain jurisdiction over all matters arising out of and related to this Confirmation Order and these Chapter 11 Cases, including the matters set forth in Section 9 of the Plan and Section 1142 of the Bankruptcy Code.  The Court retains in all circumstances the jurisdiction to adjudicate any disputes arising from, arising out of, related to, regarding, or concerning the Plan, this Confirmation Order, and any and all transactions contemplated thereby.  For the avoidance of doubt, the Court's retention of jurisdiction provided in Section 19 of the Global Settlement Order is incorporated in this Confirmation Order.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

GARMAN TURNER GORDON LLP

By: /s/
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11*
    *Trustee*

30

**LR 9021 CERTIFICATION:**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

# EXHIBIT 4

# EXHIBIT 4

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc |
| | Chapter 11 |
| NUMALE CORPORATION, | |
| | *Jointly administered with:* |
| AFFECTS THIS DEBTOR, ☐ | |
| | Feliciano NuMale Nevada PLLC, |
| AFFECTS FELICIANO ☐ | Case No. 25-10342-nmc |
| NUMALE NEVADA PLLC, | |
| | NuMedical SC |
| NUMEDICAL SC, ☐ | Case No. 25-10343-nmc |
| | |
| NUMALE COLORADO SC, ☐ | NuMale Colorado SC, |
| | Case No. 25-10344-nmc |
| NUMALE FLORIDA TB PLLC, ☐ | |
| | NuMale Florida TB PLLC, |
| NUMALE NEBRASKA LLC, ☐ | Case No. 25-10345-nmc |
| | |
| NUMALE NEW MEXICO SC, ☐ | NuMale Nebraska LLC |
| | Case No. 25-10346-nmc |
| NUMALE ALL DEBTORS, ☒ | NuMale New Mexico SC |
| | Case No. 25-10347-nmc |
| Debtors. | |
| | Confirmation Hearing: |
| | Date:  September 24, 2025 |
| | Time: 9:30 a.m. |

**ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION AND APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION**

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC filed the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits and the Plan Supplement filed at ECF No. 595, the "Plan") and the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (the "Disclosure Statement").

In accordance with the ~~Finding~~Findings *of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* (the "FFCL") entered concurrently herewith, it having been determined after a hearing on notice that the requirements for final approval of the Disclosure Statement set forth in 11 U.S.C. §§§ 1125 and for confirmation of the Plan set forth in 11 U.S.C. §§§ 1129(a) and (b) of the Bankruptcy Code have been satisfied, and good cause appearing;

**IT IS HEREBY ORDERED** that the Plan, as modified by the FFCL, is confirmed.

**IT IS FURTHER ORDERED** that the Disclosure Statement is approved on a final basis.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED BY:

GARMAN TURNER GORDON LLP

By: _/s/_____
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11 Trustee*

2

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐　　The court waived the requirement of approval under LR 9021(b)(1).

☐　　No party appeared at the hearing or filed an objection to the motion.

☒　　I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the order.

☐　　I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

###

GARMAN TURNER GORDON
Attorneys at Law
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

# EXHIBIT 5

# EXHIBIT 5

# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement ("<u>Liquidation Trust Agreement</u>" or "<u>Agreement</u>") dated as of October [●], 2025, by and between Michael W. Carmel, as the Chapter 11 trustee for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "<u>Debtors</u>"), and Michael W. Carmel, as Liquidation Trustee (the "<u>Liquidation Trustee</u>" or "<u>Trustee</u>") under that certain *Joint Chapter 11 Plan of Liquidation* filed August 1, 2025 (as amended, modified, and/or supplemented, the "<u>Plan</u>"), is hereby being executed to facilitate the implementation of the Plan, which provides for the establishment of the Liquidation Trust (as defined below) created by this Liquidation Trust Agreement and the administration and disposition of the Trust Assets (as defined below), all for the benefit of the holders of certain Claims[1] as set forth in the Plan. The Liquidation Trustee's powers and duties are as set forth herein.

WHEREAS, on January 22, 2025 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (the "<u>Bankruptcy Court</u>" or "<u>Court</u>"), which are jointly administered under case number 25-10341-nmc (the "<u>Chapter 11 Cases</u>");

WHEREAS, on April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

WHEREAS, on April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("<u>US Trustee</u>"), appointed Michael Carmel as the Chapter 11 trustee for Debtors' Estates. *See* ECF No. 140.

WHEREAS, on April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving Mr. Carmel's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

WHEREAS, on April 7, 2025, Mr. Carmel filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 trustee for the Debtors' Estates. *See* ECF No. 157.

WHEREAS, on August 1, 2025, the Chapter 11 Trustee filed a *Joint Plan of Reorganization* (the "<u>Plan</u>") and the Disclosure Statement;

WHEREAS, the Plan incorporates the terms of the Global Settlement Agreement and the Global Settlement Order;

WHEREAS, on September [*], 2025, the Bankruptcy Court entered the order confirming the Plan (the "<u>Confirmation Order</u>");

---

[1] Unless otherwise defined in this Liquidation Trust Agreement, all capitalized terms contained in this Liquidation Trust Agreement have the meanings ascribed to them in the Plan. To the extent that a definition of a term in the text of this Liquidation Trust Agreement and the definition of such term in the Plan are inconsistent, the definition in the Plan shall control.

1

WHEREAS, the Plan and the Confirmation Order provide for the establishment of a Liquidation Trust (as defined in the Plan, the "Liquidation Trust") pursuant to this Liquidation Trust Agreement and the appointment of the Liquidating Trustee to: (i) administer the Liquidation Trust for the benefit of the Holders or beneficiaries, as applicable of Allowed Administrative Claims that deferred payment, the Contingent Expense Reimbursement (the beneficiary of the Contingent Expense Reimbursement, the "Contingent Expense Reimbursement Beneficiary"), the Allowed Sanchez Claim, Allowed General Unsecured Claims, and Allowed Subordinated Claims under the Plan, and (ii) provide administrative services relating to the Plan's implementation;

WHEREAS, the Plan will become effective on the Effective Date;

WHEREAS, Michael W. Carmel, the Chapter 11 trustee for the Estates, is hereby appointed as the Liquidation Trustee;

WHEREAS, the Plan provides for, *inter alia*:

(a) the transfer to the Liquidation Trust, on the Effective Date, of the Debtors' and their Estates' rights, title, and interest in all of the Liquidation Trust Assets (as used in this Liquidation Trust Agreement, the "Trust Assets"), which shall consist of the (i) Distributable Assets remaining after (a) payment of the Distributions made by the Distribution Agent on the Effective Date in accordance with the terms of the Plan; and (b) the funding of the Disputed Claim Reserve; (ii) such additional or different corpus as the Liquidation Trustee may acquire and hold in trust pursuant to this Liquidation Trust Agreement from time to time, and (iii) any and all proceeds of any Trust Assets, free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests;

(b) the Distribution of Net Distributable Assets, in accordance with the terms of the Plan, for the benefit of (i) Allowed Administrative Claims that have agreed in writing to defer payment or partial payment of such Allowed Claims; (ii) the Contingent Expense Reimbursement; (iii) Allowed Sanchez Claim; (iv) Allowed General Unsecured Claims; and (v) Allowed Subordinated Claims (collectively, the "Liquidation Trust Beneficiaries" or "Beneficiaries"); provided, however, for the avoidance of doubt, to the extent any Claim is not an Allowed Claim, the Holder of such Claim shall not be deemed a Beneficiary hereunder);

(c) Distributions of Net Distributable Assets shall not be made in respect of Allowed General Unsecured Claims and Allowed Subordinated Claims until Disputed Administrative Claims have been Allowed or Disallowed, and until all contingencies that could give rise to a liquidated Contingent Expense Reimbursement Claim have been finally resolved, including, where applicable, by a Final Order, and all payments in respect of the Contingent Expense Reimbursement Claim have been made;

(d) the federal income tax treatment (i) of the Liquidation Trust Beneficiaries as the grantors and owners of the Liquidation Trust, and (ii) of the transfer of the Trust Assets to the Liquidation Trust as a deemed transfer from the Debtors to the Liquidation Trust

2

Beneficiaries followed by a deemed transfer by the Liquidation Trust Beneficiaries to the Liquidation Trust;

(e)    the establishment of the Liquidation Trust Reserve and other appropriate reserves, including as may be reasonably necessary to pay Liquidation Trust Expenses (also referred to herein as "<u>Trust Expenses</u>");

(f)    the administration of the Liquidation Trust and the Trust Assets by the Liquidation Trustee for the purposes and in the manner set forth in this Liquidation Trust Agreement subject to the Plan.

WHEREAS, the Liquidation Trust is intended to be treated as a liquidating trust pursuant to United States Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and as a grantor trust subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part 1, Subpart E of the Tax Code (hereinafter defined) owned by the Liquidation Trust Beneficiaries as grantors;

NOW, THEREFORE, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE 1

## DECLARATION OF TRUST

**1.1    Purpose of the Liquidation Trust.** The Chapter 11 trustee for the Debtors and their Estates and the Liquidation Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code and applicable tax statutes, rules, and regulations, to the extent incorporated in this Agreement, hereby constitute and create a trust (i.e., the Liquidation Trust) for the purpose of liquidating the Trust Assets for the benefit of the Liquidation Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business (except to the extent reasonably necessary to carry out, and consistent with, the liquidation purpose of the Liquidation Trust, provided that any such conduct will not affect the Liquidation Trust's tax status as a liquidation trust). In particular, the Liquidation Trust, through the Liquidation Trustee, shall (i) pending the reduction to Cash of the Trust Assets (and any non-Cash proceeds thereof), manage, and collect and obtain proceeds from the Trust Assets, with the goal of reducing the Trust Assets (and any non-Cash proceeds thereof) to Cash; (ii) make distributions pursuant to this Agreement, the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order; and (iii) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement. The Liquidation Trust shall not have authority to engage in a trade or business, and no portions of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to Cash of the Trust Assets (and any non-Cash proceeds thereof), with the goal of maximizing such assets for the benefit of the Liquidation Trust Beneficiaries.

**1.2**    **Name of the Liquidation Trust.**   The Liquidation Trust established hereby shall be known as the "NuMale Liquidation Trust." In connection with the exercise of the Liquidation Trustee's powers, the Liquidation Trustee may use such name or such variation thereof as the Liquidation Trustee sees fit and may transact the business and affairs of the Liquidation Trust in such name.

**1.3**    **Transfer of Assets to Create Liquidation Trust.**   Pursuant to the Plan and the Confirmation Order, the Chapter 11 trustee for the Debtors and their Estates hereby irrevocably grants, releases, assigns, transfers, conveys, and delivers to the Liquidation Trustee, as of the Effective Date, the Trust Assets, to have and to hold by the Liquidation Trustee and the Liquidation Trustee's successors in trust and to be applied as specified in the Plan and this Liquidation Trust Agreement. On the Effective Date and from time to time thereafter, upon the direction of the Liquidation Trustee, the Chapter 11 trustee for the Debtors and their Estates shall execute and deliver (or cause to be executed and delivered to) the Liquidation Trustee any and all such documents, in recordable form where necessary or appropriate, and the Chapter 11 trustee for the Debtors and their Estates shall take or cause to be taken such further or other action as the Liquidation Trustee may reasonably deem appropriate, to vest or perfect in or confirm to the Liquidation Trustee, title to and possession of all of the Trust Assets. In connection herewith, the Liquidation Trustee shall be responsible for establishing and maintaining such accounts as the Liquidation Trustee shall deem necessary or appropriate to carry out the provisions of this Liquidation Trust Agreement, and to perform all obligations specified for the Liquidation Trustee under the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

**1.4**    **Acceptance by Liquidation Trustee.**   The Liquidation Trustee hereby accepts: (i) the appointment to serve as Liquidation Trustee; (ii) the transfer of the Trust Assets on behalf of the Liquidation Trust; and (iii) the trust imposed on the Liquidation Trustee by this Liquidation Trust Agreement. The Liquidation Trustee agrees to receive, hold, administer, and distribute the Trust Assets and the income or other proceeds derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Liquidation Trust Agreement. The Liquidation Trustee agrees to perform all activities reasonably necessary to ensure the transfer of the Trust Assets to the Liquidation Trustee on behalf of the Liquidation Trust.

## ARTICLE 2

## LIQUIDATION TRUSTEE – GENERALLY

**2.1**    **Appointment.**   The initial Liquidation Trustee shall be Michael W. Carmel, the Chapter 11 trustee for Debtors' Estates.

**2.2**    **Term of Service.**   The Liquidation Trustee shall serve until (i) the termination of the Liquidation Trust in accordance with Article 9 of this Liquidation Trust Agreement, or (ii) the Liquidation Trustee's resignation, death, or removal, all in accordance with the provisions of this Liquidation Trust Agreement.

**2.3    Services.**    The Liquidation Trustee (solely in his, her, or its individual capacity) shall be entitled to engage in such other activities unrelated to the administration of the Liquidation Trust as the Liquidation Trustee deems appropriate and are not in conflict with the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, this Liquidation Trust Agreement, or the interests of the Liquidation Trust Beneficiaries resulting from this Liquidation Agreement. The Liquidation Trustee shall devote such time as is necessary to fulfill all the Liquidation Trustee's duties as Liquidation Trustee.

**2.4    Resignation, Death, or Removal of Liquidation Trustee.**    The Liquidation Trustee may resign at any time upon ninety (90) days' written notice to the Liquidation Trust Beneficiaries, the Bankruptcy Court and the creditor matrix in the Chapter 11 Cases. Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a successor Liquidation Trustee by the Liquidation Trustee, in consultation with the Holder of the Allowed Sanchez Claim and the Contingent Expense Reimbursement Beneficiary. Such appointment of a successor Liquidation Trustee shall not require application to or further order of the Bankruptcy Court if such successor Liquidation Trustee is approved by the Holder of the Allowed Sanchez Claim and is reasonably acceptable to the Contingent Expense Reimbursement Beneficiary, but such successor Liquidation Trustee shall be required to execute an instrument accepting such appointment and file such acceptance in the Liquidation Trust records; provided, however, that the Liquidation Trustee may seek Bankruptcy Court approval of such successor Liquidation Trustee's appointment in the Liquidation Trustee's sole discretion. The Liquidation Trustee may be removed by the Bankruptcy Court upon application for good cause shown. In the event the Liquidation Trustee position becomes vacant, the vacancy shall be filled as determined by (x) the Holder of the Allowed Sanchez Claim, in consultation with the Contingent Expense Reimbursement Beneficiary, or (y) if the Holder of the Allowed Sanchez Claim does not identify or the Contingent Expense Reimbursement Beneficiary does not reasonably agree with the selection of a successor Liquidation Trustee, by the Bankruptcy Court upon submissions from any of the  Liquidation Trust Beneficiaries. Upon appointment pursuant to this Section 2.4, any successor Liquidation Trustee, without any further act, shall become fully vested with all the rights, powers, duties, and obligations of such successor Liquidation Trustee's predecessor.

**2.5    Trust Continuance.**    The death, resignation, or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Liquidation Trustee as Liquidation Trustee) created pursuant to this Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee appointed in such event agrees that the provisions of this Liquidation Trust Agreement shall be binding upon and inure to the benefit of such successor Liquidation Trustee and all such successor Liquidation Trustee's heirs and legal and personal representatives, successors, or assigns.

**2.6    Compensation and Expenses of Liquidation Trustee.**    The Liquidation Trustee shall be compensated in accordance with the parameters of Section 326 of the Bankruptcy Code, except that the Liquidation Trustee shall not need to seek Bankruptcy Court approval prior to payment.  Payment to the Liquidation Trustee shall be concurrent with distributions to the Liquidation Trust Beneficiaries. All such reimbursements and compensation shall be paid (or

5

reserved for, as applicable) from the Trust Assets prior to any distribution to the Liquidation Trust Beneficiaries.

      **2.7    Retention of Professionals.**    The Liquidation Trustee may, without the necessity for application to or approval of the Bankruptcy Court, retain and engage such attorneys, accountants, and other professionals and persons as may be necessary to carry out the Liquidation Trustee's duties under this Agreement on reasonable terms, including a professional that was retained as a professional in the Debtors' Chapter 11 Cases. The reasonable and documented fees and expenses of all professionals retained consistent with this Section 2.7 shall be borne exclusively by the Liquidation Trust, shall be paid from the Liquidation Trust, and the Liquidation Trustee may establish one or more reserves for this purpose.

      **2.8    Court Approval for Payment.**    Neither the Liquidation Trustee nor any professional retained by the Liquidation Trustee is required to seek Bankruptcy Court authorization before the payment of any fees to the Liquidation Trustee or any professional retained by the Liquidation Trustee. In addition, the Liquidation Trustee may pay Professionals in the ordinary course of business for any reasonable and documented fees arising from any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those reasonable and documented fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court.

## ARTICLE 3

## POWERS AND LIMITATIONS OF LIQUIDATION TRUSTEE

      **3.1    General Powers of Liquidation Trustee.**    In connection with the administration of the Liquidation Trust, except as otherwise set forth herein, the Liquidation Trustee shall be a representative of the Debtors and their Estates, and shall have the power and authority to make all decisions with respect to the Trust Assets and perform those acts necessary or desirable to accomplish the purposes of the Liquidation Trust. The Liquidation Trust shall succeed to all the rights of the Debtors and their Estates necessary to protect, conserve, and liquidate the Trust Assets as quickly as reasonably practicable consistent with the purposes of the Liquidation Trust. Subject to the limitations set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order, and in addition to any powers and authority conferred by law, by the Plan, and by the Confirmation Order, or by any other section or provision of this Liquidation Trust Agreement, the Liquidation Trustee may exercise all powers granted to the Liquidation Trustee hereunder related to, or in connection with, the administration and liquidation of Trust Assets and distribution of Cash and other net proceeds derived therefrom in accordance with this Liquidation Trust Agreement, the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order. Without limitation, but subject to the foregoing, the Liquidation Trustee shall be expressly authorized, without need of further approval of the Bankruptcy Court to:

      (a)    Make all decisions with respect to the Trust Assets, including investigation, prosecution, waiver, and/or settlement of any Litigation Claims;

(b)        Implement this Plan, including any other powers necessary or incidental thereto;

(c)        Exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken to consummate the Plan and all transfers thereunder;

(d)        Make Distributions, or enable the Distribution Agent to make Distributions, to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves;

(e)        Use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Trust Assets for the purpose of making distributions and fully consummating the Plan;

(f)        Prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise);

(g)        Investigate and prosecute any and all Litigation Claims and compromise, settle, waive, and/or litigate any Litigation Claims;

(h)        File motions seeking Bankruptcy Court approval of compromises and settlements, to the extent deemed appropriate by the Liquidation Trustee;

(i)        Prepare and file tax returns for the Liquidation Trust to the extent required by law;

(j)        Employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his sole discretion, deems reasonably necessary to perform his duties under the Plan and Liquidation Trust Agreement, without further order of the Bankruptcy Court;

(k)        Satisfy and pay all Trust Expenses;

(l)        Participate in or file any post Effective Date motion(s) to amend or modify the Plan or this Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order, in each case consistent with the Global Settlement Agreement and the Global Settlement Order;

(m)       Participate in or file any action to enforce or interpret the Plan;

(n)        Bind the Liquidation Trust;

(o)        File periodic reports with the Bankruptcy Court, including quarterly reports required by the Office of the United States Trustee; and

(p)    Take all other actions not inconsistent with the provisions of the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including:

(i)    filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases;

(ii)    paying any statutory fees owed to the U.S. Trustee;

(iii)    seeking an estimation of contingent or unliquidated Claims pursuant to 11 U.S.C. § 502(c) (but for the avoidance of doubt excluding the Contingent Expense Reimbursement);

(iv)    opening and maintaining bank accounts on behalf of or in the name of the Liquidation Trust, calculating and making distributions, and taking other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidation Trust;

(v)    receiving, conserving, and managing the Trust Assets;

(vi)    if the Liquidation Trustee determines that any of the Liquidation Trust Beneficiaries or the Liquidation Trust may, will, or has become subject to adverse tax consequences, taking such actions that the Liquidation Trustee, in the Liquidation Trustee's reasonable discretion, determines are intended to alleviate such adverse tax consequences, including, without limitation, dividing the Trust Assets into several trusts or other structures;

(vii)    holding legal title to any and all Trust Assets;

(viii)    establishing, funding, and administering a reserve for the payment of Trust Expenses;

(ix)    entering into contracts and other business arrangements;

(x)    representing the Liquidation Trust before governmental and other regulatory bodies;

(xi)    removing Trust Assets or the situs of administration of the Liquidation Trust from one jurisdiction to another at any time or from time to time;

(xii)    making decisions regarding the retention or engagement of professionals, employees, and consultants by the Liquidation Trust and paying, from the Liquidation Trust, the reasonable and documented fees and charges incurred by the Liquidation Trust on or after the Effective Date, including the reasonable and documented fees of professionals, disbursements,

8

expenses, or support services relating to the implementation of the Plan and this Liquidation Trust Agreement, without application to the Bankruptcy Court;

(xiii)    paying all lawful expenses, debts, charges, and liabilities of the Liquidation Trust;

(xiv)    withholding from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge that the Liquidation Trustee has determined, in his or her reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof; and in the exercise of the Liquidation Trustee's discretion and judgment, entering into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section;

(xv)    entering into any agreement or executing any document required by or consistent with the Plan, Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, or this Liquidation Trust Agreement and the purposes of the Liquidation Trust, and performing all obligations under all the foregoing;

(xvi)    investing Cash as deemed appropriate by the Liquidation Trustee in Cash equivalents; provided, however, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust," within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; provided further, however, that any investment of Cash must be with institutions and in investment vehicles covered by Federal Deposit Insurance Corporation ("FDIC") insurance;

(xvii)    holding title to any investment in the Liquidation Trustee's name as Liquidation Trustee or in a nominee's name;

(xviii)    suing and being sued, subject to the provisions herein, in the Plan, and in the Confirmation Order, and participating in any proceeding with respect to any matter regarding or relating to this Liquidation Trust Agreement, the Confirmation Order, the Plan, the Liquidation Trust, the Debtors, or the Estates; and

(xix)    taking all other actions consistent with the provisions of this Liquidation Trust Agreement, the Plan, and the Confirmation Order that the Liquidation Trustee deems reasonably necessary or desirable to administer the Liquidation Trust.

**3.2    Limitations on the Liquidation Trustee.**    Notwithstanding anything in this Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall not do or undertake any of the following without both (a) the approval of the Holder of the Allowed Sanchez Claim; (b) the Contingent Expense Reimbursement Beneficiary and (c) an order of the Bankruptcy Court approving such decision or action:

(a)    take any action in contravention of, or inconsistent with the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, or this Liquidation Trust Agreement;

(b)    take any action that would significantly jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes;

(c)    lend any Trust Assets to the Liquidation Trustee;

(d)    purchase Trust Assets from the Liquidation Trust;

(e)    transfer Trust Assets to another trust with respect to which the Liquidation Trustee serves as trustee;

(f)    grant liens on any of the Trust Assets; or

(g)    guarantee any debt incurred by any third party.

## ARTICLE 4

## LIABILITY OF LIQUIDATION TRUSTEE

**4.1    Trustee Standard of Care; Exculpation; Limitation on Liability; Indemnification.**  The Liquidation Trustee shall not be liable for any act the Liquidation Trustee may do or omit to do as Liquidation Trustee under the Plan and this Liquidation Trust Agreement while acting in good faith and in the exercise of the Liquidation Trustee's reasonable business judgment; nor will the Liquidation Trustee be liable in any event except for an act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted gross negligence, willful misconduct, intentional breaches of the Plan, the Global Settlement Agreement, or this Agreement, or fraud. The foregoing limitation on liability also will apply to any Person employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties hereunder or under the Plan. In addition, the Liquidation Trustee and any Person employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee shall be entitled to indemnification and defense out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including reasonable and documented attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being or having been employed by the Liquidation Trust or the Liquidation Trustee or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Liquidation Trustee, or any Person employed by the Liquidation Trustee from liability, nor entitle any of the foregoing entities to indemnification pursuant to the Plan or this Liquidation Trust Agreement, for an act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud, or intentional breaches of the Plan, the Global Settlement Agreement, or this Agreement. Persons dealing with the Liquidation Trustee or any of the foregoing parties in their respective capacities as such, or seeking to assert claims against the Liquidation Trustee or any of the foregoing parties in their capacities as such, shall have recourse only to the Trust Assets (excluding any fund or reserve to pay Trust Expenses) to satisfy any liability incurred by the Liquidation Trustee

or any of the foregoing parties in their respective capacities as such to such Persons in carrying out the terms of the Plan and this Liquidation Trust Agreement. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this section shall be payable only from the Trust Assets, and such right to payment shall be prior and superior to any other rights to receive on behalf of any Beneficiary any distribution of Trust Assets or proceeds thereof. The Liquidation Trust shall have the right to control the defense and settlement of claims as to which it is obligated to indemnify.

For the avoidance of doubt, this Section 4.1: (i) only applies to professionals hired and retained by the Liquidation Trustee, in his capacity as the Liquidation Trustee, to provide services to the Liquidation Trustee (the "LT Professionals"); (ii) only applies to services rendered by the LT Professionals after the Effective Date and after execution and formation of the Liquidation Trust Agreement; and (iii) only applies to services rendered by the LT Professionals to the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties under the Plan and Liquidation Trust Agreement. Section 4.1 shall not apply to bankruptcy estate professionals unless they are also separately hired and retained as LT Professionals and even then, this Section 4.1 shall only extend to services rendered after the Effective Date and only with regard to services rendered to the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties.

**4.2    Bond.**  The Liquidation Trustee shall not be obligated to give any bond or surety for the performance of any of the Liquidation Trustee's duties unless otherwise ordered by the Bankruptcy Court. If so ordered, all costs and expenses of procuring a bond or surety shall be deemed a Trust Expense and payable from the Trust Assets.

**4.3    No Liability for Acts of Predecessor Liquidation Trustees.**    No successor Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidation Trustee unless a successor Liquidation Trustee expressly in writing assumes such responsibility.

**4.4    Reliance by Liquidation Trustee on Document~~, or~~ Mistake of Fact~~, or Advice of Counsel~~.**  Except as may be otherwise provided in this Liquidation Trust Agreement, the Liquidation Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidation Trustee to be genuine and to have been presented by an authorized party. Also, the Liquidation Trustee shall not be liable if the Liquidation Trustee acts in good faith based on a mistake of fact before having actual knowledge of such mistake. ~~The Liquidation Trustee shall not be liable for any action taken or suffered by the Liquidation Trustee in reasonably relying upon the advice of counsel or other professionals engaged by the Liquidation Trustee in accordance with this Liquidation Trust Agreement other than with respect to an intentional breach of the Plan, the Global Settlement Agreement or this Agreement.~~

**4.5    Insurance.**    The Liquidation Trustee may cause the Liquidation Trust to purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses the Liquidation Trustee may incur, including but not limited to attorneys' fees, arising out of or due to the Liquidation Trustee's actions or omissions, or consequences of such actions or omissions, other than as a result of the Liquidation Trustee's fraud, gross negligence, or willful misconduct, with respect to the implementation and administration of the Plan, the Liquidation Trust, and this Liquidation Trust Agreement.

## ARTICLE 5

## DUTIES OF LIQUIDATION TRUSTEE

**5.1    General.**    The Liquidation Trustee shall have all the duties specified in the Plan (incorporating the Global Settlement Agreement), the Confirmation Order, and this Liquidation Trust Agreement.

**5.2    Books and Records.**    The Liquidation Trustee shall maintain, in respect of the Liquidation Trust, books and records relating to the Trust Assets and income and proceeds realized therefrom, and the payment of expenses of and claims against or assumed by the Liquidation Trust, in such detail and for such period of time as may be necessary to enable the Liquidation Trustee to make full and proper reports in respect thereof. Except as expressly provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, nothing in this Liquidation Trust Agreement is intended to require the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Trust Assets or proceeds therefrom.

**5.3    Establishment of Accounts and Reserves.**

(a)    On the Effective Date or as soon as practicable thereafter, the Liquidation Trustee shall establish one or more accounts which shall consist of all Cash belonging to the Liquidation Trust, including all Cash transferred to the Liquidation Trust pursuant to the Plan (the "General Account"); provided, however, that all Cash must be deposited with institutions covered by FDIC insurance.

(b)    Except as otherwise provided in the Plan, Confirmation Order, and this Liquidation Trust Agreement, the Liquidation Trustee shall make distributions to the Liquidation Trust Beneficiaries in accordance with the terms of the Plan in the exercise of the Liquidation Trustee's sound discretion, based on, among other things, the amount of Cash on hand, the amount needed to fund any applicable reserves, including any reserves to cover the Trust Expenses, whether there remain any unpaid Allowed Administrative Expense Claims (including Allowed Professional Fee Claims), and the amount of the Sanchez Claim and General Unsecured Claims that are Allowed at the time, and the status of any pending litigation, if any, affecting such distributions.

## ARTICLE 6

## LIQUIDATION TRUST BENEFICIARIES

**6.1    Effect of Death, Incapacity, or Bankruptcy of Beneficiary.**    The death, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust during the term of the Liquidation Trust, nor shall it entitle the representatives

12

or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting, or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary's representatives and creditors (in such capacity) under this Liquidation Trust Agreement or in the Liquidation Trust.

**6.2    Standing of Beneficiary.**    Except as may be expressly provided in this Liquidation Trust Agreement, the Plan (incorporating the Global Settlement Agreement), or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidation Trustee) upon or with respect to the Liquidation Assets.

**6.3    Release of Liability of Beneficiary.**    A Beneficiary shall not relieve the Liquidation Trustee from any duty, responsibility, restriction, or liability that would otherwise be imposed under this Liquidation Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

# ARTICLE 7

# DISTRIBUTIONS

**7.1    Distributions from Trust Assets.**    All payments to be made by the Liquidation Trustee to any Person shall be made only in accordance with the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement, and from the Cash or Cash proceeds of Trust Assets, and only to the extent that the Liquidation Trust has sufficient Cash to make such payments in accordance with and to the extent provided for in the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement. Any distribution made by the Liquidation Trustee in good faith shall be binding and conclusive on all interested parties, absent manifest error. Notwithstanding anything herein to the contrary, no distributions of Trust Assets shall be made in respect of Allowed General Unsecured Claims and Allowed Subordinated General Unsecured Claims until Disputed Administrative Claims have been Allowed or Disallowed and until all contingencies that could give rise to a liquidated Contingent Expense Reimbursement have been finally resolved, including, where applicable, by a Final Order, and all payments in respect of the Contingent Expense Reimbursement have been made.

**7.2    Distributions; Withholding.**    The Liquidation Trustee shall make distributions at such times, consistent with the terms of the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement, as the Liquidation Trustee deems appropriate from all net Cash income and all other Cash proceeds received by the Liquidation Trust; provided, however, that the Liquidation Trust may retain such amounts (i) as are reasonably necessary to meet known and contingent liabilities and to maintain the value of the Trust Assets during the term of the Liquidation Trust; (ii) to pay reasonable administrative expenses, including, without limitation, the compensation and the reimbursement of reasonable costs, fees (including attorneys' and other professional fees), and expenses of the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties under this Liquidation Trust

13

Agreement, the Plan, and the Confirmation Order; and (iii) to satisfy all other liabilities incurred or assumed by the Liquidation Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement. All such distributions shall be made, subject to any withholding or reserve, as provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order. Additionally, the Liquidation Trustee may withhold from amounts otherwise distributable on behalf of Liquidation Trust Beneficiaries any and all amounts, determined in the Liquidation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidation Trustee may withhold the entire distribution to any Beneficiary until such time as the Holder provides the Liquidation Trustee with the necessary information to comply with any withholding requirements of any governmental unit.

Notwithstanding any other provision of this Liquidation Trust Agreement, (i) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution; and (ii) no distribution shall be made to or on behalf of such Holder pursuant to this Liquidation Trust Agreement or the Plan unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Liquidation Trust Agreement or the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Liquidation Trust Agreement or the Plan.

**7.3    Method of Cash Distributions.**    For the avoidance of doubt, the manner of distributions shall be consistent with the distribution procedures set forth in the Plan.

**7.5    Objections to Claims and Distributions.**  For the avoidance of doubt, objections to Claims, the manner of distributions, and the effect of undeliverable distribution shall be in accordance with the Plan, including Section 11 of the Plan.

**ARTICLE 8**

**TAXES**

**8.1    Income Tax Status.**

(a)    It is intended that the Liquidation Trust be classified for federal income tax purposes as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part I, Subpart E of the Tax Code that is owned by its Liquidation Trust Beneficiaries. Accordingly, the parties hereto intend that the Liquidation Trust Beneficiaries of the Liquidation Trust be treated as if they had received a distribution of the applicable assets transferred to the Liquidation Trust and then contributed such assets to the Liquidation Trust. As such, notwithstanding anything set forth herein, the transfer of assets to the

14

Liquidation Trust shall be treated for all purposes of the Tax Code as a transfer from the Estates to creditors to the extent the creditors are Liquidation Trust Beneficiaries of the Liquidation Trust followed by a deemed transfer by the Liquidation Trust Beneficiaries to the Liquidation Trust. The Liquidation Trust Beneficiaries will be treated as grantors and deemed owners of the Liquidation Trust.

(b)     All parties, including the Chapter 11 trustee for the Debtors and their Estates, the Liquidation Trustee, and all Liquidation Trust Beneficiaries of the Liquidation Trust, must value all assets transferred to the Liquidation Trust consistently, and those valuations must be used for all federal, state, and local income tax purposes. The Liquidation Trustee must file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The assets shall be valued based upon the Liquidation Trustee's good faith determination of their fair market value.

(c)     Anything set forth herein to the contrary notwithstanding, the Liquidation Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of Trust Assets during liquidation. All income of the Liquidation Trust must be subject to tax on a current basis. The taxable income of the Liquidation Trust will be allocated to and among Liquidation Trust Beneficiaries who are grantors of the Liquidation Trust as required by virtue of their being grantors and deemed owners of the Liquidation Trust, and they shall each be responsible to report and pay taxes due on their appropriate share of Liquidation Trust income.

(d)     The Liquidation Trust shall be classified as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and in the event of any inconsistency between any term or provision herein, in the Plan, or in the Confirmation Order necessary for the Liquidation Trust to be deemed at all times a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and any other term or provision herein, in the Plan, or in the Confirmation Order, the term(s) and provision(s) necessary for the Liquidation Trust to be deemed a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 shall govern. Similarly, anything to the contrary set forth herein, in the Plan, or in the Confirmation Order notwithstanding, to the extent any term or provision herein, in the Plan, in the Confirmation Order would result in the Liquidation Trust not being classified as a liquidating trust at all times pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, such term or provision shall be ineffective and reformed to the extent necessary for the Liquidation Trust to be classified at all times as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684.

(e)     As used in this Liquidation Trust Agreement, the following terms shall have the following meanings:

"Tax Code" shall mean the Internal Revenue Code of 1986, 26 U.S.C. § 1 et seq., as amended from time to time, and corresponding provisions of any subsequent federal revenue act. A reference to a section of the Tax Code shall include a reference to any and all Treasury Regulations interpreting, limiting or expanding such section of the Tax Code; and

"Treasury Regulations" shall mean regulations promulgated under the Tax Code, including, but not limited to the Procedure and Administration Regulations, as such regulations may be amended from time to time.

**8.2    Tax Returns.**    The Liquidation Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns, information returns, and other filings as may be required by the Tax Code and may be required by applicable law of other jurisdictions. The Liquidation Trustee shall be responsible for filing all required federal, state, and local tax returns and information returns of the Liquidation Trust. The Liquidation Trustee shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

**ARTICLE 9**

**TERMINATION OF TRUST**

**9.1    Term.**    The Liquidation Trust shall terminate upon the earlier of (a) the date on which all of the Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the order closing the Chapter 11 Cases is a Final Order, or (b) ten (10) years from the date of creation of the Liquidation Trust, unless extended by the Bankruptcy Court as provided herein. The Liquidation Trustee shall at all times endeavor to liquidate expeditiously the Trust Assets (or any non-Cash proceeds thereof), and in no event shall the Liquidation Trustee unduly prolong the duration of the Liquidation Trust. The foregoing notwithstanding, in the event that the Liquidation Trustee determines that all of the Trust Assets and/or proceeds thereof will not, despite reasonable efforts, be distributed by the date which is ten (10) years from the date of creation of the Liquidation Trust, or for any other reason consistent with this Liquidation Trust Agreement and the Plan, and if warranted by the facts and circumstances, the Liquidation Trustee or the Contingent Expense Reimbursement Beneficiary may petition the Bankruptcy Court to extend the term of the Liquidation Trust. Each and every such extension must be for a reasonable finite period based on the particular facts and circumstances, must be subject to the approval of the Bankruptcy Court and approved upon a finding that the extension is necessary to the liquidating purpose of the Liquidation Trust and must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. At such time as the Liquidation Trust has been fully administered (i.e., when all things requiring action by the Liquidation Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the date of the final distribution under the Plan (the "Final Distribution Date"), the Liquidation Trustee will file an application for approval of the Liquidation Trustee's final accounting and the entry of the final decree by the Bankruptcy Court. Upon final distribution pursuant to this Agreement, the Liquidation Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidation Trustee. At the Liquidation Trustee's discretion, all such records and documents may be destroyed at any time after two (2) years after the Final Distribution Date.

**9.2    Event Upon Termination.**    Upon the termination of the Liquidation Trust, the Liquidation Trustee shall distribute the remaining Trust Assets (including any proceeds thereof), if any, consistent with the terms of this Agreement, the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

**9.3    Winding Up and Discharge of the Liquidation Trustee.**    For the purposes of winding up the affairs of the Liquidation Trust at its termination, the Liquidation Trustee shall continue to act as Liquidation Trustee until the Liquidation Trustee's duties have been fully discharged. After doing so, the Liquidation Trustee, and the Liquidation Trustee's agents, employees, and professionals, shall have no further duties or obligations hereunder, except as required by this Liquidation Trust Agreement, the Plan, the Confirmation Order, or applicable law concerning the termination of a trust. Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order discharging the Liquidation Trustee, and the Liquidation Trustee's agents, employees, and professionals, and relieving them of any further duties.

## ARTICLE 10

## ADMINISTRATIVE EXPENSES

**10.1    Funding.**    The costs and expenses of the Liquidation Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' and other professional fees), and expenses of the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties in connection with the Plan and this Liquidation Trust Agreement, including the Trust Expenses and quarterly fees due to the Office of the United States Trustee, shall be paid from the applicable reserves, including the Liquidating Trust Reserve provided under the Plan, without the necessity for any approval by the Bankruptcy Court (the "Trustee's Administrative Expense Fund"). The Trustee's Administrative Expense Fund shall not be subject to charge for claims against the Liquidation Trust or the Trust Assets (including any proceeds thereof), including, without limitation, any claims under Section 4.1 of this Agreement.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1    Amendments.**    The Liquidation Trustee may propose to the Bankruptcy Court the modification, supplementing, or amendment of this Liquidation Trust Agreement. Such proposed modification, supplementing, or amendment shall be in writing and filed with the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, notice of such filing shall be served on the full mailing matrix. No modification, supplementing, or amendment of this Liquidation Trust Agreement shall be effective except upon a Final Order of the Bankruptcy Court.

**11.2    Waiver.**    No failure by the Liquidation Trustee, or any Beneficiary to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**11.3    Cumulative Rights and Remedies.**    The rights and remedies provided in this Liquidation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.4    Irrevocability**.    The Liquidation Trust is irrevocable.

**11.5    Division of Trust.**    Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**11.6    Governing Law.**    This Agreement shall be governed and construed in accordance with the laws of the State of Nevada, without giving effect to rules governing the conflict of laws.

**11.7    Retention of Jurisdiction.**    To the fullest extent permitted by law, and except as expressly set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, or this Liquidation Trust Agreement, or any Person or Entity's obligations incurred in connection therewith or herewith, including, without limitation, any action against the Liquidation Trustee or any professional retained by the Liquidation Trustee or the Liquidation Trust, in each case in its capacity as such. Each party to this Liquidation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement, or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration.

**11.8    Severability.**    In the event that any provision of this Liquidation Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this of this Liquidation Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**11.9    Limitation of Benefits.**    Except as otherwise specifically provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Liquidation Trust Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

18

**11.10   Notices**.     All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person, by facsimile with an electromechanical report of delivery, sent by overnight courier or by registered or certified mail with postage prepaid, return receipt requested, or sent via electronic mail to the following addresses (as applicable to the particular notice, request, demand, consent, or other communication at issue).

| | |
|---|---|
| If to the Liquidation Trustee: | Law Offices of Michael W. Carmel, Ltd. |
| | Attn:  Michael Carmel |
| | 80 East Columbus Avenue |
| | Phoenix, Arizona 85012 |
| | Email:  michael@mcarmellaw.com |
| | |
| With a copy to: | Garman Turner Gordon LLP |
| | Attn:  Gregory E. Garman, Esq. |
| |        Talitha Gray Kozlowski, Esq. |
| |        Mary Langsner, Ph.D. |
| | 7251 Amigo Street, Suite 210 |
| | Las Vegas, Nevada 89119 |

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices, and communications shall be deemed to have been given (i) at the time of actual delivery thereof if by facsimile or electronic mail; (ii) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid, and properly addressed; or (iii) if given by overnight courier, the next business day after being sent, charges prepaid, and properly addressed.

**11.11   Further Assurances.**     From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidation Trust Agreement, and to consummate the transactions contemplated hereby.

**11.12   Integration.**    This Liquidation Trust Agreement, the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order constitute the entire agreement, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, or in the Confirmation Order. This Liquidation Trust Agreement, together with the Plan, the Global Settlement Agreement, the Global Settlement Order, and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**11.13   Successors or Assigns.**   The terms of this Liquidation Trust Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**11.14   Interpretation.**   The enumeration and section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Liquidation Trust Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder, and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**11.15   Relationship to the Plan.** The principal purpose of this Liquidation Trust Agreement is to aid in the implementation of the Plan and Global Settlement Agreement and, therefore, this Liquidation Trust Agreement incorporates and is subject to the provisions of the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order. In the event that any provision of this Liquidation Trust Agreement is found to be inconsistent with a provision of the Plan, the Global Settlement Agreement, the Global Settlement Order or the Confirmation Order that does not pertain specifically to the Liquidation Trust and its administration with respect to matters not addressed in the Plan, the Global Settlement Agreement, the Global Settlement Order or the Confirmation Order, the provisions of the Plan, the Global Settlement Agreement, the Global Settlement Order or the Confirmation Order, as applicable, shall control.

**11.16   Counterparts.** This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, each of which shall be deemed an original, and which, when taken together, shall constitute one and the same document. Delivery of any executed counterpart may be in "wet ink" form, via telecopy, or via electronic transmission attaching a copy in pdf format or the like.

**IN WITNESS WHEREOF**, the parties hereto have either executed this Liquidation Trust Agreement, or caused it to be executed on its behalf by its duly authorized officer, all as of the date first above written.

**DEBTORS:**

**NUMALE CORPORATION**

By: _____
        Michael W. Carmel, Chapter 11 Trustee

20

**FELICIANO NUMALE NEVADA PLLC**

By: _____
    Michael W. Carmel, Chapter 11 Trustee


**NUMEDICAL SC**

By: _____
    Michael W. Carmel, Chapter 11 Trustee


**NUMALE COLORADO SC**

By: _____
    Michael W. Carmel, Chapter 11 Trustee


**NUMALE FLORIDA TB PLLC**

By: _____
    Michael W. Carmel, Chapter 11 Trustee

**NUMALE NEBRASKA LLC**

By: _____
    Michael W. Carmel, Chapter 11 Trustee

**NUMALE NEW MEXICO SC**

By: _____
    Michael W. Carmel, Chapter 11 Trustee


**LIQUIDATION TRUSTEE:**

By: _____
    Michael W. Carmel