1  GARMAN TURNER GORDON LLP
   GREGORY E. GARMAN
2  Nevada Bar No. 6654
   E-mail:  ggarman@gtg.legal
3  TALITHA GRAY KOZLOWSKI, ESQ.
   Nevada Bar No. 9040
4  tgray@gtg.legal
   MARY LANGSNER, Ph.D.
5  Nevada Bar No. 13707
   mlangsner@gtg.legal
6
   7251 Amigo Street, Suite 210
7  Las Vegas, Nevada 89119
   Telephone (725) 777-3000
8  *Attorneys for Michael Carmel,*
   *Chapter 11 Trustee*
9

10

11                    **UNITED STATES BANKRUPTCY COURT**
                          **DISTRICT OF NEVADA**
12
   In re:                                    Lead Case No.: 25-10341-nmc
13                                            Chapter 11
   NUMALE CORPORATION,
14                                            *Jointly administered with:*
       AFFECTS THIS DEBTOR,          ☐
15                                            Feliciano NuMale Nevada PLLC,
       AFFECTS FELICIANO             ☐        Case No. 25-10342-nmc
16     NUMALE NEVADA PLLC,
                                              NuMedical SC
17     NUMEDICAL SC,                 ☐        Case No. 25-10343-nmc

18     NUMALE COLORADO SC,           ☐        NuMale Colorado SC,
                                              Case No. 25-10344-nmc
19     NUMALE FLORIDA TB PLLC,       ☐
                                              NuMale Florida TB PLLC,
20     NUMALE NEBRASKA LLC,          ☐        Case No. 25-10345-nmc

21     NUMALE NEW MEXICO SC,         ☐        NuMale Nebraska LLC
                                              Case No. 25-10346-nmc
22     NUMALE ALL DEBTORS,           ☒
                                              NuMale New Mexico SC
23         Debtors.                           Case No. 25-10347-nmc

24                                            Hearing Date:  September 24, 2025
                                              Hearing Time: 9:30 a.m.
25

26       **SUPPLEMENT IN SUPPORT OF CONFIRMATION BRIEF AND REPLY TO**
         **OBJECTION OF MAYFAIR MALL, LLC TO CONFIRMATION OF PROPOSED**
27                    **JOINT PLAN OF REORGANIZATION**

28
                                      1

1
2
3
4
5
6
7
8

Michael Carmel, the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby submits his supplement in support of his Confirmation Brief [ECF No. 621] and reply ("Reply") to the *Objection of Mayfair Mall, LLC to Confirmation of Joint Plan of Reorganization* [ECF No. 623] (the "Objection") filed by Mayfair Mall, LLC ("Mayfair") to the Trustee's *Joint Plan of Reorganization* [ECF No. 434] (the "Plan").[1]  This Reply is supported by the declaration of Michael Carmel filed herewith (the "Supplemental Carmel Decl.")

9

**A.      The Proposed Confirmation Order and Findings and Conclusions Have Been Filed.**

10
11
12
13
14
15
16

The Trustee has been working to consensually resolve informal concerns raised by the U.S. Trustee, as well as ensuring the approval of the parties to the Global Settlement Agreement.  In so doing, the Trustee has prepared the proposed Confirmation Order and supporting Findings of Fact and Conclusions of Law (the "FFCL") attached as Exhibits 1 through 4 of the *Notice of Proposed Confirmation Order and Findings of Fact and Conclusiosn of Law* (the "Proposed Order and FFCL Notice") and filed concurrently herewith.  The redlines reflect revisions made to address the U.S. Trustee's concerns, as well as minor revisions by the parties to the Global Settlement Agreement.

17
18

**B.      The Revised Provisions Relating to the PCO, U.S. Trustee Fees, and Reporting Should be Approved.**

19
20
21
22
23
24
25

The U.S. Trustee raised certain concerns with respect to Sections 5.3, 12.3, 12.11, and 12.13 of the Plan, which provisions relate to the PCO, U.S. Trustee Fees, and reporting matters. After discussion with the U.S. Trustee, the Trustee proposes that the following sentence in Section 5.3 of the Plan ("[n]otwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor") and Sections 12.3, 12.11, and 12.13 of the Plan be deleted in their entirety and replaced with the following provisions (the "Alternative Combined Provision"):

26

- Until the Effective Date of a confirmed plan, the debtors through the Chapter 11 Trustee shall continue to contemporaneously file separate UST Form

27

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

28

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

11-MOR, Monthly Operating Reports, when they become due.

- To comply with 11 U.S.C. § 1129(a)(12), all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date.

- Within two (2) business days of the Effective Date, the Reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall contemporaneously file separate UST Form 11-PCR, Post-Confirmation Reports, that shall include all of their respective receipts and disbursements (along with ending cash balance) for that quarter and shall be filed on a quarterly basis in the Chapter 11 cases until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the filing of Post-Confirmation Reports shall resume.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall be jointly and severally liable for the payment of all United States Trustee quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date.

- All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date shall be paid on a quarterly basis until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the payment of United States Trustee quarterly fees shall resume.

- The reporting requirements and payment of United States Trustee quarterly fees described herein shall comply with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada.

The Alternative Combined Provision is reflected in the FFCL and has been approved by the U.S. Trustee, as well as the necessary parties to the Global Settlement Agreement. *See* Proposed Order and FFCL Notice, at Exs. 2 and 3. The Trustee submits that the foregoing Alternative Combined Provision is appropriate and consistent with the Bankruptcy Code and the Bankruptcy Rules, particularly in light of the facts and circumstances of these Chapter 11 Case.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## C.   The Revised Exculpation Provision Is Appropriate and Should be Approved.

The U.S. Trustee raised limited concerns with respect to the Plan's exculpation provision in Section 8.7,[2] principally to the inclusion of the Reorganized Debtors, the Liquidation Trustee, and the ability of the exculpated parties to rely on the advice of counsel.  The Trustee has removed all of this language as requested by the U.S. Trustee.  *See* Proposed Order and FFCL Notice, at Exs. 2 and 3.  The Trustee has also revised the Liquidation Trust Agreement to add clarifying language in Sections 4.1 and to remove disputed language in Section 4.4.  *See id.* at Ex. 5.

Accordingly, as set forth in the FFCL, the Trustee proposes that the exculpation provision in Section 8.7 of the Plan be deleted and replaced in its entirety with the following revised exculpation provision, which was revised to address the U.S. Trustee's concerns (the "Revised Exculpation Provision"):

> 8.7   **Exculpation**. From and after the Effective Date, neither Debtors, the Trustee, Sanchez, Beazley, and their respective professionals nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, ***for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Cases, the pursuit of confirmation of this Plan (including the pursuit of the Global Settlement Agreement and Global Settlement Order incorporated into the Plan), or the consummation of this Plan, except for gross negligence and willful misconduct.*** Notwithstanding the foregoing, under no condition shall this exculpation apply to any claims previously asserted or which can be asserted against Brad Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the preserved Litigation Claims, including the Litigation Claims identified on Schedule 1.1.82 hereto.
>
> Notwithstanding anything to the contrary herein, nothing in the Plan shall release, discharge, enjoin, or otherwise modify or affect the rights of Beazley to pursue the Palubicki and Feliciano Claims or any claims against NuMale Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina, PLLC.

[2] For the avoidance of doubt, "[n]othing in the Bankruptcy Code forbids (or otherwise addresses) inclusion of an exculpation provision in a chapter 11 plan.  As such, section 1123(b)(6) permits the inclusion of an appropriately tailored exculpation provision.  Indeed, in *Blixseth v. Credit Suisse*, the Ninth Circuit Court of Appeals recently affirmed confirmation of a plan with an exculpation clause generally similar to the one at issue here." *In re Astria Health*, 623 B.R. 793, 798 (Bankr. E.D. Wash. 2021).

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1    The Revised Exculpation Provision is consistent with and satisfies the standards set forth

2  in *Blixseth v. Credit Suisse,* 961 F.3d 1074 (9th Cir. 2020), and as clarified in *In re Astria Health*,

3  623 B.R. 793 (Bankr. E.D. Wash. 2021).

4    The Revised Exculpation Provision (a) is limited in time to only actions taken after the

5  Petition Date[3]; (b) excludes liabilities based upon gross negligence or willful misconduct[4]; (c) is

6  limited to protecting the parties who directly participated in the Chapter 11 Cases, the preparation

7  of the Plan, and pursuit of confirmation of the Plan, which incorporates the Global Settlement

8  Agreement and the Global Settlement Order[5]; and (d) is further limited in scope to only "act[s] or

9  omission[s] in connection with, relating to, or arising out of (from the Petition Date forward), the

10  Chapter 11 Cases, the pursuit of confirmation of this Plan (including the pursuit of the Global

11  Settlement Agreement and Global Settlement Order incorporated into the Plan)."    *See*

12  Supplemental Carmel Decl. ¶ 4.

13    Additionally, the Revised Exculpation Provision includes the following two carve outs,

14  further narrowing the scope of the exculpation provision:

15    (1) "Notwithstanding the foregoing, under no condition shall this exculpation apply
16        to any claims previously asserted or which can be asserted against Brad
         Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or
17        Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the
         preserved Litigation Claims, including the Litigation Claims identified on
18        Schedule 1.1.82 hereto"; and

19    (2) "Notwithstanding anything to the contrary herein, nothing in the Plan shall
         release, discharge, enjoin, or otherwise modify or affect the rights of Beazley
20        to pursue the Palubicki and Feliciano Claims or any claims against NuMale
         Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina,
21        PLLC."

22    As illustrated by the express carveouts, the Revised Exculpation Provision is narrowly

23  _____

   [3] "The exculpation provision here expressly limits itself to "any postpetition act" and thus to a period during which
24  the debtors and their affairs were subject to this court's supervision." *In re Astria Health*, 623 B.R. 793, 799 (Bankr.
   E.D. Wash. 2021)

25  [4] "The provision, however, properly and expressly carves out gross negligence or willful misconduct.  This is
   consistent with the requirements several courts imposed to prevent exculpation provisions from transforming into
26  overbroad releases." *Id.*

27  [5] "Each of the covered parties played a significant role during these cases and engaged in conduct potentially subject
   to second guessing or hindsight-driven criticism." *Id.*

28

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1    tailored to cover only those parties that played a significant role during these Chapter 11 Cases

2    and engaged in conduct potentially subject to second guessing or hindsight-driven criticism in

3    connection with these Chapter 11 Cases and the Plan. *Id.* ¶ 5.

4        Accordingly, the Revised Exculpation Provision is "not a broad sweeping provision that

5    seeks to discharge or release nondebtors from any and all claims that belong to others." *Blixseth*

6    *v. Credit Suisse,* 961 F.3d 1074, 1081-82 (9th Cir. 2020) (quoting *In re Yellowstone Mountain*

7    *Club, LLC*, 460 B.R. 254, 270 (Bankr. D. Mont. 2011), *aff'd,* 584 F. App'x 676 (9th Cir. 2014)).

8    Instead, it is appropriately narrow in light of the facts and circumstances of these Chapter 11 Cases.

9        The Ninth Circuit was clear in *Blixseth* that "§ 524(e) does not bar a narrow exculpation

10   clause of the kind here at issue—that is, one focused on actions of various participants in the Plan

11   approval process and relating only to that process." *Id.* at 1082.  Accordingly, the Trustee submits

12   that the Revised Exculpation Provision should be approved.

13   **D.    The 363 Sale and Application of Section 1141(d)(3) to the Plan.**

14       The Debtors, under the direction and control of the Trustee, operate men's health clinics in

15   multiple states.  The Plan and Global Settlement Agreement contemplate a sale of the 363 Assets,

16   which are largely the health clinic assets.  The Plan is structured to provide for the Debtors to

17   reorganize and continue operating the health clinics if the 363 Sale does not close prior to the

18   Plan's Effective Date.  *See* Plan § 5.16.  The U.S. Trustee questioned whether a sale could be

19   approved pursuant to Section 363 after the effective date and also the impact of Section 1141(d)(3).

20       While reasonable minds can disagree, the Trustee respectfully submits that a sale may be

21   conducted pursuant to Section 363 after the effective date where, as here, the Plan specifically

22   contemplates the sale and retains jurisdiction.  *See* Plan § 9.1.4.  Nonetheless, after discussion with

23   the U.S. Trustee, the Trustee filed his Bid Procedures Motion [ECF No. 631] and is seeking to

24   expeditiously conduct the auction and to obtain entry of the 363 Sale Order ***prior to*** the Plan's

25   Effective Date.

26       After consulting with the U.S. Trustee, the Trustee also negotiated with Beazley, Messrs.

27   Sanchez, Pulliam, and Asandra and they have agreed to provide a short extension of the Effective

28

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Date to provide additional time for the auction to be conducted and the 363 Sale Order to be entered. *See* Supplemental Carmel Decl. ¶ 6. Accordingly, the Trustee proposes that Section 7.4 be added to the Plan providing an approximately two-week extension of the anticipated Effective Date under the Plan resulting in additional time to conduct the auction and obtain entry of the Sale Order.

> **7.4    Effective Date.** Subject to all of the conditions set forth in Section 7.2 of the Plan occurring, the Effective Date shall occur on the earlier of: (i) the 363 Sale closing; and (ii) October 24, 2025.

*See* Proposed Order and FFCL Notice, at Exs. 2 and 3.

With respect to the second issue, Section 1141(d)(3) provides that confirmation of a plan does not discharge a debtor if: (i) "the plan provides for the liquidation of all or substantially all of the property to the estate"; (ii) "**the debtor does not engage in business after consummation of the plan**"; **and** (iii) "the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title." 11 U.S.C. § 1141(d)(3) (emphasis added).

Despite the Trustee's filing of the Bid Procedures Motion and the modified Effective Date provided in Section 7.4, there remains an open issue as to how quickly the 363 Sale can close. The Trustee will strive for a closing as quickly as reasonably possible, but intervening events could occur that cause the closing to be delayed for weeks or months or for the closing to not occur at all. For instance, the prevailing bidder could fail to close after the 363 Sale Order is entered, requiring the Trustee to proceed with the back-up bidder, all of which takes time. It is also conceivable (albeit unlikely) that neither the prevailing nor the back-up bidder closes. In either of these instances, the Reorganized Debtors will be engaged in the business of operating the men's health clinics in multiple states and ensuring patient care during their operation. Were this to occur despite the Trustee's best efforts to close the 363 Sale before the Effective Date, the Reorganized Debtors will undeniably be "engage[d] in business after consummation of the plan," rendering Section 1141(d)(3) wholly inapplicable. *See* Supplemental Carmel Decl. ¶ 7.

Conversely, however, should the 363 Sale close on or before the Effective Date, the Trustee agrees that Section 1141(d)(3) would apply and the Debtors would not be entitled to a discharge.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Accordingly, the Trustee has proposed the following provision be included in the FFCL to address either situation:

> 52.    If the 363 Sale does not close before the Effective Date, the Court expressly finds that the Plan is effectuating a reorganization and not a liquidation as the Reorganized Debtors shall be required to operate the health clinics and ensure patient care after the Effective Date.  The discharge set forth in Section 8.5 of the Plan and the injunction provision set forth in Section 8.6 of the Plan are therefore necessary to implement, preserve, and enforce the provisions of the Plan and are narrowly tailored to achieve this purposes.  If, however, the 363 Sale closes before the Effective Date, the Court finds that the Plan is effectuating a liquidation, and Sections 8.5 and 8.6 of the Plan shall be stricken in their entirety and of no force and effect in accordance with Section 1141(d)(3).

*See* Proposed Order and FFCL Notice, at Ex. 2 and 3 ¶ 52.  The Trustee submits that the addition of paragraph 52 to the FFCL resolves any concern with regard to the application of Section 1141(d)(3).

**E.    The Mayfair Objection Should be Overruled.**

Mayfair is a landlord under two leases to which non-Debtors are parties; however, the Debtors utilized the leased spaces.[6]  As reflected in the *Asset Purchase Agreement* filed on September 19, 2025 [ECF No. 631-5] and the amended Schedule 6.1 to the Plan, the Mayfair Leases are rejected under Section 365 to the extent legally possible, thereby mooting the Objection with respect to the assumption and assignment of the Mayfair Leases.

The Objection's argument regarding an absolute bar on late-filed claims is also baseless. To the extent Mayfair has an administrative claim, the Plan clearly provides that all Allowed Administrative Claims timely filed by the Administrative Claim Bar Date will be paid in full. Specifically, Sections 1.1.9 and 2.4 of the Plan set forth the deadline for the Administrative Claims

---

[6] The *Wisconsin Full-Service Office Lease* between Mayfair and non-Debtor NuMale Medical Center, LLC ("NMC") for premises commonly identified as Suite 1140 of the Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, Wisconsin, 53226 ("1140 Premises"), which lease was amended by way of a *First Amendment to Lease* dated on or about October 8, 2021, between Mayfair and NMC, and further amended by way of a *Second Amendment to Lease* dated on or about October 19, 2022, between Mayfair and NMC (altogether, the "1140 Lease").

And, the *Wisconsin Full-Service Office Lease* between Mayfair and NMC for premises commonly identified as Suite 1150 of the Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, Wisconsin, 53226 ("1150 Premises"), which lease was amended by way of a *First Amendment to Lease* dated on or about October 8, 2021, between Mayfair and NMC (altogether, the "1150 Lease").  The 1140 Lease and the 1150 Lease together, the "Mayfair Leases".

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Bar Date (defined as "The first (1ˢᵗ) Business Day occurring on or after the fifteenth (15ᵗʰ) day after the Effective Date."). Thus, to the extent Mayfair contends it has an administrative claim, the Plan provides the deadline by which such claim must be asserted.

Additionally, Section 1.1.117 establishes the time within which a Rejection Damages Claim must be asserted (by the Rejection Damages Bar Date, defined as "The end of the first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date."). Thus, the Plan provides Mayfair with time and an opportunity to assert any Rejection Damages Claim it contends it has.

For the foregoing reasons, the Trustee respectfully requests the Court overrule the Objection and confirm the Plan.

Dated this 22nd day of September 2025.

GARMAN TURNER GORDON LLP

By: /s/ Mary Langsner
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000