GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Plaintiff Michael W. Carmel,
Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No. 25-10341-NMC |
| NUMALE CORPORATION | Chapter 11 |
| Debtor. | Jointly Administered with: |
| | Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-NMC |
| MICHAEL W. CARMEL, CHAPTER 11 TRUSTEE, | NuMedical SC<br>Case No. 25-10343-NMC |
| Plaintiff, | NuMale Colorado SC<br>Case No. 25-10344-NMC |
| v. | NuMale Florida TB PLLC<br>Case No. 25-10345-NMC |
| VOX FUNDING, LLC | NuMale Nebraska LLC<br>Case No. 25-10346-NMC |
| Defendant. | NuMale New Mexico SC<br>Case No. 25-10347-NMC |
| | **Adversary No.** |

**COMPLAINT**

Michael Carmel, in his capacity as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of debtors NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale

1

Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC ("Plaintiff") hereby files this complaint ("Complaint")[1] against Vox Funding, LLC ("Defendant"), and states as follows:

## I.
## PARTIES

1. Plaintiff is the duly appointed Chapter 11 trustee over the bankruptcy estates (collectively, the "Estates") of debtors NuMale Corporation ("NuMale Corporation"), Feliciano NuMale Nevada PLLC ("Nevada NuMale"), NuMedical SC ("NuMedical"), NuMale Colorado SC ("Colorado NuMale"), NuMale Florida TB PLLC ("Florida NuMale"), NuMale Nebraska LLC ("Nebraska NuMale"), and NuMale New Mexico SC ("NuMale New Mexico") (altogether, the "Debtors").

2. On January 22, 2025 (the "Petition Date"), *NuMale Corporation* (Case No. 25-10341-nmc), *Feliciano NuMale Nevada PLLC* (Case No. 25-10342-nmc), *NuMedical SC* (Case No. 25-10343-nmc), *NuMale Colorado SC* (Case No. 25-10344-nmc), *NuMale Florida TB PLLC* (Case No. 25-10345-nmc), *NuMale Nebraska LLC* (Case No. 25-10346-nmc), and *NuMale New Mexico SC* (Case No. 25-10347-nmc) each filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases in the United States Bankruptcy Court for the District of Nevada (collectively, the "Chapter 11 Cases").

3. Debtor NuMale Corporation is a Nevada corporation with a principal place of business in Las Vegas, Nevada.

4. Debtor Feliciano NuMale Nevada PLLC is a Nevada professional limited liability company with a principal place of business in Las Vegas, Nevada.

5. Debtor NuMedical SC is a Wisconsin service corporation.

6. Debtor NuMale Nebraska LLC is a Wisconsin limited liability company.

7. Debtor NuMale New Mexico SC is a Wisconsin service corporation.

---

[1] Unless otherwise stated, all references to "Section" herein shall be to Title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "Civil Rule" shall refer to the Federal Rules of Civil Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

8. Debtor NuMale Colorado SC is a Colorado corporation.

9. Debtor NuMale Florida TB PLLC is a Florida professional limited liability company.

10. Debtors Nevada NuMale, NuMedical, Colorado NuMale, Florida NuMale, Nebraska NuMale, and New Mexico NuMale own and/or operate medical clinics under the NuMale name.

11. All of the claims asserted herein are property of the Debtors' Estates, and the Trustee is the representative of the Debtors' Estates and has sole standing to pursue such claims.

12. Defendant Vox Funding, LLC ("Defendant") is a limited liability company formed and operating under the laws of the State of Delaware. At all relevant times, Defendant's principal place of business has been in New York at 100 Park Ave, New York, NY.

13. On May 28, 2025, Defendant filed a proof of claim in the Chapter 11 Cases, thereby consenting to this Court's jurisdiction.

## II.
## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference set forth in Local Rule 1001(b)(1).

15. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (F), (H), (K), and (O).

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtors' Chapter 11 Cases are pending before the Bankruptcy Court.

17. This adversary proceeding relates to the Debtors' Chapter 11 Cases pending in the District of Nevada.

18. Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge cannot, absent consent of the parties, enter final orders or judgment consistent with Article III of the United States Constitution.

. . .

. . .

## III.
## GENERAL ALLEGATIONS

19. On or about October 21, 2024, Defendant entered into a Future Receipts Sale Agreement ("Loan Agreement") with Debtor NuMale Nebraska, LLC (the "NuMale Nebraska").

20. The obligations established by the Loan Agreement were guaranteed by Carlos Eric Feliciano (the "Guarantor").

21. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured or undersecured claims against each of the Debtors (collectively, the "Predicate Creditors") as identified in Debtors' schedules and statements and proofs of claim, including without limitation, Michael Sanchez; Prospect Rainbow, LLC; SBA NewTek Bank, National Association; Top Tier Capital; and The LCF Group.

22. On January 22, 2025, the Debtors commenced these Chapter 11 Cases.

23. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 130.

24. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

25. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

26. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

27. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

28. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

29. Immediately upon his appointment, the Trustee began investigating the assets and liabilities of the Debtors and their Estates.

30. The Debtors made payments to Defendant during the ninety (90) days preceding the Petition Date in the aggregate amount of $20,769.28. The above-described transfers, in the aggregate amount of $20,769.28, along with any other transfers not yet herein identified, the "Transfers".

31. Defendant has also engaged in an scheme to extract funds from small and mid-sized businesses through short-term loans at usurious interest rates through financial loan instruments termed a "Future Receivables Sale Agreement."

32. Through the Loan Agreement transactions, such as the transaction(s) at issue in this lawsuit, Defendant has collected funds from struggling small and mid-sized businesses in Nevada and nationwide, often driving business owners into ruinous debt and bankruptcy.

33. Upon information and belief, Defendant claims to help struggling small and mid-sized businesses by providing rapid access to funds without a lengthy, cumbersome application process and despite poor credit or no credit.

34. But the reality is, Defendant's transactions are usurious and fraudulent loans, with which Defendant debits from the NuMale Nebraska' bank accounts with alarming frequency (the "Recurring Debits").

35. Defendant drafted, proposed, and entered into a certain funding agreement with, *inter alia*, the NuMale Nebraska (the Loan Agreement), pursuant to which Defendant made a loan of money (the "Loan").

36. Defendant incorrectly characterized this Loan Agreement as a "Future Receipts Sale Agreement".

5

37. Defendant falsely stated in the Loan Agreement that it is buying a portion (the "Purchased Percentage") of the NuMale Nebraska' future receipts of revenue/receivables. Defendant set payments under the Loan Agreement to a fixed, recurring amount (the "Remittance Amount") that Defendant fraudulently stated reflects a small (and non-usurious) Purchased Percent of the merchant's future revenue.

38. Regardless of how Defendant may attempt to characterize the financial transaction under which Defendant loaned funds, the economic reality of said transaction is that it is a loan. Under the terms of the Loan Agreement, NuMale Nebraska would have to pay at an usurious rate of interest to Defendant.

39. Defendant misrepresented that if, *inter alia*, revenue declines in the future, NuMale Nebraska can participate in reconciliation or adjustment processes including a true-up process to reconcile past payment amounts, obtain refunds for past payments, and adjust for future payments—so that NuMale Nebraska would not be paying more than a set percentage of revenue. Defendant also falsely stated in the Loan Agreement that the transaction was open-ended, such that the advance of funds may be paid off over a long term if NuMale Nebraska' receipt of revenue slows down.

40. All these representations are a sham, created by Defendant to lure NuMale Nebraska to sign the Loan Agreement and to evade usury laws by disguising the loan as something it is clearly not. In reality, the Loan Agreement are fraudulent and illegal usurious loans, not purchases of revenue.

41. Defendant collected on the Loan Agreement according to the fixed weekly Remittance Amount of approximately $2,596.16 per week, that had no connection to the Purchased Percentage of revenues stated in the Loan Agreement. NuMale Nebraska' revenues fluctuated and varied widely from week-to-week and month-to-month, yet Defendant debited the same fixed Remittance Amounts from the NuMale Nebraska' bank account(s) each week, regardless of declines or fluctuations in revenue.

42. Defendant promised to perform the True-Up reconciliations in order to adjust the weekly Remittance Amount to reflect NuMale Nebraska' revenues as they fluctuated. Upon information and belief Defendant's promises of payment reconciliation are a fraud. Defendant manipulated the default provisions so as to put the remedy of reconciliation out of reach for NuMale Nebraska. This made it impossible for NuMale Nebraska to qualify for fair refunds of excess payments collected by Defendant when intake of revenue declined.

43. On or about April 28, 2025, Defendant filed a proof of claim against NuMale Corporation alleging an amount owed of $86,628.42 (Claim No. 1-1) (the "Vox Claim").

44. Defendant also required the Loan to be personally guaranteed and secured against a vast array of assets, far beyond the revenue Defendant purported to be purchasing.

45. Defendant claimed for itself status as a secured creditor under UCC Article 9, seeking to ensure full repayment, and maintained this long after the NuMale Nebraska' revenue dwindled, even if unsecured and lower priority creditors may recover little.

46. Because the Loan Agreement was, in substance, monies to be paid back with interest in fixed payments, that in practice was, upon information and belief, alterable only at Defendant's whim, the so-called Loan Agreement was and is a usurious loan, fraudulently cloaked as a purchase of revenue.

47. The Loan Agreement defined the funds available for Defendant to collect as broader than merely Plaintiff's receipts for the sale of goods and services.

48. Defendant also reserved for itself extensive recourse against the NuMale Nebraska—and against the NuMale Nebraska' ownership personally through a personal guaranty—ensuring Defendant's ability to collect not only the full Purchased Amount but also more. The recourse that Defendant reserved for itself extends far beyond the percentage of business revenue it purportedly purchased and, upon information and belief, even extends to circumstances where intake of revenue dwindles.

49. Upon information and belief the Loan Agreement also required full, immediate payment of the entire amount—*discarding altogether the notion of payments tied to revenue*.

7

50. Moreover, Defendant purported to obtain security interests in assets well beyond NuMale Nebraska' revenue and/or receipts that are the subject of the Loan, even including property such as "all accounts and proceeds".

51. Defendant made disclaimers in the Loan Agreement to NuMale Nebraska that they were not loans. Such disclaimers are false. The funding transactions are, in its substance, fixed payment usurious loans and not purchases of future revenue.

52. In practice, Defendant required NuMale Nebraska to repay the Loan through a fixed "Remittance Amount" drawn weekly, that were not based on revenue.

53. The Debtors were insolvent, based on debts exceeding assets and on the general inability to pay debts as they came due, on the dates the Transfers were made—and Defendant was aware of this fact at the time of the Loan Agreement and at the time of each of the Transfers to Defendant.

## IV.
## FIRST CLAIM FOR RELIEF
### Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547(b)

54. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

55. The Defendant is not an insider of the Debtors.

56. Within the ninety (90) days preceding the Petition Date, the Defendant received Transfers from the Debtors.

57. Among the Transfers, Defendant received the sum of approximately $20,769.28 from the NuMale Nebraska within the ninety (90) days preceding the Petition Date.

58. All transfers received by the Defendant within the ninety (90) days preceding the Petition Date, including but not limited to the Transfers, are herein referred to as the "Avoidable Transfers".

59. The Avoidable Transfers were to the Defendant.

60. The Avoidable Transfers were for or on account of an antecedent debt owed by the Debtors before the Avoidable Transfers were made.

61. The Debtors' schedules and statements, signed under penalty of perjury, reflect that on the Petition Date the Debtors were insolvent.

62. The Avoidable Transfers enabled Defendant to receive more than it would have received if these Chapter 11 Cases were cases under Chapter 7 of the Bankruptcy Code, the Avoidable Transfers had not been made, and Defendant received payments to the extent provided by the provisions of the Bankruptcy Code.

63. Plaintiff is entitled to avoid the Avoidable Transfers made to Defendant as preferential transfers under 11 U.S.C. § 547.

## V.
## SECOND CLAIM FOR RELIEF
### Fraudulent Conveyance, 11 U.S.C. § 548(a)(1)(B)

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

65. Within the two (2) years preceding the Petition Date, the Defendant received transfers from the Debtors, including but not limited to the Avoidable Transfers (collectively, the "Two Year Transfers").

66. The Two Year Transfers are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

67. With respect to the Two Year Transfers that were made within two years of the Petition Date, the Two Year Transfers were made to insiders or affiliates of insiders of the Debtors.

68. The Two Year Transfers were made for the benefit of Defendant, who received the transfers.

69. The Two Year Transfers made within two years of the Petition Date were made while litigation was pending against NuMale Corporation and NuMale New Mexico and were concealed from Debtors' creditors.

70. The Debtors received less than a reasonably equivalent value, in exchange for the Two Year Transfers.

9

71. The Debtors were insolvent on the dates that the Two Year Transfers were made and/or the Debtors became insolvent as a result of the Two Year Transfers.

72. At the times the Two Year Transfers were made, the Debtors were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with the Debtors was an unreasonably small capital.

73. At the times the Two Year Transfers were made, the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' abilities to pay as such debts matured.

74. The Debtors made certain of the Two Year Transfers to or for the benefit of the Defendant, or incurred such obligation to or for the benefit of the Defendant, not in the ordinary course of business.

75. The chronology of events and the timing of the Two Year Transfers where litigation was pending against the Debtors reflect the intent to defraud.

76. When the Two Year Transfers made within two years of the Petition Date were made, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due.

77. Based on the foregoing, the Two Year Transfers that were made within two years of the Petition Date are avoidable constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

78. The Debtors received no value, or less than a reasonably equivalent value, in exchange for the Transfers. In fact, rather than adding value to the Debtors, the reckless and negligent actions performed by Defendant put the Debtors at great risk of liability and lowered the value of the Debtors, yet Defendant was nonetheless paid for it.

79. Plaintiff, on behalf of the Estates, is entitled to avoid each of the Two Year Transfers.

. . .

. . .

## VI.
## THIRD CLAIM FOR RELIEF
### Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550

80. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

81. Pursuant to 11 U.S.C. § 550(a)(1), Plaintiff may recover the Avoidable Transfers, the Two Year Transfers, and the Four Year Transfers from Defendant as the initial transferee or any entity on whose behalf the Transfers and the Two Year Transfers.

82. Pursuant to 11 U.S.C. § 550(a)(2), Plaintiff may recover the Transfers and the Two Year Transfers from any immediate or mediate transferees of the initial Defendant-transferee plus interest thereon from the date of payment and the costs of this Adversary Proceeding.

83. Defendant was the initial transferee, immediate transferee, or mediate transferee of the Transfers and Two Year Transfers identified herein, or the person or entity for whose benefit the Transfers and the Two Year Transfers were made.

84. To the extent it is determined that Defendant is an immediate or mediate transferee of the subject Transfers and Two Year Transfers Defendant did not take for value and in good faith, nor without knowledge of the voidability of such Transfers and Two Year Transfers.

85. Defendant was the person and/or entity for whose benefit the Transfers and the Two Year Transfers were made.

86. Based upon the foregoing, Plaintiff is entitled to recover the Transfers or their value and the Two Year Transfers or their value from Defendant pursuant to 11 U.S.C. § 550(a) for the benefit of the Estates.

## VII.
## FOURTH CLAIM FOR RELIEF
### Intentional Misrepresentation

87. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

88. NuMale Nebraska and Defendant had a privity or privity-like relationship giving rise to a duty of Defendant to impart correct information to the NuMale Nebraska.

89. As set forth above, Defendant imparted incorrect information to NuMale Nebraska, including but not limited to the representations identified herein.

90. At the times of the misrepresentations made, Defendant knew or believed that its representations were false, or Defendant had an insufficient basis of information to make such representations.

91. At a minimum, at the times of the misrepresentations made, Defendant knew or believed the information it conveyed was incorrect.

92. Defendant intended to induce the NuMale Nebraska to act upon these misrepresentations and/or incorrect information or refrain from acting thereon by entering into the Loan Agreement.

93. The NuMale Nebraska justifiably relied on Defendant's representation(s).

94. The NuMale Nebraska reasonably relied upon Defendant's false statements, misrepresentations, and/or incorrect information and entered into the Loan. Had NuMale Nebraska understood the actual substance of the transaction, or, upon information and belief, Defendant's manipulation of the default provisions, the lack of reconciliation ability, or the other issues described herein, the NuMale Nebraska would have never entered into the Loan Agreement.

95. The NuMale Nebraska sustained damages as a result.

96. Defendant's misrepresentations proximately caused harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

97. Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Defendant plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

98. Plaintiff, as the representative of the bankruptcy Estates, therefore brings this claim, with the amount of damages to be determined at trial in this Adversary Proceeding.

. . .

. . .

. . .

**VIII.**
**FIFTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**

99. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

100. Defendant had a pecuniary interest in the Loans and in ensuring NuMale Nebraska entered into the Loans.

101. In the course of entering into the Loan Agreement, Defendant failed to exercise reasonable care or competence in communicating information to the NuMale Nebraska.

102. The NuMale Nebraska justifiably relied on the information provided by Defendant and entered into the Loans. Had NuMale Nebraska understood the actual substance of the transaction, or Defendant's manipulation of the default provisions, the lack of reconciliation ability, or the other issues described herein, the NuMale Nebraska would have never entered into the Loan.

103. Defendant's misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

104. Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Defendant plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

105. Plaintiff, as the representative of the bankruptcy Estates, therefore brings this claim, with the amount of damages to be determined at trial in this Adversary Proceeding.

**IX.**
**SIXTH CLAIM FOR RELIEF**
**Declaratory Judgment**

106. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

107. A substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests regarding the Loan Agreement.

108. Defendant claims that the Loan Agreement is a lawful, non-usurious, agreement to purchase revenues and/or receipts.

109. Plaintiff claims that the Loan Agreement is an illegal usurious loan agreement disguised as a revenue purchase agreement.

110. Defendant has taken monies from NuMale Nebraska (the Transfers and the Two Year Transfers), purportedly in re-payment of revenues and/or receipts.

111. In reality, such funds (the Transfers and the Two Year Transfers) represent payments on a usurious loan.

112. These are ripe controversies that this Court must resolve.

113. Plaintiff seeks declaratory judgment from this Court declaring that (i) the Loan Agreement is usurious; (ii) the Loan Agreement is illegal; (iii) the Loan Agreement is void; (iv) all guarantees of the Loan Agreement are void; (v) the Debtors and the NuMale Nebraska owe nothing to Defendant; (vi) Defendant has no rights to or under the Loan Agreement; (vii) any and all UCC liens asserted by Defendant against any and all property of the Estates, the Debtors, and the NuMale Nebraska are void and unenforceable; (viii) a declaration prohibiting the enforcement of any asserted and/or alleged UCC liens, asserted by Defendant against any and all property of the Estates, the Debtors, and the NuMale Nebraska; and (ix) that Defendant receives nothing whatsoever on account of the Loan Agreement or under the Vox Claim.

## X.
## SEVENTH CLAIM FOR RELIEF
### Disallowance of Defendant's Claim

114. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

115. On or about November 26, 2024, Defendant entered into the Loan Agreement with the NuMale Nebraska.

116. Collectively, the NuMale Nebraska made payments, identified to date, to Defendant during the ninety (90) days preceding the Petition Date, in the amount of $20,769.28 (the "Transfers").

117. Additional transfers were made by the NuMale Nebraska to Defendant outside the ninety (90) days preceding the Petition Date. Collectively, the Transfers identified to date amount to more than the amount of Defendant's Loans, and this amount has been already received by Defendant as of the Petition Date.

118. Based on the claims asserted herein, Defendant therefore does not hold a valid claim against any of the Debtors.

119. As such, there is no valid basis for the Vox Claim be allowed.

120. Plaintiff, as the representative of the bankruptcy Estates, therefore seeks the total disallowance of the Vox Claim and asks this Court to disallow the Vox Claim in its entirety, and that Defendant take nothing by way of or on account of the Vox Claim.

## XI.
## EIGHTH CLAIM FOR RELIEF
### Avoidance of lien

121. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

122. In connection with the Loan and the Loan Agreement, Defendant asserts a lien against certain property of the Estates, the NuMale Nebraska, and the Guarantor.

123. However the Loan and Loan Agreement are void and/or unenforceable.

124. Additionally, Defendant does not hold a valid claim against any of the Debtors.

125. As such, Defendant does not hold a valid lien against any property of the Estates, the Debtors, or the NuMale Nebraska.

126. To the extent Defendant asserts a lien against any property of the Estates, the Debtors, or the NuMale Nebraska by reason of the Loan or Loan Agreement, such lien is extinguished, as the underlying obligation the lien purports to secure has been satisfied and/or is invalid.

127. Plaintiff, as the representative of the bankruptcy Estates, therefore seeks to avoid any and all liens related to the Loan, the Loan Agreement, and Defendant's Claim, and seeks a determination from this Court that there is no validity, priority, or extent of any lien asserted by

Defendant against any property of the Estates, the Debtors, or the NuMale Nebraska, and such lien(s) are hereby extinguished.

**RESERVATION OF RIGHTS**

This Complaint is intended to seek recovery of all transfers avoidable under Chapter 5 of Title 11 not specifically identified in the Complaint, including, without limitation, any payments received during the applicable preference period or applicable fraudulent transfer limitation period. Plaintiff reserves the right to amend this Complaint if additional avoidable transfers are revealed during discovery, including, but not limited to, any claims arising under Chapter 5 of Title 11 of the United States Code.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Find that Plaintiff is entitled to avoid and recover the Transfers made to Defendant as preferential transfers under 11 U.S.C. §§ 547 and 550.

2. Find that the Transfers and the Two Year Transfers are avoidable and recoverable under 11 U.S.C. §§ 548 and 550.

3. Find that Plaintiff, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Defendant's Intentional Misrepresentation and Negligent Misrepresentation, plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just, with the amount of damages to be determined at trial in this Adversary Proceeding.

128. Enter declaratory judgment in favor of Plaintiff and against Defendant, declaring that (i) the Loan Agreement is usurious; (ii) the Loan Agreement is illegal; (iii) the Loan Agreement is void; (iv) all guarantees of the Loan Agreement are void; (v) the Debtors and the NuMale Nebraska owe nothing to Defendant; (vi) Defendant has no rights to or under the Loan Agreement; (vii) any and all UCC liens asserted by Defendant against any and all property of the Estates, the Debtors, and the NuMale Nebraska are void and unenforceable; (viii) a declaration prohibiting the enforcement of any asserted and/or alleged UCC liens, asserted by Defendant

against any and all property of the Estates, the Debtors, and the NuMale Nebraska; and (ix) that Defendant receives nothing whatsoever on account of the Loan Agreement or under the Vox Claim.

4. Disallow the Vox Claim in its entirety and find that Defendant take nothing by way of or on account of the Vox Claim.

5. Avoid any and all liens related to the Loan, the Loan Agreement, and the Vox Claim and a determination from this Court that there is no validity, priority, or extent of any lien asserted by Defendant against any property of the Estates, the Debtors, or the NuMale Nebraska, and such asserted lien is extinguished.

6. Grant reasonable attorney's fees and costs.

7. For such further relief the Court finds just and proper.

Dated this 22nd day of October, 2025.

                                                GARMAN TURNER GORDON LLP

                                                By: */s/ Talitha Gray Kozlowski*
                                                      GREGORY E. GARMAN, ESQ.
                                                        TALITHA GRAY KOZLOWSKI, ESQ.
                                                        MARY LANGSNER, Ph.D.
                                                        7251 Amigo Street, Suite 210
                                                        Las Vegas, Nevada 89119

                                                        *Attorneys for Plaintiff, Chapter 11 Trustee Michael Carmel*