1  GARMAN TURNER GORDON LLP
   GREGORY E. GARMAN
2  Nevada Bar No. 6654
   E-mail:  ggarman@gtg.legal
3  TALITHA GRAY KOZLOWSKI, ESQ.
   Nevada Bar No. 9040
4  tgray@gtg.legal
   MARY LANGSNER, Ph.D.
5  Nevada Bar No. 13707
   mlangsner@gtg.legal
6  7251 Amigo Street, Suite 210
7  Las Vegas, Nevada 89119
   Telephone (725) 777-3000
8  Facsimile (725) 777-3112
9  *Attorneys for Michael Carmel,*
   *Chapter 11 Trustee*
10

11              **UNITED STATES BANKRUPTCY COURT**
12                    **DISTRICT OF NEVADA**

13  In re:                              Lead Case No.: 25-10341-nmc
                                        Chapter 11
14  NUMALE CORPORATION,
                                        *Jointly administered with:*
15      AFFECTS THIS DEBTOR,       ☐
                                        Feliciano NuMale Nevada PLLC,
16      AFFECTS FELICIANO          ☐    Case No. 25-10342-nmc
        NUMALE NEVADA PLLC,
17                                      NuMedical SC
        NUMEDICAL SC,              ☐    Case No. 25-10343-nmc
18
        NUMALE COLORADO SC,        ☐    NuMale Colorado SC
19                                      Case No. 25-10344-nmc
        NUMALE FLORIDA TB PLLC,    ☐
20                                      NuMale Florida TB PLLC
        NUMALE NEBRASKA LLC,       ☐    Case No. 25-10345-nmc
21
        NUMALE NEW MEXICO SC,      ☐    NuMale Nebraska LLC
22                                      Case No. 25-10346-nmc
        NUMALE ALL DEBTORS,        ☒
23                                      NuMale New Mexico SC
           Debtor.                      Case No. 25-10347-nmc
24

25       **NOTICE OF ENTRY OF ORDER: (I) AUTHORIZING THE SALE OF DEBTORS'**
26  **ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR**
    **OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II)**
27              **GRANTING RELATED RELIEF**

28

                              1

1       PLEASE TAKE NOTICE that an *Order: (I) Authorizing the sale of Debtors' Assets*

2 *Outside of the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances,*

3 *and Interests; and (II) Granting Related Relief* [ECF No. 751], a copy of which is attached hereto,

4 was entered in the above-entitled matter on October 23, 2025.

5       Dated this 23rd day of October, 2025.

6

7                   GARMAN TURNER GORDON LLP

8               By: */s/ Mary Langsner*

9                   GREGORY E. GARMAN, ESQ.
                  TALITHA GRAY KOZLOWSKI, ESQ.

10                   MARY LANGSNER, Ph.D.
                  7251 Amigo Street, Suite 210

11                   Las Vegas, Nevada 89119
                  *Attorneys for Michael Carmel,*

12                   *Chapter 11 Trustee*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Garman Turner Gordon**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1

2

3

_Natalie M. Cox_
Honorable Natalie M. Cox
United States Bankruptcy Judge

4

Entered on Docket
5  October 23, 2025

6

7  GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654

8  Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.

9  Nevada Bar No. 9040
Email: tgray@gtg.legal

10  MARY LANGSNER, Ph.D.
Nevada Bar No. 13707

11  Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210

12  Las Vegas, Nevada 89119
Tel: 725.777.3000

13  *Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

14

15

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

16  In re:

17  NUMALE CORPORATION,

18      AFFECTS THIS DEBTOR,           ☐

19      AFFECTS FELICIANO            ☐
        NUMALE NEVADA PLLC,

20      NUMEDICAL SC,                ☐

21      NUMALE COLORADO SC,          ☐

22      NUMALE FLORIDA TB PLLC,      ☐

23      NUMALE NEBRASKA LLC,         ☐

24      NUMALE NEW MEXICO SC,        ☐

25      NUMALE ALL DEBTORS,          ☒

26          Debtors.

27

28

Lead Case No.: 25-10341-nmc
Chapter 11

*Jointly administered with:*

Feliciano NuMale Nevada PLLC,
Case No. 25-10342-nmc

NuMedical SC
Case No. 25-10343-nmc

NuMale Colorado SC,
Case No. 25-10344-nmc

NuMale Florida TB PLLC,
Case No. 25-10345-nmc

NuMale Nebraska LLC
Case No. 25-10346-nmc

NuMale New Mexico SC
Case No. 25-10347-nmc

Hearing Date:   October 22, 2025
Hearing Time:  1:30  p.m.

1

2

## ORDER: (I) AUTHORIZING THE SALE OF DEBTORS' ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Michael Carmel, as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), filed his motion for entry of an *Order: (I) Authorizing the Sale of Debtors' Assets Outside of the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief* (the "Sale Motion") [ECF No. 631],[1] which was heard by the Court on October 22, 2025, at 1:30 p.m. (the "Hearing"). Counsels' appearances are reflected in the above-captioned Court's record of the Hearing. The Court read and considered the Motion brought pursuant to Sections 105, 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and Local Bankruptcy Rules for the District of Nevada. The Court's findings and conclusions of law placed on the record at the Hearing are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7052. It appearing that the relief requested in the Motion is in the best interest of Debtors' estates, creditors, and other parties-in-interest, and after due deliberation and sufficient cause appearing therefor:

19

## IT IS HEREBY FOUND AND DETERMINED THAT:

20

21

22

**A.**     **Jurisdiction and Venue.**  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

23

24

25

**B.**     **Statutory Predicates.**  The statutory predicates for the relief sought in the Motion are Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

26

27

28

---

[1] Capitalized terms not otherwise defined in this Sale Order shall have the meanings set forth in the Sale Motion.

**C.**    **Judicial Notice.**  The Court took judicial notice of the pleadings, papers, and other records in the Bankruptcy Case pursuant to Federal Rule of Evidence 201, made applicable to these proceedings pursuant to Bankruptcy Rule 9017.

**D.**    **Notice.**  As evidenced by the certificates of service filed with this Court and based upon the representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, and the Sale, has been provided in accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient, and appropriate under the circumstances; and (iv) no other or further notice of the Motion, the Auction, the Sale Hearing, or the Sale to the Prevailing Bidder is or shall be required.

**E.**    **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein has been given, in light of the circumstances, to all interested persons and entities, including the following: (i) the U.S. Trustee; (ii) all parties known to be asserting a lien on any of the  363 Assets; (iii) the Internal Revenue Service; and (iv) all of Debtors' known creditors, equity security holders, and parties-in-interest entitled to notice under Bankruptcy Rule 2002(a).

**F.**    **Sale Satisfies Best Interests**.  Good and sufficient reasons for approval of the Sale to Justin Pulliam or his assignee (the "Prevailing Bidder") has been articulated, and the relief requested in the Sale Motion is in the best interests of Debtors, their estates, the creditors, and other parties-in-interest.

**G.**    **Business Justification**.  The Trustee has demonstrated both: (i) good, sufficient, and sound business purposes and justifications for the Sale, which Sale was conducted in accordance with the *Joint Plan of Reorganization* (the "Plan") [ECF No. 434]; and (ii) compelling circumstances for the Sale other than in the ordinary course of business under Section 363(b) of the Bankruptcy Code.  Entry of an order approving the Sale to the Prevailing Bidder is a necessary condition precedent to consummating the Sale.

**H.** **Arm's-Length Sale**. The Asset Purchase Agreement attached hereto as Exhibit 1 executed by the Prevailing Bidder memorializing the Prevailing Bid (the "APA") was negotiated, proposed, and entered into by Trustee and the Prevailing Bidder without collusion, in good faith, and from an arm's-length bargaining position. Neither the Trustee nor the Prevailing Bidder have engaged in any conduct that would cause or permit the APA to be avoided under Section 363(n) of the Bankruptcy Code. Specifically, the Prevailing Bidder has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

**I.** **Good Faith Purchaser**. The APA was negotiated, proposed, and entered into by Trustee and the Prevailing Bidder in good faith, without collusion, and from arm's-length bargaining positions. The Prevailing Bidder has proceeded in good faith in all respects in connection with this proceeding, is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Trustee, Debtors, nor the Prevailing Bidder have engaged in any conduct that: (i) would cause or permit the Sale transactions contemplated hereby and in accordance with the APA to be avoided; (ii) would tend to hinder, delay, or defraud creditors; or (iii) impose costs and damages under Section 363(n) of the Bankruptcy Code.

**J.** **Highest and Best Offer**. As demonstrated by the declarations and other testimony and evidence proffered or adduced prior to or at the Sale Hearing: (i) the Trustee has adequately marketed the 363 Assets for sale; (ii) the consideration provided for in the APA constitutes the highest or otherwise best offer for the 363 Assets and provides fair and reasonable consideration for the 363 Assets; (iii) the Sale pursuant to the APA will provide a greater recovery for Debtors' creditors than would be provided by any other practical available alternative; (iv) the consideration to be paid by the Prevailing Bidder constitutes reasonably equivalent value and fair consideration (as those terms may be defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing. The

Trustee's determination that the Prevailing Bid constitutes the highest and best offer for the 363 Assets constitutes a valid and sound exercise of the Trustee's business judgment.

      **K.**    **Consideration**.  The Prevailing Bid represents a fair and reasonable offer to purchase the 363 Assets under the circumstances of the Chapter 11 Cases.  Approval of the Motion, the Prevailing Bid, the APA, and the consummation of the Sale contemplated thereby are in the best interests of Debtors, their creditors, their estates, and all other parties-in-interest.

      **L.**    **Free and Clear**.  The transfer of the 363 Assets to the Prevailing Bidder under the APA will be a legal, valid, and effective transfer of the 363 Assets and vests or will vest the Prevailing Bidder with all right, title, and interest of Debtors' estates to the applicable purchased 363 Assets free and clear of all liens, claims (as defined in Section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments, or interests of any kind or nature whatsoever, including but not limited to, product warranty claims and product liability claims (collectively, the "Claims").  The Prevailing Bidder would not have entered into the APA and would not consummate the Sale if the Sale to the Prevailing Bidder were not free and clear of all Claims or if the Prevailing Bidder would, or in the future could, be liable for any of the Claims. For the avoidance of doubt, all Claims shall attach to the cash proceeds received by Debtors' estates ultimately attributable to the property against or in which such Claims are asserted, subject to the terms of such Claims, with the same validity, force, and effect, and in the same order of priority that such Claims now have against the 363 Assets or their proceeds, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

      **M.**    The Trustee may sell the 363 Assets free and clear of any Claims of any kind or nature whatsoever because in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with a Claim to or in the 363 Assets to be transferred on the day of the closing of the Sale of the 363 Assets to the Prevailing Bidder (the "Closing"): (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim; or (iii) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code.  Those holders of Claims who did not object to the Motion are

deemed, subject to the terms of this Sale Order, to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

**N.** All holders of Claims are adequately protected by the Plan and by having their Claims attach to the cash proceeds received by Debtors' estates that are ultimately attributable to the property against or in which such Claims are asserted, subject to the terms of such Claims, with the same validity, force and effect, and in the same order of priority, which such Claims now have against the 363 Assets or their proceeds, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

**O.** <u>**No Fraudulent Transfer**</u>. The Prevailing Bid and APA provide reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the Bankruptcy Code). The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the State of Nevada. Neither the Trustee nor the Prevailing Bidder is entering into the APA fraudulently.

**P.** <u>**Not a Successor**</u>. The Prevailing Bidder: (i) is not a successor to any of the Debtors; (ii) has not, de facto or otherwise, merged with or into the Debtors; (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) does not have a common identity of incorporators, directors, or equity holders with the Debtors; and (v) is not holding themselves out to the public as a continuation of the Debtors. The: (i) transfer of the 363 Assets to the Prevailing Bidder; and (ii) assignment to the Prevailing Bidder of the executory contracts and unexpired leases does not and will not subject the Prevailing Bidder to any liability whatsoever with respect to the operation of Debtors' business before the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the State of Nevada, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

**Q.** **Cure/Adequate Assurance**. The assignment of the executory contracts and unexpired leases assumed and assigned (the "Assumed Contracts") pursuant to the terms of the Plan and this Sale Order is integral to the APA and is in the best interests of Debtors, their estates, their creditors, and all other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee.

**R.** **Prompt Consummation**. The Sale in accordance with the APA must be approved and consummated promptly in order to preserve the viability of the Debtors' enterprise and to maximize the value of Debtors' estates for the benefit of their creditors. Time is of the essence in consummating the Sale.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, CONCLUDED, AND DECREED AS FOLLOWS:**

1. **Motion Is Granted**. The Motion and the relief requested therein is GRANTED and APPROVED.

2. **Objections Overruled**. Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

3. **Approval of the Sale**. The APA and the Sale contemplated therein are hereby approved. Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, the Trustee and Debtors are hereby authorized to: (i) execute and perform the obligations under the APA, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Sale pursuant to the APA; (ii) consummate the Sale in accordance with the terms and conditions of the APA and all additional documents and instruments contemplated thereby; and (iii) take all other and further action as may be reasonably necessary to implement the Sale to the Prevailing Bidder pursuant to the APA.

4. **Free and Clear**. Except as otherwise specifically provided for in the APA or this Sale Order, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the 363 Assets to the Prevailing Bidder in accordance with the APA and, as

of the Closing, the Prevailing Bidder shall take title to and possession of the respective 363 Assets free and clear of all Claims of any kind or nature whatsoever, with all such Claims to attach to the cash proceeds received by the Debtors' estates that are ultimately attributable to the property against or in which such Claims are asserted, subject to the terms of such Claims with the same validity, force, and effect, and in the same order of priority, which such Claims now have against the 363 Assets or their proceeds, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

5.    **Valid Transfer**.  Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Trustee is authorized and directed to transfer the 363 Assets in accordance with the terms of the APA.  As of the Closing: (i) the Sale to the Prevailing Bidder pursuant to the APA effects a legal, valid, enforceable, and effective sale and transfer of the 363 Assets to the Prevailing Bidder, and shall vest the Prevailing Bidder with all right, title, and interest to such 363 Assets free and clear of all Claims; (ii) the APA and the instruments contemplated thereby shall be enforceable against and binding upon the Prevailing Bidder, the Debtors, the Debtors' estates, and not subject to rejection or avoidance by the Debtors, the Debtors' estates, or any subsequently appointed chapter 11 or chapter 7 trustee of the Debtors and their estates; and (iii) the Sale to the Prevailing Bidder pursuant to the APA shall be free and clear of all Claims, with all such Claims to attach to the proceeds of the Sale in the order of their priority and with the same validity, force, and effect which they now have against the 363 Assets, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

6.    This Sale Order: (i) shall be effective as a determination that, as of the Closing: (a) no Claims relating to the 363 Assets will be assertable against the Prevailing Bidder, their affiliates, successors, or assigns or any of their respective 363 Assets (including the 363 Assets), (b) the 363 Assets shall have been transferred to the Prevailing Bidder free and clear of all Claims, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, national and international registrars of deeds, administrative agencies, secretaries of state, federal and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

7.    If any person or entity that has filed financing statements, liens, or other documents or agreements evidencing Claims against or in Debtors' estates or the 363 Assets shall not have delivered to the Prevailing Bidder prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests that the person or entity has with respect to Debtors, their estates, the 363 Assets, or otherwise, then only with regard to 363 Assets that are purchased by the Prevailing Bidder pursuant to the APA and this Sale Order: (i) the Trustee is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the 363 Assets; and (ii) the Prevailing Bidder are hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the applicable 363 Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

8.    All persons or entities in possession of some or all of the 363 Assets are directed to surrender possession of such 363 Assets to the Prevailing Bidder or their respective designees at the time of the Closing of the Sale.

9.    Following the Closing, no holder of any Claim shall interfere with the Prevailing Bidder' title to or use and enjoyment of the 363 Assets based on or related to any such Claim, or based on any actions Trustee may take in Debtors' Chapter 11 Cases, or in the event of a conversion of the case to a case under any other chapter of the Bankruptcy Code, any such actions in that case.

10.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Trustee and Debtors' estates to transfer the 363 Assets to the Prevailing Bidder in accordance with the APA and this Sale Order.

11.     To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the 363 Assets sold, transferred, or conveyed to the Prevailing Bidder on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale contemplated by the APA.

12.     **General Assignment**.  On the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Prevailing Bidder of Debtors' interests in the 363 Assets as set forth in the APA. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale to the Prevailing Bidder pursuant to the APA.

13.     **Injunction**.  Except as expressly permitted by the APA or by this Sale Order, all persons and entities, including, but not limited to, Debtors' employees, former employees, all debt security holders, equity security holders, administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, lessors, trade creditors, and all other creditors, holding Claims of any kind or nature whatsoever against Debtors or the 363 Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, such 363 Assets or with respect to any Claims arising out of or related to the 363 Assets, shall be and hereby are forever barred, estopped, and permanently enjoined from commencing, prosecuting, or continuing in any manner any action or other proceeding of any kind against the Prevailing Bidder, their property, their successors and assigns, their affiliates, or such 363 Assets. Notwithstanding the foregoing, nothing herein shall prevent: (i) the Debtors or the Trustee from pursuing an action against the Prevailing Bidder arising under the APA or the related documents;

or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state, and local officials from properly exercising their regulatory powers.

14.    **Release of Claims**.  Subject to Paragraphs 4 and 33 of this Sale Order, this Sale Order shall be effective as a determination that, on the Closing, all Claims of any kind or nature whatsoever existing as to the 363 Assets prior to the Closing have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effectuated.

15.    **Direction to Release Claims**.  On the Closing and subject to the Claims attaching to the cash proceeds of the Sale as provided for in Paragraphs 4 and 33 of this Sale Order, each of Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release the Claims in the 363 Assets, if any, as such Claims may have been recorded or may otherwise exist.

16.    **No Successor Liability**.  Neither the Prevailing Bidder nor its affiliates, successors, nor assigns shall be deemed, as a result of any action taken in connection with the purchase of the 363 Assets, to: (i) be successors to any of the Debtors or their estates; (ii) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  The transfer of the 363 Assets to the Prevailing Bidder shall not result in: (i) the Prevailing Bidder, its affiliates, members, or shareholders or the 363 Assets, having any liability or responsibility for any claim against the Debtors or against any insider of the Debtors; (ii) the Prevailing Bidder, their affiliates, members, or shareholders or the 363 Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Claim; or (iii) the Prevailing Bidder, its affiliates, members, or shareholders or the 363 Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the APA and this Sale Order.

17.    Without limiting the effect or scope of the foregoing and except as expressly provided in the APA, the Prevailing Bidder shall have no successor or vicarious liability of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger or substantial continuity, whether known or

unknown as of the Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to Debtors or any obligations of Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes or other government fees, contributions or surcharges arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the 363 Assets prior to the Closing, under the laws of the United States, any state, territory or possession thereof or the State of Arizona.

18. **Assumption and Assignment of the Assumed Contracts.** Under Sections 105(a) and 365, the Debtors' assumption and assignment of the Assumed Contracts to the Prevailing Bidder free and clear of all Claims pursuant to the terms set forth in the Plan and APA is hereby approved, and the requirements of Sections 365(b)(1), 365(b)(3) and 365(f)(2) with respect thereto are hereby deemed satisfied. Each Counterparty to an Assumed Contract is hereby forever barred, and estopped from raising or asserting against Debtors, or the Prevailing Bidder, or the property of either, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Assumed Contract existing as of the Closing or arising by reason of the Closing.

19. There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Prevailing Bidder or Debtors as a result of the assumption and assignment of the Assumed Contracts.

20. The payment of the Cure Amounts set by the Plan shall be in full satisfaction of any and all defaults under the Assumed Contracts, whether monetary or non-monetary, and upon payment of the Cure Amounts, any default of Debtors there under shall have been irrevocably cured.

21. Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition, on renewal or extension or modify any term or condition upon the

assignment of such Assumed Contract, are either deemed satisfied or constitute unenforceable anti-assignment provisions that are void and of no force and effect.

22.    The Trustee and Prevailing Bidder has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.   All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Prevailing Bidder of the Assumed Contracts have been satisfied.

23.    Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code: (i) the Prevailing Bidder shall be fully and irrevocably vested with all right, title, and interest of Trustee and Debtors under the applicable Assumed Contracts; and (ii) the Debtors and their estates shall be relieved from any liability for any breach of such Assumed Contracts occurring thereafter pursuant to Section 365(k) of the Bankruptcy Code.

24.    To the extent any governmental license or permit is necessary for the operation of the business is determined not to be an executory contract assumable and assignable under Section 365 of the Bankruptcy Code, the Prevailing Bidder shall apply for and obtain any necessary licenses or permits promptly after the Closing and to the extent permitted by law such licenses or permits of Debtors shall remain in place for the Prevailing Bidder's benefit until new licenses and permits are obtained.   The Debtors and their estates shall have no liability under such licenses or permits after the Closing.

25.    Paragraphs 18 through 23 of this Sale Order are subject to and conditioned upon the occurrence of the Closing.

26.    **Cure**.   Pursuant to the Plan, the Trustee shall pay all Cure Amounts relative to the Assumed Contracts to be assigned on the Closing in accordance with the terms of the APA and neither Debtors nor their estates shall have any obligation to pay, or any liability for, any such Cure Amounts relating to any Assumed Contracts upon the Closing.   The payment of the applicable Cure Amounts (if any) shall: (i) effect a cure of all defaults existing thereunder as of the Closing; (ii) compensate for any actual pecuniary loss to such non-Debtors party resulting from such

default; and (iii) together with the assumption of the Assumed Contracts by Debtors, constitute adequate assurance of future performance thereof.  Except as set forth in this Sale Order, the non-Debtor party to each Assumed Contract that is to be assigned on the Closing is forever barred from asserting against Debtors, the Prevailing Bidder and any of its affiliates, or any of the 363 Assets: (i) any fee, default, breach, claim, or pecuniary loss arising under or related to the Assumed Contract existing as of the Closing or arising by reason of the closing; and (ii) any objection to the assumption and assignment of such non-Debtor party's Assumed Contract.

27.    **Binding Effect of Order**.  This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the 363 Assets.

28.    **Binding on Successors**.  The terms and provisions of the APA and this Sale Order shall be binding in all respects upon Trustee, Debtors, their estates, all creditors of (whether known or unknown) and holders of equity interests in, the Debtors, the Prevailing Bidder and its affiliates, successors and assigns, and any affected third parties, including, but not limited to, all persons asserting Claims in the 363 Assets and all non-Debtor counterparties to the Assumed Contracts, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.  This Order and the APA shall inure to the benefit of Debtors, their estates, the creditors, the Prevailing Bidder, and their respective successors and assigns.

29.    **Section 363(n) of the Bankruptcy Code.**  The consideration provided by the Prevailing Bidder for the 363 Assets under the APA is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

30.    **Good Faith**.  The Sale to the Prevailing Bidder is undertaken by the Prevailing Bidder without collusion and in good faith, as that term is used in Section 363(m) of the

Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts) with the Prevailing Bidder, unless such authorization is duly stayed pending such appeal. The Prevailing Bidder is a good faith purchaser of the 363 Assets, and entitled to all of the benefits and protections afforded by Section 363(m) of the Bankruptcy Code.

31. **Fair Consideration**. The consideration provided by the Prevailing Bidder to Debtors pursuant to the APA for its purchase of the 363 Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Fraudulent Conveyance Act.

32. **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the APA, and all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to: (i) compel delivery of the 363 Assets to the Prevailing Bidder; (ii) compel delivery of the purchase price under the APA or performance of other obligations thereunder owed to Debtors; (iii) interpret, implement, and enforce the provisions of this Sale Order and the APA; (iv) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; and (v) protect the Prevailing Bidder against any Claims in the Debtors or the 363 Assets of any kind or nature whatsoever attaching to the proceeds of the Sale.

33. **Sale Proceeds**. Any and all valid and perfected Claims in 363 Assets of the Debtors shall attach to any cash proceeds of such 363 Assets immediately upon receipt of such proceeds by the Trustee (or any party acting on the Trustee's behalf) in the order of priority, and with the same validity, force, and effect which they now have against such 363 Assets, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto, and, in addition to any limitations on the use of such cash proceeds pursuant to any provision of this Sale Order.

34. **Non-Material Modifications**. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtors' estates.

35. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in the entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Prevailing Bid and the APA (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

36. **Acceptance of Documents.** Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

37. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof. Time is of the essence in closing the Sale contemplated herein, and the Trustee and the Prevailing Bidder intend to close the Sale as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

38. **Cooperation with Administration of the Estates**. The Trustee will have reasonable access, on a confidential basis, to copies of the books and records constituting 363 Assets that are required to enable its tax accountants to prepare tax filings or reports regarding ownership of the 363 Assets prior to the Closing or the conduct of the business prior to the Closing. The Prevailing Bidder shall cooperate with all reasonable requests of the Trustee and provide any information or documentation reasonably necessary to enable the Trustee to administer Debtors' estates and to reconcile claims. Except for the foregoing, the Prevailing Bidder shall not be liable

for any costs, fees and/or expenses associated with the administration of Debtors' estates and/or reconciliation of claims, including, but not limited to: (i) any administrative fees and expenses, including, without limitation, allowed administrative expenses under Section 503(b) of the Bankruptcy Code; (ii) any Sale costs, fees, and expenses in connection with Trustee's obligations under this Sale Order; and (iii) any rejection damages claimed in Debtors' Chapter 11 Cases.

39.    **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale to the Prevailing Bidder including, such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in the Prevailing Bidder its right, title, and interest in and to the 363 Assets.

40.    **Consummation of Sales; Injunction**.  Upon entry of this Sale Order, no further corporate action of Debtors or approval of any Debtors' equity security holders shall be required to authorize Trustee to consummate the Sale contemplated by the APA.  Except as expressly permitted by this Sale Order, all holders of claims against or equity interests in Debtors shall be and hereby are forever barred, estopped, and enjoined from commencing, prosecuting, or continuing in any manner any action or other proceeding of any kind against the Trustee or Debtors' employees, officers, directors, advisors, or attorneys on account of or related to the Sale to the Prevailing Bidder.  Nothing herein shall prevent any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials from properly exercising their regulatory powers.

**IT IS SO ORDERED.**

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PREPARED AND SUBMITTED:

GARMAN TURNER GORDON LLP

By: */s/ Mary Langsner*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, PH.D
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Chapter 11 Trustee*

1

## **LR 9021 CERTIFICATION**

2

In accordance with LR 9021, counsel submitting this document certifies that the order

3

accurately reflects the court's ruling and that (check one):

4

5

☒    The court waived the requirement of approval under LR 9021(b)(1).

6

☐    No party appeared at the hearing or filed an objection to the motion.

7

☐    I have delivered a copy of this proposed order to all counsel who appeared

8

at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the Order.

9

10

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy

11

of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

12

13

14

###

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of September 19, 2025, is entered into between Michael W. Carmel, solely in his capacity as the Trustee of the Chapter 11 Bankruptcy Estates of NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico (the "**Seller**"), and Justin Pulliam, an individual, or his assignee ("**Buyer**" or "**Purchaser**"). Capitalized terms used in this Agreement have the meanings given to such terms herein.

## RECITALS

**WHEREAS,** on or about January 22, 2025 ("**Petition Date**"), NuMale Corp. filed a voluntary petition ("**Petition**") for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101, et seq. ("**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Nevada ("**Bankruptcy Court**"), commencing bankruptcy case no. 25-10341 ("**Bankruptcy Case**"), and continues to manage its property as debtor and debtors-out-of-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico, operate men's health clinics within the United States (the "**Business**");

**WHEREAS,** concurrently with NuMale Corp's petition, each of Feliciano NuMale (Case No. 25-10342), NuMedical SC (No. 25-10343), NuMale Colorado (Case No. 25-10344), NuMale Nebraska (Case No. 25-10346), NuMale Florida (Case No. 25-10345), and NuMale New Mexico (Case No. 25-10347) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**WHEREAS,** on or about April 7, 2025, Seller was appointed as Chapter 11 Bankruptcy Trustee in the Bankruptcy Case.

**WHEREAS,** on or about April 28, 2025, a Final Order Approving the Motion for Order Directing the Joint Administration of Debtor's Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(B) was entered in the Bankruptcy Case.  Such order caused Case Nos. 25-10342, 25-10343, 25-10344, 25-10346, 25-10345, and 25-10347 to be jointly administered under the Bankruptcy Case (collectively, the "**Estates**").

**WHEREAS**, on August 1, 2025, Seller filed on behalf of the Joint Plan of Reorganization [ECF 434] ("**Plan**") in the Bankruptcy Case, which Plan provided for the sale of the 363 Assets and certain provisions related to the sale of 363 Assets provided for herein.[1]

**WHEREAS**, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, substantially all the assets of the Business defined in the Plan as the 363 Assets, subject to the terms and conditions set forth herein;

---

[1] Terms used but not defined herein are used as defined in the Plan.

1

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

**Section 1.01   Purchase and Sale of the 363 Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, convey, assign, transfer, and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title, and interest in, to, and under all of the 363 Assets described in Section 1.1.1 of the Plan, which includes all tangible and intangible assets, properties, and rights of every kind and nature and wherever located, which relate to, or are used or held for use in connection with, the Business except for the Excluded Assets set forth in Section 1.02 of this Agreement (collectively, the "**363 Assets**"), free and clear of all claims, liens, encumbrances and interests to the fullest extent contemplated by section 363(f) of the Bankruptcy Code, including the following:

(a)     all accounts receivable held by Seller ("**Accounts Receivable**");

(b)     all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts, and other inventories;

(c)     all Contracts (the "**Assumed Contracts**") set forth on Schedule 1.01(c). The term "**Contracts**" means all contracts, leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures, and all other agreements, commitments, and legally binding arrangements, whether written or oral;

(d)     all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property;

(e)     all intellectual property and industrial property rights and assets, and all rights, interests, and protections that are associated with, similar to, or required for the exercise of, any of the foregoing, whether registered or unregistered, including any and all trademarks, service marks, trade names, brand names, logos, trade dress, design rights, works of authorship, expressions, designs, copyrights, websites, software, trade secrets, and patents, as well as any royalties, fees, income, payments, and other proceeds with respect to any and all of the foregoing;

(f)     all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums, and fees (including any such item relating to the payment of Taxes);

(g)     all of Seller's rights under warranties, indemnities, and all similar rights against third parties to the extent related to any 363 Assets that are not an Excluded Asset;

(h)     all insurance benefits, including rights and proceeds, arising from or relating to the Business or the 363 Assets;

(i)      all ownership interests in any corporation, limited liability company, or other business entity owned by the Business;

(j)      originals or, where not available, copies, of all books and records, including books of account, ledgers, and general, financial, and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records, and data (including all correspondence with any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any arbitrator, court, or tribunal of competent jurisdiction (collectively, "**Governmental Authority**"), sales material and records, strategic plans and marketing, and promotional surveys, material, and research; and

(k)      all goodwill and the going concern value of the 363 Assets and the Business.

**Section 1.02    Excluded Assets.** For the avoidance of doubt, the following assets, which are also excluded in Section 1.1.1 of the Plan, are not being sold to Buyer (the "**Excluded Assets**":

(a)      Debtor's 2019 Ford F150;

(b)      The proceeds of the sale contemplated by this Agreement;

(c)      The equity interests in each of the Debtors; and

(d)      The Distributable Assets (as defined in the Plan), including:

(i)      all Litigation Claims (expressly including the Litigation Claims identified in Schedule 1.1.82 of the Plan);

(ii)      all claims, rights, and recoveries available with respect to the Liability Insurance Policies;

(iii)      the Beazley Settlement Payment;

(iv)      any assets transferred to the Liquidation Trust; and

(v)      the New Value Contribution.

**Section 1.03   Purchase Price.** The aggregate purchase price for the 363 Assets shall be THREE HUNDRED THOUSAND DOLLARS ($300,000.00) (the "**Purchase Price**"). Buyer may pay the Purchase Price by way of a Credit Bid of Purchaser's Allowed Secured Claim in the Bankruptcy Case.

**Section 1.04   Allocation of Purchase Price.** The Purchase Price shall be allocated among the 363 Assets for all purposes (including Tax and financial accounting) as shown on the allocation schedule to be provided by Buyer in accordance with this provision (the "**Allocation Schedule**"). The Allocation Schedule shall be prepared in accordance with Section 1060 of the Internal

3

Revenue Code of 1986, as amended, and provided by Buyer to Seller within 45 days following the Closing. Buyer and Seller shall file all returns, declarations, reports, information returns and statements, and other documents relating to Taxes (including amended returns and claims for refund) ("**Tax Returns**") in a manner consistent with the Allocation Schedule.

## ARTICLE II
## CLOSING

**Section 2.01   Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of GARMAN TURNER GORDON LLP, 7251 Amigo Street, Suite 210, Las Vegas, NV 89119 or remotely by exchange of documents and signatures (or their electronic counterparts), at 1:30 p.m. prevailing Clark County, Nevada time, five (5) Business Days after all of the conditions to Closing set forth in ARTICLE VI are either satisfied or waived, or at such other time or place or in such other manner as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date**."

**Section 2.02   Closing Deliverables.**

(a)     At the Closing, Seller shall deliver to Buyer the following:

(i)     All documents and instruments necessary or desirable to convey the 363 Assets to Buyer, in form and substance reasonably acceptable to Buyer, all duly executed by Seller and duly acknowledged, where applicable, including without limitation a bill of sale and any necessary assignment or assumption agreements;

(ii)     such other customary instruments of transfer or assumption, filings, or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to the transactions contemplated by this Agreement; and

(iii)     a final and non-appealable Sale Order entered by the Bankruptcy Court, containing such provisions as Buyer may reasonably require, conveying the 363 Assets to Buyer free and clear of all claims, liens, encumbrances and liens to the fullest extent contemplated by 11 U.S.C. 363(f).

(b)     At the Closing, Buyer shall deliver to Seller the following:

(i)     the Purchase Price, unless such Purchase Price is paid solely by way of Buyer's credit bid of Purchaser's Allowed Secured Claim; and

(ii)     executed counterparts of the documents and instruments referenced in Section 2.02(a)(i) of this Agreement, as applicable.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this ARTICLE III are true and correct as of the date hereof.

**Section 3.01    Authority of Seller.** Seller has been appointed to serve as trustee.  Subject to the Sale Order (as defined below) becoming final and non-appealable by the time of Closing, Seller has full power and authority to enter into this Agreement and the other transaction documents to which Seller is a party, to carry out their obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The "**Sale Order**" means an order (or orders) of the Bankruptcy Court in form and substance reasonably acceptable to Buyer, approving this Agreement, the transaction documents, and all terms and conditions thereof, approving the conveyance of the 363 Assets from Seller to Buyer free and clear of all claims, liens, encumbrances and liens to the fullest extent contemplated by section 363(f) of the Bankruptcy Code, and approving and authorizing Seller to consummate the transactions contemplated by this Agreement pursuant to, among others, Sections 363 and 365 of the Bankruptcy Code. The execution and delivery by Seller of this Agreement and any other transaction document to which Seller is a party, the performance by Seller of its obligations hereunder and thereunder, and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate, board, and shareholder action on the part of Seller. Subject to the Sale Order becoming final and non-appealable by the time of Closing, this Agreement and the transaction documents constitute legal, valid, and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

**Section 3.02   No Conflicts or Consents.** As set forth in the Sale Order, the execution, delivery, and performance by Seller of this Agreement and the other transaction documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the certificate of incorporation, by-laws, or other governing documents of Seller; (b) violate or conflict with any provision of any statute, law, ordinance, regulation, rule, code, constitution, treaty, common law, other requirement, or rule of law of any Governmental Authority (collectively, "**Law**") or any order, writ, judgment, injunction, decree, stipulation, determination, penalty, or award entered by or with any Governmental Authority ("**Governmental Order**") applicable to Seller, the Business, or the 363 Assets; (c) require the consent, notice, declaration, or filing with or other action by any individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity ("**Person**") or require any permit, license, or Governmental Order; (d) violate or conflict with, result in the acceleration of, or create in any party the right to accelerate, terminate, modify, or cancel any Contract to which Seller is a party or by which Seller or the Business is bound or to which any of the 363 Assets are subject (including any Assigned Contract); or (e) result in the creation or imposition of any charge, claim, pledge, equitable interest, lien, security interest, restriction of any kind, or other encumbrance ("**Encumbrance**") on the 363 Assets.

**Section 3.03   As-Is, Where-As.**   Seller makes no representations or warranties with respect to the title, condition or completeness of the 363 Assets. The sale of the 363 Assets shall be on an on an "as is," "where is" and "with all faults" basis without representation or warranty of

5

any kind, either express or implied, including, but not limited to, any warranties as to merchantability, fitness, or usability. Seller shall seek and obtain approval of the Bankruptcy Court of the sale of the 363 Assets to Buyer free and clear of all claims, liens, encumbrances, and interests to the fullest extent contemplated by section 363(f) of the Bankruptcy Code.

**Section 3.04    Taxes.** All Taxes due and owing by Seller as of the Closing Date have been, or will be, timely paid. All Tax Returns with respect to the Business required to be filed by Seller for any tax periods prior to Closing have been, or will be, timely filed. The term "**Taxes**" means all federal, state, local, foreign, and other income, gross receipts, sales, use, production, ad valorem, transfer, documentary, franchise, registration, profits, license, withholding, payroll, employment, unemployment, excise, severance, stamp, occupation, premium, property (real or personal), customs, duties, or other taxes, fees, assessments, or charges of any kind whatsoever, together with any interest, additions, or penalties with respect thereto.

**Section 3.05    Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other transaction document based upon arrangements made by or on behalf of Seller.

# ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this ARTICLE IV are true and correct as of the date hereof.

**Section 4.01    Organization and Authority of Buyer.** Buyer is an individual. Buyer has full power and authority to enter into this Agreement and the other transaction documents to which Buyer is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any other transaction document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder, and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by Buyer. This Agreement and the transaction documents constitute legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms. In the event that Buyer assigns its rights hereunder to a third party, Buyer shall disclose to the Seller and the Bankruptcy Court the identity of the assignee and its owners prior to the hearing before the Bankruptcy Court seeking to approve this Agreement.

**Section 4.02    No Conflicts; Consents.** The execution, delivery, and performance by Buyer of this Agreement and the other transaction documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the certificate of incorporation, by-laws, or other organizational documents of Buyer; (b) violate or conflict with any provision of any Law or Governmental Order applicable to Buyer; or (c) require the consent, notice, declaration, or filing with or other action by any Person or require any permit, license, or Governmental Order.

**Section 4.03   Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other transaction document based upon arrangements made by or on behalf of Buyer.

**Section 4.04   Legal Proceedings.** There are no Actions pending or, to Buyer's knowledge, threatened against or by Buyer that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

**Section 4.05   As-Is, Where-As.** Buyer understands, acknowledges, and agrees that he is acquiring the 363 Assets on an "as is," "where is" and "with all faults" basis without representation or warranty of any kind, either express or implied, including, but not limited to, any warranties as to merchantability, fitness, or usability.

**ARTICLE V**
**COVENANTS**

**Section 5.01   Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer, or similar Laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the 363 Assets to Buyer. Any liabilities arising out of the failure of Seller to comply with the requirements and provisions of any bulk sales, bulk transfer, or similar Laws of any jurisdiction shall be treated as excluded.

**Section 5.02   Receivables.** From and after the Closing, if Seller receives or collects any funds relating to any Accounts Receivable or any other Purchased Asset, Seller shall remit such funds to Buyer within five (5) business days after its receipt thereof.

**Section 5.03   Closing Conditions.** From the date hereof until the Closing, Seller and Buyer shall use their respective commercially reasonable efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in ARTICLE VI hereof; provided, however, that Seller shall not be required to take any actions that are not authorized by the Bankruptcy Code without Bankruptcy Court approval or otherwise.

**Section 5.04   Transfer Taxes.** All sales, use, registration, and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other transaction documents, if any, shall be borne and paid by Seller when due. Seller shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Buyer shall cooperate with respect thereto as necessary).

**Section 5.05   Employees.**

(a)      All employees of Seller may apply for employment by Buyer.  Buyer has no obligation to hire or make offers of employment to the employees of Seller; Buyer may make offers of employment to active employees of Seller selected by Buyer in its sole discretion and on terms and conditions (including compensation and benefits) established by Buyer in its sole discretion.

7

(b)     Buyer shall have no obligations whatsoever for, any compensation or other amounts payable to any current or former employee, officer, director, independent contractor or consultant of the Business, including, without limitation, hourly pay, commission, bonus, salary, accrued vacation, fringe, pension or profit-sharing benefits or severance pay for any period relating to the service with Seller at any time on or prior to the Closing Date.

(c)     Seller shall remain solely responsible for the satisfaction of all claims for medical, dental, life insurance, health accident or disability benefits brought by or in respect of current or former employees, officers, directors, independent contractors or consultants of the Business or the spouses, dependents or beneficiaries thereof, which claims relate to events occurring on or prior to the Closing Date. Seller also shall remain solely responsible for all worker's compensation claims of any current or former employees, officers, directors, independent contractors or consultants of the Business which relate to events occurring on or prior to the Closing Date. Seller shall pay, or cause to be paid, all such amounts to the appropriate persons as and when due.

**Section 5.06   Bankruptcy Matters.** Seller acknowledges that a material inducement to Buyer's agreement to enter into this Agreement and act as a stalking horse bidder in the Bankruptcy Case is Seller's agreement to conduct the sale of the 363 Assets in the manner set forth in the Sales Procedures Order, to seek approval of the Sale Procedures Order (including the approval of the form of this Agreement), and to seek approval of the Sale Motion in an expeditious manner consistent with the requirements of the Bankruptcy Code. Accordingly, Seller agrees as follows:

(a)     Not later than September 23, 2025, Seller shall file with the Bankruptcy Court a motion to approve this Agreement and the transactions contemplated by this Agreement ("**Sale Motion**"), which Sale Motion shall seek (i) entry by the Bankruptcy Court of an order setting forth the procedures pursuant to which the sale contemplated by this Agreement shall be conducted, including without limitation terms governing the minimum overbid, bid increments, 363 Stalking Horse Bid Protections, and requirements for overbidding ("**Sale Procedures Order**"); (ii) pursuant to Section 363(f) of the Bankruptcy Code, approval of this Agreement and Seller's performance under this Agreement, including the selling of the 363 Assets free and clear of liens, claims, interests, and encumbrances, subject to the terms of, and in accordance with, the Sales Procedures Order; (iii) pursuant to Section 363(m) of the Bankruptcy Code, a finding that Buyer is purchasing the 363 Assets in good faith; (iii) pursuant to Section 365 of the Bankruptcy Code, authorization of Seller assigning the Assumed Contracts to Buyer.

(b)     After entry of the Sales Procedures Order by the Bankruptcy Court, Seller shall conduct the sale of the 363 Assets in accordance with the Sale Procedures Order, as approved by the Bankruptcy Court.

(c)     If Buyer is not deemed to be the prevailing bidder at any auction for the 363 Assets or the Bankruptcy Court approves the sale of substantially all of the 363 Assets to a purchaser other than Buyer, Seller shall pay, upon consummation of such other transaction, to Buyer the 363 Stalking Horse Bid Protections, as set forth in the Plan.  The 363 Stalking Horse Bid Protections shall be paid from the cash proceeds of the transaction(s) pursuant to the Sale Order and Seller's obligation to pay the 363 Stalking Horse Bid Protections shall constitute an administrative expense of Seller under Section 503 of the Bankruptcy Code.

(d)     Seller will provide Buyer with a reasonable opportunity to review and comment upon all motions, applications and supporting papers prepared by Seller relating to Buyer, this Agreement or any of the transactions contemplated by this Agreement prior to the filing thereof in the Bankruptcy Case. The Sale Motion, Sale Procedures Order, any motion seeking approval of this Agreement, and the Sale Order must be in form and substance reasonably acceptable to Buyer.

**Section 5.07    Assumption of Executory Contracts and Leases**. In addition to the Sale Motion, or as may be incorporated as a part thereof, Seller shall timely file notices and/or motions and take such other actions as may be necessary to assume and assign to the Buyer the Assumed Contracts. Buyer shall not be responsible for payment of any cure amounts relating to the Assumed Contracts.

**Section 5.08    Maintenance of Business.** At all times before the Closing, Seller will exercise commercially reasonable efforts to continue and maintain the Business for the benefit of Buyer, including without limitation relationships with lessors, employees, regulatory authorities, licensors, customers, suppliers and others having material business relationships with Seller; provided, however, that Seller may terminate any relationships after consultation with Buyer. Seller will in good faith encourage such Persons to continue their relationship with Buyer for the benefit of the Business following the Closing Date. Seller shall not knowingly or recklessly take any action that interferes with the business of Buyer to be engaged in after the Closing.

**Section 5.09    Notice of Developments.**  Seller shall promptly notify Buyer of, and furnish Buyer any information it may reasonably request with respect to, any event that would reasonably be expected to cause any of the conditions set forth in ARTICLE VI not to be fulfilled by the Outside Date.

**Section 5.10    Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective affiliates to, execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the other transaction documents.

**ARTICLE VI**
**CLOSING CONDITIONS**

**Section 6.01    Conditions to Obligations of Buyer.** The obligations of Buyer to consummate the transactions contemplated in this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to the Closing, of each of the following conditions:

(a)     Each of the representations and warranties of Seller set forth in Article IV of this Agreement shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

(b)     Seller shall have duly performed and complied with all agreements, covenants and conditions required by this Agreement and each of the other transaction documents to be performed or complied with by it prior to or on the Closing Date.

9

(c)     No injunction or restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any material transaction contemplated hereby.

(d)     Seller shall have delivered to Buyer duly executed counterparts to the transaction documents (other than this Agreement) and such other documents and deliveries set forth in Section 2.02(a) of this Agreement.

(e)     The Sale Procedures Order shall have been entered and shall have become final and non-appealable, unless waived by Buyer.

(f)     The Sale Order shall have been entered in the Bankruptcy Case on or before October 15, 2025, and shall have become final and non-appealable.

(g)     All cure obligations (pursuant to Section 365 of the Bankruptcy Code) with respect to the Assumed Contracts shall have been paid in accordance with the Plan.

(h)     Seller shall have delivered to Buyer such other documents or instruments as Buyer may reasonably request in order to consummate the transactions contemplated under this Agreement.

**Section 6.02  Conditions to Obligations of Seller.** The obligations of Seller to consummate the transactions contemplated in this Agreement shall be subject to the fulfillment or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(a)     Each of the representations and warranties of Seller set forth in Article IV of this Agreement shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

(b)     Buyer shall have duly performed and complied with all agreements, covenants and conditions required by this Agreement and each of the other transaction documents to be performed or complied with by it prior to or on the Closing Date.

(c)     No injunction or restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any material transaction contemplated hereby.

(d)     Buyer shall have delivered to Seller duly executed counterparts to the transaction documents (other than this Agreement) and such other documents and deliveries set forth in Section 2.02(b) of this Agreement.

(e)     The Sale Procedures Order and the Sale Order shall have been entered in the Bankruptcy Case on or before October 15, 2025, and shall have become final and non-appealable.

(f)     Buyer shall have delivered to Seller such other documents or instruments as Seller reasonably requests and are reasonably necessary to consummate the transactions contemplated under this Agreement.

10

## ARTICLE VII
## TERMINATION

**Section 7.01    Termination.** This Agreement may be terminated at any time prior to the Closing:

(a)    by mutual written consent of Seller and Buyer;

(b)    by Buyer or Seller by written notice if:

(i)    there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made pursuant to this Agreement that would give rise to the failure of any of the conditions specified in ARTICLE VI and such breach, inaccuracy or failure has not been cured within five days of receipt of written notice of such breach;

(ii)    the Closing shall not have occurred by November 15, 2025 (the "**Outside Date**");

(iii)    the Seller has not filed the Sale Motion on or before September 23, 2025;

(iv)    the Bankruptcy Court has not entered the Sale Order on or before October 15, 2025;

(v)    the Bankruptcy Court has approved a transaction by Seller with another party that would prevent the consummation of the transactions contemplated under this Agreement with Buyer.

**Section 7.02    Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article, this Agreement shall forthwith become void and there shall be no liability on the part of any party hereto, except as set forth in this ARTICLE VII and Section VIII of this Agreement.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.01    Expenses.** Except as set forth in the Plan and Bid Procedures Order, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 8.02    Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient, or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 8.02):

| | |
|---|---|
| **If to Seller:** | Michael W. Carmel<br>Law Offices of Michael W. Carmel, Ltd.<br>89 East Columbus Ave<br>Phoenix, Arizona, 85012-4965<br>Email: Michael@mcarmellaw.com |
| with a copy to: | GARMAN TURNER GORDON LLP<br>7251 Amigo Street, Suite 210<br>Las Vegas, NV 89119<br>Email: tgray@gtg.legal<br>Attention: Talitha Gray Kozlowski, Esq. |
| **If to Buyer:** | Justin Pulliam |
| with a copy to: | Andersen Beede Weisenmiller<br>3199 E Warm Springs Road, Ste 400<br>Las Vegas, NV, 89120<br>Email: ryan@abwfirm.com<br>Attention: Ryan A. Andersen, Esq. |

**Section 8.03   Interpretation; Headings.** This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 8.04   Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

**Section 8.05   Entire Agreement.** This Agreement and the other transaction documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the other transaction documents, the Exhibits, or the statements in the body of this Agreement will control.

**Section 8.06   Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Permitted assigns includes any assignee(s) of Buyer of the right to purchase the 363 Assets. Except

for permitted assigns, neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. Any purported assignment in violation of this Section shall be null and void. No assignment shall relieve the assigning party of any of its obligations hereunder.

Section 8.07 **Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

Section 8.08 **Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of Nevada without giving effect to any choice or conflict of law provision or rule (whether of the State of Nevada or any other jurisdiction). Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other transaction documents, or the transactions contemplated hereby or thereby shall be instituted in the Bankruptcy Court until such time as the Bankruptcy Case is closed and thereafter shall be instituted in the federal courts of the United States of America or the courts of the State of Nevada in each case located in Clark County, Nevada, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute.

(b) EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS AND SCHEDULES ATTACHED TO THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT: (I) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION; (II) EACH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (III) EACH PARTY MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY; AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed

copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their duly authorized representatives.

**SELLER**

Michael W Carmel as Trustee of the Chapter 11 Bankruptcy Estates of NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico

By_____
Michael W. Carmel, solely in his capacity as the Chapter 11 Trustee

**BUYER**

Justin Pulliam

By_____
Justin Pulliam

15

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their duly authorized representatives.

**SELLER**

Michael W Carmel as Trustee of the Chapter 11 Bankruptcy Estates of NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico

By _____

Michael W. Carmel, solely in his capacity as the Chapter 11 Trustee

**BUYER**

Justin Pulliam

By_____
Justin Pulliam

15

**Schedule 1.01(c)**

**Assumed Contracts**

| Contract Counterparty |
| --- |
| Apple iCloud |
| Gmail |
| GoDaddy, Inc. |
| Insurance Zizzle |
| Microsoft 365 (OneDrive) |
| My Bodysite |
| MyMedLeads/Texting System |
| Prospect Rainbow, LLC (Innovative Real Estate Strategies) |
| 444 Regency Parkway LLC (Gordman Lake Regency, LLC) |
| Wyoming Office Park, LLC (Brunacini Companies) |
| Reliant Capital (New Lane Finance) |
| Tampa Westshore 500 LLC |