GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Plaintiff Michael W. Carmel,
Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No. 25-10341-NMC |
| NUMALE CORPORATION | Chapter 11 |
| Debtor. | Jointly Administered with: |
| | Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-NMC |
| MICHAEL W. CARMEL, CHAPTER 11 TRUSTEE, | NuMedical SC<br>Case No. 25-10343-NMC |
| Plaintiff, | NuMale Colorado SC<br>Case No. 25-10344-NMC |
| v. | NuMale Florida TB PLLC<br>Case No. 25-10345-NMC |
| PROVENTURE CAPITAL LLC D/B/A TOP TIER CAPITAL, | NuMale Nebraska LLC<br>Case No. 25-10346-NMC |
| Defendant. | NuMale New Mexico SC<br>Case No. 25-10347-NMC |
| | **Adversary No.** |

**COMPLAINT**

Michael Carmel, in his capacity as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of debtors NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale

1

Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC ("Plaintiff") hereby files this complaint ("Complaint")[1] against Proventure Capital LLC d/b/a Top Tier Capital ("Defendant"), and states as follows:

# I.
# PARTIES

1. Plaintiff is the duly appointed Chapter 11 trustee over the bankruptcy estates (collectively, the "Estates") of debtors NuMale Corporation ("NuMale Corp."), Feliciano NuMale Nevada PLLC ("Nevada NuMale"), NuMedical SC ("NuMedical"), NuMale Colorado SC ("Colorado NuMale"), NuMale Florida TB PLLC ("Florida NuMale"), NuMale Nebraska LLC ("Nebraska NuMale"), and NuMale New Mexico SC ("NuMale New Mexico") (altogether, the "Debtors").

2. On January 22, 2025 (the "Petition Date"), *NuMale Corporation* (Case No. 25-10341-nmc), *Feliciano NuMale Nevada PLLC* (Case No. 25-10342-nmc), *NuMedical SC* (Case No. 25-10343-nmc), *NuMale Colorado SC* (Case No. 25-10344-nmc), *NuMale Florida TB PLLC* (Case No. 25-10345-nmc), *NuMale Nebraska LLC* (Case No. 25-10346-nmc), and *NuMale New Mexico SC* (Case No. 25-10347-nmc) each filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases in the United States Bankruptcy Court for the District of Nevada (collectively, the "Chapter 11 Cases").

3. Debtor NuMale Corporation is a Nevada corporation with a principal place of business in Las Vegas, Nevada.

4. Debtor Feliciano NuMale Nevada PLLC is a Nevada professional limited liability company with a principal place of business in Las Vegas, Nevada.

5. Debtor NuMedical SC is a Wisconsin service corporation.

6. Debtor NuMale Nebraska LLC is a Wisconsin limited liability company.

7. Debtor NuMale New Mexico SC is a Wisconsin service corporation.

---

[1] Unless otherwise stated, all references to "Section" herein shall be to Title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "Civil Rule" shall refer to the Federal Rules of Civil Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

8. Debtor NuMale Colorado SC is a Colorado corporation.

9. Debtor NuMale Florida TB PLLC is a Florida professional limited liability company.

10. The Proventure Capital LLC d/b/a Top Tier Capital ("Defendant") is a corporation formed and operating under the laws of the State of Connecticut.

11. On May 28, 2025, Defendant filed various proofs of claim in the Chapter 11 Cases, thereby consenting to the jurisdiction of this Court.

## II.
## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference set forth in Local Rule 1001(b)(1).

13. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (F), (H), (K), and (O).

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtors' Chapter 11 Cases are pending before the Bankruptcy Court.

15. This adversary proceeding relates to the Debtors' Chapter 11 Cases pending in the District of Nevada.

16. Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge cannot, absent consent of the parties, enter final orders or judgment consistent with Article III of the United States Constitution.

## III.
## GENERAL ALLEGATIONS

17. On January 22, 2025, the Debtors commenced these Chapter 11 Cases.

18. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 130.

19. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or*

*Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

20. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

21. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

22. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

23. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

24. Immediately upon his appointment the Trustee began investigating the assets and liabilities of the Debtors and their Estates.

25. On the Petition Date, Debtors Nevada NuMale, NuMedical, Colorado NuMale, Florida NuMale, Nebraska NuMale, and New Mexico NuMale owned and/or operated medical clinics.

26. On the Petition Date and in the years leading up to the Chapter 11 Cases, Debtors were insolvent. Unable to pay their bills, with limited assets and significant liabilities, beginning in 2020, the Debtors began incurring significant debt that far exceeded their assets.

27. The Trustee's investigations have revealed: (i) from April 2020 through February 2021, the Debtors collectively received over $1.098 million in paycheck protection loans that were ultimately forgiven; (ii) as the Debtors' financial strife escalated in 2023 (i.e., as then-senior debt became due), in approximately December 2023 NuMale Corp. and others took out a $5 million Small Business Association-backed loan from Newtek Bank, National Association ("Newtek")

4

and, of the $5 million in proceeds received under this loan facility, approximately $2,410,964.73 went to "working capital" for NuMale Corp., which then transferred approximately $407,280 to various NuMale entities and used approximately $1,312,653.90 to fund losses; and (iii) the Debtors also financed operations through factoring-type arrangements as well.

28. As a sinking ship desperate for financing to cover operating losses, Debtors' fell victim to the merchant cash advance industry, which prey on troubled companies.

29. Defendant was one of these merchant cash advance lenders that took advantage of Debtors' precarious position.

30. Specifically, on December 6, 2024, Defendant and Nevada NuMale entered into an agreement titled "Merchant Agreement" (the "Agreement"), which included an origination fee of $295, other traditional loan fees, an estimated annual percentage interest rate of 453.82%, and daily payments of $4,257.14.

31. On May 28, 2025, Defendant filed a proof of claim in NuMale Corp's. bankruptcy case (Claim No. 21) and a proof of claim in Nevada NuMale's case (Claim No 1), which are duplicative claims (together, the "Claims").

32. Despite purporting to purchase receivables, the Agreement includes a Security Agreement professing to grant Defendant a security interest in the obligor and guarantors' personal property, including without limitation, all equipment inventory contract rights, franchise agreements, intellectual property, accounts receivable, and all products and profits of the foregoing.

**IV.**
**FIRST CLAIM FOR RELIEF**
**Determination that Defendant Does Not Hold a Secured Claim Pursuant to Section 506 and Bankruptcy Rules 3012 and 7001**

33. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

34. To the extent Defendant could establish that it held a valid security interest (which it cannot do), Defendant is nonetheless unsecured by virtue of the nominal value of its collateral and the prior liens.

35. On the Petition Date, the following creditors, among potentially others, held liens priming Defendant's alleged liens: (i) Newtek for its $5,000,000 loan made December 2023 against NuMale Corp.; (ii) ODK Capital for its $150,000 loan made in August 2024 against NuMale New Mexico; (iii) Fox Funding for its $150,000 loan made on September 6, 2024 against each of the Debtors; and (iv) Vox Funding for its $100,000 loan made in October 2024.

36. On October 23, 2025, the Court entered its sale order confirming the sale of Debtor's personal property pursuant to Section 363 for an aggregate purchase price of $300,000, thereby establishing the value of Defendant's alleged collateral.

37. Based on the foregoing, Defendant, at best, holds an unsecured claim against Debtors.

38. Plaintiff is entitled to a determination in accordance with Section 506 and Bankruptcy Rules 3012 and 7001 that any claim held by Defendant is unsecured.

V.
SECOND CLAIM FOR RELIEF
Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547(b)

39. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

40. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured or undersecured claims against each of the Debtors (collectively, the "Predicate Creditors") as identified in Debtors' schedules and statements and proofs of claim, including without limitation, Michael Sanchez; Prospect Rainbow, LLC; NewTek.

41. Nevada NuMale made payments to Defendant during the ninety (90) days preceding the Petition Date of no less than $34,057.12 (the "Transfers").

42. Within the ninety (90) days preceding the Petition Date, Defendant received each of the Transfers from the Nevad NuMale.

43. All transfers received by the Defendant within the ninety (90) days preceding the Petition Date, including but not limited to the Transfers, are herein referred to as the "Avoidable Transfers".

44. The Avoidable Transfers were made to Defendant.

45. The Avoidable Transfers were for or on account of an antecedent debt owed by the Debtors pursuant to the above-described Agreement before the Avoidable Transfers were made.

46. Beyond the foregoing evidence of Debtors' insolvency, the Debtors' schedules and statements, signed under penalty of perjury, reflect that on the Petition Date the Debtors were (and are) insolvent.

47. As evident by Debtors' schedules and statements and the foregoing valuation and debt allegations, the Avoidable Transfers enabled Defendant to receive more than it would have received if these Chapter 11 Cases were cases under Chapter 7 of the Bankruptcy Code, the Avoidable Transfers had not been made, and Defendant received payments to the extent provided by the provisions of the Bankruptcy Code.

48. Plaintiff is entitled to avoid the Avoidable Transfers made to Defendant as preferential transfers under 11 U.S.C. § 547.

## VI.
## THIRD CLAIM FOR RELIEF
**Fraudulent Conveyance, 11 U.S.C. § 548(a)(1)(B)**

49. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

50. Within the two (2) years preceding the Petition Date the Defendant received transfers from the Debtors, including but not limited to the Transfers (collectively, the "Two Year Transfers").

51. The Two-Year Transfers are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

52. The Two-Year Transfers were made to Defendant, who received the transfers.

53. The Two-Year Transfers made within two years of the Petition Date were made while litigation was pending against NuMale Corporation and NuMale New Mexico and were concealed from Debtors' creditors.

54. The Debtors received no value, or less than a reasonably equivalent value, in exchange for the Two-Year Transfers.

55. The Debtors were insolvent on the dates that the Two-Year Transfers were made and/or the Debtors became insolvent as a result of the Two-Year Transfers.

56. At the times the Two-Year Transfers were made, the Debtors were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with the Debtors was an unreasonably small capital.

57. At the times the Two-Year Transfers were made, the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' abilities to pay as such debts matured.

58. The chronology of events and the timing of the Two-Year Transfers where litigation was pending against the Debtors reflect the intent to defraud.

59. When the Two-Year Transfers made within two years of the Petition Date were made, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due.

60. Based on the foregoing, the Two-Year Transfers that were made within two years of the Petition Date are avoidable constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

61. The Debtors received no value, or less than a reasonably equivalent value, in exchange for the Transfers. In fact, rather than adding value to the Debtors, the reckless and negligent actions performed by Defendant put the Debtors at great risk of liability and lowered the value of the Debtors, yet Defendant was nonetheless paid for it.

62. Plaintiff, on behalf of the Estates, is entitled to avoid each of the Two-Year Transfers.

## VII.
## THIRD CLAIM FOR RELIEF
**Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550**

63. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

64. Pursuant to 11 U.S.C. § 550(a)(1), Plaintiff may recover the Avoidable Transfers and the Two-Year Transfers from Defendant as the initial transferee or any entity on whose behalf the Transfers and the Two-Year Transfers.

65. Pursuant to 11 U.S.C. § 550(a)(2), Plaintiff may recover the Avoidance Transfers and the Two-Year Transfer from any immediate or mediate transferees of the initial Defendant-transferee plus interest thereon from the date of payment and the costs of this Adversary Proceeding.

66. Defendant was the initial transferee of the Avoidance Transfers and Two-Year Transfers.

67. Based upon the foregoing, Plaintiff is entitled to recover the Avoidable Transfers or their value and the Two-Year Transfers or their value from Defendant pursuant to 11 U.S.C. § 550(a) for the benefit of the Estates.

## VIII.
## FOURTH CLAIM FOR RELIEF
**Declaratory Judgment**

68. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

69. The terms of the Agreement is unduly oppressive, unconscionable and/or are against public policy. The Agreement is contracts of adhesion due to the unequal bargaining power and oppressive terms.

70. The Agreement included a Security Agreement which purport to secure categories of personal property collateral, including accounts, equipment, inventory, and others, including after-acquired property.

71. The Security Agreement permitted Defendant to direct the disposition of assets without notice or consent of the Debtors.

72. The Agreement is in substance and in every conceivable way, a loan. However, Defendant attempted to disguise the true nature of the transaction by labeling them a purchase of receivables in order to avoid state usury laws and regulations.

73. The terms of each of the loans are set forth above and include a specific payment amount not tied to the collection of receivables, a loan interest rate, and other traditional loan fees.

74. This is not a true purchase of receivables; it is a loan transaction.

75. Although the Agreement claim to be a purchase and sale of receivables, there are no specific receivables identified as being purchased. Instead, the Agreement provides that Debtors must deposit all of their receivables into accounts from which Defendant will withdraw a specified amount, daily, regardless of the actual receivables collected.

76. Upon default of any term of the loan, the Agreement provided that the entire amount of the future receivables allegedly purchased became immediately due and payable.

77. A substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests regarding the Agreement.

78. Plaintiff claims that the Agreement is lawful, non-usurious, agreements to purchase revenues and/or receipts.

79. Plaintiff claims that the Agreement is illegal usurious loan agreements disguised as a receivable purchase agreement.

80. Plaintiff has taken monies from Debtors (the Avoidable Transfers and the Two-Year Transfers) purportedly in re-payment of revenues and/or receipts.

81. In reality, such funds (the Avoidable Transfers and the Two-Year Transfers) represent payments on usurious loans.

82. These are ripe controversies that this Court must resolve.

83. Plaintiff seeks declaratory judgment from this Court declaring that (i) the Agreement is usurious; (ii) the Agreement is illegal; (iii) the Agreement is void; (iv) all guarantees

of the Agreement is void; (v) the Debtors owe nothing to Defendant; (vi) Defendant has no rights to or under the Agreement; (vii) any and all UCC liens asserted by Defendant against any and all property of the Estates, the Debtors, and the Debtors are void and unenforceable; (viii) a declaration prohibiting the enforcement of any asserted and/or alleged UCC liens, asserted by Defendant against any and all property of the Estates, the Debtors, and the Debtors; and (ix) that Defendant receives nothing whatsoever on account of the Agreement.

## IX.
### FIFTH CLAIM FOR RELIEF
### Disallowance of Proofs of Claim

84. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

85. Defendant filed Claim No. 21 and Claim No. 1.

86. Each of these proofs of claim should be disallowed pursuant to 11 U.S.C. § 502(d).

### RESERVATION OF RIGHTS

This Complaint is intended to seek recovery of all transfers avoidable under Chapter 5 of Title 11 not specifically identified in the Complaint, including, without limitation, any payments received during the applicable preference period or applicable fraudulent transfer limitation period. Plaintiff reserves the right to amend this Complaint if additional avoidable transfers are revealed during discovery, including, but not limited to, any claims arising under Chapter 5 of Title 11 of the United States Code.

### PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Find under the is entitled to avoid and recover the Avoidable Transfers made to Defendant as preferential transfers under 11 U.S.C. §§ 547 and 550.

2. Find that the Transfers, the Two-Year Transfers are avoidable and recoverable under 11 U.S.C. §§ 548and 550.

3. Enter declaratory judgment in favor of Plaintiff and against Defendant, declaring that (i) the Agreement is usurious; (ii) the Agreement is illegal; (iii) the Agreement is void; (iv)

11

all guarantees of the Agreement is void; (v) the Debtors and the Debtors owe nothing to Defendant; (vi) Defendant has no rights to or under the Agreement; (vi) any and all UCC liens asserted by Defendant against any and all property of the Estates, the Debtors, and the Debtors are void and unenforceable; (viii) a declaration prohibiting the enforcement of any asserted and/or alleged UCC liens, asserted by Defendant against any and all property of the Estates, the Debtors, and the Debtors; and (ix) that Defendant receives nothing whatsoever on account of the Agreement.

4. Disallow the Defendant's Claims in the entirety and find that Defendant take nothing by way of or on account of the Defendant's Claims.

5. Avoid any and all liens related to the Agreement, and the Defendant Claims and a determination from this Court that there is no validity, priority, or extent of any lien asserted by Defendant against any property of the Estates.

6. Grant reasonable attorney's fees and costs.

7. For such further relief the Court finds just and proper.

Dated this 23rd day of October, 2025.

GARMAN TURNER GORDON LLP

By: /s/ Talitha Gray Kozlowski
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119

*Attorneys for Plaintiff, Chapter 11 Trustee Michael Carmel*