NVB 2016 (05/2022)

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

## Fee Application Cover Sheet

Case No.: 25-10341    Chapter: 11    Hearing Date/Time: 12/9/2025 09:30

Debtor: NuMale Corporation, jointly administered lead debtor

Applicant: Patient Care Ombudsman

Date of Employment: April 30, 2025

Interim Fee Application No: _____    OR    Final Fee Application 1

**Amounts Requested:**    Client Approval: Yes ☑  No ☐

**Fees:** $ 185,185.00

**Expenses:** $ 8,038.30

**Total:** $ 193,223.30

Hours: 439.30    Blended Rate: $ 421.55

Fees Previously Requested: $ 0.00    Awarded: $ 0.00

Expenses Previously Requested: $ 0.00    Awarded: $ 0.00

Total Previously Requested: $ 0.00    Awarded: $ 0.00

Total Amount Paid: $ 0.00

**Chapter 13 Cases ONLY:**

Yes ☐  No ☐    Elected to accept the Chapter 13 Presumptive Fee pursuant to LR 2016.2, and filed the "Notice of Election to Accept the Presumptive Fee" on _____ .

Yes ☐  No ☐    Participated in the Mortgage Mediation Program: **If yes,** amount received: $ _____

I certify under penalty of perjury that the above is true.

/s/ Mary Langsner    Date 10/28/2025

Signature

**Jacob Nathan Rubin, M.D., F.A.C.C.**
4955 Van Nuys Blvd, No. 308
Sherman Oaks, CA 91403
**Telephone:** (818) 929-1455
**Email:** JNRubinMD@yahoo.com

*Patient Care Ombudsman*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>☐ AFFECTS THIS DEBTOR,<br><br>☐ AFFECTS FELICIANO NUMALE NEVADA PLLC,<br><br>☐ NUMEDICAL SC,<br><br>☐ NUMALE COLORADO SC,<br><br>☐ NUMALE FLORIDA TB PLLC,<br><br>☐ NUMALE NEBRASKA LLC,<br><br>☐ NUMALE NEW MEXICO SC,<br><br>☒ AFFECTS ALL DEBTORS,<br><br>Debtors. | Lead Case No. 25-10341-NMC<br>Chapter 11<br><br>*Jointly administered with*:<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-NMC<br><br>NuMedical SC<br>Case No. 25-10343-NMC<br><br>NuMale Colorado SC<br>Case No. 25-10344-NMC<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-NMC<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-NMC<br><br>NuMale New Mexico SC<br>Case No. 25-10347-NMC<br><br>Hearing Date: December 9, 2025<br>Hearing Time: 9:30 a.m. |

**FIRST AND FINAL APPLICATION BY PATIENT CARE OMBUDSMAN FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF COSTS**

Jacob Nathan Rubin, M.D., F.A.C.C., the Patient Care Ombudsman (the "PCO") appointed under Section 333 of the Bankruptcy Code in the above seven-jointly administered Chapter 11 cases of NUMALE CORPORATION, et al. (hereinafter collectively, the "Debtors"), shall and does hereby, move the Court for an order approving this *First and Final Application by Patient Care*

*Ombudsman for Allowance of Fees and Reimbursement of Costs*, as follows.

## I. INTRODUCTION

The Application seeks allowance on a final basis, fees for services rendered of $185,185.00 by the PCO and his consultant, Dr. Tim Stacy, DNP, ACNP-BC; approval of $8,038.30 in expenses expended in connection with the PCO providing services for the Debtors estates; for a total amount requested of $193,223.30 ("Fees and Costs"); and authorization for payment thereof as an Administrative Claim in connection with the terms of the confirmed *Joint Plan of Reorganization* [ECF No. 434] (as confirmed, the "Plan").[1]  The Fees and Costs were incurred for the period April 30, 2025, through October 24, 2025 (the "Application Period"), and the Application seeks their allowance, in full, on a final basis.

## II. BACKGROUND

1. Name and Location of Applicant: Dr. J. Nathan Rubin, M.D., F.A.C.C., whose offices are located at 4955 Van Nuys Blvd., Ste. 308, Sherman Oaks, CA, 91403. The PCO also seeks approval of the fees incurred by his consultant, Dr. Tim Stacy DNP, ACNP-BC, whose offices are located at 5268 Huckleberry Oak Street, Simi Valley, CA, 93063.

2. Chapter 11 Case was commenced: On January 22, 2025 (the "Petition Date"), seven related entities each filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Chapter 11 cases of the Debtors (collectively, the "Chapter 11 Cases") are jointly administered under the lead case of *In re* NuMale Corporation, Case No. 25-10341-NMC.

3. Date Employment Commenced and Date of Authorization: Following due diligence and interviews by the United States Trustee ("UST"), Dr. Rubin was appointed as the PCO in these seven jointly administered Chapter 11 cases, as of April 30, 2025 [ECF No. 234].

4. Type of Service Rendered: The Debtors operate a network of specialized men's health clinics focused on hormone therapy, erectile dysfunction, and other services related to male

---

[1] All undefined capitalized terms used herein shall have the meanings ascribed to them in the Plan.

2

vitality. Although most physical locations are no longer active, the Debtors have maintained continuity of patient care through a telemedicine platform administered by qualified providers.

Because the Debtors operate a business which provides care and medical service to patients, it therefore qualifies as a "health care business" as that term is defined in Bankruptcy Code § 101(27)(A). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a patient care ombudsman must be appointed in the bankruptcy case of a "health care business" to ensure that the medical care provided to patients is not declining or being materially compromised during the bankruptcy.

A patient care ombudsman appointed under 11 U.S.C. § 333 must: (1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians; (2) not later than 60 days after the date of appointment, and not less frequently than at 60-day intervals thereafter, report to the Court after notice to the parties-in-interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the debtor(s); and (3) if such ombudsman determines that the quality of patient care provided to patients of the debtor(s) is declining significantly or is otherwise being materially compromised, file with the Court a motion or a written report, with notice to the parties-in-interest immediately upon making such determination. *See* 11 U.S.C. § 333.

Since his appointment as the PCO in the Debtors' Chapter 11 Cases, Dr. Rubin has performed the duties described in 11 U.S.C. § 333.

The PCO performed his duties with the assistance of qualified expert, Dr. Timothy Stacy DNP, ACNP-BC ("Dr. Stacy").

    5.    Date of Last Fee Application: N/A

    6.    Summary of Fees and Costs Previously Allowed and Paid.

        A.    Amount of Advanced Fee Payment: N/A

        B.    Amount of Advanced Fee Payment Remaining: N/A

        C.    Amount Actually Paid Pursuant to Prior Applications: N/A

        D.    Total Amount Remaining to be Paid Pursuant to Prior Applications: N/A

        E.    Total Amount Allowed Yet Reserved Pending Final Fee Application: N/A

7. <u>Source of Fee Payment and Cost Reimbursement</u>: the PCO seeks to be paid as an Administrative Claim in accordance with the terms of the Plan.

**III.    DESCRIPTION OF SERVICES**

The services provided by the PCO during this billing period generally focus on issues particular to a patient care ombudsman's duties as defined in 11 U.S.C. § 333.

To ensure the quality of care delivered and to protect the health and safety of patients, the PCO and Dr. Stacy worked to understand and keep up with all patient care issues, discuss their concerns with the Chapter 11 Trustee ("<u>Trustee</u>"), and find solutions to address such concerns.

Specifically, the PCO and Dr. Stacy corresponded with the Trustee and conducted interviews with key personnel inquiring as to key areas involving patient care. Significant time was spent gathering and reviewing the various data received from the Debtors, including charts, patient records, and related information.

The PCO and Dr. Stacy analyzed all the information gained through documents and interviews and presented it in the *First Report by Patient Care Ombudsman Pursuant to 11 U.S.C. §333(b)(2)* filed on or about July 3, 2025 [ECF No. 391] ("<u>First Report</u>") and in the *Second Report by Patient Care Ombudsman Pursuant to 11 U.S.C. §333(b)(2)* filed on August 27, 2025 [ECF No. 548] ("<u>Second Report</u>").

The PCO's First Report reflects the PCO's findings after six weeks of oversight—including a physical inspection of the Las Vegas clinic and remote evaluations of additional clinic sites formerly located in Illinois, Wisconsin, Nebraska, and New Mexico—and documents the oversight, methodology, clinical findings, and regulatory evaluations, and presents formal recommendations to ensure continued patient protection and compliance with state and federal healthcare standards.

The Second Report was submitted following ongoing oversight of the Debtors, which was conducted through in-person and virtual inspections, provider interviews, document reviews, and direct coordination with the Trustee.

However, a serious incident occurred on or about July 31, 2025, when former principals Brad Palubicki and Dr. Carlos Feliciano, whose authority had already been terminated by the Court-appointed Trustee, unilaterally canceled the Debtors' electronic medical record ("<u>EMR</u>")

4

subscription.

This action disrupted lawful prescribing and medical record documentation for approximately two weeks, creating substantial risk of patient harm. Although emergency intervention by the Trustee and PCO prevented any known direct harm, the incident underscores the fragility of care operations when subjected to malicious interference.

As set forth in **Exhibit "A"** to the *Declaration of Jacob Nathan Rubin, M.D., F.A.C.C. in Support of First and Final Application By Patient Care Ombudsman for Allowance of Fees and Reimbursement of Costs* ("PCO Decl.") filed in support of this Application, a total of 439.3 hours have been incurred in connection with the PCO's and Dr. Stacy's services, which, when billed at their prevailing hourly rates, totals the amount of $185,185.00, which results in a blended rate of $421.55.

### IV.   SUMMARY OF FEES

A summary showing the total amount billed by each timekeeper:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Jacob Nathan Rubin, M.D., F.A.C.C. (PCO) | $650 | 197.1 | $116,285.00 |
| Dr. Tim Stacy DNP, ACNP-BC (consultant) | $325 | 242.2 | $68,900.00 |
| TOTAL: | | 439.3 | $185,185.00 |

### V.   EXPENSES

This Application requests reimbursement of expenses incurred in the amount of $8,038.30, which consists of expenses actually and necessarily incurred in connection with the PCO's travel costs related to visiting Debtors facilities, and incurred by the PCO in connection with his own independent counsel; those costs are also set forth in **Exhibit "A"** to the PCO Decl.

### VI.   DETAILED LISTINGS OF ALL TIME SPENT

Detailed listings of all time spent for which payment is requested through the Application, a description of the service and the amount of time spent during this Application Period are forth in **Exhibit "A"** to the PCO Decl.

### VII.   LISTING OF PROFESSIONAL EDUCATION AND EXPERIENCE

The resumes listing the professional education and experience of the PCO and his consultant,

5

1 Dr. Stacy, are attached as **Exhibit "B"** to the PCO Decl.

2  WHEREFORE, the PCO respectfully requests

3  1.  That the Court, pursuant to 11 U.S.C. §§ 330 and 331, approve on a final basis the compensation in the total amount of $185,185.00 for services rendered, plus $8,038.30 in expenses, for the total amount of $193,223.30 incurred in connection with services rendered during the Application Period of April 30, 2025, through October 24, 2025, and authorize payment thereof in accordance with the confirmed Plan; and

 2.  Order such other and further relief as this Court deems just and proper.

Dated this 28 of October 2025.

By: _____
Dr. Jacob Nathan Rubin, M.D., F.A.C.C.
*Patient Care Ombudsman*