NVB 2016 (05/2022)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

## Fee Application Cover Sheet

Case No.: 25-10341-nmc    Chapter: 11    Hearing Date/Time: 12/9/2025 09:30

Debtor: NuMale Corporation

Applicant: Garman Turner Gordon LLP, as attorneys for Chapter 11 Trustee

Date of Employment: April 7, 2025

Interim Fee Application No: _____  OR  Final Fee Application  X

**Amounts Requested:**                    **Client Approval: Yes** ☑ **No** ☐

**Fees:** $ Though additional work was performed, no additional compensation beyond the 1st interim fee app is sought

**Expenses:** $ 40,899.98

**Total:** $ 40,899.98

Hours: Contingency Compensation sought    Blended Rate: $ GTG is not seeking hourly compensation

Fees Previously Requested: $ 9,338,543.40    Awarded: $ 9,338,543.40

Expenses Previously Requested: $ 42,575.51    Awarded: $ 42,575.51

Total Previously Requested: $ 9,381,118.91    Awarded: $ 9,381,118.91

Total Amount Paid: $ 4,711,847.21

## Chapter 13 Cases ONLY:

**Yes** ☐ **No** ☐  Elected to accept the Chapter 13 Presumptive Fee pursuant to LR 2016.2, and filed the "Notice of Election to Accept the Presumptive Fee" on _____ .

**Yes** ☐ **No** ☐  Participated in the Mortgage Mediation Program: **If yes,** amount received: $ _____

I certify under penalty of perjury that the above is true.

/s/ *Greg Garman*                    Date    11/10/2025

Signature

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
| NUMALE CORPORATION, | |
|    AFFECTS THIS DEBTOR, ☐ | *Jointly administered with:* |
|    AFFECTS FELICIANO<br>   NUMALE NEVADA PLLC, ☐ | Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc |
|    NUMEDICAL SC, ☐ | NuMedical SC<br>Case No. 25-10343-nmc |
|    NUMALE COLORADO SC, ☐ | NuMale Colorado SC<br>Case No. 25-10344-nmc |
|    NUMALE FLORIDA TB PLLC, ☐ | NuMale Florida TB PLLC<br>Case No. 25-10345-nmc |
|    NUMALE NEBRASKA LLC, ☐ | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
|    NUMALE NEW MEXICO SC, ☐ | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
|    NUMALE ALL DEBTORS, ☒ | |
|      Debtors. | Hearing Date:  December 9, 2025<br>Hearing Time:  9:30 a.m. |

## SECOND AND FINAL FEE APPLICATION OF GARMAN TURNER GORDON LLP AS ATTORNEYS FOR MICHAEL CARMEL, CHAPTER 11 TRUSTEE, FOR THE ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

Garman Turner Gordon LLP ("GTG"), as attorneys for Michael Carmel, the Chapter 11 trustee ("Trustee") of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), hereby submits its second and final fee application (the "Application") pursuant to Sections[1] 328, and 331, Bankruptcy Rule 2016, and Local Rue 2016, for the allowance of compensation for professional services performed by GTG for the Trustee in Debtors' Chapter 11 cases (the "Chapter 11 Cases") on a final basis.  Through the Application GTG seeks final approval of reimbursement of its actual and necessary expenses incurred from August 16, 2025, through October 28, 2025 (the "Current Compensation Period") in the amount of $40,899.98.  GTG is not seeking and waives additional fees for the Current Compensation Period.  Rather, GTG is solely seeking final approval of the fees previously allowed in the *Order Approving First Interim Fee Application of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee, for the Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses* [ECF No. 700] (the "Interim Approval Order"), which approved GTG's fees of $9,338,543.40 and reimbursement of expenses of $42,575.51 for work performed during April 7, 2025, through August 15, 2025 (the "Interim Application Period").[2]

The Application is made and based upon the points and authorities provided herein; the declarations of Chapter 11 Trustee Michael Carmel, Esq. ("Carmel Decl.") and Gregory Garman, Esq. ("Garman Decl.") filed contemporaneously herewith; the papers and pleadings on file herein, judicial notice of which is respectfully requested; and any argument of counsel at the time of hearing on the Application.  A proposed form of order granting this Application is attached hereto as **Exhibit 1**.

# I. INTRODUCTION

GTG's contingency compensation was previously approved by the Court through the

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada.
[2] The Current Compensation Period and the Interim Application Period together, the "Final Application Period".

Interim Approval Order [ECF No. 700]. Although an additional 756.0 hours of work has been performed since the close of the Interim Application Period,[3] amounting to a total of $358,089.00 in fees generated at GTG's full hourly rates (or $179,044.50 at the reduced hourly rates), no additional compensation is requested through this Application. Rather, this Application seeks (i) final approval of all amounts previously approved in the Interim Approval Order ($9,338,543.40 in fees and $42,575.51 in expense reimbursement), plus (ii) reimbursement of the $40,899.98 in expenses incurred during the Current Compensation Period. In total, the Application seeks final approval of $9,338,543.40 in contingency compensation and $83,475.49 in expense reimbursement, for a total of $9,422,018.89.

As set forth in the Interim Application, GTG agreed to provide a material concession to the estates, waiving its right to seek payment of reduced hourly rates, plus a contingency fee. Instead, GTG has solely sought approval and payment of its tiered contingency fee (17.5% on the first $10 million of gross recoveries to the estates, excluding operating revenue, and 8.75% above $10 million), which have been further discounted on a voluntary basis.

GTG's compensation structure was disclosed in GTG's employment papers and supported by declarations in light of bankruptcy estates having "few, if any, liquid assets", and subsequently approved by the Court. Simply put, the estates were administratively insolvent when GTG was retained in these Chapter 11 Cases, and GTG assumed substantial risk in taking on this engagement, including advancing more than $80,000 in costs. Under § 328(a) and Ninth Circuit precedent, such pre-approved terms are not re-tried under § 330 absent developments "not capable of being anticipated" at retention—an exacting standard not met here, as the claims resolved here were known to the parties and even discussed in open Court. This Court ultimately approved GTG's compensation on an interim basis, and, through this Application GTG respectfully submits

---

[3] As noted in GTG's *First Interim Fee Application of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee, for the Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses* [ECF No. 549] ("Interim Application"), there remained a significant amount of work to perform in these Chapter 11 Cases after the Interim Application was filed—including Plan confirmation. GTG noted it was committed to finishing these cases, as well as bearing the risk of recovery on any amounts approved by this Court that are deferred for payment until funds become available from the Liquidation Trust. Since the Application was filed, the Plan has been confirmed, and the Section 363 Sale has closed.

2

that final approval of these amounts are all warranted.

## II. SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

| | |
|---|---|
| Fee Application | Second and Final |
| Applicant | Garman Turner Gordon LLP |
| Capacity | Counsel to Chapter 11 Trustee |
| Compensation Period | August 16, 2025 – October 28, 2025 |

**Current Compensation Period**

| | |
|---|---|
| Compensation Period Fees – Hourly rates (standard)[4] | $    358,089.00 |
| Compensation Period Fees – Hourly rates at 50%[5] | $    179,044.50 |
| Voluntary Discount – Hourly rates | $    179,044.50 (**a 100% discount**[6]) |
| Blended Hourly Rate | GTG is not seeking hourly compensation |
| Expenses Requested Reimbursed | $      40,899.98 |
| Summary of Fees by Professional | *See* **Exhibit 2** hereto |
| Summary of Fees by Task Code | *See* **Exhibit 3** hereto |
| Summary of Expenses by Type | *See* **Exhibit 4** hereto |

**Final Application Period**

| | |
|---|---|
| Final Application Period | August 16, 2025 – October 28, 2025 |

**Contingency Compensation**

| | |
|---|---|
| Contingency Fee Calculation | $10,376,159.33 |
| Voluntary Discount of 10% – Contingency | $  1,037,615.93 |
| Contingency Fee After Discount (Approved) | $  9,338,543.40 |

**Expenses/Costs**

| | |
|---|---|
| Expenses Requested Reimbursed | $       83,475.49 |

**Total**

| | |
|---|---|
| Total Fees and Costs After All Discounts[7] | $  9,422,018.89 |

## III. SUMMARY OF REQUESTED RELIEF

1.      This Application has been prepared in accordance with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C.*

---

[4] If GTG were to have been employed at the full amount of its standard hourly rates.

[5] The Employment Order provides that GTG's hybrid compensation structure was based in part on hourly rates set at fifty percent (50%) of GTG's then-prevailing rates in effect.

[6] GTG was employed at discounted rates of 50% its standard hourly rates then in effect. *See* Employment Order ECF No. 293. Therefore the true discount on GTG's hourly compensation is reflected as this number.

[7] The total of $588,965.50 for the Final Application Period (at hourly rates of fifty percent (50%) GTG's then-prevailing rates in effect; were GTG's full hourly rates to be used in the calculus this discount is $1,177,931.00).

3

*§ 330*[8] adopted by the Executive Office for United States Trustees, as referenced by the *Region 17 United States Trustee Guidelines*,[9] as well as in accordance with Bankruptcy Rule 2016 and Local Rule 2016.

2.      This is the second and final fee application for allowance of compensation and reimbursement of expenses filed on behalf of GTG in the Chapter 11 Cases.  Garman Decl. ¶ 3.

3.      Pursuant to the Application, GTG requests final approval of reimbursement of its actual and necessary expenses incurred during the Current Compensation Period from August 16, 2025, through October 28, 2025, in the amount of $40,899.98.  This is net of voluntary discounts including a total waiver of $179,044.50 in compensation earned at one-half GTG's prevailing hourly rates.  *See* Garman Decl. ¶ 4.

4.      Pursuant to the Application, GTG also requests final approval of amounts previously approved on an interim basis, and awarded, authorized, and approved pursuant to 11 U.S.C. §§ 328 and 331 in the Interim Approval Order, as professional compensation for actual, necessary services rendered in the amount of $9,338,543.40 and reimbursement of actual and necessary expenses in the amount of $42,575.51.  *See* Garman Decl. ¶ 5.

5.      The total amounts for which final approval is requested in this Application—compensation of $9,338,543.40 and expense reimbursement of $83,475.49—are net of voluntary discounts including a total discount on all hourly compensation earned ($588,965.50), and a $1,037,615.93 discount on GTG's earned contingency compensation, for a total discount of $1,626,581.43 provided during the Final Application Period.  *See* Garman Decl. ¶ 6.

6.      During the Current Compensation Period, GTG's attorneys expended a total of 756.0 hours.  A billing summary is attached hereto as **Exhibit 2**.  GTG is not seeking to be paid compensation based on the hours of work performed and its professionals' hourly rates.  Rather, GTG waives in the entirety the hourly compensation associated with these 756.0 hours worked during the Current Compensation Period.  *See* Garman Decl. ¶ 7.

---

[8] Available at https://www.justice.gov/sites/default/files/ust/legacy/2013/06/28/Fee_Guidelines.pdf (last accessed Oct. 2, 2025)
[9] Available at https://www.justice.gov/sites/default/files/ust-regions/legacy/2012/06/06/guidelines.pdf (last accessed Oct. 2, 2025).

4

7.      **Exhibit 3** hereto identifies and provides chronologically throughout the Current Compensation Period: (a) the dates on which GTG performed professional services for the Trustee; (b) each person performing such services; (c) the amount of time spent by each person on each day that the person performs such services (charged in units of one-tenth [0.1] of an hour); and (d) specific daily descriptions of the services performed by each person.  *See* Garman Decl. ¶ 8.

8.      **Exhibit 4** attached hereto contains a detailed statement of actual and necessary out-of-pocket expenses incurred and paid by GTG during the Current Compensation Period in its representation of the Trustee.  *See* Garman Decl. ¶ 9.

9.      The fees charged by GTG in these Chapter 11 Cases are billed in accordance with its existing procedures in effect during the Compensation Period.  GTG submits that fees are reasonable in light of the customary compensation charged by comparably skilled practitioners in a competitive legal market.  *See* Garman Decl. ¶ 10.

10.      The compensation requested herein is reasonable in light of the customary compensation charged by comparably skilled practitioners in a competitive legal market, because (as set forth in the Employment Order[10]), it is a reduced contingency percentage, is not calculated based on earnings from operations and is calculated based on recoveries for the estates, and is further subject to a step-down reduction for any amounts brought recovered by the Trustee over $10 million, and, has additionally been already discounted by 10%.  *See* Garman Decl. ¶ 11.

## IV. <u>JURISDICTION AND VENUE</u>

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).  Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought herein arise from Sections 328, 331, 503, 507, 1107, 1108, and 105 of the Bankruptcy Code, and Bankruptcy Rule 2016.  This Application is a "core proceeding" over which the Court has jurisdiction to render a decision.

12.      Pursuant to LR 9014.2, GTG consents to entry of a final order or judgment by the

---

[10] *Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 293] ("<u>Employment Order</u>").

bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

## V. PERTINENT FACTS

13.     On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

14.     On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. See ECF No. 130.

15.     On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

16.     On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("U.S. Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 140.

17.     On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the U.S. Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

18.     Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' estates. *See* ECF No. 157.

19.     On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. *See, e.g.*, ECF No. 209.

20.     On April 25, 2025, the Trustee filed his *Application for Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 199] ("Employment Application"), which was ultimately granted by the Court [ECF No. 293] ("Employment Order").

6

21.     On August 1, 2025, the Trustee filed the *Joint Plan of Reorganization* [ECF No. 434] (together with all supplements and amendments thereto, the "Plan").

22.     On August 27, 2025, GTG filed the Interim Application, containing concessions necessary to confirm the Plan.  *See* ECF No. 549.  The Interim Application was ultimately granted in its entirety.  *See* ECF No. 700 (Interim Approval Order).

23.     The Plan was confirmed.  *See* ECF Nos. 726 (*Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization*) and 727 (*Order Confirming the Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization*) (collectively, "Confirmation Order").

24.     Under the confirmed Plan, an Administrative Claim[11] includes "all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances."  *See* ECF No. 434 at § 1.1.10.

25.     Under the Plan, Professional Fees include "The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328 or 1102 of the Bankruptcy Code; . . ."  *See* ECF No. 434 at § 1.1.106.

26.     Under the Plan, the Administrative Claim Bar Date is "The first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date."  *See* ECF No. 434 at § 1.1.9.

27.     The Plan's Effective Date occurred on October 24, 2025.  *See* ECF No. 762.

28.     The Application is timely as it is filed prior to the Administrative Claim Bar Date.

## VI. TASKS PERFORMED DURING THE COMPENSATION PERIOD

During the Current Compensation Period, GTG performed a wide range of actual and necessary services as set forth in **Exhibits 2 and 3** hereto.  The majority of the services performed by GTG were rendered by attorneys in the Business Restructuring and Bankruptcy Department.  GTG's attorneys have had a pre-eminent practice in this area and enjoy a strong reputation in the

---

[11] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

State of Nevada and Nationally for their expertise in complex financial reorganizations, restructurings of troubled entities, and bankruptcy litigation. *See* Garman Decl. ¶ 12.

GTG submits that the services it has provided to the Trustee during the Current Compensation Period were reasonable and necessary under the circumstances of the Chapter 11 Cases, and the compensation to GTG is appropriate and should be allowed. Garman Decl. ¶ 13.

Again, and for the avoidance of doubt, GTG is not seeking any hourly compensation; GTG is solely seeking its contingency fee and reimbursement of actual, necessary expenses. Nonetheless, the following provides an overview of the services rendered during the Current Compensation Period.

**A.      Task Code 01: GTG Retention & Compensation.**

During the Current Compensation Period, GTG spent 51.8 hours ($10,412.75 at the reduced rates approved in the Employment Order) preparing the Interim Application [ECF No. 549] and supporting declarations [ECF Nos. 550 and 551], preparing for and attending the hearing on the Interim Application, communicating with the US Trustee's office, and preparing LEDES data for the US Trustee's office's review of the Interim Application. GTG also spent time negotiating the form of proposed order with counsel. The Interim Application was ultimately granted by the Court [ECF No. 700]. Time was also spent beginning to prepare this Application.

**B.      Task Code 02: Other Professionals Retention & Compensation.**

During the Current Compensation Period, GTG spent 45.5 hours ($9,290.50 at the reduced rates approved in the Employment Order) preparing the application to employ RubinBrown LLP to prepare the Debtors' tax returns [ECF Nos. 564, 697] and supporting declarations [ECF Nos. 565, 566], as well as preparing the application to employ J.S. Held, LLC as financial advisor and accountant to the estates [ECF No. 496], and its supporting declarations [ECF Nos. 497, 498, 562], and in dialogue with the U.S. Trustee. This application was granted [ECF No. 620]. Time was also spent preparing the Trustee's first and final commission application [ECF No. 545] and supporting declaration [ECF No. 546], which was granted [ECF No. 701]. Time was also spent communicating with estate professionals and, where advised, preparing supplemental Bankruptcy Rule 2014 statements. Time was spent as well preparing final fee applications for estate

professionals, including that of the Patient Care Ombudsman Dr. Rubin [ECF No. 779] and supporting declarations [ECF Nos. 780, 781]; of RubinBrown LLP [ECF No. 729] and supporting declarations [ECF Nos. 719, 720], which was granted [ECF No. 748].  Because of timing considerations relating to Mr. Butterfield's departure from RubinBrown LLP, time was spent preparing documents seeking a hearing on shortened time on this fee application [ECF Nos. 721, 722, 725] and communicating with the U.S. Trustee's office regarding same.  Time was also spent preparing the first and final fee applications of J.S. Held, LLC [ECF No. 790] with supporting declarations [ECF Nos. 791, 792]; of special litigation counsel for ongoing federal court litigation in the Eastern District of North Carolina Burr & Forman [ECF No. 785] with supporting declarations [ECF Nos. 786, 787]; of special judgment collection counsel in Oklahoma McAfee & Taft [ECF No. 798] with supporting declarations [ECF Nos. 799, 800]; of special lead litigation counsel Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") to the estates in connection with the New Mexico State Court Case No. D-202-CV-202006336 and any appeal(s) therefrom or related thereto (the "Sanchez Litigation") [ECF Nos. 802, 803]; and of special New Mexico State Court counsel for the Sanchez Litigation, the law firm Rodey, Dickason, Sloan, Akin, & Robb, P.A. ("Rodey Law") [ECF No. 794] with supporting declarations [ECF Nos. 795, 796].

**C.    Task Code 03: General Bankruptcy Matters/Case Administration.**

During the Current Compensation Period, GTG spent 56.8 hours ($12,773.75 at the reduced rates approved in the Employment Order) attending to matters of general case administration, addressing estate considerations, ensuring ongoing compliance with the requirements of the Court's *Interim Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 130], attending to reporting requirements, analyzing issues relating to the Debtors' business and operations, advising the Trustee, and participating in case strategy meetings internally and with the Trustee and various stakeholders including the Patient Care Ombudsman Dr. Rubin ("PCO").  As the Trustee made efforts to ensure the Debtors' business and operations were maintained and assets were preserved in the lead-up to Plan confirmation and the ultimately successful Section 363 sale, GTG spent time assisting the Trustee as necessary to further these efforts.

**D.**     <u>Task Code 07: 362 Stay Relief Matters.</u>

During the Current Compensation Period, GTG spent 2.0 hours ($309.25 at the reduced rates approved in the Employment Order) addressing Mr. Ibrahim Nuwwarah, who had, post-petition, commenced Case No. SC-25-635 in Douglas County Court, Civil/Small Claims Division, Douglas County, Nebraska, ensuring the Douglas County Court was apprised of the automatic stay, and that Mr. Nuwwarah was provided with a proof of claim form to advance his asserted claim against the estate.

**E.**     <u>Task Code 08: 363 Use, Sale, or Lease of Property.</u>

During the Current Compensation Period, GTG spent 141.2 hours ($37,066.00 at the reduced rates approved in the Employment Order) assisting and advising the Trustee with the 363 Sale of the 363 Assets, including negotiating and drafting the *Asset Purchase Agreement* with the 363 Stalking Horse; preparing the Trustee's declaration in support of the 363 Sale [ECF No. 743]; preparing and maintaining a data room for interested potential bidders; drafting a confidentiality agreement for parties seeking access to the data room; communicating with opposing counsel including Mr. Went regarding sale matters; following up with all parties who spoke with the Trustee expressing potential interest in any of the 363 Assets; advising the Trustee regarding marketing considerations; preparing closing documents; addressing the lone objection (filed by Mr. Palubicki) and preparing the reply in support of the 363 Sale [ECF No. 742]; and analyzing, addressing, and advising the Trustee in connection with a multitude of issues that arose in connection with closing the 363 Sale. Time was also spent preparing for and attending the Sale Hearing on the 363 Sale, and negotiating the form of order. The 363 Sale was ultimately approved by the Court in a 363 Sale Order [ECF No. 751], which is now final, and the 363 Sale has closed.

**F.**     <u>Task Code 09: 365 Executory Contracts & Leases.</u>

During the Current Compensation Period, GTG spent 16.1 hours ($4,056.25 at the reduced rates approved in the Employment Order) addressing lease and executory contracts issues arising under the Debtors' multiple clinic site leases and other executory contracts. GTG also spent time prosecuting the *Second Motion to Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [ECF No. 462], and attending the hearing on this motion, which was

10

ultimately granted [ECF No. 501]. Time was also spent and in maintaining communications with counsel to affected landlords. GTG also spent time fielding inquiries from Prospect Rainbow's counsel regarding its assumed lease and amounts due to Prospect Rainbow in connection with that assumption. A significant portion of GTG's time in this category was spent addressing various matters with counsel to Mayfair Mall, LLC, whose premises are leased by a non-debtor, and included numerous calls and email correspondences. Time was also spent analyzing issues and preparing for these calls, as well as advising the Trustee.

**G.     Task Code 10: Claims Administration & Litigation.**

During the Current Compensation Period, GTG spent 47.1 hours ($12,545.75 at the reduced rates approved in the Employment Order) investigating the claims filed against the Debtors, including conducting informal discovery, negotiating with creditors, and in many cases achieving consensual resolutions. Time was spent preparing and prosecuting a series of 9019 motions as a consequence of these successful negotiations, including preparing the 9019 motion with Kalamata Capital Group, LLC [ECF No. 493] and supporting declaration [ECF No. 494], which motion was granted [ECF No. 617]; the 9019 motion with EBF Holdings, LLC [ECF No. 504] and supporting declaration [ECF No. 505], which motion was granted [ECF No. 616]; the 9019 motion with ODK Capital, LLC [ECF No. 532] and supporting declaration [ECF No. 533], which motion was granted [ECF No. 618]; the 9019 Motion with Newtek Bank, N.A. [ECF No. 541] and supporting declaration [ECF No. 542], which motion was granted [ECF No. 619], and, because of timing pertinent to the settlement with Newtek Bank, N.A. and the Plan, time was spent preparing documents for a hearing on shortened time on this motion [ECF Nos. 543, 544, 567]; the 9019 motion with DLP Funding LLC [ECF No. 577] and supporting declaration [ECF No. 578], which motion was granted [ECF No. 733]; the 9019 motion with Fox Funding Group, LLC [ECF No. 602] and supporting declaration [ECF No. 603], which motion was ultimately granted [ECF No. 738]. Time was also spent prosecuting the 9019 Motion seeking approval of the Global Settlement Agreement, negotiating with opposing counsel and preparing a revised proposed order granting the motion and approving the Global Settlement Agreement [ECF No. 569] and preparing for and attending the hearing on this Motion, which was granted [ECF No. 582].

11

Time was also spent negotiating with creditors, evaluating and conducting informal discovery of filed claims. This resulted in a negotiated claim reduction of Claim No. 14 filed by Kravit, Hovel & Krawcyzk's claim, memorialized in a stipulation [ECF No. 740] approved by the Court [ECF No. 744]. This also resulted in a negotiated reduction of Claim No. 8 filed by KLOS Radio, LLC, which resulted in a stipulation [ECF No. 784] approved by the Court [ECF No. 789]. Time was also spent negotiating the allowance of and preparing a stipulation for the allowance of an administrative claim held by the Debtors' former accountant KMA Accountants & Advisors, n/k/a Sorren, Inc., Sorren, and/or Sorren CPAs ("Sorren") for expenses Sorren had extended postpetition (but prior to the Trustee's appointment), to the benefit of the estates [ECF No. 766], which was also approved by the Court [ECF No. 772]. Time was also spent negotiating the terms of and preparing a stipulation for the allowance of Prospect Rainbow's claims against the estate [ECF No. 598], which also resulted in the withdrawal of Prospect Rainbow's limited confirmation objection; this stipulation, too, was approved [ECF No. 607].

Time was also spent negotiating with Mr. Palubicki, and Mr. Feliciano, which ultimately resolved the Trustee's objections to their filed claims and resulted in certain stipulations being filed [ECF Nos. 662, 664], which were approved by the Court [ECF Nos. 666, 667].

**H.    Task Code 11: Business Operations and Governance.**

During the Current Compensation Period, GTG spent 12.7 hours ($3,031.25 at the reduced rates approved in the Employment Order) addressing business operations, evaluating the Debtors' corporate governance, and assisting and advising the Trustee with resolving disruptions to business operations that arose after the Trustee's appointment, including responding to the intentional harmful acts by terminated employees that disrupted and damaged the Debtors' business. Additionally, time was spent investigating Ms. Triplett's contentions regarding bonuses and a car allowance she contends she was entitled to despite the Debtors' financial circumstances and her termination for cause.

**I.    Task Codes 12 & 13 & 14: Confirmation and Effectuation of the Plan.**

During the Current Compensation Period, GTG spent 104.8 hours ($26,883.25 at the reduced rates approved in the Employment Order) on Plan and confirmation matters. Time was

spent negotiating a resolution of the limited objection filed by Prospect Rainbow (which ultimately resulted in the withdrawal of that objection before confirmation [ECF No. 596]), prosecuting the Plan, tabulating ballots and preparing the ballot summary [ECF No. 611], and preparing for and attending the Plan confirmation hearing and the hearing on final approval of the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] ("Disclosure Statement"), both of which were approved in orders prepared by GTG and negotiated with various parties-in-interest [ECF Nos. 726, 727], and are now final.  Time was also spent negotiating and preparing the liquidation trust agreement, preparing the *Notice of Effective Date* [ECF No. 762], preparing the *Notice of Plan Supplement* [ECF No. 595], preparing the *Brief in Support of Confirmation of Joint Plan of Reorganization and Final Approval of Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 621] and the Trustee's supplemental declaration in support of confirmation [ECF No. 622], communicating with counsel to constituents in these Chapter 11 Cases including dialogue with the U.S. Trustee, and addressing contentions advanced by Mayfair Mall, LLC.  GTG also spent time attending to service of the Plan's Effective Date notice.

**J.**      **Task Code 15: 2004 Exams and Discovery.**

During the Curren Compensation Period, GTG spent 48.5 hours ($10,532.75 at the reduced rates approved in the Employment Order) attending to discovery disputes, preparing for Bankruptcy Rule 2004 examinations, and advising the Trustee regarding discovery related to his investigation of the Debtors' assets and liabilities in these Chapter 11 Cases.

GTG spent time on continued Bankruptcy Rule 2004 examination discovery of the Debtors' former President Mr. Palubicki, the Debtors' former financial institutions Wells Fargo and FortifiBank, and the Debtors' former accountant Sorren.  GTG also spent time attending to subpoena compliance issues when difficulties came up, and meeting and conferring regarding subpoena compliance with witnesses.   GTG also spent time preparing for and taking the examination of Mr. Palubicki, and reviewing documents produced by other Bankruptcy Rule 2004 witnesses.

**K.**      **Task Code 19: Avoidance Actions and Adversary Proceedings.**

During the Current Compensation Period, GTG spent 5.7 hours ($1,444.25 at the reduced

rates approved in the Employment Order) preparing complaints against Merchant Cash Advance creditors (many of which ultimately settled with the Trustee before the complaint was actually filed), and preparing a stipulation dismissing the Trustee's adversary proceeding against Mr. Palubicki, et al.  Three adversary proceedings are currently pending (as discussed below).

**L.    Task Code 22: Turnover.**

During the Current Compensation Period, GTG spent 16.3 hours ($3,584.75 at the reduced rates approved in the Employment Order) assisting the Trustee with pursuing turnover of Estate property, including negotiating with Zurich North America for a final resolution of the Trustee's Motion for an Order Compelling Turnover of Property of the Estates and for Sanctions [ECF No. 467], which ultimately resulted in a stipulation [ECF No. 717] that was approved by the court [ECF No. 721], and resulted in approximately $121,748.18 recovered.  GTG also assisted and advised the Trustee regarding a turnover demand to the Debtors' (former) IT provider Midwest IT Pros.  GTG also spent time following up on previous turnover demands including to Elavon as well as the Debtors' former counsel Mr. Riggi, and, where possible, obtained compliance without resorting to Court intervention.  Where necessary, however, GTG prepared motions seeking a Court order for the turnover.

**M.    Task Code 23: Bankruptcy Litigation.**

During the Current Compensation Period, GTG spent 97.7 hours ($26,763.25 at the reduced rates approved in the Employment Order) addressing a multitude of bankruptcy litigation and contested matters.  In addition to preparing the multitude of motions described elsewhere herein, GTG negotiated and prepared a number of stipulations with various parties-in-interest regarding briefing changes, continuances, and other matters and tended to Local Rule compliance with bankruptcy litigation matters, including dialoging with opposing counsel regarding shortened time requests and seeing to Local Rule compliance with circulating proposed orders.  GTG also advised the Trustee regarding litigation strategy and assisted the Trustee with evaluating litigation decisions.

GTG also spent time prosecuting what is perhaps the seminal contested matter aside from Plan confirmation in these Chapter 11 Cases, the *Motion Pursuant to Fed. R. Bankr. P. 9019 and*

*11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 430] (the "<u>Global Settlement Motion</u>"), including attending to Mr. Palubicki's opposition to the Global Settlement Motion, preparing an extensive reply in support of the Global Settlement Motion [ECF No. 535], negotiating the proposed form of order granting the motion [ECF No. 569], and preparing for and attending the hearing on this motion.  The Court ultimately granted this motion in an order [ECF No. 582] which is now final.

GTG also spent time preparing and prosecuting *Motion for Order to Show Cause for Willful Violation of the Order Appointing the Trustee, Willful Violation of the Automatic Stay, and Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105, 362, and 542* [ECF No. 455] ("<u>Show Cause Motion</u>") to address the substantial intentional interference in the Debtors' operations and the Trustee's administration of the estates caused by the intentional acts of the Debtors' former principal and terminated employees including Ms. Triplett.  GTG spent time preparing for and attending the initial hearing on this motion, after which the Court issued its *Order Granting Motion For Order To Show Cause* [ECF No. 455].  Time was also spent negotiating with Mr. Palubicki and preparing the eventual stipulation which granted a permanent injunction in favor of the Trustee [ECF No. 663], which was approved by the Court in an order [ECF No. 708] which is now also final.

Time was also spent preparing and prosecuting 9019 motions resolving issues with a variety of creditors, all of which were approved by the Court (in orders which are now final, and discussed elsewhere herein).  GTG also filed three complaints, initiating adversary proceedings that are currently pending before this Court.

**N.    <u>Task Code 24: Non-Bankruptcy Litigation.</u>**

During the Current Compensation Period, GTG spent 28.2 hours ($6,244.75 at the reduced rates approved in the Employment Order) addressing a multitude of nonbankruptcy litigation involving one or more debtors.  GTG assisted and advised the Trustee with monitoring the Sanchez Litigation pending in New Mexico State Court, and assisting and advising the Trustee with navigating the resolution of that case in light of this Court's approval of the Global Settlement

Motion.  GTG also assisted and advised the Trustee in connection with the Coverage Lawsuit,[12] which had been initiated by Beazley to determine, *inter alia*, Beazley's obligations with respect to the NuMale-Beazley Policies and the claims for coverage in connection with the Sanchez Litigation, and was also fully resolved through the settlement agreement approved when this Court granted the Global Settlement Motion.

GTG also appeared on behalf of the Trustee in the Eighth Judicial District Court of Clark County, Nevada, Case No. A-25-910072-C, *NuMale Corporation v. Howard & Howard Attorneys PLLC*, and negotiated and prepared a series of stipulations with defense counsel to continue briefing and the Court's hearing on defendants' motion to dismiss this legal malpractice lawsuit. GTG also advised the Trustee on preserving, and evaluating, this litigation asset for the NuMale Liquidation Trust.  GTG also spent time assisting and advising the Trustee regarding the estate's judgment against Dr. Basel Hassoun, assisting and advising the Trustee regarding a new litigation case commenced by Ms. Kelcie Jiminez post-petition (and ultimately obtained the stay of that case in light of the Debtors' Chapter 11 Cases and 11 U.S.C. § 362(a) automatic stay), and generally assisting the Trustee with monitoring nonbankruptcy litigations involving one or more Debtors including dismissals of New Mexico State Court cases upon this Court's approval of the Global Settlement Motion.

O.    **Task Code 25: Trustee's Investigation.**

During the Current Compensation Period, GTG spent 77.1 hours ($13,191.75 at the reduced rates approved in the Employment Order) assisting the Trustee with various facets of his investigation, including providing analyses, researching, and advising regarding estate assets. GTG spent time investigating estate assets; preparing and issuing litigation hold correspondence; following up with the Debtors' former accountant Sorren regarding outstanding matters pertinent to the Trustee's investigation; attending to Debtors records, tax matters, and insurance carrier considerations[13] pertinent to the Trustee's investigation; and processing multiple voluminous

---

[12] Initiated by Beazley and pending in the Ninth Judicial District Court of Curry County, New Mexico, as Case No. D-905-CV-202500157 ("Coverage Lawsuit").

[13] GTG had previously prepared Notice of Circumstances letters to both Arch and Chubb regarding facts, circumstances facts, and situations that could reasonably give rise to a claim, loss, matter, or wrongful act under these

productions of financial and related tax records produced to the Trustee in response to his investigative demands.

GTG spent time assisting the Trustee with his investigation into the Debtors' principals. GTG also spent time assisting the Trustee with his investigation into and evaluation of the Debtors' business, assets, and debt, including navigating the forensic imaging of fifty-nine (59) electronic devices removed from the Debtors' premises in a cost-effective manner.

**P.      Task Code 26: Quintairos Litigation.**

During the Compensation Period, GTG spent 4.5 hours ($914.25 at the reduced rates approved in the Employment Order) beginning to investigate, gather documents, and prepare for the NuMale Liquidation Trust's prosecution of the claims against Quintairos, Prieto, Wood & Boyer, P.A., pursuant to the confirmed Plan.

## VII.  ACTUAL AND NECESSARY DISBURSEMENTS

GTG has incurred and paid out-of-pocket expenses totaling $40,899.98 during the Current Compensation Period.  *See* **Exhibit 4** hereto.  These include mailings, postage, and printing for noticing motions, hearings, and orders, as well as the costs associated with noticing multiple contested matters as well as the Effective Date Notice, and service of the Show Cause Motion and its related filings to the persons subject of it.  Other items include subpoena service, court filing fees, forensic imaging costs, deposition and transcript charges related to the Bankruptcy Rule 2004 examination of Mr. Palubicki, marketing and other costs associated with the 363 Sale and its closing, and other charges. Garman Decl. ¶ 14. GTG charges all costs at the actual cost, without any profit on such expenses. Garman Decl. ¶ 15. GTG submits that the expenses that it has incurred and paid in rendering legal services to the Trustee during the Compensation Period are reasonable and necessary under the circumstances of the Chapter 11 Cases, and that the reimbursement to GTG for such expenses is appropriate and should be allowed. Garman Decl. ¶ 16.

## VIII.  GTG'S COMPENSATION SHOULD BE ALLOWED ON A FINAL BASIS

**A.      The Application Should Be Approved.**

---

D&O and E&O policies. *See, e.g.*, ECF Nos. 431-2 and 431-3 (collectively, the Carrier Notice Letters).

1    Section 328(a) provides:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and conditions
> of employment, including on a retainer, on an hourly basis, on a
> fixed or percentage fee basis, or on a contingent fee basis.
> Notwithstanding such terms and conditions, the court may allow
> compensation different from the compensation provided under such
> terms and conditions after the conclusion of such employment, if
> such terms and conditions prove to have been improvident in light
> of developments not capable of being anticipated at the time of the
> fixing of such terms and conditions.

"Section 328(a) permits a bankruptcy court to pre-approve, at the time of retention, the

employment of an estate professional 'on any reasonable terms and conditions of employment,

including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent

fee basis.'" *Fann Contracting, Inc. v Garman Turner Gordon LLP*, 593 B.R. 625, 631 (D. Nev.

2018) (citing 11 U.S.C. § 328(a)).

"Section 328 and 330 'inquiries are mutually exclusive, as '[t]here is no question that a

bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their

benefit to the estate if the court already has approved the professional's employment under 11

U.S.C. § 328.'"" *In re Betancourt*, 2022 WL 1272140, *2 (Bankr. D.N.M. 2022) (collecting cases).

"[Section] 328(a) severely limits the bankruptcy court's authority to conduct an after-the-fact

'reasonableness analysis' concerning the value of a professional's services." *Fann Contracting*

593 B.R. at 632 (citing *In re First Magnus Fin. Corp.*, 2009 WL 7809001, *8 (B.A.P. 9th Cir.

2009).  Here, the Employment Application [ECF No. 199] and the Employment Order [ECF No.

293] unambiguously specified that approval of the terms of GTG's employment was sought—and

granted—pursuant to 11 U.S.C. § 328.  *See, e.g.*, ECF Nos. 199 and 293.  *Cf. Fann Contracting*,

593 B.R. at 632 ("To determine whether a professional is employed pursuant to § 328 or § 330,

courts consider whether the 'professional's retention application unambiguously specifies that it

seeks approval under § 328.' (citation omitted)).  As such there can be no question that GTG's

employment was approved under Section 328.

18

"Where a bankruptcy court pre-approves a fee award under § 328, the court may not depart from the terms of the approved fee agreement unless the terms 'prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'" *Fann Contracting*, 593 B.R. at 631 (citing 11 U.S.C. § 328(a)).  Here, no such circumstances are present.  The Employment Application [ECF No. 199] specifically identified, "The Chapter 11 Cases, to the extent they succeed, will involve prosecuting claims that belong to the estates." *See* ECF No. 199 at 2:16-18.  The Employment Application specifically identified the Debtors' lack of sufficient liquid assets, numerous litigation issues, and multiple operating clinics (noting some appear to suffer from associated management issues).  *See* Employment Application ECF No. 199 at 2:15-22.  These have all borne true.  *See generally* Docket.  Even more important to the analysis under Section 328(a), is that none of these circumstances were "not capable of being anticipated at the time of the fixing of" GTG's terms and conditions of employment.  To the contrary.  These circumstances were expressly identified in the Employment Application and were are part of the record considered by the Court when it ultimately granted GTG's Employment Application and entered the Employment Order.

Here, GTG's employment was unambiguously approved pursuant to Section 328(a).  *See* Employment Order ECF No. 293.  To disturb this, the terms and conditions of employment must be "prove[n] to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions[.]"  11 U.S.C. § 328(a).  No such developments are present here, and the compensation requested herein, and the approval of expenses, should be approved in their entirety.  *See* Carmel Decl. ¶ 6.  *See* Garman Decl. ¶ 17.

As noted elsewhere herein, the total amounts requested through this Application reflet two sizeable voluntary discounts (plus a deferral of payment on the amount so approved—at GTG's risk), to ensure more funds are available to pay general unsecured creditors from the Plan's Initial Distribution.  GTG is not seeking any additional compensation beyond that already approved by this Court in the Interim Approval Order [ECF No. 700] and through this Application requests (i) final approval for the reimbursement of $40,899.98 in expenses incurred during the Current Compensation Period, and (ii) final approval of all amounts previously approved through the

1    Interim Approval Order.

2    Here, GTG respectfully submits that the services for which it seeks compensation and the

3    expenditures for which it seeks reimbursement in this Application were necessary for and

4    beneficial to the orderly administration of the estate and effectuation of the Trustee's Plan.  *See*

5    Garman Decl. ¶ 18.  GTG worked to anticipate and respond to Trustee's needs and assist in the

6    Chapter 11 process, and such services and expenditures were necessary to and in the best interests

7    of the Debtors' estates.  *See* Garman Decl. ¶ 19.  GTG's work in these Chapter 11 Cases

8    contributed significantly to their success, and GTG respectfully submits that the Application

9    should be approved in its entirety.  *See* Carmel Decl. ¶ 7.  *See* Garman Decl. ¶ 20.  Accordingly,

10   GTG further submits that the compensation requested herein is reasonable in light of the nature,

11   extent, and value of such services the estates, their creditors, and all parties-in-interest, and thus

12   approval of the Application is warranted.

13                                  **IX. <u>CONCLUSION</u>**

14   WHEREFORE, GTG respectfully requests that the Court enter an order pursuant to

15   Sections 328 and 331 of the Bankruptcy Code:

16   1.    Approving on an interim and final basis the reimbursement of expenses incurred

17   during the Current Compensation Period in the amount of $40,899.98;

18   2.    Approving on a final basis the professional compensation for services rendered and

19   expenses incurred during the Interim Application Period in the amount of $9,338,543.40 in

20   compensation and the reimbursement of actual and necessary expenses in the amount of $42,575.51,

21   for a total of $9,381,118.91; which makes for, in total, this Application seeks final approval of

22   $9,338,543.40 in contingency compensation and $83,475.49 in expense reimbursement, for a

23   grand total of $9,422,018.89;

24   3.    Confirming and making final all orders granting interim compensation in the

25   Chapter 11 Case and approving this Application on a final basis; and

26   4.    Authorizing, empowering, and directing the Trustee to tender payment to GTG for

27   all unpaid fees and expense reimbursements authorized by the Court, and as contemplated under

28   the Plan.

DATED this 10th day of November 2025.

GARMAN TURNER GORDON LLP

By: /s/   Greg Garman
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11
Trustee*