# EXHIBIT 2

EXHIBIT 2

Fill in this information to identify the case:

Debtor 1 NuMale Corporation

Debtor 2
(Spouse, if filing) ______

United States Bankruptcy Court for the: District of Nevada

Case number 25-10341-nmc

RECEIVED AND FILED AM
MAY 22 2025
U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

The N2 Company
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Name: The N2 Company c/o Domenique Schmitt
Number Street: 2093 Philadelphia Pike #3202
City: Claymont State: DE ZIP Code: 19703
Contact phone 844-343-5378
Contact email Domenique.Schmitt@n2co.com

**Where should payments to the creditor be sent? (if different)**

Name ______
Number Street ______
City ______ State ______ ZIP Code ______
Contact phone ______
Contact email ______

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ 920,617.94

**Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money owed

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: ____________________

**Basis for perfection:** ____________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 05/21/2025
MM / DD / YYYY

Domenique Schmitt
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Domenique Schmitt
First name / Middle name / Last name

Title: Legal and Franchise Operations Manager

Company: The N2 Company
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 2093 Philadelphia Pike #3202
Number Street

Claymont DE 19703
City State ZIP Code

Contact phone: 844-343-5378 Email: Domenique.Schmitt@n2co.com

# STATEMENT OF CLAIM

NuMale Corporation
Case No. 25-10341-nmc

| | |
|---|---:|
| Principal Balance as of the Petition Date: | $686,593.14 |
| Interest accrued as of Petition Date (1/1/24-1/22/25): | $131,035.83 |
| Pre-petition Statutory Attorneys' Fees: | $102,988.97 |
| **TOTAL BALANCE DUE:** | **$920,617.94** |

On or about April 25, 2023, NuMale Corporation ("Debtor") executed and delivered to The N2 Company, through its digital services division, Hyport Digital ("Creditor"), fifteen (15) Print and Digital Advertising Orders (collectively, the "Contracts"), under which Debtor purchased certain digital advertising services from Creditor. The Contracts are subject to the online and digital marketing services terms and conditions found on Creditor's website ("Terms and Conditions"). Copies of the Contracts and Terms and Conditions are attached collectively as **Exhibit A**. Pursuant to the Contracts, Creditor agreed to provide services to Debtor beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles. Debtor materially breached and defaulted in its payment obligations under the Contracts, and the Contracts are past due and in default. As of the Petition Date, the total aggregate sum owing on the Contracts is as follows:

| Contract No. | Principal balance as of Petition Date | Accrued Interest as of Petition Date | Balance Due as of Petition Date |
|---|---:|---:|---:|
| 222095 | $34,824.40 | $6,646.21 | $41,470.61 |
| 222098 | $14,493.55 | $2,766.08 | $17,259.63 |
| 222099 | $78,267.10 | $14,937.22 | $93,204.32 |
| 222101 | $107,902.43 | $20,593.10 | $128,495.53 |
| 222103 | $64,924.21 | $12,390.74 | $77,314.95 |
| 222104 | $24,863.08 | $4,745.10 | $29,608.18 |
| 222106 | $9,373.61 | $1,788.95 | $11,162.56 |
| 222107 | $60,828.05 | $11,608.99 | $72,437.04 |
| 222109 | $15,190.39 | $2,899.08 | $18,089.47 |
| 222111 | $80,845.18 | $15,429.25 | $96,274.43 |
| 222114 | $24,826.78 | $4,738.17 | $29,564.95 |
| 222115 | $54,346.78 | $10,372.05 | $64,718.83 |
| 222116 | $22,253.41 | $4,247.05 | $26,500.46 |
| 222117 | $68,826.85 | $13,135.56 | $81,962.41 |
| 222118 | $24,827.32 | $4,738.28 | $29,565.60 |
| **Subtotals:** | **$686,593.14** | **$131,035.83** | **$817,628.97** |

On August 27, 2024, Creditor filed a Verified Complaint with the Clerk of Superior Court of New Hanover County, North Carolina, bearing File No. 24-CVS-3251 ("Lawsuit"), seeking a monetary judgment against Debtor and non-debtor NuMale Medical Center, LLC, for the unpaid balance owing on the Contracts and its reasonable attorneys' fees. On October 4, 2024, Debtor filed a Notice of Removal pursuant to 28 U.S.C. § 1446, removing the Lawsuit to the United States District Court for the Eastern District of North Carolina, bearing File No. 7:24-cv-00927.

Neither the filing of this Proof of Claim nor any action taken pursuant thereto by or on behalf of Creditor shall affect or impair, or be deemed to affect or impair, the provisions of any documents, certificates or agreements executed and/or delivered to Creditor in connection with any liability or obligation of Debtor or any other entity, including, without limitation: (1) any covenant, warranty or other provision contained in any such agreement, document or certificate; and (2) any right, remedy, lien or security interest (including, without limitation, the priority of the lien and security interest), Creditor's rights under insurance policies, and Creditor's rights against any other person or entity created or granted to Creditor pursuant to any other agreement, certificate, document or applicable law.

Creditor reserves the right to further amend and supplement this Proof of Claim and/or to file additional proofs of claim for additional claims. Creditor further reserves all rights accruing to it, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (1) an election of remedy; (2) a waiver of any past, present or future defaults or events of default; or (3) a waiver or limitation of any rights of Creditor.

Creditor asserts the following additional claims, to the extent that any such claims exist, as to all of which Creditor expressly reserves and preserves all rights, notwithstanding anything contained in this Proof of Claim: (1) interest, losses, fees, costs, taxes and charges which, where applicable, have accrued as of the Petition Date, and which continue to accrue; (2) attorneys' fees and costs which have been incurred as of Petition Date, and which continue to be incurred; (3) claims for administrative expenses in amounts not fully ascertainable but to be later provided by amendments; (4) claims arising out of non-performance and/or breaches of the agreements and documents referenced in this Proof of Claim; (5) claims arising out of fraud, negligence, intentional misconduct or any other action of Debtor or Debtor's representatives; (6) rights of setoff or recoupment; (7) rights to reimbursement or indemnification for any loss, liability, damage, expense or cost; (8) rights to estimate contingent claims; and (9) claims which may be presently in amounts not fully ascertainable but to be later provided if such claims are estimated and/or liquidated.

Creditor expressly reserves its right to supplement the claims against the Debtor after full disclosure of all relevant facts in these bankruptcy proceedings,

whether pursuant to Section 1104 or Section 1106 of the Bankruptcy Code, 11 U.S.C. §§ 1104 and 1106, or pursuant to such adversary actions as may be necessary and appropriate. Moreover, this Proof of Claim expressly includes a claim against the Debtor, to the extent any claim exists, whether as Debtor or as Debtor-in-Possession, and all those purporting to act on their behalf for:

a. failure to fulfill their contractual obligations to Creditor including breach of implied covenants of good faith and fair dealing, by reason of (among other things):

i. the transfer of assets, or purported security interests in assets, to any entity when Debtor was insolvent or when such transfer rendered the Debtor insolvent; and

ii. the transfer, disposal, or conversion of any property in which Creditor held a security interest;

b. making, causing or permitting to be made misleading statements regarding the assets or business(es) of the Debtor;

c. negligently undertaking, authorizing or permitting excessive borrowings by the Debtor, which were known or should have been known could not be sustained or repaid;

d. the failure to properly disclose all material and relevant facts relating to the financial condition of the Debtor;

e. the improper and fraudulent acts of the Debtor by certain persons, contrary to the rights and interests and the representations made to Creditor;

f. the improper use, transfer and diversion of the assets of the Debtor to the detriment of Creditor.

# EXHIBIT A

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuMale Medical Albuquerque LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/albuquerque-nm-numale-medical-clinic/ | | |
| ADDRESS | 7920 Wyoming Blvd NE, Ste B-2 | | |
| CITY | Albuquerque | STATE / ZIP | NV / 89118 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt | $4,669.00 | None | $56,028.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $2,000.00 | | $24,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $11,169.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:

ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pullian VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeff Miller |
| ADVERTISER | NuFemme Rejuvenation Clinic Albuquerque | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | nufemme.com/locations/albuquerque/ | | |
| ADDRESS | 7920 Wyoming Blvd NE ste b-2 | | |
| CITY | Albuquerque | STATE | NM |
| ZIP | 87109 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED (MAX 6 ITEMS) |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $6,462.00 | None | $77,544.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $2,000.00 | | $24,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $26 CPM | $1,500.00 | | $18,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $12,962.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law:

General Terms and Conditions:

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin P[illegible] VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeff Miller |
|---|---|---|---|
| ADVERTISER | NuMale Medical Charlotte LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/charlotte-nc-numale-medical-clinic/ | | |
| ADDRESS | 330 Billingsley Rd., STE 210 | | |
| CITY | Charlotte | STATE | NC |
| ZIP | 28211 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.









# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $13,090.00 | None | $157,080.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $3,000.00 | | $36,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $3,000.00 | | $36,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $22,090.00 |

Charges, Payments & Taxes: [illegible]
Auto-Charge Credit Card Payment Terms and Authorization: [illegible]

Applicable Law: [illegible]

General Terms and Conditions: [illegible]

ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Tustin Pullman VP

DATE: 4-27-23



# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeff Miller |
| ADVERTISER | NuMale Medical Chicago LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/chicago-il-numale-medical-clinic/ | | |
| ADDRESS | 4711 Golf Rd. STE 1050 | | |
| CITY | Skokie | STATE | IL |
| ZIP | 60076 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $18,413.00 | None | $220,956.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $6,000.00 | | $72,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $4,000.00 | | $48,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $5,000.00 | | $60,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $33,413.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Foster Pulliam VP

DATE: 4-27-23



# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuMale Medical Denver LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/denver-co-numale-medical-clinic/ | | |
| ADDRESS | 8200 E. Belleview Ave., STE 280E | | |
| CITY | Greenwood Village | STATE | CO |
| ZIP | 80111 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.






# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $4,000.00 | | $48,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $5,000.00 | | $60,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $12,000.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions

ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pulliam VP

DATE: 8-27-23




# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuMale Medical Green Bay LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/green-bay-wi-numale-medical-clinic/ | | |
| ADDRESS | 1525 Park Place, Ste 300 | | |
| CITY | Ashwaubenon | STATE | WI |
| | | ZIP | 54303 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $3,286.00 | None | $39,432.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $2,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $1,000.00 | | $12,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,000.00 | | $12,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $8,286.00 |

Charges, Payments & Taxes:
Auto Charge Credit Card Payment Terms and Authorization.

Applicable Law:

General Terms and Conditions

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pullman VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuFemme Rejuvenation Clinic Green Bay | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | nufemme.com/locations/green-bay/ | | |
| ADDRESS | 1525 Park Place, Ste 300 | | |
| CITY | Howard | STATE | WI |
| ZIP | 54303 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $4,475.00 | None | $53,700.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $1,000.00 | | $12,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,000.00 | | $12,000.00 |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $9,475.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law:

General Terms and Conditions

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pullium VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|
| ADVERTISER | NuMale Medical Las Vegas LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/las-vegas-nv-numale-medical-clinic/ | | |
| ADDRESS | 6590 S. Rainbow Blvd, #250 | | |
| CITY | Las Vegas | STATE | NV |
| ZIP | 89118 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED (IF APPLICABLE) |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.






PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $9,883.00 | None | $118,596.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $2,000.00 | | $24,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $2,000.00 | | $24,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $16,883.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:
Applicable Law:
General Terms and Conditions

ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pullman VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuFemme Rejuvenation Clinic Las Vegas | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | nufemme.com/locations/las-vegas/ | | |
| ADDRESS | 6590 S. Rainbow Blvd, #250 | | |
| CITY | Las Vegas | STATE | NV |
| ZIP | 89118 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $9,127.00 | None | $109,524.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $2,000.00 | | $24,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $26 CPM | $2,000.00 | | $24,000.00 |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $16,127.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pullim V.P.

DATE: 4-27-23

THE N2 COMPANY

04.25.23_01

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuMale Medical Tampa LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/tampa-fl/ | | |
| ADDRESS | 500 N Westshore Blvd, Ste 450 | | |
| CITY | Tampa | STATE | FL |
| ZIP | 33609 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

DESCRIPTION OF GOODS/SERVICES BARTERED

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $2,500.00 | | $30,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $7,500.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:
Applicable Law:
General Terms and Conditions:

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Foster Pullman VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuFemme Rejuvenation Clinic Tampa | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | nufemme.com/locations/tampa/ | | |
| ADDRESS | 500 N Westshore Blvd, Ste 450 | | |
| CITY | Tampa | STATE / ZIP | FL / 33609 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | [illegible] | Ad Mgmt | $5,673.00 | None | [illegible] |
| Display/Mobile Ads | [illegible] | [illegible] CPM | $1,500.00 | | [illegible] |
| Paid Social Ads | [illegible] | Ad Mgmt | $1,500.00 | | [illegible] |
| Over the Top (OTT) | [illegible] | [illegible] CPM | $1,500.00 | | [illegible] |

FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING [illegible]

[illegible]
[illegible]

[illegible]

[illegible]

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP. [signature]

NAME AND TITLE Justin Pelham VP

DATE 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | |
|---|---|---|---|
| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuMale Medical Omaha LLC | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/omaha-ne-numale-medical-clinic/ | | |
| ADDRESS | 444 Regency Parkway Drive, Suite 204 | | |
| CITY | Omaha | STATE | NE |
| ZIP | 68114 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.










# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $5,673.00 | None | $68,076.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $1,500.00 | | $18,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $11,673.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:
Applicable Law:
General Terms and Conditions:

**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: Justin Pellman VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|
| ADVERTISER | NuFemme Rejuvenation Clinic Omaha | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | nufemme.com/locations/omaha/ | | |
| ADDRESS | 444 Regency Parkway Drive, Suite 204 | | |
| CITY | Omaha | STATE | NE |
| ZIP | 68114 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $4,178.00 | None | $50,136.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $1,500.00 | | $18,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $10,178.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions

**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Jordan Pullman VP

DATE: 4-27-23

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|
| ADVERTISER | NuMale Medical Milwaukee | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | www.numalemedical.com/our-locations/milwaukee-wi-numale-medical-clinic/ | | |
| ADDRESS | 2600 N. Mayfair Rd. | | |
| CITY | Wauwatosa | STATE | WI |
| ZIP | 53226 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED |
|---|
| |

| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt. | $9,312.00 | None | $111,744.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt. | $1,500.00 | | $18,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $15,312.00 |

Charges, Payments & Taxes: [illegible]

Auto-Charge Credit Card Payment Terms and Authorization: [illegible]

Applicable Law: [illegible]

General Terms and Conditions: [illegible]

**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pulliam VP

DATE: 4-27-23






# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|
| ADVERTISER | NuFemme Rejuvenation Clinic Milwaukee | | |
| FIRST NAME | Justin | LAST NAME | Pulliam |
| EMAIL | [redacted] | | |
| OFFICE PHONE | [redacted] | CELL PHONE | |
| WEBSITE | nufemme.com/locations/milwaukee/ | | |
| ADDRESS | 2600 N. Mayfair Rd. | | |
| CITY | Wauwatosa | STATE | WI |
| ZIP | 53226 | | |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED (MAX. 60 CHARS) |
|---|
| |

| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt | $8,057.00 | None | $96,684.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $1,500.00 | | $18,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | $14,057.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:

**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: [signature]

NAME AND TITLE: Justin Pullivan

DATE: 4-27-23



These Online and Digital Marketing Services Terms and Conditions ("Marketing Services Terms") govern Hyport Digital's provision of online and digital marketing services (the "Marketing Services"), and are incorporated by reference into and made a part of the Order Form submitted by you, our client. As used here, "we", "our", and "Hyport" mean The N2 Company d/b/a Hyport Digital and its affiliates as applicable; "you", "your" and "Client" mean the customer identified in the Order Form or receiving Marketing Services that you may sign-up for without an Order Form, such as free trials.

The Order Form sets forth the Marketing Services that you are purchasing, the costs, and other relevant details. All Order Forms are subject to acceptance by Hyport in its sole discretion. The Order Form, the Marketing Services Terms, and the documents and/or links referenced in such documents constitute the complete agreement (the "Agreement") and supersede any prior and contemporaneous discussions, agreements or representations and warranties regarding your order.

PLEASE REVIEW THIS AGREEMENT CAREFULLY, INCLUDING THE DISPUTE RESOLUTION PROVISION IN SECTION 16 WHICH DESCRIBES HOW DISPUTES WILL BE RESOLVED, AND THAT NO CLASS ACTIONS MAY BE BROUGHT UNDER THIS AGREEMENT.

1. **Marketing Services.** The Marketing Services may include the following products:

- Media Products, which includes search marketing, targeted display and social ads
- Search Engine Marketing (SEM)
- Search Engine Optimization (SEO)
- Over-the-Top (OTT) / Connected TV (CTV)
- Email Marketing
- Live Chat
- Social Advertising, including Facebook and Instagram
- Reputation Management

The Tracking Services are applicable to all of the Marketing Services, so please review carefully. Click the links above to see additional terms and conditions that govern each of our Marketing Services (the "Product Terms").

2. **Fees and Payment Terms.**

**A. Fees.** In consideration of the Marketing Services, you agree to pay the amounts listed in the Order Form (the "Fees"). There are three general classes of fees: (i) *product fees* are the recurring fees that we charge for the specific product(s) you have purchased; (ii) *service fees* are for the delivery of any premium services that Hyport may offer from time to time; and (iii) *set-up fees* are one-time fees for the set-up of campaigns or other services listed in your Order Form. Hyport may change its Fees at any time, but such changes will *not* take effect until you execute and deliver a new Order Form to Hyport.

**B. Promotional Credits.** If Hyport offers any special promotions that provide you with credits or other incentives relating to the purchase of Marketing Services (the "Promotional Credits"), and you cancel one or more of the Marketing Services before the Initial Term (other than for cause, as set forth below) is completed, you will be required to repay to Hyport the full amount of the Promotional Credit(s).

3. **Payment Terms and Taxes.**

1. **General.** Once Hyport accepts an Order Form, you are responsible for full payment of all Fees, except as may otherwise be provided in Section 4(g) below. The Fees shown are not inclusive of sales, use or similar taxes which may apply.
2. **Payment Method.** You must pay for all amounts payable under this Agreement either by credit card (the "Client Card"), ACH (electronic debit from your bank account) or such other form of payment as Hyport may permit in its sole discretion. You will use the

applicable payment authorization form(s), which may also permit Hyport to recover any Promotional Credits (as set forth above) in the authorized manner. Under certain circumstances and with Hyport's prior approval you may be allowed to pay by check. Regarding payment through ACH, no amounts owing are considered paid until Hyport's bank receives the electronic debit.

3. **Timing of Payment.** Before an initial campaign cycle, you must pay the applicable cycle payment for the initial cycle and any applicable campaign set-up fees. You must also pay the applicable cycle payment in advance of each subsequent campaign cycle. You acknowledge that all amounts owed must be paid in advance of each campaign cycle. If payment is not timely received, in addition to being a breach of your contract obligations, Hyport may pause or terminate your campaign.
4. **Late Payments and Collection of Amounts Owed.** If payments are not received by Hyport within 15 days after becoming due, Hyport may: (1) charge interest on any past-due amounts at the rate of 1.5% per month or as applicable law allows, whichever is greater; and (2) suspend performance of all Services until payment has been made in full. You will be liable for all costs, including reasonable attorney's fees and collection expenses, incurred by us in collecting past due accounts and defending claims asserted in any collection action.
5. **Taxes.** You are responsible for all sales, use and excise taxes, and any other similar taxes, duties and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by you hereunder.
6. **Credit Card Authorization.** You hereby authorize Hyport to charge the Client Card or debit from your account through ACH for Fees in accordance with these Marketing Services Terms and the Product Terms.

4. **Term of Agreement; Cancellation; and Termination.**
   1. **Term.** The Agreement commences upon your submission of an Order Form and will remain in effect until completed or cancelled in accordance with the terms of this Agreement.
   2. **Cancellation.** After the first three (3) cycles of the applicable Marketing Service, you may cancel such Marketing Service at any time and for any reason by notifying and providing 30-days' notice of cancellation to the Area Director or other Hyport sales representative identified on your Order Form; provided however, reputation management services require a minimum 12-month commitment and such services may only be cancelled after 12 months performance. For the avoidance of doubt, this cancellation provision does not apply to print advertising purchased by you from The N2 Company.
   3. **Cancellation Fee.** None.
   4. **Cancellation Revocation.** Within 30 days after you make a cancellation request pursuant to Section 4.b., you may revoke such termination by providing written notice to Hyport (email is acceptable), in which case the Order Form will be reinstated and all applicable campaigns, if they had been stopped, will be re-initiated upon your full payment of all amounts then due and owing.
   5. **Termination for Cause.** Either you or Hyport may terminate the Agreement (which will terminate all current Order Forms) on 30 days prior written notice (the "Notice Period") if the other party is in material breach of its obligations hereunder and such breach is not materially cured by the end of the Notice Period. Hyport does not guarantee the performance of any campaign or any other service and therefore such performance is not a basis for termination under this Section.
   6. Additionally, either party may terminate this Agreement, effective upon written notice to the other party, if the other party: (i) becomes insolvent or is generally unable to pay, or

fails to pay, its debts as they become due; (ii) files or has filed against it a petition for voluntary or involuntary bankruptcy or otherwise becomes subject, voluntarily or involuntarily, to any proceedings under any domestic or foreign bankruptcy or insolvency law; (iii) makes or seeks to make a general assignment for the benefit of its creditors; or (iv) applies for or has appointed a receiver, trustee, custodian, or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business.

7. **Campaign Pauses.** Hyport may pause a campaign at any time for operational reasons. You may also request a pause in a campaign; however, Hyport has the sole discretion to determine if a campaign pause is appropriate under the circumstances. If you request a campaign pause lasting for more than 30 days, you must pay an additional campaign set-up Fee to restart the campaign. Hyport may charge the Client Card or cause payment to be made through ACH or Hyport may invoice you for such additional set-up Fee, which invoice must be paid within fourteen (14) days after the invoice date.
8. **Effect of Termination; Survival.** All provisions of the Agreement that by their nature should survive termination of the Agreement (including, without limitation, all limits of liability, indemnity obligations, and confidentiality obligations) will survive. Without limiting the generality of the foregoing, in the event of any termination, you will remain liable for all amounts due to Hyport as of the effective date of termination. Due to the nature of the internet, certain information regarding you that was posted online pursuant to the Marketing Services may remain available online following termination of Marketing Services and/or the Agreement.

**5. Online Platform.**

1. **Client Data.** As part of the campaign initiation process and from time to time during the campaign, you will provide certain information to Hyport, which Hyport may input into its platforms (the "Platform"). You hereby authorize Hyport to capture your contact information, credit card or ACH information, and campaign information into the Platform. Hyport will only use such information in connection with the fulfillment of the Marketing Services, as the Agreement may otherwise permit, and as may be legally necessary. You also agree that Hyport may, from time to time, use your data to send you emails regarding campaign updates, payment reminders, and marketing opportunities relating to Hyport and its affiliates.
2. **License to Access Performance Platform.** Upon sign-up for a Marketing Service and while your account is in good standing and active, you are granted a revocable, non-transferable, non-sublicensable, non-exclusive, limited license to access any online reporting and marketing services platform (the "Performance Platform") that Hyport makes available in connection with the Marketing Services. Your access will be password protected and you agree not to share your password or otherwise provide access to third parties. If the security of your username(s) or password(s) is compromised, or if you or your agents suspect that it may be compromised, you must immediately contact Hyport. Hyport is not responsible for any loss or damage resulting from any such security compromise. You acknowledge and agree that you do not have, nor will you claim any right, title or interest in the Platform, Performance Platform, software, data, applications, methods of doing business or any elements thereof, or any content provided therein. You may only access the Performance Platform via a web browser or a mobile application. You will not attempt in any way to reverse engineer, alter, modify, eliminate, conceal, or otherwise render inoperable the Performance Platform. Hyport may terminate the foregoing license, at any time and for any reason.

**6. Hyport's Discretion as Service Provider.** In its sole discretion, Hyport may elect not to provide Marketing Services that would result in distribution of content that might be viewed as misleading, obscene or related to illegal activity.

**7. Intellectual Property.**

1. **License to Client Content.** You hereby grant to Hyport and the online properties on which Client Content (defined below) is served by the Marketing Services (the "Publishers") a non-exclusive, royalty-free, worldwide license to use, copy, modify (as permitted herein), publicly perform, display, broadcast and transmit during the term of this Agreement (i) any text, images, logos, trademarks, service marks, promotional materials, product or service information, comments, reviews, photos, audio and video clips and other information ("Client Content") you provide in connection with Marketing Services and (ii) your native web site (the "Existing Site"), to the extent necessary for Hyport to perform the Marketing Services, including to perform automated scans of text data and publicly available content on the Existing Site in order to improve the performance of your Marketing Services and/or recommend other Marketing Services. Except as set forth in any Product Terms and this Agreement, title to and ownership of all intellectual property rights of all Client Content will remain with you or your third-party licensors. Hyport may, during the term of this Agreement and thereafter, include your name (including any trade name, trademark, service mark and logo) on Hyport's client list, and in its marketing materials.
2. **Hyport Creative Services.** Except as may be otherwise provided in any Product Terms, if you request that Hyport provide creative services, you will remain fully responsible for any content you provide to Hyport. With respect to any content created by Hyport, as between you and Hyport, Hyport will retain ownership of the design elements of such content, excluding any of your trade names, trademarks, service marks or logos or other proprietary elements that may be included within such content, but that predate the creation of the content. Hyport does not assume any obligation to perform a legal review of your digital marketing, and you remain solely responsible for legal and regulatory compliance and for the content of the Marketing Services.

**8. Client Privacy Policy.** You must post, maintain, and comply with a privacy policy on your Existing Site. The privacy policy must comply with all applicable laws, and you must ensure that it does not contain provisions that are inconsistent with the nature of the Marketing Services that Hyport provides to you. Your failure to maintain a privacy policy that complies with the foregoing requirements may (i) result in the suspension of your campaign and (ii) expose you and Hyport to liability which you shall fully indemnify Hyport.

**9. Client Representations, Warranties and Covenants.** You represent and warrant that you have the right and authority to enter into this Agreement. You also represent, warrant and covenant that the Existing Site, any content linked to the Existing Site and any content or materials that you provide to Hyport, do not and will not: (a) infringe on any third party's copyright, patent, trademark, trade secret, moral right or other proprietary rights or right of publicity or privacy; (b) violate any law, statute, ordinance or regulation, including, without limitation, laws and regulations governing export control, false or misleading advertising or unfair competition; (c) be defamatory or libelous; (d) be pornographic or obscene; or (e) contain viruses, trojan horses, worms, time bombs, cancelbots or other similar harmful or deleterious programming routines. You further represent, warrant and covenant that the product or service being promoted through any campaign is (i) lawful and (ii) not the subject of any ongoing investigation by any local, state or federal regulatory or quasi-regulatory authorities.

**10. Indemnification.**

Case 25-10341-nmc Doc 828-2 Entered 11/04/25 15:39:33 Page 43 of 48

1. You will indemnify, defend (with counsel reasonably acceptable to Hyport) and hold harmless Hyport, the Publishers, their subsidiaries, affiliates and parent companies and each of their respective directors, officers, agents and employees and each of their successors and assigns from and against any and all claims, liabilities, damages, losses, costs, expenses, fees of any kind (including without limitation reasonable attorneys' fees and expenses) incurred in connection with any claim, action or proceeding arising from or relating to: (i) your breach of any representation, warranty, covenant or other obligation contained in this Agreement; (ii) your violation of any third-party rights, including intellectual property, privacy, publicity or other proprietary rights; (iii) the sale, license, supply or provision of your goods or services; or (iv) any other act, omission or misrepresentation by you. Hyport reserves the right, at its own expense, to assume the exclusive defense and control of any matter otherwise subject to your indemnification, and in such event you will reasonably cooperate with Hyport in such defense. Without Hyport's prior written consent, you will not enter any settlement or compromise any claim, which settlement or compromise would result in any liability to, or any admission of wrongdoing by, any indemnified person or entity.
2. Hyport will indemnify, defend, and hold you harmless from and against any loss, damage, cost, liability or expense (including reasonable legal fees and expenses) arising out of any claim that any Hyport technology used in connection with its provision of the Marketing Services infringes the copyright, patent, trade secret or other proprietary rights of any third party, provided that you promptly notify Hyport of such claims and that you assist as may be reasonably required to defend such matters.

**11. Agency.** If you are purchasing advertising on another company's behalf, you represent and warrant that such company authorized you to act as its agent in all respects relating to the Agreement, including elections or consents. Without limiting the generality of the foregoing, you agree on such company's behalf that such company is aware of and agrees to this Agreement. You and each such company will be jointly and severally liable for performance of obligations under this Agreement, including all payment obligations.

**12. Confidentiality**. Except as applicable law may require, you shall not disclose (i) the contents of any Order Form to any third party (other than employees and representatives who are notified of and agree to this restriction) without Hyport's prior written consent, or (ii) any Confidential Information regarding Hyport. "Confidential Information" means information about Hyport's (or its suppliers') business, products, technologies (including the Platforms), strategies, financial information, operations or activities that is proprietary and confidential, including without limitation all business, financial, technical and other information disclosed by Hyport. Confidential Information will not include information that you can establish is in or enters the public domain without breach of these confidentiality obligations.

**13. DISCLAIMER OF WARRANTIES.**

1. **HYPORT PROVIDES ALL MARKETING SERVICES** HEREUNDER ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT ANY WARRANTY OF ANY KIND AND WITHOUT ANY GUARANTEE OF CONTINUOUS OR UNINTERRUPTED AVAILABILITY. IF THE MARKETING SERVICES ARE INTERRUPTED OR DELAYED, HYPORT'S SOLE OBLIGATION WILL BE TO RESTORE SUCH SERVICES AS SOON AS PRACTICABLE. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, HYPORT DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. HYPORT WILL HAVE NO LIABILITY FOR ANY: (i) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT OR INFORMATION; (ii) CLAIMS RELATING TO

INFRINGEMENT OF ANY THIRD PARTY'S INTELLECTUAL PROPERTY (OTHER THAN BY THE PLATFORM) OR DEFAMATION; (iii) PERSONAL INJURY OR PROPERTY DAMAGE RESULTING FROM YOUR ACCESS TO OR USE OF ANY OF THE MARKETING SERVICES; (iv) UNAUTHORIZED ACCESS TO OR USE OF HYPORT'S SERVERS OR OF ANY PERSONAL OR FINANCIAL INFORMATION; (v) INTERRUPTION OF TRANSMISSION TO OR FROM THE MARKETING SERVICES; (vi) BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE WHICH MAY BE TRANSMITTED ON OR THROUGH THE MARKETING SERVICES BY ANY THIRD PARTY; (vii) LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF THE USE OF ANY CONTENT POSTED, E-MAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE ON OR THROUGH THE MARKETING SERVICES; OR (viii) MATTERS BEYOND HYPORT'S REASONABLE CONTROL. HYPORT DOES NOT WARRANT, ENDORSE, GUARANTEE, OR ASSUME RESPONSIBILITY FOR ANY PRODUCT OR SERVICE ADVERTISED OR OFFERED BY A THIRD PARTY ON OR THROUGH THE OFFERINGS OR ANY LINKED WEBSITE. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM HYPORT OR THROUGH THE MARKETING SERVICES WILL CREATE ANY WARRANTY NOT EXPRESSLY MADE IN THESE MARKETING SERVICES TERMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, HYPORT MAKES NO GUARANTEES WITH RESPECT TO THE PERFORMANCE OF ANY CAMPAIGN OR ANY PRODUCT OR SERVICE.

14. **LIMITATIONS OF LIABILITY**.

1. IN LIEU OF REFUND, HYPORT MAY, IN ITS SOLE DISCRETION, PROVIDE "MAKEGOOD" MARKETING SERVICES, PROVIDED SUCH "MAKEGOOD" MARKETING SERVICES ARE PROVIDED WITHIN A REASONABLE PERIOD OF TIME AFTER THE LIABILITY HAS ACCRUED.
2. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY WILL BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, FOR CONTRACT BREACH OR WARRANTY, NEGLIGENCE OR STRICT LIABILITY), OR FOR INTERRUPTED COMMUNICATIONS, LOSS OF USE, LOST BUSINESS, LOST DATA OR LOST PROFITS (EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF ANY OF THE FOREGOING), ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. THE FOREGOING EXCLUSION OF LIABILITY WILL NOT APPLY TO (i) EITHER PARTY'S INDEMNIFICATION OBLIGATIONS, INCLUDING ANY AMOUNTS PAYABLE IN CONNECTION THEREWITH; (ii) TO YOUR CONFIDENTIALITY OBLIGATIONS; AND/OR (iii) EITHER PARTY'S WILLFUL MISCONDUCT.
3. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, UNDER NO CIRCUMSTANCES SHALL HYPORT'S CUMULATIVE, AGGREGATE LIABILITY TO YOU OR ANY THIRD PARTY EXCEED THE AMOUNTS RECEIVED BY HYPORT FROM YOU DURING THE 12-MONTH PERIOD IMMEDIATELY BEFORE THE INCIDENT GIVING RISE TO SUCH LIABILITY.
    a. If a jurisdiction applicable to you does not allow the exclusion of certain warranties or the limitation or exclusion of liability for incidental or consequential damages, such limitations and disclaimers listed above will not apply to you. To the extent applicable law restrict Hyport from disclaiming any implied warranty or limit its liabilities, the scope and duration of such warranty and the extent of Hyport's liability will be the minimum permitted under such law.
4. Each party acknowledges that the other party relied on the limitations of liability set forth herein when entering the Order Form, and that the same are an essential basis of the parties' bargain.

Claim 15 Filed 10/24/25 Page 44 of 47

**15. Applicable Law, Dispute Resolution.**

1. **Governing Law.** Except to the extent governed by federal law, all matters arising out of or relating to this Agreement are governed by and construed in accordance with the internal laws of Texas without giving effect to any choice or conflict of law provision or rule (whether of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of Texas. Client and Hyport acknowledge that the agreements regarding applicable law, forum, and venue set forth in this Section 15 provide each of the parties with the mutual benefit of uniform interpretation of this Agreement and any dispute arising out of this Agreement or the relationship created by this Agreement. Client and Hyport further acknowledge the receipt and sufficiency of mutual consideration for such benefit.
2. **Exclusive Dispute Resolution Mechanism.** Except for the specific types of disputes identified below in Section 15(d)(8), the parties shall resolve any dispute, controversy, or claim arising out of or relating to the parties' relationship or this Agreement, or the breach, termination or invalidity hereof (each, a "Dispute"), under the provisions of Sections 15(a) through 15(f). The procedures set forth in Sections 15(a) through 15(f) shall be the exclusive mechanism for resolving any Dispute that may arise from time to time Section 15(c) is an express condition precedent to binding arbitration of the Dispute.
3. **Negotiations.** Except for the specific types of disputes identified below in Section 15(d)(8), the parties agree that with respect to any Dispute, Hyport and Client shall negotiate in good faith to informally resolve the Dispute. If the Dispute is not resolved satisfactorily within 60 days after Hyport or Client receives notice in accordance with Section 22 (if Hyport), or to the address identified on the Order Form (if Client), either party can submit the Dispute to binding arbitration in accordance with the below arbitration provision.
4. **Arbitration.**
   a. Any dispute, controversy, or claim arising out of, in connection with, or relating to this Agreement, and the relationships created hereby; or the formation, interpretation, breach, termination, or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, must be resolved by arbitration. The arbitration must be administered in accordance with the Commercial Rules of the AAA. There will be one arbitrator. The arbitrator(s) must be experienced in commercial contract law and have no prior business or professional relationship with either party. All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) ("FAA"). Formal discovery will only be permitted upon a showing of good cause and subject to the arbitrator's approval. The arbitration may be held by video conference or by written submissions if Client and Hyport mutually agree. The parties intend and agree that any state laws attempting to prohibit arbitration or void out-of-state forums for arbitration are preempted by the FAA and that arbitration will be held as provided in this Section 15(d). The arbitrator must provide a reasoned award in writing. The award rendered by the arbitrator will be final, and judgment may be entered thereon in any court having jurisdiction thereof.
   b. The costs and expenses of arbitration paid to the AAA and to the arbitrator will initially be paid equally by the two sides to the arbitration. All other arbitration-related expenses, including but not limited to attorneys' fees and travel expenses, will be paid initially by the party which incurred such expense. Notwithstanding the foregoing, the arbitrator(s) must award to the prevailing party the reasonable costs and fees, including attorneys' fees, incurred in the arbitration. After an arbitration is commenced, if the Claimant makes a written settlement offer that the other party ("Respondent") rejects, and Claimant is the prevailing party in

arbitration and recovers an amount equal to or greater than Claimant's offer of settlement, Claimant shall recover his, her or its reasonable attorneys' fees and expenses incurred in investigating, preparing for, and pursuing a claim in arbitration up to $25,000. After an arbitration is commenced, if the Respondent makes a written settlement offer that the Claimant rejects, and Claimant either does not prevail in arbitration or does not recover more in the arbitration than Respondent's offer settlement (exclusive of attorneys' fees or costs awarded to Claimant by the arbitrator), then Respondent shall recover his, her or its reasonable attorneys' fees and expenses incurred in investigating, preparing for, and defending the claim in arbitration up to $25,000.

c. The arbitration shall take place in the state and county in which Client is located or in the city in which Hyport maintains its principal business office at the time of the arbitration, in accordance with the initiating party's ("Claimant's") preference.

d. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ARBITRATION WILL PROCEED SOLELY ON AN INDIVIDUAL BASIS WITHOUT THE RIGHT FOR ANY DISPUTES TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF OTHERS. DISPUTES MAY NOT BE JOINED OR CONSOLIDATED WITH ANY OTHER ARBITRATION UNLESS AGREED TO IN WRITING BY ALL PARTIES.

e. The arbitrator has no power or authority to award punitive damages and, with respect to any claim for damages, the arbitrator(s) is authorized to award only actual damages sustained by a party.

f. If Hyport or Client files in court any claim that should have been brought in arbitration under this Section 15(d), and the other party succeeds in a motion to compel arbitration of such claim, the party filing such claim in court must reimburse the other party its reasonable attorneys' fees and costs for defending against the lawsuit and for its motion to compel arbitration. Further, if prior to an arbitrator's final decision, either Client or Hyport commences an action in any court for a claim that arises out of or relates to this Agreement (except for the purpose of enforcing this arbitration provision or as otherwise permitted by this Agreement), the party bringing the action in court will be responsible for the other party's expenses of enforcing this arbitration provision, including court costs, arbitration filing fees, and other costs and attorneys' fees.

g. Client will not assert any claim or cause of action against Hyport or its officers, directors, shareholders, employees, or affiliates after one year following the event giving rise to such claim or cause of action.

h. Notwithstanding the foregoing provisions of this Section 15(d), Disputes related to or based on (i) past due monies owed pursuant to this Agreement, or (ii) patent, copyright, trademark, or trade secret right of Client, Hyport or any affected third party (collectively, "Intellectual Property Rights") may be brought in court.

i. Hyport reserves the right to amend this arbitration provision at any time and will notify Client of such amendments. Client's continued use of the services after receiving notice of any changes to this Section 15 is affirmation of Client's consent to such changes.

   - Notwithstanding the foregoing, each party retains the right to apply to any court of competent jurisdiction for provisional and/or conservatory relief, including injunctions or pre-arbitral attachments, and any such request will not be deemed in-compatible with the agreement to arbitrate or a waiver of the right to arbitrate. Client hereby irrevocably consent to personal jurisdiction in the state and federal courts located in the county in which Hyport maintains its principal place of business for this purpose.

- To the extent that litigation is permitted in accordance with the above provisions, or in the event that, notwithstanding the above provisions, it is ultimately determined that a particular claim is not arbitrable under applicable law, the following provisions will apply:

j. **VENUE AND JURISDICTION.** ANY ACTION BROUGHT BY ANY PARTY AGAINST THE OTHER IN ANY COURT, WHETHER FEDERAL OR STATE, MUST BE BROUGHT EXCLUSIVELY WITHIN THE COUNTY OR THE FEDERAL JUDICIAL DISTRICT WHERE HYPORT'S PRINCIPAL BUSINESS OFFICE IS LOCATED. CLIENT HEREBY SUBMITS TO THE JURISDICTION OF THOSE COURTS FOR PURPOSES OF ANY SUCH PROCEEDING AND WAIVE ANY OBJECTIONS TO JURISDICTION AND ANY CLAIM THAT SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM OR THAT VENUE IS IMPROPER. NOTWITHSTANDING THE ABOVE, WITH RESPECT TO ANY ACTION WHICH INCLUDES INJUNCTIVE RELIEF OR OTHER PROVISIONAL RELIEF, ANY PARTY MAY BRING SUCH ACTION IN ANY COURT IN ANY STATE WHICH HAS JURISDICTION.

k. **WAIVER OF JURY TRIAL.** CLIENT AND HYPORT HEREBY IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM AGAINST THE OTHER, WHETHER OR NOT THERE ARE OTHER PARTIES IN SUCH ACTION OR PROCEEDING.

l. **WAIVER OF PUNITIVE DAMAGES.** THE PARTIES HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM OF ANY PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER AND AGREE THAT IN THE EVENT OF A DISPUTE BETWEEN THEM, CLAIMS FOR DAMAGES WILL BE LIMITED TO THE RECOVERY OF ANY ACTUAL DAMAGES SUSTAINED BY A PARTY.

m. **Attorneys' Fees.** If either party commences a legal action against the other party arising out of or in connection with this Agreement, the prevailing party will be entitled to have and recover from the other party its reasonable attorneys' fees and costs of suit.

**16. Entire Agreement**. The Agreement (which includes the Order Form, all applicable Product Terms and any payment authorization forms) sets forth the entire agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties as to the subject matter hereof. It may be changed only by a writing signed by both parties. Changes to Order Forms then in effect may be by email, provided that such changes are limited to amounts being paid under the Order Form or a change in the Order Form's term.

**17. Waiver.** No waiver by Hyport of any of the provisions of this Agreement is effective unless explicitly set forth in writing and signed by Hyport. No failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement operates or may be construed as a waiver thereof. No single or partial exercise of any right, remedy, power, or privilege hereunder precludes any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**18. Force Majeure.** Neither party shall have any liability for any failure or delay in fulfilling or performing any term of this Agreement when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of such party, including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other civil unrest, national emergency, revolution, insurrection, epidemic, lock-outs, strikes or other labor disputes (whether or not relating to either party's workforce), or restraints or delays affecting carriers or inability or delay in

obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage.

**19. Assignment**. You may not assign any Order Form or the Agreement without Hyport's prior written consent. Any purported assignment or delegation in violation of this Section is null and void. The parties' rights and obligations will bind and inure to the benefit of their respective successors, heirs, executors and joint administrators and permitted assigns.

**20. Relationship of the Parties.** The parties' relationship is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment, or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever.

**21. Third Party Beneficiaries.** You understand and acknowledge that the Publishers are intended third-party beneficiaries of Sections 7, 9, 10 and 14. Except as expressly stated, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**22. Notices**. All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "Notice") shall be in writing and addressed to the parties at the addresses set forth in the Order Form or to such other address that may be designated by the receiving party in writing. All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), facsimile or email (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt of the receiving party, and (b) if the party giving the Notice has complied with the requirements of this Section. Notice may be sent to Hyport via email to legal@n2co.com.

**23. Severability**. If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force without being impaired or invalidated in any way.

**24. Third-Party Services.** Some or all Marketing Services may incorporate third-party products and services and Hyport may do so without your consent, provided that Hyport remains primarily liable for the performance of its obligations to you.

Last updated on November 7, 2022