GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel, Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Lead Case No.: 25-10341-nmc |
|---|---|
| NUMALE CORPORATION, | Chapter 11 |
| ☐ AFFECTS THIS DEBTOR, | *Jointly administered with:* |
| ☐ AFFECTS FELICIANO NUMALE NEVADA PLLC, | Feliciano NuMale Nevada PLLC Case No. 25-10342-nmc |
| ☐ NUMEDICAL SC, | NuMedical SC Case No. 25-10343-nmc |
| ☐ NUMALE COLORADO SC, | NuMale Colorado SC Case No. 25-10344-nmc |
| ☐ NUMALE FLORIDA TB PLLC, | NuMale Florida TB PLLC Case No. 25-10345-nmc |
| ☐ NUMALE NEBRASKA LLC, | NuMale Nebraska LLC Case No. 25-10346-nmc |
| ☐ NUMALE NEW MEXICO SC, | NuMale New Mexico SC Case No. 25-10347-nmc |
| ☒ NUMALE ALL DEBTORS, | |
| Debtors. | Hearing Date: January 13, 2026 Hearing Time: 9:30 a.m. |

**OBJECTION TO CLAIM NO. 6, TO CLAIM NO. 7, AND TO THE REQUEST OF MAYFAIR MALL, LLC FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

1

Michael Carmel, the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC, as the Liquidating Trustee of the NuMale Liquidation Trust and as the sole person with control and authority over each of the Reorganized Debtors and their property (all capacities together, the "Trustee") hereby files the *Objection to Claim No. 6, to Claim No. 7, and to the Request of Mayfair Mall, LLC for Payment of Administrative Expense Claim* (the "Objection").[1] The Objection seeks to disallow Claim No. 6, Claim No. 7, and the *Request of Mayfair Mall, LLC for Payment of Administrative Expense Claim* [ECF No. 809] (collectively, the "Claim"), filed by Mayfair Mall, LLC ("Mayfair"), in its entirety. Among other issues, Mayfair did not have a lease with any of the Debtors.

This Objection is made and based upon the following Memorandum of Points and Authorities; the declaration of Michael W. Carmel, Esq. ("Carmel Decl.") filed concurrently herewith; the papers and pleadings on file herein, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any argument of counsel and further evidence entertained by the Court at the hearing on this Objection.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
INTRODUCTION**

This Objection is brought to address two proofs of claim filed by Mayfair, plus a request for payment of administrative expenses—all premised on the contention that Mayfair is a lessor who is owed monies for pre- and post-petition rent as well as rejection damages, for Premises that the Debtors did not lease from Mayfair, that are based on Leases that Mayfair had with non-Debtors, and which certain of the Debtors co-occupied with non-Debtors. As set forth herein, Mayfair's Claim should be disallowed. The documentation included with the Claim does not carry

---

[1] Claim No. 6 is attached hereto as **Exhibit 2**; Claim No. 7 is attached hereto as **Exhibit 3**; the *Request of Mayfair Mall, LLC for Payment of Administrative Expense Claim* [ECF No. 809] is attached hereto as **Exhibit 4**.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Mayfair's burden of showing that the amounts requested through the Claim are an obligation of any of the Debtors, and, as such, the documentation attached to the Claim does not substantiate the amounts sought through the Claim (which total $229,055.94). Accordingly, Claim No. 6, Claim No. 7, and the Administrative Claim Request [ECF No. 809] should be disallowed.

## II.
## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1001(b)(1). This Objection is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (O). Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Objection is a "core proceeding" over which the Court has jurisdiction to render a decision.

The statutory bases for the relief requested herein are Sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007.

Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## BACKGROUND

1. On or about February 9, 2021, Mayfair entered into a *Wisconsin Full-Service Office Lease* with NuMale Medical Center, LLC ("NMC"), for premises commonly identified as Suite 1140 of the Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, Wisconsin, 53226 ("1140 Premises"), which lease was amended by way of a *First Amendment to Lease* dated on or about October 8, 2021, between Mayfair and NMC, and further amended by way of a *Second Amendment to Lease* dated on or about October 19, 2022, between Mayfair and NMC (collectively altogether, the "1140 Lease"). *See* **Exhibit "1"** to Carmel Decl.

2. NMC is not a Debtor and is not controlled by a Debtor. *See* ECF No. 90.

3. On or about February 9, 2021, Mayfair entered into a separate *Wisconsin Full-*

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Service Office Lease* with NMC for premises commonly identified as Suite 1150 of the Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, Wisconsin, 53226 ("1150 Premises"), which lease was amended by way of a *First Amendment to Lease* dated on or about October 8, 2021, between Mayfair and NMC (collectively altogether, the "1150 Lease").  *See* **Exhibit "2"** to Carmel Decl.

4. Neither the 1140 Premises nor the 1150 Premises (collectively, the "Premises") are leased by a Debtor.

5. Neither the 1140 Lease nor the 1150 Lease (collectively, the "Leases") are with a Debtor.

6. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases").  *See, e.g.*, ECF No. 1.

7. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates.  *See* ECF No. 132.

8. On April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("U.S. Trustee"), appointed the Trustee as the Chapter 11 trustee for Debtors' estates.  *See* ECF No. 140.

9. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving Trustee Carmel's appointment.  Later that same morning, the U.S. Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

10. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*.  *See, e.g.*, ECF No. 209.

11. On May 5, 2025, Trustee Carmel filed his *Motion for Entry of Order (A) Setting a Bar Date for Filing Proofs of Claim and (B) Approving Notice Thereof* [ECF No. 237], which was ultimately granted by the Court [ECF No. 289] ("Bar Date Order").

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

12. The Bar Date Order established June 30, 2025, at 11:59 p.m. prevailing Pacific Time as the general bar date ("Claims Bar Date").  *See* ECF No. 289 at ¶ 3(a).

13. Mayfair did not file its proofs of claim until November 10, 2025, five months after the Claims Bar Date.  *See generally* Debtors' Claims Registers.

14. On August 1, 2025, the Trustee filed the *Joint Plan of Reorganization* [ECF No. 434] (together with all supplements and amendments thereto, and, as confirmed, the "Plan").[2]

15. In connection with Mayfair's objection to the Plan, the Trustee raised the fact that Mayfair did not have a Lease with any of the Debtors, but acknowledged that certain of the Debtors had utilized the space.  *See* ECF No. 651.

16. The Plan was confirmed.  *See* ECF Nos. 726 (*Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization*) and 727 (*Order Confirming the Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization*).

17. Under the confirmed Plan, the deadline to file an Administrative Claim is "The first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date."  *See* Plan ECF No. 434 at § 1.1.9.

18. The Plan's Effective Date occurred on October 24, 2025.  *See* ECF No. 762.

19. Pursuant to the terms of the confirmed Plan, the Administrative Claim Bar Date was November 10, 2025.  *See* Carmel Decl. ¶ 6.

20. On November 10, 2025, regarding the 1140 Premises Mayfair filed Claim No. 6 ("Claim 6") asserting $127,075.55 is owed on the basis of "Non-Residential Real Estate Lease Obligation," of which $8,248.92 is asserted to be owed as of the Petition Date (the "1140 Prepetition Portion") and $16,853.13 is asserted to be owed as priority under 11 U.S.C. § 507(a)(2) (the "1140 Postpetition Priority Portion"); and the amount of $118,826.63 is asserted as rejection damages (the "1140 Rejection Damages Component").

---

[2] All capitalized terms not otherwise defined herein shall have the meaning(s) ascribed to them in the Plan.

5

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

21.     On November 10, 2025, regarding the 1150 Premises Mayfair filed Claim No. 7 ("Claim 7") asserting $61,209.70 is owed on the basis of "Non-Residential Real Estate Lease Obligation," of which $8,236.82 is asserted to be owed as of the Petition Date (the "1150 Prepetition Portion"; collectively with the 1140 Prepetition Portion, the "Prepetition Portions"), and $21,917.56 is asserted to be owed as priority under 11 U.S.C. § 507(a)(2) (the "1150 Postpetition Priority Portion"); and the amount of $52,972.88 is asserted as rejection damages (the "1150 Rejection Damages Component"; together with the 1140 Rejection Damages Component, the "Rejection Damages Component").

22.     Also on November 10, 2025, Mayfair filed the *Request of Mayfair Mall, LLC for Payment of Administrative Expense Claim* [ECF No. 809] (the "Administrative Claim Request"). The Administrative Claim Request was not set for hearing by Mayfair and has therefore not been adjudicated. *See* Docket.

23.     The Administrative Claim Request seeks a total of $38,770.69 to be paid as an Administrative Claim on the basis of post-petition rent for the Premises and also requests an additional amount of $2,000.00 on a contingent basis for clean-up of medical waste remaining on Premises after they were vacated and returned to Mayfair on October 24, 2025.

24.     Under the confirmed Plan, the deadline to file an objection to claim is "not later than the first (1st) Business Day that is thirty (30) days after the Effective Date[,] . . ." *See* ECF No. 434 at § 11.1.2.

25.     This Objection is timely filed in accordance with the confirmed Plan.

### III.
### LEGAL ARGUMENT

**A.      The Administrative Claim Request, the 1140 Postpetition Priority Portion, and the 1150 Postpetition Priority Portion Should All Be Disallowed.**

Section 503(b)(1)(A) provides:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1) the actual, necessary costs and expenses of preserving the estate including—[wages, salaries, and commissions; and, under certain circumstances, wages and benefits.]

6

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*See* 11 U.S.C. § 503(b)(1).

"The burden of proving an administrative expense claim is on the claimant." *In re DAK Indust., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995) (citation omitted). The claimant:

> [M]ust show that the debt asserted to be an administrative expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate.

*DAK Indust.*, 66 F.3d at 1094 (citation and internal quotation notation omitted). This test is conjunctive. The Ninth Circuit has adopted this approach "[t]o limit the administrative expense priority to those situations where the purpose of rehabilitation will be served, . . ." *In re Abercrombie*, 139 F.3d 755, 757 (9th Cir. 1998). "'[T]he actual, necessary costs and expenses of preserving the estate, . . . are construed narrowly.'" *DAK Indust.*, 66 F.3d at 1094, citing *In re Palau*, 139 B.R. 942, 944 (B.A.P. 9th Cir. 1992) (*aff'd*, 18 F.3d 746 (9th Cir. 1994)).

The Administrative Claim Request[3] makes much of Section 365 of the Bankruptcy Code, and obligations between the parties to leases, but it entirely overlooks that Mayfair does not and did not have a lease with the Debtors. *See* **Exhibits 1 and 2** to Carmel Decl. Beyond the Leases themselves, Mayfair's "A/R Details with Aging" confirm that the "Tenant" was NuMale Medical Center, LLC"—a non-Debtor. *See* Claim No. 6, p. 5 and Claim No. 7, p. 5. Because Mayfair's Leases are not with the Debtors, a point the Trustee previously raised with this Court in connection with Plan confirmation, Mayfair cannot enforce its Leases against the Debtors.

Additionally, although Mayfair was listed on Schedule 6.1 to the Plan [ECF No. 648], this listing was in an abundance of caution to ensure it was absolutely clear that the Debtors were not assuming the Leases. Schedule 6.1 specifically states, "For clarity and the avoidance of doubt, the listing of any contract or lease herein **is not an admission by the Trustee, the Debtors, the**

---

[3] The Administrative Claim Request seeks payment of the same $38,770.69 that is asserted in the 1140 Postpetition Priority Portion and the 1150 Postpetition Priority Portion combined. For these reasons, all argument and evidence respecting the disallowance of the Administrative Claim Request are applicable to both the 1140 Postpetition Priority Portion and the 1150 Postpetition Priority Portion as though expressly set forth herein.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**Estates, or otherwise**…." *See* ECF No. 648 at p. 1 l.27 (emphasis added). Mayfair is not entitled to the treatment espoused in the Administrative Claim Request because it does not have a lease with the Debtors. It does, however, have Leases with NMC, a non-Debtor. Accordingly, the Administrative Claim Request's emphasis on the legislative history of Section 365 is inapt because Mayfair's Leases are not with the Debtors.

Additionally, the Estates did not solely occupy the Premises, as reflected by the Leases themselves and as acknowledged on Mayfair's own "A/R Details with Aging." *See* Carmel Decl. ¶ 7 and Exs. 1 and 2; *see* Claim No. 6, p. 5; *see* Claim No. 7, p. 5. Therefore, the Trustee not making timely payments in full for all post-petition rent for both Premises is not a "violation of the mandate of the Bankruptcy Code[.]"[4] Rather, it is reasonable that as both Debtors and non-Debtors occupied the Premises, the Debtors should not bear the full amount of all pre- and post-petition rent. The primary case on which Mayfair relies for its argument that the Trustee is mandated to immediately pay rent to Mayfair, *In re Pacific-Atlantic Trading Co.*, 27 F.3d 401 (9th Cir. 1994), was a Chapter 7 case in which the Debtor was a tenant on the lease and also had a sublease with a non-Debtor. Because none of the Debtors were a party to the Leases, *In re Pacific-Atlantic Trading Co.* is not pertinent to the facts and circumstances here.

Therefore, assuming *arguendo* that Mayfair could quantify value actually provided to Debtors post-petition sufficient to satisfy Section 503, perhaps Mayfair could establish a small administrative claim; however, it certainly would not be the full $38,770.69 in post-petition rent due under a lease with a non-Debtor.

Mayfair bears the burden of proof on its Administrative Claim Request. Because Mayfair does not have Leases with any Debtors, and has not satisfied its burden under Section 503 to establish the benefit and value of such benefit received by the Debtors, the Administrative Claim Request (and, the duplicative 1140 Postpetition Priority Portion and 1150 Postpetition Priority Portion) must be denied.

---

[4] *See* Administrative Expense Request ECF No. 809 at 5:18-21.

### 1. The Trustee is Actively Addressing the Disposal of Medical Waste, and, as Such, the Contingent Administrative Claim of $2,000.00 Should Be Denied.

Although the Debtors did not solely occupy the Premises, after the Premises were vacated Mayfair's counsel identified that certain small items of medical waste appear to have not been disposed of as of October 24, 2025. In response, the Trustee retained and paid Veolia North America to remove the limited medical-related items remaining on Premises. *See* Carmel Decl. ¶ 8. As such, the additional "contingent" and not-yet-incurred expense reimbursement requested by Mayfair of $2,000.00 should be denied. Not only has this expense not actually been incurred by Mayfair (nor has Mayfair proven that it incurred this expense), but the Trustee has already paid an appropriate vendor to carry out the removal of this medical-related waste.

### B. Claim 6 and Claim 7 Should Also Be Disallowed.

Section 502(a) provides that any proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b) and Bankruptcy Rule 3007 permit a party in interest to object to a filed proof of claim. An objection to a proof of claim initiates a contested matter and requires that a hearing be held. *See* 11 U.S.C. § 502(b); FED. R. BANKR. P. 3007(a); Local Rule 3007(c).

The Ninth Circuit Court of Appeals has described the shifting burdens of proof with respect to objections to proofs of claim as follows:

> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the Proof of Claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. ***But the ultimate burden of persuasion is always on the claimant.*** Thus, it may be said that the Proof of Claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more.

9

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quotations and citations omitted) (emphasis added); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1040 (9th Cir. 2000) (holding that the bankruptcy court correctly understood that the ultimate burden of persuasion was on the creditor); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993) (holding claimant bears ultimate burden of persuasion as to validity and amount of the claim by a preponderance of the evidence). If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *See Lundell*, 223 F.3d at 1039 (citations omitted).

Section 502(b)(1) requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . ." 11 U.S.C. § 502(b)(1). The "applicable law" referenced in Section 502(b)(1) includes bankruptcy law as well as other federal and state laws. A debtor (or here, the Trustee) is therefore allowed to raise any federal or state law defenses to a claim. *See In re G.I. Indus., Inc.*, 204 F.3d 1276, 1281 (9th Cir. 2000) (stating that a claim cannot be allowed under Section 502(b)(1) if it is unenforceable under nonbankruptcy law); *Johnson v. Righetti*, 756 F.2d 738, 741 (9th Cir. 1985) (finding that the validity of the claim may be determined under state law); *In re Eastview Estates II*, 713 F.2d 443, 447 (9th Cir. 1983) (applying California law).

Further, Section 502(b)(6) requires disallowance of a claim "if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds— (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—[the Petition Date and the date on which such lessor repossessed, or the lessee surrendered, the leased property]; plus (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]"

Both Claim 6 and Claim 7 are premised on a "Non-residential Real Estate Lease Obligation," but Mayfair does not have Leases with the Debtors and Mayfair is not a lessor to the Debtors. *See* **Exhibits 1 and 2** to Carmel Decl.; Claim No. 6, p. 5; and Claim No. 7, p. 5. Both Claim 6 and Claim 7 assert a component for a "rejection damage claim" under Section 502(b)(6) and a component for a prepetition claim. As to the Rejection Damages Component ($118,826.52 for the 1140 Premises and $52,972.88 for the 1150 Premises), Mayfair does not carry its burden of proving the validity of its Claim, because Mayfair does not prove it is a lessor of the Debtors entitled to Section 502(b)(6) rejection damages. And, Mayfair is not able to prove this because Mayfair's Leases are with a non-Debtor.[5] This is further corroborated by Mayfair's proofs of claim (Claim6 and Claim 7), which attach the "A/R Details with Aging" identifying non-debtor "NuMale Medical Center, LLC" as the "Tenant." *See* Claim No. 6, p. 5 and Claim No. 7, p. 5. Mayfair bears the burden of proof, and Mayfair has wholly failed to carry its burden. The Rejection Damages Component of Claim 6 and Claim 7 should be disallowed.

### 1. Additionally, the Prepetition Portions of Claim 6 and Claim 7 Should Be Disallowed As Untimely.

Section 502(b)(9) requires disallowance of a claim if "proof of such claim is not timely filed[.]" *See In re Barker*, 839 F.3d 1189, 1194 (9th Cir. 2016) ("A bankruptcy court may disallow a claim for many reasons, including if the proof of claim was untimely." (citations omitted)). *See also In re Zetta Jet USA, Inc.*, 2024 WL 3198826, *55 (C.D. Cal. Mar. 26, 2024) ("When 'proof of [a] claim is not timely filed,' it can be denied." (citing 11 U.S.C. § 502(b)(9)). *See also In re Peak Web LLC*, 2017 WL 5197117, *1 (Bankr. D. Or. 2017) ("A claim that is not timely will be disallowed." (citing 11 U.S.C. § 502(b)(9)).

Here, both Claim 6 and Claim 7 include amounts that Mayfair asserts are owed as of the Petition Date: the 1140 Prepetition Portion ($8,248.92) and the 1150 Prepetition Portion ($8,236.82). Both of these amounts assert rent for time periods preceding the Petition Date.

---

[5] Curiously, Mayfair does not attach the Leases for either Claim 6 or Claim 7 to the filed claims—but they are filed commensurately herewith as **Exhibit 1 and 2** to the Carmel Decl.

11

However, Mayfair failed to timely file a proof of claim for either amount as of the Claims Bar Date. Thus, these components of both Claim 6 and Claim 7 should be disallowed in the entirety as untimely.

### 2. Reservation of Rights.

As formal discovery into the merits of Claim 6, Claim 7, and the Administrative Claim Request (collectively, the Claim) has not commenced, the Trustee reserves all rights to object to the Claim on any further and additional bases, reserves all remedies available at law and in equity, and reserves the rights to bring claims against Mayfair, including those which may become known through discovery, those which are not asserted herein, and those asserted in connection with the Premises. This Objection is intended to reserve and preserve all the Trustee's rights and remedies, and all the Liquidation Trust's rights, remedies, and defenses against the Claim and Mayfair, including those not specifically raised herein.

## IV.
## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court sustain this Objection and disallow Claims 6 and 7 in their entirety and disallow and deny the Administrative Claim Request in its entirety, by entering an order substantially in the form attached hereto as **Exhibit "1"**, and for any other relief the Court finds just and appropriate.

Dated this 24th day of November 2025.

GARMAN TURNER GORDON LLP

By: */s/ Mary Langsner*
    GREGORY E. GARMAN, ESQ.
    TALITHA GRAY KOZLOWSKI, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Michael Carmel, Trustee*