LOUIS M. BUBALA III
Nevada State Bar No. 8974
KAEMPFER CROWELL
50 W. Liberty St., Ste. 1100
Reno, Nevada 89501
Tel: (775) 852-3900
Fax: (775) 327-2011
Email: lbubala@kcnvlaw.com

ISABELLA R. GOLDSMITH
Nevada State Bar No. 16870
KAEMPFER CROWELL
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
Tel: (702) 792-7000
Fax: (702) 796-7181
Email: igoldsmith@kcnvlaw.com

IVAN M. GOLD
California State Bar No. 121486
Admitted Pro Hac Vice
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Tel: (415) 837-1515
Fax: (415) 837-1516
Email: igold@allenmatkins.com

Attorneys for Landlord-Creditor
Mayfair Mall, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>NUMALE CORPORATION,<br><br>　AFFECTS THIS DEBTOR,　☐<br>　　AFFECTS FELICIANO　☐<br>　　NUMALE NEVADA PLLC,　☐<br>　　NUMEDICAL SC,　☐<br>　　NUMALE COLORADO SC,　☐<br>　　NUMALE FLORIDA TB PLLC,　☐<br>　　NUMALE NEBRASKA LLC,　☐<br>　　NUMALE NEW MEXICO SC,　☐<br>　　NUMALE ALL DEBTORS,　☒<br><br>　　　Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br>Jointly administered with:<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>**RESPONSE OF MAYFAIR MALL, LLC TO TRUSTEE'S OBJECTION TO CLAIMS**<br><br>**Prelim. Hrg. Date: Feb. 17, 2026**<br>**Prelim. Hrg Time: 9:30 a.m.** |

Mayfair Mall, LLC ("Landlord") files its response to the *Objection To Claim No. 6, To Claim No. 7, and to the Request of Mayfair Mall, LLC for Payment of Administrative Expense Claim* [Docket No. 845] (the "Trustee Objection"), filed by Michael W. Carmel ("Trustee"), the duly appointed Chapter 11 trustee of the estates of the above-captioned Debtors, and asserts as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1. On January 22, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. As of the Petition Date, debtor NuMedical SC, as successor-in-interest to NuMale Medical Center, LLC, as tenant, and Mayfair Mall, LLC, as landlord, were parties to two substantially identical leases, dated February 9, 2021 (collectively, the "Mayfair Leases") for office premises identified as Suite 1140 (consisting of approximately 4,437 square feet) and Suite 1150 (consisting of approximately 1,946 square feet) of the Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, Wisconsin. *See* previously filed Declaration of Julie Bowden ("9/17/25 Bowden Declaration") [Docket No. 624] at ¶¶ 4-5. Copies of the Mayfair Leases, as amended, are attached to Trustee Declaration at Exhibits 1-2 [Docket No. 846].

3. The Schedules of assets and liabilities of debtor NuMedical SC [Docket No. 26 in Case No. 25-10343], filed February 26, 2025 and executed under penalty of perjury, identify Mayfair Mall, LLC both as an unsecured creditor (Schedule E/F) and a counterparty to an unexpired lease (Schedule G). In Schedule E/F, the basis for the Landlord's claim is identified as "Lease."

4. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 130] and thereafter, on April 28, 2025, entered its final order authorizing joint administration of these Chapter 11 cases [Docket No. 209].

5. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights* [Docket No. 132], directing the appointment of a Chapter 11 trustee for the Debtors' bankruptcy estates.

6. On April 7, 2025, this Court entered its *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 155], approving the appointment of the Trustee as the Chapter 11 Trustee in these jointly administered cases.

7. On August 1, 2025, the Trustee filed his *Joint Plan of Reorganization* [Docket No. 434] (the "<u>Plan</u>") along with the *Disclosure Statement to Accompany Joint Plan of Reorganization* [Docket No. 435].

8. On August 5, 2025, this Court entered its *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization* [Docket No. 447].

9. On August 20, 2025, this Court entered its *Order Granting Second Motion To Extend Deadline Pursuant to 11 U.S.C. § 365(d)(4) to Assume or Reject Unexpired Leases* [Docket No. 501], extending the Trustee's deadline to assume or reject unexpired real property leases in Debtors' Chapter 11 cases through and including October 24, 2025.

10. Section 6.1 of the Plan provided as follows:

> **6.1. Executory Contracts.** Except for: (i) the Beazley Policies, and (ii) Executory Contracts and Unexpired Leases specifically addressed in this Plan or set forth on the schedule of Rejected Executed Contracts and Unexpired Leases attached as <u>Schedule 6.1</u> hereto (which may be *supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order*), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be *deemed assumed* by the respective Debtor(s) on the Effective Date *and assigned to* the prevailing bidder(s) in connection with the 363 Sale.

(Emphasis added)

11. As late as September 12, 2025, Trustee's counsel was communicating with Landlord's counsel in anticipation of the assumption of the Mayfair Leases. *See* Declaration of Louis Bubala at ¶ 3 & Ex. 1, 9/11-12/25 emails, filed contemporaneously ("Bubala Declaration").

12. On September 17, 2025, Landlord filed the *Objection of Mayfair Mall, LLC to Confirmation of Proposed Joint Plan of Reorganization* [Docket No. 623], objecting to the insufficiency of the Plan's satisfaction of the requirements of Bankruptcy Code section 365 with respect to the proposed assumption of the Mayfair Leases.

13. On September 19, 2025, the Trustee executed an Asset Purchase Agreement with Justin Pulliam [*see* Exhibit 1 to Docket No. 752]. The Mayfair Leases were not identified as among the real property leases and executory contracts to be assumed and assigned to Mr. Pulliam as part of the 363 Sale.[1]

14. On September 23, 2025, the Trustee filed his *Notice of Revised Schedules 6.1 and 6.3 to Joint Plan of Reorganization* [Docket No. 648], amending Schedule 6.1 of the Plan to designate the two Mayfair Leases for rejection as of the "Effective Date" of the Plan.

15. On October 7, 2025, this Court entered its *Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* [Docket No. 726].

16. As confirmed by the *Notice of Effective Date of Joint Plan of Reorganization* [Docket No. 762], the "Effective Date" of the Plan was October 24, 2025.

17. On October 24, 2025 (the "Rejection Date"), the Trustee vacated and returned possession of the Premises to Landlord. *See* Declaration of Mayfair Senior General Manager Chris Jaeger at ¶ 4 ("Jaeger Declaration"), and Declaration of Ivan M. Gold at ¶ 4 & Ex. 2, 10/27/25 emails ("Gold Declaration"), both filed contemporaneously. Prior to the Rejection Date, the equipment and furniture in the clinic operated at the Premises were removed, having been among the assets transferred as part of the Asset Purchase Agreement transaction.

18. When the Trustee vacated the Premises, hazardous medical waste was left behind (Jaeger Dec. at ¶ 5; Gold Dec. at ¶ 5 & Exhibit 3, 10/29-11/4/25 emails and pictures), in violation of applicable Wisconsin law.[2] Trustee's counsel was notified of the hazardous medical waste remaining in the Premises on October 29, 2025. *See* Gold Dec. at Ex. 3.

---

[1] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Plan and Trustee Objection.

[2] Wisconsin Admin. Code ch. NR 526 (Management of Infectious Waste) classifies medical waste as infectious waste (defined under Wis. Stat. § 287.07(7)(c)1.c. as solid waste containing pathogens that could transmit disease) and imposes ongoing responsibilities on the generator for segregation (§ NR 526.06), containment (§ NR 526.07), storage (§ NR 526.09), treatment/disinfection (§ NR 526.11), and disposal (§ NR 526.13). There is no provision under Wisconsin law for abandonment, and the "generator" remains liable until proper disposal occurs, even after moving out, with records required for 3 years (§ NR 526.14).

19. On November 10, 2025, Landlord filed its Proof of Claims with respect to the Mayfair Leases (designated as Claim Nos. 6 and 7), asserting general unsecured claims for pre-petition arrearages and lease rejection damages. Trustee Objection at ¶¶ 20-21.

20. On that same date, Landlord filed the *Request of Mayfair Mall, LLC for Payment of Administrative Expense Claim* [Docket No. 809] (the "Administrative Claim Request"). Because the Trustee had not yet removed the medical waste from the Premises, Landlord's Administrative Claim Request included an estimate for the costs of doing so should the Trustee fail to timely act.

21. While the Trustee retained Veolia North America to remove the medical waste remaining in the Premises (Carmel Declaration at ¶ 8), the removal was not completed until November 14, 2025 (Jaeger Dec. at ¶ 5; Gold Dec. at Ex. 4, 11/23/25 emails).

22. On November 24, 2025, the Trustee filed the Trustee Objection, asserting, among other things, that the amounts claimed are not obligations of the Debtors.

23. Because of the number of factual and legal issues raised by the Trustee Objection, the parties stipulated that the initial hearing with respect to the Trustee Objection will be a preliminary status and scheduling hearing [Docket No. 879], with further discovery contemplated by the parties (*see* Trustee Objection at 12:5-90).

## II. ARGUMENT

**A. The Trustee's Objection Does Not Overcome Debtors' Sworn Schedules and Admissions**

24. Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed to be allowed unless a party in interest objects. 11 U.S.C. § 502(a). Bankruptcy Rule 3001(f) explicitly states, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and the amount of the claim." Under this rule, a claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case. *See, e.g, Garner v. Schier (In re Garner)*, 246 B.R. 617 (9th Cir. BAP 2000). *See also In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988); *In re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1977); *In re Jobs.com, Inc.*, 283 B.R. 209, 213 (Bankr. N.D. Tex. 2002); *In re Inter-Island Vessel Company, Inc.*, 98 B.R. 606, 608 (Bankr. D. Mass. 1988).

25. The burden of proof for claims against a debtor or bankruptcy estate rests on different parties at different stages of the proceedings. The claimant must initially allege facts sufficient to support its claim, but once this is done, the claim is *prima facie* valid. Landlord's claim provides sufficient information, particularly given Debtors' Schedules, to satisfy the prima facie validity requirement.

26. The burden of proof then shifts to the Trustee, as objecting party here, to produce sufficient evidence to negate the prima facie validity of the claims. *In re Reilly*, 245 B.R. 768, 773 (2nd Cir. BAP 2000); *In re Michigan-Wisconsin Transportation Co.*, 161 B.R. 628, 635-636 (Bankr. W.D. Mich. 1993) ("[A] party objecting to a claim must present affirmative evidence to overcome the presumptive validity of a properly filed proof of claim."). Only after an objecting party produces evidence equal in probative force to the prima facie claim does the burden generally revert to the claimant to prove the validity of its claim by a preponderance of the evidence. *In re Allegheny Intl., Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992); *Fullmer v. U.S. (In re Fullmer)*, 962 F.2d 1463, 1466 (10th Cir. 1992) ("A properly filed proof of claim in prima facie evidence of the validity and amount of the claim. [] To overcome this prima facie evidence, the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim."). Thus, unless the objecting party introduces evidence as to the invalidity of the claim or the excessiveness of the amount, the claimant need to offer no further proof of the merits of the claim.

27. It is well established that the burden of proof is a "substantive" aspect of a bankruptcy claim. *Raleigh v. Illinois Dept. of Revenue (In re Stoecker)*, 530 U.S. 15, 20-21 (2000). "That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Id.*

28. Here, the Trustee does not object to any specific amounts asserted in the Landlord's Proofs of Claim or Administrative Expense Request or their calculations. Instead, the Trustee concludes that "because Mayfair's Leases are with a non-Debtor" (*see* Trustee Objection at 11:8-9), its unsecured and administrative claims should be disallowed. In other words, the Trustee does not challenge the specifics of the amounts claimed, instead challenging the underlying obligation.

29. In attacking Landlord's administrative and unsecured claims, the Trustee simply ignores that fundamental fact that Landlord was scheduled as a creditor and landlord counterparty in the sworn schedules of debtor NuMedical SC and, as further discussed below, that the Trustee himself, in Monthly Operating Reports filed in these Chapter 11 cases, identified accrued rent owing to Landlord and paid by NuMale SC. Thus, with Debtors identifying Landlord as the landlord under the Leases, the Trustee has not overcome the Debtors' sworn admission, which is consistent with the Landlord's Proofs of Claim and Administrative Claim Request.

30. The Trustee Declaration only attaches copies of the Leases, as if to establish that mere identification of the tenant as NMC, in Leases executed approximately four years prior to the Petition Date, conclusively establishes the merits of the Trustee Objection. The Trustee offers no evidence, other than his assertion that, "[b]ased on my investigations, I believe that *pre-petition*, the Estates did not *solely* occupy the Premises." Trustee Declaration at ¶ 7 (emphasis added). Not only is whether or not pre-petition occupancy of the Premises was shared irrelevant to who was the responsible tenant under the Lease, the Trustee's unsupported "belief" does not establish the allegation of the Trustee Objection that "[n]either the 1140 Lease nor the 1150 Lease [] are with a Debtor." Trustee Objection at ¶ 5.[3]

31. At no time did the Debtors amend their Schedules under Rule 1009(a)(1) of the Federal Rules of Bankruptcy Procedure[4] nor did the Trustee move to amend the Schedules under Rule 1009(a)(2).

**B.      The Trustee's Objection is Contrary to Multiple Filed Pleadings and Communications in These Chapter 11 Cases**

32. The gravamen of the Trustee Objection – that Debtors were not a tenant of Landlord and thus no claims arise – is both contrary to previously filed pleadings and the communications and actions of Trustee's counsel throughout these Chapter 11 cases.

---

[3] *See F.T.C. v. Pub. Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (conclusory and self-serving affidavits lacking detailed facts and supporting evidence are insufficient to create a genuine issue of material fact); *Prof-2013-S3 Legal Trust V v. Satico Bay Series 6425 Extreme Shear*, Case No. 2:17-cv-01790-APG, 2019 U.S. Dist. LEXIS 100635, *17 (D. Nev. June 17, 2019) ("unsupported personal belief is not evidence").

[4] Subsequent references to a "Rule" refer to the Federal Rules of Bankruptcy Procedure.

- As noted above, the sworn Schedules of debtor NuMedical SC identify Landlord as both a creditor and a counterparty to the Mayfair Leases. The Trustee never moved to amend the Schedules under Rule 1009(a)(2).

- The Trustee ignores the fact that Landlord is consistently identified as an obligee of Debtors in Monthly Operating Report filed by Debtors (see, e.g., Docket No. 89) and, later, by the Trustee himself (Docket No. 281 [April 28, 2025 entry referring to "Rent" paid to Landlord], 398 and 675]).[5]

- Furniture, equipment and other personal property located in the Premises was sold by the Trustee to Mr. Pulliam. If a Debtor entity was not a tenant at the Premises, then why were the contents of the Premises owned by the Debtors?

- If a Debtor entity was not a party to the Mayfair Leases, why did Trustee's counsel propose a stipulation to resolve pre- and post-petition arrearages that would be due in connection with the assumption and assignment of the Mayfair Lease (*see* Bubala Dec. at ¶ 3 & Ex. 1 emails)?

- Between September 20, 2025, when Trustee's counsel first advised Landlord's counsel that the Mayfair Leases would be rejected (Bubala Dec. at ¶ 5), and the confirmation hearing (*see* transcript of September 24, 2025 confirmation hearing [Docket No. 704 at 48:19-23]), the Trustee referred to rejection of the Mayfair Leases, not the contention that Debtors were never parties to those leases.[6]

---

[5] Under the doctrine of judicial estoppel, when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680 (1895)); *accord In re U.S.A. Dawgs, Inc.*, 831 Fed. Appx. 262, 265 (9th Cir. 2020); *see also Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir.1953) (observing that judicial estoppel is a rule against "playing fast and loose with the courts").

[6] The Trustee asserts that it "raised the fact that that Mayfair did not have a Lease with any of the Debtors but acknowledged that certain of the Debtors had utilized the space." Objection at ¶ 15, citing Docket No. 651. This contention only came after the Leases were not included in the sale transaction with Mr. Pulliam, with the Asset Purchase Agreement having been executed only a few days earlier.

- If a Debtor entity was not a party to the Mayfair Leases, why are the Mayfair Leases specifically identified for rejection in amended Schedule 6.1?
- If, as the Trustee contends, Debtors were sharing the Premises with a non-debtor entity (Trustee Objection at 8:10-12), why was an agreement with the non-debtor entity not rejected in Schedule 6.1 to the Plan?
- If a Debtor entity was not a party to the Mayfair Leases, and Debtors did not control NuMale Medical Center, LLC as asserted, why did the Trustee feel compelled to vacate and relinquish possession of the Premises prior to the Rejection Date (*see* Gold Dec. at Ex. 1 emails)?
- The Trustee acknowledges that medical waste remained in the Premises on October 24, 2025, the date possession was returned, and that he "retained and paid Veolia North America to remove the limited medical-related items remaining on Premises." Trustee Dec. at ¶ 8. If a Debtor entity was not party to the Mayfair Leases, why did the Trustee feel responsible for the removal of hazardous medical waste from the Premises (*see* Gold Dec. at ¶ 5 & Ex. 3 emails and pictures)?

33. The Trustee's Objection only asserts that "NMC is not a Debtor and is not controlled by a Debtor." (Trustee Objection at ¶ 2.) The Trustee offers no supporting facts for this assertion other than reference to an unsworn Statement of Non-Opposition of Debtors to the U.S. Trustee's motion for appointment of a patient care [Docket No. 90] with a chart (Exhibit A) identifying NMC as the management company for NuMedical SC. This vague reference, in the context of the appointment of a patient care ombudsman, does not overcome the evidence outlined above.

34. The preponderance of the evidence demonstrates the existence of a landlord-tenant relationship between Landlord and debtor NuMedical SC with respect to the Premises.

**C. The Trustee's Objection to the Portion of the Administrative Expense Claim Relating to the Removal of Medical Waste is Now Moot**

35. The Trustee also objects to that portion of Landlord's administrative claim that asserted an estimated $2,000 administrative claim based on the Debtors' failure to remove

hazardous medical waste from the Premises prior to the return of possession of the Premises. Trustee Objection at 9:2-9. As set forth in the Administrative Claim Request (at ¶¶ 20-21), this failure to remove medical waste from the Premises was contrary to both the terms of the Mayfair Lease and applicable Wisconsin law. The Trustee acknowledges that such items remained in the Premises on October 24, 2025, the date possession was returned, and that he "retained and paid Veolia North America to remove the limited medical-related items remaining on Premises." Trustee Declaration at ¶ 8.

36. There was nothing improper about Landlord asserting a contingent and unliquidated claim for the anticipated removal of hazardous medical waste from the Premises. *See* Administrative Expense Request at ¶ 22. As the Objection and Declaration both acknowledge, the Administrative Claim Bar Date was November 10, 2025. *See*, *e.g.*, Trustee Objection at ¶ 19. The Trustee did not actually effectuate the removal of the medical waste from the Premises until after that date (*see* Jaeger Dec. at ¶ 5; Gold Dec. at Ex. 4 emails), a fact conspicuously omitted from the Trustee's Objection.

37. The Plan (at § 11.1.4), as confirmed by the Court, contains a provision (objected to by Landlord) that precludes claimants from amending their claims to increase the amounts asserted, as follows:

> After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any Claim or proof of Claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

38. Under these circumstances and contrary to the Trustee's suggestion (Objection at 9: 6-9), there was nothing improper about Landlord asserting a contingent claim for anticipated expenses of removal by the Administrative Claim Bar Date should the Trustee fail to act. Since the Trustee belatedly arranged for removal of hazardous medical waste left at the Premises after the Administrative Claim Bar Date, and such removal has been completed (Jaeger Dec. at ¶ 5), this $2,000.00 portion of Landlord's Administrative Expense Request may be considered withdrawn as moot.

### D. The Prepetition Portions of Claims 6 and 7 were Previously Scheduled by Debtors as Undisputed and the Trustee's Objection Should be Overruled

39. The Trustee objects to the pre-petition portions of both Claim 6 and Claim 7 because Landlord allegedly "failed to timely file a proof of claim for either amount as of the Claims Bar Date." (Trustee Objection at 11:22-12:3.) This portion of the Trustee's Objection should be overruled.

40. Rule 3003(b)(1) provides that in Chapter 11 cases, "[a]n entry on the schedule of liabilities filed under §521(a)(1)(B)(i) is *prima facie* evidence of the validity and the amount of a creditor's claim – except for a claim scheduled as disputed, contingent, or unliquidated." NuMedical SC's Schedules identify unsecured obligations owing to Landlord of $28,000 and **do not** designate the claims of Landlord as disputed, contingent or unliquidated. Since Rule 3003 did not require a proof of claim for these pre-petition amount, any argument regarding the timeliness of Landlord's proof of claim – asserting lower amounts – is unfounded. The Trustee has not overcome the *prima facie* validity of the Debtors' own Schedules nor did the Trustee, prior to either confirmation of Plan or the filing of his Objection, move to amend the Schedules under Rule 1009(b). There is thus no basis to disallow the pre-petition portions of Landlord's Claims under Bankruptcy Code section 502(b)(9) and, indeed, the Claims should be properly viewed as amendments that **reduce** liabilities previously acknowledged by Debtors.

### E. The Trustee Admits Post-Petition Use and Occupancy of the Premises

41. A careful examination of the Trustee Objection and Trustee Declaration demonstrates that the Trustee admits to exposure for the post-petition use and occupancy of the Premises. Notwithstanding the assertion that "Mayfair's Leases are not with the Debtors," as discussed above, the Trustee fails to acknowledge Debtors' own sworn Schedules of assets and liabilities to the contrary. Indeed, the Trustee Declaration (at ¶ 7) merely states that "[b]ased on my investigations, I **believe** that **pre-petition**, the Estates **did not solely occupy** the Premises." (Emphasis added.) What of **post-petition** occupancy, the very subject of Landlord administrative expense claim? The Trustee Objection concedes some form of post-petition occupancy by the Debtors (Trustee Objection at 8:10-11) but his declaration carefully avoids any specifics. For

example, who were Debtors sharing occupancy with? What contractual arrangement governed this shared occupancy? What were terms of such agreement with respect to responsibility for occupancy expenses? These missing facts are within the control of the Trustee and will, by necessity, be the subject of discovery. But, under those circumstances, Landlord would have an administrative expense claim for the post-petition use and occupancy of the Premises by Debtors under Bankruptcy Code section 503(b)(1).

42. There should be no question that, given the Trustee's admission of post-petition use and occupancy, even without a direct landlord-tenant relationship (as now asserted by the Trustee), Landlord has a resulting administrative expense claim.

### III.    RESERVATION OF RIGHTS

Landlords reserves its rights to further respond to the Trustee Objection on additional grounds or based upon any new information provided by the Trustee or any third party or upon any different relief requested by the Trustee.

Dated: February 3, 2026

KAEMPFER CROWELL

By: /s/ L.M. Bubala

LOUIS M. BUBALA III
ISABELLA R. GOLDSMITH

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP

IVAN M. GOLD

Attorneys for Landlord/Creditor
Mayfair Mall, LLC