**E-filed: March 31, 2026**

Blakeley E. Griffith, Esq. (NV Bar No. 12386)
Molly Stubblefield, Esq. (NV Bar No. 16993)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bgriffith@swlaw.com
       mstubblefield@swlaw.com

*Attorneys for N2 Company*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. 25-10341-nmc |
| NUMALE CORPORATION, | Chapter 11 |
| ☒ AFFECTS THIS DEBTOR<br>☐ AFFECTS FELICIANO NUMALE NEVADA PLLC<br>☐ AFFECTS NUMEDICAL SC<br>☐ AFFECTS NUMALE COLORADO SC<br>☐ AFFECTS NUMALE FLORIDA TB PLLC<br>☐ AFFECTS NUMALE NEBRASKA LLC<br>☐ AFFECTS NUMALE NEW MEXICO SC<br>☐ AFFECTS ALL DEBTORS | Jointly Administered with: |

Jointly Administered with:

| 25-10342-nmc | Feliciano NuMale Nevada PLLC |
|---|---|
| 25-10343-nmc | NuMedical SC |
| 25-10344-nmc | NuMale Colorado SC |
| 25-10345-nmc | NuMale Florida TB PLLC |
| 25-10346-nmc | NuMale Nebraska LLC |
| 25-10347-nmc | NuMale New Mexico SC |

Debtors.

**DECLARATION OF DOMENIQUE SCHMITT IN SUPPORT OF THE N2 COMPANY'S RESPONSE TO TRUSTEE'S OBJECTION TO CLAIM**

I, Domenique Schmitt, declare as follows:

1.     I am over 18 years of age.  I am a Legal and Franchise Operations Manager at The N2 Company ("N2").  I submit this declaration in support of The N2 Company's Response to Trustee's Objection to Claim.

2.     On or about April 25, 2023, the NuMale Corporation ("NuMale") executed and delivered fifteen Print and Digital Advertising Orders (collectively, the "Contracts").  Pursuant to the Contracts, N2 agreed to provide services beginning on or about May 3, 2023, and continuing for a period of twelve (12) monthly cycles.  The prices reflected in the Contracts are the cost of

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

4935-8278-9788

services per cycle, not the total cost of the contracted work. A true and correct copy of the Contracts is attached hereto as **Exhibit 1**.

3. The Contracts provide that N2's general terms and conditions apply ("Terms and Conditions"). Under the Terms and Conditions, N2 is able to charge interest on past-due amounts at the rate of 1.5% per month and can recover all costs of collection and reasonable attorney's fees resulting from a default. A true and correct copy of the Terms and Conditions is attached hereto as **Exhibit 2**.

4. Beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles, NuMale defaulted on its payment obligations under the Contract. As of the Petition Date, the total aggregate sum owing on the Contracts, after accounting for all payments and credits, is as follows:

| Contract No. | Principal Balance as of 1/1/2024 | Accrued Interest on Petition Date | Balance Due |
|---|---|---|---|
| 222095 | $34,824.40 | $6,646.21 | $41,470.61 |
| 222098 | $14,493.55 | $2,766.08 | $17,259.63 |
| 222099 | $78,267.10 | $14,937.22 | $93,204.32 |
| 222101 | $107,902.43 | $20,593.10 | $128,495.53 |
| 222103 | $64,924.21 | $12,390.74 | $77,314.95 |
| 222104 | $24,863.08 | $4,745.10 | $29,608.18 |
| 222106 | $9,373.61 | $1,788.95 | $11,162.56 |
| 222107 | $60,828.05 | $11,608.99 | $72,437.04 |
| 222109 | $15,190.39 | $2,899.08 | $18,089.47 |
| 222111 | $80,845.18 | $15,429.25 | $ 96,274.43 |
| 222114 | $24,826.78 | $4,738.17 | $29,564.95 |
| 222115 | $54,346.78 | $10,372.05 | $64,718.83 |
| 222116 | $22,253.41 | $4,247.05 | $26,500.46 |
| 222117 | $68,826.85 | $13,135.56 | $81,962.41 |
| 222118 | $24,827.32 | $4,738.28 | $29,565.60 |
| **Subtotal** | **$686,593.14** | **$131,035.83** | **$817,628.97** |

5. Following NuMale's payment default, interest began to accrue on the principal balance beginning on January 1, 2024 at the rate of 1.5% per month.

6. Each of the Contracts was signed by NuMale under different names for its respective regional clinics. The Contracts were signed by Justin Pulliman, NuMale's former vice president. My understanding is that none of the regional clinics identified in the Contracts are separate legal entities.

- 2 -

4935-8278-9788

7.    On or about August 27, 2024, N2 filed a Verified Complaint against NuMale and its affiliate NuMale Medical Center, LLC (the "Complaint").  A true and correct copy of the Complaint is attached hereto as **Exhibit 3**.

8.    On or about November 13, 2024, after the litigation was removed to federal court, NuMale filed an answer to the Complaint (the "Answer").  A true and correct copy of the Answer is attached hereto as **Exhibit 4**.

9.    On January 15, 2026, after NuMale filed its bankruptcy petition, the Eastern District of North Carolina entered judgment in favor of N2 and against NuMale's non-debtor affiliate in the amount of $686,593.14 plus interest, and attorney fees and costs in the amount of $102,988.96.  A true and correct copy of the Judgment is attached hereto as **Exhibit 5**.

10.    Attached hereto as **Exhibit 6** is a true and correct copy of a detailed accounting itemizing N2's claim in this bankruptcy case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 31, 2026

*/s/ Domenique Schmitt*
DOMENIQUE SCHMITT

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

- 3 -

4935-8278-9788

# EXHIBIT 1

# EXHIBIT 1

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeff Miller |
|---|---|---|---|

| ADVERTISER | NuFemme Rejuvenation Clinic Albuquerque |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ▇ |
|---|---|

| OFFICE PHONE | ▇ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | nufemme.com/locations/albuquerque/ |
|---|---|

| ADDRESS | 7920 Wyoming Blvd NE ste b-2 |
|---|---|

| CITY | Albuquerque | STATE | NM | ZIP | 87109 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the checking grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | | |
|---|---|---|---|
| | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | MONTHLY BARTER AMOUNT | |
| | AD MANAGEMENT (ONE-TIME) | |
| | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $6,462.00 | None | ▼ | $77,544.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $2,000.00 | | | $24,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | | | $12,962.00 | |



Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.









**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: _Josh Pulliam    VP_

DATE: _4-27-23_







THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | | AREA DIRECTOR | Jeff Miller | | |
|------|----------|--|---------------|-------------|--|--|

| ADVERTISER | NuMale Medical Charlotte LLC |
|------------|------------------------------|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|------------|--------|-----------|---------|

| EMAIL | ███████████ |
|-------|--------------|

| OFFICE PHONE | ███████████ | CELL PHONE | |
|--------------|-------------|------------|--|

| WEBSITE | www.numalemedical.com/our-locations/charlotte-nc-numale-medical-clinic/ |
|---------|-----------------------------------------------------------------------|

| ADDRESS | 330 Billingsley Rd., STE 210 |
|---------|------------------------------|

| CITY | Charlotte | STATE | NC | ZIP | 28211 |
|------|-----------|-------|----|-----|-------|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|-------------|-----------------|-------------|----------------|-----------------------|-------------------------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|----------------------------------------|--|---------------------------------------------|-----------------|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.






THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $13,090.00 | None ▼ | $157,080.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $2,000.00 | | $26,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $3,000.00 | | $36,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $3,000.00 | | $36,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | $22,090.00 |
|---|---|





Charges, Payments & Taxes
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law

General Terms and Conditions








**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF
ADVERTISER'S
AUTHORIZED REP:

NAME AND TITLE:

DATE: 4-27-23



THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 0 4 2 5 2 0 2 3 | AREA DIRECTOR | Jeff Miller |
|---|---|---|---|

| ADVERTISER | NuMale Medical Chicago LLC |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ▓▓▓▓▓▓ |
|---|---|

| OFFICE PHONE | ▓▓▓▓▓ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/chicago-il-numale-medical-clinic/ |
|---|---|

| ADDRESS | 4711 Golf Rd. STE 1050 |
|---|---|

| CITY | Skokie | STATE | IL | ZIP | 60076 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("your" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Row

| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $18,413.00 | None ▼ | $220,956.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $6,000.00 | | $72,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $4,000.00 | | $48,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $5,000.00 | | $60,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | | $33,413.00 | |



Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:








**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:



NAME AND TITLE:

 

DATE: 4-27-23



THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|---|
| ADVERTISER | NuMale Medical Denver LLC | | | | |
| FIRST NAME | Justin | | LAST NAME | Pulliam | |
| EMAIL | ▮▮▮▮▮▮ | | | | |
| OFFICE PHONE | ▮▮▮▮ | | CELL PHONE | | |
| WEBSITE | www.numalemedical.com/our-locations/denver-co-numale-medical-clinic/ | | | | |
| ADDRESS | 8200 E. Belleview Ave., STE 280E | | | | |
| CITY | Greenwood Village | | STATE | CO | ZIP | 80111 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

— **PRINT ORDERS** —

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Pub



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |  |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $4,000.00 | | $48,000.00 |  |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $5,000.00 | | $60,000.00 |  |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| | | |
|---|---|---|
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | $12,000.00 |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law:

General Terms and Conditions

**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF
ADVERTISER'S
AUTHORIZED REP:

NAME AND TITLE: _Justin Pellican VP_

DATE: _8-27-23_

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|

| ADVERTISER | NuMale Medical Green Bay LLC |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ████████████ |
|---|---|

| OFFICE PHONE | ██████████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/green-bay-wi-numale-medical-clinic/ |
|---|---|

| ADDRESS | 1525 Park Place, Ste 300 |
|---|---|

| CITY | Ashwaubenon | STATE | WI | ZIP | 54303 |
|---|---|---|---|---|---|

This Order Form is a legal document between The NZ Company ("NZ") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

**PRINT ORDERS**



| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING [Monthly Payment + Ad Management] | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE NZ COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $3,286.00 | None ▼ | $39,432.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $2,000.00 | | $24,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,000.00 | | $12,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $30 CPM | $1,000.00 | | $12,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| | TOTAL |
|---|---|
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | $8,286.00 |



Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.





**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**



SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE:  Justin Pullman VP

DATE: 4-27-23







THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|---|
| ADVERTISER | NuFemme Rejuvenation Clinic Green Bay | | | | |
| FIRST NAME | Justin | | LAST NAME | Pulliam | |
| EMAIL | ▮▮▮▮ | | | | |
| OFFICE PHONE | ▮▮▮▮ | | CELL PHONE | | |
| WEBSITE | nufemme.com/locations/green-bay/ | | | | |
| ADDRESS | 1525 Park Place, Ste 300 | | | | |
| CITY | Howard | | STATE | WI | ZIP 54303 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $4,475.00 | None | ▼ | $53,700.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,000.00 | | | $12,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,000.00 | | | $12,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $9,475.00 | |

Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.








**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: _Justin Pulliam_  VP

DATE: 4-27-23

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|------|----------|---------------|----------------|

| ADVERTISER | NuMale Medical Las Vegas LLC |
|------------|------------------------------|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|------------|--------|-----------|---------|

| EMAIL | ▮▮▮▮▮▮ |
|-------|---------|

| OFFICE PHONE | ▮▮▮▮ | CELL PHONE | |
|--------------|------|------------|--|

| WEBSITE | www.numalemedical.com/our-locations/las-vegas-nv-numale-medical-clinic/ |
|---------|-----------|

| ADDRESS | 6590 S. Rainbow Blvd, #250 |
|---------|-----------|

| CITY | Las Vegas | STATE | NV | ZIP | 89118 |
|------|-----------|-------|-----|-----|-------|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|-------------|-----------------|-------------|----------------|----------------------|------------------------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

- Add #42 -



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|----------------------------------------|--|---------------------------------------------|-----------------|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $9,883.00 | None ▼ | $118,590.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $2,000.00 | | $24,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | $14,883.00 |
|---|---|---|---|---|---|---|




Charges, Payments & Taxes
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law:

General Terms and Conditions.







**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: _Justin Pullman VP_

DATE: 4-27-23





THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller | |
|------|----------|---|---------------|----------------|---|

| ADVERTISER | NuFemme Rejuvenation Clinic Las Vegas |
|------------|----------------------------------------|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|------------|--------|-----------|---------|

| EMAIL | ██████████ |
|-------|-----------|

| OFFICE PHONE | ██████████ | CELL PHONE | |
|--------------|-----------|------------|---|

| WEBSITE | nufemme.com/locations/las-vegas/ |
|---------|----------------------------------|

| ADDRESS | 6590 S. Rainbow Blvd, #250 |
|---------|----------------------------|

| CITY | Las Vegas | STATE | NV | ZIP | 89118 |
|------|-----------|-------|-----|-----|-------|

This Order Form is a legal document between The NZ Company ("NZ") and Advertiser ("you" or "I"). Applicable purchase forms follow the ordering grids below

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|-------------|-----------------|-------------|----------------|-----------------------|-------------------------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page





| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|----------------------------------------|---|---------------------------------------------|-----------------|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |




☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





THE NZ COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $9,127.00 | None | ▼ | $109,524.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,050.00 | | | $36,600.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $2,000.00 | | | $24,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $2,000.00 | | | $24,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $16,127.00 | |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:









**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE:  Justin Pullim V.P.

DATE: 4-87-23

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller | ▼ |
|---|---|---|---|---|

| ADVERTISER | NuMale Medical Tampa LLC | 🗑 |
|---|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ▇▇▇▇▇▇▇ |
|---|---|

| OFFICE PHONE | ▇▇▇▇ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/tampa-fl/ |
|---|---|

| ADDRESS | 500 N Westshore Blvd, Ste 450 |
|---|---|

| CITY | Tampa | STATE | FL | ▼ | ZIP | 33609 |
|---|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("your" or "I"). Applicable purchase terms follow the ordering grids below

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |
| ▼ | | ▼ | ▼ | |

+ Add Page+



| DESCRIPTION OF GOODS/SERVICES BARTERED (MAY ALTER) | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | MONTHLY BARTER AMOUNT | |
| | AD MANAGEMENT (ONE-TIME) ▼ | |
| | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | ▣ |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $2,500.00 | | $30,000.00 | ▣ |
| Over the Top (OTT) | ▼ | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 | ▣ |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | $7,500.00 | |









Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law.

General Terms and Conditions

**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF
ADVERTISER'S
AUTHORIZED REP: *Josh*

NAME AND TITLE: *Justin Pullman VP*

DATE: 4-27-23

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 0 4 2 5 2 0 2 3 | AREA DIRECTOR | Jeffrey Miller |
|------|-----------------|---------------|----------------|
| ADVERTISER | NuFemme Rejuvenation Clinic Tampa | | |

| FIRST NAME | Justin | LAST NAME | Pulliam |
|------------|--------|-----------|---------|

| EMAIL | ███████████ |
|-------|-------------|

| OFFICE PHONE | ████████ | CELL PHONE | |
|--------------|----------|------------|---|

| WEBSITE | nufemme.com/locations/tampa/ |
|---------|------------------------------|

| ADDRESS | 500 N Westshore Blvd, Ste 450 |
|---------|-------------------------------|

| CITY | Tampa | STATE | FL | ZIP | 33609 |
|------|-------|-------|----|----|-------|

The Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or ""). Applicable purchase terms follow the ordering grids below.

--- **PRINT ORDERS** ---

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|-------------|-----------------|-------------|----------------|-----------------------|-------------------------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | | |
|----------------------------------------|---|---|---|
| | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | MONTHLY BARTER AMOUNT | |
| | AD MANAGEMENT (ONE-TIME) | |
| | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE N2 COMPANY

04.25.23 03

## DIGITAL ORDERS

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | | Ad Mgmt | $3,115.00 | None | ▼ | $68,475.00 |
| Display Mobile Ads | ▼ | | $18 CPM | $3,228.00 | | | $55,006.00 |
| Paid Social Ads | ▼ | | Ad Mgmt | $1,500.00 | | | $19,000.00 |
| Over The Top (OTT) | ▼ | | $46 CPM | $1,500.00 | | | $18,000.00 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

FIRST CYCLE PAYMENT
FOR DIGITAL ADVERTISING






Charges, Payments & Taxes
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law

General Terms and Conditions

**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP

NAME AND TITLE   Justin Wellman VP

DATE  4-27-23





THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|

| ADVERTISER | NuMale Medical Omaha LLC |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ███████████ |
|---|---|

| OFFICE PHONE | ███████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/omaha-ne-numale-medical-clinic/ |
|---|---|

| ADDRESS | 444 Regency Parkway Drive, Suite 204 |
|---|---|

| CITY | Omaha | STATE | NE | ZIP | 68114 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED (IN DETAIL PART) | | |
|---|---|---|
| | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | MONTHLY BARTER AMOUNT | |
| | AD MANAGEMENT (ONE-TIME) | |
| | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





THE N2 COMPANY

04.25.23 01

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $5,673.00 | None | ▼ | $65,079.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Ford Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $1,500.00 | | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $11,673.00 | |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:
General Terms and Conditions:













**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: Justin Nellson VP

DATE: 4-27-23

THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller | |
|------|----------|---------------|----------------|--|

**ADVERTISER**   NuFemme Rejuvenation Clinic Omaha

| FIRST NAME | Justin | LAST NAME | Pulliam |
|------------|--------|-----------|---------|

**EMAIL**   ▮▮▮▮▮▮▮▮▮

| OFFICE PHONE | ▮▮▮▮▮▮ | CELL PHONE | |
|--------------|--------|------------|--|

**WEBSITE**   nufemme.com/locations/omaha/

**ADDRESS**   444 Regency Parkway Drive. Suite 204

| CITY | Omaha | STATE | NE | ▼ | ZIP | 68114 |
|------|-------|-------|-----|---|-----|-------|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|-------------|-----------------|-------------|----------------|------------------------|--------------------------|
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|----------------------------------------|--|--|

| | |
|--|--|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME)   ▼ | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐   ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt | $4,178.00 | None | $50,136.00 | |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $1,500.00 | | $18,000.00 | |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 | |
| | | | | | | |

| | | |
|---|---|---|
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | $10,178.00 |





Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law

General Terms and Conditions



**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.



SIGNATURE OF ADVERTISER'S AUTHORIZED REP:



NAME AND TITLE:

DATE: 4-27-23




THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller | | |
|---|---|---|---|---|---|---|
| ADVERTISER | NuMale Medical Milwaukee | | | | | 🗑 |
| FIRST NAME | Justin | | LAST NAME | Pulliam | | |
| EMAIL | ▮▮▮▮▮ | | | | | |
| OFFICE PHONE | ▮▮▮▮ | | CELL PHONE | | | |
| WEBSITE | www.numalemedical.com/our-locations/milwaukee-wi-numale-medical-clinic/ | | | | | |
| ADDRESS | 2600 N. Mayfair Rd. | | | | | |
| CITY | Wauwatosa | | STATE | WI ▾ | ZIP | 53226 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | ▾ | ▾ | ▾ | |
| ▾ | | | ▾ | ▾ | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) ▾ | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $9,312.00 | None | ▼ | $111,744.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $1,500.00 | | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | | | $15,312.00 | |




Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions.






**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: *Tyler Pullian* VP

DATE: 4-27-23






THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|
| ADVERTISER | NuFemme Rejuvenation Clinic Milwaukee | | |

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ■■■■■ |
|---|---|

| OFFICE PHONE | ■■■■■ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | nufemme.com/locations/milwaukee/ |
|---|---|

| ADDRESS | 2600 N. Mayfair Rd. |
|---|---|

| CITY | Wauwatosa | STATE | WI | ZIP | 53226 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.








THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## — DIGITAL ORDERS —

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $8,057.00 | None ▼ | $96,684.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,500.00 | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

**FIRST CYCLE PAYMENT
FOR DIGITAL ADVERTISING**                                $14,057.00

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law:

General Terms and Conditions









**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF
ADVERTISER'S
AUTHORIZED REP:

NAME AND TITLE: Justin Pulliam

DATE: 4-27-23




THE N2 COMPANY

# EXHIBIT 2

# EXHIBIT 2

These Online and Digital Marketing Services Terms and Conditions ("Marketing Services Terms") govern Hyport Digital's provision of online and digital marketing services (the "Marketing Services"), and are incorporated by reference into and made a part of the Order Form submitted by you, our client.  As used here, "we", "our", and "Hyport" mean The N2 Company d/b/a Hyport Digital and its affiliates as applicable; "you", "your" and "Client" mean the customer identified in the Order Form or receiving Marketing Services that you may sign-up for without an Order Form, such as free trials.

The Order Form sets forth the Marketing Services that you are purchasing, the costs, and other relevant details. All Order Forms are subject to acceptance by Hyport in its sole discretion. The Order Form, the Marketing Services Terms, and the documents and/or links referenced in such documents constitute the complete agreement (the "Agreement") and supersede any prior and contemporaneous discussions, agreements or representations and warranties regarding your order.

PLEASE REVIEW THIS AGREEMENT CAREFULLY, INCLUDING THE DISPUTE RESOLUTION PROVISION IN SECTION 16 WHICH DESCRIBES HOW DISPUTES WILL BE RESOLVED, AND THAT NO CLASS ACTIONS MAY BE BROUGHT UNDER THIS AGREEMENT.

1.  **Marketing Services.** The Marketing Services may include the following products:
    - Media Products, which includes search marketing, targeted display and social ads
    - Search Engine Marketing (SEM)
    - Search Engine Optimization (SEO)
    - Over-the-Top (OTT) / Connected TV (CTV)
    - Email Marketing
    - Live Chat
    - Social Advertising, including Facebook and Instagram
    - Reputation Management

The Tracking Services are applicable to all of the Marketing Services, so please review carefully. Click the links above to see additional terms and conditions that govern each of our Marketing Services (the "Product Terms").

2.  **Fees and Payment Terms.**

    **A. Fees.** In consideration of the Marketing Services, you agree to pay the amounts listed in the Order Form (the "Fees"). There are three general classes of fees: (i) *product fees* are the recurring fees that we charge for the specific product(s) you have purchased; (ii) *service fees* are for the delivery of any premium services that Hyport may offer from time to time; and (iii) *set-up fees* are one-time fees for the set-up of campaigns or other services listed in your Order Form. Hyport may change its Fees at any time, but such changes will *not* take effect until you execute and deliver a new Order Form to Hyport.

    **B. Promotional Credits.** If Hyport offers any special promotions that provide you with credits or other incentives relating to the purchase of Marketing Services (the "Promotional Credits"), and you cancel one or more of the Marketing Services before the Initial Term (other than for cause, as set forth below) is completed, you will be required to repay to Hyport the full amount of the Promotional Credit(s).

3.  **Payment Terms and Taxes.**

    1.  **General.** Once Hyport accepts an Order Form, you are responsible for full payment of all Fees, except as may otherwise be provided in Section 4(g) below. The Fees shown are not inclusive of sales, use or similar taxes which may apply.

    2.  **Payment Method.** You must pay for all amounts payable under this Agreement either by credit card (the "Client Card"), ACH (electronic debit from your bank account) or such other form of payment as Hyport may permit in its sole discretion.  You will use the

applicable payment authorization form(s), which may also permit Hyport to recover any Promotional Credits (as set forth above) in the authorized manner. Under certain circumstances and with Hyport's prior approval you may be allowed to pay by check. Regarding payment through ACH, no amounts owing are considered paid until Hyport's bank receives the electronic debit.

3. **Timing of Payment.** Before an initial campaign cycle, you must pay the applicable cycle payment for the initial cycle and any applicable campaign set-up fees. You must also pay the applicable cycle payment in advance of each subsequent campaign cycle. You acknowledge that all amounts owed must be paid in advance of each campaign cycle. If payment is not timely received, in addition to being a breach of your contract obligations, Hyport may pause or terminate your campaign.

4. **Late Payments and Collection of Amounts Owed.** If payments are not received by Hyport within 15 days after becoming due, Hyport may: (1) charge interest on any past-due amounts at the rate of 1.5% per month or as applicable law allows, whichever is greater; and (2) suspend performance of all Services until payment has been made in full. You will be liable for all costs, including reasonable attorney's fees and collection expenses, incurred by us in collecting past due accounts and defending claims asserted in any collection action.

5. **Taxes.** You are responsible for all sales, use and excise taxes, and any other similar taxes, duties and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by you hereunder.

6. **Credit Card Authorization.** You hereby authorize Hyport to charge the Client Card or debit from your account through ACH for Fees in accordance with these Marketing Services Terms and the Product Terms.

4. **Term of Agreement; Cancellation; and Termination.**

1. **Term.** The Agreement commences upon your submission of an Order Form and will remain in effect until completed or cancelled in accordance with the terms of this Agreement.

2. **Cancellation.** After the first three (3) cycles of the applicable Marketing Service, you may cancel such Marketing Service at any time and for any reason by notifying and providing 30-days' notice of cancellation to the Area Director or other Hyport sales representative identified on your Order Form; provided however, reputation management services require a minimum 12-month commitment and such services may only be cancelled after 12 months performance. For the avoidance of doubt, this cancellation provision does not apply to print advertising purchased by you from The N2 Company.

3. **Cancellation Fee.** None.

4. **Cancellation Revocation.** Within 30 days after you make a cancellation request pursuant to Section 4.b., you may revoke such termination by providing written notice to Hyport (email is acceptable), in which case the Order Form will be reinstated and all applicable campaigns, if they had been stopped, will be re-initiated upon your full payment of all amounts then due and owing.

5. **Termination for Cause.** Either you or Hyport may terminate the Agreement (which will terminate all current Order Forms) on 30 days prior written notice (the "Notice Period") if the other party is in material breach of its obligations hereunder and such breach is not materially cured by the end of the Notice Period. Hyport does not guarantee the performance of any campaign or any other service and therefore such performance is not a basis for termination under this Section.

6. Additionally, either party may terminate this Agreement, effective upon written notice to the other party, if the other party: (i) becomes insolvent or is generally unable to pay, or

fails to pay, its debts as they become due; (ii) files or has filed against it a petition for voluntary or involuntary bankruptcy or otherwise becomes subject, voluntarily or involuntarily, to any proceedings under any domestic or foreign bankruptcy or insolvency law; (iii) makes or seeks to make a general assignment for the benefit of its creditors; or (iv) applies for or has appointed a receiver, trustee, custodian, or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business.

7. **Campaign Pauses.** Hyport may pause a campaign at any time for operational reasons. You may also request a pause in a campaign; however, Hyport has the sole discretion to determine if a campaign pause is appropriate under the circumstances. If you request a campaign pause lasting for more than 30 days, you must pay an additional campaign set-up Fee to restart the campaign. Hyport may charge the Client Card or cause payment to be made through ACH or Hyport may invoice you for such additional set-up Fee, which invoice must be paid within fourteen (14) days after the invoice date.

8. **Effect of Termination; Survival.** All provisions of the Agreement that by their nature should survive termination of the Agreement (including, without limitation, all limits of liability, indemnity obligations, and confidentiality obligations) will survive. Without limiting the generality of the foregoing, in the event of any termination, you will remain liable for all amounts due to Hyport as of the effective date of termination. Due to the nature of the internet, certain information regarding you that was posted online pursuant to the Marketing Services may remain available online following termination of Marketing Services and/or the Agreement.

5. **Online Platform.**

1. **Client Data.** As part of the campaign initiation process and from time to time during the campaign, you will provide certain information to Hyport, which Hyport may input into its platforms (the "Platform"). You hereby authorize Hyport to capture your contact information, credit card or ACH information, and campaign information into the Platform. Hyport will only use such information in connection with the fulfillment of the Marketing Services, as the Agreement may otherwise permit, and as may be legally necessary. You also agree that Hyport may, from time to time, use your data to send you emails regarding campaign updates, payment reminders, and marketing opportunities relating to Hyport and its affiliates.

2. **License to Access Performance Platform.** Upon sign-up for a Marketing Service and while your account is in good standing and active, you are granted a revocable, non-transferable, non-sublicensable, non-exclusive, limited license to access any online reporting and marketing services platform (the "Performance Platform") that Hyport makes available in connection with the Marketing Services. Your access will be password protected and you agree not to share your password or otherwise provide access to third parties. If the security of your username(s) or password(s) is compromised, or if you or your agents suspect that it may be compromised, you must immediately contact Hyport. Hyport is not responsible for any loss or damage resulting from any such security compromise. You acknowledge and agree that you do not have, nor will you claim any right, title or interest in the Platform, Performance Platform, software, data, applications, methods of doing business or any elements thereof, or any content provided therein. You may only access the Performance Platform via a web browser or a mobile application. You will not attempt in any way to reverse engineer, alter, modify, eliminate, conceal, or otherwise render inoperable the Performance Platform. Hyport may terminate the foregoing license, at any time and for any reason.

6. **Hyport's Discretion as Service Provider.** In its sole discretion, Hyport may elect not to provide Marketing Services that would result in distribution of content that might be viewed as misleading, obscene or related to illegal activity.

7. **Intellectual Property.**

    1. **License to Client Content.** You hereby grant to Hyport and the online properties on which Client Content (defined below) is served by the Marketing Services (the "Publishers") a non-exclusive, royalty-free, worldwide license to use, copy, modify (as permitted herein), publicly perform, display, broadcast and transmit during the term of this Agreement (i) any text, images, logos, trademarks, service marks, promotional materials, product or service information, comments, reviews, photos, audio and video clips and other information ("Client Content") you provide in connection with Marketing Services and (ii) your native web site (the "Existing Site"), to the extent necessary for Hyport to perform the Marketing Services, including to perform automated scans of text data and publicly available content on the Existing Site in order to improve the performance of your Marketing Services and/or recommend other Marketing Services. Except as set forth in any Product Terms and this Agreement, title to and ownership of all intellectual property rights of all Client Content will remain with you or your third-party licensors. Hyport may, during the term of this Agreement and thereafter, include your name (including any trade name, trademark, service mark and logo) on Hyport's client list, and in its marketing materials.

    2. **Hyport Creative Services.** Except as may be otherwise provided in any Product Terms, if you request that Hyport provide creative services, you will remain fully responsible for any content you provide to Hyport. With respect to any content created by Hyport, as between you and Hyport, Hyport will retain ownership of the design elements of such content, excluding any of your trade names, trademarks, service marks or logos or other proprietary elements that may be included within such content, but that predate the creation of the content. Hyport does not assume any obligation to perform a legal review of your digital marketing, and you remain solely responsible for legal and regulatory compliance and for the content of the Marketing Services.

8. **Client Privacy Policy.** You must post, maintain, and comply with a privacy policy on your Existing Site. The privacy policy must comply with all applicable laws, and you must ensure that it does not contain provisions that are inconsistent with the nature of the Marketing Services that Hyport provides to you. Your failure to maintain a privacy policy that complies with the foregoing requirements may (i) result in the suspension of your campaign and (ii) expose you and Hyport to liability which you shall fully indemnify Hyport.

9. **Client Representations, Warranties and Covenants.** You represent and warrant that you have the right and authority to enter into this Agreement. You also represent, warrant and covenant that the Existing Site, any content linked to the Existing Site and any content or materials that you provide to Hyport, do not and will not: (a) infringe on any third party's copyright, patent, trademark, trade secret, moral right or other proprietary rights or right of publicity or privacy; (b) violate any law, statute, ordinance or regulation, including, without limitation, laws and regulations governing export control, false or misleading advertising or unfair competition; (c) be defamatory or libelous; (d) be pornographic or obscene; or (e) contain viruses, trojan horses, worms, time bombs, cancelbots or other similar harmful or deleterious programming routines. You further represent, warrant and covenant that the product or service being promoted through any campaign is (i) lawful and (ii) not the subject of any ongoing investigation by any local, state or federal regulatory or quasi-regulatory authorities.

10. **Indemnification.**

1. You will indemnify, defend (with counsel reasonably acceptable to Hyport) and hold harmless Hyport, the Publishers, their subsidiaries, affiliates and parent companies and each of their respective directors, officers, agents and employees and each of their successors and assigns from and against any and all claims, liabilities, damages, losses, costs, expenses, fees of any kind (including without limitation reasonable attorneys' fees and expenses) incurred in connection with any claim, action or proceeding arising from or relating to: (i) your breach of any representation, warranty, covenant or other obligation contained in this Agreement; (ii) your violation of any third-party rights, including intellectual property, privacy, publicity or other proprietary rights; (iii) the sale, license, supply or provision of your goods or services; or (iv) any other act, omission or misrepresentation by you. Hyport reserves the right, at its own expense, to assume the exclusive defense and control of any matter otherwise subject to your indemnification, and in such event you will reasonably cooperate with Hyport in such defense. Without Hyport's prior written consent, you will not enter any settlement or compromise any claim, which settlement or compromise would result in any liability to, or any admission of wrongdoing by, any indemnified person or entity.

2. Hyport will indemnify, defend, and hold you harmless from and against any loss, damage, cost, liability or expense (including reasonable legal fees and expenses) arising out of any claim that any Hyport technology used in connection with its provision of the Marketing Services infringes the copyright, patent, trade secret or other proprietary rights of any third party, provided that you promptly notify Hyport of such claims and that you assist as may be reasonably required to defend such matters.

11. **Agency**. If you are purchasing advertising on another company's behalf, you represent and warrant that such company authorized you to act as its agent in all respects relating to the Agreement, including elections or consents. Without limiting the generality of the foregoing, you agree on such company's behalf that such company is aware of and agrees to this Agreement. You and each such company will be jointly and severally liable for performance of obligations under this Agreement, including all payment obligations.

12. **Confidentiality**. Except as applicable law may require, you shall not disclose (i) the contents of any Order Form to any third party (other than employees and representatives who are notified of and agree to this restriction) without Hyport's prior written consent, or (ii) any Confidential Information regarding Hyport. "Confidential Information" means information about Hyport's (or its suppliers') business, products, technologies (including the Platforms), strategies, financial information, operations or activities that is proprietary and confidential, including without limitation all business, financial, technical and other information disclosed by Hyport. Confidential Information will not include information that you can establish is in or enters the public domain without breach of these confidentiality obligations.

13. **DISCLAIMER OF WARRANTIES.**
   1. **HYPORT PROVIDES ALL MARKETING SERVICES** HEREUNDER ON AN "AS IS" AND "AS AVAILABLE" BASIS. WITHOUT ANY WARRANTY OF ANY KIND AND WITHOUT ANY GUARANTEE OF CONTINUOUS OR UNINTERRUPTED AVAILABILITY. IF THE MARKETING SERVICES ARE INTERRUPTED OR DELAYED, HYPORT'S SOLE OBLIGATION WILL BE TO RESTORE SUCH SERVICES AS SOON AS PRACTICABLE. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, HYPORT DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. HYPORT WILL HAVE NO LIABILITY FOR ANY: (i) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT OR INFORMATION; (ii) CLAIMS RELATING TO

INFRINGEMENT OF ANY THIRD PARTY'S INTELLECTUAL PROPERTY (OTHER THAN BY THE PLATFORM) OR DEFAMATION; (iii) PERSONAL INJURY OR PROPERTY DAMAGE RESULTING FROM YOUR ACCESS TO OR USE OF ANY OF THE MARKETING SERVICES; (iv) UNAUTHORIZED ACCESS TO OR USE OF HYPORT'S SERVERS OR OF ANY PERSONAL OR FINANCIAL INFORMATION; (v) INTERRUPTION OF TRANSMISSION TO OR FROM THE MARKETING SERVICES; (vi) BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE WHICH MAY BE TRANSMITTED ON OR THROUGH THE MARKETING SERVICES BY ANY THIRD PARTY; (vii) LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF THE USE OF ANY CONTENT POSTED, E-MAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE ON OR THROUGH THE MARKETING SERVICES; OR (viii) MATTERS BEYOND HYPORT'S REASONABLE CONTROL. HYPORT DOES NOT WARRANT, ENDORSE, GUARANTEE, OR ASSUME RESPONSIBILITY FOR ANY PRODUCT OR SERVICE ADVERTISED OR OFFERED BY A THIRD PARTY ON OR THROUGH THE OFFERINGS OR ANY LINKED WEBSITE. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM HYPORT OR THROUGH THE MARKETING SERVICES WILL CREATE ANY WARRANTY NOT EXPRESSLY MADE IN THESE MARKETING SERVICES TERMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, HYPORT MAKES NO GUARANTEES WITH RESPECT TO THE PERFORMANCE OF ANY CAMPAIGN OR ANY PRODUCT OR SERVICE.

14. **LIMITATIONS OF LIABILITY.**
    1. IN LIEU OF REFUND, HYPORT MAY, IN ITS SOLE DISCRETION, PROVIDE "MAKEGOOD" MARKETING SERVICES, PROVIDED SUCH "MAKEGOOD" MARKETING SERVICES ARE PROVIDED WITHIN A REASONABLE PERIOD OF TIME AFTER THE LIABILITY HAS ACCRUED.
    2. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY WILL BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, FOR CONTRACT BREACH OR WARRANTY, NEGLIGENCE OR STRICT LIABILITY), OR FOR INTERRUPTED COMMUNICATIONS, LOSS OF USE, LOST BUSINESS, LOST DATA OR LOST PROFITS (EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF ANY OF THE FOREGOING), ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. THE FOREGOING EXCLUSION OF LIABILITY WILL NOT APPLY TO (i) EITHER PARTY'S INDEMNIFICATION OBLIGATIONS, INCLUDING ANY AMOUNTS PAYABLE IN CONNECTION THEREWITH; (ii) TO YOUR CONFIDENTIALITY OBLIGATIONS; AND/OR (iii) EITHER PARTY'S WILLFUL MISCONDUCT.
    3. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, UNDER NO CIRCUMSTANCES SHALL HYPORT'S CUMULATIVE, AGGREGATE LIABILITY TO YOU OR ANY THIRD PARTY EXCEED THE AMOUNTS RECEIVED BY HYPORT FROM YOU DURING THE 12-MONTH PERIOD IMMEDIATELY BEFORE THE INCIDENT GIVING RISE TO SUCH LIABILITY.
        a. If a jurisdiction applicable to you does not allow the exclusion of certain warranties or the limitation or exclusion of liability for incidental or consequential damages, such limitations and disclaimers listed above will not apply to you. To the extent applicable law restrict Hyport from disclaiming any implied warranty or limit its liabilities, the scope and duration of such warranty and the extent of Hyport's liability will be the minimum permitted under such law.
    4. Each party acknowledges that the other party relied on the limitations of liability set forth herein when entering the Order Form, and that the same are an essential basis of the parties' bargain.

**15. Applicable Law, Dispute Resolution.**

1. **Governing Law.** Except to the extent governed by federal law, all matters arising out of or relating to this Agreement are governed by and construed in accordance with the internal laws of Texas without giving effect to any choice or conflict of law provision or rule (whether of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of Texas. Client and Hyport acknowledge that the agreements regarding applicable law, forum, and venue set forth in this Section 15 provide each of the parties with the mutual benefit of uniform interpretation of this Agreement and any dispute arising out of this Agreement or the relationship created by this Agreement. Client and Hyport further acknowledge the receipt and sufficiency of mutual consideration for such benefit.

2. **Exclusive Dispute Resolution Mechanism.** Except for the specific types of disputes identified below in Section 15(d)(8), the parties shall resolve any dispute, controversy, or claim arising out of or relating to the parties' relationship or this Agreement, or the breach, termination or invalidity hereof (each, a "Dispute"), under the provisions of Sections 15(a) through 15(f). The procedures set forth in Sections 15(a) through 15(f) shall be the exclusive mechanism for resolving any Dispute that may arise from time to time Section 15(c) is an express condition precedent to binding arbitration of the Dispute.

3. **Negotiations.** Except for the specific types of disputes identified below in Section 15(d)(8), the parties agree that with respect to any Dispute, Hyport and Client shall negotiate in good faith to informally resolve the Dispute. If the Dispute is not resolved satisfactorily within 60 days after Hyport or Client receives notice in accordance with Section 22 (if Hyport), or to the address identified on the Order Form (if Client), either party can submit the Dispute to binding arbitration in accordance with the below arbitration provision.

4. **Arbitration.**
   a. Any dispute, controversy, or claim arising out of, in connection with, or relating to this Agreement, and the relationships created hereby; or the formation, interpretation, breach, termination, or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, must be resolved by arbitration. The arbitration must be administered in accordance with the Commercial Rules of the AAA. There will be one arbitrator. The arbitrator(s) must be experienced in commercial contract law and have no prior business or professional relationship with either party. All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) ("FAA"). Formal discovery will only be permitted upon a showing of good cause and subject to the arbitrator's approval. The arbitration may be held by video conference or by written submissions if Client and Hyport mutually agree. The parties intend and agree that any state laws attempting to prohibit arbitration or void out-of-state forums for arbitration are preempted by the FAA and that arbitration will be held as provided in this Section 15(d). The arbitrator must provide a reasoned award in writing. The award rendered by the arbitrator will be final, and judgment may be entered thereon in any court having jurisdiction thereof.
   b. The costs and expenses of arbitration paid to the AAA and to the arbitrator will initially be paid equally by the two sides to the arbitration. All other arbitration-related expenses, including but not limited to attorneys' fees and travel expenses, will be paid initially by the party which incurred such expense. Notwithstanding the foregoing, the arbitrator(s) must award to the prevailing party the reasonable costs and fees, including attorneys' fees, incurred in the arbitration. After an arbitration is commenced, if the Claimant makes a written settlement offer that the other party ("Respondent") rejects, and Claimant is the prevailing party in

arbitration and recovers an amount equal to or greater than Claimant's offer of settlement, Claimant shall recover his, her or its reasonable attorneys' fees and expenses incurred in investigating, preparing for, and pursuing a claim in arbitration up to $25,000. After an arbitration is commenced, if the Respondent makes a written settlement offer that the Claimant rejects, and Claimant either does not prevail in arbitration or does not recover more in the arbitration than Respondent's offer settlement (exclusive of attorneys' fees or costs awarded to Claimant by the arbitrator), then Respondent shall recover his, her or its reasonable attorneys' fees and expenses incurred in investigating, preparing for, and defending the claim in arbitration up to $25,000.

c.  The arbitration shall take place in the state and county in which Client is located or in the city in which Hyport maintains its principal business office at the time of the arbitration, in accordance with the initiating party's ("Claimant's") preference.

d.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ARBITRATION WILL PROCEED SOLELY ON AN INDIVIDUAL BASIS WITHOUT THE RIGHT FOR ANY DISPUTES TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF OTHERS. DISPUTES MAY NOT BE JOINED OR CONSOLIDATED WITH ANY OTHER ARBITRATION UNLESS AGREED TO IN WRITING BY ALL PARTIES.

e.  The arbitrator has no power or authority to award punitive damages and, with respect to any claim for damages, the arbitrator(s) is authorized to award only actual damages sustained by a party.

f.  If Hyport or Client files in court any claim that should have been brought in arbitration under this Section 15(d), and the other party succeeds in a motion to compel arbitration of such claim, the party filing such claim in court must reimburse the other party its reasonable attorneys' fees and costs for defending against the lawsuit and for its motion to compel arbitration. Further, if prior to an arbitrator's final decision, either Client or Hyport commences an action in any court for a claim that arises out of or relates to this Agreement (except for the purpose of enforcing this arbitration provision or as otherwise permitted by this Agreement), the party bringing the action in court will be responsible for the other party's expenses of enforcing this arbitration provision, including court costs, arbitration filing fees, and other costs and attorneys' fees.

g.  Client will not assert any claim or cause of action against Hyport or its officers, directors, shareholders, employees, or affiliates after one year following the event giving rise to such claim or cause of action.

h.  Notwithstanding the foregoing provisions of this Section 15(d), Disputes related to or based on (i) past due monies owed pursuant to this Agreement, or (ii) patent, copyright, trademark, or trade secret right of Client, Hyport or any affected third party (collectively, "Intellectual Property Rights") may be brought in court.

i.  Hyport reserves the right to amend this arbitration provision at any time and will notify Client of such amendments.  Client's continued use of the services after receiving notice of any changes to this Section 15 is affirmation of Client's consent to such changes.

   ▪  Notwithstanding the foregoing, each party retains the right to apply to any court of competent jurisdiction for provisional and/or conservatory relief, including injunctions or pre-arbitral attachments, and any such request will not be deemed in-compatible with the agreement to arbitrate or a waiver of the right to arbitrate. Client hereby irrevocably consent to personal jurisdiction in the state and federal courts located in the county in which Hyport maintains its principal place of business for this purpose.

- To the extent that litigation is permitted in accordance with the above provisions, or in the event that, notwithstanding the above provisions, it is ultimately determined that a particular claim is not arbitrable under applicable law, the following provisions will apply:

j. **VENUE AND JURISDICTION.** ANY ACTION BROUGHT BY ANY PARTY AGAINST THE OTHER IN ANY COURT, WHETHER FEDERAL OR STATE, MUST BE BROUGHT EXCLUSIVELY WITHIN THE COUNTY OR THE FEDERAL JUDICIAL DISTRICT WHERE HYPORT'S PRINCIPAL BUSINESS OFFICE IS LOCATED. CLIENT HEREBY SUBMITS TO THE JURISDICTION OF THOSE COURTS FOR PURPOSES OF ANY SUCH PROCEEDING AND WAIVE ANY OBJECTIONS TO JURISDICTION AND ANY CLAIM THAT SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM OR THAT VENUE IS IMPROPER. NOTWITHSTANDING THE ABOVE, WITH RESPECT TO ANY ACTION WHICH INCLUDES INJUNCTIVE RELIEF OR OTHER PROVISIONAL RELIEF, ANY PARTY MAY BRING SUCH ACTION IN ANY COURT IN ANY STATE WHICH HAS JURISDICTION.

k. **WAIVER OF JURY TRIAL.** CLIENT AND HYPORT HEREBY IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM AGAINST THE OTHER, WHETHER OR NOT THERE ARE OTHER PARTIES IN SUCH ACTION OR PROCEEDING.

l. **WAIVER OF PUNITIVE DAMAGES.** THE PARTIES HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM OF ANY PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER AND AGREE THAT IN THE EVENT OF A DISPUTE BETWEEN THEM, CLAIMS FOR DAMAGES WILL BE LIMITED TO THE RECOVERY OF ANY ACTUAL DAMAGES SUSTAINED BY A PARTY.

m. **Attorneys' Fees.** If either party commences a legal action against the other party arising out of or in connection with this Agreement, the prevailing party will be entitled to have and recover from the other party its reasonable attorneys' fees and costs of suit.

**16. Entire Agreement.** The Agreement (which includes the Order Form, all applicable Product Terms and any payment authorization forms) sets forth the entire agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties as to the subject matter hereof. It may be changed only by a writing signed by both parties. Changes to Order Forms then in effect may be by email, provided that such changes are limited to amounts being paid under the Order Form or a change in the Order Form's term.

**17. Waiver.** No waiver by Hyport of any of the provisions of this Agreement is effective unless explicitly set forth in writing and signed by Hyport. No failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement operates or may be construed as a waiver thereof. No single or partial exercise of any right, remedy, power, or privilege hereunder precludes any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**18. Force Majeure.** Neither party shall have any liability for any failure or delay in fulfilling or performing any term of this Agreement when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of such party, including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other civil unrest, national emergency, revolution, insurrection, epidemic, lock-outs, strikes or other labor disputes (whether or not relating to either party's workforce), or restraints or delays affecting carriers or inability or delay in

obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage.

**19. Assignment.** You may not assign any Order Form or the Agreement without Hyport's prior written consent. Any purported assignment or delegation in violation of this Section is null and void. The parties' rights and obligations will bind and inure to the benefit of their respective successors, heirs, executors and joint administrators and permitted assigns.

**20. Relationship of the Parties.** The parties' relationship is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment, or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever.

**21. Third Party Beneficiaries.** You understand and acknowledge that the Publishers are intended third-party beneficiaries of Sections 7, 9, 10 and 14. Except as expressly stated, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**22. Notices.** All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "Notice") shall be in writing and addressed to the parties at the addresses set forth in the Order Form or to such other address that may be designated by the receiving party in writing. All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), facsimile or email (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt of the receiving party, and (b) if the party giving the Notice has complied with the requirements of this Section. Notice may be sent to Hyport via email to legal@n2co.com.

**23. Severability.** If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force without being impaired or invalidated in any way.

**24. Third-Party Services.** Some or all Marketing Services may incorporate third-party products and services and Hyport may do so without your consent, provided that Hyport remains primarily liable for the performance of its obligations to you.

Last updated on November 7, 2022

# EXHIBIT 3

# EXHIBIT 3

FILED

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

2024 AUG 27 ☐ 4: 15

NEW HANOVER CO.. C.S.C

BY_____

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

FILE NO. 24-CVS-_____

THE N2 COMPANY,

    Plaintiff,

v.

NUMALE MEDICAL CENTER, LLC
and NUMALE CORPORATION,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

VERIFIED COMPLAINT
(COMP)(MNYO)

Plaintiff The N2 Company, complaining of the above-referenced defendants, says and avers:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff is a Delaware corporation authorized to do business in North Carolina. At all times relevant to the Complaint, Plaintiff maintained its principal place of business in New Hanover County, North Carolina.

2.    Defendant NuMale Medical Center, LLC ("NMC") is a Wisconsin limited liability company with its principal place of business located in Wauwatosa, Wisconsin.

3.    Defendant NuMale Corporation ("NuMale Corp.") is a Nevada corporation with its principal place of business located in Las Vegas, Nevada.

4.    This Court has jurisdiction over the subject matter of this dispute and all parties set forth herein.

5.    Venue is proper in this Court.

A TRUE COPY
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: Alizay Benson
Deputy Clerk of Superior Court

## BACKGROUND

6.    Plaintiff incorporates by reference all previous allegations.

7.    Plaintiff, doing business as Hyport Digital, is regularly engaged in the business of, *inter alia*, providing and selling digital advertising services to other businesses ("Services").

8.    Defendants are engaged in the business of providing health and wellness treatment options specific to men through its "NuMale" business divisions and to women through its "NuFemme" business divisions.

9.    Upon information and belief, NMC and NuMale Corp. operate collectively as a single joint business enterprise among their various affiliates across the country. [1]

10.    Defendants use various business names and multiple d/b/a designations interchangeably, including but not limited to the Unregistered Affiliates, based on the named city and state providing their corresponding services.

11.    Upon information and belief, at all times relevant to this action, Defendants have been managed, directed, and controlled by the same principals,

---

[1] Defendants affiliated entities are comprised of various entities registered to do business across the county, as well as the following unregistered entities which were used by Defendants when executing the contracts subject to this lawsuit: (a) NuMale Medical Albuquerque LLC, (b) NuFemme Rejuvenation Clinic Albuquerque, (c) NuMale Medical Charlotte LLC, (d) NuMale Medical Chicago LLC, (e) NuMale Medical Denver LLC, (f) NuMale Medical Green Bay LLC, (g) NuFemme Rejuvenation Clinic Green Bay, (h) NuMale Medical Las Vegas LLC, (i) NuFemme Rejuvenation Clinic Las Vegas, (j) NuMale Medical Tampa LLC, (k) NuFemme Rejuvenation Clinic Tampa, (l) NuMale Medical Omaha LLC, (m) NuFemme Rejuvenation Clinic Omaha, (n) NuMale Medical Milwaukee, and (o) NuFemme Rejuvenation Clinic Milwaukee (collectively, the "Unregistered Affiliates").

directors, officers, and shareholders, including, but not limited to, Brad Palubicki, Carlos Feliciano, and Justin Pullian (collectively, the "Principals").

12.    Justin Pulliam, Vice President of Defendants NMC and NuMale Corp. in April 2023, requested all of the Services provided by Plaintiff at issue in this Complaint, signed all of the contracts referenced in this Complaint, and represented himself as acting on behalf of both Defendants all times.

**FIRST CLAIM FOR RELIEF**
(BREACH OF CONTRACT – ACCOUNT NO. 222095)

13.    Plaintiff incorporates by reference all previous allegations.

14.    On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 1"), which pursuant to its terms, is subject to the online and digital marketing services terms and conditions found on Plaintiff's website ("Terms and Conditions").

15.    A copy of Contract 1 is attached as **Exhibit A**.

16.    A copy of the Terms and Conditions is attached as **Exhibit B**.

17.    Pursuant to Contract 1, the named advertiser was NuMale Medical Albuquerque LLC.

18.    NuMale Medical Albuquerque LLC is not an entity registered to do business in either North Carolina or New Mexico.

19.    Contract 1 was executed on behalf of Defendant NMC d/b/a NuMale Medical Albuquerque LLC.

3

20. Contract 1 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Albuquerque LLC.

21. Pursuant to Contract 1, Defendants purchased certain Services from Plaintiff.

22. Pursuant to Contract 1, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

23. Defendants materially breached and defaulted in their payment obligations under Contract 1.

24. Contract 1 is past due and in default.

25. Plaintiff actually provided its Services to Defendants under Contract 1 and is entitled to be paid in full by Defendants for those Services.

26. As a direct and proximate result of the material breach of Contract 1 by Defendants, Plaintiff has been financially damaged.

27. Plaintiff demanded payment in full for amounts due and owing under Contract 1 by letters dated April 10, 2024 (collectively, the "Demand Letters"), but Defendants have failed and refused to pay the balance.

28. Copies of the Demand Letters are collectively attached as **Exhibit C**.

29. Defendants, jointly and severally, owe Plaintiff on Contract 1 the sum of $34,824.40, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

4

30.    Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision.  This dispute is related to and based on past due monies owed to Plaintiff.

**SECOND CLAIM FOR RELIEF**
(BREACH OF CONTRACT – ACCOUNT NO. 222098)

31.    Plaintiff incorporates by reference all previous allegations.

32.    On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 2"), which pursuant to its terms, is subject to the Terms and Conditions.

33.    A copy of Contract 2 is attached as **Exhibit D.**

34.    Pursuant to Contract 2, the named advertiser was NuFemme Rejuvenation Clinic Albuquerque.

35.    NuFemme Rejuvenation Clinic Albuquerque is not an entity registered to do business in either North Carolina or New Mexico.

36.    Contract 2 was executed on behalf of Defendant NMC d/b/a NuFemme Rejuvenation Clinic Albuquerque.

37.    Contract 2 was executed on behalf of Defendant NuMale Corp. d/b/a NuFemme Rejuvenation Clinic Albuquerque.

38.    Pursuant to Contract 2, Defendants purchased certain Services from Plaintiff.

5

39. Pursuant to Contract 2, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

40. Defendants materially breached and defaulted in their payment obligations under Contract 2.

41. Contract 2 is past due and in default.

42. Plaintiff actually provided its Services to Defendants under Contract 2 and is entitled to be paid in full by Defendants for those Services.

43. As a direct and proximate result of the material breach of Contract 2 by Defendants, Plaintiff has been financially damaged.

44. Plaintiff demanded payment in full for amounts due and owing under Contract 2 in the Demand Letters, but Defendants have failed and refused to pay the balance.

45. Defendants, jointly and severally, owe Plaintiff on Contract 2 the sum of $14,493.55, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

46. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

### THIRD CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222099)

47. Plaintiff incorporates by reference all previous allegations.

48. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and

6

Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 3"), which pursuant to its terms, is subject to the Terms and Conditions.

49. A copy of Contract 3 is attached as **Exhibit E**.

50. Pursuant to Contract 3, the named advertiser was NuMale Medical Charlotte LLC.

51. NuMale Medical Charlotte LLC is not an entity registered to do business in North Carolina.

52. Contract 3 was executed on behalf of Defendant NMC d/b/a NuMale Medical Charlotte LLC.

53. Contract 3 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Charlotte LLC.

54. Pursuant to Contract 3, Defendants purchased certain Services from Plaintiff.

55. Pursuant to Contract 3, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

56. Defendants materially breached and defaulted in their payment obligations under Contract 3.

57. Contract 3 is past due and in default.

58. Plaintiff actually provided its Services to Defendants under Contract 3 and is entitled to be paid in full by Defendants for those Services.

59.     As a direct and proximate result of the material breach of Contract 3 by Defendants, Plaintiff has been financially damaged.

60.     Plaintiff demanded payment in full for amounts due and owing under Contract 3 in the Demand Letters, but Defendants have failed and refused to pay the balance.

61.     Defendants, jointly and severally, owe Plaintiff on Contract 3 the sum of $78,267.10, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

62.     Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision.  This dispute is related to and based on past due monies owed to Plaintiff.

**FOURTH CLAIM FOR RELIEF**
(BREACH OF CONTRACT – ACCOUNT NO. 222101)

63.     Plaintiff incorporates by reference all previous allegations.

64.     On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 4"), which pursuant to its terms, is subject to the Terms and Conditions.

65.     A copy of Contract 4 is attached as **Exhibit F**.

66.     Pursuant to Contract 4, the named advertiser was NuMale Medical Chicago LLC.

8

67.     NuMale Medical Chicago LLC is not an entity registered to do business in North Carolina.

68.     Contract 4 was executed on behalf of Defendant NMC d/b/a NuMale Medical Chicago LLC.

69.     Contract 4 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Chicago LLC.

70.     Pursuant to Contract 4, Defendants purchased certain Services from Plaintiff.

71.     Pursuant to Contract 4, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

72.     Defendants materially breached and defaulted in their payment obligations under Contract 4.

73.     Contract 4 is past due and in default.

74.     Plaintiff actually provided its Services to Defendants under Contract 4 and is entitled to be paid in full by Defendants for those Services.

75.     As a direct and proximate result of the material breach of Contract 4 by Defendants, Plaintiff has been financially damaged.

76.     Plaintiff demanded payment in full for amounts due and owing under Contract 4 in the Demand Letters, but Defendants have failed and refused to pay the balance.

77.    Defendants, jointly and severally, owe Plaintiff on Contract 4 the sum of $107,902.43, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

78.    Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## FIFTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222103)

79.    Plaintiff incorporates by reference all previous allegations.

80.    On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 5"), which pursuant to its terms, is subject to the Terms and Conditions.

81.    A copy of Contract 5 is attached as **Exhibit G**.

82.    Pursuant to Contract 5, the named advertiser was NuMale Medical Denver LLC.

83.    NuMale Medical Denver LLC is not an entity registered to do business in either North Carolina or Colorado.

84.    Contract 5 was executed on behalf of Defendant NMC d/b/a NuMale Medical Denver LLC.

85.    Contract 5 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Denver LLC.

10

86.     Pursuant to Contract 5, Defendants purchased certain Services from Plaintiff.

87.     Pursuant to Contract 5, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

88.     Defendants materially breached and defaulted in their payment obligations under Contract 5.

89.     Contract 5 is past due and in default.

90.     Plaintiff actually provided its Services to Defendants under Contract 5 and is entitled to be paid in full by Defendants for those Services.

91.     As a direct and proximate result of the material breach of Contract 5 by Defendants, Plaintiff has been financially damaged.

92.     Plaintiff demanded payment in full for amounts due and owing under Contract 5 in the Demand Letters, but Defendants have failed and refused to pay the balance.

93.     Defendants, jointly and severally, owe Plaintiff on Contract 5 the sum of $64,924.21, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

94.     Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## SIXTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222104)

95.     Plaintiff incorporates by reference all previous allegations.

11

96.     On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 6"), which pursuant to its terms, is subject to the Terms and Conditions.

97.     A copy of Contract 6 is attached as **Exhibit H.**

98.     Pursuant to Contract 6, the named advertiser was NuMale Medical Green Bay LLC.

99.     NuMale Medical Green Bay LLC is not an entity registered to do business in either North Carolina or Wisconsin.

100.    Contract 6 was executed on behalf of Defendant NMC d/b/a NuMale Medical Green Bay LLC.

101.    Contract 6 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Green Bay LLC.

102.    Pursuant to Contract 6, Defendants purchased certain Services from Plaintiff.

103.    Pursuant to Contract 6, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

104.    Defendants materially breached and defaulted in their payment obligations under Contract 6.

105.    Contract 6 is past due and in default.

106. Plaintiff actually provided its Services to Defendants under Contract 6 and is entitled to be paid in full by Defendants for those Services.

107. As a direct and proximate result of the material breach of Contract 6 by Defendants, Plaintiff has been financially damaged.

108. Plaintiff demanded payment in full for amounts due and owing under Contract 6 in the Demand Letters, but Defendants have failed and refused to pay the balance.

109. Defendants, jointly and severally, owe Plaintiff on Contract 6 the sum of $24,863.08, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

110. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

**SEVENTH CLAIM FOR RELIEF**
(BREACH OF CONTRACT – ACCOUNT NO. 222106)

111. Plaintiff incorporates by reference all previous allegations.

112. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 7"), which pursuant to its terms, is subject to the Terms and Conditions.

113. A copy of Contract 7 is attached as **Exhibit I**.

13

114. Pursuant to Contract 7, the named advertiser was NuFemme Rejuvenation Clinic Green Bay.

115. NuFemme Rejuvenation Clinic Green Bay is not an entity registered to do business in either North Carolina or Wisconsin.

116. Contract 7 was executed on behalf of Defendant NMC d/b/a NuFemme Rejuvenation Clinic Green Bay.

117. Contract 7 was executed on behalf of Defendant NuMale Corp. d/b/a NuFemme Rejuvenation Clinic Green Bay.

118. Pursuant to Contract 7, Defendants purchased certain Services from Plaintiff.

119. Pursuant to Contract 7, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

120. Defendants materially breached and defaulted in their payment obligations under Contract 7.

121. Contract 7 is past due and in default.

122. Plaintiff actually provided its Services to Defendants under Contract 7 and is entitled to be paid in full by Defendants for those Services.

123. As a direct and proximate result of the material breach of Contract 7 by Defendants, Plaintiff has been financially damaged.

124. Plaintiff demanded payment in full for amounts due and owing under Contract 7 in the Demand Letters, but Defendants have failed and refused to pay the balance.

14

125. Defendants, jointly and severally, owe Plaintiff on Contract 7 the sum of $9,373.61, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

126. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## EIGHTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222107)

127. Plaintiff incorporates by reference all previous allegations.

128. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 8"), which pursuant to its terms, is subject to the Terms and Conditions.

129. A copy of Contract 8 is attached as **Exhibit J**.

130. Pursuant to Contract 8, the named advertiser was NuMale Medical Las Vegas LLC.

131. NuMale Medical Las Vegas LLC is not an entity registered to do business in either North Carolina or Nevada.

132. Contract 8 was executed on behalf of Defendant NMC d/b/a NuMale Medical Las Vegas LLC.

133. Contract 8 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Las Vegas LLC.

15

134. Pursuant to Contract 8, Defendants purchased certain Services from Plaintiff.

135. Pursuant to Contract 8, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

136. Defendants materially breached and defaulted in their payment obligations under Contract 8.

137. Contract 8 is past due and in default.

138. Plaintiff actually provided its Services to Defendants under Contract 8 and is entitled to be paid in full by Defendants for those Services.

139. As a direct and proximate result of the material breach of Contract 8 by Defendants, Plaintiff has been financially damaged.

140. Plaintiff demanded payment in full for amounts due and owing under Contract 8 in the Demand Letters, but Defendants have failed and refused to pay the balance.

141. Defendants, jointly and severally, owe Plaintiff on Contract 8 the sum of $60,828.05, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

142. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## NINTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222109)

143. Plaintiff incorporates by reference all previous allegations.

16

144. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 9"), which pursuant to its terms, is subject to the Terms and Conditions.

145. A copy of Contract 9 is attached as **Exhibit K**.

146. Pursuant to Contract 9, the named advertiser was NuFemme Rejuvenation Clinic Las Vegas.

147. NuFemme Rejuvenation Clinic Las Vegas is not an entity registered to do business in either North Carolina or Nevada.

148. Contract 9 was executed on behalf of Defendant NMC d/b/a NuFemme Rejuvenation Clinic Las Vegas.

149. Contract 9 was executed on behalf of Defendant NuMale Corp. d/b/a NuFemme Rejuvenation Clinic Las Vegas.

150. Pursuant to Contract 9, Defendants purchased certain Services from Plaintiff.

151. Pursuant to Contract 9, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

152. Defendants materially breached and defaulted in their payment obligations under Contract 9.

153. Contract 9 is past due and in default.

17

154. Plaintiff actually provided its Services to Defendants under Contract 9 and is entitled to be paid in full by Defendants for those Services.

155. As a direct and proximate result of the material breach of Contract 9 by Defendants, Plaintiff has been financially damaged.

156. Plaintiff demanded payment in full for amounts due and owing under Contract 9 in the Demand Letters, but Defendants have failed and refused to pay the balance.

157. Defendants, jointly and severally, owe Plaintiff on Contract 9 the sum of $15,190.39, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

158. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## TENTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222111)

159. Plaintiff incorporates by reference all previous allegations.

160. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 10"), which pursuant to its terms, is subject to the Terms and Conditions.

161. A copy of Contract 10 is attached as **Exhibit L.**

18

162. Pursuant to Contract 10, the named advertiser was NuMale Medical Tampa LLC.

163. NuMale Medical Tampa LLC is not an entity registered to do business in either North Carolina or Florida.

164. Contract 10 was executed on behalf of Defendant NMC d/b/a NuMale Medical Tampa LLC.

165. Contract 10 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Tampa LLC.

166. Pursuant to Contract 10, Defendants purchased certain Services from Plaintiff.

167. Pursuant to Contract 10, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

168. Defendants materially breached and defaulted in their payment obligations under Contract 10.

169. Contract 10 is past due and in default.

170. Plaintiff actually provided its Services to Defendants under Contract 10 and is entitled to be paid in full by Defendants for those Services.

171. As a direct and proximate result of the material breach of Contract 10 by Defendants, Plaintiff has been financially damaged.

172. Plaintiff demanded payment in full for amounts due and owing under Contract 10 in the Demand Letters, but Defendants have failed and refused to pay the balance.

173.   Defendants, jointly and severally, owe Plaintiff on Contract 10 the sum of $80,845.18, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

174.   Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision.  This dispute is related to and based on past due monies owed to Plaintiff.

### ELEVENTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222114)

175.   Plaintiff incorporates by reference all previous allegations.

176.   On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 11"), which pursuant to its terms, is subject to the Terms and Conditions.

177.   A copy of Contract 11 is attached as **Exhibit M**.

178.   Pursuant to Contract 11, the named advertiser was NuFemme Rejuvenation Clinic Tampa.

179.   NuFemme Rejuvenation Clinic Tampa is not an entity registered to do business in either North Carolina or Florida.

180.   Contract 11 was executed on behalf of Defendant NMC d/b/a NuFemme Rejuvenation Clinic Tampa.

181.   Contract 11 was executed on behalf of Defendant NuMale Corp. d/b/a NuFemme Rejuvenation Clinic Tampa.

20

182.    Pursuant to Contract 11, Defendants purchased certain Services from Plaintiff.

183.    Pursuant to Contract 11, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

184.    Defendants materially breached and defaulted in their payment obligations under Contract 11.

185.    Contract 11 is past due and in default.

186.    Plaintiff actually provided its Services to Defendants under Contract 11 and is entitled to be paid in full by Defendants for those Services.

187.    As a direct and proximate result of the material breach of Contract 11 by Defendants, Plaintiff has been financially damaged.

188.    Plaintiff demanded payment in full for amounts due and owing under Contract 11 in the Demand Letters, but Defendants have failed and refused to pay the balance.

189.    Defendants, jointly and severally, owe Plaintiff on Contract 11 the sum of $24,826.78, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

190.    Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## TWELFTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222115)

191.    Plaintiff incorporates by reference all previous allegations.

21

192.   On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 12"), which pursuant to its terms, is subject to the Terms and Conditions.

193.   A copy of Contract 12 is attached as **Exhibit N**.

194.   Pursuant to Contract 12, the named advertiser was NuMale Medical Omaha LLC.

195.   NuMale Medical Omaha LLC is not an entity registered to do business in either North Carolina or Nebraska.

196.   Contract 12 was executed on behalf of Defendant NMC d/b/a NuMale Medical Omaha LLC.

197.   Contract 12 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Omaha LLC.

198.   Pursuant to Contract 12, Defendants purchased certain Services from Plaintiff.

199.   Pursuant to Contract 12, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

200.   Defendants materially breached and defaulted in their payment obligations under Contract 12.

201.   Contract 12 is past due and in default.

202.    Plaintiff actually provided its Services to Defendants under Contract 12 and is entitled to be paid in full by Defendants for those Services.

203.    As a direct and proximate result of the material breach of Contract 12 by Defendants, Plaintiff has been financially damaged.

204.    Plaintiff demanded payment in full for amounts due and owing under Contract 12 in the Demand Letters, but Defendants have failed and refused to pay the balance.

205.    Defendants, jointly and severally, owe Plaintiff on Contract 12 the sum of $54,346.78, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

206.    Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

### THIRTEENTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222116)

207.    Plaintiff incorporates by reference all previous allegations.

208.    On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 13"), which pursuant to its terms, is subject to the Terms and Conditions.

209.    A copy of Contract 13 is attached as **Exhibit O.**

23

210. Pursuant to Contract 13, the named advertiser was NuFemme Rejuvenation Clinic Omaha.

211. NuFemme Rejuvenation Clinic Omaha is not an entity registered to do business in either North Carolina or Nebraska.

212. Contract 13 was executed on behalf of Defendant NMC d/b/a NuFemme Rejuvenation Clinic Omaha.

213. Contract 13 was executed on behalf of Defendant NuMale Corp. d/b/a NuFemme Rejuvenation Clinic Omaha.

214. Pursuant to Contract 13, Defendants purchased certain Services from Plaintiff.

215. Pursuant to Contract 13, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

216. Defendants materially breached and defaulted in their payment obligations under Contract 13.

217. Contract 13 is past due and in default.

218. Plaintiff actually provided its Services to Defendants under Contract 13 and is entitled to be paid in full by Defendants for those Services.

219. As a direct and proximate result of the material breach of Contract 13 by Defendants, Plaintiff has been financially damaged.

220. Plaintiff demanded payment in full for amounts due and owing under Contract 13 in the Demand Letters, but Defendants have failed and refused to pay the balance.

24

221. Defendants, jointly and severally, owe Plaintiff on Contract 13 the sum of $22,253.41, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

222. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## FOURTEENTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222117)

223. Plaintiff incorporates by reference all previous allegations.

224. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 14"), which pursuant to its terms, is subject to the Terms and Conditions.

225. A copy of Contract 14 is attached as **Exhibit P**.

226. Pursuant to Contract 14, the named advertiser was NuMale Medical Milwaukee.

227. NuMale Medical Milwaukee is not an entity registered to do business in either North Carolina or Wisconsin.

228. Contract 14 was executed on behalf of Defendant NMC d/b/a NuMale Medical Milwaukee.

229. Contract 14 was executed on behalf of Defendant NuMale Corp. d/b/a NuMale Medical Milwaukee.

25

230. Pursuant to Contract 14, Defendants purchased certain Services from Plaintiff.

231. Pursuant to Contract 14, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

232. Defendants materially breached and defaulted in their payment obligations under Contract 14.

233. Contract 14 is past due and in default.

234. Plaintiff actually provided its Services to Defendants under Contract 14 and is entitled to be paid in full by Defendants for those Services.

235. As a direct and proximate result of the material breach of Contract 14 by Defendants, Plaintiff has been financially damaged.

236. Plaintiff demanded payment in full for amounts due and owing under Contract 14 in the Demand Letters, but Defendants have failed and refused to pay the balance.

237. Defendants, jointly and severally, owe Plaintiff on Contract 14 the sum of $68,826.85, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

238. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## FIFTEENTH CLAIM FOR RELIEF
(BREACH OF CONTRACT – ACCOUNT NO. 222118)

239. Plaintiff incorporates by reference all previous allegations.

26

240. On or about April 25, 2023, Justin Pulliam, as Vice President of Defendants NMC and NuMale Corp., executed and delivered to Plaintiff a Print and Digital Advertising Order From agreement with Plaintiff's digital services division, Hyport Digital ("Contract 15"), which pursuant to its terms, is subject to the Terms and Conditions.

241. A copy of Contract 15 is attached as **Exhibit Q**.

242. Pursuant to Contract 15, the named advertiser was NuFemme Rejuvenation Clinic Milwaukee.

243. NuFemme Rejuvenation Clinic Milwaukee is not an entity registered to do business in either North Carolina or Wisconsin.

244. Contract 15 was executed on behalf of Defendant NMC d/b/a NuFemme Rejuvenation Clinic Milwaukee.

245. Contract 15 was executed on behalf of Defendant NuMale Corp. d/b/a NuFemme Rejuvenation Clinic Milwaukee.

246. Pursuant to Contract 15, Defendants purchased certain Services from Plaintiff.

247. Pursuant to Contract 15, Plaintiff agreed to provide its Services beginning on or about May 3, 2023, and continuing for twelve (12) monthly cycles.

248. Defendants materially breached and defaulted in their payment obligations under Contract 15.

249. Contract 15 is past due and in default.

27

250. Plaintiff actually provided its Services to Defendants under Contract 15 and is entitled to be paid in full by Defendants for those Services.

251. As a direct and proximate result of the material breach of Contract 15 by Defendants, Plaintiff has been financially damaged.

252. Plaintiff demanded payment in full for amounts due and owing under Contract 15 in the Demand Letters, but Defendants have failed and refused to pay the balance.

253. Defendants, jointly and severally, owe Plaintiff on Contract 15 the sum of $24,827.32, plus interest at the rate of 1.5% per month from and after January 1, 2024 until paid in full.

254. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

## SIXTEENTH CLAIM FOR RELIEF
(CONTRACTUAL ATTORNEYS' FEES)

255. Plaintiff incorporates by reference all previous allegations.

256. Contract 1, Contract 2, Contract 3, Contract 4, Contract 5, Contract 6, Contract 7, Contract 8, Contract 9, Contract 10, Contract 11, Contract 12, Contract 13, Contract 14, and Contract 15 are collectively referred to as the "Contracts."

257. Each of the Contracts and the Terms and Conditions contain provisions that entitle Plaintiff to recover its reasonable attorneys' fees and other

28

legal expenses from each of the Defendants in the event of a default under the Contracts.

258. The terms of each of the Contracts provide that "[i]f you fail to pay your invoiced charges, you are responsible for collection costs, including attorneys' fees.

259. The Terms and Conditions provide that if invoiced charges are not paid within 30 days of their respective due dates, than Plaintiff may "recover all collection costs and reasonable attorney's fees.

260. As a result of Defendants' defaults, Plaintiff has and continues to incur attorneys' fees and other legal expenses related to its enforcement of the Contracts.

261. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance of the unpaid indebtedness owing when the action for collection is started.

262. Pursuant to the provisions of North Carolina General Statutes Section 6-21.2, the Demand Letters notified Defendants that attorneys' fees in the amount of 15% of the outstanding indebtedness on the Contracts would be collected if payment of the outstanding balance was not made within five days from the date of the notification.

263. Despite Plaintiff's demand for payment, the outstanding balance has not been paid and more than five (5) days have elapsed since the mailing of those notifications.

264. Pursuant to the provisions of North Carolina General Statutes Section 6-21.2, Defendants are notified again that attorneys' fees in the amount of 15% of the outstanding indebtedness on the Contracts will be collected if payment of the outstanding balance is not made within five days of service of this Verified Complaint upon them.

265. Plaintiff is entitled to a judgment against Defendants, jointly and severally, for its reasonable attorneys' fees incurred resulting from their defaults.

266. Pursuant to Section 4(8) of the Terms and Conditions, this lawsuit is not subject to the mandatory arbitration provision. This dispute is related to and based on past due monies owed to Plaintiff.

**SEVENTEENTH CLAIM FOR RELIEF**
(IN THE ALTERNATIVE, UNJUST ENRICHMENT; QUANTUM MERUIT)

267. Plaintiff incorporates by reference all previous allegations.

268. In the alternative to Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Claims for Relief set forth above, and to the extent that this Court finds that any of the Contracts or any part thereof are invalid, Plaintiff sets forth the following claim for relief for quantum meruit and/or unjust enrichment.

269. Defendants received and accepted from Plaintiff's Services for its benefit.

270. The reasonable value of the Services is at least $686,593.14.

271. Defendants benefitted from the use of the Services.

272. Defendants knowingly and actually accepted those benefits.

30

273. At the time those benefits were accepted, Defendants knew, or should have reasonably known, that Plaintiff expected reimbursement for the Services provided for the benefit of Defendants.

274. If Defendants are allowed to retain the benefits of the Services without compensating Plaintiff, Defendants would be unjustly enriched as they have defaulted in their obligations to make full and prompt payment to Plaintiff while simultaneously receiving the benefit and use of the Services.

275. Defendants, in equity and good conscience, should be compelled to reimburse Plaintiff for the sums due on the Contracts.

276. Plaintiff should be allowed to recover from Defendants, jointly and severally, the reasonable value of the Services.

WHEREFORE, Plaintiff respectfully prays unto the Court:

1. That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their First Claim of Relief, the sum of $34,824.40, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

2. That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Second Claim of Relief, the sum of $14,493.55, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

31

3.     That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Third Claim of Relief, the sum of $78,267.10, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

4.     That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Fourth Claim of Relief, the sum of $107,902.43, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

5.     That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Fifth Claim of Relief, the sum of $64,924.21, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

6.     That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Sixth Claim of Relief, the sum of $24,863.08, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

7.     That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their

Seventh Claim of Relief, the sum of $9,373.61, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

8.   That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Eighth Claim of Relief, the sum of $60,828.05, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

9.   That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Ninth Claim of Relief, the sum of $15,190.39, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

10.   That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Tenth Claim of Relief, the sum of $80,845.18, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

11.   That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Eleventh Claim of Relief, the sum of $24,826.78, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter

at the legal rate until paid in full.

12. That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Twelfth Claim of Relief, the sum of $54,346.78, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

13. That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Thirteenth Claim of Relief, the sum of $22,253.41, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

14. That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Fourteenth Claim of Relief, the sum of $68,826.85, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

15. That Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Fifteenth Claim of Relief, the sum of $24,827.32, plus interest at the rate of 18% per annum from and after January 1, 2024 until date of entry of judgment and thereafter at the legal rate until paid in full.

16. That Plaintiff have and recover of Defendants, jointly and

severally, on its Sixteenth Claim of Relief, reasonable attorneys' fees in the amount of 15% of the outstanding indebtedness owing on the Contracts at the time suit is instituted.

17.    That in the alternative to the relief sought in its First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Claims of Relief, Plaintiff have and recover of Defendants NuMale Medical Center, LLC and Defendant NuMale Corporation, jointly and severally, on their Seventeenth Claim for Relief in quantum meruit or unjust enrichment, the amount of at least $686,593.14, plus interest at the legal rate from and after the date of entry of judgment and thereafter until paid in full.

18.    That Plaintiff have and recover the costs of this action.

19.    That Plaintiff have and recover such other and further relief as to the Court may seem just and proper.

This the __26ᵗʰ__ day of August, 2024.

_____
Thomas C. Wolff
N.C. State Bar I.D. No.: 52594
email: docketCR@wardandsmith.com*
email: tcw@wardandsmith.com**
Alex C. Dale
N.C. State Bar I.D. No.: 28191
email: acd@wardandsmith.com**
For the firm of
Ward and Smith, P.A.
Post Office Box 7068
Wilmington, NC  28406-7068
Telephone:  919.277.9100
Facsimile:  919.277.9177
Attorneys for The N2 Company

*This email address must be used in order to effectuate service under Rule 5 of the North Carolina Rules of Civil Procedure.
** Email address to be used for all communications other than service.

36

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 24-CVS-

THE N2 COMPANY,
          Plaintiff,

v.

NUMALE MEDICAL CENTER, LLC
and NUMALE CORPORATION,
          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

VERIFICATION

      DOMENIQUE SCHMITT, being duly sworn, deposes and says that she is Legal and Franchise Operations Manager of The N2 Company, and as such is authorized to make this verification; that she has read the foregoing VERIFIED COMPLAINT, and the same is true of her own knowledge, except as to those matters and things stated on information and belief, and, as to those, she believes them to be true.

_____
Domenique Schmitt

_Stafford_ COUNTY, _Virginia_ STATE

Sworn to (or affirmed) and subscribed before me this day by: Domenique Schmitt.

Date: _8/23/2024_

_____
Notary Public

My Commission Expires: _9/30/2025_

(Official Seal)

[Notary Seal: JENNIFER HOLT MCGEE, NOTARY PUBLIC, MY COMMISSION NUMBER 7733976, COMMONWEALTH OF VIRGINIA]

# EXHIBIT A

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | **AREA DIRECTOR** | Jeffrey Miller |
|---|---|---|---|
| **ADVERTISER** | NuMale Medical Albuquerque LLC | | |
| **FIRST NAME** | Justin | **LAST NAME** | Pulliam |
| **EMAIL** | ████████ | | |
| **OFFICE PHONE** | ████████ | **CELL PHONE** | |
| **WEBSITE** | www.numalemedical.com/our-locations/albuquerque-nm-numale-medical-clinic/ | | |
| **ADDRESS** | 7920 Wyoming Blvd NE, Ste B-2 | | |
| **CITY** | Albuquerque | **STATE** NV | **ZIP** 89118 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or ""). Applicable purchase terms follow the ordering grids below.

— **PRINT ORDERS** —

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|---|---|---|
| **TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING** | As Stated Above |
| **MONTHLY CREDIT CARD AMOUNT** | As Stated Above |
| **MONTHLY BARTER AMOUNT** | |
| **AD MANAGEMENT (ONE-TIME)** | |
| **FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING** (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.







THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt | $4,669.00 | None | $56,028.00 | 🗑 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | 🗑 |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $2,000.00 | | $24,000.00 | 🗑 |
| Over the Top (OTT) | 12 Cycles | $36 CPM | $1,500.00 | | $18,000.00 | 🗑 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | $11,169.00 | |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:





**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: Justin Pulliam VP

DATE: 4-27-23




THE N2 COMPANY

# EXHIBIT B


(https://n2co.com)

# TERMS AND CONDITIONS FOR SALE OF PRINT ADVERTISING AND SERVICES

Please note: These terms and conditions are for N2 Advertising Agreements signed between July 12, 2022, and May 14, 2023.

Click **here (https://n2co.com/print-terms-and-conditions-march-2024/)** for our current Advertising Agreement terms and conditions.

These terms and conditions (these "**Terms**") govern the sale of print advertising and services by The N2 Company and its affiliates (collectively "**N2**") to "**you**", the advertiser named in the Order Form (the "**Order**"). Together, the Order and these Terms comprise the entire "**Agreement**" between you and N2 (the "**parties**").

1. **Purchase of Advertising and Services.** You agree to purchase advertising space from N2 in the N2 publication(s) listed in the Order, for the number of issues listed in the Order, and at the rate(s) listed in the Order. In exchange, N2 agrees to publish your advertising ("**ads**") in the applicable publication(s) at the applicable rates. You also agree to purchase, and N2 agrees to provide, any related ad design or management services listed in the Order.

2. **Extended Reach Digital Advertising for Stroll.** If you purchased advertising in a Stroll or another N2 neighborhood publication, and the Order does not show that you opted out of Extended Reach Digital Advertising ("Extended Reach"), N2 will place online digital ad(s) for consumers to see in the target locale that approximately corresponds to the readership of the N2 publication(s) listed in your Order. Additional terms and conditions that apply to targeted display are set forth in the Media Product Terms (https://irp.cdn-website.com/497fd5cb/files/uploaded/Hyport%20Media%20Product%20Terms_01.30.22.docx.pdf) which are incorporated here by reference and available on N2's website. In the event of conflict

between the Media Product Terms and these Terms, these Terms will control.

3. **Digital Edition for BeLocal.** Ads of any size published in the print edition of the BeLocal publication listed in the Order will also appear as an ad in the corresponding digital flipbook edition ("Digital Edition"). The Digital Edition is updated monthly. N2 will attempt to keep a similar running order of ads in the Digital Edition as the corresponding print edition, but N2 does not guarantee ad positioning and is not liable for the Digital Edition's failure to meet position requirements. N2 may periodically use digital display ads to promote the Digital Edition to the homebuyers or movers that are the intended readership of the BeLocal publication.

4. **Charges; Billing; and Payment Terms.**

   [a] You must pay the monthly rates and any ad management or design fees listed on the Order. Prepayment is required, with payment due on or about 30 days before the publication of the applicable N2 publication. If you are paying by credit card, N2 will charge your card automatically when payment is due, which you hereby authorize. Where ad space is purchased in multiple N2 publications, payment for all ad space is due 30 days before publication of the one with the earliest publication date. You may not withhold payment for any reason, including a dispute between you and N2.

   [b] You must pay interest on all late payments, calculated daily and compounded monthly at the lesser of the rate of 1.5% per month or the highest legal rate. All rates are exclusive of sales taxes (or any other similar taxes) on amounts payable by you hereunder. You are responsible for payment of all federal or state taxes on the sale of ad space and services. Any applicable sales taxes (or other similar taxes) for which you are responsible will be separately stated on your monthly invoice.

5. **Non-Exclusivity.** This Agreement does not create an exclusive arrangement between you and N2. You may advertise elsewhere, and N2 may provide ad space and services to all others, including your competitors.

6. **Advertiser Obligations and Representations; Indemnification.**

   [a] You must: (1) respond promptly to any N2 request for direction, information, or approvals that are reasonably necessary for N2 to perform hereunder; and (2) provide such materials, content or information as N2 may reasonably request to perform hereunder in a timely manner.

[b] N2 accepts, publishes and runs all ads, including those for which N2 has provided creative services, subject to your representations that you are familiar with all laws and regulations (applicable to your ads, and that publishing such ads will not violate any law or third-party right (e.g., any intellectual property right). N2 will not perform a legal review of your ad(s), and you remain solely responsible for the ad's contents and for legal and regulatory compliance.

[c] In consideration of N2 running your ads, you will indemnify N2 from and against any losses and expenses (including attorney's fees) relating to such ads, including those arising from third-party claims or suits for infringement, violation of privacy or publicity rights, or from any and all claims or regulatory breaches.

7. **N2's Discretion as Publisher.**

[a] N2 may reject ads that it considers misleading, distasteful, illegal, or otherwise inappropriate. N2 may alter any ad material to make it conform to applicable specifications. N2 may require you to mark an ad as "advertising," "sponsored content," or the like to avoid confusion with editorial content.

[b] Except for the inside front cover, inside back cover, outside back cover, or introduction (each a "**Premium Placement**"), N2 may insert your ad anywhere at its discretion, and any conditions on the Order regarding placement will be treated as a positioning request only and is not guaranteed. N2's inability to honor a specific position request due to conflicting editorial needs is not a breach of this Agreement. , N2's sole liability, and your sole remedy, for failure to satisfy that placement is issuing a credit or refund in an amount equal to the premium paid.

[c] N2 reserves the right to determine (and may change at any time without notice to you) the design, content, title, size, geographic coverage, distribution, and appearance of, N2's publications, and how, where, how many, when, and whether such publications are published, distributed, or displayed. If N2 notifies you that an applicable publication is closed or is closing, your purchase obligations in relation to the closed publication will immediately terminate, and such closure will not constitute a breach of this Agreement by N2.

8. **Ad Proofs.** N2 will use reasonable efforts to provide you with ad proofs. Where proofs are provided in time for modification, you must notify N2 in writing of any changes or errors before the deadline set by N2. Otherwise, N2 will publish or run the ad as shown and no adjustment will be made. Colors, contrast, photos, font, and other features may appear differently in the published product

and no adjustment will be made for those differences.

9. **Advertising Content; Intellectual Property.** N2 may use any ad published or run under this Agreement to promote N2's products and services. If N2 supplies content for or designs your ads, the content and the ads are N2's sole and exclusive property, except for content you supplied or licensed from third parties, and may be supplied to other advertisers. N2 grants you a perpetual, limited, royalty-free, non-exclusive, and non-transferable license to reproduce, publish, and distribute each ad that N2 creates for you.

10. **N2's Liability; Limitation of Liability; Disclaimer and Waiver.**

[a] If N2 publishes or runs an ad with errors or omissions, or fails to publish or run an ad, your only remedy is to demand the subsequent publication of the corrected ad at no charge in the applicable N2 publication ("**Makegood**"). A demand for Makegood must be in writing and delivered to N2 within 30 days of the error, omission, or failure. N2 will not be liable or issue credit for errors or omissions that you caused or that do not materially affect the ad's value.

[b] N2 WILL NOT BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE, OR PROFIT OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES WHETHER RELATED TO CONTRACT BREACH, TORT, OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER N2 WAS ADVISED OF POSSIBILITY OF SUCH DAMAGE. N2'S AGGREGATE LIABILITY RELATED TO THIS AGREEMENT, WHETHER RELATED TO CONTRACT BREACH, TORT, OR OTHERWISE, SHALL NOT EXCEED 2 TIMES THE TOTAL OF AMOUNTS PAID TO N2 UNDER THIS AGREEMENT IN THE 12-MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM.

[c] N2 DOES <u>NOT</u> WARRANT THE NUMBER OF RESPONSES TO YOUR ADS, THE NUMBER OF PERSONS WHO WILL VIEW YOUR ADS, OR ANY OTHER BUSINESS BENEFIT.

11. **Barter Transactions.** Where you provide in-kind goods or services in exchange for advertising or services under this Agreement, such goods or services and their fair market value must be identified in the space designated in the Order. You acknowledge that the goods or services are being delivered to the N2 franchisee that originated the Order and that such goods or services may constitute income to such N2 franchisee; and that you and the franchisee are responsible for any tax reporting that applicable law may require related to the in-kind trade, such as issuing a 1099-

MISC to the franchisee as the receiving party.

12. **Reader or Sponsor Events NOT Promised**. Certain N2 publications coordinate periodic appreciation and networking events for its readers and sponsors. *However*, the frequency of such events or whether they happen at all varies from publication to publication. Accordingly, you acknowledge reader or sponsor events are not a promised or intended benefit under this Agreement.

13. **Term; Termination**.

[a] The term of this Agreement is the period of time between the date you sign the Order or orally consent to this Agreement (the "**Agreement Date**") and the date that N2 publishes the final ad you committed to purchase under this Agreement.

[b] In addition to N2's rights under Section 7[c], N2 may terminate this Agreement at any time, with or without notice, for your failure to make payment when due and owing or for N2's convenience.

[c] You may terminate this Agreement immediately upon written notice if: (1) N2 commits a material breach and fails to cure such breach within 30 days of receiving written notice of the breach; or (2) for applicable publications that are in print as of the Agreement Date, you may terminate if such publication is not published for more than 2 consecutive months; for applicable publications that are not yet in print as of the Agreement Date, you may terminate if such publication is not published within 6 months of the Agreement Date; written notice to terminate under this Section 13[c](2) must be delivered to N2 within 30 days of the applicable failure to publish.

[d] You may terminate this Agreement for convenience, whether in whole or part, upon ninety (90) days' written notice if at the time of notice: (1) you are current on all payments; and (2) your ad has run in at least 12 issues of the N2 publication in which you wish to cancel advertising. For clarity, if you have purchased ad space in multiple N2 publications, you may elect, upon your satisfaction of the preceding conditions, to stop advertising in one publication while continuing in another.

14. **N2's Remedies**. If you do not pay all charges by 30 days after the due date, fail to meet any obligation under this Agreement, or any representation is or becomes untrue, N2 may, without notice: (i) require you to immediately pay all unpaid amounts you owe or will owe for all advertising

and services under the entire term of this Agreement, (ii) remove your ads from any publication not yet published, (iii) suspend or terminate any services, including Extended Reach or Digital Edition, (iv) recover all collection costs and reasonable attorney's fees, and (v) exercise any other rights or remedies available at law or in equity. If you breach this Agreement, N2 will have no duty to mitigate damages by selling ad space the same or similar to that purchased by you under this Agreement, *unless* the advertising you purchased is Premium Placement.

15. **Choice of Law and Forum**. North Carolina law governs this Agreement, and the state or federal courts located in New Hanover County, North Carolina are the sole and exclusive jurisdiction for any , action, or proceeding arising out of or relating to this Agreement. You and N2 irrevocably submit to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

16. **Entire Agreement**. This Agreement is the only understanding between you and N2, and it supersedes and excludes any understandings or representations, whether written or oral, that may have come before or during it. If conflict between these Terms and the Order, these Terms govern. No terms or conditions in the Order or any instructions or documents that conflict with or alter these Terms will bind N2 unless authorized in writing by an N2 senior executive.

17. **Miscellaneous**. If a court finds any term invalid, illegal or unenforceable, such defect shall not prejudice this Agreement's other terms. A signed writing is required to modify, amend, or waive any term of these Terms. Any delay in, or partial exercising of, rights is not a waiver. You cannot assign your rights or duties without N2's written consent. N2 may assign its rights or duties to any third party.

Version Date July 12, 2022

# EXHIBIT C

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

 **WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC  27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

VIA FIRST-CLASS MAIL

NuMale Chicago, LLC
  d/b/a NuMale Medical Chicago LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Chicago, LLC
  d/b/a NuMale Medical Chicago LLC
c/o Brad Palubicki, Registered Agent
4711 Golf Road Suite 1050
Skokie, IL  60076

NuMale Medical Center, LLC
  d/b/a NuMale Medical Chicago LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

RE:    Indebtedness to The N2 Company, Inc.
       Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2").  As you know, NuMale Chicago, LLC ("NuMale Chicago") d/b/a NuMale Medical Chicago LLC ("NuMale Medical"), through NuMale Medical Center, LLC (together with NuMale Chicago and NuMale Medical, "NuMale"), executed an Advertising Agreement with N2's digital services division, Hyport Digital (collectively, "Contracts").  As you also know, the payments outlined in the Contract are past due and immediate payment in full is hereby demanded.  N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated.  The outstanding balance due under the Contract as of January 1, 2024 was as follows:

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 2

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222101 – NuMale | 04/25/2023 | $33,413.00 | 12 | $400,956.00 | $73,707.35 | $107,902.43 |
| **TOTAL as of January 1, 2024:** | | | | **$400,956.00** | **$73,707.35** | **$107,902.43** |

On behalf of N2, NuMale is hereby advised that the Contract has been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contract as of January 1, 2024 is $107,902.43**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contract and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balance on the Contract (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contract.*

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contract at issue.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 3

Please contact the undersigned immediately with respect to payment of this obligation. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balance due on the Contract, including interest and attorneys' fees.

Yours truly,

DocuSigned by:

*Thomas C. Wolff*

90E06C683B4C482...

Thomas C. Wolff

cc:    The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3



**WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC  27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

<u>VIA FIRST-CLASS MAIL</u>

NuMale Albuquerque, LLC
c/o Christopher Asandra, M.D.,
  Registered Agent
7920 Wyoming Boulevard, Suite 82
Albuquerque, NM  87109

NuMale Albuquerque, LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Medical Center, LLC
  d/b/a NuMale Medical Albuquerque, LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic
  Albuquerque
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

RE:    Indebtedness to The N2 Company, Inc.
       Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2").  As you know, NuMale Medical Albuquerque, LLC ("NuMale Albuquerque") and NuFemme Rejuvenation Clinic Albuquerque ("NuFemme"), through NuMale Medical Center, LLC (together with NuMale Albuquerque and NuFemme, "NuMale"), each executed Advertising Agreements with N2's digital services division, Hyport Digital (collectively, "Contracts").  As you also know, the payments outlined in the Contracts are past due and immediate payment in full is hereby demanded.  N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated.   The outstanding balances due under the Contracts as of January 1, 2024 were as follows:

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 2

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222095 – NuMale | 04/25/2023 | $11,169.00 | 12 | $134,028.00 | $25,101.23 | $34,824.40 |
| 222098 – NuFemme | 04/25/2023 | $12,962.00 | 12 | $155,544.00 | $26,518.10 | $14,493.55 |
| **TOTAL as of January 1, 2024:** | | | | **$289,572.00** | **$51,619.33** | **$49,317.95** |

On behalf of N2, NuMale is hereby advised that the Contracts have been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contracts as of January 1, 2024 is $49,317.95**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contracts and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balances on the Contracts (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contracts.*

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contracts at issue.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

**WARD AND SMITH, P.A.**

April 10, 2024
Page 3

Please contact the undersigned immediately with respect to payment of these obligations. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balances due on the Contracts, including interest and attorneys' fees.

Yours truly,

Thomas C. Wolff

cc:    The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

 **WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC 27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

VIA FIRST-CLASS MAIL

NuMale Medical Center, LLC
  d/b/a NuMale Medical Milwaukee
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI 53226

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic Milwaukee
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI 53226

RE:   Indebtedness to The N2 Company, Inc.
      Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2"). As you know, NuMale Medical Center, LLC d/b/a NuMale Medical Milwaukee and NuFemme Rejuvenation Clinic Milwauke (collectively, "NuMale"), executed Advertising Agreements with N2's digital services division, Hyport Digital (collectively, "Contracts"). As you also know, the payments outlined in the Contracts are past due and immediate payment in full is hereby demanded. N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated. The outstanding balances due under the Contracts as of January 1, 2024 were as follows:

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222117 – NuMale | 04/25/2023 | $15,312.00 | 12 | $183,744.00 | $18,911.88 | $68,826.85 |
| 222118 – NuFemme | 04/25/2023 | $14,057.00 | 12 | $168,684.00 | $17,463.81 | $24,827.32 |
| TOTAL as of January 1, 2024: | | | | $352,428.00 | $36,375.69 | $93,654.17 |

ASHEVILLE    GREENVILLE    NEW BERN    RALEIGH    WILMINGTON

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

WARD AND SMITH, P.A.

April 10, 2024
Page 2

On behalf of N2, NuMale is hereby advised that the Contracts have been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contracts as of January 1, 2024 is $93,654.17**, with interest accruing at the rate of 1.5% per month thereafter until paid in full.  N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence.  If you fail to comply, we have been authorized to institute legal proceedings.  These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contracts and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default.  Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balances on the Contracts (including all accrued interest) is paid within 5-days from the date of this letter.  If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced.  Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents.  In addition, N2 reserves the right to charge interest at the default rate as provided in the Contracts.*

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contracts at issue.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 3

Please contact the undersigned immediately with respect to payment of these obligations. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balances due on the Contracts, including interest and attorneys' fees.

Yours truly,

DocuSigned by:

*Thomas C. Wolff*

90E06C683B4C482...

Thomas C. Wolff

cc:    The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

 **WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC 27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

<u>VIA FIRST-CLASS MAIL</u>

NuMale Charlotte, LLC
 d/b/a NuMale Medical Charlotte, LLC
 d/b/a NuMale North Carolina PLLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI 53226

NuMale Charlotte, LLC
 d/b/a NuMale Medical Charlotte, LLC
 d/b/a NuMale North Carolina PLLC
c/o Brad Palubicki, Registered Agent
330 Billingsley Road, Suite 201
Charlotte, NC 28211

NuMale Medical Center, LLC
 d/b/a NuMale Medical Charlotte, LLC
 d/b/a NuMale North Carolina PLLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI 53226

NuMale North Carolina PLLC
 d/b/a NuMale Medical Charlotte, LLC
c/o Carlos Feliciano, Registered Agent
330 Billingsley Road, Suite 201
Charlotte, NC 28211

RE:    Indebtedness to The N2 Company, Inc.
          Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2"). As you know, NuMale Medical Charlotte, LLC ("NuMale Charlotte") d/b/a NuMale North Carolina PLLC ("NuMale NC") through NuMale Medical Center, LLC, (together with NuMale Charlotte and NuMale NC, "NuMale"), executed an Advertising Agreement with N2's digital services division, Hyport Digital ("Contract"). As you also know, the payments outlined in the Contract are past due and immediate payment in full is hereby demanded. N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated. The outstanding balance due under the Contract as of January 1, 2024 was as follows:

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 2

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222099 – NuMale | 04/25/2023 | $22,090.00 | 12 | $265,080.00 | $49,311.56 | $78,267.10 |
| **TOTAL as of January 1, 2024:** | | | | **$265,080.00** | **$49,311.56** | **$78,267.10** |

On behalf of N2, NuMale is hereby advised that the Contract has been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contract as of January 1, 2024 is $78,267.10**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contract and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balance on the Contract (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contract.*

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contract at issue.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 3

Please contact the undersigned immediately with respect to payment of this obligation. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balance due on the Contract, including interest and attorneys' fees.

Yours truly,

DocuSigned by:

*Thomas C. Wolff*

90E06C683B4C482...

Thomas C. Wolff

cc:    The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

 **WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC 27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

<u>VIA FIRST-CLASS MAIL</u>

NuMale Denver, LLC
  d/b/a NuMale Medical Denver LLC
c/o Carlos Feliciano, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Denver, LLC
  d/b/a NuMale Medical Denver LLC
c/o Carlos Feliciano, Registered Agent
8200 E. Belleview Ae., Suite 280E
Greenwood Village, CO 80111

NuMale Colorado, S.C.
  d/b/a NuMale Medical Denver LLC
c/o CT Corporation System, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Colorado, S.C.
  d/b/a NuMale Medical Denver LLC
c/o CT Corporation System, Registered Agent
8200 E. Belleview Ae., Suite 280E
Greenwood Village, CO 80111

NuMale Colorado, S.C.
  d/b/a NuMale Medical Denver LLC
c/o CT Corporation System, Registered Agent
7700 E Arapahoe Rd., Suite 220
Centennial, CO 80112

NuMale Medical Center, LLC
  d/b/a NuMale Medical Denver LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

RE:    Indebtedness to The N2 Company, Inc.
       Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2").  As you know, NuMale Medical Denver, LLC ("NuMale Denver") d/b/a NuMale Colorado, S.C. ("NuMale Colorado"), through NuMale Medical Center, LLC (together with NuMale Denver and NuMale Colorado, "NuMale"), executed an Advertising Agreement with N2's digital services division, Hyport Digital (collectively, "Contracts").  As you also know, the payments outlined in the Contract are past due and immediate payment in full is hereby demanded.  N2 deeply regrets turning this matter over to us for handling,

ASHEVILLE        GREENVILLE        NEW BERN        RALEIGH        WILMINGTON

www.wardandsmith.com

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 2

but N2 provided advertising services and should be compensated. The outstanding balance due under the Contract as of January 1, 2024 was as follows:

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222103 – NuMale | 04/25/2023 | $12,000.00 | 12 | $144,000.00 | $40,557.30 | $64,924.21 |
| TOTAL as of January 1, 2024: | | | | $144,000.00 | $40,557.30 | $64,924.21 |

On behalf of N2, NuMale is hereby advised that the Contract has been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contract as of January 1, 2024 is $64,924.21**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contract and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balance on the Contract (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contract.*

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contract at issue.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 3

Please contact the undersigned immediately with respect to payment of this obligation. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balance due on the Contract, including interest and attorneys' fees.

Yours truly,

*Thomas C. Wolff*

—90E06C683B4C482...

Thomas C. Wolff

cc:    The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

 **WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC 27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

<u>VIA FIRST-CLASS MAIL</u>

NuMale Medical Center, LLC
  d/b/a NuMale Medical Green Bay LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI 53226

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic
  Green Bay
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI 53226

NuMale Medical Center, LLC
  d/b/a NuMale Medical Green Bay LLC
c/o Brad Palubicki, Registered Agent
1525 Park Place, Suite 300
Ashwaubenon, WI 54303

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic
  Green Bay
c/o Brad Palubicki, Registered Agent
1525 Park Place, Suite 300
Howard, WI 54303

RE:   Indebtedness to The N2 Company, Inc.
      Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2"). As you know, NuMale Medical Green Bay LLC ("NuMale Green Bay") and NuFemme Rejuvenation Clinic Green Bay ("NuFemme"), through NuMale Medical Center, LLC (together with NuMale Green Bay and NuFemme, "NuMale"), each executed Advertising Agreements with N2's digital services division, Hyport Digital (collectively, "Contracts"). As you also know, the payments outlined in the Contracts are past due and immediate payment in full is hereby demanded. N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated. The outstanding balances due under the Contracts as of January 1, 2024 were as follows:

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 2

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222104 – NuMale | 04/25/2023 | $8,286.00 | 12 | $99,432.00 | $19,282.47 | $24,863.08 |
| 222106 – NuFemme | 04/25/2023 | $9,475.00 | 12 | $113,700.00 | $17,711.84 | $9,373.61 |
| TOTAL as of January 1, 2024: | | | | $213,132.00 | $36,994.31 | $34,236.69 |

On behalf of N2, NuMale is hereby advised that the Contracts have been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contracts as of January 1, 2024 is $34,236.69**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contracts and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balances on the Contracts (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contracts.*

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contracts at issue.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

**WARD AND SMITH, P.A.**

April 10, 2024
Page 3

Please contact the undersigned immediately with respect to payment of these obligations. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balances due on the Contracts, including interest and attorneys' fees.

Yours truly,

Thomas C. Wolff

cc:     The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3



**WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC  27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

<u>VIA FIRST-CLASS MAIL</u>

NuMale Medical Center, LLC
  d/b/a NuMale Medical Las Vegas, LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic
  Las Vegas
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Medical Center, LLC
  d/b/a NuMale Medical Las Vegas LLC
c/o Brad Palubicki, Registered Agent
6590 S. Rainbow Boulevard, #250
Las Vegas, NV  89118

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic
  Las Vegas
c/o Brad Palubicki, Registered Agent
6590 S. Rainbow Boulevard, #250
Las Vegas, NV  89118

NuMale Corporation
  d/b/a NuMale Medical Las Vegas LLC
c/o Brad Palubicki, President, or any
  director, officer, or agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Corporation
  d/b/a NuFemme Rejuvenation Clinic
  Las Vegas
c/o Brad Palubicki, President, or any
  director, officer, or agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

RE:   Indebtedness to The N2 Company, Inc.
      Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2").  As you know, NuMale Medical Las Vegas LLC ("NuMale Vegas") and NuFemme Rejuvenation Clinic Las Vegas ("NuFemme"), through NuMale Medical

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

WARD AND SMITH, P.A.

April 10, 2024
Page 2

Center, LLC and NuMale Corporation (together with NuMale Vegas and NuFemme, "NuMale"), each executed Advertising Agreements with N2's digital services division, Hyport Digital (collectively, "Contracts"). As you also know, the payments outlined in the Contracts are past due and immediate payment in full is hereby demanded. N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated. The outstanding balances due under the Contracts as of January 1, 2024 were as follows:

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222107 – NuMale | 04/25/2023 | $16,883.00 | 12 | $202,596.00 | $35,875.41 | $60,828.05 |
| 222109 – NuFemme | 04/25/2023 | $16,127.00 | 12 | $193,524.00 | $36,319.42 | $15,190.35 |
| TOTAL as of January 1, 2024: | | | | $396,120.00 | $72,194.83 | $76,018.40 |

On behalf of N2, NuMale is hereby advised that the Contracts have been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contracts as of January 1, 2024 is $76,018.40**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contracts and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balances on the Contracts (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contracts.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

**WARD AND SMITH, P.A.**

April 10, 2024
Page 3

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contracts at issue.*

Please contact the undersigned immediately with respect to payment of these obligations. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balances due on the Contracts, including interest and attorneys' fees.

Yours truly,

Thomas C. Wolff

cc:     The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3


**WARD AND SMITH, P.A.**

THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive
Suite 300 (27607)
Post Office Box 33009
Raleigh, NC 27636-3009

P: 919.277.9127
F: 919.277.9177
tcw@wardandsmith.com

April 10, 2024

VIA FIRST-CLASS MAIL

NuMale Tampa, LLC
  d/b/a NuMale Medical Tampa LLC
c/o CT Corporation System,
  Registered Agent
1200 South Pine Island Road
Plantation, FL  33324

NuMale Tampa, LLC
  d/b/a NuMale Medical Tampa LLC
c/o CT Corporation System,
  Registered Agent
500 N. Westshore Blvd., Suite 450
Tampa, FL  33609

NuMale Florida TB, PLLC
  d/b/a NuMale Medical Tampa LLC
c/o CT Corporation System,
  Registered Agent
1200 South Pine Island Road
Plantation, FL  33324

NuMale Florida TB, PLLC
  d/b/a NuMale Medical Tampa LLC
c/o Carlos Feliciano, or any member, officer
  or agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Medical Center, LLC
  d/b/a NuMale Medical Tampa LLC
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

NuMale Medical Center, LLC
  d/b/a NuFemme Rejuvenation Clinic
  Tampa
c/o Brad Palubicki, Registered Agent
2600 N. Mayfair Road, Suite 1140
Wauwatosa, WI  53226

RE:   Indebtedness to The N2 Company, Inc.
       Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2"). As you know, NuMale Medical Tampa LLC ("NuMale Tampa"), NuMale Florida TB, PLLC ("NuMale Florida") and NuFemme Rejuvenation Clinic Tampa ("NuFemme"), through NuMale Medical Center, LLC (together with NuMale Tampa, NuMale Florida, and NuFemme, "NuMale"), each executed Advertising Agreements with

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

WARD AND SMITH, P.A.

April 10, 2024
Page 2

N2's digital services division, Hyport Digital (collectively, "Contracts"). As you also know, the payments outlined in the Contracts are past due and immediate payment in full is hereby demanded. N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated. The outstanding balances due under the Contracts as of January 1, 2024 were as follows:

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222111 – NuMale | 04/25/2023 | $7,500.00 | 12 | $90,000.00 | $14,668.05 | $80,845.18 |
| 222114 – NuFemme | 04/25/2023 | $7,500.00 | 12 | $90,000.00 | $15,000.00 | $24,826.78 |
| TOTAL as of January 1, 2024: | | | | $180,000.00 | $29,668.05 | $105,671.96 |

On behalf of N2, NuMale is hereby advised that the Contracts have been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contracts as of January 1, 2024 is $105,671.96**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contracts and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balances on the Contracts (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contracts.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

_____
**WARD AND SMITH, P.A.**

April 10, 2024
Page 3

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contracts at issue.*

Please contact the undersigned immediately with respect to payment of these obligations. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balances due on the Contracts, including interest and attorneys' fees.

Yours truly,

DocuSigned by:

*Thomas C. Wolff*

90E06C683B4C482...

Thomas C. Wolff

cc:    The N2 Company, Inc. (via e-mail)

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3



**WARD AND SMITH, P.A.**                    THOMAS C. WOLFF, Attorney at Law

751 Corporate Center Drive                              P: 919.277.9127
Suite 300 (27607)                                       F: 919.277.9177
Post Office Box 33009                                    tcw@wardandsmith.com
Raleigh, NC 27636-3009

April 10, 2024

VIA FIRST-CLASS MAIL

| | |
|---|---|
| NuMale Omaha, LLC<br>  d/b/a NuMale Medical Omaha LLC<br>c/o CT Corporation System, Registered Agent<br>5601 South 59th Street<br>Lincoln, NE 68516 | NuMale Omaha, LLC<br>  d/b/a NuMale Medical Omaha LLC<br>c/o CT Corporation System, Registered Agent<br>444 Regency Parkway Drive, Suite 204<br>Omaha, NE 68114 |
| NuMale Nebraska, LLC<br>  d/b/a NuMale Medical Omaha LLC<br>c/o CT Corporation System, Registered Agent<br>5601 South 59th Street<br>Lincoln, NE 68516 | NuMale Nebraska, LLC<br>  d/b/a NuMale Medical Omaha LLC<br>c/o CT Corporation System, Registered Agent<br>444 Regency Parkway Drive, Suite 204<br>Omaha, NE 68114 |
| NuMale Medical Center<br>  d/b/a NuMale Medical Omaha LLC<br>c/o NuMale Nebraska, LLC, Registered Agent<br>444 Regency Parkway Drive, Suite 204<br>Omaha, NE 68114 | NuMale Medical Center, LLC<br>  d/b/a NuMale Medical Omaha LLC<br>c/o Brad Palubicki, Registered Agent<br>2600 N. Mayfair Road, Suite 1140<br>Wauwatosa, WI 53226 |
| NuFemme Rejuvenation Clinic<br>  d/b/a NuFemme Rejuvination Clinic Omaha<br>c/o NuMale Nebraska, LLC, Registered Agent<br>444 Regency Parkway Drive, Suite 204<br>Omaha, NE 68114 | NuMale Medical Center, LLC<br>  d/b/a NuFemme Rejuvination Clinic Omaha<br>c/o Brad Palubicki, Registered Agent<br>2600 N. Mayfair Road, Suite 1140<br>Wauwatosa, WI 53226 |

RE:    Indebtedness to The N2 Company, Inc.
       Our File 180595-00018

Dear Sir or Madam:

Our firm represents The N2 Company, Inc., formerly known as Neighborhood Networks Publishing, Inc. ("N2"). As you know, NuMale Omaha, LLC ("NuMale Omaha"), NuMale Nebraska, LLC ("NuMale Nebraska"), and NuFemme Rejuvenation Clinic ("NuFemme"), through NuMale Medical Center, LLC (together with NuMale Omaha, NuMale Nebraska, and NuFemme, "NuMale"), each executed Advertising Agreements with N2's digital

ASHEVILLE     GREENVILLE     NEW BERN     RALEIGH     WILMINGTON

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

## WARD AND SMITH, P.A.

April 10, 2024
Page 2

services division, Hyport Digital (collectively, "Contracts"). As you also know, the payments outlined in the Contracts are past due and immediate payment in full is hereby demanded. N2 deeply regrets turning this matter over to us for handling, but N2 provided advertising services and should be compensated. The outstanding balances due under the Contracts as of January 1, 2024 were as follows:

| N2 Publication Account | Date of Agreement | Per Cycle Price | # of Cycles | Total Contract Value | Total Paid by NuMale | Amount Due & Owing |
|---|---|---|---|---|---|---|
| 222215 – NuMale | 04/25/2023 | $11,673.00 | 12 | $140,076.00 | $14,713.21 | $54,346.78 |
| 222216 – NuFemme | 04/25/2023 | $10,178.00 | 12 | $122,136.00 | $14,319.88 | $22,253.41 |
| TOTAL as of January 1, 2024: | | | | $262,212.00 | $29,033.09 | $76,600.19 |

On behalf of N2, NuMale is hereby advised that the Contracts have been declared in default, the remaining payment obligations have been accelerated, and payment in full of the entire outstanding balance is hereby demanded. **The total aggregate balance due under the Contracts as of January 1, 2024 is $76,600.19**, with interest accruing at the rate of 1.5% per month thereafter until paid in full. N2 demands that you pay the outstanding balance in full within five days from the date of this correspondence. If you fail to comply, we have been authorized to institute legal proceedings. These legal proceedings can be costly and time-consuming, with the filing fee, sheriff's service fee and sheriff's collection fee added to the judgment, if any.

In addition, the Contracts and the Hyport Digital Online Terms and Conditions expressly provide that NuMale will be obligated for any legal expense and attorneys' fees incurred in exercising N2's rights upon default. Pursuant to N.C. Gen. Stat. § 6-21.2, NuMale is notified that these provisions relative to attorneys' fees will be enforced unless the outstanding balances on the Contracts (including all accrued interest) is paid within 5-days from the date of this letter. If the outstanding balance is paid in full before the expiration of such time, the provisions relative to payment of attorney's fees will not be enforced. Reasonable attorneys' fees are statutorily defined as 15% of the outstanding balance due on the Contracts when the action for collection is started.

*Nothing contained in this letter shall be deemed to waive or modify any right or any remedy of N2 available at law or in equity, or as provided in any Contract documents. In addition, N2 reserves the right to charge interest at the default rate as provided in the Contracts.*

DocuSign Envelope ID: AECBB251-92FC-4AD4-AE59-1EFB954012E3

**WARD AND SMITH, P.A.**

April 10, 2024
Page 3

*Be advised that any partial payments on these obligations after the date of this letter may be retained by N2 and applied to the outstanding indebtedness due as determined N2 in its sole discretion, but will not reinstate the Contracts at issue.*

Please contact the undersigned immediately with respect to payment of these obligations. If some agreement or resolution of this matter is not timely reached, suit will be instituted to collect the balances due on the Contracts, including interest and attorneys' fees.

Yours truly,

DocuSigned by:

*Thomas C. Wolff*

90E06C683B4C482...

Thomas C. Wolff

cc:   The N2 Company, Inc. (via e-mail)

# EXHIBIT D

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| | | | | |
|---|---|---|---|---|
| **DATE** | 04252023 | **AREA DIRECTOR** | Jeff Miller | |
| **ADVERTISER** | NuFemme Rejuvenation Clinic Albuquerque | | | |
| **FIRST NAME** | Justin | **LAST NAME** | Pulliam | |
| **EMAIL** | ▮ | | | |
| **OFFICE PHONE** | ▮ | **CELL PHONE** | | |
| **WEBSITE** | nufemme.com/locations/albuquerque/ | | | |
| **ADDRESS** | 7920 Wyoming Blvd NE ste b-2 | | | |
| **CITY** | Albuquerque | **STATE** NM | **ZIP** | 87109 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the checking grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|---|---|---|
| **TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING** | As Stated Above |
| **MONTHLY CREDIT CARD AMOUNT** | As Stated Above |
| **MONTHLY BARTER AMOUNT** | |
| **AD MANAGEMENT (ONE-TIME)** | |
| **FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING** (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $6,462.00 | None | ▼ | $77,544.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $2,000.00 | | | $24,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $12,962.00 | |

Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.








**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: _Josh Pullin_ VP

DATE: 4-27-23

THE N2 COMPANY

# EXHIBIT E

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeff Miller | |
|---|---|---|---|---|
| ADVERTISER | NuMale Medical Charlotte LLC | | | |
| FIRST NAME | Justin | LAST NAME | Pulliam | |
| EMAIL | ███████ | | | |
| OFFICE PHONE | ███████ | CELL PHONE | | |
| WEBSITE | www.numalemedical.com/our-locations/charlotte-nc-numale-medical-clinic/ | | | |
| ADDRESS | 330 Billingsley Rd., STE 210 | | | |
| CITY | Charlotte | STATE | NC | ZIP | 28211 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.







## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $13,090.00 | None | ▼ | $157,080.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $2,000.00 | | | $26,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $3,000.00 | | | $36,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $3,000.00 | | | $25,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |

| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | $22,090.00 |
|---|---|---|---|---|

Charges, Payments & Taxes
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law
General Terms and Conditions






**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:



NAME AND TITLE:



DATE: 4-27-23




THE N2 COMPANY

# EXHIBIT F

# PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | | AREA DIRECTOR | Jeff Miller | | |
|---|---|---|---|---|---|---|
| **ADVERTISER** | NuMale Medical Chicago LLC | | | | | |
| **FIRST NAME** | Justin | | **LAST NAME** | Pulliam | | |
| **EMAIL** | ▮▮▮▮▮▮ | | | | | |
| **OFFICE PHONE** | ▮▮▮▮▮ | | **CELL PHONE** | | | |
| **WEBSITE** | www.numalemedical.com/our-locations/chicago-il-numale-medical-clinic/ | | | | | |
| **ADDRESS** | 4711 Golf Rd. STE 1050 | | | | | |
| **CITY** | Skokie | | **STATE** | IL | **ZIP** | 60076 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("your" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|---|---|---|
| | | |

| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $18,413.00 | None ▼ | $220,956.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $6,000.00 | | $72,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $4,000.00 | | $48,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $5,000.00 | | $60,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| | | |
|---|---|---|
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | $33,413.00 |



Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions







**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: Justin Pullion VP

DATE: 4-27-23




THE N2 COMPANY

# EXHIBIT G

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller | ▼ |
|---|---|---|---|---|

| ADVERTISER | NuMale Medical Denver LLC |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ███████ |
|---|---|

| OFFICE PHONE | ███████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/denver-co-numale-medical-clinic/ |
|---|---|

| ADDRESS | 8200 E. Belleview Ave., STE 280E |
|---|---|

| CITY | Greenwood Village | STATE | CO | ▼ | ZIP | 80111 |
|---|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|---|
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |
| | ▼ | | | ▼ | ▼ | |

+ Add Page







| DESCRIPTION OF GOODS/SERVICES BARTERED | |
|---|---|



| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) ▼ | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $4,000.00 | | $48,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $5,000.00 | | $60,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | | $12,000.00 | |




Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions







**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**



SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: _Justin Pelliam VP_

DATE: _8-27-23_





THE N2 COMPANY

# EXHIBIT H

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|
| ADVERTISER | NuMale Medical Green Bay LLC | | | |

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ███████████ |
|---|---|

| OFFICE PHONE | ████████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/green-bay-wi-numale-medical-clinic/ |
|---|---|

| ADDRESS | 1525 Park Place, Ste 300 |
|---|---|

| CITY | Ashwaubenon | STATE | WI | ZIP | 54303 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you") for the Applicable purchase terms follow the ordering grids below

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING [Monthly Payment + Ad Management] | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $3,286.00 | None | ▼ | $39,432.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,000.00 | | | $12,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $30 CPM | $1,000.00 | | | $12,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $8,286.00 | |

Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.





**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: *Justin Pullman VP*

DATE: 4-27-23

THE N2 COMPANY

# EXHIBIT I

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| | |
|---|---|
| DATE | 04252023 |
| AREA DIRECTOR | Jeffrey Miller |
| ADVERTISER | NuFemme Rejuvenation Clinic Green Bay |
| FIRST NAME | Justin |
| LAST NAME | Pulliam |
| EMAIL | ████████ |
| OFFICE PHONE | ████████ |
| CELL PHONE | |
| WEBSITE | nufemme.com/locations/green-bay/ |
| ADDRESS | 1525 Park Place, Ste 300 |
| CITY | Howard |
| STATE | WI |
| ZIP | 54303 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|---|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $4,475.00 | None | ▼ | $53,700.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $1,000.00 | | | $12,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,000.00 | | | $12,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $9,475.00 | |

Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.









**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE:

DATE: 4-27-23

# EXHIBIT J

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|---|
| ADVERTISER | NuMale Medical Las Vegas LLC | | | | |
| FIRST NAME | Justin | | LAST NAME | Pulliam | |
| EMAIL | ▮▮▮▮▮▮ | | | | |
| OFFICE PHONE | ▮▮▮▮▮ | | CELL PHONE | | |
| WEBSITE | www.numalemedical.com/our-locations/las-vegas-nv-numale-medical-clinic/ | | | | |
| ADDRESS | 6590 S. Rainbow Blvd, #250 | | | | |
| CITY | Las Vegas | | STATE | NV | ZIP  89118 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below

### PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

- Add Map -



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐  ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | 12 Cycles | Ad Mgmt | $9,883.00 | None | $118,590.00 |
| Display/Mobile Ads | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |
| Paid Social Ads | 12 Cycles | Ad Mgmt | $2,000.00 | | $24,000.00 |
| Over-the-Top (OTT) | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | $16,883.00 |



Charges, Payments & Taxes
Auto-Charge Credit Card Payment Terms and Authorization.

Applicable Law.

General Terms and Conditions.






**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: Justin Pullman  VP

DATE: 4-27-23




THE N2 COMPANY

# EXHIBIT K

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|---|
| ADVERTISER | NuFemme Rejuvenation Clinic Las Vegas | | | |
| FIRST NAME | Justin | | LAST NAME | Pulliam |
| EMAIL | ▮▮▮▮▮ | | | |
| OFFICE PHONE | ▮▮▮▮▮ | | CELL PHONE | |
| WEBSITE | nufemme.com/locations/las-vegas/ | | | |
| ADDRESS | 6590 S. Rainbow Blvd, #250 | | | |
| CITY | Las Vegas | | STATE | NV | ZIP | 89118 |

This Order Form is a legal document between The NZ Company ("NZ") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page

| DESCRIPTION OF GOODS/SERVICES BARTERED | | | |
|---|---|---|---|
| | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | MONTHLY BARTER AMOUNT | |
| | AD MANAGEMENT (ONE-TIME) | |
| | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





THE NZ COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $9,127.00 | None ▼ | $109,524.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,050.00 | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $2,000.00 | | $24,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| | | FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | $16,127.00 |
|---|---|---|---|---|---|---|

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law:

General Terms and Conditions






**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: _Justin Pullim_ V.P.

DATE: 4-87-23




THE N2 COMPANY

# EXHIBIT L

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|

| ADVERTISER | NuMale Medical Tampa LLC |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ▇▇▇▇▇▇▇ |
|---|---|

| OFFICE PHONE | ▇▇▇▇▇ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/tampa-fl/ |
|---|---|

| ADDRESS | 500 N Westshore Blvd, Ste 450 |
|---|---|

| CITY | Tampa | STATE | FL | ZIP | 33609 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("your" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED (MAY ACCRUE) | | |
|---|---|---|
| | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | MONTHLY BARTER AMOUNT | |
| | AD MANAGEMENT (ONE-TIME) | |
| | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 |  |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $2,500.00 | | $30,000.00 | ▓ |
| Over the Top (OTT) | ▼ | 12 Cycles | $36 CPM | $2,000.00 | | $24,000.00 | ▓ |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | | $7,500.00 | |

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law;

General Terms and Conditions








**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP: _Josh_

NAME AND TITLE: _Justin Pullman VP_

DATE: 4-27-23

THE N2 COMPANY

# EXHIBIT M

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 0 4 2 5 2 0 2 3 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|

| ADVERTISER | NuFemme Rejuvenation Clinic Tampa |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ███████████ |
|---|---|

| OFFICE PHONE | ████████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | nufemme.com/locations/tampa/ |
|---|---|

| ADDRESS | 500 N Westshore Blvd, Ste 450 |
|---|---|

| CITY | Tampa | STATE | FL | ZIP | 33609 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or ""). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.



THE N2 COMPANY

04.25.23 03

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL |
|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | | Ad Mgmt | $5,175.00 | None | $68,475.00 |
| Display/Mobile Ads | | $10 CPM | $3,225.00 | | $45,000.00 |
| Paid Social Ads | | Ad Mgmt | $1,500.00 | | $19,000.00 |
| Over The Top (OTT) | | $46 CPM | $1,500.00 | | $18,000.00 |
| | | | | | |

FIRST CYCLE PAYMENT
FOR DIGITAL ADVERTISING





**ACKNOWLEDGEMENT:** I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.

SIGNATURE OF ADVERTISER'S AUTHORIZED REP

NAME AND TITLE

DATE  4-27-23





THE N2 COMPANY

# EXHIBIT N

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|---|

| ADVERTISER | NuMale Medical Omaha LLC | |
|---|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ██████████ |
|---|---|

| OFFICE PHONE | ██████████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | www.numalemedical.com/our-locations/omaha-ne-numale-medical-clinic/ |
|---|---|

| ADDRESS | 444 Regency Parkway Drive, Suite 204 |
|---|---|

| CITY | Omaha | STATE | NE | ZIP | 68114 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

## PRINT AND DIGITAL ADVERTISING ORDER FORM

### DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $5,673.00 | None | ▼ | $65,076.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Ford Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,500.00 | | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |

**FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** — $11,673.00

Charges, Payments & Taxes;
Auto-Charge Credit Card Payment Terms and Authorization;

Applicable Law;

General Terms and Conditions;









**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE: Justin Nelson VP

DATE: 4-27-23





THE N2 COMPANY

# EXHIBIT O

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 0 4 2 5 2 0 2 3 | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|

| ADVERTISER | NuFemme Rejuvenation Clinic Omaha |
|---|---|

| FIRST NAME | Justin | LAST NAME | Pulliam |
|---|---|---|---|

| EMAIL | ████████ |
|---|---|

| OFFICE PHONE | ████████ | CELL PHONE | |
|---|---|---|---|

| WEBSITE | nufemme.com/locations/omaha/ |
|---|---|

| ADDRESS | 444 Regency Parkway Drive, Suite 204 |
|---|---|

| CITY | Omaha | STATE | NE | ZIP | 68114 |
|---|---|---|---|---|---|

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page







| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|---|---|---|

| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $4,178.00 | None | ▼ | $50,136.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,500.00 | | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | | $10,178.00 | |



Charges, Payments & Taxes.
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law

General Terms and Conditions





**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**



SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE:

DATE: 4-27-23





THE N2 COMPANY

# EXHIBIT P

**PRINT AND DIGITAL ADVERTISING ORDER FORM**

| DATE | 04252023 | | AREA DIRECTOR | Jeffrey Miller |
|---|---|---|---|---|
| **ADVERTISER** | NuMale Medical Milwaukee | | | |
| **FIRST NAME** | Justin | | **LAST NAME** | Pulliam |
| **EMAIL** | ███████ | | | |
| **OFFICE PHONE** | ███████ | | **CELL PHONE** | |
| **WEBSITE** | www.numalemedical.com/our-locations/milwaukee-wi-numale-medical-clinic/ | | | |
| **ADDRESS** | 2600 N. Mayfair Rd. | | | |
| **CITY** | Wauwatosa | | **STATE** WI | **ZIP** 53226 |

This Order Form is a legal document between The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

## PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

+ Add Page



| DESCRIPTION OF GOODS/SERVICES BARTERED | | |
|---|---|---|
| TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
| MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| MONTHLY BARTER AMOUNT | |
| AD MANAGEMENT (ONE-TIME) | |
| FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |

☐ ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.

THE N2 COMPANY

# PRINT AND DIGITAL ADVERTISING ORDER FORM

## DIGITAL ORDERS

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt. | $9,312.00 | None | ▼ | $111,744.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt. | $1,500.00 | | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | | $18,000.00 | 🗑 |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| | ▼ | | | | | | | |
| **FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING** | | | | | | | $15,312.00 | |

Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization:

Applicable Law:

General Terms and Conditions:








**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE:  Justin Pullian  VP

DATE: 4-27-23






THE N2 COMPANY

# EXHIBIT Q

## PRINT AND DIGITAL ADVERTISING ORDER FORM

| DATE | 04252023 | AREA DIRECTOR | Jeffrey Miller | |
|---|---|---|---|---|
| **ADVERTISER** | NuFemme Rejuvenation Clinic Milwaukee | | | 🗑 |
| **FIRST NAME** | Justin | **LAST NAME** | Pulliam | |
| **EMAIL** | ▇▇▇▇▇ | | | |
| **OFFICE PHONE** | ▇▇▇▇▇ | **CELL PHONE** | | |
| **WEBSITE** | nufemme.com/locations/milwaukee/ | | | |
| **ADDRESS** | 2600 N. Mayfair Rd. | | | |
| **CITY** | Wauwatosa | **STATE** WI | **ZIP** 53226 | |

This Order Form is a legal document between "The N2 Company ("N2") and Advertiser ("you" or "I"). Applicable purchase terms follow the ordering grids below.

### PRINT ORDERS

| PUBLICATION | PER ISSUE PRICE | # OF ISSUES | EST. PUB. DATE | AD SIZE AND PLACEMENT | # OF SPONSOR SPOTLIGHTS |
|---|---|---|---|---|---|
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |
| ▼ | | | ▼ | ▼ | |

+ Add Page





| **DESCRIPTION OF GOODS/SERVICES BARTERED** | | TOTAL MONTHLY PAYMENT FOR PRINT ADVERTISING | As Stated Above |
|---|---|---|---|
| | | MONTHLY CREDIT CARD AMOUNT | As Stated Above |
| | | MONTHLY BARTER AMOUNT | |
| | | AD MANAGEMENT (ONE-TIME) ▼ | |
| | | FIRST MONTH'S PAYMENT FOR PRINT ADVERTISING (Monthly Payment + Ad Management) | As Stated Above |



☐  ADVERTISER OPTS OUT OF EXTENDED REACH DIGITAL ADVERTISING.





## PRINT AND DIGITAL ADVERTISING ORDER FORM

### — DIGITAL ORDERS —

| PRODUCTS | | UNITS | RATE | COST PER CYCLE | ADD-ONS | TOTAL | |
|---|---|---|---|---|---|---|---|
| Search Engine Marketing (SEM) | ▼ | 12 Cycles | Ad Mgmt | $8,057.00 | None ▼ | $96,684.00 | 🗑 |
| Display/Mobile Ads | ▼ | 12 Cycles | $10 CPM | $3,000.00 | | $36,000.00 | 🗑 |
| Paid Social Ads | ▼ | 12 Cycles | Ad Mgmt | $1,500.00 | | $18,000.00 | 🗑 |
| Over-the-Top (OTT) | ▼ | 12 Cycles | $36 CPM | $1,500.00 | | $12,000.00 | 🗑 |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |
| | ▼ | | | | | | |

| FIRST CYCLE PAYMENT FOR DIGITAL ADVERTISING | | | | | | $14,857.00 |
|---|---|---|---|---|---|---|




Charges, Payments & Taxes:
Auto-Charge Credit Card Payment Terms and Authorization

Applicable Law:

General Terms and Conditions






**ACKNOWLEDGEMENT: I have read all pages and attachments to this Order Form and I accept the terms on behalf of the Advertiser. I warrant that I am authorized to sign this Order Form on the Advertiser's behalf.**

SIGNATURE OF ADVERTISER'S AUTHORIZED REP:

NAME AND TITLE:  Justin Pulliam

DATE: 4-27-23






THE N2 COMPANY

# EXHIBIT 4

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-000927-D

| | |
|---|---|
| THE N2 COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>NUMALE MEDICAL CENTER, LLC,<br>and NUMALE CORPORATION,<br><br>    Defendants. | **ANSWER, DEFENSES, AND<br>COUNTERCLAIM** |

COME NOW Defendants NuMale Medical Center, LLC ("NMLLC") and NuMale Corporation. ("NCCorp") (collectively, NMLLC and NCCorp known as "Defendants"), by and through their undersigned counsel, and submit their Answer and Defenses to Plaintiff The N2 Company's ("N2") Complaint as follows:

1.      Defendants currently lack sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 1. Therefore, Defendants deny them.

2.      NMLLC admits the allegations contained in Paragraph 2. NCCorp currently lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 2. Therefore, NCCorp denies them.

3.      NCCorp admits the allegations contained in Paragraph 3. NMLLC currently lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 2. Therefore, NMLLC denies them.

1

4.      The allegations in Paragraph 4 consist of legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations set forth in Paragraph 4.

5.      The allegations in Paragraph 5 consist of legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations set forth in Paragraph 5.

## BACKGROUND

6.      Defendants incorporate by reference their response to all previous allegations.

7.      Defendants currently lack sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 7. Therefore, Defendants deny them.

8.      Defendants admit that certain entities provide men's health and wellness services under the brand NuMale and other entities provide women's health and wellness services under the brand NuFemme.  Defendants deny any remaining allegations in Paragraph 8 that they have not expressly admitted.

9.      Denied.

10.     Denied.

11.     The allegations in Paragraph 11 consist of legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations set forth in Paragraph 11.

12.     Denied.

## FIRST CLAIM FOR RELIEF
(Breach of Contract – Account No. 222095)

13. Defendants incorporate by reference their response to all previous allegations.

14. The contract referenced in Paragraph 14 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 14 inconsistent with the referenced contract. The allegations in Paragraph 14 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 14.

15. The document attached as Exhibit A is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 15 inconsistent with Exhibit A.

16. The document attached as Exhibit B is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 16 inconsistent with Exhibit B.

17. Contract 1 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 17 inconsistent with Contract 1.

18. Defendants aver that NuMale Medical Albuquerque LLC is not an entity.  To the extent any further response is required, Defendants deny the allegations in Paragraph 18.

19. Contract 1 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 19 inconsistent with Contract 1.

3

20.     Contract 1 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 20 inconsistent with Contract 1.

21.     Contract 1 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 21 inconsistent with Contract 1.

22.     Contract 1 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 22 inconsistent with Contract 1.

23.     Defendants deny the allegations contained in Paragraph 23.

24.     Defendants deny the allegations contained in Paragraph 24.

25.     Defendants deny the allegations contained in Paragraph 25

26.     Defendants deny the allegations contained in Paragraph 26.

27.     The April 10, 2024, letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 27 inconsistent with the letter.  Defendants specifically deny that any payment or debt is due to Plaintiff.

28.     The document attached as Exhibit C is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 28 inconsistent with Exhibit C. Defendants specifically deny that any payment or debt is due to Plaintiff.

29.     Defendants deny the allegations contained in Paragraph 29.

30.     Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 30 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 30 also consist of legal conclusions to which no response is required. To

4

the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 30.

## SECOND CLAIM FOR RELIEF
(Breach of Contract – Account No. 222098)

31.    Defendants incorporate by reference their response to all previous allegations.

32.    The contract referenced in Paragraph 32 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 32 inconsistent with the referenced contract. The allegations in Paragraph 32 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 32.

33.    The document attached as Exhibit D is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 33 inconsistent with Exhibit D.

34.    Contract 2 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 34 inconsistent with Contract 2.

35.    Defendants aver that NuFemme Rejuvenation Clinic Albuquerque is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 35.

36.    Contract 2 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 36 inconsistent with Contract 2.

37.    Contract 2 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 37 inconsistent with Contract 2.

5

38.     Contract 2 is the best evidence of its contents and speaks for itself.

Defendants deny any allegation in Paragraph 38 inconsistent with Contract 2.

39.     Contract 2 is the best evidence of its contents and speaks for itself.

Defendants deny any allegation in Paragraph 39 inconsistent with Contract 2.

40.     Defendants deny the allegations contained in Paragraph 40.

41.     Defendants deny the allegations contained in Paragraph 41.

42.     Defendants deny the allegations contained in Paragraph 42.

43.     Defendants deny the allegations contained in Paragraph 43.

44.     The letter is the best evidence of its contents and speaks for itself.

Defendants deny any allegation in Paragraph 44 inconsistent with the letter.

Defendants specifically deny that any payment or debt is due to Plaintiff.

45.     Defendants deny the allegations contained in Paragraph 45.

46.     Section 4(8) of the Terms and Conditions is the best evidence of its

contents and speaks for itself. Defendants deny any allegation in Paragraph 46

inconsistent with Section 4(8) of the Terms and Conditions. The allegations in

Paragraph 46 also consist of legal conclusions to which no response is required. To

the extent a further response is necessary, Defendants deny the allegations set forth

in Paragraph 46.

## THIRD CLAIM FOR RELIEF
(Breach of Contract – Account No. 222099)

47.     Defendants incorporate by reference their response to all previous

allegations.

48.     The contract referenced in Paragraph 48 is the best evidence of its

contents and speaks for itself. Defendants deny any allegation in Paragraph 48

inconsistent with the referenced contract. The allegations in Paragraph 48 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 48.

49.    The document attached as Exhibit E is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 49 inconsistent with Exhibit E.

50.    Contract 3 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 50 inconsistent with Contract 3.

51.    Defendants aver that NuMale Medical Charlotte LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 51.

52.    Contract 3 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 52 inconsistent with Contract 3.

53.    Contract 3 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 53 inconsistent with Contract 3.

54.    Contract 3 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 54 inconsistent with Contract 3.

55.    Contract 3 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 55 inconsistent with Contract 3.

56.    Defendants deny the allegations contained in Paragraph 56.

57.    Defendants deny the allegations contained in Paragraph 57.

58.    Defendants deny the allegations contained in Paragraph 58.

7

59.    Defendants deny the allegations contained in Paragraph 59.

60.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 60 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

61.    Defendants deny the allegations contained in Paragraph 61.

62.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 62 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 62 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 62.

### FOURTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222101)

63.    Defendants incorporate by reference their response to all previous allegations.

64.    The contract referenced in Paragraph 64 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 64 inconsistent with the referenced contract. The allegations in Paragraph 64 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 64.

65.    The document attached as Exhibit F is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 65 inconsistent with Exhibit F.

66.     Contract 4 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 66 inconsistent with Contract 4.

67.     Defendants aver that NuMale Medical Chicago LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 67.

68.     Contract 4 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 68 inconsistent with Contract 4.

69.     Contract 4 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 69 inconsistent with Contract 4.

70.     Contract 4 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 70 inconsistent with Contract 4.

71.     Contract 4 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 71 inconsistent with Contract 4.

72.     Defendants deny the allegations contained in Paragraph 72.

73.     Defendants deny the allegations contained in Paragraph 73.

74.     Defendants deny the allegations contained in Paragraph 74.

75.     Defendants deny the allegations contained in Paragraph 75.

76.     The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 76 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

77.     Defendants deny the allegations contained in Paragraph 77.

78.     Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 78

inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 78 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 78.

## FIFTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222103)

79. Defendants incorporate by reference their response to all previous allegations.

80. The contract referenced in Paragraph 80 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 80 inconsistent with the referenced contract. The allegations in Paragraph 80 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 80.

81. The document attached as Exhibit G is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 81 inconsistent with Exhibit G.

82. Contract 5 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 82 inconsistent with Contract 5.

83. Defendants aver that NuMale Medical Denver LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 83.

84. Contract 5 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 84 inconsistent with Contract 5.

85.    Contract 5 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 85 inconsistent with Contract 5.

86.    Contract 5 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 86 inconsistent with Contract 5.

87.    Contract 5 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 87 inconsistent with Contract 5.

88.    Defendants deny the allegations contained in Paragraph 88.

89.    Defendants deny the allegations contained in Paragraph 89.

90.    Defendants deny the allegations contained in Paragraph 90.

91.    Defendants deny the allegations contained in Paragraph 91.

92.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 92 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

93.    Defendants deny the allegations contained in Paragraph 93.

94.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 94 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 94 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 94.

## SIXTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222104)

95.    Defendants incorporate by reference their response to all previous allegations.

11

96.     The contract referenced in Paragraph 96 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 96 inconsistent with the referenced contract. The allegations in Paragraph 96 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 96.

97.     The document attached as Exhibit H is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 97 inconsistent with Exhibit H.

98.     Contract 6 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 98 inconsistent with Contract 6.

99.     Defendants aver that NuMale Medical Green Bay LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 99.

100.    Contract 6 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 100 inconsistent with Contract 6.

101.    Contract 6 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 101 inconsistent with Contract 6.

102.    Contract 6 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 102 inconsistent with Contract 6.

103.    Contract 6 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 103 inconsistent with Contract 6.

104.    Defendants deny the allegations contained in Paragraph 104.

105.   Defendants deny the allegations contained in Paragraph 105.

106.   Defendants deny the allegations contained in Paragraph 106.

107.   Defendants deny the allegations contained in Paragraph 107.

108.   The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 108 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

109.   Defendants deny the allegations contained in Paragraph 109.

110.   Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 110 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 110 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 110.

## SEVENTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222106)

111.   Defendants incorporate by reference their response to all previous allegations.

112.   The contract referenced in Paragraph 112 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 112 inconsistent with the referenced contract. The allegations in Paragraph 112 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 112.

113.    The document attached as Exhibit I is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 113 inconsistent with Exhibit I.

114.    Contract 7 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 114 inconsistent with Contract 7.

115.    Defendants aver that NuFemme Rejuvenation Clinic Green Bay is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 115.

116.    Contract 7 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 116 inconsistent with Contract 7.

117.    Contract 7 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 117 inconsistent with Contract 7.

118.    Contract 7 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 118 inconsistent with Contract 7.

119.    Contract 7 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 119 inconsistent with Contract 7.

120.    Defendants deny the allegations contained in Paragraph 120.

121.    Defendants deny the allegations contained in Paragraph 121.

122.    Defendants deny the allegations contained in Paragraph 122.

123.    Defendants deny the allegations contained in Paragraph 123.

124.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 124 inconsistent with the letter. Defendants specifically deny that any debt is due.

125.    Defendants deny the allegations contained in Paragraph 125.

126.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 126 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 126 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 126.

## EIGHTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222107

127.    Defendants incorporate by reference their response to all previous allegations.

128.    The contract referenced in Paragraph 112 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 128 inconsistent with the referenced contract. The allegations in Paragraph 128 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 128.

129.    The document attached as Exhibit J is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 129 inconsistent with Exhibit J.

130.    Contract 8 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 130 inconsistent with Contract 8.

131.   Defendants aver that NuMale Medical Las Vegas LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 131.

132.   Contract 8 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 132 inconsistent with Contract 8.

133.   Contract 8 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 133 inconsistent with Contract 8.

134.   Contract 8 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 134 inconsistent with Contract 8.

135.   Contract 8 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 135 inconsistent with Contract 8.

136.   Defendants deny the allegations contained in Paragraph 136.

137.   Defendants deny the allegations contained in Paragraph 137.

138.   Defendants deny the allegations contained in Paragraph 138.

139.   Defendants deny the allegations contained in Paragraph 139.

140.   The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 140 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

141.   Defendants deny the allegations contained in Paragraph 141.

142.   Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 142 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 142 also consist of legal conclusions to which no response is required. To

16

the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 142.

**NINTH CLAIM FOR RELIEF**
(Breach of Contract – Account No. 222109)

143.    Defendants incorporate by reference their response to all previous allegations.

144.    The contract referenced in Paragraph 144 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 144 inconsistent with the referenced contract. The allegations in Paragraph 144 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 144.

145.    The document attached as Exhibit K is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 145 inconsistent with Exhibit K.

146.    Contract 9 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 146 inconsistent with Contract 9.

147.    Defendants aver that NuFemme Rejuvenation Clinic Las Vegas is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 147.

148.    Contract 9 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 148 inconsistent with Contract 9.

149.    Contract 9 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 149 inconsistent with Contract 9.

150. Contract 9 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 150 inconsistent with Contract 9.

151. Contract 9 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 151 inconsistent with Contract 9.

152. Defendants deny the allegations contained in Paragraph 152.

153. Defendants deny the allegations contained in Paragraph 153.

154. Defendants deny the allegations contained in Paragraph 154.

155. Defendants deny the allegations contained in Paragraph 155.

156. The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 156 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

157. Defendants deny the allegations contained in Paragraph 157.

158. Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 158 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 158 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 158.

### TENTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222111)

159. Defendants incorporate by reference their response to all previous allegations.

160. The contract referenced in Paragraph 160 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 160

18

inconsistent with the referenced contract. The allegations in Paragraph 160 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 160.

161.    The document attached as Exhibit L is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 161 inconsistent with Exhibit L.

162.    Contract 10 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 162 inconsistent with Contract 10.

163.    Defendants aver that NuMale Medical Tampa LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 163.

164.    Contract 10 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 164 inconsistent with Contract 10.

165.    Contract 10 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 165 inconsistent with Contract 10.

166.    Contract 10 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 166 inconsistent with Contract 10.

167.    Contract 10 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 167 inconsistent with Contract 10.

168.    Defendants deny the allegations contained in Paragraph 168.

169.    Defendants deny the allegations contained in Paragraph 169.

170.    Defendants deny the allegations contained in Paragraph 170.

171.    Defendants deny the allegations contained in Paragraph 171.

172.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 172 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

173.    Defendants deny the allegations contained in Paragraph 173.

174.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 174 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 174 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 174.

### ELEVENTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222114)

175.    Defendants incorporate by reference their response to all previous allegations.

176.    The contract referenced in Paragraph 176 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 176 inconsistent with the referenced contract. The allegations in Paragraph 176 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 176.

177.    The document attached as Exhibit M is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 177 inconsistent with Exhibit M.

20

178.    Contract 11 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 178 inconsistent with Contract 11.

179.    Defendants aver that NuFemme Rejuvenation Clinic Tampa is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 179.

180.    Contract 11 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 180 inconsistent with Contract 11.

181.    Contract 11 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 181 inconsistent with Contract 11.

182.    Contract 11 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 182 inconsistent with Contract 11.

183.    Contract 11 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 183 inconsistent with Contract 11.

184.    Defendants deny the allegations contained in Paragraph 184.

185.    Defendants deny the allegations contained in Paragraph 185.

186.    Defendants deny the allegations contained in Paragraph 186.

187.    Defendants deny the allegations contained in Paragraph 187.

188.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 188 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

189.    Defendants deny the allegations contained in Paragraph 189.

190.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 190

21

inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 190 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 190.

## TWELFTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222115)

191.    Defendants incorporate by reference their response to all previous allegations.

192.    The contract referenced in Paragraph 192 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 192 inconsistent with the referenced contract. The allegations in Paragraph 192 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 192.

193.    The document attached as Exhibit N is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 193 inconsistent with Exhibit N.

194.    Contract 12 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 194 inconsistent with Contract 12.

195.    Defendants aver that NuMale Medical Omaha LLC is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 195.

196.    Contract 12 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 196 inconsistent with Contract 12.

22

197.    Contract 12 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 197 inconsistent with Contract 12.

198.    Contract 12 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 198 inconsistent with Contract 12.

199.    Contract 12 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 199 inconsistent with Contract 12.

200.    Defendants deny the allegations contained in Paragraph 200.

201.    Defendants deny the allegations contained in Paragraph 201.

202.    Defendants deny the allegations contained in Paragraph 202.

203.    Defendants deny the allegations contained in Paragraph 203.

204.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 204 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

205.    Defendants deny the allegations contained in Paragraph 205.

206.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 206 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 206 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 206.

### THIRTEENTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222116)

207.    Defendants incorporate by reference their response to all previous allegations.

23

208.   The contract referenced in Paragraph 208 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 208 inconsistent with the referenced contract. The allegations in Paragraph 208 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 208.

209.   The document attached as Exhibit O is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 209 inconsistent with Exhibit O.

210.   Contract 13 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 210 inconsistent with Contract 13.

211.   Defendants aver that NuFemme Rejuvenation Clinic Omaha is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 211.

212.   Contract 13 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 212 inconsistent with Contract 13.

213.   Contract 13 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 213 inconsistent with Contract 13.

214.   Contract 13 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 214 inconsistent with Contract 13.

215.   Contract 13 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 215 inconsistent with Contract 13.

216.   Defendants deny the allegations contained in Paragraph 216.

217.    Defendants deny the allegations contained in Paragraph 217.

218.    Defendants deny the allegations contained in Paragraph 218.

219.    Defendants deny the allegations contained in Paragraph 219.

220.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 220 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

221.    Defendants deny the allegations contained in Paragraph 221.

222.    Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 222 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 222 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 222.

## FOURTEENTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222117)

223.    Defendants incorporate by reference their response to all previous allegations.

224.    The contract referenced in Paragraph 224 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 224 inconsistent with the referenced contract. The allegations in Paragraph 224 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 224.

25

225.    The document attached as Exhibit P is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 225 inconsistent with Exhibit P.

226.    Contract 14 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 226 inconsistent with Contract 14.

227.    Defendants aver that NuMale Medical Milwaukee is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 227.

228.    Contract 14 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 228 inconsistent with Contract 14.

229.    Contract 14 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 229 inconsistent with Contract 14.

230.    Contract 14 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 230 inconsistent with Contract 14.

231.    Contract 14 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 231 inconsistent with Contract 14.

232.    Defendants deny the allegations contained in Paragraph 232.

233.    Defendants deny the allegations contained in Paragraph 233.

234.    Defendants deny the allegations contained in Paragraph 234.

235.    Defendants deny the allegations contained in Paragraph 235.

236.    The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 236 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

26

237.   Defendants deny the allegations contained in Paragraph 237.

238.   Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 238 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 238 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 238.

## FIFTEENTH CLAIM FOR RELIEF
(Breach of Contract – Account No. 222118)

239.   Defendants incorporate by reference their response to all previous allegations.

240.   The contract referenced in Paragraph 240 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 240 inconsistent with the referenced contract. The allegations in Paragraph 240 related to incorporating terms from a website into a contract also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 240.

241.   The document attached as Exhibit Q is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 241 inconsistent with Exhibit Q.

242.   Contract 15 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 242 inconsistent with Contract 15.

243. Defendants aver that NuFemme Rejuvenation Clinic Milwaukee is not an entity. To the extent any further response is required, Defendants deny the allegations in Paragraph 243.

244. Contract 15 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 244 inconsistent with Contract 15.

245. Contract 15 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 245 inconsistent with Contract 15.

246. Contract 15 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 246 inconsistent with Contract 15.

247. Contract 15 is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 247 inconsistent with Contract 15.

248. Defendants deny the allegations contained in Paragraph 248.

249. Defendants deny the allegations contained in Paragraph 249.

250. Defendants deny the allegations contained in Paragraph 250.

251. Defendants deny the allegations contained in Paragraph 251.

252. The letter is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 252 inconsistent with the letter. Defendants specifically deny that any payment or debt is due to Plaintiff.

253. Defendants deny the allegations contained in Paragraph 253.

254. Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 254 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 254 also consist of legal conclusions to which no response is required. To

28

the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 254.

## SIXTEENTH CLAIM FOR RELIEF
(Contractual Attorney's Fees)

255.    Defendants incorporate by reference their response to all previous allegations.

256.    Contracts 1 to 15 are the best evidence of their contents and speak for themselves. Defendants deny any allegation in Paragraph 256 inconsistent with the Contracts.

257.    Contracts 1 to 15 are the best evidence of their contents and speak for themselves. Defendants deny any allegation in Paragraph 257 inconsistent with the Contracts. Defendants also deny that Plaintiffs are entitled to any attorneys' fees.

258.    Contracts 1 to 15 are the best evidence of their contents and speak for themselves. Defendants deny any allegation in Paragraph 258 inconsistent with the Contracts. Defendants also deny that Plaintiffs are entitled to any attorneys' fees.

259.    Contracts 1 to 15 are the best evidence of their contents and speak for themselves. Defendants deny any allegation in Paragraph 259 inconsistent with the Contracts. Defendants also deny that Plaintiffs are entitled to any attorneys' fees.

260.    Defendants deny the allegations contained in Paragraph 260.

261.    The allegations in Paragraph 261 consist of legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations set forth in Paragraph 261. Defendants also deny that Plaintiffs are entitled to any attorneys' fees.

262. The Demand Letters are the best evidence of their contents and speak for themselves. Defendants deny any allegation in Paragraph 262 inconsistent with the Contracts. Defendants also deny that Plaintiffs are entitled to any attorneys' fees.

263. Defendants deny the allegations contained in Paragraph 263.

264. The allegations in Paragraph 264 consist of legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations set forth in Paragraph 264. Defendants also deny that Plaintiffs are entitled to any attorneys' fees.

265. Defendants deny the allegations contained in Paragraph 265.

266. Section 4(8) of the Terms and Conditions is the best evidence of its contents and speaks for itself. Defendants deny any allegation in Paragraph 266 inconsistent with Section 4(8) of the Terms and Conditions. The allegations in Paragraph 266 also consist of legal conclusions to which no response is required. To the extent a further response is necessary, Defendants deny the allegations set forth in Paragraph 266.

### SEVENTEENTH CLAIM FOR RELIEF
(In the Alternative, Unjust Enrichment; Quantum Meruit)

267. Defendants incorporate by reference their response to all previous allegations.

268. The allegations in Paragraph 268 consist of legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations set forth in Paragraph 268.

269. Defendants deny the allegations contained in Paragraph 269.

270.   Defendants deny the allegations contained in Paragraph 270.

271.   Defendants deny the allegations contained in Paragraph 271.

272.   Defendants deny the allegations contained in Paragraph 272.

273.   Defendants deny the allegations contained in Paragraph 273.

274.   Defendants deny the allegations contained in Paragraph 274.

275.   Defendants deny the allegations contained in Paragraph 275.

276.   Defendants deny the allegations contained in Paragraph 276.

EXCEPT AS EXPRESSLY ADMITTED, DEFENDANTS DENY EACH AND EVERY ALLEGATION IN THE COMPLAINT.

## JURY DEMAND

Defendants respectfully demand a jury trial on all issues so triable in this action.

## FIRST DEFENSE

N2's claims are barred, in whole or in part, by N2's unclean hands, including, but not limited to, for the reasons set forth in the below Counterclaims.

## SECOND DEFENSE

N2's claims are barred to the extent N2 failed to mitigate its alleged damages including, but not limited to, by continuing to bill for services despite its knowledge

31

it was not competent to provide the services and/or Defendants informing N2 that N2 was not properly providing digital advertising services.

## THIRD DEFENSE

Though N2 fraudulently induced Defendants to enter into the referenced agreements, if the agreements are held enforceable (which is denied) N2's claims are barred to the extent they rely on supposed "Terms and Conditions" that are not properly integrated with the agreements and that such "Terms and Conditions" are unconscionable given Plaintiffs' ability to change them unilaterally.

## FOURTH DEFENSE

N2's claims are barred by a failure of consideration because the consideration it offered, digital marketing services, turned out to be worthless or of little value.

## FIFTH DEFENSE

N2's claims are barred in whole or in part by the doctrine of accord and satisfaction because the parties disagreed about the scope of the original contracts, the parties agreed to modify the scope of the original contracts, and Defendants have fully performed their obligations under the modified scope of the contracts.

## SIXTH DEFENSE

N2's claims for interest and attorney fees are barred, in whole or in part, because Defendants never entered into contracts with N2.

## COUNTERCLAIM

Defendant NuMale Corporation ("NCCorp") brings this action against Plaintiff the N2 Company ("N2") alleging and saying the following:

1.      NuMale is a brand that provides compassionate care with cutting-edge treatments related to sensitive issues facing male patients, including erectile dysfunction, testosterone replacement therapy, weight loss, and hair restoration ("Services"). NuMale provides these Services through a network of clinics.

2.      NuFemme is a brand that provides treatment for sensitive issues facing female patients, including hair restoration, weight loss, hormone replacement, vaginal rejuvenation, and sexual health.  NuFemme provides these services through a network of clinics.

3.      The NuFemme and NuMale clinics are collectively referred to as "NuMale Clinics."

4.      NuMale Clinics are located in Albuquerque, Charlotte, Chicago, Denver, Green Bay, Las Vegas, Milwaukee, Omaha, and Tampa.

5.      Each NuMale Clinic operates under a clinical entity that is independently owned by a licensed medical provider, following state regulations that require clinical ownership by licensed practitioners. To support non-medical operations, each location collaborates with a separate management company that, through a management agreement, undertakes essential administrative and managerial responsibilities. These managerial responsibilities include handling payroll, advertising, and other operational needs specific to non-medical functions.

6.     Each management company relies on NCCorp to provide it with the support necessary to manage its local NuMale Clinic including by providing centralized support services, such as advertising, marketing, and administrative consulting necessary to assist the individual management companies in overseeing their respective clinics. The structured arrangement between various entities, including NCCorp, ensures compliance with regulatory requirements while also centralizing operational efficiency under NCCorp's guidance.

7.     NCCorp is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

8.     Upon information and belief, N2 Company ("N2") is a Delaware corporation that is authorized to do business in North Carolina, and at all times relevant to this Counterclaim, N2 had its principal place of business in New Hanover County, North Carolina.

9.     In or about the Spring of 2023, N2 made a presentation to NCCorp in an effort to gain NCCorp's advertising business for the NuMale and NuFemme brands.

10.     During this presentation, N2 informed NCCorp that it was a Preferred Google Partner and represented that this title meant that N2 had a deep understanding of and would adhere to not only industry standards but also Google best practices.  By highlighting what it claimed was "Preferred Google Partner status," N2 represented that it could effectively execute its proposed marketing strategies at a high level of quality and that it would follow Google best practices to

ensure that NCCorp would get high-quality leads.  NCCorp relied on these representations when deciding to purchase marketing services from N2.

11.     Attached as Exhibit A is the presentation that N2 provided to NCCorp. This presentation contains a comprehensive proposal that details the services that N2 was offering to provide NCCorp through its digital marketing brand Hyport Digital.  This proposal outlines a robust suite of digital marketing services including, search engine optimization ("SEO"), paid social advertising, over the top advertising ("OTT"), mobile and display ads, search engine marketing, and other services (collectively, "Advertising Services").

12.     The Advertising Services were presented as an all-encompassing strategy to elevate NCCorp's digital presence across multiple platforms, enhance audience reach, and ensure a high customer conversion rate.  NCCorp relied on the detailed nature of the services N2 offered in its presentation when deciding to purchase the Advertising Services because N2's presentation and related statements suggested that N2 possessed a high level of expertise in providing Advertising Services and that N2 was committed to improving NCCorp's advertising efforts.

13.     It was important to NCCorp that N2 would improve its SEO content and NCCorp made that clear to N2. SEO is the process of strategically enhancing a website's content, structure, and metadata so that search engines can accurately interpret and rank the website higher in search results. Effective SEO is essential in today's competitive digital landscape, as it drives visibility, attracts targeted traffic, and directly influences customer conversion. For businesses, ranking

prominently in search results can be a key differentiator that translates into increased customer leads, higher conversion rates, and, ultimately, improvement in a company's revenue.

14.     To ensure that NCCorp's website was optimized for search engines, industry standards and Google best practices dictate that N2 should have conducted a thorough SEO audit of NCCorp's website to ensure that paid advertising would be successful.  If N2 had done this audit, then it could have identified and resolved any technical or content-related issues impacting search visibility. By neglecting to conduct an SEO audit, N2 missed a crucial opportunity to optimize NCCorp's website, hindering its ability to achieve the visibility and traffic needed for sustained business growth. N2 would not have missed this opportunity if it had followed industry standards and Google best practices.

15.     Mobile ads are display advertisements, such as banners and interactive elements, specifically optimized to appear seamlessly on mobile devices. These ads are designed to fit the unique screen sizes, touch interfaces, and browsing habits of mobile users, ensuring a visually engaging and user-friendly experience. By reaching audiences on their smartphones and tablets, mobile ads help brands connect with users on the go, capturing attention in real-time and encouraging immediate engagement.

16.     Over-the-Top ads are the ads that play before you watch a video. These ads are shown on platforms like streaming apps and connected TV devices, reaching audiences who are increasingly bypassing traditional cable. OTT ads allow advertisers to target specific demographics and interests, making them a powerful

tool for engaging viewers with relevant, high-quality content that captures attention at the start or midpoint of their chosen video entertainment.

17.     To ensure that NCCorp would have high conversion rates for its advertising, N2 offered to build NCCorp a new website to ensure that the website properly integrated with N2's search engine optimization efforts.  One example of how a website is optimized for search engines is to ensure that the keywords a user would search for in Google appear in the content of the pages that make up the website.  For a company trying to attract customers with erectile dysfunctions some key search words might be: ED, impotence, erectile dysfunction, trouble keeping an erection, and erection.  Including these types of words in the website's content should result in better placement of the website on search engines like Google when someone is searching for those keywords. That better placement is then helpful in generating customer conversions and increasing revenue.

18.     For the type of Advertising Services that N2 was providing to NCCorp, the industry standard and/or Google best practice for paid advertisements is to ensure that the ad links lead to dedicated landing pages that are optimized to maximize conversion rates. Despite this known standard and best practice, N2 failed to ensure that NCCorp's paid advertising links directed customers to dedicated landing pages, which compromised the advertisements engagement and conversion potential.

19.     Because N2 failed to follow industry standards and Google best practices, including but not limited to, by failing to build a new website or conduct an SEO audit of the NCCorp website, the paid advertising that N2 was conducting

on NCCorp's behalf was ineffective.  The advertisements resulted in NCCorp getting low value clicks via its paid advertising and having no ability to convert those clicks into customers.

20.     An SEO audit evaluates (a) technical elements of a website such as site speed, mobile optimization, internal linking structure, crawlability, (b) on-page factors such as page titles, meta tags, header tags, keyword optimization, and (c) off-page factors such as backlinks, domain authority. Conducting an SEO audit is an industry standard and best practice.

21.     Upon information and belief, if N2 had followed industry best practices and conducted an SEO audit it would have identified potential issues in NCCorp's website that could have been corrected to ensure the effectiveness of its paid advertising campaign from the beginning of the campaign.

22.     N2 also failed to implement conversion tracking related to the Advertising Services. Conversion tracking allows advertisers to understand the effectiveness of their ads and how those ads translate into potential customers. Implementation of conversion tracking is a critical part of any online advertising plan, and such implementation is an industry standard and best practice.

23.     NCCorp raised its concerns about its lack of SEO traffic with N2. In response to NCCorp's concerns, N2 said that it would do a "deep dive" into the website to see what changes needed to be made to enhance NCCorp's SEO.  Upon information and belief, N2 never conducted its "deep dive."

24.     Eventually, N2 did provide NCCorp with a new website, but the website contained errors that were counterproductive to search engine optimization.

These errors included incorrect titles, poorly optimized meta tags, improperly structured headings, and outdated content that had not been refreshed to align with target keywords.

25.    When NCCorp continued to receive a high volume of clicks on paid advertisements that were not resulting in customers even after the website update, NCCorp requested access to its Google Dashboard from N2 so NCCorp could try and identify potential issues with N2's configuration of NCCorp's online advertising.

26.    N2 initially refused to provide NCCorp with access to the Google Dashboard. Instead, N2 simply provided NCCorp with a report that did not include standard online advertising metrics and was difficult to understand.  Accordingly, NCCorp continued to insist that it needed full access to its Google Dashboard.

27.    Eventually, N2 gave NCCorp full access to the NCCorp Google Dashboard.  To help better understand the content of the Google Dashboard, NCCorp eventually reached out to a Google Representative.  The Google Representative explained the dashboard and pointed out numerous errors with the ads being run on NCCorp's behalf. For example, N2 had not enabled conversion tracking.  Thus, there was no way to measure the effectiveness of the advertisements N2 was running on NuMale's behalf.

28.    These errors would not have existed if N2 was following industry standards and/or Google best practices.

29.    NCCorp was surprised to learn that N2 was not following standard practices for Google because N2 had told NCCorp that it was a Preferred Google Partner.

30.     Based on its conversation with the Google Representative, NCCorp was left with the impression that N2 would not have made the errors that it made in NCCorp's ad campaigns if N2 was following industry standards and/or Google best practices.

31.     The Google Representative was able to assist NCCorp and correct the errors with its advertisements that were made by N2.

32.     The errors with NCCorp's online advertising are errors N2 would not have made if it was following industry best practices and/or Google best practices. These fundamental missteps—such as failing to set up conversion tracking, creating ineffective landing pages, and withholding comprehensive data—reflect a lack of adherence to essential standards in digital advertising management. Further, if N2 had the knowledge and ability to perform the Advertising Services as it represented to NCCorp, N2 would have been able to quickly recognize and correct these errors.

33.     If N2 had followed industry standards and Google best practices, it would have done at least the following items when it first began providing the Advertising Services to NCCorp:

     a.     Optimize titles, tags, and headings to align with target keywords;

     b.     Update page content to reflect relevant, high-ranking keywords;

     c.     Ensure mobile speed compliance to enhance mobile usability and ranking; and

     d.     Fix "bad" or broken links to improve crawlability and user experience.

34.     N2 did not do the items listed above in Paragraph 33 while providing Advertising Services to NCCorp.

35.     If N2 had followed industry standards and Google best practices, it would have done the following items in the course of providing the Advertising Services to NCCorp:

    a.     Optimized landing pages for conversions;

    b.     Used targeted campaigns and quality scores; and

    c.     Frequently tested and optimized advertisements.

36.     N2 did not do the items listed above in Paragraph 35 while providing Advertising Services to NCCorp.

37.     NCCorp was unable to discover N2's failure to use industry standards and Google best practices because N2 withheld the information that would have demonstrated N2's failures. For example, N2 did not provide transparent and full access to critical items such as the Google Dashboard. N2 also did not provide monthly status reports or make recommendations to NCCorp about how the Advertising Services could benefit NCCorp's business goals.

38.     Upon information and belief, the core issue with N2's advertising on NCCorp's behalf is that it was optimized to get high numbers of clicks regardless of whether those clicks came from potential customers instead of being optimized to ensure that NCCorp was able to convert clicks into customers. This click-focused strategy served to inflate NCCorp's advertising costs.

39.     It is clear N2 knew that it was not complying with the industry standards because it, at one point, offered NCCorp a "no questions asked" $100,000

41

credit due to issues with the Advertising Services it was conducting on behalf of NCCorp.

## JURISDICTION AND VENUE

40.    This Court has jurisdiction over NCCorp's claims under 28 U.S.C. § 1332 because this dispute is between citizens of different states and the amount in controversy exceeds $75,000.

41.    Under 28 U.S.C. § 1391(b)(1) venue is proper in the Eastern District of North Carolina because N2 is a resident of the State of North Carolina with its principal place of business in New Hanover County, which is part of the Eastern District of North Carolina under 28 U.S.C. § 113.

## FIRST CLAIM FOR RELIEF
### (Fraud and Fraudulent Inducement)

42.    NCCorp repeats and realleges the preceding paragraphs of its counterclaim as if set forth fully herein.

43.    N2 representatives who were present at the Spring 2023 presentation made false statements about N2's ability to provide industry leading digital advertising services including but not limited to SEO, paid social advertising, over-the-top advertising, and search engine marketing through Hyport Digital.

44.    At the time N2 made these representations, N2 knew they were false and that N2 was not providing SEO, paid social advertising, over-the-top advertising, and search engine marketing through Hyport Digital that complied with industry standards and/or Google best practices.

45.    N2 also made the representation that it was a Preferred Google Partner, implying this meant that N2 had a higher level of knowledge about online

advertising services than other companies when that it is not what the term "Preferred Google Partner" actually means.

46.    Upon information and belief, N2 made the representations during the Spring 2023 presentation to induce NCCorp to purchase advertising services.

47.    Upon information and belief, N2 intended to deceive NCCorp when it made its representations in the Spring 2023 presentation.

48.    NCCorp was in fact deceived by N2's statements because NCCorp was led to believe that N2 was a leading digital advertising agency that would follow industry best practices and/or Google best practices.

49.    N2 failed to perform the following items that are industry standard and/or Google best practices despite representing to NCCorp that it would follow such standards and practices:

   a. Optimizing webpage titles, tags, and headings to align with target keywords;

   b. Updating page content to reflect relevant, high-ranking keywords;

   c. Ensuring mobile speed compliance to enhance mobile usability and ranking;

   d. Optimizing landing pages for conversions;

   e. Using targeted campaigns and quality scores; and

   f. Frequently testing and optimizing advertisements.

50.    When NCCorp asked N2 about apparent problems with its advertising campaign, N2 minimized these concerns and impaired NCCorp's ability to

investigate the issue with the advertising campaign by not promptly providing NCCorp with access to its Google Dashboard.

51. NCCorp would not have contracted with N2 for advertising services if NCCorp knew that N2 would not comply with industry standards and/or Google best practices.

52. NCCorp could not figure out that N2 was not complying with industry standards until it gained access to its Google Dashboard.

53. Once NCCorp gained access to its Google Dashboard, a Google Representative eventually confirmed that N2 was not complying with industry standards and/or Google best practices.

54. As a result of N2's actions, NCCorp paid for a lesser quality of services than it was promised, and lost out on potential customers it could have reached if its advertising campaign had been properly managed.

55. This conduct has caused harm to NCCorp at least in the principal amount of approximately $519,500, which is the money NCCorp spent on deficient advertising services.

56. N2's conduct has and continues to harm NCCorp.

57. N2's acts and omissions described herein were fraudulent, malicious, willful and wanton, and done with reckless indifference to NCCorp.

58. Under N.C. Gen. Stat. § 1D-15, N2 is liable to NCCorp for punitive damages.

44

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

59.    NCCorp repeats and realleges the preceding paragraphs of its counterclaim as if set forth fully herein.

60.    In the alternative to fraud, N2's misrepresentations described herein and made to NCCorp were made with negligent disregard to their truth.

61.    N2 owed a duty to NCCorp to provide accurate information concerning its advertising capabilities because N2 is in a superior position to NCCorp to know this information.

62.    N2 breached this duty when it provided false and misleading information about its ability to comply with industry standards and/or Google best practices including but not limited to the statements that it was a Preferred Google Partner who knew and used best practices for advertising with Google.

63.    NCCorp reasonably relied on N2's representations about its ability to provide advertising services that would comply with industry standards and/or Google best practices to its detriment.

64.    As a result of this reliance, NCCorp has been harmed at least in the principal amount of approximately $519,500, which is the money spent on deficient advertising services, and the other customers that it lost out on due to the deficient advertising campaign.

## THIRD CLAIM FOR RELIEF
### (Violation of N.C. Gen. Stat. § 75-1.1)

65.    NCCorp repeats and realleges the preceding paragraphs of its counterclaim as if set forth fully herein.

45

66. Under N.C. Gen. Stat. § 75-16, NCCorp can bring an action because N2's conduct, which violates N.C. Gen. Stat. § 75-1.1 injured NCCorp.

67. At all times relevant to this counterclaim, N2 was engaged in the business activity of selling advertising services.

68. N2 made false statements and misrepresentations to NCCorp about its ability to provide advertising services including but not limited to the fact that it followed industry standards, and it was a Preferred Google Partner who followed and used Google best practices.

69. This representation was made with the intent to secure NCCorp's advertising business and was deceptive because NCCorp eventually gained access to its Google Dashboard and spoke with a Google Representative who confirmed that N2 was not following industry standards or Google best practices on NCCorp's advertising campaign.

70. N2 failed to perform the following items that are industry standard and/or Google best practices despite representing to NCCorp that it would follow such standards and practices:

a. Optimizing webpage titles, tags, and headings to align with target keywords;

b. Updating page content to reflect relevant, high-ranking keywords;

c. Ensuring mobile speed compliance to enhance mobile usability and ranking;

d. Optimizing landing pages for conversions;

e. Using targeted campaigns and quality scores; and

46

f.  Frequently testing and optimizing advertisements.

71.  N2's conduct is unfair or deceptive because it is immoral, offends public policy, and is false or misleading.

72.  N2's conduct negatively affected NCCorp's business in North Carolina.

73.  The conduct described herein caused substantial injury to NCCorp and that injury could not have been reasonably avoided.

74.  Further, N2's conduct was done with reckless indifference to NCCorp's rights.

75.  This conduct by N2 goes well beyond mere breach of contract and constitutes substantial aggravating circumstances that support a section 75-1.1 claim.

76.  NCCorp has been damaged as a direct result of N2's unfair or deceptive conduct in an amount to be proven at trial, which amount shall be trebled under N.C. Gen. Stat. § 75-16.

77.  NCCorp is also entitled to recover interest as allowed by law, as well as its costs and reasonable attorneys' fees under N.C. Gen. Stat. § 75-16.1.

**FOURTH CLAIM FOR RELIEF**
**(In the Alternative: Breach of Contract)**

78.  NCCorp repeats and realleges the preceding paragraphs of its counterclaim as if set forth fully herein.

79.  In the alternative to fraud, NCCorp agreed to purchase and N2 agreed to provide marketing services as detailed in N2's Spring 2023 presentation.

80.  N2 breached this agreement because it failed to comply with industry standards and/or Google best practices when providing marketing services.

47

81.     N2 failed to perform the following items that are industry standard and/or Google best practices despite representing to NCCorp that it would follow such standards and practices:

    a.  Optimizing webpage titles, tags, and headings to align with target keywords;

    b.  Updating page content to reflect relevant, high-ranking keywords;

    c.  Ensuring mobile speed compliance to enhance mobile usability and ranking;

    d.  Optimizing landing pages for conversions;

    e.  Using targeted campaigns and quality scores; and

    f.  Frequently testing and optimizing advertisements.

82.     This breach was confirmed when NCCorp spoke with a Google Representative who highlighted issues with NCCorp's account that were the result of N2's failure to comply with industry standards and/or Google best practices.

83.     As a result of N2's breach, NCCorp was damaged in an amount to be proven at trial, but at least in the principal amount of approximately $519,500, plus interest as allowed by law.

WHEREFORE Defendants request that this Court:

1.     Dismiss each of Plaintiff's claims with prejudice;

2.     Enter judgment in Defendants' favor and against Plaintiff on all of Plaintiff's claims such that Plaintiff have and recover nothing from Defendants;

3.      Enter judgment in Defendant NCCorp's favor and against Plaintiff on Defendant's counterclaims;

4.      Award Defendants damages from N2 in an amount specifically to be determined at trial;

5.      Award Defendant NCCorp treble damages from N2 pursuant to N.C. Gen. Stat. § 75-16;

6.      Award Defendant NCCorp its costs, expenses, and reasonable attorneys' fees incurred in this matter pursuant to N.C. Gen. Stat. § 75-16.1;

7.      Award Defendants punitive damages from N2;

8.      For a jury trial on all issues so triable;

9.      Tax the costs of this action against Plaintiffs as allowed by applicable law; and

10.     That the Court grant such further relief as it may deem just and proper.


Respectfully submitted this the 13th day of November, 2024.


                                        /s/ John T. Kivus
                                        John T. Kivus
                                        NC State Bar No. 42977
                                        jkivus@morningstarlawgroup.com
                                        Kenzie M. Rakes
                                        NC State Bar No. 46349
                                        krakes@morningstarlawgroup.com

                                        MORNINGSTAR LAW GROUP
                                        434 Fayetteville Street, Suite 2200
                                        Raleigh, NC 27601
                                        Telephone:  (919) 590-0365

*Attorneys for Defendants NuMale
Medical Center, LLC and NuMale
Corporation*

50

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of filing

to all counsel of record in this matter.

> Ward and Smith, P.A.
> Thomas C. Wolff
> tcw@wardandsmith.com
> Alex C. Dale
> acd@wardandsmith.com
> docketCR@wardandsmith.com
> Post Office Box 7068
> Wilmington, NC 28406-7068
>
> *Attorneys for The N2 Company*

This the 13th day of November, 2024.

> /s/ John T. Kivus
> John T. Kivus
>
> *Attorney for Defendants NuMale*
> *Medical Center, LLC and NuMale*
> *Corporation*

# EXHIBIT 5

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-927-D

| | | |
|---|---|---|
| THE N2 COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NUMALE MEDICAL CENTER, LLC, | ) | |
| and NUMALE CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

On November 6, 2025, the court warned NuMale Medical Center, LLC that it would strike its answer and enter plaintiff's requested default judgment if it failed to respond to the court's order. See [D.E. 36]. NuMale Medical Center, LLC failed to comply with this court's order. Thus, the court STRIKES the answer of defendant NuMale Medical Center, LLC and enters judgment for plaintiff and against defendant NuMale Medical Center, LLC in the amount of $686,593.14 plus interest at the legal rate and $102,988.96 in attorney fees and costs. Cf. [D.E. 33] 3.

SO ORDERED. This 15 day of January, 2026.

JAMES C. DEVER III
United States District Judge

# EXHIBIT 6

# EXHIBIT 6

| City | Type | ID | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | Total Due | Paid CC | 100k Wire 9/20/23 | 50k CC 10/16/23 | 100k CC 10/23/23 | Total Paid | Total Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Albuquerque | NuMale | 222095 | $9,061.33 | $4,929.93 | $10,808.05 | $9,084.18 | $5,896.63 | $6,598.63 | $6,522.05 | $6,042.45 | $982.38 | $59,925.63 | $9,168.18 | $5,000.00 | $10,933.05 | $0.00 | $25,101.23 | $34,824.40 |
| Albuquerque | NuFemme | 222098 | $9,535.56 | $5,000.00 | $11,857.54 | $6,375.00 | $2,221.38 | $2,000.00 | $1,874.99 | $1,875.00 | $272.18 | $41,011.65 | $9,535.56 | $5,000.00 | $11,982.54 | $0.00 | $26,518.10 | $14,493.55 |
| Charlotte | NuMale | 222099 | $18,662.13 | $9,000.00 | $21,311.93 | $19,458.38 | $11,956.66 | $15,956.58 | $15,817.83 | $13,383.79 | $2,031.36 | $127,578.66 | $18,812.13 | $9,000.00 | $21,321.57 | $177.86 | $49,311.56 | $78,267.10 |
| Chicago | NuMale | 222101 | $25,127.69 | $15,000.00 | $33,163.00 | $33,163.00 | $15,311.12 | $16,293.44 | $18,202.35 | $21,659.40 | $3,689.78 | $181,609.78 | $25,294.35 | $10,000.00 | $5,000.00 | $33,413.00 | $73,707.35 | $107,902.43 |
| Denver | NuMale | 222103 | $10,849.69 | $12,000.00 | $17,267.63 | $18,750.00 | $9,832.47 | $10,965.83 | $10,616.51 | $13,392.08 | $1,807.30 | $105,481.51 | $11,039.67 | $12,000.00 | $0.00 | $17,517.63 | $40,557.30 | $64,924.21 |
| Green Bay | NuMale | 222104 | $6,942.21 | $3,958.19 | $8,223.50 | $7,119.30 | $3,819.03 | $4,286.00 | $4,223.50 | $4,800.44 | $773.38 | $44,145.55 | $6,996.47 | $4,000.00 | $0.00 | $8,286.00 | $19,282.47 | $24,863.08 |
| Green Bay | NuFemme | 222106 | $6,368.80 | $4,000.00 | $7,280.54 | $4,937.50 | $1,486.95 | $1,000.00 | $937.50 | $937.50 | $136.66 | $27,085.45 | $6,368.80 | $4,000.00 | $0.00 | $7,343.04 | $17,711.84 | $9,373.61 |
| Las Vegas | NuMale | 222107 | $13,133.75 | $5,679.64 | $16,758.00 | $14,883.00 | $9,465.71 | $11,829.31 | $11,758.00 | $11,683.20 | $1,512.85 | $96,703.46 | $13,229.57 | $5,000.00 | $762.84 | $16,883.00 | $35,875.41 | $60,828.05 |
| Las Vegas | NuFemme | 222109 | $14,077.36 | $7,000.00 | $15,117.03 | $6,874.99 | $2,409.70 | $2,000.00 | $1,875.00 | $1,875.00 | $280.73 | $51,509.81 | $14,077.38 | $7,000.00 | $0.00 | $15,242.04 | $36,319.42 | $15,190.39 |
| Milwaukee | NuMale | 222117 | $11,686.46 | $5,946.35 | $15,218.25 | $13,476.51 | $8,242.01 | $9,277.76 | $10,470.90 | $11,311.18 | $2,109.31 | $87,738.73 | $11,774.44 | $6,000.00 | $0.00 | $1,137.44 | $18,911.88 | $68,826.85 |
| Milwaukee | NuFemme | 222118 | $11,463.81 | $6,000.00 | $12,427.83 | $5,906.25 | $1,972.70 | $1,500.00 | $1,406.25 | $1,406.25 | $208.04 | $42,291.13 | $11,463.81 | $6,000.00 | $0.00 | $0.00 | $17,463.81 | $24,827.32 |
| Omaha | NuMale | 222115 | $8,625.21 | $5,946.51 | $11,579.25 | $10,051.71 | $5,900.74 | $6,756.73 | $6,767.53 | $11,291.38 | $2,140.93 | $69,059.99 | $8,713.21 | $6,000.00 | $0.00 | $0.00 | $14,713.21 | $54,346.78 |
| Omaha | NuFemme | 222116 | $8,319.88 | $6,000.00 | $9,883.83 | $5,906.24 | $1,945.55 | $1,500.00 | $1,406.25 | $1,406.25 | $205.29 | $36,573.29 | $8,319.88 | $6,000.00 | $0.00 | $0.00 | $14,319.88 | $22,253.41 |
| Tampa | NuMale | 222111 | $7,032.55 | $7,435.91 | $17,049.38 | $15,000.00 | $11,458.94 | $12,476.18 | $12,318.05 | $11,077.38 | $1,664.84 | $95,513.23 | $7,168.05 | $7,500.00 | $0.00 | $0.00 | $14,668.05 | $80,845.18 |
| Tampa | NuFemme | 222114 | $7,500.00 | $7,500.00 | $7,343.75 | $7,343.75 | $2,607.77 | $2,500.00 | $2,343.75 | $2,343.75 | $344.01 | $39,826.78 | $7,500.00 | $7,500.00 | $0.00 | $0.00 | $15,000.00 | $24,826.78 |
| | | | $168,386.43 | $105,396.53 | $215,289.51 | $178,329.81 | $94,527.36 | $104,940.46 | $106,540.46 | $114,485.05 | $18,159.04 | $1,106,054.65 | $169,461.50 | $100,000.00 | $50,000.00 | $100,000 | $419,461.51 | $686,593.14 |