# EXHIBIT 1

EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
|---|---|
| NUMALE CORPORATION, | *Jointly administered with:* |
| AFFECTS THIS DEBTOR, ☐ | |
| AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐ | Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc |
| NUMEDICAL SC, ☐ | NuMedical SC<br>Case No. 25-10343-nmc |
| NUMALE COLORADO SC, ☐ | NuMale Colorado SC<br>Case No. 25-10344-nmc |
| NUMALE FLORIDA TB PLLC, ☐ | NuMale Florida TB PLLC<br>Case No. 25-10345-nmc |
| NUMALE NEBRASKA LLC, ☐ | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
| NUMALE NEW MEXICO SC, ☐ | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
| NUMALE ALL DEBTORS, ☒ | |
| Debtors. | **SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE FOR EXAMINATION AND PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004 AND 9016** |

**TO:**

**Quintairos, Prieto, Wood & Boyer, P.A.**
**c/o Eric Boyer, Resident Agent**
**9300 South Dadeland Blvd., 4th Floor**
**Miami, Florida 33156**

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in this bankruptcy case. If you are an organization, you must designate one or more officers directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| **PLACE** | **DATE AND TIME:** |
| --- | --- |
| Berger Singerman<br>1450 Brickell Avenue, Suite 1900<br>Miami, Florida 33131 | October 5, 2026<br>9:00 a.m. (Eastern) |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the documents requested on **Exhibit "A"** hereto.

| **PLACE** | **DATE AND TIME** |
| --- | --- |
| Responsive documents shall be provided in electronic format to tgray@gtg.legal on or before October 1, 2026, at 10:00 a.m. (Eastern). | October 1, 2026<br>10:00 a.m. (Eastern) |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| **PREMISES** | **DATE AND TIME** |
| --- | --- |
| | |

Any subpoenaed organization not a party to this proceeding case shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable to this proceeding by Rule 7030, Fed. R. Bankr. P. See Rules 1018 and 9014, Fed. R. Bankr. P.

| **ISSUING OFFICER SIGNATURE AND TITLE** | **DATE** |
| --- | --- |
| */s/ Talitha Gray Kozlowski* | September 17, 2026 |

**ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER**

Gregory E. Garman, Esq.
Talitha Gray Kozlowski, Esq.
Mary Langsner, Ph.D.
Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
(725) 777-3000

**PROOF OF SERVICE**

| SERVED | DATE | PLACE |
|---|---|---|
| | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |
| **SERVED BY (PRINT NAME)** | **TITLE** |
| | |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
(Date)

______________________________
SIGNATURE OF SERVER

______________________________
ADDRESS OF SERVER

**Federal Rules of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)**
**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees —on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises —or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT A**

**DEFINITIONS**

1. "Beazley" means Beazley Group, Beazley Insurance Company, Inc., any Beazley-managed Lloyd's syndicate, and each of their affiliates, and their respective claims professionals, employees, agents, and outside coverage counsel, including Joe Cianflone and Adam Moser.

2. "Communications" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to personal conversations, phone calls, written correspondence, memoranda, letters, reports, publications, electronic communications, instant messaging, messages via e-mail, direct messaging on social media platforms, text messaging (SMS, MMS, iMessage), WhatsApp, Signal, Telegram, Microsoft Teams, Slack, or other messaging or collaboration platforms, voicemail, audio or video recordings, and notes or summaries of telephone calls, video conferences, or meetings, and is to be interpreted broadly.

3. "Covered Lawyer" means each of the following persons, at any time during the Transfer Period: (a) each shareholder, stockholder, or other equity holder of QPWB; (b) each officer or director of QPWB; (c) each member of any executive, management, operating, or compensation committee of QPWB; (d) each managing partner or office managing partner of any QPWB office; (e) each practice group or other firm-related group leader, chair, or co-chair; and (f) each member of the Sanchez Team.

4. "Date" means the exact day, month, and year, if known, or if not known, Your best approximation thereof. Exact dates shall be given in all answers except where it is explicitly indicated than an approximate date may be given.

5. "Debtors" shall, collectively, mean and refer to NuMale Corporation; Feliciano NuMale Nevada PLLC; NuMedical SC; NuMale Colorado SC; NuMale Florida TB PLLC; NuMale Nebraska LLC; and NuMale New Mexico SC.

6. "Document" is intended to be as broad as it is used in FRCP 26 and 34, and includes, without limitation:

a. the original (or an identical duplicate if the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting

of any kind) of writings of every kind and description that are fixed in any kind of physical media;[1]

b. any printed, typewritten, handwritten, electronic, or otherwise recorded matter of whatever character of communications, letters, correspondence, electronic mail, text messages, memoranda, notes, Post-Its, media releases or articles, photographs, tape or sound recordings, contracts, agreements, telephone records, diaries, desk calendars, appointment calendar, group scheduler calendars, statements, reports, journal, minutes, working paper, financial report, accounting report, work papers, facsimile, facsimile transmission, drafts, logs, chart, graph, index, directory, scheduling data, databases, spreadsheets, presentations, word processed Documents, bulletins, design schedules, supplemental instructions, time cards, drawings, shop drawings, progress payments, progress schedules, estimates, equipment time cards, design calculations, design meeting minutes, coordination meeting minutes, and material similar to any of the foregoing, however denominated and to whomever addressed, computer directory, computer disk, computer tape, or any written, printed, typed, punched, taped, filmed, or graphic matter however produced or reproduced. Documents also include the file, folder tabs, and labels appended to or containing any Documents.

c. For the avoidance of doubt, electronically-stored information with all metadata intact shall be produced whenever available in the format described below.

7. "Family Member" means a person's spouse or domestic partner, former spouse, child, stepchild, parent, sibling, and the spouse of any of the foregoing, and any trust or entity established for the benefit of, or owned or controlled by, any of the foregoing.

8. "Identify" shall mean to state the nature and subject matter of the Document, the Date, if any, appearing thereon, the identity of each Person who prepared and received the Document, and the present location of the Document. In all cases where identification of a Document is requested, in lieu of such specification, You may supply legible copies of such Documents.

9. "NuMale Defendants" means the Defendants in the Sanchez Action, that is the Debtors, NuMale Albuquerque LLC, NuMale Medical Center, LLC, Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, Justin Pulliam, and Mike Rivera, and each of them.

10. "Partner-Titled Lawyer" means each attorney employed by, affiliated with, or holding an ownership interest in QPWB at any time during the Transfer Period whose title at any

[1] Physical media includes, but is not limited to, paper media, photographic media (including pictures, films, slides and microfilm), phonographic media, magnetic media (including, but not limited to hard drives, floppy disks, compact disks, and magnetic tapes of any kind), computer memory, optical media, magneto-optical media, and other physical media on which notations or marking of any kind can be affixed.

time during the Transfer Period included the word "partner" or any derivative or variation of it (including "Partner," "Managing Partner," "Senior Partner," "Equity Partner," "Non-Equity Partner," "Income Partner," "Junior Partner," "Associate Partner," and "Office Managing Partner"), or the word "shareholder," "principal," or "director."

11. "Person" shall mean any natural person, legal entity, or association of legal entities and/or natural persons, including, but not limited to, a corporation, professional corporation, association, partnership, joint venture, firm, or company.

12. "Quintairos Claims" means all claims and causes of action held by or preserved for the Liquidation Trust under the confirmed Joint Plan [ECF No. 434] against QPWB or any of its current or former attorneys, including the claims defined in the Plan as the Quintairos Claims, the Quintairos Non-Debtor Claims, and the Quintairos PF Claims, and all claims asserted in the Trustee's demand correspondence to QPWB.

13. "QPWB Affiliate" means any entity that, at any time since January 1, 2023, controlled, was controlled by, or was under common control with QPWB, or in which QPWB or any Covered Lawyer (individually or together) held an ownership interest and which transacted business with or received any payment from QPWB, including any entity that leases real property, aircraft, vehicles, or equipment to QPWB or provides management, administrative, staffing, or consulting services to QPWB.

14. "Rael Order" means the Opinion and Order entered in November 2024 in *Rael v. Skies Healthcare and Rehabilitation Center, LLC*, Case No. D-202-CV-2019-07947 (N.M. 2d Jud. Dist.), imposing sanctions on QPWB and/or its attorneys.

15. "Relating" or "Relate To" means concerning, referring to, describing, evidencing, or constituting.

16. "Representation Period" means July 1, 2022 through the date on which QPWB's representation of the last NuMale Defendant in the Sanchez Action terminated, unless a request states a different period.

17. "Sanchez Action" means *Michael E. Sanchez v. NuMale Corporation, et al.*, Case No. D-202-CV-2020-06336, in the Second Judicial District Court, Bernalillo County, New Mexico, including all settlement, mediation, post-verdict, and appellate activity relating to it.

18. "Sanchez Team" means each QPWB attorney, paralegal, or other timekeeper who recorded time to or performed work on the Sanchez Action, including Frank Alvarez, Eric Boyer, John Andrew Robertson, Dominique Barrett, Erin Chavez, and John "Jack" Oliver III.

19. "Transfer" means every mode, direct or indirect, of disposing of or parting with money, property, or an interest in property, including payment of salary, bonus, draw, distribution, dividend, return of capital, redemption or repurchase of stock, loan or advance, loan forgiveness, payment of personal expenses or premiums, retirement or deferred compensation contribution, and the grant of any security interest.

20. "Transfer Period" means January 1, 2024 through the date of Your production, unless a request states a different period. An agreement, plan, or policy that was in effect at any time during the Transfer Period is within the Transfer Period regardless of the date on which it was executed or adopted.

21. As used herein, the terms "You" and "Your" shall refer, collectively, to **Quintairos, Prieto, Wood & Boyer, P.A.** or **QPWB** and Your agents, employees, attorneys, accountants, advisors, representatives, or any other person over which You have control or have a superior right to compel to do an act or produce an item and any entity You have or had an ownership or beneficial interest (contingent or otherwise) or an entity You were or are an agent, manager, officer, or director or otherwise maintained or maintain a supervisory, advisory, or consulting role.

22. If any document is withheld under a claim of privilege or work product, a list should be furnished identifying each document for which privilege or work product is claimed, together with sufficient basis to assess the validity of the privilege, including but not limited to the following information for each such document: (a) date, sender, recipient, persons to whom copies were furnished, and job titles of each of these persons; (b) subject matter of the document; (c) number of pages in the document; and (d) the basis or bases upon which the privilege is claimed.

23. If any requested document was but no longer is in your possession, subject to your control, or no longer exists, please state whether it (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others, and state the identity of those persons to whom it has been transferred; or (d) has been otherwise disposed of. In each instance, explain the circumstances surrounding the disposition, state the date or approximate date thereof,

and identify the persons with knowledge of such circumstances.

24. The documents described in the requests below are to be produced as they are kept in the usual course of business. If there are electronic records or e-mails, such documents are to be produced in electronic format.

**INSTRUCTIONS**

1. You shall produce all Documents in the manner in which they are maintained in the usual course of business and/or shall organize and label Documents to correspond with the categories of this Request. A Request for Documents shall be deemed to include a Request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

2. In producing Documents and other materials, You are requested to furnish all Documents or things in Your possession, custody, or control, regardless of whether such Documents or materials are possessed by You directly or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by Your attorneys or their agents, employees, representatives, or investigators.

3. If You cannot answer any portion of the following Requests in full, after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying Your inability to answer the remainder and stating whatever information or knowledge You have concerning the unanswered portion.

4. You are requested to provide all responsive Documents within Your possession, custody, or control. In the event that You provide only a portion of the Documents called for by any particular Request, please state the reason(s) for Your inability to provide the remainder of the Documents requested and the identity of the Document(s).

5. In the event the Documents called for by any particular request are no longer in Your possession, custody or control, please state the reason(s) why those Documents are no longer in Your possession, custody, or control and the identity of the Document(s).

6. In the event that Documents called for by any particular request have been lost or destroyed, please state: (i) the date on which the Document(s) were lost or destroyed; (ii) the manner in which the Document(s) were lost or destroyed; (iii) the identity of the Document(s); (iv)

the information contained within such Document(s) and the nature of the Document(s); and (v) and the identity of any person(s) who has knowledge of the contents of the Document(s) or has received a copy of such Document(s).

7. If You withhold any Document pursuant to a claim of privilege, You shall expressly make the claim of privilege and produce a privilege log in compliance with Fed. R. Civ. P. 26(b)(5), incorporated by Fed. R. Bankr. P. 7026.

8. Documents attached to each other should not be separated.

9. Documents not otherwise responsive to this discovery Request shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for in the discovery request.

10. The fact that a Document has been produced by another party in the Debtors' Chapter 11 Cases does not relieve You of Your obligation to produce Your copy of the same Document, even if the two Documents are identical.

11. The terms "each" and "all" shall be construed as "all and each."

12. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be outside of the scope.

13. The use of the singular form of any word includes the plural and vice versa.

14. The use of the feminine form of any word includes the masculine and vice versa.

15. You are requested and instructed to produce Documents in response to the requests below in accordance with the Federal Rules of Civil Procedure, applicable in the Debtors' bankruptcy cases by way of the Federal Rules of Bankruptcy Procedure.

16. Pursuant to Federal Rule of Civil Procedure 34(b)(1)(C), in response to each of the requests below, electronically stored information is to be produced in a reasonably usable format together with a description of the system from which such information was derived sufficient to permit rendering the records and information intelligible. With the exception of electronically stored information produced in native format, electronically stored information shall be produced as TIFF or PDF images and must be produced with extracted text and metadata reflecting at least the title, author, creation date, modification date, and custodian of such information (and for email

correspondence, also the from, to, cc, bcc, sent date and time, and email subject fields) and also with a load file showing the logical unitization of documents and family member groupings. Excel spreadsheets, multimedia, and other similar files (*e.g.*, .csv files) must be produced in native format.

[*Remainder of page left intentionally blank. See next page.*]

**TOPICS FOR TESTIMONY**

1. The documents produced in response to this subpoena, the search for them, and QPWB's document retention and litigation holds relating to the Sanchez Action and the Quintairos Claims.

2. QPWB's ownership structure, classes of shareholders and partners, governance bodies, and the authority and process for approving distributions during the Transfer Period.

3. The mechanics of each compensation component for QPWB's shareholders, practice group leaders, and partners during the Transfer Period.

4. QPWB Affiliates, and transactions between QPWB and any QPWB Affiliate or shareholder-related entity during the Transfer Period.

5. The mechanics of shareholder and partner compensation and distributions, and how those payments were recorded on QPWB's books during the Transfer Period.

6. Transfers to Covered Lawyers during the Transfer Period, including year-end distributions and any change in distribution practices on or after November 1, 2024.

7. QPWB's financial condition during the Transfer Period, including revenue, assets, liabilities, receivables, work in process, cash, debt, encumbrances, contingent liabilities, and projections.

8. QPWB's professional liability insurance, the tender of the Sanchez-related claims, and each insurer's coverage position.

9. QPWB's intake of the Sanchez Action, its conflict analysis, if any, and its relationship with Beazley.

10. QPWB's settlement evaluations and recommendations in the Sanchez Action and their communication to Beazley and the NuMale Defendants during the Sanchez Action.

11. QPWB's response, analysis, and internal application of the Real Order.

**REQUESTS FOR PRODUCTION**

Please produce:

1. QPWB's articles of incorporation, bylaws, shareholder agreements, stock purchase, redemption, or buy-sell agreements, and all amendments, in effect at any time during the Transfer Period.

2. Documents sufficient to show the formation, ownership, and function of any entity using the name "Quintairos, Prieto, Wood & Boyer" or any variation (including any professional corporation, P.C., or PLLC) or any Affiliate, and each payment between QPWB and any such entity during the Transfer Period.

3. QPWB's federal income tax returns (Forms 1120-S or 1120), with all schedules and Schedules K-1, for tax years 2023, 2024, and 2025, and any IRS correspondence confirming QPWB's election to be taxed as an S corporation.

4. Documents sufficient to show the composition of QPWB's board of directors and its executive, management, operating, and compensation committees for each year from January 1, 2022 through the present, and the individual or body with authority to approve year-end or residual-profit distributions during that period.

5. QPWB's stock ledger, stock transfer records, shareholder register, capitalization tables, and share certificates (or Documents sufficient to show the information they contain) reflecting (a) each holder of any share or other equity interest in QPWB at any time during the Transfer Period; (b) the number and class of shares, or percentage interest, held by each; and (c) each issuance, redemption, repurchase, transfer, or pledge of any share or equity interest, including its date and the consideration paid.

6. Documents sufficient to show, at any time during the Transfer Period, who served as (a) an officer or director of QPWB; (b) a member of any executive, management, operating, or compensation committee of QPWB; (c) a managing partner or office managing partner of any QPWB office; or (d) a practice group leader, chair, or co-chair at QPWB.

7. All agreements between QPWB and each person identified in response to Request No. 6 that were in effect at any time during the Transfer Period and that govern that person's compensation, bonus, distributions, equity interest, capital account, redemption or buy-out,

deferred compensation, or separation, including employment agreements, shareholder agreements, office managing partner agreements, and practice group leader agreements, with all amendments and side letters.

8. For Partner-Titled Lawyers not identified in response to Request No. 6: (a) each employment, compensation, or shareholder agreement QPWB used for such lawyers at any time during the Transfer Period; and (b) any amendment, side letter, or individually negotiated agreement that modifies the compensation, bonus, or distribution terms of the applicable form for any such lawyer.

9. QPWB's written compensation plans, policies, point systems, formulas, and methodologies in effect at any time during the Transfer Period for Covered Lawyers, including Documents describing (a) each component of shareholder and partner compensation (base, draw, guaranteed payment, bonus, year-end allocation, capital return); (b) whether year-end allocations are based on ownership percentage, origination, collections, hours, or a combination, and the weighting of each; (c) whether allocations are contingent on firm profitability; and (d) the calendar for computing, approving, and paying year-end distributions.

10. Documents sufficient to show each Transfer made by QPWB (or any QPWB Affiliate) to or for the benefit of each Partner-Titled Lawyer or Covered Lawyer during the Transfer Period, stating for each Transfer: (a) payee; (b) payor; (c) date; (d) amount; (e) type (for example, salary, draw, bonus, distribution, dividend, return of capital, redemption payment, loan or advance, loan forgiveness, expense payment, benefit, or retirement or deferred compensation contribution); and (f) the paying account (last four digits). Payroll registers and general ledger exports containing the required information produced in native format are acceptable.

11. For each Covered Lawyer, Documents sufficient to show the calculation, allocation, approval, and payment of each bonus, distribution, dividend, or residual-profit or year-end distribution paid during the Transfer Period, including distribution schedules, worksheets, and approvals.

12. The Forms W-2 and 1099 and Schedules K-1 issued by QPWB to each Covered Lawyer for tax years 2024 and 2025, with social security information redacted.

13. Documents sufficient to show all expenses, perquisites, and personal benefits paid by QPWB for or on behalf of each Covered Lawyer or Family Member of a Covered Lawyer during the Transfer Period that were not billed to and reimbursed by a client, including vehicles, aircraft, travel, club or membership dues, housing, personal credit card charges, life or disability insurance premiums, payments to Family Members, and tax payments or gross-ups, together with QPWB's expense reimbursement policies in effect during the Transfer Period.

14. During the Transfer Period, all minutes, resolutions, written consents, and board or committee materials of QPWB's board of directors, shareholders, and executive, management, operating, or compensation committees relating to: (a) distributions, dividends, bonuses, bonus pools, or compensation of Covered Lawyers; (b) the Sanchez Action, the verdict, or the Quintairos Claims; (c) professional liability insurance; or (d) any merger, restructuring, asset sale, formation of a new entity, dissolution, or bankruptcy.

15. QPWB's annual and interim financial statements (audited, reviewed, compiled, or internal), including balance sheets, income statements, statements of cash flows, notes, auditor or accountant reports, and management letters, for fiscal year 2023 through the most recent period available.

16. All loan, credit facility, and line-of-credit agreements to which QPWB was a party during the Transfer Period, with all compliance certificates, borrowing-base certificates, financial covenant calculations, guaranties (including any personal guaranty by a Covered Lawyer), and notices of default, together with Documents sufficient to show each deposit account held by QPWB during the Transfer Period (institution and last four digits of account number).

17. Documents sufficient to show QPWB's month-end cash and cash-equivalent balances, by account, from January 1, 2024 through the present.

18. For the time period January 1, 2022 through the present, each Sanchez Team lawyers' professional liability insurance policy (primary and excess), if separate or in addition to any policy issued to QPWB and in the possession of QPWB.

19. All notices of claim, notices of circumstances, or tenders to any insurer relating to the Sanchez Action, any NuMale Defendant, or the Quintairos Claims, and all non-privileged Communications with any insurer or insurance broker relating to the tender, notice, or coverage of

those matters.

20. All reservation-of-rights letters, coverage position letters, and denials of coverage issued by any insurer relating to the Sanchez Action, any NuMale Defendant, or the Quintairos Claims, and any coverage litigation or coverage analysis relating to them.

21. Documents sufficient to show the date on which each member of QPWB's executive or management committee, each officer and director, and QPWB's general counsel first learned of (a) the jury verdict in the Sanchez Action; (b) any assertion by or on behalf of a NuMale Defendant that QPWB committed malpractice or breached a duty (including Dr. Asandra's November 20, 2024 e-mail and Arash Homampour's December 10, 2024 correspondence); and (c) the Trustee's assertion of the Quintairos Claims.

22. All Communications among or with QPWB's officers, directors, executive or management committee members relating to the jury verdict in the Sanchez Action, any claim of malpractice by or on behalf of any NuMale Defendant, or the Quintairos Claims.

23. All Documents relating to QPWB's intake and acceptance of the Sanchez Action, including new-matter intake forms, conflict-check requests and results, and Communications with Beazley concerning the July 25, 2022 assignment of the matter to QPWB and Beazley's request that QPWB "check conflicts and advise if you can defend all defendants except Stephen Chapman."

24. All engagement letters, retention agreements, representation agreements, or letters of understanding (including drafts and unsigned versions) between QPWB and any NuMale Defendant or Beazley relating to the Sanchez Action, and all Communications relating to whether any such agreement would be or had been prepared.

25. All conflict waivers, informed-consent Documents, joint-representation disclosures or advisements (including drafts and unsigned versions) provided to, requested from, or executed by any NuMale Defendant, and all Communications relating to whether any such waiver or consent was necessary, requested, or obtained.

26. Documents sufficient to show, for the Representation Period, the QPWB attorney(s) with supervisory responsibility for the Sanchez Action, the QPWB office(s) and practice group(s) to which they were assigned, and the managing partner and practice group leader

of each.

27. QPWB's written policies, procedures, manuals, and guidelines in effect at any time from July 1, 2022 through the present relating to: (a) conflict checks and conflicts of interest in joint representations, including insurer-retained representations; (b) engagement letters; (c) communicating settlement demands, offers, and excess exposure to clients; (d) maintenance, retention, and turnover of client files; (e) use of text messaging, ephemeral messaging, or personal devices for client matters; (f) litigation holds; and (g) supervision or risk-management review of high-exposure matters. For any policy revised during that period, produce each version and Documents sufficient to show the effective date of each revision.

28. All litigation management guidelines, billing guidelines, panel-counsel or preferred-counsel agreements, and reporting requirements issued by Beazley that governed QPWB's work on the Sanchez Action.

29. All conflict-of-interest analyses, memoranda, notes, internal or external ethics consultations, and Communications relating to QPWB's joint representation of the NuMale Defendants, including Documents relating to (a) Dr. Asandra's interests as distinct from those of the other NuMale Defendants; (b) the business litigation between Dr. Asandra and NuMale; (c) any DEA or medical-board matter involving Dr. Asandra; (d) Stephen Chapman, PA-C and the alteration or re-creation of medical records; and (e) the statement in QPWB's statement to James Parrett that QPWB had "verified there is no conflict representing NuMale and Dr. Asandra."

30. All Documents relating to the Joint Defense Agreement between Stephen Chapman, PA-C and the NuMale entities, including all drafts, executed versions, and Communications with Beazley relating to its preparation.

31. For the period November 1, 2024 through the present, all Documents relating to the *Rael* Order that refer to the Sanchez Action or any NuMale Defendant, or that relate to any change in QPWB's policies or practices concerning conflicts of interest in joint representations, together with Documents sufficient to show whether and when QPWB disclosed the Rael Order to any NuMale Defendant or to Beazley.

32. All Documents reflecting any evaluation, valuation, verdict-range analysis, or settlement recommendation by QPWB relating to the Sanchez Action, including Documents

reflecting the basis for any recommendation that the matter be settled for $950,000 or any other amount, and all Documents reflecting any communication of such evaluation or recommendation to Beazley or to any NuMale Defendant.

33. All Documents relating to (a) the Stipulation of the Parties regarding vicarious liability proposed on or about November 8, 2024 and filed November 22, 2024; (b) the stipulated special verdict form; and (c) the stipulated final jury instructions in the Sanchez Action, including all Communications with any NuMale Defendant or Beazley regarding whether to enter into each stipulation.

34. All Documents constituting or relating to the “numerous pieces of evidence which completely absolve QPWB from any liability” referenced in the letter dated September 14, 2026 from Anthony P. Sgro, Esq. of Sgro & Roger, on behalf of QPWB, to Gregory E. Garman, Esq.

**CERTIFICATION OF CUSTODIAN OF RECORDS**

STATE OF __________ }
} ss.
COUNTY OF _____________ }

NOW COMES ________________________ , who after first being duly sworn deposes and says:

1. That the deponent is an authorized Custodian of Records of *Quintairos, Prieto, Wood & Boyer, P.A*.
2. That on the ________ day of the month of ____________________, of the year 2026, the deponent received a subpoena calling for the production of records pertinent to the financial affairs of the Debtors (NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC).
3. That the deponent has made or caused to be made a true and exact copy of records responsive to the subpoena, consisting of ____ pages, and that the reproduction of them attached hereto is true and accurate.
4. The original of the attached records was made at or near the time of the act or event, recited therein by or from information transmitted by a person with knowledge, in the course of a regularly conducted activity of the business.

______________________________________
CUSTODIAN OF RECORDS

SUBSCRIBED AND SWORN to before me
this _______ day of ______________, 2026.

______________________________________
NOTARY PUBLIC in and for said
County and State