ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
COLLEEN N. SAVAGE, ESQ
Nevada Bar No. 14947
**SGRO & ROGER**
2901 El Camino Ave., Suite 204
Las Vegas, Nevada 89102
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
tsgro@sgroandroger.com
csavage@sgroandroger.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ■<br><br>Debtor. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>Jointly administered with:<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc |

**MOTION OF QUINTAIROS, PRIETO, WOOD & BOYER, P.A. (I) FOR RELIEF FROM THE CONFIRMATION ORDER AND RELATED ORDERS UNDER FED. R. CIV. P. 60(b), MADE APPLICABLE BY FED. R. BANKR. P. 9024, AS APPLIED TO QPWB; (II) TO REMOVE MICHAEL W. CARMEL AS LIQUIDATION TRUSTEE; (III) TO DISQUALIFY GARMAN TURNER GORDON LLP AS COUNSEL TO THE LIQUIDATION TRUSTEE; AND (IV) FOR RELATED RELIEF; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Quintairos, Prieto, Wood & Boyer, P.A. ("**QPWB**"), by and through undersigned counsel, respectfully submits this motion (the "**Motion**") and states as follows:[1]

## I. INTRODUCTION

QPWB was never a creditor, never filed a claim, never voted, and never appeared in this case. But as a law firm that defended NuMale Corporation in the underlying *Sanchez* lawsuit, it appears that, from the Plan's very first draft, QPWB has been the estates' designated litigation target. Plan § 12 makes this explicit: the Liquidation Trust and the NuMale Settling Defendants "shall jointly prosecute their respective Quintairos Claims and Quintairos Non-Debtor Claims ... under the sole direction and control of the Liquidation Trustee." And the Global Settlement Order (ECF 582) released Beazley and the NuMale insureds, but the Order pointedly recites that "[a]ll claims against Quintairos, Prieto, Wood & Boyer, P.A. are not being released and are expressly preserved."

Now the Liquidation Trustee, Michael W. Carmel (" Mr. Carmel"), and his counsel, Garman Turner Gordon LLP ("**GTG**"), are weaponizing this Court's orders against the very target they built into the Plan. To cite but one example, GTG's May 18, 2026 demand letter targeting QPWB cites the $108.5 million Beazley settlement as "market-tested confirmation" of QPWB's supposed exposure, attributes the entire cost of this bankruptcy to QPWB, and asserts total exposure "***exceeding $2 billion***." The Trustee has served Rule 2004 subpoenas on QPWB and two of its principals, threatened a complaint by September 11, 2026, and threatened to serve individual "fraudulent-transfer notices" to nearly 300 of the firm's nonequity partners, all before QPWB has had any day in court.

In light of the above, QPWB files this Motion seeking deliberately narrow and appropriate relief. **QPWB does not seek to revoke confirmation, disturb the Plan as to any other party, unwind the Beazley settlement, or claw back any distribution.** The 180-day period under 11 U.S.C. § 1144 has expired, and QPWB does not invoke it. QPWB seeks only *as-applied relief*: a declaration that the Confirmation Order, Plan, Global Settlement Order, and 363 Sale Order do not bind or prejudice QPWB, a non-party that received no constitutionally adequate notice before those orders were invoked against it. QPWB is entitled to litigate the findings concerning the Quintairos Claims,

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, as applicable. Nothing herein constitutes an admission by QPWB of any fact, liability, or characterization contained in any pleading, finding, or order entered in these cases.

the allocative and judgment-reduction effects of the releases, and the exculpation and injunction provisions on a clean slate.

QPWB also asks the Court to dismantle the conflicted structure that enabled this abuse. Specifically, QPWB seeks (i) removal of Carmel as Liquidation Trustee, or alternatively appointment of an independent special litigation trustee or examiner for all QPWB-related matters; (ii) disqualification of GTG as counsel to the Trustee; and (iii) related relief, including leave under the *Barton* doctrine to the extent required, a stay or *quashal* of the Rule 2004 subpoenas, and a preservation and non-use order. The grounds are structural and inescapable: Mr. Carmel, GTG lead counsel, Gregory Garman ("Mr. Garman"), and, upon information and belief, likely other professionals in GTG, are necessary fact witnesses to the very post-verdict decisions, settlement negotiations, and representations that form the backbone of the threatened claims against QPWB. Each holds a financial interest, including GTG's contingency percentage and its $4,669,271.70 deferred fee payable from Trust recoveries, that depends entirely on prosecuting QPWB.

This Motion is filed before **October 7, 2026**, the one-year outer limit under Rule 60(b)(1)–(3), and promptly after QPWB learned that the operative orders would be wielded against it as both sword and shield.

## II. SUMMARY OF RELIEF REQUESTED

QPWB requests the following relief, in tiered alternatives:

| TIER / RELIEF | PRINCIPAL BASIS |
|---|---|
| 1. Declaration/order that the Confirmation Order (ECF 727), Findings (ECF 726), Plan, Global Settlement Order and 363 Sale Order (ECF 582) are void and unenforceable as applied to QPWB (findings, recitals, release allocation/judgment-reduction effects, exculpation/injunction as bar to QPWB's defenses, and Plan § 12 structure). | Fed. R. Civ. P. 60(b)(4); Fed. R. Bankr. P. 9024; U.S. Const. amend. V (due process) |
| 2. Alternatively, same as-applied relief based on misrepresentation, nondisclosure, or misconduct of an adverse party. | Rule 60(b)(3) |
| 3. Alternatively, same as-applied relief based on surprise or excusable neglect. | Rule 60(b)(1) |
| 4.Alternatively, same as-applied relief based on extraordinary circumstances. | Rule 60(b)(6) |

| | |
|---|---|
| 5. Removal of Michael W. Carmel as Liquidation Trustee; appointment of neutral successor or, alternatively, independent special litigation trustee/examiner for QPWB matters. | LTA § 2.4; Plan § 9; Conf. Order ¶ 101; LTA § 11.7; 11 U.S.C. §§ 105(a), 1142; § 324 (by analogy) |
| 6. Disqualification of GTG as counsel to the Liquidation Trustee in QPWB matters. | Nev. RPC 1.7, 1.8, 3.7; 11 U.S.C. §§ 327, 328(c); Fed. R. Bankr. P. 2014; inherent authority |
| 7.Reservation of rights to seek disallowance/ disgorgement of GTG compensation. | 11 U.S.C. §§ 328(c), 330; Fed. R. Bankr. P. 2014 |
| 8. Leave, to the extent required, to assert claims, defenses, counterclaims and setoffs against Mr. Carmel and GTG individually. | Barton doctrine; ultra vires exception |
| 9.Quash or stay the Rule 2004 subpoenas; stay commencement of litigation against QPWB pending determination or require filing in this Court; preservation order. | Fed. R. Bankr. P. 2004, 9016; Fed. R. Civ. P. 45; 11 U.S.C. § 105(a); LTA § 11.7 |
| 10. Alternatively, leave to proceed by adversary complaint or treatment of this Motion as such to the extent Rule 7001 applies. | Fed. R. Bankr. P. 7001, 9014 |

## III. JURISDICTION AND VENUE

The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O), and concerns the interpretation, implementation, and enforcement of the Court's own orders. Venue is proper under 28 U.S.C. §§ 1408 and 1409. Pursuant to Local Rule 9014.2, QPWB does not consent to entry of final orders or judgment by the Bankruptcy Court, and expressly reserves all rights under 28 U.S.C. § 157 and Article III of the United States Constitution, including, to the extent applicable, the right to seek to withdraw the reference pursuant to 28 U.S.C. § 157(d).

In additional, the predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 324, 327, 328, 330, and 1142; Fed. R. Bankr. P. 2004, 2014, 9014, 9016, and 9024; Fed. R. Civ. P. 45 and 60(b); and Nevada Rules of Professional Conduct 1.7, 1.8, and 3.7.

## IV. STATEMENT OF FACTS

### A. The Chapter 11 Cases and Appointment of the Trustee.

On January 22, 2025, NuMale Corporation and its affiliated debtors (the "**Debtors**") filed voluntary petitions under chapter 11. The cases are jointly administered under Lead Case No. 25-10341-nmc.

On March 17, 2025, the United States Trustee moved for the appointment of a chapter 11 trustee (ECF 59). Michael W. Carmel was appointed, and the Court approved the appointment by order entered April 7, 2025 (ECF 155). Mr. Carmel filed his acceptance (ECF 157).

**B. GTG's Hybrid Retention and Rule 2014 Disclosures.**

Mr. Carmel applied to retain GTG as general counsel on a hybrid basis under 11 U.S.C. §§ 327 and 328 (ECF 199). In support, Gregory E. Garman submitted a declaration dated April 25, 2025 (ECF 200) (the "**Garman Declaration**") disclosing compensation at hourly rates discounted by 50% plus a contingency fee of 17.5% of recoveries up to $10 million and 8.75% of recoveries above $10 million. The Garman Declaration asserted that GTG was disinterested, stated that "I have known the Trustee on a professional basis for more than twenty years," and disclosed that GTG members have used Mr. Carmel as a mediator in bankruptcy cases, none ongoing. Mr. Carmel filed a declaration supporting GTG's retention (ECF 201).

On information and belief, the Garman Declaration did not adequately disclose the number, identity, or compensation of prior matters in which Mr. Carmel served as mediator for GTG clients; any prior engagements in which GTG served as counsel to Mr. Carmel as a fiduciary; any prior contingency or hybrid-fee arrangements between GTG (or the related firm, "**Bankruptcy Recovery Group**"), and Mr. Carmel as trustee; or any referral relationships.

**C. The Sanchez Verdict and Post-Verdict Decisions.**

Before the petition date, QPWB defended NuMale Corporation in the *Sanchez* lawsuit in New Mexico. On November 25, 2024, the runaway jury returned an incomprehensible verdict of $412,500,149. No judgment was ever entered in the *Sanchez* lawsuit. The Disclosure Statement reports that Sanchez contended the verdict imposed joint and several liability, while the Trustee and Beazley contended that punitive damages were assessed only against NuMale Corporation (ECF 435 at 40).

After Mr. Carmel's appointment, decisions concerning the post-verdict posture of the *Sanchez* lawsuit, including whether to seek remittitur, a new trial, or appellate review, were made by or at the direction of the Trustee and GTG.

The Trustee, on the advice of GTG, determined not to pursue a remittitur motion or appeal of the astronomical judgment.

**D. The Global Settlement and the Preservation of Claims Against QPWB.**

Under the Global Settlement, Beazley paid $108.5 million, and mutual releases were exchanged among Beazley and the NuMale insureds, including Dr. Asandra, Dr. Feliciano, Palubicki, and Pulliam (the "**Released Physician-Managers**"). The Global Settlement Order (ECF 582) provides: "All claims against Quintairos, Prieto, Wood & Boyer, P.A. are not being released and are expressly preserved."

Under New Mexico's pure comparative fault regime, the relative fault of released parties bears directly on the allocation of any liability to remaining defendants. *See Scott v. Rizzo*, 634 P.2d 1234 (N.M. 1981); N.M. Stat. Ann. § 41-3A-1. The Released Physician-Managers and the insured entity had direct exposure in the *Sanchez* matter. The Court's approval of the Global Settlement and the related findings characterize the settlements, including the releases, as fair, reasonable, in good faith, and in the best interests of the estates (ECF 582).

**E. The Disclosure Statement, the Plan, and Confirmation.**

The Disclosure Statement (ECF 435) was conditionally approved (ECF 447), and a confirmation hearing notice was issued (ECF 449). According to GTG's Certificate of Service filed August 7, 2025 (ECF 451), ), those three documents were mailed by U.S. Mail on August 6, 2025 to a "Non-Vote" matrix that lists QPWB at "Quintairos, Prieto, Wood & Boyer, P.A." at: 9300 South Dadeland Blvd., 4th Floor, Miami, FL 33156; 1700 Pacific Ave., Suite 4545, Dallas, TX 75201; and 8800 East Raintree Drive, Suite 100, Scottsdale, Arizona 85260.[2]

The Plan identifies the "Quintairos Claims" and "Quintairos Non-Debtor Claims" and, in § 12, provides that the Liquidation Trust and the NuMale Settling Defendants "shall jointly prosecute their respective Quintairos Claims and Quintairos Non-Debtor Claims ... under the sole direction and control of the Liquidation Trustee." The Plan contains an exculpation provision covering the Trustee, the Liquidation Trustee, Sanchez, Beazley, and their professionals, except for gross negligence and willful misconduct, and vests the Liquidation Trustee with Rule 2004 rights as estate representative under 11 U.S.C. § 1123(b)(3)(B).

[2] QPWB acknowledges the ECF 451 Certificate of Service and addresses it directly in Part VI.A.3 below. The Boyer Declaration discusses whether, when, where, and by whom any such mailing was received, and what, if anything, was done with it. Receipt of a disclosure statement package addressed to a non-creditor is distinct from service of the Confirmation Order, the 363 sale papers, or the Notice of Effective Date, none of which QPWB believes it actually received.

On October 7, 2025, the Court entered its Findings of Fact and Conclusions of Law (ECF 726) and the Confirmation Order (ECF 727). Findings ¶¶ 50–51 approve the exculpation, citing *Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020) and the Liquidation Trustee's limitation of liability, with carve-outs for gross negligence, willful misconduct, intentional breaches of the Global Settlement Agreement or the LTA, and fraud. GTG filed the Notice of Entry (ECF 728). The Effective Date occurred on October 24, 2025 (ECF 762).

**F. The 363 Sale.**

By order entered September 4, 2025 [ECF 582] (the "**363 Sale Order**"), the Court approved the transfer of certain insurance policies. On information and belief, the sale motion was not served on QPWB.

**G. The Liquidation Trust Agreement.**

The LTA, attached to the Confirmation Order, provides that Mr. Carmel is the initial Liquidation Trustee (§ 2.1) and serves until termination or his "resignation, death, or removal ... in accordance with the provisions of this Liquidation Trust Agreement" (§ 2.2). Section 2.3 permits the Liquidation Trustee to engage in other activities only if "not in conflict with ... the interests of the Liquidation Trust Beneficiaries." Section 2.4 governs resignation, death, or removal and provides that "the Liquidation Trustee may be removed by the Bankruptcy Court upon application for good cause shown."

Sections 2.7–2.8 permit the Liquidation Trustee to retain professionals, including estate professionals, and to pay them without Court approval. Section 3.2 imposes limitations requiring Sanchez's approval and a Court order for specified actions. Section 4.1 provides for indemnification. Section 11.7 reserves to this Court exclusive jurisdiction, including over "any action against the Liquidation Trustee or any professional retained by the Liquidation Trustee."

**H. GTG's Final Fee Award and Deferred Stake in Trust Recoveries.**

By order entered December 10, 2025 (ECF 866), the Court allowed GTG final compensation of $9,338,543.40 in fees and $83,475.49 in expenses, with payment of $4,669,271.70 deferred pursuant to the LTA. The deferred amount equals exactly 50% of the allowed fees ($9,338,543.40 × 0.50 = $4,669,271.70). GTG therefore holds a deferred financial stake in Trust recoveries, recoveries that, on the Plan's own design, depend principally on the Quintairos Claims.

**I. The Demand Letter, Term Sheet, and Rule 2004 Subpoenas.**

On May 18, 2026, Mr. Garman sent QPWB a demand letter on behalf of Mr. Carmel as Liquidating Trustee (the "**Demand Letter**"). That letter asserts breach of fiduciary duty, malpractice, fraud, conspiracy, and related claims, and the numbers are extraordinary. According to the Demand Letter, QPWB faces an allowed Sanchez claim of $410,000,000, bankruptcy costs of approximately $13 million, interest of approximately $87 million, and total exposure "***exceeding $2 billion***" including punitive damages. The Demand Letter treats the *entire bankruptcy* as consequential damages attributable to QPWB. It relies on the Beazley settlement as "market-tested confirmation" of QPWB's liability, a settlement in which QPWB had no seat at the table and no opportunity to contest the terms. It asserts that the reduction of the claim occurred through the bankruptcy. And it threatens that "Plaintiffs are prepared to file suit immediately." Notably, despite the Beazley settlement and the pure comparative regime of the applicable law, there is no judgment or settlement credit given to QPWB.

On August 28, 2026, the Liquidation Trustee sent QPWB a term sheet threatening to file a complaint on September 11, 2026. The Trustee also sent so-called "fraudulent-transfer notices" to the firm's equity partners, Eric Boyer and Eddie Prieto individually.

On September 18 and 23, 2026, the Liquidation Trustee served Rule 2004 subpoenas on QPWB, Mr. Boyer, and Mr. Prieto (the "**2004 Subpoenas**"). By letter dated September 23, 2026, QPWB's counsel, Luis Salazar of Cole Schotz P.C., objected to the 2004 Subpoenas.

QPWB first received actual notice of the Confirmation Order upon receipt of the Demand Letter. QPWB was not properly served and cannot confirm that it received service of the Confirmation Order, the Global Settlement Order, or other pleadings.

**V. TIMELINESS**

**This Motion is timely under every applicable standard.** A Rule 60(b) motion "must be made within a reasonable time - and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date proceeding." Fed. R. Civ. P. 60(c)(1). The Confirmation Order and Findings were entered October 7, 2025; the one-year outer limit for Rule 60(b)(1)–(3) is therefore **October 7, 2026**. This Motion is filed on October 7, 2026, before that deadline. Rule 60(c) provides no deadline; a motion under Rule 60(b)(6) seeking relief for "any other reason that justifies relief" may be made at any time.

The Motion is also filed "within a reasonable time." "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir. 1981). QPWB did not receive actual service of the operative orders and first learned of their contents after receipt of the Trustee's Demand Letter. It retained undersigned bankruptcy counsel on September 22, 2026, evaluated the record, objected to the 2004 Subpoenas on September 23, 2026, and filed this Motion promptly. No party has changed position in reliance on QPWB's delay; the as-applied relief sought does not disturb any distribution, the Beazley settlement, or any third party's rights.

A motion under Rule 60(b)(4) is not subject to the one-year limit; a void judgment may be challenged at any time, subject at most to a reasonableness inquiry. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

Nonetheless, QPWB does not seek revocation under 11 U.S.C. § 1144, the 180-day period for which expired on or about April 5, 2026 (180 days after October 7, 2025). Rule 9024 provides that a complaint to revoke a confirmation order may be filed only within the time allowed by Section 1144. The relief sought here, a determination of the preclusive and operative effect of orders as to a non-party that received no adequate notice, is not revocation, does not vacate confirmation, and leaves the Plan fully effective as to every party bound by it. *Cf. Espinosa*, 559 U.S. at 269–72.

## VI. ARGUMENT

### A. The Orders Are Void Under Rule 60(b)(4) as Applied to QPWB Because QPWB Did Not Receive Constitutionally Adequate Notice.

#### 1. The governing standard.

A judgment is void under Rule 60(b)(4) where it rests on a jurisdictional error or "on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must "reasonably ... convey the required information."

**2. QPWB was a non-party whose interests the Plan targeted.**

QPWB held no claim and no interest in the estates. It was not a creditor, equity holder, or party in interest entitled to vote. Its only connection to these cases was as the object of the estates' contemplated litigation. A non-creditor has no reason to parse a disclosure statement package for findings that will later be asserted against it unless the notice itself says so. Yet the Plan and Confirmation Order went well beyond preserving claims against QPWB: they approved findings characterizing the releases of parties with direct comparative-fault exposure as fair and in good faith, approved exculpation and limitation-of-liability provisions protecting QPWB's prospective adversaries, and created in § 12 a joint-prosecution and control structure aimed specifically at QPWB. The Liquidation Trustee now relies on those determinations as evidence against QPWB.

**QPWB has been directly prejudiced by the Global Settlement's bar orders.** The Global Settlement Order released Beazley and the NuMale Settling Defendants, parties with direct comparative-fault exposure for the post-verdict decisions and settlement strategy, while expressly preserving all claims against QPWB. But the Order did not establish any judgment-credit mechanism to protect QPWB from bearing more than its proportionate share of fault. Under settled law, a bar order extinguishing a non-settling defendant's claims for indemnity and contribution is permissible only if it is structured fairly, which is often accomplished by providing a corresponding judgment credit. See, e.g., *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 302–03 (2d Cir. 2003). The *Gerber* court held that a "capped proportionate share" formula, which credits the non-settling defendant with the greater of (i) the settlement amount paid for common damages or (ii) the settling defendants' proportionate share of fault as proven at trial, satisfies the "one satisfaction" rule and protects non-settling defendants' rights. *Id.* at 303–04.

Here, by contrast, the Global Settlement Order contains no such protection. It released Beazley for $108.5 million, released the NuMale Settling Defendants, including the physician-managers whose conduct is central to any causation or damages analysis, and either de facto or de jure - extinguished QPWB's substantive rights, defenses, claims, and safeguards under state law, including, but not limited to, severely impacting fault allocation, mitigation, and evidentiary protections. Yet no provision of the Order, the Plan, or the Confirmation Order establishes a judgment-credit formula, identifies the methodology for apportioning fault, or otherwise ensures that QPWB will not be held liable for damages attributable to the settling parties' proportionate share of fault. The Liquidation Trustee now seeks to hold QPWB responsible for the *entire* bankruptcy, ***over $2 billion*** in claimed exposure, while the parties who made the post-verdict strategic decisions, negotiated the inadequate

policy limits, contributed to the verdict by their trial behavior, contributed to the verdict due to their conduct which lead to the lawsuit, and controlled the settlement allocation have been released and immunized.

That structure violates fundamental fairness. A bar order that extinguishes a non-settling defendant's contribution and indemnity rights without a corresponding credit mechanism is inequitable on its face. *See Gerber*, 329 F.3d at 306–07 (bar order must only extinguish claims where the injury to the non-settling party is measured by its liability to the plaintiff; truly independent claims fall outside the proper scope). The prejudice to QPWB is concrete and immediate: QPWB cannot seek contribution from the settling parties, cannot assert comparative-fault defenses that reduce the settling parties' exposure, and faces the prospect of bearing the entire burden of damages that multiple parties allegedly caused. This is precisely the inequity that *Gerber* held impermissible, and it is a direct consequence of orders entered without QPWB's participation or any opportunity to object to the settlement structure.

**3. The August 6, 2025 Disclosure Statement mailing does not cure the defect.**

QPWB addresses the ECF 451 Certificate of Service directly. That certificate reflects mailing of the Disclosure Statement, the conditional approval order, and the confirmation hearing notice to a Non-Vote matrix listing QPWB addresses.

Even assuming receipt, that mailing was not constitutionally adequate notice that confirmation would adjudicate matters adverse to QPWB, for three reasons:

(a) A generic confirmation hearing notice sent to a non-creditor on a "Non-Vote" list conveys that the recipient has no stake to vote; it does not convey that findings will be entered affecting the recipient's defenses, comparative-fault allocation, or setoff rights. Notice must be tailored to the rights at stake.

(b) The Global Settlement Order and the Plan expressly told the world that claims against QPWB were "not being released and are expressly preserved." A reasonable non-party reading that language would understand it was being left *out* of the settlement, not that the settlement's findings would be used to fix its exposure.

(c) The operative orders, the Confirmation Order, the 363 Sale Order, and the Notice of Effective Date, were never properly served on QPWB. Nor was QPWB properly served with the sale motion or procedures. Notice of a hearing on a proposed plan is not notice of the findings the Court ultimately made, particularly where, as here, the findings and the final form of order post-date the mailing.

**4. The appropriate remedy is as-applied relief.**

Because the defect is a failure of notice to QPWB alone, the remedy is limited to QPWB. The Court should declare that the Orders are void and unenforceable as against QPWB, and do not bind or prejudice QPWB, with respect to:

(a) any finding, recital, or determination concerning QPWB, the Quintairos Claims, or the Quintairos Non-Debtor Claims, including any finding that the settlements and releases of Beazley and the Released Physician-Managers were fair, reasonable, in good faith, or in the best interests of the estates;

(b) any allocation, setoff, judgment-reduction, contribution, or comparative-fault effect of the releases, all of which QPWB may litigate de novo;

(c) the exculpation, injunction, and limitation-of-liability provisions, insofar as they would bar or limit QPWB's defenses, counterclaims, setoff or recoupment rights, or claims against the Liquidation Trustee, GTG, or other exculpated parties; and

(d) the joint-prosecution, assignment, and control structure of Plan § 12, insofar as it purports to determine the validity, assignability, or combination of any claim against QPWB or to prejudice any defense QPWB may raise (including anti-assignment of malpractice claims, in pari delicto, standing, and duplication).

**B. Alternatively, Relief Is Warranted Under Rule 60(b)(3) for Misrepresentation, Nondisclosure, or Misconduct.**

Rule 60(b)(3) permits relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The movant must show by clear and convincing evidence that the verdict or order was obtained through such conduct and that the conduct prevented the movant from fully and fairly presenting its case. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000); Rule 60(b)(3) "misconduct" "does not demand proof of nefarious intent or purpose as a prerequisite to redress" and "can cover even accidental omissions." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878–79 (9th Cir. 1990) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988)). Consistent with Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, QPWB states the circumstances with particularity as presently known, and otherwise on information and belief pending discovery:

(a) **Nondisclosure of relationships.** On information and belief, the Garman Declaration (ECF 200) did not adequately disclose the scope of the more-than-twenty-year professional relationship between Mr. Garman and Mr. Carmel, including the number of mediations and fiduciary engagements and any prior hybrid or contingency arrangements, including with the related law firm of "Bankruptcy Recovery Services." Complete disclosure is mandatory under Rule 2014(a).

(b) **Settlement characterization while structuring recoveries toward a contingency target.** The Trustee and GTG presented the Global Settlement, including releases of the Released Physician-Managers, as fair and in good faith. On information and belief, they did so while structuring recovery toward the Quintairos Claims, on which GTG's contingency percentage and deferred fee depend, without disclosing to the Court that the releases could be used to shift comparative fault to QPWB, or that the Trustee would later characterize the settlement as "market-tested confirmation" of QPWB's liability.

(c) **Post-verdict decisions.** On information and belief, the Trustee and GTG did not disclose to the Court, in seeking good-faith findings, that the decision not to pursue remittitur or appeal of an unentered verdict would be relied upon to inflate the damages later asserted against QPWB.

(d) **Selective service.** The operative orders were not properly served on the one non-party whose rights the Plan targeted.

Each of these circumstances prevented QPWB from appearing and presenting its position before the Court entered findings now asserted against it.

### C. Alternatively, Relief Is Warranted Under Rule 60(b)(1) for Surprise or Excusable Neglect.

Rule 60(b)(1) permits relief for "mistake, inadvertence, surprise, or excusable neglect." Excusable neglect is an equitable inquiry considering the danger of prejudice, the length of delay and its impact on proceedings, the reason for the delay, and good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000). Every factor cuts decisively in QPWB's favor: (i) the relief sought is narrow and targeted, it prejudices no distribution, unwinds no settlement, and disturbs no third party's rights; (ii) QPWB acted with dispatch once it learned the operative orders would be used against it; (iii) any delay is entirely attributable to the absence of service and to the Orders' own express assurance that QPWB claims were merely "preserved", language that gave QPWB no reason to suspect the Orders would later be deployed as a weapon; and (iv) QPWB acts in manifest good faith, seeking only a fair opportunity to defend itself. QPWB was also genuinely surprised that orders, which expressly preserved claims against it would be invoked to establish its liability.

**D. Alternatively, Relief Is Warranted Under Rule 60(b)(6).**

Rule 60(b)(6) is available where "extraordinary circumstances" prevented a party from taking timely action. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). Extraordinary circumstances exist here: a non-party law firm faces a claimed ***$2 billion exposure*** predicated in part on findings entered without its participation, prosecuted by a fiduciary and counsel who are themselves fact witnesses with a financial stake in the outcome, using the Court's orders both as evidence and as a shield against QPWB's counterclaims. The relief requested is limited, does not disturb confirmation, and serves the integrity of this Court's processes.

**E. Mr. Carmel Should Be Removed as Liquidation Trustee or, Alternatively, Displaced as to QPWB Matters.**

**1. Standard.**

The Liquidation Trustee is a post-confirmation fiduciary under the LTA; he is not a § 1104 trustee. The Court may remove him under LTA § 2.4 for good cause, and under its retained jurisdiction (Plan § 9; Confirmation Order ¶ 101; LTA § 11.7) and its authority under 11 U.S.C. §§ 105(a) and 1142 to implement and enforce the Plan. Section 324(a), which permits removal of a trustee "for cause," is not directly applicable but provides a useful analogy. Courts applying § 324 have found cause in actual or potential conflicts of interest, lack of disinterestedness, and breaches of fiduciary duty. *See In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008). The LTA itself (§ 2.3) prohibits activities "in conflict with ... the interests of the Liquidation Trust Beneficiaries."

Although QPWB is not a creditor, equity holder, or traditional "party in interest" under 11 U.S.C. § 1109(b), courts have long recognized that non-parties who are "greatly affected" by a judgment or order have standing to seek relief when that judgment is specifically designed to be used against them. *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 186–87 (2d Cir. 2006); *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 887–88 (9th Cir. 2012). In *Grace*, the Second Circuit held that non-party movants had standing to seek vacatur of a judgment under Rule 60(b) because they were "strongly affected" by a judgment specifically designed to be used against them in subsequent litigation. 443 F.3d at 186–87. The Ninth Circuit adopted the same principle in *Thorpe Insulation*, holding that non-settling insurers who faced increased economic exposure under a bankruptcy plan were entitled to party-in-interest standing and "a right to be heard fully and fairly before the plan was finalized." 677 F.3d at 888. Here, QPWB is the paradigm case: the Plan and LTA were expressly designed to target QPWB, the Confirmation Order's findings are now being wielded as evidentiary swords against QPWB, and the Liquidation Trustee's entire

prosecution structure, including the joint-prosecution mechanism, the exculpation provisions, and GTG's fee arrangements, centers on the Quintairos Claims. A non-party whose rights and defenses are so directly and specifically targeted by a fiduciary and the trust documents that empower him has standing to seek that fiduciary's removal for cause.

**2. Cause exists.**

The grounds for Mr. Carmel's removal are not based on any single infirmity but on a confluence of structural conflicts, inadequate disclosures, and litigation conduct that, taken together, make clear that he cannot serve as a neutral fiduciary in matters involving QPWB. Each of the following independently establishes cause. But collectively, they compel removal or, at minimum, displacement as to all QPWB-related matters.

**Mr. Carmel and Mr. Garman are necessary fact witnesses on the very issues at the heart of the claims they seek to prosecute.** Both are anticipated to testify regarding (i) the post-verdict decisions not to seek remittitur, new trial, or appeal; (ii) the negotiation and allocation of the Beazley settlement and the releases; (iii) the representations made to obtain good-faith findings; and (iv) the causation and damages theory that treats bankruptcy costs and the Sanchez claim as QPWB's responsibility. A fiduciary whose own decisions are central to the defendant's causation and comparative-fault defenses cannot neutrally decide whether and how to prosecute those claims. The conflict is structural and inescapable: every dollar recovered from QPWB depends on proving that QPWB, not Mr. Carmel's post-verdict strategy, caused the estates' losses.

**Mr. Carmel and GTG also hold disqualifying financial interests that are directly tied to any recovery from QPWB.** GTG's contingency percentage and $4,669,271.70 deferred fee are payable solely from Trust recoveries, recoveries that, under the Plan's own design, depend principally on the Quintairos Claims. Meanwhile, the Liquidation Trustee's compensation under 11 U.S.C. § 326 is tied to distributions. These arrangements create powerful incentives to pursue the largest possible contingency target, rather than to maximize net recovery for beneficiaries after accounting for litigation cost and risk. The result is a prosecution structure where the fiduciary's personal financial interest is aligned not with prudent estate administration but with maximizing claims against QPWB at any cost.

**The Rule 2014 disclosures were materially incomplete.** On information and belief, the disclosures filed in connection with GTG's retention failed to disclose the full extent of the twenty-year relationship between Mr. Carmel and Mr. Garman, the nature and outcome of their prior matters

together, and the financial arrangements that would tie GTG's compensation to QPWB-specific recoveries. These omissions deprived the Court and parties in interest of material information bearing on GTG's disinterestedness and the propriety of the fee structure.

**The Liquidation Trustee has misused Rule 2004 discovery to circumvent the procedural protections of contested litigation.** Having announced in the Demand Letter that "Plaintiffs are prepared to file suit immediately" and having threatened to file a complaint by September 11, 2026, the Liquidation Trustee nevertheless served Rule 2004 subpoenas on QPWB and two of its principals. Rule 2004 is an investigative tool for pre-litigation fact-gathering, not a mechanism to conduct adversarial discovery against a known litigation target while bypassing the safeguards of Fed. R. Bankr. P. 7026–7037. The timing and context of the subpoenas demonstrate that the Trustee is using the Court's processes not for legitimate estate administration but to extract discovery from a party it has already committed to sue.

**The administration of this Trust has been driven by litigation leverage rather than fiduciary neutrality.** The service of individual fraudulent-transfer notices on QPWB's equity partners before any claim has been adjudicated reflects a strategy designed to pressure QPWB into settlement through reputational and financial coercion. A fiduciary entrusted with prosecuting estate claims owes a duty to pursue those claims in good faith and with due regard for proportionality and fairness. The conduct here falls far short of that standard.

**3. Requested remedy.**

QPWB requests that the Court remove Mr. Carmel and appoint a neutral successor Liquidation Trustee selected in accordance with LTA § 2.4. Alternatively, QPWB requests appointment of an independent special litigation trustee or examiner, with no prior relationship to Mr. Carmel or GTG, with exclusive authority over all claims involving QPWB, its shareholders, and its principals.

**F. GTG Should Be Disqualified From Representing the Liquidation Trustee in Matters Involving QPWB.**

This Court applies the Nevada Rules of Professional Conduct. U.S. Dist. Ct. Rules D. Nev., LR IA 11-7(a); *see In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (federal courts "apply state law in determining matters of disqualification"). Disqualification of counsel lies within the Court's inherent authority. *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996); *see Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) (ordering disqualification of counsel to a bankruptcy trustee). Under Nev. RPC 3.7(a), a lawyer shall not act as advocate at a trial in which the lawyer is

likely to be a necessary witness. Mr. Garman is a necessary witness on the matters described in Part VI.E.2(a). Under Nev. RPC 1.7(a)(2), a concurrent conflict exists where there is a significant risk that the representation will be materially limited by the lawyer's personal interest; GTG's contingency and deferred-fee interest in QPWB recoveries, and its exposure to QPWB's counterclaims and defenses premised on GTG's own post-verdict and settlement advice, present precisely that risk. Nev. RPC 1.8(i) addresses acquisition of a proprietary interest in the subject matter of litigation. These conflicts also bear on continuing disinterestedness under 11 U.S.C. § 327(a) and § 101(14), to the extent the LTA contemplates continued retention of estate professionals (LTA §§ 2.7–2.8).

**GTG also fails the disinterestedness requirement of 11 U.S.C. § 327(a).** Section 327(a) provides that a trustee may employ only professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." *See In re Park-Helena Corp.*, 63 F.3d 877, 880–82 (9th Cir. 1995). Section 101(14) defines "disinterested person" to exclude any person with a materially adverse interest to the estate. GTG's $4,669,271.70 deferred contingency fee and the undisclosed depth of the Carmel-Garman relationship collectively call into question whether GTG satisfies the disinterestedness requirement. A professional whose financial incentives diverge from the estate's interest and whose principal has undisclosed personal relationships with the fiduciary it represents is not "disinterested" within the meaning of § 327(a).

**The Liquidation Trustee's authority is further limited by § 1123(b)(3)(B) of the Bankruptcy Code.** Under that provision, a post-confirmation trustee may assert only claims "belonging to the debtor or to the estate", not claims assigned by individual creditors or claims that benefit specific creditors rather than the estate as a whole. *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428–29 (1972) (holding that bankruptcy trustees can assert claims only for the estate and cannot pursue claims on behalf of creditors); *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 191 (Del. Ch. 2006) (holding post-confirmation trustee could not bring claims creditors assigned to trust, even where plan documents expressly purported to grant that authority). As the Supreme Court explained in *Caplin*, Congress established an "elaborate system of controls" for reorganization proceedings, and "nowhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of" creditors. 406 U.S. at 428. This limitation does not disappear at plan confirmation. *See* Andrew J. Morris, *Clarifying the Authority of Litigation Trusts: Why Post-Confirmation Trustees Cannot Assert Creditors' Claims Against Third Parties*, 20 ABI L. Rev. 589, 600–02 (2012) (explaining that § 1123(b)(3)(B) continues to limit post-confirmation trustees to estate claims).

The rationale for this limitation applies with full force here. A single trustee who acts for both the estate and individual creditors "inevitably makes compromises between the two sides' interests. As in any competition, a single player cannot advance the best interests of both sides." Morris, 20 ABI L. Rev. at 607. The conflicts are even more acute when, as here, the trustee has undisclosed personal relationships with the professionals whose settlements are funding the trust while simultaneously pursuing claims against the parties those settlements immunized. And the arrangement is unfair to QPWB, which is being forced to "defend itself, not against a private party, but against a bankruptcy-related trustee", an arrangement that is "far more difficult than litigating against the creditor whose interest really is at stake." *Id.* at 594. This is precisely the unfairness that the *Caplin* rule was designed to prevent.

**GTG has failed to satisfy its continuing disclosure obligations under Bankruptcy Rule 2014.** Rule 2014 requires professionals seeking employment to disclose all "connections" with specified parties, and this is a continuing obligation. GTG has failed to supplement its disclosures to address: (i) the evolving conflicts created by GTG's litigation strategy, including the decision to pursue claims exclusively against QPWB after releasing Beazley; (ii) the full scope of the personal, professional, and financial relationship between Mr. Carmel and Mr. Garman, disclosed only as a "long relationship"; (iii) the impact of the growing contingency fee on GTG's incentives and independence; and (iv) the existence of any settlement term sheet at the time of GTG's retention.

**This Court has already articulated the disclosure standards and remedial framework that govern here.** In *In re MP Reorganization*, Case No. 22-14422-nmc, ECF 1025 (Bankr. D. Nev. May 20, 2024) (Cox, J.), the Court addressed strikingly similar issues involving the same lawyer, Mr. Garman, and established principles directly applicable to this Motion. The parallels are instructive:

*Undisclosed relationship depth.* In *MP Reorganization*, the court found that Mr. Rubin's personal and financial relationship with Mr. Garman was inadequately disclosed, including a close personal friendship, investment in Mr. Garman's business ventures, and $5–10 million in fees from shared cases. Here, Mr. Carmel's relationship with Mr. Garman is disclosed only as a "long relationship," with no detail as to its personal, financial, or professional dimensions.

*Litigation trust structures benefiting professionals.* In *MP Reorganization*, the Court criticized trust structures that primarily benefited professionals, noting $2.9 million in administrative expenses. Here, GTG's aggregate fees exceed $9.3 million, with a deferred contingency of $4,669,271.70

payable from Trust recoveries, a structure that benefits professionals at beneficiaries' expense and that dwarfs the fee magnitude that troubled the Court in *MP Reorganization*.

*Failure to disclose material connections.* In *MP Reorganization*, the Court found that undisclosed connections were "first disclosed by Drexler, not Rubin, not Debtor, not Empery," and that the parties "sought to shut Drexler up and employed diversion tactics." Here, the conflicts have been surfaced by QPWB's own investigation and the Sgro letter, not by GTG's Rule 2014 supplements.

The Court's own words in *MP Reorganization* supply the governing standard: "Disclosure is the cornerstone of business governance and bankruptcy law . . . 'when in doubt, disclose.'" ECF 1025 at 38. The Court warned that "lack of disclosure may result in denial of and/or disgorgement of attorney fees and expenses; denial of confirmation; appointment of an independent trustee." *Id.* Those remedies are precisely what QPWB seeks here. The structural parallels between these cases, the same lawyer, the same court, the same pattern of inadequate disclosure, and the same fee structures that prioritize professional compensation over estate recoveries, compel the same result.

Because GTG's fees were allowed by final order (ECF 866), QPWB does not seek immediate disgorgement. QPWB requests that the Court expressly reserve the rights of parties in interest to seek denial of compensation or disgorgement under 11 U.S.C. §§ 328(c) and 330 should the Rule 2014 nondisclosures be established, including as to the $4,669,271.70 deferred payment. *See generally In re Park-Helena Corp.*, 63 F.3d 877, 880–82 (9th Cir. 1995).

### G. A Contested-Matter Motion Is the Proper Procedural Vehicle.

Rule 9024 makes Rule 60(b) applicable in bankruptcy cases, and a Rule 60(b) motion is ordinarily brought by motion in the case in which the order was entered. Removal of a fiduciary under the Court's retained jurisdiction, disqualification of counsel, and relief concerning Rule 2004 subpoenas are likewise classic contested matters governed by Fed. R. Bankr. P. 9014. None of the principal relief sought is to recover money or property, to obtain an injunction as a freestanding cause of action, or to revoke confirmation. Fed. R. Bankr. P. 7001.

To the extent the Court concludes that any portion of the requested relief, including any injunctive relief (such as the requested stay of litigation), other equitable relief, or declaratory relief related to such matters, falls within Rule 7001, QPWB respectfully requests that the Court (a) grant leave to file an adversary complaint seeking such relief, with the balance of the Motion proceeding as a contested matter; or (b) treat this Motion as an adversary complaint for that limited purpose, with

the Liquidation Trustee afforded the procedural protections of Part VII. Courts may disregard procedural irregularities where the opposing party has full notice and opportunity to be heard and suffers no prejudice. *See In re Munoz*, 287 B.R. 546, 551 (9th Cir. BAP 2002).[3]

**H. Leave Under the Barton Doctrine, to the Extent Required.**

Under the *Barton* doctrine, a party must obtain leave of the appointing court before suing a court-appointed fiduciary, or its counsel, for acts done in an official capacity. *Barton v. Barbour*, 104 U.S. 126 (1881); *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005); *970 (9th Cir. 2005); In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009)), ("[t]he doctrine of judicial immunity also applies to court approved attorneys for the trustee"). LTA § 11.7 independently vests exclusive jurisdiction here.

QPWB requests leave, to the extent required, to assert claims, defenses, counterclaims, setoffs, and recoupment against Mr. Carmel and GTG individually, including for breach of fiduciary duty owed to third parties, abuse of process, and contribution/indemnity, in this Court or such other forum as the Court may permit. QPWB has made a prima facie showing that its claims are not without foundation. Alternatively, leave is not required to the extent the conduct was ultra vires or undertaken for personal benefit rather than in an official capacity. *See* 28 U.S.C. § 959(a); *In re Crown Vantage*, 421 F.3d at 971–72. Defenses and setoffs asserted in any action brought by the Liquidation Trustee do not require leave.

**I. Related Relief: The 2004 Subpoenas, a Litigation Stay, and Preservation.**

**2004 Subpoenas.** Once an adversary proceeding or contested matter is pending, or, as here, litigation is imminent and announced, discovery must proceed under the Part VII rules, not Rule 2004. *See In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *In re Enron Corp.*, 281 B.R. 836, 840–41 (Bankr. S.D.N.Y. 2002). The Court should quash the 2004 Subpoenas served September 18 and 23, 2026, or stay compliance pending resolution of this Motion. Fed. R. Bankr. P. 9016; Fed. R. Civ. P. 45(d)(3).

**Stay of litigation.** Pursuant to 11 U.S.C. § 105(a) and its retained jurisdiction, the Court should direct that the Liquidation Trustee not commence litigation against QPWB, Mr. Boyer, or Mr. Prieto pending determination of this Motion or, alternatively, that any such action be filed in this Court consistent with LTA § 11.7.

[3] QPWB also requests, pursuant to Fed. R. Bankr. P. 9014(c), that the Court direct application of such Part VII rules as it deems appropriate, including Rules 7026–7037 for discovery, which would moot the need for any Rule 2004 examination while this matter is pending.

**Preservation.** The Court should order the Liquidation Trustee, GTG, and Paul Weiss to preserve all documents and communications concerning the *Sanchez* post-verdict decisions, the Global Settlement negotiations and allocation, the Plan § 12 structure, and GTG's retention and fee arrangements.

## VII. RESERVATION OF RIGHTS

QPWB expressly reserves all rights, claims, defenses, counterclaims, setoffs, and recoupment, including without limitation: all defenses to any Quintairos Claim or Quintairos Non-Debtor Claim (including causation, comparative fault, anti-assignment, in pari delicto, standing, statute of limitations and repose, and the absence of any entered judgment); the right to contest personal jurisdiction, venue, and the Court's authority to enter final judgment on any affirmative claim; the right to a jury trial; the right to seek withdrawal of the reference; and the right to supplement this Motion upon discovery. Nothing herein is a consent to jurisdiction for any claim against QPWB or an admission of any fact. QPWB's appearance is limited to the relief requested herein.

## VIII. NOTICE

Notice of this Motion has been provided to: (a) the Office of the United States Trustee; (b) the Liquidation Trustee and GTG; (c) Paul Weiss; (d) counsel to Sanchez; (e) counsel to Beazley; (f) counsel to the NuMale Settling Defendants; and (g) all parties requesting notice under Fed. R. Bankr. P. 2002. QPWB submits that no further notice is required.

## IX. CONCLUSION

WHEREFORE, QPWB respectfully requests that the Court enter an order substantially in the form attached as **Exhibit A** granting the relief requested herein and such other relief as is just.

Dated this 7th day of October, 2026.

Respectfully submitted,

**SGRO & ROGER**

*/s/ Anthony P. Sgro*
Anthony P. Sgro, Esq.
Nevada Bar No. 3811
Colleen N. Savage, Esq
Nevada Bar No. 14947
2901 El Camino Ave., Suite 204
Las Vegas, Nevada 89102
tsgro@sgroandroger.com
csavage@sgroandroger.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October, 2026, I caused the foregoing Motion of Quintairos, Prieto, Wood & Boyer, P.A. (i) for relief from the Confirmation Order and related orders under Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024, as applied to QPWB; (ii) to remove Michael W. Carmel as liquidation trustee; (iii) to disqualify Garman Turner Gordon LLP as counsel to the liquidation trustee; and (iv) for related relief; and memorandum of points and authorities to be served as follows:

- ■ By CM/ECF electronic service on all registered users in these cases;
- ■ By U.S. Mail, first-class postage prepaid, to: [Office of the U.S. Trustee; Michael W. Carmel, Liquidation Trustee; Garman Turner Gordon LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP; counsel to Sanchez; counsel to Beazley; counsel to NuMale Settling Defendants; ADDRESSES]
- ☐ By email to: [LIST]
- ☐ Other: [____]

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Caitlin Ferguson*
Employee of Sgro and Roger