To complete form, check "Highlight fields" above or position cursor in fields to insert text.

NVB 4001 (Rev. 09/20)

# * * § 362 INFORMATION SHEET * *

NuMale Corporation, et al. (jointly administered)
DEBTOR

BK- 25-10341-nmc (Le

MOTION #:

Quintairos, Prieto, Wood & Boyer, P.A. ("QPWE
MOVANT

CHAPTER: 11

**_Certification of Attempt to Resolve the Matter Without Court Action:_**

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* 10/5/26 *Signature:* /s/ Colleen Savage

*Attorney for Movant*

Note for parties not represented by an attorney: Information about motions for relief from the automatic stay is available at the U.S. Bankruptcy Court's website: https://www.nvb.uscourts.gov/filing/filing-pro-se/legal-services/.

PROPERTY INVOLVED IN THIS MOTION: QPWB's right to commence and prosecute a d

NOTICE SERVED ON: Debtor(s) ☐ ; Debtor's counsel ☐ ; Trustee ☑ ;

DATE OF SERVICE: 10/8/26

**MOVING PARTY'S CONTENTIONS:**

The EXTENT and PRIORITY of LIENS:

1st N/A
2nd
3rd
4th
Other:
Total Encumbrances:

APPRAISAL of OPINION as to VALUE:

N/A

**DEBTOR'S CONTENTIONS:**

The EXTENT and PRIORITY of LIENS:

1st N/A
2nd
3rd
4th
Other:
Total Encumbrances:

APPRAISAL of OPINION as to VALUE:

N/A

**TERMS of MOVANT'S CONTRACT with the DEBTOR(S)::**

Amount of Note: N/A
Interest Rate:
Duration:
Payment per Month:
Date of Default:
Amount in Arrears:
Date of Notice of Default:
SPECIAL CIRCUMSTANCES:

SUBMITTED BY:

**DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT :**

. N/A
.
.
.
.
.
.

SPECIAL CIRCUMSTANCES:

This is not a conventional secured-creditor stay motion. Movant QPWB is a non-debtor

SUBMITTED BY: Colleen Savage
SIGNATURE: /s/ Colleen Savage

Print Form Save Form Clear Form

ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
COLLEEN N. SAVAGE, ESQ.
Nevada Bar No. 14947
SGRO & ROGER
2901 El Camino Avenue, Suite 204
Las Vegas, NV 89102
Telephone: 702-384-9800
Facsimile: 702-665-4120
tsgro@sgroandroger.com
csavage@sgroandroger.com
*Attorneys for Quintairos, Prieto, Wood & Boyer, P.A.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION, *et al.*,<br><br>Debtors.<br><br>Jointly administered with:<br>Feliciano NuMale Nevada PLLC,Case No. 25-10342-nmc, NuMedical SC, Case No. 25-10343-nmc, NuMale Colorado SC, Case No. 25-10344-nmc, NuMale Florida TB PLLC, Case No. 25-10345-nmc, NuMale Nebraska LLC, Case No. 25-10346-nmc, NuMale New Mexico SC, Case No. 25-10347-nmc | Lead Case No. 25-10341-nmc<br>(Jointly Administered)<br><br>Chapter 11<br><br>**MOTION OF QUINTAIROS, PRIETO, WOOD & BOYER, P.A. FOR (I) AN ORDER CONFIRMING THAT THE AUTOMATIC STAY AND PLAN INJUNCTION ARE INAPPLICABLE TO ITS PROPOSED DECLARATORY-JUDGMENT ACTION, OR (II) IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY AND PLAN INJUNCTION, AND FOR LEAVE UNDER THE BARTON DOCTRINE**<br><br>Hearing Date: November 17, 2026.<br>Hearing Time: 10:30 A.M.<br>Est. Time for Hearing: 2 Hours |

Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB"), a non-debtor party in interest, by and through its undersigned counsel, respectfully moves this Court, pursuant to sections 105(a) and

362 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Rules 4001, 9004, 9014, and 9021 of the Local Rules of Bankruptcy Practice for the District of Nevada (the "Local Rules"), for entry of an order (i) confirming that the automatic stay of Bankruptcy Code section 362(a) and the injunction contained in the confirmed plan of liquidation are inapplicable to, and do not bar, QPWB's filing and prosecution of the declaratory-judgment action described below; (ii) in the alternative, granting QPWB relief from the automatic stay and modifying the plan injunction, for cause under section 362(d)(1), to permit QPWB to file and prosecute that action in the United States District Court for the District of Nevada; and (iii) to the extent the Court determines such leave is required, and without QPWB conceding that it is, granting QPWB leave under the *Barton* Doctrine[1] to name Michael W. Carmel, in his capacity as Liquidating Trustee, in that action.

This Motion is based on the following Memorandum of Points and Authorities, the § 362 information sheet filed as a cover sheet in accordance with Local Rules 4001(a)(1) and 9004(h), the concurrently filed Declaration of Benjamin Gordon and the exhibits thereto (including the proposed Complaint for Declaratory Judgment attached as **Exhibit 1**), the papers and pleadings on file in this case, and any argument the Court may entertain at the hearing.

Pursuant to Local Rules 7008 and 9014.2, QPWB states that it does not consent to the entry of final orders or judgment by the Bankruptcy Court on this Motion to the extent the matters raised are determined to be outside the constitutional authority of the Bankruptcy Court under *Stern v. Marshall*, 564 U.S. 462 (2011). QPWB reserves all rights to have any such matter heard and determined by the United States District Court, including its right to seek withdrawal of the reference under 28 U.S.C. § 157(d).

///

///

///

[1] *See Barton v. Barbour*, 104 U.S. 126 (1881) (generally holding that a plaintiff must get permission from the court before suing a court-appointed receiver or bankruptcy trustee for acts done in an official capacity).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND RELIEF REQUESTED

QPWB served as trial counsel for the defendants in the New Mexico action captioned *Sanchez v. NuMale Medical Center LLC, et al.* (the "Underlying Action"). Michael W. Carmel, the Liquidating Trustee (the "Trustee") appointed in this case, contends that the confirmed plan of liquidation and related stipulations transferred to him "sole direction and control" over legal-malpractice claims arising out of the Underlying Action, including claims belonging to the individual former defendants, Christopher Asandra, Carlos Feliciano, Brad Palubicki, and Justin Pulliam (the "Individual NuMale Parties"), who are non-debtors. The Trustee has demanded payment from QPWB and has threatened to sue QPWB on those claims.

QPWB intends to file a narrow declaratory-judgment action in the United States District Court for the District of Nevada seeking a declaration that the purported transfer to the Trustee of control over the Individual NuMale Parties' personal legal-malpractice claims is void under Nevada public policy, and that the Trustee has no right to assert or prosecute those non-debtor claims. A copy of the proposed complaint is attached as **Exhibit 1** (the "Proposed Complaint"). The Proposed Complaint seeks only a determination of who owns and may control those claims; it does not seek any declaration of non-liability in tort, and it does not seek to surcharge the Trustee or impose personal liability on him.

QPWB submits that no stay relief is necessary because the Individual NuMale Parties' personal malpractice claims never became property of this estate and, in any event, are no longer property of the estate, for at least three reasons.t First, QPWB is seeking leave to seek declaratory relief that the non-debtor claims the Liquidating Trustee is asserting against QPWB were never property of the debtors, were never property of the estate, and the purported transfer of those claims to the Liquidating Trustee violates Nevada public policy. This does not implicate the automatic stay.

Second, the Plan provides that "[a]ll injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code"[2] remained in force until the Effective Date. The Effective Date of the Plan occurred on October 24, 2025.[3] Thus, the automatic stay was terminated at the latest on October 24, 2025.

Third, Section 362(c)(1) of the Bankruptcy Code provides that the automatic stay terminates against property of the estate when the property is no longer property of the estate. The transfer of the estate's claim against QPWB to the Liquidating Trust terminated the stay.

QPWB therefore asks the Court, in the first instance, to enter a comfort order so confirming, out of an abundance of caution, the automatic stay does not apply in order to avoid exposing QPWB to allegations that it violated the automatic stay.

In order to avoid any accusation that QPWB has violated the Plan's injunction, QPWB also asks the Court to hold that its proposed Complaint for Declaratory Relief does not violate the injunction set forth in Section 8.6 of the Plan. As explained in Part III.B below, Section 8.6 enjoins only actions in furtherance of a Claim, Equity Interest, or other cause of action released or discharged under the Plan. Because QPWB's declaratory-judgment action asserts no Claim or Equity Interest against the Debtors and seeks only a determination of who owns and may control the Individual NuMale Parties' non-debtor malpractice claims, the Section 8.6 injunction does not apply to it.

Should the Court find that the *Barton* Doctrine bar the proposed Complaint for Declaratory Relief, QPWB also requests that the Court affirmatively allow QPWB to file the Complaint for Declaratory Relief in the United States District Court for Nevada

---

[2] ECF No. 434 at 41.

[3] ECF No. 762.

Under each path, the relief should be granted: the dispute presents a discrete, predominantly legal question of Nevada law that the District Court is well suited to resolve, its resolution will not diminish any asset of the estate, and requiring QPWB to raise the issue only as a defense if and when the Trustee elects to sue would leave QPWB exposed to an imminent, threatened suit with no way to obtain a prompt and conclusive determination of the parties' rights.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and rule predicates for the relief requested are sections 105(a), 362(a), 362(c), and 362(d)(1) of the Bankruptcy Code, the *Barton* Doctrine, Bankruptcy Rule 4001, and Local Rules 4001, 9004, 9014, and 9021. Nothing in this Motion, and nothing in the Proposed Complaint, is intended to waive, or should be construed to waive, QPWB's position that the Individual NuMale Parties' personal malpractice claims are not property of the estate, that the stay and plan injunction do not apply, that *Barton* leave is not required, or QPWB's right to seek withdrawal of the reference under 28 U.S.C. § 157(d).

## III. FACTUAL AND PROCEDURAL BACKGROUND

*A. The Underlying Action and the verdict.*

1. QPWB represented NuMale Medical Center LLC and affiliated insureds, including the Individual NuMale Parties, as trial counsel in the Underlying Action, which was tried to verdict in New Mexico. The jury returned a verdict of $37,005,149 in compensatory damages and $375,000,000 in punitive damages. That verdict was never reduced to a final judgment; before judgment was entered, NuMale Corporation filed for relief under Chapter 11,

and no post-trial motions or appeal were pursued. QPWB's role concluded with the jury's verdict; substitute and appellate counsel, and later the Trustee, controlled the post-verdict phase.

*B. The bankruptcy case, the global settlement, and the confirmed plan.*

The Court approved the appointment of Michael W. Carmel as Chapter 11 Trustee, and the Trustee retained Garman Turner Gordon LLP as his counsel.

On or about September 4, 2025, the Court approved a global settlement under Federal Rule of Bankruptcy Procedure 9019,[4] under which the insurer, Beazley, paid $108.5 million to the Debtors' estates in exchange for a buyback of the NuMale-Beazley insurance policies. QPWB was never provided notice with the motion to approve the global settlement agreement. This was highly prejudicial to QPWB because the global settlement agreement prejudiced QPWB's rights by allowing Sanchez a $410,000,000 claim after paying him an Initial Distribution of $96,500,000 (allocated $37,005,149 to compensatory damages, $14,051,833 to punitive damages, and $45,443,018 to claimed legal fees and expenses). The Liquidating Trustee has alleged that this gives him a claim of up to $2 billion against QPWB.

The Court thereafter confirmed the Debtors' plan of liquidation (the "Plan"). The Plan provides that "[a]ll Litigation Claims are expressly preserved for, and shall vest in, the Liquidation Trust," establishes the Liquidation Trust and the Liquidating Trustee to administer and liquidate those assets for the benefit of creditors, and, because the Debtors are liquidating and receive no discharge, carries forward a post-confirmation injunction protecting estate assets during administration in lieu of a discharge.

///

---

[4] ECF No. 430.

*C. The Trustee's demand and the proposed declaratory-judgment action.*

On May 18, 2026, Trustee's counsel demanded payment from QPWB and threatened to prosecute the malpractice claims, asserting that the Trustee holds sole control over them. QPWB disputes that the Trustee may assert or control the Individual NuMale Parties' personal claims and seeks a prompt, conclusive declaration of the parties' rights. Because the Trustee has taken the position that the automatic stay or the plan injunction may bar QPWB's proposed action, QPWB brings this Motion before filing the Proposed Complaint.

*D. Meet and confer.*

In accordance with Local Rule 4001(a)(2), counsel for QPWB communicated in good faith with the Trustee and his counsel regarding the relief sought in this Motion in a reasonable time frame before filing, and no less than three business days before filing. The parties were unable to resolve the matter. Evidence of QPWB's effort to resolve the dispute is set forth in the concurrently filed Declaration of Anthony P. Sgro.

## IV. ARGUMENT

### A. The Automatic Stay Does Not Apply, Because the Individual NuMale Parties' Personal Malpractice Claims Never Became Property of The Estate; The Court Should Enter A Comfort Order So Confirming.

The automatic stay reaches "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Property of the estate is broadly defined and includes causes of action. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705 (9th Cir. 1986). The stay, however, protects only *estate* property. Where a claim or interest never became property of the estate under section 541, an action concerning that claim does not violate the stay. In *In re Tracht Gut, LLC*, 503 B.R. 804 (B.A.P. 9th Cir. 2014), the Ninth Circuit Bankruptcy Appellate Panel held that where the debtor's interest lapsed before the petition, the property "never became property of the estate

under § 541, and any action … concerning those Properties would not run afoul of the automatic stay under § 362(a)." *Id.* at 812.

That principle controls here. The Proposed Complaint alleges that the personal legal-malpractice claims of the Individual NuMale Parties, who are non-debtors, never became property of the NuMale estate, and that the Plan's and stipulations' purported transfer to the Trustee of "control" over those non-debtor claims is void under Nevada public policy governing the assignment of legal-malpractice claims. If those claims are not estate property, then an action to establish that fact is not an act to obtain, or exercise control over, property of the estate, and section 362(a)(3) is not implicated. The Court can and should confirm as much through a comfort order, leaving the merits of ownership to the District Court. Confirming that the stay does not apply to a specific act is a routine exercise of the Court's authority under section 105(a) and does not require the Court to adjudicate the underlying ownership question.

The automatic stay does not apply because it was terminated by the Plan. The Plan provides that "[a]ll injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code"[5] remained in force until the Effective Date. The Effective Date of the Plan occurred on October 24, 2025.[6] Thus, the automatic stay was terminated at the latest on October 24, 2025.

The automatic stay was terminated by Section 362(c)(1) of the Bankruptcy Code. That subsection generally provides that the automatic stay terminates against property of the estate when the property is no longer property of the estate. Courts consistently hold that post confirmation liquidation trusts are distinct from the estate. *See Matter of German Pellets*

[5] ECF No. 434 at 41.

[6] ECF No. 762.

*Louisiana, L.L.C.*, 91 F.4th 802, 812 (5th Cir. 2024) ("We have held in other cases that post-confirmation entities and the debtor's estate are distinct."). Because the confirmed plan transferred assets from NuMale's estate to the Liquidation Trust, 11 U.S.C. § 362 no longer applies and there is no stay. *See In re Enivid, Inc.*, 364 B.R. 139, 149 (Bankr. D. Mass. 2007) ("The automatic stay is no longer in effect in the enivid and Sabine cases, *see* 11 U.S.C. § 362(c), and the assets of the bankruptcy estates were transferred to the Liquidating Trusts which were established pursuant to Chapter 11 plans confirmed over two years ago."); *In re Reliance Acceptance Group, Inc.,* 235 B.R. 548 (D.Del.1999) ("reversing the decision of the bankruptcy court, and determining that it was error to enjoin a shareholder class action against directors and officers for violations of securities laws even though the estate representative under the debtors' confirmed plan of reorganization was prosecuting claims for injunctive relief and fraud related to a stock split-off transaction.").

For these reasons, QPWB is entitled to a comfort order from the Court holding that the automatic stay does not bar the Complaint for Declaratory Relief.

**B. The Plan's Injunction Does not Bar the Proposed Complaint for Declaratory Relief.**

Because NuMale is liquidating and receives no discharge, the section 362 automatic stay terminated as to property that left the estate at confirmation, and the protection of any retained litigation claims is carried forward, if at all, through the plan injunction rather than the automatic stay. *See* 11 U.S.C. §§ 362(c)(1), 1141; *In re South Edge LLC*, 478 B.R. 403, 409 (D. Nev. 2012) (where a liquidating debtor receives no discharge, a plan's post-confirmation injunction "served to implement the protections of the automatic stay in 11 U.S.C. § 362, which would continue to apply to the estate assets postconfirmation," and is "of limited duration" protecting "only the Debtor and its Estate through the completion of the liquidation"). To the extent the Trustee contends the plan injunction bars QPWB's action, that contention fails for the same

reason the stay does not apply: the injunction protects *estate* assets, and the Individual NuMale Parties' personal claims are not estate assets. *South Edge* confirms that such a post-confirmation injunction "is not a de facto discharge" and does not cut off a non-debtor's ability to assert its rights and defenses; it merely channels disputes concerning estate property through the plan while the estate is administered. *Id.* at 417.

Additionally, the plain language of the Plan's injunction does not prohibit QPWB from filing the proposed Complaint for Declaratory Relief. Section 8.6 of the Plan contains the following language:

> **8.6. Injunction**. Except as otherwise provided in the Plan, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates, are permanently enjoined from taking any actinon in furtherance of such Claim, Equity Interests, and/or any other cause of action release and/or discharged under the Plan, including, without limitation, the following actions; (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding or any kind against the Trustee, the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors with respect to any such Claim, Equity Interest, and/or other cause of action , or taking any act to recover such Claim or Equity Interest outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code and Bankruptcy Rules.

By filing the proposed Complaint for Declaratory Relief, QPWB is not trying to assert a Claim or Equity Interest against the Debtor. Thus, the Plan's Injunction does not apply to QPWB

Should the Court conclude that the plan injunction nonetheless reaches the proposed action, QPWB requests, for the cause shown below, that the Court modify the injunction to the limited extent necessary to permit the action to proceed.

**C. In the Alternative, Cause Exists Under Section 362(D)(1) and the Curtis Factors to Permit The Declaratory-Judgment Action To Proceed In The District Court.**

Even if the stay or plan injunction applied, the Court should grant relief for cause. Section 362(D)(1) directs the Court to grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1).

"Cause has no clear definition and is determined on a case-by-case basis." *In re Conejo Enters., Inc.*, 96 F.3d 346, 352 (9th Cir. 1996). In deciding whether to lift the stay to allow litigation to proceed in another forum, courts in the Ninth Circuit consider the nonexclusive factors set out in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), which the Bankruptcy Appellate Panel adopted in *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (the "*Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum"); *accord In re Roman Catholic Bishop of Oakland*, No. 25-CV-06836-JSC, 2026 WL 936942 (N.D. Cal. Apr. 7, 2026). The movant establishes a *prima facie* case that cause exists, after which the burden shifts to the party opposing relief. 11 U.S.C. § 362(g); *In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004). Not all factors are relevant in every case, and the Court need not give them equal weight. *Id.* at 560. The factors most pertinent here strongly favor QPWB:

**Complete resolution of the issue (factor 1).** The proposed action will completely resolve a discrete and predominantly legal question, whether the transfer of control over the Individual NuMale Parties' personal malpractice claims to the Trustee is valid under Nevada public policy, and will settle who may prosecute those claims.

**Lack of interference with the bankruptcy case (factor 2).** The action will not diminish any estate asset. The Sanchez compensatory damages have been paid through the Beazley settlement, and the action seeks only a declaration of ownership and control, not the recovery of, or a levy against, any estate property.

**Expertise of the other forum and predominance of non-bankruptcy issues (factor 4).** The dispositive question is one of Nevada law on the assignability of legal-malpractice claims

and the validity of the challenged transfer, a matter squarely within the competence of the District Court, which routinely adjudicates such issues, and not an exclusively bankruptcy question.

**No prejudice to creditors (factor 7).** Because the compensatory award has been satisfied and the action cannot reduce estate assets, permitting it to proceed will not prejudice creditors, the estate, or other parties in interest.

**Judicial economy and the balance of harm (factors 10 and 12).** A single declaratory action in the District Court will efficiently and conclusively resolve the ownership dispute. By contrast, denying relief would leave QPWB unable to obtain a prompt determination of a threatened claim, forcing it to await suit by the Trustee and to litigate the identical question defensively, the greater hardship falls on QPWB, while the Trustee suffers no cognizable prejudice from a prompt resolution of a purely legal question.

The legislative history of section 362 confirms that "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to … relieve the bankruptcy court from many duties that may be handled elsewhere." *Plumberex*, 311 B.R. at 557. That policy is served here.

**D. To the Extent Required, and Without Conceding that Leave Is Necessary or that the Claims Are Estate Property, the Court Should Grant Leave Under the Barton Doctrine.**

The *Barton* Doctrine requires a party to "first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005); *accord In re Akhlaghpour*, 164 F.4th 1139, 1142 (9th Cir. 2026). The requirement flows from the defendant's status as a court-appointed officer sued in an official capacity, not from any determination that the claims to be

asserted are property of the estate, and it applies to a liquidating trustee, who is the "functional equivalent" of a bankruptcy trustee. *Crown Vantage*, 421 F.3d at 973. The Proposed Complaint names the Trustee in his official capacity, QPWB, without conceding that the stay or plan injunction applies, that leave is required, or that the malpractice claims are property of the estate, in the alternative and out of an abundance of caution, that the Court grant leave under *Barton* to name the Trustee in the District Court action.

Requesting such leave concedes nothing. "Leave to sue under Barton can never do more than remove a jurisdictional bar to proceeding in a particular forum." *Akhlaghpour*, 164 F.4th at 1148. Whether the contemplated action affects property of the estate "is an issue committed to the discretion of the bankruptcy court, guided by consideration of the factors identified in *Kashani,*" a question the Court decides in ruling on leave, not one the movant concedes by requesting it. *Crown Vantage*, 421 F.3d at 973 n.6; *see Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886–87 (B.A.P. 9th Cir. 1995). A movant may, in a single motion, both contend that leave is unnecessary and request leave in the alternative. *Kashani*, 190 B.R. at 883. Seeking leave before filing suit is, moreover, the course the Ninth Circuit endorses. *Akhlaghpour*, 164 F.4th at 1147.

To the extent the Court reaches the request, QPWB makes the *prima facie* showing *Kashani* requires. *Id.* at 885–86. The Proposed Complaint (Exhibit 1) sets forth colorable claims that the Plan's and stipulations' transfer of control over the Individual NuMale Parties' personal malpractice claims is void and that the Trustee lacks authority to prosecute those non-debtor claims. The claims do not seek to surcharge the Trustee or to impose personal liability on him; they challenge only the validity of a transfer effected by the Plan and stipulations, and they present a discrete, predominantly legal question that the District Court can efficiently resolve. QPWB further intends to move under 28 U.S.C. § 157(d) to withdraw the reference so that the

District Court may determine the validity of the challenged transfer; that motion is a separate matter and is noted here only to apprise the Court of QPWB's contemplated procedure.

**V. CONCLUSION**

For the foregoing reasons, QPWB respectfully requests that the Court enter an order (i) confirming that the automatic stay and the plan injunction are inapplicable to, and do not bar, QPWB's filing and prosecution of the Proposed Complaint; (ii) in the alternative, granting QPWB relief from the automatic stay and modifying the plan injunction, for cause under section 362(d)(1), to permit QPWB to file and prosecute the Proposed Complaint in the United States District Court for the District of Nevada; (iii) to the extent the Court determines such leave is required, and without QPWB conceding that it is or that the claims are property of the estate, granting QPWB leave under the Barton doctrine to name the Trustee, in his official capacity, in that action; and (iv) granting such other and further relief as the Court deems just and proper.

DATED this 8th day of October 2026.

SGRO & ROGER

*<u>/s/ Anthony P. Sgro</u>*
ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
COLLEEN N. SAVAGE, ESQ.
Nevada Bar No. 14947
2901 El Camino Avenue, Suite 204
Las Vegas, NV 89102
*Attorneys for Quintairos, Prieto, Wood & Boyer, P.A.*