ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
COLLEEN N. SAVAGE, ESQ.
Nevada Bar No. 14947
BENJAMIN B. GORDON, ESQ.
Nevada Bar No. 15552
2901 El Camino Avenue, Suite 204
Las Vegas, NV 89102
Telephone: 702-384-9800
Facsimile: 702-665-4120
tsgro@sgroandroger.com
csavage@sgroandroger.com
bgordon@sgroandroger.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| QUINTAIROS, PRIETO, WOOD & BOYER, P.A.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL W. CARMEL, solely in his capacity as Liquidating Trustee of the NuMale Liquidating Trust; the NUMALE LIQUIDATING TRUST; NUMALE CORPORATION; NUMALE MEDICAL CENTER LLC; CHRISTOPHER ASANDRA; CARLOS FELICIANO; BRAD PALUBICKI; and JUSTIN PULLIAM,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB"), by and through its attorneys, for its Complaint for Declaratory Judgment against Defendants, alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and Rule

57 of the Federal Rules of Civil Procedure, for a judicial declaration concerning the ownership and control of certain legal-malpractice claims arising out of the New Mexico action captioned *Sanchez v. NuMale Medical Center LLC, et al.* (the "Underlying Action"). Through the confirmed plan of liquidation and related stipulations entered in *In re NuMale Corporation*, Case No. 25-10341-nmc (Bankr. D. Nev.) (the "Bankruptcy Case"), Michael W. Carmel, as Liquidating Trustee (the "Trustee"), has purported to acquire and to exercise "sole direction and control" over legal-malpractice claims belonging to the individual former defendants in the Underlying Action, and now threatens to prosecute those claims against QPWB.

2. QPWB seeks a declaration that the purported transfer of control over the Individual NuMale Parties' legal-malpractice claims to the Trustee is void as an impermissible assignment of legal-malpractice claims under Nevada public policy; that the Trustee has no right to assert or prosecute those claims; and that any such claim remains vested in the individual client to whom it belongs. This Complaint seeks only a determination of the parties' prospective rights and duties with respect to the ownership and control of those claims. It does not seek, and shall not be construed to seek, any declaration of non-liability in tort.

**JURISDICTION**

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1334(b), which confers on the district courts original jurisdiction over all civil proceedings "arising in or related to" a case under title 11. This proceeding is "related to" the Bankruptcy Case because its outcome could conceivably affect the estate: it concerns the validity, construction, and effect of provisions of the Trustee's confirmed plan and of stipulations entered in the Bankruptcy Case, and its resolution will determine what property the Trustee owns and may administer and pursue. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.

1984). This jurisdiction exists independent of, and is not created by, any agreement of the parties to litigate in a particular forum. In the alternative, this Court has jurisdiction under 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure authorize the relief sought. An actual, substantial, and justiciable controversy exists between QPWB and Defendants concerning whether the Trustee owns or may control and prosecute the Individual NuMale Parties' legal-malpractice claims. The controversy is definite and concrete, admits of specific relief through a decree of a conclusive character, and is ripe for adjudication because the Trustee has demanded payment from and threatened suit against QPWB on those very claims. The exercise of declaratory jurisdiction is committed to the Court's sound discretion, guided by the factors identified in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and applied in this Circuit in *Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).

Each consideration favors adjudication here. This action presents a discrete and predominantly legal question, the validity of the purported transfer to the Trustee of control over the Individual NuMale Parties' legal-malpractice claims, the resolution of which will settle the controversy over who may prosecute those claims, will serve the useful purpose of clarifying the parties' legal relations, and will afford relief from uncertainty. It does not call for the needless determination of an unsettled question of state law, and it will not require the Court to try any malpractice claim. No action between these parties adjudicating the validity of that transfer is pending in any other court, so no presumption favoring resolution in another forum applies; and this Complaint is not a reactive or procedural-fencing filing, but a good-faith effort to resolve a

concrete dispute that the Trustee has threatened to bring. Exercise of this Court's declaratory jurisdiction is therefore appropriate.

**VENUE**

5. Venue is proper in this district under 28 U.S.C. § 1409(a), which provides that a proceeding arising in or related to a case under title 11 may be commenced in the district court in which such case is pending. The Bankruptcy Case is pending in this district. Venue is also proper under 28 U.S.C. § 1391(b), because the Trustee resides in and administers the NuMale Liquidating Trust in this district, and a substantial part of the events giving rise to the claims, including confirmation of the plan and entry of the stipulations effecting the challenged transfer of control, occurred in this district.

**REFERENCE, WITHDRAWAL, AND LEAVE TO PROCEED**

6. This proceeding is subject to the standing order of automatic reference to the United States Bankruptcy Court for the District of Nevada under 28 U.S.C. § 157(a). Because the validity of the transfer challenged here is a matter QPWB is entitled to have determined in the district court, QPWB will move under 28 U.S.C. § 157(d) to withdraw the reference for cause.

7. To the extent leave of the Bankruptcy Court is required under the *Barton* doctrine before naming Michael W. Carmel, in his capacity as Liquidating Trustee, in a forum other than the appointing court, QPWB has sought or is concurrently seeking such leave by separate application in the Bankruptcy Case. *See Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005). This Complaint challenges the validity of a transfer effected by the confirmed plan and related stipulations and does not seek to surcharge the Trustee or to impose personal liability on him.

**PARTIES**

8. Plaintiff Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") is a professional association

organized under the laws of the State of Florida, with its principal place of business at 9300 South Dadeland Boulevard, 4th Floor, Miami, Florida. QPWB served as trial counsel for the NuMale defendants in the Underlying Action and is a party against whom the Trustee has threatened to prosecute the legal-malpractice claims at issue.

9. Defendant Michael W. Carmel is named solely in his capacity as Liquidating Trustee of the NuMale Liquidating Trust, the successor to the Chapter 11 estate in the Bankruptcy Case. Upon information and belief, the Trustee administers the NuMale Liquidating Trust in this district.

10. Defendants NuMale Corporation (the Chapter 11 debtor in the Bankruptcy Case), NuMale Medical Center LLC (the entity QPWB represented in the Underlying Action), and the NuMale Liquidating Trust (the successor to the Chapter 11 estate under the confirmed plan) (collectively, "NuMale") are named because they hold, claim to hold, or are the entities through which the Trustee purports to control and prosecute the legal-malpractice claims at issue.

11. Defendants Christopher Asandra, Carlos Feliciano, Brad Palubicki, and Justin Pulliam (the "Individual NuMale Parties") are the individual former defendants in the Underlying Action whose legal-malpractice claims the Trustee purports to control and to prosecute. They are named as necessary parties under Rule 19 because the relief sought concerns the ownership and control of their claims, and complete relief cannot be accorded among the existing parties in their absence.

## FACTS

### A. The Underlying Action and the Verdict

12. QPWB represented NuMale Medical Center LLC and affiliated insureds, including the Individual NuMale Parties, as trial counsel in the Underlying Action, a medical-related action

tried to verdict in New Mexico.

13. The jury returned a verdict of $37,005,149 in compensatory damages and $375,000,000 in punitive damages. That verdict was never reduced to a final judgment. Before judgment was entered, NuMale Corporation filed for relief under Chapter 11 of the Bankruptcy Code, and no post-trial motions or appeal were pursued.

14. QPWB's role in the Underlying Action concluded with the jury's verdict. Substitute and appellate counsel, and later the Trustee, assumed control of the post-verdict phase after QPWB no longer represented the defendants. The decisions not to seek remittitur, not to appeal, and not to otherwise mitigate the exposure reflected in the verdict were made afterward, by others.

**B. The Bankruptcy Case and the Global Settlement**

15. In the Bankruptcy Case, the Court approved the appointment of Michael W. Carmel as Chapter 11 Trustee, and the Trustee retained Garman Turner Gordon LLP as his counsel on a hybrid hourly and contingency-fee basis.

16. On or about September 4, 2025, the Bankruptcy Court entered an order approving a global settlement under Federal Rule of Bankruptcy Procedure 9019. Under that settlement, the insurer, Beazley, paid a total of $108.5 million, allocated as follows: $37,005,149 to Sanchez compensatory damages; $14,051,833 to Sanchez punitive damages; $45,443,018 to Sanchez legal fees and expenses (together, $96,500,000 in initial distribution to Sanchez); and $12,000,000 in remaining proceeds for Plan funding.

17. The settlement released the insurer, NuMale's principals, and the physician-managers, with prejudice. The $37,005,149 allocated to compensatory damages equals the entire compensatory award returned by the jury in the Underlying Action, which has therefore been paid in full; and the $14,051,833 allocated to Sanchez punitive damages was likewise funded

and paid through the settlement.

18. Through stipulations entered in the Bankruptcy Case, the Trustee and certain Individual NuMale Parties addressed the "joint prosecution" of claims against QPWB.

19. Upon information and belief, in the Bankruptcy Case the estate's operating business and assets were reacquired by, or for the benefit of, an insider of NuMale at a substantial discount, on the order of forty percent below value, returning the going concern to insider-affiliated control for a fraction of its worth. Upon information and belief, of the $108.5 million paid by Beazley, approximately $96.5 million was distributed to the Sanchez claimant, Garman Turner Gordon received in excess of $9.3 million, and the Trustee received approximately $3.3 million, while general unsecured creditors received comparatively little. These facts bear on whether any uncompensated, legally recoverable loss remains to be pursued against QPWB, and on whose interests the threatened litigation against QPWB would actually serve. QPWB recites these facts as background to the controversy and to the discretionary considerations set forth above, and not as a request that this Court adjudicate the conduct of the Trustee, his counsel, or any insider.

**C. The Purported Transfer of Control Over the Malpractice Claims**

20. The Trustee's confirmed plan provides that the legal-malpractice claims will be prosecuted under the Trustee's "sole direction and control," and purports to give the Trustee sole authority to select counsel, determine strategy, negotiate, settle, and make all other litigation decisions concerning those claims.

21. The Trustee now asserts claims arising from the Underlying Action not only on behalf of NuMale, but purportedly also on behalf of the Individual NuMale Parties, and has demanded payment from and threatened litigation against QPWB on those claims, including through an August 28, 2026, settlement term sheet.

22. The Individual NuMale Parties did not themselves file for bankruptcy. Because they never commenced a bankruptcy case, their personal legal-malpractice claims never became property of any bankruptcy estate under 11 U.S.C. § 541, and this Complaint is directed at the purported transfer of those non-debtor claims, not at any legal-malpractice claim belonging to the debtor entities. *Cf. Edwards v. Franchini*, 1998-NMCA-128, 125 N.M. 734, 965 P.2d 318 (a debtor's own legal-malpractice claim becomes property of the estate upon the filing of the debtor's petition). Their legal-malpractice claims are personal claims that sound in tort.

23. The punitive damages returned in the Underlying Action were assessed for the conduct of NuMale and its principals, not for any conduct of QPWB; under New Mexico law, punitive damages are personal to the wrongdoer, and a party may not shift or recover by indemnification the punishment assessed against it for its own conduct, nor does recharacterizing that punishment as "compensatory" loss alter its nature. *See In re Consol. Vista Hills Retaining Wall Litig. (Amrep Sw. Inc. v. Shollenbarger Wood Treating, Inc.)*, 1995-NMSC-020, 119 N.M. 542, 893 P.2d 438. In any event, the punitive component of the Sanchez verdict was itself allocated and funded through the Beazley settlement.

**D. The Controversy**

24. QPWB contends that the purported transfer of control over the Individual NuMale Parties' legal-malpractice claims to the Trustee is void, that the Trustee has no right to prosecute those claims, and that any such claim remains vested in the individual client. The Trustee contends that he may control and prosecute those claims and has threatened to do so against QPWB. The controversy is neither hypothetical nor remote: through a written pre-litigation demand dated September 15, 2026, the Trustee, acting through his counsel, asserted the malpractice and related claims against QPWB, stated that he was "prepared to file suit immediately," and set deadlines,

including a demand that QPWB confirm participation in pre-suit resolution within fourteen days and a stated intention to file suit within sixty days absent compliance. An actual, definite, and immediate controversy therefore exists that a declaratory judgment will resolve.

**E. The Trustee's Threatened Allegations and QPWB's Disputes Confirm a Concrete Controversy**

25. The September 15, 2026, demand asserts that QPWB committed legal malpractice, breached fiduciary duties, and engaged in related wrongdoing in the Underlying Action, including alleged conflicts of interest among jointly represented defendants, alleged settlement-communication failures, alleged deficiencies in trial and post-trial performance, and demands for disgorgement and punitive damages.

26. QPWB denies each of those allegations. QPWB recites the existence of this dispute not to obtain, and this Complaint does not seek, any adjudication of QPWB's liability or non-liability for legal malpractice; the dispute is recited solely because it confirms that the parties' competing positions on who owns and may prosecute the claims are concrete, adverse, and ripe.

27. Among other matters QPWB disputes and would establish in any properly constituted malpractice action: the insurer, Beazley, at all relevant times held and exercised authority over the settlement funds and settlement decisions in the Underlying Action, and declined within-limits settlement opportunities that defense counsel advanced; QPWB advised Dr. Asandra in writing to retain independent personal counsel, who appeared months before trial and participated in mediation; QPWB and New Mexico counsel evaluated the conflict question, including consultation concerning the applicable ethical rules; the insured parties themselves directed an aggressive defensive posture; and the mid-trial proposal to dismiss certain physician defendants was conditioned and then withdrawn by the plaintiff, defeating any contention that a costless dismissal was available and refused.

28. QPWB further disputes the integrity of the process that produced the verdict on which the Trustee's claims depend: contemporaneous text messages reflect that the plaintiff's trial counsel made contact with Dr. Asandra, a represented defendant and central witness, during the underlying litigation, contact that is inconsistent with the plaintiff's counsel's later written denial that any such communication occurred. These matters bear on causation and on the apportionment of fault, and QPWB reserves them; it does not ask this Court to adjudicate them here.

29. QPWB further disputes the Trustee's measure of purported loss. The $410,000,000 figure on which the Trustee relies is a claim amount negotiated and allowed through the Bankruptcy Case, not a judicial determination of legally recoverable malpractice damages; the compensatory component of the Sanchez verdict has been paid in full through the Beazley settlement; the punitive component was assessed for the conduct of others, was itself funded through the Beazley settlement, and is not recoverable against trial counsel under New Mexico law; and the global settlement released the parties alleged to have committed the underlying wrongdoing, and distributed the settlement proceeds principally to the claimant and to the Trustee and his counsel, while the Trustee now seeks to shift the entire loss to trial counsel and to name individual QPWB attorneys personally. These matters are pleaded as the measure-of-loss and apportionment defenses QPWB expressly reserves, and not as a request that this Court adjudicate them.

30. QPWB further reserves that any properly constituted legal-malpractice action arising from the Underlying Action would be governed by New Mexico's system of several liability, under which QPWB could be held liable only for the portion of any loss attributable to its own proportionate fault, and the fault of all other responsible persons, including the substitute and appellate counsel and the Trustee who controlled the post-verdict phase and made the decisions

not to seek remittitur or to appeal, would be apportioned. *See* N.M. Stat. Ann. § 41-3A-1; *Andrews v. Saylor*, 2003-NMCA-132, 134 N.M. 545, 80 P.3d 482. This matter is likewise reserved and is not submitted for adjudication in this action.

**COUNT ONE**

**DECLARATORY JUDGMENT, THE TRANSFER OF THE LEGAL-MALPRACTICE CLAIMS IS VOID AS AN IMPERMISSIBLE ASSIGNMENT UNDER NEVADA PUBLIC POLICY**
**(Against All Defendants)**

31. QPWB repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

32. Nevada law governs the validity of the challenged transfer, which was effected through the confirmed plan and related stipulations entered in the Nevada Bankruptcy Case. Under Nevada law, the assignment of a legal-malpractice claim is prohibited as a matter of public policy, because the decision whether to bring a malpractice action against an attorney is one peculiarly vested in the client, and because an assignment would strip the client of control over the claim and imperil the confidential attorney-client relationship. *Beavor v. Tomsheck*, 138 Nev. 734, 519 P.3d 1260 (2022); *Chaffee v. Smith*, 98 Nev. 222, 645 P.2d 966 (1982).

33. The same result follows under New Mexico law, which does not permit the free assignment of personal claims arising out of a confidential professional-services relationship. New Mexico bars the assignment of personal tort claims and treats claims arising from a relationship of personal trust and confidence, including the rendition of professional services by a lawyer, as too personal in character to be freely assigned. *Wilson v. Berger Briggs Real Estate & Ins., Inc.*, 2021-NMCA-054, 497 P.3d 654.

34. In the bankruptcy context, a plan may authorize an estate representative to pursue a debtor's legal-malpractice claim on behalf of the estate without effecting an assignment only where the representative has no independent claim to the proceeds and takes only reimbursement

of expenses and a reasonable fee; a party that seeks to prosecute the claim on its own behalf must do so as an assignee. *Tower Homes, LLC v. Heaton*, 132 Nev. 628, 377 P.3d 118 (2016). Where those conditions are not satisfied, Nevada law prohibits the assignment of legal-malpractice claims from a bankruptcy estate. *Id.*

35. The distinction between a permissible arrangement and a prohibited assignment turns on control: transferring both control of the claim and its proceeds constitutes an assignment of the entire legal-malpractice claim, and no formalistic use of the word "assignment" is required where the instrument manifests a present intent to allow another to control the case. *Tower Homes*, 132 Nev. 628, 377 P.3d 118.

36. Neither a legal-malpractice claim nor the proceeds of such a claim may be assigned to an adversary from the same litigation that gave rise to the alleged malpractice. *Beavor*, 138 Nev. 734, 519 P.3d 1260.

37. Here, the confirmed plan and related stipulations transfer to the Trustee sole control of the Individual NuMale Parties' legal-malpractice claims together with the recovery on those claims, without satisfying the conditions that would permit prosecution "on behalf of the estate." The arrangement is therefore an impermissible assignment of legal-malpractice claims that is void as contrary to Nevada public policy.

38. QPWB, though not a party to the plan or the stipulations, has standing to seek a declaration regarding the validity of that transfer because its validity directly affects QPWB's rights: it determines whether the Trustee may pursue the threatened claims against QPWB. *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307 (10th Cir. 2022).

39. QPWB is entitled to a declaration that the purported transfer of control over the Individual NuMale Parties' legal-malpractice claims to the Trustee is void.

**COUNT TWO**

**DECLARATORY JUDGMENT, THE TRUSTEE IS NOT AUTHORIZED TO PROSECUTE THE CLAIMS, WHICH REMAIN VESTED IN THE INDIVIDUAL NUMALE PARTIES**
**(Against All Defendants)**

40. QPWB repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

41. Because the transfer of control is void, the Trustee holds no valid interest in the Individual NuMale Parties' legal-malpractice claims and has no right to assert or prosecute those claims against QPWB. A legal-malpractice claim remains vested in the client, and an invalid assignment does not, by itself, transfer the claim to the purported assignee. *Beavor*, 138 Nev. 734, 519 P.3d 1260.

42. QPWB lacks an adequate remedy at law and will be subjected to the burden and expense of defending claims prosecuted by a party with no right to bring them unless the parties' respective rights are declared.

43. QPWB is entitled to a declaration that the Trustee has no right to assert or prosecute the Individual NuMale Parties' legal-malpractice claims, and that any such claim remains vested in the individual client to whom it belongs.

**WHEREFORE**, QPWB respectfully requests judgment as follows:

A. On Count One, a declaration pursuant to 28 U.S.C. §§ 2201–2202 that the purported transfer to the Trustee of control over the Individual NuMale Parties' legal-malpractice claims, as effected through the confirmed plan and related stipulations in the Bankruptcy Case, is void as an impermissible assignment of legal-malpractice claims under Nevada public policy;

B. On Count Two, a declaration that the Trustee has no right to assert or prosecute the Individual NuMale Parties' legal-malpractice claims against QPWB, and that any such claim remains vested in the individual client to whom it belongs;

C. Such further necessary or proper relief based on the declaratory judgment as the Court deems just under 28 U.S.C. § 2202; and

D. Granting QPWB such other and further relief as the Court deems just and proper.

Dated this ____ day of ____________, 2026.

**SGRO & ROGER**
*/s/*________________________________
ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
COLLEEN N. SAVAGE, ESQ.
Nevada Bar No. 14947
BENJAMIN B. GORDON, ESQ.
Nevada Bar No. 15552
2901 El Camino Avenue, Suite 204
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*