GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: OST Requested<br>Hearing Time: OST Requested |

**AMENDED MOTION TO ENFORCE RULE 2004 ORDER AND COMPEL COMPLIANCE WITH THE SUBPOENA ISSUED TO QUINTAIROS, PRIETO, WOOD & BOYER, P.A. AT ITS NEVADA OFFICE**



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Michael Carmel, the Liquidation Trustee of the NuMale Liquidation Trust (the "Trustee") and the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP, which also represents Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam (collectively, the "Individuals"), moves this Court for an order compelling Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos" or "QPWB") to produce the documents commanded by, and to produce its person most knowledgeable for examination in accordance with, the Rule 2004 subpoena served on Quintairos at its Henderson, Nevada office, which commands compliance in Las Vegas, Nevada [ECF No. 994] (the "Nevada Subpoena").

This Motion is based upon the following Memorandum of Points and Authorities; the Declaration of Talitha Gray Kozlowski (the "Gray Kozlowski Decl."), filed contemporaneously herewith; the papers and pleadings on file in these cases, judicial notice of which is respectfully requested pursuant to Fed. R. Evid. 201(b) and (c) and 1101(a) and (b); and any argument of counsel and further evidence entertained by the Court at the hearing on this Motion

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The claims against Quintairos and its attorneys and subsequent transferees are the NuMale Liquidation Trust's principal asset. The Plan preserved them, and prosecuting the pre litigation claims is the Trust's reason for existing. The Trustee simply seeks enforcement of this Court's Rule 2004 Order the related subpoena to allow the Trustee to conclude his investigation prior to the impending statutes of limitation.

What is actually at issue in this Motion is narrow. Quintairos has described a group of approximately eighty to one hundred attorneys it calls "rainmakers" or heads of "business units." The Trustee does not know who they are, what they were paid, or what agreements govern their compensation, and those payments are the subject of the fraudulent transfer and improper



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

distribution claims the Trust is investigating. Quintairos offered to generally describe their compensation without identifying the recipients or the specific details. The Trustee offered to forgo the identities altogether if the unidentified recipients would toll the claims against them. Quintairos declined both to identify them and to toll. The Trustee respectfully requests that the Court compel production and the appearance of Quintairos' person most knowledgeable, each by a date certain before November 4, 2026.

Quintairos has produced nothing in response to the subpoena served on September 28, 2026, and has made clear it does not intend to. That refusal is not new conduct. It is the continuation of a pattern that began a year ago, when the Trustee asked Quintairos for something it had no right to withhold and in fact had affirmative legal and professional obligations to disclose — the Debtors' client file. It took the Trustee three written demands across more than four months, including a "THIRD AND FINAL DEMAND" letter and a "FOURTH AND FINAL" demand email, to extract a production that Quintairos now describes as "voluntar[y]" and "extraordinary" cooperation.

The same pattern has governed the Rule 2004 discovery. Each time the Trustee removed an objection, Quintairos replaced it with a new objection and a new forum. Quintairos objected to the initial subpoena that set the 30(b)(6) deposition in Florida; the Trustee then issued the 30(b)(6) subpoena to Quintairos' operating office in Henderson, Nevada, and set compliance in Las Vegas. Quintairos objected that the requests were too broad; on October 7, 2026, the Trustee replaced eleven document requests with two requests and withdrew six more. In between, on September 29, 2026, Quintairos moved to quash the initial subpoena in the Southern District of Florida. And on October 7, 2026—the same day the Trustee narrowed the requests under the Nevada subpoena—Quintairos filed a frivolous motion in this Court seeking relief from the Confirmation Order entered a year earlier, removal of the Trustee, disqualification of the Trustee's counsel, and a stay or "quashal" of the Rule 2004 subpoenas [ECF No. 1007]. The Trustee has addressed each objection Quintairos actually raised. Not one document has been produced. On October 8, 2026—the date initially set for production—Quintairos served its written objections to every single



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

request in the Nevada Subpoena (many of which the Trustee has already agreed to limit or withdraw), stating that "QPWB will not produce documents in response to this Request." Gray Kozlowski Decl., Ex. L.

The escalation has a deadline attached to it. The most conservative date on which the statute of limitations period on the estates' malpractice claims could run is November 23, 2026. Gray Kozlowski Decl. ¶ 11. Each successive objection, each new forum, and each new motion consumes time the Trust does not have, and the relief Quintairos now requests—a stay of the examinations—would consume what remains.

## II. PERTINENT FACTS

1. On January 22, 2025, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. And on April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving Trustee Carmel's appointment.

2. On August 1, 2025, the Trustee filed the *Joint Plan of Reorganization* [ECF No. 434] (the "Plan"), which was confirmed on October 7, 2025 (the "Confirmation Order"). ECF Nos. 726-727. The Plan expressly preserved all claims against "against [Quintairos] and its attorneys, employees, Insiders, and Affiliates" for the NuMale Liquidation Trust. ECF Nos. 434, 726, and 727.

3. Beazley, the insurer that retained Quintairos to defend the Debtors and the Individuals in the Sanchez litigation, paid the bankruptcy estates $108.5 million to resolve the estates' bad faith insurance claims. Significantly, the malpractice, fraudulent transfer, and related claims transferred to the Trust for prosecution on behalf of the estates' creditors (the Quintairos Litigation Claims) arise from the same underlying misconduct: the gross malfeasance of Quintairos and its attorneys in their representation of the Debtors and the Individuals in the Sanchez litigation. The magnitude of Beazley's settlement underscores the extraordinary financial consequences of that misconduct. The Quintairos Litigation Claims represent a potentially



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

substantial source of recovery for the estates' creditors, with damages against Quintairos and its attorneys exceeding hundreds of millions of dollars.

**A. <u>The Client File: Three Demands Over Four Months for Documents the Trust Owned.</u>**

4. On October 6, 2025, the Trustee terminated Quintairos' representation and demanded immediate transfer of the entire client file, enclosing the order appointing him and explaining that he is the sole holder of the attorney-client privilege. Gray Kozlowski Decl., Ex. A. The demand invoked Rules 16-116(D) and 16-115(D) NMRA and itemized the categories required, including pleadings, correspondence with the client, co-counsel, opposing counsel, the court, and the insurer, and attorney work product and notes. *Id.*

5. Quintairos produced a fraction of the file. On December 17, 2025, the Trustee served a second demand identifying entire categories that were "wholly absent" from the production—among them a signed engagement agreement, conflicts waivers, scope amendments, and termination notices—and advised that failure to surrender the file within fourteen days violates Rule 16-116(D) NMRA. Gray Kozlowski Decl., Ex. B. Quintairos did not respond.

6. On January 7, 2026, the Trustee served a "THIRD AND FINAL DEMAND," noting that Quintairos had "now been provided three opportunities to comply with these ethical and legal obligations," that its production "remain[ed] grossly deficient," and that it had failed "to respond in any way" to the December 17 demand. Gray Kozlowski Decl., Ex. C.

7. Quintairos produced what it indicated was the balance of the client file[1] on February 19, 2026—more than four months after the Trustee's first demand. The Trustee's follow-up letters of February 24 and March 3, 2026, asserting that Quintairos produced *other clients' files*, went unanswered. Gray Kozlowski Decl., Exs. D and E.

8. Quintairos has since characterized that history as having "voluntarily transferred to the Trustee NuMale's client file" as part of "months of extraordinary voluntary cooperation." Gray

[1] Quintairos also produce portions of hundreds of other clients' files causing significant difficulty in identifying the Debtors' actual client file and raising further questions regarding Quinatiros' compliance with the rules of professional conduct.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Kozlowski Decl., Ex. I at 2–3. The three demand letters and the unanswered correspondence are the record of that cooperation. In accordance therewith, the Trustee served subpoenas on Quintairos, Prieto, and Boyer, together with their respective Rule 2004 Orders, confirming their examinations and seeking the production of documents. *See* ECF Nos. 974, 975, 987.

**B. The Pre-Litigation Demand and the Trustee's Attempts to Obtain Information Without Litigation.**

9. On May 18, 2026, mere months after receiving what might be the entirety of the client file, the Trustee sent Quintairos and the attorneys who handled the underlying Sanchez matter a pre-litigation demand letter (the "Demand Letter"). Gray Kozlowski Decl., Ex. F. The Demand Letter made no monetary demand—"The Plaintiffs are not making a monetary demand at this stage"—and requested information to aid the Trustee's investigation. *Id.*

10. From May through September 2026, the Trustee sought that information voluntarily, including through Quintairos' then-counsel, Alex Fugazzi of Snell & Wilmer. Quintairos produced a subset of what the Trustee requested, and conditioned it on a non-disclosure agreement that bars the Trustee from using it outside the parties' negotiations. Gray Kozlowski Decl. ¶ 7. The Trustee therefore cannot use that material to plead the claims or make an informed decision about which transferees to pursue. After the Trustee made two settlement offers to Quintairos, to which Quintairos refused to even provide a counter, discussions ended on September 10, 2026 and the Trustee proceeded with discovery in furtherance of prosecuting the Trust's claims. *Id.*

**C. The Extortion Letter.**

11. On September 14, 2026, Quintairos' counsel, Anthony Sgro, sent a sixteen-page letter (the "Extortion Letter"). Gray Kozlowski Decl., Ex. G. The Extortion Letter opens with Quintairos "plac[ing] the Trustee and his counsel on formal notice of the deficiencies in the claims" and threatening the Trustee and his counsel with legal action for allegedly not fully investigating its claims against Quintairos and its attorneys. The Extortion Letter demanded that the Trustee "[w]ithdraw any and all pending demands against QPWB," and coupled that demand with notice



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

that Quintairos would seek leave to sue the Trustee individually and would pursue referrals to the Office of the United States Trustee and "any other regulatory or law enforcement agency." *Id.* at 1–2, 4, 9, 13. It further demanded that "no monies should be distributed" and that distributions already made "be immediately returned." *Id.*

12. The Extortion Letter also asserted that Quintairos could not identify the basis for the claims against it: its counsel wrote that he was "unaware of any analysis completed that sought to crystalize QPWB's legally supportable, causally attributable exposure" and that "it is still unclear exactly what QPWB did that would give rise to any malpractice claim." Gray Kozlowski Decl., Ex. G at 1–2, 4. The Trustee responded on September 15, 2026, rejecting the allegations and copying counsel for the Office of the United States Trustee. *Id.*, Ex. H.

**D. <u>The Rule 2004 Orders, the Subpoena, and Quintairos' Successive Objections.</u>**

13. The Trustee applied for an examination of Quintairos under Rule 2004. This Court entered its Rule 2004 Order as to Quintairos on September 15, 2026 [ECF No. 972], and directed the Trustee to issue a separate subpoena for documents under Bankruptcy Rule 9016.[2] *Id.* The Trustee initially served a subpoena at Quintairos' Florida office [ECF No. 974] (the "<u>Florida Subpoena</u>") and Quintairos objected. The Trustee then served the same subpoena with modified dates, with the Rule 2004 Order, on Quintairos as its Nevada office [ECF No. 994] (the "<u>Nevada Subpoena</u>") on September 28, 2026. *See* ECF No. 996.[3] Quintairos has produced no documents in response to either subpoena. Gray Kozlowski Decl. ¶ 20.

14. On September 23, 2026, the third counsel for Quintairos, Luis Salazar of Cole Schotz P.C., objected to the Florida subpoena in its "entirety" (the "<u>September 23 Letter</u>"). Gray Kozlowski Decl., Ex. I at 4. Nine days after telling the Trustee that it could not discern what Quintairos had done to give rise to a claim, Quintairos asserted the opposite—that the Trustee

---

[2] The Trustee also sought, and this Court entered Rule 2004 Orders on various dates for other individuals. Compliance with those Rule 2004 Orders is not the subject of this Motion.

[3] For ease of reference, the Rule 2004 Order and related Nevada subpoena filed on the docket are also attached hereto as Exhibits 1 and 2.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

"long ago crossed the line from preliminary investigation into active pursuit of claims" and already possessed "the documents, information, and explanations necessary to evaluate and pursue his asserted claims." *Id.* at 1–2.

15. On September 28, 2026, the Trustee issued the subpoena to Quintairos at its office located at 2370 Corporate Circle, Suite 160, Henderson, Nevada 89074, *see* https://qpwblaw.com/office_location/las-vegas/, and hand delivered it the same day. *See* ECF No. 994. The Nevada Subpoena commands production in Las Vegas, Nevada, or electronically, by October 8, 2026,[4] and the appearance of Quintairos' person most knowledgeable at the Las Vegas offices of Garman Turner Gordon LLP on October 14, 2026. *Id.,* Ex. 1 at 2. A copy of the Nevada Subpoena was also served on Quintairos' Nevada resident agent. Gray Kozlowski Decl. ¶ 12.

16. Based on information publicly available, including Quintairos' own website, Quintairos regularly transacts business in person at its Henderson, Nevada office. That office is a genuine, operating office of the firm—not a registered-agent address or a nominal presence. Indeed, Quintairos holds that office out to the public as one of its offices on its website and advertises that one managing partner, two additional partners, and two associates work there. *See* https://qpwblaw.com/office_location/las-vegas/. The Las Vegas place of compliance is within one hundred miles of that office. Gray Kozlowski Decl. ¶ 13.

17. On September 29, 2026, Quintairos moved to quash and for a protective order in the United States Bankruptcy Court for the Southern District of Florida (the "Florida Motion"), directed to the subpoenas that had commanded compliance in Miami, not the Nevada Subpoena commanding compliance in Nevada. Gray Kozlowski Decl. Ex. J

18. The following counsel met and conferred in good faith, in writing and by video conference, as follows, without resolution:

- On September 29, 2026: (i) Luis Salazar of Cole Schotz P.C. for Quintairos, Prieto, and Boyer; (ii) Alex Fugazzi and Bob Olson of Snell and Wilmer for

[4] During the parties' meet and confer negotiations, this was extended for one week.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

all of the examinees; and (iii) Greg Garman, Talitha Gray Kozlowski, and Jamie Garman of Garman Turner Gordon for the NuMale Liquidation Trust;

- On October 1, 2026: (i) Alex Fugazzi, Charles Gianelloni, Steven Jerome, and Bob Olson of Snell and Wilmer for the examinees; and (ii) Talitha Gray Kozlowski of Garman Turner Gordon for the NuMale Liquidation Trust;
- On October 5, 2026: (i) Charles Gianelloni, Alex Fugazzi, Bob Olson, Joe Layzell, and Steven Jerome of Snell and Wilmer for all of the examinees; and (ii) Talitha Gray Kozlowski and Jamie Garman of Garman Turner Gordon for the NuMale Liquidation Trust; and
- On October 6, 2026: (i) Charles Gianelloni, Alex Fugazzi, Bob Olson, Joe Layzell, and Steven Jerome of Snell and Wilmer for all of the examinees; and (ii) Talitha Gray Kozlowski and Jamie Garman of Garman Turner Gordon for the NuMale Liquidation Trust.

Gray Kozlowski Decl. ¶ 15.

19. During the meet and confer discussions, Quintairos first objected to providing any documents. The Trustee offered a reduced production, which was rejected by Quintairos. Instead, Quintairos offered to produce abstract information generally describing the approximately eighty to one hundred attorneys it identifies as "rainmakers" or heads of "business units" without identifying those attorneys, detailing the terms of their employment and compensation, or stating the amounts of the transfers they received. *Id.* ¶ 16. Quintairos' offer amounted to, "trust us," with no recourse for the Trustee to bring claims against the "rainmakers" if a statute of limitations expired before he was able to obtain the necessary discovery.

20. In response, the Trustee offered to accept that limited production if the unidentified recipients would toll any fraudulent transfer claims against them; Quintairos refused. *Id.* ¶ 16.

21. On October 7, 2026, the Trustee narrowed the Nevada Subpoena in writing. The Trustee replaced eleven requests—request numbers 3, 7 through 14, 16, and 17—with two requests—seeking, for the attorneys Quintairos describes as "rainmakers" or heads of "business



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

units," (i) the agreements governing their compensation and (ii) documents sufficient to identify their aggregate compensation for 2024, 2025, and year-to-date 2026—and withdrew request numbers 21, 22, 23, 26, 27, and 28 without prejudice. Gray Kozlowski Decl., Ex. K. This Motion seeks to enforce the Nevada Subpoena as so narrowed.

22. The same day, Quintairos filed a frivolous and defamatory motion in this Court seeking (i) relief under Rule 60(b) from the Confirmation Order, the Findings, the Plan, the Global Settlement Order, and the 363 Sale Order as applied to it; (ii) removal of Mr. Carmel as Liquidation Trustee; (iii) disqualification of Garman Turner Gordon LLP as the Trustee's counsel; (iv) leave under the Barton doctrine to assert claims against the Trustee and his counsel individually; and (v) an order quashing or staying the Rule 2004 subpoenas and staying "commencement of litigation against QPWB" [ECF No. 1007] (the "Rule 60(b) Motion"). Quintairos acknowledges in that motion that it "was never a creditor, never filed a claim, never voted, and never appeared in this case." *Id.* at 10.[5]

23. In the Rule 60(b) Motion, Quintairos suggests this Court should quash or stay the Rule 2004 subpoenas because "litigation is imminent and announced" but in the very next sentence seeks to have the Court "direct that the Liquidation Trustee **not** commence litigation." [ECF No. 1007] at 20 (emphasis added). In the Florida Motion, Quintairos asked the Southern District of Florida to quash the same discovery, contending this Court is not the proper forum to decide that question.

24. On October 8, 2026, the date the Nevada Subpoena set for production, Quintairos served written objections under Fed. R. Civ. P. 45(d)(2)(B) (the "October 8 Objections"). Gray Kozlowski Decl., Ex. L. The October 8 Objections object to every one of the eleven testimony topics and the thirty-four document requests, despite the Trustee's agreement to reduce and modify the document requests. As to request after request, they state: "QPWB will not produce documents in response to this Request." To date, Quintairos has produced no documents.

---

[5] The pagination within the Rule 60(b) Motion begins at 4; citations herein are to the pagination of the ECF filing.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

25. The October 8 Objections rest on the following principal grounds: that Las Vegas is not a proper place of compliance because Quintairos is "headquartered" in Florida; that the Florida Motion stayed Quintairos' compliance obligations; that the Nevada Subpoena is duplicative of the Florida subpoena and was served to avoid the Florida Motion; that the Trustee has completed his investigation and may not use Rule 2004; that the Nevada Subpoena allowed less than fourteen days to comply; and that service was defective because it was made on a person assertedly without authority to accept it and by an employee of the Trustee's counsel. Gray Kozlowski Decl., Ex. L at 1–2.

26. The Trust's investigation concerns both the malpractice-related claims and potential fraudulent transfer and improper distribution claims arising from payments Quintairos made after it was on notice of those claims. Quintairos identifies more than three hundred attorneys as "partners." Gray Kozlowski Decl. ¶ 21. The most conservative date on which the limitations period on the estates' claims against Quintairos could run is November 23, 2026. *Id.* ¶ 11.

27. For the avoidance of doubt, this Motion seeks no relief as to Mr. Boyer, Mr. Prieto, or the individual examinees subject to the Court's other Rule 2004 Orders [ECF Nos. 982-986], and seeks no ruling on the Rule 60(b) Motion, to which the Trustee will respond separately. To that end, the Trustee reserves all rights.

## III. LEGAL ANALYSIS

### A. Legal Standard

Under Civil Rule 45(g), a court may hold in contempt a person who fails without adequate excuse to obey a subpoena. A nonparty served with a subpoena has three options: it may (1) comply with the subpoena, (2) serve an objection on the requesting party, or (3) move to quash or modify the subpoena in accordance with Civil Rule 45(c)(3). *See In re Consol. Meridian Funds*, No. 10-17952, 2013 WL 1501636, at *10 (Bankr. W.D. Wash. Apr. 5, 2013). Here, Quintairos served the October 8 Objections to the subpoena in accordance with Civil Rule 45(d). Because Quintairos served objections rather than complying, the question before the Court is whether the Nevada Subpoena, as limited, should be enforced. It should. The Court already found "good cause" in



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

issuing the Rule 2004 Order, the Trustee has plainly issued a proper subpoena, compliance in Nevada is appropriate, and time is of the essence such that this Court should compel compliance quickly. To that end, and to ensure Quintairos is not rewarded for its games, the Trustee seeks to compel Quintairos' compliance with this Court's Rule 2004 Order and the narrowed Nevada Subpoena.

**B. <u>Good Cause Supports the Examination and the Narrowed Production.</u>**

Good cause exists for the discovery the Nevada Subpoena seeks, because the information bears directly on the Trust's claims against Quintairos and certain of its attorneys. The legitimate goals of a Rule 2004 examination include "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (*quoting In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)). The range of discoverable subject matter is "unfettered and broad." *In re Dinubilo*, 177 B.R. 932, 939 (E.D. Cal. 1993) (citation omitted). The party resisting authorized discovery bears the burden of showing why compliance should not be required. *See In re Rhodes Cos., LLC*, 475 B.R. 733 (D. Nev. 2012).

Quintairos is a professional corporation whose value is distributed to its shareholders and to the attorneys it compensates as "rainmakers" and heads of "business units." The Trustee does not contend that compensation paid for services actually rendered is recoverable. The investigation concerns whether payments made while Quintairos carried the *Sanchez* exposure were distributions of firm value characterized as compensation, were made to insiders or to the attorneys who control its business units, or exceeded the reasonably equivalent value of the services rendered. Those questions cannot be answered, and no transferee can be named, without knowing who was paid, under what arrangement, and how much.

The surviving requests under the narrowed Nevada Subpoena serve distinct purposes. The compensation agreements establish the contractual entitlement: how each attorney's compensation is set, whether it depends on firm profitability, and whether the arrangement is one of employment or of participation in firm earnings. The aggregate compensation records establish what was



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

actually paid and to whom. Neither substitutes for the other. Together they are what the Trustee needs to determine whether claims exist and against whom, which is the quintessential Rule 2004 inquiry—"discovering assets, examining transactions, and determining whether wrongdoing has occurred." *Washington Mutual*, 408 B.R. at 50.

Quintairos' answer is that the Trustee should take its word for the aggregate and forgo the names. It offered to describe the payments while withholding the recipients, declined to identify them, and declined to toll the claims of the people it would not identify. A nonparty may not condition court-ordered discovery on the requesting party's agreement to abandon the claims that discovery would reveal.

**C. <u>The Nevada Subpoena Properly Commands Quintairos' Compliance in Nevada.</u>**

Rule 2004 authorizes this Court, on a party in interest's motion, to "order the examination of any entity," and that examination may reach the acts, conduct, property, liabilities, and financial condition of the debtor, as well as any matter affecting the administration of the estate. Fed. R. Bankr. P. 2004(a), (b). "Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information." Fed. R. Bankr. P. 2004(c). Rule 9016 provides that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Rule 45 ties compliance to the subpoenaed person's location: documents may be commanded "at a place within 100 miles of where the person resides, is employed, **or regularly transacts business in person**," Fed. R. Civ. P. 45(c)(2)(A) (emphasis added), and attendance may be commanded "within 100 miles" of the same, Fed. R. Civ. P. 45(c)(1)(A).

A multi-office entity is located, for these purposes, wherever it maintains an office at which it regularly transacts business in person. Fed. R. Civ. P. 45(c)(2)(A); *In Conservation Law Foundation, Inc. v. Equilon Enterprises LLC*, 2025 WL 2821238, at *1-2 (D.R.I. Oct. 3, 2025) (overruling an objection that compliance for the subpoenaed nonparty had to fall within one hundred miles of its headquarters). The rule is not confined to corporate headquarters; a regional office "constitutes a place where it 'regularly transacts business in person' for purposes of Rule 45(c)(2)(A)," and a headquarters-only reading "ignores the plain language of the Rule." *Id.*



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

The Nevada Subpoena was served on Quintairos at its office in Henderson, Nevada, as well on at its Nevada resident agent, and the stated place of compliance is within 100 miles of that location. Quintairos regularly transacts business in person at its Henderson, Nevada office. Gray Kozlowski Decl. ¶ 13. Both the production command and the attendance command therefore satisfy Rule 45(c). The Trustee issued the Nevada Subpoena to that office for the express purpose of meeting Quintairos' own objection, and served it *prior* to Quintairos filing the Florida Motion, which is the course the rules contemplate. *See Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657, 662–63 (E.D. Ky. 2022) (modifying subpoenas so that production would occur at a local office rather than a distant one, and describing that change in the place of compliance as "a fair compromise" that satisfied "the plain language" of Rule 45(c)(2)(A)).

Quintairos' argument that *York Holding, Ltd. v. Waid*, 345 F.R.D. 626 (D. Nev. 2024) broadly holds "[t]he place 'where compliance is required' for a subpoena directed to a non-party is tethered to the location of the subpoenaed non-party under FRCP 45(c), not to the location the issuing party writes on the face of the subpoena," is simply wrong because facts matter. In *York Holdings*, the subpoenaed non-party business maintained *no* presence, transacted *no* business, and had *no* representative residing, working, or regularly conducting business in Nevada. *Id.*, 345 F.R.D. at 630. Printing Nevada as the "place of compliance" on the subpoena was insufficient under those facts. Those are not the facts here. Quintairos maintains a presence, transacts business, and has multiple representatives residing, working, and regularly conducting business in Nevada. Quintairos' Nevada office plainly falls within Rule 45.

**D. <u>The Narrowed Discovery Does Not Circumvent Discovery in Any Pending Adversary Proceeding or Contested Matter.</u>**

The basis on which Quintairos relies in its two-sentence motion to quash — the pending-proceeding rule, *see* Rule 60(b) Motion, at 22 — does not reach the discovery the Trustee asks the Court to enforce.

Under the pending proceeding rule, "once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 et



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

seq., rather than by a [Rule] 2004 examination." *In re Washington Mutual, Inc*., 408 B.R. 45, 50 (Bankr. D. Del. 2009) (citation omitted). The rule protects the procedural safeguards that attach to a pending action; where no action is pending, there are no safeguards to circumvent.

The Trustee has commenced no adversary proceeding against Quintairos. The only contested matter now pending is the one Quintairos filed on October 7, 2026 [ECF No. 1007], which principally seeks relief from this Court's confirmation-related orders, removal of the Trustee, and disqualification of his counsel. The narrowed discovery seeks none of the material at issue in that contested matter, and enforcing it displaces no procedure available to Quintairos there.

Further, Quintairos' position has depended on which letter one reads. On September 14, 2026, its counsel was "unaware of any analysis completed that sought to crystalize QPWB's legally supportable, causally attributable exposure" and could not tell "exactly what QPWB did that would give rise to any malpractice claim." Gray Kozlowski Decl., Ex. G at 1–2, 4. Nine days later, the Trustee had "long ago crossed the line from preliminary investigation into active pursuit of claims" and already had everything he needed. *Id.,* Ex. I at 1–2. The first position cannot support the Extortion Letter's demand that the claims be withdrawn, and the second cannot support withholding the documents this Court authorized the Trustee to obtain. Both cannot be true.

The authorities on which Quintairos relies denied Rule 2004 discovery where the movant already possessed the information it sought or was in a position to sue on the very claims the discovery would support. *See* Florida Mot. ¶¶ 38–43 (*citing In re GHR Energy Corp., In re Defoor Centre, LLC, and In re Wilcher*). Neither circumstance describes the transferee inquiry here, in which the party resisting discovery is the only source of the information needed to determine whether a separate set of claims exists and against whom it could be asserted.

If there is a distinction that matters, it is between the two subjects of the Trustee's investigation. The malpractice-related claims against Quintairos are developed to the extent of the information the Trustee has been able to obtain from Quintairos; however, the Extortion Letter now calls into question whether Quintairos actually complied with its obligations to disclose the client file. The potential fraudulent transfer and improper distribution claims, conversely, need to



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

be further developed. The Trustee does not know the identities of the attorneys whose compensation is at issue, the agreements that govern it, or the amounts they received. As limited on October 7, 2026, the subpoena is directed almost entirely to that second subject. Quintairos' own proposal—to describe those payments while withholding the recipients—confirms both that the documents exist and that the Trustee does not have them.

**E. <u>The October 8 Objections Do Not Excuse Production; They Are Why an Order Is Required.</u>**

A person commanded to produce documents may serve written objections, and the consequence is that the serving party may move the court for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B), (d)(2)(B)(i), made applicable by Fed. R. Bankr. P. 9016. Objections suspend the obligation to produce pending that order; they do not resolve whether the subpoena is enforceable. The Trustee has done what the rule contemplates by moving to compel.

Quintairos asserts that the Florida Motion "stayed" its obligations, citing Southern District of Florida Local Rule 2004-1, including under the Nevada Subpoena. No court has entered a stay. A motion to quash directed to the Florida subpoena, filed in another district, does not by its own force suspend a separate, properly served subpoena that commands compliance in Nevada. A party may not create a stay by asserting one.

The objections based on service and timing do not withstand examination either, and in any event are cured by the relief the Trustee requests. Rule 45(b)(1) permits service by any person who is not a party and is at least eighteen years old; an employee of the Trustee's counsel is not a party. Quintairos received the Nevada Subpoena, appeared through counsel, met and conferred about it four times, and served sixty-four pages of objections to it; it identifies no prejudice from the manner of service. More importantly, however, other than location and times, the Nevada Subpoena seeks the same document requests as the Florida Subpoena and as such, any temporal objection is form over substance. Beyond that, where a subpoena is actually received in time and the recipient is not prejudiced, technical service complaints do not defeat the discovery. *See Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657, 658-61 (E.D. Ky. 2022). As for the time allowed,



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Rule 45 fixes no minimum compliance period; the fourteen days to which Quintairos points is the deadline for serving objections, which Quintairos met. Fed. R. Civ. P. 45(d)(2)(B). The Trustee asks the Court to set a new date certain, which answers the objection on its own terms.

### F. The Nevada Subpoena, as Limited by the October 7 Letter, Is Proportionate.

The Nevada Subpoena, as voluntarily limited by the Trustee's October 7, 2026 letter, is reasonable in scope and should be enforced as so limited. A subpoena must not impose an undue burden, and the court may quash or modify one that does. Fed. R. Civ. P. 45(d)(1), (d)(3), made applicable by Fed. R. Bankr. P. 9016. Burden is measured against what the subpoena commands at the time of enforcement.

The Trustee asks the Court to enforce only what survives his own concessions. The October 7, 2026 letter replaced eleven requests with two and withdrew six more without prejudice. Gray Kozlowski Decl., Ex. K. What remains is confined to a defined population—the attorneys Quintairos itself describes as "rainmakers" or heads of "business units"—two categories of documents, and three identified periods; and the second category asks only for documents sufficient to show aggregate compensation rather than every underlying payment record.

What is left are Quintairos' own agreements and its own compensation records, for a group of attorneys Quintairos has already counted and described. Sixty-four pages of objections do not identify a single document that would be difficult to locate, a system that would have to be searched, or an hour that would have to be spent; they assert burden without quantifying it. To the extent Quintairos contends those materials are confidential, the Trustee does not dispute that compensation terms may warrant protection and ***consents to production subject to an appropriate protective order***. Confidentiality is a reason to protect documents, not to withhold them.

### G. The Trustee Has Addresses Each Stated Objection, and Production Has Not Followed.

The Court should weigh Quintairos' remaining objections against what the record shows about how its objections function.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

The client file is the baseline. The Trustee was the sole holder of the privilege and the owner of the file, and Quintairos had no colorable basis to withhold it. It took three written demands over more than four months—October 6, 2025, December 17, 2025, and a "THIRD AND FINAL DEMAND" on January 7, 2026—to obtain it, with the December demand drawing no response at all, and with entire categories of documents missing from the interim production. Gray Kozlowski Decl., Exs. A–C.

The Rule 2004 discovery has followed the same course. Quintairos moved to quash in Florida on September 29, 2026. Quintairos objected to breadth, and on October 7, 2026 the Trustee cut eleven requests to two and withdrew six more. That same day, Quintairos asked this Court to set aside the Confirmation Order as applied to it, to remove the Trustee, to disqualify his counsel, and to stay the examinations and any litigation against it [ECF No. 1007]. On October 8, 2026, it served sixty-four pages of objections refusing to produce anything. The Rule 60(b) Motion is primarily addressed to orders entered a year earlier, in a case in which Quintairos concedes it "never appeared." *Id.* at 2.

Whatever Quintairos' purpose, the practical consequence of its successive objections and its request for a stay is not in doubt: the Trustee remains unable to obtain information this Court authorized him to obtain, while the limitations period approaches. If compliance waits on the resolution of successive motions in successive forums, the Trustee will be required to decide whom to sue, and whether to sue, without necessary information. And one thing is certain, any claims brought on "information and belief" will certainly be met with a Rule 12(b) motion to dismiss. Quintairos is trying to deprive the Trustee with his ability to fully develop his claims prior to an impending limitation deadline.

**H. <u>Expedited Compliance Is Necessary to Avoid Concrete Prejudice.</u>**

The Court should order compliance on an expedited schedule, because the Trustee's ability to fully and accurately assert the claims under investigation depends on obtaining this information before the limitations period expires.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

The most conservative date on which the limitations period on the estates' malpractice claims against Quintairos could run is November 23, 2026. Gray Kozlowski Decl. ¶ 11. The fraudulent transfer limitations period(s) are being reviewed by the Trustee, but in any event, a transfer claim must be asserted against a named transferee. Without the identities of the attorneys who received the payments at issue, the arrangements governing those payments, and the amounts paid, the Trustee cannot determine which transferees to name or whether a good-faith basis exists to name them. The Trustee offered to forgo the identities altogether in exchange for a tolling agreement from the unidentified recipients, which would have removed the prejudice; Quintairos declined.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## IV. CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the form of order attached hereto as Exhibit 3: (i) compelling Quintairos to produce the documents commanded by the Nevada Subpoena, as limited by the Trustee's October 7, 2026 letter, in Las Vegas, Nevada or electronically, on October 30, 2026, at 5:00 p.m.; (ii) compelling Quintairos to produce its person most knowledgeable for examination at the offices of Garman Turner Gordon LLP in Las Vegas, Nevada, in no event later than November 4, 2026, at 9:00 a.m. (Pacific Time); (iii) requiring Quintairos to serve a privilege log for any responsive document withheld on privilege or work-product grounds, within five (5) business days after the production deadline set forth above; (iv) providing that production may be made subject to an appropriate protective order or confidentiality designation, and that no confidentiality dispute shall delay production; and (v) granting such other and further relief as the Court deems just and proper, the Trustee reserving all rights to seek fees and costs.

Dated this 12th of October 2026.

GARMAN TURNER GORDON LLP

By: */s/ Gregory Garman*

GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000