# EXHIBIT L

EXHIBIT L

SNELL
& WILMER

**Charles E. Gianelloni**
**Partner**
O 702.784.5373 | F 702.784.5252
cgianelloni@@swlaw.com

October 8, 2026

**VIA EMAIL**

Gregory Garman, Esq.
Talitha Gray Kozlowski, Esq.
Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Phone: 725-777-3000
Email: ggarman@gtg.legal;
tgray@gtg.legal

Re: Objections to September 28, 2026, Subpoena for Examination and Production of Documents Pursuant to Bankr. P. 2004 and 9016 *In re Numale*, Case No. 25-10341-nmc (D. Nev.) ("**Nevada Subpoena**")

Counsel,

I write in response to the Nevada Subpoena issued to non-party Quintairos, Prieto, Wood & Boyer, P.A. ("**QPWB**") at its Henderson, Nevada satellite office on behalf of Michael Carmel, as Liquidating Trustee of the NuMale Liquidating Trust (the "**Trustee**") and hereby serve QPWB's written objections (the "**Objections**") pursuant to Federal Rule of Civil Procedure ("**FRCP**") 45(d)(2)(B), made applicable by Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 9016.

These Objections are served to preserve QPWB's objections within the time prescribed by FRCP 45(d)(2)(B). They do not waive QPWB's right to move to quash or modify the Subpoena or to seek a protective order. These objections are made out of an abundance of caution to preserve all rights and objections and QPWB does not waive any personal jurisdiction arguments by providing this response. QPWB's counsel met and conferred with the Trustee's counsel regarding the Nevada Subpoena on October 1, 5, and 6, 2026. Those efforts did not resolve the parties' dispute.

Rule 2004 discovery is improper in the present circumstances. The Trustee has already completed his investigation: he obtained and reviewed QPWB's client file for the *Sanchez* Action, received hundreds of pages of QPWB's company structure and financial documents under a non-disclosure agreement, interviewed QPWB, sent a 26-page demand letter with 39 exhibits stating that he was "prepared to file suit immediately," set a September 11, 2026 filing deadline, and served fraudulent transfer notices stating that he "may pursue these claims now." The Nevada Subpoena is an attempt to obtain pre-suit litigation discovery against an identified litigation target without the safeguards of the Federal Rules of Civil Procedure.


4934-7013-1927

SNELL
& WILMER



QPWB maintains that the Nevada Subpoena is ineffective on its face because it requires compliance in less than 14 days after it was issued. Service was also improper for Nevada Subpoena was also improperly provided to a QPWB without authority to accept service and that was done by an employee of the Trustee's counsel which was improper.

Moreover, the Nevada Subpoena is the Trustee's second Rule 2004 subpoena to QPWB. On September 18, 2026, the Trustee served a Rule 2004 subpoena on QPWB designating Miami, Florida, where QPWB is headquartered, as the place of compliance (the "**Florida Subpoena**"). After QPWB objected and requested a meet and confer by letter dated September 23, 2026, and immediately before QPWB moved to quash the Florida Subpoena, the Trustee served the substantially similar Nevada Subpoena on QPWB's Henderson, Nevada office, identifying the place of compliance as Las Vegas, Nevada. On September 29, 2026, QPWB, Eric Boyer, and Edward Prieto filed their Motion to Quash Subpoenas and for Protective Order in the United States Bankruptcy Court for the Southern District of Florida (the "**Florida Motion**"), which remains pending and which stayed QPWB's compliance obligations under the Florida Subpoena.

The Trustee cannot evade the pending Florida Motion, or the forum that FRCP 45 assigns to resolve it, by serving the same discovery at a different office and naming a different place of compliance. The District of Nevada has squarely held that the place of compliance remains the location of an entity's headquarters even if the face of the subpoena identifies another location as the place of compliance. *See York Holding, Ltd. v. Waid*, 345 F.R.D. 626, 628 (D. Nev. 2024). Accordingly, the S.D. of Florida, not the District of Nevada, remains the place of compliance for the Nevada Subpoena and QPWB's obligations to produce documents and sit for an examination are stayed under the Bankruptcy Court's Local Rules.

Individualized objections to each topic and production request follow on the accompanying pages.

Very truly yours,

Snell & Wilmer

*/s/ Charles E. Gianelloni*

Charles E. Gianelloni

Cc: Bob Olson bolson@swlaw.com;
Alex Fugazzi afugazzi@swlaw.com;
Joe Layzell jlayzell@swlaw.com


4934-7013-1927

## GENERAL OBJECTIONS

The following General Objections apply to the Subpoena in its entirety, including each Topic for Testimony (each a "**Topic**") and each Request for Production (each a "**Request**") set forth in Exhibit A to the Subpoena, and are incorporated by reference into each specific objection below as though fully set forth therein. The assertion of a specific objection does not waive any General Objection.

1. **Improper Place of Compliance.** QPWB objects to the Nevada Subpoena because Las Vegas, Nevada is not a proper place of compliance under FRCP 45(c). QPWB is a Miami-based law firm headquartered in Florida. Its corporate, governance, financial, and compensation records are maintained, and the persons most knowledgeable regarding the Topics reside, work, and regularly transact business, in Florida. The place "where compliance is required" for a subpoena directed to a non-party is tethered to the location of the subpoenaed non-party under FRCP 45(c), not to the location the issuing party writes on the face of the subpoena. *See York Holding, Ltd. v. Waid*, 345 F.R.D. 626, 628–30 (D. Nev. 2024) (rejecting the notion that a subpoenaing party may force a subpoenaed nonparty to litigate a subpoena-related dispute in an inconvenient district by simply listing that location on the face of the subpoena). Serving the Subpoena on QPWB's Henderson office does not change where QPWB, as an organization, is located or where the records and witnesses the Subpoena targets are found.

2. **Pendency of the Florida Motion.** QPWB objects to the Nevada Subpoena because it seeks the same examination and substantially similar documents that are the subject of the Florida Subpoena and the pending Florida Motion. The filing of the Florida Motion stayed QPWB's obligations to comply with the Florida Subpoena pending the Florida court's ruling. QPWB will not provide testimony or documents in response to the Nevada Subpoena that would moot, prejudice, or circumvent the relief sought in the Florida Motion.

3. **Duplicative Subpoena Issued to Circumvent the Florida Motion.** QPWB objects to the Subpoena as duplicative, harassing, and an improper attempt to forum-shop. The Nevada Subpoena seeks substantially the same eleven Topics and thirty-four Requests as the

Florida Subpoena, and was served immediately before QPWB filed the Florida Motion. The Trustee may not avoid a pending motion to quash, or the court FRCP 45(d)(3) designates to decide it, by serving the same discovery a second time at a different address. FRCP 45(d)(1) requires the Trustee to take reasonable steps to avoid imposing undue burden and expense on QPWB. Requiring QPWB to litigate the same discovery in two districts at once violates that duty.

**4. No Proper Rule 2004 Purpose; Improper End-Run Around the Federal Rules.** QPWB objects to the Subpoena because the Trustee has identified QPWB and its shareholders as litigation targets and has completed his pre-suit investigation, so Rule 2004 is unavailable. Rule 2004 may not be used to circumvent the procedural safeguards of the Federal Rules of Civil Procedure once a party is "in a position to file an action." *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983); *see also In re Defoor Ctr., LLC*, 634 B.R. 630, 632, 639–40 (Bankr. M.D. Fla. 2021); *In re Interpictures Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988). The Trustee settled with Beazley while preserving the Quintairos Claims, confirmed a plan providing that those claims will be prosecuted, obtained QPWB's client file, sent a demand letter "organized as [the] complaint will be," set a filing deadline, and served fraudulent transfer notices. The Subpoena itself defines "Quintairos Claims" to include "all claims asserted in the Trustee's demand correspondence to QPWB." The Trustee bears the burden of establishing good cause, which he cannot meet.

**5. Inconsistent Representations.** QPWB objects to the Subpoena because the Trustee's representation to the Court that a Rule 2004 examination is needed regarding the Debtors' acts, conduct, property, and litigation claims cannot be reconciled with his written representations to QPWB that his claims are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record" and that he is "prepared to file suit immediately." *See* Fed. R. Bankr. P. 9011(b)(3).

**6. Scope of Rule 2004.** QPWB objects to the Subpoena to the extent it seeks information outside the scope of Bankruptcy Rule 2004(b), which is limited to the debtor's acts, conduct, or property; the debtor's liabilities and financial condition; matters that may affect the

administration of the estate; and the debtor's right to a discharge. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). The scope of Rule 2004 is narrower still in this post-confirmation setting. *See In re Defoor Ctr*., 634 B.R. at 634. The majority of the Topics and Requests concern QPWB's own ownership, governance, compensation, tax, banking, and financial affairs, not the Debtors', and resemble a post-judgment debtor examination rather than a pre-litigation inquiry.

7. **Overbreadth.** QPWB objects to the Subpoena as overbroad and not reasonably limited in time or scope. Among other things, the Subpoena defines the "Transfer Period" to run from January 1, 2024 through the date of production, reaches back to 2022 and 2023 in several Requests, and employs definitions (including "Covered Lawyer," "Partner-Titled Lawyer," "QPWB Affiliate," "Family Member," and "Transfer") that sweep in numerous attorneys, entities, and family members with no connection to the Debtors or to the Sanchez Action.

8. **Undue Burden and Unreasonable Time to Comply.** QPWB objects to the Subpoena because it imposes an undue burden and fails to allow a reasonable time to comply. *See* FRCP 45(d)(1), (d)(3)(A)(i), (iv). The Subpoena, served September 28, 2026, demands the production of thirty-four categories of documents by October 8, 2026, ten days after service, and the preparation of one or more FRCP 30(b)(6) designees on eleven Topics for examination to occur from October 26, 2026.[1] A period of ten days or less is an unreasonable time to comply with a document subpoena. *See* LR 2004(b) (only permitting the clerk to sign an order for Rule 2004 discovery if the examination will take place more than fourteen days from the date the motion is filed); *BNSF Ry. Co. on behalf of United States v. Ctr. for Asbestos Related Disease, Inc.*, No. CV 19-40-M-DLC, 2022 WL 1442854, at *4 (D. Mont. May 6, 2022) (finding 10 days unreasonable).

9. **Relevance and Proportionality.** QPWB objects to the Subpoena to the extent it seeks information that is not relevant to any matter properly within the scope of Rule 2004 and is

---

[1] The parties agreed at their meet and confer that they would work together on an exam date to occur from October 26, 2026, subject to these objections and a motion to quash and for a protective order.

not proportional to any legitimate need of the Trustee. "[R]elevance alone is not sufficient to justify a Rule 2004 request." *In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017).

**10. Attorney-Client Privilege and Work Product.** QPWB objects to the Subpoena to the extent it seeks information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest or joint-defense doctrine, or any other applicable privilege or protection. *See* FRCP 45(d)(3)(A)(iii). This includes, without limitation, QPWB's internal conflict analyses, ethics consultations, settlement evaluations, internal law-firm communications, communications with QPWB's own counsel and insurers concerning the Trustee's claims, and materials prepared in anticipation of the litigation the Trustee has threatened since at least May 2026. The Trustee's receipt of the NuMale client file does not entitle him to QPWB's internal work product or to privileged communications concerning QPWB's representation of other clients, including the Individual NuMale Parties. Any inadvertent production of privileged or protected material shall not constitute a waiver. *See* FRCP 45(e)(2)(B).

**11. Confidential Commercial Information.** QPWB objects to the Subpoena to the extent it seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, including information concerning its ownership, capitalization, compensation structures, governance, financial condition, banking relationships, insurance, and internal policies. *See* FRCP 45(d)(3)(B)(i). QPWB further objects to the extent the Subpoena seeks documents previously provided to the Trustee under the parties' confidentiality and non-disclosure agreement (the "**NDA**"). QPWB does not waive any rights, protections, or remedies under the NDA. No confidential information will be produced absent an appropriate protective order.

**12. Privacy of Non-Parties.** QPWB objects to the Subpoena to the extent it seeks the private personal, financial, tax, and family information of QPWB's current and former attorneys and employees and their Family Members, none of whom is a debtor and most of whom have no connection to the Debtors or the Sanchez Action.

**13. Information Already in the Trustee's Possession or Available from Other Sources.** QPWB objects to the Subpoena to the extent it seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source. The Trustee obtained and reviewed QPWB's client file for the Sanchez Action, received company structure and financial documents under the NDA, and interviewed QPWB. The Trustee also is jointly prosecuting the Quintairos Claims with the Individual NuMale Parties, who are represented by the same counsel and are obligated under the confirmed plan to cooperate with the Trustee, and he has settled with Beazley. *See In re Duque*, 134 B.R. 679, 686 (Bankr. S.D. Fla. 1991).

**14. Statements of Willingness to Produce.** Any statement below that QPWB is willing to produce documents reflects QPWB's good-faith proposal during the parties' meet-and-confer discussions and is made subject to and without waiving these General Objections and the specific objections, subject to the entry of an appropriate protective order, and without conceding that the Nevada Subpoena is valid or that Las Vegas, Nevada is a proper place of compliance. Such statements do not waive the Florida Motion or QPWB's right to move to quash the Nevada Subpoena.

## OBJECTIONS TO DEFINITIONS

A. QPWB objects to the definitions of "You" and "Your" (Definition No. 21) as overbroad and unduly burdensome to the extent they include QPWB's "attorneys, accountants, advisors, representatives," and any entity in which QPWB has any interest or in which it holds any advisory or consulting role. QPWB responds only on its own behalf.

B. QPWB objects to the definitions of "Covered Lawyer" (Definition No. 3) and "Partner-Titled Lawyer" (Definition No. 10) as overbroad, vague, and ambiguous because they sweep in every attorney whose title at any time included "partner," "shareholder," "principal," or "director," regardless of equity ownership, governance rights, or any connection to the Debtors or the Sanchez Action, and because they presuppose committees and leadership roles QPWB does not concede exist.

C. QPWB objects to the definitions of "QPWB Affiliate" (Definition No. 13) and "Family Member" (Definition No. 7) as overbroad and invasive of the privacy of non-parties, and to the definition of "Transfer" (Definition No. 19) as overbroad because it includes every form of payment, including ordinary salary.

D. QPWB objects to the definition of "Transfer Period" (Definition No. 20) as overbroad and unreasonable because it is open-ended, runs through the date of production, and purports to sweep in agreements and policies executed or adopted at any time, and to the definition of "Representation Period" (Definition No. 16) as vague because it is tied to an unspecified termination date. The Transfer Period is also unreasonable because its start date is prior to the verdict in the Sanchez Action.

E. QPWB objects to the definition of "Quintairos Claims" (Definition No. 12) to the extent it presumes the validity of any claim. QPWB notes that the definition expressly includes "all claims asserted in the Trustee's demand correspondence to QPWB," confirming that the Subpoena is directed at identified litigation claims against an identified litigation target.

F. QPWB objects to the definitions of "Communications" (Definition No. 2) and "Document" (Definition No. 6) to the extent they exceed the scope of FRCP 26 and 34 and purport to require the collection of ephemeral, personal-device, or not-reasonably-accessible data. See FRCP 45(e)(1)(D).

**SPECIFIC OBJECTIONS TO TOPICS FOR TESTIMONY**

QPWB's specific objections to each Topic are set forth below. In light of the General Objections, the pending Florida Motion, and QPWB's forthcoming motion to quash, QPWB will not designate a witness to appear in Las Vegas, Nevada at this time.

**TOPIC NO. 1:**

> The documents produced in response to this subpoena, the search for them, and QPWB's document retention and litigation holds relating to the Sanchez Action and the Quintairos Claims.

**OBJECTION TO TOPIC NO. 1:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because QPWB's litigation holds and retention practices concerning the "Quintairos Claims" exist only because the Trustee has identified QPWB as a litigation target and demanded preservation in anticipation of suit; and

(b) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because QPWB's litigation-hold communications and the decisions underlying them were made by or at the direction of counsel in anticipation of the Trustee's threatened litigation.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 2:**

> QPWB's ownership structure, classes of shareholders and partners, governance bodies, and the authority and process for approving distributions during the Transfer Period.

**OBJECTION TO TOPIC NO. 2:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because QPWB's internal governance concerns the business affairs of a non-debtor law firm, not the Debtors' acts, conduct, or financial affairs;

(c) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's internal governance, ownership, and distribution-approval processes; and

(d) seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source, because QPWB already explained its relevant financial processes and protocols in a lengthy interview.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 3:**

The mechanics of each compensation component for QPWB's shareholders, practice group leaders, and partners during the Transfer Period.

**OBJECTION TO TOPIC NO. 3:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because the compensation of QPWB attorneys has no bearing on the Debtors' acts, conduct, property, or financial condition;

(c) is overbroad and not reasonably limited in time or scope, because it reaches every "partner" and "practice group leader" at a national firm, the vast majority of whom have no connection to the Sanchez Action;

(d) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's compensation structures and methodologies, the disclosure of which would cause competitive harm;

(e) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, including the compensation of individual QPWB attorneys; and

(f) seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source, because QPWB has already explained its relevant financial processes and protocols to the Trustee.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 4:**

QPWB Affiliates, and transactions between QPWB and any QPWB Affiliate or shareholder-related entity during the Transfer Period.

**OBJECTION TO TOPIC NO. 4:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because transactions between a non-debtor law firm and its affiliates have no connection to the Debtors;

(c) is overbroad and not reasonably limited in time or scope, because the definition of "QPWB Affiliate" sweeps in any entity in which any "Covered Lawyer" holds any interest and that received any payment from QPWB, and reaches back to January 1, 2023;

(d) is vague and ambiguous as to the undefined term "shareholder-related entity";

(e) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's vendor, lease, and services relationships; and

(f) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, including the business interests of individual QPWB attorneys.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 5:**

> The mechanics of shareholder and partner compensation and distributions, and how those payments were recorded on QPWB's books during the Transfer Period.

**OBJECTION TO TOPIC NO. 5:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because QPWB's internal accounting for attorney compensation has no bearing on the Debtors' acts, conduct, or financial affairs;

(c) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's general ledger and internal accounting practices; and

(d) seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source, because it duplicates Topic No. 3 and because QPWB has already explained its relevant financial processes and protocols to the Trustee.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 6:**

> Transfers to Covered Lawyers during the Transfer Period, including year-end distributions and any change in distribution practices on or after November 1, 2024.

**OBJECTION TO TOPIC NO. 6:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of

the Debtors' estates, because transfers by a non-debtor law firm to its own attorneys are not the Debtors' acts, conduct, or property;

(c) is overbroad and not reasonably limited in time or scope, because "Transfer" is defined to include every mode of payment, including salary, and "Covered Lawyer" reaches every officer, director, managing partner, practice group leader, and Sanchez Team member;

(d) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, including the individual compensation and distributions of each Covered Lawyer; and

(e) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's distribution practices.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 7:**

> QPWB's financial condition during the Transfer Period, including revenue, assets, liabilities, receivables, work in process, cash, debt, encumbrances, contingent liabilities, and projections.

**OBJECTION TO TOPIC NO. 7:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its

shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because Rule 2004 reaches the financial condition of the debtor, not of a non-debtor that the Trustee intends to sue;

(c) resembles a post-judgment debtor examination;

(d) is overbroad and not reasonably limited in time or scope, because it seeks every category of financial information without limitation, including "projections"; and

(e) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's revenues, receivables, work in process, cash, debt, and projections.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 8:**

> QPWB's professional liability insurance, the tender of the Sanchez-related claims, and each insurer's coverage position.

**OBJECTION TO TOPIC NO. 8:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly,

in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." In that same letter, the Trustee separately demanded disclosure of QPWB's professional liability insurance policies and its notices of claim to its insurers, the very information this Topic seeks, as a condition of delaying suit. The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. QPWB's insurance, its tender of claims, and its insurers' coverage positions bear only on the Trustee's anticipated malpractice action against QPWB and on the collectability of any judgment, and are matters for discovery, if at all, in that action;

(b) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because QPWB's tender communications and coverage analysis involve communications with and among counsel and work product prepared in anticipation of the Trustee's threatened litigation, and may be subject to the common-interest doctrine; and

(c) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including the terms of QPWB's insurance program.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 9:**

> QPWB's intake of the Sanchez Action, its conflict analysis, if any, and its relationship with Beazley.

**OBJECTION TO TOPIC NO. 9:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has already investigated and declared ready for filing the very conflict-of-interest theory this Topic seeks to explore. After obtaining and reviewing QPWB's client file for the Sanchez Action, the Trustee served his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be." That letter accuses QPWB of having "concealed a disqualifying conflict of interest from its nine clients for three years," and asserts that QPWB "never obtained a written engagement agreement with any of the nine defendants it represented, nor did it obtain a written conflict waiver from any of them." In that same letter, the Trustee declared that his claims are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has already articulated his conflict theory, declared it supported by an extensive evidentiary record, and set a date certain to file suit on it is not conducting a preliminary Rule 2004 investigation. QPWB's intake of the Sanchez Action, its conflict analysis, and its relationship with Beazley go only to the merits of the Trustee's anticipated malpractice action and belong in discovery, if at all, in that action;

(b) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because QPWB's conflict analysis and internal communications regarding intake reflect attorney mental impressions and internal law-firm deliberations; and

(c) seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source, because the Trustee already obtained and reviewed the QPWB client file for the Sanchez Action, and has access to Beazley and the Individual NuMale Parties, who are obligated to cooperate with him.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**<u>TOPIC NO. 10:</u>**

> QPWB's settlement evaluations and recommendations in the Sanchez Action and their communication to Beazley and the NuMale Defendants during the Sanchez Action.

**<u>OBJECTION TO TOPIC NO. 10:</u>**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has already investigated, articulated, and declared ready for filing the very settlement-evaluation theory this Topic seeks to explore. After obtaining and reviewing QPWB's client file for the Sanchez Action, the Trustee served his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be." That letter accuses QPWB of having "privately told the carrier to pay $950,000 to settle the case while concealing that same information from its own clients." It also attaches as

its first exhibit a QPWB attorney's October 24, 2024 text message regarding that settlement recommendation. In that same letter, the Trustee declared that his claims are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has already articulated his settlement-recommendation theory, identified the evidence on which he relies for it, and set a date certain to file suit on it is not conducting a preliminary Rule 2004 investigation. QPWB's settlement evaluations and recommendations in the Sanchez Action, and their communication to Beazley and the NuMale Defendants, go only to the merits of the Trustee's anticipated malpractice action and belong in discovery, if at all, in that action;

(b) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because settlement evaluations and recommendations reflect attorney mental impressions, conclusions, opinions, and legal theories;

(c) seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source, because the Trustee already possesses the Sanchez client file, including the communications of QPWB's evaluations and recommendations to its clients, and has access to Beazley and the Individual NuMale Parties.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**TOPIC NO. 11:**

QPWB's response, analysis, and internal application of the Rael Order.

**OBJECTION TO TOPIC NO. 11:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos.

1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Topic on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has already investigated, articulated, and declared ready for filing the very Rael Order theory this Topic seeks to explore. The Trustee's May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," already relies on the Rael Order. It attaches the Rael Order as an exhibit. It demands QPWB's communications with its insurers regarding the Rael Order and the preservation of all Rael-related communications. It also asserts that the Trustee's claims are supported by "judicial findings of identical misconduct by the same firm and same named partner in a case before the same judge." In that same letter, the Trustee declared that his claims are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has already incorporated the Rael Order into his theory of liability, attached it as evidence, and set a date certain to file suit is not conducting a preliminary Rule 2004 investigation. QPWB's response to, analysis of, and internal application of the Rael Order go only to the merits of the Trustee's anticipated malpractice action and belong in discovery, if at all, in that action;

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because the Rael Order arose from an unrelated New Mexico matter that did not involve the Sanchez Action or the Debtors and has no bearing on the Debtors' acts, conduct, or property; and

(c) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because QPWB's "analysis" and "internal application" of a court order necessarily consist of internal attorney deliberations and work product.

Based on the foregoing objections, QPWB will not designate a witness to testify regarding this Topic.

**SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

> QPWB's articles of incorporation, shareholder agreements, stock purchase, redemption, or buy-sell agreements, and all amendments, in effect at any time during the Transfer Period.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 1:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now"; and

(b) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including the private terms of QPWB's shareholder, redemption, and buy-sell arrangements.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

> Documents sufficient to show the formation, ownership, and function of any entity using the name "Quintairos, Prieto, Wood & Boyer" or any variation (including any professional corporation, P.C., or PLLC) or any Affiliate, and each payment between QPWB and any such entity during the Transfer Period.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 2:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because it is aimed at the Trustee's threatened fraudulent transfer and unlawful distribution theories against QPWB and its shareholders, which the Trustee has already articulated in his September 10, 2026 notices stating that he "may pursue these claims now";

(b) is overbroad and not reasonably limited in time or scope, because it reaches any "Affiliate" (an undefined term distinct from the defined term "QPWB Affiliate") and "each payment" without any dollar or subject-matter limitation;

(c) is vague and ambiguous as to the undefined terms "Affiliate," "function," and "any variation"; and

(d) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, including QPWB's intercompany payments.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**<u>REQUEST FOR PRODUCTION NO. 3: (replaced per October 7 letter)</u>**

> For the 80 to 100 attorneys described by QPWB as "rainmakers" or as heads of "business units" within QPWB, produce the: (i) agreement between QPWB and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 3 (as replaced):**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. The individual compensation agreements and aggregate compensation of 80 to 100 QPWB attorneys have nothing to do with whether the Trustee's claims exist. They are sought only to gauge the collectability of a judgment the Trustee has not obtained, and to support the fraudulent transfer and unlawful distribution theories the Trustee has already asserted against QPWB's

shareholders in his September 10, 2026 notices. That information belongs in discovery, if at all, in the action the Trustee has threatened, or in post-judgment proceedings;

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because the compensation terms and pay of QPWB's attorneys concern only the private business affairs of a non-debtor law firm. The Request does not ask for anything about the Debtors, their assets, or their estates. It asks only how much a non-debtor pays its own lawyers, which goes to the depth of QPWB's pockets and not to any matter Rule 2004 reaches. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). *See* General Objection Nos. 6 and 9;

(c) is overbroad and not reasonably limited in time or scope, because it reaches 80 to 100 attorneys across QPWB's national offices, the overwhelming majority of whom had no involvement in the Sanchez Action, no connection to the Debtors, and no role in any transfer the Trustee challenges. The Request seeks every such attorney's governing agreement, without limitation to any provision bearing on any issue in this case;

(d) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to identify, collect, and review individually negotiated agreements, amendments, and side letters for as many as 100 attorneys. It would also require QPWB to compile three years of individualized compensation data from payroll and accounting records, all within a compliance period of ten days or less. That burden is disproportionate where the information sought has no bearing on the administration of the Debtors' estates and the Trustee has declared his claims ready for filing without it. *See* General Objection No. 8;

(e) is vague and ambiguous, because the terms "rainmakers" and heads of "business units" are informal descriptions used during the parties' confidential settlement discussions, not defined terms in the Subpoena, and they do not correspond to any formal title, class, or category of attorney at QPWB. The phrase "other rights with respect to QPWB" is undefined and presupposes that such

attorneys hold governance, ownership, or other rights in QPWB, which QPWB does not concede. The phrase "aggregate compensation" is also ambiguous: it is unclear whether it means each attorney's total individual compensation, the combined compensation of the group, or something else;

(f) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because the compensation structures, formulas, and individually negotiated terms by which a law firm recruits, retains, and pays its lawyers are among the most commercially sensitive information it has. Disclosure of those terms, and of what QPWB pays each of its attorneys, would expose QPWB to serious competitive harm in the market for legal talent and in its client relationships. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

(g) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, because it demands the individually negotiated contract terms and personal compensation of up to 100 attorneys who are not parties to this proceeding, are not alleged to have received any transfer the Trustee challenges, and have no relationship to the Debtors or the Sanchez Action. QPWB maintains this information in confidence as their employer, and its compelled disclosure under a Rule 2004 subpoena, without any notice to those individuals, would serve no legitimate estate purpose; and

(h) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, to the extent any responsive document reflects or contains legal advice to QPWB concerning the structure of its attorney compensation arrangements, the rights of its attorneys, or the firm's governance, or was prepared by or at the direction of counsel in anticipation of the litigation the Trustee has threatened since at least May 2026.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 4: (replaced per October 7 letter)**

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2024 calendar year, produce Documents sufficient to show:

(i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 4:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. On September 10, 2026, the Trustee also served notices asserting fraudulent transfer and unlawful distribution claims and stating that he "may pursue these claims now." A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. This Request seeks a schedule of QPWB's outgoing payments solely to search for additional transfers to challenge and additional transferees to pursue in the litigation the Trustee has threatened. That is litigation discovery, and it is not available under Rule 2004;

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of

the Debtors' estates, because it seeks the payment records of a non-debtor law firm. It does not even track the Trustee's own transfer theory. The Trustee's September 10, 2026 notices assert claims against QPWB's shareholders "on account of the profit distributions or other distributions of firm earnings since November 2024." This Request is not limited to shareholders, to distributions, or to that period. It reaches every person, trust, or entity that received $250,000 or more from QPWB at any time in 2024, including vendors, landlords, lenders, insurers, taxing authorities, employees, clients, and other payees. None of these is a shareholder of QPWB, none has been identified as a target of any claim, and none has any connection to the Debtors. Payments by a non-debtor to its own ordinary-course counterparties are not the Debtors' acts, conduct, or property. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985);

(c) is overbroad and not reasonably limited in time or scope, because it seeks a transferee-by-transferee accounting of QPWB's outgoing payments for all of calendar year 2024. That period includes the ten months preceding November 2024, a period outside even the Trustee's own asserted theory. The Request is not limited by payee category, by type of payment, by purpose, or by any connection to the Sanchez Action, the Debtors, or any claim the Trustee has identified. As defined in the Subpoena, "You" sweeps in QPWB's agents, employees, attorneys, accountants, advisors, and any entity in which QPWB has any interest. As a result, the Request purports to reach transfers by persons and entities other than QPWB itself;

(d) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to analyze an entire year of firm-wide disbursements from its accounting, payroll, and banking records. QPWB would have to aggregate payments by recipient to apply the $250,000 threshold, then document the identity, amount, date, and "reason" for each qualifying transferee, all within a compliance period of ten days or less. Subpart (iv) further requires QPWB to create a narrative explanation of the business purpose of each payment. A Rule 45 subpoena commands the production of existing documents; it does not require the responding non-party to create new ones. That burden is disproportionate where the information

has no bearing on the administration of the Debtors' estates and the Trustee has declared his claims ready for filing without it;

(e) is vague and ambiguous, because the term "reason for the transfer(s)" is undefined and does not identify what level of explanation, or what documents, would satisfy it. The phrase "in the aggregate" does not state whether aggregation is to be measured by payee, by related payees, or across the persons and entities encompassed by the definition of "You." The definition of "Transfer," which includes "every mode, direct or indirect, of disposing of or parting with money," renders it unclear whether pass-through disbursements and payments made on behalf of clients fall within the Request. Neither the Request nor the definition addresses the many disbursements a law firm makes in the ordinary course that do not dispose of the firm's own property, such as remittances from client trust accounts;

(f) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because the identities of QPWB's vendors, landlords, lenders, and other counterparties, the amounts QPWB pays each of them, and the purposes of those payments reveal QPWB's cost structure, business relationships, and commercial terms. Disclosure of that information would cause QPWB serious competitive harm. Much of it is also subject to confidentiality obligations owed to the counterparties themselves. *See* Fed. R. Civ. P. 45(d)(3)(B)(i);

(g) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, because it demands the identities of, and the amounts paid to, individual employees, attorneys, and other natural persons who are not shareholders of QPWB, are not alleged to have received any transfer the Trustee challenges, and have no relationship to the Debtors or the Sanchez Action. QPWB maintains this information in confidence as their employer or counterparty, and its compelled disclosure under a Rule 2004 subpoena, without any notice to those individuals, would serve no legitimate estate purpose; and

(h) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, and confidential client information, to the extent it encompasses disbursements

to or for the benefit of QPWB's clients, including settlement and trust-account disbursements. The identity of a client, the existence and amount of a settlement or disbursement, and the "reason" for it may reveal confidential client information that QPWB is obligated to protect and has no authority to disclose. The Request also seeks protected material to the extent any responsive document reflects legal advice to QPWB or was prepared by or at the direction of counsel in anticipation of the litigation the Trustee has threatened since at least May 2026.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 5: (replaced per October 7 letter)**

> For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2025 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 5:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement

term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. On September 10, 2026, the Trustee also served notices asserting fraudulent transfer and unlawful distribution claims and stating that he "may pursue these claims now." A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. This Request seeks a schedule of QPWB's outgoing payments solely to search for additional transfers to challenge and additional transferees to pursue in the litigation the Trustee has threatened. That is litigation discovery, and it is not available under Rule 2004;

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because it seeks the payment records of a non-debtor law firm. It does not even track the Trustee's own transfer theory. The Trustee's September 10, 2026 notices assert claims against QPWB's shareholders "on account of the profit distributions or other distributions of firm earnings since November 2024." This Request is not limited to shareholders, to distributions, or to that period. It reaches every person, trust, or entity that received $250,000 or more from QPWB at any time in 2025, including vendors, landlords, lenders, insurers, taxing authorities, employees, clients, and other payees. None of these is a shareholder of QPWB, none has been identified as a target of any claim, and none has any connection to the Debtors. Payments by a non-debtor to its own ordinary-course counterparties are not the Debtors' acts, conduct, or property. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985);

(c) is overbroad and not reasonably limited in time or scope, because it seeks a transferee-by-transferee accounting of QPWB's outgoing payments for all of calendar year 2025. The Request is not limited by payee category, by type of payment, by purpose, or by any connection to the Sanchez Action, the Debtors, or any claim the Trustee has identified. As defined in the Subpoena, "You" sweeps in QPWB's agents, employees, attorneys, accountants, advisors, and any

entity in which QPWB has any interest. As a result, the Request purports to reach transfers by persons and entities other than QPWB itself;

(d) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to analyze an entire year of firm-wide disbursements from its accounting, payroll, and banking records. QPWB would have to aggregate payments by recipient to apply the $250,000 threshold, then document the identity, amount, date, and "reason" for each qualifying transferee, all within a compliance period of ten days or less. Subpart (iv) further requires QPWB to create a narrative explanation of the business purpose of each payment. A Rule 45 subpoena commands the production of existing documents; it does not require the responding non-party to create new ones. That burden is disproportionate where the information has no bearing on the administration of the Debtors' estates and the Trustee has declared his claims ready for filing without it;

(e) is vague and ambiguous, because the term "reason for the transfer(s)" is undefined and does not identify what level of explanation, or what documents, would satisfy it. The phrase "in the aggregate" does not state whether aggregation is to be measured by payee, by related payees, or across the persons and entities encompassed by the definition of "You." The definition of "Transfer," which includes "every mode, direct or indirect, of disposing of or parting with money," renders it unclear whether pass-through disbursements and payments made on behalf of clients fall within the Request. Neither the Request nor the definition addresses the many disbursements a law firm makes in the ordinary course that do not dispose of the firm's own property, such as remittances from client trust accounts;

(f) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because the identities of QPWB's vendors, landlords, lenders, and other counterparties, the amounts QPWB pays each of them, and the purposes of those payments reveal QPWB's cost structure, business relationships, and commercial terms. Disclosure of that information would cause QPWB serious competitive harm. Much of it is also subject to

confidentiality obligations owed to the counterparties themselves. *See* Fed. R. Civ. P. 45(d)(3)(B)(i);

(g) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, because it demands the identities of, and the amounts paid to, individual employees, attorneys, and other natural persons who are not shareholders of QPWB, are not alleged to have received any transfer the Trustee challenges, and have no relationship to the Debtors or the Sanchez Action. QPWB maintains this information in confidence as their employer or counterparty, and its compelled disclosure under a Rule 2004 subpoena, without any notice to those individuals, would serve no legitimate estate purpose; and

(h) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, and confidential client information, to the extent it encompasses disbursements to or for the benefit of QPWB's clients, including settlement and trust-account disbursements. The identity of a client, the existence and amount of a settlement or disbursement, and the "reason" for it may reveal confidential client information that QPWB is obligated to protect and has no authority to disclose. The Request also seeks protected material to the extent any responsive document reflects legal advice to QPWB or was prepared by or at the direction of counsel in anticipation of the litigation the Trustee has threatened since at least May 2026.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 6: (replaced per October 7 letter)**

> For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, since January 1, 2026, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 6:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos.

1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. On September 10, 2026, the Trustee also served notices asserting fraudulent transfer and unlawful distribution claims and stating that he "may pursue these claims now." A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. This Request seeks a schedule of QPWB's outgoing payments solely to search for additional transfers to challenge and additional transferees to pursue in the litigation the Trustee has threatened. That is litigation discovery, and it is not available under Rule 2004;

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because it seeks the payment records of a non-debtor law firm. It does not even track the Trustee's own transfer theory. The Trustee's September 10, 2026 notices assert claims against QPWB's shareholders "on account of the profit distributions or other distributions of firm earnings since November 2024." This Request is not limited to shareholders, to distributions, or to that period. It reaches every person, trust, or entity that received $250,000 or more from QPWB at any time in 2026, including vendors, landlords, lenders, insurers, taxing

authorities, employees, clients, and other payees. None of these is a shareholder of QPWB, none has been identified as a target of any claim, and none has any connection to the Debtors. Payments by a non-debtor to its own ordinary-course counterparties are not the Debtors' acts, conduct, or property. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985);

(c) is overbroad and not reasonably limited in time or scope, because it seeks a transferee-by-transferee accounting of QPWB's outgoing payments since January 1, 2026. The Request is not limited by payee category, by type of payment, by purpose, or by any connection to the Sanchez Action, the Debtors, or any claim the Trustee has identified. As defined in the Subpoena, "You" sweeps in QPWB's agents, employees, attorneys, accountants, advisors, and any entity in which QPWB has any interest. As a result, the Request purports to reach transfers by persons and entities other than QPWB itself;

(d) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to analyze an entire year of firm-wide disbursements from its accounting, payroll, and banking records. QPWB would have to aggregate payments by recipient to apply the $250,000 threshold, then document the identity, amount, date, and "reason" for each qualifying transferee, all within a compliance period of ten days or less. Subpart (iv) further requires QPWB to create a narrative explanation of the business purpose of each payment. A Rule 45 subpoena commands the production of existing documents; it does not require the responding non-party to create new ones. That burden is disproportionate where the information has no bearing on the administration of the Debtors' estates and the Trustee has declared his claims ready for filing without it;

(e) is vague and ambiguous, because the term "reason for the transfer(s)" is undefined and does not identify what level of explanation, or what documents, would satisfy it. The phrase "in the aggregate" does not state whether aggregation is to be measured by payee, by related payees, or across the persons and entities encompassed by the definition of "You." The definition of "Transfer," which includes "every mode, direct or indirect, of disposing of or parting with money,"

renders it unclear whether pass-through disbursements and payments made on behalf of clients fall within the Request. Neither the Request nor the definition addresses the many disbursements a law firm makes in the ordinary course that do not dispose of the firm's own property, such as remittances from client trust accounts;

(f) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because the identities of QPWB's vendors, landlords, lenders, and other counterparties, the amounts QPWB pays each of them, and the purposes of those payments reveal QPWB's cost structure, business relationships, and commercial terms. Disclosure of that information would cause QPWB serious competitive harm. Much of it is also subject to confidentiality obligations owed to the counterparties themselves. *See* Fed. R. Civ. P. 45(d)(3)(B)(i);

(g) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, because it demands the identities of, and the amounts paid to, individual employees, attorneys, and other natural persons who are not shareholders of QPWB, are not alleged to have received any transfer the Trustee challenges, and have no relationship to the Debtors or the Sanchez Action. QPWB maintains this information in confidence as their employer or counterparty, and its compelled disclosure under a Rule 2004 subpoena, without any notice to those individuals, would serve no legitimate estate purpose; and

(h) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, and confidential client information, to the extent it encompasses disbursements to or for the benefit of QPWB's clients, including settlement and trust-account disbursements. The identity of a client, the existence and amount of a settlement or disbursement, and the "reason" for it may reveal confidential client information that QPWB is obligated to protect and has no authority to disclose. The Request also seeks protected material to the extent any responsive document reflects legal advice to QPWB or was prepared by or at the direction of counsel in anticipation of the litigation the Trustee has threatened since at least May 2026.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 7:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 8:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 9:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 10:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 11:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 12:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 13:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 14:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 15:**

QPWB's annual and interim financial statements (audited, reviewed, compiled, or internal), including balance sheets, income statements, statements of cash flows, notes, auditor or accountant reports, and management letters, for fiscal year 2023 through the most recent period available.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 15:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos.

1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. QPWB's financial statements also do nothing to establish whether the Trustee has a claim. Whether QPWB committed malpractice in the Sanchez Action turns on QPWB's conduct of that representation, not on QPWB's revenues, assets, or cash flows. A law firm's balance sheet neither proves nor disproves a breach of duty, causation, or damages. The only purpose QPWB's financial statements could serve is to tell the Trustee how much QPWB is worth, and therefore how much he might collect on a judgment he has not obtained. That is what post-judgment discovery in aid of execution is for. Rule 2004 serves a different purpose;

(b) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because it seeks the complete financial statements of a non-debtor. Rule 2004 permits examination into "the debtor's liabilities and financial condition," not the financial condition of a non-debtor that the Trustee intends to sue. Fed. R. Bankr. P. 2004(b)(1). QPWB's financial statements say nothing about the Debtors' assets, liabilities, or conduct, or about any

matter affecting the administration of the Debtors' estates. The Request is, in substance, a judgment-debtor examination of a party against whom no claim has been filed, let alone reduced to judgment. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). See General Objection Nos. 6 and 9;

(c) seeks documents or information already in the Trustee's possession or obtainable from a more convenient, less burdensome, or less expensive source, and is unnecessary to any theory the Trustee has asserted, because QPWB already provided the Trustee, under the parties' confidentiality and non-disclosure agreement, hundreds of pages of company structure and financial documents. In a lengthy interview, QPWB also explained its relevant financial processes and protocols and answered every question the Trustee's counsel posed. The Trustee has, moreover, already formulated and asserted his insolvency theory without these statements. His September 10, 2026 notices contend that QPWB was rendered insolvent by an asserted contingent liability "dwarfing its net worth," based on the alleged value of the very malpractice claims he has not filed. Having already asserted that theory, the Trustee cannot show that QPWB's financial statements are needed to determine whether any claim exists;

(d) is overbroad and not reasonably limited in time or scope, because it seeks every category of financial statement QPWB maintains, whether "audited, reviewed, compiled, or internal," and whether "annual" or "interim." It also demands all related notes, auditor and accountant reports, and management letters. The Request reaches back to fiscal year 2023, a period that precedes the Subpoena's own Transfer Period, which begins January 1, 2024. Fiscal year 2023 also precedes the November 2024 Sanchez verdict and the November 2024 starting point of the distributions the Trustee's September 10, 2026 notices target. The Request then extends forward without limit to "the most recent period available." It is not limited to any subject matter, account, or transaction bearing on any claim the Trustee has identified;

(e) is unduly burdensome and not proportional to any legitimate need of the Trustee, because the demand for "interim" and "internal" statements would require QPWB to collect every

periodic financial report its management and accounting personnel prepared over a period of nearly four years. QPWB would also have to collect related correspondence with its outside accountants, all within a compliance period of ten days or less. That burden is disproportionate where the information sought has no bearing on whether any claim exists or on the administration of the Debtors' estates, and the Trustee has declared his claims ready for filing without it;

(f) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because a privately held law firm's financial statements disclose its revenues, profitability, cost structure, receivables, cash position, debt, and compensation expense. That information is among the most sensitive a private professional-services firm maintains. Its disclosure would expose QPWB to serious competitive harm in its client relationships and in the market for legal talent. Disclosure would also give the Trustee a full view of QPWB's finances to use as settlement leverage;

(g) is vague and ambiguous, because the terms "internal" financial statements and "management letters" are undefined. The term "internal" could sweep in any spreadsheet, report, budget, or projection prepared by any QPWB employee. The phrase "most recent period available" does not identify whether it refers to the most recent annual, quarterly, monthly, or other period, or the date on which availability is to be measured; and

(h) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, to the extent any responsive financial statement, note, accountant report, or management letter reflects or incorporates the assessment of QPWB's counsel. This includes counsel's assessment of pending or threatened claims, including the claims the Trustee has threatened since at least May 2026, any loss-contingency evaluation, and any attorney response to an auditor's inquiry. Any such material was prepared by or at the direction of counsel in anticipation of litigation.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 16:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 17:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 18:**

For the time period January 1, 2022 through the present, each Sanchez Team lawyers' professional liability insurance policy (primary and excess), if separate or in addition to any policy issued to QPWB and in the possession of QPWB.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 18:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB and the individually named attorneys are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. Individual attorneys' professional liability policies bear only on the sources from which the Trustee might collect a judgment in his anticipated malpractice

action. They do not bear on whether any claim exists. The Federal Rules of Civil Procedure already provide the mechanism for obtaining such information once an action is commenced. *See* Fed. R. Civ. P. 26(a)(1)(A)(iv) (requiring disclosure of insurance agreements under which an insurer may be liable to satisfy a judgment). The Trustee may not use Rule 2004 to obtain in advance what the Federal Rules make available only in litigation;

(b) seeks documents not within QPWB's possession, custody, or control, because a professional liability policy issued to an individual attorney, separate from or in addition to any policy issued to QPWB, is a contract between that attorney and his or her insurer. QPWB is not a party to any such policy and has no right to obtain it. The Request's qualifier "in the possession of QPWB" does not cure this defect. It would require QPWB to search the personal files, devices, and records of individual attorneys to determine whether any such policy happens to be there. Several of those attorneys are no longer employed by QPWB;

(c) seeks information beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates, because the personal insurance arrangements of non-debtor attorneys say nothing about the Debtors' assets, liabilities, or conduct. Such policies are relevant, if at all, only to the collectability of a judgment against individuals the Trustee has not sued. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985);

(d) is overbroad and not reasonably limited in time or scope, because it reaches back to January 1, 2022, more than six months before Beazley's July 25, 2022 assignment of the Sanchez Action to QPWB. It then extends to "the present," nearly two years after QPWB's representation in the Sanchez Action concluded. The Request also incorporates the Subpoena's definition of "Sanchez Team," which sweeps in "each QPWB attorney, paralegal, or other timekeeper who recorded time to or performed work on the Sanchez Action," regardless of the extent or significance of that work. The definition therefore reaches paralegals and other non-lawyer timekeepers, as well as current and former attorneys whose involvement may have been minimal;

(e) is vague and ambiguous, because the phrase "if separate or in addition to any policy issued to QPWB" does not state whether the Request seeks only policies purchased by individual attorneys in their personal capacities. It is also unclear whether the Request seeks individual certificates, endorsements, or coverage extensions under QPWB's own policy, or both. The Request is further ambiguous in referring to "each Sanchez Team lawyers'" policies, because the defined term "Sanchez Team" includes non-lawyers;

(f) seeks private personal and financial information of non-parties who have not been subpoenaed and have no notice of the Subpoena, because individual professional liability policies disclose the personal insurance purchasing decisions, coverage limits, premiums, and claims history of individual attorneys. To the extent such information exists in QPWB's files at all, QPWB holds it in confidence, and its compelled disclosure under a Rule 2004 subpoena directed to QPWB would serve no legitimate estate purpose.; and

(g) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, to the extent the Request seeks policies that coordinate with, supplement, or sit in excess of QPWB's own professional liability program. Such policies would necessarily disclose the structure, limits, and terms of QPWB's insurance program. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 19:**

> All notices of claim, notices of circumstances, or tenders to any insurer relating to the Sanchez Action, any NuMale Defendant, or the Quintairos Claims, and all non-privileged Communications with any insurer or insurance broker relating to the tender, notice, or coverage of those matters.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 19:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos.

1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. This Request is a fishing expedition into QPWB's dealings with its insurers. It seeks material that would be discoverable, if at all, only after an action is commenced and subject to the relevance, proportionality, and privilege protections of the Federal Rules of Civil Procedure;

(b) seeks information that is not needed for the Trustee to determine whether he has a claim, and is therefore beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates. Notices of claim, notices of circumstances, tenders, and coverage communications are QPWB's reports to its own insurers about claims and potential claims made against QPWB. They are generated after the events giving rise to the asserted claims and, to a substantial degree, in response to the Trustee's own demands. They shed no light on whether QPWB's conduct of the Sanchez Action fell below any standard of care, on causation, or on damages. The Trustee cannot claim to need QPWB's notices to its insurers to learn whether claims exist that he himself has

already asserted. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985);

(c) seeks documents or information already demanded by the Trustee outside Rule 2004, confirming that the Request serves litigation and settlement purposes rather than any investigative need. In his May 18, 2026 demand letter, the Trustee demanded that QPWB and each individually named attorney produce "[a]ny notice of claim or potential claim previously submitted by QPWB or any individually named attorney to any insurer in connection with the Sanchez matter," together with "[c]ontact information for the claims adjuster or coverage counsel assigned to any such notice." He made that disclosure a condition of staying the filing of suit and required "the involvement of each professional liability insurer" in pre-litigation resolution discussions. The Trustee sought this information as settlement leverage before he served any Rule 2004 subpoena. He cannot now recast the same demand as a Rule 2004 investigation;

(d) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, and by the common-interest doctrine, because QPWB's notices, tenders, and communications with its insurers and broker concerning the Trustee's threatened claims were made in anticipation of litigation the Trustee has threatened since at least May 2026. They also reflect communications among QPWB, its counsel, and its insurers, who share a common legal interest in the defense of those claims. The Request's limitation to "non-privileged Communications" does not cure this objection. It would still require QPWB to collect and conduct a privilege review of every communication with every insurer and broker on these subjects. It also does not extend to the notices and tenders themselves, which the Request seeks without any privilege limitation;

(e) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to identify every insurer and broker with which it has communicated on these subjects, collect all such communications across custodians, and review each for privilege and work-product protection, all within a compliance period of ten days or less.

That burden is disproportionate where the material sought has no bearing on whether any claim exists and the Trustee has declared his claims ready for filing without it; and

(f) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because QPWB's communications with its insurers and broker disclose the structure, limits, terms, and claims history of QPWB's insurance program, and its relationships with its carriers. Disclosure would show the Trustee the full scope of QPWB's coverage, for use as settlement leverage. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

> All reservation-of-rights letters, coverage position letters, and denials of coverage issued by any insurer relating to the Sanchez Action, any NuMale Defendant, or the Quintairos Claims, and any coverage litigation or coverage analysis relating to them.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 20:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to

prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. This Request is a fishing expedition into QPWB's insurers' positions on coverage. It seeks material that would be discoverable, if at all, only after an action is commenced and subject to the relevance, proportionality, and privilege protections of the Federal Rules of Civil Procedure;

(b) seeks information that is not needed for the Trustee to determine whether he has a claim, and is therefore beyond the permissible scope of Rule 2004 and not relevant to the acts, conduct, property, liabilities, or financial condition of the Debtors or the administration of the Debtors' estates. A reservation-of-rights letter, coverage position letter, or denial of coverage states an insurer's contractual position regarding its own obligations to its insured. Such a letter is written by a third party, after the events giving rise to the asserted claims, and in response to claims the Trustee has already asserted. It sheds no light on whether QPWB's conduct of the Sanchez Action fell below any standard of care, on causation, or on damages. An insurer's coverage position goes only to whether, and from what source, the Trustee might collect on a judgment he has not obtained. It is the business of a non-debtor and its insurers, not of the Debtors' estates. "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985);

(c) confirms that the Subpoena serves settlement and litigation purposes rather than any investigative need. In his May 18, 2026 demand letter, the Trustee conditioned any stay of suit on QPWB's disclosure of its insurance coverage information and on "the involvement of each professional liability insurer" in pre-litigation resolution discussions. The Trustee expressly sought insurers' engagement and coverage information as settlement leverage before he served any Rule 2004 subpoena. He cannot now recast the same objective as a Rule 2004 investigation;

(d) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, and by the common-interest doctrine, because any "coverage analysis" prepared

by or for QPWB is, by definition, an analysis of QPWB's legal rights under its insurance contracts. It was prepared by or at the direction of counsel in anticipation of the litigation the Trustee has threatened since at least May 2026. Such analysis reflects the mental impressions, conclusions, opinions, and legal theories of counsel and constitutes core opinion work product. Unlike Request No. 19, this Request contains no limitation to non-privileged material. To the extent the Request seeks communications among QPWB, its counsel, and its insurers concerning the defense of claims, those communications are further protected by the common-interest doctrine;

(e) seeks documents or information obtainable from a more convenient, less burdensome, or less expensive source, to the extent it seeks "coverage litigation." Any coverage action would be a matter of public record, and the pleadings and filings in it would be available from the court in which it is pending and from the insurers that are parties to it. The Request does not identify any such litigation. It would require QPWB to compile materials that the Trustee could obtain directly, if they exist;

(f) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to identify every insurer that has taken a coverage position on any of these matters, collect all related letters and analyses across custodians, compile the record of any coverage proceeding, and review all of it for privilege and work-product protection, all within a compliance period of ten days or less. That burden is disproportionate where the material sought has no bearing on whether any claim exists and the Trustee has declared his claims ready for filing without it; and

(g) seeks confidential commercial, financial, proprietary, or competitively sensitive information of QPWB, a non-debtor, because insurers' coverage positions disclose the structure, limits, terms, exclusions, and claims history of QPWB's insurance program, and the status of its relationships with its carriers. Disclosure would show the Trustee the full scope of QPWB's coverage, for use as settlement leverage. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 21:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 22:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 23:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 24:**

> All engagement letters, retention agreements, representation agreements, or letters of understanding (including drafts and unsigned versions) between QPWB and any NuMale Defendant or Beazley relating to the Sanchez Action, and all Communications relating to whether any such agreement would be or had been prepared.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 24:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for

filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. Whether, when, and how QPWB documented its engagement in the Sanchez Action goes only to the merits of the Trustee's anticipated malpractice action and belongs in discovery, if at all, in that action;

(b) seeks documents or information already in the Trustee's possession, because the Trustee demanded, obtained, and has represented that he "reviewed the entire QPWB file" for the Sanchez Action. QPWB voluntarily transferred that file to the Trustee without any Rule 2004 discovery. It consisted of thousands of pages of documents, including NuMale client correspondence, pleadings, work product, and attorney-client communications. Any engagement letter, retention agreement, representation agreement, or letter of understanding between QPWB and its clients in the Sanchez Action, and any communication with those clients about whether such an agreement would be prepared, would be part of that client file. Having stepped into the shoes of QPWB's former clients and taken possession of their file, the Trustee cannot demand that QPWB produce it a second time;

(c) seeks information the Trustee has already analyzed and on which he has already taken a position, confirming that the Request serves no investigative purpose. The Trustee's May 18, 2026 demand letter affirmatively asserts, as one of four facts he contends are "dispositive," that QPWB "never obtained a written engagement agreement with any of the nine defendants it represented." The Trustee does not need Rule 2004 discovery to investigate a fact he has already alleged, based on a file he has already reviewed, in a letter he has said is organized as his complaint. To the extent the Trustee seeks to test or support that allegation, he must do so through discovery in the action he has threatened;

(d) seeks documents or information obtainable from a more convenient, less burdensome, or less expensive source, because the other parties to any such agreement and communication are available to the Trustee without a subpoena to QPWB. Beazley assigned the Sanchez Action to QPWB on July 25, 2022, and the Trustee has since entered into a court-approved Global Settlement with Beazley. The Individual NuMale Parties have assigned their claims to the Trustee, are jointly

prosecuting them with him through the same counsel, and are obligated under the confirmed plan to "fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims, … including in connection with providing documents and testimony;"

(e) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because "all Communications relating to whether any such agreement would be or had been prepared" necessarily include QPWB's internal communications and deliberations among its own attorneys. Those communications reflect the mental impressions, conclusions, and opinions of counsel. The Trustee's receipt of the client file does not entitle him to QPWB's internal law-firm communications or work product, to which "even the former client of an attorney" is not entitled. *Travelers Ins. Cos. v. Superior Ct.*, 143 Cal. App. 3d 436, 453 (1983). Drafts and internal communications prepared after the Sanchez verdict, including any prepared in response to the claims the Trustee has threatened since at least May 2026, are further protected as material prepared in anticipation of litigation;

(f) is overbroad and not reasonably limited in time or scope, because it seeks "all Communications" on the subject without limitation as to time, custodian, or author. Together with the demand for "drafts and unsigned versions," it would sweep in every internal email, note, or message in which any QPWB attorney or staff member referred to the documentation of the engagement; and

(g) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to search the files and communications of every attorney and staff member who worked on the Sanchez Action, and of QPWB's intake and administrative personnel, for nearly four years. QPWB would then have to conduct a privilege review of the results, all within a compliance period of ten days or less. That burden is disproportionate where the Trustee already possesses the client file and has already alleged the fact the Request seeks to explore.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 25:**

> All conflict waivers, informed-consent Documents, joint-representation disclosures or advisements (including drafts and unsigned versions) provided to, requested from, or executed by any NuMale Defendant, and all Communications relating to whether any such waiver or consent was necessary, requested, or obtained.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 25:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims against QPWB and seeks litigation discovery that, if available at all, must be pursued under the Federal Rules of Civil Procedure in a properly commenced proceeding, not through Rule 2004, because the Trustee has said repeatedly, in writing, that he already has everything he needs to file suit. In his May 18, 2026 demand letter, which he described as "organized as [the] complaint will be," the Trustee declared that his claims against QPWB are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," that he was "prepared to file suit immediately," and that he was "prepared to prosecute these claims to verdict and through appeal." The Trustee's August 28, 2026 settlement term sheet then warned that, if QPWB did not accept the Trustee's proposal, he would file his complaint against QPWB on September 11, 2026. A party who has declared his claims ready for filing, and set a date certain to file them, is not conducting a preliminary Rule 2004 investigation. Whether QPWB sought, obtained, or needed conflict waivers or informed consent in the Sanchez Action goes only to the merits of the Trustee's anticipated malpractice action and belongs in discovery, if at all, in that action;

(b) seeks documents or information already in the Trustee's possession, because the Trustee demanded, obtained, and has represented that he "reviewed the entire QPWB file" for the Sanchez Action. QPWB voluntarily transferred that file to the Trustee without any Rule 2004

discovery. It consisted of thousands of pages of documents, including NuMale client correspondence, pleadings, work product, and attorney-client communications. Any conflict waiver, informed-consent document, or joint-representation disclosure or advisement provided to, requested from, or executed by a NuMale Defendant would be part of that client file. So would any communication with those clients about whether such a waiver or consent was necessary. Having stepped into the shoes of QPWB's former clients and taken possession of their file, the Trustee cannot demand that QPWB produce it a second time;

(c) seeks information the Trustee has already analyzed and on which he has already taken a position, confirming that the Request serves no investigative purpose. The Trustee's May 18, 2026 demand letter affirmatively asserts, as one of four facts he contends are "dispositive," that QPWB did not "obtain a written conflict waiver from any of" the nine defendants it represented. The same letter accuses QPWB of having "concealed a disqualifying conflict of interest from its nine clients for three years." The Trustee does not need Rule 2004 discovery to investigate facts he has already alleged, based on a file he has already reviewed, in a letter he has said is organized as his complaint. To the extent the Trustee seeks to test or support those allegations, he must do so through discovery in the action he has threatened;

(d) seeks documents or information obtainable from a more convenient, less burdensome, or less expensive source, because the NuMale Defendants are the very persons to whom any waiver, consent, disclosure, or advisement would have been provided, or from whom it would have been requested. They are available to the Trustee without a subpoena to QPWB. The Individual NuMale Parties have assigned their claims to the Trustee and are jointly prosecuting them with him through the same counsel. They are obligated under the confirmed plan to "fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims, … including in connection with providing documents and testimony;"

(e) seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine, because "all Communications relating to whether any such waiver or consent was necessary" necessarily include QPWB's internal communications and deliberations among its

own attorneys about the existence and significance of potential conflicts. Those communications reflect the mental impressions, conclusions, opinions, and legal theories of counsel. The same is true of internal drafts of any waiver, disclosure, or advisement. The Trustee's receipt of the client file does not entitle him to QPWB's internal law-firm communications or work product, to which "even the former client of an attorney" is not entitled. *Travelers Ins. Cos. v. Superior Ct.*, 143 Cal. App. 3d 436, 453 (1983). Internal communications prepared after the Sanchez verdict, including any prepared in response to the claims the Trustee has threatened since at least May 2026, are further protected as material prepared in anticipation of litigation;

(f) is overbroad and not reasonably limited in time or scope, because it seeks "all Communications" on the subject without limitation as to time, custodian, or author. Together with the demand for "drafts and unsigned versions," it would sweep in every internal email, note, or message in which any QPWB attorney or staff member referred to conflicts, waivers, or consent in connection with any NuMale Defendant; and

(g) is unduly burdensome and not proportional to any legitimate need of the Trustee, because compliance would require QPWB to search the files and communications of every attorney and staff member who worked on the Sanchez Action or on any other matter involving a NuMale Defendant, as well as QPWB's conflicts and intake personnel. QPWB would then have to conduct a privilege review of the results, all within a compliance period of ten days or less. That burden is disproportionate where the Trustee already possesses the client file and has already alleged the facts the Request seeks to explore.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 26:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**REQUEST FOR PRODUCTION NO. 27:**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**<u>REQUEST FOR PRODUCTION NO. 28:</u>**

Withdrawn per meet and confer follow-up letter dated October 7, 2026.

**<u>REQUEST FOR PRODUCTION NO. 29:</u>**

> All conflict-of-interest analyses, memoranda, notes, internal or external ethics consultations, and Communications relating to QPWB's joint representation of the NuMale Defendants, including Documents relating to (a) Dr. Asandra's interests as distinct from those of the other NuMale Defendants; (b) the business litigation between Dr. Asandra and NuMale; (c) any DEA or medical-board matter involving Dr. Asandra; (d) Stephen Chapman, PA-C and the alteration or re-creation of medical records; and (e) the statement in QPWB's statement to James Parrett that QPWB had "verified there is no conflict representing NuMale and Dr. Asandra."

**<u>OBJECTION TO REQUEST FOR PRODUCTION NO. 29:</u>**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims, not at any legitimate Rule 2004 inquiry. On May 18, 2026, the Trustee served a pre-litigation demand letter that he described as "organized as our complaint will be." Part II of that letter, titled "The Known, Concealed, and Lied-About Conflict of Interest," lays out the conflict theory this Request now seeks to investigate. The demand letter states that QPWB walked into the engagement "with its eyes wide open." It states that the Chapman record-alteration issue caused predecessor counsel's disqualification. It alleges that QPWB knew of Dr. Asandra's medical-board reprimands and of his pending lawsuit against NuMale. It also alleges that Dr. Asandra's DEA investigation should have revealed the conflict. Subparts (a) through (d) of this Request track those allegations element by element. The Trustee also stated that he was prepared to file a complaint by September 11, 2026. Rule 2004 does not permit a party who has already framed his claims and announced a filing date to obtain discovery on them outside the protections of Rules 26 through 37 and 45;

(b) contradicts the Trustee's own representations. The demand letter states that QPWB's billing ledger "contains no time entry for conflict analysis at inception or at any point during the first twenty-eight months." It states that "[t]he complete client file contains no conflict memorandum, no conflict-waiver template, no conflict-disclosure letter, no conflict-analysis email, and no internal correspondence discussing the firm's joint representation." It calls this absence "dispositive." The Trustee has reviewed the QPWB file. He cannot tell QPWB, in a pre-suit claim, that no conflict analysis exists and then serve a Rule 2004 subpoena demanding "[a]ll conflict-of-interest analyses, memoranda, [and] notes." If the Trustee's statements were accurate when made, the Request serves no purpose. If he now doubts them, the Request is an effort to test or rebuild allegations he has already made, which is litigation discovery, not a Rule 2004 examination;

(c) Subpart (e) seeks documents already in the Trustee's possession. The demand letter quotes Ms. Chavez's November 4, 2024 email to Mr. Parrett, including the statement that QPWB had "verified there is no conflict representing NuMale and Dr. Asandra," and attaches it as Exhibit 8. The demand letter also quotes and attaches Mr. Parrett's October 23, 2024 letter and his November 20, 2024 emails. Communications exchanged with Dr. Asandra's personal counsel are equally available from Dr. Asandra and Mr. Parrett. Dr. Asandra is one of the Individual NuMale Parties who assigned their claims to the Trust and must cooperate with the Trustee under the plan;

(d) seeks privileged material and attorney work product. To the extent it seeks QPWB's internal or external ethics consultations, including consultations with QPWB's general counsel, risk-management personnel, or outside ethics counsel, it calls for communications protected by the attorney-client privilege and the work-product doctrine. That is especially true of any consultation made after the November 20, 2024 events, after Dr. Asandra's same-day accusation of "malpractice," or in anticipation of the claims the Trustee now asserts; and

(e) is overbroad, vague, and not described with reasonable particularity. It demands "[a]ll . . . Communications relating to QPWB's joint representation of the NuMale Defendants" and all Documents "relating to" Dr. Asandra's interests, his business litigation, any DEA or medical-board

matter, and Mr. Chapman's record alterations. Read literally, that sweeps in essentially every communication from a three-year representation of nine clients, whether or not it involves any conflict analysis. The Request has no time limit, and the subparts do not narrow it.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 30:**

> All Documents relating to the Joint Defense Agreement between Stephen Chapman, PA-C and the NuMale entities, including all drafts, executed versions, and Communications with Beazley relating to its preparation.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 30:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims, not at any legitimate Rule 2004 inquiry. On May 18, 2026, the Trustee served a pre-litigation demand letter that he described as "organized as our complaint will be." It alleges that predecessor counsel was disqualified because of "Stephen Chapman's admitted alteration of medical records." It alleges that Beazley asked QPWB to "advise if you can defend all defendants except Stephen Chapman — PA." It also alleges that "PA Chapman's record-alteration conduct was imputable to the other jointly represented defendants by virtue of the joint representation." The Joint Defense Agreement is part of that already-pleaded conflict theory. The Trustee called his claims "substantial, exceptionally well-documented, and supported by an extensive evidentiary record." He also stated that he was prepared to file a complaint by September 11, 2026. Rule 2004 does not permit discovery on claims a party has already framed and is ready to file;

(b) The Trustee already has the documents he relies on concerning the Joint Defense Agreement. After reviewing "the entire QPWB file," the Trustee listed as Exhibit 13 to his demand letter QPWB's billing records for the Sanchez matter. He specifically identified "Robertson Feb. 5, 2024 JDA 'per authority of adjuster' entry." To the extent drafts, executed versions, and related communications were part of the client file QPWB turned over, the Trustee already has them. Requiring QPWB to search for and produce them again would be duplicative and unduly burdensome;

(c) The documents sought are equally or more readily available from parties the Trustee controls or can reach. The NuMale entities were parties to the Joint Defense Agreement, and the Trust now holds their claims and records. The Trust also prosecutes the claims of the Individual NuMale Parties, who are required to cooperate with the Trustee. Mr. Chapman, the other party to the agreement, was separately represented. Beazley was the counterparty to the "Communications with Beazley" the Request seeks, and its July 25, 2022 assignment email excluded Mr. Chapman from QPWB's representation. The Trustee has also been in coverage litigation and a Global Settlement with Beazley. A Rule 2004 subpoena to a non-party law firm is not the appropriate means to obtain documents the Trustee can get from his own records, his cooperating assignors, or a counterparty he has already litigated against; and

(d) seeks information unrelated to the Debtors' acts, conduct, property, liabilities, or financial condition, or to the administration of the estate, within the meaning of Rule 2004(b). The terms of a defense-side arrangement between co-defendants in pre-petition litigation are, at most, evidence on the merits of the Trustee's malpractice theory, which belongs in plenary litigation.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 31:**

For the period November 1, 2024 through the present, all Documents relating to the Rael Order that refer to the Sanchez Action or any NuMale Defendant, or that relate to any change in QPWB's policies or practices concerning conflicts of interest in

joint representations, together with Documents sufficient to show whether and when QPWB disclosed the Rael Order to any NuMale Defendant or to Beazley.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 31:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims, not at any legitimate Rule 2004 inquiry. The Trustee's May 18, 2026 demand letter is "organized as our complaint will be," and Part IV of it is devoted to the Rael Order. The letter alleges that the Rael court sanctioned QPWB "for the identical pattern of conflict concealment" three days before jury selection in the Sanchez Action. It quotes the Rael findings "verbatim" and asserts that they "make this action's outcome inevitable." It calls the claims "supported by an extensive evidentiary record that includes judicial findings of identical misconduct by the same firm." The Trustee also stated that he was prepared to file a complaint by September 11, 2026. He has framed his Rael theory, built it into his claims, and announced when he will sue. Rule 2004 does not permit further discovery on that theory outside the protections of Rules 26 through 37 and 45;

(b) The Rael Order was entered in an unrelated case, *Rael v. Skies Healthcare and Rehabilitation Center, LLC*, Case No. D-202-CV-2019-07947, involving different parties, claims, and facts. It has no bearing on the acts, conduct, property, liabilities, or financial condition of the Debtors, or on the administration of their estates, within the meaning of Rule 2004(b). The Order is a public court record, and the Trustee already has it and attached it to his demand letter. Documents created inside QPWB about another client's case are not discoverable through the Debtors' bankruptcy simply because the Trustee wants to use the Order as character or pattern evidence against QPWB;

(c) The policy-change portion of Request No. 31 seeks irrelevant and highly sensitive internal firm information. Documents relating to "any change in QPWB's policies or practices concerning conflicts of interest in joint representations" from November 2024 to the present have nothing to do with how QPWB handled the Sanchez Action, which went to verdict on November 25, 2024. Firm-wide risk-management and policy deliberations after the fact do not show what was done in the Sanchez Action, are not probative of any element of the Trustee's claims, and are not a proper subject of Rule 2004 examination;

(d) seeks privileged and protected material. The period it covers, November 1, 2024 to the present, includes Dr. Asandra's November 20, 2024 letter accusing QPWB of "ongoing malpractice," the post-verdict malpractice assertions, and the Trustee's demand letter. QPWB's internal communications about the Rael Order during that time, including communications with its general counsel, risk-management personnel, outside counsel, and professional liability carriers, are protected by the attorney-client privilege and the work-product doctrine. Many were also made in anticipation of the very claims the Trustee now asserts. Communications about the Rael Order with QPWB's clients and co-counsel in *Rael* are privileged as to those clients, and neither QPWB nor the Trustee can waive that privilege;

(e) The disclosure portion of Request No. 31 asks for documents the Trustee already has or can get from his own sources. The demand letter alleges that QPWB concealed the Rael Order from its clients. Whether and when QPWB disclosed the Order to any NuMale Defendant is shown, if at all, by the client communications in the Sanchez file the Trustee has already reviewed. It is also known to the NuMale Defendants themselves, who have assigned their claims to the Trust and must cooperate with the Trustee. Whether QPWB disclosed the Order to Beazley can be determined from Beazley, which has settled with the Trustee; and

(f) Request No. 31 is overbroad, vague, and unduly burdensome. It covers nearly two years. It uses open-ended phrases like "relating to" and "practices." The policy-change portion reaches beyond the Sanchez matter to documents firm-wide, which would require QPWB to search across all its offices and personnel for documents about other clients' matters.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 32:**

> All Documents reflecting any evaluation, valuation, verdict-range analysis, or settlement recommendation by QPWB relating to the Sanchez Action, including Documents reflecting the basis for any recommendation that the matter be settled for $950,000 or any other amount, and all Documents reflecting any communication of such evaluation or recommendation to Beazley or to any NuMale Defendant.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 32:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose).

QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims, not at any legitimate Rule 2004 inquiry. The Trustee's May 18, 2026 demand letter is "organized as our complaint will be," and Part III of it covers "the catastrophic settlement failures." The letter treats QPWB's alleged $950,000 valuation as one of "four facts [that] are dispositive." It walks through the settlement history event by event, including the June 25, 2024 Rule 68 Offer of Judgment and Beazley's decision to let it expire. The Trustee called his claims "substantial, exceptionally well-documented, and supported by an extensive evidentiary record." He also stated that he was prepared to file a complaint by September 11, 2026. Rule 2004 does not permit further discovery on a settlement-failure theory the Trustee has already pleaded and is ready to file. *See* General Objection Nos. 6, 7, and 8.

(b) contradicts the Trustee's own representations. After reviewing "the entire QPWB file," the Trustee represented that "[n]o written recommendation or policy-limits demand from QPWB to Beazley exists anywhere in the twenty-eight-month file." He also represented that "[n]o written

communication exists in which any QPWB attorney advised any individual defendant" of the firm's settlement view. And he claimed that "no demand to Beazley to accept the offer exists." The Trustee cannot assert in a pre-suit claim that these documents do not exist and then demand that QPWB produce "[a]ll Documents" of exactly that kind. If his statements were accurate, the Request serves no purpose. If he now doubts them, the Request is an effort to test or rebuild his allegations, which is litigation discovery, not a Rule 2004 examination;

(c) The Trustee already has the evaluation and valuation documents he relies on. His demand letter cites and attaches QPWB's written status reports and valuations to Beazley, including the May 28, 2024 report to Mr. Cianflone and its case evaluation. It also attaches the October 24, 2024 communication on which his $950,000 theory rests. Evaluations and recommendations QPWB sent to Beazley or to any NuMale Defendant were, by definition, sent to people from whom the Trustee can readily obtain them: Beazley, which has settled with the Trustee, and the NuMale Defendants, who have assigned their claims to the Trust and must cooperate with him; and

(d) seeks privileged and protected material. Internal case evaluations, verdict-range analyses, and the reasoning behind any settlement recommendation are core opinion work product reflecting counsel's mental impressions. To the extent the Request reaches QPWB's internal deliberations, or any evaluation prepared or discussed after the November 2024 malpractice assertions in anticipation of the claims the Trustee now asserts, it seeks material protected by the work-product doctrine and the attorney-client privilege.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 33:**

> All Documents relating to (a) the Stipulation of the Parties regarding vicarious liability proposed on or about November 8, 2024 and filed November 22, 2024; (b) the stipulated special verdict form; and (c) the stipulated final jury instructions in the Sanchez Action, including all Communications with any NuMale Defendant or Beazley regarding whether to enter into each stipulation.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 33:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) is directed at the Trustee's already-identified claims, not at any legitimate Rule 2004 inquiry. The Trustee's May 18, 2026 demand letter is "organized as our complaint will be," and Part V of it covers "trial and post-trial performance." The letter already alleges the facts this Request seeks to investigate. It alleges that on day 7 of trial, Mr. Robertson stipulated on the record that the "NuMale defendants" designation on the special verdict form "refers to all remaining defendants in the case." It alleges that QPWB signed the Stipulation of Vicarious Liability on November 22, 2024 on behalf of all remaining defendants. It characterizes that stipulation as "per se malpractice" that "enabled the jury's 'acting in concert' finding." The Trustee also stated that he was prepared to file a complaint by September 11, 2026. Rule 2004 does not permit further discovery on a theory the Trustee has already pleaded and is ready to file;

(b) The stipulation, special verdict form, and final jury instructions are court records already in the Trustee's possession. They were filed in or made on the record of the Sanchez Action. The Trustee attached the transcript of Mr. Robertson's verdict-form stipulation and the signed Stipulation of Vicarious Liability to his demand letter as Exhibits 14 and 15. The Trustee does not need a Rule 2004 subpoena to a non-party law firm to obtain public filings from a case whose record he has already reviewed and relied on;

(c) contradicts the Trustee's own representations. After reviewing "the entire QPWB file," the Trustee asserted that QPWB "conceded this contested point without any client consultation and without consent" and that "no consent was sought." He also alleged that the stipulation was "made without client input or consent." The Trustee cannot allege in a pre-suit claim that no client communications about the stipulation exist and then demand "all Communications with any

NuMale Defendant . . . regarding whether to enter into each stipulation." If his allegations were accurate, the Request serves no purpose. If he now doubts them, the Request is an effort to test his allegations before suit, which is litigation discovery, not a Rule 2004 examination;

(d) Communications with the NuMale Defendants and Beazley are equally available from those parties. Any communication with a NuMale Defendant about the stipulations is known to and held by that Defendant. The NuMale Defendants have assigned their claims to the Trust and must cooperate with the Trustee. Any communication with Beazley can be obtained from Beazley, which has settled with the Trustee; and

(e) seeks privileged and protected material. Drafts of the stipulation, verdict form, and jury instructions, and QPWB's internal communications about trial strategy, reflect counsel's mental impressions, conclusions, and legal theories during trial. They are core opinion work product.

In light of the foregoing objections, the pending Florida Motion, and any future motion, QPWB will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

> All Documents constituting or relating to the "numerous pieces of evidence which completely absolve QPWB from any liability" referenced in the letter dated September 14, 2026 from Anthony P. Sgro, Esq. of Sgro & Roger, on behalf of QPWB, to Gregory E. Garman, Esq.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 34:**

QPWB incorporates its General Objections and its Objections to Definitions and Instructions as though fully set forth herein, including, without limitation, General Objection Nos. 1 through 5 (improper place of compliance, the pending Florida Motion, the impropriety of the duplicative Subpoena, and the absence of any proper Rule 2004 purpose). QPWB further objects to this Request on the grounds that it:

(a) shows that the Trustee is using Rule 2004 for pre-suit litigation discovery. The Request does not seek information about the Debtors' acts, conduct, property, liabilities, or financial condition, or about administration of the estates. It seeks the evidence QPWB would use to defend

against the Trustee's threatened malpractice claims. The Trustee's May 18, 2026 demand letter is "organized as our complaint will be." It describes the claims as "substantial, exceptionally well-documented, and supported by an extensive evidentiary record." The Trustee also stated that he was prepared to file a complaint by September 11, 2026. When a party has already framed its claims and announced a filing date, a demand for the opposing party's defense evidence is litigation discovery by definition. Rule 2004 cannot be used to obtain it outside the protections of Rules 26 through 37 and 45. *See* General Objection Nos. 6, 7, and 8.

(b) seeks attorney opinion work product. It does not ask for a defined category of documents. It asks for whatever documents QPWB's counsel has identified as evidence that "completely absolve[s] QPWB from any liability." Counsel's selection and grouping of documents in anticipation of litigation reveals counsel's mental impressions, conclusions, and legal theories about the strengths and weaknesses of the threatened claims. That is opinion work product, which receives nearly absolute protection under Federal Rule of Civil Procedure 26(b)(3)(B). The Sgro letter was sent after the Trustee had threatened suit, so any compilation it refers to was necessarily prepared in anticipation of litigation. The phrase "relating to" also reaches communications between QPWB and its litigation counsel, which are protected by the attorney-client privilege; and

(c) asks for premature contention discovery. A demand for "all" documents supporting a party's position that it bears no liability is a contention request. Courts routinely defer contention requests until after a claim has been pleaded and substantial discovery has taken place. QPWB has no obligation to identify its defenses, let alone its defense evidence, before the Trustee files.

**<u>RESERVATION OF RIGHTS</u>**

These Objections are served to preserve QPWB's objections under FRCP 45(d)(2)(B). Nothing herein shall be construed as a waiver of, and QPWB expressly preserves, its right to move to quash or modify the Subpoena and to seek a protective order, its pending Florida Motion, and its position that Las Vegas, Nevada is not a proper place of compliance. QPWB further reserves all rights, privileges, objections, and defenses available under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the applicable local rules, the NDA, and applicable

law, including objections based on relevance, proportionality, undue burden, privilege, work-product protection, confidentiality, privacy, and overbreadth; the right to assert additional objections; the right to revise, correct, supplement, or clarify these Objections; and the right to seek an award of fees and costs, including under FRCP 45(d)(1) and 28 U.S.C. § 1927.