**E-filed: October 14, 2026**

Bob L. Olson, Esq. (NV Bar No. 3783)
Alex L. Fugazzi, Esq. (NV Bar No. 9022)
Charles E. Gianelloni, Esq. (NV Bar No. 12747)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
afugazzi@swlaw.com
cgianelloni@swlaw.com

*Attorneys for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Eddie Prieto*

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

NUMALE CORPORATION,

☐ AFFECTS THIS DEBTOR
☐ AFFECTS FELICIANO NUMALE NEVADA PLLC
☐ AFFECTS NUMEDICAL SC
☐ AFFECTS NUMALE COLORADO SC
☐ AFFECTS NUMALE FLORIDA TB PLLC
☐ AFFECTS NUMALE NEBRASKA LLC
☐ AFFECTS NUMALE NEW MEXICO SC
☒ AFFECTS ALL DEBTORS

Debtors.

Case No. 25-10341-nmc

Chapter 11

Jointly Administered with:

| | |
|---|---|
| 25-10342-nmc | Feliciano NuMale Nevada PLLC |
| 25-10343-nmc | NuMedical SC |
| 25-10344-nmc | NuMale Colorado SC |
| 25-10345-nmc | NuMale Florida TB PLLC |
| 25-10346-nmc | NuMale Nebraska LLC |
| 25-10347-nmc | NuMale New Mexico SC |

**QUINTAIROS, PRIETO, WOOD & BOYER P.A.'S OPPOSITION TO AMENDED MOTION TO ENFORCE RULE 2004 ORDER AND COMPEL COMPLIANCE WITH THE SUBPOENA ISSUED TO QUINTAIROS, PRIETO, WOOD & BOYER, P.A. AT ITS NEVADA OFFICE [ECF NO. 1015]**
**AND**
**COUNTERMOTION TO QUASH SUBPOENA [ECF NO. 994] AND FOR PROTECTIVE ORDER**

**Hearing Date: October 16, 2026**
**Hearing Time: 9:30 a.m.**

Quintairos, Prieto, Wood & Boyer P.A. ("QPWB") by and through its attorneys, Snell & Wilmer L.L.P., submits its opposition ("Opposition") to Michael Carmel's, as the Liquidation Trustee of the NuMale Liquidation Trust (the "Trustee") *Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer, P.A. at its Nevada Office* [ECF No. 1015] ("Amended Motion") and QPWB's Conditional Countermotion to Quash Subpoena [ECF No. 994] and for Protective Order ("Countermotion"). The Opposition and Countermotion are supported by the following Memorandum of Points and Authorities, the Declaration of Eric Boyer, Esq., (the "Boyer Dec."), the attached Exhibits, the pleadings and papers on file herein, and any oral argument the Court may entertain.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

TABLE OF CONTENTS


Page

I. Background ..... 4

A. QPWB's Representation of the NuMale Parties. ..... 4

B. NuMale's Bankruptcy Proceedings ..... 5

i. The Trustee's appointment and post-verdict decisions. ..... 5

ii. The Global Settlement Agreement and confirmation of the Plan. ..... 6

C. The Trustee's Post-Confirmation and Extrajudicial Actions ..... 6

i. The Demand Letter and Fraudulent Transfer Notices ..... 7

ii. QPWB's efforts to resolve the claims. ..... 7

D. The Subpoenas ..... 8

i. The Subpoenas are invasive and disproportionate. ..... 8

ii. The parties confer on the Florida Subpoena, and QPWB files the Florida Motion before the Trustee files his Initial Compliance Motion. ..... 9

iii. The Trustee served a second duplicate subpoena on QPWB's Henderson office. ..... 10

E. Subsequent Conferrals ..... 10

II. Argument ..... 11

A. The Court Should Defer to the S.D. Florida, Which Will Hear the Identical Dispute on October 21, 2026. ..... 12

B. Even if the Court Enforces Its Own Order, Rule 45 Assigns This Dispute to the Court Where Compliance Is Required ..... 13

i. Nevada has squarely addressed that enforcement of a subpoena must be sought in the district where compliance is required. ..... 14

ii. Other courts consistently hold that Rule 2004 subpoena disputes belong in the district where compliance is required. ..... 15

C. The Nevada Subpoena Requires Compliance in the S.D. Florida ..... 16

i. The District of Nevada and other courts in the Ninth Circuit look past the location identified on the subpoena as the place of compliance. ..... 16

ii. QPWB's headquarters, designees, and custodian of record are in the S.D. Florida. ..... 18

D. Rule 2004 Does Not Authorize the Requested Discovery ..... 19

i. Rule 2004 does not authorize discovery to gain a strategic advantage or to circumvent the procedural safeguards applicable to discovery in litigation. ..... 20

ii. The Trustee identified QPWB as a litigation target over a year ago and the requested discovery is designed to gain an unfair tactical advantage in anticipated litigation. ..... 22


Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

iii. The narrowed requests fall outside the scope of the Court's Rule 2004 Order. ..... 23

E. The Trustee Cannot Establish Good Cause..... 24

i. The Nevada Subpoena is Facially Overbroad and Harassing. ..... 24

ii. The Trustee can investigate the claims with information from other sources. ..... 26

iii. The Sgro Letter does not supply good cause. ..... 27

iv. The Trustee's claimed emergency is of his own making. ..... 27

F. The Court Should Issue a Protective Order ..... 28

III. Conclusion ..... 30


Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AECOM Tech. Servs., Inc. v. Zachry Constr. Corp.*, No. 219MC00201JAKRAOX, 2020 WL 1934973 (C.D. Cal. Feb. 3, 2020) ........ 26

*Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555 (D. Nev. Aug. 15, 2014) ........ 14

*Bank of Am., N.A. v. Landis*, No. 2:11-CV-1338-RCJ-PAL, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011) ........ 24

*Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC*, 2015 WL 3935726 (D. Kan. June 26, 2015) ........ 15

*Conservation Law Foundation, Inc. v. Equilon Enterprises LLC*, 2025 WL 2821238 (D.R.I. Oct. 3, 2025) ........ 18

*Crowley v. Burke*, No. 3:13-CV-219-RCJ-VPC, 2013 WL 6284170 (D. Nev. Dec. 4, 2013) ........ 24, 28

*Dellaportas v. Shahin*, No. 24-CV-793, 2025 WL 3019810 (S.D.N.Y. Oct. 29, 2025) ........ 17, 19

*Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628 (C.D. Cal. 2018) ........ 1, 17, 18, 19

*Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21CV1197-W-MDD, 2022 WL 2820667 (S.D. Cal. July 18, 2022) ........ 17, 18, 19

*HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) ........ 17

*In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135-RK, 2019 WL 9243053 (Bankr. C.D. Cal. Dec. 6, 2019) ........ 24

*In re Ballantyne Brands, LLC*, 656 B.R. 117, 139 (Bankr. W.D.N.C. 2023) ........ 25

*In re Board of Directors of Hopewell Intern. Ins. Ltd.*, 258 B.R. 580 (Bankr. S.D.N.Y. 2001) ........ 20

*In re Correra*, 589 B.R. 76 (Bankr. N.D. Tex 2018) ........ 15, 16, 29

*In re Defoor Ctr., LLC*, 634 B.R., *In re Defoor Ctr., LLC*, 634 B.R. ........ 21, 22, 23, 24

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

*In re Dinubilo*,
177 B.R. 932 (E.D. Cal. 1993) .......... 20

*In re Duque*,
134 B.R. 679, 683 n.3, 684 (Bankr. S.D. Fla. 1991) .......... 26

*In re Enron Corp.*,
281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) .......... 21

*In re GHR Energy Corp.*,
35 B.R. 534, 538 (Bankr. D. Mass. 1983) .......... 21

*In re J&R Trucking*,
431 B.R. 818 (Bankr. N.D. Ind. 2010) .......... 20

*In re Kearney*,
590 B.R. 913 (Bankr. D.N.M. 2018) .......... 20

*In re Mastro*,
585 B.R. 587 (B.A.P. 9th Cir. 2018) .......... 24, 25

*In re Mathews*,
No. 18-MC-153-LPS, 2018 WL 5024167 (D. Del. Oct. 17, 2018) .......... 21

*In re Path Network, Inc.*,
703 F. Supp. 3d 1046 (N.D. Cal. 2023) .......... 17

*In re Plise*,
506 B.R. 870 (B.A.P. 9th Cir. 2014) .......... 14

*In re SBN Fog Cap II LLC*,
562 B.R. 771 (Bankr. D. Colo. 2016) .......... 15

*In re Scherer*,
No. 6:17-BK-2004-KSJ, 2019 WL 10733909, at *1 (Bankr. M.D. Fla. Feb. 7, 2019) .......... 21, 25

*In re Transmar Commodity Grp. Ltd.*,
No. 16-13625-JLG, 2018 WL 4006324 (Bankr. S.D.N.Y. Aug. 17, 2018) .......... 21

*In re Valley Forge Plaza Assocs.*,
109 B.R. 669 (Bankr. E.D. Pa. 1990) .......... 21

*In re Washington Mut., Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) .......... 29

*In re Wilcher*,
56 B.R. 428 (Bankr. N.D. Ill. 1985) .......... 20, 29

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

*Mirae Asset Sec. Co. v. Ryze Renewables Holdings, LLC*,
No. 2:23-CV-01492-APG-NJK, 2025 WL 1159944, at *3 (D. Nev. Apr. 21, 2025) ........ 14

*Roberts v. Randy LL Corp.*,
No. 3:24-CV-00523-HZ, 2025 WL 2717823 (D. Or. Sept. 24, 2025)........ 18

*Robertson v. Formation Nation*,
No. 3:25-CV-00474-CLB, 2026 WL 2642268 (D. Nev. Sept. 8, 2026)........ 28

*Semex All. v. Elite Dairy Genomics, LLC*,
2014 WL 1576917 (S.D. Ohio Apr. 18, 2014) ........ 15

*Snow Covered Cap., LLC v. Fonfa*,
No. 2:22-CV-1181-CDS-BNW, 2024 WL 3396384 (D. Nev. July 12, 2024)........ 28

*Taddeo v. Am. Invsco Corp.*,
No. 212CV01110APGNJK, 2016 WL 593522 (D. Nev. Feb. 12, 2016)........ 14, 15

*The Marshall Project, Inc., v. City of Cleveland*,
No. 24-MC-309 (VEC), 2024 WL 4589667 (S.D.N.Y. Oct. 28, 2024)........ 17, 18

*Tomelleri v. Zazzle, Inc.*,
2015 WL 400904 (D. Kan. Jan. 28, 2015)........ 15

*Travelers Ins. Companies v. Superior Ct.*,
143 Cal. App. 3d 436, 191 Cal. Rptr. 871 (Ct. App. 1983) ........ 30

*York Holding, Ltd. v. Waid*,
345 F.R.D. 626 (D. Nev. 2024)........ 2, 16, 18, 19

**Statutes**

11 U.S.C.A. § 1101 et seq........ 15

Fla. Stat. Ann. § 607.01401(18)........ 25

Fla. Stat. Ann. § 607.06401(3)........ 25

Fla. Stat. §§ 607.0101 et seq. ........ 4, 18, 22

Uniform Fraudulent Transfer Act ........ 4, 18, 22

**Rules**

D. Nev. Bankr. L. R. 9016(b)........ 14

Fed. R. Bankr. P. 2004 ........ *passim*

Fed. R. Bankr. P. 2004(c)........ 1, 13

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Fed. R. Bankr. P. 9014(c) ..... 28

Fed. R. Bankr. P. 9016 ..... 1, 13, 14

Fed. R. Civ. P. 26(c) ..... 28

Fed. R. Civ. P. 30(b)(6) ..... 19

Fed. R. Civ. P. 45 ..... *passim*

Fed R. Civ. P. 45(c)(1)(A) ..... 1

Fed. R. Civ. P. 45(d) ..... 13, 14, 16

Fed. R. Civ. P. 45(d)(2)(B) ..... 13

Fed R. Civ. P. 45(d)(2)(B)(i) ..... 1, 13

Fed. R. Civ. P. 45(d)(3) ..... 1, 13

Fed. R. Civ. P. 45(d)(3) ..... 14

Fed. R. Civ. P. 45(f) ..... 2, 16

Fed. R. Civ. P. 45(g) ..... 13

S.D. Fla. Bankr. L. R. 2004-1(e) ..... 9

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

Rule 45 requires that the dispute over this subpoena ("Nevada Subpoena") be decided in the Southern District of Florida, where the Trustee first demanded compliance, and nothing in this Court's Rule 2004 Order says otherwise.

On September 18, 2026, the Trustee served a Rule 2004 subpoena on QPWB at its Miami headquarters, commanding compliance in Miami (the "Florida QPWB Subpoena"). [ECF No. 974]. On September 23, QPWB objected and told the Trustee it would move to quash in the Bankruptcy Court for the Southern District of Florida (the "S.D. Florida"), the court Rule 45(d)(3) designates. QPWB never objected to Miami as the place of compliance; its objection went to the use of Rule 2004 itself. Five days later, without telling QPWB's counsel, the Trustee served the same examination topics and the same document requests on QPWB's Henderson office, this time commanding compliance in Las Vegas (the "Nevada Subpoena"). [ECF No. 994]. The Trustee's counsel did not mention the Nevada Subpoena at the parties' meet and confer the next day, and the Trustee has never withdrawn the Florida QPWB Subpoena. QPWB filed its motion to quash in the S.D. Florida immediately after that unsuccessful meet and confer. The Trustee filed his first motion to compel in this Court roughly four hours after his counsel opened QPWB's emailed copy of that motion (the "First Motion"). [ECF No. 997]. He now tells this Court that he served the Nevada Subpoena "for the express purpose of meeting Quintairos' own objection." [ECF No. 1015, at 14]. QPWB made no such objection.

The Rule 2004 Order directs the Trustee to obtain documents by "a separate subpoena pursuant to Fed. R. Bankr. P. 9016," [ECF No. 972], and Rule 2004(c) likewise provides that an entity "may be compelled under Rule 9016" to testify or produce documents. Rule 9016 incorporates Rule 45, limits the place of compliance to within 100 miles of where the party is located, and assigns disputes over a subpoena to "the court for the district where compliance is required." Fed R. Civ. P. 45(c)(1)(A), 45(d)(2)(B)(i), (d)(3). With incorporated entities, the place of compliance is where the entity is headquartered and its designees are located. *See Europlay*

[1] QPWB's other pending motions [ECF Nos. 1007 and 1010], filed by other counsel, are set for hearing on November 17, 2026, and are not before the Court on this motion. This Opposition rests on Bankruptcy Rules 2004 and 9016, and Fed. R. Civ. P. 45.

*Capital Advisors, LLC v. Does*, 323 F.R.D. 628 (C.D. Cal. 2018) (holding that the place for compliance of a subpoena served on Google was the location of its principal headquarters because that is: (1) where the corporate records are, (2) where the custodian of records resides and is employed, and (3) the location from which the records will be produced).

This District has rejected precisely what the Trustee is trying to do now: identify an improper place of compliance on the face of a subpoena and seek to enforce compliance in that district. A party may not move that dispute to a more convenient forum "by simply listing that location on the face of the subpoena." *York Holding, Ltd. v. Waid*, 345 F.R.D. 626, 629 (D. Nev. 2024). QPWB's satellite office in Henderson has no designees, no corporate records, and no relevance to the parties' all but filed dispute. Rather, QPWB's headquarters are in Miami and the most knowledgeable on the noticed topics work there.[2] A new address on the subpoena did not move the place of compliance. Under the Trustee's reading of Rule 45, the place of compliance for a firm with offices across the country is wherever he decides to serve it next, which is the result *York Holding* rejects.

The Trustee's motion also intentionally creates a procedural and jurisdictional quagmire because the S.D. Florida is scheduled to hear QPWB's Florida Motion on October 21, 2026. That was filed two weeks before the Trustee's motion and he has already opposed it. His opposition asked that court for the same production schedule he seeks here, and told that court that compliance with either subpoena "will satisfy both." Letting that court rule is not only a jurisdictional requirement, but costs the Trustee nothing. If the Trustee believes this Court is better placed to decide, Rule 45(f) allows him to ask the S.D. Florida to transfer the motion. What he may not do is bypass that court by re-serving the subpoena at a different office.

Moreover, the Trustee created the urgency he now invokes. QPWB cooperated with his investigation. It produced its client file from the underlying New Mexico litigation (the "*Sanchez* Lawsuit"), consisting of thousands of pages, including privileged attorney-client communications, and the Trustee confirmed that he reviewed the file. It opened its corporate and financial records

[2] Boyer Decl., Exhibit A, at ¶ 12 & 13.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

under a confidentiality agreement, sent a lawyer across the country for the first settlement meeting, and sat for a lengthy interview in which it answered every question the Trustee's counsel asked.

On May 18, 2026, the Trustee sent a demand letter he represented was "organized as [the] complaint will be," calling his claims "substantial, exceptionally well-documented, and supported by an extensive evidentiary record" and declaring himself "prepared to file suit immediately." [ECF No. 1016-6, at 6]. He set a filing date of September 11, 2026; but, when QPWB declined his settlement terms, he did not file. Instead, he obtained Rule 2004 orders *ex parte* against QPWB and seven individuals associated with it (with QPWB, the "Subpoenaed Parties").[3] Since then, QPWB has offered corporate formation documents, financial documents, and a sworn statement of its ownership structure. The Trustee declined. Compliance with the Florida QPWB Subpoena is stayed under the S.D. Florida's local rules while that court considers QPWB's motion, so the lack of a production follows from those rules and does not show the defiance the Trustee's motion implies.

The Trustee also tells the Court that a November 23, 2026, limitations date requires immediate compliance. His own declaration, however, ties that date to the malpractice claims, which he says are already "developed." [ECF No. 1015, at 15; ECF No. 1016 ¶ 11]. What he actually seeks are the compensation agreements and aggregate pay of up to one hundred QPWB attorneys, for use in fraudulent transfer claims whose limitations periods "remain under review." He concedes that "compensation paid for services actually rendered" is not recoverable. [ECF No. 1015, at 12]. Those requests have nothing to do with the "acts, assets, conduct, property, liabilities, financial condition, and business dealings of the Debtors." [ECF No. 972]. They are discovery aimed at a law firm the Trustee has treated as a defendant for more than a year. In the global settlement approved in this case (the "Global Settlement"), he declined to challenge the $412 million verdict against NuMale and its officers[4] (the "*Sanchez* Verdict"), allowed Michael Sanchez a $410 million claim , and took assignment of the officers' malpractice claims against QPWB.

[3] "Subpoenaed Parties" means collectively QPWB; Eric Boyer ("Boyer"), Edward Prieto ("Prieto"), Dominique Barrett ("Barrett"), and Frank Alvarez ("Alvarez"), Erin Chavez ("Chavez"), Jack Oliver ("Oliver"), and John Robertson ("Robertson").

[4] "NuMale's Officers" and "Individual NuMale Parties" refers to non-debtors Brad Palubicki, Carlos Feliciano, Chris Asandra, and Justin Pulliam.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

QPWB's role in the *Sanchez* Lawsuit ended at the verdict. The decisions not to pursue post-verdict motions or an appeal were made afterward, by the Trustee and his counsel.

QPWB's request is modest. It asks the Court to let the Rule 45 process run its course by denying the Amended Compliance Motion or deferring it until after the S.D. Florida rules next week. Only if the Court concludes that it is the court where compliance is required does QPWB ask that the Court quash the Nevada Subpoena and enter a protective order. If the Trustee's claims are as well documented as he has represented, he can file them, and discovery can proceed under the Federal Rules, with their safeguards, as it does in every other case.

## I. BACKGROUND

Through multiple Subpoenas,[5] the Trustee seeks Rule 2004 discovery on three related claims: (1) legal malpractice claims, (2) Uniform Fraudulent Transfer Act ("UFTA") fraudulent conveyance claims, and (3) Florida Business Corporation Act ("FBC Act") unlawful distribution claims. The purported legal-malpractice claims arise from QPWB's pre-petition representation of the NuMale Parties[6] in the *Sanchez* Lawsuit. Even though the legal malpractice claims remain unliquidated and unfiled, the Trustee argues those claims somehow create a contingent liability exceeding $2 billion that renders QPWB insolvent.[7] Under the UFTA and FBC Act, the Trustee threatens the Boyer, Prieto, and potentially all QPWB Partners with claims that would impose personal liability for all firm distributions since November 2024.[8]

### A. QPWB's Representation of the NuMale Parties.

In the *Sanchez* Lawsuit, NuMale's insurer, Beazley, engaged QPWB mid-lawsuit to represent the NuMale Parties in July 2022,[9] and QPWB represented them through trial. The plaintiff, Michael Sanchez, pursued various claims against the NuMale Parties arising from treatment he obtained from NuMale. Trial occurred in November 2024 and resulted in a $412

---

[5] "Subpoenas" means the subpoenas the Trustee has already issued each Subpoenaed Party: QPWB [ECF Nos. 974 and 994], Boyer [ECF No. 975], Prieto [ECF No. 987], Robertson [ECF No. 988], Oliver [ECF No. 989], Barrett [ECF No. 990], Chavez [ECF No. 991], and Alvarez [ECF No. 992].

[6] These parties include debtors NuMale Corporation and NuMale New Mexico S.C. Corp, as well as non-debtors NuMale Albuquerque LLC and NuMale's officers Brad Palubicki, Carlos Feliciano, Chris Asandra, and Justin Pullium

[7] *See* Fraudulent Transfer Notice to Eric Boyer, Exhibit B; Fraudulent Transfer Notice to Edward Prieto, Exhibit C.

[8] *See* Fraudulent Transfer Notice to Eric Boyer, Exhibit B; Fraudulent Transfer Notice to Edward Prieto, Exhibit C.

[9] *See* Demand Letter, Exhibit D, at 3.

million verdict, which consisted of compensatory damages of $37 million and punitive damages of $375 million. Boyer, Prieto, Alvarez, and Oliver did not participate in the trial or in any pretrial discovery, and Chavez was only an associate acting under the direction of Barrett and Robertson. The Trustee is aware of these facts through his review of the billing ledger from the matter.[10]

**B. NuMale's Bankruptcy Proceedings**

Shortly after the *Sanchez* Verdict on January 22, 2025, NuMale and six of its affiliates filed for bankruptcy. The Trustee alleges the *Sanchez* Verdict caused NuMale to file for bankruptcy relief.[11] Michael Sanchez was the estates' largest creditor, holding 98% of all claims as a result of the Global Settlement based on the *Sanchez* Verdict.[12] QPWB was not provided with notice of the hearing on the motion to approve the Global Settlement.

***i. The Trustee's appointment and post-verdict decisions.***

A few months later, the Trustee was appointed to take control of the NuMale bankruptcy estates.[13] He represented to this Court that the estates had few liquid assets, that their largest assets were litigation claims, and that he had begun pursuing claims.[14] On May 20, 2025, the Court approved the employment of the Trustee's counsel, Garman Turner Gordon LLP ("GTG"), on a hybrid basis combining reduced hourly rates with a contingency fee on litigation recoveries.[15]

At the same May 20, 2025 hearing, the Trustee also sought approval to employ the law firms Paul Weiss and Rodey Dickinson for the *Sanchez* Lawsuit.[16] Their purpose was to enable the "estates to meaningfully participate in all post-trial motion practice concerning the [*Sanchez*] verdict, and any related appeals."[17] At that hearing, GTG represented "there's substantial post-trial motion practice and appellate work and other litigation that would be necessary to protect the estate's interest."[18] The Trustee, however, never filed any post-verdict motions and never sought an appeal.[19] The lawsuit primarily remained stayed and the verdict was never reduced to judgment.

[10] *See* Demand Letter, Exhibit D, at 3.
[11] *See* Demand Letter, Exhibit D, at 9.
[12] *See* [ECF No. 431, at 3].
[13] *See* [ECF No. 156].
[14] *See* [ECF No. 201, at 3].
[15] *See* [ECF No. 200, at 3–5]; [ECF No. 201, at 3].
[16] *See* [ECF Nos. 269 & 272].
[17] *See* [ECF No. 269, at 5]; *accord* [ECF No. 272, at 5].
[18] *See* Official Transcript from 5/20/25 Hearing, Exhibit E, at 10–11.
[19] *See* [ECF No. 430, at 9].





Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

***ii. The Global Settlement Agreement and confirmation of the Plan.***

The Global Settlement resolved both a coverage dispute with Beazley and Sanchez's claim arising from the *Sanchez* Verdict. Beazley settled potential bad faith claims for $108.5 million on a $6 million policy while the Trustee accepted Mr. Sanchez's $410 million claim against the estate.[20] The agreement also preserved NuMale's purported claims against QPWB and assigned the Trustee the NuMale Officers' purported legal malpractice claims against QPWB. The Trustee took "sole direction and control" of those claims which were referred to as the "Quintairos Claims."[21] He later obtained the same from Palubicki and Feliciano through stipulations.[22]

The "Quintairos Claims" became the core of NuMale's plan of reorganization, which was confirmed on October 7, 2025.[23] The confirmed plan established a Liquidation Trust and identified the "Quintairos Claims" as the claims the Liquidation Trust would pursue.[24] Those purported claims "are the Trust's principal asset" and focus of the Rule 2004 discovery at issue.[25]

In short, the Trustee took control of the malpractice claims against QPWB while accepting, without challenge, the verdict on which their claimed value depends. The motion to approve the Global Settlement, which assigned those claims, was not served on QPWB.[26] QPWB was added to the mailing matrix only after that motion was filed.[27]

## C. The Trustee's Post-Confirmation and Extrajudicial Actions

Following confirmation, and without using Rule 2004 discovery, the Trustee demanded QPWB's complete client file from the *Sanchez* Lawsuit on October 6, 2025.[28] He stated that he was actively investigating potential claims arising from QPWB's representation and that litigation was reasonably anticipated.[29] QPWB produced the client file, transferring thousands of pages of materials, including NuMale client correspondence, pleadings, work product, and their attorney-

---

[20] *See* [ECF No. 430, at 11–12].
[21] *See* [ECF No. 430-1, at 85].
[22] *See* [ECF No. 662 & 664].
[23] *See* [ECF Nos. 434 and 726].
[24] *See* [ECF No. 435, at 41]; *see also* [ECF No. 434-1, at 103] (preserved litigation claims); [ECF No. 435-2] (liquidation analysis).
[25] [ECF No. 1015, at 2].
[26] The Certificate of Service for the Motion to Approve the Global Settlement and accompanying hearing on that motion did not list QPWB as a recipient. *See* [ECF No. 445].
[27] *See* [ECF Nos. 451 & 452].
[28] *See* Demand for Transfer of Client File, Exhibit F.
[29] *See* Litigation Hold Notice, Exhibit G, at 1.

Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

client communications, while engaging with the Trustee about the documents and asserted claims.[30] The transfer was completed in early 2026, months before the Trustee send his demand letter.

***i. The Demand Letter and Fraudulent Transfer Notices.***

Armed with the client file, the Trustee served QPWB a detailed demand letter on May 18, 2026 ("Demand Letter"), with 39 exhibits, which the Trustee stated was "organized as [the] complaint will be."[31] The Demand Letter provided that the Trustee was the lead plaintiff in a joint action with each of the Individual NuMale parties where they were collectively pursuing legal malpractice claims against QPWB.[32] It further boasted that the claims were "substantial, ***exceptionally well-documented, and supported by an extensive evidentiary record,"*** that total exposure exceeded $2 billion, and that the Trustee was "***prepared to file suit immediately***" and prosecute the claims through verdict and appeal.[33]

The Trustee also asserted fraudulent-transfer theories against Boyer and Prieto. On June 30, 2026, he sent a draft notice threatening claims concerning QPWB distributions. On August 4, 2026, he sent a revised draft adding statutory theories. Finally, on September 10, 2026, the Trustee formally sent Boyer and Prieto Fraudulent Transfer Notices. Each notice threatened "separate claims" against Boyer and Prieto personally and stated that the Trustee "may pursue these claims now."[34]

***ii. QPWB's efforts to resolve the claims.***

After receiving the Demand Letter, QPWB continued to cooperate extensively with the Trustee. It participated in multiple telephone conferences and substantive meetings with the Trustee's counsel.[35] One of its attorneys, Mike Connery, traveled from Philadelphia to Newport Beach, California, for the parties' first extensive settlement meeting where it received the first settlement offer.[36] QPWB did not accept the offer, and the parties kept negotiating. To facilitate the continued discussions, QPWB provided the Trustee access on a confidential basis to hundreds of

---

[30] *See* Demand Letter, Exhibit D; [ECF No. 1016-6].
[31] *See* Demand Letter, Exhibit D, at 5; [ECF No. 1016-6 at 6].
[32] *See* Demand Letter, Exhibit D, at 1–2; [ECF No. 1016-6 at 2-3].
[33] *See* Demand Letter, Exhibit D, at 25; [ECF N0. 1016-6 at 26] (emphasis added).
[34] *See* Fraudulent Transfer Notice to Eric Boyer, Exhibit __; Fraudulent Transfer Notice to Edward Prieto, Exhibit __.
[35] *See* Boyer Decl., Exhibit A, at ¶ 19.
[36] *See* Boyer Decl., Exhibit A, at ¶ 19.





Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

pages of company structure and financial documents, under a Non-Disclosure and Confidentiality Agreement ("NDA").[37] While doing so, QPWB explained what those documents showed about the Trustee's asserted claims. On August 14, 2026, QPWB participated in a lengthy interview during which QPWB provided a comprehensive explanation of its relevant financial processes and protocols and answered every question posed by the Trustee's counsel.[38] On August 28, 2026, the Trustee sent a revised settlement term sheet which warned that rejecting the proposal would result in the filing of a complaint on September 11, 2026.

**D. The Subpoenas**

On September 10, 2026, after QPWB rejected the take it or leave it settlement offer, the Trustee immediately sought *ex parte* approval to issue Rule 2004 discovery on Boyer, Prieto, and QPWB.[39] This Court approved Rule 2004 discovery for Boyer and QPWB on September 15, 2026, and subpoenas were served on September 18, 2026.[40] Prieto's was approved on September 22, 2026, and served that same day.[41] *Ex parte* approval for the remaining Subpoenaed Parties (Chavez, Barrett, Robertson, Alvarez, and Oliver) was sought on September 18, 2026;[42] approved on September 23, 2026;[43] and service for those subpoenas was accepted on September 24, 2026.[44]

***i. The Subpoenas are invasive and disproportionate.***

Altogether, the Subpoenas seek ***eight*** rule 2004 examinations on the same facts. The Boyer, Prieto, and QPWB Subpoenas also make invasive and harassing document requests. For example, the Boyer and Prieto Subpoenas demand, after reductions offered by the Trustee, among other things, their entire QPWB compensation information, banking institutions, as well as "any person, trust, or entity to which [they] transferred $250,000 or more, in the aggregate, during the 2024[-2026] calendar year[s], produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s)."[45] The

---

[37] *See* Boyer Decl., Exhibit A, at ¶ 20. QPWB does not waive any rights, protections, or remedies provided for in that NDA.
[38] *See* Client Decl., Exhibit A, at ¶ 21.
[39] *See* [ECF Nos. 969, 970, & 971].
[40] *See* [ECF Nos. 972, 973, & 996].
[41] *See* [ECF Nos. 981 & 996].
[42] *See* [ECF Nos. 976–980].
[43] *See* [ECF Nos. 982–986].
[44] *See* [ECF Nos. 993].
[45] *See* October 7, 2026 Conferral Letter, Exhibit H; [ECF Nos. 975 & 987].

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

QPWB Subpoena is even more overreaching and demands confidential employee compensation information, privileged attorney client information, work product, confidential corporate structure, information, and financial statements.[46]

***ii. The parties confer on the Florida Subpoena, and QPWB files the Florida Motion before the Trustee files his Initial Compliance Motion.***

On September 23, 2026, QPWB, Boyer, and Prieto ("Florida Parties") responded to the subpoenas served on them in Florida ("Florida Subpoenas") with a conferral latter.[47] It requested the Trustee withdraw the Florida Subpoenas and stated that the Florida Parties intended to move to quash in the S.D. Florida if they were not withdrawn.[48] Thereafter, on September 29, 2026, counsel for the Florida Parties and GTG held a meet and confer to further discuss the issues.[49] Counsel for the Florida Parties reiterated that Florida, not Nevada, was the proper jurisdiction to litigate the Florida Subpoenas because compliance was required in Florida. GTG disagreed without identifying any caselaw to the contrary calling it a "circumstances driven determination."[50]

When conferral failed, the Florida Parties immediately moved to quash the Florida Subpoenas and for a protective order on September 29, 2026, at 3:14 pm ET/12:14 pm PT in the Bankruptcy Court for the S.D. of Florida ("Florida Motion").[51] Per the S.D. Fla. Bankr. Court's local rules, compliance with the Florida Subpoenas was automatically stayed upon filing.[52] A copy of the Florida Motion was sent to GTG at 5:34 pm ET/2:34 pm PT.[53] GTG read that email less than five minutes later at 5:38 pm ET/ 2:38 pm PT.[54] The Trustee then filed his Initial Compliance Motion almost four hours later at 6:24 pm PT.[55]

---

[46] *See* October 7, 2026 Conferral Letter, Exhibit H.
[47] *See* Florida Conferral Letter, Exhibit I.
[48] *See* Florida Conferral Letter, Exhibit I.
[49] *See* [ECF No. 1021, at ¶ 4].
[50] *See* [ECF No. 1021, at ¶ 4].
[51] *See* Florida Motion to Quash Subpoenas and For Protective Order, Exhibit J.
[52] *See* S.D. Fla. Bankr. Local Rule 2004-1(e).
[53] *See* Email from A. Lee-Sin to GTG, Exhibit K.
[54] *See* Read receipt for email from A. Lee-Sin to GTG, Exhibit L.
[55] *See* [ECF No. 997].

***iii. The Trustee served a second duplicate subpoena on QPWB's Henderson office.***

Before the September 29, 2026, meet and confer, the Trustee, without telling QPWB or its counsel, served the Nevada Subpoena on QPWB's Henderson, Nevada office.[56] This Nevada Subpoena noticed the same topics for a QPWB PMK Rule 2004 exam and the same production demands as the Florida QPWB Subpoena, but identified Nevada as the location for the exam and place for production, and was addressed to the managing partner of QPWB's Henderson office.[57] The attorneys in that office were recent hires and none of them had any role in QPWB's representation in the *Sanchez* Lawsuit or in the compensation and distribution decisions the subpoena targets.[58] QPWB's persons most knowledgeable on the noticed topics, its custodian of records, and the records themselves are all located at its Miami headquarters.[59] GTG did not ever withdraw the Florida QPWB subpoena.[60] Before this subpoena issued, QPWB had never objected to the place of compliance for the Florida QPWB Subpoena.[61] Its objections went to the purpose, scope, and authority to seek Rule 2004 discovery.[62]

**E. Subsequent Conferrals**

After the Trustee filed his initial Motion to Enforce Compliance with Rule 2004 Orders ("Initial Compliance Motion"),[63] counsel held additional conferrals on October 1, 5, and 6, 2026.[64] On October 7, 2026, after those meetings concluded, the Trustee proposed replacing eleven of QPWB's document requests with two requests directed to the 80 to 100 attorneys QPWB describes as "rainmakers" or heads of "business units": (i) the agreements governing their compensation, and (ii) documents sufficient to identify their aggregate compensation for 2024, 2025, and year-to-date 2026. QPWB's counsel engaged in good faith, but the parties could not reach a resolution because the narrowed requests still sought confidential information about QPWB employees who have no ownership or control of the firm.[65]

[56] *See* [ECF Nos 994 & 996].
[57] *See* [ECF No. 994].
[58] *See* Boyer Decl., Exhibit A, at ¶ 18.
[59] *See* Boyer Decl., Exhibit A, at ¶ 13.
[60] *See* [ECF No. 1021, at ¶ 3].
[61] *See* Florida Conferral Letter, Exhibit I.
[62] *See* Florida Conferral Letter, Exhibit I.
[63] *See* [ECF No. 997].
[64] *See* [ECF No. 1021, at ¶ 9].
[65] *See* [ECF No. 1021, at ¶ 10]; October 7, 2026 Conferral Letter, Exhibit H; October 9, 2026 Conferral Letter,





Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

QPWB's ownership and control structure is simple. Eric Boyer and Edward Prieto are QPWB's only shareholders, officers, and directors.[66] None of the 80 to 100 attorneys covered by the narrowed requests holds any equity in QPWB, serves as an officer or director, or has authority to direct QPWB's management, compensation decisions, or distributions.[67] They are W-2 employees compensated for the legal services they provide.[68] The Trustee concedes that "compensation paid for services actually rendered" is not recoverable.[69]

Counsel explained two further obstacles. First, QPWB has offices in 35 states and one territory, each with its own laws protecting employee personnel and compensation information, and disclosing these employees' compensation could run afoul of one or more of those laws.[70] Each employee would also have a right to object to such a disclosure in the relevant proceeding.[71] Second, a tolling agreement was not feasible. QPWB cannot consent on behalf of approximately 100 employees to toll claims against them personally, and asking each of them to toll claims the Trustee has not filed risks prompting those attorneys to seek employment elsewhere, which could result in substantial attrition and the closure of offices.[72]

Nevertheless, QPWB offered to produce certain corporate formation documents, certain financial documents, and a sworn statement attesting that it has only two shareholders, does not distribute general firm profits to its partners, and has made only limited distributions for pass-through taxes.[73] The Trustee rejected QPWB's offer, and each party agreed that a court would have to resolve the dispute.

## II. <u>ARGUMENT</u>

The Trustee obtained approval from this Court, *ex parte*, to issue subpoenas for Rule 2004 examinations and production of documents.[74] Acting on those Orders, the Trustee served the

---

Exhibit M.

[66] *See* Boyer Decl., Exhibit A, at ¶ 4.

[67] *See* Boyer Decl., Exhibit A, at ¶¶ 7–8.

[68] *See* Boyer Decl. , Exhibit A, at ¶¶ 7–8.

[69] *See* [ECF No. 1015, at 12].

[70] *See* Boyer Decl., Exhibit A, at ¶¶ 30–33.

[71] *See* Boyer Decl., Exhibit A, at ¶¶ 30–33.

[72] *See* Boyer Decl., Exhibit A, at ¶¶ 30–33.

[73] *See* Boyer Decl., Exhibit A, at ¶ 34; [ECF No. 2021, at ¶ 11].

[74] Those Orders are for QPWB [ECF No. 972], Boyer [ECF No. 973], Prieto [ECF No. 981], Barrett [ECF No. 982], and Alvarez [ECF No. 983], Chavez [ECF No. 984], Oliver [ECF No. 985], and Robertson [ECF No. 986].

Florida QPWB Subpoena, which QPWB has moved to quash in the S.D. Florida. He then served the Nevada Subpoena without withdrawing the Florida QPWB Subpoena and asked this Court to decide the same dispute first.

The Court need not reach the merits now. The S.D. Florida will hear the identical dispute on October 21, 2026, and the Court should deny the Amended Motion or defer it until that court rules. Even if the Court proceeds, enforcing its Rule 2004 Order means applying Rule 45, and Rule 45 assigns this dispute to the court where compliance is required. That court is the S.D. Florida, because a second address on the subpoena does not change where QPWB complies. On the merits, the narrowed requests fall outside Rule 2004 and the Court's own Order. For the same reasons, if the Court concludes that it is the court where compliance is required, it should quash the Nevada Subpoena and enter a protective order.

**A. The Court Should Defer to the S.D. Florida, Which Will Hear the Identical Dispute on October 21, 2026.**

The most straightforward course is to let the S.D. Florida rule first. QPWB filed its motion to quash the Florida QPWB Subpoena in the S.D. Florida on September 29, 2026, before the Trustee filed anything in this Court. *See* Florida Motion, Exhibit J. That court set a briefing schedule and a hearing for October 21, 2026, at 10:00 a.m. *See* Florida Order Setting Hearing, Exhibit N. The Trustee filed his opposition there on October 13, 2026, and asked that court to order production by October 30, 2026 and an examination by November 4, 2026, the same schedule he asks this Court to impose. *See* Trustee's Florida Opposition, Exhibit O. He also told that court that documents and testimony provided under either subpoena "will satisfy both." *See* Trustee's Florida Opposition, Exhibit O, at 6. The two subpoenas seek the same thing, and the Trustee has asked two courts to compel it.

Deferring for five days costs the Trustee nothing. A ruling on October 21 leaves his own requested production and examination dates intact, and both fall before the November 23, 2026 date he identifies. The Trustee's own October 7 letter withdrew six requests "as a result of the pending motion to quash," which acknowledges that the Florida proceeding is live and relevant. *See* October 7, 2026 Conferral Letter, Exhibit H. The Trustee warns of conflicting rulings, [ECF

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

No. 1017 ¶ 5], but that risk exists only because he has asked two courts for the same relief. The way to avoid inconsistent rulings is to let the court that Rule 45 designates, and that already has the dispute before it, decide first.

The Court should deny the Amended Compliance Motion or, at a minimum, defer it until the S.D. Florida rules on October 21, 2026.

**B. Even if the Court Enforces Its Own Order, Rule 45 Assigns This Dispute to the Court Where Compliance Is Required**

QPWB does not dispute that this Court may enforce its own Rule 2004 Order. The question is what enforcement requires. The Order directs that "[t]he Trustee shall issue a separate subpoena pursuant to Fed. R. Bankr. P. 9016 for the production of documents." [ECF No. 972]. The Trustee himself relies on Rule 2004(c), which provides that "[r]egardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016," and he frames his motion under Rule 45(d)(2)(B) and Rule 45(g). [ECF No. 1015, at 11, 13, 16]. Having invoked Rule 45, he must take it as written. Rule 45 provides that a motion to compel production is brought in "the court for the district where compliance is required," Fed. R. Civ. P. 45(d)(2)(B)(i); that the same court decides motions to quash, Fed. R. Civ. P. 45(d)(3); and that the issuing court may hold a nonparty in contempt only "after a motion is transferred," Fed. R. Civ. P. 45(g). Enforcing the Order therefore leads to the court where compliance is required.

A party can only demand compliance with Rule 2004 discovery in the district of compliance through Fed. R. Civ. P. 45(d). Rule 2004(c), which governs "compelling attendance and the production of documents or electronically stored information," requires a party to compel attendance through Rule 9016. Through Rule 9016 "Fed. R. Civ. P. 45 applies in a bankruptcy case," and its official commentary clarifies that "Rule 45 F.R.Civ.P. limits the subpoena power to the judicial district and places outside the district which are within 100 miles of the place of trial or hearing." *See* Bankr. R. 9016 advisory committee's note. This Court's Local Rules likewise confirm that a recipient of a subpoena may exercise its "rights under Federal Rule 45(d)(2) and (3)." *See* LR 9016(b).

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Thus, if a party seeks compliance with Rule 2004 discovery, it must do so in the district where compliance is required. Fed. R. Civ. P. 45(d). The Trustee attached an excerpt of Fed. R. Civ. P. 45 to each Subpoena, so he knew this rule when he served them.

***i. Nevada has squarely addressed that enforcement of a subpoena must be sought in the district where compliance is required.***

This District has been clear about where subpoena disputes belong when compliance is required in another jurisdiction. For example, in *Agincourt Gaming, LLC v. Zynga, Inc.*, a defendant from a case in the District of Delaware issued subpoenas on a non-party Nevada corporation requiring compliance in Nevada and its employees that lived in California requiring compliance in California. No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *1 (D. Nev. Aug. 15, 2014). Both the company and employees moved to quash those subpoenas in the District of Nevada. *See id.* Applying Fed. R. Civ. P. 45(d), the court held "when a motion to quash a subpoena is filed in a court other than the court where compliance is required, ***that court lacks jurisdiction to resolve the motion***." *See id.* at *3 (emphasis added). Thus, the court could address the subpoena served to the corporation requiring compliance in Nevada, but "lack[ed] jurisdiction over the subpoena-related motions as they relate to the" employees. *See id.* at *5.

Other Nevada decisions are in accord with *Agincourt Gaming*. *See Taddeo v. Am. Invsco Corp.*, No. 212CV01110APGNJK, 2016 WL 593522, at *1 (D. Nev. Feb. 12, 2016) ("When a non-party seeks to quash a subpoena, such a motion must be filed with the court for the district where compliance is required"); *Mirae Asset Sec. Co. v. Ryze Renewables Holdings, LLC*, No. 2:23-CV-01492-APG-NJK, 2025 WL 1159944, at *3 (D. Nev. Apr. 21, 2025) ("A motion to quash or modify a subpoena must be filed with 'the court for the district where compliance is required.' Fed. R. Civ. P. 45(d)(3). If a motion to quash a subpoena is filed in a court that does not control compliance with a subpoena, that court 'lacks jurisdiction to resolve the motion.'"); *In re Plise*, 506 B.R. 870, 877 (B.A.P. 9th Cir. 2014) ("The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Civil Rule 45(e), applicable here through Rule 9016.").

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

***ii. Other courts consistently hold that Rule 2004 subpoena disputes belong in the district where compliance is required.***

When faced with subpoenas seeking Rule 2004 examinations or document production, courts across the country have reached the same conclusion: a motion seeking to quash or enforce the subpoenas ***must*** be filed in the district where compliance is required. A good example is *In re SBN Fog Cap II LLC*, 562 B.R. 771, 775 (Bankr. D. Colo. 2016).

There, a debtor filed for Chapter 11 bankruptcy in the District of Colorado. *See id.* at 772. The committee from that proceeding sought approval to issue Rule 2004 discovery on various entities and later issued subpoenas to the various entities. *See id.* One of those entities sought to quash the subpoena in the District of Colorado even though it required compliance in New York. *See id.* at 774. The court, *sua sponte*, flagged a threshold problem: the motion to quash had been filed in the District of Colorado. Applying Fed. R. Civ. P. 45 to the Rule 2004 discovery subpoenas, the court held "as the 'issuing court' [it] simply is not authorized by any statute or rule of civil or bankruptcy procedure to interject itself into a discovery dispute involving the production of documents where the 'place of compliance' is not within Colorado and the respondents are not the Debtors." *See id.* at 776. It noted that "[n]umerous other federal courts are in accord." *See id.* at 775 (analyzing *Semex All. v. Elite Dairy Genomics, LLC*, 2014 WL 1576917 (S.D. Ohio Apr. 18, 2014) and citing *Fidelis Group Holdings, LLC v. Chalmers Automotive, LLC*, 2016 WL 4547994 (E.D. La. Sept. 1, 2016); *Taddeo v. American Invsco Corp.*, 2016 WL 593522 (D. Nev. Feb. 11, 2016); *Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC*, 2015 WL 3935726 (D. Kan. June 26, 2015); *Tomelleri v. Zazzle, Inc.*, 2015 WL 400904 (D. Kan. Jan. 28, 2015)).

Going further, the court in *In re Correra* analyzed at length the interplay between Rule 2004, Rule 9016, and Rule 45. *See* 589 B.R. 76, 110–13 (Bankr. N.D. Tex. 2018). It concluded that there is no way to sidestep Fed. R. Civ. P 45 because "personal jurisdiction over a non-debtor third party witness in a Rule 2004 context is properly established by serving a subpoena pursuant to under Rule 45." *Id.* at 110. Thus, "a subpoena [is] required here in the case of [the subpoenaed party] to ***compel her attendance at a Rule 2004 examination*** and to ***compel production of documents*** pursuant thereto." *Id.* at 113 (emphasis in original).

Rule 45 also answers the Trustee's concern that the S.D. Florida lacks this Court's institutional knowledge. [ECF No. 1017, at ¶ 5]. When the court where compliance is required did not issue the subpoena, it "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Trustee may make that request in the S.D. Florida. He may not skip that step by re-serving the same subpoena at a different address.

**C. The Nevada Subpoena Requires Compliance in the S.D. Florida**

The Nevada Subpoena was served on QPWB's Henderson, Nevada satellite office and facially requires compliance in Las Vegas, Nevada. [ECF No. 994]. It was served after QPWB had told the Trustee that it would seek relief in S.D. Florida, and GTG did not mention it at the September 29, 2026, meet and confer. That facial designation does not change the place of compliance from the S.D. Florida to Nevada.

***i. The District of Nevada and other courts in the Ninth Circuit look past the location identified on the subpoena as the place of compliance.***

This District interprets "the place 'where compliance is required' for a motion to quash a subpoena for the production of documents to mean the location of the subpoenaed nonparty, even if different than the location for the production of documents identified on the face of the subpoena." *See York Holding, Ltd.*, 345 F.R.D. at 628. This is because "it would eviscerate the entire purpose of these provisions in Rule 45 to interpret them as meaning that a subpoenaing party may force a subpoenaed nonparty to litigate a subpoena-related dispute in an inconvenient district by simply listing that location on the face of the subpoena." *See id.* at 629. Thus, "the intent could not be clearer that the location of the subpoenaed nonparty, as identified in Rule 45(c), is meant to control which district is the place of compliance for the purpose of filing a motion to quash under Rule 45(d)." *See id.*

Other district courts in the Ninth Circuit also look to where compliance actually takes place. For example, in *Europlay Cap. Advisors, LLC*, the plaintiff sought to compel Google to comply with a subpoena in the Central District of California because Google had an office in Venice, California. 323 F.R.D. at 629. The Court rejected that argument because "despite Google having

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

an office in Venice, the proper district to hear a motion to compel is where Google is headquartered" which was in the Northern District of California. *See id.* That was where "(1) Google is headquartered; (2) Google's custodians of records reside, are employed, and regularly transact business in person; and (3) Google's custodians produced records in response to the Subpoena." *See id.*; *In re Path Network, Inc.*, 703 F. Supp. 3d 1046, 1065 (N.D. Cal. 2023) ("Applicants' proposed subpoena, as written, purports to require Discord, headquartered in San Francisco, to produce documents in Los Angeles, California. … [This] violates the 100-mile restriction on subpoenas duces tecum, because San Francisco is more than 100 miles from Los Angeles, California."); *accord The Marshall Project, Inc., v. City of Cleveland*, No. 24-MC-309 (VEC), 2024 WL 4589667, at *3 (S.D.N.Y. Oct. 28, 2024) (quashing subpoena served in Ohio because the principal headquarters were in Manhattan notwithstanding the subpoenaed entity having 5 of its 76 employees in Ohio); *Dellaportas v. Shahin*, No. 24-CV-793, 2025 WL 3019810, at *1 (S.D.N.Y. Oct. 29, 2025) (finding the S.D. of New York was an improper place to enforce compliance because Microsoft was headquartered in Washington, notwithstanding a regional office with a substantial presence in New York).

"[A] subpoenaing party cannot compel compliance at *any* location where a nonparty has a corporate office" and "does not possess the authority to determine who will testify on the organization's behalf." *See Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21CV1197-W-MDD, 2022 WL 2820667, at *9 (S.D. Cal. July 18, 2022) (emphasis in original). When a company's business is headquartered and organized in another state, satellite offices "are not an optional 'place of compliance.'" *See id.* at *7. The address on the face of the subpoena does not control. *See HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *7–8 (S.D. Cal. Nov. 29, 2022) ("Many other courts, however, have held that the 'place of compliance' depends on where the documents sought are located or where the nonparty subpoena recipient resides or works," not "the location identified on the face of the subpoena").

The Trustee relies on *Conservation Law Foundation, Inc. v. Equilon Enterprises LLC*, 2025 WL 2821238, at *1-2 (D.R.I. Oct. 3, 2025) to rebut the widely adopted principle that the district of compliance is the "location of the subpoenaed party." *See York Holding, Ltd.*, 345 F.R.D. at 628.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

But that out-of-circuit decision is the minority view and runs contrary to decisions in this District and elsewhere in the Ninth Circuit. Courts in this Circuit "have held that there is '***no question***' that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena is where the nonparty is headquartered." *See Roberts v. Randy LL Corp.*, No. 3:24-CV-00523-HZ, 2025 WL 2717823, at *6 (D. Or. Sept. 24, 2025) (quoting *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F.Supp.3d 979, 982, 984 (N.D. Cal. 2015)) (emphasis added). District courts in the Second Circuit agree. *See Marshall Project, Inc.*, 2024 WL 4589667, at *3 ("Courts within this Circuit have fairly consistently held that, under Rule 45, the party issuing a subpoena to a non-party entity can require compliance only in the district in which the entity is headquartered or at a place within 100 miles of the entity's headquarters.").

In short, a company's headquarters, the location of its designees, and the location of its custodian of records are controlling for a Rule 45 analysis. *See, e.g., York Holding, Ltd.*, 345 F.R.D. at 628–29; *Europlay Cap. Advisors, LLC*, 323 F.R.D. at 629; *Marshall Project, Inc.*, 2024 WL 4589667, at *3; *Fed. Ins. Co.*, 2022 WL 2820667, at *9.

***ii. QPWB's headquarters, designees, and custodian of record are in the S.D. Florida.***

The Nevada Subpoena requires compliance in Florida. QPWB is organized under the laws of Florida and maintains its principal place of business in Miami. *See* Boyer Decl., Exhibit A, at ¶¶ 2–3. Its custodian of records is located in Florida, and every person who could be designated to testify on the noticed topics is located in Florida. *See* Boyer Decl., Exhibit A, at ¶ 13. QPWB does not dispute that it has ***an*** office in Henderson. But that office has less than one percent of QPWB's attorneys, has no connection to the *Sanchez* Lawsuit, the UFTA claims, or the FBC Act claims, and it does not employ any of the individual Subpoenaed Parties. *See* Boyer Decl., Exhibit A, at ¶¶ 12–13, 18. The Nevada Subpoena was addressed to the managing partner of that office, but neither she nor any other Henderson attorney had any role in QPWB's representation in the Sanchez Lawsuit or in the compensation and distribution decisions the subpoena targets. *See* Boyer Decl., Exhibit A, at ¶ 18. Under Rule 30(b)(6), QPWB, not the Trustee, designates who testifies, and a subpoenaing party "does not possess the authority to determine who will testify on the organization's behalf." *Fed. Ins. Co.*, 2022 WL 2820667, at *9. The noticed topics concern QPWB's intake and handling

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

of the *Sanchez* Lawsuit, its ownership and governance, and its compensation and distribution practices. *See* [ECF No. 994]. The only witnesses QPWB could designate on those topics work in Miami, and the records are maintained there. *See* Boyer Decl., Exhibit A, at ¶ 13. The Trustee served the subpoena in Henderson, but QPWB complies in Miami.

The Trustee tries to distinguish *York Holding* on the ground that QPWB "has multiple representatives residing, working, and regularly conducting business in Nevada." [ECF No. 1015, at 14]. This is an exaggeration and irrelevant because QPWB's token presence in Nevada does not control the place of compliance. What matters is where the nonparty's designees, custodians, and records are. *See York Holding, Ltd.*, 345 F.R.D. at 628–29; *Europlay Cap. Advisors, LLC*, 323 F.R.D. at 629. Google's Venice office was real, too, and it did not make the Central District of California the place of compliance. *Id.*

The Trustee cannot sidestep Rule 45's 100-mile restrictions simply by serving a branch office. *See York Holding, Ltd.*, 345 F.R.D. at 628–29; *Fed. Ins. Co.*, 2022 WL 2820667, at *9 ("[a] subpoenaing party cannot compel compliance at any location where a nonparty has a corporate office"); *Dellaportas*, 2025 WL 3019810, at *1 ("Although Plaintiff relies on the 'regularly transacts business' prong of Rule 45 to argue that the motion to quash can be heard in this District because Microsoft has a substantial office in this District, Plaintiff has not cited a case that supports his reading of Rule 45. Accordingly, for the reasons discussed, any motion to quash by Microsoft should be heard in the Western District of Washington"). So too here: QPWB is headquartered in Miami, and the people who would search for, produce, and testify about the requested information work there. The Trustee's approach would let him pick the forum for any multistate firm just by choosing which office to serve. Rule 45 does not allow that. Accordingly, the dispute belongs in the S.D. Florida, and this Court should deny the Amended Compliance Motion.

**D. Rule 2004 Does Not Authorize the Requested Discovery**

Even apart from Rule 45, the Nevada Subpoena seeks information outside the scope of Rule 2004 because it goes well beyond a pre-suit investigation. The Trustee has received and reviewed the QPWB client file, conducted interviews, and reviewed financial and organizational documents. He then sent a detailed demand letter laying out his theories with 39 exhibits, threatened $2 billion

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

in exposure, set a deadline to sue, and declared that the claims are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record." On his own account, nothing is left to investigate. Yet instead of filing the complaint he promised, he turned to Rule 2004.

Rule 2004 was never intended to hand the Trustee a strategic advantage, particularly after he said he was "prepared to prosecute these claims to verdict and through appeal"[75] over four months ago. The Court should deny the Amended Compliance Motion and, if it concludes that it is the court where compliance is required, quash the Nevada Subpoena and enter a protective order.

***i. Rule 2004 does not authorize discovery to gain a strategic advantage or to circumvent the procedural safeguards applicable to discovery in litigation.***

Rule 2004's primary "purpose is to allow inquiry into the debtor's acts, conduct or financial affairs so as to discover the existence and location of assets of the estate. *See In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993) (citing 2 Collier on Bankruptcy ¶ 343.04). It is generally used for examination of the debtor regarding the debtor's assets and liabilities and not for examination of creditors. *See In re Board of Directors of Hopewell Intern. Ins. Ltd.*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001). Thus, third parties are only subject to examination pursuant to Rule 2004 if they "possess[] knowledge of the debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

A trustee may sometimes use Rule 2004 for pre-litigation purposes when "information [is] needed to determine *whether* litigation should be filed." *In re J&R Trucking*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (emphasis added); *see also In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018). However, a trustee "does not have unlimited power to investigate anything he wishes without articulating a proper basis for the examination." *See In re Mathews*, No. 18-MC-153-LPS, 2018 WL 5024167, at *2 (D. Del. Oct. 17, 2018)

Courts do not allow a trustee to use Rule 2004 to get around the procedural safeguards that apply to discovery in litigation. *See In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) ("the debtors are now in a position to file an action against certain of the individuals and entities... It appears the debtors are attempting to use Rule 2004 to circumvent the procedural

---

[75] *See* Demand Letter, Exhibit D, at 26 [ECF No. 1016-6 at 27].

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

safeguards provided a litigant by the Federal Rules of Civil Procedure[].”); *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) (“courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure”).

“To be sure, resort to Rule 2004 discovery of a third party like [QPWB] may be improper if the Trustee has identified [them] as a litigation target and is using Rule 2004 to skirt the more stringent discovery rules applicable to state and federal court litigation.” *In re Transmar Commodity Grp. Ltd.*, No. 16-13625-JLG, 2018 WL 4006324, at *5 (Bankr. S.D.N.Y. Aug. 17, 2018); *accord In re Scherer*, No. 6:17-BK-2004-KSJ, 2019 WL 10733909, at *1 (Bankr. M.D. Fla. Feb. 7, 2019) (“Rule 2004 examinations are meant to obtain preliminary information”). As one court put it, “[m]any courts have expressed distaste for efforts of parties to utilize [Rule] 2004 to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters.” *See In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990).

*In re Defoor Ctr., LLC* is closely on point. 634 B.R. 630 (Bankr. M.D. Fla. 2021). There, as here, the debtor took claims against a third party by assignment, and it “was able to identify the potential cause of action against [the third party] on its schedules; it articulated the facts giving rise to its potential claims (whether direct or by way of assignment) in its Case Management Summary; and it included the potential causes of action in its plan. *Id.* at 639. Nevertheless, the debtor sought Rule 2004 discovery post-confirmation for those claims. The court quashed the subpoenas because the “[d]ebtor ha[d] the preliminary information needed to bring whatever claims it may have.” *Id.* It reasoned that “allowing the [d]ebtor to conduct Rule 2004 discovery would give the [d]ebtor an unfair strategic advantage” and “should not be allowed to delay the filing of an adversary proceeding so that it can avoid the ‘pending proceeding’ rule and gain a tactical advantage by ‘going fishing’ under Rule 2004, thereby discovering information it could not in the adversary proceeding. *Id.* at 639–640.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

***ii. The Trustee identified QPWB as a litigation target over a year ago and the requested discovery is designed to gain an unfair tactical advantage in anticipated litigation.***

Here, the Trustee identified QPWB as a litigation target, at the latest, over a year ago when he entered the Global Settlement. *See* [ECF No. 430-1, at 12, 85]. Intent to prosecute these alleged claims was confirmed through the Plan that established the Liquidation Trust. The claims were specifically identified in the disclosure statement to accompany the Plan which expressly stated the claims against QPWB "will be pursued." *See* [ECF No. 435, at 41]. When GTG sought approval on its Second and Final Fee application, it had created a new task code specific for "Quintairos Litigation," with time entries beginning as early as September 3, 2025. *See* [ECF No. 805-3, at 117].

Acting on the Global Settlement and the Plan, the Trustee demanded QPWB provide him the entire client file from the *Sanchez* Lawsuit without requesting Rule 2004 discovery. *See* Demand for Transfer of Client File, Exhibit F. QPWB complied with that request and the Trustee "reviewed the entire QPWB file." *See* Demand Letter, Exhibit D, at 4. This was no limited production. It ran to thousands of pages and included otherwise privileged NuMale communications because the Trustee is asserting malpractice claims against QPWB. *See* Client Decl., Exhibit A, at ¶ 16.

By the time the Trustee issued the Subpoenas, he had completed his preliminary fact-gathering and was prepared for litigation. In the Trustee's own words as of May 18, 2026 he was "prepared to prosecute these claims to verdict and through appeal" and the claims against QPWB "are substantial, exceptionally well-documented, and supported by an extensive evidentiary record." *See* Demand Letter, Exhibit D, at 25–26. For the UFTA and FBC Act claims, the Trustee similarly represented he "may pursue these claims now." *See* Fraudulent Transfer Notice to Eric Boyer, Exhibit B; Fraudulent Transfer Notice to Edward Prieto, Exhibit C.

Like the debtor in *In re Defoor Ctr., LLC*, the Trustee "identif[ied] the potential cause of action against [QPWB] on its schedules," has "articulated the facts giving rise to its potential claims," and "included the potential causes of action in its plan." 634 B.R. at 639. He has "the

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

preliminary information needed to bring whatever claims [he] may have." *Id.* The Trustee cannot tell QPWB that claims are ready for immediate prosecution and then, four months later and after settlement negotiations failed, tell a court that he needs Rule 2004 discovery to investigate whether those claims exist. Those positions cannot be reconciled.

A year-long investigation and the Trustee's own written representations show that he has enough information to proceed. The only question is *when* the Trustee will commence litigation. The Trustee responds that the pending-proceeding rule does not apply because no adversary proceeding has been filed. [ECF No. 1015, at 14–15]. But no proceeding is pending only because the Trustee chose not to file the complaint he scheduled for September 11, 2026, and a party "should not be allowed to delay the filing of an adversary proceeding so that it can avoid the 'pending proceeding' rule." *In re Defoor Ctr., LLC*, 634 B.R. at 639–40. By pursuing Rule 2004 discovery instead of filing suit, the Trustee seeks an advantage outside the safeguards of the Federal Rules of Civil Procedure. This Court should decline to permit it. *See id.*

***iii. The narrowed requests fall outside the scope of the Court's Rule 2004 Order.***

The Rule 2004 Order authorizes an examination regarding "the acts, assets, conduct, property, liabilities, financial condition, and business dealings of the Debtors, including without limitation the litigation claims expressly preserved for the NuMale Liquidation Trust." [ECF No. 972]. What the Trustee now presses is the compensation agreements and aggregate pay of up to one hundred attorneys at a non-debtor law firm for 2024 through 2026. *See* October 7, 2026 Conferral Letter, Exhibit H. None of those attorneys are a debtor, and none of that pay is a debtor's asset. The Trustee concedes that "compensation paid for services actually rendered" is not recoverable, [ECF No. 1015, at 12], and he seeks the information to decide "which transferees to name." *Id.* at 19.

The Order's reference to preserved litigation claims does not change the analysis. Those claims arise from QPWB's representation of NuMale; they do not license an examination of the pay of every QPWB attorney for use against new defendants. That is the "wholesale investigation of a non-debtor's private business affairs" that Rule 2004 does not permit. *In re Mastro*, 585 B.R. 587, 597 n.12 (B.A.P. 9th Cir. 2018) (quoting *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

1985)). The Court can deny the Amended Compliance Motion on this ground without deciding any question under Rule 45.

**E. The Trustee Cannot Establish Good Cause**

The Trustee "bears the burden of proving that 'good cause' exists for the discovery it seeks." *In re Defoor Ctr., LLC*, 634 B.R. at 638; *accord Bank of Am., N.A. v. Landis*, No. 2:11-CV-1338-RCJ-PAL, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011) ("Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery."). Generally, good cause requires a showing that an "examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *See Crowley v. Burke*, No. 3:13-CV-219-RCJ-VPC, 2013 WL 6284170, at *9 (D. Nev. Dec. 4, 2013).

***i. The Nevada Subpoena is Facially Overbroad and Harassing.***

The Ninth Circuit Bankruptcy Appellate Panel has "acknowledge[d] that Rule 2004 is not without limits." *See In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018). Discovery under the Rule "should not be used 'to abuse or harass.' Nor should it 'stray into matters which are not relevant to the basic inquiry.'" *See id.* (quoting *In re Enron Corp.*, 281 B.R. at 840 and *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)). It is also "'clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.'" *See id.* at 597 n.12 (quoting *In re Wilcher*, 56 B.R. at 434). Thus, when "evaluating a request to conduct a Rule 2004 examination, the court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.'" *See In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017)).

Here, even as narrowed, the Nevada Subpoena demands shareholder and buy-sell agreements, capitalization tables, ownership and governance records, financial statements, and the

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

compensation agreements and aggregate pay of up to one hundred attorneys, along with eleven examination topics. *See* [ECF Nos. 994]; October 7, 2026 Conferral Letter, Exhibit H. These requests read like a judgment debtor examination conducted after litigation has ended. They go well beyond "obtain[ing] preliminary information" and are precisely the type of "wholesale investigation" that Rule 2004 cannot be used for. *See In re Scherer*, 2019 WL 10733909, at *1 (first quotation); *In re Mastro*, 585 B.R. at 597 (second quotation).

After conferring on the Nevada Subpoena, QPWB also told the Trustee that it cannot voluntarily disclose its W2 employees' confidential information without their consent. *See* Boyer Decl., Exhibit A, at ¶¶ 31–33.; *see also* October 9, 2026 Conferral Letter, Exhibit __. QPWB has employees in 35 states and each of those states has its own laws protecting employee information. Each employee would also have a right to object and oppose such a disclosure in the relevant proceeding. Privacy aside, QPWB has repeatedly told the Trustee over the past four months that it has only two shareholders: Messrs. Boyer and Prieto. All QPWB "partners" are W2 employees without any rights to QPWB's general revenues or to exercise control over any company decisions. W2 employee compensation is not subject to any fraudulent transfer claim or unlawful distribution claim.[76] QPWB offered to provide a signed declaration attesting to these facts, but the Trustee declined. For these same reasons, QPWB could not execute a tolling agreement on behalf of approximately 100 employees without their consent. *See* Boyer Decl., Exhibit A, at ¶¶ 31–33.

The Trustee also said repeatedly that the narrowing was "without prejudice," meaning he could later issue a subpoena or seek an exam on the same topics. *See* October 7, 2026 Conferral Letter, Exhibit H. A narrowing the Trustee can undo at any time gives QPWB nothing to rely on. QPWB reasonably declined to commit to an agreement that would bind it while leaving the Trustee free to seek more.

[76] *See In re Ballantyne Brands, LLC*, 656 B.R. 117, 139 (Bankr. W.D.N.C. 2023) ("Generally, payments of salary are presumed to have been made for fair consideration. This rebuttable presumption makes for 'tough sledding' by bankruptcy trustees inclined to attack employee compensation as fraudulent transfers."); Fla. Stat. Ann. § 607.06401(3) (providing that only "distributions" are subject to unlawful distribution claims); Fla. Stat. Ann. § 607.01401(18) (defining distribution: a corporation's transfer "to or for the benefit of its shareholders in respect of any of its shares.").

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

***ii. The Trustee can investigate the claims with information from other sources.***

A court must inquire into the "reasonableness of the subpoena, including the need for and unavailability of the information sought." *See In re Duque*, 134 B.R. 679, 683 n.3, 684 (Bankr. S.D. Fla. 1991) ("even where a subpoena is served to compel attendance at a rule 2004 examination, the reasonableness consideration of rule 45(b) applies"). "A court must limit the frequency or extent of [Rule 2004] discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *AECOM Tech. Servs., Inc. v. Zachry Constr. Corp.*, No. 219MC00201JAKRAOX, 2020 WL 1934973, at *2 (C.D. Cal. Feb. 3, 2020) (quoting Fed. R. Civ. P. 26(b)(2)(C)) (denying Rule 2004 discovery because "most, if not all, of the relevant documents and information responsive to the Subpoenas could be obtained from other parties").

As explained above, QPWB has extensively cooperated with the Trustee by providing the *Sanchez* client file and numerous other documents and by participating in multiple meetings with the Trustee. But QPWB is not the Trustee's only source of information. He is jointly prosecuting the claims with the Individual NuMale Parties. They share the same counsel. Through this joint prosecution and representation, the Trustee has complete access to all information relating to the purported claims. The Individual NuMale parties are even required to cooperate and provide the Trustee any information they have. *See* [ECF No. 726, at 21] ("The NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims, Quintairos Non- Debtor Claims, and Quintairos PF Claims, including in connection with providing documents and testimony necessary for the successful prosecution of such claims.").

These multiple sources negate a finding of good cause and make the Nevada Subpoena unreasonable. *See In re Duque*, 134 B.R. at 686 ("the court's inquiry into the subpoenas' reasonableness should take into account the trustee's need for the information and the availability of the information from other sources"). Even if QPWB had not previously cooperated with the Trustee, much of the information is available to him through alternative methods that would not

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

even require discovery. The Court should not compel QPWB to provide information the Trustee can obtain from persons who are already required to provide it to him.

***iii. The Sgro Letter does not supply good cause.***

The Trustee devotes much of his motion to the September 14, 2026 letter from QPWB's other counsel, Sgro & Roger (the "Sgro Letter"). [ECF No. 1015, at 7]. Nothing in the letter shows a need for more discovery. Its concerns were legal ones: the Trustee's decision not to challenge or appeal the *Sanchez* Verdict, and his effort to recover the verdict's punitive component from QPWB. Sgro Letter, Exhibit P. Those questions call for briefing. A Rule 2004 examination will not answer them. And the Trustee's counsel answered the letter by pointing to his demand letter, which he said contained "precisely that analysis." *See* Garman Response to Sgro Letter, Exhibit Q. The Trustee cannot rely on his demand letter as a complete analysis of his claims and also cite the Sgro Letter as proof that he needs more facts. Adversaries in every case disagree about the legal consequences of known facts. That kind of disagreement is not good cause under Rule 2004.

Additionally, context matters. QPWB did not seek out this dispute and the events unfolding now are a direct result of the Trustee's actions since May. The Trustee has represented that he will pursue ***$2 billion*** in litigation claims against QPWB and seek to avoid ***all distributions of firm profits*** since November 2024 on questionable legal grounds. The Sgro Letter articulates QPWB's ***legal*** concerns over those allegations and the Trustee's actions.

***iv. The Trustee's claimed emergency is of his own making.***

The Trustee asserts that "the practical consequence of its successive objections and its request for a stay is not in doubt: the Trustee remains unable to obtain information this Court authorized him to obtain, while the limitations period approaches." *See* [ECF No. 1015, at 18]. But the limitations date he cites does not apply to the claims for which he seeks this discovery.

The Amended Compliance Motion seeks "narrow" relief for discovery on the Trustee's purported "fraudulent transfer and improper distribution claims." *See* [ECF No. 1015, at 2–3]. The motion also states that "[t]he malpractice-related claims against Quintairos are developed" while "[t]he potential fraudulent transfer and improper distribution claims, conversely, need to be further developed." *See* [ECF No. 1015, at 15–16]. But the "conservative date" for a statute of limitations

refers to the ***malpractice claims,*** not the fraudulent transfer claims. *See* [ECF No. 1016, at ¶ 11] ("The most conservative date on which the statute of limitations period on the estates' malpractice claims against Quintairos could run is November 23, 2026. ***The limitations periods applicable to the Trust's potential fraudulent transfer and improper distribution claims remain under review***." (emphasis added)). In other words, the Trustee relies on the ***malpractice*** statute of limitations while grounding the balance of his motion on the ***fraudulent transfer*** claims. The deadline he cites supplies no urgency for the discovery he seeks.

And even if there were an impending statute of limitations for the fraudulent transfer claims, the timing would be the product of the Trustee's own choices. These claims are supposedly the "Trust's principal asset." [*See* ECF No. 1015, at 2]. Yet, the Plan establishing the Trust was confirmed ***over a year ago***. The Trustee had the client file by early 2026 and sent his first draft fraudulent transfer notice on June 30, 2026, yet he did not seek Rule 2004 discovery until September 10, 2026. If limitations were truly a concern, the Trustee could have sought Rule 2004 discovery months earlier.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

**F. The Court Should Issue a Protective Order**

If the Court concludes that it is the court where compliance is required, it should also issue a protective order. Federal Rule of Civil Procedure 26(c), made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014(c), authorizes a protective order for good cause to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See Crowley v. Burke*, No. 3:13-CV-219-RCJ-VPC, 2013 WL 6284170, at *10 (D. Nev. Dec. 4, 2013). Good cause is established "by demonstrating a particular need for protection supported by specific facts." *See Robertson v. Formation Nation*, No. 3:25-CV-00474-CLB, 2026 WL 2642268, at *1 (D. Nev. Sept. 8, 2026). This "requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *See Snow Covered Cap., LLC v. Fonfa*, No. 2:22-CV-1181-CDS-BNW, 2024 WL 3396384, at *3 (D. Nev. July 12, 2024) (quoting *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011)).

Here, the particularized harm lies in the Trustee's strategic and unauthorized use of Rule 2004 discovery. Rule 2004 is "an extraordinary thing" that does not provide the same procedural

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

safeguards as ordinary discovery. *See In re Correra*, 589 B.R. at 110. For example, a witness generally has no right to representation during an examination, and has limited rights to object to immaterial or improper questions. *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009). That is why "[t]he proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous procedural safeguards against unfairness to the party from which discovery is sought." *See In re Wilcher*, 56 B.R. at 434.

The Trustee has already declared, in writing, that he is "prepared to prosecute these claims to verdict and through appeal." *See* Demand Letter, Exhibit D, at 26. If QPWB is compelled to comply with the Nevada Subpoena now, it will lose the "numerous procedural safeguards against unfairness" to which it is entitled under the Federal Rules of Civil Procedure. *See In re Wilcher*, 56 B.R. at 434. That would give the Trustee an edge in the anticipated litigation, because he could obtain discovery on issues otherwise unavailable in ordinary litigation.

The Nevada Subpoena also seeks confidential commercial information. Even as narrowed, it demands shareholder and buy-sell agreements, capitalization tables, ownership and governance records, financial statements, and the compensation agreements and aggregate pay of up to one hundred attorneys. *See* [ECF No. 994; ECF No. 1016, Ex. K]. Compliance would impose substantial cost and burden on a professional services firm and individuals who are not parties to this bankruptcy. It would also force QPWB to disclose confidential commercial information concerning its internal operations, compensation structures, ownership, capitalization, financial condition, and governance.

A protective order is independently warranted to prevent compelled disclosure of attorney-client communications and protected work product. The Nevada Subpoena seeks privileged information such as conflict analyses, ethics memoranda, internal communications, settlement evaluations, and other protected materials concerning the representation of the Individual NuMale Parties. *See* [ECF No. 994]. The Trustee is not entitled to all internal QPWB communications and work product. *See Travelers Ins. Companies v. Superior Ct.*, 143 Cal. App. 3d 436, 453, 191 Cal. Rptr. 871, 882 (Ct. App. 1983) ("We are aware of no precedent allowing even the former client of

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

an attorney access to writings that reflect that attorney's "impressions, conclusions, opinions, or legal research or theories."). Communications and work-product relating to QPWB's representation of the Individual NuMale Parties, as well as internal communications and work product, are privileged and protected.

The requested relief is narrowly drawn. An order quashing the Nevada Subpoena would prevent only the improper Rule 2004 examination and related document productions. It would not prevent the Trustee from pursuing the same discovery through an adversary proceeding subject to the Federal Rules, where relevance, proportionality, privilege, and burden can be addressed in the ordinary course. A protective order therefore supplies an appropriate remedy without foreclosing any legitimate claim or discovery path.

## III. CONCLUSION

The S.D. Florida will decide the identical dispute on October 21, 2026, and the Court should deny the Amended Compliance Motion or defer it until that court rules. If the Court concludes that it is the court where compliance is required, it should quash the Nevada Subpoena and enter a protective order. QPWB reserves all rights, including its objections to service and its right to withhold consent to the entry of final orders on matters beyond this discovery dispute.

Dated: October 14, 2026

SNELL & WILMER L.L.P.

*/s/ Bob L. Olson*
Bob L. Olson (NV Bar No. 3783)
Alex L. Fugazzi (NV Bar No. 9022)
Charles E. Gianelloni (NV Bar No. 12747)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135

*Attorneys for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Eddie Prieto*