# EXHIBIT M

EXHIBIT M

SNELL
& WILMER

**Alex L. Fugazzi**
**Partner**
O 702.784.5202 | F 702.784.5252
afugazzi@swlaw.com

October 9, 2026

**VIA EMAIL**

Talitha Gray Kozlowski, Esq.
Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
tgray@gtg.legal

Re: *Response to October 7, 2026 Conferral Letter to Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB"), Eric Boyer, and Eddie Prieto*

Dear Talitha:

We are in receipt of your October 7, 2026 Conferral Letter concerning the subpoenas issued to QPWB, Mr. Boyer, and Mr. Prieto. This followed our meet and confer conferences held on October 1, 5, and 6 where we attempted to resolve the concerns QPWB, Mr. Boyer, and Mr. Prieto have with the subpoenas issued to them as well as the concerns Andrew Robertson, Jack Oliver, Dominique Barrett, Erin Chavez, and Frank Alvarez have with their respective subpoenas.

Your letter did not represent any changes would be made to the Rule 2004 examinations for QPWB, Mr. Boyer, Mr. Prieto, Mr. Robertson, Mr. Oliver, Ms. Barrett, Ms. Chavez, and Mr. Alvarez. However, you stated that the Trustee is willing to make the following modifications:

1. With regard to the Boyer and Prieto Subpoenas, withdraw document request numbers 4–12 and replace them with the following three document requests:

    a. For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2024 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

    b. For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2025 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

    c. For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, since January 1, 2026, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

2. With regard to the QPWB Subpoenas, withdraw document request numbers 3, 7–14, 16, 17, and replace them with the following request:[1]

    a. For the 80 to 100 attorneys described by QPWB as "rainmakers" or as heads of "business units" within QPWB, produce the: (i) agreement between QPWB and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026.

3. Further, with regard to the QPWB Subpoenas, the Trustee agreed to withdraw document request numbers 21, 22, 23, 26, 27, and 28 without prejudice.

We appreciate your efforts to narrow the requests, but even these narrowed topics do not resolve the concerns we've raised in our prior meet and confers. Specifically, you continue to seek the identity, employment agreements, and compensation of QPWB's "rainmakers" or "heads of business," as well as the identity of recipients of transfers from Mr. Boyer and Mr. Prieto.

As we have previously stated in our meet and confer conferences, QPWB cannot willingly provide its W2 employee's confidential information without their consent. QPWB has employes in 35 states[2] where each state has its own laws protecting employee information. Each employee would also have a right to object and oppose such a disclosure in the relevant proceeding. Similar privacy and confidentiality concerns are present for recipients of a transfers from Mr. Boyer or Mr. Prieto. They cannot willingly reveal such information (to the extent it exists) without implicating an alleged transferee's privacy rights. Absent a court order, QPWB, Mr. Boyer, and Mr. Prieto are restricted from providing such information.

Aside from these privacy issues, QPWB has repeatedly told the trustee over the past four months that it only has two shareholders: Messrs. Boyer and Prieto. All QPWB "partners" are W2 employees without any rights to QPWB's general revenues or to exercise control over any company decisions. W2 employee compensation is not subject to any fraudulent transfer claim or unlawful distribution claim.[3]

We also note that while these modifications are a step in the right direction, they do not resolve the issues with the remaining production demands and eight scheduled examinations. The core objection remains that the circumstances here do not authorize the extensive Rule 2004 discovery the Trustee seeks. For example, the Trustee's May 18, 2026 Demand Letter stated he was "prepared to prosecute these claims to verdict and through appeal." QPWB also extensively cooperated with the Trustee throughout the summer by sharing its financial and related information.

These facts, and many others, support our belief that the Trustee's articulated need to conduct an adequate investigation is only pretextual because the Trustee has identified the facts that he intends to

[1] We note that the language in the letter states "the following two requests." However, only one request was listed.

[2] Those states are: Alabama, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin.

[3] *See In re Ballantyne Brands, LLC*, 656 B.R. 117, 139 (Bankr. W.D.N.C. 2023) ("Generally, payments of salary are presumed to have been made for fair consideration. This rebuttable presumption makes for 'tough sledding' by bankruptcy trustees inclined to attack employee compensation as fraudulent transfers."); Fla. Stat. Ann. § 607.06401(3) (providing that only "distributions" are subject to unlawful distribution claims); Fla. Stat. Ann. § 607.01401(18) (defining distribution to mean a corporation's transfer "to or for the benefit of its shareholders in respect of any of its shares.").

SNELL
& WILMER



rely on. While we disagree on the legal implication or consequence of those facts, that is the case between adversaries in every legal proceeding. Rule 2004 does not allow the Trustee to gain an unfair advantage in that disagreement. Its purpose is to enable the Trustee to determine whether claims exist, not build his entire case before it is filed.

Lastly, we agree that it is unfortunate we have not been able to reach a consensual resolution. We attempted to reach one beginning with our clients' September 23, 2026 Conferral Letter and the related meet and conference on September 29, 2026, but those attempts were not met with any concessions on your end until recently. Instead, we were met with an unwillingness to negotiate and statements that the Trustee would file a lawsuit against QPWB and all of its partners. None of the objections, arguments, and case law described in the conferral letter were addressed with anything other than conclusory statements that the Trustee is entitled to everything he requests.

Those responses compelled QPWB, Mr. Boyer, and Mr. Prieto to file their Motion to Quash and for Protective Order in the Bankruptcy Court for the S.D. Florida on September 29th after the meet and confer. The Trustee's response was to file a motion in Nevada four hours later that seeks to compel compliance with each of the subpoenas even though none of them properly identify the place of compliance as Nevada.[4] Only after the filing of these motions did the Trustee make any concession on the subpoenas.

Nevertheless, QPWB, Mr. Boyer, Mr. Prieto, Mr. Robertson, Mr. Oliver, Ms. Barrett, Ms. Chavez, and Mr. Alvarez remain willing to find an agreeable compromise before further motion practice is required even as the parties likely need to proceed with motion practice.

Best,

Snell & Wilmer

*/s/ Alex L. Fugazzi*

Alex L. Fugazzi

cc: Luis Salazar, Esq. (LSalazar@coleschotz.com);
Charles Gianelloni, Esq. (cgianelloni@swlaw.com;
Bob Olson, Esq. (bolson@swlaw.com);
Joe Layzell, Esq. (jlayzell@swlaw.com)

---

[4] Originally, none of the subpoenas identified the place of compliance as Nevada. The only subpoena currently identifying Nevada as the place of compliance is the September 28, 2026 subpoena you served on QPWB's satellite office in Henderson, Nevada. However, regardless of what the subpoena facially identifies, the place of compliance is still Florida because QPWB is organized under the laws of Florida and that is where it is headquartered. *See York Holding, Ltd. v. Waid*, 345 F.R.D. 626, 629 (D. Nev. 2024) ("it would eviscerate the entire purpose of these provisions in Rule 45 to interpret them as meaning that a subpoenaing party may force a subpoenaed nonparty to litigate a subpoena-related dispute in an inconvenient district by simply listing that location on the face of the subpoena.").