GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: October 16, 2026<br>Hearing Time: 9:30 a.m. |

**REPLY IN SUPPORT OF AMENDED MOTION TO ENFORCE RULE 2004 ORDER AND COMPEL COMPLIANCE WITH THE SUBPOENA ISSUED TO QUINTAIROS, PRIETO, WOOD & BOYER, P.A. AT ITS NEVADA OFFICE**

Michael W. Carmel, the Liquidation Trustee of the NuMale Liquidation Trust (the "Trustee"), by and through his counsel, Garman Turner Gordon LLP, submits this Reply in support of his *Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena*

*Issued to Quintairos, Prieto, Wood & Boyer, P.A. at its Nevada Office* [ECF No. 1015] (the "Motion"), and in response to the Opposition and Conditional Countermotion filed by Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") [ECF No. 1028]. This Reply is based upon the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any argument of counsel entertained by the Court at the hearing on the Motion. The Trustee's revised proposed form of order is attached hereto as Exhibit 1 for ease of reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This Court entered the Rule 2004 Order [ECF No. 972]. This Court confirmed the Plan that created the Trust, preserved the Quintairos Claims, and vested in the Trust the estates' own Rule 2004 rights. And this Court retained jurisdiction over the Plan, the Trust, and the Litigation Claims. The Trustee asks only that the Court enforce what it has already ordered. QPWB asks this Court to send its own order somewhere else to be enforced. That inversion is telling.

Delay and deflection are the only tactics QPWB has left, and it is the same approach it has taken since the Trustee first asked for the Debtors' own client file. QPWB's procedural arguments are backwards and meant to stymie the Trustee's fiduciary duty to move forward. First, QPWB argues the Southern District of Florida is the right court to interpret this Court's own order. And second, in QPWB's own words, "**Even if the Court Enforces Its Own Order**," (Opp. at 21 (emphasis in original)), then the Court should disregard the plan language of Rule 45, which allows a subpoena to require compliance within 100 miles of where the recipient transacts business, and still ship the question off to the Southern District of Florida. Neither point withstands scrutiny. A bankruptcy court enforcing its own Rule 2004 order administering a case it confirmed is not at the mercy of Rule 45's venue mechanics. And in any event, QPWB regularly transacts business in person at its Henderson office, which makes Las Vegas a proper place of compliance within 100 miles under Rule 45(c).

On the merits, QPWB cannot defeat the examination by characterizing its own disputed payments as untouchable "salary," by pointing to co-plaintiffs who do not hold its internal records, or by recasting a good-faith narrowing as binding nothing.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

The pattern is by now familiar. Each time the Trustee narrows, QPWB finds a new reason not to produce: first the client file took four written demands across more than four months; then the subpoena was served in the wrong state; then the wrong court; then the requests were too broad; then, after the Trustee cut them, too generous to be binding. The Trustee has met every objection, narrowed the requests to two categories, and has still received nothing — while the conservative November 23, 2026 limitations date closes in. The Trustee does not seek this discovery as a matter of litigation preference. He is a fiduciary for creditors holding a $410 million allowed claim, charged by the Plan with investigating and prosecuting the Quintairos Claims, and he should not be forced to discharge that duty without information only QPWB has and will not fulsomely give. The Court should enforce the 2004 Order and the narrowed Nevada Subpoena.

## II. LEGAL ARGUMENT

### A. The Nevada Subpoena Properly Commands Compliance In Nevada Under Rule 45(c).

This Court is enforcing its own Order, not sitting as a stranger Rule 45 compliance court. This Court entered the Rule 2004 Order directing the examinations [ECF No. 972]; it confirmed the Plan; and it expressly retained jurisdiction over the Trust and the Litigation Claims. A Rule 2004 proceeding "by its nature . . . could arise only in the context of a bankruptcy case" and therefore "arises in" title 11, and that the "Rule 2004 motion was filed post-confirmation does not alter this conclusion." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 621-622 (Bankr. D. Del. 2016). The Court's authority to enforce its own order administering the estate does not evaporate because QPWB prefers a different forum.

Rule 45(c)(2)(A) permits a subpoena to command production within 100 miles of where the subpoenaed party "resides, is employed, **or regularly transacts business in person**." QPWB does not dispute that it maintains a staffed Henderson office with a managing partner and attorneys.

QPWB's cited cases do not reach these facts. In *York Holding*, the subpoenaed nonparty attested that it maintained no presence in Nevada, transacted no business in Nevada, and had no representative residing, working, or regularly conducting business in the State; its principal place of business was New Hampshire. 345 F.R.D. at 627. On those facts the court held that a party may

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

not be forced to litigate a subpoena dispute in an inconvenient district "by simply listing that location on the face of the subpoena." *Id.* at 629. The Trustee did not randomly list Henderson on a subpoena; he served the subpoena at an operating office of the firm he seeks records from. It should not be lost on this Court that the counsel QPWB selected for this dispute (both firms) are also located in Nevada.

*Europlay* is distinguishable several times over. First, the *Europlay* subpoena was served on a registered agent in Sacramento, with production demanded at plaintiffs' counsel's office in Sherman Oaks, more than 100 miles away. *Id.* at 629. The Nevada Subpoena was hand-delivered to QPWB's own Henderson office as well as on its Nevada registered agent, with compliance commanded in Las Vegas within 100 miles of both locations. The subpoena was issued and served at QPWB's own place of business. To this end, the *Europlay* court simply noted that "Google has an office in Venice," without determining whether Google regularly transacted business in person there. The Trustee's position rests on the third prong of Rule 45(c)(2)(A), and QPWB plainly transacts business in person in Henderson.

Second, the *Europlay* subpoena was served on a Venice, California office (through a registered agent in Sacramento) that had nothing to do with the subpoena. Despite QPWB's attempts to refer to the Henderson office as a "token presence in Nevada," QPWB's Henderson office is an operating office of the very firm whose own records are commanded, including where a managing partner and two additional partners work. The continued problem with QPWB's "trust us" position on documents is that the Trustee must assume any attorney QPWB holds out to the public as a "managing partner" or "partner" may in fact be receiving fraudulent transfers that the Trustee is duty-bound to investigate and potentially seek to claw back. The Henderson office is thus not merely a remote site unconnected to the documents sought, but rather one of the offices where documents may be located.

Third, the policy rationale runs the Trustee's way. *Europlay* cites the 2013 advisory committee note — "[t]he prime concern should be avoiding burdens on local nonparties" — as authority that forcing "a nonparty and its counsel to travel out of their home district" unduly burdens it. *Id.* at 630. QPWB has lawyers in Henderson and is represented here by two different

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

firm's Las Vegas offices. No one need travel anywhere with respect to the Nevada Subpoena. The burden *Europlay* protects against is absent, and QPWB has not claimed otherwise.

**B. <u>This Court Should Decide Now, Not Defer To The Southern District of Florida.</u>**

QPWB asks the Court to stand down because the Southern District of Florida will hear the Florida motion to quash on October 21. The request has it backwards. Rule 45(f) runs the other direction: it allows the *compliance* court — the S.D. Fla., on QPWB's own theory — to *transfer* a subpoena dispute to the issuing court on "exceptional circumstances." Those circumstances are plainly present: this Court issued the Rule 2004 Order, confirmed and interprets the Plan, and has the same questions before it. QPWB cannot manufacture deference by racing to file in Florida first; if it believed Florida were the better forum for a dispute over *this* Court's order, Rule 45(f) tells it to ask Florida to send the matter *here*. Nor does the Trustee's opposition in Florida concede anything. QPWB served two subpoenas; the Trustee opposes the motion to quash the Florida subpoena in the court where that subpoena commanded compliance, and moves to enforce the Nevada Subpoena — a separate subpoena, commanding compliance in Nevada, served before QPWB filed the Florida Motion — in the court that issued the Rule 2004 Order. Asking each court to enforce the subpoena before it is not forum shopping; it is what Rule 45 requires of a party QPWB has forced into two forums.

Nor has any court stayed the Nevada Subpoena. QPWB invokes the automatic stay in S.D. Fla. Bankr. L.R. 2004-1(e), but that local rule governs examinations noticed under *that* court's procedure. These examinations were ordered by *this* Court. The point is narrow and sufficient: **no court has stayed the Nevada Subpoena**, and this Court remains free to enforce its own Order.

**C. <u>Rule 2004 Discovery Is Appropriate Post-Confirmation.</u>**

QPWB's emphasis on the Trustee having acted "[f]ollowing confirmation, and without using Rule 2004 discovery" implies that a post-confirmation trust may not use Rule 2004 at all. That is wrong, and QPWB's own lead case says so.

. . .

. . .

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**1. Post-Confirmation Rule 2004 Is A Recognized, Legitimate Tool Where It Serves The Confirmed Plan.**

In *Millennium*, the court authorized a plan-created trust's post-confirmation examination of lender banks, the law firm that represented the administrative agent, and the debtors' historical accounting firm, holding that a Rule 2004 motion "arises in" title 11 so the post-confirmation "related to" constriction does not bar it, and that the examination "fits squarely within the purpose of Rule 2004." 562 B.R. at 623, 627. The court denied the motion only as to a second trust holding claims *contributed by lenders* — not estate claims — because Rule 2004 may not arm "private litigants" with "a strategic advantage in fishing for potential private litigation." *Id.* at 629, 632. That distinction is the point: the Trust prosecutes the estates' own preserved claims for the benefit of creditors, which is the half of *Millennium* the court granted. The trust there sought to investigate the debtors' prepetition claims for the benefit of creditors — the same thing the NuMale Liquidation Trust performs here. The Trust is the Plan's vehicle to prosecute the preserved Quintairos Claims for the benefit of creditors holding more than $400 million in allowed claims; investigating QPWB's transactions to identify transferees is the core Rule 2004 function.

**2. This District Has Allowed The Practice On Nearly Identical Facts.**

In *In re Rhodes Companies, LLC*, a *post-confirmation* litigation trust served Rule 2004 subpoenas on "law firms, financial institutions, title companies, and other professionals" that the trust believed had received funds from the debtors. 475 B.R. 733, 736 (D. Nev. 2012). The bankruptcy court denied the motion to quash, reasoning that "the subpoenas were an appropriate method of investigating potential fraudulent transfer claims," and the District of Nevada affirmed. *Id.* at 737. No court in that litigation questioned the trust's resort to Rule 2004 after confirmation. The Trustee seeks the same relief on the same footing.

**3. The Additional Authority Confirms The Point.**

*In re Insight Terminal Solutions, LLC*, 2024 WL 3949698 (Bankr. W.D. Ky. Aug. 26, 2024), held while such post-confirmation Rule 2004 requests are not routine occurrences in Chapter 11 proceedings, they are not prohibited, and granted the examination because the matters to be covered were "related to this bankruptcy case and are relevant to the execution of the

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

confirmed Plan." *Id.* at *2–3. The Trustee stands with the movant in *Insight*: there is no pending proceeding in which he can take this discovery, and the transactions he seeks to examine are precisely the ones he cannot see.

*Defoor* denied discovery because that movant was "not a newcomer to the scene" but "was one party to the transaction that gives rise to the alleged claims," already "ha[d] the preliminary information needed to bring whatever claims it may have," and pursued "a claim it took assignment of from a non-debtor . . . for the benefit of equity." *In re DeFoor Centre, LLC*, 634 B.R. 630, 639–40 (Bankr. M.D. Fla. 2021). The Trustee is in the opposite position: a court-appointed newcomer installed after the *Sanchez* verdict, who was never party to QPWB's representation or its internal distribution decisions; the Quintairos Claims are the *estates'* own claims held for *creditors*, not assigned claims for equity; and the Trust does not have — and QPWB alone holds — the transferee information.

**D. <u>The Narrowed Rule 2004 Discovery Is Appropriate and Necessary.</u>**

**1. Good Cause Supports The Nevada Subpoena Because The Information Bears Directly On The Trust's Claims.**

The scope of Rule 2004 is "unfettered and broad," *In re Dinubilo*, 177 B.R. 932, 939 (E.D. Cal. 1993) (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983) — the same decision QPWB invokes against the examination); accord *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018), and the examination "fits squarely within the purpose of Rule 2004" where the trust seeks "discovering assets, examining transactions, and determining whether wrongdoing has occurred" on the estate's behalf, *Millennium*, 562 B.R. at 627. Good cause exists where the examination is necessary to establish a claim or its denial would work undue hardship — both of which are satisfied here. At bottom, the Trustee needs the requested information to determine who, if anyone, he may bring claims against. This is true for the information related to the fraudulent transfers and for the information the Trustee seeks related to the underlying malpractice claims in light of QPWB's allegations that the Trustee has failed to sufficiently investigate the malpractice claims. QPWB has gone so far as to say the Trustee should be removed because of his deficient

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

investigation. Now QPWB says the Trustee cannot complete his investigation. QPWB cannot have it both ways. The narrowed 2004 Nevada Subpoena should be enforced.

Confronted with the same argument, the court in *Banco Master* held that where a party contends the movant "must first show some evidence of dissipation or diversion of assets before it can take this discovery, neither the text nor the scope of Rule 2004 supports this position," because "[n]othing in Rule 2004 limits the examination to confirming already-established misconduct." 678 B.R. at 697. That QPWB has produced *some* materials does not defeat good cause: "[t]he fact that the Trustee already has access to certain documents and information... does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of the Trustee's viable claims." *Id.* at 627–28.

**2. The Pending-Proceeding Rule Does Not Apply And The Equities Favor The Trustee.**

Rule 2004's pending-proceeding limitation applies only "once an adversary proceeding or contested matter has been commenced" between the parties. *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (quoting *In re Bennett Funding Grp.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)). No adversary proceeding has been commenced against QPWB on the transferee claims. And the rule is not applied mechanically, because "aggressive application of the 'pending proceeding' rule may prevent legitimate Rule 2004 examinations on matters wholly unrelated to the pending proceeding, thereby interfering with the trustee's fiduciary duty to maximize estate assets." *Washington Mutual*, 408 B.R. at 51; accord *In re Banco Master, S.A.*, 678 B.R. 690, 698 (Bankr. S.D. Fla. 2026).

Apparently recognizing its prior arguments based on the pending proceeding rule fails, QPWB attempts a slight of hand and argues that complying with this Court's already-ordered Nevada Subpoena would provide an unfair tactical advantage. But QPWB's "already-a-target" theory — built on *Defoor*, an out-of-district opinion distinguishable on its own facts — goes too far: it would immunize from Rule 2004 investigation of every claim a plan properly preserves. QPWB's own offer to "generally describe" the rainmakers' compensation while refusing to name the recipients confirms both that the documents exist and that the Trustee does not have them. An

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

offer to describe transfers without identifying the transferees, coupled with a refusal to toll claims against the people it will not name, is not a compromise; it is a way of running the clock on a fiduciary who cannot sue whom he cannot identify. The investigation of potential claims is a proper, indeed central, use of Rule 2004.

What is more, the *Defoor* court found no prejudice in denying the Rule 2004 examination because "the Debtor will have ample opportunity to conduct discovery once it files an adversary complaint." *In re Defoor Ctr., LLC*, 634 B.R. 630, 639 (Bankr. M.D. Fla. 2021). That reasoning assumes the complaint can be filed. The Trustee cannot adequately name transferee defendants without this discovery, and the November 23, 2026 date is weeks out — so denial is not deferral, it is potentially forfeiture. That is *Defoor's* own second prong: good cause exists where "denial of the Rule 2004 discovery would cause undue hardship or injustice." *Id.* at 638.

**3. QPWB's Successive-Objection Pattern And The Approaching Limitations Deadline Justify Prompt Enforcement.**

QPWB argues the November 23, 2026 date is the *malpractice* limitations date — which the Trustee's declaration calls "developed" — while the pressed discovery goes to the *fraudulent-transfer and distribution* claims, whose limitations "remain under review"; so (QPWB says) the deadline supplies no urgency and any urgency is self-inflicted. The argument fails on its own terms. November 23 is fast approaching for the malpractice claims and for the potential fraudulent transfer claims, the end of the year presents additional limitations pitfalls. Discovery must be completed now.

While (contrary to QPWB's contentions in the Extortion Letter) the malpractice claim may be "developed" as to QPWB, the Trustee cannot responsibly frame and file that complaint — which pleads the related transferee and distribution exposure arising from the same conduct — without knowing *who* the transferees are and *what* they received. QPWB alone holds that information; it has refused both to identify the recipients and to toll claims against the very people it will not name. "Discovery now, not later, may be critical to ensure that no viable cause of action is lost," because "it is the estate that will suffer if causes of action are lost because of a dilatory

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

investigation." *In re Mirant Corp.*, 326 B.R. 354, 356–57 (Bankr. N.D. Tex. 2005). That the deadline is near is a reason to enforce the subpoena, not to defer it another month.

**4. QPWB's Remaining Merits Objections Do Not Defeat The Narrowed Requests.**

QPWB says the 80–100 rainmakers are mere W-2 employees whose pay is not a recoverable distribution, citing *In re Ballantyne Brands, LLC*, 656 B.R. 117, 139 (Bankr. W.D.N.C. 2023), and Fla. Stat. §§ 607.06401(3) and 607.01401(18). *Ballantyne* describes a *rebuttable* presumption that salary payments were made for fair consideration — a presumption, by definition, that evidence can overcome, and the evidence is what the Trustee seeks. Florida law is likewise no answer: § 607.06401(3) governs permissible distributions and § 607.01401(18) defines "distribution" as a transfer "to or for the benefit of [a corporation's] shareholders in respect of any of its shares." But whether a given payment is a protected salary "for services actually rendered" or a disguised distribution is the merits question the discovery exists to answer. QPWB cannot defeat the examination by asserting its own disputed characterization, supported only by a self-serving declaration from its sole shareholder.

**The Extortion Letter.** Try as QPWB might to distinguish the letter its own counsel sent threatening to report the Trustee's counsel to law enforcement for nothing more than fulfilling fiduciary obligations, the fact stands that the sufficiency of the Trustee's investigation was called into question.

**QPWB's deleterious fulfillment of its ethical obligations.** QPWB attempts to blame the Trustee for the current time crunch because the Trust was created over a year ago. However, QPWB's own conduct in dragging its feet in providing the client file and *to this day* refusing to confirm that it was a complete production was the initial cause of any delay. Further, the Trustee took the reasonable position that it would be better for all parties to explore an early resolution of the claims — a process in which QPWB routinely asked for more time to respond. That QPWB now attempts to run the clock and blame the Trustee is simply the last step in a pattern that has defined this dispute from the start: create the delay, then invoke it. The chronology is not in dispute. It took four written demands across more than four months before QPWB produced what it



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

represented was the balance of the client file. When the Trustee then sought the financial information without litigation, QPWB produced a subset under a non-disclosure agreement that bars its use for the very purpose the Trustee needed it, and asked for and received extensions along the way. When the Trustee narrowed his current requests, QPWB answered that the narrowing bound nothing. And when the Trustee offered to accept a reduced production if the unnamed recipients would toll, QPWB refused — declining to stop the clock it now blames the Trustee for running. A party that will neither produce the transferee information nor toll claims against the transferees cannot be heard to argue that the Trustee should have moved sooner. The Trustee is a fiduciary for creditors holding a over $400 million in allowed claims; he is obligated to investigate these claims and to bring them, and he should not be forced to do so on information QPWB alone holds and will not give.

**Available from other sources.** QPWB says the Individuals — co-plaintiffs who must cooperate — are an alternative source. They are not: the Individuals do not possess the alleged evidence supporting the Extortion Letter or QPWB's internal compensation and distribution records. Only QPWB does.

**Narrowing was without prejudice.** QPWB says a narrowing the Trustee could withdraw "gives QPWB nothing to rely on." The answer is an order, not an argument: the Trustee asks the Court to enter the October 7 narrowing as the operative scope of the Rule 2004 Order and the Nevada Subpoena. QPWB would then be complying with a court-fixed scope that the Trustee cannot unilaterally expand, which is the certainty QPWB says it lacks.

**Protective order and privilege.** The only concrete harm QPWB identifies — exposure of confidential compensation data — is answered by the protective order the Trustee has already offered. As to privilege, the Plan vests the estates' privileges in the Trust in connection with prosecuting the Litigation Claims, so QPWB cannot assert the Debtors' privilege against the Trust.

## III. CONCLUSION

What QPWB seeks is not protection from an overbroad subpoena. It is delay, sought one objection at a time, from a Trustee who is required to investigate these claims and has a date certain by which to bring them. The Court should enforce its Rule 2004 Order [ECF No. 972], enter the



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Trustee's October 7, 2026 narrowing as the operative scope of that Order and of the Nevada Subpoena [ECF No. 994], compel production and the appearance of QPWB's person most knowledgeable by a date certain, deny QPWB's Countermotion to Quash and for Protective Order, and grant such other relief as is just.

GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*