**E-filed: October 23, 2026**

Bob L. Olson, Esq. (NV Bar No. 3783)
Alex L. Fugazzi, Esq. (NV Bar No. 9022)
Charles E. Gianelloni, Esq. (NV Bar No. 12747)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
afugazzi@swlaw.com
cgianelloni@swlaw.com

*Attorneys for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Eddie Prieto*

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

NUMALE CORPORATION,

☐ AFFECTS THIS DEBTOR
☐ AFFECTS FELICIANO NUMALE NEVADA PLLC
☐ AFFECTS NUMEDICAL SC
☐ AFFECTS NUMALE COLORADO SC
☐ AFFECTS NUMALE FLORIDA TB PLLC
☐ AFFECTS NUMALE NEBRASKA LLC
☐ AFFECTS NUMALE NEW MEXICO SC
☒ AFFECTS ALL DEBTORS

Debtors.

QUINTAIROS, PRIETO, WOOD & BOYER P.A.,

Appellants,

v.

MICHAEL CARMEL, the Liquidation Trustee for the NuMale Liquidation Trust,

Appellee.

Case No. 25-10341-nmc

Chapter 11

Jointly Administered with:

| | |
|---|---|
| 25-10342-nmc | Feliciano NuMale Nevada PLLC |
| 25-10343-nmc | NuMedical SC |
| 25-10344-nmc | NuMale Colorado SC |
| 25-10345-nmc | NuMale Florida TB PLLC |
| 25-10346-nmc | NuMale Nebraska LLC |
| 25-10347-nmc | NuMale New Mexico SC |

**QUINTAIROS, PRIETO, WOOD & BOYER P.A.'S EMERGENCY MOTION FOR STAY OF ORDER PENDING APPEAL, OR, ALTERNATIVELY, TEMPORARY STAY**

**Hearing Date: N/A**
**Hearing Time: N/A**

Quintairos, Prieto, Wood & Boyer P.A. ("QPWB"), by and through its counsel, Snell & Wilmer L.L.P., moves this Court under Fed. R. Bankr. P. 8007 for entry of an order staying, pending

determination of its request for leave to appeal and, if leave is granted, pending appeal (this "Stay Motion"), the *Order Granting Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer, P.A. at Its Nevada Office and Denying Countermotion to Quash Subpoena and for Protective Order* (the "Order") [ECF No. 1046]. This Stay Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Eric Boyer (the "Boyer Decl.") [ECF No. 1028 at Ex. A] previously filed in support of *Quintairos, Prieto, Wood & Boyer P.A.'s Opposition to Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer P.A. at Its Nevada Office [ECF No. 1015] and Countermotion to Quash Subpoena [ECF No. 994] and for Protective Order* (the "Opposition and Countermotion" ) [ECF No. 1028], the papers and pleadings on file in these jointly administered proceedings, and any argument the Court may entertain.[1]

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

An immediate stay pending appeal is necessary here because, in one week, a law firm that was never a debtor, never a creditor, and never a participant in these cases will be forced to breach the privacy of nearly 100 of its employees located in 35 states – people who are not parties here, hold no equity in the firm, and have no role in its management – by exposing their *private* compensation agreements and pay records to Michael Carmel, the Liquidation Trustee for the NuMale Liquidation Trust (the "Trustee"). The result of that breach of privacy would be disastrous. QPWB's attorneys, having heard of this breach, have threatened legal action and resignation – harms that strike at the firm itself and that no appellate court could ever repair. Once these employees' private information is disclosed, no appellate ruling can take it back.

That is why timing is critical. The Order requires production by October 30, 2026, and a Rule 2004 examination in Las Vegas by November 4, 2026 – deadlines that will pass before this Court can even rule on QPWB's pending motion for leave to appeal. Without a stay, the bell will

[1] Contemporaneously with this Stay Motion, QPWB is filing a motion for an order shortening the time so that this Stay Motion may be heard before the October 30, 2026 production deadline set by the Order.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

be rung before any appellate court can decide whether it should have been, and QPWB's appeal will be effectively mooted – reduced to an academic exercise over information the Trustee already holds. Only a stay preserves meaningful appellate review.

The path to the Order is itself troubling and grounds for reversal. The Trustee first served QPWB at its Miami, Florida headquarters, where its custodian, its records, and every potential designee are located. But when QPWB invoked the Florida Bankruptcy Court jurisdiction to quash that subpoena, the Trustee made an end-run – serving a duplicate subpoena with the same examination topics and document demands at QPWB's Henderson, Nevada office – a five-person satellite office with no connection to the compensation decisions at issue – and then rushed to obtain the Order in Nevada while the earlier-filed Florida motion to quash was pending. The Order rewards that forum shopping. Under its reading of the "place of compliance," any subpoenaing party dissatisfied with one court may simply serve another office of a multistate entity and pick a new forum – a result *York Holding, Ltd. v. Waid*, 345 F.R.D. 626 (D. Nev. 2024), held "would eviscerate the entire purpose" of Rule 45, and one courts throughout the Ninth Circuit reject. And the permits Bankruptcy Rule 2004 to be used against an identified litigation target – one the Trustee has said he is "prepared to file suit [against] immediately" – to reach the payroll of non-debtor employees in up to 35 jurisdictions, without the safeguards that would govern discovery in an ordinary civil action. The Order's meager confidentiality provisions do not prevent the Trustee – the very party adverse to these employees – from using the information as he sees fit.

QPWB need not prove that it will win on appeal. It need only show: (i) a substantial case on the merits or serious legal questions, (ii) a probability of irreparable harm, (iii) that the stay will not substantially injure the Trustee, and (iv) that the public interest favors a stay. Every factor points the same way. On the merits, the Order adopts a reading of Rule 45 that courts in this very District and throughout the Ninth Circuit have rejected – that is the definition of a serious legal question. On harm, compelled breach of privacy information is the paradigm of irreparable injury because once the Trustee has the information, no reversal can take it back. On the balance of equities, the Trustee loses nothing. He calls his malpractice claims against QPWB "developed," has declared himself "prepared to file suit immediately," and remains free to do so today and to

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

pursue discovery under the Federal Rules of Civil Procedure, with the safeguards those rules guarantee. And no distribution, sale, or plan transaction depends on compliance. The only thing a stay delays is the Trustee's effort to bypass those safeguards. The public interest, too, favors preserving meaningful appellate review rather than forcing a non-party to choose between irreversible disclosure and contempt.

The Court should grant a stay and maintain the *status quo* and the private information of these nearly 100 employees while the Order is reviewed on appeal.

## II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND[2]

1. Before bankruptcy, QPWB represented some of the debtors (and other non-debtors parties) in a New Mexico lawsuit brought by Mr. Sanchez (the "*Sanchez* Lawsuit"). *See* ECF No. 1028 at 4. The *Sanchez* Lawsuit resulted in a four hundred and twelve million ($412,000,000) verdict against QPWB's clients. *See id.* at 5. That verdict was not reduced to judgment and was not tested by any post-judgment motions or appeals.

2. On January 22, 2025, the debtors filed for bankruptcy initiating these jointly administered proceedings. *See* ECF No. 1028 at 5. The Trustee was subsequently appointed. *See id.*

3. Without noticing QPWB, the Trustee entered into, and obtained approval of, a global settlement in the jointly administered proceedings, in which he declined to challenge the four hundred and twelve million ($412,000,000) verdict against the debtors and their officers, and, after agreeing to pay Sanchez almost $100 million, allowed Mr. Sanchez's claim in the amount of four hundred and ten million ($410,000,000), and took assignment of the debtors' officers' alleged malpractice claims against QPWB. *See* ECF No. 1028 at 3, 6.

4. October 7, 2025, this Court entered the plan confirmation order. *See* ECF Nos. 726, 727. QPWB was never a creditor, never filed a claim, never voted, and never appeared in these jointly administered bankruptcy cases. *See* ECF No. 1015 at 10 (quoting ECF No. 1007).

---

[2] A more robust factual and procedural history is recited in QPWB's Opposition and Countermotion to Quash and for Protective Order, which is incorporated herein by reference [ECF No. 1028].

5. On May 18, 2026, the Trustee sent a demand letter he represented was "organized as [the] complaint will be," calling his claims "substantial, exceptionally well-documented, and supported by an extensive evidentiary record" and declaring himself "prepared to file suit immediately." [ECF No. 1016-6 at 6, 1028 at 3]. He set a filing date of September 11, 2026; but, when QPWB declined his settlement terms, he did not file. *See* ECF No. 1028 at 3. QPWB cites these statements to establish the Trustee's litigation posture, not to prove or disprove the validity or amount of any claim.

6. Nearly a year after plan confirmation and almost four months after sending the May 18, 2026, letter, on September 15, 2026, on the Trustee's *ex parte* application, the Court entered an order pursuant to Fed. R. Bankr. P. 2004 directed to QPWB (the "Rule 2004 Order") [ECF No. 972], authorizing the examination of QPWB regarding "the acts, assets, conduct, property, liabilities, financial condition, and business dealings of the Debtors, including without limitation the litigation claims expressly preserved for the NuMale Liquidation Trust" under the confirmed plan, and directing the Trustee to issue a separate subpoena for documents under Fed. R. Bankr. P. 9016. The Rule 2004 Order relates to the Trustee's alleged but unfiled legal malpractice claims arising from QPWB's pre-petition representation of some of the debtors (as well as non-debtors parties) in the *Sanchez* Lawsuit.

7. On September 18, 2026, the Trustee served a subpoena on QPWB at its Miami, Florida headquarters commanding compliance in Miami, Florida (the "Florida Subpoena"). *See* ECF No. 974, 1028 at 1. On September 23, 2026, QPWB objected and advised that it would move to quash the Florida Subpoena in the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court"). *See* ECF No. 1028 at 9.

8. On September 28, 2026, the Trustee issued a second subpoena with the same examination topics and document requests, served at QPWB's Henderson, Nevada office and commanding compliance in Las Vegas, Nevada (the "Nevada Subpoena"). *See* ECF Nos. 994, 996, 1028 at 10. The Trustee did not withdraw the Florida Subpoena. *See* ECF No. 1028 at 10. The Trustee also did not advise QPWB's counsel it issued the Nevada Subpoena.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

9. On September 29, 2026, QPWB moved to quash the Florida Subpoena and for a protective order in the Florida Bankruptcy Court (the "Florida Motion"). *See* ECF No. 1028 at 9. The Florida Bankruptcy Court set the Florida Motion for hearing on October 21, 2026. *See id.* at 12.

10. QPWB is organized under Florida law and maintains its principal place of business in Miami. *See* Boyer Decl. ¶¶ 2-3. Its custodian of records, its records, and every person it could designate to testify on the noticed topics are located in Florida. *See id.* ¶ 13. QPWB has more than six hundred and sixty (660) attorneys; its satellite Nevada office has five (5), none of whom had any role in the *Sanchez* Lawsuit, QPWB's compensation decisions, or the documents sought via the Nevada Subpoena. *See id.* ¶¶ 12-13, 18; [ECF No. 1036 (Oct. 16, 2026 Hr'g Tr.) at 31:21-32:5].

11. On October 7, 2026, the Trustee proposed replacing eleven (11) document requests with two (2) requests directed to the approximately eighty (80) to one hundred (100) attorneys described as "rainmakers" or heads of "business units:" (i) the agreements governing their compensation, and (ii) documents sufficient to identify their aggregate compensation for 2024, 2025, and year-to-date 2026 (the "Modified Nevada Subpoena"). *See* ECF No. 1015 at 9-10. Those attorneys hold no equity in QPWB, are not officers or directors, and have no authority over its management, compensation decisions, or distributions; they are W-2 employees. *See* Boyer Decl. ¶¶ 4, 7-8. QPWB has offices in thirty-five (35) states and one (1) territory. *See id.* ¶¶ 30-33.

12. On October 12, 2026, the Trustee filed its *Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer P.A. at Its Nevada Office* (the "Amended Motion") [ECF No. 1015]. On October 14, 2026, QPWB filed its Opposition and Countermotion to Quash and for Protective Order. *See* ECF No. 1028. The Trustee replied on October 15, 2026. *See* ECF No. 1030.

13. On October 16, 2026, the Court heard the Amended Motion and took the matter under submission. *See* ECF No. 1036 (Oct. 16, 2026 Hr'g Tr.) at 45:3-5, 48:1-4.

14. On October 19, 2026, the Court entered the Order, adopting the Trustee's proposed order [ECF No. 1031-1]. *See* ECF No. 1046 at 5. Among other things, the Order found that Fed.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

R. Civ. P. 45(c) "does not limit the place of compliance for an entity to the location of its headquarters," and that Las Vegas is a permissible place of compliance. *Id.* at ¶ D. It found that this Court is the court for the compliance district and "expressly decline[d] QPWB's request to defer ruling pending the hearing on the Florida Motion." *Id.* at ¶ E. It also found that the Modified Nevada Subpoena falls within Rule 2004(b)(1)(A) and the Rule 2004 Order, that QPWB had not shown specific prejudice warranting a protective order, and that the pending-proceeding rule was inapplicable. *Id.* at ¶¶ F, H, I. The Order also summarily denied QPWB's Countermotion. *Id.* at 5.

15. The Order requires QPWB to: (i) produce all documents responsive to the Modified Nevada Subpoena by October 30, 2026, at 5:00 p.m. (Pacific); (ii) serve any privilege log by the same deadline; and (iii) produce its most knowledgeable person for examination in Las Vegas, Nevada on or before November 4, 2026, at 9:00 a.m. (Pacific).[3] *See* ECF No. 1046 at ¶¶ 1-3.

16. On October 21, 2026, counsel for QPWB attended the hearing on the Florida Motion advised the Florida Bankruptcy Court that this Court had entered the Order and that, consequently, the Trustee had withdrawn the Florida subpoenas.

17. On October 22, 2026, QPWB filed its notice of appeal of the Order and a motion for leave to appeal under 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004. *See* ECF Nos. 1050, 1052. This Stay Motion seeks interim relief while the request for leave is decided and, if leave is granted, while the appeal is resolved; it does not ask this Court to grant leave to appeal.

## III. ARGUMENT

### A. Standard for Stay Pending Appeal.

Fed. R. Bankr. P. 8007(a)(1)(A) provides, in pertinent part, that a party ordinarily must move first in the bankruptcy court for a stay of an order pending appeal. In ruling on such a motion for a stay pending appeal, courts in the Ninth Circuit apply traditional equitable criteria comparable to those used in evaluating a preliminary injunction. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

---

[3] The Order also directs the parties to meet and confer about a protective order, and to the extent one cannot be agreed to, allows QPWB to designate documents as "confidential," requiring sealing if publicly filed (unless a court de-designates the documents). *See* ECF No. 1046 at ¶ 4. However, this does not protect against the Trustee's use of the documents in all other ways except public filing.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Under the "traditional" balancing test employed within the Ninth Circuit, the propriety of a stay is evaluated under four factors: (i) the appellant's probability of success on appeal; (ii) a substantial threat the appellant will suffer irreparable injury if the stay is denied; (iii) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (iv) where the public interest lies. *See, e.g.*, *Am. Fed'n of Gov't Employees, AFL-CIO v. Trump*, 148 F.4th 648, 654 (9th Cir. 2025) (granting stay pending appeal based on four (4) factors); *Duncan v. Bonta*, 83 F.4th 803, 805 (9th Cir. 2023) (same); *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (same).

The Ninth Circuit applies a sliding scale under which a stronger showing on one factor may offset a weaker showing on another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). A movant "need not demonstrate that it is more likely than not . . . [to] win on the merits;" it need only show "a substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 966, 968. Where, as here, the probability of irreparable injury is high, the required showing on the merits is correspondingly reduced. *See id.* As set forth below, applying these standards, QPWB is entitled to an immediate stay pending appeal.

**B. QPWB Has a Substantial Case for Relief on Appeal.**

To demonstrate likelihood of success on the merits, an appellant "need not demonstrate that it is more likely than not that they will win on the merits" but instead must show "a substantial case for relief on the merits." *Leiva-Perez*, 640 F. 3d at 966, 968. QPWB respectfully submits that, at a minimum, the appeal presents serious legal questions on which reasonable jurists – including courts in this District – have disagreed with the Order.

***1. The Order's Place-of-compliance Ruling Conflicts with Authority in This District and the Ninth Circuit.***

Fed. R. Bankr. P. 2004(c) provides that an entity "may be compelled under [Fed. R. Bankr. P.] 9016" to attend an examination and produce documents, and Fed. R. Bankr. P. 9016 makes Fed. R. Civ. P. 45 applicable. Fed. R. Civ. P. 45 assigns motions to compel and to quash to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i), (d)(3). The Order treats the place of compliance as the place designated on the face of the Nevada Subpoena, so long

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

as it is within one hundred (100) miles of any office at which QPWB "regularly transacts business in person." [ECF No. 1046 at ¶ D].

This District has held otherwise. In *York Holding, Ltd. v. Waid*, 345 F.R.D. 626 (D. Nev. 2024), the court interpreted "the place 'where compliance is required'" to mean "the location of the subpoenaed nonparty, even if different than the location for the production of documents identified on the face of the subpoena," because "it would eviscerate the entire purpose of these provisions in [Fed. R. Civ. P.] 45 to interpret them as meaning that a subpoenaing party may force a subpoenaed nonparty to litigate a subpoena-related dispute in an inconvenient district by simply listing that location on the face of the subpoena." *Id.* at 628-29. Courts elsewhere in the Ninth Circuit agree that, for an entity, the place of compliance is where it is headquartered and where its custodians and records are located, notwithstanding a local office. *See, e.g.*, *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (Google's Venice, California office did not make the Central District of California the place of compliance; the proper district was where Google was headquartered and its custodians resided and produced records); *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21CV1197-W-MDD, 2022 WL 2820667, at *7, *9 (S.D. Cal. July 18, 2022) ("[A] subpoenaing party cannot compel compliance at any location where a nonparty has a corporate office."); *Roberts v. Randy LL Corp.*, No. 3:24-CV-00523-HZ, 2025 WL 2717823, at *6 (D. Or. Sept. 24, 2025). Courts in the Second Circuit have reached the same result. *See, e.g.*, *The Marshall Project, Inc. v. City of Cleveland*, No. 24-MC-309 (VEC), 2024 WL 4589667, at *3 (S.D.N.Y. Oct. 28, 2024) (quashing subpoena served in Ohio where entity was headquartered in Manhattan, New York, notwithstanding five (5) of its seventy-six (67) employees being in Ohio); *Dellaportas v. Shahin*, No. 24-CV-793, 2025 WL 3019810, at *1 (S.D.N.Y. Oct. 29, 2025) (rejecting reliance on the "regularly transacts business" prong based on Microsoft's substantial New York office).

The Trustee relies on *Conservation Law Found., Inc. v. Equilon Enters. LLC*, No. 17-396-WES, 2025 WL 2821238 (D.R.I. Oct. 3, 2025), in support of a broader reading of Rule 45(c). *See* ECF No. 1015 at 13. The facts here fall squarely within the *York Holding* and *Europlay* line – QPWB is headquartered in Miami, Florida; its custodian, records, and every potential designee are

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

there. The Henderson, Nevada, office – with less than one percent (1%) of QPWB's attorneys – has no connection to the *Sanchez* Lawsuit or to the compensation decisions at issue. *See* Boyer Decl. ¶¶ 2-3, 12-13, 18. Under the Order's reading, a subpoenaing party could select the forum for any multistate entity by choosing which office to serve – precisely the result *York Holding* rejected. An appellate court could readily conclude that the Order applied the minority rule.

### ***2. The Order's Refusal to Defer to the Florida Bankruptcy Court Raises Substantial Jurisdictional Questions.***

Courts in this District hold that "when a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion." *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014); *accord Taddeo v. Am. Invsco Corp.*, No. 2:12-CV-01110-APG-NJK, 2016 WL 593522, at *1 (D. Nev. Feb. 12, 2016); *Mirae Asset Sec. Co. v. Ryze Renewables Holdings, LLC*, No. 2:23-CV-01492-APG-NJK, 2025 WL 1159944, at *3 (D. Nev. Apr. 21, 2025). Bankruptcy courts apply the same rule to Fed. R. Bankr. P. 2004 subpoenas. *See In re SBN Fog Cap II LLC*, 562 B.R. 771, 775-76 (Bankr. D. Colo. 2016); *In re Correra*, 589 B.R. 76, 110-13 (Bankr. N.D. Tex. 2018). Fed. R. Civ. P. 45(f) supplies the mechanism by which the compliance court may transfer a subpoena-related motion to the issuing court. The Florida Motion – filed before the Trustee sought relief here, addressing a subpoena with the same topics and requests, and set for hearing on October 21, 2026 – was pending when this Court "expressly decline[d]" to defer. [ECF No. 1046 at ¶ E]. Whether an issuing court enforcing its own Fed. R. Bankr. P. 2004 order may bypass Fed. R. Civ. P. 45(d) and (f) in these circumstances is a substantial question warranting appellate review. If this Court lacked authority to compel compliance, the Order cannot stand.

### ***3. The Modified Nevada Subpoena Exceeds the Permissible Scope of Fed. R. Bankr. P. 2004 and the Rule 2004 Order.***

Fed. R. Bankr. P. 2004 is broad, but it "is not without limits," and it "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Mastro*, 585 B.R. 587, 597, n.12 (B.A.P. 9th Cir. 2018) (quoting *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985)). The requests the Order compels concern the compensation of non-debtor

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

employees of a non-debtor law firm for 2024 through 2026. None of those employees is a debtor, and none of that compensation is a debtor's asset. The Trustee concedes that "compensation paid for services actually rendered" is not recoverable [ECF No. 1015 at 12]. The information is sought, in the Trustee's words, to decide "which transferees to name." *Id.* at 19. Whether discovery into the payroll of a prospective defendant's employees, to identify potential new defendants for claims that belong (if at all) to the estate only derivatively through a hoped-for future judgment, falls within "the debtor's acts, conduct, or property," Fed. R. Bankr. P. 2004(b), is a serious question. *In re Rhodes Cos., LLC*, on which the Order relies, involved subpoenas to recipients of the *debtor's* transfers, not the employees of a non-debtor. 475 B.R. 733, 736-37 (D. Nev. 2012); [ECF No. 1036 at 33:7-34:11, 1046 at ¶ F]. That is inapplicable here.

The examination was authorized after confirmation and expressly references claims preserved for the Liquidation Trust. QPWB therefore asks that the scope of the examination be tied to the actual plan and trust provisions governing the Trustee's authority and the claims at issue. A retention-of-jurisdiction provision alone does not answer every jurisdictional or scope objection. At the same time, QPWB does not rely merely on the absence of a judgment against it to defeat any possible transfer claim; the applicable definition of a claim and the elements of the asserted cause of action matter. The requested limit is a demonstrated connection to the preserved claims and implementation of the confirmed plan, not a categorical prohibition on investigation before judgment.

***4. The Pending-proceeding Rule and the Trustee's Litigation Posture Present Additional Substantial Questions.***

Courts decline to permit Fed. R. Bankr. P. 2004 to be used against an identified litigation target to circumvent the procedural safeguards of the Federal Rules of Civil Procedure. *See, e.g.*, *In re Defoor Ctr., LLC*, 634 B.R. 630, 639-40 (Bankr. M.D. Fla. 2021); *In re Transmar Commodity Grp. Ltd.*, No. 16-13625-JLG, 2018 WL 4006324, at *5 (Bankr. S.D.N.Y. Aug. 17, 2018); *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002); *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983). Here, the Trustee identified QPWB as a target no later than the Global Settlement, sent a twenty-six (26) page demand letter "organized as [the] complaint will be,"

described his claims as "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," declared himself "prepared to file suit immediately," and set a September 11, 2026, filing date before turning to Fed. R. Bankr. P. 2004 [ECF No. 1028 at 3, 15-16,22-23]. A party "should not be allowed to delay the filing of an adversary proceeding so that it can avoid the 'pending proceeding' rule." *Defoor*, 634 B.R. at 639-40. Whether the Order properly applied these principles is, at minimum, a serious question.

Taken together, these issues readily establish "a substantial case for relief on the merits" to warrant a stay of the Order pending appeal. *Leiva-Perez*, 640 F.3d at 968.

**C. QPWB Will Suffer Irreparable Harm Absent a Stay.**

This factor weighs decisively in QPWB's favor. The Order compels the production of documents and testimony. Once QPWB produces the compensation agreements and aggregate compensation for approximately eighty (80) to one hundred (100) non-party attorneys, and once its designee is examined, no appellate ruling can restore the confidentiality of that information or "unring the bell." *See, e.g.*, *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1491 (9th Cir. 1989) (recognizing "irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications"); *United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988) ("We acknowledge that compelling a witness to disclose *privileged* information might indeed result in an irreparable injury 'because appellate courts cannot always unring the bell once the information has been released.'") (quoting *Maness v. Meyers*, 419 U.S. 449, 460-61 (1975))*In re Republic of Ecuador*, 10-MC-80087 CRB (NC), 2012 WL 13187177, at *2 (N.D. Cal. Mar. 30, 2012) ("Recognizing irreparable injury may result if respondents were compelled to produce documents that are found privileged on review, the Court finds respondents have made a threshold showing as to the irreparable injury factor."). Without a stay, the October 30, 2026, deadline (for documents) and November 4, 2026, deadline (for examination) will both pass before any appeal can be heard, effectively depriving QPWB of appellate review.

The harm is concrete and particularized. First, the information belongs not only to QPWB but to roughly one hundred (100) employees who are not parties to these jointly administered proceedings and who reside in jurisdictions with their own laws protecting employee personnel and

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

compensation information. *See* Boyer Decl. ¶¶ 30-33. Each would have a right to object to such disclosure. *See id.* Compelled production exposes QPWB to potential liability to its employees across up to thirty-five (35) different jurisdictions. *See id.*; *see also* ECF No. 1036 at 30:24-31:4. Second, the disclosure is sought for the express purpose of identifying those employees as defendants, [ECF No. 1015 at 19], creating a substantial risk of attrition and office closures that no later ruling could reverse. *See* Boyer Decl. ¶¶ 30-33; *see also* ECF No. 1036 at 31:14-21. Third, once compliance occurs, QPWB will have permanently lost the procedural protections that would govern discovery in an adversary proceeding or other civil proceeding – relevance, proportionality, and the full right to counsel and objection – which is the very harm the pending-proceeding rule exists to prevent. *See In re Wilcher*, 56 B.R. at 434; *see also In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (a witness generally has no right to representation during an examination and has limited rights to object to immaterial or improper questions).

The Order's confidentiality provisions do not cure this harm. *See* ECF No. 1046 at ¶ 4. Paragraph 4 of the Order permits a "confidential" designation that requires sealing of public filings, but it does not prevent the Trustee – an adverse party who has threatened claims against these very individuals – from obtaining and using the information as he pleases (absent filing publicly). *See id.* The injury is the disclosure to the Trustee itself and his use of it; not the disclosure of it in the public record. As such, QPWB and its employees stand to be gravely harmed if a stay pending appeal is not entered.

**D. A Stay Will Not Substantially Injure the Trustee or Any Other Parties.**

By contrast, a stay will not substantially harm the Trustee. The Trustee's counsel's own declaration in support of the Amended Motion states the statute of limitations for malpractice claims against QPWB is November 23, 2026, which the Trustee admits are "developed," while stating that "[t]he limitations periods applicable to the Trust's potential fraudulent transfer and improper distribution claims remain under review." *See* ECF No. 1016 ¶ 11; *see also* ECF No. 1015 at 15-16. Nothing in the Order or a stay pending appeal prevents the Trustee from filing his malpractice action against QPWB now, as he has repeatedly said he is prepared to do. *See* ECF No. 1028 at 3, 22-23. Once he does, discovery – including any discovery relevant to transferee

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

claims – can be sought under the Federal Rules of Civil Procedure. Under Nevada law, the limitations period for fraudulent transfer claims is generally four years and runs from the date of the transfer. *See* ECF No. 1036 at 25:6-12; *see also* NRS 112.230. The transfers the Trustee seeks to investigate date from late 2024 *forward* and, therefore, there is plenty of time. *See* ECF No. 1028 at 4.

Further, a stay merely preserves the status quo. QPWB has not produced documents under either subpoena while the parties have been litigating in two courts, and no creditor distribution, sale, or plan transaction depends on compliance with the Order. A stay pending appeal simply will not negatively impact the Trustee or any other parties.

**E. The Public Interest Favors a Stay.**

There is a strong public interest in preserving the integrity of the statutory right to appellate review. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007). That interest is at its height where, as here, compliance with the challenged order would render appellate review meaningless and noncompliance by QPWB could result in its being held in contempt. The Ninth Circuit recognized this in *In re Kirkland*, 75 F.4th 1030, 1048 (9th Cir. 2023) (quoting *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 913-14 (9th Cir. 1999)), where it stated that third parties "could not be expected" to seek review through contempt proceedings.

The public interest is also served by uniform application of Fed. R. Civ. P. 45's place-of-compliance and enforcement provisions, which protect nonparties from being compelled to litigate in forums of the subpoenaing party's choosing, *see York Holding*, 345 F.R.D. at 629, and by protecting the privacy of non-party employees who have no role in these jointly administered proceedings. A stay advances each of these interests and does not disserve any countervailing public interest.

**F. No Bond Should Be Required.**

Fed. R. Bankr. P. 8007 does not require a bond; rather it *permits* the Court to condition relief on the filing of a bond or other appropriate security. *See* Fed. R. Bankr. P. 8007(c). A bond is unnecessary here because the Order is a discovery order, not a money judgment, and a stay will

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

not cause the Trustee or the estates any compensable monetary loss. The stay simply maintains the status quo pending appellate review.

**G. Alternatively, the Court Should Enter a Temporary Stay.**

If the Court is not inclined to grant a stay pending the full appeal, QPWB respectfully requests, in the alternative, that the Court stay the October 30, 2026, and November 4, 2026, deadlines in the Order for a period sufficient to permit QPWB to seek a stay from the United States District Court for the District of Nevada, where the appeal is pending, under Fed. R. Bankr. P. 8007(b). Absent such interim relief, the compliance deadlines will likely pass before the appellate court may even consider a stay motion, and QPWB's right to seek appellate relief will be lost.

## IV. CONCLUSION

For the foregoing reasons, QPWB respectfully requests that the Court: (i) stay the Order pending resolution of QPWB's appeal, without the requirement of a bond; (ii) alternatively, temporarily stay the compliance deadlines in the Order to permit QPWB to seek a stay from the appellate under Fed. R. Bankr. P. 8007(b); and (iii) grant QPWB such other and further relief as the Court deems just and proper.

QPWB reserves all rights, including its objections to service and its right to withhold consent to the entry of final orders on matters beyond this discovery dispute.

Dated: October 23, 2026.

SNELL & WILMER L.L.P.

*/s/ Bob L. Olson*
Bob L. Olson (NV Bar No. 3783)
Alex L. Fugazzi (NV Bar No. 9022)
Charles E. Gianelloni (NV Bar No. 12747)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135

*Attorneys for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Eddie Prieto*