Richard F. Holley, Esq.
Nevada Bar No. 3077
R. McKay Holley, Esq.
Nevada Bar No. 15934
SPENCER FANE, LLP
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone (702) 408-3400
Facsimile (702) 408-3401
Email: rholley@spencerfane.com
mholley@spencerfane.com

*Attorneys for John Doe 1, John Doe 2 and Jane Doe*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>☒ NUMALE CORPORATION,<br>☒ FELICIANO NUMALE NEVADA PLLC,<br>☒ NUMEDICAL SC,<br>☒ NUMALE COLORADO SC,<br>☒ NUMALE FLORIDA TB PLLC.<br>☒ NUMALE NEBRASKA LLC,<br>☒ NUMALE NEW MEXICO SC,<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br>Jointly Administered with:<br>Case No.: 25-10342-nmc<br>Case No.: 25-10343-nmc<br>Case No.: 25-10344-nmc<br>Case No.: 25-10345-nmc<br>Case No.: 25-10346-nmc<br>Case No.: 25-10347-nmc<br><br>Hearing Date: OST Pending<br>Hearing Time: OST Pending<br><br>Judge: Hon. Natalie M. Cox |

**INTERESTED PARTIES DOES' MOTION TO QUASH OR IN THE ALTERNATIVE MOTION FOR PROTECTIVE ORDER**

Interested parties John Doe 1, John Doe 2 and Jane Doe ("Doe Parties" or "Movants") by and through counsel, hereby file their Motion To Quash Or In The Alternative Motion For Protective Order ("Motion") with respect to the *Subpoena In A Case Under The Bankruptcy Code For Examination And Production Of Documents Pursuant To Fed. R. Bankr. P. 2004 And 9016* ("Subpoena"; ECF No. 994-1) that was filed under the *Notice Of Issuance Of Subpoena To Quintairos, Prieto, Wood & Boyer, P.A.* (ECF No. 994) on September 28, 2026.

This Motion is supported by the Memorandum of Points and Authorities herein; the Declaration of John Doe 2 ("Doe 2 Decl.")[1] filed concurrently herewith pursuant to Local Rule of Bankruptcy Practice of the United States District Court for the District of Nevada ("LR") 9014(c); the papers and pleadings on file in this Case, judicial notice of which is respectfully requested pursuant to Fed. R. Evid. 201(b) and (c)(2) and 1101(1) and (b); and any argument and evidence the Court may entertain at a hearing on the Motion.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2). The Does consent to the entry of a final order or judgment by the Bankruptcy Judge on this Motion if it is determined that the Bankruptcy Judge, absent consent of the Parties, cannot enter final order or judgment consistent with Article III of the United States Constitution.

### II. PRELIMINARY STATEMENT AND RELEVANT BACKGROUND

Movants are non-party, non-equity employees of Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") who move to quash Requests for Production Nos. 3 through 6 of the Trustee's revised Nevada Subpoena, which demand the identities, compensation agreements, and individual compensation or payment amounts of up to 100 or more QPWB attorneys, including Movants,

---

[1] The Doe Parties choose not to publicly disclose their names for obvious reasons. Revealing their identities would inflict the precise injury the motion is designed to prevent. Pseudonymous filing preserves the status quo—keeping their identities and financial information confidential while the court decides whether the subpoena should be modified. They are, however, ready and willing to submit their names to the Court for in camera review, along with the executed Doe 2 Decl.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules". All references to "ECF No." are to the numbers assigned to the documents filed in the bankruptcy case identified in the caption above ("Case") as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada. Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Subpoena.

without any showing that these individuals had a connection to the Sanchez Action, the fees at issue, or the conduct underlying the Trustee's threatened fraudulent transfer claims. QPWB has only two equity shareholders. Movants are salaried employees with no ownership interest, profit share, or control over the firm's affairs, and thus no plausible connection to any insider or fraudulent-transfer theory.

Movants have an independent privacy interest in their identities and compensation sufficient to confer standing here, and that interest, combined with the complete absence of individualized relevance, requires that Requests Nos. 3 through 6 be quashed or, at minimum, narrowed and protected by order to anonymize QPWB's production such that it identifies the employees by other means besides their names. This would grant the Trustee access to the relevant financial information he could then review, scrutinize, and then identify a subset of employees that fall under his misguided investigation of purported fraudulent transfer or improper distribution claims.[3] Movants therefore respectfully request that the Court quash Requests Nos. 3 through 6, or in the alternative, narrow their scope and enter a protective order safeguarding the Movants' and other similarly situated employees' identities.

**A. The Bankruptcy and the Trustee's Claims Against QPWB.**

This dispute arises out of the bankruptcy of NuMale Corporation and its affiliated debtors (collectively, "NuMale"), Lead Case No. 25-10341-nmc, pending in the United States Bankruptcy Court for the District of Nevada. Michael Carmel serves as the Liquidation Trustee (the "Trustee") of the NuMale Liquidation Trust created in that bankruptcy. ECF No. 1028 at 5. QPWB represented certain NuMale entities in the underlying New Mexico state court litigation styled the "Sanchez Action", which resulted in a verdict in favor of Michael Sanchez (the NuMale estates' largest creditor) on November 25, 2024. *Id.* at 4. The Trustee has asserted that QPWB and certain of its attorneys are threatened targets of purported legal-malpractice arising from QPWB's

[3] QPWB's list of employees is public information. https://qpwblaw.com/find-your-attorney/, last visited October 27, 2026. Anyone can access this link and narrow attorney searches by title (Managing Partner, Partner, Of Counsel, Associate) location, practice area, bar admission, language, school, or job title. The claim that the Trustee cannot reasonably identify potential claimants is specious at best.

representation of NuMale in the Sanchez Action and asserted, but unfiled claims under the Uniform Fraudulent Transfer Act as to certain QPWB employees.

**B. The Rule 2004 Order and the Nevada Subpoena.**

On September 15, 2026, the Court entered an Order Granting the Trustee's Ex Parte Application for Examination of the Person Most Knowledgeable for QPWB pursuant to Fed. R. Bankr. P. 2004. ECF No. 972. On September 18, 2026, the Trustee served subpoena on QPWB's Miami office commanding compliance in Miami, Florida (the "Florida Subpoena"). ECF Nos. 974 and 1028 at 1. On September 28, 2026, the Trustee then issued a second subpoena with the same examination topics and document requests at QPWB's Nevada office (the "Nevada Subpoena"), commanding production of documents from QPWB. QPWB moved to quash the Nevada Subpoena and for a protective order, and the Trustee moved to enforce compliance. The parties thereafter engaged in meet-and-confer efforts. Following those efforts, the Trustee served revised requests for production dated October 7, 2026, which replaced and narrowed certain of the original requests in the Nevada Subpoena. The revised requests nonetheless are directed at approximately 80 to 100 attorneys (W-2 employees with no equity in QPWB) whose privacy interests are directly implicated without notice to those employees.

On October 12, 2026, the Trustee filed its Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to QPWB at Its Nevada Office. ECF No. 1015. On October 14, 2026, QPWB filed its Opposition and Countermotion to Quash and for Protective Order. *See* ECF No. 1028. The Trustee replied on October 15, 2026. *See* ECF No. 1030. On October 19, 2026, the Court entered the Order, adopting the Trustee's proposed order [ECF No. 1031-1]. *See* ECF No. 1046 at 5. Among other things, the Order found that the revised Nevada Subpoena falls within Rule 2004(b)(1)(A) and the Rule 2004 Order and that QPWB had not shown specific prejudice warranting a protective order. *Id.* ¶¶ F, H, I. The Order also summarily denied QPWB's Countermotion. *Id.* at 5. The Order requires QPWB to: (i) produce all documents responsive to the Modified Nevada Subpoena by October 30, 2026, at 5:00 p.m. (Pacific); (ii) serve any privilege log by the same deadline; and (iii) produce its most knowledgeable person for

SPENCER FANE LLP
Attorneys at Law
Las Vegas

examination in Las Vegas, Nevada on or before November 4, 2026, at 9:00 a.m. (Pacific). *See* ECF No. 1046 at ¶¶ 1-3.

**C. The Requests for Production at Issue in the Nevada Subpoena.**

The document requests in the revised Nevada subpoena that directly implicate Movant's privacy interests and that of numerous other employees are as follows:

**REQUEST FOR PRODUCTION NO. 3:**

For the 80 to 100 attorneys described by QPWB as "rainmakers" or as heads of "business units" within QPWB, produce the: (i) agreement between QPWB and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026.

**REQUEST FOR PRODUCTION NO. 4:**

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2024 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**REQUEST FOR PRODUCTION NO. 5:**

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2025 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**REQUEST FOR PRODUCTION NO. 6:**

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, since January 1, 2026, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**D. Movant's Status and QPWB's Ownership Structure.**

Compliance with Requests Nos. 3 through 6 would require QPWB to disclose, by name, the identities of numerous individual attorneys and employees, together with their individual compensation, bonus, and/or distribution amount, regardless of whether any particular individual had any role in, or connection to, the Sanchez Action, the representation of NuMale, or the conduct underlying the Trustee's claims against QPWB. Movants are current employees of QPWB whose names, compensation, and/or payments from QPWB fall within the scope of Requests Nos. 3

through 6. *See* Ex. A, Doe 2 Decl. QPWB has offices in 35 states with its main office and headquarters located in Miami, Florida. *See* ECF No. 1028-1 at ¶ 3. John Doe 1 is a citizen of California, Jane Doe is a citizen of Florida, and John Doe 2 is a citizen of Arizona. *See* Ex. A, Decl. of John Doe 2. Movants are not parties to the NuMale Bankruptcy Case, were not individually named in or served with the Nevada Subpoena and have not been afforded due process including notice or an opportunity to be heard regarding disclosure of their personal confidential financial information other than through the instant Motion. *Id.*

QPWB has only two equity shareholders. *See* ECF No. 1028-1 ¶ 4. The remaining attorneys whose identities and compensation are sought under Requests Nos. 3 through 6, including Movants, are salaried employees with no ownership interest in QPWB, no entitlement to a share of QPWB's profits, and no control over QPWB's financial or business affairs. *Id.*, ¶ 5. But the Nevada subpoena nonetheless boldly requests the disclosure of private, sensitive financial information of 100 employees who reside in states with their own laws protecting employee personnel and compensation information (for the purpose of this motion California, Arizona, and Florida). Movants strongly object to the disclosure of their personal financial information. *See* Ex. A, Doe 2 Decl. The Trustee has already conceded that the identities of the employees are not really necessary to his investigation as he expressly offered to accept a limited production if the unidentified recipients would agree to toll any applicable statute of limitations. ECF No. 1016 at 5 ¶ 16.

**E. There is No Real Urgency that Prevents this Court from Affording Movants the Due Process to which they are Entitled.**

The Trustee has represented to this Court that expedited discovery is necessary because he is attempting to investigate purported fraudulent transfers before the applicable statute of limitations expires. However, the Trustee fails to identify a single applicable statute of limitations or upcoming deadline, instead resorting to conclusory statements of possible impending deadlines. The Sanchez Action was litigated in New Mexico state court, and the Plan of Reorganization provides that New Mexico substantive law applies to the QPWB claims. To the extent New

Mexico law applies, the New Mexico statute of limitations governing fraudulent transfer claims is not at risk of running.[4]

New Mexico's Uniform Voidable Transactions Act, N.M.S. 56-10-23, extinguishes such claims four years after the transfer was made (or one year after discovery, if later). The transfers at issue in Requests Nos. 3 through 6 occurred in 2024, 2025, and 2026. Under the four-year rule, the earliest of these transfers will not become time-barred until 2028, and later transfers not until 2029 or 2030. There is accordingly no looming limitations deadline that justifies the breadth or urgency of the discovery the Trustee seeks, let alone discovery requiring disclosure of the names and compensation of over 100 non-equity employees with no alleged connection to any transfer. Although N.M.S. 56-10-23(C) does limit a statute of limitations to one year after a transfer is made in a limited circumstance, that provision is not applicable here as it is limited to claims under N.M.S. 56-10-19(B). Those claims require a transfer to an insider for an antecedent debt in which the insider had a reasonable cause to believe that the debtor was insolvent.[5] The Doe Parties and similarly situated employees are not insiders and therefore cannot be subject to this provision.

As explained in the Boyer Declaration (ECF No. 1028-1), QPWB only has two equity partners. ECF No. 1028-1. Its partners-in-name only employees, like the Doe Parties, have no right to manage, direct, or control QPWB's corporate decisions, share in or receive any of QPWB's general profits or revenues, serve as an officer, director, or have authority to direct QPWB's management, compensation decisions, or distributions. Boyer Decl., ¶¶ 4-8. Since the Doe Parties and similarly situated employees are not insiders, the only applicable statute of limitations under New Mexico law is four years. As such, there can be no impending statute of limitations concern by the Trustee. Additionally, the Trustee has utterly failed to substantiate its purported concerns of approaching deadlines.

---

[4] To the extent Florida law applies given that Miami is the primary place of business of QPWB, the following analysis still applies because Florida's version of the UFTA is substantially similar to that of New Mexico. *See* Fla. Stat. § 726.101 et seq.

[5] Not only has the Trustee failed to demonstrate that the employees are insiders of QPWB, but the Trustee has also failed to identify any antecedent debt that would render the one year statute of limitations applicable in this case.

## III. ARGUMENT

### A. Legal Standard

Under Federal Rule of Civil Procedure 45(d)(3), as incorporated into bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9016, a court must quash or modify a subpoena that subjects a person to undue burden or seeks disclosure of privileged or otherwise protected matter. District courts within the Ninth Circuit have found that an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena. *See Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012) (discussing how "special care" must be taken before personnel files are turned over to an adverse party). An employee's personnel records and employment information are protected by the constitutional right to privacy, and a party therefore has standing to challenge subpoenas issued to an employer for those records. *See Doe v. Tchrs. Council, Inc.*, No. 3:23-CV-01747-AN, 2025 WL 1782227 at *2–3 n.2 (D. Or. June 27, 2025) (determining that "plaintiffs would have standing to challenge subpoenas issued to their current employers for their employment records").

"Relevance alone is not sufficient to justify a Rule 2004 request." *In re SunEdison, Inc.*, 572 B.R. 482, 489 (Bankr. S.D.N.Y. 2017) (noting a court "must balance the competing interests of the parties" when determining whether good cause exists). Rather, once a party to be examined moves to quash a Rule 2004 subpoena, "the examiner must show that there is good cause for taking the requested discovery," (*In re W & S Invs., Inc.*, 985 F.2d 577 (Table), No. 91-35830, 1993 WL 18272 (9th Cir. Jan. 28, 1993) (unpublished)) "such as the proposed examination is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice." *In re SunEdison*, 572 B.R. at 489 (internal quotation marks and citations omitted). Moreover, FRCP 26(c), made applicable by Bankruptcy Rules 7026 and 9014, authorizes the Court to issue a protective order to protect a party from annoyance, embarrassment, oppression, undue burden, or expense, including by limiting the scope of discovery or prescribing the matters into which inquiry may be made.

Although the examination proceeds under Bankruptcy Rule 2004, the privacy interests recognized by each state's law inform the Court's discretion to limit the scope of that examination and to enter a protective order. The information the Trustee seeks here (the names of the firm's W-2 attorney-employees and the production and origination-based compensation paid to each) is precisely the category of sensitive personal financial data that California, Florida, and Arizona protect from compelled disclosure absent appropriate safeguards. In each of these states discussed below, the analysis begins with an express or textual constitutional right of privacy, is reinforced by statute and rule, and is applied by the courts through a balancing test that places the burden on the party seeking the private financial information and that favors the least intrusive disclosure, if any.

### B. California's Constitutional Right to Privacy and the *Hill* Balancing Test Weigh Against Disclosure of Movants' Identities and Compensation.

The California Constitution guarantees every person an inalienable right of privacy. Cal. Const. art. I, § 1. "Protection of informational privacy is the provision's central concern." *Williams v. Superior Ct.*, 3 Cal. 5th 531, 552, 398 P.3d 69, 83–84 (2017). That right "protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life," expressly "including his or her financial affairs." *Hooser v. Superior Ct.*, 84 Cal. App. 4th 997, 1003–05, 101 Cal. Rptr. 2d 341, 346 (2000) (requiring courts to carefully balance "the right of a civil litigant to discover relevant facts . . . and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs"), *overruled on other grounds by Williams v. Superior Ct.*, 3 Cal. 5th at 557, 398 P.3d at 88 n.8 (2017)); *Tien v. Superior Ct.*, 139 Cal. App. 4th 528, 539, 43 Cal. Rptr. 3d 121, 128 (2006). An employee's compensation is both—it is confidential personnel information and the employee's personal financial data—and therefore falls squarely within the constitutional zone of protection. The right may be invoked to resist discovery even of relevant material: "[i]nformation that is not protected by statutory privilege may nonetheless be shielded from discovery, despite its relevance, where its disclosure would invade an individual's right of privacy." *Hooser v. Superior Ct.*, 84 Cal. App. 4th at 1003–04, 101 Cal. Rptr. 2d at 346. However, it is the burden of the party asserting the

privacy interest "to establish its extent and the seriousness of the prospective invasion." *Williams v. Superior Ct.*, 3 Cal. 5th at 557, 398 P.3d at 87.

Here, John Doe 1 is a California citizen entitled to the protections of his state's constitution. The information sought by the Trustee, requiring the disclosure of his compensation over the last three years and identifying him by name, runs afoul of his constitutional right to privacy. John Doe 1's compensation records fall squarely within the zone the California Constitution protects because compensation is both confidential personnel information and personal financial data, the precise combination *Hooser* identifies as triggering the privacy right. John Doe 1 has a legitimate expectation that his individual compensation will not be disclosed outside the ordinary course of employment, let alone in a bankruptcy proceeding to which he is not a party.

The threatened invasion is serious given the breadth of the request. Requests Nos. 3 through 6 would require QPWB to disclose, by name, the individual compensation of 100 or more attorneys—the vast majority with no alleged connection to the Sanchez Action or any identified transfer. QPWB has only two equity shareholders, and the remaining employees, including Movants, have no ownership interest or control over the firm's affairs. Compelling disclosure of their named compensation, absent any individualized showing of relevance, is not targeted discovery but a wholesale intrusion into non-parties' private financial affairs without even putting them on notice that their privacy rights are being stripped away.

Here, Trustee cannot meet his burden under *Williams* to justify the intrusion, having already offered to accept the same compensation data without names in exchange for a tolling agreement. That concession confirms his legitimate need is satisfied by the data itself, independent of identity. Where the requesting party has already conceded that a less intrusive alternative meets its needs, the balancing required under *Williams* and *Hooser* favors protecting Movants' privacy. Production using anonymized employee-number identifiers resolves the competing interests *Hooser* identifies, preserving the Trustee's access to relevant facts while safeguarding Movants' constitutionally protected privacy. Timely production will enable the Trustee to review the financial information for deviations or spikes in compensation that he seeks to analyze in order to identify potential fraudulent conveyances recipients. Once the scope is narrowed, the court can

revisit whether the names of these individuals are necessary, rather than applying a broad brush-stroke approach that unnecessarily requires the disclosure of confidential personal financial information to enable the Trustee to engage in a fishing expedition. The Court should therefore quash Request's Nos. 3 through 6 in the Nevada subpoena or enter a protective order to anonymize the production of compensation related information.

**C. Florida's Constitutional Right of Privacy Requires a Compelling State Interest and the Least Intrusive Means Before Movants' Private Financial Information May Be Disclosed.**

Florida's Constitution contains an express, freestanding right of privacy: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life." Fla. Const. art. I, § 23. The Florida Supreme Court has held this provision "an independent, freestanding constitutional provision which declares the fundamental right to privacy," "intentionally phrased in strong terms" and "much broader in scope than that of the Federal Constitution." *Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regul.*, 477 So. 2d 544, 548 (Fla. 1985). Florida law expressly "recognizes an individual's legitimate expectation of privacy in financial institution records." *Id.*

Florida courts have applied article I, section 23 directly to civil discovery of personal financial information. "[P]ersonal finances are among those private matters kept secret by most people," and the constitutional right of privacy "expresses a policy that compelled disclosure through discovery be limited to that which is necessary for a court to determine contested issues" — and "[e]ven then, disclosure is made only so far as necessary.". *Woodward v. Berkery*, 714 So. 2d 1027, 1035–36 (Fla. Dist. Ct. App. 1998) (applying family law disclosure rules and discussing how "the constitutional right of privacy undoubtedly expresses a policy that compelled disclosure through discovery be limited to that which is necessary for a court to determine contested issues of support"); *Hett v. Barron-Lunde*, 290 So. 3d 565, 569–70 (Fla. Dist. Ct. App. 2020) (discussing the requirement to hold an evidentiary hearing for relevancy before compelling disclosure of a nonparty's financial information). Compelled disclosure of sensitive financial information that is not material to a contested issue inflicts "cat out of the bag" irreparable harm—the release of

"material that could be used . . . to injure another person or party outside the context of the litigation"—which cannot be cured on later review. *Id.* at 569.

"Where a trial court orders the disclosure of a nonparty's financial information without considering any evidence regarding its relevance, the trial court departs from the essential requirements of law," and an evidentiary hearing is generally required to determine relevance. *Id.* at 570. A "party who seeks third-party financial records . . . bears the burden of proof and must show the need for the discovery outweighs the privacy rights of the third-party," with an evidentiary hearing or in camera review employed to strike that balance—a "heightened standard . . . due to the irreparable harm that may be caused by the disclosure of irrelevant, yet confidential, information." *Id.* at 573.

Here, Jane Doe is a citizen of Florida whose personal confidential financial information is protected by her state constitution. Jane Doe's compensation records are squarely within the "private matters kept secret by most people" that article I, section 23 protects, and Florida's financial-privacy protection applies with full force to civil discovery of a nonparty's financial information. The constitutional policy identified in *Woodward* and *Hett* requires that compelled disclosure "be limited to that which is necessary" to resolve a contested issue, and even then "disclosure is made only so far as necessary." That standard is not met here. As discussed, Requests Nos. 3 through 6 would require QPWB to disclose, by name, the individual compensation of 100 or more attorneys and employees, the vast majority of whom have no alleged connection to the Sanchez Action or any identified transfer. Disclosing Movants' names alongside their compensation data exposes them to precisely the "cat out of the bag" harm *Hett* warns against. Once their identities are tied to specific compensation figures in a public bankruptcy proceeding, that disclosure "could be used . . . to injure" them "outside the context of the litigation," and no later ruling can undo it. That risk is entirely unnecessary, as the Trustee demonstrated when he offered to accept the same compensation data without identifying the individuals involved in exchange for a tolling agreement. Consistent with *Woodward*'s mandate that disclosure extend no further than necessary, this Court should permit production of the requested compensation information using anonymized employee-number identifiers.

**D. Arizona's Constitutional Right to Privacy Protects Movants' Personal and Financial Information.**

The Arizona Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Ariz. Const. art. II, § 8. The provision protects against governmental intrusion and applies "only against governmental acts and not against acts of a private defendant unless 'state action' exists." *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 276–77, 947 P.2d 846, 850–51 (Ct. App. 1997). That limitation is satisfied here, because the intrusion is accomplished not by the private employer but by the Court's order compelling production: "[a] court order constitutes state action." *Draper v. Gentry*, 255 Ariz. 417, 423, 532 P.3d 1153, 1159 (2023). The constitutional right thus runs against the compelled, court-ordered disclosure. *See Hart*, 190 Ariz .at 276–77, 947 P.2d at 850–51.

Arizona recognizes a protectable privacy interest in personal financial information and requires the court to balance that interest against the requesting party's need before compelling disclosure. In *In re Esther Caplan Tr.*, the court approved an order that "strikes an appropriate balance between [the individual's] interest in maintaining the privacy of her personal financial information and the [requesting parties'] interest" in the data, holding that in camera review "is appropriate for weighing competing interests and determining what disclosures, if any, are appropriate." *In re Esther Caplan Tr.*, 228 Ariz. 182, 187, 265 P.3d 364, 369 (Ct. App. 2011).

John Doe 2 is a citizen of Arizona whose private financial information is protected by his state constitution. The production and origination-based compensation information requested here is the kind of personal financial information protected in *In re Esther Caplan*. The Court should also balance John Doe 2's privacy interests against the Trustee's asserted need. That balance favors John Doe 2. John Doe 2 strongly objects to the disclosure of his private financial information, but Requests Nos. 3 through 6 would compel disclosure of his name and that of 100 or more attorneys and employees, nearly all of whom have no alleged connection to the Sanchez Action. The Trustee confirmed a less intrusive alternative can satisfy his investigation. Consistent with *In re Esther Caplan*'s instruction to tailor disclosure to what the competing interests actually require, this Court should permit production using anonymized employee-number identifiers.

**E. Under Each State's Framework, the Trustee's Need for Disclosure Does Not Outweigh Movants' Privacy Interests.**

Arizona, Florida, and California each require that any intrusion into private financial affairs be no greater than necessary, whether framed as Florida's "least intrusive means" requirement, California's *Hill* balancing test, or Arizona's guarantee against disturbance of private affairs absent lawful authority. The Trustee has already conceded the point when he offered to accept compensation data "without identifying" the individuals involved in exchange for a tolling agreement. Production on a spreadsheet identifying each employee only by an assigned number, rather than by name, fully satisfies that interest while eliminating the privacy intrusion.

Should the Trustee later identify a specific, anomalous entry warranting further inquiry, he may seek to unmask that individual upon a showing of particularized good cause. But no such showing has been made as to the overwhelming majority of QPWB's non-equity employees whose records he now seeks in unredacted form. While Movants have focused this analysis on Arizona, Florida, and California, QPWB's employees reside and work in numerous other states whose privacy laws are likewise implicated by Requests Nos. 3 through 6, underscoring that anonymized production is the most workable solution for the Court rather than engaging in a state-by-state privacy analysis for every affected employee. This approach reflects the same least-intrusive-means principle embedded in all three states' privacy frameworks and gives the Court a practical, readily administrable means of protecting Movants' privacy without impairing any legitimate investigation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons stated herein, Movants respectfully request that the Court enter an order quashing the Nevada Subpoena to prevent the disclosure of Movant's identities or in the alternative for a protective order.

Dated this 27th day of October 2026.

SPENCER FANE LLP

/s/ Richard F. Holley
Richard F. Holley, Esq. (NBN 3077)
R. McKay Holley, Esq. (NBN 15934)
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Phone: (702) 408-3400 | Fax: (702) 408-3401
Email: rholley@spencerfane.com
mholley@spencerfane.com

*Attorneys for John Doe 1, John Doe 2 and Jane Doe*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Spencer Fane LLP and that, on the 27th day of October 2026, I caused to be served a true and correct copy of INTERESTED PARTIES DOES' MOTION TO QUASH OR IN THE ALTERNATIVE MOTION FOR PROTECTIVE ORDER in the following manner:

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date written above.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date written above.

☐ (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

/s/ Olivia Swibies
An employee of Spencer Fane LLP