GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-Mail: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | | Lead Case No.: 25-10341-nmc<br>Chapter 11 |
| NUMALE CORPORATION, | | *Jointly administered with:* |
| AFFECTS THIS DEBTOR, | ☐ | Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc |
| AFFECTS FELICIANO NUMALE NEVADA PLLC, | ☐ | |
| NUMEDICAL SC, | ☐ | NuMedical SC<br>Case No. 25-10343-nmc |
| NUMALE COLORADO SC, | ☐ | NuMale Colorado SC<br>Case No. 25-10344-nmc |
| NUMALE FLORIDA TB PLLC, | ☐ | NuMale Florida TB PLLC<br>Case No. 25-10345-nmc |
| NUMALE NEBRASKA LLC, | ☐ | NuMale Nebraska LLC<br>Case No. 25-10346-nmc |
| NUMALE NEW MEXICO SC, | ☐ | NuMale New Mexico SC<br>Case No. 25-10347-nmc |
| NUMALE ALL DEBTORS, | ☒ | |
| Debtors. | | Hearing Date: October 29, 2026<br>Hearing Time: 11:30 a.m. |

**OPPOSITION TO QUINTAIROS, PRIETO, WOOD & BOYER P.A.'S EMERGENCY MOTION FOR STAY OF ORDER PENDING APPEAL, OR, ALTERNATIVELY, TEMPORARY STAY**



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

Michael Carmel (the "Trustee"),[1] the Liquidation Trustee of the NuMale Liquidation Trust (the "Trust") and the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP ("GTG"), which also represents Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam (collectively, the "Individuals"), hereby submits this Opposition (the "Opposition") to *Quintairos, Prieto, Wood & Boyer, P.A.'s Emergency Motion for Stay of Order Pending Appeal, or Alternatively, Temporary Stay* [ECF No. 1057] (the "Stay Motion").[2]

This Opposition is made and based upon the Memorandum of Points and Authorities herein; the *Supplemental Declaration of Talitha Gray Kozlowski in Support of Quintairos, Prieto, Wood & Boyer, P.A.'s Emergency Motion for Stay of Order Pending Appeal, or Alternatively, Temporary Stay* (the "Supp. Gray Kozlowski Decl."); and the papers and pleadings on file in these Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any further argument and evidence the Court may consider.

---

[1] Pursuant to Local Rule 9014.2, the Trustee states that he does consent to the entry of final orders or judgment by the bankruptcy judge in connection with the Stay Motion.

[2] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Stay Motion.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

A. The Plan Preserved the Claims Against QPWB and Its Attorneys for the Trust. ........ 3

B. The Subpoena Before the Court Is Narrow ........ 4

C. The Sanchez Action Was Tried in New Mexico by Lawyers Outside Florida. ........ 5

D. The Documents Are Primarily Located Outside Florida. ........ 6

E. The Florida Subpoena Has Been Withdrawn and the Florida Motion Dismissed as Moot. 8

F. The Compliance Order and the Trustee's Proposed Protective Order. ........ 8

III. LEGAL ARGUMENT ........ 9

A. QPWB Has Not Shown a Probability of Irreparable Harm. ........ 9

B. QPWB Has No Likelihood of Success, or Even a Substantial Case, on the Merits. ........ 13

C. A Stay Would Substantially Harm the Trust and Its Beneficiaries. ........ 18

D. The Public Interest Favors Compliance. ........ 20

E. The Alternative Request for a Temporary Stay Should Be Denied. ........ 21

IV. CONCLUSION ........ 21




Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

# TABLE OF AUTHORITIES

Cases

*Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1491 (9th Cir. 1989)...................................... 10

*Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ...... 17

*Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1029 (9th Cir. 2025)................................. 9

*Conservation Law Found., Inc. v. Equilon Enters. LLC*, No. 17-396-WES, 2025 WL 2821238, at 1–2 (D.R.I. Oct. 3, 2025) ........................................................................................ 15

*Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ........................................................ 14

*Doe #1 v. Trump,* 957 F.3d 1050 (9th Cir. 2020) ........................................................................ 10

*Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657, 662–63 (E.D. Ky. 2022)............................. 15

*In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) ............................................ 14

*In re Gray*, 447 B.R. 524, 531–33 (E.D. Mich. 2011)................................................................. 14

*In re Kaiser Grp. Int'l*, 400 B.R. 140, 143–45 (D. Del. 2009) ..................................................... 14

*In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023) .............................................................................. 20

*In re Lynch*, 544 B.R. 444, 448–49 (B.A.P. 10th Cir. 2016) ....................................................... 14

*In re Mastro*, 585 B.R. 587, 597 n.12 (B.A.P. 9th Cir. 2018) ..................................................... 17

*In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 622–23, 627–29 (Bankr. D. Del. 2016) 17

*In re N. Plaza, LLC*, 395 B.R. 113, 126 (S.D. Cal. 2008) ........................................................... 13

*In re Republic of Ecuador*, 2012 WL 13187177, at 2 (N.D. Cal. Mar. 30, 2012)........................ 10

*In re Rhodes Companies, LLC*, 475 B.R. 733 (D. Nev. 2012) ..................................................... 17

*In re Roderick Timber Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995) ....................................... 14

*In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).......................................... 18

*In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980) ................................................................... 9

*Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) .......................................................... 10

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109–12 (2009)................................... 11, 14, 20

*Nken v. Holder*, 556 U.S. 418, 433 (2009) .................................................................................... 9

*Polo Bldg. Grp., Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 542 (B.A.P. 9th Cir. 2000).......... 15



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ..................................... 13

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 39 (2020) .......................................... 14

*SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 913–14 (9th Cir. 1999) .......................... 20

*United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ........................ 15

*United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020) ....................................................... 9

*United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988) ........................................................ 10

*York Holding, Ltd. v. Waid*, 345 F.R.D. 626 (D. Nev. 2024) ...................................................... 15

Statutes

28 U.S.C. § 158(a)(3)..................................................................................................................... 13

NRS § 112.150(3) .......................................................................................................................... 18

Rules

Fed. R. Bankr. P. 8007(b) .............................................................................................................. 21

Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A)............................................................................................ 15

Fed. R. Civ. P. 45(d)(3)(B)–(C)..................................................................................................... 11

FED. R. EVID. 201(b) and (c) and 1101(a) and (b) ............................................................................ 2



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Stay Motion is premised on subpoena requests that simply do not exist. According to Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB"), this Court's *Order Granting Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer, P.A. at Its Nevada Office and Denying Countermotion to Quash Subpoena and for Protective Order* [ECF No. 1046] (the "Compliance Order"),[3] entered after extensive briefing and argument, is focused nearly solely on forcing a law firm to expose the "private compensation agreements and pay records" of nearly 100 employees across 35 states. Stay Motion, at 2.

In actuality, the Modified Nevada Subpoena applies to requests related to malpractice claims, for which *no* argument on irreparable harm is made at all, and two *narrower* financial-related requests. To be sure, on October 7, 2026, the Trustee replaced eleven financial requests with two. Those two requests reach only the attorneys *QPWB itself* identified as its "rainmakers" or heads of "business units," and ask for (i) the agreements governing their compensation and (ii) documents *sufficient to identify* their compensation for 2024, 2025, and year-to-date 2026. ECF No. 1015, at 9–10, 17.[4] That *is not* a demand for personnel files, payroll registers, W-2s, or benefits records. It is not even a request for inherently protected information (for which the Trustee has provided a proposed protective order in any event). It is a request for QPWB's own business records (not the individuals), *i.e.*, its contracts and a firm-generated summary of firm-level payouts — information QPWB has readily available as it already offered to provide it in anonymized form. *See* Supp. Gray Kozlowski Decl.¶ 2.

QPWB's real objection is not privacy; it is that QPWB wants to stonewall the Trustee from being able to obtain the documents to determine the scope of the estates' fraudulent transfer and

[3] For ease of reference, the Compliance Order is attached hereto as **Exhibit A.**

[4] For ease of reference, the subpoenaed document requests remaining after the Trustee withdrew and modified requests (i.e., the Modified Nevada Subpoena that this Court's Compliance Order enforced), are identified on **Exhibit B**.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

related claims in order to timely prosecute them. The limitations date on the estates' malpractice claims is as early as November 25, 2026. ECF No. 1016, ¶ 11. The transfers of firm funds while that malpractice liability was known to QPWB (in November 2024) and asserted by the Trustee remain claims that the Trustee intends to assert in connection with the malpractice claims, but the Trustee cannot name transferees he cannot identify. The very limited document requests are appropriate, narrow, and are already protected by the confidentiality provision in paragraph 4 of this Court's Order. ECF No. 1046 ¶ 4. Moreover, the Trustee proposed an even more restrictive protective order that is market norm on October 25, 2026, which is being negotiated, and an expected agreed form of protective order will be submitted shortly. *See* Gray Kozlowski Decl. ¶ 3, Ex. 3.

With this backdrop, QPWB now asks this Court for *extraordinary* relief to find (i) that the Court's decision to enter the Compliance Order and Modified Nevada Subpoena was wrong (it was not), (ii) that producing documents within QPWB's possession under a protective order would somehow harm it (it will not); and (iii) that the Trustee should be *precluded* from analyzing and prosecuting the estates' fraudulent transfer claims before the looming November 25, 2026 limitations deadline because QPWB has manufactured sufficient delay (it should not).

The Stay Motion does not satisfy any of the four equitable factors necessary for the extraordinary relief of a stay pending appeal. *First,* QPWB identifies no irreparable harm—a necessary prerequisite before any other factor is even considered. QPWB did not even supply a new declaration or any evidence whatsoever, instead relying on the prior Boyer Decl. [ECF No. 1028] that the Court found insufficient to preclude enforcement of the Modified Nevada Subpoena.

To be clear, QPWB raises no irreparable harm argument as to the requests related to the malpractice claims at all. As to the two narrow financial information requests, *at most*, the information is confidential business information, not privileged material, and the Court's Compliance Order and the Trustee's proposed stipulated protective order—which limits access to counsel, the Trustee, and retained experts, bars disclosure to creditors, and keeps compensation terms off the public docket—address the concern QPWB raises. Put simply, QPWB has failed to



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

carry its heavy burden to prove irreparable harm. The Court need go no further; the Stay Motion fails on this basis alone.

*Second*, QPWB does not have a case likely to succeed, or even a substantial case, on appeal. *In fact, QPWB does not even have an appeal.* QPWB must first obtain leave of the federal District Court to appeal the interlocutory discovery Compliance Order—relief reserved for exceptional cases not present here—and then, in the unlikely chance interlocutory relief is granted on a discovery motion, overcome an abuse-of-discretion standard. QPWB has failed to carry its burden.

*Third*, a stay would substantially prejudice the Trust, whose principal asset is the Quintairos Claims. It is undisputed that the estates' Quintairos Claims were expressly preserved for the benefit of the creditors (now Trust beneficiaries) in the confirmed Plan. Consistent with the very purpose of Rule 2004, the Compliance Order permits the Trustee's investigation of these claims. QPWB admits that it does not want to disclose the requested information because it may cause additional claims to be brought by the Trustee. That is exactly the point. Rule 2004 is the mechanism by which estate claims are investigated so they can be prosecuted. Precluding their investigation and thereby their prosecution violates the Bankruptcy Code and causes direct harm to the Trust and its beneficiaries, which are the Debtors' creditors. *Fourth*, the public interest favors efficient administration of preserved estate claims and compliance with this Court's orders.

The Court should deny the Stay Motion. If the Court is inclined to grant any relief, it should condition a stay on an appropriate bond, which must be no less than five percent (5%) of the over $400 million in asserted damages.

## II. STATEMENT OF FACTS

### A. The Plan Preserved the Claims Against QPWB and Its Attorneys for the Trust.

1. The confirmed Plan preserves for the Trust "[a]ll of the Debtors and the Estates' Causes of Action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates," and vests the Trust with the estates' right to conduct examinations under Bankruptcy Rule 2004. Plan §§ 1.1.114, 5.8; Compliance Order, ¶ A. Those claims are the Trust's principal asset. ECF No. 1015, at 2.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

2. The Trust's investigation covers two distinct subjects: (i) malpractice-related claims arising from QPWB's defense of the Debtors and the Individuals in the Sanchez Action, and (ii) potential fraudulent transfer and improper distribution claims arising from payments QPWB made after it was on notice of those claims. ECF No. 1015, ¶ 26.

**B. <u>The Subpoena Before the Court Is Narrow.</u>**

3. The Nevada Subpoena originally contained eleven testimony topics and thirty-four document requests. ECF No. 994. During four meet-and-confer sessions, QPWB described a group of approximately 80 to 100 attorneys it calls "rainmakers" or heads of "business units." ECF No. 1015, ¶ 19. QPWB offered to describe that group's compensation in general terms, but without identifying the attorneys or the amounts. *Id.*

4. On October 7, 2026, the Trustee narrowed the subpoena in writing. ECF No. 1016, Ex. K. He replaced eleven financial requests (Nos. 3, 7–14, 16, and 17) with two requests and withdrew six more (Nos. 21–23 and 26–28). ECF No. 1015, ¶ 21; *see also* Ex. B. The difference is summarized in the following chart:

| **Original requests (withdrawn or replaced)[5]** | **Modified Nevada Subpoena** |
|---|---|
| Payroll registers and general-ledger exports of every transfer to every partner-titled lawyer (No. 10) | Documents *sufficient to identify* aggregate compensation for 2024, 2025, and YTD for QPWB's self-identified "rainmakers" and heads of "business units" |
| Forms W-2, 1099, and K-1 for each covered lawyer (No. 12) | Not requested |
| Perquisites, personal expenses, and payments to family members (No. 13) | Not requested |
| All agreements for every partner-titled lawyer and all firm compensation plans (Nos. 7–9) | The agreements governing compensation of QPWB's self-identified "rainmakers" and heads of "business units" |
| Tax returns, board minutes, loan agreements, bank balances (Nos. 3, 11, 14, 16, 17) | Not requested |

[5] The remaining requests (Nos. 1, 2, 4–6, 15, 18–20, 24, 25, and 29–34) and the testimony topics principally concern the Debtors' own representation in the Sanchez Action—engagement letters, conflict waivers, settlement evaluations, and insurance tenders—as to which the Trustee holds the privilege. *See* Ex. A. QPWB's Stay Motion asserts no harm specific to any of them, and to the extent the Stay Motion seeks to stay production for those requests, it must be denied.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

5. To remove any burden from identification, the Trustee offered to accept QPWB's anonymized description if the unidentified recipients would execute tolling agreement. QPWB refused on their behalf. ECF No. 1015, ¶ 20.

**C. The Sanchez Action Was Tried in New Mexico by Lawyers Outside Florida.**

6. The Sanchez Action was litigated and tried in the Second Judicial District Court, Bernalillo County, New Mexico. ECF No. 994-1, Ex. A ¶ 17. Of the QPWB attorneys who worked on that matter, only Eric Boyer is based in Florida. The attorneys who tried the case are based outside Florida:

| Attorney | Role in Sanchez Action | Office(s) | Bar admission |
|---|---|---|---|
| Eric Boyer[6] | Intake attorney; provided supervision; reviewed decisions | Miami, Florida | Florida |
| Frank Alvarez[7] | Lead Litigation Counsel | Dallas, Texas<br>Albuquerque, New Mexico | New Mexico, Texas |
| John Andrew Robertson[8] | Lead Trial Counsel | Dallas, Texas<br>Atlanta, Georgia | Georgia, Texas |
| Dominique Barrett[9] | Trial Counsel | Scottsdale, Arizona | Arizona, California, New Mexico |
| Erin Chavez[10] | Associate, Trial Counsel | Albuquerque, New Mexico | New Mexico |
| John "Jack" Oliver III | Litigation Counsel | Dallas, Texas | Texas |

7. Mr. Boyer's representation that "[a]ny potential designees that could testify to the topics" in the subpoena "are located in Florida," Boyer Decl. ¶ 13, is simply false as reflected above. Virtually none of the attorneys involved in the Sanchez Action reside in Florida.

[6] https://qpwblaw.com/attorney/eboyerqpwblaw-com/

[7] https://qpwblaw.com/attorney/frank-alvarezqpwblaw-com/?_post_id=21894

[8] https://qpwblaw.com/attorney/andrew-robertsonqpwblaw-com/?_post_id=22354

[9] https://qpwblaw.com/attorney/dominique-barrettqpwblaw-com/

[10] Ms. Chavez no longer works at QPWB; however, an archive from November 2023 reveals her office and bar admission: https://web.archive.org/web/20231102221634/https://qpwblaw.com/attorney/erin-l-chavez/



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

8. Moreover, QPWB maintains an operating office in Henderson, Nevada, staffed by a managing partner, two partners, and two associates, which it holds out to the public as one of its offices. ECF No. 1015, ¶ 16; Compliance Order, ¶ D. And importantly, the majority of QPWB's clients in the Sanchez Action (including several of the Debtors) are also in Nevada, where QPWB undeniably does business.

9. QPWB has further selected multiple counsel located in Nevada, including Snell & Wilmer and Sgro & Roger. ECF No. 1007; ECF No. 1015, ¶ 22.

10. In fact, beyond these discovery disputes, on October 7 and 8, 2026, QPWB invoked the jurisdiction of this Court seeking a myriad of relief including (i) an order that this Court's confirmation order, findings of fact and conclusions of law, the confirmed plan, and the order approving the global settlement "shall not bind, be preclusive against, or otherwise prejudice QPWB"; (ii) removal of the Trustee; (iii) disqualification of GTG from representing the Trustee or any successor trustee of the Trust in any matter involving QPWB; (iv) a reservation of the right to seek disgorgement of GTG's fees approved by this Court's order entered on December 10, 2025 [ECF No. 866]; (v) leave under the *Barton* doctrine to assert claims, defenses, counterclaims, setoffs, and recoupment against the Trustee and GTG, individually and in their official capacities; and (vi) an order precluding the Trustee from commencing an action against QPWB, Boyer, and Edward Prieto. *See* ECF Nos. 1007 and 1010.[11] The motions are supported by declarations of Mr. Boyer. The impropriety of these motions aside, they demonstrate that QPWB is actively able to appear and litigate in Nevada.

**D. <u>The Documents Are Primarily Located Outside Florida.</u>**

11. Mr. Boyer attests, "Any potential designees that could testify to the topics in the . . . Nevada Subpoena are located in Florida" and "QPWB's custodian of records that could collect and provide responsive documents is located in Florida." Boyer Decl. ¶ 13. This is again false. Not all responsive documents are in Florida or must be produced from Florida.

---

[11] On October 26, 2026, the Trustee issued a Rule 9011 letter to Sgro & Roger and QPWB for its frivolous filings made for an improper purpose. *See* Gray Kozlowski Decl. ¶ 8.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

12. The documents responsive to the requests related to the malpractice claims are located outside of Florida, either with QPWB's counsel in Nevada or with the attorneys that litigated the Sanchez Action, in New Mexico, Arizona, or Texas. This is corroborated by that fact that in response to the Trustee's repeated requests for QPWB to turn over the entire client file, Mr. Alvarez (associated with the following QPWB offices according to its website: Dallas, Texas, Albuquerque, New Mexico) sent a series of emails, including on February 5, 2026 and February 19, 2026, producing documents related to the Sanchez Action to the Trustee. In each email, Mr. Alvarez's signature block indicates his office is in Dallas, Texas — not Florida. Supp. Gray Kozlowski Decl. ¶ 4; Exs. 1 and 3.

13. Further, during a meet and confer call discussing the Compliance Order, QPWB's Nevada counsel indicated that it had the complete NuMale client file from the Sanchez Action—necessarily including documents responsive to the Nevada Subpoena. Thus, these documents are in Nevada counsel's possession. Supp. Gray Kozlowski Decl. ¶ 5.

14. Moreover, while Ms. Chavez was working at the Albuquerque, New Mexico QPWB office, she was apparently able to access and modify the file, as she (inexplicably) billed 6.9 hours for *removing* documents before the NuMale client file was provided to the clients, as detailed below in the QPWB billing records:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 03/21/25 | EC9 | Examine and analyze emails between counsel and clients on Litify to remove internal communications for production of client file to clients. | L320 | A104 | 2.70 | 190.00 | 513.00 |
| 03/21/25 | EC9 | Examine and analyze emails to and from others on Litify to remove internal communications for production of client file to clients. | L320 | A104 | 2.90 | 190.00 | 551.00 |
| 03/21/25 | EC9 | Examine and analyze emails to and from opposing counsel on Litify to remove internal communications for production of client file to clients. | L320 | A104 | 1.30 | 190.00 | 247.00 |

Supp. Gray Kozlowski Decl. ¶ 6.

. . .



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

**E. <u>The Florida Subpoena Has Been Withdrawn and the Florida Motion Dismissed as Moot.</u>**

15. QPWB's Florida Motion was directed only to the subpoena commanding compliance in Miami, not to the Nevada Subpoena. ECF No. 1015 ¶ 17. After this Court entered the Compliance Order, the Florida subpoena were withdrawn, as QPWB itself reported to the Florida court on October 21, 2026. Stay Motion, ¶ 16. Accordingly, the Florida motion was dismissed as moot. Thus, no motion concerning the Trustee's Modified Nevada Subpoena or any other subpoena to QPWB is pending in any other court.

**F. <u>The Compliance Order and the Trustee's Proposed Protective Order.</u>**

16. On October 19, 2026, in the Compliance Order, the Court granted the Motion to Enforce and denied QPWB's countermotion. The Court found that QPWB "has not shown specific prejudice or harm warranting a protective order," and that its confidentiality concerns were addressed by paragraph 4 of the Order. Compliance Order, ¶ H. Paragraph 4 permits QPWB to designate documents as confidential and requires sealing of any public use. *Id.* ¶ 4.

17. On October 25, 2026, the Trustee provided QPWB a proposed stipulated protective order. ECF No. 1070, Gray Kozlowski Decl. ¶ 3, Ex. 2. The proposed order (the "<u>Proposed Protective Order</u>") answers each concern QPWB now raises. It (i) lets QPWB designate material "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL/ATTORNEY'S EYES ONLY," and requires attorney's-eyes-only treatment of everything produced until the order is entered and for seven days after each production (¶¶ 1, 5, 29); (ii) limits use to the Examination, administration of the Trust, and the Trust Claims (¶ 8); (iii) bars disclosure to any creditor or Trust beneficiary, including Michael Sanchez and the Individuals, and bars the Trustee's counsel from using the information on the Individuals behalf (¶¶ 8, 28); (iv) requires sealing under LR 9018, and substantially equivalent protection in any other court (¶¶ 15, 25); (v) permits public pleading only of a defendant's name, state of residence, the fact and period of payments, and a general description of the claim, with compensation terms and itemized payment records stated only in general terms or filed under seal (Def. G; ¶ 31); (vi) allows any attorney whose compensation is produced to



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

apply to this Court for additional protection (¶ 30); and (vii) requires return or destruction of the material at the conclusion of the Trust Claims (¶ 22). *Id.* The Trustee and QPWB are currently negotiating the terms of that protective order and the Trustee expects that an agreed form of Protective Order will be reached.

## III. LEGAL ARGUMENT

A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). It is "an 'intrusion into the ordinary processes of administration and judicial review,'" *id.* at 427, and an "extraordinary remedy," *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020). The decision to grant or deny a stay is "an exercise of judicial discretion," and the party requesting it "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

When evaluating the extraordinary relief of a stay pending appeal (which should be heightened in the event of an interlocutory appeal), courts consider (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether it will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Nken*, 556 U.S. at 434; *see also In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980). The first two factors "are the most critical." *Nken*, 556 U.S. at 434.

QPWB leans heavily on the Ninth Circuit's sliding scale. Stay Motion, at 8. But that scale does not excuse a deficient showing of harm. A movant must show that irreparable harm is *probable*, not merely possible; "simply showing some possibility of irreparable injury" is not enough. *Nken*, 556 U.S. at 434–35 (internal quotation marks omitted).

### A. QPWB Has Not Shown a Probability of Irreparable Harm.

If the movant fails to make a threshold harm showing, "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1029 (9th Cir. 2025) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)).

The Ninth Circuit has made clear that a stay applicant cannot carry its burden by submitting



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

conclusory factual assertions and speculative arguments that are unsupported in the record. *Doe #1 v. Trump,* 957 F.3d 1050 (9th Cir. 2020). In *Doe #1 v. Trump*, the Ninth Circuit rejected the government's irreparable harm showing where it rested on a proclamation's conclusory findings that lacked any citation or evidentiary support in the record, holding that the government cannot meet its burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record. *Doe # 1*, 957 F.3d at 1059-60.

In *Am. Fed'n of Gov't Emps. v. Trump*, the Ninth Circuit found the government's claims of irreparable injury to be nothing more than conclusory and speculative where the government had failed to submit even a single piece of evidence in support of its allegations despite having had over a month to do so. *Am. Fed'n of Gov't Emps.*, 139 F.4th at 1029.

The threshold harm showing is dispositive here. *Leiva-Perez*, 640 F.3d at 965. Foremost, there is absolutely no new evidence submitted in support of the Stay Motion. QPWB relies on the same Boyer Declaration the Court previously considered when considering the Trustee's Motion to Enforce and in entering the Compliance Order. In addition to failing to meet its burden by resting on nothing more than the speculative and conclusory Boyer Declaration,[12] QPWB's showing fails for five reasons.

**1. Even if confidential, business information is not privileged material.**

Every authority QPWB cites concerns compelled disclosure of *privileged* material. Stay Motion, at 12 (citing *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1491 (9th Cir. 1989); *United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988); *In re Republic of Ecuador*, 2012 WL 13187177, at *2 (N.D. Cal. Mar. 30, 2012)).* QPWB does not claim the compensation agreements or aggregate figures are privileged. FRCP 45 treats confidential commercial information differently: the remedy is protective conditions, not refusal to produce. Fed. R. Civ. P.

[12] Separate from the Stay Motion, certain "Doe Partners" filed *Interested Parties Does' Motion to Quash or in the Alternative Motion for Protective Order* [ECF No. 1080]. Their declaration identifies no harm, only that they "strongly object," without any indication of the harm that would occur if the Trustee exercised his statutory duty. They do not support or suggest that they are seeking employment elsewhere, which "could result in substantial attrition," the purported harm that Boyer asserts.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

45(d)(3)(B)–(C). Even for privileged material, the Supreme Court has held that protective orders adequately protect a litigant's interests. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109–12 (2009). And this Court provided such protective relief in paragraph 4 of the Compliance Order, which is being further strengthened by the Proposed Protective Order, the most recent version of which is attached to the Gray Kozlowski Decl. as Exhibit 3.

**2. The Court has already found no specific prejudice, and the protective order addresses the concern.**

The Court found QPWB "has not shown specific prejudice or harm warranting a protective order" and that its confidentiality concerns are addressed by paragraphs 3 and 4 of the Compliance Order. Compliance Order, ¶ H. The Stay Motion offers *no new evidence*. It rests on the *sam*e deficient Boyer Declaration QPWB filed in opposition to the Motion to Enforce, which the Court considered before making that finding. The Trustee has since gone further. The Proposed Protective Order limits the most sensitive material to counsel, the Trustee, and retained experts; prohibits any use other than the administration of the Trust and its claims; bars disclosure to Mr. Sanchez and every other creditor; and keeps compensation terms off the public docket.

QPWB's complaint that the injury is "disclosure to the Trustee itself and his use of it," Stay Motion, at 13, is not a cognizable injury. The Trustee is the estate representative entitled to the examination, and the only use the Proposed Protective Order permits is the evaluation and prosecution of preserved estate claims. To the extent QPWB objects to the Trustee *using* the information to evaluate estate claims, that objection is to Rule 2004 itself. Use of discovery for its intended purpose is not cognizable harm.

QPWB's own conduct also belies its claim. It has already given the Trustee "hundreds of pages of company structure and financial documents" under a nondisclosure agreement that precludes its use, and walked the Trustee's counsel through "its relevant financial processes and protocols" in a lengthy interview. Boyer Decl. ¶¶ 20–21. QPWB identifies no harm from those disclosures as there has been none. Producing the finite agreements and aggregate compensation under the Proposed Protective Order resolves any alleged harm or prejudice. And being forced to



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

produce business records that disclose fraudulent transfer claims under a protective order is simply not harm or prejudice.

**3. The asserted employee harms are unsupported and overstated.**

The "35 states" figure is the number of states in which QPWB has offices, not a showing of where the affected attorneys live or which laws apply. Stay Motion, at 12–13 (citing Boyer Decl. ¶¶ 30–33). The Boyer Declaration says only that disclosure "could run afoul of one or more of" those states' laws. Boyer Decl. ¶ 31. It names no statute, no state, and no attorney whose residence would trigger any such law, and QPWB identifies no law that bars production of compensation information under a federal court order.

The asserted resignation threat is weaker still. Mr. Boyer does not attest that production would cause anyone to leave. He says that asking the attorneys to toll "risks prompting those attorneys to seek employment elsewhere," which "could result in substantial attrition." *Id.* ¶ 32. That speculation concerns a tolling request, not production under a protective order, and it is precisely the "possibility" of harm that *Nken* holds insufficient. 556 U.S. at 434–35. The Plan has publicly preserved claims against QPWB's "attorneys, employees, Insiders, and Affiliates" since October 2025. Plan § 1.1.114. A stay changes none of that. And if any individual attorney believes his or her compensation warrants greater protection, the Proposed Protective Order grants it without delaying production (or they could always toll, but elected not to).

Furthermore, QPWB's declaration asserting that compliance with the subpoena could cause offices to close or attorneys to quit is precisely the kind of conclusory, speculative assertion that courts have rejected. There is no financial data, no evidence of client relationships at risk, no documentation of attorney retention concerns, and no corroboration of any kind. Even the "Doe Partners" who have appeared failed to make such an assertion. *See* ECF Nos. 1080, 1081. The Boyer Declaration amounts to a bare assertion of catastrophic consequences without any evidentiary foundation. In *In re N. Plaza, LLC*, which arose in the bankruptcy subpoena context, addressed a similar argument — that disclosure of information would be irreversible and therefore irreparable — and held that the mere possibility that the cat might jump out of the bag does not



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

operate to automatically warrant a stay, particularly where the movant has not shown a likelihood of success on the merits. *In re N. Plaza, LLC*, 395 B.R. 113, 126 (S.D. Cal. 2008). There, the court specifically rejected the argument that the irreversibility of disclosure is sufficient to warrant a stay, noting that if this were the law, every appellant could make a meritless privilege claim to obtain a free pass to a stay. *Id.*

**4. Being identified as a potential defendant is not irreparable harm.**

QPWB's central concern is that the information will be used "for the express purpose of identifying those employees as defendants." Stay Motion, at 13. The prospect of being sued is not an injury a stay protects against. "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Moreover, this argument underscores the harm to the Trustee if discovery is not permitted. These very claims, the largest assets of the Trust created under the Plan, and they are assets that will be used to fund creditor recoveries. If disclosure of the records will support that the Trust has claims, then they *must* be turned over (not withheld). This is the very purpose of Rule 2004 – to allow investigation of claims so they can be pursued for the benefit of creditors.

**5. QPWB could have avoided any harm.**

The Trustee offered to forgo the identities entirely if the unnamed recipients would agree to toll. QPWB declined for them. ECF No. 1015 ¶ 20. A movant cannot manufacture irreparable harm by refusing an offer that would have eliminated it.

Finally, QPWB's argument that compliance will "moot" its appeal proves too much. As made clear in *In re N. Plaza, LLC*, 395 B.R. at 126, every discovery order is complied with before any appeal is decided. If that sufficed for harm, every discovery order would be stayed as of course.

**B. <u>QPWB Has No Likelihood of Success, or Even a Substantial Case, on the Merits.</u>**

**1. QPWB is unlikely to obtain leave to appeal an interlocutory discovery order.**

The Compliance Order is an interlocutory discovery order. QPWB concedes as much by moving for leave under 28 U.S.C. § 158(a)(3), and failing to meet its burden to show how the



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

Compliance Order should be treated differently than any other discovery order.[13] Stay Motion, ¶ 17. Where the order on appeal is interlocutory, the merits inquiry must also account for the threshold question of whether leave to appeal will be granted at all. 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004.

In this Circuit, courts deciding whether to grant leave look to the standard of 28 U.S.C. § 1292(b): whether the order involves a controlling question of law, as to which there is substantial ground for difference of opinion, and whether an immediate appeal may materially advance the ultimate termination of the litigation. *In re Roderick Timber Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995). Interlocutory review is reserved for exceptional situations. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

None of those elements is met. *First*, the Compliance Order turns on fact-bound applications of settled rules — whether QPWB regularly transacts business in person in Henderson, whether the narrowed requests bear on preserved estate claims, and whether QPWB showed specific harm. Those are not controlling questions of law. *Second*, a party's disagreement with the result, or its argument that one line of cases rather than another should control, does not establish a substantial ground for difference of opinion. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). *Third*, an appeal would not advance the termination of anything. There is no pending litigation to terminate; the appeal would only delay the investigation that precedes it.

Even if leave were granted, QPWB would face a deferential standard. Rule 2004 examinations and the enforcement of subpoenas are committed to the bankruptcy court's

---

[13] In its *Amended Emergency Motion for Leave to Appeal*, QPWB cites only to *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 39 (2020), in support of its position that the Compliance Order is not interlocutory. ECF No. 1059, at 6:27-28. However, *Ritzen* held only that the adjudication of a motion for relief from the automatic stay is not interlocutory because that the Code and Rules treat as its own proceeding. *Id.* at 43–44. The Supreme Court, however, made clear that the concept "cannot stretch to cover" every contested ruling, giving as an example "an order resolving a disputed request for an extension of time." *Id.* at 44. Nor is the Compliance Order a collateral order from which an appeal can be taken. The class of collaterally appealable orders "must remain 'narrow and selective in its membership,'" and courts apply the doctrine to "the entire category to which a claim belongs," not to the particular case. *Mohawk*, 558 U.S. at 107, 113 (citation omitted). Discovery orders, as a category, are interlocutory. *See In re Gray*, 447 B.R. 524, 531–33 (E.D. Mich. 2011); *In re Kaiser Grp. Int'l*, 400 B.R. 140, 143–45 (D. Del. 2009); *In re Lynch*, 544 B.R. 444, 448–49 (B.A.P. 10th Cir. 2016).



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

discretion. *See Polo Bldg. Grp., Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 542 (B.A.P. 9th Cir. 2000) (decisions on whether to enforce or quash subpoenas, and related sanctions, are reviewed for abuse of discretion) (citing *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982)). This Court's Compliance Order, under any standard of review, was correct.

**2. The place-of-compliance ruling follows the unambiguous text of FRCP 45(c).**

FRCP 45(c) permits a subpoena to command production and attendance "within 100 miles of where the person resides, is employed, *or regularly transacts business in person*." Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A) (emphasis added). The rule says nothing about headquarters. QPWB maintains a staffed operating office in Henderson and holds it out to the public as one of its offices. Compliance Order, ¶ D. This Court correctly concluded that the rule "does not limit the place of compliance for an entity to the location of its headquarters." *Id.*; *accord Conservation Law Found., Inc. v. Equilon Enters. LLC*, No. 17-396-WES, 2025 WL 2821238, at 1–2 (D.R.I. Oct. 3, 2025) (regional office is a place where entity regularly transacts business in person; headquarters-only reading ignores the rule's plain language); *Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657, 662–63 (E.D. Ky. 2022).

QPWB's authorities do not show otherwise. In *York Holding, Ltd. v. Waid*, 345 F.R.D. 626 (D. Nev. 2024), the subpoenaed nonparty had no presence, transacted no business, and had no representative in Nevada. *Id.* at 630. The subpoenaing party simply wrote "Nevada" on the face of the subpoena. That is the conduct *York Holding* held would "eviscerate" FRCP 45. Here, QPWB has an office, lawyers, and a managing partner in this District. The remaining cases QPWB cites, at most, apply FRCP 45 to different facts.[14] Furthermore, this Court has already heard, and rejected, QPWB's arguments on this point.

The equities underlying QPWB's argument also fail. FRCP 45's geographic limits protect a nonparty from undue burden. QPWB's premise is that Miami is the natural place of compliance

[14] The Trustee's *Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer, P.A. at Its Nevada Office* [ECF No. 1015], incorporated herein by this reference, addressed these authorities at length.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

because its custodian, its records, and "every potential designee" are there. Stay Motion, at 3, 9. That premise is wrong:

- The documents. Nothing suggests the responsive records are paper files kept in a Miami filing cabinet. Compensation agreements and payout figures for a 660-lawyer firm operating in 35 states are, in all likelihood, maintained electronically — on a firm server or in a cloud-based payroll, accounting, or document-management system — and accessible from any QPWB office, including Henderson. QPWB offers no evidence to the contrary; Mr. Boyer says only that QPWB's "custodian of records" is in Florida. Boyer Decl. ¶ 13. Where a custodian sits says nothing about where electronic records can be retrieved. The subpoena also permits electronic production. Compliance Order, ¶ D. The location of a server has no bearing on burden.

- The witness. QPWB chooses and prepares its own Rule 30(b)(6) designee. The parties with the most information on the malpractice claims are not located in Florida, and nothing prevents QPWB from preparing its Henderson managing partner or any other attorney on any of the topics. QPWB's lawyers travel when it suits the firm: one flew from Philadelphia to Newport Beach for the parties' first settlement meeting. Boyer Decl. ¶ 19.

- The Sanchez Action. The case was tried in New Mexico. By Mr. Boyer's own account, the trial and pretrial discovery were handled by Dominique Barrett and Andrew Robertson, not by him. Boyer Decl. ¶ 17. They are based in Arizona, Texas, and Georgia; of the QPWB lawyers involved, only Mr. Boyer is in Florida. Mr. Alverez, who previously provided documents to the Trustee is in New Mexico and Texas. Las Vegas is no less convenient for those witnesses than Miami.

- QPWB's own conduct. QPWB, a 660-lawyer firm with offices in 35 states, has appeared here through Las Vegas counsel and asked this Court for affirmative relief. *See* ECF Nos. 1007 and 1010.

The forum-shopping charge is likewise misplaced. The Trustee re-served the subpoena at QPWB's Nevada office to meet QPWB's own objection to compliance in Florida, and — contrary to the allegations made by OPWB — did so before QPWB filed its Florida Motion. ECF No. 1015,



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

at 14. This Court properly entered the Compliance Order; enforcing it here is not forum shopping.

**3. The Florida-deference argument is moot.**

QPWB argues that this Court should have deferred to the Florida Bankruptcy Court, citing cases holding that a court other than the compliance court lacks jurisdiction over a motion to quash. Stay Motion, at 10 (citing *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014)). Those cases cut the other way. This Court is the court for the district where compliance with the Nevada Subpoena is required. Compliance Order, ¶ E. It is also the issuing court. FRCP 45(f)'s transfer mechanism runs from the compliance court to the issuing court; here, they are the same court, and there is nothing to transfer.

In any event, the Florida Motion concerned a different subpoena, which commanded compliance in Miami. ECF No. 1015, ¶ 17. That subpoena has been withdrawn, as QPWB acknowledges. Stay Motion, ¶ 16. No competing motion is pending anywhere. A question that no longer exists cannot supply a substantial case for appellate relief.

**4. The narrowed requests fall squarely within Rule 2004 and the Compliance Order.**

Rule 2004 permits examination relating to "the debtor's acts, conduct, or property." Fed. R. Bankr. P. 2004(b). The Debtors' causes of action against QPWB and "its attorneys, employees, Insiders, and Affiliates" are estate property preserved for the Trust. Plan § 1.1.114; Compliance Order, ¶ F. Post-confirmation Rule 2004 examinations to investigate preserved causes of action are well established. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 622–23, 627–29 (Bankr. D. Del. 2016); *see also In re Rhodes Companies, LLC*, 475 B.R. 733 (D. Nev. 2012).

QPWB argues that discovery into its own payouts is a "wholesale investigation of a non-debtor's private business affairs." Stay Motion, at 10 (quoting *In re Mastro*, 585 B.R. 587, 597 n.12 (B.A.P. 9th Cir. 2018)). It is the opposite. The requests are limited to two categories of documents, for a population QPWB itself defined, over three identified periods. They bear directly on whether QPWB transferred value to insiders or business-unit leaders while it carried the Sanchez exposure — and, if so, to whom. That is the core of a preserved estate claim.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

QPWB's suggestion that the transfer claims belong to the estate "only derivatively through a hoped-for future judgment," Stay Motion, at 11, misstates the law. Under the Uniform Fraudulent Transfer Act or Uniform Voidable Transactions Act,[15] a "claim" is a right to payment whether or not reduced to judgment, and whether liquidated, unliquidated, contingent, or disputed. *See, e.g.,* NRS § 112.150(3). The estates are creditors of QPWB now. QPWB itself concedes it "does not rely merely on the absence of a judgment against it." Stay Motion, at 11. Nor is *Rhodes* inapplicable merely because its subpoenas went to transferees rather than to the transferor. If anything, the transferor's own records are the more direct and less intrusive source.

**5. The pending-proceeding rule does not apply.**

No adversary proceeding or contested matter concerning the subject of the discovery is pending between the Trust and QPWB. Compliance Order, ¶ I. The only contested matter is QPWB's own Rule 60(b) Motion, which seeks unrelated relief. ECF No. 1007. The rule therefore has nothing to protect. *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).

QPWB's cases do not help it. Here, the narrowed requests are directed to the transferee inquiry — a separate set of potential claims against people the Trustee cannot yet identify. ECF No. 1015, at 15–16. QPWB's position is also internally inconsistent. It argues the Trustee should simply sue now, Stay Motion, at 13, yet its Rule 60(b) Motion asks this Court to "direct that the Liquidation Trustee not commence litigation." ECF No. 1007 at 20. And its counsel told the Trustee in September that it was "unclear exactly what QPWB did that would give rise to any malpractice claim" — then, nine days later, that the Trustee already had everything he needed. ECF No. 1015, ¶¶ 12, 14. QPWB cannot have it both ways.

**C. <u>A Stay Would Substantially Harm the Trust and Its Beneficiaries.</u>**

QPWB claims the Trustee "loses nothing" from a stay. Stay Motion, at 3. The opposite is true. The claims against QPWB and its attorneys are the Trust's principal asset and its reason for existing. ECF No. 1015, at 2. A stay pending an interlocutory appeal — one that has not yet been

[15] Florida and Nevada have adopted the Uniform Fraudulent Transfer Act, while New Mexico has adopted the Uniform Voidable Transactions Act.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

accepted, much less briefed — would freeze the Trust's investigation for months.

*First*, the limitations clock is running. The most conservative date on which the limitations period on the estates' malpractice claims could run is November 25, 2026. ECF No. 1016, ¶ 11.[16] The Trustee needs the information to decide which claims to assert and against whom before that date. A transfer claim must be asserted against a named transferee, and the Trustee cannot name a transferee he cannot identify. ECF No. 1015, at 19. Claims pleaded on "information and belief" against unidentified defendants would invite immediate motions to dismiss. *Id.* at 18.

*Second*, QPWB's assurance that the Trustee has "plenty of time" on transfer claims, Stay Motion, at 14, is beside the point. The question is not only when the last limitations period expires; it is whether the Trust can bring its claims in one coordinated action, on a developed record, before the assets at issue are further dissipated. The Modified Nevada Subpoena reaches compensation through year-to-date 2026, and transfers to the same attorneys continue. QPWB itself predicts "attrition" among the very attorneys whose compensation is at issue. Stay Motion, at 13. Departures of potential transferees make later identification and recovery harder, not easier.

*Third*, QPWB's suggestion that the Trustee simply file suit now and take discovery later, Stay Motion, at 13–14, would force the Trust to choose between suing blind and losing claims. That is the precise prejudice Rule 2004 exists to prevent. It also cannot be squared with QPWB's own request that this Court bar the Trustee from commencing litigation at all. ECF No. 1007, at 20.

*Fourth*, the delay QPWB seeks is not an isolated event. It took three written demands over more than four months for the Trustee to obtain the Debtors' own client file. ECF No. 1015, ¶¶ 4–7. QPWB has now served objections to every request, filed motions in two courts, and produced nothing in response to either subpoena. *Id.* ¶¶ 13, 24. A stay would reward that pattern.

That no plan distribution "depends on compliance," Stay Motion, at 14, is irrelevant. The Trust's recoveries for creditors depend on these claims, and these claims depend on this discovery.

---

[16] The Trustee does not concede that November 25, 2026 is the operative limitations date for any claim, and reserves all rights on that issue. *See* ECF No. 1070, at 2 n.4.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

**D. <u>The Public Interest Favors Compliance.</u>**

The public interest lies in the prompt, efficient administration of bankruptcy estates and in the enforcement of court orders. The Sanchez claim alone was allowed at $410 million, Stay Motion, ¶ 3, and the claims preserved for the Trust are a principal source of creditor recovery. ECF No. 1015 ¶ 3. Delaying a Court-authorized investigation, on the eve of potential limitations deadlines, serves none of the public's interests.

QPWB's invocation of the right to appellate review does not change the calculus. QPWB retains that right whether or not a stay issues; the question is whether this interlocutory discovery order warrants the extraordinary step of suspending it. Nor does the public interest favor permitting a nonparty to convert a rule designed to protect nonparties from undue burden into a tool for avoiding compliance in a court where it maintains an office and has itself sought relief. Finally, the privacy interests QPWB invokes are fully protected by the Compliance Order and the Proposed Protective Order.

QPWB's reliance on *In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023), for a public interest in "preserving the integrity of the statutory right to appellate review," Stay Motion, at 14, is misplaced. *Kirkland* did not address the public interest or the stay factors at all. It was a mandamus proceeding. The language QPWB quotes, that third parties "could not be expected" to seek review through contempt, went only to whether the petitioners had adequate alternative means of relief under the first *Bauman* factor. *Id.* at 1048 (*citing SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 913–14 (9th Cir. 1999)). Nothing in *Kirkland* suggests that a discovery order must be suspended while a nonparty pursues interlocutory review. Nor does compliance render review "meaningless." Every discovery order is complied with before review is complete, and protective orders and later remedies adequately protect the producing party. *Mohawk Indus., Inc.* 558 U.S. at 109–12.

Here, production would be made under a protective order that restricts access and use and requires return or destruction of the material. That is unlike the compelled public live trial testimony in *Kirkland,* which could not be undone. *Kirkland* also undercuts QPWB's appeal to the



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

"uniform application" of FRCP 45. The Ninth Circuit applied FRCP 45(c) according to its text, to individuals who had moved to the U.S. Virgin Islands and who, it was undisputed, did not reside, work, or regularly transact business within 100 miles of the court. That same text permits compliance where a person "regularly transacts business in person," Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A), and QPWB does so at its Henderson office. QPWB is a 660-lawyer firm with an office in this District that has asked this Court for affirmative relief, ECF No. 1007. It is not the distant, unwilling witness FRCP 45's geographic limits were designed to protect.

**E. The Alternative Request for a Temporary Stay Should Be Denied.**

QPWB alternatively asks the Court to suspend the October 30 and November 4 deadlines so it can seek a stay from the District Court. Stay Motion, at 15. The same factors govern that request, and it fails for the same reasons. Any urgency is also of QPWB's own making. First, these requests have been at issue for months. QPWB strung the Trustee along indicating that it would provide information, only to refuse full compliance necessitating the Rule 2004 exam and subpoenas, and then the Motion to Enforce. The Compliance Order was then entered on October 19 and stated both deadlines on its face; QPWB waited until the afternoon of October 23 to seek a stay. Fed. R. Bankr. P. 8007(b) permits QPWB to seek relief from the District Court promptly, and nothing prevented it from doing so in the time it allowed to pass.

## IV. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter the order attached hereto as **Exhibit C** and deny the Stay Motion in its entirety, including the alternative request for a temporary stay. Alternatively, if any stay is granted, limit it to the two compensation-related requests in the Modified Nevada Subpoena and condition it on QPWB posting a bond for five percent (5%) of the over $400 million in asserted damages. The Trustee reserves all rights, including to seek fees and costs.

Dated this 28th day of October, 2026.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

GARMAN TURNER GORDON LLP

By: /s/ Talitha Gray Kozlowski
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*