GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-Mail: tgray@gtg.legal
DYLAN CICILIANO, ESQ.
Nevada Bar No. 12348
E-mail: dciciliano@brg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: October 29, 2026<br>Hearing Time: 11:30 a.m. |



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

**TRUSTEE'S OPPOSITION TO INTERESTED PARTIES DOES' MOTION TO QUASH OR IN THE ALTERNATIVE MOTION FOR PROTECTIVE ORDER [ECF NO. 1080] AND COUNTERMOTION FOR ATTORNEY'S FEES AND COSTS**

Michael Carmel (the "Trustee"), the Liquidation Trustee of the NuMale Liquidation Trust (the "Trust") and the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP ("GTG"), which also represents Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam (collectively, the "Individuals"), by and through their counsel of record, Garman Turner Gordon LLP, hereby submits this Opposition (the "Opposition") to the *Interested Parties Does' Motion to Quash or in the Alternative Motion for Protective Order* [ECF No. 1080] (the "Motion") filed by three unnamed individuals who call themselves "John Doe 1, John Doe 2 and Jane Doe" (the "Does"), and his countermotion for the attorney's fees and costs incurred in responding to it (the "Countermotion").

This Opposition and Countermotion are made and based upon the Memorandum of Points and Authorities herein; the Supplemental Declaration of Talitha Gray Kozlowski, Esq. (the "Supp. Gray Kozlowski Decl.") filed concurrently herewith; the papers and pleadings on file in these cases, judicial notice of which is respectfully requested; and any argument the Court may entertain at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Eight days before the Does filed their Motion, this Court ordered Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") to produce the agreements governing the compensation of the approximately eighty to one hundred partners (which constitute about 25% of the total partnership number) that QPWB itself calls "rainmakers" and heads of "business units." The Trustee seeks only documents sufficient to show what those attorneys were paid in 2024, 2025, and 2026



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

including their profit distributions. ECF No. 1046. QPWB had argued that those attorneys are W-2 employees whose compensation is protected by the privacy laws of the thirty-five states in which QPWB has offices, and that "[e]ach employee would also have a right to object." ECF No. 1028 at 19, 33. The Court rejected that argument, found no specific prejudice or harm warranting a protective order, denied QPWB's countermotion to quash, and addressed confidentiality by requiring that any public use of designated documents be made under seal. ECF No. 1046 ¶¶ G–H, 4. The Court fully and completely resolved the dispute, and that should have been the end of it. But it's not.

The Motion raises the same argument, presented by three of QPWB's own partners (purportedly) through new counsel, without their names, three days before the production deadline. It fails for a multitude of reasons that do not require the Court to revisit anything it has decided. Three of the four "requests" the Motion asks the Court to quash are not in the subpoena at all.

Next, the Does filed under pseudonyms without leave, in a court where every filed paper is by statute a public record, in a clear effort to conceal identities QPWB publishes on its own website. Those Does lack standing to quash a subpoena directed to their employer and cannot speak for the dozens of attorneys who have not objected. The one-submitted declaration identifies no harm, only that the Does "strongly object," without any indication of the harm that would occur if the Trustee exercised his statutory duty to investigate claims for the benefit of creditors. And the state constitutional privacy doctrines on which they rely do not govern privilege in a federal bankruptcy case and would not help them if they did.

What the Trustee seeks is a limited set of documents that demonstrate compensation and "profit" for figures keyed to employee numbers and the individual partner agreements that identify the basis for such "profits". Such limited information would inform which subset of QPWB partners received a recoverable fraudulent transfer while QPWB, and its partners, where on notice of a known malpractice claim. In contrast, the Does leave the Trustee unable to name, investigate, or sue the recipients before limitations periods run. The Trustee offered to toll any applicable statute of limitations; QPWB, on behalf of the 80-11 "rainmakers," refused, as did the Does.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

Moreover, the Trustee has forwarded to both QPWB and the Does a draft stipulated protective order that alleviates any alleged concerns. The Motion should be denied, permitting the production to proceed on October 30, 2026, as ordered, and the Trustee should be awarded the fees the Motion has forced him to incur.

## II. STATEMENT OF FACTS

### A. The Exposure and the Preserved Claims.

1. QPWB represented certain of the Debtors and related individuals in a New Mexico action brought by Michael Sanchez (the "Sanchez Action"), which ended in a verdict on November 25, 2024. Mot. at 3. The jury's findings imposed joint and several liability of $412 million on every defendant. ECF No. 1016-6 at 9.

2. Before trial, QPWB's managing partner acknowledged in writing that the case should have been settled for $950,000, and QPWB's trial counsel told the court during trial that he was "cut in half between NuMale and Asandra," i.e. hopelessly conflicted. *Id.* at 4. The Trustee is investigating and believes that QPWB's actions led to the catastrophic result.

3. The Trustee is also a fiduciary for creditors holding more than $400 million in allowed claims. ECF No. 1030 at 3. The confirmed Plan preserves for the NuMale Liquidation Trust (the "Trust") "[a]ll of the Debtors and the Estates' Causes of Action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates," together with the estates' Rule 2004 rights. ECF No. 1046 ¶ A. The Trustee has asserted malpractice-related claims against QPWB, ECF No. 1016-6, and has given notice of potential fraudulent transfer and improper distribution claims arising from profit distributions QPWB made to its partners after it was on notice of its exposure, ECF No. 1028-2 at 2. The most conservative date on which the limitations period on the malpractice claims could run is November 24, 2026; the periods applicable to the transfer and distribution claims remain under review. ECF No. 1016 ¶ 11.

### B. The Motion Does Not Adress the Actual Subpoena Topics.

4. After the Court authorized QPWB's Rule 2004 examination, ECF No. 972, the



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

Trustee served the subpoena at issue on QPWB's Henderson office on September 28, 2026 (the "Nevada Subpoena"). ECF No. 994; ECF No. 1046 ¶ C. While the Motion purports to address Requests No. 3, 4, 5, and 6, what the motion contends are those topics (ECF No. 1080 at p. 5),[1] do not appear in the Nevada Subpoena at all (ECF No. 994-1 at p. 5). In reality, Request Nos. 3, 4, 5, and 6 of the Nevada Subpoena seek QPWB's tax returns, board and committee composition, its stock records, and the identity of its officers, committee members, managing partners, and practice group leaders; none seeks anyone's compensation. ECF No. 994-1.

5. The Trustee instead assumes the Motion actual seeks protection from Requests, 7-14, all of which generally target fraudulent transfers made by QPWB. ECF No. 994-1.

6. By letter dated October 7, 2026 (the "October 7 Letter"), the Trustee, in an effort to narrow any dispute, replaced eleven of QPWB's requests (Nos. 3, 7–14, 16, and 17) with a single request directed to a subset of the law firm partners who constitute "the 80 to 100 attorneys described by QPWB as 'rainmakers' or as heads of 'business units' within QPWB," seeking:

> (i) [the] agreement between QPWB and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026

(the **"Rainmaker Request"**). ECF No. 1016 ¶ 17 & Ex. K at 2.

7. Separately, as to the different subpoenas issued to Eric Boyer and Edward Prieto individually, the October 7 Letter replaced Request Nos. 4 through 12 of those subpoenas with three requests asking each of those men to identify "any person, trust, or entity to which You transferred $250,000 or more" in 2024, 2025, and 2026 (the "Boyer/Prieto Transfer Requests"). *Id.*, Ex. K at 1–2. The Boyer/Prieto Transfers Requests were withdrawn after the Court entered the Compliance Order.

8. But most importantly, the Trustee's Amended Motion sought to enforce "the Nevada Subpoena, as limited by the Trustee's October 7, 2026 letter," and stated that it "seeks no relief as to Mr. Boyer, Mr. Prieto, or the individual examinees subject to the Court's other Rule

[1] It is believed that the Motion confuses the subpoena to QPWB, with a Florida subpoena to Boyer and Prieto individually, subpoenas that have been withdrawn.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

2004 Orders." ECF No. 1015 at 11 ¶ 27, 20.

**C. <u>QPWB's Account of the 80 to 100 Attorneys, and the Refusal to Toll.</u>**

9. QPWB calls more than three hundred of its attorneys "partners." ECF No. 1016 ¶ 21.

10. QPWB's managing shareholder Eric Boyer has sworn that "QPWB has agreements with approximately 80-100 of its partners which entitle those partners to a percentage of the business they generate for the firm," and that they are "referred to as 'rainmakers' or 'heads of business.'" ECF No. 1028-1 ¶ 7.

11. QPWB offered to describe the 80 to 100 attorneys' compensation generally without identifying them; the Trustee offered to accept that if the unidentified recipients would enter into a tolling agreement; and on October 6, 2026, QPWB refused. *Id.* ¶ 16. QPWB says it "cannot consent on behalf of approximately 100 employees to toll claims against them personally." ECF No. 1028-1 ¶ 32. The Does, through their own counsel, have likewise declined to toll or to give any assurance that neither they nor any other recipient will assert a limitations defense. Supp. Gray Kozlowski Decl. ¶ 4.

**D. <u>QPWB Was Ordered By the Court to Respond to the Nevada Subpoena.</u>**

12. QPWB opposed enforcement of the Nevada Subpoena and countermoved to quash, arguing that the Rainmaker Request "still sought confidential information about QPWB employees who have no ownership or control of the firm," that QPWB has offices in "35 states and one territory, each with its own laws protecting employee personnel and compensation information," and that "[e]ach employee would also have a right to object to such a disclosure in the relevant proceeding." ECF No. 1028 at 18–19, 33; ECF No. 1028-1 ¶¶ 31–33.

13. On October 19, 2026, after a hearing, the Court found that the Modified Nevada Subpoena "seeks information concerning [the preserved] causes of action and relevant information concerning certain QPWB attorneys," falls within Rule 2004 and the Rule 2004 Order, and is supported by good cause; that "QPWB has not shown specific prejudice or harm warranting a protective order"; and that "QPWB's confidentiality and privilege concerns are addressed by



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

paragraphs 3 and 4." ECF No. 1046 ¶¶ F–H (the "Compliance Order").

14. Paragraph 4 allows QPWB to designate documents "confidential," requires that "any public use of the document . . . be filed under seal," and provides that "[n]o dispute concerning the terms of a protective order or confidentiality designation shall delay production." *Id.* ¶ 4. The Court ordered production by October 30, 2026 at 5:00 p.m. and denied the countermotion. *Id.* ¶ 1 and at 5.

15. Rather than propose or negotiate an acceptable protective order, QPWB attempted to appeal the Compliance Order, ECF Nos. 1050, 1052, and moved to stay the Compliance Order, asserting that production would "breach the privacy of nearly 100 of its employees" and that "QPWB's attorneys, having heard of this breach, have threatened legal action and resignation." ECF No. 1057 at 2. QPWB contends that "[t]he injury is the disclosure to the Trustee itself and his use of it; not the disclosure of it in the public record." *Id.* at 13. That motion is set for October 29, 2026. ECF No. 1074.

16. On October 25, 2026, the Trustee sent QPWB a proposed stipulated protective order with "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL/ATTORNEY'S EYES ONLY" designations, limits on dissemination to any creditor or beneficiary of the Trust, including Mr. Sanchez, and a sealing requirement. ECF No. 1071 ¶ 3 & Ex. 2; ECF No. 1070 at 4. The Trustee will extend those protections expressly to the Does' information. Supp. Gray Kozlowski Decl. ¶ 5.

**E. The Motion Impermissibly Conceals the Identify of the Moving Parties.**

17. At 4:47 p.m. on October 27, 2026, the Does filed the Motion, a declaration of "John Doe 2," and an application to shorten time. ECF Nos. 1080–1082.[2] They did not seek leave to proceed under pseudonyms; they "choose not to publicly disclose their names." Mot. at 2 n.1. They acknowledge that QPWB's attorney list "is public information" searchable by title, including

[2] The Does' proposed order shortening time directs that oppositions be served "upon counsel for Liberty" and that the order be served "upon the Chapter 7 Trustee." ECF No. 1082-1 at 3–4. Neither Liberty nor a Chapter 7 trustee has any role in these cases.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

"Partner." *Id.* at 3 n.3.

18. The Motion contains no meet-and-confer certification; the Does' only pre-filing contact with the Trustee's counsel was a same-day call about shortened time. ECF No. 1084 at 2; Supp. Gray Kozlowski Decl. ¶ 3.

19. The Motion asks the Court to quash "Requests for Production Nos. 3 through 6," which it identifies as the Rainmaker Request ("No. 3") and the three Boyer/Prieto Transfer Requests ("Nos. 4, 5, and 6"). Mot. at 2–3, 5. The declaration states that the Does are "non-equity partner[s]" residing in Arizona, California, and Florida whose "name, compensation, and/or payments from QPWB, fall within the scope of Requests Nos. 3 through 6"; that they "strongly object"; and that John Doe 2 "believe[s] that many other similarly situated partners of QPWB would likewise object." ECF No. 1081 ("Doe 2 Decl.") ¶¶ 1–8. It describes no harm to anyone.

## III. LEGAL STANDARD

Rule 2004 "allows broad examination relating to 'the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate.'" *Rigby v. Mastro (In re Mastro)*, 585 B.R. 587, 596–97 (B.A.P. 9th Cir. 2018) (quoting Fed. R. Bankr. P. 2004(b)). Its scope "is 'unfettered and broad'; the rule essentially permits a 'fishing expedition,'" and it may "extend to third parties who have had dealings with the debtor." *Id.* at 597 (citations omitted); *accord In re Dinubilo*, 177 B.R. 932, 939 (E.D. Cal. 1993). Although the primary purpose of a Rule 2004 examination is to permit the trustee to quickly ascertain the extent and location of the estate's assets, *see In Re Good Hope Refineries, Inc.,* 9 B.R. 421, 423 (Bankr.D.Mass.1981) (discussing purpose of former Bankruptcy Rule 205)

Document subpoenas are governed by Civil Rule 45 through Bankruptcy Rule 9016. Rule 45(d)(3)(A) requires the court, "[o]n timely motion," to quash or modify a subpoena that requires disclosure of privileged or other protected matter or subjects a person to undue burden, Fed. R. Civ. P. 45(d)(3)(A); ECF No. 994-1, but only the person subject to the subpoena may so move. *Rhodes v. Litig. Tr. of the Rhodes Cos. (In re Rhodes Cos.)*, 475 B.R. 733, 740–41 (D. Nev. 2012).



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

In Rhodes, Rhodes, as a third-party, sought to quash a subpoena based on a claimed" personal right or privilege with regard to the documents sought.' " *Id.* at 738. The district court affirmed the bankruptcy court's determination that "only the party subject to the subpoena may bring a motion to quash under Rule 45(c)(3)(A) [and] [b]ecause Rhodes is not subject to the subpoenas, the Bankruptcy Court did not err in ruling that Rhodes lacked standing to challenge the subpoenas under Rule 45(c)(3)(A). *Id* at 740-41.

A protective order requires good cause, and "[t]he party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). The burden applies to non-parties: "whoever is seeking protection under Rule 26(c) bears the burden of showing good cause." *Id.* at 426. And the motion "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Rhodes*, 475 B.R. at 741–42 (quoting Fed. R. Civ. P. 26(c)).

## IV. ARGUMENT

### A. The Does May Not Litigate Anonymously.

The Does did not ask permission to proceed under pseudonyms; they simply captioned themselves "Doe" and offered to reveal their names to the Court in camera if asked. Mot. at 2 n.1. "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). The Ninth Circuit permits pseudonyms only in the "unusual case" when nondisclosure "is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment," *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)), and only where "the party's need for anonymity outweighs



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

prejudice to the opposing party and the public's interest in knowing the party's identity," *id.* at 1068. The movant "must show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Kamehameha*, 596 F.3d at 1043. Even threatened termination and blacklisting, "perhaps typical methods by which employers retaliate against employees who assert their legal rights," justified anonymity in *Advanced Textile* only because the consequences for the guest-worker plaintiffs, deportation and debt, were "extraordinary." 214 F.3d at 1071. Given "the paramount importance of open courts," use of true names is the "default presumption." *Kamehameha*, 596 F.3d at 1046.

In bankruptcy the presumption is statutory. Except as provided in subsections (b) and (c), and subject to section 112, "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). Section 107 "speaks directly to, and diverges from, the common law right of judicial access"; it "has only three exceptions: confidential business information, 11 U.S.C. § 107(b)(1), 'scandalous or defamatory matter,' *id.* § 107(b)(2), and 'means of identification,' *id.* § 107(c)(1)(A)"; and it therefore "preempts the common law right of access in bankruptcy proceedings." *Roman Catholic Archbishop*, 661 F.3d at 430–31. Public access serves "the important purposes behind the Bankruptcy Code's 'public access' provision," which "is rooted in the right of public access to judicial proceedings." *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999) (petition preparer's Social Security number). A movant's name falls within none of the § 107 exceptions, and § 107(b) and Bankruptcy Rule 9018 supply a mechanism for protecting particular information on a proper showing, not a license to seal one's identity by self-designation.

The Does could not meet the *Advanced Textile* standard even if they had asked. They claim no fear of harassment, retaliation, or ridicule; their only stated concern is disclosure of their compensation, Doe 2 Decl. ¶ 7, an ordinary economic interest that every discovery target shares. And in reality, their only concern is with the Trustee learning of the identity of fraudulent transferees, which likewise does not satisfy the applicable standard, but only serves to eviscerate the Trustee's ability to obtain information under Rule 2004.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

Anonymity also protects nothing. The Does concede that QPWB publishes its attorney roster, searchable by "Partner," on its website. Mot. at 3 n.3. The Rainmaker Request seeks QPWB's own agreements and compensation records, which will identify the attorneys whatever the caption says. What the Does actually want protected is the content of those records, which the Compliance Order and the proposed protective order already protect. ECF No. 1046 ¶ 4; ECF No. 1071, Ex. 2. Meanwhile the prejudice to the Trustee is concrete: the Court must determine "the precise prejudice at each stage of the proceedings to the opposing party," *Advanced Textile*, 214 F.3d at 1068, and without the Does' names the Trustee cannot test whether any of them is among the 80 to 100 partners the Rainmaker Request covers, whether any holds a management role bearing on insider status, or whether their objections differ in any way from QPWB's. The Court should deny the Motion or decline to hear it unless and until the Does identify themselves.

**B. <u>The Does Lack Standing, and Cannot Speak for Anyone But Themselves.</u>**

The Nevada Subpoena is directed to QPWB and commands QPWB's own agreements and compensation records. ECF No. 994; ECF No. 1016, Ex. K at 2. In *Rhodes*, the District of Nevada affirmed this Court's denial of a motion to quash Rule 2004 subpoenas that a liquidating trust had served on law firms, financial institutions, and others believed to have received the debtors' funds, brought by the debtors' founder, whose personal accounts and transactions the subpoenas reached. 475 B.R. at 736–37, 741. The court held that "only the party subject to the subpoena may bring a motion to quash under Rule 45(c)(3)(A)" (now Rule 45(d)(3)(A)), declined to adopt a "personal right or privilege" standing rule for that provision, and affirmed the ruling that the movant "lacked standing to challenge the subpoenas as unduly burdensome because he was not a party to the subpoenas." *Id.* at 737, 740–41. The Does are not subject to the Nevada Subpoena.[3]

Even courts that recognize a personal-right basis for standing confine it to the movant's own information. The Does' lead authority holds that a party "has standing to challenge a subpoena

[3] Rule 45(d)(3)(B) permits a person "affected by" a subpoena to seek relief if it requires disclosure of "a trade secret or other confidential research, development, or commercial information," *see Rhodes*, 475 B.R. at 739–40; ECF No. 994-1, but the Does do not invoke it, and any relief under it is discretionary and satisfied here by the Compliance Order's confidentiality protections.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

served on another entity only if the party can show it has a personal right or privilege regarding the subject matter of the subpoena." *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012). And *Rhodes* held, in the alternative, that the movant must actually establish such a right as to the records at issue. 475 B.R. at 741. The Does have not even established that their own agreements or data is called for in the QPWB subpoena. Instead, John Doe 2 claims that their documents are response to the now-withdrawn Boyer and Prieto's subpoenas "Requests Nos. 3 through 6." Doe 2 Decl. ¶ 1.

Above all, three objectors cannot block production concerning the other 77 to 97 attorneys, none of whom has objected. John Doe 2's "belie[f]" that others "would likewise object," *id.* ¶ 8, is not evidence of anyone's objection, let alone anyone's harm. The request to quash or anonymize the production as to "other similarly situated employees," Mot. at 3, 15, must be denied, and in no event can the Motion affect QPWB's obligation to produce everything responsive concerning every other attorney by October 30, 2026. ECF No. 1046 ¶¶ 1, 4.

**C. <u>The Motion Is An Untimely Second Attempt to Relitigate the Compliance Order.</u>**

The Motion repeats what QPWB argued and lost: that the Rainmaker Request reaches W-2 employees without ownership or control, that those employees live in thirty-five states with their own privacy laws, and that "[e]ach employee would also have a right to object." ECF No. 1028 at 18–19, 33; ECF No. 1028-1 ¶¶ 31–33. At the outset, the recovery of fraudulent transfers by the Trustee is not limited to shareholders with ownership. But more importantly, the Court considered those contentions, found no specific prejudice or harm, addressed confidentiality concerns in paragraph 4, and denied the countermotion. ECF No. 1046 ¶¶ H, 4 and at 5. The Does, QPWB's partners whose compensation QPWB invoked, now ask for the opposite result on the same record. That is a disguised request for reconsideration by partners of the same law firm, which "is appropriate only in limited circumstances, such as the discovery of new evidence, an intervening change in controlling law, or where the initial decision was clearly erroneous or manifestly unjust." *Brown v. Kinross Gold, U.S.A., Inc.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005). The Does offer none of those things, and QPWB's own motion to stay the same order on the same theory will be



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

heard the same day. ECF Nos. 1057, 1074.

The Motion is also untimely. Rule 45(d)(3)(A) authorizes relief only "[o]n timely motion." The Nevada Subpoena has been on the public docket since September 28, 2026. ECF No. 994. QPWB put its employees' supposed objections before the Court on October 14, ECF No. 1028 at 19, 33; the Compliance Order was entered October 19, ECF No. 1046; and by October 23, according to QPWB, its attorneys had "heard of" the production and "threatened legal action and resignation." ECF No. 1057 at 2. The Does waited until 4:47 p.m. on October 27, three days before the deadline, and then sought shortened time because "[t]he production deadline is imminent." ECF No. 1082 ¶ 3. They say they "moved promptly upon learning" of the production, *id.* ¶ 5, but never say when they learned of it or from whom, or why partners of QPWB would not presumptively on notice as agents of QPWB.[4] An emergency of the movant's own making is no basis to revisit a discovery order, and the Does' complaint that they were not personally served with a subpoena directed to their employer, Doe 2 Decl. ¶ 6, identifies no right QPWB did not already assert on their behalf.

### D. <u>The Does Show No Particularized Harm, and Their State Law Privacy Theories Do Not Govern.</u>

The Does' only evidence is John Doe 2's statement that they "strongly object to the disclosure of [their] personal financial information and violation of [their] privacy rights." Doe 2 Decl. ¶ 7. An objection is not a harm. The declaration does not say that any Doe will lose a client, a position, or an opportunity, or will leave QPWB, and it identifies no use of the information that the Compliance Order's protections would fail to prevent. The Motion's own description of the injury is that the Trustee would "review, scrutinize, and then identify a subset of employees" for further investigation, Mot. at 3, which is the investigation the Court authorized, not a harm Rule

[4] While the Does have concealed their identities, their involvement suggests that they are in fact acting in concert with QPWB or are named parters Boyer or Prieto. While the Does purport to object to the subpoena issued to QPWB, they only actually purport to object to requests to Boyer and Prieto. Ostensibly, the Does would have no knowledge of the Boyer and Prieto subpoenas unless they were Boyer and Prieto or were working in conjunction therewith.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

26(c) recognizes. QPWB's unsworn assertion that unnamed attorneys have threatened to resign, ECF No. 1057 at 2, appears nowhere in the Does' declaration. These are precisely the "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," that fail Rule 26(c). *Roman Catholic Archbishop*, 661 F.3d at 424.

The Motion rests almost entirely on the constitutions of California, Florida, and Arizona. Mot. at 9–14. But "in federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." *Kerr v. U.S. Dist. Ct.*, 511 F.2d 192, 197 (9th Cir. 1975) (quotation omitted) (denying mandamus relief from an order compelling production of personnel files, as to which the district court had entered protective measures); *see Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."). State privacy provisions are, at most, considerations in the Rule 26(c) balance, and the Ninth Circuit's answer for confidential financial and personnel information is protection, not withholding. *See Roman Catholic Archbishop*, 661 F.3d at 425 (describing *Foltz*'s treatment of "confidential financial information, third-party medical records, personnel files, and trade secrets," which could "be redacted easily to protect third-party privacy interests while leaving other meaningful information"). The Motion never attempts the showing the caselaw require.

Its federal authorities do not help it either. *In re SunEdison, Inc.*, 572 B.R. 482, 489 (Bankr. S.D.N.Y. 2017) only requires a good cause showing for a Rule 2004 examination, which this Court has twice found, ECF No. 972; ECF No. 1046 ¶ G; and *Blotzer* concerned an FLSA defendant's subpoenas to three of the plaintiff's former employers for every employment record they held about him, which the court found likely to contain "information that is both private and irrelevant." 287 F.R.D. at 509. The Rainmaker Request seeks two defined categories of documents the Court has already found relevant, and all of which goes to the Trustee's fraudulent transfer investigation. ECF No. 1046 ¶ F.

The Does' state authorities would not carry the Motion even if state law governed. *Williams v. Superior Court*, on which they rely, reversed an order restricting discovery of a plaintiff's fellow



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

employees' contact information statewide, rejected "the assumption that a compelling interest or need is always required to justify discovery of private information," and disapproved the cases that had applied it, including *Hooser v. Superior Court*, the Does' other California authority. *Williams v. Superior Ct.*, 3 Cal. 5th 531, 556–57 (2017). *Williams* also confirmed that privacy may be protected by orders conditioning discovery on confidentiality. *Id.* at 549.

The Does' Arizona authority holds that Arizona's privacy provision may be asserted "only against governmental acts and not against acts of a private defendant unless 'state action' exists." *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 277 (Ct. App. 1997) (quotation omitted). *In re Esther Caplan Trust*, 228 Ariz. 182 (Ct. App. 2011), approved in camera review of a trust beneficiary's finances in a dispute over discretionary trust distributions. And by the Does' own description, their Florida authorities, *Woodward v. Berkery*, 714 So. 2d 1027 (Fla. Dist. Ct. App. 1998), and *Hett*, turn on whether relevance has been established before a non-party's finances are disclosed. Mot. at 11–12. Here, the Court has already determined relevance. ECF No. 1046 ¶ F.

In sum, no authority supports the movants relief.

**E. <u>Three of The Four requests The Does Ask The Court to Quash Are Not In The Subpoena The Court Enforced.</u>**

The Motion's central premise is that the Nevada Subpoena requires QPWB to disclose every "person, trust, or entity to which You transferred $250,000 or more" in 2024, 2025, and 2026. Mot. at 5; *see also* ECF No. 1082 at 3 n.3. It does not. That language appears only in the replacement requests offered for the separate subpoenas to Mr. Boyer and Mr. Prieto as individuals, in which "You" refers to each of those two men. ECF No. 1016, Ex. K at 1–2. The Amended Motion sought no relief on those subpoenas, ECF No. 1015 at 11 ¶ 27, and the Compliance Order enforces only the Nevada Subpoena to QPWB as modified. ECF No. 1046 at 2 & ¶ 1.

The Nevada Subpoena's own Request Nos. 4, 5, and 6 survive the narrowing, but they seek governance and ownership records, not compensation, and the Does do not challenge them. ECF No. 994-1. The request to quash "Nos. 4, 5, and 6" asks the Court to quash requests QPWB has



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

not been ordered to answer and should be denied for that reason alone.

The error infects the whole Motion. Its portrayal of the discovery as reaching "100 or more" attorneys regardless of any role or connection to the Sanchez Action, Mot. at 2, 10, 13, depends on attributing the Boyer/Prieto Transfer Requests to QPWB. The only request that reaches attorney compensation is the Rainmaker Request, which is confined to a population QPWB itself defined and counted, two categories of documents, and three years, and which seeks only documents sufficient to show aggregate compensation. ECF No. 1016, Ex. K at 2; ECF No. 1015 at 17. That is the only request properly before the Court.

### F. <u>The Rainmaker Request Lies At The Core Rule 2004, And The Names Are The Point.</u>

#### 1. The 80 to 100 Attorneys Hold Contractual Shares of The Firm's Earnings, Paid While QPWB Carried a Catastrophic Exposure.

QPWB's managing shareholder has sworn that approximately 80 to 100 of its partners hold agreements entitling them to "a percentage of the business they generate for the firm." ECF No. 1028-1 ¶ 7. Stripped of labels, that is a contractual right to share in the firm's earnings: the revenue from the business those partners generate is divided by agreement between the firm and the partner, and the partner's compensation rises and falls with what the firm takes in. Mr. Boyer characterizes those payments as something other than a share of "general firm profits," *id.* ¶¶ 6–7, and the Does assert they have "no entitlement to a share of QPWB's profits," Mot. at 6, while describing themselves as "non-equity partner[s]" paid on a "production and origination" basis. Doe 2 Decl. ¶¶ 2–4; Mot. at 9, 13. Whether these arrangements are, in substance, distributions of firm earnings to the attorneys who control its revenue-generating business units is exactly what the agreements will show, and exactly what the Trustee must determine before he can decide whether the Trust holds transfer or distribution claims against any of those attorneys, and against whom. ECF No. 1015 at 12. QPWB's characterization of its agreements is not a substitute for the agreements.

The timing makes the inquiry more pressing. The payments at issue were made in 2024, 2025, and 2026, after QPWB and its partners were on notice of the malpractice claims and were therefore aware of a known creditor. The payments at issue were also after the managing partner



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

acknowledged in writing that the Sanchez Action should have been settled for $950,000, and after a verdict imposing $412 million in joint and several liability on QPWB's clients. ECF No. 1016-6 at 4, 9. A firm facing exposure of that magnitude that continued paying its revenue-generating partners a share of its earnings is exactly the kind of transferor a trustee must examine, and Rule 2004 exists for that examination. *See Mastro*, 585 B.R. at 597; *Rhodes*, 475 B.R. at 736–37, 742 (affirming denial of motion to quash Rule 2004 subpoenas issued to investigate transfers to recipients of the debtors' funds); ECF No. 1046 ¶ F.

**2. Anonymized Production Would Defeat The Examination, and The Tolling Offer Was Not a Concession.**

The Does propose production keyed to employee numbers, with the Trustee to seek to "unmask" individuals later "upon a showing of particularized good cause." Mot. at 14. A fiduciary cannot plead a fraudulent transfer claim against "Employee 47," cannot assess whether an attorney was an insider or a person in control without knowing who the attorney is and what role he or she held, and cannot evaluate whether a payment exceeded the value of services without knowing whose services were rendered. The proposal would also guarantee a second round of litigation over each "unmasking" while limitations periods run.

The Does say the Trustee "conceded" that identities are unnecessary when he offered to accept a limited production if the recipients would toll. Mot. at 6, 10, 14. They have it backward. The offer was conditioned on tolling because the names are necessary: without them the Trustee can sue no one, and only tolling could remove the risk that claims would expire while the recipients remained unknown. ECF No. 1016 ¶ 16; ECF No. 1015 at 19. While Prieto and Boyer agreed as of October 27, 2026, QPWB refused, and says it cannot bind its attorneys. ECF No. 1016 ¶ 16; ECF No. 1028-1 ¶ 32. The Does, who appear through their own counsel and could bind themselves, have also refused and offer no assurance that they or anyone else will forgo a limitations defense. Supp. Gray Kozlowski Decl. ¶ 4. The Does may not obtain through anonymity what they refused to agree to through tolling.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

**3. The Does' Limitations Argument Is Wrong, and The Trustee Must Plan For The Shortest Period That Could Apply.**

The Does argue there is no urgency because New Mexico's Uniform Voidable Transactions Act provides four years, and that its one-year period for transfers to insiders does not apply because they are not insiders. Mot. at 6–7. First, which claims expire when is a merits question the Compliance Order expressly reserves, ECF No. 1046 ¶ J, not a reason to deny discovery the Court has found supported by good cause. The malpractice claims face a conservative limitations date of November 25, 2026, and the periods for the transferee and distribution claims remain under review. ECF No. 1016 ¶ 11. Second, the Does concede a one-year period applies to claims against insiders, Mot. at 7, and who among the 80 to 100 attorneys is an insider, a person in control, or the head of a business unit with authority over the firm's revenue is exactly what the Rainmaker Request and surviving Request No. 6 will show. ECF No. 994-1; ECF No. 1016, Ex. K at 2. The Does' assurance that they are not insiders rests on Mr. Boyer's characterization of agreements the Trustee is entitled to see; a late-2025 payment to an attorney who proves to be an insider could be beyond reach by late 2026.

Third, New Mexico law is not the only law that may apply, and no one has agreed that it does. The Does acknowledge that Florida law may govern because QPWB is headquartered in Miami. Mot. at 7 n.4. QPWB has offices in thirty-five states and one territory, ECF No. 1028-1 ¶ 3; ECF No. 1028 at 19, and the attorneys within the Rainmaker Request live and practice throughout them, as the Does' own residences in three states illustrate. Doe 2 Decl. ¶¶ 2–4. The Trustee's September 10, 2026 notice identified potential claims under Florida's corporate distribution statutes in addition to fraudulent transfer law. ECF No. 1028-2 at 2. No recipient has agreed to be bound by New Mexico law, or by any single body of law, and none has agreed to toll.

The periods differ materially, and many are shorter than the four-year New Mexico period on which the Does rely. QPWB maintains offices in, among other states, California, Florida, Kentucky, Louisiana, Nevada, New Mexico, Tennessee, and Texas. Supp. Gray Kozlowski Decl. ¶ 7 & Ex. A. Florida's voidable-transfer statute, which the Does describe as "substantially similar"



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

to New Mexico's, Mot. at 7 n.4, extinguishes claims under § 726.106(2) unless brought "within 1 year after the transfer was made or the obligation was incurred." Fla. Stat. § 726.110(3); *see McGregor v. Fowler White Burnett, P.A.*, No. 4D20-2684 (Fla. 4th DCA Dec. 1, 2021) (quoting § 726.110(1)–(3)). Louisiana does not follow the uniform act at all; its revocatory action "must be brought within one year from the time [the obligee] learned or should have learned of the act . . . but never after three years." La. Civ. Code art. 2041; *see Green v. Phipps-Green*, No. 2025-CA-0006 (La. Ct. App. 4th Cir. 2025). And the legal-malpractice periods governing the underlying claims run as short as one year in California, Kentucky, Louisiana, and Tennessee, and two years in Florida, Nevada, and Texas. New Mexico's four-year malpractice period is the outlier, not the rule. *See Sharts v. Natelson*, 885 P.2d 642 (N.M. 1994).

Faced with that uncertainty and with recipients who refuse to toll, the Trustee must plan for the shortest period that could plausibly apply. The Does' assurance that New Mexico's four-year period will govern every claim against every recipient binds no one, including the Does, and it is no reason to delay the production the Court has ordered.

**G. <u>The Existing and Proposed Protections Fully Address Any Legitimate Confidentiality Interest.</u>**

The Trustee has consented from the outset to production under an appropriate protective order. ECF No. 1015 at 17; ECF No. 1030 at 11. The Compliance Order requires that any public use of designated documents be made under seal, ECF No. 1046 ¶ 4, and the Trustee's proposed stipulated order adds an outside-counsel's-eyes-only tier and bars dissemination to any creditor or beneficiary of the Trust, including Mr. Sanchez. ECF No. 1071, Ex. 2; ECF No. 1070 at 4. The Trustee will extend those protections expressly to the Does. Supp. Gray Kozlowski Decl. ¶ 5. Those protections answer every concern the Motion articulates about public disclosure. The Does' remaining objection, like QPWB's, is to disclosure to the Trustee himself, *see* ECF No. 1057 at 13, which is not an injury Rule 26(c) protects against; it is the purpose of the examination the Court authorized.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

**COUNTERMOTION FOR ATTORNEY'S FEES AND COSTS**

The Does moved for a protective order under Rule 26(c), invoking Bankruptcy Rules 7026 and 9014. Mot. at 8. Rule 26(c)(3) makes Rule 37(a)(5) applicable to the award of expenses on such a motion, and under Rule 37(a)(5)(B), when the motion is denied, the court must, after an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the reasonable expenses, including attorney's fees, incurred in opposing it, unless the motion was substantially justified or other circumstances make an award unjust. Fed. R. Civ. P. 26(c)(3), 37(a)(5)(B). A position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), or if "reasonable people could differ" as to whether the discovery should be had, *Reygo*, 680 F.2d at 649. Under Rule 37's parallel fee provisions, the burden of showing substantial justification and special circumstances rests on the party against whom expenses are sought. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) (Rule 37(b)(2) and (d)).

The Motion was not substantially justified. It asks the Court to quash three requests that are not in the subpoena the Court enforced. It was filed under pseudonyms without leave, in disregard of § 107(a), and without the meet-and-confer certification Rule 26(c) requires. It relitigates arguments the Court rejected eight days earlier, while QPWB's motion to stay the same order on the same theory is pending. It offers no evidence of harm. And it was filed three days before the production deadline, forcing an expedited response to an emergency the Does created by waiting. No circumstance makes an award unjust. The Trustee requests an award of the reasonable attorney's fees and costs incurred in opposing the Motion, against the Does and their counsel jointly and severally, in an amount to be established by declaration of counsel filed within seven days after entry of the Court's order. Supp. Gray Kozlowski Decl. ¶ 6.

**V. CONCLUSION**

The Trustee respectfully requests that the Court (i) deny the Motion; (ii) in the alternative, decline to consider the Motion unless and until the Does file a notice identifying themselves by name; (iii) confirm that the Motion does not stay, delay, or modify QPWB's obligation to produce



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(702)-483-6126

all documents responsive to the Modified Nevada Subpoena by October 30, 2026 at 5:00 p.m. (Pacific Time), including as to the Does; (iv) grant the Countermotion and award the Trustee his reasonable attorney's fees and costs incurred in opposing the Motion, in an amount to be established by declaration of counsel; and (v) grant such other relief as the Court deems just and proper.

Dated this 28th day of October, 2026.

GARMAN TURNER GORDON LLP

By: _/s/ Talitha Gray Kozlowski_
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
DYLAN CICILIANO, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*