**E-filed: October 29, 2026**

Bob L. Olson, Esq. (NV Bar No. 3783)
Alex L. Fugazzi, Esq. (NV Bar No. 9022)
Charles E. Gianelloni, Esq. (NV Bar No. 12747)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
afugazzi@swlaw.com
cgianelloni@swlaw.com

*Attorneys for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Eddie Prieto*

SNELL & WILMER

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

NUMALE CORPORATION,

☐ AFFECTS THIS DEBTOR
☐ AFFECTS FELICIANO NUMALE NEVADA PLLC
☐ AFFECTS NUMEDICAL SC
☐ AFFECTS NUMALE COLORADO SC
☐ AFFECTS NUMALE FLORIDA TB PLLC
☐ AFFECTS NUMALE NEBRASKA LLC
☐ AFFECTS NUMALE NEW MEXICO SC
☒ AFFECTS ALL DEBTORS

Debtors.

QUINTAIROS, PRIETO, WOOD & BOYER P.A.,

Appellant,

v.

MICHAEL CARMEL, the Liquidation Trustee for the NuMale Liquidation Trust,

Appellee.

Case No. 25-10341-nmc

Chapter 11

Jointly Administered with:

| | |
|---|---|
| 25-10342-nmc | Feliciano NuMale Nevada PLLC |
| 25-10343-nmc | NuMedical SC |
| 25-10344-nmc | NuMale Colorado SC |
| 25-10345-nmc | NuMale Florida TB PLLC |
| 25-10346-nmc | NuMale Nebraska LLC |
| 25-10347-nmc | NuMale New Mexico SC |

**QUINTAIROS, PRIETO, WOOD & BOYER P.A.'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR STAY OF ORDER PENDING APPEAL, OR, ALTERNATIVELY, TEMPORARY STAY**

**Hearing Date: October 29, 2026**
**Hearing Time: 11:30 a.m. PST**

Quintairos, Prieto, Wood & Boyer P.A. ("QPWB"), by and through its counsel, Snell & Wilmer L.L.P., hereby submits this reply (the "Stay Reply") in support of its *Emergency Motion for Stay of Order Pending Appeal, or Alternatively, Temporary Stay* (the "Stay Motion") [ECF No. 1057], and in response to the Trustee's *Opposition to Emergency Motion for Stay of Order Pending Appeal, or Alternatively, Temporary Stay* (the "Stay Opposition") [ECF No. 1091].[1]

This Stay Reply is supported by the accompanying Memorandum of Points and Authorities, the Boyer Declaration [ECF No. 1028, Ex. A], all pleadings and papers of record, and any oral argument the Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Stay Opposition does not dispute the facts that matter. It does not dispute that the Order requires production of the compensation agreements and compensation figures of roughly 80 to 100 non-party, non-equity attorneys by October 30, 2026, and an examination in Las Vegas, Nevada by November 4, 2026 – deadlines that will pass before the District Court can rule on QPWB's pending motion for leave to appeal. It does not dispute that the Trustee wants this information for the stated purpose of deciding which transferees to name in a separate lawsuit. It does not dispute that once production occurs, nothing an appellate court does can return it. And it does not dispute that the Florida Subpoena was withdrawn only *after* the Trustee obtained the Order here.

Instead, the Stay Opposition rewrites the standard while distorting QPWB's legitimate grounds for a stay. It argues that only *privileged* information can support irreparable harm, that a protective order that has not even been entered cures the harm, that an appellant must file a *new* declaration to rely on evidence already in the record, and that the Trustee will be prejudiced by a short stay even though he calls his principal claims "developed" and remains free to file them today. None of those arguments are correct. The Trustee has no foreseeable damages, let alone quantifiable damages, arising from the requested stay when he has all the necessary information to file his claims

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Stay Motion.





SNELL & WILMER

SNELL & WILMER

today. Conversely, QPWB is in a position where it must violate its employee's privacy rights, engage in voluminous pre-suit discovery that is aimed at gaining an unfair strategic advantage, and submit to this Court's jurisdiction when its headquarters and state of organization are over 2,000 miles away. Without a stay, QPWB is irreparably injured because any appeal of those issues is mooted.

Critically, QPWB has already given the Trustee what he says he needs. The Trustee claims he "cannot name transferees he cannot identify." Opp. at 7. But on October 28, 2026, QPWB produced its corporate governance records, which confirm that QPWB has only two shareholders: Eric Boyer and Edward Prieto. *See* **Exhibit 1** (filed under seal). The 80 to 100 attorneys whose compensation records the Trustee seeks are salaried W-2 employees, not shareholders or equity holders. They do not share in distributions of firm profits, and they do not share in distributions of firm profits. The Trustee has therefore identified every person entitled to share in QPWB's profits. Compelling disclosure of the remaining employees' compensation would not advance any viable claim; it would only invade the privacy of non-parties the Trustee has no legitimate basis to sue.

Moreover, the Trustee's demand for a $20 million bond is nothing more than an effort to place an excessive price on the relief QPWB is requesting. He calculates that number by taking 5% of an exaggerated $400 million *legal malpractice claim* that is "developed" and ready to file, not from the purported fraudulent conveyance claims which the Trustee claims he needs discovery on to file suit. Such a demand is aimed at preventing appellate review, not at protecting the NuMale Liquidating Trust from any loss a stay could cause.

A stay is warranted because it preserves the status quo for the short period needed for appellate review. At a minimum, this Court should enter a temporary stay so the District Court can consider the matter under Rule 8007(b), Fed. R. Bankr. P.

## II. ARGUMENT

### A. The Governing Standard is the Ninth Circuit's Sliding Scale, Which Survives *Nken*.

The Stay Opposition invokes *Nken v. Holder*, 556 U.S. 418 (2009), as though it displaced the Ninth Circuit's approach. It did not. In *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) –

which the Stay Opposition itself cites – the Ninth Circuit held, after and in light of *Nken*, that the "strong showing" language does not require a movant to show it is more likely than not to prevail; it is enough to show "a substantial case for relief on the merits," "serious legal questions," or "a fair prospect" of success. *Leiva-Perez,* at 966-68. The Ninth Circuit also confirmed that its sliding-scale approach – under which a stronger showing on one factor can offset a weaker showing on another – remains valid. *Id.* at 964-66; *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). The Stay Opposition's parenthetical suggestion that the standard "should be heightened" for interlocutory appeals cites no authority. Opp. at 9.

**B. QPWB Has Shown a Probability of Irreparable Harm.**

***1. Irreparable Harm Is Not Limited to Privileged Material.***

The Stay Opposition's lead argument is that QPWB's authorities involve privilege and that confidential business information is different. Opp. at 10-11. But the principle underlying those cases – that "appellate courts cannot always 'unring the bell' once the information has been released," *Maness v. Meyers*, 419 U.S. 449, 460 (1975) – turns on the irreversibility of compelled disclosure, not on the label attached to the information. Indeed, courts within the Ninth Circuit have recognized that compelled disclosure of private or confidential information can itself constitute irreparable injury. *See, e.g.*, *EnvTech, Inc. v. Suchard*, No. 3:11-CV-00523-HDM, 2012 WL 5989625, at *3 (D. Nev. Nov. 29, 2012) ("The disclosure of confidential trade secret information would cause immediate and irreparable harm to EnvTech."); *H.Q. Milton, Inc. v. Webster*, No. 17-CV-06598-PJH, 2017 WL 5625929, at *4 (N.D. Cal. Nov. 22, 2017) (holding that a plaintiff established irreparable harm where a defendant utilized confidential information and trade secrets and solicited the plaintiff's customers); *In re Hawaiian Airlines, Inc.*, No. 03-00817, 2006 WL 2864921, at *10 (Bankr. D. Haw. Oct. 5, 2006) ("HA also contends that misappropriation of confidential information constitutes irreparable harm as a matter of law. This proposition is supported by substantial authority and common sense. Mesa's misuse of HA's confidential information (if proven) could inflict irreparable harm on HA."); *Navigant Consulting, Inc. v. Milliman, Inc.*, No. C18-1154JLR, 2018 WL 3751983, at *4 (W.D. Wash. Aug. 8, 2018) ("Navigant

SNELL & WILMER

SNELL & WILMER

also shows that absent a TRO, it will likely suffer irreparable harm from losing clients, employees, and proprietary information.").

Nor does *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009), help the Trustee. *Mohawk* addressed whether privilege rulings are immediately appealable under the collateral order doctrine; it held they are not because a *party* to the litigation can obtain effective review after final judgment, including by vacatur and a new trial without the privileged material. *Id.* at 109. That reasoning has no application to QPWB. QPWB is not a party to any pending litigation with the Trustee; there will be no final judgment in this contested matter at which time the Order can be reviewed, no retrial at which time the information can be excluded, and no remedy that can claw back what the Trustee has learned. The very feature that made post-judgment review adequate in *Mohawk* is absent here. *Mohawk* also says nothing about the stay factors.

***2. The Record Evidence Is Unrebutted, and No New Declaration Is Required.***

The Stay Opposition faults QPWB for relying on the Boyer Declaration rather than a "new" declaration. Opp. at 10. No rule requires a stay movant to re-file evidence already in the record, and the Stay Motion expressly incorporated it. The Trustee's reliance on *Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020), and *Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020 (9th Cir. 2025), is misplaced. In those cases, according to the Stay Opposition, the movants offered *no* evidence. Opp. at 9-10. Here, Mr. Boyer attested under penalty of perjury to the employment status of the affected attorneys, their lack of equity or management authority, QPWB's offices in 35 states and a territory, the attorneys' objections, and the risk of attrition and potentially office closures. Boyer Decl. ¶¶ 4, 7-8, 30-33. The Trustee offered no contrary evidence on any of those points.

More importantly, the Trustee's own filings corroborate the harm. The Stay Opposition acknowledges that certain of the affected attorneys – the "Doe Partners" – have now appeared through counsel and filed their own motion to quash because they "strongly object" to disclosure. Opp. at 10 n.12 (citing ECF No. 1080). That is precisely the non-party objection Mr. Boyer predicted. And the Trustee relies on QPWB's predicted "attrition" among these very attorneys as a basis for alleged harm to himself, buttressing that it is a real risk. Opp. at 19. The Trustee cannot

SNELL & WILMER

simultaneously call that harm speculative and then also rely on it.

The Doe Partners' motion also confirms that the right at stake is not QPWB's alone to waive. They contend that they hold an independent privacy interest in their identities and compensation, that they were never named in or served with the Nevada Subpoena, and that they have not been afforded due process – notice or an opportunity to be heard – before their personal financial information is disclosed. ECF No. 1080 at 3, 6. Courts within the Ninth Circuit agree that employees hold a personal right in their employment records and that "special care" must be taken before personnel files are turned over to an adverse party. *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012); ECF No. 1080 at 8. Other courts likewise impose a "heightened standard" before compelling disclosure of a non-party's financial information "due to the irreparable harm that may be caused by the disclosure of irrelevant, yet confidential, information." *Hett v. Barron-Lunde*, 290 So. 3d 565, 573 (Fla. Dist. Ct. App. 2020); ECF No. 1080 at 11-12. QPWB cannot consent to production on behalf of employees who object to it, any more than it can waive their limitations defenses.

***3. The Order's Confidentiality Provision and an Unentered Proposed Protective Order Do Not Cure the Harm.***

The Stay Opposition relies heavily on a "Proposed Protective Order" that the Trustee circulated on October 25, 2026 – 6 days after the Order was entered – and that remains under negotiation. Opp. at 8-9, 11. An unentered draft protects no one. The operative protection is Paragraph 4 of the Order, which addresses only public filing. ECF No. 1046 ¶ 4.

Even if entered in the Trustee's form, the Proposed Protective Order would not address the harm, because it expressly permits the use that *is* the harm. By the Trustee's own description, it authorizes use of the information for the "Trust Claims" and "permits public pleading" of each "defendant's name, state of residence, the fact and period of payments, and a general description of the claim." Opp. at 8 (citing Proposed Protective Order ¶ 31). In other words, the protective order is designed to facilitate naming these non-party employees as defendants in a public complaint. The Trustee candidly concedes as much: "If disclosure of the records will support that the Trust has claims, then they *must* be turned over." Opp. at 13. QPWB's concern was never limited to the public

SNELL & WILMER

docket; it is the disclosure to, and use by, the adverse party who has announced his intent to sue. A protective order that permits exactly that use is no cure.

***4. In re North Plaza Does Not Control.***

The Trustee relies on *In re North Plaza, LLC*, 395 B.R. 113 (S.D. Cal. 2008), for the proposition that irreversibility of disclosure does not automatically warrant a stay. Opp. at 12-13. According to the Stay Opposition, the court there was concerned with a movant who lacked a substantial merits case and could use a "meritless privilege claim" to obtain a stay as of course. *Id.* Here, QPWB presents substantial questions on which courts – including in this District – have divided, and the harm falls principally on non-parties who have also independently objected. Under *Leiva-Perez*, a high probability of irreparable harm coupled with serious legal questions supports a stay. 640 F.3d at 966-68.

***5. Refusing to Waive the Employees' Limitations Defenses Is Not "Self-inflicted" Harm.***

The Trustee contends QPWB "manufacture[d]" its harm by declining, on behalf of its employees, the Trustee's offer to accept anonymized information if the unidentified attorneys signed tolling agreements. Opp. at 13. That offer conditioned privacy on the surrender of substantive legal rights by non-parties QPWB does not represent. QPWB simply does not have the power or authority to agree to a tolling agreement for individual it does not represent. A party does not forfeit irreparable harm by refusing to purchase relief with someone else's defenses.

***6. The Malpractice-related Requests and Examination Are Also Subject to the Stay.***

The Stay Opposition contends that QPWB asserts no harm as to the malpractice-related requests and testimony topics. Opp. at 1, 4 n.5. This is simply not true. QPWB's Motion identifies the harm it faces after disclosure of such items: it will "permanently los[e] the procedural protections that would govern discovery in an adversary proceeding or other civil proceeding – relevance, proportionality, and the full right to counsel and objection – which is the very harm the pending-proceeding rule exists to prevent." *See* [ECF No. 1057, at 13]. Moreover, QPWB's jurisdictional and district-of-compliance challenges go to the Order as a whole: if this Court was

SNELL & WILMER

not the proper compliance court, or should have deferred, the entire Order fails. And compelling a non-party to sit for a Rule 2004 examination – without the procedural protections available in an adversary proceeding or other civil proceeding – by an adversary who has declared himself "prepared to file suit immediately" is an injury that cannot be undone after the fact. *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009); ECF No. 1028 at 3, 15-16, 22-23.

**7. *QPWB has provided the Trustee the necessary information to proceed with his alleged fraudulent transfer claims.***

For the Trustee's alleged fraudulent transfer claims, he argues that he "cannot name transferees he cannot identify." [ECF No. 1091, at 7]. His theory is that he holds potential claims against "the 80 to 100 attorneys described by QPWB as 'rainmakers' or as heads of 'business units' within QPWB," but does not know who those people are. *See* [ECF No. 1091-2, at 2]. He requests that QPWB "produce the: (i) agreement between QPWB and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026." *See* [ECF No. 1091-2, at 2].

The fault in this argument is that "the 80 to 100 attorneys" ***cannot*** be defendants to a fraudulent transfer action because they ***are not*** shareholders or equity holders, but W-2 employees whose compensation falls outside the scope of a fraudulent transfer claim. "Generally, payments of salary are presumed to have been made for fair consideration. This rebuttable presumption makes for 'tough sledding' by bankruptcy trustees inclined to attack employee compensation as fraudulent transfers." *See In re Ballantyne Brands, LLC*, 656 B.R. at 139–40 (Bankr. W.D.N.C. 2023). These W-2 employees are not shareholders or equity holders, do not receive distributions of general firm profits, and do not exercise any operational control over QPWB—which QPWB has repeatedly stated the same in its discussions with the Trustee and filings with this Court. *See* [ECF No. 1028-1, at 3].

Recognizing that corporate profit distributions ***might*** support a potential fraudulent transfer claim, QPWB provided the Trustee documents that demonstrate there are only two possible defendants in such an action: Eric Boyer and Edward Prieto. On October 28, 2026, ahead of the Order's production deadline, QPWB produced its corporate governance records to the Trustee,



4899-5282-6588

SNELL & WILMER

designated as confidential under the Order. *See* **Exhibit 1** (filed under seal); ECF No. 1046 ¶ 4. These documents include QPWB's: (1) Articles of Incorporation, (2) Original Bylaws and Minutes, (3) January 1, 2004 Shareholder Agreement, (4) Minutes from July 1, 2026, (5) Additional Minutes from July 1, 2026, (6) Affidavit of Lost Corporate Record Book and Corporate Records, and (7) Amended and Restated Bylaws. Exhibit 1.

Together, these records trace QPWB's ownership from its formation to the present, and they show that QPWB's ownership has always been held by a small handful of attorneys and has narrowed over time. When QPWB was organized in the late 1990s, it had only four shareholders. *Id.* at QPWB000002-07. In the early 2000s, after attorney departures, the composition of the shareholder group changed, but QPWB still had only four shareholders. *Id.* at QPWB000030. In 2026, QPWB updated its governance documents to reflect the death, departure, and incapacity of former shareholders, leaving only two shareholders: Mr. Boyer and Mr. Prieto. *Id.* at QPWB000032-34. At no point in its history has QPWB had more than five shareholders, let alone the 80 to 100 attorneys the Trustee now targets.

From these documents it is clear that QPWB's ***only*** shareholders who could possibly receive firm profit distributions are Eric Boyer and Edward Prieto, ***not the "80 to 100 attorneys"*** the Trustee is seeking discovery on. The Trustee now knows the identity of every QPWB shareholder; there is no one left to identify. Providing the Trustee with information on these employees would not support a claim; it would only violate their privacy rights.

**C. QPWB Has Shown a Substantial Case on the Merits.**

***1. The Leave to Appeal Question Favors QPWB, Not the Trustee.***

The Trustee argues QPWB is unlikely to obtain leave to appeal under 28 U.S.C. § 158(a)(3). Opp. at 13-14. Whether to grant leave is for the District Court, and the Stay Motion does not ask this Court to decide it. Mot. ¶ 17. In any event, the 28 U.S.C. § 1292(b)-type factors are satisfied. A "substantial ground for difference of opinion" exists where "novel and difficult questions of first impression are presented" or where "fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (substantial ground exists where "the circuits are in dispute

SNELL & WILMER

on the question and the court of appeals of the circuit has not spoken on the point”). That is this case. The Stay Opposition concedes that its reading of Rule 45(c), Fed. R. Civ. P., rests on *Conservation Law Found., Inc. v. Equilon Enters. LLC*, No. 17-396-WES, 2025 WL 2821238 (D.R.I. Oct. 3, 2025) and *Dyno Nobel, Inc. v. Johnson*, 586 F.Supp.3d 657 (E.D. Ky. 2022), while QPWB’s rests on *York Holding, Ltd. V. Waid*, 345 F.R.D. 626 (D. Nev. 2024), *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628 (C.D. Cal. 2018), *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21CV1197-W-MDD, 2022 WL 2820667 (S.D. Cal. July 18, 2022), *The Marshall Project, Inc. v. City of Cleveland*, No. 24-MC-309 (VEC), 2024 WL 4589667 (S.D.N.Y. Oct. 28, 2024), *Roberts v. Randy LL Corp.*, No. 3:24-CV-00523-HZ, 2025 WL 2717823 (D. Or. Sept. 24, 2025), and *Dellaportas v. Shahin*, No. 24-CV-793, 2025 WL 3019810 (S.D.N.Y. Oct. 29, 2025) Opp. at 15; Mot. at 9. Neither the Ninth Circuit nor the Ninth Circuit Bankruptcy Appellate Panel has resolved the question. That is the definition of a question on which fair-minded jurists disagree.

The questions are also controlling and legal: what “the place of compliance” means for a multistate entity under Rule 45(c) and (d), Fed. R. Civ. P., and whether an issuing court may enforce a duplicate subpoena while an earlier-filed motion to quash is pending in another district. Their resolution would dispose of the Order. And immediate review would materially advance the matter because, absent review now, the issues will evade review entirely: compliance will moot them.

***2. Abuse of Discretion Review Does Not Insulate a Legal Error.***

The Trustee invokes the abuse of discretion standard of review. Opp. at 14-15. QPWB does not concede to that. But regardless, a court “by definition abuses its discretion when it makes an error of law.” *Koon v. United States*, 518 U.S. 81, 100 (1996). Moreover, the meaning of “where compliance is required” under Rule 45, Fed. R. Civ. P., and the scope of the compliance court’s authority are questions of law reviewed de novo. *See United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (first step of abuse of discretion review asks whether the court identified the correct legal rule).

***3. The Place-of-compliance Question Is Substantial.***

The Trustee attempts to distinguish *York Holding* on the ground that the non-party there had no Nevada presence. Opp. at 15. But *York Holding*’s holding – that the place of compliance is “the

location of the subpoenaed nonparty," not the location a subpoenaing party writes on the subpoena – is a statement about what Rule 45, Fed. R. Civ. P., means, and courts applying it to entities have located the entity where it is headquartered and where its custodians and records are, notwithstanding a local office. 345 F.R.D. at 628-29; *Europlay Cap. Advisors*, 323 F.R.D. at 629; *Fed. Ins. Co.*, 2022 WL 2820667, at *7, *9; *Roberts*, 2025 WL 2717823, at *6; *The Marshall Project*, 2024 WL 4589667, at *3; *Dellaportas*, 2025 WL 3019810, at *1. The Trustee's reading means a firm with offices in 35 states may be compelled in any of them at the subpoenaing party's election.

The Trustee's new factual assertions do not change the analysis – and largely undermine his position. The Stay Opposition devotes pages to showing that the attorneys who tried the *Sanchez* Lawsuit work in Texas, New Mexico, Arizona, and Georgia. Opp. at 5-7. Not one of them is in Nevada. The Stay Opposition likewise does not identify a single responsive compensation record maintained in, or a single compensation decision made in, the Henderson, Nevada office. Its contention that electronic records are "in all likelihood" accessible from Henderson, Nevada is speculation – the very thing the Trustee says cannot support a showing. Opp. at 16. And the location of QPWB's litigation counsel or the client file sent to its counsel says nothing about where *QPWB* resides or regularly transacts business for Rule 45, Fed. R. Civ. P., purposes.[2] Opp. at 5-7.

Nor did QPWB's participation in this Court through Nevada counsel, or its filing of motions to protect its rights against a Trustee pursuing it here, transform its Henderson, Nevada office into the place where it must comply with a Rule 45, Fed. R. Civ. P., subpoena. Retaining local counsel to respond to proceedings the Trustee initiated is not "regularly transact[ing] business in person" for purposes of Rule 45(c), Fed. R. Civ. P..

***4. Withdrawal of the Florida Subpoena Did Not Moot the Deference Question.***

The Trustee argues the Florida-deference issue is moot because the Florida Subpoena was

[2] QPWB objects to the new evidence raised in the Stay Opposition and Supplemental Gray Kozlowski Declaration on the bases, among others, of lack of foundation, hearsay, and irrelevance to the stay factors. Given that QPWB had less than 24 hours to prepare this Stay Reply, QPWB reserves all objections to the accuracy of any and all factual statements made in the Stay Opposition and Supplemental Gray Kozlowski Declaration as well.

SNELL & WILMER

SNELL & WILMER

withdrawn. Opp. at 17. But the Trustee withdrew that subpoena only after obtaining the Order here – while the earlier-noticed Florida Motion was pending and set for hearing. Mot. ¶¶ 9, 14, 16. The question on appeal is whether this Court properly entered the Order when it did, and that question is unaffected by the Trustee's later decision to abandon the Florida forum after securing a ruling in Nevada. A litigant cannot moot a challenge to its conduct by completing it. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (voluntary cessation by a party whose conduct is challenged does not moot the issue). The Trustee's contention that the Nevada Subpoena was issued a day before QPWB filed the Florida Motion omits that QPWB had already objected to the Florida Subpoena on September 23, 2026, and advised that it would move to quash in Florida. Opp. at 16; Mot. ¶¶ 7-9. The Nevada Subpoena – with the same topics and requests as the Florida Subpoena – followed 5 days after QPWB objected to the Florida Subpoena, without notice to QPWB's counsel. Mot. ¶¶ 7-9. *See, e.g.*, *Pac. Bell Internet Servs. V. Recording Industry Ass'n of America*, No. C03-3560-SI, 2003 WL 22862662, *6 (N.D. Cal. Nov. 26, 2003) (discouraging "forum shopping in subpoena matters" that "would create duplicative litigation").

***5. The Scope and Pending-proceeding Questions Remain Substantial.***

The Trustee argues that a fraudulent transfer "claim" need not be reduced to judgment. Opp. at 18 (citing NRS 112.150(3)). QPWB does not contend otherwise; it said so in the Stay Motion. Mot. at 11. The question is whether Rule 2004, Fed. R. Bankr. P., which reaches "the acts, conduct, or property" of *the debtor*, may be used post-confirmation to obtain the payroll of a non-debtor's, non-party employees in order to identify new prospective defendants. *In re Rhodes Cos., LLC*, 475 B.R. 733 (D. Nev. 2012), involved discovery from recipients of the *debtor's* transfers, not the employees of a non-debtor third party. And Rule 2004, Fed. R. Bankr. P., "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Mastro*, 585 B.R. 587, 597 n.12 (B.A.P. 9th Cir. 2018).

On the pending-proceeding rule, the Trustee does not dispute that he identified QPWB as a litigation target, sent a 26-page demand "organized as [the] complaint will be," declared himself "prepared to file suit immediately," and set a September 11, 2026 filing date before turning to Rule

2004, Fed. R. Bankr. P. He argues only that no adversary proceeding is pending. Opp. at 18. But courts have refused to allow a party to "delay the filing of an adversary proceeding so that it can avoid the 'pending proceeding' rule." *In re Defoor Ctr., LLC*, 634 B.R. 630, 639-40 (Bankr. M.D. Fla. 2021). Whether that principle applies here is, at a minimum, a serious question.

Finally, the Trustee's "inconsistency" argument – that QPWB's separate motion (*i.e.*, ECF No. 1007) asks this Court to direct the Trustee not to commence litigation – is beside the point. QPWB's position in that contested matter does not alter the Trustee's ability to file suit, and does not bear on whether the Trustee may use Rule 2004, Fed. R. Bankr. P., to obtain litigation discovery against an identified target without the protections of the Federal Rules of Civil Procedure.

**D. A Short Stay Will Not Substantially Injure the Trustee.**

The Trustee's harm argument rests on the limitations period, but his own papers defeat it. His counsel's declaration describes the malpractice claims as "developed," and he has repeatedly said he is prepared to file them immediately. ECF No. 1016 ¶ 11; ECF No. 1028 at 3, 22-23. Nothing in the Order or a stay prevents him from doing so today. The Stay Opposition now refers to a November 25, 2026 date, while the Trustee's counsel's declaration was previously cited for November 23, 2026 – and in either event the Trustee "does not concede" that any date is operative. Opp. at 19 n.16. A party cannot claim prejudice from a deadline it disputes.

As for the transferee claims, the Trustee concedes they are governed by a different limitations period. Opp. at 19. Under Nevada law, a fraudulent transfer action generally may be brought within 4 years after the transfer. NRS 112.230(1). The transfers at issue date from late 2024 forward. The Trustee's preference to bring "one coordinated action," is a matter of convenience, not substantial injury. Opp. at 19. Once the Trustee files suit, he may pursue discovery under the Federal Rules of Civil Procedure and add parties as the rules permit.

The Trustee's dissipation theory is unsupported by evidence. Opp. at 19. QPWB is an operating law firm with more than 660 attorneys; the Trustee offers no evidence that any asset will become unreachable during the brief period required for appellate review. And the "delay" narrative is unfounded: QPWB moved promptly at every step, has already provided the Trustee hundreds of pages of financial documents and a financial-process interview, and filed its notice of appeal,

SNELL & WILMER

motion for leave to appeal, and Stay Motion within a few days of the Order. Boyer Decl. ¶¶ 20-21; ECF Nos. 1050, 1052, 1057-1059.

**E. *Kirkland* Supports QPWB's Request For A Stay.**

The Trustee contends that *Kirkland* addressed mandamus rather than the stay factors. Opp. at 20 (citing 75 F.4th 1030). QPWB cited *Kirkland* for the Ninth Circuit's recognition that non-parties "could not be expected" to obtain review by submitting to contempt – a point that bears directly on the public interest in meaningful review. 75 F.4th at 1048 (quoting *SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 913-14 (9th Cir. 1999)). And the Trustee's attempt to distinguish *Kirkland* as involving disclosure "which could not be undone," concedes the point: production here likewise cannot be undone. Opp. at 20. The public interest is served by uniform application of Rule 45, Fed. R. Civ. P., to protect non-parties, by protection of the privacy of non-party employees, and by preserving appellate review. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007). The interest in efficient estate administration is not impaired by a short stay of discovery directed to a non-debtor.

**F. A Bond Is Not Required.**

Rule 8007(c), Fed. R. Bankr. P., permits, but does not require, a bond. The purpose of security is to protect the appellee against loss caused by the stay itself. The Trustee identifies no such loss. Instead, he asks for 5% of "the over $400 million in asserted damages" – the alleged value of malpractice claims that have not been filed, against a non-party, that are not before this Court, and that a stay of a discovery order does not affect. Opp. at 3, 21. The Order is a discovery order, not a money judgment; a stay does not impair the Trustee's ability to collect anything. A $20 million bond bears no relationship to any harm from a stay, and would operate only to foreclose appellate review. No bond, or at most a nominal bond, is appropriate.

**G. QPWB Has Not Delayed.**

The Trustee contends QPWB's urgency is self-inflicted because it waited until October 23, 2026 to seek a stay. Opp. at 21. The Order was entered on October 19, 2026; QPWB filed its notice of appeal on October 22, 2026 and the motion for leave to appeal and Stay Motion – with a motion for an order shortening time – the next day. ECF Nos. 1050, 1052, 1057-1059. That is not delay.

SNELL & WILMER

Rule 8007(a)(1), Fed. R. Bankr. P., required QPWB to seek relief here first. A temporary stay of the October 30, 2026 and November 4, 2026 deadlines, for a period sufficient to permit the District Court to consider a stay under Rule 8007(b), Fed. R. Bankr. P., preserves the appellate court's ability to act and imposes no meaningful prejudice on the Trustee.

## III. CONCLUSION

For these reasons and those stated in the Stay Motion, QPWB respectfully requests that this Court: (i) stay the Order pending resolution of QPWB's pending motion for leave to appeal and, if leave is granted, the appeal, without the requirement of a bond; (ii) alternatively, temporarily stay the compliance deadlines in the Order for a period sufficient to permit QPWB to seek a stay from the District Court under Rule 8007(b), Fed. R. Bankr. P.; and (iii) grant such other relief as the Court deems just and proper. QPWB reserves all rights, including its objections to service and its right to withhold consent to the entry of final orders on matters beyond this discovery dispute.

Dated: October 29, 2026.

SNELL & WILMER L.L.P.

*/s/ Bob L. Olson*

Bob L. Olson (NV Bar No. 3783)
Alex L. Fugazzi (NV Bar No. 9022)
Charles E. Gianelloni (NV Bar No. 12747)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135

*Attorneys for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Eddie Prieto*

SNELL & WILMER

# EXHIBIT 1

(Under Seal)

EXHIBIT 1