GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: November 17, 2026<br>Hearing Time: 10:30 a.m. |

**OPPOSITION TO THE MOTION OF QUINTAIROS, PRIETO, WOOD & BOYER, P.A. FOR (I) AN ORDER CONFIRMING THAT THE AUTOMATIC STAY AND PLAN INJUNCTION ARE INAPPLICABLE TO ITS PROPOSED DECLARATORY JUDGMENT ACTION, OR (II) IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY AND PLAN INJUNCTION, AND FOR LEAVE UNDER THE BARTON DOCTRINE**

Michael Carmel (the "Trustee"), the Liquidation Trustee of the NuMale Liquidation Trust (the "Trust") and the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP ("GTG"), which also represents Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam (collectively, the "Individuals"), hereby submits this Opposition (the "Opposition") to the *Motion of Quintairos, Prieto, Wood & Boyer, P.A. for (I) an Order Confirming that the Automatic Stay and Plan Injunction are Inapplicable to its Proposed Declaratory Judgment Action, or (II) in the Alternative, Relief from the Automatic Stay and Plan Injunction, and for Leave Under the Barton Doctrine* [ECF No. 1010] (the "Standing Motion") filed by Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos" or "QPWB"). A proposed form of order denying the Standing Motion is attached hereto as **Exhibit "1"**.

This Opposition (at times referred to as the "Standing Opposition") is made and based upon the Memorandum of Points and Authorities herein; the *Omnibus Declaration of Talitha Gray Kozlowski, Esq.* (the "Gray Kozlowski Decl.") filed commensurately herewith in conformity with Local Rules[1] 9014(c) and (d); the papers and pleadings on file in the Debtors' bankruptcy cases (the "Chapter 11 Cases"), judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b), made applicable in bankruptcy cases pursuant to Rule 9017; and any further argument and evidence the Court may consider.

. . .

. . .

. . .

. . .

[1] All references herein to "Rule" or "Fed. R. Bankr. P." are to the Federal Rules of Bankruptcy Procedure; all references to "Civil Rule" are to the Federal Rules of Civil Procedure; all references to "Chapter" or "Section" are to the applicable provisions of the Bankruptcy Code, 11 U.S.C. § 101 – 1532 (the "Bankruptcy Code"); and all references to "Local Rule" are to the Local Rules of Bankruptcy Practice for the U.S Bankruptcy Court for the District of Nevada.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Quintairos' Standing Motion is a collateral attack on this Court's 9019 Order,[2] Confirmation Order,[3] and the Findings in support of the Confirmation Order.[4] Quintairos might use creative phrasing and identify the incorrect legal standard as stay relief, but there can be no mistake: the relief Quintairos seeks is to unwind Plan[5] confirmation, undo this Court's final orders, disrupt the Liquidation Trust Agreement, and splinter the plaintiffs that are pursuing Litigation Claims against Quintairos with the Trustee at the helm (in conformity with the confirmed Plan).

Quintairos' Standing Motion is an effort to wrest control of a litigation opponent before the Trustee even files suit to liquidate the Litigation Claims against Quintairos expressly preserved in the confirmed Plan. If the Standing Motion is granted, creditors of the Debtors' bankruptcy estates will be harmed, and the finality of this Court's orders will be disturbed. The Standing Motion—***filed more than one year after the Plan was confirmed***, more than ***thirteen months*** after the 9019 Order was entered, and nearly one year after the Trust was formed—seeks to unwind all three of these foundational elements of the Debtors' post-confirmation Chapter 11 Cases. Even *if* Quintairos were able to unwind all of these events (and, *it can't*), Quintairos is late to the game, having waited more than one year after entry of the Confirmation Order and Findings, and well beyond one year after the 9019 Order was entered, to challenge their terms—longer than any period of time the Bankruptcy Code provides for affording such relief.

Quintairos does not get to belatedly attack the Confirmation Order and Findings, attempting to unwind them to suit Quintairos' preference. This Court has jurisdiction to adjudicate

---

[2] *Order Approving Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §§ 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* [ECF No. 582] ("9019 Order").

[3] The *Order Confirming the Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 727] ("Confirmation Order").

[4] *Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 726] ("Findings").

[5] The *Joint Plan of Reorganization* [ECF No. 434] (as confirmed, the "Plan").



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

the Standing Motion, and Quintairos' request that this Court grant it leave to have *another* court interpret the Confirmation Order reflects Quintairos' fundamental misunderstanding of bankruptcy law and lack of familiarity with the operative Plan and confirmation filings and orders in these Chapter 11 Cases. The Standing Motion fails to demonstrate how leave under the *Barton* doctrine is warranted. In all respects, the Motion must be denied.[6]

The Trustee seeks outright denial of the Standing Motion. However, should this Court not deny Quintairos' Standing Motion outright, the Trustee requests, pursuant to Local Rule, that the November 17, 2026, hearing on the Standing Motion be set as an initial hearing, and that the Court schedule an evidentiary hearing on the Standing Motion, at which evidentiary hearing the Trustee will present the additional evidence he intends to obtain from depositions which will take place in the interim.

## II. STATEMENT OF FACTS

1. On January 22, 2025 ("Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and on April 7, 2025, the Trustee was appointed. *See, e.g.*, ECF Nos. 1 and 157.

2. As a result of the jury verdict in the Sanchez Action, Mr. Sanchez filed his proof of claim in the Chapter 11 Cases in an amount exceeding half a billion dollars. *See* Claim No. 7 filed in Bankr. D. Nev. Case No. 25-10341-nmc, and Claim No. 3 filed in Bankr. D. Nev. Case No. 25-10347-nmc (each in the asserted amount of $579,442,390.01 as of the Petition Date).

3. On August 1, 2025, the Trustee filed the Plan, and, after a confirmation hearing on September 24, 2025, the Confirmation Order was entered on October 7, 2025. *See* ECF Nos. 434, 448-450, 726, 727.

---

[6] In the interest of brevity, the factual and legal analysis set forth in the *Opposition to the Motion of Quintairos, Prieto, Wood & Boyer, P.A. (I) for Relief From the Confirmation Order and Related Orders Under Fed. R. Civ. P. 60(b), Made Applicable By Fed. R. Bankr. P. 9024, as Applied to QPWB; (II) to Remove Michael W. Carmel as Liquidation Trustee; (III) to Disqualify Garman Turner Gordon LLP as Counsel to the Liquidation Trustee; and (IV) for Related Relief; and Memorandum of Points and Authorities* is incorporated herein by this reference.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

4. Pursuant to the confirmed Plan and the Global Settlement Agreement (as defined in the Plan), the Sanchez Claim was allowed in the significantly reduced amount of $410,000,000. *See, e.g.*, Plan (ECF No. 434) at §§ 1.1.128, 3.2, 4.9. Beazley, the insurer that retained Quintairos to defend the defendants to the Sanchez Action, paid the Debtors' bankruptcy estates $108.5 million to resolve the estates' bad faith insurance claims against Beazley. Significantly, the malpractice, fraudulent transfer, and related claims transferred to the Trust for prosecution on behalf of the estates' creditors (i.e., the Litigation Claims against Quintairos) arise from the same underlying misconduct: the gross malfeasance of Quintairos and its attorneys in their representation of the defendants in the Sanchez Action. The magnitude of Beazley's settlement underscores the extraordinary financial consequences of that misconduct.

5. Pursuant to the confirmed Plan, the Trust was formed. Consistent with the confirmed Plan and the Trust Agreement, the Trustee undertook his investigation of the Litigation Claims against Quintairos.

6. On October 6, 2025, the Trustee sent Quintairos a demand for the firm's entire NuMale client file (the "<u>NuMale Client File</u>"). *See* **Exhibit 54** to Gray Kozlowski Decl.

7. Quintairos produced only part of the file. This was followed by a second turnover demand issued on behalf of the Trustee on December 17, 2025, identifying entire categories of documents absent from the production, and a "THIRD AND FINAL DEMAND" on January 7, 2026, as well as a fourth demand sent on February 3, 2026. *See* **Exhibits 56, 57, 59** to Gray Kozlowski Decl.

8. Quintairos produced what it represented was the balance of the file on February 19, 2026, more than four months after the first demand. *See* Gray Kozlowski Decl. ¶ 9.

9. On May 18, 2026, the Trustee issued correspondence outlining his analyses then-to-date, which letter did not actually make a formal demand. *See* **Exhibit 61** to Gray Kozlowski Decl.

10. Thereafter, the Trustee participated, in good faith, in settlement negotiations with Quintairos in an effort to reach a consensual resolution without need to file suit, and during that



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

time he held in abeyance discovery necessary to his investigation. Quintairos provided limited information during those negotiations, conditioned on a non-disclosure agreement that bars the Trustee from using it outside the negotiations. However, after the Trustee made two settlement offers to Quintairos, to which Quintairos refused to even provide a counter, discussions concluded on September 10, 2026. Accordingly, and appropriately, the Trustee then proceeded with Rule 2004 discovery in furtherance of completing his investigation of the Trust's claims. *See* Gray Kozlowski Decl. ¶ 10.

11. Quintairos, instead of meaningful engagement, issued the Extortion Letter threatening a myriad of ills against the Trustee and his counsel. *See* **Exhibit 62** to Gray Kozlowski Decl ("Extortion Letter").

12. The Standing Motion is more of this same frivolity from Quintairos. In lieu of engaging meaningfully, Quintairos initiated frivolous motion practice to untimely and improperly collaterally attack the Confirmation Order, Findings, and 9019 Order in an effort to stop the Trustee's investigation and impending lawsuit against the firm.

13. Because the Standing Motion is so frivolous, on October 26, 2026, the Trustee issued a Rule 9011 letter. *See* Gray Kozlowski Decl. ¶ 11. The Trustee will be seeking sanctions if the Standing Motion is heard.

14. As of this filing, Quintairos has not withdrawn the Standing Motion. Thus, the Trustee files this Opposition.

## III. LEGAL ARGUMENT

The Standing Motion asks this Court to construe an injunction that does not exist, invents a position regarding the automatic stay that the Trustee never took, and seeks leave to have another court declare void a confirmed Plan provision by mis-describing it.

. . .

. . .

. . .

. . .



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

**A. Quintairos Is Wrong on the Law: the Automatic Stay Does Not Apply.**

The Standing Motion demonstrates Quintairos has a fundamental misunderstanding of bankruptcy law.[7] Unequivocally, the automatic stay does not apply[8] to requests to modify a confirmed plan or alter the terms of a confirmation order. *In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 928 (B.A.P. 9th Cir. 1994) ("The post-confirmation modification of a plan is governed by 11 U.S.C. § 1127(b).").

**B. The Standing Motion Is a Collateral and Improper Attack on the Settlement Order, the Findings, the Confirmation Order, and the Terms of the Trust Agreement.**

Under Section 1141(a), a confirmed plan binds all parties, and a later effort to relitigate its terms is an impermissible collateral attack. *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 972-73 (9th Cir. 2005). The relief Quintairos seeks through its Standing Motion is a collateral attack, as such relief would alter the effect of material provisions of the confirmed Plan more than one year post-confirmation. Though Quintairos calls it by a different name, the Standing Motion challenges the Confirmation Order and the schema established by the Global Settlement Agreement, the Plan, and the Trust Agreement—all of which were approved by this Court more than one year ago. Such relief cannot be obtained through an untimely, impermissible collateral attack on the Confirmation Order; even if Quintairos could demonstrate an entitlement to relief (and it cannot), the time to do that has long since run. *See* 11 U.S.C. §§ 1127(b), 1144.

---

[7] For example, the Standing Motion discusses the injunction at Plan § 8.6, asking this Court to make a declaration that the Standing Motion does not run afoul of the Plan injunction. *See, e.g.*, Standing Motion ECF No. 1010 at p. 5 of 15, ll.11-18, and § IV.B. at pp. 10-11 of 15. But the Findings and Confirmation Order make explicit that Plan § 8.6 (injunction) is "stricken in the[] entirety and of no force and effect . . ." *See* ECF No. 726 at ¶ 52. Arguing about an injunction that has been stricken from the Plan shows that Quintairos and its counsel have not read the operative documents.

[8] The Standing Motion represents that "the Trustee has taken the position that the automatic stay or the plan injunction may bar QPWB's proposed action," and that QPWB brings the motion for that reason. Standing Motion at § III.C. The Trustee took no such position. At the October 5, 2026, conference, GTG advised that the automatic stay did not apply and that it sounded as though QPWB was seeking to modify the Plan—something the Trustee would not agree to. Gray Kozlowski Decl. ¶ 4. QPWB's own declarant attributes no stay position to the Trustee; she reports that GTG described the filing as premature and stated that the appropriate course would be to seek modification of the Plan. *See* Savage Decl. [ECF No. 1010-1] at ¶ 6. The Standing Motion was filed on October 8, 2026—three days after the October 5, 2026, conference. *See* ECF No. 1010-1 ¶¶ 4, 7.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

The Settlement Order, the Findings, the Confirmation Order, and the terms of the Liquidation Trust Agreement were all approved by this Court and noticed to Quintairos more than one year ago. *See, e.g.*, ECF Nos. 582, 595, 726, 727. *See also* ECF Nos. 451, 586, 588, 595, 609, 732, 762, 774 (service records proving service of, *inter alia*, all Plan-related filings on Quintairos). *See also* **Exhibit 50** to Gray Kozlowski Decl. (Quintairos' own scanned copy of the notice of entry of the 9019 Order (bearing a scanned date of September 15, 202**5**, based on the document's own metadata), with the Plan and Global Settlement Agreement included therewith). There are mechanisms to challenge a confirmed plan—modification through Section 1127(b), revocation through Section 1144—and the time to pursue either has long since passed.

**1. Revocation and Modification of the Confirmed Plan Are Unavailable to Quintairos (and, Unwarranted in Any Event).**

"Taken together, '§§ 1127(b) and 1141(a) impose an important element of finality in chapter 11 proceedings, allowing parties to rely on the provisions of a confirmed reorganization plan.'" *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 46 (B.A.P. 9th Cir. 2012) (citation omitted). Here, neither provision of the Bankruptcy Code is available to Quintairos to alter the terms of the confirmed Plan.

First, revocation of the confirmed Plan in these Chapter 11 Cases is unavailable to Quintairos. "An order confirming a Chapter 11 reorganization plan may be revoked only in accordance with 11 U.S.C. § 1144[.]" *In re Orange Tree Assocs., Ltd.*, 961 F.2d 1445, 1447 (9th Cir. 1992) (citations omitted). "Section 1144 provides the only avenue for revocation of a confirmed plan." *In re Younessi*, 601 B.R. 815, 821 (9th Cir. 2019) (citation omitted). *See also In re Eliminator Custom Boats, Inc.*, 2019 WL 4733525, *9 (B.A.P. 9th Cir. 2019) ("Section 1144 is the exclusive means by which a plan can be revoked." (citation omitted)). 11 U.S.C. § 1144 begins with:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. . . .



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

"Congress has determined that a 180-day limitations period strikes the appropriate balance between the strong need for finality in reorganization plans and the interest in affording parties in interest a reasonable opportunity." *In re Orange Tree Assocs.*, 961 F.2d at 1447. "Section 1144's six-month time limit to file actions seeking revocation of a Plan is absolute, and no motion for revocation may be filed once the period has expired, regardless of the circumstances." *Huntington Banks of Mich. v. Felcor/Lax Holdings LP*, 9 Fed. Appx. 669, 670 (9th Cir. 2001) (citation omitted).

Here, the time to seek revocation of the Plan has long since passed, and there is zero record to support the notion that the confirmation order was "procured by fraud[,]" as the statute requires. The Confirmation Order and Findings were entered on October 7, 2025, and the Standing Motion was filed more than one year later (October 8, 2026)—well beyond the one hundred eighty-day "absolute" deadline imposed by the Bankruptcy Code.

Second, modification of the confirmed Plan is unavailable to Quintairos. Section 1127(b) is "the exclusive means by which to modify a plan." *In re Eliminator Custom Boats, Inc.*, 2019 WL 4733525, *9 (B.A.P. 9th Cir. 2019) (citations omitted); *see also Alberta En. Partners v. Blast En. Servs., Inc. (In re Blast En. Svcs., Inc.)*, 593 F.3d 418, 427 (5th Cir. 2010) (Section 1127(b) "is 'the sole means for modification of the plan of reorganization after it has been confirmed.'" (citation omitted) (footnote omitted)). Section 1127(b) begins with:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, . . . .

11 U.S.C. § 1127(b). "Under § 1127(b), post-confirmation modification can only be initiated by the proponent of a plan or a reorganized debtor." *Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 234 (4th Cir. 1987). Here, Mr. Carmel as the Chapter 11 trustee was the Plan proponent, and it is without dispute that Quintairos is not the reorganized debtors. So Quintairos is not able to seek modification of the confirmed Plan. Moreover, the Plan has been substantially consummated—over $100 million has been distributed, all of the Debtors' assets have been transferred, and the Trust has been formed. As such, modification of the confirmed Plan in these



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

Chapter 11 Cases is not possible. *Cf. In re Coastline Care, Inc.*, 299 B.R. 373, 379 (Bankr. E.D.N.C. 2003) (noting that where the plan was substantially consummated, "§ 1127(b) bars the modification of the debtor's substantially consummated plan of reorganization.").

**2. Problematically for Quintairos, the Standing Motion Also Seeks Relief From a Plan Injunction that This Court Struck at Confirmation.**

The Standing Motion asks the Court "to hold that its proposed Complaint for Declaratory Relief does not violate the injunction set forth in Section 8.6 of the Plan," and quotes Section 8.6 from the Plan as filed. *See* Standing Motion [ECF No. 1010] at pp. 5, 11 & n.2 (citing "ECF No. 434 at 41"). The Findings provide that "Sections 8.5 and 8.6 of the Plan shall be stricken in their entirety and of no force and effect." ECF No. 726 at ¶ 52. A motion that seeks relief from a provision that the confirmed Plan does not contain demonstrates that no reasonable inquiry preceded it. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*). Quintairos' Standing Motion is a frivolous filing and demonstrates a lack of familiarity with not only the record in these Chapter 11 Cases but also a misunderstanding of the operative orders governing the Plan—including the Confirmation Order (which Quintairos' motion seeks to unwind).

**C. <u>To the Extent There Is a Jurisdictional Challenge to the Plan, Such Challenges Are the Exclusive Jurisdiction of the Bankruptcy Court.</u>**

"Bankruptcy courts have subject matter jurisdiction over proceedings 'arising under title 11, or arising in or related to cases under title 11.'" *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013) (citing 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1)). *See also In re Birting Fisheries, Inc.*, 300 B.R. 489, 498 (B.A.P. 9th Cir. 2003) ("A bankruptcy court has original and *exclusive* jurisdiction over bankruptcy cases." (citing 28 U.S.C. § 1334(a)) (emphasis in original)).

"Proceedings that 'arise under' or 'arise in' a case under the bankruptcy code are 'core' proceedings, . . . ." *Gray v. CPF Assocs. LLC*, 614 B.R. 96, 103 (D. Ariz. 2020) (citing *Stern v. Marshall*, 564 U.S. 462, 476-77 (2011)). "A core proceeding is one that invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Birting Fisheries, Inc.*, 300 B.R. 489, 499 (B.A.P. 9th Cir. 2003) (citation



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

omitted) (cleaned up). "Matters such as plan confirmation . . . are core proceedings." *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 790-91 (Bankr. E.D. Cal. 2018) (citing, *inter alia*, 28 U.S.C. § 157(b)(2)(L)). *See also In re Birting Fisheries*, 300 B.R. at 499 ("core proceedings include, but are not limited to: confirmation of plans . . ." (citations omitted)). *See also* 28 U.S.C. § 157(b) ("Core proceedings include, but are not limited to—. . . (L) confirmation of plans[.]").

The Ninth Circuit has recognized that post-confirmation bankruptcy jurisdiction is more narrow than pre-confirmation jurisdiction. *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005). However a bankruptcy court still has jurisdiction "to interpret and enforce" its own prior orders such as a confirmed plan. *Gray v. CPF Assocs.*, 614 B.R. at 104 (citations omitted).

> A court's jurisdiction to interpret or enforce prior orders is often called "ancillary jurisdiction." *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130-1131 (9th Cir. 2010). "Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." *Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 549 (9th Cir. 2006).

*Gray v. CPF Assocs.*, 614 B.R. at 104. Actions enforcing or interpreting a bankruptcy court's prior order are in effect "a continuation of the original proceeding," such that if the original proceeding was "core" then the subsequent proceeding is, too. *See McCowan v. Fraley (In re McCowan)*, 296 B.R. 1, 3-4 (B.A.P. 9th Cir. 2003) (citations omitted). *See also Gray v. CPF Assocs.*, 614 B.R. at 105 ("[T]he proceedings that produced the confirmed plan were 'core'—a fact which Appellants do not, and cannot, dispute—meaning subsequent proceedings to enforce those orders were 'core' as well." (citations omitted)). Furthermore, "Many courts have reasoned that *Stern* does not affect the bankruptcy court's ability to interpret and enforce its own orders—a matter that is integrally related to the bankruptcy court's function. [collecting cases] . . . In other words, not only is the ability of the bankruptcy court to enforce its own orders a matter integrally related to a core function of that court but, when those efforts implicate the confirmed plan, the proceeding also 'stems from the bankruptcy itself' such that *Stern* does not preclude final



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

adjudication." *Gray v. CPF Assocs.*, 614 B.R. at 105-06 (citations omitted).

"A post-confirmation proceeding involving a bankruptcy court's enforcement of its own order is a core proceeding." *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 219 (D. Hawai'i 2006) (citations omitted).

> Any other conclusion (i.e., that the bankruptcy court's ancillary jurisdiction is "non-core") would create an anomalous situation where the bankruptcy court would be forced to submit proposed findings for district-court approval to enforce its own orders, hindering its ability "to manage its proceedings, vindicate its authority, and effectuate its decrees," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994), and effectively rendering its ancillary jurisdiction a dead letter.

*Gray v. CPF*, 614 B.R. at 105.

Bankruptcy courts may issue final orders and judgment in matters that are "core." *See In re Oakhurst Lodge, Inc.*, 582 B.R. at 790 ("Bankruptcy judges may issue final orders and judgments in matters that are core, . . ." (citations omitted)).

> If a matter is core, the statute **empowers the bankruptcy judge to enter final judgment** on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding de novo and enter final judgment.

*Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) (emphasis added).

Here, the Standing Motion seeks to disrupt the schema fixed by the Confirmation Order and Findings, including the confirmed Plan's incorporation of the 9019 Order. Thus, the Standing Motion asks this Court to interpret its Confirmation Order and Findings—a matter which is "core" and within this Court's jurisdiction to enter final judgment. Quintairos does not get to collaterally attack the Confirmation Order and ask another Court to interpret this Court's orders on "core" matters including plan confirmation. It is *this Court* that gets to make the final decision and enter judgment on "core" proceedings such as the interpretation and enforcement of its own Confirmation Order. Quintairos, by challenging the Confirmation Order and Findings, has



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

invoked this Court's "core" jurisdiction. The issue of Quintairos not "consent[ing]"[9] to this Court adjudicating a matter within its core jurisdiction is nonsensical. That is simply not how the statute works. This Court is empowered and authorized to issue final orders on matters within its "core" jurisdiction—and a motion collaterally challenging the confirmed Plan and asking this Court to re-write its Confirmation Order and Findings most certainly falls within the Court's "core" jurisdiction.[10]

Furthermore, while not a necessary prerequisite to invoking the Court's jurisdiction (because the Court's jurisdiction in this instance is statutory and core), the Findings expressly preserved for this Court the retention of jurisdiction "over all matters arising out of and related to this Confirmation Order and these Chapter 11 Cases, . . ." *See* ECF No. 726 at ¶ 101.[11] This clearly set forth the intention of the parties that the bankruptcy court will resolve post-confirmation disputes. This order was served on Quintairos in October of 2025 (more than one year ago). *See* ECF No. 732.

**D. <u>Nothing Precludes Joint Prosecution of the Malpractice Claims.</u>**

To begin with, Quintairos has the facts wrong: There was no assignment[12] of the Individuals' Litigation Claims. Moreover, joint prosecution of the Litigation Claims against

---

[9] *See, e.g.*, Standing Motion p. 3.

[10] The fact Quintairos filed a motion specifically invoking the Court's "core" jurisdiction but then states that Quintairos does not "consent" to the Court issuing a final order on such motion, highlights the dearth of understanding concerning foundational tenets of bankruptcy law.

[11] Which provides:

> The Court's retention of jurisdiction as set forth in Section 9 of the Plan comports with the parameters contained in 28 U.S.C. § 157. This Court does, and upon the Effective Date shall, to the full extent set forth in the Plan and herein, retain jurisdiction over all matters arising out of and related to this Confirmation Order and these Chapter 11 Cases, including the matters set forth in Section 9 of the Plan and Section 1142 of the Bankruptcy Code. The Court retains in all circumstances the jurisdiction to adjudicate any disputes arising from, arising out of, related to, regarding, or concerning the Plan, this Confirmation Order, and any and all transactions contemplated thereby. For the avoidance of doubt, the Court's retention of jurisdiction provided in Section 19 of the Global Settlement Order is incorporated in this Confirmation Order.

ECF No. 726 at ¶ 101.

[12] *See* Standing Motion at pp. 9, 12.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

Quintairos is entirely appropriate.

**1. Section 5.12 of the Plan Is Not an Assignment.**

Section 5.12 of the Plan, as confirmed, provides that the Trust and each Individual "shall jointly prosecute their respective" claims "under the sole direction and control of the Liquidation Trustee," that the Liquidation Trustee "agrees to consult with, and keep informed," the Individuals regarding negotiations, strategy, and any resolution, and that any monetary recovery will be allocated among the holders of the claims—by mediation, if they cannot agree. ECF No. 726 at ¶ 76. Each Individual keeps his claim and his share of any recovery. There was no assignment of any malpractice claim, and no assignment of any malpractice proceeds.

Despite this, the Proposed Complaint contemplated by the Standing Motion [ECF No. 1010-2] ("Proposed Compl.") calls Section 5.12 of the Plan a "purported transfer" and alleges that it transfers to the Trustee "control over the Individual NuMale Parties' legal malpractice claims together with the recovery on those claims." Proposed Compl. at ¶¶ 2, 20, 37. The second half of that allegation is false on the face of the Findings. And the authorities on which the Proposed Compl. relies address actual assignments. For example, *Tower Homes, LLC v. Heaton*, 377 P.3d 118 (Nev. 2016), addressed a stipulation handing a debtor's malpractice claim to its creditors to prosecute for *their own benefit* and recognized that an estate representative under Section 1123(b)(3)(B) may pursue such claims. *Beavor v. Tomsheck*, 519 P.3d 1260 (Nev. 2022), addressed an assignment of legal malpractice proceeds to the client's adversary in the litigation giving rise to the malpractice claim. The Nevada Supreme Court invalidated that assignment on public policy grounds but held that the injured client retained the ability to prosecute the malpractice claim. The Court expressly declined to decide whether the client had retained control of the litigation. *Beavor* therefore did not address the distinct arrangement here, under which the Individuals retain their claims and entitlement to any recovery while jointly prosecuting those claims under the Trustee's direction pursuant to the confirmed Plan. Neither case cited by



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

Quintairos involves a client who retains his own claim and agrees to its joint prosecution.[13]

Quintairos' efforts to re-cast the confirmed Plan as something it is not, in order to manufacture a "controversy" to get this case away from the Bankruptcy Court (who is most familiar with all facts and circumstances, having presided over the Chapter 11 Cases since their inception twenty-two months ago), should not be countenanced. The confirmed Plan simply does not effectuate an assignment of the Individuals' claims—and Quintairos characterizing the joint prosecution schema as such is Quintairos grasping at the proverbial straw.

**2. Joint Prosecution of the Litigation Claims Against Quintairos Is Entirely Appropriate.**

The confirmed Plan effectively provides a joint prosecution agreement whereby all who agree to participate get the rights to jointly prosecute their claims "under the sole direction and control of the Liquidation Trustee," who "agrees to consult with, and keep informed[]" the Individuals regarding negotiations, strategy, and any resolution; and, any monetary recovery will be allocated among the holders of the claims. ECF No. 726 at ¶ 76.

The joint prosecution of the Litigation Claims against Quintairos is entirely appropriate and is not precluded. Nevada, for example, has recognized joint prosecution of claims by multiple plaintiffs where the plaintiffs "assert any right to relief, jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[,]" and where "any question of law or fact common to all plaintiffs will arise in the action." *Cf. Seely v. Baca*, D. Nev. Case No. 3:15-cv-00118-MMD-VPC, Dkt. No. 18 (Mar. 1, 2016) (slip op.) at p. 2 (evaluating joinder under Civil Rule 20) (citation omitted).

The New Mexico Court of Appeals has recognized that a client's assignment of the first proceeds of a legal-malpractice recovery did not transfer ownership of the underlying cause of action. *See First National Bank of Clovis v. Diane, Inc.*, 698 P.2d 5, 13-14 (N.M. Ct. App. 1985).[14]

---

[13] Moreover, the Proposed Compl. seeks a declaration that each Individual's claim "remains vested in the individual client." Proposed Compl. at ¶¶ 2, 43. That is exactly what Section 5.12 of the confirmed Plan *already* provides. A declaratory complaint seeking *a declaration of what the confirmed Plan already says* presents no controversy. Yet another example of the frivolity exemplified by Quintairos in filing the Standing Motion.

[14] The Proposed Compl. cites *Wilson v. Berger Briggs Real Estate & Ins., Inc.*, 497 P.3d 654 (N.M. Ct. App. 2021),



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

In *Clovis,* the client remained the real party in interest and could pursue the action notwithstanding the proceeds assignment. And the Court of Appeals held that the full amount of the judgment entered against a client in an underlying action was recoverable in a malpractice action against the attorney whose negligence caused exposure. Although the decision did not address the precise joint prosecution arrangement created by Section 5.12 of the confirmed Plan, *Clovis* confirms that New Mexico law distinguishes ownership of a malpractice claim from rights relating to its recovery. 698 P.2d at 13-14.

The joint prosecution contemplated by the Confirmation Order is appropriate and permissible.[15]

**E. <u>Quintairos Has Not Carried the Burden of Suing the Trustee Personally, and Relief Under the *Barton* Doctrine Must Be Denied.</u>**

A party seeking leave under the *Barton* doctrine must make a *prima facie* case that its claims are not without foundation. *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 885-87 (B.A.P. 9th Cir. 1995) (citations omitted); *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970-76 (9th Cir. 2005). This applies whether the trustee is a bankruptcy trustee or a liquidating trustee. *In re Crown Vantage*, 421 F.3d at 973.

> Bankruptcy courts have applied a five-factor test to decide whether to grant leave to sue in another forum pursuant to *Barton*, or to retain jurisdiction over the claims in bankruptcy court. *See id.* at 976. These factors are: (1) whether the acts complained of "relate to the carrying on of the business connected with the property of the bankruptcy estate," (2) whether the claims concern the actions of the officer while administering the estate, (3) whether the officer is entitled to quasi-judicial or derived judicial immunity, (4) whether

---

for the proposition that New Mexico "treats claims arising from a relationship of personal trust and confidence, including the rendition of professional services by a lawyer, as too personal in character to be freely assigned." Proposed Compl. [ECF No. 1010-2] at ¶ 33. However *Wilson* concerned commercial insurance-procurement claims and held those claims assignable. It *did not decide whether legal malpractice claims may be assigned*, much less whether the joint prosecution arrangement established by the confirmed Plan in these Chapter 11 Cases constitutes an assignment. Here, too, Quintairos is stretching matters too far.

[15] In any event, Quintairos's Proposed Compl. (¶ 32) asserts that Nevada law governs, without addressing the Plan's governing-law provision, which provides that "the substantive law of New Mexico shall apply to the Quintairos claims described herein, since those claims arose from the Sanchez litigation that transpired in New Mexico." ECF No. 434 (Plan § 12.5). Yet another example of Quintairos disregarding the provisions of the confirmed Plan that its Standing Motion seeks to collaterally attack.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

> the plaintiff seeks a personal judgment against the officer and (5) whether the claims seek relief for breach of fiduciary duty, through either negligent or willful conduct.

*In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1096 (9th Cir. 2016) (citing *In re Kashani*, 190 B.R. at 886-87). "Even satisfying 'one . . . factor[ ] may be a basis for the bankruptcy court to retain jurisdiction.'" *Id.*

Here, Quintairos has not carried its burden of showing it is entitled to leave under the *Barton* doctrine to sue the Trustee. An evaluation of the *Kashani* factors shows that relief is not warranted, as nearly every factor favors denial of the Motion.

First, the acts that Quintairos complains of absolutely "relate to the carrying on of the business connected with the property of the bankruptcy estate," because Quintairos is trying to collaterally attack this Court's Confirmation Order, Findings, and 9019 Order by seeking leave for the District Court to interpret this Court's orders. This factor favors denial of the Motion. (Recall that, as noted in *Yellowstone* and *Kashani*, even satisfying one factor is sufficient for the Bankruptcy Court to deny the Standing Motion.)

Second, the second cause of action in the Proposed Compl. absolutely concerns "the actions" of the Trustee while administering the Trust. The complaint directly seeks to prevent the Trustee from bringing the complaint he is authorized to bring, as the second cause of action seeks a declaration that "the Trustee is not authorized to prosecute the claims, . . ." *See* ECF No. 1010-2 at p. 13 of 14. This factor also favors denial of the Standing Motion.

Third, the Trustee is entitled to quasi-judicial or derived judicial immunity, and thus leave to sue him cannot be granted. *Kashani* phrases this factor as, "Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity[.]" *Kashani*, 190 B.R. at 886. Here, the declaratory relief goes to the heart of the Trustee's duties and responsibilities as Trustee of the Trust. The declaratory relief claims directly attack this Court's Confirmation Order, Findings, and the Court-approved Liquidation Trust Agreement, and as such this factor favors denial of the Standing Motion seeking to sue the Trustee in another court.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

Fourth, Quintairos seeks a judgment preventing the Trustee from carrying out his duties and responsibilities of the Trust. The declaratory relief requested (specifically through the Proposed Compl. claim no. 2) is akin to a prohibition *directed at the Trustee*. As such, this factor (whether the plaintiff seeks a judgment against the officer) is met, and favors dismissal of the Standing Motion, too.

Fifth, the proposed complaint (although it does not even appear to correctly name the corporate defendants to the Sanchez Action[16]) does not allege a breach of fiduciary duty.

Further, the Plan's exculpation provision applies. *See* Plan § 8.7, as modified by ECF No. 726 at ¶ 29. *Kashani* directs that "the court in exercising its power to grant or deny leave to sue the trustee . . . should include the balancing of the interests of all parties involved." 190 B.R. at 886 (citation omitted). Here, the balance of all interests indicates that the Standing Motion should not be granted, and Quintairos should not be granted leave under the *Barton* doctrine to sue the Trustee in federal District Court. Quintairos' proposed claims have no merit and no foundation whatsoever; Quintairos is trying to weaponize the *Barton* doctrine to collaterally attack the Confirmation Order by mis-naming a Court-approved joint prosecution agreement as an "assignment"; manufacturing a "controversy" that the (nonexistent) "assignment" must be decided by the District Court; and seeking declaratory relief to prevent the Trustee from carrying out his duties and responsibilities under the Confirmation Order and Liquidation Trust Agreement.

Quintairos has in no way demonstrated an entitlement to relief, and the Standing Motion must be denied as to its request for leave under the *Barton* doctrine to sue the Trustee in federal District Court.

## IV. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court enter the Order attached hereto as **Exhibit 1,** thereby denying the Standing Motion. However, should this Court not deny the Standing Motion outright, the Trustee requests, in the alternative and pursuant to

[16] *Compare* ECF No. 1010-2, *with, e.g.*, **Exhibits 8, 18-38** of the Gray Kozlowski Decl.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725)777-3000

Local Rule, that the November 17, 2026, hearing on the Standing Motion be set as an initial hearing, and that the Court schedule an evidentiary hearing on the Standing Motion, at which evidentiary hearing the Trustee will present the additional evidence he intends to obtain from the depositions taking place in the interim.

Dated this 3rd day of November, 2026.

GARMAN TURNER GORDON LLP

By: _/s/ Talitha Gray Kozlowski_
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*