GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: November 17, 2026<br>Hearing Time: 10:30 a.m. |

**OPPOSITION TO MOTION OF QUINTAIROS, PRIETO, WOOD & BOYER, P.A. (I) FOR RELIEF FROM THE CONFIRMATION ORDER AND RELATED ORDERS UNDER FED. R. CIV. P. 60(B), MADE APPLICABLE BY FED. R. BANKR. P. 9024, AS APPLIED TO QPWB, (II) TO REMOVE MICHAEL W. CARMEL AS LIQUIDATION TRUSTEE, (III) TO DISQUALIFY GARMAN TURNER GORDON LLP AS COUNSEL**

**TO THE LIQUIDATION TRUSTEE, AND (IV) FOR RELATED RELIEF; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Michael Carmel (the "Trustee"), the Liquidation Trustee of the NuMale Liquidation Trust (the "Trust") and the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP ("GTG"), which also represents Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam (collectively, the "Individuals"), hereby submits this Opposition (the "Opposition") to the *Motion of Quintairos, Prieto, Wood & Boyer, P.A. (I) for Relief from the Confirmation Order and Related Orders Under Fed. R. Civ. P. 60(B), Made Applicable by Fed. R. Bankr. P. 9024, as Applied to QPWB, (II) to Remove Michael W. Carmel as Liquidation Trustee, (III) to Disqualify Garman Turner Gordon LLP as Counsel to the Liquidation Trustee and (IV) for Related Relief; and Memorandum of Points and Authorities* [ECF No. 1007] (the "Removal Motion") filed by Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB" or "Quintairos").

This Opposition is based on the Memorandum of Points and Authorities set forth herein; the chronological summary of the record attached hereto as **Exhibit A** (the "Global Timeline"); the summary of the relevant notices provided to QPWB in the Chapter 11 Cases and the Sanchez Action attached hereto as **Exhibits B and C**, respectively (the "Court Timelines," and together with the Global Timeline, the "Timelines"); the Omnibus Declaration of Talitha Gray Kozlowski ("Gray Kozlowski Decl.") filed concurrently herewith; the papers and pleadings on file in the Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to Fed. R. Evid. 201(b) and (c)(2), made applicable by Rule 9017; and any argument and evidence the Court may entertain at the hearing on the Removal Motion.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

# TABLE OF CONTENTS

I. INTRODUCTION ..........1

II. STATEMENT OF PERTINENT FACTS .......... 3

A. QPWB's Own Clients Accused It of Malpractice Before the Chapter 11 Cases Were Even Filed. .......... 4

B. QPWB Knew of These Chapter 11 Cases from Their First Month, Consulted Its Own Bankruptcy Partners, and Chose Not to Participate. .......... 5

C. The Global Settlement and the Plan Expressly Preserved the Claims Against QPWB, and QPWB Received Each Document. .......... 9

D. The Trustee Demanded QPWB's Client File Pre-Effective Date, and QPWB Delayed for Months. .......... 15

E. The Pre-Litigation Demand and the Trustee's Attempts to Obtain Information Without Litigation. .......... 16

F. The Extortion Letter. .......... 17

G. QPWB Files the Improper Motions. .......... 18

III. LEGAL ARGUMENT .......... 19

A. QPWB Lacks Standing to Seek Removal of the Trustee, Disqualification of GTG, or Disgorgement of Fees. .......... 19

B. QPWB Is Improperly Seeking an Advisory Opinion as to the Effect of the Plan, Confirmation Order, Global Settlement Agreement, and 9019 Order. .......... 31

C. There Is Absolutely No Basis to Grant Rule 60 Relief to QPWB .......... 35

D. QPWB's Request for an Injunction Is Procedurally Wrong, and Factually and Legally Unsupportable. .......... 49

E. There Is No Basis to Grant QPWB Leave Under the *Barton* Doctrine. .......... 49

F. If the Removal Motion Is Not Denied on November 17, 2026, the Trustee Requests an Evidentiary Hearing at Which All Witnesses Must Appear in Person. .......... 50

IV. CONCLUSION .......... 51



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)........................................................ 32

*Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) ..................................... 45

*Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970-76 (9th Cir. 2005)... 50

*Beneficial California, Inc. v. Villar (In re Villar),* 317 B.R. 88 (B.A.P. 9th Cir. 2004).............. 43

*Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381–82 (9th Cir. 1997) ................................ 45

*Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004)…………………………………46

*Cf. Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 848 n.10 (9th Cir. 2008)………22, 24, 25, 26, 27

*Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ............................................ 47

*D.C. Transit Sys., Inc. v. United States*, 531 F. Supp. 808, 812 (D.D.C. 1982) .......................... 48

*De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)............................ 46

*DiMartino v. Eighth Jud. Dist. Ct.*, 66 P.3d 945, 947 (Nev. 2003) ...................................... 23, 30

*Double Diamond Distrib., Ltd. v. Garman Turner Gordon LLP (In re U.S.A. Dawgs, Inc.)*, 657 B.R. 98, 110–15 (B.A.P. 9th Cir. 2024), *aff'd*, 2025 WL 1122317 (9th Cir. Apr. 16, 2025)... 29

*Durkin v. Benedor (In re G.I. Indus.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) .............................. 24

*Engleson v. Burlington N. R. Co.*, 1992 WL 185016 (9th Cir. 1992)......................................... 45

*Fahrbach v. Diamond Shamrock, Inc.*, 928 P.2d 269, 272 (N.M. 1996)............................... 33, 34

*Fann Contracting, Inc. v. Garman Turner Gordon LLP,* 620 B.R. 141 (D. Nev. 2020) ............ 29

*Fondiller v. Robertson (In Matter of Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983).................. 19

*Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 186–87 (2d Cir. 2006) .......................................... 20

*Great Lakes Const., Inc. v. Burman,* 186 Cal. App. 4th 1347 (2010)......................................... 30

*Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742-43 (9th Cir. 2009) .................................... 50

*Hoeschen v. N.M. Dep't of Transp.*, 584 P.3d 1136, 1145–46 (N.M. Ct. App. 2025) ................ 34

*In re Ampal-Am. Israel Corp*., 534 B.R. 569, 586 (Bankr. S.D.N.Y. 2015), aff'd, 554 B.R. 604 (S.D.N.Y. 2016), aff'd, 691 Fed. Appx. 12 (2d Cir. 2017)................................................ 24, 25



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*In re Baroni*, 643 B.R. 253, 284 (Bankr. C.D. Cal. 2022) .......... 26, 27

*In re Belmonte*, 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015) .......... 25

*In re Braverman*, 25-12365-JPM, 2026 WL 130784, at *3 (Bankr. S.D.N.Y. Jan. 16, 2026) .......... 24

*In re Carvalho*, 578 B.R. 1, 11 (Bankr. D.D.C. 2017) .......... 24, 25

*In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) .......... 25

*In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) .......... 30

*In re Daewoo Motor Am., Inc.*, 488 B.R. 418, 425 (C.D. Cal. 2011) .......... 36

*In re Essex Real Estate Partners, LLC*, No. 19-51486-gs, ECF No. 855, at 4 (Bankr. D. Nev. Aug. 21, 2025) .......... 36

*In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007) .......... 49

*In re Gregory*, 705 F.2d 1118, 1119-20, 1122 (9th Cir. 1983) .......... 48, 49

*In re IFS Fin. Corp.*, 2013 WL 2018540, at *9-10 (Bankr. S.D. Tex. May 13, 2013) .......... 27

*In re Lebbos*, BAP.EC-07-01119-NUNA, 2007 WL 7540984, at *5 (B.A.P. 9th Cir. Nov. 14, 2007) .......... 24

*In re Log & Conventional Homes, Inc.*, No. BAP SC-11-1000-KIMKH, 2011 WL 7145883, at *4 (B.A.P. 9th Cir. Dec. 22, 2011), aff'd, 523 F. App'x 440 (9th Cir. 2013) .......... 24, 28

*In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990) .......... 25

*In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir. 1987) .......... 47

*In re NorthEast Gas Generation, LLC*, 639 B.R. 914, 920 (Bankr. D. Del. 2022) .......... 36

*In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 798 (Bankr. E.D. Cal. 2018) .......... 36

*In re Park-Helena Corp.*, 63 F.3d 877 (9th Cir. 1995) .......... 29

*In re Player's Poker Club, Inc.*, 636 B.R. 811, 817 (Bankr. C.D. Cal. 2022) .......... 24

*In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) .......... 24, 25

*In re Reed*, 178 B.R. 817, 821 (Bankr. D. Ariz. 1995) .......... 25, 26

*In re Taub*, 441 B.R. 211, 216 (Bankr. E.D.N.Y.2010) .......... 25

*In re United Tax Group, LLC*, 622 B.R. 148, 157 (Bankr. D. Del. 2020) .......... 25

*In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) .......... 36



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*In re V. Savino Oil & Heating Co.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y.1988) ........................... 25

*In re Vega*, 102 B.R. 552, 553-54 (Bankr. N.D. Tex.1989) ........................................................ 27

*In re Wylie*, 349 B.R. 204, 214 (B.A.P. 9th Cir. 2006) ............................................................. 47

*In the Matter of Chapter 13, Pending and Future Cases* 19 B.R. 713, 715-17 (Bankr.W.D. Wash. 1982) ........................................................................................................................ 26

*Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir. 1986) ......................................... 45

*Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 885-87 (B.A.P. 9th Cir. 1995) ...................... 50

*Keys v. 701 Mariposa Project, LLC (In re 701 Mariposa Project, LLC)*, 514 B.R. 10 (B.A.P. 9th Cir. 2014) ................................................................................................................. 43

*Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010) ................................................................. 32

*Latshaw v. Trainer Wortham & Co.,* 452 F.3d 1097, 1101 (9th Cir. 2006) ..................... 45, 47, 48

*Liapis v. Second Jud. Dist. Ct.*, 420, 282 P.3d 733, 737 (Nev. 2012) ......................................... 30

*Matter of Schoen Enter., Inc.*, 76 B.R. 203, 204-05 (Bankr. M.D. Fla. 1987) ............................ 27

*Mobile Diagnostech, Inc. v. Cohen (In re Equimed, Inc.)*, 267 B.R. 530, 534 (D. Md. 2001)..... 24

*Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 207 (9th Cir. 1991) .................................. 42

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 884-88 (9th Cir. 2012) ......................................................................................................... 20

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ...................................... 37

*North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ..................................................................... 32

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)............. 30

*Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991) ........................................................................................................................ 46

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 384, 398-99 (1993) ........................................................................................................ 45

*Preiser v. Newkirk,* 422 U.S. 395, 402 (1975) ........................................................................... 32

*Schoenmann v. United States Trustee (In re Li's Capital, LLC,)* 2025 WL 1066799 (B.A.P. 9th Cir. April 8, 2025) .................................................................................................... 26



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Smith v. Bayer Corp.,* 564 U.S. 299, 307 (2011) .......... 33

*Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1307 (9th Cir. 2022) .......... 33

*Texas v. United States*, 523 U.S. 296, 300 (1998) .......... 32, 33, 34

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) .......... 31

*Triad Commercial Captive Co. v. Comerica Bank (In re GTI Capital Holdings, LLC)*, 409 F. App'x 68, 68–69 (9th Cir. 2010) .......... 32

*Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 272, 284 & n.5 (2024) .......... 20

*United States Trustee v. Repp (In re Sheehan)*, 185 B.R. 819 (Bankr. D. Ariz. 1995) .......... 28

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) .......... 37, 43, 44

*Waid v. Eighth Jud. Dist. Ct.*, 119 P.3d 1219, 1222 (Nev. 2005) .......... 30

*Wilson v. Galt*, 668 P.2d 1104, 1109 (N.M. Ct. App. 1983) .......... 34

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) .......... 49

**Statutes**

11 U.S.C. § 324 .......... 24

11 U.S.C. § 327 .......... 29

11 U.S.C. § 1101 .......... 36

11 U.S.C. § 1109 .......... 18

11 U.S.C. § 1127 .......... 36

11 U.S.C. § 1144 .......... 36

N.M. Stat. Ann. § 41-3A-1(A) .......... 33

NRS 153.031 .......... 21

NRS 163.115 .......... 21

**Other Authorities**

Unif. Tr. Code § 706(a) (Unif. L. Comm'n 2000) .......... 21

**Rules**

Fed. R. Bankr. P. 9024 .......... 35

Fed. R. Civ. P. 60(b)(1), (b)(3), (b)(4), and (b)(6) .......... 35, 44-49



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Fed. R. Civ. P. 60(c)(1) ........ 44
Fed. R. Bankr. P. 2002(b), 3017(d), 3020(c), and 9022(a), ........ 43
Fed. R. Bankr. P. 7001 ........ 33, 34
Fed. R. Bankr. P. 7004 ........ 43
Fed. R. Bankr. P. 8002 ........ 40
Fed. R. Bankr. P. 9006 ........ 44
Rule 16-116(D) of the New Mexico Rules ........ 15
Rules 16-116(D) and 16-115(D) of the New Mexico Rules ........ 15
Nev. RPC 1.8 ........ 30
Nev. RPC 3.7 ........ 30



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Motion is precisely what it appears to be: an extraordinary attempt by a prospective litigation defendant to remove the fiduciary charged with prosecuting claims against it, disqualify that fiduciary's counsel, and enlist this Court in preventing those claims from ever being brought. QPWB faces potentially hundreds of millions of dollars in liability arising from its representation of the Debtors and other defendants in the Sanchez Action. Rather than defend its conduct on the merits, QPWB has launched a collateral attack on the fiduciary charged with investigating and prosecuting those claims. Its Motion seeks a bewildering assortment of relief—removal of the Trustee, disqualification of his counsel, appointment of a replacement fiduciary, relief from long-final orders, disgorgement of professional fees, permission to sue the Trustee and his counsel personally, and an injunction against prosecution of the claims themselves. QPWB's scattershot demands cannot obscure the fundamental defect underlying every request: none is supported by the facts, none is justified by the law, and all are designed to prevent the Trustee from holding QPWB accountable for its own misconduct.

QPWB's objective is unmistakable. Paragraph 9 of its proposed order expressly seeks to prohibit the Trustee from commencing any action against QPWB or its principals, Eric Boyer and Edward Prieto. ECF No. 1007-1, ¶ 9. That request exposes the Motion for what it is: an effort to avoid accountability for QPWB's own conduct by disabling the party authorized to pursue claims against it. The Trustee's investigation concerns a staggering $412 million jury verdict entered against QPWB's clients following a trial marred by serious allegations of professional misconduct, conflicts of interest, and violations of court orders. The resulting bankruptcy proceedings culminated in a global settlement under which Beazley paid $108.5 million to resolve the Estates' bad faith insurance claims, and a confirmed Plan that expressly preserved the substantial malpractice and related claims against QPWB and its attorneys for prosecution by the Trust. Having failed to resolve those claims by refusing to engage in pre-litigation negotiations, QPWB now asks this Court to remove the Trustee, disqualify his chosen counsel, and prevent the litigation



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

from proceeding at all. A prospective defendant does not acquire the right to select, disqualify, or restrain its adversary's fiduciary merely because it objects to being held accountable.

Equally troubling is the factual foundation upon which QPWB predicates its requested relief. QPWB claims it was deprived of constitutionally adequate notice of the bankruptcy proceedings and the orders it now seeks to evade. Yet the contemporaneous documentary record—including QPWB's own emails, billing records, court filings, and client file—demonstrates otherwise. QPWB knew of these bankruptcy cases within weeks of their commencement, consulted its own bankruptcy attorneys, reviewed this Court's docket, litigated the effect of the automatic stay in the Sanchez Action, and received the Plan, Global Settlement Agreement, and operative orders at multiple firm offices. Indeed, QPWB's own client file contains documents its managing partner in a sworn declaration now claims the firm did not receive. These are not competing recollections about events occurring years ago. They are contemporaneous records created, received, maintained, or produced by QPWB itself. The documentary evidence that directly contradicts the central premise of its Motion.

The Motion fares no better as a matter of law. QPWB concedes that it is not a creditor, equity holder, or traditional party in interest in these Chapter 11 Cases. It nevertheless seeks to remove the Trustee of a post-confirmation liquidation trust, disqualify the Trust's counsel, and obtain relief affecting a confirmed and substantially consummated Plan under which more than $100 million has already been distributed to creditors. QPWB identifies no cognizable basis for standing to pursue the removal or disqualification relief it demands, much less the requisite grounds to obtain it. Its requests for relief under Rule 60 are foreclosed by the extensive notice record, applicable deadlines, and the finality of this Court's orders. And its requests for prospective declarations concerning hypothetical defenses, claims, and litigation consequences improperly seek advisory rulings on disputes that have not even arisen. The Motion is not merely defective in one respect. Its requests for relief fail independently, procedurally and substantively.

The chronology further confirms the Motion's purpose. For more than a year, QPWB knew of the bankruptcy proceedings and the preservation of claims against it, yet elected not to



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

participate in these cases. Only after the Trustee pursued an investigation, demanded the client file, attempted to negotiate a consensual resolution, and undertook discovery did QPWB suddenly seek to challenge the Trustee's authority, the Trust's counsel, and the final orders entered in these proceedings. QPWB cannot transform its dissatisfaction with the Trustee's pursuit of legitimate estate claims into grounds for dismantling the Court-approved structure established to prosecute them. Nor may it use these bankruptcy proceedings as a substitute for defending against the claims in the appropriate forum. The merits of QPWB's potential liability will be determined in that litigation, not through a preemptive attack upon the Trustee and his counsel.

In sum, the Removal Motion is frivolous, filed for an improper purpose, and should be denied.

## II. STATEMENT OF PERTINENT FACTS

1. The facts set forth below are drawn from this Court's docket and from documents that QPWB itself wrote, received, billed for, filed, or produced—its emails, its billing records, its filings in the Sanchez Action, and its own client file. Because those documents are voluminous, the Trustee has summarized them in the three Timelines attached to this Opposition as **Exhibits A** (Global Timeline), **Exhibits B** (Bankruptcy Court Timeline), and **Exhibit C** (Sanchez Action Timeline). *See* Fed. R. Evid. 1006. Each underlying document that is not on this Court's docket is attached to the Gray Kozlowski Decl. as the exhibit number shown in the Timelines (certain exhibits have been filed under seal).

2. The Global Timeline (**Exhibit A**) sets out, in chronological order, the pertinent events bearing on QPWB's knowledge of these Chapter 11 Cases, from the November 20, 2024 written client accusation of ongoing malpractice by QPWB through QPWB's filing of the Removal Motion on October 7, 2026. For each event, it identifies the date; the document; what QPWB was told or did; and, for the Sanchez Action court filings, the QPWB attorneys who were served.

3. The Court Timelines (**Exhibits B and C**) address notice in the Chapter 11 Cases and the Sanchez Action. **Exhibit B** identifies notices of the Global Settlement Agreement, the Plan, the Disclosure Statement, the confirmation hearing, and the resulting orders that QPWB



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

received—by mail as reflected in the certificates of service on this Court's docket, by service in the Sanchez Action, and by email from counsel—together with the date, the address or recipient, and the proof of service. **Exhibit C** identifies many of the filings in the Sanchez Action that QPWB filed or was served with that disclosed these Chapter 11 Cases, the Global Settlement Agreement, or the Plan.

4. Together, the Timelines show that QPWB—including Eric Boyer ("Boyer") personally—knew of these Chapter 11 Cases within weeks of the January 22, 2025 Petition Dates; consulted its own bankruptcy partners about these Chapter 11 Cases; monitored this Court's docket; litigated the effect of the automatic stay in the Sanchez Action in New Mexico; and received the Global Settlement Agreement, the Plan, and every operative order at its Miami headquarters, all while choosing not to make a formal appearance in these Chapter 11 Cases. The Timelines and the supporting evidence constitute the record against which the Boyer Declaration filed at ECF No. 1007-2 (the "Boyer Dec.") and the Removal Motion's claims of non-receipt and late notice, must be measured.

## A. QPWB's Own Clients Accused It of Malpractice Before the Chapter 11 Cases Were Even Filed.

5. QPWB, retained by the Debtors' insurer, Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623 (collectively, "Beazley"), served as trial counsel for the defendant Debtors, non-debtor NuMale Albuquerque LLC, and the Individuals in *Michael E. Sanchez v. NuMale Corporation, et al.*, Case No. D-202-CV-2020-06336 (N.M. 2d Jud. Dist.) (the "Sanchez Action"). On November 25, 2024, the jury returned a verdict of $37,005,149 in compensatory damages and $375,000,000 in punitive damages in the Sanchez Action. ECF No. 1010, p. 7; *see also* ECF No. 100-1 (Ex. to Bencoe Decl.), at 2-5 of 5.

6. Even before the jury verdict, QPWB's own clients had begun accusing QPWB of malpractice. On November 20, 2024, Dr. Asandra wrote to the QPWB trial team that the course of action being taken "constitutes ongoing malpractice by defense counsel." Gray Kozlowski Decl., Ex. 1 at 2. On November 27, 2024, his counsel demanded that QPWB preserve evidence. *Id.*, Ex.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

2. On December 10, 2024, his new counsel notified QPWB that he represented Dr. Asandra "in connection with his claims against all parties for the failure to settle this matter for policy limits and for the failure to settle during trial." *Id.*, Ex. 3. A further preservation letter was circulated to QPWB's attorneys, including Boyer, on May 27, 2025. *Id.*, Ex. 41; *see also* Ex. 61 (for an additional discussion of the Debtors and Individuals' pre-bankruptcy allegations of malpractice).

**B. <u>QPWB Knew of These Chapter 11 Cases from Their First Month, Consulted Its Own Bankruptcy Partners, and Chose Not to Participate.</u>**

7. On January 22, 2025, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>"). ECF No. 1. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Truste*e, approving Michael Carmel's appointment as the Chapter 11 trustee (the "<u>Chapter 11 Trustee</u>"). ECF No. 155.

8. QPWB, including Boyer, was told of the petitions in writing on February 14, 2025. Gray Kozlowski Decl., Ex. 4. On February 19 and 20, 2025, the Debtors' New Mexico appellate counsel, the law firm of Rodey, Dickason, Sloan, Akin & Robb, P.A. ("<u>Rodey</u>"), sent QPWB the bankruptcy notices and asked QPWB, "as trial counsel for these entities," to file notice of the stay. *Id.* Beazley approved, *id.*, Ex. 5, and Boyer "agree[d]," *id.*, Ex. 6 at 1. QPWB billed for pulling the petitions "from the Nevada Bankruptcy Court," drafting the Notice of Bankruptcy, and advising its clients on "the effect of automatic stay." *Id.*, Ex. 7. On February 20, 2025, QPWB filed the Notice of Bankruptcy Proceedings in the Sanchez Action. *Id.*, Ex. 8.

9. The next day, the Debtors' initial bankruptcy counsel, David Riggi, wrote to QPWB: "we want to have your firm [QPWB] formally employed by the bankruptcy court," and asked for QPWB's retainer agreement. QPWB's lead trial attorney forwarded that request to Boyer and to Frank Alvarez (litigation counsel and managing partner of QPWB's Dallas, Texas office). Gray Kozlowski Decl., Ex. 9 at 1; *see id.*, Ex. 7 at 2 (billing for "bk representation order"). On February 24, 2025, QPWB told Beazley that the bankruptcy court needed to "approve our continued representation." *Id.*, Ex. 10. QPWB never sought employment. And after discussing



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

with its own bankruptcy attorneys, QPWB elected to never file under Rule 2002 a request for notice in the Chapter 11 Cases.

10. On March 7, 2025, Boyer brought QPWB's own bankruptcy partners, Arthur Neiwirth and Justin Plean, into the matter: "Looping in Arthur and justin on bankruptcy question." Gray Kozlowski Decl., Ex. 11 at 3. Mr. Neiwirth sent Boyer an analysis of the automatic stay and the bankruptcy estate. *Id.*, Ex. 11 at 1. Mr. Plean advised that, in the "[w]orst case scenario," QPWB would seek "an order from the bankruptcy court." *Id.*, Ex. 11. QPWB billed for the analysis. *Id.*, Ex. 12 at 1.

11. On March 11, 2025, Boyer asked whether QPWB needed "to file another pleading with respect to the bankruptcy" and directed follow-up on "whether any additional filings are required on our end." Gray Kozlowski Decl., Ex. 13 at 1. On March 12 and 13, 2025, Boyer asked QPWB's bankruptcy partners to review an amended proposed judgment "based on recent bankruptcy filings of 2 defendants[.]" *Id.*, Ex. 14 at 1. QPWB billed for its bankruptcy partner to analyze the "impact of Bankruptcy Automatic Stay." *Id.*, Ex. 12 at 2. On March 18, 2025, Boyer acknowledged that "the insured declared bankruptcy," *id.*, Ex. 16, and on March 19, 2025, he was advised of further bankruptcy developments, *id.*, Ex. 17.

12. QPWB continued to monitor these Chapter 11 Cases. It billed for reviewing this Court's "PACER docket" (March 23, 2025), for reporting to its clients on "lifting the bankruptcy stay" (March 29, 2025), for reviewing "correspondence from the Bankruptcy Estate attorney" (May 21, 2025), and for reviewing "recent BK filings" (July 8, 2025). Gray Kozlowski Decl., Ex. 12 at 3–4; *id.*, Exs. 40, 44.

13. And on March 21, 2025 (after QPWB had notice of these Chapter 11 Cases and after QPWB's attorneys had sought advice and counsel of their own bankruptcy partners), QPWB billed 6.9 hours of attorney time to its NuMale file to "remove internal communications for production of client file to clients." Gray Kozlowski Decl., Ex. 7 at 3.

. . .

. . .



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 03/21/25 | EC9 | Examine and analyze emails between counsel and clients on Litify to remove internal communications for production of client file to clients. | L320 | A104 | 2.70 | 190.00 | 513.00 |
| 03/21/25 | EC9 | Examine and analyze emails to and from others on Litify to remove internal communications for production of client file to clients. | L320 | A104 | 2.90 | 190.00 | 551.00 |
| 03/21/25 | EC9 | Examine and analyze emails to and from opposing counsel on Litify to remove internal communications for production of client file to clients. | L320 | A104 | 1.30 | 190.00 | 247.00 |

14. QPWB also litigated the effect of these Chapter 11 Cases in the Sanchez Action. On March 20, 2025, QPWB filed *Defendants' Motion to Stay Execution of the Judgment Without Bond During the Pendency of the Post-Trial Motion Proceedings*, which advised the New Mexico court of the Chapter 11 petitions and the automatic stay. Gray Kozlowski Decl., Ex. 19. On April 21, 2025, QPWB's reply argued that, "[a]s a creditor in the bankruptcy proceedings, Plaintiff can obtain as much protection of his judgment against the debtors as the law will allow." *Id.*, Ex. 32. On April 24, 2025, QPWB asserted that "the bankruptcy process is designed to protect the rights of creditors." *Id.*, Ex. 34. As counsel of record, QPWB was served with more than twenty filings in the Sanchez Action that identified these Chapter 11 Cases by number or attached filings from this Court, including the order approving the Chapter 11 Trustee's appointment. *Id.*, Exs. 18, 20–31, 33, 35–38, 42–43, and 45.

15. QPWB did not merely receive filings that disclosed these Chapter 11 Cases; its lawyers signed and approved them. While these Chapter 11 Cases were pending, QPWB filed, signed, or approved at least five papers in the Sanchez Action, four of which expressly addressed the Chapter 11 Cases: (i) the February 20, 2025 Notice of Bankruptcy Proceedings, signed "/s/Frank Alvarez," which attached the Debtors' petitions, Gray Kozlowski Decl., Ex. 8; (ii) the March 20, 2025 motion to stay execution, signed "By: /s/ J. Andrew Robertson" for QPWB, which advised the New Mexico court that the petitions had resulted "in an automatic stay of these

proceedings" and that "the bankruptcy court partially lifted the stay," *id.*, Ex. 19; (iii) the April 21, 2025 reply (*id.*, Ex. 32); and (iv) the April 24, 2025 response (*id.*, Ex. 34), each filed on behalf of QPWB's clients while QPWB remained their counsel of record and each analyzing the effect of the bankruptcy on Sanchez's rights as a "creditor," *id.*, Exs. 32, 34; and (v) the May 1, 2025 Joint Amended Request for Hearing, *id.,* Ex. 35; *see also* Court Timeline, Ex. C.

16. Every filing in the Sanchez Action was served electronically on all counsel of record through the New Mexico court's Odyssey File & Serve system. Through May 2025, the service list included nine QPWB e-mail addresses: those of QPWB attorneys J. Andrew Robertson, Frank Alvarez, Dominique Barrett, and Erin Chavez, and those of Dianna Saxton, Lillian Favela, Linda Lopez, Souhaila Sonnenberg, and Daisy Mora. From July 2025 until the Sanchez Action was dismissed *after the Global Settlement was approved by this Court and as required by the Global Settlement*, it included seven QPWB addresses, among them those of QPWB attorneys Mr. Robertson, Mr. Alvarez, and Ms. Barrett. *See* Timelines, Exs. A and C.

17. In the five months between February 20 and July 11, 2025, those QPWB attorneys' email addresses were served with at least twenty-one filings that disclosed these Chapter 11 Cases. They included nine filings served on a single day, March 26, 2025, several of which identified the Chapter 11 Cases by case number and three of which attached filings from the Chapter 11 Cases; Sanchez's May 20, 2025 notice of relevant bankruptcy filings, which attached this Court's order approving the appointment of the Chapter 11 Trustee; Sanchez's July 7, 2025 notice of further bankruptcy filings; and Rodey's July 11, 2025 *Notice of Modification of Bankruptcy Stay to Judgment Only* and *Entry of Appearance as Special Litigation Counsel*, which described this Court's approval of Rodey's employment by the Estates. Gray Kozlowski Decl., Exs. 8, 19, 20–29, 31, 32, 34, 36–38, 42, 43, 45; Sanchez Court Timeline, Ex. C. QPWB never withdrew as counsel of record in the Sanchez Action and thus continued to receive *notice of all filings therein*.

18. QPWB knew of the Chapter 11 Trustee's appointment. QPWB attorneys, including Boyer, discussed the Chapter 11 Trustee by title on May 21 and 22, 2025. Gray Kozlowski Decl., Ex. 39. On July 18, 2025, QPWB was told that this Court had approved Rodey's employment as



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

special appellate counsel to the Estates and that its clients' interests "are now represented by the Bankruptcy Estate and the Trustee." *Id.*, Ex. 46.

### C. The Global Settlement and the Plan Expressly Preserved the Claims Against QPWB, and QPWB Received Each Document.

19. The largest claim in these Chapter 11 Cases (and the claimant is now the largest beneficiary of the Trust) is held by verdict creditor Michael Sanchez, who asserted a claim of $579,442,390.01 arising from the verdict rendered against the Debtors and the Individuals at a trial in which they were represented by QPWB (the "Sanchez Claim"). ECF No. 434 § 1.1.128.

20. During the Chapter 11 Cases, the Chapter 11 Trustee negotiated a global settlement agreement among Sanchez, Beazley, the Chapter 11 Trustee, NuMale Corporation, NuMale New Mexico, NuMale Albuquerque LLC (d/b/a NuMale Medical Center), Christopher Asandra, Justin Pulliam, NMC Illinois, LLC, Nevada NuMale LLC, NuFemme Milwaukee, LLC, NuMale Green Bay, LLC, SC, NuMale Wisconsin GB, SC, NuMale Omaha, LLC, NuMale Tampa, LLC, NuMale Charlotte, LLC, and NuMale Denver, LLC (the "Global Settlement Agreement"). ECF No. 430. Through the Global Settlement Agreement, the Sanchez Claim was compromised and reduced to $410 million (a more than $160 million reduction), and Beazley paid the Debtors' estates (the "Estates") $108.5 million to resolve the Estates' bad faith insurance claims against Beazley arising in connection with the Sanchez Action. *Id.*; ECF No. 434 § 1.1.128.

21. On August 1, 2025, the Chapter 11 Trustee filed the *Joint Plan of Reorganization* [ECF No. 434] (as confirmed, the "Plan") and the accompanying disclosure statement [ECF No. 435] (the "Disclosure Statement"). The Plan, the Disclosure Statement, and the Global Settlement Agreement refer to Quintairos more than 200 times, including in a Disclosure Statement section titled "Litigation Claims Against the Quintairos Firm." ECF Nos. 430, 434, 435.

22. Despite the fact that QPWB elected not to appear in the Chapter 11 Cases and made the intentional decision not to file a request for notice in these Chapter 11 Cases even after consulting with its internal bankruptcy lawyers, on August 6, 2025, the Disclosure Statement package—including the Disclosure Statement, the Plan, and the Global Settlement Agreement—



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

was mailed to QPWB at its Miami headquarters, where Boyer works, and at its Dallas and Scottsdale offices, the offices of QPWB's attorneys Frank Alvarez, and J. Andrew Robertson, and Dominique Barrett, respectively. ECF No. 451; *see also* ECF Nos. 447, 449. The package included the Plan, with Schedule 1.1.82 identifying the preserved claims against QPWB and its attorneys; the Global Settlement Agreement, with the very forms of the joint stipulated motion and order for a consensual stay of the Sanchez Action, and of the joint motion and order of dismissal of the Sanchez Action, that would later be filed in QPWB's own Sanchez Action; the order conditionally approving the Disclosure Statement; and the notice of the hearing on confirmation. *Id.*; Bankruptcy Court Timeline, Ex. B.

23. The Sanchez Action stipulation and order entered on August 4 and 12, 2025 tied the stay and eventual dismissal of the Sanchez Action to a settlement agreement "pending approval by the United States Bankruptcy Court for the District of Nevada, Judge Cox." Gray Kozlowski Decl., Exs. 46, 47. Sanchez's counsel, Lori Bencoe, filed the joint stipulated motion for stay in the Sanchez Action on August 4, 2025, and the New Mexico court entered the stipulated order for stay on August 12, 2025. *Id.* Each described the Global Settlement Agreement, identified this Court and these Chapter 11 Cases by name and case number, and explained what would become of QPWB's own Sanchez Action depending on whether this Court approved the Global Settlement Agreement. The joint stipulated motion filed in the Sanchez Action and served on multiple QPWB attorneys provided:

> [P]ursuant to entry into a Settlement Agreement that is pending approval by the United States Bankruptcy Court for the District of Nevada, Judge Cox, in *In re Numale Corporation et. al.*, Lead Case No. 25-10341 nmc-Chapter 11 (consolidated for joint administration).
>
> A. if the Settlement Agreement is approved by "Final Order" of the U.S. Bankruptcy Court, upon the "Effective Date," as those terms are defined in the Settlement Agreement, Sanchez will submit a Stipulated Motion for entry of an Order of Dismissal With Prejudice of this action (with all parties to bear their respective fees and costs); or
>
> B. if the Settlement Agreement is terminated in accordance with its terms, including termination of the Settlement Agreement because the Bankruptcy Court declines to enter the Settlement Order, any of the parties to this litigation may submit an Expedited Motion and Order to lift the Voluntary Consensual Stay of this action



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

and request expedited briefing and hearing on same.

Gray Kozlowski Decl., Ex. 46. The stipulated order, in turn, provided that the stay "will remain in effect pursuant to the Settlement Agreement entered into and pending final approval by the United States Bankruptcy Court for the District of Nevada, Judge Cox, in *In re Numale Corporation et. al*, Lead Case No. 25-10341 nmc-Chapter 11," and that, if this Court approved the Global Settlement Agreement by "Final Order," Sanchez would move to dismiss the Sanchez Action with prejudice. *Id.*, Ex. 47 ¶¶ 2-3.

24. Both the stipulated motion and the stipulated order were served through Odyssey File & Serve on seven QPWB e-mail addresses: those of QPWB's litigation counsel in the Sanchez Action, J. Andrew Robertson, Frank Alvarez, and Dominique Barrett, who remained counsel of record, and also on QPWB's Lillian Favela, Linda Lopez, Souhaila Sonnenberg, and Daisy Mora. Gray Kozlowski Decl., Exs. 46, 47; Sanchez Action Court Timeline, Ex. C.

25. Forms of the same stipulated motion and order that were exhibits to the Global Settlement Agreement were mailed to QPWB's *three offices* on August 6, 2025, and mailed again, with the 9019 Order, to QPWB's Miami headquarters on September 5, 2025. ECF Nos. 451, 588.

26. Seven weeks before the confirmation hearing, then, QPWB's trial lawyers were told—in a filing in their own Sanchez Action, where they remained counsel of record—that a global settlement was pending before this Court, that its approval would dismiss the Sanchez Action, and the court, judge, and case number before which approval of the Global Settlement Agreement was pending.

27. During plan solicitation, Boyer was personally managing QPWB's NuMale invoices, directing certain write offs. *Id.*, Ex. 48. QPWB was paid for its work on August 22, 2025. *Id.*, Ex. 49. The Trustee was not advised of any such invoices or payments.

28. On September 4, 2025, this Court entered its order approving the Global Settlement Agreement (the "<u>9019 Order</u>"). ECF No. 582. The 9019 Order provides: "All claims against Quintairos, Prieto, Wood & Boyer, P.A. are not being released and are expressly preserved." *Id.* ¶ 7(ix)(3). Notice of entry of the 9019 Order, with copies of the Global Settlement Agreement and



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

the Plan attached, were mailed to QPWB's Miami headquarters on September 5, 2025. ECF Nos. 586, 588.[1]

29. On September 12, 2025, QPWB scanned the package containing the 9019 Order, with the Global Settlement Agreement and the Plan into its QPWB NuMale File, where it was retained and ultimately produced back to the Trustee. Gray Kozlowski Decl., Ex. 50 and ¶ 56.

30. The Plan Supplement and the Liquidation Trust Agreement were also mailed to QPWB's Miami headquarters on September 15, 2025. ECF Nos. 595, 609. QPWB did not appear at the September 24, 2025 confirmation hearing. ECF Nos. 726, 727.

31. On September 30, 2025, Mr. Sanchez's counsel, Ms. Bencoe, wrote to QPWB's attorneys in the Sanchez Action, Frank Alvarez and Dominique Barrett, that, "[a]s you are aware," the Global Settlement Agreement was attached to ECF No. 430 and approved by ECF No. 582." Gray Kozlowski Decl., Ex. 51. Because of this Court's order approving of the Global Settlement Agreement, Ms. Bencoe attached the joint motion to dismiss and the stipulated order of dismissal for the Sanchez Action, which, she noted, "were expressly agreed to and appended to the Global Settlement Agreement the Court approved," and asked: "Please let me know if I may indicate your electronic signatures on them and submit them to the Court for filing/entry at this time." *Id.*

32. The Global Settlement Agreement having been approved, the joint motion to dismiss the Sanchez Action and the order of dismissal followed. *Id.*, Exs. 52, 53. The joint motion was served on seven QPWB e-mail addresses, and the order of dismissal on five, including in each case those of QPWB attorneys Mr. Robertson, Mr. Alvarez, and Ms. Barrett. *Id.*; Sanchez Action Court Timeline, Ex. C.

33. On October 7, 2025, this Court entered its findings of fact and conclusions of law (the "Findings") and its order confirming the Plan (the "Confirmation Order"). ECF Nos. 726, 727. The Plan expressly preserved all claims "against [QPWB] and its attorneys, employees, Insiders, and Affiliates" for the Trust. ECF No. 434, Schedule 1.1.82; ECF Nos. 726, 727.

[1] QPWB's recent filings in this Court contend that its Miami office is the proper office for service, which is exactly where the Trustee served notice in the Chapter 11 Cases.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

34. Because the Plan was ultimately a liquidating plan, the Findings also struck Sections 8.5 (Discharge) and 8.6 (Injunction) of the Plan "in their entirety and of no force and effect." ECF No. 726 ¶ 52. And, as modified by the Findings, Section 5.12 of the Plan provides that the Trust and the Individuals "shall jointly prosecute their respective" claims against QPWB "under the sole direction and control of the Liquidation Trustee," that the Liquidation Trustee "agrees to consult with, and keep informed," the Individuals, and that any monetary recovery will be allocated among the holders of those claims, if they cannot agree, through mediation. *Id.* ¶ 76.

35. Notice of entry of the Findings and the Confirmation Order, and the notice of the Plan's October 24, 2025 effective date (the "Effective Date") were mailed to QPWB's Miami headquarters. ECF Nos. 728, 732, 762, 774. The October 7, 2025 notice of entry enclosed the Confirmation Order and the Findings with their exhibits, including the Liquidation Trust Agreement. ECF Nos. 728, 732. QPWB thus received the Liquidation Trust Agreement twice before the Effective Date: with the Plan Supplement on September 15, 2025, and again with the notice of entry on October 7, 2025. ECF Nos. 609, 732; Global Timeline, Ex. A; Bankruptcy Court Timeline, Ex. B. No mail was returned.

36. The malpractice, fraudulent transfer, and related claims against QPWB and its attorneys—the Quintairos Claims that vested in the Trust and the Quintairos Non-Debtor Claims and Quintairos PF Claims that the Individuals retain and jointly prosecute with the Trust under Section 5.12 of the Plan (collectively, the "Quintairos Claims")—arise from the same underlying misconduct: the gross malfeasance of QPWB and its attorneys in their representation of the Debtors and the Individuals in the Sanchez Action. The magnitude of Beazley's settlement underscores the extraordinary financial consequences of that misconduct. The Quintairos Claims are the principal remaining source of recovery for the Trust's beneficiaries.

37. GTG's employment by the Estates, including its contingency component, was disclosed in detail and approved by this Court. ECF Nos. 199, 200 (the "Garman Declaration"), 293 (the "Retention Order"). The Garman Declaration disclosed in detail the full contingency terms, GTG's prior representation of Mr. Carmel as a Chapter 11 trustee, GTG's representation of



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

parties in cases in which Mr. Carmel served, the twenty-year professional relationship between Mr. Carmel and Mr. Garman, and Bankruptcy Recovery Group's use of Mr. Carmel as a mediator. ECF No. 200 ¶¶ 8, 16(f)-(g), 17, 18. Absolutely no evidence has been presented that Mr. Garman's disclosures made under Bankruptcy Rule 2014 were not entirely accurate—because none exists.

38. The Retention Order reserved review of the contingency component to "only the United States Trustee." ECF No. 293 ¶ 4. GTG's final compensation from the Estates was allowed by order entered December 10, 2025, which deferred $4,669,271.70 of contingency compensation; GTG's hourly fees were waived. ECF No. 866. To be clear, the final order approving GTG's second fee application expressly ordered as follows:

> To the extent GTG consented to other consensual treatment under the Joint Plan of Reorganization [ECF No. 434] (the "Plan") and as set forth in the Interim Approval Order, ***the Liquidation Trustee of the NuMale Liquidation Trust is hereby authorized, empowered, and directed to pay GTG any unpaid balance owed in respect of the compensation for professional services and the reimbursement of expenses awarded on a final basis pursuant to this Order, including paying GTG the Deferred Portion of $4,669,271.70 allowed by the Interim Approval Order and this Order in accordance with the terms of the NuMale Liquidation Trust Agreement***.

ECF No. 866 ¶ 5 (emphasis added).

39. Since the Effective Date, GTG has represented the Trustee under the Liquidation Trust Agreement, which authorizes the Trustee to retain and compensate professionals without further Court approval. ECF No. 726-1, Liquidation Trust Agreement §§ 2.7-2.8.

40. Similarly, the Chapter 11 Trustee's compensation for his pre-Effective Date services was calculated in accordance with Section 326 and was fully disclosed and approved by final order of this Court. The Court's Order approving the Chapter 11 Trustee's compensation expressly ordered that Mr. Carmel, as the Trustee of the NuMale Liquidation Trust, may "pay himself the Deferred Portion of $278,250.00 from Liquidation Trust proceeds once available." ECF No. 701 ¶ 3.

41. QPWB's utterly baseless allegations are made "upon information and belief" despite not having one shred of evidence to support the objectively false allegations. In truth, the nature of GTG and the Chapter 11 Trustee's compensation was not only fully disclosed, it was



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

expressly approved by this Court after notice to all creditors, equity holders, the Office of the United States Trustee, and numerous other parties-in-interest.

**D. <u>The Trustee Demanded QPWB's Client File Pre-Effective Date, and QPWB Delayed for Months.</u>**

42. Before the Plan Effective Date, on October 6, 2025, the Trustee formally terminated QPWB's representation and demanded immediate transfer of the entire client file, enclosing the order appointing him and explaining that he is "the sole holder of the attorney-client privilege." Gray Kozlowski Decl., Ex. 54. The demand invoked Rules 16-116(D) and 16-115(D) of the New Mexico Rules Annotated and itemized the categories required, including pleadings, correspondence with the client, co-counsel, opposing counsel, the court, and the insurer, and attorney work product and notes. *Id.*

43. QPWB produced a fraction of the file on October 13, 2025. Gray Kozlowski Decl., Ex. 55. On December 17, 2025, the Trustee served a second demand identifying entire categories that were "wholly absent" from the production—among them a signed engagement agreement, conflicts waivers, scope amendments, and termination notices—and advised that failure to surrender the file within fourteen days violates Rule 16-116(D) of the New Mexico Rules Annotated. *Id.*, Ex. 56. QPWB did not respond.

44. On January 7, 2026, the Trustee served a "THIRD AND FINAL DEMAND," noting that QPWB had "now been provided three opportunities to comply with these ethical and legal obligations," that its production "remain[ed] grossly deficient," and that it had failed "to respond in any way" to the December 17th demand. Gray Kozlowski Decl., Ex. 57.

45. GTG followed this up with a fourth demand on behalf of the Trustee, emailing trial counsel and Managing Partner of QPWB's Dallas Office, Frank Alvarez, on February 3, 2026. Gray Kozlowski Decl., Ex. 60.

46. On January 28, 2026, Boyer—who now swears that he did not receive the 9019 Order or the Confirmation Order before the May 2026 Demand Letter—personally directed QPWB's response to the Trustee's third demand, instructing QPWB's attorneys: "Immediately



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

send this guy whatever we provided the doctors when they requested same. then will deal with requests for more info when actually requested." *Id.*, Ex. 58.

47. Boyer thus knew of the Trustee, and of his demands as fiduciary of the Estates, months before the Demand Letter he now says first alerted him to the operative orders.

48. On February 6, 2026, Mr. Alvarez confirmed that QPWB had no engagement or retainer agreement with any of the NuMale clients. *Id.*, Ex. 60.

49. QPWB produced what it indicated was the balance of the client file[2] on February 19, 2026—more than four months after the Trustee's first demand. The Trustee's follow-up letters of February 24 and March 3, 2026, asserting that QPWB produced client records for more than 200 *other clients' files*, went unanswered. Gray Kozlowski Decl. ¶ 9.

50. The Removal Motion now contends that QPWB never received the 9019 Order or the Plan papers. Boyer Decl. ¶ 7. **However, the QPWB NuMale File produced by QPWB to the Trustee contains them: on September 12, 2025, QPWB scanned the notice of entry of the 9019 Order, with the Global Settlement Agreement and the Plan, into the QPWB NuMale File, and QPWB produced a portion of that file to the Trustee on October 13, 2025.** Gray Kozlowski Decl., Exs. 50, 55.

## E. <u>The Pre-Litigation Demand and the Trustee's Attempts to Obtain Information Without Litigation.</u>

51. On May 18, 2026, the Trustee sent QPWB and the attorneys who handled the Sanchez Action a pre-litigation demand letter, addressed to QPWB (the "<u>Demand Letter</u>"). Gray Kozlowski Decl., Ex. 61. The Demand Letter made no monetary demand—"The Plaintiffs are not making a monetary demand at this stage"—and requested information to aid the Trustee's investigation and in the hope of accomplishing a pre-suit consensual resolution. *Id.*

52. As the Demand Letter explained, QPWB's representation in the Sanchez Action produced the largest medical malpractice verdict in New Mexico history. "The firm, among other

[2] QPWB also produced portions of over 200 other clients' files causing significant difficulty in identifying the Debtors' actual client file and raising further questions regarding the firm's compliance with the rules of professional conduct.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

misconduct, concealed a disqualifying conflict of interest from its nine clients for three years; privately told the carrier to pay $950,000 to settle the case while concealing that same information from its own clients; stipulated to joint and several liability across defendants with fundamentally divergent interests without client consent; and willfully violated court orders in the presence of the jury to the point the trial court publicly branded defense counsel's conduct "willful" violations of the court's orders multiple times in open court thereby poisoning the jury. Gray Kozlowski Decl., Ex. 61 at 1-2.

53. From May through September 2026, the Trustee sought additional information voluntarily, including through QPWB's counsel. QPWB produced a subset of what the Trustee requested, and conditioned it on a non-disclosure agreement that bars the Trustee from using it outside the parties' negotiations. ECF No. 1016 ¶ 7. After the Trustee made two settlement offers to QPWB, *to which QPWB refused to provide a counteroffer*, discussions ended on September 10, 2026 and the Trustee proceeded with discovery in furtherance of prosecuting the Trust's claims.

**F. <u>The Extortion Letter.</u>**

54. On September 14, 2026, QPWB's new counsel, Sgro & Roger, sent a sixteen-page letter (the "<u>Extortion Letter</u>"). Gray Kozlowski Decl., Ex. 62. The Extortion Letter opens with QPWB "plac[ing] the Trustee and his counsel on formal notice of the deficiencies in the claims" and threatening the Trustee and his counsel with legal action for allegedly not fully investigating its claims against QPWB and its attorneys. The Extortion Letter demanded that the Trustee "[w]ithdraw any and all pending demands against QPWB," and coupled that demand with notice that QPWB would seek leave to sue the Trustee individually and would pursue referrals to the Office of the United States Trustee and "any other regulatory or law enforcement agency." *Id.*, Ex. 62 at 1–2, 4, 9, and 13. It further demanded that "no monies should be distributed" and that distributions already made "be immediately returned." *Id.*

55. The Extortion Letter also asserted that QPWB could not identify the basis for the claims against it: its counsel wrote that he was "unaware of any analysis completed that sought to crystalize QPWB's legally supportable, causally attributable exposure" and that "it is still unclear



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

exactly what QPWB did that would give rise to any malpractice claim." Gray Kozlowski Decl., Ex. 62 at 1-2, and 4. It likewise claimed that QPWB was "unaware as to what the $108,000,000 received was allocated for between compensatory and punitive damages." *Id.* The Trustee responded on September 15, 2026, rejecting the allegations, again enclosing "our 28-page demand letter ... containing precisely that analysis," and copying counsel for the Office of the United States Trustee. *Id.*, Ex. 63.

56. Despite contending that the Trustee lacked necessary information, QPWB undertook a campaign to preclude the Trustee's efforts at additional discovery, filing motions to quash in Florida, New Mexico, and Texas, and lodging challenges in Arizona, and seeking an interlocutory appeal of the Court's *Order Granting Amended Motion to Enforce Rule 2004 Order and Compel Compliance with the Subpoena Issued to Quintairos, Prieto, Wood & Boyer, P.A. at Its Nevada Office and Denying Countermotion to Quash Subpoena and for Protective Order*. Gray Kozlowski Decl. ¶ 5; ECF No. 1052. These discovery issues have largely been resolved and the appeal is being dismissed pursuant to the *Stipulation Regarding Pending Discovery and Appeal.* ECF No. 1117.

**G. <u>QPWB Files the Improper Motions.</u>**

57. Undeterred, on October 7 and 8, 2026, QPWB filed the Removal Motion and another equally frivolous motion (together, the "<u>Improper Motions</u>") on QPWB's behalf. ECF Nos. 1007, 1010. The Removal Motion was QPWB's first filing in these Chapter 11 Cases. It concedes that "QPWB was never a creditor, never filed a claim, never voted, and never appeared in this case," Removal Motion, p. 2; that QPWB "is not a creditor, equity holder, or traditional 'party in interest' under 11 U.S.C. § 1109(b)," *id.* at 14; and that the 180-day period to revoke confirmation under **Section 1144 "expired on or about April 5, 2026**," *id.* at 9 (emphasis added).

58. The Removal Motion is supported by the Boyer Decl., in which QPWB's managing partner swears that, "based on a diligent search of QPWB's records that I have caused to be conducted, QPWB did not receive service of" the Confirmation Order, the Findings, the notice of entry, the notice of the Effective Date, or "the Global Settlement motion or Global Settlement



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Order (ECF 582)," and that he "personally did not receive any of the foregoing documents prior to the Trustee's Demand Letter." ECF No. 1007-2 ¶¶ 7-8.

59. However, QPWB's own NuMale client file produced to the Trustee after repeated demand proves that Boyer's testimony is false. And the produced file is only a small subset of QPWB's records. The only conclusion that can be drawn is that a full search of QPWB's files would confirm the actual receipt of all filings served on QPWB.

## III. LEGAL ARGUMENT

### A. QPWB Lacks Standing to Seek Removal of the Trustee, Disqualification of GTG, or Disgorgement of Fees.

The centerpiece of the Removal Motion—removal of the Trustee and disqualification of the Trust's counsel—fails at the threshold. Before a court reaches whether good cause exists, the movant must have the right to ask. QPWB does not—not under the Bankruptcy Code, not under the Liquidation Trust Agreement, not under Nevada trust law, and not under Nevada's law of attorney disqualification. Each body of law answers the question the same way—QPWB lacks standing.

#### 1. QPWB Concedes that It Is Not a Party in Interest.

QPWB's opening sentence concedes the point: "QPWB was never a creditor, never filed a claim, never voted, and never appeared in this case." Removal Motion, p. 2. QPWB acknowledges that it "held no claim and no interest in the estates," that "[i]ts only connection to these cases was as the object of the estates' contemplated litigation," and that it is "not a creditor, equity holder, or traditional 'party in interest' under 11 U.S.C. § 1109(b)." *Id.* at 10, 14. Those concessions are dispositive.

The Ninth Circuit has long held that a litigant whose "only demonstrable interest in the order is as a potential party defendant in an adversary proceeding" lacks standing to challenge it. *Fondiller v. Robertson (In Matter of Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983) (citations omitted). That is QPWB precisely. QPWB's sole interest in these cases is in defeating the claims against it—an interest adverse to the Trust and the Trust beneficiaries, not one the Bankruptcy



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Code protects. Nothing in the 9019 Order, the Plan, or the Confirmation Order adjudicated QPWB's liability. Each preserved the claims against QPWB for adjudication on the merits. ECF No. 582 ¶ 7(ix)(3); ECF No. 434, Schedule 1.1.82; ECF Nos. 726, 727.

The authorities QPWB invokes confirm the point. *Thorpe Insulation* involved non-settling insurers whose contractual obligations the plan itself altered and a confirmed plan issuing channeling injunctions under Section 524(g), applicable to asbestos cases. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 884-88 (9th Cir. 2012). *Grace*, an out-of-circuit decision, concerned a judgment consensually entered against a *pro se*, judgment proof defendant specifically for the purpose of collecting from a third party. *Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 186–87 (2d Cir. 2006). The Second Circuit expressly limited its holding in *Grace* to the unique facts before it, stating "we limit our decision to the facts of this case." *Id.* at 188. Nor does *Truck Insurance* help QPWB, as it is another case involving the impact of a channeling injunction under Section 524(g), applicable to asbestos cases. *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 272, 284 & n.5 (2024). The Chapter 11 Cases are not asbestos cases; they do not involve channeling injunctions under Section 524(g); and the Findings and Confirmation Order struck Sections 8.5 (Discharge) and 8.6 (Injunction) of the Plan in their entirety because the Debtors were liquidating. ECF No. 726 ¶ 52. Moreover, QPWB is not an insurer. It holds no claim, owns no property the Plan administered, and had nothing adjudicated against it. It is a tort defendant, and being sued is not a stake in a bankruptcy estate.

QPWB knows that it does not have standing to seek removal of the Trustee or disqualification of GTG. Nonetheless, QPWB and its counsel filed the Removal Motion, which it knows is meritless, to harass and threaten the Trustee and GTG.

**2. QPWB Does Not Have Standing to Seek Removal of the Trustee of the NuMale Liquidation Trust.**

The Removal Motion's deeper flaw is that it treats Mr. Carmel as though he remains a Chapter 11 trustee answerable to anyone touched by the administration of the Estates. He is not. On the Effective Date, the Estates' litigation claims (including the Quintairos Claims) vested in



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

the Trust, a trust governed by Nevada law, and Mr. Carmel became its trustee under the Liquidation Trust Agreement. Plan §§ 5.8, 5.12; Liquidation Trust Agreement §§ 1.1, 11.6; *see also* ECF Nos. 726, 727. QPWB acknowledges that "[t]he Liquidation Trustee is a post-confirmation fiduciary under the Liquidation Trust Agreement; he is not a § 1104 trustee." Removal Motion, p. 14. The Trust exists "for the benefit of the Liquidation Trust Beneficiaries," Liquidation Trust Agreement § 1.1, who are the holders of Allowed Claims entitled to distributions under the Plan. QPWB holds no claim and no beneficial interest in the Trust.

Under settled trust law, the right to seek a trustee's removal belongs to those with an interest in the trust: the settlor, a cotrustee, or a beneficiary. *See* NRS 153.031(1) (petition concerning the internal affairs of a trust, including the removal of a trustee, may be brought by a trustee or beneficiary); NRS 163.115(1) (right to petition for removal belongs to a settlor, cotrustee, or beneficiary, or the court's own motion); *see also* Unif. Tr. Code § 706(a) (Unif. L. Comm'n 2000) ("The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative."); Restatement (Third) of Trusts § 94(1) (Am. L. Inst. 2012) (a suit "to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries"). QPWB thus has no standing to seek removal of the Trustee. A defendant the Trust anticipates suing is not merely outside that class of Trust beneficiaries; it is the antithesis of a beneficiary.

The Liquidation Trust Agreement does not enlarge that class of beneficiaries. Section 2.4 provides that the Liquidation Trustee "may be removed by the Bankruptcy Court upon application for good cause shown," and that a vacancy is filled by the holder of the Sanchez Claim or if the holder of the Sanchez Claim does not select a new trustee, by the Court "upon submissions from any of the Liquidation Trust Beneficiaries." ECF No. 726-1, Liquidation Trust Agreement § 2.4. That provision supplies a forum and a standard; it does not confer standing on strangers to the Trust, much less on the Trust's litigation adversaries. To the contrary, the Liquidation Trust Agreement confers no rights or remedies on anyone other than Liquidation Trust Beneficiaries.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Liquidation Trust Agreement § 11.9. Article 9 of the Plan gives this Court jurisdiction; it gives QPWB nothing. QPWB's reliance on the Court's retained jurisdiction and on Sections 105(a) and 1142 confuses the Court's power to act with QPWB's right to ask.

QPWB's interest is not merely different from the Trust beneficiaries' interest—it is directly adverse to it. Every dollar the Trust recovers from QPWB is distributed to the Trust beneficiaries; thus, every dollar QPWB avoids paying harms the Trust beneficiaries. The Trustee's fiduciary duties run to the beneficiaries, not to the Trust's adversaries (i.e., QPWB and its attorneys). QPWB's position—that a trust's litigation target may unseat the trustee prosecuting claims against it—would allow every defendant to choose its prosecutor. QPWB cites no decision that so holds, because none exists. *Cf. Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 848 n.10 (9th Cir. 2008) (in assessing a removal request, a court may consider that the movant is adverse to the trustee in litigation and may be motivated by litigation tactics).

**3. Even If QPWB Had Standing, QPWB Identifies Nothing Approaching the Requisite Good Cause for Removal of the Trustee or Disqualification of GTG.**

There is not one shred of evidence that would support removal of the Trustee or disqualification of GTG for failure to make the discloses required by Bankruptcy Rule 2014. In flagrant disregard for its duty of candor to this Court, QPWB and its counsel nonetheless allege "[o]n information and belief" that GTG's disclosures were "materially incomplete." Removal Motion, p. 15. These allegations are entirely false and the Trustee has issued discovery to QPWB and Boyer to prove that QPWB and its counsel knew the allegations were false when they made them "on information and belief." Gray Kozlowski Decl. ¶ 6. The truth is that detailed and accurate disclosures were made in the Garman Declaration when GTG's employment was approved. ECF No. 200 ¶¶ 8, 16(f)–(g), 17, 18. Beyond this, GTG is no longer employed under Sections 327 and 328 and QPWB's invocation of Sections 327, 328, and 330 post-Effective Date underscores its fundamental misunderstanding of the Bankruptcy Code.

QPWB also argues that GTG's pre-Effective Date contingency fee and the Trustee's statutory compensation create disqualifying financial interests. *Id.* at 15. A contingency fee



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

disclosed in detail and approved by this Court under Sections 327, 328, and 330 [ECF Nos. 200, 293, and 866] and trustee compensation fixed by the Bankruptcy Code in Section 326, are the framework under which every estate professional and trustee is paid; they are not conflicts. Moreover, the deferred portion of GTG and the Chapter 11 Trustee's compensation was fully disclosed in connection with the fee applications, the Plan, and the Liquidation Trust Agreement, all of which were approved by this Court after notice to all creditors and the Office of the United States Trustee. ECF Nos. 438, 701, 805, 866, 726. QPWB is patently wrong.

QPWB next contends that the Trustee and Mr. Garman are "necessary fact witnesses" on the post-verdict decisions, the Beazley settlement, and causation. Removal Motion, pp. 3, 15. Every trustee who settles one claim and prosecutes a related one is a potential witness to the events he administered. That does not create any sort of disqualifying conflict. If that were cause, no trustee could ever prosecute the claims the estate holds. Moreover, while Mr. Carmel may be a necessary fact witness at trial, there is no reason why Mr. Garman is a necessary fact witness. Even if he were, however, that does not create a disqualifying conflict. Had QPWB undertaken even a cursory review of Nevada law before making these baseless allegations, QPWB would have encountered the Nevada Supreme Court cases holding that counsel who may ultimately be a necessary fact witness can serve as counsel in the pretrial stage. *DiMartino v. Eighth Jud. Dist. Ct.*, 66 P.3d 945, 947 (Nev. 2003).

QPWB's final complaint is that the Trustee sent demand letters and fraudulent transfer notices to QPWB and its principals. Removal Motion, pp. 15-16. Those are the ordinary incidents of a fiduciary's pursuit of claims; they are evidence that the Trustee is doing his job, not the opposite. In short, there is not one shred of evidence that would support removal of the Trustee or disqualification of GTG, even if QPWB has standing, which it does not.

**4. Examining Section 324(a) Further Underscores the Frivolity of QPWB's Request to Remove the Trustee.**

QPWB invokes Section 324's trustee removal statute by analogy, but Section 324 only underscores why the Removal Motion must be denied. Removal of a Chapter 7 trustee under



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Section 324(a)[3] is an "extreme remedy." *In re Log & Conventional Homes, Inc.,* No. BAP SC-11-1000-KIMKH, 2011 WL 7145883, at *4 (B.A.P. 9th Cir. Dec. 22, 2011), aff'd, 523 F. App'x 440 (9th Cir. 2013); *In re Lebbos,* BAP No. EC-07-01119-NUNA, 2007 WL 7540984, at *5 (B.A.P. 9th Cir. Nov. 14, 2007) (removal of a trustee is an extreme remedy that has an impact on all parties involved). "Cause" may include trustee incompetence, violation of fiduciary duties, misconduct or failure to perform the trustee's duties, lack of disinterestedness, or an interest adverse to the estate, but the party seeking removal must establish cause through "specific facts." *In re AFI Holding, Inc.,* 530 F.3d at 845. The burden is upon the party seeking removal to prove the specific facts. *Id.* "[T]he requirement of § 324 of the Code that cause be shown before a trustee is removed demands far more than ... unsupported inferences." *In re Braverman*, 25-12365-JPM, 2026 WL 130784, at *3 (Bankr. S.D.N.Y. Jan. 16, 2026) (quoting *In re Ampal-American Isr. Corp*., 534 B.R. 569, 586 (Bankr. S.D.N.Y. 2015)). "The party seeking removal must make a strong showing because the effect of removal is deleterious to the continuity of the administration of the estate." *Id.*

Absolutely nothing in Section 324(a) authorizes removal because a party in interest disagrees with how a trustee has exercised his business judgment. A trustee "is granted wide authority and discretion regarding his chosen methods of administering the assets of an estate, including his decisions regarding whether assets are worth liquidating and whether litigation is worth pursuing." *In re Carvalho*, 578 B.R. 1, 11 (Bankr. D.D.C. 2017) (citing *Mobile Diagnostech, Inc. v. Cohen (In re Equimed, Inc.)*, 267 B.R. 530, 534 (D. Md. 2001)).

"The Ninth Circuit applies the same corporate business judgment rule in bankruptcy that is applicable outside of bankruptcy." *In re Player's Poker Club, Inc.,* 636 B.R. 811, 817 (Bankr. C.D. Cal. 2022); *see also In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (quoting *Durkin v. Benedor (In re G.I. Indus.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (analyzing a debtor in possession's decisions in administering the estate, powers exercised through Section 1107(a)'s incorporation of the trustee's rights and powers). It is the presumption that the trustee

[3] Section 324(a) provides that the "court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." 11 U.S.C. § 324(a). "Cause" is not defined in the Bankruptcy Code.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

"acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Group, Inc.,* 476 F.3d at 670.

The trustee "is not required to prosecute every cause of action belonging to the bankruptcy estate," and his choices "are measured by a business judgment standard." *In re Carvalho*, 578 B.R. at 11 (quoting *In re Consol. Indus. Corp.,* 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005)); *In re Ampal-Am. Israel Corp*., 534 B.R. 569, 586 (Bankr. S.D.N.Y. 2015), aff'd, 554 B.R. 604 (S.D.N.Y. 2016), aff'd, 691 Fed. App'x. 12 (2d Cir. 2017) (citing *In re V. Savino Oil & Heating Co.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988) ("a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to sue or not to sue."); *see also In re Reed*, 178 B.R. 817, 821 (Bankr. D. Ariz. 1995) ("The trustee is granted complete authority and discretion regarding the prosecution and defense of any litigation of the debtor's estate."). It follows that "cause to remove a trustee cannot be found in actions that fall within the proper scope of the trustee's discretion and which do not represent some type of misconduct," and that a trustee "will not be removed for a mistake in judgment where that judgment was discretionary and reasonable under the circumstances." *Carvalho*, 578 B.R. at 11 (collecting cases); *In re United Tax Group, LLC*, 622 B.R. 148, 157 (Bankr. D. Del. 2020) (holding "courts will not remove a trustee for mistakes if the judgment is discretionary and reasonable under the circumstances"); *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990). Courts accordingly "will not [even] entertain objections to the trustee's management of the debtor's estate where the trustee's conduct involves [his] good faith business judgment, is made on a reasonable basis, and is within the scope of the trustee's authority under the Code." *In re Belmonte*, 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015) (quoting *In re Taub*, 441 B.R. 211, 216 (Bankr. E.D.N.Y. 2010)) (internal quotations and alterations omitted).

To be clear: Section 324 is not a vehicle through which disappointed litigation opponents may second-guess a trustee's litigation decisions; it requires cause established by specific facts, such as incompetence, breach of fiduciary duty, misconduct, failure to perform statutory duties, lack of disinterestedness, or an adverse interest. *See, e.g., AFI Holding*, 530 F.3d at 845, 852.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

The cases in this Circuit actually granting removal under Section 324 demonstrate just how extraordinary the misconduct must be. *See In re Reed*, 178 B.R. at 822 (most case law concerning trustee removal involves intentional misconduct, negligence, or a lack of disinterestedness). In *AFI Holding*, the trustee had undisclosed prepetition personal and professional relationships with two potential estate targets, had received $1,250 of the debtor's funds through a settlement she negotiated for one of them, and then declined to sue those two former clients; the Ninth Circuit affirmed removal because those personal entanglements compromised her disinterestedness and created an appearance of impropriety. 530 F.3d at 841–42, 848–52.

In *In the Matter of Chapter 13, Pending and Future Cases*, the court removed a trustee after finding that he had repeatedly subjected female employees to coercive sexual harassment, including forced sexual acts. 19 B.R. 713, 715–17 (Bankr. W.D. Wash. 1982) (on rehearing). And in *Schoenmann v. United States Trustee (In re Li's Capital, LLC)*, the Ninth Circuit BAP affirmed removal based on the trustee's own personal misconduct concerning a $924,700 federal disaster loan, including her failure to disclose pending litigation affecting the collateral and her subsequent use of substantial loan proceeds for personal litigation expenses and other unauthorized purposes. BAP No. NC-24-1096-FBC, 2025 WL 1066799 (B.A.P. 9th Cir. Apr. 8, 2025).

Nothing remotely comparable is even alleged here. QPWB does not allege that the Trustee took a dollar from the Trust, holds any personal economic interest adverse to the beneficiaries or has any undisclosed relationship with an insider or a litigation target. In truth, the contingent nature of GTG and the Trustee's compensation under the Liquidation Trust Agreement aligns their interests with the Trust beneficiaries' interests in maximizing the value of the Trust assets. QPWB's real complaint is that the Trustee intends to sue QPWB. That is not cause; it is the very purpose of the Trust and the Trustee's duty.

Cases within the Ninth Circuit denying removal of a trustee under Section 324 further establish that the Removal Motion is factually and legally meritless. In *Baroni*, the bankruptcy court, in a lengthy decision, denied a request to remove the trustee where the debtor and a creditor alleged that the trustee had mishandled the administration of a rental property, improperly settled



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

claims with rental lenders without maximizing value to the estate, and failed to pursue the debtor's preferred litigation strategy. The court also observed that the debtor's objections centered on disagreements with the trustee's exercise of discretion in approving a settlement with rental lenders and in declining to pursue certain claims—decisions that had been upheld on appeal and did not reflect actual misconduct, conflict of interest, or breach of fiduciary duty. The *Baroni* court concluded that the removal motion was "nothing more than a collateral attack on the Compromise Order" on appeal and that many of the allegations advanced by the movant were "premised on reckless misrepresentations of the procedural history" of the case and are "without merit." *In re Baroni*, 643 B.R. 253, 284 (Bankr. C.D. Cal. 2022).

The *Baroni* court cited three cases in addition to *AFI Holding* to establish the type of improper conduct required to establish cause:

> In *In re Vega*, the chapter 7 trustee solicited $50,000 from a lender, ostensibly to fund a lawsuit related to the bankruptcy, and instead invested the funds in certificates of deposit, which he used to secure his own personal loan obligation. *In re Vega*, 102 B.R. 552, 553-54 (Bankr. N.D. Tex. 1989). The bankruptcy court determined this was a breach of the trustee's fiduciary duty, and cause for dismissal from all cases in which he was serving as trustee. Id. at 554.
>
> In *Matter of Schoen Enterprises*, despite the case converting to chapter 7 more than one year earlier, the chapter 7 trustee had failed to examine under oath any corporate officers of the debtor, made no attempts to obtain the books and records of the debtor, failed to investigate the "turbulent and highly suspicious activities" of the debtor prepetition and during the chapter 11 case and exhibited a "total lack of interest" in the case. *Matter of Schoen Enter., Inc.*, 76 B.R. 203, 204-05 (Bankr. M.D. Fla. 1987). The bankruptcy court found cause to remove the trustee for utterly failing to perform his statutory duties under section 704 of the Bankruptcy Code. *Id.* at 206.
>
> In *In re IFS Financial Corporation*, the bankruptcy court removed a chapter 7 trustee for billing the estate for travel expenses for a five-day trip to New Orleans for the trustee, his attorney (who was also his wife) and the couple's twins, finding a pattern of the trustee placing the interests of his law firm above those of the estate and a "clear and unmistakable" breach of his fiduciary duty. *In re IFS Fin. Corp.,* 2013 WL 2018540, at *9-10 (Bankr. S.D. Tex. May 13, 2013).

*Id.* at 284.

The fact that there is absolutely no basis to remove the Trustee is reinforced by Ninth Circuit cases denying removal even where the asserted concerns were substantially more concrete than QPWB's entirely fabricated allegations here. In *In re MicroDisk, Inc.*, the trustee was



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

litigating his claimed right to majority ownership of the debtor, and a company owned by the trustee and his wife had repossessed computers from the debtor less than one day before bankruptcy, creating a potential preference claim involving the trustee's own company. 33 B.R. 817, 818–19 (D. Nev. 1983). The Nevada District Court nevertheless affirmed denial of removal because the trustee proposed a procedure under which the potential preference would be independently resolved by the bankruptcy court, thereby preventing the potential conflict from becoming detrimental to the estate, and the creditors' committee and principal secured creditor strongly supported his continued service. *Id.* at 819. Similarly, in *United States Trustee v. Repp (In re Sheehan),* the court denied the United States Trustee's request to remove a panel trustee despite an employee's theft of funds from the bankruptcy estates and identified deficiencies concerning the trustee's check-control, reporting, and office-management procedures. 185 B.R. 819, 822–24 (Bankr. D. Ariz. 1995). Because the trustee reimbursed the affected estates and the court found her delegation, supervision, and response reasonable under the circumstances, those matters did not warrant the "extreme remedy" of removal. *Id.* at 822–24.

In *Log & Conventional Homes, Inc.*, the debtor's sole shareholder sought removal alleging that the trustee had misrepresented the thoroughness of her investigation, improperly favored an opposing creditor, dissipated estate value through a settlement, failed adequately to investigate estate litigation, and used her office to harass and intimidate him. 2011 WL 7145883, at *3–6. The BAP affirmed denial, concluding that the movant was largely rehashing objections to a previously approved settlement and had failed to establish specific facts showing cause; critically, it held that his displeasure with the trustee's prosecution of an avoidance action against him did not provide a basis for removal. *Id.* at *4–6.

QPWB's invocation of Section 324 "by analogy" serves to shine a spotlight on the frivolity of QPWB's removal request. Beyond the fact that QPWB does not have standing to remove the Trustee or to disqualify GTG, QPWB's arguments are frivolous and made for an improper purpose of harassing the Trustee. The Trustee will be seeking sanctions, among other relief.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**5. GTG Is Post-Confirmation Counsel to the Trust; Disqualification Is Governed Solely by State Law, Under Which QPWB Has No Standing.**

QPWB's efforts to disqualify GTG rest on a categorical error. QPWB's theories—that GTG is not "disinterested" under Sections 327(a) and 101(14), that its Rule 2014 disclosures were incomplete, and that its compensation is subject to review under Sections 328(c) and 330, *see* Removal Motion, pp. 15-17—are rules governing the employment and compensation of professionals by a bankruptcy estate. GTG's employment by the Estates under those provisions ended on the Effective Date, and its compensation for that employment was allowed by final order. ECF Nos. 293, 762, 866. Since the Effective Date, GTG has represented the Trustee—not the Estates—under the Liquidation Trust Agreement, which authorizes the Trustee to retain professionals and to pay them without Court approval. Liquidation Trust Agreement §§ 2.7-2.8. QPWB itself cites those provisions. Removal Motion, pp. 7, 17.

Section 327(a) authorizes "the trustee," "with the court's approval," to employ professionals "to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). The Trustee's duties now arise under the Liquidation Trust Agreement, not Title 11, and there is no estate for a professional to be "disinterested" with respect to. QPWB's reliance on *In re Park-Helena Corp.*, 63 F.3d 877 (9th Cir. 1995), which addressed the disclosures of an estate professional employed under Section 327, is misplaced for the same reason.

To the extent QPWB attacks GTG's pre-confirmation retention, it is too late and wrong. The Retention Order reserved review of the contingency component to "only the United States Trustee," ECF No. 293 ¶ 4, and GTG's compensation was allowed by final order, ECF No. 866. The Ninth Circuit Bankruptcy Appellate Panel has rejected a belated Rule 60(b) attack on a fee order by a non-debtor that was obligated to pay GTG's fees and failed to timely appeal. *Double Diamond Distrib., Ltd. v. Garman Turner Gordon LLP (In re U.S.A. Dawgs, Inc.)*, 657 B.R. 98, 110–15 (B.A.P. 9th Cir. 2024), *aff'd*, 2025 WL 1122317 (9th Cir. Apr. 16, 2025). The Nevada District Court has likewise upheld a contingent fee arrangement where GTG represented a trustee of a debtor principally holding litigation claims or assets subject to disputed ownership. *Fann*



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Contracting, Inc. v. Garman Turner Gordon LLP,* 620 B.R. 141 (D. Nev. 2020).

Because the Bankruptcy Code's employment provisions do not govern, the disqualification of the Trust's counsel is a question of state law. Federal courts "apply state law in determining matters of disqualification." *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Under Nevada law, QPWB has no standing. As a general rule, only a current or former client may move to disqualify counsel. *Liapis v. Second Jud. Dist. Ct.*, 282 P.3d 733, 737 (Nev. 2012) (upholding sanctions where the disqualification motion was meritless) (citing RPC 1.7 and *Great Lakes Const., Inc. v. Burman,* 186 Cal. App. 4th 1347 (2010)). QPWB has never been GTG's client and therefore has no standing to seek GTG's disqualification.

Additionally, disqualification is disfavored precisely because it is so often tactical. "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotation marks omitted) (upholding sanctions where disqualification motion was meritless); *see County of Los Angeles*, 223 F.3d at 996; *Waid v. Eighth Jud. Dist. Ct.*, 119 P.3d 1219, 1222 (Nev. 2005). The motion here is paradigmatic: the defendant in a contemplated action seeks to strip the plaintiff of the counsel who has investigated and is prepared to prosecute the claims on plaintiff's behalf.

Nor do QPWB's ethical theories supply a basis for granting relief. The conflict rules protect clients, and GTG's clients—the Trustee and the Individuals—are not complaining. The "personal interest" QPWB identifies is a court-approved contingency fee, which the rules expressly permit. Nev. RPC 1.8(i)(2) (a lawyer may "contract with a client for a reasonable contingent fee in a civil case"). And the lawyer-witness rule limits advocacy "at a trial in which the lawyer is likely to be a necessary witness." Nev. RPC 3.7(a). No action is pending, and the rule does not bar pretrial representation. *DiMartino*, 66 P.3d at 947. More importantly, however, there is no reason GTG would be a necessary witness in the Trust's litigation against QPWB.

In short, not only is there no legal or factual basis to disqualify GTG as counsel for the Trustee, QPWB unequivocally lacks standing to seek disqualification.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**B. QPWB Is Improperly Seeking an Advisory Opinion as to the Effect of the Plan, Confirmation Order, Global Settlement Agreement, and 9019 Order.**

Incredibly, in paragraph 2 of its proposed order, QPWB asks this Court to provide an advisory opinion effectively ordering that the Plan, the Confirmation Order, the Global Settlement Agreement, and the 9019 Order are void as to QPWB.

> 2. Pursuant to Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024, the Confirmation Order (ECF 727), the Findings (ECF 726), the Plan, the Global Settlement Order and 363 Sale Order (ECF 582) (collectively, the "Orders"") shall not bind, be preclusive against, or otherwise prejudice QPWB with respect to: (a) any finding, recital, or determination concern in QPWB, the Quintairos Claims, or the Quintairos Non-Debtor Claims, including any finding that the settlements and releases were fair, reasonable, in good faith, or in the best interests of the estates; (b) any allocation, setoff, judgment-reduction, contribution, or comparative-fault effect of the releases; (c) the exculpation, injunction, and limitation-of-liability provisions, insofar as they would bar or limit QPWB's defenses, counterclaims, setoff or recoupment, or claims against the Liquidation Trustee or GTG; and (d) Plan § 12, insofar as it would determine the validity, assignability, or combination of any claim against QPWB or prejudice any defense of QPWB.

ECF No. 1007-1, p.3 of 4.

The Plan, Confirmation Order, Global Settlement Agreement, and 9019 Order are all valid, final orders. They are enforceable in accordance with their respective terms. There is no factual or legal basis upon which to modify, alter, or vacate them. QPWB describes the relief it seeks as "a determination of the preclusive and operative effect of orders as to a non-party." *Id.* In other words, QPWB asks the Court to declare, in advance, what effect those orders will have in litigation that has not been filed, on claims and defenses that have not been asserted, in a forum that has not been determined. That is a request for an impermissible *advisory opinion*.

Federal courts do not issue advisory opinions. As the Ninth Circuit, sitting *en banc*, has explained, "[o]ur role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The issues presented must be "definite and concrete, not hypothetical or abstract." *Id.* at 1139 (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

In *GTI Capital Holdings, LLC*, the appellants challenged a bankruptcy court's approval of a settlement between the chapter 11 trustee and Comerica Bank, but identified no error in any of the bankruptcy court's rulings. *Triad Commercial Captive Co. v. Comerica Bank (In re GTI Capital Holdings, LLC)*, 409 F. App'x 68, 68–69 (9th Cir. 2010) (mem.). Rather, they "appear[ed] to be seeking . . . an advisory opinion about the effects of the settlement agreement on other litigation." *Id.* The court of appeals declined the invitation: "We lack jurisdiction to render advisory opinions." *Id.* at 69 (citing *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010)). QPWB asks this Court for precisely the same thing: an opinion about the effects of the Global Settlement Agreement, the 9019 Order, and the Plan on litigation that has not yet been commenced and over which no concrete dispute currently exists. To demand a decision from this Court that the Plan, Confirmation Order, Global Settlement Agreement, and 9019 Order have no effect whatsoever on QPWB in future litigation is undeniably seeking an improper advisory opinion.

Where the facts that would frame the dispute have not yet developed, any decision would be wholly advisory. *Id.* at 1142 n.8. The U.S. Supreme Court is clear that federal courts lack the power to render advisory opinions. Rather, their "judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) and quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (a claim "is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all'").

QPWB seeks an advisory opinion as each subparagraph of paragraph 2 of its proposed order asks the Court to rule on a hypothetical dispute. Subparagraph (a) asks the Court to declare that no "finding, recital, or determination" in the Confirmation Order or the 9019 Order will be "preclusive against" QPWB. This is clearly seeking an advisory opinion on a hypothetical that has not, and may never, arise. Moreover, even if the issue was ripe (it is not), QPWB has failed to file the requisite declaratory relief action as required by Bankruptcy Rule 7001. *See* Fed. R. Bankr. P.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

7001(g) and (i); *see also Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1307 (9th Cir. 2022) (citing *Smith v. Bayer Corp.,* 564 U.S. 299, 307 (2011) ("Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second court ....")).

Subparagraph (b) asks the Court to decide now what "allocation, setoff, judgment-reduction, contribution, or comparative-fault effect" the releases will have on damages QPWB may someday be found to owe. Whether that question ever arises depends on events that have not occurred: a complaint must be filed, QPWB must be found liable, and damages must be awarded. That is the paradigm of a question resting on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas,* 523 U.S. at 300 (citations omitted). It is also governed by New Mexico comparative-fault law, which the court adjudicating the Quintairos Claims will apply on a developed record. ECF No. 434 § 12.5.

The impropriety of QPWB's request is exemplified by looking at New Mexico comparative fault law. QPWB contends that, because the 9019 Order contains no "judgment-credit mechanism," the releases in the Global Settlement Agreement leave QPWB exposed to "more than its proportionate share of fault." Removal Motion, pp. 6, 10–11. However, New Mexico law is to the contrary. By New Mexico statute, in any cause of action to which comparative fault applies, joint and several liability "is abolished except as otherwise provided," and "[t]he liability of any such defendants shall be several." N.M. Stat. Ann. § 41-3A-1(A). A severally liable defendant that establishes that the fault of another contributed to the plaintiff's injury is liable only for the share of damages equal to "the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants and ***persons not party to the action***." *Id.* § 41-3A-1(B) (emphasis added).

New Mexico courts routinely allocate fault to settling tortfeasors who are no longer parties. In *Fahrbach*, the plaintiffs settled with three co-defendants before trial, and the jury was told that those parties "will not be participating in this action, although you will hear evidence concerning their conduct and you will have an opportunity . . . to assess fault concerning some or all of those parties." *Fahrbach v. Diamond Shamrock, Inc.*, 928 P.2d 269, 272 (N.M. 1996). The New Mexico



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Supreme Court affirmed, explaining that the trial court "must ensure that the jury understands its authority and responsibilities in allocating liability among multiple tortfeasors." *Id.* at 275. Likewise, in *Hoeschen*, the jury was instructed that it would "evaluate the relative liability of a number of persons and entities, some who are parties in this case and some who are not"; it then allocated 25 percent of the fault to a non-party trucking company that had settled with the plaintiffs and its driver, and only 40 percent to the defendant. *Hoeschen v. N.M. Dep't of Transp.*, 584 P.3d 1136, 1145–46 (N.M. Ct. App. 2025). Because a severally liable defendant pays only its own share, New Mexico law neither needs nor provides the settlement credit QPWB demands. To the contrary, an injured party "may pursue recovery from each severally liable tortfeasor without reduction, even if the settling tortfeasor paid more in settlement than its apportioned share of total damages." *Fahrbach*, 928 P.2d at 274 (citing *Wilson v. Galt*, 668 P.2d 1104, 1109 (N.M. Ct. App. 1983)). And "[i]f each concurrent tortfeasor is liable only for his respective share of the negligence, no need exists for him to . . . seek contribution from other tortfeasors or to protect himself against having to contribute." *Wilson*, 668 P.2d at 1108.

What QPWB cannot do is preemptively obtain from this Court a ruling on how a New Mexico factfinder will apportion fault or what effect, if any, the releases will have on a future judgment. Those questions turn on the claims ultimately asserted, the nonparties QPWB identifies, the evidence at trial, and the jury's allocation, none of which exists today. A ruling on them would rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas*, 523 U.S. at 300, and would be precisely the advisory opinion federal courts may not issue. And even were these issues ripe (they are not), the requested injunctive and declaratory relief could only be pursued through an adversary proceeding. Fed. R. Bankr. P. 7001(g), (i).

Subparagraph 2(c) of QPWB's proposed order asks the Court to declare that the exculpation, injunction, and limitation-of-liability provisions will not bar QPWB's "defenses, counterclaims, setoff or recoupment, or claims against the Liquidation Trustee or GTG." QPWB identifies no defense, counterclaim, or claim that any of those provisions has been invoked to bar. As for the injunction, there is none to limit: the Findings struck Sections 8.5 (Discharge) and 8.6



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

(Injunction) of the Plan "in their entirety and of no force and effect." ECF No. 726 ¶ 52.

Subparagraph 2(d) of QPWB's proposed order asks the Court to declare that Section 5.12 of the Plan, which QPWB improperly calls "Plan § 12," does not "determine the validity, assignability, or combination of any claim against QPWB or prejudice any defense of QPWB." Section 5.12 does not purport to do any of those things. It provides only that the Trust and the Individuals, each of whom retains his own claim, will jointly prosecute those claims under the Liquidation Trustee's direction. ECF No. 726 ¶ 76; *see also Opposition to the Motion of Quintairos, Prieto, Wood & Boyer, P.A. for (I) an Order Confirming that the Automatic Stay and Plan Injunction Are Inapplicable to Its Proposed Declaratory Judgment Action, or (II) in the Alternative, Relief from the Automatic Stay and Plan Injunction, and for Leave Under the Barton Doctrine*, which analysis is incorporated herein by reference.

## C. <u>There Is Absolutely No Basis to Grant Rule 60 Relief to QPWB</u>

To the extent QPWB instead seeks to escape the orders altogether, it seeks that relief under Civil Rule 60(b)(1), (b)(3), (b)(4), and (b)(6), made applicable here by Bankruptcy Rule 9024. Removal Motion, pp. 3-4, 8-14. Each request is foreclosed by rule, by statute, or by binding precedent.

### 1. Revocation of the Confirmation Order Is Time Barred, and Section 1127 Precludes Plan Modification.

If QPWB is not seeking an impermissible advisory opinion, and is instead seeking to alter or revoke the Plan, those efforts are time barred. Bankruptcy Rule 9024 provides that Rule 60 applies in bankruptcy cases, "***except that … a complaint to revoke an order confirming a plan must be filed within the time allowed by §1144, 1230, or 1330.***" Section 1144, in turn, provides:

> On request of a party in interest at any time ***before 180 days after the date of the entry of the order of confirmation***, and after notice and a hearing, the court may revoke such order ***if and only if such order was procured by fraud***. An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

11 U.S.C. § 1144 (emphasis added).

Beyond the fact that there is absolutely no evidence or even indicia of the requisite fraud, the 180-day period in Section 1144 ran on April 5, 2026. *See* ECF No. 727 (Confirmation Order entered on October 7, 2025). The Removal Motion was filed on October 7, 2026. Accordingly, QPWB is barred from seeking to revoke the Confirmation Order.

Nor can QPWB modify the Plan. Post-confirmation relief that "alters the legal relationships" fixed by a confirmed plan is a modification, however it is styled. *In re Essex Real Estate Partners, LLC*, No. 19-51486-gs, ECF No. 855, at 4 (Bankr. D. Nev. Aug. 21, 2025) (quoting *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 798 (Bankr. E.D. Cal. 2018)). Section 1127(b) forecloses that relief on two independent grounds. First, only "[t]he proponent of a plan or the reorganized debtor" may modify a plan after confirmation. 11 U.S.C. § 1127. The Trustee proposed the Plan and the Plan reserves post-confirmation modification to the Liquidation Trustee. QPWB is neither the Plan's proponent nor a reorganized debtor.

Second, even a proponent may modify a plan only "before substantial consummation of such plan." 11 U.S.C. § 1127(b). The "caselaw construes section 1127(b) to prohibit modification of a confirmed plan after it has been substantially consummated." *Essex*, ECF No. 855, at 4 (quoting *In re NorthEast Gas Generation, LLC*, 639 B.R. 914, 920 (Bankr. D. Del. 2022) and citing, among other cases, *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) (Section 1127(b) "dramatically curtails the power of a bankruptcy court to modify a plan of reorganization after its confirmation and 'substantial consummation'")). It also cannot be avoided by recasting a modification as a mere clarification. *Essex*, ECF No. 855, at 5; *see also In re Daewoo Motor Am., Inc.*, 488 B.R. 418, 425 (C.D. Cal. 2011).

Here, the Plan was substantially consummated. The Liquidation Trust Assets (including the Quintairos Claims) were transferred to and vested in the Trust, the Liquidation Trustee assumed their management, and more than $100 million has been distributed to creditors. 11 U.S.C. § 1101(2); ECF No. 762; ECF No. 726-1. QPWB filed the Removal Motion nearly a year later. Thus, Section 1127(b) bars the Plan modification QPWB seeks, whatever label QPWB attaches to it.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**2. QPWB Received Notice that More than Satisfied Due Process; Rule 60(b)(4) Affords It No Relief.**

"A motion under Rule 60(b)(4) is not a substitute for a timely appeal." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Rule 60(b)(4) "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. QPWB's Rule 60(b)(4) theory is that it was deprived of notice. Removal Motion, pp. 6, 9–11. Due process, however, requires only notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). In *Espinosa*, the creditor received the debtor's plan by mail but never received the summons and complaint the Bankruptcy Rules required; because it had "actual notice of the filing and contents" of the plan, its due process rights were "more than satisfied," and the confirmation order was not void. *Id.*

The question, therefore, is not whether an envelope bore an "attention" line. It is whether QPWB knew that the Global Settlement Agreement and the Plan were pending before this Court in time to object. The Timelines attached as Exhibits A, B, and C and the exhibits to the Gray Kozlowski Decl. establish that QPWB knew through three independent channels, any one of which satisfies due process: (a) the Sanchez Action—QPWB's own case—in which the Global Settlement Agreement was disclosed, implemented, and carried through to dismissal on the record and on notice to QPWB's lawyers; (b) the mailings in these Chapter 11 Cases, which delivered the Global Settlement Agreement, the Plan, the Disclosure Statement, and every operative order to QPWB's offices; and (c) QPWB's own client file, which contains the 9019 Order, the Global Settlement Agreement, and the Plan.

. . .

. . .

. . .



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**(i) Documents Filed in the Sanchez Action Told QPWB that the Global Settlement Agreement Was Pending Before this Court, What It Would Do, and When It Had Been Approved.**

QPWB was not a stranger to the Global Settlement Agreement. The settlement resolved the Sanchez Action—the case QPWB tried, in which the jury returned a more than $400 million verdict against QPWB's clients, and in which QPWB remained counsel of record until the case was dismissed. ECF No. 1010, p. 7; Gray Kozlowski Decl., Exs. 52, 53. The parties to the Global Settlement Agreement included not only the Debtors, but also NuMale Albuquerque LLC, Dr. Asandra, and Mr. Pulliam—non-debtor defendants whom QPWB continued to represent as counsel of record in the Sanchez Action. ECF No. 430. And by August 2025, QPWB had already filed the notice of the Debtors' bankruptcy in the Sanchez Action, litigated the effect of the automatic stay there, and been served with more than twenty filings identifying these Chapter 11 Cases by court, judge, and case number. Gray Kozlowski Decl., Exs. 8, 19, 32, 34; *see* Ex. C at 1–13.

Against that backdrop, the Global Settlement Agreement was disclosed in the Sanchez Action three days after it was filed in this Court. On August 4, 2025, Sanchez's counsel filed a *Joint Stipulated Motion for Voluntary Consensual Stay of Post-Trial Proceedings.* Gray Kozlowski Decl., Ex. 46. The Stay Motion told each of its recipients (i) that a "Settlement Agreement" had been entered into; (ii) that the Settlement Agreement was "pending approval by the United States Bankruptcy Court for the District of Nevada, Judge Cox," in "Lead Case No. 25-10341 nmc-Chapter 11"; (iii) that if this Court approved the Settlement Agreement by "Final Order," the Sanchez Action would be dismissed with prejudice; and (iv) that if the Settlement Agreement were terminated, "including termination . . . because the Bankruptcy Court declines to enter the Settlement Order," any party could move on an expedited basis to lift the stay. *Id*. The Stay Motion was served through the New Mexico court's Odyssey File & Serve system on seven QPWB e-mail addresses, including those of QPWB's lead litigation counsel, Frank Alvarez, and its lead trial counsel, J. Andrew Robertson and Dominique Barrett. *Id*.; Ex. A at 16; Ex. B at 1; Ex. C at 14.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

On August 12, 2025, the New Mexico court entered the *Stipulated Order for Voluntary Consensual Stay of Post-Trial Proceedings*. Gray Kozlowski Decl., Ex. 47. The Stay Order stayed QPWB's case "pursuant to the Settlement Agreement entered into and pending final approval by the United States Bankruptcy Court for the District of Nevada, Judge Cox," and provided that, upon this Court's approval of the Settlement Agreement by "Final Order," Sanchez would move to dismiss the Sanchez Action with prejudice. *Id.* ¶¶ 2–3. The Stay Order was served on the same QPWB attorneys. *Id.*; Ex. A at 18; Ex. B at 3; Ex. C at 14. From August 12, 2025 forward, then, the only thing standing between QPWB's clients and either the dismissal of a $412 million verdict case or the resumption of post-trial proceedings was this Court's ruling on the Global Settlement Agreement—and QPWB's lawyers were told so by court order in their own case.

Neither the Stay Motion nor the Stay Order could be fully understood without the Global Settlement Agreement itself. Both keyed the dismissal of the Sanchez Action to the "Final Order" and the "Effective Date," "as those terms are defined in the Settlement Agreement." Gray Kozlowski Decl., Ex. 46; *id.*, Ex. 47 ¶ 3. And QPWB did not need to look far for it. The forms of the Stay Motion and the Stay Order—and of the joint motion and order that would later dismiss the Sanchez Action—were exhibits to the Global Settlement Agreement that the Trustee mailed to QPWB's Miami, Dallas, and Scottsdale offices on August 6, 2025, in the same package as the Plan, the Disclosure Statement, the order conditionally approving the Disclosure Statement, and the notice of the confirmation hearing. ECF Nos. 447, 449, 451; Ex. A at 17; Ex. B at 1–2. What QPWB's trial lawyers received electronically in New Mexico, QPWB's offices received on paper from this Court's docket, attached to the very agreement the New Mexico filings described. Counsel of record whose own case has been stayed pending this Court's approval of a settlement of a $412 million verdict against its clients is, at a minimum, on inquiry notice of that settlement and of the plan into which it was incorporated.

After this Court entered the 9019 Order, Sanchez's counsel wrote to QPWB's lawyers directly. On September 30, 2025, Lori Bencoe sent Mr. Alvarez and Ms. Barrett an e-mail stating: "As you are aware, in the Numale Corporation bankruptcy matter, the Trustee and parties entered



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

into a Global Settlement Agreement (attached to Motion, ECF Doc. No. 430, with exhibits). The Court entered an Order approving the GSA on September 4, 2025 (ECF Doc. No. 582).” Gray Kozlowski Decl., Ex. 51. Ms. Bencoe attached the joint motion and stipulated order of dismissal, explained that they “were expressly agreed to and appended to the Global Settlement Agreement the Court approved (as Exhibits E-1 and E-2),” and asked whether she “may indicate your electronic signatures on them and submit them to the Court for filing/entry.” *Id.;* Ex. A at 20. QPWB’s lawyers were thus given the docket number of the motion to approve the Global Settlement Agreement, the date and docket number of the order approving it, and the exhibit numbers of the dismissal papers. And, they were asked, as counsel of record, to sign the papers that would carry it out.

The *Joint Motion to Dismiss With Prejudice* was filed in the Sanchez Action the same day and served on seven QPWB e-mail addresses, and the *Stipulated Order of Dismissal With Prejudice* was entered on October 6, 2025 and served on five, including in each instance those of Mr. Robertson, Mr. Alvarez, and Ms. Barrett. Gray Kozlowski Decl., Exs. 52, 53; Ex. B at 6; Ex. C at 15–16. The Sanchez Action ended exactly as the Stay Motion and the Stay Order had told QPWB it would end if this Court approved the Global Settlement Agreement. A law firm whose own case was stayed, and then dismissed with prejudice, by operation of a settlement approved by this Court cannot credibly claim that it lacked notice of that settlement.

The timing forecloses any claim that QPWB lacked an opportunity to be heard. QPWB’s lawyers were served with the Stay Motion on August 4, 2025—a month before this Court entered the 9019 Order and seven weeks before the September 24, 2025 confirmation hearing. Gray Kozlowski Decl., Ex. 46; ECF Nos. 449, 582. Ms. Bencoe’s email reached them on September 30, 2025—a week before the Confirmation Order was entered, and three weeks before the fourteen-day period to appeal it expired on October 21, 2025. *Id.*, Ex. 51; ECF No. 727; Fed. R. Bankr. P. 8002(a)(1). QPWB did not object to the Global Settlement Agreement, did not appear at the confirmation hearing, and did not appeal the 9019 Order or the Confirmation Order. ECF Nos. 726, 727; Ex. A at 20.



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

The knowledge of these lawyers is QPWB's knowledge. QPWB is a professional association that acts only through its attorneys. Mr. Alvarez is the managing partner of QPWB's Dallas office, and Mr. Robertson and Ms. Barrett are QPWB partners; all three were counsel of record for QPWB's clients in the Sanchez Action, very case the Global Settlement Agreement resolved. Ex. A at 1. The Removal Motion's emphasis on what Boyer "personally" received, Boyer Dec. ¶ 8, is therefore beside the point. Due process is measured by what QPWB was told, not by which of its partners opened the envelope.

**(ii) QPWB Received the Global Settlement Agreement, the Plan, and Every Operative Order at Its Offices.**

The service record in these Chapter 11 Cases independently establishes notice. On August 6, 2025, the Trustee mailed a solicitation package (the "August 6 Package") to QPWB at three addresses: its Miami headquarters, where Boyer works and which QPWB itself now identifies as its proper address for service; its Dallas office, the office of Mr. Alvarez and Mr. Robertson; and its Scottsdale office, the office of Ms. Barrett. ECF No. 451; Ex. A at 17; Ex. B at 2. The August 6 Package contained (i) the Disclosure Statement, which includes a section titled "Litigation Claims Against the Quintairos Firm"; (ii) the Plan, including Schedule 1.1.82, which identifies the preserved claims against QPWB; (iii) the Global Settlement Agreement and its exhibits, including the proposed order approving it and the forms of the stay and dismissal papers later filed in the Sanchez Action; (iv) the order conditionally approving the Disclosure Statement; and (v) the notice of the hearing on confirmation and final approval of the Disclosure Statement, which set the deadline and procedures for objecting. ECF Nos. 435, 447, 449, 451. Together, the Plan, the Disclosure Statement, and the Global Settlement Agreement refer to Quintairos more than 200 times. Ex. A at 15. The Global Settlement Agreement disclosed that the Trustee would seek a hearing on the motion to approve it during the week of September 1, 2025, and a confirmation hearing during the week of September 15, 2025. ECF No. 434-1 at 5.

The mailings continued through the Effective Date. The Trustee mailed to QPWB's Miami headquarters (i) the notice of entry of the 9019 Order, with the 9019 Order, the Global Settlement



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Agreement, and the Plan attached, on September 5, 2025, ECF Nos. 586, 588; (ii) the Plan Supplement, with the Liquidation Trust Agreement, on September 15, 2025, nine days before the confirmation hearing, ECF Nos. 595, 609; (iii) the notice of entry of the Findings and the Confirmation Order, with the Liquidation Trust Agreement again attached, on October 7, 2025, ECF Nos. 728, 732; and (iv) the notice of the Effective Date on October 24, 2025, ECF Nos. 762, 774. Ex. A at 19–20, 22–23; Ex. B at 4–8. None was returned. Properly addressed mail is presumed to have been received. *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 207 (9th Cir. 1991). Here, however, no presumption is needed, because the documents are in QPWB's files.

**(iii) QPWB's Own Client File Contains the 9019 Order, the Global Settlement Agreement, and the Plan.**

On September 12, 2025—one week after the September 5 mailing to its Miami headquarters, twelve days before the confirmation hearing, and nearly a month before the Confirmation Order was entered—QPWB scanned the notice of entry of the 9019 Order, with the 9019 Order, the Global Settlement Agreement, and the Plan attached, into its client file for the NuMale defendants (i.e., the QPWB NuMale File). Gray Kozlowski Decl., Ex. 50 & ¶ 56; Ex. A at 20; Ex. B at 5. QPWB then produced the QPWB NuMale File, including that scan, to the Trustee on October 13, 2025, in response to the Trustee's October 6, 2025 demand for the client file. Gray Kozlowski Decl., Exs. 54, 55; Ex. A at 21, 23; Ex. B at 8. The 9019 Order package that QPWB now says it cannot confirm receiving is one that QPWB scanned, retained, and produced back to the Trustee.

That record also disposes of the Boyer Dec. Boyer attests that, based on "a diligent search of QPWB's records," QPWB did not receive "the Global Settlement motion or Global Settlement Order (ECF 582)." Boyer Dec. ¶ 7. The Removal Motion itself does not go so far; it says only that QPWB "cannot confirm that it received service." Removal Motion, p. 8. Whatever the scope of the search, it cannot create a factual dispute about receipt of a document that sits in QPWB's own client file and that QPWB produced to the Trustee a year before it filed the Removal Motion. Nor does Boyer's statement that he did not "personally" receive the operative orders before May 2026



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

bear on whether QPWB had notice. Boyer Dec. ¶ 8. Boyer himself was told of these Chapter 11 Cases in February 2025, consulted QPWB's own bankruptcy partners about them in March 2025, and directed follow-up on "whether any additional filings are required on our end." Gray Kozlowski Decl., Exs. 4, 6, 11, 13, 14. And on August 15, 2025—three days after the Stay Order was entered in the Sanchez Action—Boyer was personally directing the write-off of QPWB's remaining work in progress on the NuMale matter. *Id.,* Ex. 48 at 1.

**(iv) The Absence of an "Attention" Line Does Not Render Any Order Void.**

QPWB's voidness theory hinges entirely on its contention that the mailings were addressed to QPWB rather than to a named officer. Removal Motion, pp. 6, 10–11; Boyer Dec. ¶¶ 3–5, 12. That requirement comes from Rule 7004(b)(3), which governs service of a summons and complaint and, through Rule 9014(b), service of a motion on the party against whom relief is sought. Neither the motion to approve the Global Settlement Agreement nor the Plan sought relief against QPWB; both expressly preserved the claims against it. ECF No. 582 ¶ 7(ix)(3); ECF No. 434, Schedule 1.1.82. The notices at issue are governed by Rules 2002(b), 3017(d), 3020(c), and 9022(a), none of which requires an attention line, and the Removal Motion cites no rule that does.

The Removal Motion's reliance on *Beneficial California, Inc. v. Villar (In re Villar),* 317 B.R. 88 (B.A.P. 9th Cir. 2004), is misplaced. Rule 7004(b)(3) service was required there because the motion sought to avoid the creditor's lien; notice went only to a post office box and to the creditor's former attorney; and there was no evidence that the creditor knew of the motion. Nor does *Keys v. 701 Mariposa Project, LLC (In re 701 Mariposa Project, LLC)*, 514 B.R. 10 (B.A.P. 9th Cir. 2014), assist QPWB. That decision addressed the Rule 7004 service required for a contested matter seeking relief against the movant itself; it has no application to approval of a settlement and confirmation of a plan noticed under Rules 2002, 3017, and 3020, and it cannot displace *Espinosa*, which held that a confirmation order is not void where the creditor had actual notice of the plan even though the service the Rules required was never made. 559 U.S. at 272. Nothing in the 9019 Order, the Findings, or the Confirmation Order directly adjudicates any claim against QPWB. Rather, the Plan provides that the claims against QPWB are preserved for



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

adjudication on their merits, ECF No. 434, Schedule 1.1.82.

In any event, a defect under a procedural rule is not a due process violation. In *Espinosa*, the creditor received actual notice of the filing and contents of the debtor's plan that discharged the debtor's student loans, but no summons or complaint as required under the Bankruptcy Rules to discharge student loan debt. The Supreme Court held that actual notice "more than satisfied" due process and that the confirmation order was not void under Rule 60(b)(4) irrespective of whether allowing discharge of student loan debt without an adversary was erroneous. *Espinosa,* 559 U.S. at 272. Here, QPWB received the Global Settlement Agreement, the Plan, and the Disclosure Statement at three of its offices; saw its own case (the Sanchez Action) stayed based on the Global Settlement Agreement, and then dismissed with prejudice in accordance with the Global Settlement Agreement by court filings served on its lawyers of record; was told in writing by Sanchez's counsel the docket numbers of the motion to approve the Global Settlement Agreement and of the order approving it; and retained the 9019 Order, the Global Settlement Agreement, and the Plan into its own client QPWB NuMale File. QPWB neither objected nor appealed. It instead waited until October 7, 2026—one year after the Confirmation Order was entered—to file anything in this Court. ECF No. 1007; Ex. A at 26. "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Espinosa*, 559 U.S. at 275.

The foregoing analysis, Exhibits A, B, and C hereto, and the exhibits to the Gray Kozlowski establish that the notice provided to QPWB more than amply satisfied due process. Accordingly, relief under Rule 60(b)(4) is unwarranted

**3. Relief From the 9019 Order Is Time-Barred Under Rule 60(b)(1) and (3).**

A motion under Rule 60(b)(1), (2), or (3), applicable here pursuant to Bankruptcy Rule 9024, must be made "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1); Fed. R. Bankr. P. 9024. The 9019 Order was entered on September 4, 2025. ECF No. 582. The one-year period expired on September 4, 2026. QPWB filed the Removal Motion on October 7, 2026. The Court may not enlarge that period. Fed. R. Bankr. P. 9006(b)(2) ("The court must not extend the time to act under Rules…9024.").



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**4. Neither Rule 60(b)(1) Nor (b)(3) Provide a Basis for Granting Relief from the Confirmation Order.**

Assuming for the sake of argument that QPWB's 60(b)(1) and (3) request is not seeking an impermissible advisory opinion or impermissibly seeking to revoke or modify the Confirmation Order, it nonetheless fails under Rules 60(b)(1) and (3). Rule 60(b)(1) permits relief for "mistake, inadvertence, surprise, or excusable neglect." "Neither ignorance nor carelessness" provides grounds for relief under Rule 60(b)(1). *Engleson v. Burlington N. R. Co.*, 1992 WL 185016 (9th Cir. 1992) (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir. 1986) and collecting cases)). Rule 60(b)(1) "is not intended to remedy the effects of a litigation decision that a party later comes to regret," because "parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006) (affirming denial of Rule 60(b)(1) relief).

What the record shows here is not mistake, inadvertence, surprise, or neglect; rather, the substantial evidence before this Court establishes that QPWB made a choice. After consulting its own bankruptcy partners about these Chapter 11 Cases, QPWB elected not to request notice under Rule 2002, not to object to the Global Settlement Agreement, not to object to the Plan, not to appear at the confirmation hearing, and not to appeal. Gray Kozlowski Decl., Exs. 11, 13, 14; ECF Nos. 726, 727.

Nor could QPWB satisfy the equitable test that governs whether neglect is excusable: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000); *see Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381–82 (9th Cir. 1997) (per curiam). Where relief has been granted under that test, the delay was measured in days and the cause lay outside the movant's control: a twenty-day delay following a bar-date notice whose "unusual form" left a "dramatic ambiguity" in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 384, 398-99 (1993), and counsel's nineteen-day absence abroad for a family emergency in *Bateman*,



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

231 F.3d at 1222–25.

QPWB, by contrast, waited a full year after the Confirmation Order was entered and nearly five months after the May 18, 2026 Demand Letter. A Rule 60(b) motion "must be made within a reasonable time," Fed. R. Civ. P. 60(c)(1), and a year of deliberate inaction is not one. In the interim, as shown above, the Plan was substantially consummated, more than $100 million was distributed, and the Quintairos Claims—the principal remaining source of recovery for the Trust's beneficiaries—vested in the Trust. ECF Nos. 726-1, 762. QPWB filed only after the Trustee pressed those claims, and it asks the Court to bar the Trustee from commencing "any action against QPWB." ECF No. 1007-1. That is tactical delay, not excusable neglect.

Rule 60(b)(3) fares no better, because there is no evidence of fraud, misrepresentation, or misconduct—none. QPWB "must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense," *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (citations omitted); and the fraud must "not be discoverable by due diligence before or during the proceedings," *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (quoting *Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)).

QPWB does not identify a single false statement made to this Court, a single document withheld, or a single fact misrepresented. Its accusations that GTG's disclosures were "materially incomplete" and that the Trustee and his counsel acted under undisclosed conflicts are pleaded "upon information and belief," Removal Motion, p. 15, and, as shown above, they are false. Speculation is not clear and convincing evidence.

What QPWB calls concealment was disclosure. GTG's contingency terms and relationships, the Trustee's compensation, and the Plan's treatment of the Quintairos Claims were all set out in filings this Court approved after notice and that were mailed to QPWB's offices. ECF Nos. 200, 293, 434, 435, 701. Such matters are neither fraudulent nor undiscoverable. *See Casey*, 362 F.3d at 1260. What remains is disagreement with the Trustee's judgment, and disagreement is



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

not fraud: Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *De Saracho*, 206 F.3d at 880 (quoting *In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir. 1987)). Nor did anyone prevent QPWB from presenting its position. It received the Plan, the Disclosure Statement, and it chose not to object. A party that "sat on its right to respond" cannot invoke Rule 60(b)(3) after the fact. *See In re Wylie*, 349 B.R. 204, 214 (B.A.P. 9th Cir. 2006); *see also Latshaw*, 452 F.3d at 1102 (affirming denial of Rule 60(b)(3) relief where the judgment resulted from the movant's own decision).

In short, QPWB's Rule 60(b)(1) and (3) arguments are factually and legally baseless and must be denied.

**5. There Is No Basis for Relief Under Rule 60(b)(6).**

"Judgments are not often set aside under Rule 60(b)(6)." *Latshaw*, 452 F.3d at 1103. Rather, the rule is "used sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Id.* (internal quotation marks and citation omitted). Accordingly, a party who moves for such relief "must demonstrate both injury and circumstances ***beyond his control that prevented him*** from proceeding with . . . the action in a proper fashion." *Id.* (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) (emphasis added)). The operative word is "prevented." No one deceived QPWB, kept it in the dark, or stood between QPWB and this Court. QPWB filed the Debtors' Notices of Bankruptcy in the Sanchez Action; its litigation partners consulted with their own bankruptcy partners regarding the Chapter 11 Cases; QPWB continued to be involved in the Sanchez Action and received the numerous filings and communications discussing the Global Settlement Agreement, including those confirming the case was being dismissed as a result of the settlement; QPWB was served with the Global Settlement Agreement, the 9019 Order, the Disclosure Statement, the Plan, and the Confirmation Order. *See* Timelines, Exs. A-C. QPWB was not prevented from acting. It chose not to act. A deliberate choice is the antithesis of a circumstance "beyond [its] control," and "Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret."



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Latshaw*, 452 F.3d at 1099.

Moreover, in this Circuit, a party that receives notice of a bankruptcy proceeding that may affect its interests cannot stand aside and attack the result later. In *Gregory*, the creditor received only an "Order for Meeting of Creditors" stating, ambiguously, that "[t]he debtors' plan does not propose payment of unsecured creditors"; it never received the plan itself. *In re Gregory*, 705 F.2d 1118, 1119-20, 1122 (9th Cir. 1983). The Ninth Circuit nonetheless held that notice constitutionally adequate:

> When the holder of a large, unsecured claim such as Lawrence receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led.'

*Id.* at 1123 (quoting *D.C. Transit Sys., Inc. v. United States*, 531 F. Supp. 808, 812 (D.D.C. 1982)). Because the creditor neither objected at confirmation nor appealed, it was precluded from attacking "the plan or any provision therein" in a later proceeding. *Id.* at 1121.

QPWB had far more notice than the *Gregory* creditor. That creditor had a single ambiguous sentence. QPWB had the Plan itself, the Disclosure Statement, the Global Settlement Agreement, the order conditionally approving the Disclosure Statement, and the notice of the confirmation hearing and the objection deadline as all of these documents were mailed to three QPWB offices seven weeks before the confirmation hearing. ECF Nos. 447, 449, 451. QPWB then retained the 9019 Order, the Global Settlement Agreement, and the Plan in its own QPWB NuMale File, which it later produced to the Trustee. Gray Kozlowski Decl., Ex. 50.

Nor did QPWB merely know that "its debtor" had filed: its own clients were the Debtors, and QPWB had told the New Mexico court so. *Id.,* Exs. 8, 19. QPWB had already begun its inquiry into the Chapter 11 Cases. Its bankruptcy partners analyzed the automatic stay and the estate and advised Boyer that QPWB might need "an order from the bankruptcy court." *Id.*, Ex. 11. Under *Gregory*, QPWB is charged with notice of everything that inquiry would have revealed, including the Plan's express preservation of the claims against QPWB and its provision for their joint



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

prosecution under the Trustee's direction. And like the *Gregory* creditor, QPWB let the Confirmation Order become final without objection or appeal. QPWB is therefore precluded from attacking "the plan or any provision therein," 705 F.2d at 1121. QPWB then waited a full year after confirmation before filing anything in this Court. The record reflects a deliberate choice to not act.

In short, there are no "extraordinary circumstances" as required by Rule 60(b)(6) that would entitle QPWB to modify, alter, or obtain any "relief" with respect to the Confirmation Order; an Order that is final, non-appealable, substantially consummated, and upon which creditors and the numerous settling parties have relied upon in performing their obligations under the Global Settlement Agreement and the Plan.

**D. QPWB's Request for an Injunction Is Procedurally Wrong, and Factually and Legally Unsupportable.**

Paragraph 9 of QPWB's proposed order discloses QPWB's true reason for bringing the Removal Motion—an ill-advised effort to preclude prosecution of the Quintairos Claims by the Trust. Paragraph 9 of QPWB's proposed order states "Pending further order, the Liquidation Trustee shall not commence any action against QPWB, Eric Boyer, or Eddie Prieto." ECF No. 1007-1, ¶ 9. What QPWB seeks is an injunction precluding the Trustee from prosecuting the Quintairos Claims on behalf of the Trust. Bankruptcy Rule 7001 is clear that "a proceeding to obtain an injunction or other equitable relief" must be brought by adversary proceeding. Fed. R. Bankr. P. 7001(g). Beyond failing to commence the requisite adversary proceeding, QPWB fails to satisfy any of the requirements to obtain an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *In re Excel Innovations, Inc.,* 502 F.3d 1086, 1093 (9th Cir. 2007). Thus, no injunction may issue.

**E. There Is No Basis to Grant QPWB Leave Under the *Barton* Doctrine.**

QPWB seeks leave under the *Barton* doctrine to assert claims against the Trustee and GTG "individually and in their official capacities," including for "breach of fiduciary duty owed to third parties" and "abuse of process." Removal Motion, p. 20; ECF No. 1007-1 ¶ 7. A party seeking



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

such leave must make a *prima facie* case that its claims are not without foundation. *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 885-87 (B.A.P. 9th Cir. 1995); *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970-76 (9th Cir. 2005). Counsel to a trustee shares in the trustee's derived immunity for acts within the scope of the trustee's authority. *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742-43 (9th Cir. 2009). And the Plan's exculpation provision applies. Plan § 8.7, as modified by ECF No. 726 at ¶ 29. QPWB's proposed claims have no foundation at all. A trustee owes no fiduciary duty to the defendant he sues, and sending a pre-suit demand letter and statutory notices is not an abuse of process; it is how litigation is supposed to begin. Moreover, QPWB's threats of litigation against the Trustee and GTG are all premised on allegations made "on information and belief." QPWB knows that it has absolutely no evidence to support its false statements and that this relief is sought solely for the improper purpose of threatening and harassing the Trustee and his counsel.

**F. <u>If the Removal Motion Is Not Denied on November 17, 2026, the Trustee Requests an Evidentiary Hearing at Which All Witnesses Must Appear in Person.</u>**

If the Removal Motion is not denied outright at the November 17, 2026 hearing, the Trustee requests that the November 17 hearing be treated as a status and scheduling hearing in accordance with Local Rule 9014(a)(7); that an evidentiary hearing be scheduled; and that all witnesses must appear and testify in person in Nevada.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## IV. CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court deny QPWB's Removal Motion in its entirety. For the avoidance of doubt, the Trustee reserves all rights to seek sanctions against QPWB and its counsel for filing and prosecuting the Removal Motion.

Dated this 3rd day of November, 2026.

GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*



Garman Turner Gordon, LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000