# EXHIBIT 21

EXHIBIT 21

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
3/26/2025 2:09 PM
KATINA WATSON
CLERK OF THE COURT
Christopher Waites

**STATE OF NEW MEXICO**
**BERNALILLO COUNTY**
**SECOND JUDICIAL DISTRICT COURT**

**MICHAEL E. SANCHEZ,**

**Plaintiff,**

**v.** **No: D-202-CV-2020-06336**

**NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, and JUSTIN PULLIAM,**

**Defendants.**

**PLAINTIFF'S REPLY IN SUPPORT OF COST BILL AND MOTION FOR AWARD OF COSTS IN THE COURT'S DISCRETION**

COMES NOW Plaintiff, through undersigned counsel of record, and submits this Reply to Defendants' Objections to *Plaintiff's Cost Bill and Motion for Award of Costs in the Court's Discretion*, filed December 23, 2024.[1]

At the outset, Plaintiff notes that Defendant objected to only $42,953.90 of the $151,862.37

[1] Plaintiff submits this Reply as to all Defendants **except for** Numale Corp. and Numale N.M. S.C. Corp., as to whom an automatic stay under 11 U.S.C. § 362 is currently in place due to their status as Debtors in Chapter 11 voluntary bankruptcy cases filed on January 22, 2025 and pending in the U.S. Bankruptcy Court, District of Nevada, before the Honorable Natalie Cox, Cases No. 25-10341 and 25-10347. Out of abundance of caution, Plaintiff also does not submit this filing against Numale Albuquerque LLC d/b/a Numale Medical Center, which was determined by the Court in equity at trial to be a wholly owned subsidiary of Debtor Numale Corp. based on evidence and testimony including but not limited to Stipulated Trial Ex. 182 (Numale Abq. LLC Operating Agreement), *and see*, *Plaintiff's Trial Brief on Numale Corp.'s Liability for Conduct of Numale Albq. LLC and Numale NM SC Corp*. (filed 11/25/2024) and ***Exhibit 1*** (Trial TS excerpt from 11/22/2024 at P95:L9-19 granting Plaintiff's Motion) and ***Exhibit 2*** (*Stipulated Final Jury Inst. No. 17*; Numale Abq LLC and Numale NM SC subsidiaries of Numale Corp). Plaintiff further states that on March 18, 2025 a *Stipulation for Entry of Order Terminating Automatic Stay as to New Mexico State Court Post-Trial Proceedings to Judgment Only and Comfort Order As to Non-Debtors* was filed in both Debtors' Bankruptcy Cases [Numale Corp. ECF Doc. No. 70; Numale NM SC ECF Doc. No. 64], on March 20, 2025, nonparty Beazley Insurance filed an *Ex Parte Motion* Objecting to same [Numale Corp. ECF Doc. No. 82], and on March 25, 2025 Sanchez filed a Motion in U.S. Bankruptcy Court to lift the Stay in light of Debtors' stipulation. There is no reason to further delay post-trial proceedings as to Non-Debtors at this time.

in costs Plaintiff asked the Court to tax. This leaves $108,908.47 in undisputed costs the Court should award without further analysis or debate.

Defendants' Response does not dispute the trial court's broad discretion to tax necessary and reasonable costs incident to the prosecution or defense of the case, or that are described as recoverable under Rule 1-054(D) NMRA, by statute or case law, or by request pursuant to Rule 1-054(E) NMRA. *See, e.g.*, *Mascarenas v. Jaramillo*, 1991-NMSC-014. Defendants also do not dispute that absent an abuse of discretion, the trial court's decision to assess a cost to the losing party will not be interfered or tampered with on appeal. *Dunne v. Dunne*, 1972-NMSC-002 at ¶12.

In deciding which of Plaintiff's costs to tax that were not mandated by Court rule or statute, the trial court should ask, was the matter necessary and reasonable to the prosecution or defense of the case? The following costs disputed by Defendants should be taxed as necessary to the prosecution or defense of this case in this Court's discretion.

**A. Deposition Costs**

Charges for video depositions of Defendants Feliciano, Palubicki and Rivera, key witness Stefan Gutow MD, and Defendants' three designated trial experts were reasonable, especially in lieu of the likely much higher expenses to travel and take those depositions. Rule 54D(2)(g), §38-6-4(B) NMRA, *Prudential Ins. Co. v. Anaya*, 1967-NMSC-132, 78 N.M. 101, *Tilton v. Capital Cities/ABC, Inc*, 115 F.3d 1471, 1477 (10th Cir. 1997) (expenses associated with video depositions are recoverable as they are authorized under Rule 30). Further, as Plaintiff's Motion pointed out, the trial court can assess reasonable expert expenses (i.e. for travel OR video) that were made necessary by the losing party's failure to resolve a case in good faith before trial. *Lopez v. American Airlines*, 1996-NMCA-088, 122 N.M. 302. The Court should tax the following costs from ***Exhibit 1*** of *Plaintiff's Motion* to Defendants:

- Video Depositions of Brad Palubicki and Stefan Gutow M.D. ($1,068.70)
- Video Deposition of Defendant Mike Rivera ($453.92)
- Video Deposition of Defendants' Expert Mark T. Barisa, Ph.D. ($403.92)
- Video Defendant Carlos Feliciano, M.D. ($725.14)
- Video Deposition of Defendants' Expert Jean-Paul Dedam, M.D. ($601.51)
- Video Deposition of Defendants' Expert Dudley Danoff, M.D. ($371.62)

Charges to take the deposition of Defendants' expert Mark T. Barisa Ph.D. totaling $2,403.92 (plus $403.92 for video) were made necessary by defense counsel's staunch refusal to withdraw him as an expert. Even after Plaintiff withdrew Sam Roll Ph.D. in July 2024 and asked Defendants to likewise withdraw their psychology expert, they refused. See, ***Exhibit 3*** (emails asking defense to withdraw Dr. Barisa as a witness, with defense counsel's refusal). Plaintiff was forced to take Dr. Barisa's deposition on September 9, 2024, and reasonably anticipated needing it at trial because Defendants insisted until trial that Dr. Barisa was a "will call" witness they intended to call to testify. See, *Final Pre-Trial Order* (filed 11/13/2024)(identifying Dr. Barisa as a "will call" witness on page 14); see also, *U.S. Equal Employment Opportunity Commission v. W&O, Inc*., 213 F.3d 600, 621 (11th Cir. 2000) (upholding cost award for deposition where losing party listed deponent on its witness list.)

The deposition costs of $9,869.01, disputed by Defendants should be taxed as necessary to the prosecution or defense of this case in this Court's discretion.

**B. <u>Medical Records</u>**

Charges for medical records used during the prosecution and defense of this case were necessary and reasonable and are recognized as recoverable costs. *Zotos v. Lindbergh School Distr*., 121 F.3d 356, 363 (8th Cir. 1997); *Finchum v. Ford Motor Co.,* 57 F.3d 526, 534 (7th Cir.

1995). Plaintiff's case included claims based in medical negligence. Experts for both sides based their opinions on the review of Plaintiff's medical records. Plaintiff's medical records were essential to the Plaintiff meeting his burden of proof and Defendant's defense of the case, which is borne out by the Defendant's use of Plaintiff's medical records at trial. Plaintiff's medical records from Presbyterian and Albuquerque Urology Associates were referenced *by Defendants* during trial, although not admitted. (Plaintiff Stipulated Exhibits 74, 76, 77, 78). Additionally, Defendant included Plaintiff's Formation Counseling Services records in their trial exhibit list. See*, Pre Trial Order (*filed 11/13/2024) at Defendant Exhibit J. *Defendant* also admitted Plaintiff's Exhibit 154 which included a Tricore Reference Laboratory record.

The medical records costs of $2,795.43, disputed by Defendants should be taxed as necessary to the prosecution or defense of this case in this Court's discretion.

**C. <u>Defendant Medical Board Files</u>**

Charges for Defendant Medical Board files used during the prosecution and defense of this case were necessary and reasonable. Defendant Dr. Asandra and PA Chapman's Medical Board files were discussed extensively in both Defendants' depositions and at trial. See, e.g., ***Exhibit 4***, 11/18/24 Trial Transcript excerpts at 45:2-46:18, 49:3-24 (Chapman PA); 66:21-67:25 (Dr. Asandra)[2]. Additionally, documents from Defendant PA Chapman's New Mexico Medical Board file were entered as Plaintiff's Exhibits 9, 12, 16, 17, 18 and 32. The Defendant Medical Board files costs of $107.14, disputed by Defendants should be taxed as necessary to the prosecution or defense of this case in this Court's discretion.

---

[2] The testimony excerpts referenced here are a single example of discussions involving the Medical Board actions involving Defendants Chapman and Asandra. Many other instances of trial and deposition testimony exist and can be provided if the Court needs additional support.

**D. Trial Exhibits**

The trial exhibit costs disputed by Defendants were reasonable and necessary for trial of this matter and are recognized as recoverable costs. The Lexitas costs for trial exhibit binders was incurred for the exhibit binders provided to the Jury during trial which were required by the Court. Photocopy expenses for exhibits required and used during trial have long been upheld by courts. See, *Northbrook Excess & Surplus v. Procter & Gamble Co.,* 924 F.2d 633, 643 (7th Cir. 1991). Likewise, the Motion Lit costs disputed by Defendants were for the production and presentation of exhibits, deposition testimony and multi-media recordings (audio and video advertising) for the jury and witnesses. These costs are recoverable under what federal statue calls "exemplification". See, 28 U.S.C. §1920(4). "Exemplification" is "ordinarily construed as permitting an award of the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials . . .," *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 427 (7th Cir. 2000) (citations omitted). The *Cefalu* Court explained:

> But in view of the illustrative purpose of exemplification, we are not convinced that the line between producing an exhibit and presenting that exhibit to the court is the most appropriate one to draw. Enlarging a crucial document, for example, may be the only practical means of permitting a witness to point out the forensic features of that document. Imagine, for example, the jurors and the judge poring over individual, unenlarged copies of the document with bifocals and magnifying glasses as they try to keep pace with an expert's testimony identifying for them the unique whorls of a fingerprint or swirls of a signature. Yet, the enlargement is simply a bigger version of evidence that already exists; in effect, it serves only to present that evidence in a more effective manner. In a like vein, a witness may require the use of a transparency so that she can explain or highlight the pertinent aspects of a chart she has prepared. That transparency would be worthless without the overhead projector needed to display it to the judge and jury; but the projector plays no role in the production of the exhibit, it is simply the means of presentation. Allowing fees for the cost of preparing the transparency but not for renting the projector would in this sense be a highly formalistic distinction, as each is key to the illustrative function of the exhibit.
>
> So long as the means of presentation furthers the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification. This approach allows appropriate room for the more sophisticated types of multi-media presentations made possible by technological advances. Given the costs associated with some of these presentations, this is an area that Congress may wish to revisit and supply further guidance. But we find no

> limits inherent in the term "exemplification" that would permit a court to award costs for the more familiar means of illustration—models, charts, graphs, and the like—but preclude it from compensating a party for an animated reconstruction of an accident, for example, or other types of computer-based, multimedia displays.

*Id*. at 428. The sort of presentations contemplated in *Cefalu* are exactly of the type which Plaintiff used and why the disputed costs were incurred. During the trial there was extensive use of video deposition testimony, audio and video advertising, and enlarging/highlighting of entered exhibits, all of which were reasonable and necessary to educate the Jury about Plaintiff's claims. See, e.g., ***Exhibit 3***, at pp. 38 and 57[3].

The trial exhibit costs of $19,720.74, disputed by Defendants should be taxed as necessary to the prosecution or defense of this case in this Court's discretion.

### E. Attorney Travel costs

The attorney travel costs disputed by Defendants should be awarded as costs. Plaintiff incurred the Motion to Compel costs due to "vexatious or bad faith conduct by the opposing party or its attorneys", which is an exception cited by the Defendant. As the Court may recall, the Parties were ordered to appear at the 2nd Judicial Courthouse to meet and confer regarding ***nine*** Motions to Compel which were not responded to by Defendants. See, *Notice of Zoom Hearing* filed 11/8/2023. Plaintiff's counsel was required to travel to the courthouse due to Defendant's vexatious failure to respond to any of Plaintiff's Motion to Compel briefing. Additionally, attorney travel costs such as those incurred for trial counsel to appear at the November trial setting are costs of a type that are included in an attorney's bill to a client and that federal courts have awarded as costs. See, *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990).

The attorney travel costs of $2,699.47, disputed by Defendants should be taxed as

---

[3] The Trial Transcript excerpts referenced herein are just examples of Plaintiff's use at trial of multi-media presentations to provide evidence to the Jury. Many other examples exist and can be provided if the Court needs additional support.

necessary to the prosecution or defense of this case in this Court's discretion.

**F. <u>Pro Hac Vice fees</u>**

The pro hac vice fees disputed by Defendants are recoverable and have been considered by federal courts as "fees of the clerk" under 28 U.S.C. §1920. See, *Craftsmen*, at 898. Plaintiff asks this Court to likewise consider the incurred pro hac vice fees and "fees of the clerk", especially since the Defendants have provided no further basis to challenge the award of such costs. *Id*.

The pro hac vice fees of $590.00, disputed by Defendants, should be taxed as necessary to the prosecution of this case in this Court's discretion.

Plaintiff generally states that the remaining costs of $11,136.53, incurred by them were all similarly reasonable and necessary for the prosecution of this case through trial, and asks that they be assessed as taxable to the defense in the court's broad and inherent discretion.

WHEREFORE, for the foregoing reasons, Plaintiff Sanchez respectfully renews his request for this Court's entry of an Order assessing his litigation costs taxable under New Mexico law totaling $151,862.37, to the Numale Defendants.[4] Sanchez additionally renews his request for an Order finding that as a matter of law, he would be legally entitled to recover double costs pursuant to Rule 68C in the event he ultimately elects that option instead of electing to recover prejudgment interest awarded pursuant to *Plaintiff's Motion for Prejudgment Interest* filed on December 9, 2024, and permitting him to wait and make the election between Rule 68 double costs or prejudgment interest after the Court has decided his Motions for Costs and Prejudgment Interest.

Respectfully Submitted,

**BENCOE & LACOUR LAW, P.C.**

By: */s/ Cherie L. LaCour*
Lori M. Bencoe NM Bar ID 7525

[4] Subject to Footnote 1, *see* **<u>*Exhibit 2*</u>** (11/22/2024 Trial Transcript at 100:20-101:8) to Plaintiff's Motion, stipulating that "NuMale Defendants" refers to all remaining defendants in the case.

Cherie L. LaCour NM Bar ID 9526
9201 Montgomery Blvd NE #404
Albuquerque, NM 87111
(505) 247-8800 ~ (505) 247-8801
lori@bencoelaw.com / cherie@bencoelaw.com

**TRIAL LAWYERS FOR JUSTICE**
Nicholas Rowley NM Bar ID 159410
421 W. Water Street, Third Floor
Decorah, IA 52101
(866) 854-5529
NR@TL4J.com

**BOWEN HATCH LAW, P.C.**
Theresa Bowen Hatch NM Bar ID 160899
1902 Wright Place Suite 200
Carlsbad, CA 92008
(760) 539-7603
Theresa@bowenhatchlaw.com

**BRUNO NALU**
Keith J. Bruno, *Pro Hac Vice*
18201 Von Karman Ave, Suite 1180
Irvine, CA 92612
(310) 745-7811
keith@brunonalu.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 26, 2025 I caused this filing to be submitted for filing with the Second Judicial District Court's electronic filing system, which caused all parties of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

By: *_/s/ Cherie L. LaCour_*
Cherie L. LaCour

STATE OF NEW MEXICO
BERNALILLO COUNTY
SECOND JUDICIAL DISTRICT COURT

MICHAEL E. SANCHEZ,

Plaintiff,

v. Cause No: D-202-CV-2020-06336

NUMALE MEDICAL CENTER LLC (a Wisconsin Corp.), NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, JUSTIN PULLIAM, STEPHEN G. CHAPMAN P.A.-C and MIKE RIVERA, and BLACK & WHITE Corps. 1-10 and JOHN & JANE DOES 1-10,

Defendants.

Transcript of Proceedings

On the 22nd day of November 2024, at approximately 9:40 a.m., this matter came on for trial before THE HONORABLE BEATRICE J. BRICKHOUSE, Division IV, Judge of the Second Judicial District.

The Plaintiff appeared by Counsels of Record, LORI BENCOE, CHERIE LaCOUR, DANIELLE CEBALLES, NICHOLAS ROWLEY and KEVIN BRUNO.

The NuMale Defendants appeared by Counsels of Record, DOMINIQUE BARRETT, ERIN CHAVEZ and ANDREW ROBERTSON.



EXHIBIT 1

come in, I don't want there to be any question with the Court of Appeals and the Supreme Court. So we do want the jurors to answer those questions.

THE COURT: Okay.

MR. ROWLEY: But we do have a motion with respect to --

MS. BENCOE: Your Honor, the other motion we have is a motion in equity. And Ms. LaCour will present that motion.

THE COURT: I didn't hear you -- oh, you said Ms. LaCour is gonna handle that. That's the part I didn't hear.

MS. LaCOUR: Yes, Your Honor. With permission of the Court, I have a bench brief for the Court regarding piercing the corporate veil. May I provide that?

THE COURT: Sure.

MS. LACOUR: With the Court's permission, may I use the podium? Because I would like to be able to show some exhibits on the screen.

THE COURT: Sure.

MS. LACOUR: So, Your Honor, we moved for directed verdict on the liability of NuMale Corporation for the acts of both NuMale Albuquerque LLC and NuMale New Mexico SC Corp. By piercing the corporate veil, I'm

holding NuMale Corporation liable for their negligent acts and/or omissions.

So under the theory of piercing the corporate veil, there are three requirements that we must meet. First of all, we have to prove that both NuMale New Mexico SC Corp and NuMale Albuquerque LLC are instrumentalities or dominated by NuMale Corporation, that they were used for an improper purpose, and that there was proximate cause to an injury. And that's based upon Garcia v. Compton.

All of the underlying laws in the bench brief, Your Honor -- and if at this point you would like me to cite directly to the case, I'm more than happy to do so, but I'd like to speed up the argument here because I know we're short on time. But piercing the corporate veil is an equitable remedy that must be decided by the Court.

So before we dive into the three requirements of domination, improper purpose and proximate cause, I'd like to do just a quick overview of the players at issue here.

So what we have is NuMale Corporation, who is the parent corporation; we have NuMale Albuquerque LLC, who is the management corporation for the New Mexico clinic; and the New Mexico clinic is the NuMale

the arguments are --

MS. LACOUR: Yes.

THE COURT: -- as to the cause prong.

MR. ROBERTSON: I think I know which way the wind is blowing, so --

THE COURT: Well, I don't know why you would say that, Mr. Robertson. Maybe I should take offense at that or something. I don't know.

The motion for directed verdict is granted. I think it's clear from the exhibits, the testimony that NuMale Corporation, they were running everything and therefore they should be liable for the acts or omissions of NuMale SS -- is it NuMale New Mexico SC Corporation and NuMale Albuquerque LLC? I think I got it straight.

So the motion for directed verdict is granted. I'm assuming you-all will give the special verdict form that is applicable to the Court's ruling on this issue, then, right?

And so I've got to get going. I have a 12:30 hearing that I need to sign on to. And so what I understood -- okay. So the jury has been directed to come back at 1:30. And so what I understood is that you-all are gonna give me a packet, a final packet. Am I correct? You-all are gonna give me a final packet

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
11/26/2024 1:51 PM
KATINA WATSON
CLERK OF THE COURT
DyAnna Garcia

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

MICHAEL E. SANCHEZ,

Numale Corps subsidiaries instruction

Plaintiff,

v.

No. D-202-CV-2020-06336

NUMALE MEDICAL CENTER LLC (a Wisconsin Corp.), NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE, L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, JUSTIN PULIAM, STEPHEN G. CHAPMAN P.A.-C and MIKE RIVERA, and BLACK & WHITE Corps. 1-10 and JOHN & JANE DOES 1-10,

Defendants.

**STIPULATED FINAL JURY INSTRUCTIONS**

EXHIBIT 2

JURY INSTRUCTION NO. 17

The Court has found that at the time of the occurrence, Numale Albuquerque LLC and Numale New Mexico S.C. Corporation were subsidiaries of their parent company, Numale Corporation, and that Numale Corporation completely dominated its subsidiaries' finances, policy and business practices and used them for an improper purpose that was a cause of harm to Plaintiff Michael E. Sanchez.

**From:** Lori Bencoe
**To:** J. Andrew Robertson; Dominique Barrett; Vanessa E. Garcia; JACK KLECAN
**Cc:** Maggie Golike; Cherie LaCour; Danielle Ceballas; Jeannine Kammann; Theresa Bowen; Danielle Jordan; Frank Alvarez; Souhaila Sonnenberg
**Subject:** RE: Sanchez v Numale-Deposition Scheduling
**Date:** Monday, July 8, 2024 8:44:02 AM

---

Andrew, thanks – we will notify Dr. Goldstein to hold 8/23. What time shall I ask him to hold?

If possible, we would still like to depose Feliciano and Pulliam/30B6 on August 7, 8, 12, 13 or 14 – please let us know as soon as you have an answer.

Please confirm whether or not you intend to call Dr. Barisa even though we have withdrawn Dr. Roll?

Lori Bencoe

---

**From:** J. Andrew Robertson <andrew.robertson@qpwblaw.com>
**Sent:** Sunday, July 7, 2024 9:33 PM
**To:** Lori Bencoe <lori@bencoelaw.com>; Dominique Barrett <dominique.barrett@qpwblaw.com>; Vanessa E. Garcia <vanessa.garcia@qpwblaw.com>; JACK KLECAN <JKlecan@JSHFIRM.COM>
**Cc:** Maggie Golike <maggie@bencoelaw.com>; Cherie LaCour <cherie@bencoelaw.com>; Danielle Ceballas <DCeballas@bencoelaw.com>; Jeannine Kammann <JKammann@bencoelaw.com>; Theresa Bowen <theresa@bowenhatchlaw.com>; Danielle Jordan <danielle@trialbywoman.com>; Frank Alvarez <frank.alvarez@qpwblaw.com>; Souhaila Sonnenberg <souhaila.sonnenberg@qpwblaw.com>
**Subject:** RE: Sanchez v Numale-Deposition Scheduling

Hello all,

I am available August 23rd for Dr. Goldstein (zoom).

I am travelling this week on vacation but will try to get some dates for the 30b6, Feliciano, and Dr. Barisa this week. I am looking at dates for the second two weeks of August as well for these depositions so please let me know if we can add these depos to the motion to extend discovery just for these depositions.

I am waiting to hear from 30b6 rep, Feliciano, and Barisa as to their availability those two weeks.

Best
Andrew

**J. Andrew Robertson** | **Partner**
**Quintairos, Prieto, Wood & Boyer, P.A.**

EXHIBIT 3

Lori Bencoe
Bencoe & LaCour Law, P.C.
9201 Montgomery Blvd., NE Ste. 404
Albuquerque NM 87111
(505) 247-8800
(505) 238-9095 cell
(505) 247-8801 fax
(866) 921-8800 toll free
lori@bencoelaw.com
https://www.bencoelaw.com/
https://TL4J.com/lori-bencoe/

---

**From:** Lori Bencoe <lori@bencoelaw.com>
**Sent:** Tuesday, July 2, 2024 10:20 AM
**To:** Dominique Barrett <dominique.barrett@qpwblaw.com>; J. Andrew Robertson <andrew.robertson@qpwblaw.com>; Vanessa E. Garcia <vanessa.garcia@qpwblaw.com>; JACK KLECAN <JKlecan@JSHFIRM.COM>
**Cc:** Maggie Golike <maggie@bencoelaw.com>; Cherie LaCour <cherie@bencoelaw.com>; Danielle Ceballas <DCeballas@bencoelaw.com>
**Subject:** RE: Sanchez v Numale

Hello Dominique,

See attached email from our paralegal Maggie, that she is still awaiting your response to. Kindly include her on all correspondence about deposition scheduling. If you can answer her questions today, we may be able to offer Dr. Goldstein dates today.

Thanks to Andrew for offering August 15 and 16 for the Zoom depositions of defense experts Dedam and Danoff. We anticipate filing/serving Notices today. To conduct those, we will need your clients' supplemental discovery responses relating to experts by July 15, as requested last week – see second attached email. Please note that our discovery requests to the Numale Defendants regarding expert documents and information are not duplicative of what the expert may have in their files at time of deposition.

Yes, we want to depose 30B6 witness Pulliam and Dr. Feliciano via Zoom. That should be straightforward, since your client represented they had no additional documents to produce responsive to Plaintiffs' 30B6 Notice and Rule 34 Document Request served May 8, 2024.

Last not least, we are formally withdrawing Samuel Roll PhD as an expert today. Please let us know if you plan to do the same with your psychology expert; if not, please provide us with his availability for deposition, too. Thank you, and if you want

to visit about any of this do not hesitate to call me.

Sincerely,

Lori Bencoe
Bencoe & LaCour Law, P.C.
9201 Montgomery Blvd., NE Ste. 404
Albuquerque NM 87111
(505) 247-8800
(505) 238-9095 cell
(505) 247-8801 fax
(866) 921-8800 toll free
lori@bencoelaw.com
https://www.bencoelaw.com/
https://TL4J.com/lori-bencoe/

---

**From:** Dominique Barrett <dominique.barrett@qpwblaw.com>
**Sent:** Tuesday, July 2, 2024 10:18 AM
**To:** Cherie LaCour <cherie@bencoelaw.com>; Lori Bencoe <lori@bencoelaw.com>
**Cc:** J. Andrew Robertson <andrew.robertson@qpwblaw.com>; Vanessa E. Garcia <vanessa.garcia@qpwblaw.com>; JACK KLECAN <JKlecan@JSHFIRM.COM>
**Subject:** Sanchez
**Importance:** High

Cheri and Lori,

Please provide me dates for your expert depositions. I believe that Andrew requested them previously and we have provided you ours. Also, are the depositions of Dr. Feliciano and 30b6 via Zoom? Dr. Feliciano is in Wisconsin. Please let me know today.

**Dominique Barrett** | **Partner**
**Quintairos, Prieto, Wood & Boyer, P.A.**
8800 East Raintree Drive, Suite 100, Scottsdale, AZ 85260
Ph: (602) 954-5605 x1754 Fax: (602) 954-5606
Email: dominique.barrett@qpwblaw.com Web: www.qpwblaw.com

Arizona ◆ California ◆ Colorado ◆ Connecticut ◆ Florida ◆ Georgia ◆ Idaho ◆ Illinois ◆ Indiana ◆ Kentucky ◆ Louisiana ◆ Maryland ◆ Massachusetts Michigan ◆ Mississippi ◆ Nevada ◆ New Jersey ◆ New Mexico ◆ New York ◆ North Carolina ◆ Rhode Island ◆ Tennessee ◆ Texas ◆ USVI ◆ Washington

1700 Pacific Avenue, Suite 4545, Dallas, TX 75201
Ph: (214) 754-8755 x Fax: (214) 754-8744
Email: andrew.robertson@qpwblaw.com Web: www.qpwblaw.com

Arizona ◆ California ◆ Colorado ◆ Connecticut ◆ Florida ◆ Georgia ◆ Idaho ◆ Illinois ◆ Indiana ◆ Kentucky ◆ Louisiana ◆ Maryland ◆ Massachusetts
Michigan ◆ Mississippi ◆ Nevada ◆ New Jersey ◆ New Mexico ◆ New York ◆ North Carolina ◆ Rhode Island ◆ Tennessee ◆ Texas ◆ USVI ◆ Washington

On Jul 11, 2024, at 10:48 PM, Lori Bencoe <lori@bencoelaw.com> wrote:

Andrew, with due respect, the dates your clients gave you today are not suitable. How can our expert sit for his deposition on August 23 without access to two codefendants' depositions? We are also not in a position to take a deposition on the same day our expert sits for his.

Please also remember that we await your supplemental discovery responses regarding your experts by July 15.

Lori Bencoe

---

**From:** J. Andrew Robertson <andrew.robertson@qpwblaw.com>
**Sent:** Thursday, July 11, 2024 7:17 PM
**To:** Lori Bencoe <lori@bencoelaw.com>; Dominique Barrett <dominique.barrett@qpwblaw.com>
**Cc:** Frank Alvarez <frank.alvarez@qpwblaw.com>; Joshua D. Smentek <joshua.smentek@qpwblaw.com>; JACK KLECAN <JKlecan@jshfirm.com>; Cherie LaCour <cherie@bencoelaw.com>; Danielle Ceballas <DCeballas@bencoelaw.com>; Jeannine Kammann <JKammann@bencoelaw.com>; Pam Pullem <PPullem@jshfirm.com>; Josette Greene <josette.greene@qpwblaw.com>; Daisy Mora <daisy.mora@qpwblaw.com>; Souhaila Sonnenberg <souhaila.sonnenberg@qpwblaw.com>
**Subject:** RE: SANCHEZ v NUMALE et al / Notices of Deposition

Thank you for the email. I sent an email to this group Sunday night (July 7) saying we were not available those days, that I was travelling this week, and that I was looking at the last two weeks of August for availability.

In any event, Feliciano and 30b6 are available August 21, August 23 and August 28. I know we are doing Goldstein on the 23rd but these are the three dates I received.

I am still waiting to hear from Dr. Barisa, who we will keep on as an expert. I just followed up with him again.

Best
Andrew

**J. Andrew Robertson** | **Partner**
**Quintairos, Prieto, Wood & Boyer, P.A.**
1700 Pacific Avenue, Suite 4545, Dallas, TX 75201
Ph: (214) 754-8755 x Fax: (214) 754-8744
Email: andrew.robertson@qpwblaw.com Web: www.qpwblaw.com

Arizona ◆ California ◆ Colorado ◆ Connecticut ◆ Florida ◆ Georgia ◆ Idaho ◆ Illinois ◆ Indiana ◆ Kentucky ◆ Louisiana ◆ Maryland ◆ Massachusetts
Michigan ◆ Mississippi ◆ Nevada ◆ New Jersey ◆ New Mexico ◆ New York ◆ North Carolina ◆ Rhode Island ◆ Tennessee ◆ Texas ◆ USVI ◆ Washington

---

**From:** Lori Bencoe <lori@bencoelaw.com>
**Sent:** Thursday, July 11, 2024 3:59 PM
**To:** J. Andrew Robertson <andrew.robertson@qpwblaw.com>; Dominique Barrett <dominique.barrett@qpwblaw.com>
**Cc:** Frank Alvarez <frank.alvarez@qpwblaw.com>; Joshua D. Smentek <joshua.smentek@qpwblaw.com>; JACK

would you like me to get September dates for 30b6 and Pulliam? Also, we are still waiting on y'all if you want to depose our psychologist. I think I circulated dates. I know Chapman's counsel sent an email that there are some fact witnesses he wants to depose. I didn't see a response. Trial is not until November. There is still plenty of time.

Best,
Andrew

**J. Andrew Robertson** | **Partner**
**Quintairos, Prieto, Wood & Boyer, P.A.**
1700 Pacific Avenue, Suite 4545, Dallas, TX 75201
Ph: (214) 754-8755 x Fax: (214) 754-8744
Email: andrew.robertson@qpwblaw.com Web: www.qpwblaw.com

Arizona ◆ California ◆ Colorado ◆ Connecticut ◆ Florida ◆ Georgia ◆ Idaho ◆ Illinois ◆ Indiana ◆ Kentucky ◆ Louisiana ◆ Maryland ◆ Massachusetts Michigan ◆ Mississippi ◆ Nevada ◆ New Jersey ◆ New Mexico ◆ New York ◆ North Carolina ◆ Rhode Island ◆ Tennessee ◆ Texas ◆ USVI ◆ Washington

---

**From:** Lori Bencoe <lori@bencoelaw.com>
**Sent:** Tuesday, July 23, 2024 3:04 PM
**To:** J. Andrew Robertson <andrew.robertson@qpwblaw.com>; Dominique Barrett <dominique.barrett@qpwblaw.com>; Frank Alvarez <frank.alvarez@qpwblaw.com>; Dianna Saxton <dianna.saxton@qpwblaw.com>
**Cc:** Cherie LaCour <cherie@bencoelaw.com>; Danielle Ceballas <DCeballas@bencoelaw.com>; Theresa Bowen <theresa@bowenhatchlaw.com>; Maggie Golike <maggie@bencoelaw.com>; Jeannine Kammann <JKammann@bencoelaw.com>
**Subject:** FW: Sanchez v NuMale, et al.
**Importance:** High

Andrew,

These came as a surprise as we waited for you to return from vacation and follow up with specific dates when your remaining parties/expert were available for us to depose, so we could vacate current Notices and re=set by stipulation. That is all we agreed to extend with regard to discovery. Namely, this applies to Feliciano, Pulliam as Numale's 30B6, and Barisa (if you are still calling him).

August 23 is not a workable date for those depositions unless you do not want to take Dr. Goldstein's deposition. That is his ONLY date and we still don't have a Notice from you. If you want that deposition on August 23 at 12:00 noon pacific time, send a Notice right away please.

The Objections to our 30B6 Notice that Numale filed back in May, designated Mr. Pulliam for the topics specified, and essentially objected to producing documents but stated Numale had no additional responsive documents to produce. We did not see a need for "meet and confer" based on that information, so we began seeking to set the 30B6 deposition. We ultimately filed a Notice as the discovery deadline approached.

If Numale's only basis for filing a 30B6 Notice is Pulliam's unavailability on that date, get us more dates in August to resolve this issue. If you will persist in filling a MPO for this deposition for any other reasons, please specifically explain why, so we can consider the pros and cons of stipulating to vacate and re-set it after discovery has ended.

Please respond right away. Thank you.

Sincerely,

Lori Bencoe
Bencoe & LaCour Law, P.C.
9201 Montgomery Blvd., NE Ste. 404
Albuquerque NM 87111
(505) 247-8800
(505) 238-9095 cell
(505) 247-8801 fax
(866) 921-8800 toll free
lori@bencoelaw.com
https://www.bencoelaw.com/
https://TL4J.com/lori-bencoe/

---

**From:** Dianna Saxton <dianna.saxton@qpwblaw.com>
**Sent:** Tuesday, July 23, 2024 11:28 AM
**To:** Lori Bencoe <lori@bencoelaw.com>; theresa@bowenhatchlaw.com; Danielle Ceballas <DCeballas@bencoelaw.com>; Cherie LaCour <cherie@bencoelaw.com>; therowleylawfirm@gmail.com; NR@TL4J.com
**Cc:** Maggie Golike <maggie@bencoelaw.com>; Jeannine Kammann <JKammann@bencoelaw.com>; Frank Alvarez <frank.alvarez@qpwblaw.com>; Vanessa E. Garcia <vanessa.garcia@qpwblaw.com>; J. Andrew Robertson <andrew.robertson@qpwblaw.com>; jklecan@jshfirm.com; ppullem@jshfirm.com; Dominique Barrett <dominique.barrett@qpwblaw.com>
**Subject:** Sanchez v NuMale, et al.

Counsel,

Attached are two Motions for Protective Order which this office intends to file by Friday. Please review at your earliest convenience and advise as to your position.

Thank you,

**ianna a ton | e a Assistant**
**Quintairos, Prieto, Wood & Boyer, P.A.**
6565 Americas Parkway NE, Suite 200 , Albuquerque , NM 87110
Ph: (505) 785-7012 Fax: (505) 785-7012
Email: dianna.saxton@qpwblaw.com Web: www.qpwblaw.com

Arizona ◆ California ◆ Colorado ◆ Connecticut ◆ Florida ◆ Georgia ◆ Idaho ◆ Illinois ◆ Indiana ◆ Kentucky ◆ Louisiana ◆ Maryland ◆ Massachusetts
Michigan ◆ Mississippi ◆ Nevada ◆ New Jersey ◆ New Mexico ◆ New York ◆ North Carolina ◆ Rhode Island ◆ Tennessee ◆ Texas ◆ USVI ◆ Washington

question that I rule cannot be answered. If I overrule an objection, then the question or evidence will be allowed.

And that's it for now. Counsel for plaintiff, who's the first witness?

MR. BRUNO: Yes, Your Honor. We would like to play the sworn deposition clips of Mr. Chapman at this time, followed by Dr. Asandra.

MS. BARRETT: Your Honor, could we approach, please?

THE COURT: Sure.

(NOTE: Beginning of bench conference.)

THE COURT: Ms. Barrett, you wanted to address something, or I guess the playing of the deposition testimony?

MS. BARRETT: I'm just not clear. When you said you're gonna play the clips, are you gonna play the clips of Asandra after playing clips during Mr. Chapman's testimony?

MR. BRUNO: Yes, that was my intent, so that we're finished with all of the clips that we're going to play before the witnesses.

MS. BARRETT: Your Honor, I don't think that's appropriate. I think when we have Mr. Chapman on the stand or they play the clips of Mr. Chapman, he's

"Answer: Yes, ma'am.
"Question: And as we read your explanation in Exhibit 26, it seems to have a little bit more factual details. Would you agree with that? A little bit more context?
"Answer: Well, what this is, is related to the reason I wasn't charting well.
"Question: Yes.
"Answer: I kind of became a shambles, that personal occurrence all kind of overlapped, and so yes, this happened and, yeah, I kind of fell apart and had a nervous wreck or whatever and -- yeah. So that's what happened at the same time.
"Question: Right. Back to 17, it says question 17 is related to an incident that happened in 2002 while I was working at Halifax Hospital. There's something that is blacked out, and then it continues, and was monitored by the state of Florida program PRN as a mandatory contract. I finished that in 2007, and I will include a copy of the completion letter I received from PRN. Do you see where I read that?
"Answer: I sure do. Yep.
"Question: What is this about? What does this relate to?
"Answer: Those two things you showed me,

this and that other box, are related. And I was out of PA school, diverted medication from an anesthesia cart in the operating room and was using it, and I got caught, and then they referred me and I went to Shands Hospital in Gainesville, a treatment center for providers, and I spent six months there as a partial inpatient, we had our own apartment and strict rules and therapy for six months, and then as it said at the end of that letter, I had the monitoring to do. And I was clean, no incidents at all once I got out of there.

"Question: Okay.

"Answer: But that was a hiccup for me in my life.

"Question: All right. And so arising out of the incomplete charting and the personal issues that you were having, what's reported here is that Holloman required that your privileges be restricted. Correct?

"Answer: Apparently, yes, ma'am.

"Question: And specifically what Holloman reported to the national practitioner database is the restriction of your clinical privileges requiring 100 percent supervision was due to failure to meet the standard of care and substandard documentation. Correct?

"Answer: Yes, ma'am. That's correct.

stick. Kari is like --
MR. ROBERTSON: You don't have to explain.
"Question: All right. So why were you terminated by Dr. Komadina?
"Answer: Because of the complaint from the board when I got -- two years after the incident where I was arrested, two years almost to the day, the board then sent me an official court like document complaint about the occurrences with the patient here, and he felt -- Dr. Komadina felt that until that was resolved, that I couldn't really see patients. And so they let me go.
"Question: Now, the medical board disagreed with Dr. Komadina and found that you were at fault or responsible for the care that was provided to Mr. Sanchez. Correct?
"Answer: Yes, ma'am.
"Question: And the medical board found that your care of Mr. Sanchez was below the standard of care. Correct?
"Answer: I'm not sure of their wording. I'm guessing you have the letter. I can't remember exactly, but I believe it was something to that effect. It was pretty -- pretty damning.
"Question: Were any of your performance

Pres, I'd get through, they'd say wait and they'd put me on hold and nobody would talk to me. But yeah, he called me. We answered.

"Question: By and large from day-to-day, the only person onsite performing medical services and making medical decisions in the office was you. Correct?

"Answer: That's correct."

(End of audio.)

MR. BRUNO: At this time, Your Honor, we would request to play the sworn testimony of Dr. Asandra. I believe there's 19 minutes of that, and then we'll move into the live witnesses, just for your timing purposes.

THE COURT: Okay, that's fine. And then after playing of the deposition testimony, we'll go ahead and take our morning break.

MR. BRUNO: Okay. Thank you.

(Beginning of audio.)

"Question: And what type of doctor trained you and Dr. Feliciano on injecting whatever medication for erectile dysfunction?

"Answer: It wasn't a physician, it was just consultants that taught us about the medications. We, ourselves, performed the tests, et cetera, with the

"Answer: Yes.

"Question: That was in 2014. You were not board certified in antiaging or regenerative medicine at that time, correct?

"Answer: Correct.

"Question: Were you the medical director of the Colorado NuMale clinic at that time?

"Answer: I believe I was.

"Question: All right. Now, a patient came into the Colorado clinic asking for hormone treatment. You understand that?

"Answer: Yes.

"Question: And the PA assessed the patient and said -- and determined that he has erectile dysfunction. Do you understand that?

"Answer: Yes.

"Question: The patient's labs, however, were in the normal range. You agree with that, right?

"Answer: They were in the reference range, correct.

"Question: And as a result of investigation, the investigating body, the medical board of Colorado found that the PA nonetheless initiated testosterone replacement therapy in the form of long-lasting testosterone pellets, rather than pursuing

medically necessary or medically appropriate courses of treatment. You're familiar with that, right?

"Answer: Yes.

"Question: And so is it your position that the investigation of the Colorado Medical Board that determined that this was inappropriate treatment, is it your opinion that -- your position that the Colorado Medical Board is wrong?

"Answer: Yes.

"Question: Your position is that the treatment of this patient was appropriate.

"Answer: Absolutely.

"Question: All right. And despite the fact that the Colorado Medical Board conducted an investigation and gave you a letter of admonition for unprofessional conduct, you feel that they were wrong. Right?

"Answer: Correct.

"Question: Now, the Colorado Medical Board said that you failed to supervise the PA. Correct?

"Answer: That's what they said, yes.

"Question: In April of 2019, the California Medical Board issued a public letter of reprimand related to your failure to supervise your PA in Colorado. Correct?

STATE OF NEW MEXICO
BERNALILLO COUNTY
SECOND JUDICIAL DISTRICT COURT

MICHAEL E. SANCHEZ,

Stipulation about Special Verdict Form

Plaintiff,

v. Cause No: D-202-CV-2020-06336

NUMALE MEDICAL CENTER LLC (a Wisconsin Corp.), NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, JUSTIN PULLIAM, STEPHEN G. CHAPMAN P.A.-C and MIKE RIVERA, and BLACK & WHITE Corps. 1-10 and JOHN & JANE DOES 1-10,

Defendants.

Transcript of Proceedings

On the 22nd day of November 2024, at approximately 9:40 a.m., this matter came on for trial before THE HONORABLE BEATRICE J. BRICKHOUSE, Division IV, Judge of the Second Judicial District.

The Plaintiff appeared by Counsels of Record, LORI BENCOE, CHERIE LaCOUR, DANIELLE CEBALLES, NICHOLAS ROWLEY and KEVIN BRUNO.

The NuMale Defendants appeared by Counsels of Record, DOMINIQUE BARRETT, ERIN CHAVEZ and ANDREW ROBERTSON.



EXHIBIT 5

THE BAILIFF: All rise.
THE COURT: Go ahead and take your seats. We're back on the record in the matter of CV-2020-6336. I know counsel are ready to begin closing arguments shortly. I understood there were some jury instructions that were still being hammered out. Where are we with regards to that issue?
MR. BRUNO: That's been completed, Your Honor. Ms. Bencoe, come on up. She has the agreed-upon -- our agreed-upon copies in the way that you've requested --
MS. BENCOE: So Your Honor, we have a set of marked and a set of clean in the same order, and a stipulated special verdict form. These are our only copies, so does Your Honor put them in order and --
THE COURT: I'll take a look at them. I'm not reading them today, so --
MS. BENCOE: Will we get the final set from you on Monday?
THE COURT: Of course. And we'll make copies for the jurors, of course. Since I'm not reading them today, it's fine. And are there disputed instructions that I need to rule on?
MR. ROBERTSON: No, Your Honor.
THE COURT: There are not. Okay.

MR. BRUNO: Yes. Your Honor, the verdict form has been stipulated and the jury instructions have been agreed upon by compromise and hard work. Thank you, counsel.

THE COURT: Yeah. And I thank you, counsel. I usually spend a lot of time on the verdict form. It's usually a bit of a bear when you have this many claims. So I'm actually pretty impressed that you-all were able to work out an agreement on the verdict form with this many causes of action.

MR. BRUNO: I think it was finalized between you first coming out and leaving and coming back.

THE COURT: Well, that's even more impressive, I guess. About 20 minutes or so. But you were under the gun since obviously counsel is entitled to refer to the jury instructions during closing arguments, and since none are objected to -- you said you need to put some stipulated -- hold on a second, Mr. Bruno -- exhibits and you need to move them into evidence, actually, is that right?

MR. BRUNO: Yes. They had been pre-admitted or stipulated to previously. They're the advertisements and they are as follows: Exhibit 56, Exhibit 58, Exhibit 59, Exhibit 66, Exhibit 61, Exhibit 62, Exhibit 63, exhibit 64, Exhibit 65, Exhibit 66,

Exhibit 67 and Exhibit 68. And I'm holding the flash drive that I believe has been vetted by IT for purposes of the Court's computer system, and I'm happy to give that to whoever should take custody of it.

THE COURT: All right. With regards to the exhibits Mr. Bruno has identified, I don't know, Ms. Barrett or Mr. Robertson, do you agree that these are all stipulated exhibits?

MR. ROBERTSON: Yes, Your Honor. No objection.

THE COURT: All right. They are all admitted without objection. And then is the USB, is it one of the identified ones, then, is it one of the ones you just read off?

MR. BRUNO: The USB contains each of those exhibits.

THE COURT: Oh, I see. Gotcha. All right. So those are all admitted. Is there anything else before we proceed to closing arguments?

MR. ROWLEY: For purposes of the special verdict form, we've agreed that NuMale defendants for purposes of jurors' determination, judgment, et cetera, that NuMale defendants, when we're referring to NuMale defendants on the verdict form, that refers to all remaining defendants in the case. Correct?

MR. ROBERTSON: Correct.

MR. ROWLEY: So the jurors don't have to go for each individual one, we agreed that NuMale defendants applies to everyone.

THE COURT: Okay. Anything else before we bring the jurors out?

MR. BRUNO: No, Your Honor.

MS. BARRETT: No, Your Honor.

THE COURT: All right. Then let's get our jurors out. And then plaintiff's counsel will have 90 minutes and defense counsel will have 60 minutes.

THE BAILIFF: Please rise for the jury.

THE COURT: All right. Everyone take your seats. Good afternoon, ladies and gentlemen.

THE JURY: Good afternoon.

THE COURT: Oh, be still my heart. I've trained you very well over the last several days. And so as I have previewed with you this morning and I think right before lunch, we are gonna proceed with closing arguments by counsel.

I don't believe we will be able to get to the reading of the final jury instructions, that's what I'm anticipating, and there are quite a few for me to read, so it's gonna take a little bit of time.

And so we will conclude today with just the

**From:** no-reply@efilingmail.tylertech.cloud
**To:** Frank Alvarez
**Subject:** Notification of Service for Case: D-202-CV-2020-06336, Michael E Sanchez v.Numale Medical Center LLC, et al. for filing REPLY, Envelope Number: 12303160
**Date:** Friday, March 28, 2025 10:01:03 AM

# Notification of Service

Case Number: D-202-CV-2020-06336
Case Style: Michael E Sanchez v.Numale Medical Center LLC, et al.
Envelope Number: 12303160

This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
|---|---|
| **Case Number** | D-202-CV-2020-06336 |
| **Case Style** | Michael E Sanchez v.Numale Medical Center LLC, et al. |
| **Date/Time Submitted** | 3/26/2025 2:09 PM MST |
| **Filing Type** | REPLY |
| **Filing Description** | Plaintiff's Reply in Support of Cost Bill and Motion For Award of Costs in the Court's Discretion |
| **Filed By** | Randyl Sexton |
| | Michael E Sanchez:<br><br>Cherie LaCour (cherie@bencoelaw.com)<br><br>Maggie Golike (maggie@bencoelaw.com)<br><br>Lori Bencoe (lori@bencoelaw.com)<br><br>Courtney Rowley (therowleylawfirm@gmail.com)<br><br>Theresa Bowen-Hatch (theresa@bowenhatchlaw.com)<br><br>Nicholas Rowley (NR@TL4J.com)<br><br>Keith Bruno (keith@brunonalu.com)<br><br>R Sexton (scott@bencoelaw.com) |

| | |
|---|---|
| | Elizabeth Martinez (elizabeth@brunonalu.com) |
| | Numale Corporation: |
| | John Robertson (andrew.robertson@qpwblaw.com) |
| | Erin Chavez (erin.chavez@qpwblaw.com) |
| | Dianna Saxton (dianna.saxton@qpwblaw.com) |
| | Dominique Barrett (dominique.barrett@qpwblaw.com) |
| | Jocelyn Drennan (jdrennan@rodey.com) |
| **Service Contacts** | Edward Ricco (ericco@rodey.com) |
| | Charles Vigil (cvigil@rodey.com) |
| | Frank Alvarez (frank.alvarez@qpwblaw.com) |
| | Sharon Walker (sywalker@btblaw.com) |
| | Lillian Favela (lillian.favela@qpwblaw.com) |
| | Other Service Contacts not associated with a party on the case: |
| | Linda Lopez (linda.lopez@qpwblaw.com) |
| | Kenneth Stalter (ken@stalterlaw.com) |
| | Souhaila Sonnenberg (souhaila.sonnenberg@qpwblaw.com) |
| | Daisy Mora (karen.edwards@qpwblaw.com) |
| | Stephen G Chapman PA-C: |
| | M. Clea Gutterson (mcg@kerrykiernanpc.com) |
| | Teresa Montoya (admin@kerrykiernanpc.com) |

| | |
|---|---|
| | John Klecan (jklecan@jshfirm.com)<br><br>Pam Pullem (ppullem@jshfirm.com) |

| Document Details | |
|---|---|
| **Served Document** | Download Document |
| This link is active for 90 days. To access this document, you will be required to enter your email address. Click here for more information. | |