# EXHIBIT 22

EXHIBIT 22

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
3/26/2025 2:09 PM
KATINA WATSON
CLERK OF THE COURT
Christopher Waites

**STATE OF NEW MEXICO**
**BERNALILLO COUNTY**
**SECOND JUDICIAL DISTRICT COURT**

**MICHAEL E. SANCHEZ,**

**Plaintiff,**

**v.** **No: D-202-CV-2020-06336**

**NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, and JUSTIN PULLIAM,**

**Defendants.**

**PLAINTIFF'S NOTICE OF RELEVANT STATE COURT FILING**
***CIVIL COMPLAINT FOR DECLARATORY JUDGMENT***
***FILED ON MARCH 14, 2025***
***IN CURRY COUNTY, NINTH JUDICIAL DISTRICT COURT***

COMES NOW Plaintiff, through his undersigned counsel of record, and submits this Notice of the filing of a matter in another jurisdiction that has relevance in this matter. Attached hereto as ***Exhibit 1*** (appended with only page 1 of each of its Exhibits to conform with the court's Local Rule LR2-116 NMRA restricting exhibit page limits), is a *Civil Complaint for Declaratory Judgment* filed by Certain Underwriters At Lloyd's London, Syndicates 2623 and 623 ("Beazley") on March 14, 2025, against Defendant Numale Albuquerque LLC d/b/a Numale Medical Center, Christopher Asandra MD, Carlos Feliciano MD, Brad Palubicki and Justin Pulliam.

***Exhibit 1*** which was filed March 14, 2025, may be relevant to post-trial proceedings in this case, along with the parties' *Joint Stipulated Motion to Stay Post-Trial Proceedings* (filed 1/6/2025), *Stipulated Order Staying Post-Trial Proceedings Until January 31, 2025* (filed 1/10/2025), and *Joint Stipulated Motion to Extend Stay of Post-Trial Proceedings* (filed 1/30/2025, after Numale Corp. and Numale NM SC had filed voluntary petitions for Chapter 11 Bankruptcy but before they filed their

February 20, 2025 Notice of same with this Court), and *Stipulated Order Extending Stay of Post-Trial Proceedings Until March 15, 2025* (entered 2/12/2025).

Additionally, ***Exhibit 1*** may also be relevant to this Court's determination of other matters, including but not limited to (1) *Plaintiff's Motion for Prejudgment Interest* (filed 12/9/2024 and now pending), and (2) *Defendants' Motion to Stay Execution of the Judgment Without Bond During the Pendency of the Post-Trial Motion Proceedings* (filed 3/20/2025 and now pending).

Additionally, in light of this Court's finding at trial that as a matter of law, Numale Albuquerque LLC d/b/a Numale Medical Center was a wholly owned subsidiary of Numale Corporation,[1] ***Exhibit 1*** may also be relevant to the *Rule 1-084 Notice of Bankruptcy Proceedings by Defendants Numale Corporation and Numale New Mexico S.C. Corp. d/b/a Numale Medical Center* that was filed in this matter on February 20, 2025.

Respectfully Submitted,

**BENCOE & LACOUR LAW, P.C.**

By: */s/ Lori M. Bencoe*
Lori M. Bencoe NM Bar ID 7525
Cherie L. LaCour NM Bar ID 9526
9201 Montgomery Blvd NE #404
Albuquerque, NM 87111
(505) 247-8800 ~ (505) 247-8801
lori@bencoelaw.com / cherie@bencoelaw.com

**TRIAL LAWYERS FOR JUSTICE**
Nicholas Rowley NM Bar ID 159410
421 W. Water Street, Third Floor
Decorah, IA 52101
(866) 854-5529
NR@TL4J.com

**BOWEN HATCH LAW, P.C.**
Theresa Bowen Hatch NM Bar ID 160899
1902 Wright Place Suite 200

1 See ***Exhibit 1*** (Nov. 22, 2024 Trial Transcript excerpt of Court's Ruling to this effect) and ***Exhibit 2*** (Stip. Jury Instruction No. 17 providing that Numale Albuquerque LLC was the wholly owned subsidiary of Numale Corp), attached to Plaintiff's *Notices of Completion of Briefing* on His *Motions for Prejudgment Interest and Costs*, both filed 3/26/2025, incorporated herein by reference pursuant to Rule 1-10C NMRA as if set forth herein; *and see, Stipulated Trial Exhibit 182* (Numale Albuquerque LLC's Operating Agreement).

Carlsbad, CA 92008
(760) 539-7603
Theresa@bowenhatchlaw.com

**BRUNO NALU**
Keith J. Bruno, *Pro Hac Vice*
18201 Von Karman Ave, Suite 1180
Irvine, CA 92612
(310) 745-7811
keith@brunonalu.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 26, 2025, I caused this document to be submitted for electronic filing in the Second Judicial District Court's electronic filing system, which caused all parties of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing. I also hereby certify a true and correct copy of same was electronically mailed to all parties entitled to notice.

By: *\/s/ Lori M. Bencoe*
Lori M. Bencoe

NINTH JUDICIAL DISTRICT COURT
Curry County
3/14/2025 3:03 PM
MICHELLE GRIZZLE
CLERK OF THE COURT

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT COURT

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATES 2623 AND 623,

Plaintiffs,

v.

Case No: D-905-CV-2025-00157

Cross, Benjamin S.

NUMALE ALBUQUERQUE LLC D/B/A NUMALE MEDICAL CENTER (A WISCONSIN CORP.), CHRISTOPHER ASANDRA, CARLOS FELICIANO, BRAD PALUBICKI, AND JUSTIN PULLIAM,

Defendants.

## CIVIL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623 ("Underwriters"), subscribing to Policy Nos. W14CC419601 and W1561E190601, state by way of a Complaint against Defendants NuMale Albuquerque LLC d/b/a NuMale Medical Center, Christopher Asandra, Carlos Feliciano, Brad Palubicki, and Justin Pulliam (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

1. Underwriters issued an insurance policy to Defendants, which operated a men's health clinic, under false pretenses. Defendants told Underwriters there were no acts, errors, facts or circumstances that could result in a malpractice or general liability claim or suit other certain specifically identified matters. In reality, Defendants knew that a New Mexico Medical Board complaint had been filed against Steven Chapman, a physician's assistant at NuMale Medical Center in Albuquerque, specifically alleging malpractice stemming from his purported treatment of Michael Sanchez for erectile dysfunction, but Defendants failed to disclose this matter to

EXHIBIT 1

Underwriters. Mr. Sanchez later brought a lawsuit against Defendants in New Mexico concerning his treatment by Mr. Chapman. Through the lawsuit, Underwriters learned about the earlier New Mexico Medical Board complaint against Mr. Chapman concerning his treatment of Mr. Sanchez. Nonetheless, Underwriters defended under a reservation of rights and met all other potential obligations to Defendants. During the trial, the jury found that Defendants committed fraud among other violations and awarded Mr. Sanchez $412 million. Underwriters seek, among other things, to rescind the insurance policies they issued to Defendants based on material misrepresentations made in Defendants' application for insurance. Defendants' misrepresentations vis-à-vis Underwriters mirrored the fraud alleged by Mr. Sanchez in his lawsuit. In seeking rescission, Underwriters endeavor to uphold the principles of honesty and integrity that are the bedrock of the insurance industry, and to prevent any unjust enrichment resulting from the misrepresentations by Defendants.

2. Underwriters subscribed to a medical professional liability policy and an excess policy with a combined limit of $6 million issued to various corporate entities and individuals (including Defendants) affiliated with NuMale Medical Center, a men's health clinic operating multiple locations across the United States offering a wide range of treatments, including for erectile dysfunction, low testosterone, and weight loss. The policy period for both policies is January 23, 2019 to January 23, 2020. The policies are claims made and reported policies, meaning they provide coverage that is triggered when a claim is made against the insured and reported during the policy period, even if the incident or injury giving rise to the claim occurred prior to the inception of the policy period.

3. On November 16, 2020, Michael Sanchez commenced a lawsuit in Bernalillo County, New Mexico, against various corporate entities and individuals affiliated with NuMale

Medical Center (including Defendants), alleging fraud, violations of the New Mexico Unfair Trade Practices Act, and negligence, among other claims, in relation to his treatment at a clinic in Albuquerque, New Mexico in the fall of 2017 (the "Sanchez Lawsuit"). Mr. Sanchez alleged that after receiving treatment for erectile dysfunction from a physician's assistant, Steven Chapman, he suffered permanent damage to his penis as a result of a prolonged untreated priapism. On November 25, 2024, a New Mexico jury found that Defendants and certain affiliates violated the New Mexico Unfair Practices Act and acted fraudulently and negligently, and awarded Mr. Sanchez $37,005,149 in compensatory damages and $375,000,000 in punitive damages.[1]

4. In this action, Underwriters seek a judgment rescinding the insurance policies due to material misrepresentations and omissions in Defendants' application for insurance and in the insurance policies. Specifically, in the December 6, 2018 insurance application for the policies, Defendants failed to disclose that on November 20, 2017, a physician filed a complaint with the New Mexico Medical Board against Mr. Chapman on the ground that he failed to provide adequate care to Mr. Sanchez at NuMale Medical Center. In other words, Defendants are seeking insurance coverage for the incident they were required to disclose, but did not disclose, in their application for insurance.

5. Alternatively, Underwriters seek a judgment declaring that they have no duty to indemnify Defendants for any portion of losses stemming from the Sanchez Lawsuit because the policies exclude coverage for: (1) any claim arising from a known circumstance; (2) any claim based upon or arising out of any fraudulent act or unfair or deceptive trade practices; and

---

[1] Two additional entities (NuMale Corporation and NuMale New Mexico S.C. Corporation) were found liable in the Sanchez Lawsuit but have since filed Chapter 11 petitions for bankruptcy in the United States Bankruptcy Court for the District of Nevada. Underwriters have not named NuMale Corporation or NuMale New Mexico S.C. Corporation as Defendants due to the automatic stay.

(3) punitive damages.

6. Underwriters further seek a judgment declaring that Defendants violated the "Assistance and Co-Operation of the Insured" clause in the policies by not timely disclosing to Underwriters that Nick Rowley, Mr. Sanchez's lead counsel in the Sanchez Lawsuit, engaged in *ex parte* communications with Dr. Christopher Asandra, the supervisor of Mr. Chapman and a named defendant in the Sanchez Lawsuit, during the pendency of that lawsuit.

7. Finally, Underwriters seek a declaration that they did not act in bad faith with respect to the Sanchez Lawsuit.

## **PARTIES**

8. Underwriters consist of two syndicates—Syndicates 623 and 2623—trading at Lloyd's, London who severally subscribed to Policy No. W14CC4190601, a Miscellaneous Medical Professional Liability Claims Made and Reported Insurance Policy (attached hereto as Exhibit A), and Policy No. W1561E190601, an Excess Insurance Policy (attached hereto as Exhibit B) (collectively, the "Policies").

9. Defendant NuMale Albuquerque LLC is an insured under the Policies. NuMale Albuquerque LLC is a limited liability company formed in Wisconsin with its principal office at 7920 Wyoming Blvd NE, Suite B-2, Albuquerque, New Mexico. NuMale Albuquerque LLC is a defendant in the Sanchez Lawsuit.

10. Defendant Christopher Asandra, a former physician at NuMale Medical Center, is an insured under the Policies. Upon information and belief, Dr. Asandra resides in Irvine, California and works in Beverly Hills, California. Dr. Asandra is a defendant in the Sanchez Lawsuit and signed the application for insurance.

11. Defendant Carlos Feliciano, a physician at NuMale Medical Center, is an insured

under the Policies. Upon information and belief, Dr. Feliciano resides in Tampa Bay, Florida. Dr. Feliciano is a defendant in the Sanchez Lawsuit and signed the application for insurance.

12. Defendant Brad Palubicki, the President of NuMale Medical Center, is an insured under the Policies. Upon information and belief, Mr. Palubicki resides in Henderson, Nevada. Mr. Palubicki is a defendant in the Sanchez Lawsuit.

13. Defendant Justin Pulliam, the Vice President of NuMale Medical Center, is an insured under the Policies. Upon information and belief, Mr. Pulliam resides in Las Vegas, Nevada. Mr. Pulliam is a defendant in the Sanchez Lawsuit.

## JURISDICTION AND VENUE

14. This Court has jurisdiction pursuant to NMSA 1978, § 38-1-16 (1971) because (1) Defendants are natural persons or corporations doing business within New Mexico; (2) the Policies insure persons, property, or risk located in New Mexico; and (3) a substantial portion of the underlying events giving rise to the present controversy took place in New Mexico.

15. Venue properly lies in Curry County pursuant to NMSA 1978, § 38-3-1 (1988) because NuMale Albuquerque LLC is a foreign corporation admitted to do business and which has failed to maintain a statutory agent in this state upon whom service of process may be had. NMSA 1978, § 38-3-1(F) (1988).

## FACTUAL BACKGROUND

### A. Application For Insurance

16. In late 2018, Defendants sought a renewal of medical malpractice insurance coverage from Underwriters. Underwriters required that Defendants fill out an insurance application. The purpose of an insurance application is to give the insurer the facts necessary to determine if the potential insured is an acceptable risk and, if so, what premium to assign and under

what policy terms based on the information submitted in the application.

17. In the insurance application, dated December 6, 2018, the applicant is "NuMale Chicago, LLC." NuMale Chicago, LLC sought insurance coverage for various affiliated entities and individuals throughout the country, including Defendants. NuMale Chicago, LLC's insurance application was signed by Dr. Asandra and Dr. Feliciano—two of the Defendants in this case—on December 6, 2018. The insurance application lists Mr. Palubicki, another Defendant in this case, as "President."

18. The insurance application for the Policies included a series of questions aimed at uncovering known claims and potential claims for liability. These questions are critically important because Defendants sought renewals of claims made and reported policies—*i.e.*, policies triggered if a claim is made and reported during the policy period, even if the incident or injury giving rise to the claim occurred prior to the inception of the policy period.

19. In the insurance application, Defendants were required to disclose, among other things, whether any "proposed insured" was "aware of any claim or suit, or any act, error, omission, fact, [or] circumstance" that "may result in a malpractice, general liability, or products liability claim or suit." Despite the incident giving rise to the Sanchez Lawsuit occurring in November 2017, Defendants responded "no" to this question.

20. The application also required Defendants to disclose "any claim or suit for an error, omission or malpractice" made against the applicant, its organization, or any employees or staff. Defendants did not disclose any claims concerning Mr. Chapman's treatment of Mr. Sanchez in response to this question.

21. The application also included the following inquiry: "Has the applicant or any staff ever been the subject of disciplinary/investigative proceedings"? In response, Defendants checked

the "no" box on the form.

22. By signing the application of insurance, Dr. Asandra and Dr. Feliciano represented that all statements made in the insurance application were (1) "true and correct"; (2) "the basis of the contract should a policy be issued"; and (3) "have been relied upon" by Underwriters "in issuing any policy."

**B. The Policies**

23. In early 2019, Defendants secured two policies from Underwriters, a $1 million Miscellaneous Medical Professional Liability Claims Made and Reported Insurance (Policy No. W14CC4190601) and a $5 million Excess Insurance Policy (Policy No. W1561E190601). The Policies' limits total $6 million, inclusive of defense costs. The policy period for both Policies is January 23, 2019 through January 23, 2020. The Policies are governed by Illinois law.

24. The Policies, by their terms, state that they are made in reliance upon Defendants' statements, representations and warranties made in the insurance application which was made a part of the Policies. Ex. A at p. 32, Ex. B at p. 13.

25. Each Defendant is an insured under the Policies. In an endorsement listing the scheduled insureds, Mr. Chapman is listed as a current medical professional performing services on behalf of NuMale Medical Center, but Mr. Chapman was fired on or about July 13, 2018.

26. The Policies are designed to provide defense costs and indemnity for, among other things, claims for bodily injury arising out of any negligent act, error or omission of an insured in rendering or failure to render professional services. The Policies contain a number of exclusions, including but not limited to the following:

- Known Circumstance Exclusion: There is no coverage for "any **Claim** or circumstance which might lead to a Claim known to any Insured prior to

the inception of this Policy and not disclosed to the Underwriters at inception." Ex. A at p. 35, § IV(m); Ex. B at p. 13, § I.

- Fraud Exclusion: There is no coverage for "any **Claim** arising out of any criminal, dishonest, fraudulent or malicious act, error, or omission of any **Insured**, committed with actual criminal, dishonest, fraudulent or malicious purpose or intent." Ex. A at p. 35, § IV(b); Ex. B at p. 13, § I.
- Punitive Damages Exclusion: There is no coverage for "any **Claim** for punitive or exemplary **Damages**, or **Damages** which are a multiple of compensatory **Damages**, fines, sanctions, taxes or penalties, or the return of or reimbursement for fees, costs or expenses charged by any **Insured**." Ex. A at p. 36, § IV(s); Ex. B at p. 13, § I.
- Unfair Trade Practices Exclusion: There is no coverage for "any **Claim** based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder." Ex. A at p. 37, § IV(x); Ex. B at p. 13, § I.[2]

**C. Underlying Facts in the Sanchez Lawsuit**

27. On November 16, 2020, Mr. Sanchez commenced a lawsuit against various corporations and individuals affiliated with NuMale Medical Center (including Defendants) in

2 The Policies also state to the extent a claim alleges both professional negligence and any of the above excluded enumerated offenses, Underwriters and the Insured will use their best efforts to reach a fair allocation between covered and uncovered damages. Ex. A at p. 37, § IV(x); Ex. B at p.13, § I.

Bernalillo County, New Mexico, alleging negligence, fraud, and violations of the New Mexico Unfair Trade Practices Act, among other claims, in relation to his treatment at the Albuquerque, New Mexico clinic in the fall of 2017.

28. Mr. Sanchez alleged that he was referred to NuMale Medical Center for testosterone therapy but was convinced to purchase a more expensive treatment plan which included the use of medications that were to be injected directly into his penis to cause an erection. Mr. Sanchez alleged that, after he returned home, he developed priapism—an erection lasting longer than four hours—which persisted for several days. After a few days, Mr. Sanchez returned to NuMale Medical Center, but Mr. Chapman could not reverse the erection. Mr. Sanchez then drove himself to the emergency room, where he received treatment and emergency surgery for the priapism from a urologist, Dr. Stefan Gutow. Mr. Sanchez alleged he did not regain complete function in his penis following the surgery and has suffered pain, disfigurement, humiliation, and loss of enjoyment of life.

29. Mr. Sanchez alleged that Mr. Chapman was supervised by Dr. Asandra and Dr. Feliciano, and that Mr. Chapman acted as an agent of Defendant NuMale Albuquerque LLC and various other affiliated corporate entities.[3]

### D. New Mexico Medical Board Complaint Filed Against Mr. Chapman Prior to the Policy Period Regarding the Sanchez Incident

30. After receiving the complaint in the Sanchez Lawsuit in December 2020, Underwriters asked Defendants for information about a New Mexico Medical Board investigation referenced in the complaint. For the first time, and only upon Underwriters' information demand, Mr. Palubicki disclosed that a New Mexico Medical Board Complaint had been filed against Mr.

[3] Mr. Chapman originally was a defendant in the Sanchez Lawsuit, but was dismissed by stipulation before the verdict.

Chapman (the "New Mexico Board Complaint") in relation to the treatment of Mr. Sanchez at NuMale Medical Center ***before*** Defendants had applied for insurance in December 2018. Specifically, on November 20, 2017, more than a year before Defendants applied for insurance, Dr. Gutow, the emergency room physician who treated Mr. Sanchez, asserted the following in his New Mexico Board Complaint:

> Patient was treated by Mr. Chapman on 11/17/17 for erectile dysfunction. He was given an intra-cavernosal injection of medicine to induce an erection. Patient went home and developed a priapism. Patient self-administered phenylephrine as instructed by Mr. Chapman to get erection to go down. It did not work. Priapism persisted and patient returned to NuMale medical center on 11/20 where Mr. Chapman administered phenylephine which did not work. Patient was instructed to go to ER. He went to Presbyterian ER where he is currently under my care for this problem. My complaints are as follow[s]:
>
> 1. Mr. Chapman is doing these procedures without any surgical background or any urology backup to manage complications when they arise. There is apparently an ER doctor who oversees him although I believe this doctor lives in Las Vegas, NV. His name is Christopher Asandra. Why am I obligated to manage this practices complications when they have an inadequate set up to manage complications.
>
> 2. Patients should not be sent home with phenlephrine to self administer inter-corporeally. This is malpractice in my opinion. This could have severe systematic consequences. When I spoke to Mr. Chapman today about this patient, he did not seem to be aware of the potential complications of this medicine.
>
> 3. This is patent abandonment as they have no ability to manage complications other than to send patient to ER for a real doctor to manage.[4]

---

[4] On November 20, 2019, the New Mexico Medical Board served Mr. Chapman with a Notice of Contemplated Action, notifying Mr. Chapman that the Board had sufficient evidence to discipline Mr. Chapman for his failure to properly screen Mr. Sanchez prior to his treatment for erectile dysfunction. The Board also alleged that Mr. Chapman's treatment of Mr. Sanchez "may not have been effectively supervised and may have exceeded" his "scope of practice." In November 2020, Mr. Chapman and the New Mexico

31. By letter dated March 20, 2018, the New Mexico Medical Board informed Mr. Chapman, then an employee of NuMale Medical Center, about the New Mexico Medical Board Complaint. Mr. Chapman discussed the New Mexico Board Complaint with several employees, including Dr. Asandra, around the time Mr. Chapman and NuMale Medical Center received notice of it. Accordingly, Defendants knew about the New Mexico Medical Board Complaint when they applied for insurance from Underwriters in December 2018.

32. Defendants' failure to disclose the Sanchez incident or the New Mexico Board Complaint in response to questions on the insurance application had a material impact on Underwriters' acceptance of the insurance risks. Indeed, the assertions in the New Mexico Board Complaint against Mr. Chapman would have raised alarms for Underwriters had Defendants disclosed the matter on the application as required. Not only did the New Mexico Board Complaint highlight a potential medical malpractice claim with respect to Mr. Chapman's treatment of Mr. Sanchez, it may have forewarned of systemic issues at NuMale Medical Center regarding inadequate training, scarce supervision, and lack of patient education. These were central issues in the Sanchez Lawsuit.

33. Defendants' material misrepresentations and omissions in the insurance application and prior to the Policies' inception render the Policies voidable and, moreover, preclude coverage for the Sanchez Lawsuit under the Known Circumstances Exclusion.

**E. Underwriters' Reservation of Rights Letter**

34. By letter dated January 13, 2021, Underwriters agreed to defend the defendants in the Sanchez Lawsuit (including all Defendants in this action), subject to a reservation of rights.

---

Medical Board entered into an agreed order which, among other things, prohibited him from treating patients for erectile dysfunction and priapism.

Underwriters informed Defendants that "several exclusions may preclude or limit coverage for the Lawsuit," including the Known Circumstance Exclusion, the Fraud Exclusion, the Unfair Trade Practices Exclusion, and the Punitive Damages Exclusion. With respect to the Known Circumstances Exclusion, Underwriters noted that, "despite the seriousness of [Mr. Sanchez's] injuries and the allegations of" the November 2017 New Mexico Medical Board Complaint, neither was disclosed to Underwriters prior to the Policies incepting.

**F. Trial in the Sanchez Lawsuit**

35. Between November 14 and November 25, 2024, the Sanchez Lawsuit was tried to a jury. From jury selection through closing argument, Mr. Sanchez's counsel emphasized that the defendants engaged in fraud and violations of the New Mexico Unfair Practices Act by holding themselves out as experts in men's health when they knew or should have known that Mr. Chapman was not a urologist or otherwise an expert in men's sexual health and was not qualified to provide unsupervised medical care in NuMale Medical Center's Albuquerque clinic.

36. For example, during jury selection, when Mr. Sanchez's counsel explained what the case was about to prospective jurors, he focused on Mr. Sanchez's allegations of fraud and unfair business practices:

> I think I'll just start out, is there anyone sitting here – we are suing a medical corporation and healthcare providers, this is a case involving medical negligence, ***we're alleging there's fraud and unfair business practices***, and this lawsuit is for many millions, tens of millions of dollars and punitive damages against healthcare providers. Is there anyone here who, brutal honestly with your integrity speaking says, you know, a case like that you don't want me as a juror.

37. Likewise, during opening argument, Mr. Sanchez's counsel stated that "[w]e're going to see not a care facility, but ***a fraud facility***." According to Mr. Sanchez's counsel, while "it's natural to talk about what went wrong medically," the damages stemming from medical

negligence were just the "tip" of the iceberg. Mr. Sanchez's counsel then went on to discuss "fraud" and "prey[ing] on the vulnerable deliberately."

38. During closing argument, Mr. Sanchez's counsel used the words "fraud," "fraudulent," or "unfair" or "unconscionable" in relation to business practices thirty times. For example, Mr. Sanchez's counsel stated:

- "So the way they are advertising and marketing to bring in these PAs to run these clinics it's fraud to begin with."
- "It's fraud. It's deceptive. Unfair. Unconscionable."
- "And what's important about this language is you're gonna see jury instructions . . . about unfair business practices, deception, fraud. And when you're back there, that should be a unanimous verdict on those questions[.]"

39. Finally, in the Court's Jury Instruction No. 13 concerning the causes of action in the case, the first cause of action addressed is "fraud." In addition, the Court had several additional jury instructions concerning fraud and the New Mexico Unfair Practices Act, including Jury Instruction Nos. 23, 24, 25, 26, 27, 28, and 53. In Jury Instruction No. 62 concerning punitive damages, the Court instructed that if the conduct of NuMale Corporation taken as a whole was willful, reckless, wanton or fraudulent," the jury may award punitive damages against NuMale Corporation.

**G. Verdict in the Sanchez Lawsuit**

40. The Special Verdict Form highlighted Mr. Sanchez's fraud and Unfair Practices Act causes of action.

41. With respect to the "fraud claim," there were two questions: (1) "Was any conduct by any NuMale defendant fraudulent?"; and (2) "Was any fraudulent conduct by Numale a cause of Plaintiff's damages?" The jury checked "yes" to both questions, ultimately finding all defendants liable for fraud.

42. With respect to the Unfair Practices Act claims, there were three questions: (1) "Was any conduct by any Numale Defendant an unconscionable trade practice in violation of the Unfair Practices Act?"; (2) "Was any unconscionable conduct under the Unfair Practices Act a cause of Plaintiff's damages?"; and (3) "Was any conduct by any Numale Defendant an unfair or deceptive trade practice in violation of the Unfair Practices Act?". The jury checked "yes" to all three questions, finding all defendants liable for violations of the New Mexico Unfair Trade Practices Act.

43. Ultimately, the jury awarded $37,005,149.00 in compensatory damages against all defendants. The verdict form did not distinguish between or allocate compensatory damages among the defendants or the causes of action.

44. The jury also awarded $375,000,000.00 in punitive damages against NuMale Corporation. In connection with the punitive damages award, the jury checked "yes" in response to the question: "Was the cumulative conduct of Numale Corporation acting through its agents and subsidiary corporations either willful, wanton or reckless?" Further, under the jury instructions, "willful, reckless, wanton or fraudulent conduct" was required to recover punitive damages against NuMale Corporation.

45. The trial testimony, jury instructions, and jury verdict plainly demonstrate that coverage for the Sanchez Lawsuit is excluded under the Fraud Exclusion, the Unfair Trade Practices Exclusion, and the Punitive Damages Exclusion in the Policies.

**H. Breach of the Policies' Cooperation Provision**

46. Notwithstanding the existence of an "Assistance And Co-Operation Of The Insured" provision (the "Cooperation Provision") in the Policies (Ex. A at p. 48, § XII), Defendants did not provide full and contemporaneous disclosure to Underwriters that Nick

Rowley, Mr. Sanchez's lead counsel in the Sanchez Lawsuit, was engaging in improper *ex parte* communications with Dr. Asandra, the NuMale physician who supervised Mr. Chapman, during the pendency of the Sanchez Lawsuit.

47. Had Underwriters known of the *ex parte* communications between Mr. Rowley and Dr. Asandra when they occurred, Underwriters would have demanded that Defendants move to disqualify Mr. Rowley and/or move for a mistrial.

48. Moreover, disclosure also would have been integral to Underwriters in terms of strategy in the case, including whether to have Dr. Asandra testify at trial or to settle. Rather than appearing in person to present live testimony at trial, Dr. Asandra left New Mexico after Mr. Rowley floated the idea of dismissing Dr. Asandra from the case, which angered the Court and required Dr. Asandra to provide his trial testimony by Zoom. During his trial testimony, Dr. Asandra admitted to breaches of the standard of care and was more critical of NuMale Medical Center and Mr. Chapman than he was in his sworn deposition testimony.

**I. No Bad Faith on the Part of Underwriters**

49. Following the verdict in the Sanchez Lawsuit, Mr. Sanchez's counsel contacted Underwriters, raising several purported bases that Underwriters acted in bad faith in its defense of the Defendants in the Sanchez Lawsuit. Sanchez's counsel further suggested Defendants' agreement that Underwriters acted in bad faith. According to Sanchez's counsel, Beazley acted in bad faith in the following ways: (1) failing to provide separate independent counsel for all defendants in the Sanchez Lawsuit; (2) failing to settle the Sanchez Lawsuit within policy limits; and (3) purportedly "opposing" a proposal to dismiss Dr. Asandra and Dr. Feliciano during trial.

50. None of these alleged bases give rise to any cognizable bad faith claim against Underwriters. Beyond the fact that the Policies are voidable and, at any rate, coverage is otherwise

precluded under numerous exclusions in the Policies—barring any claim of bad faith—Underwriters at all relevant times also acted fairly and reasonably in dealings with Defendants throughout the Sanchez Lawsuit.

51. For example, Underwriters offered to provide independent counsel to all defendants throughout the Sanchez Lawsuit. Specifically, on January 13, 2021, Underwriters sent a letter to Defendants via Mr. Palubicki stating that Underwriters agreed to provide independent counsel to all defendants in the Sanchez Lawsuit upon request and instructing NuMale to forward the letter to all defendants. None of the Defendants requested independent counsel. Moreover, when it became apparent that Mr. Chapman, prior to him being dismissed from the action, might testify against NuMale, Underwriters retained independent counsel for him.

52. In addition, Underwriters consulted with Defendants and defense counsel with respect to each settlement demand made by Mr. Sanchez, and Defendants agreed that the demands were unreasonable. Indeed, the corporate Defendants' principal consistently insisted that Underwriters deny each demand. At no point prior to trial were Underwriters advised by Defendants or defense counsel that an adverse verdict in the Sanchez Lawsuit was substantially likely to exceed policy limits. Nor were Underwriters ever informed that any Defendant wished to settle within policy limits before trial. The decision to proceed to trial was made after a full and adequate investigation and reflects an honest and reasonable conclusion that the policy limits would be adequate to compensate any liability. Moreover, during trial, when limits liability became apparent, Underwriters offered to settle for policy limits of $6 million. Underwriters' offer was not accepted.

53. Finally, Underwriters did not prevent any Defendant from being dismissed from the Sanchez Lawsuit. During trial, Mr. Sanchez offered to dismiss Defendants Dr. Asandra and

Dr. Feliciano from the case, subject to the condition that the parties "agree to shorten the trial and not to call Dr. Asandra or Dr. Feliciano to testify." Dr. Asandra was anticipated to be an important defense witness for all Defendants, and trial counsel for Defendants believed it was conflicted in responding to the proposed stipulation because of its joint representation of Dr. Asandra, Dr. Feliciano, and the remaining Defendants. At this point, defense counsel moved for a mistrial based on the dismissal offer and resulting conflict of interest. Counsel for Mr. Sanchez then withdrew the offer to dismiss Dr. Asandra and Dr. Feliciano. At no point did Underwriters oppose the offer or direct defense counsel to reject the offer.

54. Nothing about Underwriters' actions in the Sanchez Lawsuit suggests bad faith. Underwriters could not and did not hold their own interests above Defendants' interests when Defendants were consistently consulted on and concurred with Underwriters' decisions. At every stage of the case, Underwriters relied on defense counsel's judgment, acted with the understanding that the Defendants had a meritorious defense, and conformed to their understanding of Defendants' wishes. Any purported claim of bad faith against Underwriters is based on nothing more than an outsider's perspective that hindsight is 20/20 when faced with an excess verdict, but bad faith claims are not determined in hindsight, and Underwriters cannot be held strictly liable for an unanticipated excess verdict.

## FIRST CAUSE OF ACTION
## (DECLARATORY RELIEF – RESCISSION)

55. Underwriters re-allege and incorporate the allegations set forth in in the preceding paragraphs as if fully stated herein.

56. Defendants or their agents made a misrepresentation and/or omission of material fact in Defendants' insurance application when they failed to disclose the incident giving rise to the Sanchez Lawsuit as an act, error, fact or circumstances that could result in a malpractice or

general liability claim or suit and/or that Dr. Gutow had filed a complaint against Mr. Chapman with the New Mexico Medical Board concerning Mr. Chapman's treatment of Mr. Sanchez at NuMale Medical Center, as required.

57. Defendants or their agents made the foregoing misrepresentations and/or omissions of material fact with full knowledge and expectation that Underwriters would rely on said representations, which was a material and critical part of Underwriters' consideration of the risk and determination to issue the Policies under the terms provided and for the premium charged.

58. Underwriters justifiably relied on the representations made in the insurance application in determining whether to issue the Policies under the terms provided and in determining the appropriate premium to be charged.

59. If the true facts had been known, Underwriters would not have issued the Policies and/or would not have provided coverage under the same terms or with respect to the hazard resulting in the insurance claim at issue.

60. Underwriters are informed and believe and thereon allege that Defendants contend to the contrary or otherwise dispute Underwriters' contentions regarding rescission.

61. This Court has the power and authority to rescind the Policies and declare the Policies void due to the material misrepresentations by Defendants.

62. This Court should declare that the Policies issued to the Defendants are void due to the material misrepresentations by Defendants.

WHEREFORE, Underwriters respectfully pray that the Court rescind the Policies and hold that Defendants must reimburse Underwriters for past defense costs, and that Underwriters will return to Defendants the premiums paid and any other benefit received by Underwriters in connection with the Policies.

## SECOND CAUSE OF ACTION
## (DECLARATORY RELIEF - NO DUTY TO INDEMNIFY DUE TO POLICY EXCLUSIONS)

63. Underwriters re-allege and incorporate the allegations set forth in the preceding paragraphs as if fully stated herein.

64. There is no coverage under the Policies for any losses stemming from the Sanchez Lawsuit because the Policies contain a Known Circumstances Exclusion. The Sanchez Lawsuit is a known circumstance because Defendants knew about Mr. Sanchez's injuries and the New Mexico Medical Board Complaint prior to the inception of the Policies, but failed to disclose either to Underwriters prior to the Policies' inception.

65. In addition, Underwriters have no duty to indemnify Defendants for their losses stemming from the Sanchez Lawsuit in whole in part because of the Fraud Exclusion, the Unfair Trade Practices Exclusion, and the Punitive Damages Exclusion in the Policies. In the verdict form in the Sanchez Lawsuit, the jury found that the defendants engaged in fraudulent conduct, negligent conduct, and violated the New Mexico Unfair Practices Act, and also awarded Mr. Sanchez punitive damages.

66. Underwriters are informed and believe and thereon allege that Defendants contend to the contrary or otherwise dispute Underwriters' contentions with respect to the Policies' coverage exclusions. By virtue of the foregoing, there exists a justiciable controversy between Underwriters and Defendants regarding whether there is a duty to indemnify under the Policies.

67. Accordingly, Underwriters seek a declaration that under the terms, conditions, and exclusions of the Policies, they have no duty to indemnify Defendants for any losses stemming from the Sanchez Lawsuit. Alternatively, Underwriters seek a declaration as to what portion of such losses, if any, Underwriters have an obligation to indemnify.

WHEREFORE, Underwriters respectfully pray for a declaration that Underwriters have no duty to indemnify Defendants for any losses, damages, costs or expenses stemming from the Sanchez Lawsuit due to exclusions in the Policies or, alternatively, a declaration setting forth what portion of losses, damages, costs or expenses, if any, Underwriters have an obligation to indemnify.

**THIRD CAUSE OF ACTION**
**(DECLARATORY RELIEF – NO DUTY TO INDEMNIFY DUE TO BREACH OF COOPERATION PROVISION)**

68. Underwriters re-allege and incorporate the allegations set forth in the preceding paragraphs as if fully stated herein.

69. The Policies contain a Cooperation Provision. The basic purpose of a cooperation provision is to protect the insurer's interests and prevent collusion between the insured and the injured party. Under Illinois law, which governs the Policies, an insured's duty to cooperate is considered to be so important that it will trump the insured's right to maintain the confidentiality of communications with the insured's own attorney. In fact, in Illinois, an insured must provide its insurer with information that is relevant to a claim, regardless of the attorney-client privilege.[5]

70. Underwriters contend that Defendants breached the Cooperation Provision by failing to disclose that Mr. Rowley was engaging in *ex parte* communications with Dr. Asandra when those communications occurred. Underwriters further contend that they were prejudiced as a result of Defendants' failure to disclose that Mr. Rowley was engaging in *ex parte* communications with Dr. Asandra.

71. Underwriters are informed and believe and thereon allege that Defendants contend to the contrary or otherwise dispute Underwriters' contentions. By virtue of the foregoing, there

---

5 *See Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 192 (1991).

exists a justiciable controversy between Underwriters and Defendants regarding whether Defendants breached the Cooperation Provision.

72. Accordingly, Underwriters seek a declaration that Defendants breached the Cooperation Provision, and as a result thereof, Underwriters have no duty to indemnify Defendants.

WHEREFORE, Underwriters respectfully pray for a declaration that Underwriters have no duty to indemnify Defendants for any losses, damages, costs or expenses stemming from the Sanchez Lawsuit due to Defendants' breach of the Cooperation Provision or, alternatively, a declaration setting forth what portion of losses, damages, costs or expenses, if any, Underwriters have an obligation to indemnify.

**FOURTH CAUSE OF ACTION**
**(DECLARATORY RELIEF – NO BAD FAITH)**

73. Underwriters re-allege and incorporate the allegations set forth in the preceding paragraphs as if fully stated herein.

74. Underwriters seek a declaration that Underwriters have not acted in bad faith with respect to the Sanchez Lawsuit. Underwriters acted in good faith at all points in time through the Sanchez Lawsuit, including (but not limited to) its actions with respect to the provision of independent counsel, settlement negotiations, and negotiations regarding the dismissal of Defendants during trial.

75. Underwriters are informed and believe and thereon allege that Defendants contend to the contrary or otherwise dispute Underwriters' contentions. By virtue of the foregoing, there exists a justiciable controversy between Underwriters and Defendants regarding whether Underwriters acted in bad faith with respect to the Sanchez Lawsuit.

WHEREFORE, Underwriters respectfully pray for a declaration that Underwriters did not act in bad faith with respect to the Sanchez Lawsuit.

Dated: March 14, 2025

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By /s/ Eric R. Burris

Eric R. Burris
Debashree Nandy
201 Third Street NW, Suite 1800
Albuquerque, New Mexico 87102-4386
Telephone: (505) 244-0770
Facsimile: (505) 244-9266
eburris@bhfs.com
rnandy@bhfs.com

SIMPSON THACHER & BARTLETT LLP
Bryce L. Friedman*
Summer Craig*
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bfriedman@stblaw.com
scraig@stblaw.com

Chet A. Kronenberg*
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502
ckronenberg@stblaw.com

*Attorneys for Certain Underwriters at Lloyd's, London, Syndicates 2623 and 623*

* *pro hac vice* application forthcoming

beazley

## MISCELLANEOUS MEDICAL PROFESSIONAL LIABILITY CLAIMS MADE AND REPORTED INSURANCE

## DECLARATIONS

This is a Claims Made and Reported Policy. Except to such extent as may otherwise be provided herein, the coverage afforded under this Insurance is limited to those **Claims** which are first made against the **Insured** and reported during the **Policy Period**. **Damages** and **Claims Expenses** shall be applied against the Deductible. Certain words and phrases which appear in bold type have the special meaning agreed by the parties in Clause V., Definitions. Words with capitalized first letters only shall have the further meaning provided in the Declarations or as the context may require. Please review the coverage provided by this Insurance carefully and discuss it with your insurance agent or broker.

These Declarations along with the completed and signed application and the **Policy** with endorsements shall constitute the contract between the **Named Insureds** and the Underwriters.

**Underwriters:** Syndicates 2623/623 at Lloyd's

**Policy Number:** W14CC4190601

**Authority Ref. Number:** B6012BUSANMSL1901

Item 1. **Named Insured:** NuMale Chicago, LLC

**Address**:
4711 Golf Road
Suite 1050
Skokie, IL 60076

Item 2. **Policy Period:** From: 23-January-2019

To: 23-January-2020

Both dates 12:01 a.m. Local Time at the Principal Address shown in Item 1.

Item 3. **Limit of Liability:**

(a) Each **Claim** $1,000,000

(b) Term Aggregate- all coverages combined $3,000,000

Item 4. **Deductible:**

Each **Claim** Deductible $10,000

Item 5. **Premium:**

a. The premium paid in respect of the entire **Policy Period**

$135,000



CIVIL COMPLAINT FOR DECLARATORY JUDGMENT
EXHIBIT A

# DECLARATIONS

# EXCESS INSURANCE POLICY

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS OR LOSS DISCOVERED DURING THE POLICY PERIOD PROVIDED THAT SUCH CLAIM OR LOSS IS REPORTED IN WRITING TO THE UNDERWRITERS PURSUANT TO THE POLICY PROVISIONS. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE APPLICABLE LIMITS OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE UNDERWRITERS SHALL NOT BE LIABLE FOR ANY DEFENSE COSTS OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. PLEASE READ THIS POLICY CAREFULLY.**

These Declarations along with the completed and signed **Application** and the Policy with endorsements shall constitute the contract between the **Insureds** and the Underwriters.

**Underwriters:** Syndicates 2623/623 at Lloyd's
**Policy Number:** W1561E190601
**Authority Ref. Number:** B6012BUSANMSL1901

Item 1. **Named Insured:**

NuMale Chicago, LLC

Principal Address:

4711 Golf Road, Suite 1050
Skokie, IL 60076

Item 2. **Policy Period:**

From: 23 January 2019
To: 23 January 2020

(Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.)

Item 3. **Limits of Liability:**

$5,000,000 Each Claim
$5,000,000 Aggregate for the **Policy Period**, including costs and expenses incurred in the defense or settlement of all claims.

Item 4. **Premium:** $ 62,000

CIVIL COMPLAINT FOR DECLARATORY JUDGMENT
EXHIBIT B

**From:** no-reply@efilingmail.tylertech.cloud
**To:** Frank Alvarez
**Subject:** Notification of Service for Case: D-202-CV-2020-06336, Michael E Sanchez v.Numale Medical Center LLC, et al. for filing NTC: NOTICE OF BANKRUPTCY, Envelope Number: 12303160
**Date:** Friday, March 28, 2025 10:02:03 AM

# Notification of Service

Case Number: D-202-CV-2020-06336
Case Style: Michael E Sanchez v.Numale Medical Center LLC, et al.
Envelope Number: 12303160

This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
|---|---|
| **Case Number** | D-202-CV-2020-06336 |
| **Case Style** | Michael E Sanchez v.Numale Medical Center LLC, et al. |
| **Date/Time Submitted** | 3/26/2025 2:09 PM MST |
| **Filing Type** | NTC: NOTICE OF BANKRUPTCY |
| **Filing Description** | Plaintiffs Notice Of Relevant State Court Filing Civil Complaint For Declaratory Judgment Filed On March 14, 2025 In Curry County, Ninth Judicial District Court |
| **Filed By** | Randyl Sexton |
| | Stephen G Chapman PA-C:<br><br>Pam Pullem (ppullem@jshfirm.com)<br><br>John Klecan (jklecan@jshfirm.com)<br><br>Teresa Montoya (admin@kerrykiernanpc.com)<br><br>M. Clea Gutterson (mcg@kerrykiernanpc.com)<br><br><br>Michael E Sanchez:<br><br>Keith Bruno (keith@brunonalu.com)<br><br>R Sexton (scott@bencoelaw.com) |

| | |
|---|---|
| | Elizabeth Martinez (elizabeth@brunonalu.com)<br><br>Nicholas Rowley (NR@TL4J.com)<br><br>Theresa Bowen-Hatch (theresa@bowenhatchlaw.com)<br><br>Courtney Rowley (therowleylawfirm@gmail.com)<br><br>Lori Bencoe (lori@bencoelaw.com)<br><br>Maggie Golike (maggie@bencoelaw.com)<br><br>Cherie LaCour (cherie@bencoelaw.com) |
| **Service Contacts** | Numale Corporation:<br><br>Lillian Favela (lillian.favela@qpwblaw.com)<br><br>Dianna Saxton (dianna.saxton@qpwblaw.com)<br><br>John Robertson (andrew.robertson@qpwblaw.com)<br><br>Erin Chavez (erin.chavez@qpwblaw.com)<br><br>Frank Alvarez (frank.alvarez@qpwblaw.com)<br><br>Jocelyn Drennan (jdrennan@rodey.com)<br><br>Edward Ricco (ericco@rodey.com)<br><br>Charles Vigil (cvigil@rodey.com)<br><br>Sharon Walker (sywalker@btblaw.com)<br><br>Dominique Barrett (dominique.barrett@qpwblaw.com)<br><br><br>Other Service Contacts not associated with a party on the case:<br><br>Souhaila Sonnenberg (souhaila.sonnenberg@qpwblaw.com)<br><br>Daisy Mora (karen.edwards@qpwblaw.com) |

| | |
|---|---|
| | Kenneth Stalter (ken@stalterlaw.com)<br><br>Linda Lopez (linda.lopez@qpwblaw.com) |

| Document Details | |
|---|---|
| **Served Document** | Download Document |
| This link is active for 90 days. To access this document, you will be required to enter your email address. Click here for more information. | |