# EXHIBIT 32

EXHIBIT 32

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
4/21/2025 2:05 PM
KATINA WATSON
CLERK OF THE COURT
Marissa N Layne

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

MICHAEL E. SANCHEZ,

Plaintiff,

vs. No. D-202-CV-2020-06336

NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, JUSTIN PULIAM, and BLACK & WHITE Corps. 1-10 and JOHN & JANE DOES 1-10,

Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY EXECUTION OF THE JUDGMENT WITHOUT BOND DURING THE PENDENCY OF THE POST-TRIAL MOTION PROCEEDINGS**

Defendants NuMale Albuquerque, L.L.C. d/b/a NuMale Medical Center, Christopher Asandra M.D., Carlos Feliciano M.D., Brad Palubicki, and Justin Pulliam (collectively, "Defendants") file the following reply in support of their motion to stay execution of the judgment without any bond requirement during the post-trial motion phase of the case.[1]

**1. *Defendants' motion is timely to prevent efforts at execution before a stay could be implemented.***

Plaintiff is correct that execution of the judgment is not a possibility until the judgment is entered – but the judgment becomes enforceable "upon . . . entry . . . unless otherwise ordered by the court." Rule 1-062(A) NMRA. The language of the rule easily accommodates an order issued prior to entry of judgment. If Defendants had to await entry of the judgment before seeking a stay

[1] By its terms, Plaintiff's respone does not appear to oppose a stay of execution without bond as to defendant NuMale Albuquerque LLC, as well as the bankruptcy debtors. *See* Resp. at n.1.

of enforcement, they would be at risk that Plaintiff would immediately commence efforts to enforce the judgment when entered, before a motion to stay could be presented, heard, and ruled upon. Thus, "rais[ing] th[e] issue after judgment is entered" is not "the appropriate course." (Resp. at 3.) The Court's "inherent power to stay execution of a judgment temporarily in order to prevent injustice," *Segal v. Goodman*, 1993-NMSC-018, ¶ 27, 115 N.M. 349, is broad enough to forestall such a result. Defendants' motion is not premature.

Plaintiff suggests that an alternative "appropriate course" would be to "seek a delay in entry of judgment." (Resp. at 3.) Delaying entry of judgment until Defendants' post-trial motion for new trial or remittitur (which is in preparation) is ruled upon would avoid the issue posed by the present motion. A delay in entry of judgment, in lieu of a stay, is acceptable to Defendants.

**2. *A balancing of interests favors a temporary stay.***

Plaintiff is simply wrong to assert that a temporary stay without security "falls far short of what Rule 1-062(B) contemplates." (Resp. at 3.) "Neither this Court's Rules of Appellate Procedure nor this state's statutes . . . impose any requirement for security when an application for a stay of execution is made and there has been no notice of appeal or motion to vacate." *Segal*, 1993-NMSC-018, ¶ 26. A trial court may, "when necessary to promote the interests of justice, . . . order a stay of execution of its judgment, even when that decision is not under review . . . [and] even in the absence of . . . a supersedeas bond." *Id.* ¶ 27 (footnote omitted).

Furthermore, New Mexico does not apply "a set of objective factors . . . in assessing the propriety of a stay of execution of a money judgment." *Id.* ¶ 29. Our courts "rely instead on a more flexible balancing of the parties' respective interests." *Id.* Having its assets seized or its financial accounts attached can be crippling to a judgment debtor. And, as Defendants' motion points out, the conventional means of obtaining a stay of execution by posting a supersedeas bond

would inflict irreparable injury on a judgment debtor that is unable to bear the associated cost. *See Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871 (10th Cir. 1986).

As evidenced by the Declaration of Dan Huckabay ("Huckabay Decl.," attached as Ex. A), obtaining a bond would inflict extraordinary costs here given the amount of compensatory damages awarded. "Due to the nature and risk associated with supersedeas bonds, surety companies often require the applicant to provide collateral." *Id.* at ¶ 3. Depending on the type of collateral offered, premium rates "typically range from 0.5% to 4%." *Id.* at ¶ 4. In this case, that means the annual cost of a bond for the amount of compensatory damages alone would be up to $1.48 million, while the annual cost for a bond of twice that amount could be as high as $2.96 million. *Id.* at ¶ 5.[2]

Balanced against the devastating impact that either execution of the judgment or posting a supersedeas bond would have on Defendants, the sole consequence to Plaintiff would be a comparatively brief period during which enforcement of the judgment is stayed without security while Defendants' forthcoming post-trial motion is adjudicated. Plaintiff fails to acknowledge the limited duration of the stay that is sought. Moreover, should the Court decide to reduce the verdict or grant a new trial, allowing execution or requiring security based on the present excessive verdict would inflict an injustice on Defendants. Defendants should not be required to shoulder the burden of paying or securing an excessive verdict that they are in the process of challenging.

Plaintiff points to the bankruptcy proceedings involving certain NuMale corporate

---

[2] Ordinarily, absent the extraordinary obstacles presented by the premium cost and collateralization here, one would expect a bond of one and one-half to two times the compensatory award to be required. The punitive damages award does not figure in the bond amount, however, because punitive damages were assessed against NuMale Corporation only, and enforcement of the judgment with respect to NuMale Corporation has been stayed by bankruptcy. (*See* Defs.' Objs. to Pl.'s Proposed Form of Judgment (filed Dec. 11, 2024).)

defendants and the coverage dispute that has arisen with NuMale's insurer as matters that increase the need to secure the judgment at this time. But that is not so. The fact of the bankruptcy does nothing to change the assets available to satisfy the judgment against the debtor; indeed, it merely reflects that the debtor lacked sufficient assets to pay the judgment in the first instance. The bankruptcy process is designed to protect the rights of creditors such as Plaintiff in this very circumstance. As a creditor in the bankruptcy proceedings, Plaintiff can obtain as much protection of his judgment against the debtors as the law will allow.

As for the coverage dispute, a supersedeas bond, if required, is intended to be an independent source of payment of a judgment whether or not the defendant is insured. And in any event, as Plaintiff recognizes, the coverage dispute will affect Plaintiff's insured status only "[i]f successful." (Resp. at 5.) Resolution of the just-filed coverage lawsuit is likely far in the future. In the meantime, the insurer's duty to defend its insured continues "unless and until it receives a judicial ruling in its favor relieving it of any further obligations." *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶ 12, 399 P.3d 400. Whether Defendants should be required to provide security for the judgment if the insurer ultimately prevails in the coverage dispute is a question that can await another day – which, if Defendants prevail, may never arrive.

**Conclusion**

For these reasons, execution of the judgment should be stayed without any bond pending this Court's resolution of Defendants' post-trial motion.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A

By: */s/ J. Andrew Robertson*
DOMINIQUE BARRETT, ESQ.
New Mexico Bar No. 148351
*dominique.barrett@qpwblaw.com*

FRANK ALVAREZ, ESQ.
New Mexico Bar No. 27610
*frank.alvarez@qpwblaw.com*
J. ANDREW ROBERTSON, ESQ.
Pro Hac Vice
*andrew.robertson@qpwblaw.com*
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75202
Telephone: (214) 754-8755
Facsimile: (214) 754-8744

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Edward Ricco
Jocelyn Drennan
Charles J. Vigil
201 Third St., N.W., Suite 2200
Albuquerque, New Mexico 87102
Telephone: (505) 765-5900
Fax: (505) 768-7395
*ericco@rodey.com*
*jdrennan@rodey.com*
*cvigil@rodey.com*

ATTORNEYS FOR DEFENDANTS, NUMALE ALBUQUERQUE L.L.C d/b/a NUMALE MEDICAL CENTER, CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, AND JUSTIN PULIAM

CERTIFICATE OF SERVICE

We certify that the foregoing pleading was filed through the Odyssey File-and-Serve electronic filing system, which caused a copy to be served automatically on all counsel of record this 21st day of April, 2025.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By *s/ Edward Ricco*
Edward Ricco

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

MICHAEL E. SANCHEZ,

Plaintiff,

vs.

No. D-202-CV-2020-06336

NUMALE CORPORATION (a Nevada Corp.), NUMALE ALBUQUERQUE L.L.C. d/b/a NuMale Medical Center (a Wisconsin Corp.), NUMALE NEW MEXICO S.C. CORP. d/b/a NuMale Medical Center (a Wisconsin Corp.), CHRISTOPHER ASANDRA M.D., CARLOS FELICIANO M.D., BRAD PALUBICKI, JUSTIN PULIAM, and BLACK & WHITE Corps. 1-10 and JOHN & JANE DOES 1-10,

Defendants.

**DECLARATION OF DAN HUCKABAY**

I, DAN HUCKABAY, declare under penalty of perjury under the law of New Mexico that the following statements are true and correct.

1. I am president of Court Surety Bond Agency, a firm that provides advice and assistance to clients in obtaining surety bonds in court-related matters, including supersedeas bonds (also referred to as appeal bonds). I have delivered numerous presentations around the country on appeal bonds and have written dozens of published articles on the subject. I have served as an expert witness in several cases in which appeal bonds were a central issue. My work includes helping clients evaluate potential collateral options to obtain appeal bonds and negotiating rates, terms, and conditions with surety companies. I have personal knowledge of the matters addressed herein.

2. Supersedeas bonds are underwritten by surety companies and serve as a guarantee to a judgment creditor that the surety company will pay the judgment if the judgment debtor fails

to do so on its own. Because of the nature of the risk undertaken in issuing a supersedeas bond, surety companies evaluate the creditworthiness of a judgment debtor seeking a supersedeas bond in a manner similar to that of a bank considering making a loan.

3. Due to the nature and risk associated with supersedeas bonds, surety companies often require the applicant to provide collateral. A surety will consider providing a supersedeas bond on an uncollateralized basis based on the applicant's promise to indemnify the surety if the applicant can demonstrate that they have the financial strength to easily satisfy the judgment on their own. This is generally a high bar to clear with surety companies and is limited to large, financially strong public and private companies, municipalities, and extremely high net worth individuals. In all other cases, surety companies will generally require the applicant to furnish collateral in the full bond amount.

4. Surety companies charge an annual premium for a supersedeas bond. The annual charge is calculated based on the premium rate – a percentage of the bond amount – which depends on a number of factors including the financial strength of the applicant, the kind of collateral provided, and the size of the bond. Premium rates typically range from 0.5% to 4% of the bond amount. Rates tend to fall in the lower part of this range when the applicant can provide cash collateral or a letter of credit from an approved bank; in the mid-range when the collateral is publicly traded stocks and bonds held in a non-retirement account; and in the higher part of the range when the collateral is real estate. Other forms of collateral generally are not accepted.

5. Were a surety company willing to issue a fully collateralized supersedeas bond for an individual in the amounts contemplated here, the annual premium cost for the bond would likely fall in the ranges as follows:

a. For a bond in the amount of $37 million –

(i) At a premium rate of 0.5%, the annual premium would be $185,000.

(ii) At a premium rate of 4%, the annual premium would be $1,480,000.

b. For a bond in the amount of $74 million –

(i) At a premium rate of 0.5%, the annual premium would be $370,000.

(ii) At a premium rate of 4%, the annual premium would be $2,960,000.

c. For a bond in the amount of $100 million –

(i) At a premium rate of 0.5%, the annual premium would be $500,000.

(ii) At a premium rate of 4%, the annual premium would be $4,000,000.

d. For a bond in the amount of $412 million –

(i) At a premium rate of 0.5%, the annual premium would be $2,060,000.

(ii) At a premium rate of 4%, the annual premium would be $16,480,000.

Executed on the 21st day of April, 2025, at Orange, California.

Dan Huckabay

**From:** no-reply@efilingmail.tylertech.cloud
**To:** Frank Alvarez
**Subject:** Notification of Service for Case: D-202-CV-2020-06336, Michael E Sanchez v.Numale Medical Center LLC, et al. for filing REPLY, Envelope Number: 12432629
**Date:** Monday, April 21, 2025 1:54:53 PM

# Notification of Service

Case Number: D-202-CV-2020-06336
Case Style: Michael E Sanchez v.Numale Medical Center LLC, et al.
Envelope Number: 12432629

This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
|---|---|
| **Case Number** | D-202-CV-2020-06336 |
| **Case Style** | Michael E Sanchez v.Numale Medical Center LLC, et al. |
| **Date/Time Submitted** | 4/21/2025 2:05 PM MST |
| **Filing Type** | REPLY |
| **Filing Description** | Reply in Support of Motion to Stay Execution of the Judgment Without Bond During the Pendency of the Post Trial Motion Proceedings |
| **Filed By** | Cathy Nolen |
| | Michael E Sanchez:<br><br>Cherie LaCour (cherie@bencoelaw.com)<br><br>Maggie Golike (maggie@bencoelaw.com)<br><br>Lori Bencoe (lori@bencoelaw.com)<br><br>Courtney Rowley (therowleylawfirm@gmail.com)<br><br>Theresa Bowen-Hatch (theresa@bowenhatchlaw.com)<br><br>Nicholas Rowley (NR@TL4J.com)<br><br>Keith Bruno (keith@brunonalu.com)<br><br>R Sexton (scott@bencoelaw.com) |

| | |
|---|---|
| **Service Contacts** | Elizabeth Martinez (elizabeth@brunonalu.com)<br><br>Numale Corporation:<br><br>John Robertson (andrew.robertson@qpwblaw.com)<br><br>Erin Chavez (erin.chavez@qpwblaw.com)<br><br>Dianna Saxton (dianna.saxton@qpwblaw.com)<br><br>Dominique Barrett (dominique.barrett@qpwblaw.com)<br><br>Jocelyn Drennan (jdrennan@rodey.com)<br><br>Edward Ricco (ericco@rodey.com)<br><br>Charles Vigil (cvigil@rodey.com)<br><br>Frank Alvarez (frank.alvarez@qpwblaw.com)<br><br>Sharon Walker (sywalker@btblaw.com)<br><br>Lillian Favela (lillian.favela@qpwblaw.com)<br><br>Stephen G Chapman PA-C:<br><br>M. Clea Gutterson (mcg@kerrykiernanpc.com)<br><br>Teresa Montoya (admin@kerrykiernanpc.com)<br><br>John Klecan (jklecan@jshfirm.com)<br><br>Pam Pullem (ppullem@jshfirm.com)<br><br>Other Service Contacts not associated with a party on the case:<br><br>Souhaila Sonnenberg (souhaila.sonnenberg@qpwblaw.com)<br><br>Daisy Mora (karen.edwards@qpwblaw.com) |

| | |
|---|---|
| | Linda Lopez (linda.lopez@qpwblaw.com)<br><br>Kenneth Stalter (ken@stalterlaw.com) |

| Document Details | |
|---|---|
| **Served Document** | Download Document |
| This link is active for 90 days. To access this document, you will be required to enter your email address. Click here for more information. | |