GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: (725) 777-3000
Facsimile: (725) 777-3112
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>Jointly administered with:<br><br>Feliciano NuMale Nevada PLLC<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Hearing Date: November 10, 2026<br>Hearing Time: 2:00 p.m. |

**TRUSTEE'S OPPOSITION TO MOTION OF JOHN DOE 1, JOHN DOE 2, AND JANE DOE TO AMEND STIPULATED <u>PROTECTIVE ORDER [ECF NO. 1148]</u>**

Michael Carmel, Trustee of the NuMale Liquidation Trust (the "<u>Trustee</u>"), by and through his counsel, Garman Turner Gordon LLP ("<u>GTG</u>"), opposes the motion [ECF No. 1148] (the "<u>Motion</u>") filed by the three attorneys of Quintairos, Prieto, Wood & Boyer, P.A. ("<u>QPWB</u>") who identify themselves only as "John Doe 1, John Doe 2, and Jane Doe" (the "<u>Does</u>"), which asks the

Court to approve their proposed Amendment to Stipulated Protective Order (the "Proposed Amendment"). This opposition is based on the following memorandum of points and authorities, the Declaration of Talitha Gray Kozlowski filed concurrently herewith (the "Gray Kozlowski Declaration"), the papers and pleadings on file, and any argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Trustee does not object to protecting the Does' ***financial*** information. He has already agreed in the Stipulated Protective Order that the exact payment amounts, account numbers, the terms of compensation agreements, and itemized compensation records will be filed only under seal, and he renews that commitment here. Frankly, protecting their names in the current context of these bankruptcy proceedings does not concern the Trustee either, even though the publicly available names of attorneys at QPWB are neither confidential nor something entitled to protection. However, what the Trustee opposes is something else entirely, a proposed order that is violative of the First Amendment and would place the Trustee and his counsel in the position of advocating for something the law does not allow.

The Proposed Amendment would require that the Does' names be sealed in "any filing with a court of competent jurisdiction," including any lawsuit the Trustee brings against them; would forbid the Trustee and his counsel from disclosing the Does' identities "to any third party"; and would reserve to the Does the right to sue the Trustee and his counsel for damages "arising out of the disclosure of . . . the names of the Interested Parties," whether or not the disclosure complied with this Court's orders. If the Does believe that they are entitled to pseudonymity, then they can move a future court where the action is filed. However, this Court should not entertain Does' order, which would force the Trustee to take an unsupported and sanctionable position.

In short, no court could enter the order requested. The public has a First Amendment right of access to civil complaints, and section 107 makes papers filed in this case public subject to three narrow exceptions, none of which covers a defendant's name here. Courts across the country hold that the embarrassment and reputational and economic consequences of being a party to a lawsuit do not justify anonymity, and that is all the Does have ever claimed. The Proposed Amendment

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

would also prevent the Trustee from deciding whom to sue, from taking meaningful discovery, and from potentially naming Does in his malpractice claims. And because the Trustee does not know who the Does are, he could comply only by treating all forty-six attorneys at issue, and any later added, as Does. The Proposed Amendment is a template for anonymizing any future litigation against QPWB, an extreme step that is repugnant to the First Amendment and rule of law.

The sought Reservation of Rights is independently improper. Specifically, the Does seek to reserve their right to sue the Trustee and his counsel for investigating their fraudulent transfers. Such a reservation would invite suits against the Trustee and his counsel for doing exactly what this Court authorized, circumventing the *Barton* doctrine, derived quasi-judicial immunity, the absolute litigation privilege, and this Court's retained jurisdiction to enforce its own order. The request to amend should be denied in full.

## II. STATEMENT OF RELEVANT FACTS

### A. The Compliance Order and the Stipulated Protective Order.

On October 19, 2026, the Court granted the Trustee's motion to enforce the Rule 2004 order and subpoena directed to QPWB, finding that QPWB "has not shown specific prejudice or harm warranting a protective order." ECF No. 1046 ¶¶ F-H (the "Compliance Order"). On November 3, 2026, the Court entered the Stipulated Protective Order between the Trustee and QPWB. ECF No. 1122 (the "Protective Order"). The Protective Order defines the "Trust Claims" to include claims "against QPWB and its attorneys, employees, Insiders, and Affiliates." *Id.* ¶ K. It permits a party to designate material "HIGHLY CONFIDENTIAL/ATTORNEY'S EYES ONLY" "only if the Party believes, in good faith, that disclosure to persons other than those identified in paragraph 5 would cause specific harm," *id.* ¶ 1, and places on the designating party "the burden of establishing that the challenged designation is appropriate," *id.* ¶ 14. It leaves unrestricted "any document or information that the Trustee obtained other than through production under this Order." *Id.* ¶ 27.

. . .

. . .

. . .

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**1. The Existing Protective Order Protects Financial Information But Allows Basic Information To Be Pled.**

The Protective Order resolves the precise question the Proposed Amendment would reopen. Section M defines "Pleading Information," as to any person against whom the Trustee intends to pursue a Trust Claim, as "(i) that person's name and state of residence; (ii) the fact that the person received transfers, payments, distributions, or other compensation from QPWB, and the period during which they were received; and (iii) a general description of the facts and legal theories and the elements of the Trust Claims asserted against the person." It excludes from Pleading Information, and requires the Trustee to "take all steps reasonably necessary to file . . . under seal," all "Protected Pleading Information," including "exact transfer amounts, account numbers, or other specific financial information," any quotation or summary of designated documents, and "the terms of any compensation, employment, ownership, or other agreement." *Id.* It then authorizes the Trustee to use protected information "to determine whether to commence a Subsequent Action and against whom," "to identify, name, and join any person as a defendant," to state the Pleading Information "in any complaint . . . filed on the public docket in a Subsequent Action, and in any pre-suit demand," and "to serve process on, and communicate with, any defendant or prospective defendant," without "a sealing order, or a protective order in the Subsequent Action." *Id.* ¶ 31. Detailed "itemized payment or compensation records" must be filed under seal. *Id.*

**B. <u>The Proposed Amendment.</u>**

On November 6, 2026, the Does filed their Proposed Amendment and asked the Trustee to sign it. ECF 1148.

**1. It Prevents the Trustee From Learning Any Information About the Does.**

The proposed amendment would deem "any information that is personal to the Interested Parties, including but not limited to financial information that is not a matter of public record or public knowledge" to be "HIGHLY CONFIDENTIAL/ATTORNEY'S EYES ONLY." ECF 1148 at p. 7 ¶ 3. As argued by the Does, this would seemingly include their names and the fact that they work for or at QPWB. In practice, the Trustee would be prohibited from learning their names or

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

the factual basis for any claims he'd bring against the Does.

**2. It Requires Claims Brought Against the Does Be Done So Anonymously, To The Exclusion Of The Trustee.**

Furthermore, the Proposed Amendment seeks to require the Trustee to file the Does' names in subsequent proceedings under seal:

> 5. Pleading Information. With respect to the Interested Parties [the "Does"], shall exclude the public disclosure ***of their names*** in any filing with a court of competent jurisdiction including, but not limited to any Subsequent Action; instead, any such filing that includes the names of the Interested Parties shall be filed under seal, including but not limited to any Subsequent Action. Furthermore, neither the Trustee nor his counsel shall publicly disclose the name or identity of the Interested Parties, to any third party, not otherwise designated as "Outside Counsel" in the Order.

ECF 1148 at p. 7 ¶ 5.

**3. It Creates a Cause of Action Against the Trustee and His Counsel.**

Finally, Section 6 purports to create a claim against the Trustee or his counsel from disclosing the names of Quinteros attorneys:

> 6. Reservation of Rights. Shall include the preservation of any right to pursue any claim against the Trustee or Outside Counsel for damages arising out of the disclosure of Personal Information or the names of the Interested Parties" (the **"Reservation of Rights"**)

ECF 1148 at p. 7 ¶ 6.

**4. The Proposed Amendment Would Apply to All QPWB Partners.**

The Proposed Amendment would apply "to the extent any or all of the Interested Parties were among the 46 attorneys, or additional attorneys at QPWB whose names were ordered to be produced to the Trustee." ECF 1148 at Recital F.

## III. LEGAL STANDARD

The party seeking protection, including third parties, bears the burden. In this Circuit, "whoever is seeking protection under Rule 26(c) bears the burden of showing good cause," and that rule applies with equal force to third parties. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 426 (9th Cir. 2011). The movant must "allege specific prejudice or harm";

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

"[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* at 424 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). The Protective Order itself places the burden of justifying any designation on the designating party. ECF No. 1122 at ¶ 14.

Papers filed in this case are governed by Section 107 of the Bankruptcy Code,[1] which "preempts the common law right of access in bankruptcy proceedings" and "has only three exceptions: confidential business information, 11 U.S.C. § 107(b)(1), 'scandalous or defamatory matter,' *id.* § 107(b)(2), and 'means of identification' if the court finds it would "create undue risk of identity theft or other unlawful injury." *id.* § 107(c)(1)(A); *see also Roman Catholic Archbishop*, 661 F.3d at 430-31. Papers filed in other courts are governed by those courts' rules, under which a party seeking to seal a judicial record must overcome a "strong presumption in favor of access" by articulating "compelling reasons supported by specific factual findings." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A blanket stipulated protective order does not supply that showing. *See id.* at 1176.

A party may proceed under a fictitious name only in the "unusual case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). The "normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010). Where pseudonymity is sought to avoid retaliation or harm, the movant must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable," *id.* at 1043, and the court must weigh that showing against "the precise prejudice at each stage of the proceedings to the opposing party" and the public's interest, *Advanced Textile*, 214 F.3d at 1068.

## IV. ARGUMENT

### A. Sealing the Does' Names in Every Pleading Would Violate the Public's Right of Access and Section 107.

The Does contend that their names must be withheld from the public in any filing, in any

[1] 11 U.S.C. § 101 – 1532 (the "Bankruptcy Code"). All references to "Chapter" or "Section" herein are to the applicable provisions of the Bankruptcy Code.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

court, because "[r]evealing their identities" would injure them. *See* ECF No. 1080 at 2 n.1. The law does not permit that result.

**1. The Public Has a First Amendment Right of Access to Civil Complaints, and Therefore the Proposed Court Order Is Violative of the Law.**

The Ninth Circuit has held that the press and public enjoy a qualified First Amendment right of access to newly filed nonconfidential civil complaints. *Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020). The complaint, the court explained, is "the cornerstone of every case, the very architecture of the lawsuit," and access to it "is almost always necessary if the public is to understand a court's decision." *Id.* at 593 (citations omitted). Once the right attaches, access "may be restricted only if 'closure is essential to preserve higher values and is narrowly tailored to serve those interests.'" *Id.* at 588 (citation omitted). The Fourth Circuit applied the same principle to reject a party's effort to shield its identity on the basis of feared reputational harm, holding that "[a]n unsupported claim of reputational harm falls short of a compelling interest sufficient to overcome the strong First Amendment presumptive right of public access," and that the district court "abused its discretion in allowing Company Doe to litigate pseudonymously." *Company Doe v. Pub. Citizen*, 749 F.3d 246, 270 (4th Cir. 2014).

Within this Court, Section 107 controls, and it "has only three exceptions." *Roman Catholic Archbishop*, 661 F.3d at 430. The Does' names are not "confidential business information" under Section 107(b)(1); they are not "scandalous or defamatory matter" under section 107(b)(2), since a complaint that names a defendant and describes the claims against him is the ordinary business of a court; and they do not fall within section 107(c)(1)(A). That subsection permits the Court, for cause, to protect an individual's "means of identification" only on a finding that disclosure would create an undue risk of identity theft or other unlawful injury.

The Proposed Amendment cannot be reconciled with these principles. It does not ask the Court to seal a particular document on particular findings; it asks the Court to decree, in advance, that defendants' names be withheld from every complaint the Trustee may file in any court. No court can find that closing a complaint not yet drafted, in a court not yet identified, against

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

defendants not yet named, is "essential to preserve higher values" and "narrowly tailored." The Does offer only the generalized reputational concern *Public Citizen* held insufficient, and the narrower alternative the Protective Order already provides—sealing the financial details—shows that blanket name-sealing is not narrowly tailored.

**2. The Mere Fact of Being Sued Does Not Justify the Relief Sought.**

Being sued is not an unlawful injury or undue prejudice, and the Does do not claim any risk of identity theft. The federal rules confirm the point. Where Congress and the rule makers have chosen to protect the names of individuals in public filings, they have said so expressly: Civil Rule 5.2(a) provides that a filing containing "the name of an individual known to be a minor" may include "only . . . the minor's initials." *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61,70 (1st Cir. 2022) (quoting Fed. R. Civ. P. 5.2(a)). The *Mass Inst. of Tech* court went further to reiterate that distress, embarrassment, or threats to reputation are present in all cases:

> [W]e are committed to the proposition that courts—in balancing the relevant interests—must not lose sight of the big picture. Litigation by pseudonym should occur only in "exceptional cases.
>
> Lawsuits in federal courts frequently invade customary notions of privacy and—in the bargain—threaten parties' reputations. The allegations are often serious (at least to the parties) and motivated adversaries do not lack for procedural weapons. Facing the court of public opinion under these conditions is sometimes stressful—but that is the nature of adversarial litigation. If commonplace lawsuit-induced distress were enough to justify the use of a pseudonym, anonymity would be the order of the day: Does and Roes would predominate. We think it follows that a well-calibrated inquiry needs some workable methodology for sorting out the (relatively few) "exceptional cases" in which pseudonymity should be allowed

*Id*. at 70. The Court then went on to describe those limited situations where pseudonymity should be permitted:

- "The first paradigm involves . . . reasonabl[e] fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)," such as harm at the hands of other inmates (citing *Doe v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015)) or facing deportation or arrest (citing *Advanced Textile*, 214 F.3d at 1071).
- "The second paradigm involves cases in which identifying the would-be Doe would harm 'innocent non-parties,'" for instance unmasking parents of abused children.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

- "The third paradigm involves cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated," for instance "intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors," or seeking redress regarding illegal conduct.
- "The fourth paradigm involves suits that are bound up with a prior proceeding made confidential by law," for instance suits where statutes protect juveniles' identities.

*Id*. at 71.

None of the paradigms give rise to pseudonymity where being sued for a fraudulent transfer or even malpractice would give rise to sufficient reputational concerns. As the First Circuit identified, if that were the case, all defendants would have a right to blot their names from the public record.

Moreover, the Proposed Amendment would govern "any filing with a court of competent jurisdiction." Whether a complaint filed in another court may be sealed is for that court to decide under its own rules and the constitutional standards that bind it, as the Protective Order already recognizes. ECF No. 1122 at ¶ 31 (sealing "in accordance with LR 9018 or the rules of the court in which the Subsequent Action is pending"); *see also id.* at ¶ 25. An order purporting to bind other courts' dockets in advance would be ineffective and an invitation to collateral litigation.

**B. <u>The Does Cannot Meet the Standard for Proceeding as "John and Jane Doe," and As Potential Defendants Their Claim to Anonymity Is Weaker, Not Stronger.</u>**

The Proposed Amendment would accomplish indirectly what the Does could never obtain directly: the right to be sued, if they are sued at all, under fictitious names. Civil Rule 10(a) commands that "the title of every complaint 'include the names of all the parties,'" and the use of fictitious names "runs afoul of the public's common law right of access to judicial proceedings." *Advanced Textile*, 214 F.3d at 1067 (quoting Fed. R. Civ. P. 10(a)). The Ninth Circuit permits pseudonyms only in the "unusual case," *id.*, and has emphasized "the paramount importance of open courts," *Kamehameha*, 596 F.3d at 1046. Even where a party fears retaliation, the party must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* at

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1043.

The Courts of Appeals have uniformly rejected the kind of harm the Does assert. As judge Posner wrote in "The people have a right to know who is using their courts," such that "[t]he use of fictitious names is disfavored," and the privilege of proceeding under a fictitious name "should not be granted automatically even if the opposing party does not object," *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). *See also Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). *See also Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016) (affirming denial of leave to proceed anonymously where the asserted harm was embarrassment). The First Circuit has explained why: "A judicial system replete with Does and Roes invites cynicism and undermines public confidence in the courts' work," and "the strong presumption against the use of pseudonyms in civil litigation rests on a sturdy foundation." *Mass. Inst. of Tech.*, 46 F.4th at 69.

The Does' showing falls far short. Their only evidence identifies no harm—no threat, no lost client, no lost position—beyond the declarant's statement that the Does "strongly object." ECF No. 1081 at ¶ 7. The harm they evidently fear is the harm every defendant faces: that the public will learn a claim has been asserted against them. That is not a "severe harm" under *Kamehameha*; it is the ordinary incident of litigation, and a court system that granted anonymity on that basis would have no named defendants. The Does are practicing lawyers, and the claims concern a law firm's representation of debtors whose estates this Court administers—a subject in which the public interest in open proceedings is at its height.

**C. <u>The Proposed Amendment Would Prevent the Trustee From Deciding Whom to Sue and From Meaningfully Participating in Discovery.</u>**

The Proposed Amendment would also cripple the investigation this Court has authorized. The Protective Order was negotiated so that the Trustee could use QPWB's production "to determine whether to commence a Subsequent Action and against whom," "to identify, name, and join any person as a defendant," and "to serve process on, and communicate with, any defendant or prospective defendant." ECF No. 1122 at ¶ 31. The Proposed Amendment would displace each

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

of those uses. By deeming all "Personal Information" of the Does attorneys'-eyes-only, it would confine their identities to the narrow group listed in paragraph 5 of the Protective Order and exclude the Truste, his experts, and other support staff from reviewing the information, *see id.* ¶¶ 4(c), 5.

By forbidding the Trustee and his counsel to disclose the Does' identities "to any third party" not designated as Outside Counsel, it would, on its face, prohibit the Trustee from identifying the Does to a process server, a court reporter, a mediator, a retained expert, a malpractice insurer, a co-defendant, or a witness. And because deponents may be shown attorneys'-eyes-only material only if they authored or received it, *id.* at ¶ 6, the Trustee could not ask QPWB's witnesses—at the examinations scheduled for November 11 through 13—about the role of any particular attorney in the representation of the Debtors without risking a violation.

The Proposed Amendment is also unworkable, because the Trustee does not know who the Does are. It applies "to the extent any or all of the Interested Parties were among the 46 attorneys, or additional attorneys at QPWB whose names were ordered to be produced." The Trustee cannot comply with an order protecting persons whose identities he does not know.

**D. <u>The Proposed Amendment Would Prevent the Trustee from Naming Malpractice Defendants Pleaded as Does and Roes.</u>**

The Trust Claims include malpractice claims against QPWB "and its attorneys." ECF No. 1122 at ¶ K. If any of the Does is among the attorneys responsible for the conduct underlying the malpractice claims, the Trustee could never identify the tortfeasors true name on the public docket, because the Proposed Amendment forbids the public disclosure of the Does' names "in any filing with a court of competent jurisdiction." The Trustee would be left to choose between violating this Court's order or satisfying his basic pleading obligations. No legitimate privacy interest justifies forcing that choice.

**E. <u>The Proposed Amendment Would Inevitably Be Extended to Every Partner in the Compensation Pool.</u>**

The Does do not seek protection only for themselves. The Does' *Interested Parties Does'*

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Motion to Quash or in the Alternative Motion for Protective Order* [Bankr. ECF No. 1080] asked for an order "safeguarding the Movants' and other similarly situated employees' identities." ECF No. 1080 at p. 3. Their declarant predicted "that many other similarly situated partners of QPWB would likewise object." ECF No. 1081 at ¶ 8. The Proposed Amendment seems to apply to "additional attorneys at QPWB whose names were ordered to be produced."

If the Court approves these terms for three anonymous attorneys on a record that identifies no harm, there is no principled basis on which it could deny the same terms to the next forty-three, or the next hundred. Each would make the same showing the Does have made, which is to say none. And "Personal Information"—"any information that is personal to the Interested Parties"—has no limiting principle at all. The Ninth Circuit requires courts to assess "the precise prejudice at each stage of the proceedings," *Advanced Textile*, 214 F.3d at 1068, an inquiry that cannot be conducted wholesale for an open-ended class of persons whose identities, roles, and asserted harms are unknown. The Proposed Amendment would, in practice, anonymize the entire compensation pool that is the subject of the Trustee's investigation.

**F. <u>The Reservation of Rights Would Invite Suits Against the Trustee and His Counsel for Complying With This Court's Orders.</u>**

The Reservation of Rights would preserve the Does' right "to pursue any claim or cause of action . . . against the Trustee or Outside Counsel for damages arising out of the disclosure of Personal Information or the names of the Interested Parties, including but not limited to financial harm, reputational harm or business harm." Notably, the Reservation is not limited to disclosures that violate the Protective Order. It would reach the disclosures the Protective Order expressly authorizes—naming a defendant in a complaint, stating the Pleading Information, delivering a pre-suit demand, and serving process. ECF No. 1122 ¶ 31. No authority permits a court to approve a stipulation that treats compliance with its own order as a basis for damages.

**1. The Trustee and his counsel have broad immunity and leave to sue either must be obtained from the bankruptcy court.**

"Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order," and "[t]he doctrine of judicial immunity also applies

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

to court approved attorneys for the trustee." *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742 (9th Cir. 2009) (citations omitted). Derived quasi-judicial immunity applies where the trustee's acts were within the scope of his authority, the affected party had notice of the proposed acts, the acts were candidly disclosed to the bankruptcy court, and the court approved them. *Id.*; *see also Kashani*, 190 B.R. at 883. Each element is satisfied here. The Court approved the Trustee's use of Pleading Information in paragraph 31 of the Protective Order and ordered QPWB to disclose the forty-six names over the Does' objection after a hearing at which the Does were heard. A stipulation reserving damages claims for those very acts would contradict the immunity the law confers.

Furthermore, "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 128 (1881). The Ninth Circuit applies that rule to require "a party [to] first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity," and has applied it to the trustee of a liquidating trust. *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005). The doctrine extends to a trustee's counsel, and "for the *Barton* doctrine to apply to a suit against a bankruptcy trustee's attorneys, we know of no reason why the trustee must have directed counsel to take the specific actions." *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012). Whether leave should be granted requires the court to balance "the interests of all parties involved." *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886 (B.A.P. 9th Cir. 1995) (citation omitted). A stipulated reservation of damages claims, approved by this Court in advance and without any showing, would stand as a pre-authorization of the very suits the *Barton* doctrine requires the Court to screen.

**2. The proposed "reservation" violates the absolute litigation privilege.**

Under Nevada law, "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of controversy." *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101 (1983). The privilege "precludes liability even where the defamatory statements are published with

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

knowledge of their falsity and personal ill will," and it extends to "communications preliminary to a proposed judicial proceeding" where the proceeding is "contemplated in good faith and under serious consideration." *Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640 (2002) (citations omitted). Naming a defendant in a complaint, or identifying a prospective defendant in a pre-suit demand, lies at the core of that privilege. The Reservation of Rights would purport to preserve claims that the law extinguishes.

**G. <u>The Trustee's Sealing Commitment Protects Every Legitimate Interest the Does Have.</u>**

The Trustee does not dismiss the Does' interest in the privacy of their compensation. That interest is real, and it is already protected. Under the Protective Order, exact transfer amounts, account numbers, other specific financial information, the terms of any compensation, employment, or ownership agreement, itemized payment and compensation records, and any quotation or summary of designated documents are "Protected Pleading Information" that the Trustee must file under seal. ECF No. 1122 ¶¶ M, 31. The Trustee reaffirms that commitment as to the Does and does not object to an order confirming that all such information concerning the Does' compensation and payments from QPWB will be filed only under seal in accordance with LR 9018 or the rules of the court in which any Subsequent Action is pending.

What remains public is the minimum the law requires: a defendant's name and state of residence, the fact and period of the payments, and a general description of the claims. Without that information a complaint is not a complaint, and the Does have already made much of it public. The availability of this narrower protection demonstrates that blanket name-sealing is not "narrowly tailored," and that the Does' financial-privacy interest can be served without closing the courthouse door.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion. In the alternative, the Trustee requests that any relief be limited to an order confirming that information concerning the amounts, terms, and itemization of the Does' compensation and

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

payments from QPWB constitutes Protected Pleading Information to be filed under seal pursuant to paragraphs M and 31 of the Protective Order, and that the Protective Order otherwise remain unmodified.

Dated this 9th day of November, 2026.

GARMAN TURNER GORDON LLP

By: */s/ Dylan Ciciliano*_______
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Trustee of the NuMale Liquidation Trust*